1   LATHAM & WATKINS LLP
     Andrew M. Gass (SBN 259694)
2     andrew.gass@lw.com
     Michael H. Rubin (SBN 214636)
3     michael.rubin@lw.com
     505 Montgomery Street, Suite 2000
4   San Francisco, California 94111-6538
     Telephone: 415.391.0600
5

6   *Attorneys for Defendant DeviantArt, Inc.*

7

8               **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10               **SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| 12  SARAH ANDERSEN, an individual; | CASE NO. 3:23-cv-00201-WHO |
|       KELLY MCKERNAN, an individual; | |
| 13  KARLA ORTIZ, an individual, | **DEFENDANT DEVIANTART, INC.'S** |
| | **NOTICE OF MOTION, MOTION TO** |
| 14      Individual and Representative Plaintiffs, | **DISMISS, AND MEMORANDUM OF** |
| | **POINTS AND AUTHORITIES IN** |
| 15      v. | **SUPPORT OF MOTION TO DISMISS** |
| 16  STABILITY AI LTD., a UK corporation; | Date:      July 19, 2023 |
|       STABILITY AI, INC., a Delaware corporation; | Time:    2:00 p.m. |
| 17  MIDJOURNEY, INC., a Delaware corporation; | Place:   Courtroom 2 - 17th Floor |
|       DEVIANTART, INC., a Delaware corporation, | Before:  Hon. William H. Orrick |
| 18 | |
|       Defendants. | |
| 19 | |

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 2, 17th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant DeviantArt, Inc. ("DeviantArt") through its undersigned counsel, will, and hereby does, move to dismiss Plaintiffs' ("Plaintiffs") Class Action Complaint ("Compl." or "Complaint") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

DeviantArt's Motion to Dismiss ("Motion") is based on this Notice, the supporting Memorandum of Points and Authorities ("Memorandum"), the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

### STATEMENT OF RELIEF SOUGHT

DeviantArt seeks an order pursuant to FRCP 12(b)(6) dismissing the claims against DeviantArt for failure to state a claim upon which relief can be granted.

### ISSUES TO BE DECIDED

The Motion presents the following issues to be decided: (1) Whether the undifferentiated allegations in the Complaint violate FRCP 8(a)(2) and require dismissal; (2) Whether Plaintiffs' claims of direct and vicarious copyright infringement (Counts I & II) should be dismissed for failure to comply with 17 U.S.C. § 411(a) and failure to specifically identify the allegedly infringed works; (3) Whether Plaintiffs' claim of direct infringement against DeviantArt (Count I) should be dismissed for failure to plead facts sufficient to hold DeviantArt liable for infringement of the exclusive rights set out in 17 U.S.C. § 106; (4) Whether Plaintiffs' claim of vicarious infringement (Count II) should be dismissed for failure to identify an act of direct infringement and/or failure to plead the elements of vicarious liability; (5) Whether Plaintiffs' claims under 17 U.S.C. § 1202(b) (Count III) should be dismissed for failure to plead facts sufficient to hold DeviantArt liable for violation of the Digital Millennium Copyright Act; (6) Whether Plaintiffs' claims of violation of the statutory and common law rights of publicity (Counts IV & V) should be dismissed because those claims are preempted by the Copyright Act, *see* 17 U.S.C. § 301(a), and/or barred by the

First Amendment; (7) Whether Plaintiffs' claims of violation of the statutory and common law rights of publicity (Counts IV & V) should be dismissed for failure to plead facts sufficient to hold DeviantArt liable; (8) Whether Plaintiffs' claim of "unfair competition" (Count VI) should be dismissed for failure to plead facts sufficient to hold DeviantArt liable under 15 U.S.C. § 1125, Cal. Bus. & Prof. Code §§ 17200, or common law unfair competition; (9) Whether Plaintiffs' claim of breach of contract (Count IX[1]) should be dismissed for failure to plead facts sufficient to hold DeviantArt liable and for failing to identify the allegedly breached contract term; and (10) Whether Plaintiffs' claim for declaratory judgment (Count VII) should be dismissed because Plaintiffs have failed to adequately state any of their underlying claims.

Dated:  April 18, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By:  /s/ Andrew M. Gass

Andrew M. Gass (SBN 259694)
  andrew.gass@lw.com
Michael H. Rubin (SBN 214636)
  michael.rubin@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600

*Attorneys for Defendant DeviantArt, Inc.*

---

[1] Plaintiffs' claim of breach of contract is styled as "Count IX" even though it is Plaintiffs' seventh claim for relief and even though the Complaint contains only eight claims for relief. This Motion nonetheless will refer to the claim as "Count IX" to avoid confusion.

**<u>TABLE OF CONTENTS</u>**

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTS ALLEGED.................................................................................................... 3

     A.     Nonparty Researchers Develop "Diffusion" Technology.................................... 3

     B.     Stability AI, With Another Nonparty's Assistance, Creates Stable
            Diffusion ............................................................................................................. 4

     C.     DeviantArt Releases DreamUp........................................................................... 5

     D.     Plaintiffs File This Lawsuit Against Stability AI, Midjourney, and
            DeviantArt........................................................................................................... 6

III.   LEGAL STANDARD................................................................................................ 6

IV.    ARGUMENT ............................................................................................................ 7

     A.     Plaintiffs' Undifferentiated Allegations Violate Rule 8(a)(2) ............................ 7

     B.     Plaintiffs' Claims Against DeviantArt All Fail On The Merits........................... 9

           1.     Plaintiffs' Claim For Direct Copyright Infringement Fails ..................... 9

                 a.     Plaintiffs Fail To Allege Registration Of Their Copyrights .......... 9

                 b.     Plaintiffs' Direct Infringement Claim Against DeviantArt
                       Fails............................................................................................... 10

           2.     Plaintiffs' Claim For Vicarious Copyright Infringement Fails............... 12

           3.     Plaintiffs' DMCA Claim Fails................................................................ 14

           4.     Plaintiffs' Right-Of-Publicity Claims Fail.............................................. 17

           5.     Plaintiffs' Unfair Competition Law Claim Fails .................................... 21

           6.     Plaintiffs' Breach Of Contract Claim Fails............................................. 22

           7.     Plaintiffs' Declaratory Judgment Claim Fails With The Other
               Claims ...................................................................................................... 23

     C.     Dismissal With Prejudice Is Appropriate As To DeviantArt.............................. 24

V.     CONCLUSION....................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## **CASES**

4

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
5
    744 F.3d 595 (9th Cir. 2014) ...................................................................................24

6
*Armstrong-Harris v. Wells Fargo Bank, N.A.*,
    No. 21-cv-7637, 2022 WL 3348426 (N.D. Cal. Aug. 12, 2022) ...........................21
7

8
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................6

9
*Bell Atl. Corp. v. Twombly*,
10
    550 U.S. 544 (2007)................................................................................................6

11
*Bespaq Corp. v. Haoshen Trading Co.*,
    No. 04-cv-3698, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005)....................................9
12

13
*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
    149 F. Supp. 3d 1167 (N.D. Cal. 2015) ...........................................................11, 13

14
*Brooks v. Thomson Reuters Corp.*,
15
    No. 21-cv-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .........................20

16
*Carter v. Oath Holdings Inc.*,
    No. 17-cv-7086, 2018 WL 5819458 (N.D. Cal. Nov. 5, 2018) .............................21
17

18
*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (2001) .........................................................................................20

19
*Destfino v. Reiswig*,
20
    630 F.3d 952 (9th Cir. 2011) ...............................................................................7, 8

21
*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
    No. 22-cv-1463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) .........................16
22

23
*Entous v. Viacom Int'l, Inc.*,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001) ...............................................................18

24
*Epikhin v. Game Insight N. Am.*,
25
    No. 14-cv-4383, 2015 WL 2412357 (N.D. Cal. May 20, 2015)............................14

26
*Flava Works, Inc. v. Clavio*,
    No. 11-cv-5100, 2012 WL 2459146 (N.D. Ill. June 27, 2012)........................11, 13
27

28
*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019)..............................................................................................9

Page(s)

*Free Speech Sys. LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...................................................................15

*Frost-Tsuji-Architects v. Highway Inn, Inc.*,
   No. 13-cv-496, 2015 WL 263556 (D. Haw. Jan. 21, 2015)......................................16

*Fuzzy Logic Prods., Inc. v. Trapflix, LLC*,
   No. 15-cv-6203, 2015 WL 12791508 (C.D. Cal. Nov. 20, 2015) ............................11

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ....................................................................................6

*In re iPhone App. Litig.*,
   No. 11-md-22590, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)............................7

*Jewelry 10, Inc. v. Elegance Trading Co.*,
   No. 88-cv-1320, 1991 WL 144151 (S.D.N.Y. July 20, 1991)..................................18

*Karkanen v. California*,
   No. 17-cv-6967, 2018 WL 3820916 (N.D. Cal. Aug. 10, 2018) ................................7

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) ......................................................................16

*Kifle v. YouTube LLC*,
   No. 21-cv-1752, 2021 WL 1530942 (N.D. Cal. Apr. 19, 2021)...........................9, 10

*Kirby v. Sega of Am., Inc.*,
   144 Cal. App. 4th 47 (2006) .....................................................................................20

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
   No. 20-cv-1931, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ........................16, 17

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) ..................................................................................21

*Laws v. Sony Music Ent.*,
   448 F.3d 1134 (9th Cir. 2006) ..................................................................................18

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ..................................................................................12

*Livingston v. Morgan*,
   No. 06-cv-2389, 2006 WL 8459602 (N.D. Cal. July 31, 2006) ...............................13

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEVIANTART'S MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

TABLE OF AUTHORITIES

Page(s)

*Malasky v. Esposito*,
    No. 16-cv-4102, 2019 WL 79032 (N.D. Cal. Jan. 2, 2019)......................................................23

*Mayen v. Bank of Am. N.A.*,
    No. 14-cv-3757, 2015 WL 179541 (N.D. Cal. Jan. 14, 2015)................................................24

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015)..................................................................................18

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..............................................................................................12

*Mills v. Netflix, Inc.*,
    No. 19-cv-7618, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ..............................................16

*Mulcahy v. Cheetah Learning, LLC*,
    386 F.3d 849 (8th Cir. 2004) ..............................................................................................12

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
    299 F. App'x 509 (6th Cir. 2008) ..................................................................................11, 13

*O'Neal v. Sideshow, Inc.*,
    583 F. Supp. 3d 1282 (C.D. Cal. 2022) .........................................................................16, 17

*Parziale v. HP, Inc.*,
    No. 19-cv-5363, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020)..........................................24

*Paulson v. Carter*,
    230 F. App'x 645 (9th Cir. 2007) .........................................................................................19

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ...............................................................................................14

*Perfect 10, Inc. v. Google, Inc.*,
    No. 04-cv-9484, 2010 WL 9479060 (C.D. Cal., July 30, 2010)......................................19, 20

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ..........................................................................................13, 14

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) ...............................................................................................18

*Skidmore ex rel. Randy Craig Wolfe Trust v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) .............................................................................................11

*Ray v. ESPN, Inc.*,
    783 F.3d 1140 (8th Cir. 2015) .............................................................................................18

TABLE OF AUTHORITIES

Page(s)

*Reddy v. Litton Indus., Inc.*,
   912 F.2d 291 (9th Cir. 1990) ...................................................................................24

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) .................................................................................12

*Ross v. Roberts*,
   222 Cal. App. 4th 677 (2013) ..................................................................................20

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
   143 F. Supp. 3d 1026 (N.D. Cal. 2015) ....................................................................7

*Spinelli v. NFL*,
   903 F.3d 185 (2d Cir. 2018).....................................................................................16

*Stebbins v. Polano*,
   No. 21-cv-4184, 2022 WL 2668371 (N.D. Cal. July 11, 2022) ...............................24

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) .....................................................................................8

*Sutherland v. Francis*,
   No. 12-cv-5110, 2014 WL 879697 (N.D. Cal. Mar. 3, 2014) .................................23

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) .................................................................................22

*UAB "Planner 5D" v. Facebook, Inc.*,
   No. 19-cv-3132, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ....................9, 10, 24

*Vault Corp. v. Quaid Software Ltd.*,
   847 F.2d 255 (5th Cir. 1988) ...................................................................................12

*Warner Bros. Ent. Inc. v. RDR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008)......................................................................12

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................................23

*Zepeda v. PayPal, Inc.*,
   777 F. Supp. 2d 1215 (N.D. Cal. 2011) ...................................................................23

**STATUTES**

15 U.S.C. § 1125 ..............................................................................................................21

17 U.S.C. § 102 ..........................................................................................................17, 18

17 U.S.C. § 103 ................................................................................................................17

TABLE OF AUTHORITIES

Page(s)

17 U.S.C. § 106 ................................................................................................ 11, 12, 17, 18

17 U.S.C. § 301(a) .................................................................................................. 17, 18, 21

17 U.S.C. § 411(a) .................................................................................................................. 9, 14

17 U.S.C. § 1202(b) .................................................................................................. *passim*

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ............................................................. 6, 21

Cal. Civ. Proc. Code § 425.16 .................................................................................... 17

Cal. Civ. Code § 3344 ................................................................................................ 6, 17

## RULES

Fed. R. Civ. P. 8(a) .......................................................................................... 6, 7, 13, 14

Fed. R. Civ. P. 11 .......................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 6

## OTHER AUTHORITIES

William F. Patry, Patry on Copyright (Mar. 2023 update) ................................................ 18

Restatement (Second) of Torts § 652C (1977) ...................................................... 19

Restatement (Third) of Unfair Competition §§ 46, 47 ................................................ 19

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I.      INTRODUCTION

The Complaint in this case concerns cutting-edge technology—content-generation artificial intelligence—but fails for rudimentary legal reasons.  Some of those deficiencies require dismissal of the claims targeted at all of the defendants, which comprise three different businesses.  But with respect to Defendant DeviantArt, in particular, the core legal infirmity that broadly condemns the bulk of the liability alleged is that almost all the conduct Plaintiffs complain of—so far as can be discerned from their opaque allegations—is conduct by other actors.  Even taking Plaintiffs' claims at face value, *DeviantArt* did none of the things that supposedly give rise to the liability asserted.

In August 2022, Defendants Stability AI Ltd. and Stability AI, Inc. (together, "Stability AI") allegedly released a new open-source artificial-intelligence ("AI") image-generation software program called Stable Diffusion.  According to Plaintiffs, Stability AI created Stable Diffusion by "training" it on billions of artworks "scraped" from the web.  ECF No. 1 ("Compl.") ¶ 25.  As a result of those efforts, Stable Diffusion can "produce[] images in response to text prompts." *Id.* ¶ 52.  Defendant Midjourney, Inc. ("Midjourney") also allegedly trained an AI content-generation program on images scraped from the web.  *Id.* ¶ 149.  That core conduct—using pre-existing content to create novel AI technology—presents a number of legal questions that have been the subject of law review articles, conference panels, and news reports in recent months.

It is not, however, anything that *DeviantArt* is even alleged to have done.  According to the Complaint, DeviantArt's role in the events that have brought us here has been solely to (1) operate a website where artists can post their own creations; (2) unknowingly serve as the source of images that were scraped and used, without DeviantArt's consent, to train Stable Diffusion; and (3) months after Stability AI released Stable Diffusion under a permissive open-source license, create a service allowing DeviantArt's users to access Stable Diffusion to create their own AI-generated artworks.  All the conduct described in the Complaint about scraping the internet for content to train AI programs is conduct that, according to Plaintiffs, predated by a matter of months or years anything DeviantArt did that pertains to the claims asserted.

Plaintiffs nevertheless indiscriminately bring half a dozen causes of action against not just Stability AI and Midjourney, but DeviantArt as well.  Most should be dismissed as to DeviantArt

for the straightforward reason that, on Plaintiffs' telling, DeviantArt is not the one who did the things that supposedly yield liability.  Nor do Plaintiffs allege any facts to suggest that DeviantArt was some kind of co-conspirator at any of the relevant times.

As for the few claims that arguably target DeviantArt's own alleged conduct, they too fail as a matter of law.  For example, the Complaint seems to assert a species of copyright infringement claim against DeviantArt on the theory that *every* output image generated by Stable Diffusion is automatically an infringing "derivative work," because it is, in the plain-English sense, "derived" from the works that Stability AI allegedly used to train Stable Diffusion.  That is so, according to the Complaint, even though *no* output is likely to be a "close match" for any particular training image. *Id.* ¶ 93.  This legal theory is foreclosed by prevailing doctrine concerning what constitutes a "derivative work" in the copyright-law sense of the term.  The Ninth Circuit has held that to qualify as a "derivative work" under the Copyright Act, a follow-on creation must be *substantially similar* to the original, heavily borrowing its copyrightable elements—a materially more stringent standard than simply being "based on" something that came before.  Here, Plaintiffs have affirmatively alleged that the images Stable Diffusion creates *do not* meet that standard.

The remaining claims are equally flawed.  Plaintiffs' claim for vicarious copyright infringement fails several times over:  first because Plaintiffs do not plausibly allege any direct infringement for which DeviantArt could be held secondarily liable—instead vaguely gesturing at unidentified users who allegedly produced works that, by mimicking the Plaintiffs' (unprotectable) "artistic styles," can apparently "pass as [Plaintiffs'] original works," *id.* ¶ 171; and, second, because Plaintiffs do not allege facts satisfying any of the elements for holding DeviantArt vicariously liable for an act of direct infringement, even if such an act had been properly alleged (which it has not).  Plaintiffs also plead themselves out of court on their Digital Millennium Copyright Act ("DMCA") claim by alleging almost no concrete supporting facts, and by affirmatively averring that the outputs of Defendants' services do not reproduce identical or near-identical copies of Plaintiffs' works.  Plaintiffs' right-of-publicity claims fail for three independent reasons:  first because they are preempted under the Copyright Act; second for failing to plausibly allege a prima facie case under California law; and third because they are barred by the First

Amendment.  Their skeletal unfair-competition claim is also preempted, and fails on the merits in any event.  Finally, Plaintiffs' sole claim against DeviantArt uniquely—for breach of contract—is factually and logically incoherent.  The only ostensible breaches Plaintiffs claim were alleged breaches by *Stability AI* (as a user of DeviantArt's website) of what Plaintiffs claim are its obligations *to* DeviantArt, not by DeviantArt of any supposed obligation to Plaintiffs.

The Court should dismiss Plaintiffs' entire Complaint against DeviantArt.  DeviantArt respectfully seeks dismissal with prejudice, because any non-futile effort to amend would require pleading the exact opposite of facts that Plaintiffs have alleged to date, or other facts that Plaintiffs have no good faith basis to assert.

## II.   FACTS ALLEGED

Defendant DeviantArt is an online community for digital artists, where those artists can post and share their art.  *See* Compl. ¶¶ 62, 114.  Founded in 2000, it hosts millions of its users' images on its website.  *Id.* ¶¶ 111–14.  Although Plaintiffs' factual allegations about the conduct giving rise to their claims date back to 2015, Plaintiffs do not allege any relevant act by DeviantArt until at least November 2022.  *See id.* ¶¶ 35, 67.

### A.   Nonparty Researchers Develop "Diffusion" Technology

Starting in 2015, computer science researchers—with no alleged relationship to DeviantArt—developed and refined "diffusion" technology.  *Id.* ¶ 67.  That technology can allegedly be "trained" to reconstruct images it has previously encountered, including in response to "Text Prompts" entered by users.  *Id.* ¶¶ 66–92.  According to the Complaint, a diffusion model "*can produce* a copy of any of its Training Images," and so "can be considered an *alternative* way of storing a copy of those images."  *Id.* ¶ 75(c) (emphasis added).

However, Plaintiffs also admit that "none of the [diffusion] output images provided in response to a particular Text Prompt is likely to be a close match for any specific image in the training data."  *Id.* ¶ 93.  Because such outputs integrate "multiple latent images[,] . . . the resulting hybrid image will not look exactly like any of the Training Images."  *Id.*  Indeed, Plaintiffs allege that, based on a comparison of the visual images alone, the outputs of a diffusion model will be unrecognizable even to the creators of the works on which the model was trained.  *See id.* ¶¶ 192–

1    93 (alleging that, without copyright management information, creators of training images cannot

2    "know[] or learn[] that the Output is based upon one or more of their works").

3         **B.**       **Stability AI, With Another Nonparty's Assistance, Creates Stable Diffusion**

4          According to Plaintiffs, at some point before August 2021, a third-party German nonprofit

5    called the "Large-Scale Artificial Intelligence Open Network," or LAION—which is not alleged

6    to have any connection to DeviantArt—"copied and scraped" millions of images from the internet.

7    *Id.* ¶¶ 101–03.  It then made available to the public a 400-million-image dataset, for use in training

8    content-generation AI models.  *Id.*

9          Sometime before August 2022, Stability AI allegedly paid LAION to create a new dataset

10    of 5.85 billion images (and another subset "containing the images rated most highly for beauty and

11    visual appeal") for use in training its own content-generation AI model.  *Id.* ¶¶ 104–07.  And, while

12    Plaintiffs allege that DeviantArt images were among the content LAION scraped from the web,

13    *see id.* ¶¶ 109–10, Plaintiffs do not allege that DeviantArt was aware of, let alone consented to,

14    that scraping.  Indeed, they claim that LAION scraped images "*without the consent* of . . . website

15    operators" like DeviantArt, and allege that such scraping violated DeviantArt's Terms of Service

16    ("ToS").  *Id.* ¶¶ 103, 124–25 (emphasis added).[2]

17          At some point between the creation of the LAION datasets and August 2022, Stability AI

18    allegedly used those datasets to train a text-to-image content-generation AI model, called "Stable

19    Diffusion."  *Id.* ¶ 105.[3]  In August 2022, Stability allegedly released Stable Diffusion to the public

20    on an open-source basis.  *Id.* ¶¶ 52–53.  And Stable Diffusion was "rapid[ly] adopt[ed]" by

21    programmers shortly after its release.  *Id.* ¶ 54.  Plaintiffs do not allege that DeviantArt had any

22    knowledge or willing involvement in any of the preceding development efforts, nor do they allege

23

24

25    [2]  If Plaintiffs try, in their opposition to this motion or in any amended complaint, to change their

26    story and allege that DeviantArt played any role in LAION's (or Stability's) alleged scraping activity, which it did not, DeviantArt reserves its right to begin the Rule 11 process and pursue

27    sanctions to the fullest possible extent.

28    [3]  DeviantArt understands that in reality, the Complaint's allegations about this process are wildly inaccurate—but for this motion's purposes, those false allegations make no difference because even assuming their truth, DeviantArt had nothing to do with them.

1   any relevant conduct by DeviantArt that occurred during this time period.[4]

2       **C.    DeviantArt Releases DreamUp**

3           Sometime before November 2022, DeviantArt relied on Stable Diffusion's "permissive

4   open-source license" to use its "software and . . . associated machine-learning models" to create a

5   web service allowing its users to access Stability's product in order to create AI-generated content.

6   *Id.* ¶¶ 53–54, 64.  According to the Complaint, DeviantArt entered the picture publicly when, in

7   November 2022, it released that service, called DreamUp, to its user community.  *Id.*  Plaintiffs

8   allege that DreamUp "relies on Stability [AI]'s Stable Diffusion" to produce images in response

9   to text prompts submitted by users.  *Id.* ¶¶ 35, 55.  Plaintiffs do not claim that DeviantArt "trained"

10  DreamUp on any existing images; instead, they allege that DreamUp merely "provide[s] a user

11  interface and *access to* a trained version of Stable Diffusion."  *Id.* ¶¶ 33, 64 (emphasis added).

12          Shortly after DreamUp's release, DeviantArt's management hosted a "group audio

13  session" where they responded to artists' concerns about AI content generation generally, and

14  DreamUp specifically.  *Id.* ¶¶ 128–29.  Plaintiffs allege that around this time, DeviantArt updated

15  its ToS to respond to developments in the AI space in general, and concerning Stable Diffusion in

16  particular.  *Id.* ¶ 130.  First, DeviantArt clarified its prior policy under which it included "meta

17  tag[s]" in all user-posted content forbidding use of that content to "train an [AI] system" unless

18  the posting artist consents to such use.  *See id.*; Compl. Ex. 17 ("ToS") at 23.  Second, except for

19  where users override that default by "actively giv[ing] their] consent," DeviantArt made clear that

20  it prohibited using such content to train any AI program.  ToS at 23.  Even so, DeviantArt "ma[de]

21  no guarantees that it [would] pursue each unauthorized use of" its website.  *Id.* at 24.  And it made

22  clear why it adopted these measures:  "DeviantArt is a community of creators that invests

23  significant time and resources to protect its users and foster a cooperative and collaborative

24  environment."  *Id.* at 23.  DeviantArt "encourage[d] adoption of these directives across other

25  creative platforms, so that creators are able to share their artistic creations with online audiences

---

[4] Plaintiffs also allege that Midjourney—another party that, according to the Complaint, has no
relation to DeviantArt—created, trained, and released its own "AI-based image generator."
Compl. ¶¶ 132–34.  Plaintiffs allege that Midjourney's product relies on Stable Diffusion to
function, and also that Midjourney has independently "used the LAION image datasets for
training" its product.  *Id.* ¶¶ 134, 149.

without fear of losing control of their own works." *Id.*[5]

**D.    Plaintiffs File This Lawsuit Against Stability AI, Midjourney, and DeviantArt**

Months later, Plaintiffs Sarah Andersen, Kelly McKernan, and Karla Ortiz—each of whom claims to have "popularized" an "artistic style" that is now "recognizable to the public," Compl. ¶¶ 204–05—filed this lawsuit against Stability AI, Midjourney, and DeviantArt.  Their Complaint, brought on behalf of themselves and a vaguely defined putative nationwide class, largely glosses over which Defendant allegedly did what, requiring a close reading to parse the preceding chronology.  The legal claims are in many respects just as opaque as these factual allegations.  But they largely boil down to the notion that the creation and, in more limited respects, deployment of Stable Diffusion (as well as any other products that rely on it to generate content) yield civil liability on more than half a dozen legal theories:  (1) direct copyright infringement; (2) vicarious copyright infringement; (3) violation of the DMCA; (4) violation of California's statutory and common law rights of publicity; (5) unfair competition under California law and the Lanham Act; and (6) breach of contract.  *Id.* ¶¶ 153–236.[6]

## III.    LEGAL STANDARD

To satisfy Rule 8 and survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  Those "[f]actual allegations must be enough to raise a right to relief above the speculative level" and "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted factual deductions.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  When a plaintiff raises generalized allegations against

---

[5] DeviantArt's Terms of Service also prohibit users from monetizing DreamUp or its outputs. ToS at 2 (defining the "Service" as "all elements, software, programs and code forming or incorporated in to www.DeviantArt.com"), 8 (prohibiting use of "the Service" for "any commercial purpose").

[6] Plaintiffs also request a declaratory judgment that "Defendants violated the Copyright Act, DMCA Section 1202, Cal. Civ. Code § 3344, and Cal. Civ. Code § 17200."  Compl. ¶ 239.

1  multiple defendants, the complaint has not "stated sufficient facts to state a claim for relief that is

2  plausible against *one* [d]efendant." *In re iPhone App. Litig.*, No. 11-md-22590, 2011 WL

3  4403963, at *3 (N.D. Cal. Sept. 20, 2011) (emphasis in original).

4  **IV.   ARGUMENT**

5      **A.   Plaintiffs' Undifferentiated Allegations Violate Rule 8(a)(2)**

6      The Complaint should be dismissed in the first place for impermissibly seeking to impose

7  liability on DeviantArt by vaguely attributing to all "Defendants" conduct that Plaintiffs admit

8  DeviantArt had nothing to do with.  "[A] complaint which lumps together multiple defendants in

9  one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)." *Sebastian Brown*

10 *Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (cleaned up).  Such

11 "shotgun pleading" fails to give defendants fair notice of the factual and legal bases of the claims

12 against each of them, and therefore merits dismissal under Rule 8(a)(2)'s requirement of a "short

13 and plain statement." *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) (affirming

14 dismissal of entire complaint that made "everyone did everything allegations"); *see also Karkanen*

15 *v. California*, No. 17-cv-6967, 2018 WL 3820916, at *7 (N.D. Cal. Aug. 10, 2018) ("Courts

16 consistently conclude that a complaint which lump[s] together multiple defendants in one broad

17 allegation fails to satisfy the notice requirement of Rule 8(a)(2)." (cleaned up) (collecting cases)).

18     Here, for all but the breach of contract claim (which Plaintiffs bring only against

19 DeviantArt, and which fails for several other reasons discussed below), the Complaint does not

20 "allege what role each defendant played in the alleged harm," making it "exceedingly difficult, if

21 not impossible, for [DeviantArt] to respond to Plaintiffs' allegations." *In re iPhone App. Litig.*,

22 2011 WL 4403963, at *8.  Even worse, the Complaint uses this generalized, undifferentiated

23 pleading technique repeatedly to vaguely associate DeviantArt with conduct that it elsewhere

24 makes clear was carried out by *other* Defendants.

25     For example, on Plaintiffs' telling, it was non-party LAION, allegedly in part at Stability

26 AI's request—but not DeviantArt or LAION at DeviantArt's request—that allegedly scraped

27 images from the internet and compiled datasets for training purposes.  And, according to the

28 Complaint, it was Stability AI (and Stability AI alone) who then trained Stable Diffusion using

these images.  Nowhere do Plaintiffs allege that DeviantArt compiled any images or used them to train any program.  *See* Compl. at 22 (alleging LAION was "[t]he source of the Stable Diffusion training data"); *id.* ¶ 103–04 (LAION "scraped or copied" billions of images from the web). Elsewhere, the Complaint suggests that LAION scraped the training images *from* DeviantArt without DeviantArt's consent, knowledge, or participation.  *See id.* ¶¶ 63, 103.  But inexplicably, the Complaint then turns around and, in claiming direct copyright infringement, accuses *all* "Defendants" of "download[ing], stor[ing], or distribut[ing] copies of the Works for use in training or otherwise creating AI Image Products."  *Id.* ¶ 157.  In other words, while the Complaint's factual allegations suggest that each Defendant played a distinct and separate role in the challenged conduct (or none at all), the *legal claims* conspicuously neglect to differentiate between them, instead using only the vague and conclusory label "Defendants."  *See id.* ¶¶ 153–226.

Plaintiffs' DMCA claim offers another egregious example of Plaintiffs' blunderbuss pleading strategy.  The Complaint alleges that "Defendants" removed or altered copyright management information ("CMI") from their works, distributed works knowing that CMI had been removed or altered, and distributed CMI knowing it had been altered.  *Id.* ¶¶ 180–200.  But it says nothing about when that CMI was allegedly removed or altered, who did so, and how they did it. For example, it does not explain whether this happened when the training images were allegedly scraped, when Stability AI allegedly used the images to train Stable Diffusion, or when a service like DreamUp produces an output image.  Of course, if the scraping or training process removed or altered CMI, then DeviantArt, by Plaintiffs' own allegations, would have had nothing to do with it, *see id.* ¶¶ 101–10—and would not even have known about such removal or alteration, much less intended it.  *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) (recognizing strict scienter requirements under Section 1202(b) of the DMCA).

The same is true of Plaintiffs' other claims.  Plaintiffs' refusal to differentiate between Defendants in the causes of action they assert is a barely disguised attempt to blur the Defendants' respective roles in the conduct at the core of Plaintiffs' complaint.  This gambit requires dismissal. *See, e.g.*, *Destfino*, 630 F.3d at 958–59.

**B.      Plaintiffs' Claims Against DeviantArt All Fail On The Merits**

Beyond Plaintiffs' impermissible attempt to impose liability against all Defendants in gross, each of Plaintiffs' claims against DeviantArt also individually fails to state a plausible claim on the merits.

**1.      Plaintiffs' Claim For Direct Copyright Infringement Fails**

**a.      Plaintiffs Fail To Allege Registration Of Their Copyrights**

First, Plaintiffs have failed to satisfy the Copyright Act's basic prerequisite to filing an infringement lawsuit: registration.  Generally, plaintiffs must register their copyrights before they can "institute" a lawsuit alleging infringement of them.  17 U.S.C. § 411(a) (precluding copyright-infringement suit "until preregistration or registration of the copyright claim has been made in accordance with this title"); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887–88 (2019) (affirming dismissal on these grounds).  And because Section 411(a) requires registration before *"*institut[ing]" a copyright infringement action, "[a] plaintiff cannot cure its failure to meet the preconditions set forth in [that statute] by amending its pending complaint." *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-3132, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019); *see also Kifle v. YouTube LLC*, No. 21-cv-1752 , 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021) (refusing amendment where plaintiff "registered [a work] after filing suit but before filing" an amended pleading).

Here, there are *no* allegations that two Plaintiffs—Ms. Ortiz and Mx. McKernan—registered any works before suing.  Their claims must therefore be dismissed.  *See Fourth Est.*, 139 S. Ct. at 887.  And even for Ms. Anderson, the Complaint only alleges she registered "sixteen *collections* that *include* Works used as Training Images."  Compl. ¶ 28 (emphasis added).  It does not identify which "Works" from those collections Defendants supposedly infringed, or even claim that Ms. Anderson ever registered *those* "Works."  This falls far short of plausibly alleging that any (let alone each) of these works meets Section 411(a)'s registration requirement.  *See, e.g.*, *Bespaq Corp. v. Haoshen Trading Co.*, No. 04-cv-3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005) (dismissing copyright claim under Section 411(a) because complaint "d[id] not identify which preexisting works in the registered catalog have been infringed by the defendants").  Even

if that tactic sufficed, all Plaintiffs' other copyright claims—aside from those relating to the unspecified "Works" within those sixteen collections—would still have to be dismissed. *See Kifle*, 2021 WL 1530942, at *6; *UAB "Planner 5D"*, 2019 WL 6219223, at *7.

### b.    Plaintiffs' Direct Infringement Claim Against DeviantArt Fails

If Plaintiffs had registered the works at issue, their claim of direct copyright infringement against DeviantArt would *still* fail as alleged. Plaintiffs' allegations are vague (as discussed above), but they appear to comprise three distinct theories of infringement. None states a claim as matter of law as to DeviantArt.

*First*, Plaintiffs claim that "Defendants" violated their copyright rights by scraping and copying their works to train Stable Diffusion. *See* Compl. ¶¶ 57, 155. Indeed, that is the *sole* subject of their class allegations of direct copyright infringement. *See id.* ¶ 44(i). But even if that allegation were true, and even if that alleged scraping were copyright infringement, the Complaint does not allege that DeviantArt had anything to do with it. To the contrary, the Complaint alleges that Stability AI trained Stable Diffusion on the LAION databases, which were created by scraping images *from* DeviantArt's website without DeviantArt's consent. *Id.* ¶ 103 (emphasis added); *see id.* ¶¶ 101–10. It does not allege that DeviantArt scraped any works, trained Stable Diffusion on those works, or otherwise participated in any of the conduct relating to the copying of works used to create and train Stable Diffusion. According to the Complaint, all DeviantArt did was provide a service that allows users to *access* Stable Diffusion's core functionality, *i.e.* to create AI-generated artwork. *Id.* ¶ 35. Plaintiffs therefore fail to state a claim against DeviantArt on this "input" theory of direct copyright infringement.

*Second*, Plaintiffs elsewhere seem to suggest that DeviantArt is liable for direct copyright infringement merely for building a tool that leverages Stable Diffusion's technology. But the Complaint admits that DeviantArt did not create or train Stable Diffusion. *Id.* ¶¶ 33, 64–65, 120. And it does not allege that DeviantArt, in creating DreamUp, did anything more than allow its users to *access* the engine Stability AI created; it does not, for example, claim that DeviantArt itself made copies of any of Plaintiffs' copyrighted works when creating DreamUp (or otherwise infringed any of Plaintiffs' exclusive rights). *See id.* As a result, the Complaint fails to provide a

factual basis for claiming that DeviantArt violated any of the rights protected by Section 106 of the Copyright Act simply by providing a service that allowed users to access Stable Diffusion's technology.  *See* 17 U.S.C. § 106(1)–(6) (granting copyright holders certain exclusive rights to, among other things, reproduce, prepare derivative works based on, and distribute copies).

*Third*, the Complaint also seems to claim that the images *users* create using DreamUp infringe Plaintiffs' copyrights.  *See* Compl. ¶¶ 4–5.  This theory fails because Plaintiffs have not identified a single actual output image that allegedly infringes any of their copyrighted works; to the contrary, Plaintiffs affirmatively aver that DreamUp's output images will not be recognizable as copies of Plaintiffs' works—much less "substantially similar" to them, Compl. ¶¶ 93, 192–93.

"[O]nly substantial similarity in protectable expression may constitute actionable copying that results in infringement liability."  *Skidmore ex rel. Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).  Plaintiffs do not identify a single output image that has allegedly infringed any one of their copyrighted works, precluding any claim of substantial similarity that could result in copyright liability.  *See, e.g.*, *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing claim for copyright infringement where complaint "ma[d]e only general allegations" that allegedly infringing works were "derived from and substantially similar to" plaintiffs' works, without even identifying "representative acts of infringement"); *Fuzzy Logic Prods., Inc. v. Trapflix, LLC*, No. 15-cv-6203, 2015 WL 12791508, at *4 (C.D. Cal. Nov. 20, 2015) (dismissing copyright claim where complaint was "devoid of any comparisons of protectable elements"); *see also Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (affirming dismissal where plaintiff's complaint failed to identify specific works by defendants that infringed on plaintiff's copyright); *Flava Works, Inc. v. Clavio*, No. 11-cv-5100, 2012 WL 2459146, at *2–3 (N.D. Ill. June 27, 2012) (dismissing in similar circumstances).

That is no surprise because, again, Plaintiffs proactively allege that the output images DreamUp produces *will not* be substantially similar to any images Stability AI used to train Stable Diffusion:  "*None* of the Stable Diffusion output images provided in response to a particular text prompt is likely to be a close match for any specific image in the training data."  Compl. ¶ 93

DEVIANTART'S MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1   (emphasis added).  Indeed, beyond alleging that DreamUp is unlikely to produce a "close match"

2   for any copyrighted images—which is itself enough to doom any claim of "substantial

3   similarity"—the Complaint also claims that DreamUp's outputs will be *so dissimilar* from the

4   inputs so as to be unrecognizable even to the artists who created the allegedly infringed works.

5   *See id.* ¶¶ 192–93 (plaintiffs cannot "know[] or "learn" that any given output "is based on one or

6   more of the[ir] Works" without CMI attached to those images).  This dooms Plaintiffs' claim for

7   any output-based theory of direct infringement.  *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111,

8   1121 (9th Cir. 2018) (affirming dismissal with prejudice of copyright infringement claim because

9   the "works at issue here are as a matter of law not substantially similar").

10      Perhaps recognizing this core problem, Plaintiffs seem to advance a theory that *any* output

11   of a product like DreamUp is necessarily "derivative," and thus infringing under Section 106(2),

12   because it is in some sense "based on" Stability AI's training images.  *See id.* ¶¶ 90, 95.  But the

13   Ninth Circuit has held that to qualify as a "derivative work" under the Copyright Act, a follow-on

14   creation must be *substantially similar* to the original, not simply "based on" it.  *See Litchfield v.*

15   *Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).  Responding to the "novel" argument that

16   Section 106(2) covers "any work *based on* a copyrighted work," the circuit rejected it as

17   "frivolous," confirming that "to prove infringement, one must show substantial similarity."  *Id.*

18   (emphasis added); *see also Mulcahy v. Cheetah Learning, LLC*, 386 F.3d 849, 853 (8th Cir. 2004)

19   (adopting the rule in *Litchfield*); *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 267 (5th Cir.

20   1988) (same); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 538 (S.D.N.Y. 2008)

21   ("A work is not derivative . . . simply because it is 'based upon' the preexisting works.").  Under

22   settled law, a "derivative work" must copy protected elements of the original, not just be "based

23   on" it.  The Court should reject Plaintiffs' "frivolous" effort to the contrary.

24      **2.      Plaintiffs' Claim For Vicarious Copyright Infringement Fails**

25      Plaintiffs' claim for vicarious copyright infringement should also be dismissed.  *See*

26   Compl. ¶¶ 169–77.  First, "[t]o establish secondary infringement" of any kind, plaintiffs "must

27   first demonstrate direct infringement" by another.  *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629

28   F.3d 928, 937 (9th Cir. 2010).  Then, "[t]o state a claim for vicarious copyright infringement" in

particular, "a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Plaintiffs attempt to support their claim by alleging that certain "Individuals have used AI Image Products" (though they do not say which ones) "to create works" (though they do not identify any such works) that *can* "pass as original works by [an] artist," and that some (unspecified) individuals have sold those unspecified "Fakes" online. Compl. ¶¶ 171–73. They then claim that the (again, unspecified) "Defendant-owner of the AI Image Product used to create each Fake is vicariously liable for any infringements committed by Imposters." *Id.* ¶ 175. These vague allegations flunk all three core prerequisites for vicarious liability.

*First*, Plaintiffs identify no specific directly infringing work for which DeviantArt could be vicariously liable. Their vicarious infringement claim relies entirely on the allegation that unidentified "Imposters" have used the names of unspecified "artists" in text prompts to produce "Fakes" that "can pass as original works by that artist." *Id.* ¶ 171. But Plaintiffs never identify those "Fakes," or the copyrighted works they purportedly infringe. This alone requires dismissal. *Livingston v. Morgan*, No. 06-cv-2389, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006) ("A complaint for copyright infringement fails to satisfy the requirements of Rule 8(a) if it does not allege the specific copyrighted work that has been infringed or how and when the asserted infringement occurred." (collecting cases)); *see also, e.g.*, *Nat'l Bus. Dev. Servs.*, 299 F. App'x at 512; *Blizzard Ent.*, 149 F. Supp. at 1175; *Flava Works*, 2012 WL 2459146, at *2–3. Moreover, Plaintiffs admit that those "Fakes" are not substantially similar in the copyright-law sense to the artists' "original works," Compl. ¶¶ 93, 192, and, at best, reflect only the "artistic style" of the original artist, *id.* ¶ 204. As explained above, "Fakes" that are not substantially similar to Plaintiffs' works cannot infringe copyrights in those works. *See supra* at 11. And as discussed below, "artistic styles" are unprotectable under the Copyright Act. *See infra* at 17.

*Second*, even if Plaintiffs had plausibly alleged direct infringement, the Complaint does not even try to allege the elements for imputing liability for such infringement to DeviantArt: (1) the right and ability to supervise the infringing conduct; and (2) a direct financial interest in

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   the infringement itself.  *See Visa Int'l Serv. Ass'n*, 494 F.3d at 802.  The Complaint does not even

2   mention these elements, much less allege any facts that satisfy them, and this claim should be

3   dismissed on that ground alone.  *See, e.g.*, *Epikhin v. Game Insight N. Am.*, No. 14-cv-4383, 2015

4   WL 2412357, at *5 (N.D. Cal. May 20, 2015) (plaintiffs "plainly failed" to plausibly allege claim

5   for vicarious copyright infringement where complaint did "[n]ot even recit[e] the elements of

6   vicarious copyright infringement, . . . let alone any facts in support of those allegations").  Even

7   on a strained read, the Complaint does not allege any facts that could be construed as giving

8   DeviantArt the right or ability to monitor, supervise, control, or prevent the so-called "Impostors"

9   from intentionally creating "Fakes."  Nor does the Complaint identify any direct financial interest

10  of DeviantArt in this alleged infringement.  Although Plaintiffs allege that *all* DreamUp users pay

11  a fee, Compl. ¶ 115, they include no allegations that there was a "causal link between the

12  infringement of the plaintiff[s'] own copyrighted works and any profit to [DeviantArt]," *Perfect*

13  *10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017); *see id.* at 674 (requiring plaintiffs to

14  show a direct financial benefit "from the specific infringement alleged").[7]

15              **3.     Plaintiffs' DMCA Claim Fails**

16          Plaintiffs' DMCA claim is particularly hard to parse.  The Complaint does not mention any

17  facts related to this cause of action until the claim for relief, *see* Compl. ¶¶ 178–200, and, even

18  there, Plaintiffs essentially repeat the statutory language and conclude that all defendants (again,

19  with no differentiation) have violated the Act.  But even assuming this claim does not violate Rule

20  8(a)(2), *see supra* at 7, it fails to state a plausible claim for relief.

21          Section 1202 of the DMCA relates to copyright management information, or "CMI."  CMI

22  is defined by the statute to include the "title and other information identifying the work," the name

23  of the work's creator, the name of the work's copyright owners, and the information set out in a

24  notice of copyright.  *See* 17 U.S.C. § 1202(c).  As relevant here, the DMCA prohibits intentionally

25  removing or altering CMI from a work, *see id.* § 1202(b)(1), as well as knowingly distributing

26  removed or altered CMI, *see id.* § 1202(b)(2), or knowingly distributing works or "copies of

27

28

---

[7]  Moreover, for the same reasons given above, Plaintiffs' claim for vicarious copyright infringement should be dismissed for lack of registration.  *See* 17 U.S.C. § 411(a); *supra* at 9.

works" containing removed or altered CMI, *see id.* § 1202(b)(3).

Plaintiffs, in boilerplate allegations tracking the statutory language, claim that their works included certain CMI, *see* Compl. ¶ 180, and that all Defendants violated all three prongs of Section 1202(b) by removing or altering that CMI and then distributing images with altered or removed CMI, knowing that the CMI was removed or altered, *see id.* ¶¶ 184, 189–90. Although the factual basis for these claims is difficult to locate, the Complaint seems to rest on two theories of DMCA liability: One based on the alteration or removal of CMI when images were scraped from the internet and used to train Stable Diffusion—which we will call the "Input CMI Theory." *See id.* ¶ 191. And another based on the outputs of each AI Image Product, which Plaintiffs allege "distribute" images with either altered CMI or with CMI removed—which we will call the "Output CMI Theory." *See id.* ¶¶ 191–93. Both theories fail.

*The Input CMI Theory.* The Input CMI Theory fails because there are no factual allegations in the Complaint about DeviantArt's participation in the underlying conduct. Even if some other party or non-party altered or removed CMI when scraping images from the web or training their products on them, the Complaint does not allege that DeviantArt had anything to do with that conduct—much less that DeviantArt *intentionally* removed or altered any CMI at that point.[8] As discussed above, the scraping and training was allegedly done without DeviantArt's consent.

*The Output CMI Theory.* The Output CMI Theory also fails, for at least two reasons: (1) Plaintiffs provide no plausible factual allegations to support it; and (2) Plaintiffs do not allege that DeviantArt ever distributed identical copies of Plaintiffs' works, as Section 1202(b) requires.

*First*, Plaintiffs' Output CMI Theory lacks any factual support. It does not identify the supposedly distributed works from which Defendants allegedly altered or removed CMI, what the altered or removed CMI was, or which Defendants altered or removed it. This conclusory, generalized pleading does not come close to stating a claim under Section 1202(b). *See, e.g.*, *Free Speech Sys. LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) ("[B]ecause [plaintiff]

---

[8] *See* 17 U.S.C. § 1202(b) (requiring plaintiff to prove that defendant "kn[ew]" that conduct would "induce, enable, facilitate, or conceal an infringement"); *id.* § 1202(b)(1) (imposing liability on the "intentional[] remov[al]" of CMI); *id.* § 1202(b)(2) (imposing liability on distribution or import of removed or altered CMI "knowing that the [CMI] has been removed or altered"); *id.* § 1202(b)(3) (same as to distribution or import of "copies of works").

has merely alleged that his photographs 'were altered to remove certain of [his] [CMI]' without providing any facts to identify which photographs had CMI removed or to describe what the removed or altered CMI was, he has not sufficiently stated a claim under Section 1202(b)(1) with respect to 'removal,' much less with respect to distribution under (b)(2) and (b)(3)."); *Spinelli v. NFL*, 903 F.3d 185, 204 (2d Cir. 2018) (affirming dismissal where complaint "does not actually identify any instance in which CMI was removed or even make clear what specific type of CMI is at issue"); *Mills v. Netflix, Inc.*, No. 19-cv-7618, 2020 WL 548558, at *4 (C.D. Cal. Feb. 3, 2020) (dismissing on similar grounds).

     *Second*, this theory of DMCA liability fails because the Complaint does not allege that DeviantArt distributed identical copies of Plaintiffs' actual "works" with removed or altered CMI. "The DMCA prohibits removing or altering CMI; it does not prohibit merely omitting CMI from an infringing work." *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-1463, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022). As a result, "courts have found that no DMCA violation exists where the works"—*i.e.*, the work from which CMI was allegedly removed or altered and the distributed work—"are not *identical*." *Id.* at *4 (emphasis added) (quoting *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. 20-cv-1931, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020)); *see O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (confirming this rule and dismissing DMCA claim); *Frost-Tsuji-Architects v. Highway Inn, Inc.*, No. 13-cv-496, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015) ("[T]he drawing by [defendant] is not identical to the drawing by [plaintiff], such that this court can say that [defendant] removed or altered [plaintiff's] [CMI] from [the drawing]."), *aff'd*, 700 F. App'x 674 (9th Cir. 2017); *id.* ("[B]asing a drawing on [plaintiff's] work is not sufficient to support a [Section 1202] claim."). In other words, for an output-based DMCA claim, a defendant must distribute *a plaintiff's work* or identical copy with altered or removed CMI—not a work that is merely similar to a plaintiff's work, or, as is alleged here, in the same style as a plaintiff's works. *See Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (reproduction of thumbnails of plaintiffs' images without CMI did not violate DMCA because CMI was not "removed"), *rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003). Otherwise, nearly every act of alleged copyright infringement would also support

1    a DMCA violation.

2          Plaintiffs do not allege that any distributed works containing removed or altered CMI were

3    *identical* to their copyrighted works.  Indeed, as discussed above, they allege just the opposite:

4    that, for any works that DeviantArt distributes, those works will be different, bordering on

5    unrecognizable, from Plaintiffs' own works.  *See* Compl. ¶ 93 (admitting that output images "will

6    not look exactly like any of the Training Images" used to "train it," and that no such outputs are

7    likely to be a "close match" for any training images); *id.* ¶¶ 192–93 (alleging that, without CMI,

8    Plaintiffs "are prevented from knowing or learning that the Output is based upon one or more of

9    their works").  That is fatal.  Courts have rigorously enforced this important limit on DMCA

10   claims, dismissing such claims even where the challenged works were "substantially similar" to

11   the work from which CMI was allegedly removed or altered.  *See, e.g.*, *Kirk Kara*, 2020 WL

12   5991503, at *6 ("[T]he works may be *substantially similar*, [but] Defendant did not make *identical*

13   copies of Plaintiff's works and then remove the engraved CMI").  They have had especially little

14   trouble doing so when, as here, plaintiffs "*concede*[] that the works were modified or altered."

15   *O'Neal*, 583 F. Supp. 3d at 1287.

16              **4.      Plaintiffs' Right-Of-Publicity Claims Fail**

17          The Complaint includes two right-of-publicity claims—one under California Civil Code

18   Section 3344 and another under California common law.  *See* Compl. ¶¶ 201–22.  As explained

19   further in DeviantArt's anti-SLAPP motion under Cal. Civ. Proc. Code Section 425.16 ("Anti-

20   SLAPP Mot."), *see* Anti-SLAPP Mot. at 11–21, both claims should be dismissed, for three

21   reasons: (1) the claims are preempted by the Copyright Act; (2) Plaintiffs fail to plead a prima

22   facie right-of-publicity claim; and (3) in any event, their claims are barred by the First Amendment.

23          *Copyright Act Preemption.*  Plaintiffs' right-of-publicity claims are preempted by Section

24   301 of the Copyright Act.  The Copyright Act preempts state law claims that "come within the

25   subject matter of copyright as specified by [17 U.S.C. §§ 102, 103]" and assert "rights that are

26   equivalent to any of the exclusive rights within the general scope of copyright as specified by [17

27   U.S.C § 106]."  17 U.S.C. § 301(a).

28          *First*, Plaintiffs' claims are within the subject matter of copyright.  At their core, these

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    claims attempt to monopolize the "artistic styles" embodied in fixed visual works they posted on

2    the internet.  Although "copyright does not protect styles," *McDonald v. West*, 138 F. Supp. 3d

3    448, 455 (S.D.N.Y. 2015), copyright *preemption* sweeps more broadly than copyright *protection*,

4    "prevent[ing] states from giving special protection to subject matter that Congress," through

5    Section 102(b), "has decided should be in the public domain," *ProCD, Inc. v. Zeidenberg*, 86 F.3d

6    1447, 1453 (7th Cir. 1996) (Easterbrook, J.).  It is thus well-established that "ideas"—which are

7    specifically excluded from copyright protection by Section 102(b)—fall within the "subject matter

8    of copyright" for preemption purposes.  *See, e.g.*, *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d

9    1150, 1159 (C.D. Cal. 2001).  And because "artistic styles" are just the kind of "ideas" that

10   Congress specifically decided to exclude from the universe of copyright protection, they, too, are

11   within copyright's subject matter for preemption purposes.  *See* 17 U.S.C. § 102(b); *Jewelry 10,*

12   *Inc. v. Elegance Trading Co.*, No. 88-cv-1320, 1991 WL 144151, at *4 (S.D.N.Y. July 20, 1991)

13   ("style[s]" are "ideas" and therefore unprotectable); *McDonald*, 138 F. Supp. 3d at 455 ("copyright

14   does not protect styles" "[f]or the same reason" copyright "does not protect ideas").[9]

15        *Second*, Plaintiffs' right-of-publicity claims assert rights that "are equivalent" to the rights

16   "within the general scope of copyright" because they effectively assert a novel species of

17   copyright's derivative-work right.  17 U.S.C. § 106(2); *Laws v. Sony Music Ent.*, 448 F.3d 1134,

18   1143–45 (9th Cir. 2006).  Embracing their theory would allow publicity-rights holders to prevent

19   *any* member of the public from deriving a "style" from a published artistic work and reproducing

20   it in new visual works.  While that right would sweep far beyond the derivative-work right granted

21   in the Copyright Act, *see supra* at 11, it would be functionally equivalent to the derivative-work

22   right for preemption purposes.  *See Laws*, 448 F.3d at 1143–45; 6 William F. Patry, Patry on

23   Copyright § 18:16 ("The state right may be narrower, broader, or contain somewhat different

24   elements, yet it will still be preempted if its essence is the same as the federal right.").[10]

---

[9] To the extent that artistic "styles" were part of artists' copyrightable expression, the case for
preemption would be stronger still: we would then have a state law claim effectively reprising the
exclusive rights granted by federal copyright law, which is flatly impermissible under Section 301.

[10] Plaintiffs cannot survive preemption by reframing their claims through the lens of name
appropriation, *see, e.g.*, Compl. ¶ 203, because the "crux" of each claim is an attempt to
monopolize an unprotectable style.  *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142–43 (8th Cir. 2015)
(name-appropriation claim preempted); *see also* Anti-SLAPP Mot. at 14 & n.11 (citing cases).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1  *Failure to Plead Prima Facie Claim*.  The Complaint fails to allege a prima facie violation

2  of Plaintiffs' publicity rights.   Those rights protect against unauthorized uses of names or

3  likenesses "for purposes of trade," thus barring the use of a name or likeness to "advertis[e] []

4  goods or services" or the "place[ment]" of one's name or likeness "on merchandise."  Restatement

5  (Third) of Unfair Competition §§ 46, 47; *see also id.* § 47, cmt. c (1995) (right-of-publicity claim

6  covers use of persona to "attract attention" to product).   The right does *not*, however, prohibit

7  "[t]he use of [a person's] identity primarily for the purpose of communicating information or

8  expressing ideas."  *Id.* § 47, cmt. c; *see also* Restatement (Second) of Torts § 652C, cmt. d (1977)

9  ("The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it

10 in connection with legitimate mention of his public activities.").

11 Plaintiffs' publicity-rights claims challenge DreamUp's ability to (1) understand references

12 to Plaintiffs' names in users' text prompts, (2) use those references to identify (unprotectable)

13 visual elements in the works Plaintiffs posted online, and (3) replicate those (unprotectable) style

14 elements in visual outputs.  Compl. ¶ 171.[11]  That is not a use of a persona by DeviantArt to "attract

15 attention" or "for purposes of trade."  Restatement (Third) of Unfair Competition §§ 46, 47 &

16 cmt. c.  Rather, to the extent users have used Plaintiffs' names in DreamUp prompts (and the

17 Complaint provides no specific allegations to suggest they have), they used those names "primarily

18 for the purpose of communicating information or expressing ideas"—that is, as a reference to the

19 Plaintiffs' (unprotectable) artistic styles—which is "not generally actionable as a violation of the

20 person's right of publicity."  *Id.* § 47 cmt. c.

21 Plaintiffs' publicity-rights claims also fail for the independent reason that the Complaint

22 does not allege that *DeviantArt*—as opposed to its users—has used Plaintiffs' names or likenesses.

23 "[B]oth the statutory and common law versions of a right of publicity claim require that the

24 defendant *actually use* the plaintiff's likenesses."  *Perfect 10, Inc. v. Google, Inc.*, No. 04-cv-9484,

25 2010 WL 9479060, at *13 (C.D. Cal., July 30, 2010) (citation omitted) (emphasis added).  Here,

26

---

27 [11] Plaintiffs claim "Defendants" used "Plaintiffs' names and identities" on "apps, website[s], and social media posts," and that "Defendants used Plaintiffs' names to advertise art," Compl. ¶¶ 205,
28 219, but plead no "specific facts" to back up these "conclusory allegations," which is obviously insufficient, *Paulson v. Carter*, 230 F. App'x 645, 645 (9th Cir. 2007).

1  however, the Complaint's only well-pleaded allegation of "use" is that DeviantArt's *users*—whom

2  the Complaint refers to as "Imposters"—have "used [DreamUp] to create works using the names

3  of Plaintiffs . . . in prompts."  Compl. ¶ 171.  But "'[c]ontributing' to someone's violation of [a

4  publicity right] is not the same as actually 'violating' it."  *Google, Inc.*, 2010 WL 9479060, at *13

5  (rejecting publicity rights claim for failure to establish use by defendant).[12]  These claims fail for

6  that reason alone.

7        *Transformative Use.*  Even if otherwise viable, Plaintiffs' right-of-publicity claims would

8  be barred by the First Amendment's "transformative use" test, which "balance[s]" the right of

9  publicity against the "First Amendment right of free expression" by asking whether defendants

10  merely used the plaintiff's likeness as "one of the 'raw materials' from which an original work is

11  synthesized."  *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 57–58 (2006).

12        Here, Plaintiffs' right-of-publicity claims all focus on the use of their "artistic styles" in

13  DreamUp outputs.  But Plaintiffs admit that DreamUp outputs are not visually identical to the

14  originals, or even close to it.  *See* Compl. ¶¶ 93, 192–93; *Kirby*, 144 Cal. App. 4th at 59 (visually

15  comparing plaintiffs' likeness to defendant's work to determine transformativeness).  Plaintiffs

16  also admit that the outputs reflect data gleaned from the "billions of [other] images" used to train

17  Stable Diffusion, *see* Compl. ¶ 179, along with the ideas, messages, or concepts in users' text

18  prompts, *see id.* ¶ 91; *see also Kirby*, 144 Cal. App. 4th at 59 (work transformative because it

19  "contained significant expressive content beyond the [plaintiffs]' mere likenesses").  Plaintiffs'

20  works, to the extent they were used in training at all, represent only a tiny sliver of the "over five

21  billion images" that were allegedly used to train Stable Diffusion.  Compl. ¶ 57.  As a result, any

22  trace of Plaintiffs' "styles" used in DreamUp outputs is clearly "transformed" into "something

23  new, with a further purpose or different character."  *Comedy III Prods., Inc. v. Gary Saderup, Inc.*,

24  25 Cal. 4th 387, 404 (2001) (citation omitted).  And even if Plaintiffs could allege that DeviantArt

25  used their names, *but see supra* 19, any use of those names to create DreamUp outputs would be

26  transformative under the same logic, *see Ross v. Roberts*, 222 Cal. App. 4th 677, 687–88 (2013)

27

28

---

[12] *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418, 2021 WL 3621837, at *3 (N.D. Cal. Aug. 16, 2021) (citing cases dismissing publicity claims based on use of names or likenesses by "third parties . . . on the defendant's websites").

1    (rapper's use of the "name and certain details of an infamous [cocaine dealer]'s criminal life" to

2    create "celebrity identity . . . of a cocaine kingpin turned rapper" was transformative because rapper

3    "clearly added new expression").  The claims are thus barred by the First Amendment.

4        **5.    Plaintiffs' Unfair Competition Law Claim Fails**

5        Plaintiffs assert an "unfair competition" claim under (1) 15 U.S.C. § 1125 (the Lanham

6    Act), (2) Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and (3) the common law, *see* Compl.

7    ¶¶ 223–26, cursorily alleging "unlawful business practices," consisting of the alleged

8    (a) "[i]nfringement of Plaintiffs' . . . copyrights" and (b) "[v]iolations of Plaintiffs' . . . rights

9    under the DMCA," *id.* ¶ 224.  Each iteration of this claim fails.

10        *First*, to the extent Plaintiffs' unfair-competition claim rests on the Lanham Act, it fails

11    because Plaintiffs have not even tried to plead a Lanham Act violation.  "To state a claim under

12    the Lanham Act, a plaintiff must allege a likelihood of confusion."  *Carter v. Oath Holdings Inc.*,

13    No. 17-cv-7086, 2018 WL 5819458, at *5 (N.D. Cal. Nov. 5, 2018).  Plaintiffs do not satisfy this

14    minimum requirement.  In fact, the Complaint contains only two passing references to the Lanham

15    Act and is devoid of any factual allegations of "confusion" or "false designation of origin" required

16    to plead such a claim.  *See* 15 U.S.C. § 1125.

17        *Second*, Plaintiffs' statutory UCL claim fails because it does not plausibly allege any

18    predicate violations that could support such a claim.  A claim brought under the UCL's "unlawful"

19    prong—as Plaintiffs' appears to be—"borrows violations of other laws and treats them as unlawful

20    practices."  *Armstrong-Harris v. Wells Fargo Bank, N.A.*, No. 21-cv-7637 , 2022 WL 3348426,

21    at *3 (N.D. Cal. Aug. 12, 2022) (citation omitted).  So "[i]f a plaintiff cannot state a claim under

22    the predicate law, . . . the UCL claim also fails."  *Id.* (citation omitted).  Because Plaintiffs have

23    failed to state a claim against DeviantArt for copyright infringement or violation of the DMCA,

24    *see supra* at 9–17, their UCL claim also fails.  Plaintiffs' UCL claim separately fails, to the extent

25    premised on their copyright infringement claim, because Section 301 of the Copyright Act

26    preempts it. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (UCL claim

27    "expressly base[d]  . . . on . . . the Copyright Act" was "clear[ly]" preempted).

28        *Third*, to the extent this claim is based on California's "Common Law" cause of action for

1    unfair competition, it fails because such a claim requires a showing that defendants "have passed

2    off their goods as those of another" or "exploit[ed] trade names or trademarks." *Sybersound*

3    *Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008) (dismissing UCL claim on this

4    basis).  Plaintiffs have not even tried to claim either, and there are no factual allegations in the

5    Complaint supporting either theory.

### 6. Plaintiffs' Breach Of Contract Claim Fails

7         Plaintiffs' sole claim against DeviantArt uniquely—for breach of contract—should be

8    dismissed because it (1) depends on contract provisions that, by their terms, do not apply to

9    DeviantArt, and instead target *Stability AI's* alleged breach of DeviantArt's ToS; and (2) alleges

10   none of the elements of a contract breach under California law.  *See Low v. LinkedIn Corp.*, 900

11   F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) ("Under California law, to state a claim for breach of

12   contract a plaintiff must plead the contract, plaintiffs' performance . . . , defendant's breach, and

13   damage to plaintiff therefrom." (citation omitted)).

14        *First*, the main basis of Plaintiffs' breach-of-contract claim appears to be *Stability AI's*

15   alleged breach of DeviantArt's ToS—not any breach by DeviantArt itself.  The Complaint

16   exclusively cites contract provisions that do not restrict DeviantArt's conduct at all.  *See* Compl.

17   ¶¶ 123–26.  Several such terms apply only to DeviantArt's users.  *See* Compl. ¶ 124 (quoting ToS

18   provisions); ToS at 8, 19 ("*You* agree not to use the Service . . . for any commercial purpose"

19   (emphasis added)); *id.* at 2–3, 13–14 ("*You* may not reproduce, distribute, publicly display or

20   perform, or prepare derivative works based on any of the Content . . . without the express, written

21   consent of DeviantArt or the appropriate owner of copyright in such works" (emphasis added));

22   *see also id.* at 2, 13 (Introduction) (DeviantArt is referred to as "we," "our," and "us," not "You").

23   Another term, as Plaintiffs selectively quote it, seems to say that *no* "commercial activities are

24   permitted on or through the Service without DeviantArt's written approval."  Compl. ¶ 124.  But

25   that is no help to Plaintiffs:  Even on its face, it still allows DeviantArt to approve its own

26   commercial activities.  And more fundamentally, this provision goes on, in text Plaintiffs elide, to

27   define "[c]ommercial activities" as "the offering, solicitation or sale of goods or services by anyone

28   *other than DeviantArt*."  ToS at 8, 19 (emphasis added).  As a result, Plaintiffs do not—and

1   cannot—explain how DeviantArt breached these terms, which do not even apply to its conduct.

2         Perhaps recognizing this problem, the Complaint pivots to criticizing DeviantArt not for

3   breaching any contract terms itself, but for being "aware" that *Stability AI* had allegedly violated

4   those terms, knowing that it "could have taken legal action against Stability [AI] for" those

5   breaches, and declining to do so.  Compl. ¶¶ 125–26 (emphasis added).  This is nonsense.  Even if

6   Stability AI were bound by and violated DeviantArt's ToS—a point that Plaintiffs do not even

7   bother to try establishing—Plaintiffs identify nothing that would make DeviantArt liable to

8   Plaintiffs for Stability AI's conduct.  The ToS expressly grant DeviantArt discretion in dealing

9   with infringement on its website.  *See* ToS at 3, 14.  And there is nothing in the ToS requiring

10  DeviantArt to take any action—much less "legal action"—against a user that violates its ToS.

11        *Second*, Plaintiffs' claim for relief adds several vague allegations that DeviantArt breached

12  unspecified contract terms when it shared and sold unspecified "personal data with" unspecified

13  "unauthorized parties in violation of" (again) unspecified terms of the "DeviantArt Privacy

14  Statement."  Compl. ¶ 232.  These conclusory assertions are plainly insufficient under California

15  law, which—at minimum—requires Plaintiffs to identify the contract terms they allege have been

16  breached and the information they contend was wrongly shared.  *See Sutherland v. Francis*, No.

17  12-cv-5110, 2014 WL 879697, at *4 (N.D. Cal. Mar. 3, 2014) (dismissing contract claim that did

18  not include "the essential terms of the agreement and more specific allegations as to breach"),

19  *rev'd in part on other grounds*, 647 F. App'x 686 (9th Cir. 2016); *Zepeda v. PayPal, Inc.*, 777

20  F. Supp. 2d 1215, 1220 (N.D. Cal. 2011) (same); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110,

21  1117 (N.D. Cal. 2011) (same).  Plaintiffs nowhere identify those terms or what "personal data"

22  they have in mind. The Complaint is simply devoid of allegations regarding what the alleged

23  wrongdoing was, and what part of the agreement made it wrongful—which thus requires dismissal.

24        **7.      Plaintiffs' Declaratory Judgment Claim Fails With The Other Claims**

25        Plaintiffs' claim for declaratory relief as to DeviantArt should be dismissed because it is

26  not an independent cause of action.  When, as here, there is no basis sustaining for any of the

27  claims underlying a request for a declaratory judgment, dismissal is appropriate.  *See Malasky v.*

28  *Esposito*, No. 16-cv-4102, 2019 WL 79032, at *10 (N.D. Cal. Jan. 2, 2019) (dismissing declaratory

relief claim "[b]ecause the court has dismissed [the] underlying claims"), *aff'd*, 781 F. App'x 643 (9th Cir. 2019); *Mayen v. Bank of Am. N.A.*, No. 14-cv-3757, 2015 WL 179541, at \*5 (N.D. Cal. Jan. 14, 2015) (same).

### C.    Dismissal With Prejudice Is Appropriate As To DeviantArt

Finally, the Court should dismiss Plaintiffs' claims with prejudice.  Such dismissal is appropriate "when any proposed amendment would be futile."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).  And "[a] party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding."  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (cleaned up).  So courts routinely find amendment futile when plaintiffs cannot, without contradicting their original complaint, "advance an alternative set of allegations" that would plausibly support a viable legal claim.  *Id.*; *see also Reddy*, 912 F.2d at 296–97 (affirming dismissal with prejudice on this ground); *Stebbins v. Polano*, No. 21-cv-4184, 2022 WL 2668371, at \*5 (N.D. Cal. July 11, 2022) (dismissing copyright claim with prejudice); *Parziale v. HP, Inc.*, No. 19-cv-5363, 2020 WL 5798274, at \*7 (N.D. Cal. Sept. 29, 2020) (same and collecting cases).

The Complaint's pleading defects as to DeviantArt are incurable by amendment.  That is the case, as noted above, for Plaintiffs' failure to register their copyrights, which dooms their ability to proceed with any of their copyright infringement claims.  *See UAB "Planner 5D"*, 2019 WL 6219223, at \*7.  Their claim for direct copyright infringement, in particular, cannot be cured by amendment because (1) it challenges conduct that Plaintiffs affirmatively admit DeviantArt had nothing to do with; and (2) as for DreamUp's outputs, Plaintiffs admit that they are not substantially similar to any allegedly infringed works.  Plaintiffs' DMCA claims are also beyond repair for the similar reasons that Plaintiffs (1) allege scraping by Stability AI, not DeviantArt; and (2) concede that the DreamUp's outputs are far from "identical" to Plaintiffs' works.  Amendment is also futile for Plaintiffs' right-of-publicity claims because those claims are preempted by the Copyright Act, rely on flawed, unprecedented expansions of California law, and are barred by the First Amendment.  Plaintiffs cannot cure their unfair-competition claims because they have no reasonable grounds for alleging confusion, passing off, or any predicate violations under the

1    statutory UCL.  And finally, Plaintiffs cannot identify any terms of DeviantArt's ToS or privacy

2    policy that could conceivably support a breach of contract claim—as noted, none of the contract

3    terms Plaintiffs cite even bind DeviantArt.  Because all these defects go to the heart of Plaintiffs'

4    claims and are established based on admissions Plaintiffs have made and cannot now contradict,

5    the Court should dismiss the claims against DeviantArt with prejudice.

6    **V.      CONCLUSION**

7         For all these reasons, the claims against DeviantArt should be dismissed with prejudice.

8

9    Dated:  April 18, 2023                    Respectfully submitted,

10                                             LATHAM & WATKINS LLP

11                                             By:  */s/ Andrew M. Gass*

12                                             Andrew M. Gass (SBN 259694)
                                                 *andrew.gass@lw.com*
13                                             Michael H. Rubin (SBN 214636)
                                                 *michael.rubin@lw.com*
14                                             505 Montgomery Street, Suite 2000
                                               San Francisco, California  94111-6538
15                                             Telephone:  415.391.0600

16                                             *Attorneys for Defendant DeviantArt, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28