LATHAM & WATKINS LLP
Andrew M. Gass (SBN 259694)
 andrew.gass@lw.com
Michael H. Rubin (SBN 214636)
 michael.rubin@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600

*Attorneys for Defendant DeviantArt, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SARAH ANDERSEN, an individual; KELLY MCKERNAN, an individual; KARLA ORTIZ, an individual, <br><br>　　Individual and Representative Plaintiffs, <br><br>　　v. <br><br>STABILITY AI LTD., a UK corporation; STABILITY AI, INC., a Delaware corporation; MIDJOURNEY, INC., a Delaware corporation; DEVIANTART, INC., a Delaware corporation, <br><br>　　Defendants. | CASE NO. 3:23-cv-00201-WHO <br><br>**DEFENDANT DEVIANTART, INC.'S NOTICE OF MOTION, SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE** <br><br>Date:　　July 19, 2023 <br>Time:　　2:00 p.m. <br>Place:　　Courtroom 2 - 17th Floor <br>Before:　Hon. William H. Orrick |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 2, 17th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant DeviantArt, Inc. ("DeviantArt") through its undersigned counsel, will, and hereby does, move to strike Counts IV and V of Plaintiffs' Class Action Complaint ("Compl.") pursuant to Cal. Code Civ. Proc. § 425.16.

DeviantArt's Motion to Strike ("Motion") is based on this Notice, the supporting Memorandum of Points and Authorities ("Memorandum"), the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

## STATEMENT OF RELIEF SOUGHT

DeviantArt seeks an order pursuant to Cal. Code Civ. Proc. § 425.16 striking Counts IV and IV of Plaintiffs' Class Action Complaint.

## ISSUES TO BE DECIDED

This Motion presents the following issues to be decided: (1) Whether Plaintiffs' claims of violation of the statutory and common law rights of publicity (Counts IV and V) arise from protected activity under Cal. Code Civ. Proc. § 425.16(e); and (2) Whether Plaintiffs' claims of violation of the statutory and common law rights of publicity (Counts IV and V) are legally defective for any of the following three reasons: (a) Because they are preempted by the Copyright Act, *see* 17 U.S.C. § 301(a); (b) Because the conduct alleged in the Complaint would not yield liability on the legal claims asserted in any event; or (c) Because, on the facts alleged, the claims are barred by the First Amendment.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1  Dated:  April 18, 2023                         Respectfully submitted,

2                                                 LATHAM & WATKINS LLP

3                                                 By:  /s/ Andrew M. Gass

4                                                 Andrew M. Gass (SBN 259694)
                                                    andrew.gass@lw.com
5                                                 Michael H. Rubin (SBN 214636)
                                                    michael.rubin@lw.com
6                                                 505 Montgomery Street, Suite 2000
                                                  San Francisco, California  94111-6538
7                                                 Telephone:  415.391.0600

8                                                 *Attorneys for Defendant DeviantArt, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II.  FACTS ALLEGED.................................................................................................... 4

    A.  The Parties ...................................................................................................... 4

    B.  Stability AI Creates Stable Diffusion ............................................................ 4

    C.  DeviantArt Implements Stable Diffusion Via DreamUp................................ 5

    D.  Plaintiffs File This Lawsuit............................................................................ 6

III.  LEGAL STANDARD............................................................................................... 7

IV.  ARGUMENT ........................................................................................................... 8

    A.  Plaintiffs' Right-Of-Publicity Claims Arise From Protected Activity ................. 8

        1.  The Claims Arise Out Of Conduct In Furtherance Of Speech ................. 8

        2.  Plaintiffs' Styles Are Issues Of "Public Interest"................................... 9

        3.  Creating New Works By Referencing Popular Styles Is Conduct "In Connection With" An "Issue Of Public Interest"............................. 10

    B.  Plaintiffs' Right-Of-Publicity Claims Are Legally Defective ........................... 11

        1.  Plaintiffs' Right-Of-Publicity Claims Are Preempted............................ 11

        2.  The Complaint Does Not Plead A Prima Facie Publicity Claim............ 15

            a.  The Court Should Disregard Plaintiffs' Conclusory Allegations ................................................................................... 15

            b.  The Complaint's Well-Pleaded Allegations Do Not Implicate Plaintiffs' Publicity Rights........................................... 17

        3.  The First Amendment Bars Plaintiffs' Publicity Claims ....................... 19

V.  CONCLUSION....................................................................................................... 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Arenas v. Shed Media U.S. Inc.*,
881 F. Supp. 2d 1181 (C.D. Cal. 2011) ..................................................................9, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................16

*Baral v. Schnitt*,
1 Cal. 5th 376 (2016) ..................................................................................................7

*United States ex rel. Berge v. Bd. of Tr. of the Univ. of Ala.*,
104 F.3d 1454 (4th Cir. 1997) .............................................................................12, 13

*Brooks v. Thomson Reuters Corp.*,
No. 21-cv-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ..........................19

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011).....................................................................................................8

*Callahan v. PeopleConnect, Inc.*,
No. 20-cv-9203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ...............................14

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)...................................................................................................20

*City of Colton v. Singletary*,
206 Cal. App. 4th 751 (2012) ......................................................................................7

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ...........................................................................................3, 20

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022) ..................................................................................1, 8

*Cusano v. Klein*,
473 F. App'x 803 (9th Cir. 2012) ..............................................................................10

*De Havilland v. FX Networks, LLC*,
21 Cal. App. 5th 845 (2018) ......................................................................................21

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) .....................................................................................16

*Dielsi v. Falk*,
916 F. Supp. 985 (C.D. Cal. 1996) ............................................................................13

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

*Douglas v. Osteen*,
   317 F. App'x 97 (3d Cir. 2009) ...................................................................................12

*Ekern v. Sew/Fit Co.*,
   622 F. Supp. 367 (N.D. Ill. 1985) ..............................................................................12

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) ......................................................................................................2

*Entous v. Viacom Int'l, Inc.*,
   151 F. Supp. 2d 1150 (C.D. Cal. 2001) ..............................................................12, 13

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019) .................................................................................................10

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996) ....................................................................................14

*Frenzel v. AliphCom*,
   76 F. Supp. 3d. 999 (N.D. Cal. 2014) ........................................................................16

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
   742 F.3d 414 (9th Cir. 2014) .......................................................................................7

*Guglielmi v. Spelling-Goldberg Prods.*,
   25 Cal. 3d 860 (1979) ................................................................................................18

*In re Jackson*,
   972 F.3d 25 (2d Cir. 2020) .........................................................................................15

*Jewelry 10, Inc. v. Elegance Trading Co.*,
   No. 88-cv-1320, 1991 WL 144151 (S.D.N.Y. July 20, 1991) ..............................12, 13

*Jones v. Corbis Corp.*,
   489 F. App'x 155 (9th Cir. 2012) ...............................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .......................................................................................6

*Kirby v. Sega of Am., Inc.*,
   144 Cal. App. 4th 47 (2006) ................................................................................19, 20

*Laws v. Sony Music Ent., Inc.*,
   448 F.3d 1134 (9th Cir. 2006) .......................................................................11, 13, 14

*Lewis v. Casey*,
   518 U.S. 343 (1996) ....................................................................................................16

*Lieberman v. KCOP Television, Inc.*,
   110 Cal. App. 4th 156 (2003) .......................................................................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

*Lightbourne v. Printroom Inc.*,
   307 F.R.D. 593 (C.D. Cal. 2015) ........................................................................7

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ...........................................................................14

*Mattel, Inc. v. MGA Ent., Inc.*,
   616 F.3d 904 (9th Cir. 2010) .............................................................................14

*McDonald v. West*,
   138 F. Supp. 3d 448 (S.D.N.Y. 2015) ...............................................................12

*Montz v. Pilgrim Films & Television, Inc.*,
   649 F.3d 975 (9th Cir. 2011) (en banc) ............................................................12

*Nesbitt v. Shultz*,
   No. 00-cv-267, 2001 WL 34131675 (M.D. Pa. May 10, 2001)...........................12

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) .......................................................................9, 10

*Obado v. Magedson*,
   No. 13-cv-2382, 2014 WL 3778261 (D.N.J. July 31, 2014) ...............................17

*Paulson v. Carter*,
   230 F. App'x 645 (9th Cir. 2007) .......................................................................16

*Perfect 10, Inc. v. Google, Inc.*,
   No. 04-cv-9484, 2010 WL 9479060 (C.D. Cal., July 30, 2010).....................13, 19

*Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) .......................................................................2, 7, 11

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) .............................................................................12

*Ray v. ESPN, Inc.*,
   783 F.3d 1140 (8th Cir. 2015) ...........................................................................14

*Ross v. Roberts*,
   222 Cal. App. 4th 677 (2013) ............................................................................21

*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002) ................................................................................9

*Spear Mktg., Inc. v. BancorpSouth Bank*,
   791 F.3d 586 (5th Cir. 2015) .............................................................................12

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) .......................................................................9, 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

*Tamkin v. CBS Broad., Inc.*,
    193 Cal. App. 4th 133 (2011) .................................................................................9

*Varian Med. Sys., Inc. v. Delfino*,
    35 Cal. 4th 180 (2005) ...........................................................................................7

*White v. City of Sparks*,
    500 F.3d 953 (9th Cir. 2007) .............................................................................8, 19

*White v. Samsung Elecs. Am., Inc.*,
    971 F.2d 1395 (9th Cir. 1992) ......................................................................3, 15, 17

*White v. Samsung Elecs. Am., Inc.*,
    989 F.2d 1512 (9th Cir. 1993) ..............................................................................10

*Whitehead v. CBS/Viacom, Inc.*,
    315 F. Supp. 2d 1 (D.D.C. 2004) ..........................................................................12

*Winter v. DC Comics*,
    30 Cal. 4th 881 (2003) ......................................................................................3, 20

## STATUTES

17 U.S.C. § 102 ................................................................................................2, 11, 12

17 U.S.C. § 106 ....................................................................................2, 3, 11, 13, 14

17 U.S.C. § 301(a) ...........................................................................................2, 11, 12

Cal. Civ Code § 3344 .....................................................................................11, 16, 17

Cal. Code Civ. Proc. § 425.16 ................................................................... *passim*

## OTHER AUTHORITIES

William F. Patry, Patry on Copyright (Mar. 2023 update) ......................................12, 14

Restatement (Second) of Torts (1977).....................................................................17, 18

Restatement (Third) of Unfair Competition (1995)................................................17, 18, 19

Alan Riding, *3 Artists Who Left a Fainter Impression*, N.Y. Times (Oct. 28, 1993)
    https://www.nytimes.com/1993/10/28/arts/3-artists-who-left-a-fainter-
    impression.html.....................................................................................................10

Noveske, *Deviantart Broadcast on DreamUp AI*, YouTube (Nov. 12, 2022),
    https://youtu.be/EaayDA00TBQ ..............................................................................6

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

## I.      INTRODUCTION

California's legislature has enacted a special procedural vehicle to dispose of portions of lawsuits that burden defendants' First Amendment rights: the "anti-SLAPP motion to strike," codified in Cal. Code Civ. Proc. § 425.16, which is available in both state and federal court. *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022).  Defendant DeviantArt, Inc. ("DeviantArt"), an online community for digital artists, hereby invokes that procedural mechanism to strike the right-of-publicity claims brought by plaintiffs Sarah Andersen, Kelly McKernan, and Karla Ortiz ("Plaintiffs").   The liability alleged in those claims arises from "protected activity" under the anti-SLAPP statute—to wit, offering a tool that allows users to create new works of visual art referencing the style of existing, recognized artists.  That conduct plainly qualifies as activity in furtherance of the constitutional right of free speech in connection with an issue of public interest.  *See* Cal. Code Civ. Proc. § 425.16(e)(4).  And Plaintiffs cannot show the requisite "probability . . . [of] prevail[ing]" to survive an anti-SLAPP motion, *id.* § 425.16(b)(1), because their claims are legally infirm on their face three times over.

There is irony, to say the least, at the heart of Plaintiffs' right-of-publicity theory.  The gravamen of the claims is that DeviantArt is liable for violations of California state law for offering a content-generation artificial-intelligence ("AI") service (called DreamUp), based on an open-source software product developed by a third party, which allows users to submit text prompts requesting the creation of artworks "in the style" of established artists.  In reality, as Plaintiffs know, what DeviantArt in fact did was take that general-purpose open-source software—which offered that capability by default—and build a new functionality on top of it, allowing any artist to *prevent* the DeviantArt implementation of the tool from processing requests to generate works in their "style."  *See infra* at 5–6 & n.3.  In other words, all *DeviantArt* did was offer an AI service *more protective* of artists' interests than the default setting of one of the most commonly used open-source tools on the market (available in countless implementations all over the internet), in an effort to address the very concerns underlying Plaintiffs' claims.  And yet Plaintiffs have nevertheless seen fit to try to tag *DeviantArt* with liability for doing so.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1    Claims like these are why California adopted the nation's most expansive anti-SLAPP law.

2    Putting to one side the inequity of Plaintiffs' gambit here and the facts they chose not to plead in

3    an effort to shield that inequity from the Court's view, the Complaint by its terms seeks to ascribe

4    liability to the act of giving members of the public access to a twenty-first-century analogue to the

5    printing press: a tool that allows users to engage in artistic expression.  And not just any artistic

6    expression.  The particular expression Plaintiffs complain of is the use of the tool to reference the

7    style of allegedly famous artists.  It is "conduct" (providing users a platform to engage in free

8    expression) "in furtherance of the constitutional right of . . . free speech" (the creation of new

9    visual artworks) "in connection with . . . an issue of public interest" (the styles of referenced

10   artists).  Cal. Code Civ. Proc. § 425.16(e)(4).

11   Plaintiffs cannot show the requisite "probability . . . of prevail[ing]" on their speech-

12   inhibiting claims, which are deficient as a matter of law.[1]  *First*, Plaintiffs' right-of-publicity claims

13   are preempted by Section 301 of the Copyright Act.  That provision bars any state-law claims that

14   (1) "come within the subject matter of copyright as specified by [17 U.S.C. § 102]" and (2) assert

15   rights "equivalent to any of the exclusive rights within the general scope of copyright as specified

16   by [17 U.S.C. § 106]."  17 U.S.C. § 301(a).  Plaintiffs' claims address the "subject matter of

17   copyright" because they all center (directly or indirectly) on Plaintiffs' attempt to monopolize the

18   "artistic styles" embodied in their visual artworks.  Those styles are not protectable by copyright

19   (as Plaintiffs tacitly concede), but they nonetheless constitute "ideas" or "concepts," within the

20   general subject matter of copyright law, which Congress expressly chose to *exempt* from copyright

21   protection.  *See* 17 U.S.C. § 102(b); *cf. Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (noting that

22   the Copyright Act's guarantee that "every idea . . . in a copyrighted work becomes instantly

23   available for public exploitation" is a "First Amendment accommodation[]" "built-in" to the

24   statute).  And Plaintiffs assert legal claims that are equivalent to rights within the "general scope

25

26   [1] An anti-SLAPP motion can either "challenge[] only the legal sufficiency of a claim," or can
     attack "the factual sufficiency of a claim."  *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med.*

27   *Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  This motion does the former, challenging only the
     legal sufficiency of Plaintiffs' Complaint, not the factual truth of their claims.  So the court "should

28   apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is
     properly stated."  *Id.*

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

of copyright" because, by seeking to control the creation of works that reproduce their "styles," they effectively assert an expanded, state-law version of federal copyright law's derivative-work right, *see* 17 U.S.C. § 106(2)—albeit one that would plainly fail under federal law.

*Second*, Plaintiffs do not plead a prima facie violation of California's statutory or common law right of publicity in any event. Their claims effectively amount to an effort to expand the publicity right that finds no support in precedent or principle. The right of publicity prohibits the appropriation of an individual's persona to endorse, advertise, or otherwise draw attention to a product or service. *See White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1398 (9th Cir. 1992). It does *not* prohibit the use of an individual's name to accurately refer to that person's public activities or achievements, *e.g.*, the "artistic styles" that Plaintiffs' "popularized" on the internet. ECF No. 1 ("Compl.") ¶ 205. Courts have never adopted such a broad version of the publicity right, and both the *Restatement of Torts* and the *Restatement of Unfair Competition* reject it.

*Third*, Plaintiffs' right-of-publicity claims are barred by the First Amendment. In right-of-publicity cases challenging conduct that furthers the exercise of free speech (as this suit does), California courts balance the publicity right against the First Amendment "right of free expression" using a "Transformative Use" test that asks whether the alleged likeness is merely one of the "'raw materials' from which an original work is synthesized." *Winter v. DC Comics*, 30 Cal. 4th 881, 888–89 (2003). If so, the First Amendment bars the claim. *Id.* Here, the Complaint suggests that while some DreamUp outputs might reflect an "artistic style" derived from Plaintiffs' images, they also reflect insights and interpolations from "billions of [other] images" and direction from text prompts supplied by users. Compl. ¶¶ 25, 179, 205. Indeed, Plaintiffs admit that it is nearly *impossible* to recognize the influence of any specific training datum on a DreamUp output. *Id.* ¶ 192. Accordingly, to the extent that Plaintiffs' identities or likenesses are referenced in the process of creating new and different artistic works, they have, according to the Complaint itself, been transformed through the "diffusion" process into "something new, with a further purpose or different character." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 404 (2001) (citation omitted). This is quintessential "transformative use," and the First Amendment therefore bars these claims.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1  It is one thing to assert meritless legal claims. It is quite another to assert meritless legal

2  claims that, by their own terms, would ascribe liability to activity within the core protections of

3  California's anti-SLAPP law. Accordingly, DeviantArt respectfully asks the Court to grant this

4  motion to strike Plaintiffs' right-of-publicity claims under section 425.16.

5  **II.    FACTS ALLEGED**

6  **A.    The Parties**

7  The Complaint asserts claims against three businesses—DeviantArt, Stability AI,[2] and

8  Midjourney, *see* Compl. ¶ 50—but does not allege any affiliation between or among them. Since

9  2000, DeviantArt has operated an online platform for digital artists to post and share their works

10  with an enthusiastic, art-centered community. Compl. ¶ 62. Midjourney, by contrast, "is a

11  generative AI company . . . founded in August 2021." *Id.* ¶¶ 132–33. Stability AI, similarly, was

12  founded in 2020, and is in the business of creating and distributing an open-source text-to-image

13  generative-AI product. *Id.* ¶¶ 51–53.

14  According to the Complaint, "Plaintiffs . . . are DeviantArt users" who "posted" artworks

15  on "DeviantArt or other websites." *Id.* ¶¶ 184, 229. As a result of their efforts, each Plaintiff has

16  allegedly "popularized" certain "artistic style[s]" that are now "recognizable to the public." *Id.*

17  ¶¶ 204–05; *see id.* ¶ 30 (one Plaintiff's style is "internationally recognized").

18  **B.    Stability AI Creates Stable Diffusion**

19  The bulk of this lawsuit hinges on a general-purpose tool called Stable Diffusion, produced

20  by Stability AI, that allegedly "produces images in response to Text Prompts." *Id.* ¶ 52. The

21  Complaint alleges Stable Diffusion is based on "diffusion technology" capable of "blend[ing]"

22  multiple "latent" images from a "training dataset" "to produce new images." *Id.* ¶¶ 79–86.

23  Stability AI evidently built Stable Diffusion by collaborating with a German nonprofit

24  called "Large-Scale Artificial Intelligence Open Network" or "LAION." *Id.* ¶¶ 101–07. Allegedly

25  at Stability AI's direction, LAION "downloaded or otherwise acquired copies of billions of

26  copyrighted images without permission" and compiled them into datasets that Stability AI, in turn,

27  allegedly used to "train[] Stable Diffusion." *Id.* ¶¶ 2, 104–07. Notably, nothing in the Complaint

28  ────────────────

[2] "Stability AI" refers to Stability AI Ltd. and Stability AI, Inc. Compl. ¶¶ 31–32.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

suggests that DeviantArt was involved in (or even aware of) the creation of Stable Diffusion or the collection of its training data.  To the contrary, the Complaint alleges that LAION scraped images from DeviantArt's website *without* DeviantArt's consent.  *Id.* ¶ 103.

As alleged in the Complaint, one feature of Stable Diffusion is its ability to use training images associated with a particular artist to "generate new works in the artist's style."  *Id.* ¶ 5. Plaintiffs compare this process to a human artist creating a new work "convincingly in [the] style" of a prior artist.  *Id.*  Plaintiffs do not deny that this process is itself expressive, in the constitutional sense—indeed, they admit that Stable Diffusion's outputs necessarily reflect users' new ideas communicated through text prompts.  *Id.* ¶ 24.  Nor do Plaintiffs claim that the resulting outputs are copies of their own original works—to the contrary, they admit that the influence of any particular original work from the training data on Stable Diffusion's outputs is difficult or impossible to detect.  *See id.* ¶¶ 192–93; *see also id.* ¶ 93.  Nonetheless, Plaintiffs claim that this process of creating new visual works "in the style" of prior artists "violat[es] [their] rights."  *Id.* ¶ 5.

Stability AI allegedly released Stable Diffusion in August 2022.  *Id.* ¶ 52.  It did so under a "permissive open-source license" that permitted any individual or company to "download for free the software and its associated machine-learning models" and build services that allow users to access Stable Diffusion's models to create new images.  *Id.* ¶¶ 53–54.  Stable Diffusion was "rapid[ly] adopt[ed]" by programmers after its release.  *Id.* ¶ 54.  Notably, nothing in the Complaint suggests that DeviantArt took any part in (or was even aware of) any of the aforementioned conduct.

## C.    DeviantArt Implements Stable Diffusion Via DreamUp

According to the Complaint, DeviantArt did not enter the picture until November 9, 2022— roughly three months after the release of Stable Diffusion—when DeviantArt released DreamUp. *Id.* ¶¶ 35, 64.  DreamUp allegedly "generates images in response to Text Prompts" and "relies on [] Stable Diffusion software as its underlying software engine."  *Id.* ¶ 64.  Plaintiffs allege that DreamUp is not an independent model but rather "provides a user interface" for the Stable Diffusion software, which it "requires . . . to function."  *Id.* ¶¶ 33, 64.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1    DeviantArt's release of DreamUp was accompanied by DeviantArt's adoption of unique

2    safeguards to protect artists' rights. Most relevant here, DeviantArt designed DreamUp to block

3    text prompts that include the names of artists who choose to prohibit their names from being used

4    as inputs for the content-generation tool.[3] As a result, as DeviantArt announced publicly, artists

5    who do not want DreamUp's users to create new works in their style can elect to exclude their

6    names entirely. And even if an artist *does* permit DreamUp users to create works in their "styles,"

7    DeviantArt insists that users credit the original artist when publishing the resulting works.[4]

8    **D.      Plaintiffs File This Lawsuit**

9    On January 13, 2023, Plaintiffs filed this lawsuit against Stability AI, DeviantArt, and

10   Midjourney. The main thrust of Plaintiffs' claims is that "Defendants"—whom the Complaint

11   generally lumps together without differentiation—violated their rights by scraping images from

12   the internet, training Stable Diffusion on them, and allowing users to create works that are different

13   from, but generally "in the style" of, Plaintiffs' images. As noted above, however, nothing in the

14   Complaint so much as suggests that DeviantArt participated in, or even knew about, the creation

15   or training of Stable Diffusion. To the contrary, the Complaint's specific factual allegations

16   against DeviantArt largely concern the potential for DreamUp to create art, at the behest of third-

17   party users, "in the style" of existing artists who have not availed themselves of the option to

18   exclude their names from DreamUp's text prompts. *Id.* ¶¶ 201–22. So far as can be discerned

19   from the somewhat opaque allegations in the Complaint, this feature of DreamUp provides the

20   sole grounds for the two right-of-publicity claims addressed in this Motion. *See id.* (Counts IV

---

21   [3] *See* Noveske, *Deviantart Broadcast on DreamUp AI* at 8:00–8:39, YouTube (Nov. 12, 2022),

22   https://youtu.be/EaayDA00TBQ (hereinafter "Session Recording"). The Session Recording is a
     recording of the "group audio session" referred to in paragraphs 128 and 129 of the Complaint.

23   Because the Complaint relies on (and directly quotes) this session in support of its claims against
     DeviantArt, it is incorporated into the Complaint. *Compare* Compl. ¶¶ 128–30, *with* Session

24   Recording at 17:30–17:56; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir.
     2018) ("[Incorporation-by-reference] prevents plaintiffs from selecting only portions of

25   documents that support their claims, while omitting portions of those very documents that weaken
     [them]." (citations omitted)).

26   [4] *See* Session Recording at 8:10–8:30. DeviantArt also announced that it began including metatags
     in all posted content that forbid any use of images posted to DeviantArt to "train an [AI] system"

27   unless the posting artist "actively give[s] [their] consent" to such use. *See* Compl., Ex. 17 at 23.
     DeviantArt's Terms of Service also prohibit users from monetizing DreamUp or its outputs. *Id.*

28   at 2 (defining the "Service" as "all elements, software, programs and code forming or incorporated
     in to www.DeviantArt.com"), 8 (prohibiting use of "the Service" for "any commercial purpose").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1   and V).[5]

2   **III.   LEGAL STANDARD**

3          In 1992, California adopted an "anti-SLAPP" statute to deter lawsuits that would "chill the

4   valid exercise of the constitutional right[] of freedom of speech." *Varian Med. Sys., Inc. v. Delfino*,

5   35 Cal. 4th 180, 192 (2005).  The statute creates a "special motion to strike" claims that would

6   chill free speech, Cal. Code Civ. Proc. § 425.16(b)(1), which (in federal court) can challenge either

7   the legal or factual sufficiency of the Complaint, *see Planned Parenthood Fed. of Am., Inc. v. Ctr.*

8   *for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), and which can knock out not only entire

9   causes of action, but also specific allegations or portions of meritless claims that target protected

10  activity, *see Baral v. Schnitt*, 1 Cal. 5th 376, 392–94 (2016).

11         An anti-SLAPP motion proceeds in two steps.  *First*, the moving defendant must show that

12  the plaintiff's claims assert liability arising from an "act . . . in furtherance of the [] right of petition

13  or free speech" under the United States or California Constitutions.  Cal. Code Civ. Proc.

14  § 425.16(b)(1).  Among other things, California's anti-SLAPP law defines such an act to include

15  "conduct in furtherance of the exercise of . . . the constitutional right to free speech in connection

16  with a public issue or an issue of public interest." *Id.* § 425.16(e)(4).  Courts often frame the

17  resulting legal inquiry as whether the claim would burden "protected activity." *City of Colton v.*

18  *Singletary*, 206 Cal. App. 4th 751, 766 (2012).  Because the anti-SLAPP statute itself states that it

19  "shall be construed broadly," Cal. Code Civ. Proc. § 425.16(a), "California courts have interpreted

20  this piece of the defendant's threshold showing rather loosely," such that "a court must generally

21  presume the validity of the claimed constitutional right in the first step of the anti-SLAPP

22  analysis," *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422

23  (9th Cir. 2014).  *Second*, when the anti-SLAPP motion "challenges only the legal sufficiency of

24  the claim"—as this motion does—the district court must then "apply the [Rule] 12(b)(6) standard

---

25  [5] Plaintiffs bring these claims on behalf of a nationwide class, *see* Compl. ¶ 41, but the Complaint
26  fails entirely to provide a basis for applying California publicity law to the claims asserted by Ms.
    Andersen or Mx. McKernan—residents of Oregon and Tennessee, *id.* ¶¶ 28–29—much less to
27  "[a]ll persons or entities nationalized and/or domiciled in the United States," *id.* ¶ 41; *see*
    *Lightbourne v. Printroom Inc.,* 307 F.R.D. 593, 597–600 (C.D. Cal. 2015) (discussing choice-of-
28  law rules relating to publicity-rights claims, concluding that "a plaintiff's residency is often
    determinative," and declining to certify a nationwide class on that basis).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1  and consider whether a claim is properly stated." *CoreCivic*, 46 F.4th at 1140 (citation omitted);

2  *see also* DeviantArt MTD at 6–7 (discussing Rule 12(b)(6) standard).

3  **IV.     ARGUMENT**

4           This Court should strike Plaintiffs' right-of-publicity claims. *First*, the right-of-publicity

5  claims fall within the scope of the anti-SLAPP law because they arise out of protected activity:

6  offering a tool that facilitates the creation of new visual works that reference the artistic styles that

7  Plaintiffs have allegedly "popularized." Compl. ¶ 205. *Second*, the claims are legally deficient

8  because (1) they are preempted by the Copyright Act; (2) they fail to state a prima facie violation

9  of California's common law or statutory publicity right; and (3) they are barred by the First

10 Amendment under the Transformative Use test.

11      **A.     Plaintiffs' Right-Of-Publicity Claims Arise From Protected Activity**

12          Plaintiffs' claims attack activity protected by the anti-SLAPP statute. *See* Cal. Code Civ.

13 Proc. § 425.16(e). The claims target "speech" because the creation of visual artworks reflecting

14 new ideas and concepts—like those conveyed by text prompts submitted by DreamUp's users—is

15 plainly protected "free speech." That speech is "in connection with . . . an issue of public interest"

16 because it engages in discourse regarding an issue in which the "public" has become "interested"—

17 here, artistic styles that (Plaintiffs allege) are "popular[]." Compl. ¶¶ 28–30, 205.

18          **1.     The Claims Arise Out Of Conduct In Furtherance Of Speech**

19          Using DreamUp to create new visual works is an "exercise of . . . free speech." Cal. Code

20 Civ. Proc. § 425.16(e)(4). As the Ninth Circuit has explained, "[visual works] always

21 communicate some idea or concept to those who view [them], and as such are entitled to full First

22 Amendment protection." *White v. City of Sparks*, 500 F.3d 953, 955–56 (9th Cir. 2007) (citation

23 omitted); *cf. Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011) ("[V]ideo games qualify

24 for First Amendment protection" because they "communicate ideas."). DreamUp's outputs are no

25 exception: As the Complaint alleges, each output reflects new ideas and concepts, including those

26 communicated by users in text prompts. *See* Compl. ¶ 24. Those outputs are entitled to the same

27 protection as any other form of "speech." *Brown*, 564 U.S. at 790 ("[T]he basic principles of

28 freedom of speech and the press, like the First Amendment's command, do not vary when a new

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1    and different medium for communication appears." (citation omitted)).

2         DeviantArt, through DreamUp, furthers that speech.  "An act is *in furtherance of* the right

3    of free speech if the act helps to advance that right or assists in the exercise of that right."  *Tamkin*

4    *v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) (emphasis added); *see also id.* ("[A]cts

5    [that] helped to advance or assist in the creation, casting, and broadcasting of an episode of a

6    popular television show" qualified for anti-SLAPP protection); *see also Lieberman v. KCOP*

7    *Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003) ("*Furtherance* means *helping* to advance,

8    *assisting*." (emphasis in original)).  It is beyond dispute that DreamUp "assists" in the creation of

9    new visual works.  By attacking DreamUp, Plaintiffs' right-of-publicity claims thus attack conduct

10   "in furtherance of the exercise of . . . free speech."  Cal. Code Civ. Proc. § 425.16(e)(4).

**2.     Plaintiffs' Styles Are Issues Of "Public Interest"**

12        The term "issues of public interest" as used in the anti-SLAPP law, *see* Cal. Code Civ.

13   Proc. § 425.16(e)(4), reaches far beyond political or social debates, or matters of "civic concern,"

14   *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1195 (C.D. Cal. 2011) (citation omitted);

15   *see* Cal. Code Civ. Proc. § 425.16(a) (statute's terms "shall be construed broadly").  Rather, an

16   "issue of public interest" includes "any issue in which the public is interested."  *Nygard, Inc. v.*

17   *Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis omitted).  The issue "need not be

18   'significant'" as long as the public has "take[n] an interest."  *Id.*  "[S]ocial or even low-brow topics

19   may suffice."  *Arenas*, 881 F. Supp. 2d at 1195 (citation omitted).  There is, for example, a "public

20   interest which attaches to people who, by their accomplishments, mode of living, professional

21   standing or calling," call the public's "attention to their activities."  *Stewart v. Rolling Stone LLC*,

22   181 Cal. App. 4th 664, 677–78 (2010) (citation omitted); *see Seelig v. Infinity Broad. Corp.*, 97

23   Cal. App. 4th 798, 808 (2002) ("By having chosen to participate as a contestant in [a reality show],

24   plaintiff voluntarily subjected herself to [commentary] by the public.").

25        By Plaintiffs' own telling, their "artistic styles" easily meet this standard.  Plaintiffs allege

26   that they have "popularized" their styles such that they are now "recognizable to the public."

27   Compl. ¶¶ 204–05.  They allege that they have "successfully built [their] careers as artists" by

28   posting their works "on DeviantArt or other websites."  *Id.* ¶¶ 184, 204.  One of the Plaintiffs

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1  claims that her work is "internationally recognized," appearing in "notable galleries" from Los

2  Angeles to Paris.  *Id.* ¶ 30.  Put simply, according to the allegations in the Complaint, the "public

3  is interested" in Plaintiffs' artistic styles, which makes them "issues of public interest."  *Nygard*,

4  159 Cal. App. 4th at 1042.

> ### 3. Creating New Works By Referencing Popular Styles Is Conduct "In Connection With" An "Issue Of Public Interest"

7  As the California Supreme Court explained in *FilmOn.com Inc. v. DoubleVerify Inc.*, free

8  speech is "*in connection with* . . . an issue of public interest" if it consists of "participat[ion] in . . .

9  discourse" on that issue.  7 Cal. 5th 133, 149–51 (2019) (emphasis added).  The inquiry does not

10  turn on "the social utility of the speech at issue, or the degree to which it propel[s] the conversation

11  in any particular direction."  *Id.* at 151.  Referencing a well-known person in an expressive work,

12  for example, constitutes protected activity.  *See Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir.

13  2012) (videos referencing the band KISS are "in connection with a public issue" because "KISS

14  and its members . . . [are] in the public eye" and themselves issues of "public interest"); *Stewart*,

15  181 Cal. App. 4th at 677–78 (reference to band "whose musical works have contributed to the

16  development" of a "popular genre of music" was in connection with public issue).

17  The creation of new visual artworks referencing the "artistic style" "popularized" by a prior

18  artist qualifies as "participat[ion] in . . . discourse" regarding that style.  Compl. ¶ 205; *see*

19  *FilmOn.com*, 7 Cal. 5th at 149–50.  Referencing prior works is central to artistic discourse.  "All

20  creators draw in part on the work of those who came before, referring to it, building on it, poking

21  fun at it; we call this creativity . . . ."  *White v. Samsung Elecs. Am., Inc.*, 989 F.2d 1512, 1515 (9th

22  Cir. 1993) (Kozinski, J., dissenting from denial of en banc reh'g).  Painters, for example, have long

23  engaged in artistic discourse by emulating each other's styles and referencing each other's works.[6]

24  Holding that a new artistic work referencing a pre-existing one does not express ideas "in

25  connection with" the initial artist's style would mean that the medium of visual art is entitled to

---

27  [6] *See, e.g.*, Alan Riding, *3 Artists Who Left a Fainter Impression*, N.Y. Times (Oct. 28, 1993),
   https://www.nytimes.com/1993/10/28/arts/3-artists-who-left-a-fainter-impression.html     (noting
28  the "enormous[] influence" of Manet and Renoir on impressionists who borrowed their "greens
   and reds" and the "distinct roundness [of] the women and children" portrayed in their works).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

less protection than other media of expression under California's anti-SLAPP law.  There is no basis for that result in the statute, the policy considerations that drove its enactment, or the three decades of case law interpreting it.  Indeed, the anti-SLAPP law presupposes that claims "based on the creation, dissemination, exhibition, . . . or other similar promotion of any . . . artistic work" are the proper subjects of anti-SLAPP motions.  *See* Cal. Code Civ. Proc. § 425.17(d).  The anti-SLAPP law clearly protects DeviantArt's provision of a tool that allows users to create new works of art referencing the well-known styles of allegedly famous artists.

### B.    Plaintiffs' Right-Of-Publicity Claims Are Legally Defective

This Motion addresses Plaintiffs' two right-of-publicity claims: Count IV (under Cal. Civ Code § 3344), and Count V (under California common law).  Compl. ¶¶ 201–22.  Because those claims attack protected activity, the Court should strike them if they are not "properly stated" under "the [Rule] 12(b)(6) standard."  *Planned Parenthood*, 890 F.3d at 834.

For three independent reasons, they are not.  *First*, the claims are preempted by the Copyright Act because they attempt to assert state-law exclusive rights in "artistic styles" that are expressly exempted from federal copyright protection.  *Second*, the Complaint fails to state a prima facie claim for relief because it relies on an unprecedented and misguided conception of the right of publicity, with no support in precedent or principle.  *Third*, these claims are barred by the First Amendment under the Transformative Use test.

### 1.    Plaintiffs' Right-Of-Publicity Claims Are Preempted

Section 301 of the Federal Copyright Act preempts a state-law claim if two conditions are met:  (1) the claim must be based on material "within the subject matter of copyright as specified by [17 U.S.C. § 102]"; and (2) the claim must seek to vindicate rights "within the general scope of copyright as specified by [17 U.S.C. § 106]," *e.g.*, the rights to control reproduction, distribution, or production of derivative works.  *See, e.g.*, *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).  Plaintiffs' right-of-publicity claims are preempted under this standard.

*Subject Matter Requirement*.  "Artistic style" falls within "the subject matter of copyright." 17 U.S.C. § 301(a).  The Act defines the "subject matter of copyright" by reference to Section 102. *Id.*  Section 102(a) defines categories of works of authorship eligible for copyright protection, and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

Section 102(b) limits the protection the statute affords them by stating: "In no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept," etc. *Id.* § 102(a), (b).  "[C]ourts have consistently held" that subject matter excluded from protection by Section 102(b) of the Act—including "idea[s]"—still "fall[s] within the 'subject matter of copyright' for the purposes of preemption analysis." *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001) (collecting cases); *see id.* at 1159–60 (claim based on unauthorized use of "ideas or concepts" preempted).[7]  Section 301(a) of the Act thus "prevent[s] states from giving special protection" to subject matter that Congress "has decided should be in the public domain." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (Easterbrook, J.); *see also Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 596 (5th Cir. 2015) ("Congress intended the Copyright Act to protect some expressions but not others, and it wrote § 301(a) to ensure that the states did not undo this decision.").

It is black-letter copyright law that an artistic "style" is an "idea, procedure, process, [or] system" excluded from protection by Section 102(b).  *See, e.g., Jewelry 10, Inc. v. Elegance Trading Co.*, No. 88-cv-1320, 1991 WL 144151, at *4 (S.D.N.Y. July 20, 1991) ("[S]tyle[s]" and "technique[s]" like "pointillism, fauve coloring, cubism," or "psychedelic colors" are "ideas."). For that reason, styles, just like ideas, are unprotectable under copyright law.  *See, e.g., McDonald v. West*, 138 F. Supp. 3d 448, 455 (S.D.N.Y. 2015) ("[C]opyright does not protect styles," and "[f]or the same reason" "does not protect ideas."); 2 William F. Patry, Patry on Copyright § 4:14 (Mar. 2023 update) (collecting cases rejecting "claims in style," which "is not protected").[8]  And,

---

[7] *See also Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (en banc) (holding that "state-law protection for fixed ideas falls within the subject matter of copyright and thus satisfies the first prong of the statutory preemption test, despite the exclusion of fixed ideas from the scope of actual federal copyright protection"); *United States ex rel. Berge v. Bd. of Tr. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) ("[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection.").

[8] Plaintiffs tacitly concede this point by carefully omitting from the allegations supporting their federal copyright law claims any mention of their "styles."  *See* Compl. ¶¶ 153–77; *see also Douglas v. Osteen*, 317 F. App'x 97, 99 (3d Cir. 2009) ("[T]he use of a particular writing style or literary method is not protected by the Copyright Act."); *Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1, 11 (D.D.C. 2004) ("[S]tyle alone cannot support a copyright claim."); *Nesbitt v. Shultz*, No. 00-cv-267, 2001 WL 34131675, at *7 & n.4 (M.D. Pa. May 10, 2001) (holding that "using a 'flowery, over-drawn style'" or "attempting to simulate a late-Victorian style of writing" were unprotectable "ideas or concepts"); *Ekern v. Sew/Fit Co.*, 622 F. Supp. 367, 369 (N.D. Ill. 1985)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1  for the same reason, styles fall within copyright's subject matter for preemption purposes. *See,*
2  *e.g.*, *Entous*, 151 F. Supp. 2d at 1159.

3         This principle applies fully to Plaintiffs' allegedly "distinctive artistic styles," Compl.
4  ¶ 204, the use of which is the primary basis for their right-of-publicity claims.[9]  Because Plaintiffs'
5  "styles" and artistic "technique[s]" are "ideas," they lack protection but fall within copyright's
6  subject matter. *See, e.g.*, *Jewelry 10*, 1991 WL 144151, at *4.

7         *Equivalent Rights Requirement.*  Plaintiffs' right-of-publicity claims assert rights that are
8  equivalent to those protected by copyright law.  To survive preemption, the asserted state-law right
9  must be "qualitatively different from" the rights protected by copyright law.  *Laws*, 448 F.3d
10 at 1143 (citation omitted).  For that reason, non-preempted claims must have an "extra element"
11 that is sufficient to "transform the nature of the action." *Id.* at 1144.

12        Plaintiffs' claims lack any such "extra element."  Courts have consistently held that state-
13 law claims seeking to attach liability to the misappropriation of unprotectable ideas are "clearly
14 preempted" because they lack "any additional element [beyond] the essential claim that Plaintiff's
15 ideas were misappropriated by Defendants."  *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal.
16 1996); *see also United States ex rel. Berge v. Bd. of Tr. of the Univ. of Ala.*, 104 F.3d 1454, 1463
17 (4th Cir. 1997).  That dooms the claims asserted here, which would ascribe liability to the alleged
18 replication of Plaintiffs' unprotectable "styles."  *See* Compl. ¶ 212.

19        As a practical matter, Plaintiffs' right-of-publicity claims effectively seek to assert a new
20 species of copyright law's derivative-work right, *see* 17 U.S.C. § 106(2)—in particular, a right that
21 would preclude others from deriving a "style" from Plaintiffs' published artistic works and
22 referencing that "style" in new works.  Compl. ¶ 205; *see also id.* ¶¶ 212, 222 (bemoaning that the
23 "market" has been "flooded" with works that reference their "artistic style").  While that right
24 would stretch far beyond the derivative-work right provided by the Copyright Act, *see* DeviantArt

25 ("Copyright provides no protection to such broad areas as theories, writing styles and technical
26 explanations.").

27 [9] In fact, the only publicity-related *harm* Plaintiffs identify results from the alleged "proliferation
   of AI-generated art" reflecting their "artistic styles," which (Plaintiffs allege) impacts their
   "goodwill" and "name recognition."  Compl. ¶ 212.  "[H]arm to the plaintiff . . . is a required
28 element of a right of publicity claim for appropriation of name or likeness."  *Perfect 10, Inc. v.*
   *Google, Inc.*, No. 04-cv-9484, 2010 WL 9479060, *13 (C.D. Cal., July 30, 2010).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

MTD at 11–12 (infringement of derivative-work right requires substantial similarity), it is qualitatively equivalent to that right for preemption purposes, *see* 6 Patry on Copyright § 18:16 ("The state right may be narrower, broader, or contain somewhat different elements, yet it will still be preempted if its essence is the same as the federal right.").[10]

*Name Appropriation*.  Because Plaintiffs' publicity-rights claims seek to control the use of their "artistic styles," those claims are preempted even to the extent they would also ascribe liability to the use of their personal names.  Courts have not hesitated to hold preempted a supposedly name-based publicity claim when the claim, examined as a whole, is "little more than a thinly disguised copyright claim."  *See, e.g.*, *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008, 1016 (9th Cir. 2017) (affirming grant of section 425.16 motion to strike claim based on misappropriation of "name").[11]  Plaintiffs, in other words, cannot "recast [their] claims to evade copyright preemption" by claiming name appropriation when the "crux of [their] case" is the assertion of a right that falls within Section 301's preemptive scope.  *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142–44 (8th Cir. 2015) (right-of-publicity claim based on "misappropriation of name" preempted where claim was based on "reproduction, performance, distribution or display" of copyrighted work).

Allowing Plaintiffs to avoid Copyright Act preemption by focusing on the alleged appropriation of their names would undercut the well-established federal policy of ensuring that ideas—including "artistic styles"—are within the public domain.  *See Mattel, Inc. v. MGA Ent.,*

---

[10] Plaintiffs' claims might also be framed as asserting a species of copyright's reproduction right. *Compare* 17 U.S.C. § 106(1) (granting copyright holder the exclusive right to "reproduce the copyrighted work in copies"), *with* Compl. ¶ 212 (alleging that consumers have used Defendants' AI tools to create "AI-generated copies associated with Plaintiffs' names and artistic styles").  Such a right would also be equivalent to those protected by copyright law.  *See Laws*, 448 F.3d at 1144 (Where "[t]he essence of [a right of publicity] claim" is an objection to the unauthorized creation of copies, the claim is preempted.).

[11] *See also Laws*, 448 F.3d at 1136, 1142–43 (common law and statutory publicity claims based on appropriation of "name" and "voice" preempted because plaintiff's suit "challenges control of the artistic work itself"); *Callahan v. PeopleConnect, Inc.*, No. 20-cv-9203, 2021 WL 5050079, at *13 (N.D. Cal. Nov. 1, 2021) (holding, in case concerning website offering database of names, photographs, and information scanned from school yearbooks, that California right-of-publicity claim based on use of "Plaintiffs' names and likenesses" was preempted); *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1913, 1919 (1996) ("action for misappropriation of [] name, image, likeness, or identity" preempted because the claim "seeks only to prevent [defendant] from reproducing and distributing" a "copyrightable" work).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

*Inc.*, 616 F.3d 904, 913–17 (9th Cir. 2010) (copyright law precludes any "monopoly" over stylistic ideas and concepts).  As explained below, Plaintiffs' claims effectively rest on the theory that Plaintiffs have the absolute right to authorize the use of their names to refer to the "art and artistic styles" that are "recognizable to the public."  Compl. ¶ 204.  That theory of liability not only goes far beyond what the right of publicity has ever been understood to restrict, *see infra* at 17–19; it also impedes the creation of new works by effectively precluding follow-on creators from referencing (or even discussing) the works and styles of prior artists.  Courts have previously rejected such attempts to use state-law, name-based publicity rights to interfere with federal copyright policy.  *See, e.g.*, *In re Jackson*, 972 F.3d 25, 54–55 (2d Cir. 2020) (holding that "aspect of [right-of-publicity claim that] centers on [defendant's] use of [a] stage name to accurately [refer to the plaintiff]" was impliedly preempted for this reason).  This Court should do the same and hold Plaintiffs' publicity-rights claims preempted.

### 2.     The Complaint Does Not Plead A Prima Facie Publicity Claim

Plaintiffs' claims also fail for the independent reason that the Complaint's allegations, even taken as true, do not implicate Plaintiffs' publicity rights.  As explained further below, once the Complaint's conclusory and unsupported allegations are set aside, Plaintiffs' central theory as to DeviantArt is that their rights are violated because DreamUp is capable of processing references to their names and, in turn, creating new visual works that reflect the "artistic styles" that are "uniquely associated" with their names.  Compl. ¶¶ 204, 214.  But the right of publicity protects against "the unauthorized commercial exploitation of [an individual's] identity," *White*, 971 F.2d at 1398 (citation omitted), not against the truthful use of a name to refer to an individual's public activities or "artistic style."  Because Plaintiffs do not have the right to control the use of their names to reference their "styles," their publicity claims fail as a matter of law.

### a.     The Court Should Disregard Plaintiffs' Conclusory Allegations

As a threshold matter, Plaintiffs' right-of-publicity claims depend in part on a series of wholly conclusory and unsupported statements that the Court should disregard.  The Complaint, for example, vaguely asserts that the "Defendants" used "Plaintiffs' names and identities" on "apps, website[s], and social media posts," Compl. ¶ 219, insinuating that Plaintiffs' actual

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

names—Sarah Andersen, Kelly McKernan, or Karla Ortiz—and artworks appear on DeviantArt's website and other media as a result of some conduct by either DeviantArt itself or a third party. Similarly, Plaintiffs allege that "Defendants knowingly used Plaintiffs' names and identities . . . for the purposes of advertising, selling, and soliciting purchases through Defendants' AI art-generating system," *id.* ¶ 217, and (even more confusingly), that "Defendants used Plaintiffs' names to advertise art" and "sell artworks," *id.* ¶¶ 205–06, suggesting that Plaintiffs' actual names or works appeared in DeviantArt's advertising materials, *see also id.* ¶ 203 (similar).

The Complaint, however, is entirely devoid of any specific allegations to support these claims.  There is not a single allegation regarding any particular instance of the appearance of any of the Plaintiffs' names on DeviantArt's "apps," "website[s]," "social media posts," or advertising materials.  Plaintiffs do not even identify which "Defendant" supposedly used their "names and identities" in this manner.  *Id.* ¶ 217; *see, e.g.*, *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) (affirming dismissal of complaint that made "everyone did everything allegations"); DeviantArt MTD at 8–9 (discussing Plaintiffs' shotgun pleading).  Indeed, the Complaint elsewhere conspicuously *avoids* the suggestion (which would be false) that DeviantArt itself references Plaintiffs somewhere on DeviantArt's website or marketing materials:  Instead of alleging that Defendants' actually used their names, at points Plaintiffs state only that (unspecified) "Defendants . . . emphasized . . . specific *Class members'* names."  Compl. ¶ 208 (emphasis added); *see Frenzel v. AliphCom*, 76 F. Supp. 3d. 999, 1015 (N.D. Cal. 2014) (holding that "[a]llegations" relating to "unnamed class members" are insufficient to show injury to named plaintiffs (citation omitted)); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (similar).

Rather than plead any specific facts, Plaintiffs simply parrot the language of the relevant statutes.  *Compare* Compl. ¶¶ 203, 217, *with* Cal. Civ. Code § 3344(a).  Those types of "[t]hreadbare recitals of the elements of a cause of action" are insufficient to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because these "conclusory allegations" are "unsupported by specific facts," this Court should disregard them entirely.  *Paulson v. Carter*, 230 F. App'x 645, 645 (9th Cir. 2007).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1
2

        **b.**        **The Complaint's Well-Pleaded Allegations Do Not Implicate Plaintiffs' Publicity Rights**

3        Once the Court sets aside Plaintiffs' conclusory allegations, it becomes clear that the

4    Complaint does not plausibly allege any right-of-publicity claims.

5        *The Right Of Publicity Does Not Restrict Truthful References*.  The right of publicity

6    protects "the commercial interest of celebrities in their identities."  *White*, 971 F.3d at 1398

7    (citation omitted).  "The theory of the right is that a celebrity's identity can be valuable in the

8    promotion of products, and the celebrity has an interest that may be protected from the

9    unauthorized commercial exploitation of that identity."  *Id.* (citation omitted).  The publicity right

10   thus permits an individual to control the unauthorized use of their name or likeness "for purposes

11   of trade," such that an individual can prevent uses of their persona to "advertis[e] [] goods or

12   services," or the "place[ment]" of their name or likeness "on merchandise."  Restatement (Third)

13   of Unfair Competition §§ 46, 47 (1995).[12]

14       The right of publicity, however, does not protect *all* conceivable uses of someone's name

15   or personal attributes.  To the contrary, and most relevant here, the right of publicity generally

16   does not restrict truthful references to individuals or their public activities.  *See* Restatement

17   (Second) of Torts § 652C cmt. d (1977).  It is thus not a publicity-rights violation for a search

18   engine to provide internet users with links to websites referencing an individual after it is prompted

19   with a search query including that individual's name.  *See Obado v. Magedson*, No. 13-cv-2382,

20   2014 WL 3778261, at *7 (D.N.J. July 31, 2014) ("The mere appearance of Plaintiff's name or

21   image as part of the search results displayed in response to a user-generated query does not mean

22   that the relevant company [violated plaintiff's publicity rights].").  Nor is it a publicity-rights

23   violation for a website like the Internet Movie Database to display information about the films in

24   which an actor has appeared.  *See id.*  Likewise, it is not a violation for a real estate developer who

25   admires the Prairie School of architecture to instruct its architects to design a "Frank-Lloyd-

26

27
28

---

[12] California's right of publicity statute expressly recognizes this characteristic of the right by limiting statutory liability to the "knowing[] use[]" of another's name or likeness "in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services."  Cal. Civ. Code  § 3344(a).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

Wright-style" office building; for a music producer to instruct a trumpet player to play a "Freddie-Hubbard-style" solo; or for an art teacher to instruct their students to create paintings "in the style" of Piet Mondrian or Jackson Pollock.  *See* Restatement (Second) of Torts § 652C cmt. d (1977).

As the *Restatement of Unfair Competition* explains: "The use of a person's identity primarily for the purpose of communicating information or expressing ideas is not generally actionable as a violation of the person's right of publicity."  Restatement (Third) of Unfair Competition § 47 cmt. c (1995).  And as the *Restatement of Torts* explains:

> The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities . . . .  No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation.

Restatement (Second) of Torts § 652C cmt. d (1977).[13]  Any contrary rule would unduly restrict speech.  *Cf. Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 869 (1979) (Bird, C.J., concurring) (noting that "the range of free expression would be meaningfully reduced" if "prominent persons" could control use of their names).

*Plaintiffs Do Not Allege A Publicity Rights Violation.*  The well-pleaded allegations in the Complaint, even taken as true, do not establish a violation of Plaintiffs' rights of publicity.  Setting aside Plaintiffs' conclusory allegations, the central theory of the Complaint (as to DeviantArt) is that Plaintiffs' rights are violated because DreamUp is capable of (1) understanding references to Plaintiffs' names in users' text prompts, (2) using those references to identify certain recurring visual elements in the works Plaintiffs posted online, and (3) replicating those style elements in visual outputs.  *See* Compl. ¶¶ 171, 207–08.  But that is not a use of the Plaintiffs' names or identities to "advertis[e] [] goods or services" or the "place[ment]" of Plaintiffs' names or likenesses "on merchandise."  Restatement (Third) of Unfair Competition §§ 46, 47 (1995).  Nor is it a use of the Plaintiffs' personas to "attract attention" to a product.  *Id.* § 47, cmt. c.[14]

To the contrary, to the extent users have inserted Plaintiffs' names in DreamUp text

---

[13] *See Jones v. Corbis Corp.*, 489 F. App'x 155, 156 (9th Cir. 2012) (referring to *Restatement (Second) of* Torts as authoritative in analysis of California right-of-publicity claims).

[14] As discussed above, while the Complaint vaguely accuses "Defendants" of using Plaintiffs' names and likenesses to "advertis[e]" unspecified services, *e.g.*, Compl. ¶ 203, there are no specific facts in the Complaint to explain or substantiate those allegations, *see supra* at 15–17.

prompts (and the Complaint provides no specific allegations to suggest they have), they invoked those names "primarily for the purpose of communicating information or expressing ideas," *i.e.*, as a reference to Plaintiffs' (unprotectable) artistic styles, which is "not generally actionable as a violation of the person's right of publicity." *Id.* For that reason alone, both of Plaintiffs' publicity-rights claims should be struck.

*Plaintiffs Do Not Allege Use By DeviantArt.* Plaintiffs' right-of-publicity claims also fail because Plaintiffs have failed to allege that *DeviantArt*—rather than its users—has used Plaintiffs' names or likenesses. "[B]oth the statutory and common law versions of a right of publicity claim require that the defendant actually use the plaintiff's likeness." *Perfect 10, Inc. v. Google, Inc.*, No. 04-cv-9484, 2010 WL 9479060, at *13 (C.D. Cal., July 30, 2010) (citation omitted). But here, the Complaint's only well-pleaded allegation of "use" is that DeviantArt's *users* have "used [DreamUp] to create works using the names of Plaintiffs . . . in prompts." Compl. ¶ 171. And while the Complaint alleges that users rely on DreamUp to create those works, "'[c]ontributing' to someone's violation of [a publicity right] is not the same as actually 'violating' it." *Perfect 10*, 2010 WL 9479060, at *13 (rejecting publicity-rights claim for failure to establish use by defendant).[15]

### 3.    The First Amendment Bars Plaintiffs' Publicity Claims

Finally, because Plaintiffs' right-of-publicity claims against DeviantArt mainly target the creation of new works of visual art, *see supra* at 8–11, they are subject to a First Amendment defense. "The freedom of expression protected by the First Amendment exists to preserve an uninhibited marketplace of ideas," and its "protections may extend to all forms of expression, including written and spoken words (fact or fiction), music, films, paintings, and entertainment, whether or not sold for a profit." *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 57–58 (2006). The First Amendment thus unambiguously protects using AI tools to create visual works—particularly those that reflect users' text prompts, and thus "communicate some idea or concept" through a visual medium. *See City of Sparks*, 500 F.3d at 956.

---

[15] *See Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418, 2021 WL 3621837, at *3 (N.D. Cal. Aug. 16, 2021) (citing cases dismissing publicity claims based on use of names or likenesses by "third parties . . . on the defendant's websites").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1    California courts employ a "Transformative Use" test to "balance [] a celebrity's right to

2    control the commercial exploitation of his or her likeness or identity and the First Amendment

3    right of free expression." *Kirby*, 144 Cal. App. 4th at 58.  To apply the test, courts "examine and

4    compare the allegedly expressive work with the [use of the plaintiff's identity] to discern if the

5    defendant's work contributes significantly distinctive and expressive content."  *Id.* at 61.  When

6    the plaintiff's name or likeness is merely "one of the 'raw materials' from which an original work

7    is synthesized," *id.* at 58 (citation omitted), the First Amendment requires dismissal of a right-of-

8    publicity claim challenging that synthesis, *see Winter*, 30 Cal. 4th at 888–890; *see also Arenas*,

9    881 F. Supp. 2d at 1190–91 (noting that "[t]he potential reach of the transformative use defense is

10   broad" and granting section 425.16 motion to strike publicity claim (citation omitted)).

11   The allegations in the Complaint establish that DreamUp's outputs are necessarily

12   transformative.  While Plaintiffs allege that the visual works created by users might incorporate

13   their "artistic style," Compl. ¶ 211, Plaintiffs admit that the resulting visual works are far from

14   visually identical to the originals, *see id.* ¶¶ 93, 192–93; *see also Kirby*, 144 Cal. App. 4th at 59

15   (visually comparing plaintiffs' likeness to defendant's work to determine transformativeness).

16   They also allege that the resulting visual works reflect a combination of data gleaned from "billions

17   of [other] images" used to train Defendants' AI tools, *see, e.g.*, Compl. ¶¶ 25, 179, along with

18   users' text prompts, which can communicate an infinite number of ideas, messages, or concepts,

19   *see id.* ¶ 91; *see also Kirby*, 144 Cal. App. at 59 (work transformative because it was "more than

20   a mere likeness or literal depiction" of plaintiff, despite "shar[ing] similarities").

21   Put another way, even assuming that the resulting visual works reflect Plaintiffs'

22   "likeness[es]" via their "artistic style," any such likeness is completely transformed by the

23   diffusion process into "something new, with a further purpose or different character, altering the

24   first with new expression, meaning, or message."  *Comedy III*, 25 Cal. 4th at 404 (quoting

25   *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994), and holding that this inquiry,

26   borrowed from copyright's fair use test, is "at the heart of any judicial attempt to square the right

27   of publicity with the First Amendment").  Indeed, the small handful of Plaintiffs' images that (they

28   allege) were used to train Stable Diffusion, *see* Compl. ¶¶ 28 n.1, 29 n.2, 30 n.3, pale in comparison

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

to the "over five billion images" on which that model was allegedly trained, *id.* ¶ 57. When Plaintiffs' alleged likenesses comprise such a tiny fraction of the expressive content that informs the challenged works, the First Amendment bars any right-of-publicity claim. *See De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 863–64 (2018) (reversing denial of anti-SLAPP motion because likeness constituted only "4.2 percent" of defendant's work, making use transformative even though plaintiff was realistically depicted). And even if Plaintiffs could allege that DeviantArt used their names, *but see supra* at 18–19, any use of those names to create DreamUp outputs would be transformative under the same logic. *See Ross v. Roberts*, 222 Cal. App. 4th 677, 687–88 (2013) (rapper's use of the "name and certain details of an infamous criminal's life" to create a "celebrity identity . . . of a cocaine kingpin turned rapper" was transformative, because rapper "clearly added new expression").

## V.   CONCLUSION

For the foregoing reasons, the Court should grant DeviantArt's anti-SLAPP motion under Cal. Code Civ. Proc. § 425.16 and strike Plaintiffs' right-of-publicity claims against DeviantArt. *See* Compl. ¶¶ 201–22.


Dated:  April 18, 2023

Respectfully submitted,

LATHAM & WATKINS LLP

By:   */s/ Andrew M. Gass*

Andrew M. Gass (SBN 259694)
  *andrew.gass@lw.com*
Michael H. Rubin (SBN 214636)
  *michael.rubin@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600

*Attorneys for Defendant DeviantArt, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEVIANTART'S ANTI-SLAPP
MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO