COOLEY LLP
ANGELA L. DUNNING (212047)
adunning@cooley.com
J. ASHETON LEMAY (*pro hac vice*)
alemay@cooley.com
KAYLA BLAKER (*pro hac vice*)
kblaker@cooley.com
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     (650) 843-5000
Facsimile:      (650) 849-7400

JUDD D. LAUTER (290945)
jlauter@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, California 94111
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

*Counsel for Defendant Midjourney, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, an individual; KELLY MCKERNAN, an individual; KARLA ORTIZ, an individual, <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> STABILITY AI LTD., a UK corporation; STABILITY AI, INC., a Delaware corporation; MIDJOURNEY, INC., a Delaware corporation; DEVIANTART, INC., a Delaware corporation, <br><br> Defendants. | Case No. 3:23-cv-00201-WHO <br><br> **DEFENDANT MIDJOURNEY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND TO STRIKE CLASS CLAIMS** <br><br> Date:        July 19, 2023 <br> Time:       2:00 p.m. <br> Courtroom: 2, 17th Floor <br> Judge:      William H. Orrick <br><br> Trial Date: None <br> Date Action Filed: January 13, 2023 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE ...............................viii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.   INTRODUCTION .................................................................................................... 1

II.  SUMMARY OF RELEVANT FACTS AND ALLEGATIONS ........................................ 2

    A.   Named Plaintiffs ......................................................................................... 2

    B.   Defendants and Their AI Image Products ................................................... 3

    C.   Plaintiffs' Hodgepodge Theories of Wrongdoing ....................................... 4

    D.   Plaintiffs' Class Allegations ....................................................................... 6

III. LEGAL STANDARDS .............................................................................................. 6

    A.   Motions to Dismiss Under Rule 12(b)6 ....................................................... 6

    B.   Motions to Strike Under Rule 12(f) ............................................................ 6

IV.  ALL CLAIMS AGAINST MIDJOURNEY SHOULD BE DISMISSED ............................ 7

    A.   Plaintiffs Fail to Adequately Plead Direct or Vicarious Copyright
        Infringement (Claims 1, 2) .......................................................................... 7

        1.   Plaintiffs do not allege valid copyright registrations for their Works ......... 7

        2.   Plaintiffs fail to plead infringement by Midjourney ................................... 8

        3.   Plaintiffs fail to allege cognizable violations of rights to prepare
            derivative works and to perform works ..................................................... 11

        4.   Plaintiffs fail to plead a viable claim for vicarious infringement .............. 12

    B.   Plaintiffs Fail to Adequately Plead a Violation of the DMCA (Claim 3) ............. 14

        1.   Plaintiffs identify no Work from which CMI was altered or
            removed ..................................................................................................... 15

        2.   Plaintiffs' improper shotgun pleading fails to articulate
            Midjourney's alleged involvement in the alteration or removal of
            CMI ........................................................................................................... 16

        3.   Plaintiffs fail to plead any facts to establish scienter ............................... 16

    C.   Plaintiffs' Right of Publicity Claims (Claims 4, 5) Should Be Dismissed ......... 17

    D.   Plaintiffs Fail to Plead a Viable Claim for Unfair Competition (Claim 6) .......... 19

    E.   Plaintiffs' Claim for Declaratory Relief is Redundant and Improper (Claim
        8) ............................................................................................................... 21

V.   PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN UNDER RULE 12(f) ............. 21

        1.   No purported "Damages Class" can be certified ...................................... 22

        2.   No purported "Injunctive Relief Class" can be certified .......................... 25

VI.  CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)........................................................................ 13, 14

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  744 F.3d 595 (9th Cir. 2014)........................................................................ 11, 15

*Apple Computer, Inc. v. Microsoft Corp.*,
  759 F. Supp. 1444 (N.D. Cal.), *on reconsideration*, 779 F. Supp. 133 (N.D.
  Cal. 1991), *and aff'd*, 35 F.3d 1435 (9th Cir. 1994) .............................................. 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................ 6, 13, 16

*Bates v. Bankers Life & Cas. Co.*,
  993 F. Supp. 2d 1318 (D. Or. 2014) ........................................................................ 21

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ............................................................ 9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 6

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985)........................................................................ 10

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
  149 F. Supp. 3d 1167 (N.D. Cal. 2015) ........................................................................ 10

*Block v. Major League Baseball*,
  65 Cal. App. 4th 538 (1998) ........................................................................ 24

*Brazil v. Dell Inc.*,
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) ........................................................................ 21

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999)........................................................................ 20

*Bureerong v. Uvawas*,
  922 F. Supp. 1450 (C.D. Cal. 1996)........................................................................ 6

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002)........................................................................ 10

*Colaprico v. Sun Microsystems, Inc.*,
  758 F. Supp. 1335 (N.D. Cal. 1991) ........................................................................ 7

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page(s)

3

*Columbia Pictures Indus., Inc. v. Fung,*
4
    710 F.3d 1020 (9th Cir. 2013)..............................................................................13

5

*Dahlia v. Rodriguez,*
    735 F.3d 1060 (9th Cir. 2013)................................................................................6

6

*Daniels-Hall v. Nat'l Educ. Ass'n,*
7
    629 F.3d 992 (9th Cir. 2010)..................................................................................6

8

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003)................................................................................................20

9

*Destfino v. Reiswig,*
10
    630 F.3d 952 (9th Cir. 2011)................................................................................16

11

*Dolls Kill, Inc. v. Zoetop Bus. Co.,*
12
    2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ...................................................15

13

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011)................................................................................25

14

*Ellison v. Robertson,*
15
    357 F.3d 1072 (9th Cir. 2004)..............................................................................13

16

*Fantasy, Inc. v. Fogerty,*
17
    984 F.2d 1524 (9th Cir. 1993)................................................................................6

18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991)................................................................................................7

19

*Football Ass'n Premier League Ltd. v. YouTube, Inc.,*
20
    297 F.R.D. 64 (S.D.N.Y. 2013) ....................................................................23, 24

21

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC,*
22
    139 S. Ct. 881 (2019)..........................................................................................7, 8

23

*FPX, LLC v. Google, Inc.,*
    276 F.R.D. 543 (E.D. Tex. 2011)..........................................................................23

24

*Free Speech Sys., LLC v. Menzel,*
25
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) ...............................................................15

26

*Frost-Tsuji Architects v. Highway Inn, Inc.,*
27
    2015 WL 263556 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir.
    2017) ....................................................................................................................15

28

COOLEY LLP
ATTORNEYS AT LAW

iii

**DEFENDANT MIDJOURNEY'S NOTICE &**
**MOTION TO DISMISS AND/OR STRIKE**
**CASE NO.: 3:23-CV-00201-WHO**

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page(s)

3

*General Tel. Co. of S.W. v. Falcon*,
457 U.S. 147 (1982) ................................................................................................ 7, 21

4

*In re High-Tech Empl. Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ........................................................................ 22

5

6

*Hovsepian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ........................................................... 7, 21

7

*Huynh v. Jabil Inc.*,
2023 WL 1802417 (N.D. Cal. Feb. 7, 2023) ................................................................. 22

8

9

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .............................................................. 16

10

11

*Izmo, Inc. v. Roadster, Inc.*,
2019 WL 2359228 (N.D. Cal. June 4, 2019) .................................................................. 8

12

13

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
617 F.3d 1146 (9th Cir. 2010) ..................................................................................... 19

14

*Kevari v. Scottrade, Inc.*,
2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ............................................................... 25

15

16

*Kifle v. YouTube LLC*,
2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) ................................................................. 8

17

18

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ............................................................... 15

19

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ...................................................................................... 24

20

21

*Lautemann v. Bird Rides, Inc.*,
2019 WL 3037934 (C.D. Cal. May 31, 2019) ................................................................. 25

22

23

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) ..................................................................................... 11

24

25

*Malasky v. Esposito*,
2019 WL 79032 (N.D. Cal. Jan. 2, 2019), *aff'd*, 781 F. App'x 643 (9th Cir.
2019) ........................................................................................................................ 21

26

27

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) ................................................................................. 18, 19

28

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Mangindin v. Wash. Mut. Bank*,
  637 F. Supp. 2d 700 (N.D. Cal. 2009) ................................................................. 21

*Manning v. Boston Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2013) ................................................................................ 22

*McDonald v. West*,
  138 F. Supp. 3d 448 (S.D.N.Y. 2015) ................................................................. 19

*Mohanna v. Carrington Mortg. Servs. LLC*,
  2018 WL 3730419 (N.D. Cal. Aug. 6, 2018) ....................................................... 20

*Montz v. Pilgrim Films & Television, Inc.*,
  649 F.3d 975 (9th Cir. 2011) .............................................................................. 19

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
  2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ................................................ 9, 10

*O'Neal v. Sideshow, Inc.*,
  583 F. Supp. 3d 1282 (C.D. Cal. 2022) ............................................................... 15

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  823 F. App'x 516 (9th Cir. 2020) ....................................................................... 20

*Parziale v. HP, Inc.*,
  2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) .................................................... 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...................................................................... 12, 13

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) .............................................................................. 14

*Perfect 10, Inc. v. Google, Inc.*,
  2010 WL 9479060 (C.D. Cal. July 30, 2010) ...................................................... 18

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
  2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) (Orrick, J.) ................................... 22

*Roblox Corp. v. Wowwee Group Ltd.*,
  2023 WL 2433970 (N.D. Cal. Mar. 9, 2023) ......................................................... 8

*Roth Greeting Cards v. United Card Co.*,
  429 F.2d 1106 (9th Cir. 1970) ............................................................................ 10

*Ruegsegger v. Caliber Home Loans, Inc.*,
  2019 WL 8163640 (C.D. Cal. Jan. 8, 2019) ........................................................ 21

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......................................................... 7, 21, 22

*Smith v. Weeknd*,
2019 WL 6998666 (C.D. Cal. Aug. 23, 2019) ...................................................... 14

*Solano v. Playgirl, Inc.*,
292 F.3d 1078 (9th Cir. 2002) ............................................................................... 17

*Sollberger v. Wachovia Sec., LLC*,
2010 WL 2674456 (C.D. Cal. June 30, 2010) ....................................................... 16

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ................................................................................... 6

*Sound & Color, LLC v. Smith*,
2023 WL 2821881 (C.D. Cal. Feb. 28, 2023) ...................................................... 14

*Stevens v. CoreLogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) .......................................................................... 15, 17

*Stokes v. CitiMortgage, Inc.*,
2015 WL 709201 (C.D. Cal. Jan. 16, 2015) ......................................................... 22

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ............................................................................... 20

*Synopsys, Inc. v. ATopTech, Inc.*,
2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ................................................ 8, 9, 15

*Technology & Intell. Prop. Strategies Grp. PC v. Fthenakis*,
2011 WL 3501690 (N.D. Cal. Aug. 10, 2011) ...................................................... 21

*Tietsworth v. Sears, Roebuck & Co.*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................ 25

*UAB "Planner5D" v. Facebook, Inc.*,
2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ..................................................... 7, 8

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
595 U.S. 944 (2022) ................................................................................................ 7

*Vulcan Golf, LLC v. Google, Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008) ...................................................................... 22, 23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ......................................................................................... 23, 25

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*White v. Samsung Elecs. Am., Inc.*,
971 F.2d 1395 (9th Cir. 1992)...............................................................................17

**Statutes**

15 U.S.C.
§ 1125...........................................................................................................4, 20

17 U.S.C.
§ 102.........................................................................................................18, 19
§ 103...............................................................................................................18
§ 106.......................................................................................................*passim*
§ 301.........................................................................................................18, 20
§ 411.............................................................................................................7, 8
§ 412...............................................................................................................24
§§ 1201–05..................................................................................................4, 15
§ 1202.....................................................................................................*passim*

Cal. Bus. & Prof. Code §§ 17200 ...........................................................4, 20, 21

Cal. Civ. Code
§ 3344.......................................................................................................4, 17

**Other Authorities**

Fed. R. Civ. P.
8...................................................................................................................9, 16
12(b)(6) ...............................................................................................................6
12(f).............................................................................................6, 21, 22, 25
23.........................................................................................................*passim*

4 NIMMER ON COPYRIGHT (2010)

§ 19D.03.........................................................................................................19

3 NIMMER ON COPYRIGHT (2022)

§ 8.09...............................................................................................................12

§ 8.14...............................................................................................................12

2 PATRY ON COPYRIGHT § 4:14.............................................................................19

COOLEY LLP
ATTORNEYS AT LAW

vii

**DEFENDANT MIDJOURNEY'S NOTICE &
MOTION TO DISMISS AND/OR STRIKE
CASE NO.: 3:23-CV-00201-WHO**

## NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE

**PLEASE TAKE NOTICE** that on July 19, 2023 at 2:00 p.m., at the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, in Courtroom 2, 17th Floor, Defendant Midjourney, Inc. ("Midjourney") will and hereby does move, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure ("Rules"), to dismiss the Complaint (Dkt. 1). This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice and Consideration of Documents Incorporated by Reference ("RJN"), Declaration of Judd D. Lauter ("Lauter Decl.") and exhibits thereto; other pleadings and papers on file in this action; and such other matters as may be presented to the Court at the hearing.

**STATEMENT OF RELIEF SOUGHT**: Midjourney seeks an order: (a) dismissing all claims against it under Rule 12(b)(6) on the ground that the Complaint fails to allege sufficient facts to state plausible claim for relief; and (b) striking the class claims under Rule 12(f) on the ground that it is evident from the Complaint that this case cannot be maintained as a class action.

COOLEY LLP
ATTORNEYS AT LAW

viii

DEFENDANT MIDJOURNEY'S NOTICE &
MOTION TO DISMISS AND/OR STRIKE
CASE NO.: 3:23-CV-00201-WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case concerns artificial intelligence ("AI") models designed to enhance human creativity. Generative AI is a burgeoning technology in which software is trained to identify relationships and patterns in data and generate new content ("output"), such as text, images, and audio, based on that training. Some models are trained on vast text repositories to be able to predict the sequence of words best suited to respond to a question, complete lines of code, or even create original stories and songs. Other models, like those at issue here, are trained on millions or even billions of publicly available images on the Internet to recognize the quintessential characteristics and dimensions of the people, places, and things depicted in them, and, in turn, generate new images in response to natural language text prompts (e.g., "a dog wearing a baseball cap while eating ice cream").

As Plaintiffs concede, "none of the ... output images provided in response to a particular Text Prompt is likely to be a close match for any specific image in the training data." (¶ 93.)[1] This stands to reason, as any one image comprises an infinitesimal fragment of a model's training, just as each visual (every face, sunset, painting) an artist has ever perceived and every text a writer has ever read comprises a tiny fraction of the content and imagery that inform their imagination.

Named plaintiffs in this putative class action are three visual artists who assert that their rights were violated when their artwork was used to train Stable Diffusion, an open-source generative AI platform. Plaintiffs further allege that Stable Diffusion was embedded as the "image-generating engine" in "AI Image Products" offered by defendants Stability AI Ltd. and Stability AI, Inc. (together, "Stability"), Midjourney, and DeviantArt, Inc. (collectively, "Defendants"), which can be used to create images that infringe Plaintiffs' works. Plaintiffs, however, fail to allege the most basic facts necessary to state a claim against Midjourney—for themselves or any purported class.

To begin, the Complaint does not identify a single work by any Plaintiff that Midjourney supposedly used as training data. Nor do Plaintiffs identify *any* image that has ever been generated on the platform, let alone one that is actionably similar to their works. Absent such facts, they fail to plead copyright infringement (irrespective of obvious fair use defenses, which Plaintiffs ignore).

---

[1] Unless otherwise stated, citations to "¶ " and "Ex. " are to the Complaint's paragraphs and exhibits, all emphases are added, and internal citations and quotation marks are omitted.

Further, the premise permeating the Complaint—that any images created with Defendants' platforms *must* constitute infringing "derivative works," no matter how dissimilar they appear—badly misconstrues the law.  Two of the Plaintiffs do not even own a copyright registration, depriving them of standing.  The claims for direct and vicarious copyright infringement (Claims 1, 2) must be dismissed.

The same is true of all other claims against Midjourney.  Claim 3—for violation of the Digital Millennium Copyright Act ("DMCA")—fails because, among other things, Plaintiffs do not identify any copyright management information ("CMI") that Midjourney purportedly altered or removed, with the requisite scienter or otherwise.  The right-of-publicity claims (Claims 4, 5) cannot survive, as Plaintiffs plead no instance in which Midjourney has used their names or "artistic identities" for any purpose and, in any case, the alleged misappropriation of their "identities" is just a repackaged infringement claim preempted by the Copyright Act.  Plaintiffs' state law unfair competition claim (Claim 6) fails for several reasons, including that it lacks a viable predicate violation and is preempted to the extent it is based on copyright infringement.  And their claim for declaratory relief (Claim 8) simply mirrors Plaintiffs' other (meritless) claims, rendering it both redundant and improper.  In sum, the claims are all generalized "noise" and no substance, necessitating dismissal.

Finally, even if Plaintiffs could state some cognizable, individual claim for relief, their class claims should be stricken.  Although Midjourney recognizes the Court's reluctance to adjudicate class allegations before the certification stage, the nature of the claims alleged, and the vast and individualized permutations of fact and law that will need to be separately assessed as to "billions" of alleged Works, renders this case facially unsuitable to class treatment under any class definition.

## II.    SUMMARY OF RELEVANT FACTS AND ALLEGATIONS[2]

### A.    Named Plaintiffs

Named plaintiffs Sarah Andersen, Kelly McKernan, and Karla Ortiz (together, "Plaintiffs") claim to be artists residing in Oregon, Tennessee, and California, respectively.  (¶¶ 28–30.)  The Complaint alleges that each "created and owns" a "copyright interest" in "Works used as Training Images."  (*Id.*)[3]  "Works" is defined to include "any image that was used to train any version of

---

[2] Although the Complaint badly misconstrues the facts, Midjourney confines its discussion to the facts as pleaded and those incorporated by reference or subject to judicial notice.

[3] "Training Image" is defined to mean, in general, "an image, or image paired with a descriptive text caption, that is included among the training data for a machine-learning process."  (¶ 25.)

Stable Diffusion that was offered directly and/or incorporated into another product by one or more Defendants during the Class Period." (¶ 27.)  Although the Complaint provides URLs where exemplar "Works" by Plaintiffs can allegedly be found (¶¶ 28–30 & nn.1–3), it does not specify which images appearing at the corresponding webpages were created by Plaintiffs, and many appear to be signed by or attributed to unrelated third parties. (Lauter Decl. ¶¶ 2–4 & Exs. A–C.)

Of the three named Plaintiffs, only Andersen claims to own a copyright registration. (¶ 28.) The Complaint alleges that her registrations cover collections that "include Works used as Training Images," but does not identify any such Works or which registration(s) purportedly cover them. (*Id.*)

### B.    Defendants and Their AI Image Products

According to Plaintiffs, this class action "concerns a DeviantArt software product called DreamUp, a Midjourney software product, and a Stability software product called DreamStudio, all of which are AI-Image Products and, upon information and belief, built on a Stability Software Library called Stable Diffusion." (¶ 50.)  Each is described more fully below.

**<u>Stability</u>**:  Plaintiffs allege that Stability "created, trained, and maintain[s] Stable Diffusion," an AI software product that "produces images in response to Text Prompts." (¶¶ 33, 52.)  Stability allegedly released Stable Diffusion in August 2022 under a "permissive open-source license" pursuant to which "programmers and users can download for free the software and its associated machine-learning models derived from the Training Images." (¶ 53.)  That same month, Stability allegedly released DreamStudio, a web-based platform through which Stable Diffusion can be accessed. (¶ 55.)  The Complaint alleges there have been at least five "major releases" of Stable Diffusion but does not distinguish between these versions. (¶ 52.)

Plaintiffs claim that "Stability scraped, and thereby copied over five billion images from websites as the Training Images used as training data for Stable Diffusion" without negotiating licenses or seeking consent from the creators. (¶¶ 57, 58.)  Stable Diffusion was allegedly trained using a two-part "diffusion technique" using "complicated mathematics, linear algebra, and a series of algorithms" to first recognize addition of "noise" (unstructured, random data) to these images, and to then "denoise" the data to generate new "images that are similar to those found in its training data." (¶¶ 66–70.)  Plaintiffs further claim that, "[b]y training Stable Diffusion on the Training Images,

Stability caused those images to be stored at and incorporated into Stable Diffusion as compressed copies," which it then uses "in generating its output in response to Text Prompts." (¶¶ 3, 58, 59.)

**DeviantArt**: DeviantArt was founded in 2000 as an online community where digital artists post and share their work. (¶ 62.) Plaintiffs claim that "[t]housands—and possibly millions—of the Training Images" Stability used to train Stable Diffusion were "copied from DeviantArt." (¶ 63.) Plaintiffs further claim that DeviantArt "created, sells, markets and distributes DreamUp," a commercial product released in November 2022 that "relies on Sable Diffusion to produce images." (¶ 35; *see* ¶ 129 (quoting DeviantArt's CEO on use of Stable Diffusion in DreamUp).)

**Midjourney**: Midjourney is a San Francisco-based company with only "11 full-time staff." (¶¶ 34, 132, 133; *see also* Lauter Ex. D (describing Midjourney as a "small self-funded team").) Midjourney "created, sells, markets and distributes" an "online AI-based image generator" of the same name, that uses "Text Prompts as input and produces digital images as output." (¶¶ 34, 134.)

Many of the allegations about Midjourney are internally inconsistent. For example, the Complaint simultaneously alleges that its product was first released in beta on three different dates—March, July and August 2022. (¶¶ 61, 135, 149.) It also alleges (without actual or stated basis) that "Midjourney relies on Stable Diffusion as its underlying software engine for generating images" (¶ 134), elsewhere asserting that only some "iterations" "used" Stable Diffusion (¶ 34) and, later, that the alleged August 2022 beta version did so (¶ 149). Plaintiffs also plead on information and belief that "the version of the Midjourney Product currently available was trained on a *subset* of the images used to train Stable Diffusion," but do not say what that subset consisted of, or when, how, or by whom this training was supposedly implemented. (¶ 34.) Notably, Plaintiffs do not allege that Midjourney has ever trained *any* version of its platform on any Work belonging to them.

**C.     Plaintiffs' Hodgepodge Theories of Wrongdoing**

Plaintiffs filed this suit in January 2023, alleging claims against all Defendants for: (1/2) direct and vicarious copyright infringement (17 U.S.C. § 106); (3) violation of the DMCA (17 U.S.C. §§ 1201–05); (4/5) violation of their rights of publicity (Cal. Civ. Code § 3344; common law); (6) unfair competition (15 U.S.C. § 1125; Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"); common law); and (8) declaratory relief. Claim 7, for breach of contract, is asserted against DeviantArt only.

**Copyright Infringement (Claims 1, 2)**: The thrust of the copyright claims is that Plaintiffs' "copyright interest[s]" in unidentified Works were violated when, without their permission, Stability allegedly used those Works to train Stable Diffusion and Defendants then allegedly incorporated Stable Diffusion as an "embedded image-generating engine" in their AI Image Products to enable users to create images.  (¶¶ 2–4, 27, 65.)  Plaintiffs also claim that, by virtue of how Stable Diffusion works, every output from Defendants' platforms must be unauthorized "derivative work[s]" (¶¶ 4, 18, 20, 95), even though, by Plaintiffs' admission, "*none*" of the images generated "is likely to be a close match for any specific image in the training data" (¶ 93).  Plaintiffs assert that all Defendants are both *directly* liable for this conduct, and *vicariously* liable for images generated in response to user text prompts that include Plaintiffs' names (deemed "Fakes").  (¶¶ 171–72.)  The Complaint does not identify any instance in which Midjourney's platform was used to create a "Fake."

**DMCA (Claim 3)**: Plaintiffs accuse all Defendants of violating the DMCA by "remov[ing] or alter[ing] CMI from images that are owned by Plaintiffs and the Class by training Stable Diffusion on those images and designing it to omit any CMI as part of the output."  (¶ 183.)  Yet, Plaintiffs elsewhere allege that only Stability (not Midjourney) trained and designed Stable Diffusion. (¶¶ 1–3, 25, 33, 57–58, 107.)  Plaintiffs do not allege that Midjourney trained its own product on any Works of Plaintiffs, identify no CMI that it allegedly removed or altered in training, and identify no output from the Midjourney platform from which any purported CMI was removed or altered.

**Right of Publicity (Claims 4, 5)**: Plaintiffs claim that Defendants are violating their statutory and common law rights of publicity because platform users "can use" an "artist's name to generate new works in the artist's style" by including it in a text prompt; AI-generated works "in the style of" unidentified artists are "already sold on the internet"; and this "siphon[s] commissions from the artists."  (¶¶ 5, 8, 203, 218.)  The Complaint also includes generalized allegations that Defendants use Plaintiffs' names and "artistic identities" to advertise and promote their AI platforms.  (¶¶ 205, 217, 219.)  Plaintiffs, however, do not cite a single example of Midjourney ever doing any of this.

**Unfair Competition/Declaratory Relief (Claims 6, 8)**: Plaintiffs allege that Defendants committed unfair competition by infringing Plaintiffs' copyrights and violating the DMCA (¶ 224), and that Plaintiffs are entitled to a declaration judgment as to these identical violations (¶ 239).

### D.       Plaintiffs' Class Allegations

In addition to their own interests, Plaintiffs seek to represent three putative "Classes," namely:

(a) an "Injunctive Relief Class" comprised of:

All persons or entities nationalized and/or domiciled in the United States that own a copyright interest in any work that was used to train any version of an AI Image Product that was offered directly and/or incorporated into another product by one or more Defendants during the Class Period.

(b) a "Damages Class," which inexplicably has the identical definition; and

(c) a "DeviantArt Damages Subclass," which pertains to Deviant Art only, not Midjourney.

Plaintiffs also refer to a "Class Period" (¶¶ 27–30, 41) that is never alleged or defined.

## III.    LEGAL STANDARDS

### A.       Motions to Dismiss Under Rule 12(b)6

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In assessing plausibility, a court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (same); *Twombly*, 550 U.S. at 555 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation.").  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.       Motions to Strike Under Rule 12(f)

Rule 12(f) allows a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike serve to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (quoting *Fantasy, Inc.*

1   *v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).  Motions to strike may be granted where "it is

2   clear that the matter to be stricken could have no possible bearing on the subject matter of the

3   litigation." *Colaprico v. Sun Microsystems, Inc*., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).  As the

4   Supreme Court has explained in the context of class claims, "[s]ometimes the issues are plain

5   enough from the pleadings to determine whether the interests of the absent parties are fairly

6   encompassed within the named plaintiff's claim." *General Tel. Co. of S.W. v. Falcon*, 457 U.S.

7   147, 160 (1982).  Where the complaint demonstrates that a class action cannot be maintained on

8   the facts alleged, courts have granted motions to strike class allegations at the pleading stage.  *See*

9   *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009) (granting motion to strike

10  class); *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (same).

11  **IV.    ALL CLAIMS AGAINST MIDJOURNEY SHOULD BE DISMISSED**

12          **A.    Plaintiffs Fail to Adequately Plead Direct or Vicarious Copyright Infringement**
13                 **(Claims 1, 2)**

14          To establish copyright infringement, a plaintiff must plead and prove both: "(1) ownership

15  of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist*

16  *Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The Complaint pleads neither.

17                 **1.    Plaintiffs do not allege valid copyright registrations for their Works**

18          As a threshold matter, the direct and vicarious copyright infringement claims by Plaintiffs

19  McKernan and Ortiz must be dismissed for lack of a registration. "The first element of a copyright

20  claim requires a plaintiff to plausibly allege that it owns a valid copyright registration." *UAB*

21  *"Planner5D" v. Facebook, Inc.*, 2019 WL 6219223 *5 (N.D. Cal. Nov. 21, 2019) (Orrick, J.). A

22  valid registration is a "prerequisite for bringing a 'civil action for infringement' of the copyrighted

23  work." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 944 (2022) (quoting 17 U.S.C.

24  §411(a)); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 885 (2019) (same).

25          Here, the Complaint alleges that McKernan and Ortiz own unspecified "copyright interests"

26  in unidentified Works (¶¶ 29, 30), but does not plead that either holds a copyright *registration* for

27  *any* works, let alone any Works at issue here.  It is blackletter law that, having failed to plead

28  ownership of a copyright registration, McKernan and Ortiz's copyright infringement claims must

be dismissed.  *See Roblox Corp. v. Wowwee Grp. Ltd.*, 2023 WL 2433970, at *4 (N.D. Cal. Mar. 9, 2023) (dismissing copyright infringement claims for failure to plead a registration as required by § 411(a)); *Kifle v. YouTube LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021) (same).

Although the Complaint alleges that the third Plaintiff, Andersen, owns various copyright registrations "for sixteen collections that *include* Works used as Training Images" (¶ 28), it does not identify which Works at issue are covered by those Registrations, which is impossible to discern from the Registrations themselves.  (*See* Exs. 1–16.)  It also does not allege that any of those registrations cover Works allegedly copied or used by *Midjourney*.  As such, the Complaint fails to adequately identify any registered Work that Midjourney is supposed to have infringed.

If the Court grants Andersen leave to amend, she should be required to plead facts establishing registration of specific at-issue Works.  However, claims related to any of Andersen's unregistered Works and all claims alleged by McKernan and Ortiz must be dismissed with prejudice.  "A plaintiff cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending [its] complaint."  *UAB "Planner 5D"*, 2019 WL 6219223, at *7 (citing *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019)).  Rather, "[t]he Supreme Court has made clear that the registration requirement of § 411(a) was 'akin to an administrative exhaustion requirement that the owner must satisfy *before* suing to enforce ownership rights.'"  *Izmo*, 2019 WL 2359228, at *2 (quoting *Fourth Estate*, 139 S. Ct. at 887).  Allowing Plaintiffs to amend to plead registrations obtained after filing suit "would undermine the objectives animating the Supreme Court's decision in *Fourth Estate*."  *Id.*; *see Roblox*, 2023 WL 2433970, at *4 (same).

### 2.    Plaintiffs fail to plead infringement by Midjourney

All Plaintiffs' copyright infringement claims, direct and vicarious, fail as a matter of law for the additional reason that Plaintiffs do not identify a single registered "Work" that was used *by Midjourney* to train its platform, or any allegedly infringing image generated as output.

A copyright plaintiff "must plead some non-speculative facts about what [the defendant] infringed and how."  *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013).  Vague claims that "never make clear what [was] copied" or never describe the "works that infringe [plaintiff's] [c]opyright" fail to put a defendant on fair notice of the claim against it.

*Id.* (dismissing for failure to satisfy Rule 8).  For example, in *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, Judge Chesney dismissed a claim for infringement of medical software and manuals as the complaint did not describe what was copied and "in what [defendant] document or software such copying is manifest."  2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (citing *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017)).

The allegations against Midjourney are likewise fatally deficient regarding both the Works Midjourney purportedly infringed and the allegedly infringing output its users purportedly created.

**<u>Failure to plead infringement of input:</u>**  Plaintiffs claim in generalized terms that all "Defendants" directly infringed their Works by using them as training images.  (¶¶ 155–57.)  However, "Works" is defined as "any image that was *used to train any version of Stable Diffusion*."  (¶ 27.)  Only Stability is alleged to have trained Stable Diffusion (¶¶ 1–3, 25, 33, 57–58, 107), not Midjourney.  To the extent Plaintiffs' direct infringement claims are predicated on use of their images to train Stable Diffusion, Plaintiffs fail to state a claim against Midjourney.

Plaintiffs' conclusory allegations that Midjourney made unauthorized use of publicly accessible images to train its own platform fare no better.  Plaintiffs plead on information and belief that "the version of the Midjourney Product currently available was trained on a *subset* of the [billions of] images used to train Stable Diffusion."  (¶ 34; *see also* ¶¶ 2, 25.)  Plaintiffs also plead that "Midjourney relies on appropriating millions of copyrighted images created by artists and using these images as Training Images" (¶ 144) and that Midjourney has been "helping themselves to millions of copyrighted works for free" (¶ 152).  But nowhere does the Complaint plead what was in this "subset" of training material, or that it included even one work by *Plaintiffs*.  The absence of well-pleaded factual allegations establishing use by Midjourney of any of Plaintiffs' artwork is fatal to their claims.  *Synopsys*, 2013 WL 5770542, at *4.

**<u>Failure to identify allegedly infringing output:</u>**  Plaintiffs, obliquely, also appear to allege that Defendants are directly liable for infringing images created by users because their platforms "generate digital images and other output that are derived exclusively from the Training Images, and that add nothing new."  (¶ 164; *see* ¶¶ 158, 160 (alleging Defendants directly infringed Plaintiffs' rights by reproducing, distributing, performing, and displaying "one or more of the

Works" and by "prepar[ing] Derivative Works").)   Plaintiffs also separately allege that all Defendants are vicariously liable for their users' creation and sale of "Fakes."  (¶¶ 171–73.)  Yet the Complaint does not identify a single alleged "Derivative Work" or "Fake" generated using the Midjourney platform.   That is, the Complaint does not plead any example of output from Midjourney's platform that allegedly infringes Plaintiffs' rights.  This, too, is fatal to their claims.

Just as Plaintiffs are required to plead which Works were infringed, they must also identify the works that are allegedly infringing.  *See Becton*, 2020 WL 1877707, at * 4.  Among other things, this enables the Court to consider whether there is substantial similarity between the accused work and the protectable elements of Plaintiffs' Works, as required to establish infringement.  *MultiCraft Imports*, 2017 WL 5664996, at *4.  Where, as here, a complaint lacks "allegations of even representative infringements, [it] fails to provide notice as a matter of law."  *Id.* at *3; *see also*, *Blizzard Ent'mt., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing claim lacking allegations identifying "representative acts of infringement").

Plaintiffs' failure to identify any allegedly infringing output requires dismissal for a related reason: they do not allege the requisite substantial similarity of protected expression.  Infringement requires "substantial similarity between the infringing work and the work copyrighted; and that similarity must have been caused by the defendant's having copied the copyright holder's creation."  *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970).  To assess substantial similarity, the Ninth Circuit applies a two-part test.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  The "extrinsic test" is an "objective comparison of specific expressive elements"; it focuses on the "articulable similarities" between two works' *protectible elements, standing alone*."  *Id*. (emphasis in original); *see also Berkic v. Crichton*, 761 F.2d 1289, 1293–94 (9th Cir. 1985) (excluding ideas and scenes-a-faire in assessing substantial similarity).  The "intrinsic test," a subjective comparison, focuses on "whether the ordinary, reasonable audience would find the works substantially similar" in "total concept and feel."  *Cavalier*, 297 F.3d at 822.

Here, Plaintiffs do not even attempt to plead in conclusory terms that any images generated using Midjourney's platform are substantially similar to any of Plaintiffs' Works, intrinsically or extrinsically.  Rather, they affirmatively plead just the opposite.  (*See* ¶¶ 93 ("none of the [] output

images … is likely to be a close match"), 192–93 (output is so dissimilar from asserted Works that it would be "impossible" for Plaintiffs to identify them without CMI).)  Plaintiffs' copyright claims, thus, fail out of the gate to the extent premised on Midjourney output.  Moreover, Plaintiffs cannot cure this defect by amendment, as it would require them to contradict their own pleading.  *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (explaining that amendments that contradict an earlier pleading are impermissible); *see also Parziale v. HP, Inc.*, 2020 WL 5798274, at *7 (N.D. Cal. Sept. 29, 2020) (dismissing copyright claim with prejudice and collecting cases).  Dismissal should be with prejudice.

### 3. Plaintiffs fail to allege cognizable violations of rights to prepare derivative works and to perform works

Plaintiffs' claims that Midjourney infringed their exclusive rights to prepare derivative works and to perform their Works (¶¶ 160(b), (d)) fail as a matter of law and should be dismissed.

**Preparation of derivative works (17 U.S.C. § 106(2)):**  At the heart of Plaintiffs' copyright infringement theory is the fallacy that because each output image generated using Midjourney is, in a colloquial sense, "derived" from images used to train its model, *every* such image is "*necessarily* a derivative work."  (¶ 95; *see also* ¶ 18 (defining "Derivative Work" as "output of AI Image Products," without qualification), ¶ 4 (alleging that "'new' images are based entirely on the Training Images and are derivative works"), ¶ 20 (defining "Generative AI" as a "program [that] copies training data and uses it to produce derivative works of that training data").)  Plaintiffs' gross mischaracterization as to how Defendants' respective platforms operate aside, this reasoning betrays a fundamental misunderstanding of the meaning of "derivative work" as a legal term of art.

A derivative work is one which is "substantially copied" from a prior work.  *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (upholding judgment that no reasonable jury could find alleged derivative work was substantially similar to original).  "All works are derived to a certain degree from pre-existing works.  A derivative work within the meaning of the copyright law, however, is one which substantially borrows the expression of ideas from an existing work."  *Apple Comput., Inc. v. Microsoft Corp.*, 759 F. Supp. 1444, 1454 (N.D. Cal. 1991), *on reconsideration*, 779 F. Supp. 133 (N.D. Cal. 1991), *and aff'd*, 35 F.3d 1435 (9th Cir. 1994).  Unless

a purported derivative work "is substantially similar to its forbear, it [is] nonactionable." 2 Nimmer on Copyright § 8.09 (2022).

As discussed above, Plaintiffs do not, and cannot, allege that every image generated using the Midjourney platform is substantially similar to any particular training image. Again, they allege the opposite, going so far as to suggest that, without CMI, even Plaintiffs cannot tell by looking at any output whether it might be based on their Works. (¶¶ 93, 192–93.) Plaintiffs thus falsely equivocate between "derivative work" as a copyright concept, and "derivative work" as a term they made up to describe all output created by Defendants' users. Any infringement claims relying on the former concept must be dismissed for failure to identify a single output by Midjourney that allegedly looks anything like Plaintiffs' Works. Any infringement claims relying on the latter, manufactured-for-litigation concept are not cognizable and fail as a matter of law.

**Performance (17 U.S.C. § 106(4)):** Plaintiffs allege that Midjourney has directly infringed their exclusive rights by "perform[ing] one or more of the Works publicly in violation of 17 U.S.C. § 106(4)" (¶ 160(d)), but the performance right does not apply to static images. By statute, the right is expressly limited to "literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works." 17 U.S.C. § 106(4). "Pictorial" works, such as photographs, paintings, illustrations (i.e., Plaintiffs' alleged "Works" here), are categorically excluded because it is impossible to "perform" them. 2 Nimmer on Copyright § 8.14 (2022). Plaintiffs ignore this basic distinction in attempting to invoke non-existent "performance" rights.

### 4. Plaintiffs fail to plead a viable claim for vicarious infringement

Plaintiffs' claim for vicarious copyright infringement fails for two additional reasons: (1) they do not plead facts establishing any of the elements of the claim, and (2) they plead both direct and vicarious liability based on the same alleged conduct, which is impermissible as a matter of law.

**Deficient pleading:** To plead vicarious infringement, Plaintiffs must allege facts plausibly establishing that (1) another party has engaged in direct infringement; (2) Midjourney exercises control over (i.e., has "the right and ability to supervise") that infringing conduct; and (3) Midjourney has a direct financial interest in the infringing activity. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). Plaintiffs fail to allege facts sufficient to satisfy *any* of these elements.

The premise of Plaintiffs' vicarious infringement theory is that unnamed "[i]ndividuals [deemed "Imposters"] have used AI Image Products to create works using the names of Plaintiffs and the Class in prompts" (so-called "Fakes"), that "can pass as original works by that artist." (¶ 171.)  As discussed above, however, Plaintiffs have not identified a single allegedly infringing output or purported "Fake," much less one generated by a Midjourney user inputting any Plaintiff's name into a prompt.  Nor is there any pleaded basis to conclude that any so-called "Fake" generated in response to such a prompt is or would be substantially similar to any Plaintiff's Work.  Whether one's work "can pass" as that of another artist is irrelevant if there is no substantial similarity in protected expression.  Accordingly, Plaintiffs fail to plead an act of direct infringement by another party—the first, most basic element of a claim for vicarious infringement.

The second element required Plaintiffs to plead that Midjourney has the "legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10*, 508 F.3d at 1173.  The Complaint alleges no such thing.

Regarding the third element, Plaintiffs offer the conclusory statement that "Defendants have directly and indirectly profited from acts of infringement by Imposters."  (¶ 176.)  This is nothing more than a recitation of an element of the claim and is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.  The Complaint elsewhere alleges that Midjourney receives revenue from monthly subscription fees (*e.g.*, ¶¶ 137, 138, 152), but this is no help to Plaintiffs either.  A service provider receives a "direct financial benefit" from infringing activity for purposes of vicarious infringement only where "there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1044 (9th Cir. 2013) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).  In other words, "[f]inancial benefit exists where the availability of infringing material acts as a 'draw' for customers." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).  Conversely, "flat periodic payments for service" like those paid by Midjourney users, "[ordinarily] would not constitute receiving a financial benefit directly attributable to the infringing activity" for purposes of establishing vicarious liability.  *Ellison*, 357 F.3d at 1079 (quoting S. Rep. 105-190).  Thus, Plaintiffs fail to plead facts sufficient to establish any of the elements of vicarious infringement.

1    **Contradictory pleading:** Plaintiffs may seek leave to address these pleading defects by

2 amendment, but amendment would be futile.  Plaintiffs allege that the same acts purportedly giving

3 rise to their claim for vicarious infringement also constitute *direct* infringement by Midjourney,

4 foreclosing any claim for relief based on a secondary liability theory as a matter of law.

5    Direct copyright infringement requires "that the alleged infringers violated at least one

6 exclusive right granted to copyright holders under 17 U.S.C. § 106."  *Perfect 10, Inc. v. Giganews,*

7 *Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). In contrast, vicarious infringement imposes liability for

8 *another's* direct infringement. *See Napster*, 239 F.3d at 1013 n.2 ("Secondary liability … does not

9 exist in the absence of direct infringement by a third party.").  By law, a defendant cannot be both

10 directly and vicariously liable for the same allegedly infringing act.  For example, in *Sound &*

11 *Color, LLC v. Smith*, the plaintiff brought direct and secondary infringement claims relating to the

12 creation of a purportedly infringing song.  2023 WL 2821881, at *2 (C.D. Cal. Feb. 28, 2023).  The

13 court granted dismissal of the secondary infringement claims, explaining that defendants "cannot

14 be secondarily liable for their own direct infringement."  *Id.* at *47–48; *see also Smith v. Weeknd*,

15 2019 WL 6998666, at *1–3 (C.D. Cal. Aug. 23, 2019) (same, dismissing claims).

16    In this case, Plaintiffs assert that all Defendants, including Midjourney, directly infringe

17 Plaintiffs' rights when their platforms generate images in response to user prompts.  (*See* ¶¶ 156–

18 60.)  Plaintiffs' vicarious infringement claims concern a subset of those images, namely, those

19 created by "using the names of Plaintiffs and the Class in prompts." (¶¶ 171–75.)  Having asserted

20 that any use of Midjourney to generate images necessarily results in an infringing "Derivative

21 Work" and thus constitutes *direct* infringement by Midjourney (¶¶ 95, 158), Plaintiffs' attempt to

22 hold Midjourney *vicariously* liable for that same conduct must be dismissed with prejudice.

23    **B.    Plaintiffs Fail to Adequately Plead a Violation of the DMCA (Claim 3)**

24    Plaintiffs claim that Midjourney has violated the DMCA (17 U.S.C. § 1202(b)) by removing

25 or altering CMI from Plaintiffs' Works.  (¶ 191.)  To state a claim under § 1202(b), a plaintiff must

26 plausibly allege: (1) the existence of CMI on a copyrighted work; (2) removal or alteration of that

27 CMI; (3) the removal or alteration was done "intentionally"; and (4) the removal or alteration was

28 committed "knowing, or, … having reasonable grounds to know that it would induce, enable,

facilitate, or conceal" copyright infringement.   17 U.S.C. § 1202(b); *Stevens v. CoreLogic, Inc*., 899 F.3d 666, 673 (9th Cir. 2018).   For the reasons set forth below, Plaintiffs have failed to adequately plead that Midjourney removed or altered CMI or did so with the requisite scienter.

### 1.   Plaintiffs identify no Work from which CMI was altered or removed

Plaintiffs fail to allege a single example of any of their Works from which CMI was removed or altered.   As such, they fail to allege facts sufficient to plead the second element, warranting dismissal.  *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (Orrick, J).   In *Menzel*, this Court considered conclusory claims regarding removal and distribution of CMI alleged by the counter-plaintiff, a photographer.  *Id*.  The Court dismissed the § 1202(b) claims, reasoning that because the photographer "merely alleged that his photographs 'were altered to remove certain of [his] copyright management information' without providing any facts to identify which photographs had CMI removed," he failed to state a plausible claim for relief.  *Id*.  The same result should obtain here.  *Id*.; *see also Synopsys*, 2013 WL 5770542, at *4.

Plaintiffs' defective DMCA claim cannot be cured by amendment.  Plaintiffs were required to plead specific instances in which CMI was altered or removed from originals of their Works, *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3–4 (C.D. Cal. Aug. 25, 2022) (holding that § 1201(b)(1) requires removal or alteration of CMI from originals), or otherwise *exact copies* of their Works.  *See, e.g.*, *id*.; *Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (dismissing DMCA claim because "while the works may be *substantially similar*, Defendant did not make *identical* copies of Plaintiff's works and then remove the engraved CMI"); *Frost-Tsuji Architects v. Highway Inn, Inc*., 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015) (same), *aff'd*, 700 F. App'x 674 (9th Cir. 2017); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (dismissing DMCA claim and finding that no violation exists where the works are not identical).  As noted above, however, Plaintiffs' DMCA claim is premised on allegations that output is so dissimilar to Plaintiffs' Works that they cannot identify infringement without CMI.   (*See* ¶¶ 192–93.)   Accordingly, any properly pleaded DMCA claim would impermissibly contradict the allegations in the Complaint.  *Airs Aromatics*, 744 F.3d at 600.  This claim, too, should be dismissed with prejudice.

**2.     Plaintiffs' improper shotgun pleading fails to articulate Midjourney's alleged involvement in the alteration or removal of CMI**

The DMCA claim fails for the additional reason that Plaintiffs do not plausibly plead that *Midjourney* removed or altered CMI.  The claim is styled as a "shotgun" pleading in which all allegations are directed to all Defendants, without specifying what any individual defendant is supposed to have done.  (*See* ¶¶ 181–200 (referring to "Defendants" throughout).)  This failure "to allege what role each Defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to [the] allegations." *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011).  Such pleading "deprives [d]efendants of knowing exactly what they are accused of doing wrong," and does not satisfy Rule 8(a). *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4–5 (C.D. Cal. June 30, 2010); *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011) (affirming dismissal of "shotgun pleading").

Plaintiffs' jumbled allegations are particularly incoherent when applied to Midjourney.  For instance, the Complaint alleges that all "Defendants removed or altered CMI from images that are owned by Plaintiffs and the Class by training Stable Diffusion on those images and designing it to omit any CMI as part of the output" (¶ 183), even though only Stability allegedly "created" and "trained" Stable Diffusion (¶¶ 1–3, 33).  It also alleges that "Defendants intentionally removed or altered CMI from the Works after they were posted on DeviantArt or other websites" (¶ 184), even though Midjourney has no alleged ability to remove or alter content posted to another party's website.

**3.     Plaintiffs fail to plead any facts to establish scienter**

On top of failing to identify any Work from which Midjourney removed or altered CMI, Plaintiffs have also failed to allege facts plausibly establishing that Midjourney *intentionally* did so, or *knowingly* distributed CMI or copies of Works with *knowledge* or *reason to know* that such conduct would "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).  The Complaint recites the *elements* of the DMCA's so-called "double-scienter" requirement (*see* ¶¶ 189–91), but fails to allege any *facts* to support a reasonable inference that Midjourney had the requisite intent or knowledge.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

The deficiencies in Plaintiffs' allegations concerning the second scienter requirement (*i.e.*, that Midjourney knew or had reason to know that its conduct would "induce, enable, facilitate, or conceal infringement") are particularly egregious. The Ninth Circuit has made clear that this demands "a more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary." *Stevens*, 899 F.3d at 674 (affirming grant of summary judgment to defendant on § 1202(b) claim). It "is intended to limit liability … to instances in which the defendant knows or has a reasonable basis to know that the removal or alteration of CMI or the distribution of works with CMI removed *will* aid infringement." *Id*. at 674–75 (emphasis in original). Accordingly, a plaintiff charging a DMCA violation "must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Id*. at 673–74.

Here, Plaintiffs make no effort to satisfy their burden to plead facts showing that Midjourney knew or should have known that its alleged actions would aid infringement. As in *Stevens*, they "identify no instance in which the removal of CMI" from any Work has "induce[d], enable[d], facilitate[d] or conceal[ed] an infringement." *Id.* at 675–76. They do not even identify an instance in which Midjourney's platform was used to infringe, much less that it was designed and intended for that purpose. Absent such allegations, Plaintiffs' DMCA claim must be dismissed.

### C.      Plaintiffs' Right of Publicity Claims (Claims 4, 5) Should Be Dismissed

California law provides a statutory cause of action where "any person … knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising … without such person's prior consent." Cal. Civ. Code § 3344(a); *see also Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1088 (9th Cir. 2002). Somewhat broader, the common law permits a right-of-publicity claim when a defendant (1) uses a plaintiff's identity (2) to defendant's commercial or other advantage (3) without consent (4) causing injury to plaintiff. *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1402 (9th Cir. 1992).

Plaintiffs' right of publicity allegations are, to put it mildly, difficult to parse. The Complaint charges Defendants with purported "use" of Plaintiffs' "names" and, with respect to the

common law claim, their "artistic identities." (¶¶ 201–22.)  In each instance, however, Plaintiffs elide specifics in favor of conclusory allegations that fail to put any Defendant on notice of the claims against it.  For example, Plaintiffs allege that Defendants "used Plaintiffs' names to advertise art 'in the style' of Plaintiffs' work" (¶ 205), used their names to "to link and associate [images] with Plaintiffs' specific styles and artistic accomplishments," and "emphasized the ability of" their platforms to create images in the style of the Plaintiffs' artworks (¶ 208).  Not once, however, do Plaintiffs identify any instance in which their names or "artistic identities" were actually referenced. Plaintiffs do not point to a single statement on Midjourney's website, interview with the press, ad for the platform, or any other example of anyone from Midjourney mentioning any Plaintiff, in a commercial context or otherwise.  The Court can judicially notice the contents of Midjourney's website (Lauter Decl. 5 & Ex. D; no references to Plaintiffs appear there.  On this basis alone, Plaintiffs' conclusory allegations fail to state a right-of-publicity claim against Midjourney.

The vagueness of the Complaint obfuscates what appears to be the true, but legally non-cognizable, premise of Plaintiffs' publicity claims: that Defendants purportedly violate an artist's publicity rights when users enter the artist's name into a text prompt to generate works in the "style" of that artist.  (*See* ¶ 215 (alleging that Plaintiffs' publicity rights extend to their "artistic identities," which are "not limited to a specific copyrighted image or work," but, rather, "extend to Plaintiffs' entire corpus of work").)  If that is Plaintiffs' theory, however, it describes a process by which Midjourney *users*, not Midjourney, utilize Plaintiffs' names in text prompts, "akin to a text query passed to an internet search engine." (¶ 24.)  That would not be a use by Midjourney.  *See Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010) (rejecting right of publicity claim predicated on use of likeness by others).

In addition, such a theory is statutorily preempted because it would entitle Plaintiffs to monopolize conceptual elements of their Works that Congress explicitly excluded from the scope of copyright protection.  Under 17 U.S.C. § 301(a), state claims are preempted by the Copyright Act where (1) "the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103"; and (2) "the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106." *Maloney v. T3Media, Inc.*, 853 F.3d 1004,

1010 (9th Cir. 2017).  "If a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted." *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1155 (9th Cir. 2010).

Plaintiffs purport to possess "artistic identities" that encompass all art "in the style of" their respective Works (¶ 215), which they define as "a work that others would accept as [one] created by [them]."  (¶ 5.)  This novel conception of publicity rights plainly satisfies both elements and triggers preemption, as it amounts to nothing more than a rearticulation of Plaintiffs' defective claim under 17 U.S.C. § 106.  Indeed, Plaintiffs use nearly identical language to describe the alleged acts of direct copyright infringement upon which their vicarious infringement claim is predicated, namely, that individuals have used Defendants' platforms "to create images that can pass as original works by [Plaintiffs]."  (¶ 171.)

Plaintiffs are not spared from preemption because artistic "styles," as species of aesthetic ideas or concepts, are excluded from copyright protection.  *See* 17 U.S.C. § 102(b); 2 Patry on Copyright § 4:14 ("Style is not protected.") (citing cases).  *See*, *e.g.*, *McDonald v. West*, 138 F. Supp. 3d 448, 455 (S.D.N.Y. 2015) (explaining that "copyright does not protect styles" "[f]or the same reason" it "does not protect ideas").  "[T]he scope of the subject matter of copyright law is broader than the protections it affords." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (quoting 4 Nimmer on Copyright § 19D.03[A][2][b] (2010)).  "[S]tate-law protection for fixed ideas"— precisely what Plaintiffs seek by claiming publicity rights in a "style" embodied within a corpus of artwork—"falls within the subject matter of copyright and thus satisfies the first prong of the statutory preemption test, despite the exclusion of fixed ideas from the scope of actual federal copyright protection." *Id.* at 979.  Because Plaintiffs do not identify any use of their purported styles "independent of the display, reproduction, and distribution of the copyrighted material in which they are depicted … none of plaintiffs' claims is qualitatively different from a copyright claim," and they are, therefore, preempted. *Maloney*, 853 F.3d at 1019.

### D.    Plaintiffs Fail to Plead a Viable Claim for Unfair Competition (Claim 6)

Dismissal of Plaintiffs' unfair competition claim is appropriate for three reasons.

**Plaintiffs fail to adequately plead a violation of the Lanham Act or Common Law**: Plaintiffs make no effort to plead facts to support a claim for "Unfair Competition" under the Lanham Act and California common law. (*See* Compl. at 40; ¶ 44(v).) These offhand references appear to have been inadvertent, and, in any event, fail as a matter of law.

"Unfair competition" under Section 1125 refers to deceptive or misleading uses of words, names, or other symbols *that cause confusion* regarding the source, affiliation, or sponsorship of goods or services or that, "in commercial advertising or promotion, misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125; *see also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999). Similarly, unfair competition under California common law requires a showing that defendants "have passed off their goods as those of another" or "exploit[ed] trade names or trademarks." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008). Plaintiffs allege nothing of the sort. Instead, they explicitly recast their allegations of copyright infringement and violation of the DMCA as "unlawful business practices." (¶ 224.) As such, whatever Plaintiffs' intent, they fail to state a claim for unfair competition under either common law or the Lanham Act. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (cautioning against "misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright").

**Plaintiffs' UCL claim is preempted**: The alleged predicate violations for Plaintiffs' UCL claim are (a) "Infringement of Plaintiffs' and the Class's copyrights"; and (b) violation of the DMCA. (¶ 224.) The former is preempted under well-settled law. *See Sybersound Records*, 517 F.3d at 1152 (affirming dismissal of UCL claim with prejudice and explaining: "To the extent the improper [] act complained of is based on copyright infringement, the claim was properly dismissed because it is preempted" under 17 U.S.C. § 301(a)); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 823 F. App'x 516, 519 (9th Cir. 2020) (same, affirming summary judgment).

**Plaintiffs lack a predicate violation**: Violation of the UCL's "unlawful" prong "effectively borrows violations of others laws" and "cannot survive" if predicated on defective claims. *Mohanna v. Carrington Mortg. Servs. LLC*, 2018 WL 3730419, at *8 (N.D. Cal. Aug. 6, 2018)

1    (dismissing UCL claim as all predicate claims were dismissed) (Orrick, J.).  Because Plaintiffs fail

2    to adequately state a claim for either copyright infringement or violation of the DMCA (*see*

3    Sections IV.A & B, *supra*), their UCL claim must also be dismissed for this additional reason.  *Id.*

4            **E.        Plaintiffs' Claim for Declaratory Relief is Redundant and Improper (Claim 8)**

5            A claim for declaratory relief is "unnecessary" and should be dismissed "where an adequate

6    remedy exists under some other cause of action."  *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d

7    700, 707–08 (N.D. Cal. 2009) (dismissing where declaratory relief claim was "entirely commensurate

8    with the relief sought through ... other causes of action"); *see also Technology & Intell. Prop.*

9    *Strategies Grp. PC v. Fthenakis*, 2011 WL 3501690, at *10 (N.D. Cal. Aug. 10, 2011) (dismissing

10   claim as "needlessly duplicative" where "the requested declarations are wholly dependent on the

11   Court's findings on [the] substantive claims").  Dismissal is also appropriate where a request for

12   declaratory relief is derivative of claims that themselves warrant dismissal.  *See Malasky v.*

13   *Esposito*, 2019 WL 79032, at *10 (N.D. Cal. Jan. 2, 2019), *aff'd*, 781 F. App'x 643 (9th Cir. 2019).

14           Plaintiffs' claim for declaratory relief is merely a rehash of their other substantive claims.

15   It is, thus, both needlessly duplicative and derivative of other defective claims that, as discussed

16   above, should also be dismissed.  Claim 8 should be dismissed with prejudice.

17   **V.      PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN UNDER RULE 12(F)**

18           Even if the Court were to allow Plaintiffs' defective individual claims to proceed (or to be

19   amended), the Court should nonetheless strike the class allegations from the Complaint because

20   there is no conceivable class that might satisfy the requirements of Rule 23 in this case.

21           Although motions to strike class allegations are uncommon, the Supreme Court has

22   acknowledged that it is possible to determine the viability of a proposed class at the pleading stage.

23   *See General Tel. Co.*, 457 U.S. at 160.  *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 991 (granting motion

24   to strike class definition); *Hovsepian*, 2009 WL 5069144, at *6 (same); *Brazil v. Dell Inc.*, 585 F.

25   Supp. 2d 1158, 1166–67 (N.D. Cal. 2008) (same); *Ruegsegger v. Caliber Home Loans, Inc.*, 2019

26   WL 8163640, at *6 (C.D. Cal. Jan. 8, 2019) ("it is clear from the pleadings that a class could not

27   be certified"); *Bates v. Bankers Life & Cas. Co.*, 993 F. Supp. 2d 1318, 1342 (D. Or. 2014) (holding

28   that the "inability to satisfy the requirements of Rule 23(a)(3) provides sufficient grounds, without

1   more, for granting defendants' motion to strike").  Where, as here, a complaint demonstrates on its

2   face that a class action cannot be maintained, courts have granted motions to strike class allegations

3   in order "to avoid the expenditure of time and money that must arise from litigating spurious issues

4   by dispensing with those issues prior to trial." *Sanders*, 672 F. Supp. 2d at 990–91.

5        Midjourney recognizes that this Court has repeatedly cautioned against motions to strike

6   class allegations at the pleading stage, explaining that doing so "is only appropriate where the

7   defendant presents an argument that completely precludes certification of *any class*, not just the

8   class currently defined in the complaint.*"  Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL

9   1245130, at *15 (N.D. Cal. Mar. 16, 2020) (emphasis in original) (Orrick, J.); *Huynh v. Jabil Inc.*,

10  2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023) (same) (Orrick, J.).  This is such a case, however.

11       As set forth below, Plaintiffs seek to do the impossible by applying a single class definition

12  to four distinct violations of law, each with its own elements and individualized, fact-intensive

13  inquiries that overwhelm any conceivable common issues.  Because it is "obvious from the

14  pleadings that the proceeding cannot possibly move forward on a classwide basis," the Court should

15  use its "authority under [Rule] 12(f) to delete the complaint's class allegations." *See Stokes v.

16  CitiMortgage, Inc.*, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) (quoting *Manning v. Bos.

17  Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)).

18                **1.      No purported "Damages Class" can be certified**

19       Rule 23(b)(3) requires that "questions of law or fact common to class members predominate

20  over any questions affecting only individual members, and that a class action is superior to other

21  available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

22  To that end, "this Court must determine whether common evidence and common methodology

23  could be used to prove the elements of the underlying cause of action." *In re High-Tech Empl.

24  Antitrust Litig.*, 985 F. Supp. 2d 1167, 1186–87 (N.D. Cal. 2013).  As the Complaint amply

25  demonstrates, these requirements cannot be met here under any set of circumstances.

26       As a general matter, courts consistently decline to proceed on a class-wide basis for claims

27  involving fact-intensive analyses of intellectual property infringement.  For example, in *Vulcan

28  Golf, LLC, v. Google, Inc.*, several trademark owners brought a class action against Google for

permitting registration of domain names that incorporated the putative class members' marks.  254 F.R.D. 521 (N.D. Ill. 2008).  In denying certification under Rule 23(b)(3), the court explained that "individual issues predominate as to the trademark-related claims and the certification of any class related to the trademark claims would simply be unmanageable." *Id*. at 534.  In particular, the court was concerned about the need "to conduct hearings regarding ownership on even a tiny fraction of the potentially millions of registered and unregistered marks or personal names of the putative class members" to determine ownership of at-issue marks. *Id*. at 528.

Similarly, in *FPX, LLC v. Google, Inc.*, which involved allegations that Google violated putative class members' trademark rights by selling them as keywords, the district court declined certification because the class could not even satisfy Rule 23(a)(2)'s lower threshold of commonality, let alone the higher bar imposed by Rule 23(b)(3)'s predominance requirement.  276 F.R.D. 543, 550 (E.D. Tex. 2011).  The court concluded that the trademark claim was not capable of class-wide resolution because determining whether one class member's trademark rights were violated would not resolve any other class member's trademark claim.  *See id*. (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Their claims must depend upon a common contention…. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").  The same reasoning applies to copyright infringement claims, which are generally regarded as "poor candidates for class-action treatment" because each individual's claim "must be resolved upon facts which are particular to that single claim of infringement, and separate from all the other claims." *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 65–66 (S.D.N.Y. 2013) (denying class certification).

Here, Plaintiffs plead a "Damages Class" that would include any person or entity in the U.S. that owns an undefined "copyright interest" in a work used to train an AI Image Product (¶ 41), ignoring that this case presents multiple species of rights violations apart from copyright, each independently demanding the type of individualized, fact-intensive analyses—with respect to determining both class membership and ultimate liability—that courts consistently regard as predominating over common issues.  Just resolving the claims for direct copyright infringement

would require the Court to proceed on an image-by-image basis across every putative class member to resolve issues of protectability (*i.e.*, whether an image merits copyright protection), ownership, registration, substantial similarity, authorization (including whether any image was published under a "copyleft" license, or its use was otherwise subject to an express or implied license), fair use, and other matters necessary to proving such a claim. *See Football Ass'n*, 297 F.R.D. at 67.  On top of that, under 17 U.S.C. § 412,  the Court would need to make individualized inquiry into *when* each putative class member procured its registration for *each* image at issue to ascertain if he or she may be entitled to statutory damages or must instead prove actual damages, which in turn may entail evidence of previous licensing and royalty arrangements, and evidence on the extent to which any allegedly infringing work has been used, distributed, or generated revenue.  Given that Plaintiffs have alleged that as many as "five billion images" are at issue (¶ 57), adjudicating class-wide claims, *just with respect to direct copyright infringement*, would be impossible.

Plaintiffs' other claims implicate entirely independent fact intensive analyses.  For example, addressing claims for vicarious infringement would involve all of the same issues as direct infringement, but with an added layer of attenuation that would require the Court to consider the conduct of innumerable third parties. (*See supra*, at 12–14.)  In addition, Plaintiffs' DMCA and right of publicity claims would require the Court to determine, among other things, whether class members' copyrighted works contained CMI; whether any CMI was removed or altered; whether that removal, in fact, caused any harm; and whether each class members' identity, name or likeness was used by Midjourney and how.  And the *amount* of purported damages would necessarily vary significantly between class members, as some Works and some individuals' rights will inevitably be valued more highly than others.  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 823–24 & n.5 (9th Cir. 2012) (noting that "significant variation" in claimed damages among class members is relevant to Rule 23(b)(3) "predominance" analysis); *Block v. Major League Baseball,* 65 Cal. App. 4th 538, 543–46 (1998) (affirming denial of certification in publicity action by baseball players, as ability to award damages was complicated by fact that "the value of each player's right of publicity would depend, at least in part, on the level of his celebrity" and "court would be obligated to evaluate" defenses, including consent, that may not be common and were a "strong barrier to certification").

Plaintiffs should not be permitted to subject Defendants to extraordinarily broad and burdensome discovery on a putative class-wide basis (let alone the expense of objecting to certification) while Plaintiffs grope hopelessly for a cognizable class that can never be found. Because it is evident from the face of the Complaint that Plaintiffs cannot construct any workable damages class in which common issues predominate, its defective class claims and "Damages Class" should be stricken under Rule 12(f). *Kevari v. Scottrade, Inc.*, 2018 WL 6136822, at *7–8 (C.D. Cal. Aug. 31, 2018) (granting motion to strike where plaintiff's class allegations "fail[ed] to sufficiently plead predominance"); *Lautemann v. Bird Rides, Inc.*, 2019 WL 3037934, at *7 (C.D. Cal. May 31, 2019) (striking class allegations where "class members' claims necessarily turn[ed] on individualized questions"); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1147 (N.D. Cal. 2010) (granting motion to strike and finding express warranty claims improper for class treatment as they "involve[d] elements that are individual to each purported class member").

### 2.   No purported "Injunctive Relief Class" can be certified

Plaintiffs also purport to assert an "Injunctive Relief Class" under Rule 23(b)(2), but this should be stricken as well. Plaintiffs cannot show that injunctive relief could be fashioned against Midjourney "respecting the class as a whole," because, as discussed above, there are myriad permutations of facts and law that must be considered before any injunction can be issued against Midjourney as to any individual class member or work. Equally problematic, Plaintiffs' proposed "Injunctive Relief Class" uses the *identical* definition as their purported "Damages Class." The Supreme Court has ruled that Rule 23(b)(2) "does not authorize class certification" where, as alleged here, "each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores*, 564 U.S. at 360–61; *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986–87 (9th Cir. 2011) (reversing certification of a (b)(2) class where plaintiffs sought both monetary and injunctive relief and explaining that (b)(2) cannot be invoked where the claims involve "individualized determinations of each [class member's] eligibility" to monetary relief).

## VI.   CONCLUSION

Plaintiffs' Complaint fails to state any factually or legally cognizable claim against Midjourney. All claims against Midjourney should be dismissed, and the class claims stricken.

1   Dated: April 18, 2023                       COOLEY LLP

2

3                                               By:  /s/ Angela L. Dunning
                                                     Angela L. Dunning
4                                                    Judd Lauter
                                                     Kayla Blaker
5                                                    Asheton Lemay

6                                               Attorneys for Defendant
                                                MIDJOURNEY, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28