Mark A. Lemley (State Bar No. 155830)
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055
Facsimile: (646) 906-8657
Email: mlemley@lex-lumina.com

Nicole M. Jantzi (*pro hac vice*)
Paul M. Schoenhard (*pro hac vice*)
**FRIED, FRANK, HARRIS, SHRIVER**
    **& JACOBSON LLP**
801 17th Street NW
Washington, DC 20006
Telephone: (202) 639-7254
Email: nicole.jantzi@friedfrank.com
        paul.schoenhard@friedfrank.com

(Additional counsel on signature page)

***Counsel for Defendant Stability AI, Inc. and Stability AI Ltd.***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH ANDERSEN, an individual; KELLY MCKERNAN, an individual; KARLA ORTIZ, an individual, <br><br>     Individual and Representative Plaintiffs, <br><br>     v. <br><br> STABILITY AI, LTD., a UK corporation; STABILITY AI, INC., a Delaware corporation; MIDJOURNEY, INC., a Delaware corporation; DEVIANTART, INC., a Delaware corporation, <br><br>     Defendants. | CASE NO. 3:23-cv-00201-WHO <br><br> **DEFENDANTS STABILITY AI, LTD AND STABILITY AI, INC.'S AMENDED NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:     July 19, 2023 <br> Time:    2:00 p.m. <br> Place:   Courtroom 2 - 17th Floor <br> Before:  Hon. William H. Orrick |

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 19, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 2, 17th Floor, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendants Stability AI Ltd. and Stability AI, Inc., through their undersigned counsel, will, and hereby do, move to dismiss Plaintiffs' Class Action Complaint ("Compl." or "Complaint") pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

Stability AI Ltd. and Stability AI Inc.'s Motion to Dismiss ("Motion") is based on this Notice, the supporting Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Paul M. Schoenhard and exhibits thereto, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing on the Motion.

**ISSUES TO BE DECIDED:**

1.   Whether Plaintiffs' claims of direct and vicarious copyright infringement (Counts I and II) should be dismissed for any works that do not comply with 17 U.S.C. § 411(a);

2.   Whether Plaintiffs' claim of direct copyright infringement (Count I) should be dismissed to the extent that it is based on output images for failure to identify the allegedly infringing works and for lack of substantial similarity;

3.   Whether Plaintiffs' claim of vicarious copyright infringement (Count II) should be dismissed for failure to identify an act of direct infringement or plead any elements of the claim;

4.   Whether Plaintiffs' Digital Millennium Copyright Act claim (Count III) should be dismissed for failure to plead facts to satisfy the elements of the claim;

5.   Whether Plaintiffs' statutory and common-law right of publicity claims (Counts IV and V) should be dismissed because they are preempted by Section 301(a) of the Copyright Act and otherwise fail to state a claim upon which relief can be granted;

6.   Whether Plaintiffs' unfair competition claim (Count VI) should be dismissed because it is preempted by federal copyright law; and

7. Whether Plaintiffs' declaratory relief claim (Count VII) is improper and should be dismissed in its entirety because it is duplicative or otherwise be dismissed to the extent Plaintiffs have failed to state the underlying claims.

**RELIEF SOUGHT**:  Stability AI Ltd. and Stability AI, Inc. seek an order dismissing all claims against them under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: April 18, 2023                          Respectfully submitted,


                                               *s/ Paul M. Schoenhard*


                                               Mark A. Lemley (State Bar No. 155830)
                                               **LEX LUMINA PLLC**
                                               745 Fifth Avenue, Suite 500
                                               New York, NY 10151
                                               Telephone: (646) 898-2055
                                               Facsimile: (646) 906-8657
                                               Email: mlemley@lex-lumina.com

                                               Nicole M. Jantzi (*pro hac vice*)
                                               Paul M. Schoenhard (*pro hac vice*)
                                               **FRIED, FRANK, HARRIS, SHRIVER**
                                               **   & JACOBSON LLP**
                                               801 17th Street NW
                                               Washington, DC 20006
                                               Telephone: (202) 639-7254
                                               Email: nicole.jantzi@friedfrank.com
                                                        paul.schoenhard@friedfrank.com

                                               Michael C. Keats (*pro hac vice*)
                                               Amir R. Ghavi (*pro hac vice*)
                                               **FRIED, FRANK, HARRIS, SHRIVER**
                                               **   & JACOBSON LLP**
                                               One New York Plaza
                                               New York, NY 10004
                                               Telephone: (212) 859-8000
                                               Email: michael.keats@friedfrank.com
                                                        amir.ghavi@friedfrank.com

                                               *Counsel for Defendants Stability AI, Inc.*
                                               *and Stability AI Ltd.*

1

# **TABLE OF CONTENTS**

2   I.   PRELIMINARY STATEMENT .................................................................................- 1 -

3   II.   STATEMENT OF RELEVANT FACTS .................................................................- 2 -

4   III.   LEGAL STANDARD ............................................................................................- 3 -

5   IV.   ARGUMENT .........................................................................................................- 4 -

6       A.   The Court Should Dismiss Counts I And II to the Extent Plaintiffs
            Did Not Register Their Copyrights Before Filing Suit. ...........................- 4 -

7

8       B.   Count I Should be Dismissed to the Extent it is Based on Output
            Images. .....................................................................................................- 6 -

9       C.   Count II Should be Dismissed Because Plaintiffs Do Not
            Adequately Plead Underlying Direct Infringement. ................................- 7 -

10

11      D.   Count III Should be Dismissed for Failure to Plead DMCA
            Violations. ................................................................................................- 9 -

12      E.   Plaintiffs' Right of Publicity Claims are Preempted. ............................- 10 -

13          1.   Plaintiffs' claims fall within the subject matter of copyright. .................- 11 -

14          2.   Plaintiffs' claims seek to protect "rights" that are equivalent to the exclusive
                 rights of copyright holders. ....................................................- 16 -

15      F.   The Court Should Dismiss Plaintiffs' Right of Publicity Claims for
            Failure to State a Claim upon Which Relief Can Be Granted. ...............- 17 -

16

17          a.   Plaintiffs do not sufficiently allege the Stability Defendants
                 use their identities. ................................................................- 18 -

18

19          b.   Plaintiffs do not allege sufficient identity use "on or in
                 products" or for purposes of advertising, selling, or soliciting
                 purchases. ...............................................................................- 20 -

20

21          c.   Plaintiffs do not sufficiently allege that Defendants
                 knowingly used their identities in a manner directly
                 connected to a commercial purpose. .......................................- 22 -

22

23          d.   Plaintiffs' alleged injuries show that they were not injured by
                 identity misappropriation. ......................................................- 23 -

24      G.   Plaintiffs' Unfair Competition Claims are Preempted. .........................- 23 -

25      H.   Plaintiffs' Declaratory Relief Claim Is Improper. ................................- 24 -

26   V.   CONCLUSION ...................................................................................................- 25 -

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Priv. Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................................................ 25

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014).......................................................................................... 7, 8

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. April 22, 2019) ............................................................. 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................................... 3

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) .............................................................. 6, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 3

*U.S. ex. Rel. Berge v. Bd. of Tr. of the Univ. of Ala.*,
104 F.3d 1453 (4th Cir. 1997)..................................................................................... 11, 14

*Bespaq Corp. v. Haoshen Trading Co.*,
No. 04-3698, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005) .................................................. 4

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ............................................................................ 6

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995).............................................................................................. 6

*Carlini v. Paramount Pictures Corp.*,
No. 21-55213 (9th Cir. Mar. 2, 2022) .......................................................................... 6, 8

*Carson v. Here's Johnny Portable Toilets*,
698 F.2d 831 (6th Cir. 1983)....................................................................................... 19, 20

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
25 Cal.4th 387 (2001)...................................................................................................... 21

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) ......................................................................................................... 24

*Dolls Kill, Inc. v. Zoetop Business Co.*,
2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) .............................................................. 10

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001)...................................................................... 13, 15

*Editorial Photocolor Archives, Inc. v. Granger Collection*,
    61 N.Y.2d 517 (N.Y. 1984)............................................................................... 11

*Entous v. Viacom Int'l, Inc.*,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001)......................................................... 14, 17

*Falkner v. GM, LLC*,
    393 F. Supp. 3d 927 (C.D. Cal. 2018)............................................................... 10

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
    756 F. Supp. 2d 1352 (N.D. Fla. 2010)............................................................. 10

*Fisher v. Nissel*,
    No. CV 21-5839, 2022 WL 16961479 (C.D. Cal. Aug. 15, 2022) ......................... 4

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019) .................................................................................... 4, 5

*Free Speech Sys., LLC v. Menzel*,
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) .............................................................. 9

*Harrington v. Pinterest, Inc.*,
    2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)................................................. 9, 10

*Izmo, Inc. v. Roadster, Inc.*,
    No. 18-cv-06092, 2019 WL 2359228 (N.D. Cal. June 4, 2019) ............................ 5

*Jewelry 10, Inc. v. Elegance Trading Co.*,
    No. 88-cv-1320, 1991 WL 144151 (S.D.N.Y. July 20, 1991) ............................... 14

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010)...................................................................... 12, 13

*Kiely v. Universal Music Grp.*,
    2020 WL 4037161 (C.D. Cal. Mar. 5, 2020) ....................................................... 6

*Kifle v. Youtube LLC*,
    2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) ..................................................... 5

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998)........................................................................ 24

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006)................................................................ 11, 13, 16, 17

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014)........................................................................... 3

*Lions Gate Entertainment Inc. v. TD Ameritrade Servs. Co., Inc.*,
   170 F. Supp. 3d 1249 (C.D. Cal. 2016) ................................................................. 24

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ............................................................................... 7

*Lykkeberg v. Bank of Am., N.A.*,
   2012 WL 1099773 (N.D. Cal. Apr. 2, 2012) ......................................................... 25

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 .............................................................................................. *passim*

*Melendez v. Sirius XM Radio, Inc.*,
   2021 WL 2593471 (S.D.N.Y. June 24, 2021) ...................................................... 16

*Mir v. Little Co. of Mary Hosp.*,
   844 F.2d 646 (9th Cir. 1988) ................................................................................. 5

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   724 F.3d 1268 (9th Cir. 2013) ................................................................. 18, 22, 23

*New Day Worldwide Inc. v. Swift*,
   2020 WL 6050700 (C.D. Cal. July 21, 2020) ........................................................ 6

*North Star Int'l v. Arizona Corp. Commission*,
   720 F.2d 578 (9th Cir. 1983) ................................................................................. 3

*Obado v. Magedson*,
   2014 WL 3778261 (D.N.J. July 30, 2014) ........................................................... 20

*Parziale v. HP, Inc.*,
   2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) .................................................. 7, 8

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ................................................................................. 8

*Perfect 10, Inc. v. Google, Inc.*,
   2010 WL 9479060 (C.D. Cal. July 30, 2010) ...................................................... 20

*Perfect 10, Inc. v. Visa Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ............................................................................. 7, 8

*Perfect 10, Inc. v. Yandex N.V.*,
   962 F. Supp. 2d 1146 (N.D. Cal. 2013) ............................................................ 4, 7

*Ricketts v. Haah*,
   2013 WL 3242947 (C.D. Cal. June 26, 2013) ....................................................... 5

*In re Silicon Graphics, Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................................. 3

*Skidmore v. Led Zeppelin,*
    952 F.3d 1051 (9th Cir. 2020) ............................................................. 6

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC,*
    845 F.3d 1246 (9th Cir. 2017) ............................................................ 24

*Stevens v. Corelogic,*
    899 F.3d 666 (9th Cir. 2018) ............................................................... 9

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) ............................................................ 24

*Takeda Pharm. Co., Ltd. v. Mylan Inc.,*
    62 F. Supp. 3d 1115 (N.D. Cal. 2014) ................................................. 25

*United States v. Washington,*
    759 F.2d 1353 (9th Cir. 1985) ............................................................ 25

*Vault Corp v. Quaid Software Ltd.,*
    847 F.2d 255 (5th Cir. 1988) ............................................................... 7

*Waits v. Frito-Lay, Inc.,*
    978 F.2d 1093 (9th Cir. 1992) ...................................................... 18, 20

*White v. Samsung Elecs, Am., Inc.,*
    971 F.2d 1395 (9th Cir. 1992) ................................................. 18, 19, 20

*Wixen Music Publ., Inc. v. Triller, Inc.,*
    No. CV-20-10515, 2021 WL 1255190 (C.D. Cal. Feb. 24, 2021) ............................................. 5

*Zeleny v. Burge,*
    2022 WL 3013138 (C.D. Cal. July 1, 2022) .......................................... 5

**Statutes**

17 U.S.C. § 101 ...................................................................... 11, 12, 13

17 U.S.C. § 102(a) ......................................................................... 11

17 U.S.C. § 103(a) ......................................................................... 12

17 U.S.C. § 106 ................................................................... 11, 16, 17

17 U.S.C. § 301(a) ......................................................................... 11

17 U.S.C. § 411(a) ....................................................................... 4, 5

17 U.S.C. § 1202(b) ........................................................................ 9

47 U.S.C. § 230 ............................................................................ 22

California Civil Code § 3344 ................................................................................... 18, 21

**Other Authorities**

6 Patry on Copyright § 18:16 ................................................................................... 17

10B Charles A. Wright & Arthur R. Miller,
    Fed. Prac. & Proc. Civ. § 2751 .................................................................. 25

J. Thomas McCarthy & Roger E. Schechter,
    Rights of Publicity and Privacy § 11.51 ...................................................... 19

Restatement (Second) of Torts § 652C cmt. d ........................................................ 19

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.      PRELIMINARY STATEMENT

Defendant Stability AI Ltd.[1] ("Stability AI") is at the forefront of the burgeoning generative artificial intelligence ("AI") industry, rapidly expanding the boundaries of human creativity and capability while maintaining a commitment to make its technology available to all.   Stable Diffusion, meanwhile, is an open-source generative AI text-to-image model that has rapidly become a base model for developers and artists around the world.   Users of Stable Diffusion (and Stability AI's DreamStudio) can input prompts of their choosing to generate creative, entirely novel images.

To enable this functionality, Stable Diffusion was trained on **billions** of images that were publicly available on the Internet.   To be clear, training a model does not mean copying or memorizing images for later distribution.   Indeed, **Stable Diffusion does not "store" any images**.   Rather, training involves development and refinement of millions of parameters that collectively define—in a learned sense—what things look like.   Lines, colors, shades, and other attributes associated with innumerable subjects and concepts.   The purpose of doing so is not to enable the models to reproduce copies of training images.   If someone wanted to engage in wholesale copying of images from the Internet, there are far easier methods to do so, including cutting and pasting an image and perhaps using tools like Photoshop to edit them.

Nor is Stable Diffusion a "collage tool."   Instead, Stable Diffusion enables users to create entirely new and unique images utilizing simple word prompts.   As the Complaint concedes, ***"none of the Stable Diffusion output images provided in response to a particular Text Prompt is likely to be a close match for any specific image in the training data."***   (Compl. ¶ 93.)

So if and when this Court is forced to address any of Plaintiffs' copyright claims involving Stable Diffusion on the merits, Stability AI is confident that only one conclusion can be reached: ***Stability AI enables creation; it is not a copyright infringer***.

---

[1]      Stability AI consents to personal jurisdiction in this District solely for purposes of this action and any others raising substantially similar claims arising under the Copyright Act, DMCA and/or Lanham Act. Stability AI's participation in this litigation should not be construed as consent to personal jurisdiction in this District for any other purpose or as a waiver of its right to contest personal jurisdiction in any other action.

On a motion to dismiss, however, Plaintiffs' allegations must be accepted as true, although in many cases they are not. But even so, Plaintiffs' claims fail on the pleadings.

First, it is well-settled that a copyright owner must register her works with the Copyright Office **before** filing a lawsuit for alleged copyright infringement. Plaintiffs and their counsel know this. But Andersen alleges only that she registered sixteen collections of her works; and McKernan and Ortiz did not register any. McKernan and Ortiz's copyright claims—and any claim Andersen may present with respect to unregistered works—fail for that reason alone.

Meanwhile, Plaintiffs present scattershot claims that fail to allege any facts to support necessary elements or that otherwise fail as a matter of law. Plaintiffs' direct copyright infringement claim based on output images fails for the independent reason that Plaintiffs do not allege a ***single*** act of direct infringement, let alone any output that is substantially similar to Plaintiffs' artwork. Plaintiffs' vicarious copyright claim suffers from the same deficiency, plus the additional flaw that Plaintiffs make no effort to plead facts in support of the remaining elements of such claim. Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim also fails multiple times over because Plaintiffs do not allege a ***single*** work from which copyright management information was allegedly altered or removed, explain what CMI was allegedly removed, or allege any facts to support the double-scienter requirement. Further, Plaintiffs' right-of-publicity claims are expressly preempted by the Copyright Act because they are simply efforts to recast copyright claims under other legal rubrics. In any event, Plaintiffs offer no more than a bare recitation of the elements of such claims with cursory allegations that "Defendants" (collectively, but neither individually nor with any specificity) somehow violated their rights of publicity. But Stability AI has not made any knowing use of Plaintiffs' names or likenesses, much less for any commercial purposes or in a way that injured Plaintiffs. Finally, Plaintiffs' unfair competition claim is also preempted, and their duplicative claim for declaratory relief is improper and serves no useful purpose.

Accordingly, Stability AI and its parent company, Stability AI, Inc. (collectively, "Stability Defendants"), respectfully request that this Court grant their motion to dismiss.

## II.     STATEMENT OF RELEVANT FACTS

For purposes of this motion, all allegations in the Complaint (ECF No. 1) are read in the

light most favorable to Plaintiffs and assumed to be true.  Defendants' recitation of and/or reliance on such allegations in the arguments below should not be understood as an admission that any such allegations are, in fact, true.

Outside the Complaint, however, the Court can confirm and can take judicial notice of the following additional facts:

- Plaintiff McKernan did not register any copyrighted works prior to filing suit.  Decl.[2]  ¶ 5.

- Plaintiff Ortiz did not register any copyrighted works prior to filing suit.  *Id.* ¶ 6.

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion "test[s] the legal sufficiency of the complaint."  *North Star Int'l v. Arizona Corp. Commission*, 720 F.2d 578, 581 (9th Cir. 1983).  The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While courts must accept well-pleaded factual allegations as true, "threadbare recitals of a cause of action's elements[] supported by mere conclusory statements" are not "entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 663.  A complaint must also "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).

In evaluating a motion to dismiss, the court is "limited to the pleadings, documents incorporated-by-reference in the pleadings, and matters of which the court may take judicial notice." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1164 (N.D. Cal. April 22, 2019) (citation omitted).  If the complaint cannot be saved by an amended pleading, leave to amend should not be granted.  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th Cir. 1999).

---

[2]     As used herein, Decl." refers to the Declaration of Paul M. Schoenhard, filed concurrently herewith.

IV.     **ARGUMENT**

A.     **The Court Should Dismiss Counts I And II to the Extent Plaintiffs Did Not Register Their Copyrights Before Filing Suit.**

The Supreme Court recently clarified that a copyright owner must register her copyrights before filing a claim for alleged infringement. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019) ("Registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright."); *see also* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). The registration requirement is "akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate*, 139 S. Ct. at 887. Accordingly, to state a copyright infringement claim, a plaintiff "must plausibly allege . . . that [he] owns a valid copyright registration for [his] work." *Fisher v. Nissel*, No. CV 21-5839, 2022 WL 16961479 at *3 (C.D. Cal. Aug. 15, 2022) (citing *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019)). Vicarious copyright infringement claims require the same showing. *See Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1158 (N.D. Cal. 2013) ("[V]icarious liability requires an underlying act of direct infringement").

Here, Plaintiffs present no allegations that McKernan or Ortiz registered any copyrighted works before the Complaint was filed. *See* Compl. ¶¶ 29, 30 & *passim*. Accordingly, McKernan's and Ortiz's copyright infringement claims should be dismissed in their entirety. *See, e.g., Fisher*, 2022 WL 16961479 (dismissing copyright infringement claim where complaint failed to "allege any facts demonstrating Plaintiff had satisfied Section 411(a)'s prefiling registration requirement prior to asserting his copyright infringement claim" about particular works).

Meanwhile, Plaintiffs' allegations with respect to Andersen are limited to only 16 registered collections, Compl. ¶ 28 & Exs. 1–16, but even then, Plaintiffs do not identify which "Works" from Andersen's collections Defendants allegedly infringed. This falls far short of plausibly alleging that any (let alone each) of these works meets Section 411(a)'s registration requirement. *See, e.g., Bespaq Corp. v. Haoshen Trading Co.*, No. 04-3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005)

1  (dismissing copyright claim under Section 411(a) because complaint "d[id] not identify which

2  preexisting works in the registered catalog have been infringed by the defendants").

3      To the extent the Court wonders whether Plaintiffs' error is simply one of inartful pleading,

4  the Stability Defendants submit that it is not.  Indeed, there can be no doubt that Plaintiffs and their

5  counsel were well aware of the pre-filing registration requirement, as Plaintiffs affirmatively plead

6  that ***Andersen*** (but not McKernan or Ortiz) "complied with the statutory requirements for

7  registration."  Compl. ¶ 28.  Nor do McKernan or Ortiz actually have copyright registrations they

8  merely failed to plead.  On this point, this Court may "take judicial notice of matters of public record

9  outside the pleadings and consider them for purposes of the motion to dismiss."  *Mir v. Little Co. of*

10 *Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988).  And indeed, courts regularly take notice that the

11 U.S. Copyright Office has or has not granted a plaintiff copyright registration for their works.  *See,*

12 *e.g.*, *Ricketts v. Haah*, 2013 WL 3242947, at *2 (C.D. Cal. June 26, 2013) (taking judicial notice

13 that "according to the Copyright Office database, Plaintiffs have not registered any copyrights");

14 *see also, e.g., Wixen Music Publ., Inc. v. Triller, Inc.*, No. CV-20-10515, 2021 WL 1255190, at *3

15 (C.D. Cal. Feb. 24, 2021) ("Copyright certificates are the type of documents that the court may

16 judicially notice under Rule 201(b)(2).") (collecting cases).  Here, the Copyright Office's records

17 confirm that neither McKernan nor Ortiz registered copyrights in any works prior to filing suit.  *See*

18 Decl. at ¶¶ 5, 6.  Plaintiffs' claims regarding unregistered works should be dismissed.

19     These faults are fatal to Plaintiffs' copyright claims and cannot be cured, as "permitting

20 amendment to cure a claimant's failure to register its copyright before suing would undermine the

21 objectives animating the Supreme Court's decision in *Fourth Estate*."  *Izmo, Inc. v. Roadster, Inc.*,

22 No. 18-cv-06092, 2019 WL 2359228 at *2 (N.D. Cal. June 4, 2019); *see also, e.g.*, *Kifle v. Youtube*

23 *LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021) ("By tying the registration requirement to

24 when a 'civil action' is 'instituted,' the plain language of § 411(a) refers to the beginning of a

25 lawsuit, not the filing of an amended pleading.") (collecting cases).

26     Accordingly, the direct and vicarious copyright infringement claims of Plaintiffs McKernan,

27 Ortiz and Andersen should be dismissed with prejudice and without leave to amend.  *See, e.g.*,

28 *Zeleny v. Burge*, 2022 WL 3013138 (C.D. Cal. July 1, 2022) (dismissing with prejudice where

1    plaintiffs failed to register their copyrights before initiating suit); *New Day Worldwide Inc. v. Swift*,

2    2020 WL 6050700 (C.D. Cal. July 21, 2020) (similar); *Kiely v. Universal Music Grp.*, 2020 WL

3    4037161 (C.D. Cal. Mar. 5, 2020) (similar); *see also Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.

4    1995) (futility is sufficient grounds to deny leave to amend).

5    **B.      Count I Should be Dismissed to the Extent it is Based on Output Images.**

6           Independently, Plaintiffs' direct copyright infringement claim also fails to the extent it is

7    based on allegedly infringing images generated by users of Stable Diffusion or DreamStudio (*i.e.,*

8    "output images").   To allege direct copyright infringement, Plaintiffs must sufficiently allege

9    unlawful appropriation and copying.  *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020)

10   (en banc).   Unlawful appropriation requires a plaintiff to allege that there are "substantial

11   similarities" between the allegedly copied and allegedly infringing works.   *Id.*   But Plaintiffs'

12   output-image-based allegations do not meet this standard, and Plaintiffs readily admit that output

13   images from Stable Diffusion can never do so.

14          As an initial matter, Plaintiffs fail to identify a single allegedly infringing output image, let

15   alone one that is substantially similar to any of their copyrighted works.   Much to the contrary,

16   Plaintiffs affirmatively plead that "*[i]n general, none of the Stable Diffusion output images*

17   *provided in response to a particular Text Prompt is likely to be a close match for any specific*

18   *image in the training data.*"   Compl. ¶ 93.  Where, as here, Plaintiffs fail to make "any allegations

19   of even representative infringements," and themselves allege that there is ***not*** substantial similarity

20   between their works and any output images, the Complaint fails to allege direct copyright

21   infringement.  *Becton, Dickinson & Co. v. Cytek Biosciences Inc.,* 2020 WL 1877707, at *6 (N.D.

22   Cal. Apr. 15, 2020); *see also, e.g.*, *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp.

23   3d 1167, 1175 (N.D. Cal. 2015) (dismissing direct copyright infringement claim where Plaintiffs

24   provide no "representative infringement," instead "mak[ing] only general allegations" that

25   "'[m]any', if not all, of" allegedly infringing works "are copied or derived from" Plaintiffs' works);

26   *see generally, e.g.*, *Carlini v. Paramount Pictures Corp.*, No. 21-55213 (9th Cir. Mar. 2, 2022)

27   (unpublished) (dismissing for failure to allege unlawful appropriation).

28          Nor does Plaintiffs' theory that all output images are somehow "necessarily…derivative

work[s]" (Compl. ¶ 90) save their claim.  In an apparent effort to upend almost all artistic creation, Plaintiffs' apparent theory would require finding that any work is a "derivative work" under the Copyright Act simply because it makes reference in any way whatsoever to a prior work.  But the Ninth Circuit has rejected this "novel proposition," reiterating that "substantial similarity" is required to show infringement.  *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir. 1984); *see also Vault Corp v. Quaid Software Ltd.*, 847 F.2d 255, 267 (5th Cir. 1988) ("To constitute a derivative work, 'the infringing work must incorporate in some form a portion of the copyrighted work'. . . [*and*] *must be substantially similar* to the copyrighted work.") (quoting *Litchfield*, 736 F.2d at 1357).  Plaintiffs' theory must similarly be rejected.

Count I should be dismissed as to all Plaintiffs to the extent it is based on output images.[3]

## C.    Count II Should be Dismissed Because Plaintiffs Do Not Adequately Plead Underlying Direct Infringement.

Plaintiffs' vicarious copyright infringement claim independently fails on multiple fronts.  To be liable for vicarious copyright infringement, a party must "allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."  *Perfect 10, Inc. v. Visa Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007); *see also id.* ("One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it.") (citing *Metro-Goldwin-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  In short, "vicarious liability requires an underlying act of direct infringement."  *Perfect 10, Inc. v. Yandex N.V.*, 962 F. Supp. 2d at 1158 (granting summary judgment on vicarious infringement claim where there was no underlying direct infringement).  Plaintiffs fail to plead *any* plausible facts to satisfy any element of their vicarious copyright infringement claim.

Fundamentally, Plaintiffs' vicarious copyright infringement claim fails for the same reason

---

[3]    Any future allegation that a specific output image is substantially similar to a training image would contradict Plaintiffs' current allegations that there is no substantial similarity.  *See* Compl. ¶ 93.  "A party cannot amend pleadings to 'directly contradict[t] an earlier assertion made in the same proceeding.'"  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation omitted; alteration in original); *Parziale v. HP, Inc.*, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) (finding leave to amend would be futile when it requires "impermissibl[e] contradict[ions of] Plaintiff's prior pleadings") (collecting cases).

as their direct infringement claim: Plaintiffs do not plead any single, specific act of direct copyright infringement for which either of the Stability Defendants is allegedly vicariously liable. Although Plaintiffs vaguely allege the existence of one or more "Imposters" who have allegedly created "Fakes" (Compl. ¶ 171), Plaintiffs fail to identify any particular output image that is substantially similar to any of their copyrighted works (registered or otherwise).[4] Instead, Plaintiffs affirmatively plead a lack of substantial similarity: "***[i]n general, none of the Stable Diffusion output images provided in response to a particular Text Prompt is likely to be a close match for any specific image in the training data.***" Compl. ¶ 93. Plaintiffs' failure to plead a specific act of direct infringement, and their affirmative allegation that there is ***not*** substantial similarity, must doom their vicarious copyright infringement claim. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *6; *see also Carlini*, No. 21-55213. Like Plaintiffs' direct copyright infringement claim, these failures are not curable. *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014); *Parziale v. HP, Inc.*, 2020 WL 5798274 (N.D. Cal. Sept. 29, 2020).

Plaintiffs also fail to make any effort to allege facts that either of the Stability Defendants has (1) "the right and ability to supervise the infringing conduct" or (2) a "direct financial interest in the infringing activity." *Perfect 10*, 494 F.3d at 802. Nor do Plaintiffs sufficiently allege that there is a "causal link between the infringement of [their] own copyrighted works and any profit to" the Stability Defendants for purposes of the direct financial interest element. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017). This element requires plausible allegations of a causal link between "the infringement in this case" (i.e., of output images that allegedly infringe on Plaintiffs' protected works) and a financial benefit to the Stability Defendants. *Id.* (citation omitted). Without allegations of infringing outputs, there is nothing to "link." And because Plaintiffs cannot allege infringing outputs without contradicting their current allegations, *see supra*, they can never satisfy these elements either. Count II should be dismissed with prejudice.

---

[4]     Plaintiffs also do not allege that Imposter-generated output images are the primary use case of Stable Diffusion or DreamStudio, or the extent to which output images are Imposter-generated.

1

**D.      Count III Should be Dismissed for Failure to Plead DMCA Violations.**

2        Plaintiffs' DMCA claim is also fatally deficient.  In relevant part, the DMCA prohibits

3   (1) intentionally removing or altering copyright management information (CMI), (2) distributing

4   CMI with knowledge that the CMI has been removed or altered, and (3) distributing works with the

5   knowledge that CMI has been removed or altered, while knowing or having reasonable grounds to

6   know that doing so will "induce, enable, facilitate, or conceal an infringement of any" copyright.

7   17 U.S.C. § 1202(b); *Stevens v. Corelogic*, 899 F.3d 666, 673 (9th Cir. 2018).

8        Here, Plaintiffs fail to point to a single, specific example of one of their works whose CMI

9   was altered or removed by the Stability Defendants or to what specific CMI was removed from such

10  specific work(s).  This alone is grounds for dismissal.  *See, e.g.*, *Free Speech Sys., LLC v. Menzel*,

11  390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (Orrick, J.) (dismissing a DMCA claim where the

12  plaintiff failed to "provid[e] any facts to identify which photographs had CMI removed or to

13  describe what the removed or altered CMI was").

14       Plaintiffs have also not alleged either prong of Section 1202's "double-scienter requirement"

15  beyond conclusory statements of the elements.  Plaintiffs do not make any plausible factual

16  allegations that the Stability Defendants were aware Plaintiffs' allegedly copyrighted works were

17  scraped, let alone that either of the Stability Defendants "intentionally removed CMI from [their]

18  Works or . . . distributed [their] works knowing that CMI had been removed."  *Harrington v.

19  Pinterest, Inc.,* 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022) (dismissing DMCA claim where

20  plaintiff failed to allege that "Pinterest was even aware that any specific Work existed on its

21  Platform," or "knew that any of his Works contained CMI at the time they were uploaded").  Nor

22  could they do so when Plaintiffs affirmatively plead that Stability AI allegedly scraped over five

23  billion images from the Internet.  Compl. ¶ 57.  As for whether the Stability Defendants knew, or

24  had reasonable grounds to know, that their actions would "induce, enable, facilitate, or conceal an

25  infringement," Plaintiffs have failed to "make an affirmative showing, such as by demonstrating a

26  past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable

27  grounds to be aware of the probable future impact of its actions."  *Stevens,* 899 F.3d at 673-74.

28  Plaintiffs have made no allegations, for example, that the Stability Defendants were aware that

Plaintiffs had a practice of including CMI metadata in their works.  *See Harrington,* 2022 WL 4348460, at *5.[5]  Moreover, Plaintiffs cannot satisfy the double scienter requirement because, as here, "there can be no knowledge of any removal or alteration if there is no underlying removal or alteration."  *Falkner v. GM, LLC*, 393 F. Supp. 3d 927, 939 (C.D. Cal. 2018).

Nor could Plaintiffs' DMCA claim be cured by pointing to a specific output image or CMI. DMCA claims require significantly *more than* substantial similarity—they require CMI to be removed from a plaintiff's actual work or an identical copy of their work.  *See Dolls Kill, Inc. v. Zoetop Business Co.*, 2022 WL 16961477, at *4 (C.D. Cal. Aug. 25, 2022) ("[C]ourts have found that no DMCA violation exists where" the work from which CMI was removed and the distributed work "are not identical.") (citation omitted).  Here, however, Plaintiffs affirmatively allege that output images are not even substantially similar to their copyrighted works (let alone identical copies thereof).  *See* Compl. ¶ 93.  Moreover, even assuming CMI data is absent from Stable Diffusion's or DreamStudio's output images, such an absence on output images (which are neither identical copies nor copies at all) does not constitute "removal or alteration" of CMI.  *See id.; see also Faulkner Press, L.L.C. v. Class Notes, L.L.C.,* 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) (granting judgment as a matter of law to defendant where "nothing was removed from the copyrighted works", but instead "information from [plaintiff's] courses was allegedly copied into a different form and then incorporated into the note packages").  Plaintiffs' claim should be dismissed with prejudice. *See Dolls Kill*, 2022 WL 16961477, at *4 (dismissing DMCA claim with prejudice where "Plaintiff cannot cure the DMCA claim without contradicting the current allegations that support its copyright infringement claim").

**E.      Plaintiffs' Right of Publicity Claims are Preempted.**

Plaintiffs' right-of-publicity claims are expressly preempted by the federal Copyright Act. The Copyright Act provides the sole remedy for claims invoking rights "equivalent to any of the

---

[5]      Plaintiffs do not even allege plausible facts to suggest that the Stability Defendants were aware that any Imposters (or anyone else) created or wanted to create output images based on "in the style of Sarah Andersen," "in the style of Kelly McKernan," or "in the style of Karla Ortiz" Text Prompts.  Without such allegations, it is even more implausible that either of the Stability Defendants had the requisite double scienter.

exclusive rights within the general scope of copyright . . . in works of authorship."  17 U.S.C. § 301(a).  Specifically, Section 301 of the Copyright Act seeks "to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright" and that "extend to works, so long as the rights fall within the scope of the Federal copyright law." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th (quoting H.R. Rep. No. 94-1476, at 130 (1976)) (internal quotations omitted).  In short, plaintiffs cannot, "by miscasting their causes of action, secure the equivalent of copyright protection under guise of State law."  *Editorial Photocolor Archives, Inc. v. Granger Collection*, 61 N.Y.2d 517, 523 (N.Y. 1984).  So if a claim is different from a copyright infringement claim in name only, but otherwise falls under federal copyright law's purview, it is preempted.

The Ninth Circuit prescribes a two-part test for whether state-law claims are preempted by Section 301.  *See Maloney,* 853 F.3d at 1010.  First, courts consider "whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).  Second, assuming it does, courts "must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.* at 1138.  Where, as here, right of publicity claims satisfy the Ninth Circuit's two-part test, they must be dismissed with prejudice.  *See Maloney*, 853 F.3d at 1011, 1020.

### 1.    Plaintiffs' claims fall within the subject matter of copyright.

The first prong of the preemption test is satisfied if the "subject matter of the state law claim falls within the subject matter of copyright." *Laws,* 448 F.3d at 1137.  This inquiry focuses on whether the claims concern one of the "original works of authorship fixed in any tangible medium of expression" in Section 102 of the Act, including "pictorial, graphic, and sculptural works." *Id.*; 17 U.S.C. §§ 101, 102(a); *see also Maloney*, 853 F.3d at 1011.  While a copyrightable work by definition falls within the subject matter of copyright, copyrightability is not a necessary prerequisite for preemption as "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *U.S. ex. Rel. Berge v. Bd. of Tr. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997).  In short, claims that concern matters broadly within copyright's subject matter, even if styled as publicity-right claims, satisfy the first prong and support a finding of preemption.

1       Here, the subject matter of Plaintiffs' right of publicity claims squarely falls within the

2   subject matter of copyright.  Plaintiffs' works constitute "pictorial, graphic and sculptural works"

3   or other "fixed" works of authorship, and are therefore clearly subject matter under the Copyright

4   Act.  *See* 17 U.S.C. § 101.  Plaintiffs allege that this case involves derivative works stemming from

5   these copyrighted works; specifically, that (1) Stable Diffusion and DreamStudio are somehow

6   derivative works containing compressed copies of Plaintiffs' works,[6] and (2) Stable Diffusion and

7   DreamStudio can be used to create output images that are somehow also "necessarily [] derivative

8   work[s]."[7] Compl. ¶¶ 18, 95.  These purported derivative works clearly fall within the subject matter

9   of copyright.  *See* 17 U.S.C. § 103(a) ("The subject matter of copyright . . . includes compilations

10  and derivative works.").  Plaintiffs therefore allege that all of the works involved in this dispute fall

11  within the subject matter of copyright.

12      Likely seeking to avoid preemption, Plaintiffs attempt to re-cast their right of publicity

13  claims as ones invoking the use of their names in their statutory claim and their "names and artistic

14  identities" in their common-law claim.  *See, e.g.,* Compl. ¶¶ 202-212, 214-222.  These attempts

15  should fail.  As a threshold matter, courts routinely reject attempts to redefine the subject matter of

16  a right of publicity claim as a plaintiff's "persona" rather than the subject matter of the Copyright

17  Act when the persona is embodied in a copyrighted work.  In *Jules Jordan Video, Inc.*, for example,

18  an actor claimed that defendants violated his right of publicity by (1) reproducing, counterfeiting,

19  and selling copies of his films that included his name, likeness, photograph, and voice; and (2) by

20  using his name and likeness on the counterfeit DVD covers.  *Jules Jordan Video, Inc. v. 144942*

21  *Canada, Inc.*, 617 F.3d 1146, 1153-54 (9th Cir. 2010).  The Court rejected these contentions,

22  reaching the "obvious conclusion" that the "factual basis of [the plaintiff's] right of publicity claim

---

[6]     To be clear, Plaintiffs' allegations in this regard are untrue, reflecting their fundamental misunderstanding of Stability AI's technology.

[7]     Plaintiffs' allegations in this regard are also untrue and, indeed, belied by Plaintiffs' own allegations.  Plaintiffs allege that "[t]he system struggles with a Text Prompt like 'a dog wearing a baseball cap while eating ice cream' because, though there are many photos of dogs, baseball caps, and ice cream among the Training Images (and the latent images derived from them) there are unlikely to be any Training Images that combine all three."  Compl. ¶ 97.  Thus, according to the Complaint, the output image of a dog wearing a baseball cap while eating ice cream is not derivative of any original work.

1    was the unauthorized reproduction of his performance on the DVDs," which fell within the subject

2    matter of copyright. *Id.* at 1154. The Court also rejected allegations that the plaintiff's name and

3    likeness were appropriated on the DVD covers because the pictures on the DVD covers were "still

4    shots" of the copyrighted performance. *Id.* In short, the Court looked beyond the illusory allegations

5    of name and persona appropriation to the actual subject matter of the plaintiff's claim.

6        The Court should similarly reject Plaintiffs' allegations of name and "artistic identity"

7    appropriation here.

8        *First,* to the extent that Plaintiffs' claims can be read to allege the use of their "names" and

9    "artistic identities," their claims are still preempted because they do not allege that something "more

10   personal than any work of authorship" (which could be outside the subject matter of copyright) was

11   misappropriated. *Laws*, 448 F.3d at 1141 (citation omitted). As explained *infra* (Section F(a)),

12   Plaintiffs do not even invoke the subject matter of a right of publicity claim, *i.e.*, their "very identity

13   or persona[s] . . . as [] human being[s]." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th

14   Cir. 2001) (citation omitted). Regardless, Plaintiffs' "artistic identities" ***are*** fixed in a "tangible

15   medium of expression"–*i.e.*, Plaintiffs' works that elucidate their style. 17 U.S.C. § 101. Plaintiffs

16   concede as much in the Complaint. They note that their "names and artistic identities . . . extend to

17   Plaintiffs' entire corpus of work" (Compl. ¶ 215), and they bring (insufficient) copyright

18   infringement claims based on the very same works that they allege appropriate their "artistic

19   identities." Plaintiffs' allegations of name appropriation do not change this analysis. Courts

20   regularly reject publicity-right claims based on allegations of name appropriation where, like here,

21   the claim is ultimately based on a copyrighted work. *See, e.g., Maloney*, 853 F.3d at 1008, 1016

22   (dismissing claim alleging name and likeness appropriation where plaintiffs' "publicity-right claim

23   is little more than a thinly disguised copyright claim"). In short, where, as here, the "entirety of the

24   allegedly misappropriated [identity attribute] is contained within a copyrighted medium," then

25   "what is put forth [] as protectable is ***not*** 'more personal than any work of authorship" and falls in

26   the subject matter of copyright. *Laws*, 448 F.3d at 1141 (emphasis altered).

27       *Second*, and alternatively, Plaintiffs' claims are also within the subject matter of copyright

28   to the extent they involve anything more than Plaintiffs' specific works of art. Besides Plaintiffs'

works themselves, Plaintiffs' claims of "artistic identity" appropriation could only refer to the appropriation of their artistic styles.  *See* Compl. ¶ 215 ("Plaintiffs' names and artistic identities. . . extend to Plaintiffs' entire corpus of work and allow consumers and the public to identify work 'in the style of' Plaintiffs."); *compare* Compl. ¶ 212 (alleging a "market flooded with AI-generated copies associated with Plaintiffs' names and artistic *styles*") *to id.* ¶ 222 (alleging a "market flooded with AI-generated copies built on Plaintiffs' unique artistic *identities*").  True, "artistic style" is not protected by the Copyright Act.  "The law of copyright does not protect ideas, but only the particular expression of them."  *Jewelry 10, Inc. v. Elegance Trading Co.,* No. 88-cv-1320, 1991 WL 144151, at *4 (S.D.N.Y. July 20, 1991).  In the context of works of art, "this principle can refer to elements of style and technique," which are "*ideas* implicit in a work."  *Id.* (emphasis added); *see also, id.* (explaining that a "painter who develops a style or technique. . . cannot prevent others from adopting those ideas in their work").  Perhaps this point of law is why Plaintiffs attempt to repackage their copyright claims (which Plaintiffs affirmatively allege lack substantial similarity) as publicity claims based on their styles.  But such attempt fails to state a claim here, too.  Although "'ideas' do not enjoy copyright protection, courts have consistently held that they fall within the 'subject matter of copyright' for the purposes of preemption analysis."  *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001) (collecting cases); *see also U.S. ex. Rel. Berge.*, 104 F.3d at 1463.

*Third*, Plaintiffs do not allege their identities were commercially exploited via advertising or in merchandise (which could potentially take their claims out of the subject matter of copyright).  "[T]he distinction pertinent to the preemption of a publicity-right claim is . . . the way in which one's name or likeness is affected by the *use* of the copyrighted work."  *Maloney*, 853 F.3d at 1013 (emphasis altered).  When, for example, pictures of surfers are included in a clothing catalog, and that catalog essentially "suggest[s] that the surfers had *endorsed*" the clothing, those surfers "sustained injury to their individual personas" through commercial exploitation of their likenesses.  *Id.* at 1013–14 (emphasis altered) (discussing *Downing*, 264 F.3d 994).  But when a publicity right claim does not target "non-consensual *use* of one's name or likeness on merchandise or in advertising," and instead merely targets someone's "likeness [that] has been captured in a copyrighted artistic visual work . . . being distributed for personal use," that person has not sustained

1    injury to their persona in a way that escapes preemption.  *Id.* at 1010 (emphasis altered).[8]

2         Here, Plaintiffs do not sufficiently allege that their identities were used on merchandise or

3    in advertising, so their claims remain within the subject matter of copyright.  They make no

4    allegations about merchandise, and, as described *infra* at 22, the advertising allegations are fatally

5    conclusory.  Even assuming the least conclusory of those allegations are plausible factual allegations

6    (which they are not), Plaintiffs' allegations are still insufficient.  Namely, Plaintiffs allege that: (1)

7    Defendants advertised art "in the style" of Plaintiffs' work; and (2) Defendants "advertised their

8    AI's ability to copy or generate work in the artistic style that Plaintiffs popularized in order to sell

9    Defendants' products and services."  Compl. ¶ 205; *see also* Compl. ¶ 208, 221 (similar).  The first

10   allegation (which is devoid of any factual support in the Complaint) ultimately "target[s] the ***display***

11   and ***distribution***" of what Plaintiffs allege are derivative works–*i.e.*, targets the "control of the

12   artistic works themselves."  *Maloney*, 853 F.3d at 1016 n.9 & 2011 (emphasis altered).  And the

13   second does not change that fact.  Critically, Plaintiffs point to ***no single advertisement*** whatsoever

14   that used any of their specific names or "artistic identities" that would be sufficient to allegedly

15   injure their "personas."  *Cf. Downing*, 265 F.3d at 999-1000 (finding athletes' personas injured when

16   their likenesses were used in a clothing catalog to sell t-shirts).  So there is nothing to potentially

17   take their claims out of the subject matter of copyright.

18         Moreover, to the extent that Plaintiffs' allegations rely on the ability to type names as Text

19   Prompts (or generally advertising the ability to do so), these are plainly insufficient to injure

20   Plaintiffs' personas—if it were otherwise, the ability to enter any name into a Google search would

21   violate every human's publicity rights.  And to the extent that Plaintiffs' Complaint can be construed

22   to allege that the Stability Defendants used Plaintiffs' names and "artistic identities" to sell

23   ***anything***, it would be in relation to the output that Plaintiffs call derivative works.  But courts

24   regularly find that using names or other identity attributes in connection with advertising the

25   distribution of copyrightable works does not exploit identity or escape preemption.  *See, e.g.*,

26

---

27   [8]    The fact that Plaintiffs' case involves allegedly derivative artwork instead of photographs
28   does not render *Maloney*'s analysis irrelevant.  *See Maloney*, 853 F.3d at 1013 ("[O]ur precedents
     clarify that the distinction pertinent to the preemption of a publicity-right claim is ***not*** the type of
     copyrightable work at issue.") (emphasis altered).

1    *Melendez v. Sirius XM Radio, Inc.*, 2021 WL 2593471, at *5 (S.D.N.Y. June 24, 2021), *aff'd*, 50

2    F.4th 294 (2d Cir. 2022) (dismissing a claim alleging misappropriation of voice, name, and identity

3    where the alleged advertising use is "exploitation or promotion of the work itself, for its own value,

4    rather than an exploitation of the Plaintiff's identity").

5        *Fourth*, Plaintiffs' alleged injury in their right of publicity claims show that the subject

6    matter of their claims fall within the subject matter of the Copyright Act.  Crucially, Plaintiffs'

7    asserted reputational injuries in their publicity-right claims relate solely to a "market flooded with

8    AI-generated copies" and "knock-off images generated from Plaintiffs' work." Compl. ¶¶ 212, 222.

9    If anything, these would be ***copyright*** injuries stemming from alleged (though, as above, legally

10   insufficient) copyright infringement.   Indeed, it is the very same circumstance that Plaintiffs

11   (insufficiently) complain of in their vicarious copyright infringement claim.  *See, e.g.*, Compl.

12   ¶ 171–173 (alleging that "Imposters" can use Defendants' products to create "Fakes" that "can pass

13   as original works by that artist" and that have been sold online).  By Plaintiffs' own allegations, this

14   is a case in which "plaintiffs [are] seeking to use the right of publicity simply to prevent 'publication'

15   of an artistic, visual work," which places their claims in the subject matter of copyright, rather than

16   one in which "plaintiffs sustained injury to their individual 'personas' because their likenesses were

17   exploited commercially without their consent," which does not.  *Maloney*, 853 F.3d at 1013.

18       Because Plaintiffs' right of publicity claims target and ultimately seek to control the creation,

19   distribution and/or display of allegedly derivative works (or works somehow allegedly reflecting

20   Plaintiffs' alleged artistic styles), they fall within the subject matter of copyright.

            **2.    Plaintiffs' claims seek to protect "rights" that are equivalent to the
                    exclusive rights of copyright holders.**

23       Plaintiffs' right of publicity claims also satisfy the second prong of the preemption analysis.

24   "To survive preemption, the state cause of action must protect rights which are qualitatively different

25   from the copyright rights." *Laws*, 448 F.3d at 1143 (citation omitted).  Stated differently, a claim is

26   preempted if the "alleged appropriation" is "equivalent to rights within the general scope of

27   copyright as specified by section 106 of the Copyright Act." *Id*.  Such rights include the "'exclusive

28   rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others

1   to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney*,

2   853 F.3d at 1010 (citing 17 U.S.C. § 106).

3   Plaintiffs' claims assert rights equivalent to those enumerated in 17 U.S.C. § 106 and are

4   preempted because they have no "extra element" beyond copyright law.  Through their right of

5   publicity claims, Plaintiffs seek to control the creation, distribution and/or display of allegedly

6   derivative works to avoid "a proliferation of AI-generated art" and "a market flooded with AI-

7   generated copies" of their art.  *See* Compl. ¶¶ 212, 222, *supra* at 16.  In other words, they seek to

8   protect exactly the same kind of rights already protected by the Copyright Act and to rectify exactly

9   the same kind of alleged injuries protectable by copyright law, which warrants preemption.  *See,*

10  *e.g., Maloney*, 853 F.3d at 1019 (holding second preemption analysis prong satisfied where plaintiffs

11  "do not identify any use of their likenesses independent of the display, reproduction, and distribution

12  of the copyrighted material in which they are depicted"); *Laws*, 448 F.3d at 1144 (second prong met

13  where "the underlying nature of [plaintiff's] . . . claims is part and parcel of a copyright claim").[9]

14  Because the subject matter of Plaintiffs' publicity-right claims fall within the subject matter

15  of copyright and seek to protect rights equivalent to those in Section 106 of the Copyright Act, they

16  are preempted and should be dismissed.

17  **F.**      **The Court Should Dismiss Plaintiffs' Right of Publicity Claims for Failure to**

18  **State a Claim upon Which Relief Can Be Granted.**

19  Independently, Plaintiffs' right of publicity claims fail because they do not satisfy the

20  elements of such claims.  The right of publicity is "the right of a person whose identity has

21  commercial value—most often a celebrity—to control the commercial use of that identity." *Waits*

22  *v. Frito-Lay, Inc.*, 978 F.2d 1093, 1098 (9th Cir. 1992).  It was "developed to protect the commercial

23

24  [9]      To the extent that Plaintiffs' right of publicity claim seek to prevent the use of their "artistic

25  styles," which is not a right protectable under the Copyright Act, that right is still "equivalent to
    rights within the general scope of copyright" for purposes of preemption.  *Laws*, 448 F.3d at 1143;

26  *see also* 6 Patry on Copyright § 18:16 ("The term 'general scope' is used to make the point that the
    state right asserted need not be identical or even equivalent to a specific right granted in Section 106

27  in order to be preempted . . . The state right may be narrower, broader, or contain somewhat different
    elements, yet it will still be preempted if its essence is the same as the federal right."); *Entous*, 151 F.

28  Supp.2d at 1159-60 (finding claim "based solely on Defendant's unauthorized use of [a plaintiff's]
    ideas without compensation" to be preempted).

1  interest of celebrities in their identities." *White v. Samsung Elecs, Am., Inc.*, 971 F.2d 1395, 1396

2  (9th Cir. 1992).  The theory of the right "is that a celebrity's identity can be valuable in the promotion

3  of products."  *Id.*  While the right of publicity in California is no longer restricted to celebrities, it is

4  still premised on protecting an individual's property interest in the economic value of their identity.

5        There are two ways to assert a right of publicity claim in California: a common law

6  commercial misappropriation cause of action and a statutory remedy for commercial

7  misappropriation under § 3344 of the California Civil Code.  To plead a California common law

8  right of publicity claim, a plaintiff must allege: "(1) the defendant's use of the plaintiff's identity;

9  (2) the appropriation of plaintiff's name or likeness to the defendant's advantage, commercially or

10  otherwise; (3) lack of consent; and (4) resulting injury."  *Maloney*, 853 F.3d at 1008 n.2 (quoting

11  *Fleet v. CBS, Inc.*, 50 Cal. App.4th 1911, 1918 (1996)).  Section 3344 provides that "[a]ny person

12  who knowingly uses another's name, voice, signature, photograph, or likeness, . . . on or in products,

13  merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products,

14  merchandise, goods or services, without such person's prior consent . . . shall be liable."  Cal. Civ.

15  Code § 3344.  To plead a claim under § 3344, a plaintiff must allege "all the elements of the common

16  law cause of action" plus "a knowing use by the defendant as well as a direct connection between

17  the alleged use and the commercial purpose."  *In re NCAA Student-Athlete Name & Likeness*

18  *Licensing Litig.*, 724 F.3d 1268, 1273 n.4 (9th Cir. 2013).

19        Although Plaintiffs' allegations are vague and conclusory, what they do allege shows that

20  their right of publicity claims are flawed and cannot be cured.  Specifically, Plaintiffs (1) do not

21  adequately allege identity appropriation; (2) do not adequately allege use "on or in products" or for

22  purposes of advertising or soliciting purchases; (3) do not plausibly allege knowing use or a direct

23  connection between the use and commercial purposes; and (4) do not adequately allege injury.  For

24  each of these reasons—independently—Plaintiffs' right of publicity claims fail.

25             **a.**      **Plaintiffs do not sufficiently allege the Stability Defendants use**

26                     **their identities.**

27        A right of publicity claim does not lie in a defendant's use of a plaintiff's name, likeness,

28  signature, etc., per se, but rather in the use of a plaintiff's ***identity*** via such means.  *See, e.g. White*,

1    971 F.2d at 1398 ("It is not important **how** the defendant has appropriated the plaintiff's identity,

2    but **whether** the defendant has done so.") (emphasis altered).

3         Plaintiffs' "name" appropriation allegations show that they are *not* alleging their identities

4    were appropriated.    Plaintiffs vaguely allege that Defendants use Plaintiffs' names (1) "in

5    Defendants' AI Image Products," Compl. ¶ 202; (2) "to advertise art 'in the style' of Plaintiffs'

6    work"; and (3) to "link and associate the art generated by [Defendants'] AI with Plaintiffs' specific

7    styles and artistic accomplishments," ¶ 207.   But alleging the use of a plaintiff's name without

8    appropriation of identity does not state a right of publicity claim.   In *Carson v. Here's Johnny

9    Portable Toilets*, for example, the court considered whether the phrase "Here's Johnny"

10   appropriated the identity of the entertainer Johnny Carson in a business named "Here's Johnny

11   Portable Toilets."  698 F.2d 831 (6th Cir. 1983).  In holding that it did, however, the court explained

12   that using the name "John William Carson" was neither necessary nor sufficient to state a right of

13   publicity claim.  *See id.* at 837.  This is because a company called "John William Carson Portable

14   Toilets," "though literally using appellant's 'name,' . . . would not have appropriated Carson's

15   identity as a celebrity."  *Id.*   Thus, the relevant inquiry is not whether Plaintiffs' *names* were

16   appropriated, but whether their *identities* were appropriated through, in this case, Plaintiffs' names.[10]

17        Here, Plaintiffs do not sufficiently allege that Defendants appropriated their identities

18   through use of their names.  To the extent Plaintiffs' claims depend on third parties' "use[ of] AI

19   Image Products to create works using the names of Plaintiffs and the Class in Prompts," Compl. ¶

20   171, this raises two fatal issues.  First, users (not Defendants) are the ones using Plaintiffs' names.

21   *See Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010) (citation

22   omitted) (rejecting right-of-publicity claim lacking use by defendant).   Second, Text Prompts are

23   not "names" within the context of publicity claims.  If Plaintiffs' theory were to be accepted, a right

24   of publicity claim would lie each time someone entered an individual's name on a Google search.

25

26   ---
     [10]    *See also, e.g.*, J. Thomas McCarthy & Roger E. Schechter, Rights of Publicity and Privacy
27   § 11.51 ("A 'name' is merely one indicator of personal identity. The right of publicity protects
     identity, not a name per se."); Restatement (Second) of Torts § 652C cmt. d ("The value of the
28   plaintiff's name is not appropriated by mere mention of it. . . nor is the value of his likeness
     appropriated when it is published for purposes other than taking advantage of his reputation,
     prestige, or other value associated with him, for purposes of publicity").

Common sense dictates that California's right of publicity cannot be so extended.  Indeed, even the appearance of an individual's name "as part of the *search results* displayed in response to a user-generated query does not mean that the relevant company used Plaintiff's name for advertising or trade purposes."  *Obado v. Magedson*, 2014 WL 3778261, at *7 (D.N.J. July 30, 2014) (emphasis added).  So too for search terms or Text Prompts.  Accordingly, to the extent that Plaintiffs even allege that anyone "literally us[ed]" their names, this usage "would not have appropriated [Plaintiffs'] identit[ies] as [human beings]."  *Carson*, 698 F.2d at 837.

Plaintiffs' allegations that their "artistic identities" have been misappropriated also do not suffice for a right of publicity claim.  Plausible claims require the misappropriation of an individual's actual identity rather than "artistic identity" or "style."  *See, e.g., White*, 971 F.2d at 1399 (finding allegations of an automobile commercial with a robot wearing an evening gown and wig in front of a Wheel of Fortune sufficient to show appropriation of Vanna White's identity); *see also Waits*, 978 F.2d at 1100-01 (distinguishing between voice misappropriation, which is susceptible to tort liability, and style misappropriation, which is not).  Thus, to the extent that Plaintiffs' right of publicity claim is based on Plaintiffs' "artistic styles," *see supra* at 14, they fail. *See White,* 971 F.2d at 1399; *Waits*, 978 F.2d at 1100-01.  And in any event, or alternatively, Plaintiffs allege appropriation of their artwork itself, as evidenced by the fact that Plaintiffs (unsuccessfully) claim copyright infringement regarding everything allegedly in or stemming from Defendants' products that allegedly reflect Plaintiffs' "artistic identities."

In short, the gravamen of Plaintiffs' complaint is not that Defendants have appropriated to themselves the economic value of Plaintiffs' identities as human beings, but that Defendants have appropriated Plaintiffs' copyrighted artwork or artistic styles.  Their right of publicity claims accordingly must fail.

### b.  Plaintiffs do not allege sufficient identity use "on or in products" or for purposes of advertising, selling, or soliciting purchases.

Section 3344 imposes liability where a person knowingly uses another's name "on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent."  Cal. Civ. Code

§ 3344.  Plaintiffs' generic allegations are insufficient to state a claim under this section.

*First,* Plaintiffs do not adequately allege that Defendants use their identity "on or in products."  The "on or in products, merchandise, or goods" language in the California statute refers to tangible or otherwise observable products that contain aspects of an individual's identity.  *See, e.g., Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 395 (2001) (finding plaintiffs stated a § 3344 claim based on the "on or in products" language regarding a t-shirt with a picture of the Three Stooges because defendant's "lithographic prints of The Three Stooges are themselves ***tangible personal property*** . . . made as products to be sold and displayed" and defendant's t-shirts are "likewise ***tangible personal property*** . . . made as products to be sold and worn") (emphasis added).  But here, the Complaint (incorrectly) alleges only that Plaintiffs' names exist somewhere in Defendants' software as "links" to Plaintiffs' artwork.  *See, e.g.,* Compl. ¶¶ 207, 218.  While this is not how Stability AI's products actually function, even taking Plaintiffs' allegations as true for purposes of this motion shows that Plaintiffs' names are neither tangible nor observable on or in Stability AI's products.  They are therefore not "on or in" Stability AI's products within the meaning of the California statute.

*Second,* Plaintiffs' right of publicity claims are rife with vague and conclusory advertising allegations that should be disregarded.  For example, Plaintiffs allege that "Defendants" (writ large) use their names and identities "for the purposes of advertising, selling, and soliciting purchases," Compl. ¶ 217; that they used Plaintiffs' names to "advertise art 'in the style' of Plaintiff's work," Compl. ¶ 205; and that they "advertise the ability of their systems to generate artwork 'in the style' of Plaintiffs' work" and prominently use "[t]his functionality . . . throughout Defendants' apps, website, and social media posts."  Compl. ¶¶ 210, 208.  But Plaintiffs do not point to any advertisements of Stability AI's products that used each of Sarah Andersen's, Kelly McKernan's, or Karla Ortiz's names or identities.  Nor do they make factual allegations to show how the Stability Defendants allegedly used each of Sarah Andersen's, Kelly McKernan's, or Karla Ortiz's names or identities to advertise art.  These allegations should be disregarded.

*Third,* to the extent that Plaintiffs' vague advertising allegations center on users' ability to type names into search bars as Text Prompts, they are plainly insufficient.  Plaintiffs allege that

1    Defendants created products able to "prioritize inclusion of specific artists' works by invoking the

2    name of the artist" and promoted those capabilities.  *See, e.g.,* Compl. ¶¶ 203; 205; 208; *see also*

3    Compl. ¶ 44 (listing the purported class-wide question of "[w]hether Defendants violated Plaintiffs'

4    and the Class's rights of publicity when they designed their AI Image Products to respond to prompts

5    requesting output images 'in the style of' specific individuals").  But as explained *supra*, common

6    sense dictates that the general ability to type names into Google cannot give rise to a right of

7    publicity claim for every human being, and neither can the general ability to enter any creator's

8    name as a Text Prompt into Stable Diffusion or DreamStudio.  And even if such use could be

9    considered "advertising, selling, or soliciting purchases," users (not the Stability Defendants) are

10   the ones using Plaintiffs' names in such manner.[11]

11   Because Plaintiffs have not sufficiently alleged commercial purpose, their right of publicity

12   statutory claim must fail.

13                                   **c.      Plaintiffs do not sufficiently allege that Defendants knowingly**

14                                            **used their identities in a manner directly connected to a**

15                                            **commercial purpose.**

16   Plaintiffs also do not and cannot allege a "knowing use" of their names or a "direct

17   connection" between the use of their identities and a commercial purpose, which are required to

18   state a claim under the California statute.  *See In re NCAA*, 724 F.3d at 1273 n.4.  Notably, Plaintiffs

19   allege that Defendants "harvest[ed], cop[ied], or extract[ed] data from websites by using automated

20   tools, including bots or web crawlers" to collect *billions* of images for Stable Diffusion's training

21   data.  Compl. ¶ 26 (emphasis added).  It is simply not plausible that any of the three Defendants

22   knew that Plaintiffs' images (let alone any purported identity attributes) were among the billions of

23   images allegedly accessed, much less that there is any direct connection between the alleged

24   inclusion of Plaintiffs' images (and any purported, though non-existent, identity attributes) in an

25   allegedly otherwise-indiscriminate review of all available images on the Internet and any

26

27   _____

     [11]      To the extent that Plaintiffs are alleging that a user's mere act of typing Plaintiffs' names
28   into text prompts somehow violates their rights of publicity or constitutes unfair competition, *e.g.*,
     Compl. ¶ 208, the Stability Defendants are immune from such claims pursuant to Section 230 of the
     Communications Decency Act.  *See* 47 U.S.C. § 230.

commercial purpose.  Nor do Plaintiffs allege knowledge based on any notice they provided Defendants.  (They could not so allege, as they provided Defendants with no such notice prior to filing suit.)  Moreover, because Plaintiffs have alleged *neither* a "use" of their identities nor a "commercial purpose," there is simply nothing to "direct[ly] connect[]."

### d.   Plaintiffs' alleged injuries show that they were not injured by identity misappropriation.

Nor do Plaintiffs satisfy the injury elements of their claims.  Plaintiffs' claims require them to show a "resulting injury" from the use of their identities.  *See Maloney*, 853 F.3d at 1008 n.2; *In re NCAA*, 724 F.3d at 1273 n.4. Not only can they not do so because their identities were not used, but their alleged right-of-publicity injuries conclusively show that any alleged injury does not arise from the alleged identity misappropriation.  Specifically, Plaintiffs allege that "[t]he goodwill associated with Plaintiffs' names and distinct identities is compromised by a proliferation of AI-generated art associated with Plaintiffs' names and identities," and that "[t]he value of Plaintiffs' name recognition and Plaintiffs' distinct artistic styles–and thus the value of their art itself–is diluted in a market flooded with AI-generated copies built on Plaintiffs' unique artistic identities."  Compl. ¶ 222.  In other words, Plaintiffs do not assert that the economic value of their identities as human beings have been compromised by Defendants' use of their names or artistic identities in search terms or even in advertising or soliciting purchases, but rather that the value of their ***art*** (or, at minimum, the "goodwill associated with their names") is diminished via allegedly infringing artwork competing with theirs in the market.  Thus, Plaintiffs do not satisfy the "resulting injury" element of their claims.

In short, Plaintiffs' right of publicity claims should be dismissed because they are ultimately (insufficient) copyright infringement claims that fail to meet the elements of California's statutory or common-law right of publicity causes of action.

### G.   Plaintiffs' Unfair Competition Claims are Preempted.

"When [a Lanham Act] claim is more accurately conceived of as attacking unauthorized copying," Supreme Court precedent "requires [courts] to avoid recognizing a 'species of mutant copyright law' by making such claims cognizable under the Lanham Act."  *Slep-Tone Ent. Corp. v.*

1    *Wired for Sound Karaoke & DJ Servs., LLC,* 845 F.3d 1246, 1250 (9th Cir. 2017) (discussing *Dastar*

2    *Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33-38 (2003)); *see also Dastar*, 539 U.S.

3    at 34 (holding that the unfair competition provision of the Lanham Act should be construed narrowly

4    when it threatens to "create [] an addition to the law of copyright").  In short, "[t]he Supreme Court

5    has extended th[e] principle of copyright preemption to the Lanham Act."  *Lions Gate Entertainment*

6    *Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F. Supp. 3d 1249, 1264 (C.D. Cal. 2016).  Where a

7    Lanham Act claim is rooted in an allegation that "Defendants have failed to obtain the permission

8    of the author of the 'idea, concept, or communication,'" it is subject to dismissal based on principles

9    of "*Dastar* preemption."  *Id.* at 1264, 1267.

10    The same holds true with respect to claims brought under California statutory and common

11    law of unfair competition.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th

12    Cir. 2008) ("To the extent the improper business act complained of is based on copyright

13    infringement, the claim [is] properly dismissed because it is preempted."); *Kodadek v. MTV*

14    *Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998).

15    Here, the "unfair acts" Plaintiffs allege are expressly the same alleged acts of copyright

16    infringement and DMCA violation for which Plaintiffs seek redress pursuant to their affirmative

17    copyright and DMCA claims.  Accordingly, following the same two-step analysis described above

18    (*see* Section E) and pursuant to the Supreme Court's decision in *Dastar Corp. v. Twentieth Century*

19    *Fox Film Corp.*, Plaintiffs' unfair competition claims are preempted and should be dismissed.

20    **H.    Plaintiffs' Declaratory Relief Claim Is Improper.**

21    Count VII is an improper, duplicative, and insufficient claim for declaratory relief that

22    should be dismissed.  The Declaratory Judgment Act and its California counterpart are designed to

23    adjudicate rights and obligations involving controversies that have "not reached the stage at which

24    either party may seek a coercive remedy" or in which "a party who could sue for coercive relief has

25    not yet done so."  10B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2751; *see*

26    *also In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014) (finding the

27

28

Declaratory Judgment Act and Cal. Civ. Code § 1060 "broadly equivalent").[12]  A declaratory relief claim is thus inappropriate and should be dismissed when it "serves no useful purpose and will not resolve any issues that adjudication of" the substantive counts "will not also resolve."  *Takeda Pharm. Co., Ltd. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1127 (N.D. Cal. 2014) (dismissing duplicative declaratory judgment claims); *see also United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (holding declaratory relief should be denied when the relief "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties") (collecting cases); *Lykkeberg v. Bank of Am., N.A.*, 2012 WL 1099773 (N.D. Cal. Apr. 2, 2012) ("Declaratory relief should not be used as a superfluous or second cause of action to determine issues that are identical and subsumed within existing causes of action.") (citations omitted). Here, Plaintiffs' Count VII seeks a declaration that Defendants violated certain statutes and is facially duplicative of Counts I, II, III, IV, and VI, which pursue causes of action under each of those statutes.  Count VII therefore serves "no useful purpose" and would not "afford relief from the uncertainty and controversy faced by the parties." And to the extent that Plaintiffs' substantive claims fail, their declaratory relief count premised on the same alleged conduct and violations of the same statutes also fails.  Count VII should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' complaint should be dismissed with prejudice.


Dated: April 18, 2023                                      Respectfully submitted,

                                                                        *s/ Paul M. Schoenhard*

                                                                        Mark A. Lemley (State Bar No. 155830)
                                                                        **LEX LUMINA PLLC**
                                                                        745 Fifth Avenue, Suite 500

---

[12]    Regardless, while Plaintiffs plead their Declaratory Relief claim under both federal and California law, this Court should evaluate their claim under Federal law.  *See In re Adobe*, 66 F. Supp. 3d at 1218 (evaluating plaintiff's claim under the federal Declaratory Judgment Act despite plaintiff's argument that the California Declaratory Relief Act should apply).

New York, NY 10151
Telephone: (646) 898-2055
Facsimile: (646) 906-8657
Email: mlemley@lex-lumina.com

Nicole M. Jantzi (*pro hac vice*)
Paul M. Schoenhard (*pro hac vice*)
**FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP**
801 17th Street NW
Washington, DC 20006
Telephone: (202) 639-7254
Email: nicole.jantzi@friedfrank.com
         paul.schoenhard@friedfrank.com

Michael C. Keats (*pro hac vice*)
Amir R. Ghavi (*pro hac vice*)
**FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Email: michael.keats@friedfrank.com
         amir.ghavi@friedfrank.com

***Counsel for Defendants Stability AI, Inc.
and Stability AI Ltd.***