Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                lkessler@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:     (415) 395-9940
Email:          mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs Sarah Andersen, Kelly McKernan,
Karla Ortiz, and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al., | Case No. 3:23-cv-00201-WHO |
| Individual and Representative Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS** |
| v. | |
| STABILITY AI LTD., et al., | Date:        July 19, 2023 |
| Defendants. | Time:        2:00 pm |
| | Location:   Courtroom 2 — 17th Floor |
| | Before:     Hon. William H. Orrick |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 1

III.    ARGUMENT ....................................................................................................... 3

        A.      Plaintiffs' Allegations Provide DeviantArt Adequate Notice ................... 4

        B.      Plaintiffs Have Sufficiently Alleged Direct Infringement (Count I) Against
                DeviantArt ................................................................................................ 4

                1.      Plaintiff Andersen Has Sufficiently Alleged Her Works Were
                        Infringed ....................................................................................... 5

                2.      Plaintiffs Have Pled Infringement of Exclusive Copyrights ........... 6

                3.      Plaintiffs' Allegations Satisfy the "Substantial Similarity" Test .... 9

        C.      Plaintiffs Have Alleged Vicarious Infringement (Count II) ...................... 11

        D.      Plaintiffs Adequately Plead Violations of the DMCA (Count III) ............. 12

        E.      Plaintiffs Have Plausibly Pled Right of Publicity Claims (Counts IV & V) as
                to DeviantArt ............................................................................................. 18

                1.      DeviantArt Knowingly Used Plaintiffs' Identities as Artists in
                        Direct Connection to a Commercial Purpose. ............................... 18

                2.      Plaintiffs Allege a Lack of Consent and Resulting Injury ............... 19

                3.      Plaintiffs' Right to Publicity Claims Are Not Preempted ............. 20

                4.      Plaintiffs' Right of Publicity Claims Are Not Barred Under the
                        "Transformative Use" Test ............................................................ 20

        F.      Plaintiffs Pled a Claim for Breach of Contract (Count IX) as to DeviantArt
                .................................................................................................................. 21

        G.      Plaintiffs Pled a Claim Under California's Unfair Competition Law, Cal
                Bus. & Prof. Code §§ 17200, *et seq.* (Count VI) ...................................... 23

                1.      Plaintiffs Pled an Unfair Competition Claim under the Lanham Act
                        .............................................................................................. 23

                2.      Plaintiffs Have Alleged a Claim Under California's UCL ............. 24

                3.      Plaintiffs Pled a Common Law Unfair Competition Claim ........... 25

        H.      Plaintiffs Pled a Claim for Declaratory Relief under 28 U.S.C. § 2201(a)
                and Cal. Code Civ. Proc., § 1060 (Count VII) .......................................... 25

        I.      Plaintiffs Should Be Permitted Leave to Amend ...................................... 25

IV.     CONCLUSION ................................................................................................. 25

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .................................................. 4

*Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...................................................... 24

*Batis v. Dun & Bradstreet Holdings, Inc.*, 2023 WL 1870057 (N.D. Cal. Feb. 9, 2023) ................ 19

*Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. C 04-05368 SI, 2006 WL 3218719 (N.D. Cal. Nov. 7, 2006) .................................................... 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................1, 3, 4

*Bespaq Corp. v. Haoshen Trading Co.*, No. 04-cv-3698 (PJH), 2005 WL 14841 (N.D. Cal. Jan. 3, 2005) ................................................................................................................................ 5

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) ...............................................................................................................................17

*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (N.D. Cal. 2014) ............................................................ 6

*Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244 (N.D. Cal. 2014) ................ 21

*Byton N. Am. Co. v. Breitfeld*, No. CV-19-10563-DMG, 2020 WL 3802700 (C.D. Cal. Apr. 28, 2020) .......................................................................................................................................... 24

*Cabell v. Zorro Productions Inc.*, No. 5:15-cv-00771-EJC, 2017 WL 2335597 (N.D. Cal. May 30, 2017) .......................................................................................................................................... 9

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019) .................................................. 24

*City Sols. Inc. v. Clear Channel Commc'ns, Inc.,* 365 F.3d 835 (9th Cir. 2004) .............................. 25

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) .......................................... 4

*Corbello v. Valli*, 974 F.3d 965 (9th Cir. 2020) ................................................................................. 5

*Davis v. Elec. Arts, Inc.*, 775 F.3d 1172 (9th Cir. 2015) .................................................................. 20

*Destifino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) ........................................................................... 4

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756 (N.D. Tex. Nov. 7, 2019) .....................................................................................................13

*Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131 (N.D. Cal. May 11, 2023) ..... 4, 12, 17

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ........................................................................... 25

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ................................................................. 18

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ................................ 18, 20

*Elec. Constr. Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) .................................. 25

*Est. of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997 (N.D. Cal. 2012) .......... 21

*Fourth Estate Pub. Benefit Corp. v. Wall-street.com, LLC*, 139 S.Ct. 881 (2019) ............................ 5

*Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088 (C.D. Cal. 2012) .................. 5, 7

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) .................................... 19

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ................................ 12

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282 (D. Haw. Nov. 7, 2014) ................................................................. 18

*Garcia v. Sony Computer Entm't Am.*, LLC, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ................... 24

*GC2, Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ........................................ 15, 17

*GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027 (9th Cir. 2012) ................................................................. 23

*Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2009 WL 425958 (M.D. Fla. Feb. 20, 2009) ................................................................. 14

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) .................................... 17

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................ 3

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650-JFW, 2015 WL 12712311 (C.D. Cal. Dec. 16, 2015) ................................................................. 5, 9, 10, 11

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) ................................................. 7, 8

*Kirk Kara Corp. v. W. Stone Metal Corp.,* No. CV 20-1931-DMG (EX), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ................................................................. 18

*Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006) .................................... 20

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D. Ill. 2014) ......... 12

*Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ................................................................. 12, 13

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ................................................. 25

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

*Mango v. Buzzfeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ..................................................... 14

*McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020)...................................... 3

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010)..................................... 13

*Med. Broad. Co. v. Flaiz*, Civil Action No. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ................................................................................................................ 13

*Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ........... 12

*Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022)......................... 21

*Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA), 2022 WL 17207103 (C.D. Cal. Sep. 16, 2022)................................................................................................................ 12

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990)................................... 25

*Murphy v. Millennium Radio Grp.*, Civil Action No. 08-1743 MAS, 2015 WL 419884 (D.N.J. Jan. 30, 2015) ...................................................................................................... 13

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................................... 4

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ......................................... 13

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) ....................................... 24

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) ..................... 5, 6

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ........................................ 12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)................................. 11

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ..................... *passim*

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ............................................... 6

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ............................................6, 7, 8

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................................. 4

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982 (N.D. Cal. 2015) .... 23

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ................................................................................................................ 12

*Wood v. Apodaca*, 375 F. Supp. 2d 942 (N.D. Cal. 2005) ..................................................... 10

*Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089 (E.D. Cal. 2009) ................................. 18

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

*Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837 (N.D. Cal. 2018) ........................................................ 24

**State Cases**

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001) ...................................... 20, 21

*Ross v. Roberts*, 222 Cal. App. 4th 677 (2013) ................................................................ 21

**Federal Statutes**

15 U.S.C. § 1125 ................................................................................................ 23

17 U.S.C. § 101 ............................................................................................. 7, 8

17 U.S.C. § 102 ............................................................................................. 20

17 U.S.C. § 106 ........................................................................................ *passim*

17 U.S.C. § 301 .................................................................................. 7, 8, 20, 25

17 U.S.C. § 411(a) ........................................................................................ 13

17 U.S.C. § 1202 ..................................................................................... *passim*

28 U.S.C. § 2201(a) ...................................................................................... 25

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................................... 23

Cal. Civ. Code § 3344 ..................................................................................... 18

Cal. Code Civ. Proc. § 1060 ............................................................................... 25

**Rules**

Fed. R. Civ. P. 8 ..................................................................................... *passim*

Fed. R. Civ. P. 9 .......................................................................................... 4

Fed. R. Civ. P. 12 ......................................................................................... 3

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiffs' Complaint alleges with the requisite specificity how DeviantArt's commercial AI imaging product "DreamUp" knowingly incorporates Stability AI's imaging product, Stable Diffusion, which in turn directly copied Plaintiffs' art in order to train Defendants' AI image generators for their own commercial profit. These AI image generators accomplish copyright infringement on a scale previously inconceivable. In its motions to dismiss, DeviantArt seeks to have it both ways: to reap the benefits of these AI image generators while leveraging their opacity and complexity system to prevent Plaintiffs and this Court from scrutinizing their legality. This is by design—Defendants' AI image generators are just tools for both the massive copyright infringement, and for the coverup of said infringement. Defendants' goal in this case is simple: to dodge liability for the massive misappropriation of countless protected images.

DeviantArt specifically challenges Plaintiffs' Complaint on several grounds, but none of its arguments hold merit. DeviantArt claims that Plaintiffs have failed to satisfy Rule 8(a)(2)'s pleading requirements. But Plaintiffs allege facts which sufficiently provide notice of the basis on which DeviantArt is sued—Rule 8(a) is satisfied.

With respect to DeviantArt's substantive arguments, DeviantArt's objections to Plaintiffs' copyright claims are unavailing. Plaintiffs make out each element of both direct infringement and vicarious infringement claims including with allegations of direct copying on a massive scale. DeviantArt's attempts to muddle the analysis to demand a level of specificity not required at the pleading stage. To the extent DeviantArt opposes Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim, DeviantArt attempts to read in elements that are nowhere to be found in Section 1202(b). With respect to Plaintiffs' well-pleaded state and common law claims, these arguments are also misplaced. Plaintiffs' Complaint sets forth ample facts sufficient to satisfy *Twombly*. To the extent that the Court determines that any of Plaintiffs' claims are found to be insufficient, leave to amend should be granted.

## II.    FACTUAL BACKGROUND

Defendants are in the business of developing generative artificial-intelligence based image generation products ("AI Image Products"). ¶¶ 33–35.[1] AI Image Products rely entirely on training images

---

[1] "¶___" and "Ex. ___" citations are to the Class Action Complaint, Case No. 23-cv-00201 (N.D. Cal. Jan. 13, 2023). ECF No. 1 unless otherwise indicated.

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

(images, or images paired with a descriptive text caption), that are included for the machine-learning process. ¶ 25. Training images are typically gathered through web scraping, the process by which images are harvested, copied or extracted from websites using tools such as bots or web crawlers. ¶ 26. Defendants' AI Image Products rely on billions of training images, which are almost all copied without the artists' permission and without compensation. ¶¶ 2–3, 57–58.

In August 2022, Stability AI released Stable Diffusion, an AI Image Product that produces images in response to text prompts, under an open-source license, i.e., users may download and use Stable Diffusion's software and associate machine-learning models derived from training images according to the terms of the open-source license. ¶¶ 52–54. Stability scraped (i.e., copied) over five billion images from websites, including possibly millions from DeviantArt, as training images for Stable Diffusion without the consent of the creators.[2] ¶¶ 57, 63. Stable Diffusion also did not negotiate licenses for any of the training images. ¶ 57. Stable Diffusion embeds and stores compressed copies of the training images within Stable Diffusion, and uses those compressed copies to generate its output in response to text prompts. ¶¶ 58-59.

Broadly, Stable Diffusion works by applying "diffusion," which is the software technique used to generate output images that are similar to those found in its training data. ¶¶ 65–66. Diffusion generally describes a process by which "noise" is introduced to an original image and then "denoised" in order to reconstruct a lossy copy of the training image. ¶¶ 68–75, *see also* ¶¶ 76–90. Every image output from an AI Image Product is necessarily derived from and depends on the breadth and quality of the images used for training. ¶¶ 95, 99. This means that, unlike a human artist, an AI Image Product can only copy latent images tagged with terms associated with the text prompt, and an AI Image Product can never exceed the limitations of its training images. ¶¶ 97–98.

DeviantArt was founded in 2000 and has held itself out as an online community that is friendly to artists. ¶ 114. Before November 2022, DeviantArt's terms of service contain prohibitions and limitations on how users may use content hosted on DeviantArt's platform, including prohibitions on commercial use.

---

[2] Many of these images came from datasets released by LAION (acronym for "Large-Scale Artificial Intelligence Open Network"), a nonprofit organization paid by Stability AI to help compile Training Images for their AI Image Products. ¶¶ 100-07. DeviantArt is the source of a significant portion of LAION images, and there likely 3.3 million images from Deviant Art in LAION. ¶ 110.

¶ 124, *see also* Exs. 1–17. Under those terms, using images hosted on DeviantArt to train an AI Image Product is violative of DeviantArt's terms.[3] ¶ 125.

In November 2022, DeviantArt released its own AI Image Product, DreamUp, which relies on Stable Diffusion as its underlying software engine. ¶¶ 64,129. DeviantArt sells DreamUp for profit to members of DeviantArt's platform, and claims (wrongly) that DreamUp "lets you create AI art knowing that creators and their work are treated fairly." ¶¶ 115, 117. DreamUp relies on Stable Diffusion as its image-generating engine. ¶ 65. Individual users can enter an artist's name into DreamUp and generate images that can convincingly pass as created by that artist, thanks to DeviantArt's use of Training Images. ¶ 171. These users can sell, and already have sold, such images to the detriment of Plaintiffs. ¶ 173. Defendants designed them to include this feature and Defendants even used Plaintiffs' names to promote it. ¶ 203. DeviantArt, like Stability, has not endeavored to negotiate licenses for training images or shared any revenue from creators or rightsholders of training images. ¶ 116.

DeviantArt's betrayal has not gone unnoticed by its artist community. DeviantArt users aired their concerns in a group audio session on November 11, 2022, wherein DeviantArt's CEO took ownership of bringing Stable Diffusion onto DeviantArt via DreamUp. ¶¶ 128–29. Shortly thereafter, DeviantArt altered its terms of service to permit data scraping for the purposes of training AI Image Products, and placing the onus on users to police their own works. ¶¶ 130–31.

## III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The plaintiff's allegations need only provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted).

In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. JP Morgan Chase Bank*

---

[3] DeviantArt has not taken any action against Stability for training on images hosted on its platform. ¶ 126.

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

*NA*, 976 F.3d 881, 886–87 (9th Cir. 2020). Furthermore, the allegations should be evaluated holistically, not piecemeal. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### A.    Plaintiffs' Allegations Provide DeviantArt Adequate Notice

DeviantArt argues that Plaintiffs use a "generalized, undifferentiated pleading technique repeatedly to vaguely associate DeviantArt with conduct that . . . was carried out by *other* Defendants." MTD at 7.[4] But Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see also Twombly*, 550 U.S. at 569 n.14, 570. Moreover, Plaintiffs are "required only to give [ ] notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). Plaintiffs have done so.[5]

Here, Plaintiffs allege that DeviantArt CEO Moti Levy personally admitted that he decided "to bring Stable Diffusion onto DeviantArt via the DreamUp app." ¶ 129. Plaintiffs allege that DeviantArt "created, sells, markets, and distributes DreamUp, which . . . is a commercial product that relies on Stable Diffusion to produce images." ¶ 35. Plaintiffs allege that their extensive description of "how Stable Diffusion works also describes the operations of . . . DreamUp." ¶¶ 65–100. Plaintiffs allege that DeviantArt makes money from DreamUp. ¶ 115. In short, Plaintiffs have alleged DeviantArt chose to embrace Stable Diffusion, market and sell an app based on Stable Diffusion called DreamUp, and make money from DreamUp. This may not satisfy DeviantArt, but it does satisfy Rule 8. *See Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131, at *9 (N.D. Cal. May 11, 2023).

### B.    Plaintiffs Have Sufficiently Alleged Direct Infringement (Count I) Against DeviantArt

A claim of direct copyright infringement must allege: (1) "ownership of the allegedly infringed material" and (2) that "the alleged infringers violates at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

---

[4] "MTD at ___" citations refer to Defendant DeviantArt, Inc's Notice of Motion, Motion to Dismiss, and Memorandum of Points and Authorities in Support of Motion to Dismiss (ECF No. 49).

[5] Defendant's reliance on *Destifino v. Reiswig*, 630 F.3d 952, 958-59 (9th Cir. 2011) is bizarre—there the pleadings were subject to the heightened pleading standard under Rule 9, not Rule 8, which applies here.

"[C]opyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("*Cybernet Ventures*"). "Direct infringement does not require intent or any particular state of mind." *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1098 (C.D. Cal. 2012); *see also ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650-JFW (AJWx), 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015) ("Copyright infringement is a strict liability tort. Lack of knowledge does not limit liability, but only applies to damages").

### 1.    Plaintiff Andersen Has Sufficiently Alleged Her Works Were Infringed

A plaintiff who alleges copyright infringement must show ownership of a valid copyright. *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020) *see also Fourth Estate Pub. Benefit Corp. v. Wall-street.com, LLC*, 139 S.Ct. 881, 887 (2019). "[C]omplaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules." *Cybernet Ventures*, 167 F. Supp. 2d at 1120. Here, Ms. Andersen has alleged that her registrations "include Works used as Training Images" by Defendants.[6] ¶ 28 & Exs. 1–16. At this stage, no more is required.

Nonetheless, DeviantArt argues that Plaintiff Andersen—who attached sixteen of her copyright registrations to the Complaint—failed to meet the copyright-registration requirement, because she does not specifically identify which "Works" were allegedly infringed by Defendants. MTD at 9. This argument holds no water. DeviantArt relies on *Bespaq Corp. v. Haoshen Trading Co.*, where the plaintiff failed to "identify which preexisting works in the registered catalog have been infringed by the defendants." No. 04-cv-3698 (PJH), 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005). DeviantArt's use of *Bespaq* is puzzling, however—Plaintiffs have plainly alleged Plaintiff Andersen's Works and registrations. *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001), is instructive here. In *Cybernet Ventures*, plaintiffs alleged "the existence of hundreds, even thousands of infringing photographs" within the defendant's websites. *Id.* at 1120. Because of the alleged "massive infringement," the court held that "[r]equiring a statement of each and every example [of infringement] would defeat the regime established by Rule 8.*" Id.* Similarly, Plaintiffs bring this action on behalf of a class with "at least thousands of . . .

---

[6] Plaintiffs McKernan and Ortiz concede that they did not include any material that was registered at the time of the filing of the Complaint.

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

members," ¶ 42, and allege that Defendants "copied over five billion images from websites." ¶ 57. The standard that DeviantArt asserts is simply "incompatible with the types of claims involved in this case." *Cybernet Ventures*, 167 F. Supp. 2d at 1120.

### 2. Plaintiffs Have Pled Infringement of Exclusive Copyrights

A copyright holder possesses exclusive rights regarding their registered works: the rights to reproduce, distribute, publicly display, perform, and create derivative works of the copyrighted work. 17 U.S.C. § 106. "The word 'copying' is shorthand" for infringing any of these exclusive rights. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, n.3 (9th Cir. 1989).

To prove that a certain work is infringing, a plaintiff must allege that the defendant "copied protected aspects" of the plaintiff's work to make the infringing work. 17 U.S.C. § 106(2); *see Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Notably, however, "'[s]ubstantial similarity' is not an element of a claim of copyright infringement. Rather, it is a doctrine that helps adjudicate whether copying of the 'constituent elements of the work that are original' actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012); *see also Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1163–64 (N.D. Cal. 2014) ("*Absent evidence of direct copying*, the plaintiff must demonstrate both that the defendant had 'access' to the plaintiff's work and that the two works are substantially similar.") (emphasis added; citation omitted). In practice, substantial similarity is the "shorthand lingo" used to collectively refer to two "distinct concepts": (1) "copying", which means "that a defendant copied the work" (as opposed to "independent creation"); and (2) "unlawful appropriation", which means that the copying reached material protected by copyright (as opposed to unprotectable elements). *Skidmore*, 952 F.3d at 1064.

Though Plaintiffs need only allege one valid theory to defeat DeviantArt's motion, the Complaint contains at least three distinct theories of direct infringement that apply to DeviantArt: (1) direct infringement by distributing Stable Diffusion, which contains compressed copies of the training images, as part of DeviantArt's DreamUp AI imaging product; (2) direct infringement by creating and distributing their DreamUp, which is itself an infringing derivative work; and (3) generating and distributing output images which are infringing derivative works.

### a.   Stable Diffusion Directly Infringes by Distributing Compressed Copies, and Therefore so Does DeviantArt

Infringement of the distribution right "requires 'actual dissemination of a copy' by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3); *Fox Broad. Co., Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1106 (C.D. Cal. 2012). Here, Plaintiffs allege that Defendants directly copied Plaintiffs' works. *E.g.,* ¶ 58 ("Stability has *embedded and stored compressed copies* of the Training Images within Stable Diffusion") (emphasis added). Indeed, Stable Diffusion and its compressed copies form the basis of Defendants' AI Image Products, including DeviantArt's DreamUp. *E.g.,* ¶ 65 ("Stable Diffusion . . . has been incorporated as an image-generating engine into many other software programs, including . . . DreamUp (released by DeviantArt)."). Plaintiffs also allege that these products including DeviantArt's DreamUp are made available to users for payment, i.e., DreamUp disseminates copies to customers. *See, e.g.*, ¶ 115. Because Plaintiffs have alleged the "actual dissemination" of direct copies by each Defendant, Plaintiffs have alleged infringement by distribution of copies. *See Range Rd. Music*, 668 F.3d at 1154 ("A showing of 'substantial similarity' is irrelevant in a case like this one [which] entailed direct copying of copyrighted works.").

### b.   DeviantArt Directly Infringed Because the DreamUp app Is an Infringing Derivative Work

To claim that a work qualifies as a derivative work under the Copyright Act, a plaintiff must allege that the work has "recast, transformed, or adapted" an existing copyrighted work. 17 U.S.C. § 101; *see also Jarvis v. K2 Inc.*, 486 F.3d 526, 531 (9th Cir. 2007). To further claim that a derivative work is infringing, a plaintiff must allege that defendants "copied protected aspects" of the plaintiff's work to make the infringing derivative work. 17 U.S.C. § 106(2); *see also Skidmore*, 952 F.3d at 1064. This can be proved through the inferential doctrine of "substantial similarity," but this doctrine "is irrelevant in a case . . . [that] entail[s] direct copying of copyrighted works"—such as this one—because the copying of entire copyrighted works necessarily entails copying protected aspects of the work. *Range Rd. Music*, 668 F.3d at 1154; *see also* § III.A.2, *supra*.

Here, Plaintiffs allege that "Stability downloaded or otherwise acquired copies of billions of copyrighted images" to use as "Training Images" for Stable Diffusion. ¶¶ 1–3. Plaintiffs have further alleged that "Stability has embedded and stored compressed copies of the Training Images within Stable

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

Diffusion." ¶ 58. Taken together, these allegations imply that Stable Diffusion is a derivative work, because by "stor[ing] compressed copies" of "billions of copyrighted images", it has thereby "transformed" Plaintiffs' works into another work. Because DreamUp incorporates Stable Diffusion, DreamUp also is a derivative work.

### c. DreamUp's Output Images Are All Infringing Derivative Works

As noted in the previous section, to claim that a work qualifies as a derivative work under the Copyright Act, a plaintiff must allege that the work has "recast, transformed, or adapted" an existing copyrighted work. 17 U.S.C. § 101; *see also Jarvis*, 486 F.3d at 531. To further claim that a derivative work is infringing, a plaintiff must allege that defendants "copied protected aspects" of the plaintiff's work to make the infringing derivative work. 17 U.S.C. § 106(2); *see also Skidmore*, 952 F.3d at 1064. Furthermore, the doctrine of substantial similarity "is irrelevant in a case . . . [that] entail[s] direct copying of copyrighted works"—such as this one—because the copying of entire copyrighted works necessarily entails copying protected aspects of the work. *Range Rd. Music*, 668 F.3d at 1154; *see also* § III.A.2, *supra*.

Here, Plaintiffs allege that "Stable Diffusion uses the Training Images to produce seemingly new images through a mathematical software process. These new images are based entirely on the Training Images and are derivative works of the particular images Stable Diffusion draws from when assembling a given output." ¶ 4, 79–100. Plaintiffs further allege that each output image "is necessarily a derivative work, because it is generated exclusively from a combination of the conditioning data and the latent images, all of which are copies of copyrighted images." ¶ 90. Plaintiffs allege that within Stable Diffusion, copies of training images are "interpolated—meaning, blended mathematically—to produce new derivative images." ¶ 79. Plaintiffs allege that "the source images themselves are being directly interpolated" to make output images. ¶ 86. Plaintiffs provide a diagram illustrating how Stable Diffusion combines source images into output images. ¶ 81. Because this case involves "direct copying of copyrighted works," Plaintiffs have sufficiently alleged that the output images are infringing derivative works under the Copyright Act. *Range Rd. Music,* 668 F.3d at 1154; *see also Jarvis*, 486 F.3d at 532 ("The infringing] ads did not simply compile or collect [Plaintiff's] images, but rather altered them in various ways and fused them within other images and artistic elements into new works that were based on—i.e., derivative of—[Plaintiff's] original images.").

1    DeviantArt has made output images with its own AI image generator as part of creating and

2    marketing it. ¶¶ 35, 64, 115. Whether the output varies or differs from the input is immaterial—given this is

3    a case involving direct copying, this is another basis of direct-infringement liability against Defendants. *See*

4    *ITC Textile*, 2015 WL12712311, at *5 ("[T]he law is clear that in cases of direct copying, the fact that the

5    final result of defendant's work differs from plaintiff's work is not exonerating. To the contrary, it can show

6    infringement of multiple exclusive rights, such as unauthorized reproduction and unauthorized creation of

7    a derivative work.").

8    ### 3.   Plaintiffs' Allegations Satisfy the "Substantial Similarity" Test

9    Defendants' call for a substantial-similarity analysis of the output images is a "red herring" because

10   "the proper question is whether [infringement] occurred *vel non*." *Range Rd. Music,* 668 F.3d at 1154.

11   Because Plaintiffs allege direct copying of their copyrighted works, the substantial similarity test does not

12   apply. Moreover, a showing of substantial similarity is in the nature of a defense, inappropriate for

13   resolution on the pleadings. *See Cabell v. Zorro Productions Inc.*, No. 5:15-cv-00771-EJC, 2017 WL 2335597,

14   at *8 (N.D. Cal. May 30, 2017) (rejecting argument that "Plaintiff has failed to allege plausible facts to

15   establish substantial similarity under the extrinsic test" and explaining that "the string of Ninth Circuit

16   authority cited by Defendants shows, satisfaction of the extrinsic test is required primarily in the context of

17   motions for summary judgment") (citations omitted).

18   Still, Plaintiffs' direct-infringement claim passes muster even under a substantial-similarity test.

19   Plaintiffs allege that the output images are infringing derivative works that have been "blended

20   mathematically" from the training images. ¶ 79. A natural and expected consequence of this process is that

21   any specific output image is not "likely to be a close match" with any "specific [i.e., *single*] image in the

22   training data." ¶ 93. It is reasonable to infer that substantial similarity exists between the output image and

23   the source images that have been blended to create a particular output image as demonstrated in the

24   Complaint.[7] *See*, *e.g.*, ¶ 81. Plaintiffs also allege that having a copy of Stable Diffusion is akin to "having a

25   directory on your computer of billions of JPEG files." ¶ 75(c). Therefore, the Court may reasonably infer

26

27   _____

     [7] This is also why Plaintiffs' argument is entirely consistent with Plaintiffs' allegation that "[i]n general,
     none of the Stable Diffusion output images provided in response to a particular Text Prompt is likely to be

28   a close match for any specific image in the training data." ¶ 93.

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

1  that just as one could open a computer directory to inspect the JPEG files and compare them to the

2  original works, one may conduct an analogous inspection of Stable Diffusion, which will reveal the

3  substantial similarity between the "stored compressed copies" within Stable Diffusion and the original

4  works. ¶¶ 2–3, 18, 58–59, 100; *see also Wood v. Apodaca*, 375 F. Supp. 2d 942, 946 (N.D. Cal. 2005)

5  (explaining that at the motion to dismiss stage, the Court must "construe [Plaintiffs' allegations] in the

6  light most favorable" to Plaintiffs). These allegations satisfy substantial similarity.

7      DeviantArt's arguments to the contrary rest on a deliberate misreading of Plaintiffs' allegations and

8  an insistence that this Court treat their AI image generators as magical and inscrutable black boxes. MTD

9  at 12. Plaintiffs devote nearly seven pages of their Complaint to describing "How Stable Diffusion Works."

10  ¶¶ 65–100. Plaintiffs further allege that all of Defendants' AI image generators, including DeviantArt's

11  DreamUp product work in substantially the same way "because they rely on Stable Diffusion as an

12  embedded image-generating engine." ¶ 65. The Court is required to "accept as true all material allegations

13  in the complaint." *Wood*, 375 F. Supp. at 946. Indeed, nowhere in their motions does DeviantArt grapple

14  with these allegations; it instead obfuscates in order to distract from its unlawful practices. *E.g.*, MTD at

15  11–12.

16      a.      **DeviantArt Cannot Disclaim Liability for Infringement**

17      DeviantArt attempts to disclaim liability for direct infringement because it claims "even if th[e]

18  alleged scraping were copyright infringement, the Complaint does not allege that DeviantArt had anything

19  to do with it." MTD at 10. But DeviantArt's knowledge or intent (or lack thereof) does not limit its liability

20  for direct infringement.[8] *ITC Textile*, 2015 WL 12712311, at *5 ("Copyright infringement is a strict liability

21  tort. Lack of knowledge does not limit liability . . . ."). Similarly, DeviantArt's protestations that it did not

22  create Stable Diffusion matter little. MTD at 10. DeviantArt's DreamUp product is equally responsible for

23  direct infringement.

24      *ITC Textile Ltd. v. Wal-Mart Stores Inc.*, 2015 WL 12712311, is instructive. At issue in *ITC Textile*

25  were infringing designs placed on garments by an intermediate party that were later sold at Wal-Mart. *Id.* at

---

26  [8] DeviantArt's disclaiming of knowledge is also found nowhere in the Complaint. In fact, the Complaint
27  sets forth ample allegations that DeviantArt knew that Stable Diffusion was infringing. *See, e.g.*, ¶ 120; *see also* ¶ 129 (statement by DeviantArt's CEO taking responsibility for choosing to base DreamUp on Stable
28  Diffusion).

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

*4. Wal-Mart disclaimed liability and sought summary judgment because it lacked knowledge that the garments contained infringing copies of the designs. *Id.* at *5. The court rejected Wal-Mart's argument and determined that "[t]o survive a motion for summary judgment, a defendant has 'the burden of tracing the chain of title to show that [its] authority . . . flows from the copyright holder.'" *Id.* (citation omitted).

Plaintiffs did not grant DeviantArt authority to use copies of their art. Nor did DeviantArt obtain that authority before releasing DreamUp. These allegations are sufficient at the pleading stage.

### C.    Plaintiffs Have Alleged Vicarious Infringement (Count II)

A claim for vicarious copyright infringement requires the allegation of a "direct infringement" by a third party where the defendant "declin[es] to exercise a right to stop or limit" the infringement and retains "a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Plaintiffs have properly alleged all three elements of this claim.

***Third Party Infringement.*** Plaintiffs allege that "[w]hen used to produce images from **prompts by its users**, Stable Diffusion uses the Training Images to produce seemingly new images through a mathematical software process. These output images are based entirely on the Training Images and are derivative works of the particular images Stable Diffusion draws from when assembling a given output." ¶ 4 (emphasis added). As alleged above, each output image is itself an infringing derivative work. *See* § III.A.2.c, *supra*. Thus, when a DreamUp user prompts DreamUp for an output image, that act of output is an act of infringement by a third party. This provides the predicate act of direct infringement that supports the vicarious-infringement claims for Defendants.

***DeviantArt's Right to Stop the Infringing Conduct.*** DeviantArt wrongly argues that Plaintiffs have failed to make this allegation. MTD at 13–14. Plaintiffs allege that "DeviantArt created, sells, markets, and distributes DreamUp . . . a commercial product that relies on Stable Diffusion to produce images." ¶ 35. Because Defendants each released AI image generators and control how they work, it is necessarily true that Defendants has always had the "right to stop" the respective infringement—for instance, by never releasing these generators to the public, or ensuring that they did not emit infringing derivative works. *See, e.g.*, *Range Rd. Music*, 668 F.3d at 1153 (finding that plaintiff "pleaded specific facts to raise a plausible inference" that defendants exercised control over the venue that undertook the infringing act). With respect to DeviantArt, it could have stopped infringing even earlier—by enforcing its own terms of service

against Stability's unlawful scraping of its users' hosted content for the commercial purposes of developing an AI image generator. ¶¶ 120–26.

    ***DeviantArt's Financial Interest in the Infringing Activity.*** To the extent Defendants argue that Plaintiffs have failed to allege a financial interest in the infringing activity, each is wrong. *E.g.*, MTD at 13–14. Plaintiffs allege that "DeviantArt offers paid subscriptions . . . [that] range in price from $3.95 to $14.95 per month . . . for a certain number of Text Prompts." ¶ 115. Plaintiffs have thus alleged that DeviantArt has a direct financial interest in its members creating more infringing output images with its AI image generator. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (Financial benefit exists "where the availability of infringing material acts as a draw for customers.").

    **D.    Plaintiffs Adequately Plead Violations of the DMCA (Count III)**

    Section 1202(b) of the DMCA imposes liability for the removal or alteration of copyright management information ("CMI").[9] 17 U.S.C. § 1202(b)(l); *see also Doe 1*, 2023 WL 3449131, at *11. Section 1202(c), which describes protected categories of CMI, has been interpreted broadly. *See Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014). The pleading burden under the DMCA is low. *See Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA) (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022) (burden is "not as exacting" at the pleading stage).

    "Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). "'[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally'" for purposes of pleading Section 1202(b)'s mental state requirements. *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836, at *9

---

[9] Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]"

(N.D. Cal. Oct. 25, 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit. "While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA are, however, simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broad. Co. v. Flaiz*, Civil Action No. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003).

A DMCA claim does not require proof of infringement. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 950–52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Thus, fair use is not a defense. *See Murphy v. Millennium Radio Grp.*, Civil Action No. 08-1743 MAS, 2015 WL 419884, at *5 (D.N.J. Jan. 30, 2015) ("A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI."); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("a DMCA action under section 1202(b) is not an action for infringement").

### 1.    Plaintiffs Pled All Elements of a Section 1202(b) Violation

A claim for a copyright management information ("CMI") violation under the DMCA requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286-87 (C.D. Cal. 2022). Further the plaintiff must plead the requisite scienter.

***Existence of CMI.*** Plaintiffs allege that their Works contained CMI such as copyright notices, titles of the Works, the names of the creators, and the names of the copyright holders. ¶¶ 180, 191. Each are recognized as CMI under Section 1202(c). *See* 17 U.S.C. § 1202(c)(2), (3), (6); *see also Logan v. Meta Platforms, Inc.*, 2022 WL 14813836, at *8 (N.D. Cal. Oct. 25, 2022) (finding that the creator's name, title of the work, "and a link to a Creative Commons website . . . setting forth the terms and conditions for use'" constituted CMI). Additionally, Plaintiffs have alleged that CMI was incorporated directly into their Works. ¶ 191; *see also Logan*, 2022 WL 14813836, at *8 ("[I]dentifying information . . .provided beneath each [Work]" "sufficiently close to qualify as CMI.")

***Knowing Removal of CMI.*** Plaintiffs allege that Defendants, including DeviantArt, knowingly removed or altered CMI from Plaintiffs' works. First, Defendants "train[ed] Stable Diffusion on [Plaintiffs'

works] and design[ed] it to omit any CMI as part of the output." ¶ 183. DeviantArt chose to base its AI

image model on Stable Diffusion. ¶ 120; *see also* ¶ 129 (DeviantArt CEO taking ownership of decision to

use Stable Diffusion for DeviantArt's AI Image Product). Stable Diffusion is open-source,[10] meaning the

code is readily available, so DeviantArt cannot disclaim knowledge of how it worked.[11] ¶ 53. Additionally,

DeviantArt knew the images used to train the models contained CMI, and that CMI was knowingly

removed when training or when the model is outputting. *E.g.*, ¶¶ 184–91. This is particularly true of

DeviantArt, which brands itself as "the world's largest art community" (¶ 114), and which contributed 3.3

million images to the LAION-Aesthetics dataset used to train Stable Diffusion in contravention of its own

terms of service. ¶¶ 109–10. That is sufficient.

   **Distribution of CMI.** Plaintiffs allege that "[w]ithout the authority of Plaintiffs and the Class,

Defendants distributed CMI knowing that the CMI had been removed or altered without authority of the

copyright owner or the law with respect to the Works." ¶ 189.

   **Distribution of Copied Works.** Plaintiffs allege Defendants distributed copies of the Works. ¶ 190.

For example, Defendants created and stored training images including those owned by Plaintiffs and

distributed these Copies "for use in training or otherwise creating AI Image Products." ¶¶ 3, 157.

   **Knowingly Enabling Infringement.** Plaintiffs allege Defendants knew or had reasonable grounds to

know that their distribution would induce, enable, or conceal an infringement, either by itself or its users.

"[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will

conceal *his own* infringing conduct satisfies the DMCA's second scienter requirement." *Mango v. Buzzfeed,*

*Inc.*, 970 F.3d 167, 172 (2d Cir. 2020); *see also id.* ("Section 1202(b)(3) also encompasses 'an infringement'

that, upon distribution, 'will . . . conceal' the fact of *that* infringement."). DeviantArt knows the value of

---

[10] Indeed, it is bizarre that DeviantArt seems to disclaim knowledge of what Stable Diffusion's open-source code does. By definition, that the code is open source means that the source code is available to the public to use, copy, modify, or distribute. *See Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2009 WL 425958, at *4, n.7 (M.D. Fla. Feb. 20, 2009) ("Open source software is normally available to the public free of charge or for a nominal fee to cover shipping or online connection charges.") (citing Stefano Comino & Fabio M. Manenti, *Open Source vs Closed Source Software: Public Policies in the Software Market* 2, http:// opensource.mit.edu/papers/cominomannti.pdf (June 2003)).

[11] Plaintiffs allege how the diffusion process whereby CMI is altered and removed from the original and a copy is reconstructed. ¶¶ 73-86. Plaintiffs also allege how diffusion technique was improved upon and supplemented with conditioning and implemented into Stable Diffusion. ¶¶ 87-90.

the images hosted on its site; it acknowledges as much in its terms of service which prohibit commercial uses. ¶ 124. DeviantArt also knows DreamUp is trained on copies of works hosted on its site because DeviantArt based its product on Stable Diffusion, Stability's open-source AI product which is trained on DeviantArt-hosted works. ¶¶ 125–29. Indeed, DeviantArt's CEO acknowledged that DeviantArt "modif[ied] Stable Diffusion for its product." ¶ 129. Further, DeviantArt altered its terms of service permitting scraping for AI training purposes after being confronted by artists about its repudiation of its community principles, including a provision placing the onus on DeviantArt artists for "policing their own work." ¶¶ 128–31.

When provided with output that has CMI removed or altered, "users of AI are induced or enabled to copy the Works and/or make Derivative Works based on them." ¶ 192. DeviantArt, a company that has held itself out as being friendly to artists, and as "the world's largest art community," knew that images generated by its AI Image Product would not include the CMI of the underlying copyrighted images. *See GC2, Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019) ("[It is] reasonable to infer that the defendants—companies engaged in producing and distributing online games—knew that each time they updated or launched a game . . . they reuploaded the entire game library, thereby causing the unlawfully removed or manipulated [CMI] to again be distributed to the public" and defendants "should have known that their unlicensed distribution of artwork missing [CMI] to their customers could lead their customers to infringe [plaintiff's] copyrights"). DeviantArt also knew that removing CMI from the copyrighted Works would conceal its further infringing conduct under the DMCA because such removal of CMI "made it difficult or impossible to contact Plaintiffs and the Class to obtain authority." ¶ 183. After all, it changed its terms of service in order to attempt to place the burden of policing on the artists, tacitly acknowledging its acts could lead to infringement. ¶ 131.

Even though Plaintiffs have satisfied Rule 8 with respect to their DMCA claim, DeviantArt still maintains that Plaintiffs' DMCA claim must be dismissed. DeviantArt's arguments are twofold: (1) that Plaintiffs have provided no plausible factual allegations to support their DMCA claim under either a so-called "Input CMI Theory" or "Output CMI Theory"; and (2) that Plaintiffs did not allege that DeviantArt distributed "identical" copies of Plaintiffs' work. Neither of these arguments pass muster.

        **2.**     **Plaintiffs Pled Sufficient Factual Allegations to Plead a Violation of the DMCA**

DeviantArt protests that Plaintiffs have not set forth adequate factual bases to plead a violation of the DMCA as to the DeviantArt. As set forth above, this is plainly wrong. Plaintiffs have alleged each element of a Section 1202 claim with the requisite specificity. *See* § III.D.1, *supra*.

To the extent DeviantArt says the Complaint does not set forth facts plausibly demonstrating that it had "anything to do" with the altering or removal of CMI (MTD at 15), it is mistaken. Plaintiffs have alleged ample facts demonstrating DeviantArt knew or reasonably should have known its AI Image Product was removing and altering CMI. For example, DeviantArt's CEO admitted that DeviantArt took Stable Diffusion's open-source code, and that DeviantArt used that code to create DreamUp. ¶ 129. To the extent that DeviantArt disclaims knowledge based on its professed ignorance of how *Stable Diffusion* (upon which DreamUp is based) works (¶ 50), this argument is not well-taken. Stable Diffusion is *open-source*, meaning its source code is publicly available—DeviantArt's incorporation of Stable Diffusion's open-source code necessarily requires a level of understanding of what the underlying Stable Diffusion model does.[12] *See* note 10, *supra*.

To the extent DeviantArt says Plaintiffs' DMCA claim fails because "[i]t does not identify the supposedly distributed works from which Defendants allegedly altered or removed CMI, what the altered or removed MCI was, or which Defendants altered or removed it" (MTD at 15), this too is mistaken. Plaintiffs have identified which of their works have been included as Training Images. ¶¶ 28–30 & nn.1–4. They have identified the types of CMI at issue and how it is incorporated into their Works. *E.g.*, ¶¶ 180, 191, 194. And Plaintiffs have explained how each Defendant removed or altered CMI through the processes each of their AI products utilize, a process which each of them knew and understood because the underlying code was open-source and available for examination before use. *E.g.*, ¶¶ 53, 119–20, 129–31, 184–90, 91. These are far from conclusory and generalized allegations.

3.  **Section 1202 Does Not Require the Copy be "Identical"**

---

[12] DeviantArt construes Plaintiffs as alleging two theories of liability, one based on the removal or alteration of CMI when scraped off the internet (the "Input CMI Theory") and one based on removal or alteration of CMI based on the outputs of each AI model (the "Output CMI Theory"). MTD at 15. These distinctions are without difference—Plaintiffs have alleged the existence of CMI, that the CMI was knowingly removed and altered; and that the AI Image Models reproduced training images as output. That is sufficient.

DevianrtArt asserts that Plaintiffs' DMCA claim fails because "the Complaint does not allege that DeviantArt distributed identical copies of Plaintffs' 'works' with removed or altered CMI." MTD at 16. But Section 1202(b) has no such requirement. Courts have long recognized the DMCA can be violated when CMI that is incorporated into works has been removed. For example, in the computer code context, CMI is often woven into the code itself. *E.g.*, *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016); *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) ("Weaving CMI into the text of the source code may be among the most efficient or security-enhancing ways to include CMI with that code."). If CMI that is incorporated into a work is removed or altered, the infringing copy necessarily need not be identical. *ICONICS*, 192 F. Supp. 3d at 272 ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Indeed, in *Doe 1 v. GitHub, Inc.*, Case No. 22-cv-06823-JST (N.D. Cal.), defendants there argued that no liability could attach where a similar artificial intelligence-based code-generation model did not output identical code.[13] The district court disagreed and denied defendants' motion to dismiss as to plaintiffs' Section 1202(b) claims. *Doe 1*, 2023 WL 3449131, at *13. Here, Plaintiffs have alleged that CMI is likewise incorporated and interwoven into their copied works. ¶ 191.

In any event, Defendants misinterpret the Complaint and ignore Plaintiffs' allegation that Defendants incorporated their works *in their entirety* into the AI Image Product as Training Images. *See*, *e.g.*, ¶¶ 57, 103–10, 183. The AI Image Products then generate outputs, which are all reconstructed copies of Plaintiffs' and class members' licensed work, and necessarily remove the CMI contained in these works. *See*, *e.g.*, ¶¶ 75.b., 90, 95. That is sufficient. *See GC2 Inc.*, 391 F. Supp. 3d at 844 (upholding jury verdict on

---

[13] *See*, *e.g.*, *Doe 1 v. GitHub, Inc.*, Case No. 4:22-cv-06823-JST (N.D. Cal. Jan. 26, 2023), ECF No. 50 at 13-14 (arguing Section 1202 requires removal of CMI from "identical" copies of work); *Doe 1 v. GitHub, Inc.*, Case No. 4:22-cv-06823-JST (N.D. Cal. Jan. 26, 2023), ECF No. 53 at 9-10 (same).

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

DMCA removal claim where the defendants had used the plaintiff's work "in its entirety, in . . . games later developed by the defendants").[14]

### E.   Plaintiffs Have Plausibly Pled Right of Publicity Claims (Counts IV & V) as to DeviantArt

A common law cause of action for right of publicity has four elements: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). The statutory right of publicity, as set forth in California Civil Code § 3344(e), requires that the plaintiff must also "'allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose,' in addition to proving the elements of the common law cause of action." *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1095 (E.D. Cal. 2009) (citation omitted). Plaintiffs can pursue both claims simultaneously. Cal. Civ. Code § 3344(g).

Plaintiffs have pled all the factual elements necessary to set forth both their statutory and common law Right of Publicity claims under California precedent. DeviantArt misreads Plaintiffs' claims—Plaintiffs' claims based upon DeviantArt's misuse of their *names*, not their artistic styles.

### 1.   DeviantArt Knowingly Used Plaintiffs' Identities as Artists in Direct Connection to a Commercial Purpose.

The Complaint sets forth how DeviantArt used specific Class members' names to attract customers and "gain[ ] a commercial advantage." *Id.* The functionality "to create images based on 'in the style' prompts" was "prominent and used throughout Defendants' apps, website, and social media posts."

---

[14] Defendants' cases can be distinguished. *Dolls Kill*, *Kirk Kara*, and *Frost-Tsuji* each deal with works which could have been reproduced independently *without removing or altering* CMI, which undercuts inferences that the CMI was removed or altered. *E.g.*, *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL 16961477, at *4 (C.D. Cal. Aug. 25, 2022) ("The differences between the parties' products undercut any inference that Defendants removed or altered Plaintiff's CMI"); *Kirk Kara Corp. v. W. Stone Metal Corp.*, No. CV 20-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) ("Defendant did not make identical copies of Plaintiff's works *and then remove the engraved CMI*.") (emphasis added); *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014) ("'Virtually identical' plans could have been created by redrawing [plaintiffs]'s plans and not including [the plaintiff]'s [CMI]"). Here, Plaintiffs allege their images are copied exactly to comprise the Training Images. ¶¶ 2-3, 26, 57-58.

¶ 208. DeviantArt's attempts to pass liability on to their users' use of Plaintiffs' names in prompts to create images is nonsensical. Plaintiffs do not challenge the use of names in prompts after the AI Image Product's release, but DeviantArt's *intentional* decision to reference Plaintiffs' identities by their name in DreamUp's prompts and use Plaintiffs' names to advertise and gain a competitive advantage for DreamUp.

In nearly every paragraph of Plaintiffs' statutory right of publicity cause of action, Plaintiffs reference Defendants' use of Plaintiffs name *in advertising and marketing* or *in creating their product* specifically. For example, Plaintiffs allege DeviantArt: "used Plaintiffs' names and advertised their AI's ability to copy or generate work in the artistic style that Plaintiffs popularized in order to sell Defendants' products and services" (¶ 205); "emphasized the ability of AI Image Products to create images based on 'in the style' prompts that included specific Class members' names" (¶ 208); and "advertise[d] the ability of their systems to generate artwork 'in the style' of Plaintiffs' work—and explicitly used Plaintiffs' work to train their AI algorisms" (¶ 210). The fact users can and do use Plaintiffs' names in prompts is merely a byproduct of DeviantArt's acts in violation of Plaintiffs' rights of publicity, not a basis of their claims. Plaintiffs' have properly alleged DeviantArt knowingly used Plaintiffs' names for a commercial advantage in connection with the AI Image Product.

### 2. Plaintiffs Allege a Lack of Consent and Resulting Injury

Plaintiffs properly allege the remaining third and fourth requirements. The Complaint alleges "[a]t no time did Plaintiffs consent to Defendants' use of their names" to promote Defendants' AI Image Product. ¶ 202. Additionally, "[b]ecause of Defendants' unlawful appropriation of Plaintiffs' names, Plaintiffs have suffered injury" in the form of harm to the "goodwill that is associated with their names" and "the value of Plaintiffs' name recognition – and thus the value of their art itself." ¶ 212. "[C]ourts have long recognized that a person's 'name, likeness, or other attribute of identity can have commercial value,' even if the individual is relatively obscure." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 807 (N.D. Cal. 2011). An allegation that the defendant exploited the plaintiff's name and identity "for commercial gain" denotes the "commercial value" of that name. *Batis v. Dun & Bradstreet Holdings, Inc.*, 2023 WL 1870057, at *3 (N.D. Cal. Feb. 9, 2023). DeviantArt does not directly challenge these elements.

1          **3.      Plaintiffs' Right to Publicity Claims Are Not Preempted**

2          DeviantArt incorrectly claims that Plaintiffs' right of publicity claims are preempted by the

3    Copyright Act. The Ninth Circuit uses a two-part test to analyze whether the Copyright Act preempts a

4    state law claim. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006). To analyze

5    whether the Copyright Act preempts a state law claim, a court must first assess "whether the subject

6    matter of [the] right of publicity claims comes within the subject matter of copyright." *Id.* If it does, the

7    court next determines "whether the rights [the plaintiff] asserts under California law are equivalent to

8    those created under the Copyright Act." *Id.* Importantly, "[a] person's name or likeness is not a work of

9    authorship within the meaning of [the Copyright Act]." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004

10   (9th Cir. 2001).

11         The Ninth Circuit has explicitly rejected DeviantArt's exact preemption. First, "[a] person's

12   name . . . is not a work of authorship within the meaning of 17 U.S.C. § 102." *Downing*, 265 F.3d at 1004.

13   Second, "[b]ecause the subject matter of the Appellants' statutory and common law right of publicity

14   claims is their names . . . , which are not copyrightable, the claims are not equivalent to the exclusive rights

15   contained in § 106." *Id.* at 1005. Because the right of publicity here involves the misappropriation of

16   Plaintiffs' and class members' names, DeviantArt's preemption argument fails under both prongs.

17         DeviantArt attempts to reframe Plaintiffs' right of publicity claims as based on Plaintiffs' works

18   themselves. *See* MTD at 18 (characterizing Plaintiffs' claims as an "attempt to monopolize the 'artistic

19   styles' embodied in fixed visual works they posted on the internet"). But the Complaint explicitly and

20   repeatedly alleges DeviantArt used Plaintiffs' *names* in connection with its "advertising and sale of [its]

21   products and services." ¶ 209. Such claims are not preempted by federal copyright law.

22         **4.      Plaintiffs' Right of Publicity Claims Are Not Barred Under the**
              **"Transformative Use" Test**
23

24         DeviantArt claims its use of Plaintiffs' names is "transformative" and protected by the First

25   Amendment. MTD at 20. First, even if DeviantArt's use of Plaintiffs' names were transformative—and it

26   is not—it is an affirmative defense. *Davis v. Elec. Arts, Inc.*, 775 F.3d 1172, 1177 (9th Cir. 2015). Therefore,

27   it is not subject to *Plaintiffs*' pleading requirements under Rule 8(a) but *Defendants*' under Rule 8(c). *Id.*;

28   *see also Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001) (defendant "faced with a

PLAINTIFFS' OPP. TO DEFENDANT DEVIANTART, INC.'S MOTION TO DISMISS

right of publicity challenge . . . may raise as affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements").

Even on the merits, however, DeviantArt's argument is based on an intentional misreading of Plaintiffs' claims. *See* MTD at 20–21. Plaintiffs do not base their right of publicity claims on the similarity of the DreamUp's output images to their works. Thus, whether those output images are "transformative" of Plaintiffs' works is irrelevant and inapposite.

DeviantArt claims its specific use of Plaintiffs' names to promote DreamUp is "transformative under the same logic." MTD at 20. (citing *Ross v. Roberts*, 222 Cal. App. 4th 677, 687–88 (2013)). But here, unlike in *Ross*, there is no dispute that DeviantArt's use of Plaintiffs' names to promote DreamUp was intended to denote the actual artists who created certain works. *Cf id.* at 688. DreamUp's advertised ability to respond to the use of these names refers to Plaintiffs specifically, not a character loosely based on any given Plaintiff. *See Comedy III*, 25 Cal.4th at 409–10 (finding no First Amendment protection where artist contributed nothing other than trivial variations that transformed drawings at issue from literal likenesses of the Three Stooges). Referring to a Plaintiff by name to promote a product is not transformative and to rule otherwise "would vitiate California's well-established right of publicity." *Est. of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1007 (N.D. Cal. 2012). Thus, DeviantArt's use of Plaintiffs' names is not transformative and thus not barred by the First Amendment.

### F.      Plaintiffs Pled a Claim for Breach of Contract (Count IX) as to DeviantArt

The elements of a breach of contract claim are: (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014). Here, Plaintiffs have adequately alleged that DeviantArt breached its own Terms of Service. ¶¶ 29. 109–10, 115–31, 227–36. DeviantArt's Terms of Service ("TOS") is attached to Plaintiffs' Complaint as Exhibit 17 (ECF No. 1-17) and incorporated by reference in the Complaint. ¶¶ 130, 230.

***Existence of a Contract.*** Use of DeviantArt's web services constitutes assent to its TOS, and forms a valid contract. *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1257 (N.D. Cal. 2022). It controls how DeviantArt is allowed to use registered artists' intellectual property and private information posted on its site and represents how third parties are limited in using those artists' intellectual property

1  and personal information. TOS §§ 13–23. At minimum, the TOS guarantees that DeviantArt would refrain

2  from creating its own AI imaging product based on repeated violations of the TOS and copyright law.

3      ***Plaintiffs' Performance.*** Plaintiffs have performed under the DeviantArt TOS by continuing their

4  use of DeviantArt's platform. Plaintiff McKernan, for example, has maintained an account on DeviantArt,

5  posted copyrighted work on DeviantArt, which was then used to train Stable Diffusion (and, therefore,

6  DreamUp).

7      ***DeviantArt's Breach.*** In its TOS, DeviantArt obligated itself to Plaintiff McKernan (and others in

8  two key ways. First, DeviantArt promised to only use artists' copyrighted works for the purpose of making

9  the work available on the DeviantArt site. Second, DeviantArt promised its registered-member artists to

10  protect against third parties misusing these copyrighted works. TOS §§ 2, 4, 5, 8, 16, 19, 23.

11      For instance, DeviantArt's TOS created a limited-use license of Plaintiffs' copyrighted art posted

12  on its site "[f]or the sole purpose of enabling us to make your Content available through the Service." TOS

13  §16. DeviantArt breached its direct contractual duties to Plaintiff McKernan and others similarly situated

14  when it incorporated Stable Diffusion into its own AI image product knowing that Stability had scraped

15  DeviantArt's artists' work, thereby violating the limitations in the TOS on how copyrighted material

16  posted to DeviantArt can be used by third parties.

17      DeviantArt acknowledges that its TOS contains limitations on how users may use Plaintiffs' art,

18  but nevertheless argues they are not responsible for *Stability's* conduct in breach of these terms. MTD at

19  22–23. DeviantArt is wrong for two reasons. First, because DeviantArt itself breached the contract

20  between Plaintiffs and DeviantArt by creating DreamUp, which is based on Stable Diffusion. Second,

21  DeviantArt's TOS creates a promise to users as third parties that other users of DeviantArt, such as

22  Stability, would not leverage works hosted on DeviantArt for commercial purposes without permission.

23  ¶124, TOS §2.

24      In its TOS, DeviantArt promises that it "respects the intellectual property rights of others." TOS

25  §5. The TOS also provides that "[c]ontent provided to you by others … [is] protected by copyright and

26  should not be uploaded, downloaded, or otherwise copied, distributed or displayed without the consent of

27  the copyright owner." TOS § 19. DeviantArt breached these duties when it created its own AI image

28  product, knowing that this product depended on Stability's repeated violations of DeviantArt's TOS. After

its artist community revolted over copyright concerns, DeviantArt changed its TOS to explicitly allow scraping for AI training. ¶¶ 128–31.

Additionally, DeviantArt's TOS promises its users that their material would not be used by others for commercial purposes absent permission. An intended third-party beneficiary to a contract can sue to enforce the terms of the contract or obtain an appropriate remedy for breach if it shows "that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012). That is the case here. DeviantArt's TOS contains provisions which prohibit its users from using other users' works without acquiring appropriate permissions or licenses. *E.g.*, TOS §§ 4, 16, 19. Indeed, DeviantArt acknowledges its member artists are third-party beneficiaries of the TOS when it requires general users to indemnify it for conduct "in any way connect with your access to or use of the Services, or your violation of these Terms." TOS § 8.

**Damage.** This breach of contract and Deviant Art's embrace of it has damaged Plaintiffs and members of the class. Complaint ¶¶ 235–236.

**G.    Plaintiffs Pled a Claim Under California's Unfair Competition Law, Cal Bus. & Prof. Code §§ 17200, *et seq*. (Count VI)**

Plaintiffs have adequately pled an unfair competition claim under (1) 15 U.S.C. § 1125 (i.e., the Lanham Act); (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*; "UCL"); and (3) the common law.

**1.    Plaintiffs Pled an Unfair Competition Claim under the Lanham Act**

DeviantArt's AI imaging outputs violate the Lanham Act because they falsely designate the origins of its output in a manner likely to cause confusion, mistake, or deception as to their origin, sponsorship, or approval of the AI output by the Plaintiffs; and that Plaintiffs have been *or are likely to be* damaged by these acts in a way that does not implicate copyright. 15 U.S.C §1125(a)(1)(A); *United Tactical Sys., LLC v. Real Action Paintball, Inc.,* 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015). To the extent DeviantArt asserts that Plaintiffs have failed to allege "confusion" or "false designation of origin," it is wrong—Plaintiffs have alleged the requisite confusion and damage required to plead a Lanham Act claim regarding the real origins of the output of Defendant's AI Imaging Product. *See*, *e.g.*, TOS §§ 8, 212–22. Specifically, Defendant's AI

Image Products like DeviantArt's DreamUp associates Plaintiffs' names with other personal data with AI learning processes. This has created a "proliferation of AI-generated art created without Plaintiffs' consent but associated with Plaintiffs' names." ¶ 212.

### 2. Plaintiffs Have Alleged a Claim Under California's UCL

California's UCL "provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200). Plaintiffs plead facts that satisfy all three of these prongs.

Plaintiffs' UCL claim under the "unlawful" prong is predicated on unlawful acts independent of, and causes of action in addition to, Plaintiffs' copyright-related claims, including violations of the DMCA. *See Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019). DeviantArt's protest that Plaintiffs have not pled a predicate violation (MTD at 21) is misplaced.

Second, Plaintiffs may assert a claim under the "unfair" prong of the UCL under an independent alternate theory. *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No. C 04-05368 SI, 2006 WL 3218719, *4 (N.D. Cal. Nov. 7, 2006). California UCL claims seeking equitable relief can be alleged in the alternative. *Byton N. Am. Co. v. Breitfeld*, No. CV-19-10563-DMG (JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020). The Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858–59 (9th Cir. 2007). UCL claims can proceed under the "unfair" prong where plaintiff allege an immoral, unethical, oppressive or unscrupulous business practices that causes injury to consumers which outweighs the utility of the practice. *Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018).

Plaintiffs' allegations also allege a cause of action under the "fraudulent" prong. A UCL claim proceeding under the "fraudulent" prong may proceed by showing that "members of the public are likely to be deceived" by the challenged AI Imaging output wrongfully associate with their names. *Garcia v. Sony Computer Entm't Am.*, LLC, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012). Here, Plaintiffs allege Defendant's direct deception and how AI image output is likely to deceive and confuse, including associating Plaintiffs' names forever with output they had no part in creating. *E.g.*, ¶¶ 203–22.

### 3.       Plaintiffs Pled a Common Law Unfair Competition Claim

Plaintiffs adequately allege the elements of a cause of action for common law unfair competition under California law: (1) that Plaintiffs had invested substantial time, skill or money in developing their property (*see, e.g.*, ¶¶ 28–30); (2) that Defendants had appropriated and used Plaintiffs' property at little or no cost (*see, e.g.*, ¶¶ 155–59; 208); (3) that Defendants appropriation and use of Plaintiffs' property was without authorization or consent (*see, e.g.*, ¶¶ 155–59, 202, 212); and (4) that Plaintiffs can establish that they have been injured by Defendants' conduct (*see, e.g.*, ¶¶ 168, 177, 202, 212). *City Sols. Inc. v. Clear Channel Commc'ns, Inc.,* 365 F.3d 835, 842 (9th Cir. 2004).

### H.       Plaintiffs Pled a Claim for Declaratory Relief under 28 U.S.C. § 2201(a) and Cal. Code Civ. Proc., § 1060 (Count VII)

DeviantArt's motion to dismiss Plaintiffs' request for declaratory relief should be denied. MTD at 23–24. DeviantArt argues that there is no basis for sustaining any of the claims underlying Plaintiffs' count for declaratory relief under the Copyright Act, DMCA § 1202, Cal. Civ. Code § 3344 and the UCL. ¶¶237–39. This argument lacks merit and should be rejected. Plaintiffs adequately pled their underlying claims, thus DeviantArt's motion should be denied and declaratory relief from DeviantArt's  harms should be granted to Plaintiffs at the discretion of the Court.

### I.       Plaintiffs Should Be Permitted Leave to Amend

Courts in this district freely grant leave to amend where the claim could be cured by additional allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). This policy is "applied with extreme liberality". *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave to amend need not be granted where amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). But courts "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel . . . since it is important that new legal theories be explored and assayed in the light of actual facts." *Elec. Constr. Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985).

## IV.   CONCLUSION

For the foregoing reasons, DeviantArt's motion to dismiss should be denied.

Dated: June 2, 2023

By:     */s/ Joseph R. Saveri*
         Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
            czirpoli@saverilawfirm.com
            cyoung@saverilawfirm.com
            lkessler@saverilawfirm.com
            eabuchanan@saverilawfirm.com
            tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:        mb@butterticklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile:    (612)339-0981
Email:        bdclark@locklaw.com
            lmmatson@locklaw.com
            echang@locklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*