Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               lkessler@saverilawfirm.com
               eabuchanan@saverilawfirm.com
               tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:         mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs Sarah Andersen, Kelly McKernan,
Karla Ortiz, and the Proposed Class*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH ANDERSEN, et al., | Case No. 3:23-cv-00201-WHO |
| Individual and Representative Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AI, INC'S MOTION TO DISMISS** |
| v. | |
| STABILITY AI LTD., et al., | Date:      July 19, 2023 |
| Defendants. | Time:      2:00 pm |
| | Location:  Courtroom 2 — 17th Floor |
| | Before:    Hon. William H. Orrick |

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND .............................................................................. 2

III.   ARGUMENT ..................................................................................................... 3

       A.     Plaintiffs Have Alleged Direct Copyright Infringement (Count I) against
              the Stability Defendants ......................................................................... 3

              1.     Plaintiff Andersen Has Sufficiently Alleged Her Works Were
                     Infringed ...................................................................................... 4

              2.     Plaintiffs Have Pled Infringement of Exclusive Copyrights ............ 5

              3.     Plaintiffs' Allegations Satisfy the "Substantial Similarity" Test .... 9

       B.     Plaintiffs Have Sufficiently Alleged Vicarious Infringement (Count II) .... 11

       C.     Plaintiffs Have Adequately Pled Violations of the DMCA (Count III) ......12

              1.     Plaintiffs Pled All Elements of a Section 1202(b) Violation ..........13

              2.     Plaintiffs Identified the Works at Issue ..........................................16

              3.     Section 1202 Does Not Require the Copy be "Identical" .............16

              4.     Plaintiffs Allege Facts Sufficient to Satisfy Section 1202's Double-
                     Scienter Requirement ...................................................................17

       D.     Plaintiffs Pled Right of Publicity Claims (Counts IV & V) .......................19

              1.     Plaintiffs Allege Stability Knowingly Misappropriated Their Names
                     ..................................................................................................... 20

              2.     Plaintiffs Allege Lack of Consent and Resulting Injury .................21

       E.     Plaintiffs' Right of Publicity and Unfair Competition Claims Are Not
              Preempted ............................................................................................. 22

       F.     Plaintiffs' Declaratory Relief Claim (Count VII) is Properly Pled and Not
              Redundant ............................................................................................. 24

       G.     Plaintiffs Should Be Permitted Leave to Amend ..................................... 25

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

# TABLE OF AUTHORITIES

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ................................................ 4

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ...................................... 23

*Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL
    1870057 (N.D. Cal. Feb. 9, 2023) ............................................................. 21

*Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492 (N.D. Cal. Feb.
    7, 2019) ........................................................................................ 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 1, 3

*Bespaq Corp. v. Haoshen Trading Co.*,  No. 04-cv-3698, 2005 WL 14841 (N.D. Cal.
    Jan. 3, 2005) .................................................................................. 4, 5

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023
    (S.D.N.Y. Dec. 9, 2015) ......................................................................... 16

*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (N.D. Cal. 2014) ............................................. 5

*Cabell v. Zorro Prods. Inc.*, No. 5:15-cv-00771-EJC, 2017 WL 2335597 (N.D. Cal.
    May 30, 2017) ................................................................................... 9

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) .............................. 6

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ............................ 3

*Corbello v. Valli*, 974 F.3d 965 (9th Cir. 2020) ........................................................... 4

*Davis v. Elec. Arts Inc.*, No. 10-03328 RS, 2012 WL 3860819 (N.D. Cal. Mar. 29,
    2012) .......................................................................................... 21

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL
    5842756 (N.D. Tex. Nov. 7, 2019) ............................................................ 13

*Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131 (N.D. Cal. May 11,
    2023) ................................................................................ 12, 17, 18, 19

*Doe 1 v. GitHub, Inc.*, Case No. 22-cv-06823-JST (N.D. Cal.) ........................................ 17

*Doe 1 v. GitHub, Inc.*, Case No. 4:22-cv-06823-JST (N.D. Cal. Jan. 26, 2023),
    ECF No. 50 .................................................................................... 17

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ........................................................ 25

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL
    16961477 (C.D. Cal. Aug. 25, 2022) ...................................................................17

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ..............................19, 22

*Elec. Constr. Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985)..................... 25

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........................... 25

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352 (N.D. Fla.
    2010) ............................................................................................................17

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019)............................. 4

*Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088 (C.D. Cal. 2012)................. 4, 7

*Fox Broad. Co., Inc. v. Dish Network LLC*, 747 F.3d 1060 (9th Cir. 2014) ...................................... 5

*Fraley v. Facebook*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................... 21

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ...............................13

*GC2 v. Int'l Game Tech.*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ............................................ 15, 17

*I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012)........................................ 24

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) ............................................ 16, 17

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...................................... 24

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................. 3

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017
    WL 3727318, at *52 n.18 (N.D. Cal. Aug. 30, 2017) ............................................ 24

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650-JFW, 2015 WL
    12712311 (C.D. Cal. Dec. 16, 2015).................................................................4, 9, 10

*Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3-4
    (N.D. Cal. Mar. 26, 2019) ....................................................................................14, 18

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) ............................................................... 7, 9

*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) ........................... 14

*Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006) ........................................... 22

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D.
    Ill. 2014)........................................................................................................12

*Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ................................................................................................ 13, 14

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ................................................................ 25

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) .............................................. 23

*Mango v. Buzzfeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ....................................................15

*McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020)................... 3

*Md. Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178 (C.D. Cal. 2014) ........................... 24

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010)......................13

*Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ..................................................................................................................13

*Merideth v. Chi.Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) .............................................................................................................................13

*Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA), 2022 WL 17207103 (C.D. Cal. Sep. 16, 2022) .............................................................................................................13

*Murphy v. Millennium Radio Grp.*, CIV.A. 08-1743 MAS, 2015 WL 419884 (D.N.J. Jan. 30, 2015)................................................................................................................13

*Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989) ............................................................ 8

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .............................................................. 3

*Norse v. Henry Holt & Co.*, 991 F.2d 563 (9th Cir. 1993) ............................................ 8, 9

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ................................ 14

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) ...................... 4, 5

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) .................................. 12

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)..........................11

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) .........................*passim*

*Rosen v. Invaluable, LLC*, No. 2:20-cv-06756-SVW-AS, 2020 WL 7773908 (C.D. Cal. Nov. 9 2020) .......................................................................................................... 7

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ............................................ 5

*Schneider v. Youtube, LLC*, No. 20-cv-04423-JD, 2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) ............................................................................................................... 19

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ......................................5, 6, 7

*Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) ................................. 18

*Takeda Pharm. Co. v. Mylan Inc.*, 62 F. Supp. 3d 1115 (N.D. Cal. 2014) ..................... 24

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018) ........................................................................................................ 6

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) ................................. 21

*White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992) ......................... 20, 21

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ................................................................................... 12

*Wood v. Apodaca*, 375 F. Supp. 2d 942 (N.D. Cal. 2005) ................................. 10

*Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089 (E.D. Cal. 2009) ................... 19

**State Cases**

*Eastwood v. Superior Court*, 149 Cal. App. 3d 409 (1983) ................................. 20

**Federal Statutes**

15 U.S.C. § 1125 ...................................................................................... 22

17 U.S.C. § 101 ......................................................................................... 7

17 U.S.C. § 102 ...................................................................................... 22

17 U.S.C. § 106 ................................................................................. 4, 5, 7, 22

17 U.S.C. § 301 ................................................................................. 1, 22, 23

17 U.S.C. § 411(a) ...................................................................................13

17 U.S.C. § 1202 ............................................................................... *passim*

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ................................................. 22

Cal. Civ. Code § 3344 ................................................................... 19, 20, 22

**Rules**

Fed. R. Civ. P. 8(a) ................................................................................. 3

Fed. R. Civ. P. 9(b) ...............................................................................14

Fed. R. Civ. P. 12.................................................................................................................... 3

Fed. R. Civ. P. 57.................................................................................................................. 24

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

## I.     INTRODUCTION

Plaintiffs' Complaint alleges with the requisite specificity how Defendants, including the Stability Defendants, directly copied Plaintiffs' art in order to train Defendants' AI Image Products for their own commercial profit. These AI Image Products accomplish copyright infringement on a scale previously inconceivable. Stability's AI Image Products are Stable Diffusion, and DreamStudio, which is based on Stable Diffusion. In its motions to dismiss, Stability is seeking to have it both ways: to reap the benefits of these AI image generators while leveraging their opacity and complexity to prevent Plaintiffs and this Court from scrutinizing their legality. This, of course, is by design—Defendants' AI image generators are just tools for both the massive copyright infringement, and the coverup of said infringement. Defendants' goal in this case is simple: to dodge liability for the massive misappropriation of countless protected images.

Stability challenges Plaintiffs' Complaint on several grounds, but its arguments lack merit. Stability challenges Plaintiffs copyright infringement claims but ignores that Plaintiffs have made out each element of both the direct infringement and vicarious infringement claims, including allegations describing how Stability directly copied images on a massive scale. To the extent Stability opposes Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim, it attempts to read in elements that are nowhere to be found in Section 1202.

Stability also disputes Plaintiffs' well-pled state and common law claims, including causes of action for the right of publicity and unfair competition. First, Stability argues that Plaintiffs' state and common law claims are preempted by the Copyright Act. This is incorrect. As demonstrated by Plaintiffs' allegations, the conduct Plaintiffs are challenging and number of harms from which they seek relief are not all equivalent to claims under the Copyright Act. Preemption is thus inappropriate. To the extent Stability challenges Plaintiffs' state and common law claims substantively, those arguments too are misplaced. Plaintiffs' Complaint sets forth ample facts sufficient to satisfy *Twombly*. And to the extent the Court determines that any of Plaintiffs' pleadings are found to be insufficient, amendment would not be futile, and leave to amend is respectfully requested and should be granted.

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

## II.   FACTUAL BACKGROUND

Defendants are in the business of developing generative artificial-intelligence based image generation products ("AI Image Products"). ¶¶ 33-35.[1] AI Image Products rely entirely on training images, which are images, or images paired with a descriptive text caption, that are included in the machine-learning process. ¶ 25. Training images are typically gathered through web scraping, which is the process by which images are harvested, copied, or extracted from websites using tools such as bots or web crawlers. ¶ 26. Defendants' AI Image Products rely on billions of training images, almost all of which are copied without the artists' permission and without compensation. ¶¶ 2-3, 57-58.

In August 2022, Stability AI released Stable Diffusion, an AI Image Product that produces images in response to text prompts, under an open-source license, i.e., users may download and use Stable Diffusion's software and associate machine-learning models derived from training images according to the terms of the open-source license. ¶¶ 52-54. Stability scraped (i.e., copied) over five billion images from websites—including possibly millions from DeviantArt—as training images for Stable Diffusion without the consent of the creators or the websites that hosted those images.[2] ¶¶ 57, 63. Stable Diffusion also did not negotiate licenses for any of the training images. ¶ 57. Stable Diffusion embeds and stores compressed copies of the training images within Stable Diffusion and uses those compressed copies to generate its output in response to text prompts. ¶¶ 58-59. Stable Diffusion has been incorporated into DreamStudio, which is Stability's commercial, for-profit, AI image generator. ¶ 55-56, 65.

Broadly, Stable Diffusion works by applying "diffusion," which is the technique the software uses to generate output images mathematically based on those images found in its training data. ¶¶ 65-66, 78-86. Diffusion generally describes a process by which "noise" is

---

[1] "¶ __" and "Ex. __" citations are to the Class Action Complaint, Case No. 23-cv-00201 (N.D. Cal. Jan. 13, 2023). ECF No. 1 unless otherwise indicated.

[2] Many of these images came from datasets released by LAION (acronym for "Large-Scale Artificial Intelligence Open Network"), a nonprofit organization paid by Stability AI to help compile Training Images for their AI Image Products. ¶¶ 101-107. DeviantArt is the source of a significant portion of LAION images, and there are likely 3.3 million images from Deviant Art in LAION. ¶ 110.

introduced to an original image and then "denoised" in order to reconstruct a lossy copy of the training image. ¶¶ 68-75, *see also* ¶¶ 76-90. Every image output from an AI Image Product is necessarily derived from and depends on the breadth and quality of the images used for training. ¶¶ 95, 99. This means that, unlike a human artist, an AI Image Product can only copy latent images tagged with terms associated with the text prompt, and an AI Image Product can never exceed the limitations of its training images. ¶¶ 97-98. Indeed, Stability's CEO Emad Mostaque has admitted that Stable Diffusion has "compress[e]d the knowledge of over 100 terabytes of images." ¶ 100. While Mostaque has publicly acknowledged the importance of using licensed images for training AI image generators, and that future versions of Stable Diffusion would be based on "fully licensed" training images, Stability has yet to take any steps to obtain or negotiate licenses for the current version of Stable Diffusion. ¶ 106.

## III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The plaintiff's allegations need only provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted).

In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881, 886-87 (9th Cir. 2020). Furthermore, the allegations should be evaluated holistically, not piecemeal. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### A.   Plaintiffs Have Alleged Direct Copyright Infringement (Count I) against the Stability Defendants

A claim of direct copyright infringement must allege: (1) "ownership of the allegedly

infringed material" and (2) "that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). "[C]opyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("*Cybernet Ventures*"). "Direct infringement does not require intent or any particular state of mind." *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1098 (C.D. Cal. 2012); *see also ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650-JFW (AJWx), 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015) ("Copyright infringement is a strict liability tort. Lack of knowledge does not limit liability, but only applies to damages").

### 1. Plaintiff Andersen Has Sufficiently Alleged Her Works Were Infringed

A plaintiff who alleges copyright infringement must show ownership of a valid copyright. *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020); *see also Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). "[C]omplaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules." *Cybernet Ventures*, 167 F. Supp. 2d at 1120. Here, Ms. Andersen has alleged that her registrations "include Works used as Training Images" by Defendants.[3] ¶ 28 & Exhibits 1–16. At this stage, no more is required.

Nonetheless, Stability argues that even plaintiff Sarah Andersen—who attached sixteen of her copyright registrations to the Complaint—has also failed to meet the copyright-registration requirement, because she does not specifically identify which "Works" were allegedly infringed by Defendants. MTD at 4-5.[4] This argument holds no water.

Stability cites *Bespaq Corp. v. Haoshen Trading Co.*, which dismissed a claim where the plaintiff had failed to "identify which preexisting works in the registered catalog have been infringed by the defendants." No. 04-cv-3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005).

---

[3] Plaintiffs McKernan and Ortiz concede that they did not include any material that was registered at the time of the filing of the Complaint.

[4] "MTD at ___" references are to Defendants Stability AI, Ltd and Stability AI, Inc.'s Amended Notice of Motion, Motion to Dismiss, and Memorandum of Points and Authorities in Support of Motion to Dismiss (ECF No. 58) unless otherwise indicated.

Stability's use of *Bespaq*, however, is puzzling—Plaintiffs have plainly alleged Plaintiff Andersen's specific works and registrations. *Perfect 10, Inc. v. Cybernet Ventures*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) is more on point. In *Cybernet Ventures*, plaintiffs alleged "the existence of hundreds, even thousands of infringing photographs" within the defendant's websites. *Id.* at 1120. The Court found the complaint sufficient. As the Court reasoned, "[r]equiring a statement of each and every example [of infringement] would defeat the regime established by Rule 8." *Id.* Here, Plaintiffs allege that Defendants "copied over five billion images from websites." ¶ 57. The specificity Stability would require in the complaint is simply "incompatible with the types of claims involved in this case." *Cybernet Ventures*, 167 F. Supp. 2d at 1120.

### 2.    Plaintiffs Have Pled Infringement of Exclusive Copyrights

A copyright holder possesses exclusive rights regarding their registered works. These include the rights to reproduce, distribute, publicly display, perform, and create derivative works of the copyrighted work. 17 U.S.C. § 106. The copying of copyrighted works is infringement. "The word 'copying' is shorthand" for infringing any of these exclusive rights. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, n.3 (9th Cir. 1989).

To prove a certain work is infringing, a plaintiff must allege that the defendant "copied protected aspects" of the plaintiff's work to make the infringing work. 17 U.S.C. § 106(2); *see Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). A claim for direct infringement based on copying requires the plaintiff to show "that the defendant cause[d] the copying." 17 U.S.C. § 106(1); *Fox Broad. Co., Inc. v. Dish Network LLC*, 747 F.3d 1060, 1067 (9th Cir. 2014) (internal citations omitted). Notably, however, "'[s]ubstantial similarity' is not an element of a claim of copyright infringement. Rather, it is a doctrine that helps courts adjudicate whether copying of the 'constituent elements of the work that are original' actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012); *see also Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1163-64 (N.D. Cal. 2014) ("*Absent evidence of direct copying*, the plaintiff must demonstrate both that the defendant had 'access' to the plaintiff's work and that the two works are substantially similar.") (emphasis added; citation omitted). In practice,

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

substantial similarity is the "shorthand lingo" used to collectively refer to two "distinct concepts": (1) "copying", which means "that a defendant copied the work" (as opposed to "independent creation"); and (2) "unlawful appropriation", which means that the copying reached material protected by copyright (as opposed to unprotectable elements). *Skidmore*, 952 F.3d at 1064.

Though Plaintiffs would only need to allege one valid theory to defeat Stability's motion, the Complaint sets forth facts stating several bases for direct infringement with respect to Stability: (1) direct infringement by reproducing protected works by scraping (i.e., copying) and reproducing images used as training images for the Stable Diffusion product; (2) direct infringement by distributing Stable Diffusion and DreamStudio, which contains compressed copies of the training images; (3) direct infringement by creating and distributing the Stable Diffusion and DreamStudio products, which are infringing derivative works because they constitute entire copies of copyrighted work; and (4) generating and distributing output images which are infringing derivative works.

### a.      Stability Directly Infringes by Copying and Reproducing Plaintiffs' Work to Train Its AI Products

Infringement of the exclusive right to reproduction entails "the impermissible reproduction of copyrighted expression, whether those actions involve making available a device or product or providing some service used in accomplishing the infringement." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013). Plaintiffs have set forth detailed facts showing Stability's use of copied and reproduced images for training its AI products.[5] Taken as true, these facts state a claim that Stability violated Plaintiffs' exclusive rights of reproduction. *See Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018)

---

[5] For instance, Plaintiffs have specifically alleged that "Stability scraped, and thereby copied over five billion images from websites as the Training Images used as training data for Stable Diffusion." ¶ 57. Plaintiffs have further alleged that "Stability has embedded and stored compressed copies of the Training Images withn Stable Diffusion." ¶ 58. Plaintiffs also allege that "Stable Diffusion . . . has been incorporated as an image-generating engine into many other software programs, including DreamStudio (by Stability)," which is made available to users for payment. ¶¶ 56, 65.

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

("Ninth Circuit courts agree that downloading and storing constitutes reproduction.") (citing *Columbia Pictures*, 710 F.3d at 1034 & *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 955-56 (9th Cir. 2018)); *see also Rosen v. Invaluable, LLC*, No. 2:20-cv-06756-SVW-AS, 2020 WL 7773908, at *3 (C.D. Cal. Nov. 9 2020) (finding allegations that "Invaluable directly uploaded copies of the Nolin Photograph to its account on Pinterest, a social media website" "sufficient to satisfy the second requirement that Defendants violated the exclusive rights of reproduction and distribution").

### b.   Stable Diffusion and DreamStudio Directly Infringe by Distributing Compressed Copies

Infringement by distributing "requires 'actual dissemination of a copy' by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3); *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1106 (C.D. Cal. 2012). Here, Plaintiffs allege that Defendants directly copied Plaintiffs' art. *E.g.*, ¶ 58 ("Stability has **embedded and stored compressed copies** of the Training Images within Stable Diffusion") (emphasis added). Stable Diffusion and the compressed copies it has made comprise the basis of Defendants' AI Products including DreamStudio. *E.g.*, ¶ 65. Stability makes Stable Diffusion and DreamStudio available to users for payment, thereby disseminating those copies to customers. ¶ 56. Substantial similarity is irrelevant to Plaintiffs' claim of infringement by distribution. *See Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) ("A showing of 'substantial similarity' is irrelevant in a case like this one [which] entailed direct copying of copyrighted works."). Plaintiffs have alleged the "actual dissemination" of direct copies by each defendant, constituting infringement.

### c.   Stability Directly Infringes by Creating and Distributing Stable Diffusion and DreamStudio, Which Are Themselves Infringing Derivative Works

To claim that a work qualifies as a derivative work, a plaintiff must allege that the work has "recast, transformed, or adapted" an existing copyrighted work. 17 U.S.C. § 101; *see also Jarvis v. K2 Inc.*, 486 F.3d 526, 531 (9th Cir. 2007). To further claim that a derivative work is infringing, a plaintiff must allege that defendant "copied protected aspects" of the plaintiff's work to make the infringing derivative work. 17 U.S.C. § 106(2); *see also Skidmore*, 952 F.3d at

1064. While this can be proved inferentially by proof of "substantial similarity," this "is irrelevant in a case . . . [that] entail[s] direct copying of copyrighted works. . . ." *Range Rd. Music*, 668 F.3d at 1154. In other words, such proof is not needed where, as here, the copying of entire copyrighted works necessarily entails copying protected aspects of the work. *Id.*; *see Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993) ("But here, the substantial similarity analysis is inapposite to the copying issue because appellees admit that they in fact copied phrases from Norse's letters"); *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989); *see also* § III.A.2.a, *supra*.

As Plaintiffs allege "Stability downloaded or otherwise acquired copies of billions of copyrighted images" to use as "Training Images" for Stable Diffusion. ¶¶ 1–3. "Stability has embedded and stored compressed copies of the Training Images within Stable Diffusion." ¶ 58. Taken together, these allegations show that Stability copied numerous entire works. Therefore, Stable Diffusion is a derivative work, because by "stor[ing] compressed copies" of "billions of copyrighted images," it has thereby "transformed" Plaintiffs' works into another work. That is sufficient to allege that Stable Diffusion itself is an infringing derivative work.

### d. Stable Diffusion and DreamStudio's Output Images Are Directly Infringing Derivative Works

For similar reasons, the output images of Stable Diffusion and DreamStudio are also directly infringing derivative works. Here, Plaintiffs allege that "Stable Diffusion uses the Training Images to produce seemingly new images through a mathematical software process. These 'new' images are based entirely on the Training Images and are derivative works of the particular images Stable Diffusion draws from when assembling a given output." ¶ 4. Plaintiffs further allege that each output image "is necessarily a derivative work, because it is generated exclusively from a combination of the conditioning data and the latent images, all of which are copies of copyrighted images." ¶ 90. Plaintiffs allege that within Stable Diffusion, copies of training images are "interpolated—meaning, blended mathematically—to produce new derivative images." ¶ 79. Plaintiffs allege that "the source images themselves are being directly interpolated" to make output images. ¶ 86. Plaintiffs provide a diagram illustrating how Stable Diffusion combines source images into output images. ¶ 81. Plaintiffs allege that "Stable

Diffusion uses the Training Images to produce seemingly new images through a mathematical software process." ¶ 4. Because this case involves "direct copying of copyrighted works;" Plaintiffs have sufficiently alleged that the output images are infringing derivative works under the Copyright Act. *Range Rd. Music,* 668 F.3d at 1154; *see also Jarvis*, 486 F.3d at 532 ("The infringing] ads did not simply compile or collect [Plaintiff's] images, but rather altered them in various ways and fused them within other images and artistic elements into new works that were based on—i.e., derivative of—[Plaintiff's] original images.").

Stability itself has surely made output images with its own AI Image Products as part of creating and marketing these products. ¶¶ 33, 52–55. Whether the output varies or differs from the input matters little—because this is a case involving direct copying. *See ITC Textile*, 2015 WL12712311, at *5 ("[T]he law is clear that in cases of direct copying, the fact that the final result of defendant's work differs from plaintiff's work is not exonerating. To the contrary, it can show infringement of multiple exclusive rights, such as unauthorized reproduction and unauthorized creation of a derivative work.");*see also Norse*, 991 F.2d at 566 ("even a small taking may sometimes be actionable").

### 3. Plaintiffs' Allegations Satisfy the "Substantial Similarity" Test

As numerous courts have concluded, Defendants' assertion that Plaintiffs need to show substantial similarity is a "red herring." *Range Rd. Music,* 668 F.3d at 1154. This is because "the proper question is whether [infringement] occurred *vel non*." *Id*. As explained above, Plaintiffs alleged direct infringement through direct copying of their copyrighted works. Therefore, it would be of no moment, even if Defendants were to show that there is no substantial similarity. *ITC Textile*, 2015 WL 12712311, at *5 ("the fact that the final result of defendant's work differs from plaintiff's work is not exonerating."). Moreover, a showing of substantial similarity is in the nature of a defense, inappropriate for resolution on the pleadings. *See Cabell v. Zorro Prods. Inc.*, No. 5:15-cv-00771-EJC, 2017 WL 2335597, at *7 (N.D. Cal. May 30, 2017) (rejecting argument that "Plaintiff has failed to allege plausible facts to establish substantial similarity under the extrinsic test" and explaining that "the string of Ninth Circuit authority cited by Defendants shows, satisfaction of the extrinsic test is required primarily in the context of motions for

1   summary judgment") (citations omitted).

2       Nonetheless, Plaintiffs' direct-infringement claim passes muster even were the Court to

3   require satisfaction of the substantial-similarity test at this juncture. As alleged, AI imaging

4   output is constructed from interpolated latent images, mathematically blending compressed

5   copies of source images. ¶¶ 77-86; *see also*, *e.g.*, ¶ 95 ("Every output image from the system is

6   derived exclusively from latent images, which are copies of copyrighted images."). Construing

7   these allegations in the light most favorable to Plaintiffs, the Court can infer that when the

8   mathematical blending process that created an output image is reversed, and an output image

9   extrapolated back into its source images, as conceptually illustrated in the diagram (¶ 81), the

10   substantial similarity between source images and output image will be clearly demonstrated. *See*

11   *Wood v. Apodaca*, 375 F. Supp. 2d 942, 946 (N.D. Cal. 2005) (explaining that at the motion to

12   dismiss stage, the Court must "construe [Plaintiffs' allegations] in the light most favorable" to

13   Plaintiffs.). Further, Plaintiffs allege that "none of the Stable Diffusion output images provided in

14   response to a particular Text Prompt is likely to be a close match for any specific image in the

15   training data" (¶ 93). *See ITC Textile*, 2015 WL 12712311, at *5.

16       Plaintiffs also allege that the output images are infringing derivative works that have been

17   "blended mathematically" from the training images. ¶ 79. A natural and expected consequence of

18   this process is that any specific output image is not "likely to be a close match" with any "specific

19   [i.e., *single*] image in the training data." ¶ 93. It is reasonable to infer that substantial similarity

20   exists between the output image and the source images that have been blended to create a

21   particular output image as demonstrated in the Complaint. *See*, *e.g.*, ¶ 81. This is also why

22   Plaintiffs' argument is entirely consistent with Plaintiffs' allegation that "[i]n general, none of

23   the Stable Diffusion output images provided in response to a particular Text Prompt is likely to

24   be a close match for any specific image in the training data." ¶ 93. Plaintiffs also allege that

25   having a copy of Stable Diffusion is akin to "having a directory on your computer of billions of

26   JPEG files." ¶ 75(c). Therefore, the Court may reasonably infer that just as one could open a

27   computer directory to inspect the JPEG files and compare them to the original works, one may

28   conduct an analogous inspection of Stable Diffusion, which will reveal the substantial similarity

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

between the "stored compressed copies" within Stable Diffusion and the original works. ¶¶ 2-3, 18, 58-59, 100. When proven, these facts are sufficient to satisfy substantial similarity.

Stability's arguments to the contrary rest on a deliberate misreading of Plaintiffs' allegations and an insistence that this Court treat their AI Image Products as magical and inscrutable black boxes. MTD at 6. Plaintiffs, however, allege in detail "How Stable Diffusion Works." ¶¶ 65–100. Plaintiffs further allege that all of Defendants' AI image generators work in substantially the same way "because they rely on Stable Diffusion as an embedded image-generating engine." ¶ 65. Stability has no answer to these well pleaded facts, omitting any reference to these allegations in their entirety. MTD at 6–7.

### B.  Plaintiffs Have Sufficiently Alleged Vicarious Infringement (Count II)

A claim for vicarious copyright infringement requires the allegation of (1) a "direct infringement" by a third party where the defendant (2) "declin[es] to exercise a right to stop or limit" the infringement and (3) retains "a direct financial interest in the infringing activity". *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Plaintiffs have properly alleged all three elements of this claim. Stability incorrectly argues otherwise. MTD at 7–8.

***Third Party Infringement.*** Plaintiffs have already demonstrated how the output images are infringing derivative works. *See* § III.A.2.d, *supra*. Plaintiffs further allege third party infringement by users. Plaintiffs allege that "[w]hen used to produce images from **prompts by its users**, Stable Diffusion uses the Training Images to produce seemingly new images through a mathematical software process. These "new" images are based entirely on the Training Images and are derivative works of the particular images Stable Diffusion draws from when assembling a given output." ¶ 4 (emphasis added). Thus, when a Stable Diffusion or DreamStudio user prompts Stable Diffusion or DreamStudio for an output image, that act of output is an act of infringement by a third party.

***Stability's Right to Stop the Infringing Conduct.*** Stability wrongly argues that Plaintiffs have failed to allege Stability declines to stop or limit the infringement. MTD at 8. Plaintiffs allege that "Stable Diffusion is a software product . . . maintained and sold by Stability". ¶ 1. Plaintiffs also allege that "In August 2022, Stability released DreamStudio . . . a web-server-

based AI Image Product . . . DreamStudio relies on Stable Diffusion." ¶ 55. Because Stability designed, marketed and sold the use of DreamStudio, it is necessarily true that Stability has always maintained the "right to stop" the infringement. *See, e.g.*, *Range Road Music*, 668 F.3d at 1153 (finding that plaintiff "pleaded specific facts to raise a plausible inference" that defendants exercised control over the venue that undertook the infringing act). For example, Stability did not have to release these image generators to the public in the first place, or if they did, they could have designed them so that they did not scrape copyrighted work or output infringing derivative works.

       ***Stability's Direct Financial Interest in the Infringing Activity.*** To the extent Stability argues that Plaintiffs have failed to allege a financial interest in the infringing activity, Stability is wrong. MTD at 8. Plaintiffs allege that Stability is profiting from Stable Diffusion by selling paid subscriptions to its DreamStudio product, which is based on Stable Diffusion. ¶ 55. DreamStudio subscriptions are denominated by "credits," which means that users pay more to generate more images. ¶ 56. Therefore, Stability has a direct financial interest in users creating more infringing output images with its AI image generators. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) ("'[F]inancial benefit exists where the availability of infringing material acts as a draw for customers.'") (citation omitted).

## C.    Plaintiffs Have Adequately Pled Violations of the DMCA (Count III)

       Section 1202(b) of the DMCA imposes liability for the removal or alteration of copyright management information ("CMI").[6] 17 U.S.C. § 1202(b); *Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131, at *11 (N.D. Cal. May 11, 2023). Section 1202(c), which describes protected categories of CMI, has been interpreted broadly. *See Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014). The pleading burden under

---

[6] Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]"

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

the DMCA is low. *See Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA) (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022) (burden is "not as exacting" at the pleading stage).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi.Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). For purposes of pleading Section 1202(b)'s mental state requirements, "'intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit. While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA, however, are simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003).

A DMCA claim does not require proof of infringement. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 950-52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Because a DMCA claim does not require proof of infringement, fair use is not a defense. *See Murphy v. Millennium Radio Grp.*, CIV.A. 08-1743 MAS, 2015 WL 419884, at *5 (D.N.J. Jan. 30, 2015) ("A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI."); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("a DMCA action under section 1202(b) is not an action for infringement").

### 1.   Plaintiffs Pled All Elements of a Section 1202(b) Violation

A claim for a copyright management information ("CMI") violation under the DMCA requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally."

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286-87 (C.D. Cal. 2022). The plaintiff must also plead the requisite scienter. *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3-4 (N.D. Cal. Mar. 26, 2019). Scienter, however, need not be alleged with specificity. *Id.*; *see* Fed. R. Civ. P. 9(b) ("intent, knowledge, and other conditions of a person's mind may be alleged generally").

  ***Existence of CMI.*** Plaintiffs specifically allege that their works contained CMI, including copyright notices, titles of the works, the names of the creators, and the names of the copyright holders. ¶¶ 180, 191; *see also* ¶¶ 28-29, nn.1-3. Each is recognized as CMI under Section 1202(c). *See* 17 U.S.C. § 1202(c)(2), (3), (6); *see also Logan v. Meta Platforms, Inc.*, No. 22-CV-01847-CRB, 2022 WL 14813836, at *8 (N.D. Cal. Oct. 25, 2022) (finding that the creator's name, title of the work, "and a link to a Creative Commons website . . . setting forth the terms and conditions for use'" constituted CMI). Additionally, Plaintiffs have alleged that CMI was incorporated directly into their works. ¶ 191; *see also Logan*, 2022 WL 14813836, at *8 ("[I]dentifying information . . . provided. . . beneath each [work]" "sufficiently close to qualify as CMI.")

  ***Knowing Removal of CMI.*** Plaintiffs allege that Defendants knowingly removed or altered CMI from Plaintiffs' Works. Defendants "train[ed] Stable Diffusion on [Plaintiffs' Works] and design[ed] it to omit any CMI as part of the output." ¶ 183. Defendants knew the images used to train the models contained CMI, and that CMI was knowingly removed in the process of generating output. *E.g.*, ¶¶ 184, 191. Stability would have knowledge of what CMI is being removed because Stability paid for the development of a larger training dataset to develop Stable Diffusion. ¶¶ 104-05. Plaintiffs have also alleged how the diffusion process whereby CMI is altered and removed from the original and a copy is reconstructed works and how Stability employs individuals with knowledge of the diffusion process to develop their products. ¶¶ 73-88. Diffusion is the technique by which all of Defendants' AI Image Products, including Stable Diffusion, create images from Plaintiffs' and class members' original works. ¶¶ 87-90. In other words, Stability understood the Training Images contained CMI and understood how the processes by which its products generated output removed or altered CMI. A conclusion to the contrary would adopt competing inferences, forbidden under Rule 8. *See Knevelbaard Dairies v.*

*Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000).

**Distribution of CMI.** Plaintiffs allege that "[w]ithout the authority of Plaintiffs and the Class, Defendants distributed CMI knowing that the CMI had been removed or altered without authority of the copyright owner or the law with respect to the Works." ¶ 189.

**Distribution of Copied Works.** Plaintiffs allege Defendants distributed copies of the Works. ¶ 190. For example, Defendants created and stored training images including Plaintiffs and distributed these Copies "for use in training or otherwise creating AI Image Products." ¶¶ 3, 157.

**Knowingly Enabling Infringement.** Plaintiffs allege Defendants knew or had reasonable grounds to know that their distribution would induce, enable, or conceal an infringement, either by itself or its users. "[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal *his own* infringing conduct satisfies the DMCA's second scienter requirement." *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020); *see also id.* ("Section 1202(b)(3) also encompasses 'an infringement' that, upon distribution 'will . . . conceal' the fact of **that infringement**.") (emphasis added). This so-called second scienter element is evidenced by the allegations of statements by Stability's CEO, which acknowledged the importance of using properly licensed materials for future versions of Stable Diffusion (¶ 106 & n.9), implying Stable Diffusion that training on unlicensed images (which Stable Diffusion has done as Plaintiffs alleged) is legally infirm.

Beyond its CEO's admissions, it is reasonable to infer that Stability AI, a company that is, at it claims, "at the forefront of the burgeoning generative artificial intelligence ("AI") industry," MTD at 1, and in the business of creating AI products, certainly knew that images generated by its AI Image Product would not include the CMI of the underlying copyrighted images. *See GC2 v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019) ("[It is] reasonable to infer that the defendants—companies engaged in producing and distributing online games— knew that each time they updated or launched a game . . . they reuploaded the entire game library, thereby causing the unlawfully removed or manipulated [CMI] to again be distributed to the public" and defendants "should have known that their unlicensed distribution of artwork

1    missing [CMI] to their customers could lead their customers to infringe [plaintiff's]

2    copyrights"). It is also reasonable to infer that Defendants knew that removing CMI from the

3    copyrighted Works would conceal its (and its users') further infringing conduct under the

4    DMCA because such removal of CMI "made it difficult or impossible to contact Plaintiffs and

5    the Class to obtain authority." ¶ 183.

6         Stability attack Plaintiffs' allegations in three ways: (1) that "Plaintiffs fail to point to a

7    single, specific example of one of their works whose CMI was altered or removed by the Stability

8    Defendants or to what specific CMI was removed from such specific work(s)"; (2) that

9    "Plaintiffs have . . . not alleged either prong of Section 1202's 'double-scienter requirement'

10   beyond conclusory statements of the elements"; and (3) Plaintiffs' DMCA claim fails because

11   CMI was not "removed from a plaintiff's actual work or an identical copy of their work." MTD

12   at 9-10. Each of these arguments ignore the well pleaded facts and are contrary to settled law.

13                    **2.      Plaintiffs Identified the Works at Issue**

14        Stability's contention that Plaintiffs have not identified the Works at issue is wrong.

15   Plaintiffs allege, "Stability downloaded or otherwise acquired copies of billions of copyrighted

16   images without permission to create Stable Diffusion, including Plaintiffs'." ¶ 2; *see also* ¶¶ 57-

17   58. Plaintiffs have alleged where the datasets that contain the Training Images came from and

18   what is in them. *See, e.g.*, ¶¶ 101-110. What is more, Plaintiffs have identified which of their

19   Works have been used as Training Images. ¶¶ 28-30 & nn.1-3.

20                 **3.      Section 1202 Does Not Require the Copy be "Identical"**

21        Stability also appears to claim that the DMCA "require[s] CMI to be removed from a

22   plaintiff's actual work or an identical copy of their work." MTD at 1. Not so. Section 1202(b) has

23   no such requirement.

24        Courts have long recognized the DMCA can be violated when CMI that is incorporated

25   into works has been removed. For example, in the computer code context, CMI is often woven

26   into the code itself. *E.g.*, *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016);

27   *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y.

28   Dec. 9, 2015) ("Weaving CMI into the text of the source code may be among the most efficient

or security-enhancing ways to include CMI with that code."). If CMI that is incorporated into a work is removed or altered, the infringing copy necessarily need not be identical. *ICONICS*, 192 F. Supp. 3d at 272 ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). Indeed, in *Doe 1 v. GitHub, Inc.*, Case No. 22-cv-06823-JST (N.D. Cal.), defendants there argued that there could be no liability where a similar artificial intelligence-based code-generation model did not output identical code.[7] The district court disagreed and denied defendants' motion to dismiss as to plaintiffs' Section 1202(b) claims. *Doe 1*, 2023 WL 3449131, at *13. Here, Plaintiffs have alleged that CMI is likewise incorporated and interwoven into their copied works. *See, e.g.*, ¶ 191.

In any event, Defendants misinterpret the Complaint and ignore Plaintiffs' allegation that Defendants incorporated their Works *in their entirety* into the AI Image Product as Training Images. *See, e.g.*, ¶¶ 57, 103-10, 183. The AI Image Products then generate outputs, which are all reconstructed copies of Plaintiffs' and class members' licensed work, and necessarily remove the CMI contained in these works. *See, e.g.*, ¶¶ 75.b., 90, 95. That is sufficient. *See GC2 Inc.*, 391 F. Supp. 3d at 844 (upholding jury verdict on DMCA removal claim where the defendants had used the plaintiff's work "in its entirety, in . . . games later developed by the defendants").[8]

### 4. Plaintiffs Allege Facts Sufficient to Satisfy Section 1202's Double-Scienter Requirement

At the motion to dismiss stage, a plaintiff need only "allege sufficient facts to support the

---

[7] *See, e.g.*, *Doe 1 v. GitHub, Inc.*, Case No. 4:22-cv-06823-JST (N.D. Cal. Jan. 26, 2023), ECF No. 50 at 13-14 (arguing Section 1202 requires removal of CMI from "identical" copies of work); *Doe 1 v. GitHub, Inc.*, Case No. 4:22-cv-06823-JST (N.D. Cal. Jan. 26, 2023), ECF No. 53 at 9-10 (same).

[8] Defendants' cases are inapposite and distinguishable. *Dolls Kill* and *Faulkner Press* deal with works which could have been reproduced independently *without removing or altering* CMI, which undercuts inferences that CMI was removed or altered. *E.g.*, *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 22-cv-01463-RGK-MAA, 2022 WL 16961477, at *4 (C.D. Cal. Aug. 25, 2022) ("The differences between the parties' products undercut any inference that Defendants removed or altered Plaintiffs' CMI"); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1360 (N.D. Fla. 2010) ("Class Notes admits that its note packages were *based on* Dr. Moulton's course materials") (emphasis added). Here, Plaintiffs allege their images are copied exactly to comprise the Training Images. ¶¶ 2-3, 26, 57-58.

reasonable inference that the defendant 'knew or had a reasonable basis to know that the removal or alteration of CMI . . . w[ould] aid infringement." *Doe 1*, 2023 WL 3449131, at *12 (quoting *Harrison v. Pinterest, Inc.*, No. 20-cv-05290-EJD, 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022)). The Stability Defendants' reliance on *Stevens v. Corelogic, Inc.* to demand Plaintiffs "make an affirmative showing . . . that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions" is improper at this stage. MTD at 9-10 (quoting 899 F.3d 666, 674 (9th Cir. 2018)). As recognized by a court in this district mere weeks ago, "[a]t the pleading stage, mental conditions generally need not be alleged with specificity," "'[l]anguage in *Stevens* . . . does not indicate otherwise; there, the Ninth Circuit held that "a plaintiff bringing a Section 1202(b) claim must make an affirmative showing" of scienter in the *summary judgment* context." *Doe 1*, 2023 WL 3449131 at *12 (citing *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022) (quoting *Stevens*, 899 F.3d at 674)); *accord Izmo*, 20219 WL 13210561, at *4.

Regardless, Plaintiffs have pled facts sufficient to demonstrate the "double scienter" under *Stevens*. Plaintiffs have alleged that "Defendants removed or altered CMI from images that are owned by Plaintiffs and the Class by training Stable Diffusion on those images and designing it to omit any CMI as part of the output," ¶ 183. Plaintiffs have described how diffusion, the process underlying the image models, copies and reconstructs original source images by adding and removing noise, i.e., by removing and altering CMI. ¶¶ 70-86. And, Plaintiffs have alleged how Stability employs those with knowledge of this process and their implications. ¶ 87-89. Further, this was done with the knowledge of and at the direction of the highest levels of Stability's leadership, knew it was training the image models on licensed images and took no steps to obtain permission or negotiate the suitable licenses. ¶ 106. Indeed, Stability paid money to LAION to generate a more extensive dataset to include licensed materials including user-generated content.[9] ¶ 109.

---

[9] It must be noted that to the extent Defendants may claim that they did not know they were using licensed materials, this claim is particularly bewildering with respect to LAION. As Plaintiffs describe, "LAION and other open datasets are simply lists of URLs on the public web" which include "websites that maintain records of image ownership." ¶ 151.

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

What is more, Plaintiffs have alleged that "[e]very output image from the system is derived exclusively from the latest images, which are copies of copyrighted images" including those created by Plaintiffs. ¶ 95. Defendants made the decision to include licensed material as Training Images, knowing those images come with CMI "such as the creator's name" or CMI that was "incorporated into the Works in the form of artist's signatures." ¶ 195. Defendants also know that that CMI would be removed through the diffusion process. ¶¶ 70-89. Additionally, Defendants designed their AI Image Product to "omit any CMI as part of the output." ¶ 183; *see also Schneider v. Youtube, LLC*, No. 20-cv-04423-JD, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022) ("The plausible inference . . . is that [the defendant] removed the CMI from plaintiffs' works with knowledge that doing so carried a 'substantial risk' of inducing infringement."). Without that CMI, users cannot know about the original works the output was based on and what obligations carry with it. *See* ¶¶ 192-93.

These allegations are sufficient under Rule 8 to show the Stability Defendants knew the removal of CMI led to a substantial risk of inducing infringement. *See*, *e.g.*, *Doe 1*, 2023 WL 3449131, at *13; *Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019) (allegation that omission of Instagram sidebar that "features [CMI]" led to "plausible inference from Plaintiff's allegations . . . that [Defendants] removed the CMI from Plaintiff's Instagram posts knowing that removing the CMI would help to conceal the alleged infringement of Plaintiff's images."); *Schneider*, 2022 WL 3031212, at *2.

**D.    Plaintiffs Pled Right of Publicity Claims (Counts IV & V)**

A common law cause of action for right of publicity has four elements: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). The statutory right of publicity, as set forth in California Civil Code § 3344(e), requires that the plaintiff must also "allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose in additional to proving the elements of the common law cause of action." *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1095 (E.D. Cal. 2009) (citation

omitted). Plaintiffs can pursue both claims simultaneously. Cal. Civ. Code § 3344(g).

Plaintiffs have pled facts sufficient to state a claim with respect to both their statutory and common law Right of Publicity claims under California precedent. Plaintiffs' right to publicity claims are based upon Stability's misuse of their *name specifically* and how Stability associates Plaintiffs' names with AI imaging output for its own commercial purposes. ¶¶171-177, 202-210.

### 1.    Plaintiffs Allege Stability Knowingly Misappropriated Their Names

The same facts are sufficient to show that Stability used Plaintiffs' identities and appropriated them to Stability's advantage, commercially or otherwise. These facts are also sufficient to satisfy additional statutory knowledge requirement. Stability knew that Plaintiffs' names would draw users to use their AI Image Products because their artistic identity is inextricably linked with their primary identifier: *their name.* The Complaint explains how Stability used specific Class members' names to attract customers and "gain[ ] a commercial advantage." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 411 (1983). Through permitting prompts based on the use of the term "in the style of," Stability cued users to insert artist names. The functionality "to create images based on 'in the style' prompts" was "prominent and used throughout Defendants' apps, website, and social media posts." ¶ 208.

While Plaintiffs agree that "[i]t is not important *how* the defendant has appropriated the plaintiff's identity, but *whether* the defendant has done so." *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1398 (9th Cir. 1992), Stability misconstrues *White*. Stability asserts that because it stole so many—billions—images from artists for use in training Stable Diffusion, it could not possibly have *known* that Plaintiffs' specific names or identities were included. MTD at 22–23. Stability however does not dispute the well-pled facts that Stable Diffusion was trained to recognize and respond to artists' names in prompts, including generating images "in the style of" Plaintiffs using their names as prompts. ¶¶ 171–177, 202–03; *See White*, 971 F.2d at 1398 (finding right of publicity claims properly pled where "each of [defendants'] actions directly implicated the commercial interests which the right of publicity is designed to protect").

The Ninth Circuit has adopted an interpretation of style protected by the right of publicity that is instructive here: "For the defendants to be liable for voice misappropriation . . . the

imitation had to be so good that people who were familiar with plaintiff's voice who heard the commercial *believed plaintiff performed it*." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1101 (9th Cir. 1992) (internal quotation marks omitted). Similarly here, Defendants used Plaintiffs' names to advertise an AI-generated image similar enough that people familiar with Plaintiffs' artistic style could believe that Plaintiffs had created the image. ¶¶ 171-14, 202-10. And unlike in *Waits*, Stability *also used Plaintiffs' actual names. Id.* The question is not whether the output images sufficiently represent Plaintiffs' identity, as Stability has framed it, but whether Plaintiffs' names are associated with those AI imaging outputs and whether that harms Plaintiffs' commercial identities. *See White*, 971 F.2d at 1398. Plaintiffs have alleged that they are. *See, e.g.*, ¶¶ 171–72, 202–03. Thus, Plaintiffs have properly alleged Stability knowingly used Plaintiffs' names for commercial advantage in connection with their AI Image Products.[10]

### 2. Plaintiffs Allege Lack of Consent and Resulting Injury

Plaintiffs have properly alleged the consent and injury requirements. The Complaint alleges that "[a]t no time did Plaintiffs consent to Defendants' use of their names" to promote Defendants' AI Image Product. ¶ 202. Additionally, the Complaint alleges that "[b]ecause of Defendants' unlawful appropriation of Plaintiffs' names, Plaintiffs have suffered injury" in the form of harm to the "goodwill that is associated with their names" and "the value of Plaintiffs' name recognition – and thus the value of their art itself." ¶ 212. "[C]ourts have long recognized that a person's 'name, likeness, or other attribute of identity can have commercial value,' even if the individual is relatively obscure." *Fraley v. Facebook*, 830 F. Supp. 2d 785, 807 (N.D. Cal. 2011). An allegation that the defendant exploited the plaintiff's name and identity "for commercial gain" denotes the "commercial value" of that name. *Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL 1870057, at *3 (N.D. Cal. Feb. 9, 2023). Stability's challenge to Plaintiffs' allegations of injury is premised on the same flawed argument as their other

---

[10] Stability's assertion that digital products are exempt from California's Right of Publicity laws is not supported by current caselaw. *See, e.g.*, *Davis v. Elec. Arts Inc.*, No. 10-03328 RS, 2012 WL 3860819, at *6 (N.D. Cal. Mar. 29, 2012), *aff'd,* 775 F.3d 1172 (9th Cir. 2015). Stability dismisses Plaintiffs' allegations of advertisements regarding their AI Image Product as "conclusory," but cites no caselaw requiring these elements to be pled with a heighted standard of specificity.

insufficiency claims: that Plaintiffs' names are not associated with their identities. So, for the same reasons, Stability's argument fails.

### E.    Plaintiffs' Right of Publicity and Unfair Competition Claims Are Not Preempted

Stability argues that Plaintiffs right of publicity claims and unfair competition claims fail because they are preempted by the Copyright Act.[11] This is incorrect.

The Ninth Circuit uses a two-part test to analyze whether the Copyright Act preempts a state law such as Cal. Civil Code § 3344. *See Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006). The court first assesses "whether the subject matter of [the] right of publicity claims comes within the subject matter of copyright." *Id.* If it does, the court next determines "whether the rights [the plaintiff] asserts under California law are equivalent to those created under the Copyright Act." *Id.* The Ninth Circuit has held that "[a] person's name or likeness is not a work of authorship within the meaning of [the Copyright Act]" and that where "[t]he subject matter of [plaintiffs'] statutory and common law right of publicity claims is their names and likenesses," federal copyright law does not preempt such claims. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004-05 (9th Cir. 2001).

Stability's preemption argument is rooted in a misreading of the Complaint: Plaintiffs' right of publicity claims are grounded in protection of the use of Plaintiffs *names* not their *styles* as Stability attempts to assert.[12] And the Ninth Circuit has explicitly said that such **claims are not preempted**." *Downing*, 265 F.3d at 1004 ("A person's name . . . is not a work of authorship within the meaning of 17 U.S.C. § 102."). "Because the subject matter of the Appellants' statutory and common law right of publicity claims is their names . . . , which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106." *Id. at*

---

[11] Plaintiffs have adequately pled an unfair competition claim under (1) 15 U.S.C. § 1125 (i.e., the Lanham Act); (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*; "UCL"); and (3) the common law (Count VI). Stability does not challenge Plaintiffs' unfair competition claim on the merits, but only on the basis of preemption.

[12] The Complaint explicitly and repeatedly alleges Stability used Plaintiffs' names and identities in connection with its "advertising and sale of [its] products and services." ¶ 209.

1005. Plaintiffs' claims are thus not preempted by federal copyright law. Despite Defendants' attempts to interpret Plaintiffs' right of publicity claims as based on Plaintiffs' Works themselves, the Complaint adequately alleges Defendants' **used Plaintiffs' names** in connection with its "advertising and sale of [its] products and services" and are not preempted by federal copyright law. ¶ 209.

Stability relies heavily on *Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017). *Maloney* is inapposite. The *Maloney* plaintiffs never contended "that their likenesses were ever used on merchandise or in advertising." *Id.* at 1011. Thus, the court in *Maloney* characterized the plaintiffs' claims as a "thinly disguised copyright claim" but in the context "where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use." *Id.* at 1016. This is vastly different from Plaintiffs' claims. Plaintiffs here do not "seek[ ] to use the right of publicity simply to prevent 'publication' of an artistic, visual work," *id.* at 1013, but rather seek redress for the Defendants' use of their names in their AI Image Products. ¶ 202. Embedding Plaintiffs names in Defendant's AI Imaging Product and allowing third parties to associate their names and commercial identities with any prompts they choose harms Plaintiffs in ways well beyond the purview of the Copyright Act.

For similar reasons, Plaintiffs' unfair competition claims likewise are not preempted. Plaintiffs' unfair competition claim requires the examination of "extra elements" such as whether there is a predicate violation of another law such as the DMCA that renders them not equivalent to any of the exclusive rights of copyright. Further, this case is not merely about the *reproduction* of Plaintiffs' art, but also the unauthorized *use*—and those claims are not equivalent to those protected under the federal Copyright Act. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) ("A state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act."). Plaintiff's unfair competition claims are qualitatively different from claims under the Copyright Act and contain additional elements, and thus are not preempted.

### F. Plaintiffs' Declaratory Relief Claim (Count VII) is Properly Pled and Not Redundant

A claim for declaratory relief is properly pled if it "would serve a useful purpose 'in clarifying and settling the legal relations in issue.'" *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *52 n.18 (N.D. Cal. Aug. 30, 2017) (quoting *McGraw-Edison Co. v. Preformed Line Prod. Co.*, 362 F.2d 339, 343 (9th Cir. 1966)). Here, declaratory relief would clarify the rights that artists may assert *vis-a-vis* the owners and creators of AI Image Products that increasingly trade in stolen works, names, and artistic identities in order to turn a profit for companies while economically harming Plaintiffs. Similarly, declaratory relief would settle the legal issue of Defendants' obligation to respect Plaintiffs' rights under established law, as pled in Plaintiffs' Complaint. That Plaintiffs also plead another remedy for the claim "does not preclude a declaratory judgment that is otherwise appropriate." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1006 (N.D. Cal. 2012).

Stability seems to argue that Plaintiffs cannot ever request declaratory relief if they allege underlying claims on which that request for declaratory relief is based. This is not the law and makes little sense. "The existence of another adequate remedy does not preclude" a judgment for declaratory relief in cases where it is appropriate. Fed. R. Civ. P. 57. "Courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies the subject matter jurisdictional prerequisites." *Md. Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178, 1183 (C.D. Cal. 2014) (internal citations and quotation marks omitted).[13]

---

[13] Stability is confused in citing to a case that rejected the argument they seem to be making: In *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014) the court denied the defendant's motion to dismiss plaintiffs count for declaratory relief even though it was based on the underlying claims. And Defendant's reliance on *Takeda Pharm. Co. v. Mylan Inc.*, 62 F. Supp. 3d 1115, 1127 (N.D. Cal. 2014) is equally unavailing. There the court dismissed a request for declaratory relief under the general terms of §271(a) of the Hatch–Waxman Act because the relief already provided in the same statute under § 271(e)(2) regarding new drug applications under the Hatch-Waxman Act made such a declaratory relief redundant. *Id.* at 1127. ("Section 271(e)(4) provides relief for infringement under § 271(e)(2) and permits Takeda to obtain an order delaying the effective date of the FDA's approval of Mylan's ANDA until after expiration of the '064 Patent, along with any appropriate injunctive or monetary relief.")

### G.      Plaintiffs Should Be Permitted Leave to Amend

Leave to amend is freely granted by courts in this district where the claim could be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). "Generally, Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend should be freely granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts."). Furthermore, "court[s] should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel . . . since it is important that new legal theories be explored and assayed in the light of actual facts." *Elec. Constr. Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985). Should the Court determine that dismissal of any counts should be granted, the Court should do so without prejudice and with leave to amend.

## IV.     CONCLUSION

For the foregoing reasons, the Stability Defendants' motion to dismiss should be denied.

PLAINTIFFS' OPP. TO DEFENDANTS' STABILITY AI, LTD. AND STABILITY AL, INC'S MTD

Dated: June 2, 2023

By:     _/s/ Joseph R. Saveri_
          Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                   czirpoli@saverilawfirm.com
                   cyoung@saverilawfirm.com
                   lkessler@saverilawfirm.com
                   eabuchanan@saverilawfirm.com
                   tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:     (415) 395-9940
Email:          mb@buttericklaw.com

Brian D. Clark (_pro hac vice_)
Laura M. Matson (_pro hac vice_)
Eura Chang (_pro hac vice_)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile:   (612)339-0981
Email:        bdclark@locklaw.com
                 lmmatson@locklaw.com
                 echang@locklaw.com

_Counsel for Individual and Representative_
_Plaintiffs and the Proposed Class_