1  Joseph R. Saveri (State Bar No. 130064)
   Cadio Zirpoli (State Bar No. 179108)
2  Christopher K.L. Young (State Bar No. 318371)
   Louis A. Kessler (State Bar No. 243703)
3  Elissa A. Buchanan (State Bar No. 249996)
   Travis Manfredi (State Bar No. 281779)
4  JOSEPH SAVERI LAW FIRM, LLP
   601 California Street, Suite 1000
5  San Francisco, California 94108
   Telephone:    (415) 500-6800
6  Facsimile:    (415) 395-9940
   Email:        jsaveri@saverilawfirm.com
7                czirpoli@saverilawfirm.com
                 cyoung@saverilawfirm.com
8                lkessler@saverilawfirm.com
                 eabuchanan@saverilawfirm.com
9                tmanfredi@saverilawfirm.com

10 Matthew Butterick (State Bar No. 250953)
   1920 Hillhurst Avenue, #406
11 Los Angeles, CA 90027
   Telephone:    (323) 968-2632
12 Facsimile:    (415) 395-9940
   Email:        mb@butericklaw.com

13
14 *Counsel for Individual and Representative*
   *Plaintiffs Sarah Andersen, Kelly McKernan,*
   *Karla Ortiz, and the Proposed Class*

15
   [Additional Counsel Listed on Signature Page]
16

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

19 SARAH ANDERSEN, et al.,                    Case No. 3:23-cv-00201-WHO

20     Individual and Representative Plaintiffs,  **PLAINTIFFS' OPPOSITION TO
                                                  DEFENDANT MIDJOURNEY, INC.'S
21     v.                                         MOTION TO DISMISS PLAINTIFFS'
                                                  COMPLAINT AND TO STRIKE CLASS
22 STABILITY AI LTD., et al.,                     CLAIMS**

23                            Defendants.         Date:      July 19, 2023
                                                  Time:      2:00 pm
24                                                Location:  Courtroom 2 — 17th Floor
                                                  Before:    Hon. William H. Orrick
25

26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ...................................................................................... 1

III.    ARGUMENT .............................................................................................................. 3

        A.      Plaintiffs Have Sufficiently Alleged Direct Infringement (Count 1) ........................ 3

                1.      Plaintiff Andersen Has Sufficiently Alleged Her Works Were Infringed......... 3

                2.      Plaintiffs Have Pled Infringement of Exclusive Copyrights ........................... 5

                3.      Plaintiffs' Allegations Satisfy the "Substantial Similarity" Test.................... 9

        B.      Plaintiffs Have Alleged Vicarious Infringement (Count II). ..................................... 10

        C.      Plaintiffs Have Adequately Pled Violations of the DMCA (Count III) ..................... 11

                1.      Plaintiffs Plead All Elements of a Section 1202(b) Violation ......................... 12

        D.      Plaintiffs Have Pled Right of Publicity Claims (Counts IV & V) ............................. 17

                1.      Plaintiffs Allege Midjourney Knowingly Misappropriated their Names ........ 18

                2.      Plaintiffs Allege Lack of Consent and Resulting Injury.................................. 19

                3.      Plaintiffs' Right of Publicity Claims Are Not Preempted............................... 19

        E.      Plaintiffs Have Pled an Unfair Competition Claim (Count VI) ................................ 20

                1.      Plaintiffs Have Pled an Unfair Competition Claim under the Lanham Act... 20

                2.      Plaintiffs Have Alleged a Claim Under California's UCL.............................. 21

                3.      Plaintiffs Pled a Common Law Unfair Competition Claim ........................... 22

        F.      Plaintiffs Pled a Claim for Declaratory Relief under 28 U.S.C. § 2201(a) and Cal. Code Civ. Proc., § 1060 (Count VII) ........................................................................ 22

        G.      Midjourney's Motion to Strike Class Allegations is Meritless and Premature ......... 23

                1.      Defendant's Motion to Strike Is Premature................................................... 23

                2.      Defendant's Motion to Strike is Meritless..................................................... 24

        H.      Plaintiffs Should be Granted Leave to Amend........................................................ 25

IV.     CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) .................................................. 3

*Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...................................................... 21

*Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL
    1870057 (N.D. Cal. Feb. 9, 2023) .................................................................................. 19

*Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492 (N.D. Cal. Feb.
    7, 2019) ...........................................................................................................................17

*Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys.,
    Inc.*, No. C 04-05368 SI, 2006 WL 3218719 (N.D. Cal. Nov. 7, 2006) .................................. 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................1, 3

*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (N.D. Cal. 2014) ........................................................... 5

*Byton N. Am. Co. v. Breitfeld*, No. CV 19-10563-DMG, 2020 WL 3802700 (C.D.
    Cal. Apr. 28, 2020) ........................................................................................................ 21

*Cabell v. Zorro Prods. Inc.*, No. 5:15-cv-00771-EJC, 2017 WL 2335597 (N.D. Cal.
    May 30, 2017) .................................................................................................................. 9

*Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015 (N.D. Cal. 2019) .................................................. 21

*City Sols. Inc. v. Clear Channel Commc'ns, Inc.,* 365 F.3d 835 (9th Cir. 2004) .............................. 22

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ............................................ 6

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) .......................................... 3

*Corbello v. Valli*, 974 F.3d 965 (9th Cir. 2020) ............................................................................. 3

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL
    5842756 (N.D. Tex. Nov. 7, 2019) ................................................................................... 12

*Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131 (N.D. Cal. May 11,
    2023) ............................................................................................................... 11, 16, 17

*Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1244357 (C.D. Cal. Mar. 16, 2020) ......................... 24

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ........................................................................ 25

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ................................................ 18, 20

*Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) ............................... 25

*Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698
(N.D. Cal. May 11, 2009) ................................................................................. 4

*Football Ass'n Premier League Ltd. v. YouTube, Inc.,* 297 F.R.D. 64 (S.D.N.Y. 2013) ................... 25

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881 (2019) ............................. 3

*Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088 (C.D. Cal. 2012) ................ 3, 7

*FPX LLC v. Google, Inc.* 276 F.R.D. 543 (E.D. Tex. 2011) ............................................................. 25

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) .................................................. 19

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ........................................... 12

*Garcia v. Sony Computer Ent. Am., LLC*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) ........................ 22

*GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828 (N.D. Ill. 2019) ....................................... 14, 15

*Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2009 WL 425958 (M.D. Fla.
Feb. 20, 2009) ................................................................................................. 14

*ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) ................................................ 15

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................... 22

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................. 3

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650-JFW, 2015 WL
12712311 (C.D. Cal. Dec. 16, 2015) ......................................................... 3, 9

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007) ........................................................................ 7, 8

*Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134 (9th Cir. 2006) ............................................... 19

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D.
Ill. 2014) ............................................................................................................. 11

*Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836 (N.D. Cal.
Oct. 25, 2022) ............................................................................................ 12, 13

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ......................................................................... 25

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ......................................................... 20

*Mangindin v. Wash. Mut. Bank,* 637 F. Supp. 2d 700 (N.D. Cal. 2009) ...................................... 23

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ......................................................... 12, 14

*McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020) ..................................... 3

*Md. Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178 (C.D. Cal. 2014) ............................................ 22

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) .................................... 12

*Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) .................................................................................................................................... 12

*Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ............................................................................................................................................ 11

*Microsoft Corp. v. My Choice Software, LLC*, No. SA CV 16-2189-DOC, 2017 WL 5643210 (C.D. Cal. Oct. 10, 2017) ............................................................................. 4, 7

*Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA), 2022 WL 17207103 (C.D. Cal. Sep. 16, 2022) .................................................................................................................... 11

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ............................ 25

*Murphy v. Millennium Radio Grp., LLC*, Civil Action No. 08-1743 MAS, 2015 WL 419884 (D.N.J. Jan. 30, 2015) .................................................................................... 12

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .............................................................................. 3

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ............................................. 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ................................................................................................................................ 24

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) ......................................... 21

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) .................. 3, 4, 7

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ............................................... 11

*Perfect 10, Inc. v. Visa Int'l Ass'n*, 494 F.3d 788 (9th Cir. 2007) ............................................. 10

*Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048 (N.D. Cal. 2004) ........................ 23

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ......................... *passim*

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-cv-03813-WHO, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ............................................................................... 23

*Rosen v. Invaluable, LLC*, No. 2:20-cv-06756-SVW-AS, 2020 WL 7773908 (C.D. Cal. Nov. 9 2020) ...................................................................................................... 6

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ........................................................ 5

*Schneider v. Youtube, LLC*, No. 20-cv-04423-JD, 2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) ......................................................................................................................... 17

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ............................................ 5, 8

*Stevens v. CoreLogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ......................................... 12, 16

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014) ................................................................... 23

*Tech. & Intell. Prop. Strategies Grp. PC v. Fthenakis,* No. C 11-2373 MEJ, 2011 WL 3501690 (N.D. Cal. Aug. 10, 2011) .................................................................. 23

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018) .................................................................................................................... 6

*United Tactical Sys., LLC v. Real Action Paintball, Inc.,* 143 F. Supp. 3d 982 (N.D. Cal. 2015) .............................................................................................................. 20, 21

*Vulcan Golf LLC, v. Google Inc.*, 254 F.R.D. 521 (N.D. Ill. 2008) ............................... 24

*Williams v. Cavalli*, No. CV 14-06659-AB, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ..................................................................................................................... 11

*Wood v. Apodaca*, 375 F. Supp. 2d 942 (N.D. Cal. 2005) .......................................... 10

*Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089 (E.D. Cal. 2009) ................... 18

*Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837 (N.D. Cal. 2018) .................................... 21

**State Cases**

*Eastwood v. Superior Court*, 149 Cal. App. 3d 409 (1983) ......................................... 18

**Statutes**

15 U.S.C. § 1125 .......................................................................................................... 20

17 U.S.C. § 101 .............................................................................................................. 7

17 U.S.C. § 106 ...................................................................................................... 3, 5, 7

17 U.S.C. § 301 ................................................................................................ 19, 20, 24

17 U.S.C. § 411 ............................................................................................................ 12

17 U.S.C. § 1202 .................................................................................................... 12, 13

28 U.S.C. § 2201 .......................................................................................................... 22

Cal. Bus. & Prof. Code § 17200 .................................................................................. 20

Cal. Civil Code § 3344 ........................................................................................... 18, 19

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

Cal. Code Civ. Proc. § 1060 ........................................................................ 22

**Rules**

Fed. R. Civ. P. 8 ...................................................................................*passim*

Fed. R. Civ. P. 12.......................................................................................... 3

Fed. R. Civ. P. 23 ................................................................................... 23, 24

Fed. R. Civ. P. 57........................................................................................ 22

**Other Authorities**

2 W. Rubenstein, Newberg and Rubenstein on Class Actions (6th ed. 2022)............................ 24

## I.     INTRODUCTION

Plaintiffs' Complaint alleges with sufficient specificity how Defendants—including Midjourney—directly copied Plaintiffs' images to train Defendants' AI image generators, which perpetrate copyright infringement on an unprecedented scale. In its motions to dismiss, Midjourney is seeking to have it both ways: to profit from its AI image generator while leveraging its opacity and complexity to prevent Plaintiffs and this Court from scrutinizing its legality. This is by design: Defendants' AI image generators are tools for both its massive copyright infringement, and designed to cover up said infringement. Defendants' goal in this case is simple: to dodge liability for their massive misappropriation of billions of copyrighted images.

Midjourney's objections to Plaintiffs' copyright claims are unavailing. Plaintiffs make out each element of both direct and vicarious infringement with allegations of massive direct copying. Midjourney demands specificity not required at the pleading stage. As for Midjourney's opposition to Plaintiffs' Digital Millennium Copyright Act ("DMCA") claim, Midjourney ignores Plaintiffs' allegations specifically identifying the specific works are at issue. Midjourney's arguments that Plaintiffs' Complaint is a "shotgun pleading" are similarly unavailing—Plaintiffs' allegations provide sufficient notice of the basis on which Midjourney is sued—that is all Rule 8(a) requires. As for Plaintiffs' well-pleaded state and common law claims, Midjourney's arguments are misplaced. Plaintiffs' Complaint sets forth facts sufficient to satisfy *Twombly*. Finally, Midjourney's attempt to strike Plaintiffs' class allegations should be dismissed as meritless and premature. If the Court finds that any of Plaintiffs' claims are insufficient, amendment would not be futile, and leave to amend should be granted.

## II.     FACTUAL BACKGROUND

Defendants develop and market artificial-intelligence image-generation products ("AI Image Products"). ¶¶ 33–35.[1] AI Image Products are "trained" by copying vast numbers of training images, which are images, usually paired with a descriptive caption. ¶ 25. Training images are typically gathered through web scraping, a method of copying images from websites using bots or web crawlers. ¶ 26. Defendants' AI Image Products have copied and ingested billions of training images, almost all of which were copied without the artists' permission and without compensation. ¶¶ 2–3, 57–58.

---

[1] "¶ ___" and "Ex. ___" citations are to the Complaint, ECF No. 1 unless otherwise indicated.

In August 2022, Stability AI released Stable Diffusion, an AI Image Product that produces images in response to text prompts. ¶¶ 52–54. To create Stable Diffusion, Stability scraped (i.e., copied) over five billion images from websites as training images for Stable Diffusion without the consent of the creators or the websites that hosted those images. ¶¶ 57, 63. Many of these images came from datasets released by LAION, an organization paid by Stability AI to help compile Training Images for their AI Image Products. ¶¶ 100–107. Stable Diffusion also did not negotiate licenses for any of the training images. ¶ 57. Stable Diffusion embeds and stores compressed copies of the training images within Stable Diffusion, and uses those compressed copies to generate its output in response to text prompts. ¶¶ 58–59.

Broadly, Stable Diffusion works by applying "diffusion," which is the technique the software uses to generate output images that are similar to those found in its training data. ¶¶ 65–66. Every image output from an AI Image Product is necessarily derived from and depends on the breadth and quality of the images used for training. ¶¶ 95, 99. This means that, unlike a human artist, an AI Image Product can never exceed the limitations of its training images. ¶¶ 97–98.

Midjourney released the first version of its Midjourney AI image generator (hereinafter, the "Midjourney Product") on July 12, 2022. ¶¶ 61, 134–35. The Midjourney Product relies on Stable Diffusion as its image-generating engine. ¶¶ 65, 134, 149. Midjourney markets and sells the Midjourney Product for profit and commercial gain. ¶¶ 137–38. Midjouney relies on millions of copyrighted images as training images. ¶¶ 144–45. Indeed, Midjourney's CEO David Holz has been cagey about the provenance of the training images the Midjourney Product uses. ¶ 148. Holz has admitted that Midjourney has not sought the consent from creators for Midjourney's training images. ¶ 150. Holz has also claimed that there is "no way" to trace an image to an owner and then authenticate it, but this is false as open internet databases maintain records of image ownership. ¶¶ 150–51.

Individual users can enter an artist's name into the Midjourney Product and generate images that can convincingly pass as created by that artist, thanks to Midjourney's use of Training Images. ¶ 171. Midjourney designed its Midjourney PRoduct to include this feature and even used Plaintiffs' names to promote it. ¶ 203. Users can sell, and already have sold, such images to the detriment of Plaintiffs. ¶ 173. Midjourney has not negotiated licenses for training images or shared any revenue with the owners of training images. ¶ 150.

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

1  III.  **ARGUMENT**

2       Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P.

3  8(a). Thus, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

4  allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's allegations need only

5  provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re*

6  *Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted).

7       In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true

8  and construed in the light most favorable to the nonmoving party." *McShannock v. JP Morgan Chase Bank*

9  *NA*, 976 F.3d 881, 886–87 (9th Cir. 2020). Furthermore, the allegations should be evaluated holistically,

10  not piecemeal. *See Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). "Dismissal is

11  proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a

12  cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

13       **A.     Plaintiffs Have Sufficiently Alleged Direct Infringement (Count 1)**

14       A claim of direct copyright infringement must allege: (1) "ownership of the allegedly infringed

15  material" and (2) that "the alleged infringers violate at least one exclusive right granted to copyright

16  holders under 17 U.S.C. 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

17  "Copyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F.

18  Supp. 2d 1114, 1120 (C.D. Cal. 2001) ("*Cybernet Ventures*"). "Direct infringement does not require intent

19  or any particular state of mind." *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1098

20  (C.D. Cal. 2012) (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1367

21  (N.D. Cal. 1995)); *see also ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650-JFW (AJWx),

22  2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015) ("Copyright infringement is a strict liability tort. Lack

23  of knowledge does not limit liability, but only applies to damages").

24       **1.     Plaintiff Andersen Has Sufficiently Alleged Her Works Were Infringed.**

25       A plaintiff who alleges copyright infringement must show ownership of a valid copyright. *Corbello v.*

26  *Valli*, 974 F.3d 965, 973 (9th Cir. 2020); *see also Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139

27  S.Ct. 881, 887 (2019). "[C]omplaints simply alleging present ownership by plaintiff, registration in

28  compliance with the applicable statute and infringement by defendant have been held sufficient under the

rules." *Cybernet Ventures*, 167 F. Supp. 2d at 1120. Here, Ms. Andersen has alleged that her registrations "include Works used as Training Images" by Defendants.[2] ¶ 28 & Exs 1–16. At this stage, no more is required.

Nonetheless, Midjourney argues that plaintiff Sarah Andersen—who attached sixteen of her copyright registrations to the Complaint—failed to meet the copyright-registration requirement, because she does not specifically identify which "Works" were allegedly infringed by Midjourney. MTD at 8.[3] But the bar is not so high. *See Microsoft Corp. v. My Choice Software, LLC*, No. SA CV 16-2189-DOC (KESx), 2017 WL 5643210, at *3 (C.D. Cal. Oct. 10, 2017) (denying motion to dismiss copyright infringement claim and explaining "[s]imilar cases involving online forums suggest that alleging some but not all instances of infringement is sufficient to state a claim") (citing *A&M Records, Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 902, 911 (N.D. Cal. 2000) *aff'd in part, rev'd in part on other grounds by* 239 F.3d 1004 (9th Cir. 2001)); *see also Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF (RS), 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) ("Facebook need not allege the exact content that Defendants are suspected of copying at this stage of the proceedings.").

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001), is on point. In *Cybernet Ventures*, the plaintiffs alleged "the existence of hundreds, even thousands of infringing photographs" within the defendant's websites. *Id.* at 1120. The court found the complaint sufficient—the court reasoned that because of the alleged "massive infringement," "[r]equiring a statement of each and every example [of infringement] would defeat the regime established by Rule 8." *Id.* Similarly, Plaintiffs bring this action on behalf of a class with "at least thousands of . . . members" (¶ 42), and allege that Defendants "copied over five billion images from websites." ¶ 57. The specificity that Midjourney would require is simply "incompatible with the types of claims involved in this case." *Cybernet Ventures*, 167 F. Supp. 2d at 1120.

---

[2] Plaintiffs McKernan and Ortiz concede that they did not include any material that was registered at the time of the filing of the Complaint.

[3] "MTD at ___ " refers to Defendant Midjourney, Inc.'s Notice of Motion and Motion to Dismiss Plaintiffs' Complaint and to Strike Class Claims (ECF No. 52) unless otherwise indicated.

### 2. Plaintiffs Have Pled Infringement of Exclusive Copyrights

A copyright holder possesses exclusive rights regarding their registered works: the rights to reproduce, distribute, publicly display, perform, and create derivative works of the copyrighted work. 17 U.S.C. § 106. The copying of copyrighted works is infringement. "The word 'copying' is shorthand" is shorthand for infringing any of these exclusive rights. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, n.3 (9th Cir. 1989). To prove a certain work is infringing, a plaintiff must allege that the defendant "copied protected aspects" of the plaintiff's work to make the infringing work. 17 U.S.C. § 106(2); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Notably, "'[s]ubstantial similarity' is not an element of a claim of copyright infringement. Rather, it is a doctrine that helps courts adjudicate whether copying of the 'constituent elements of the work that are original' actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012); *see also Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, n.3, 1163–64 (N.D. Cal. 2014) ("*Absent evidence of direct copying*, the plaintiff must demonstrate both that the defendant had 'access' to the plaintiff's work and that the two works are substantially similar.") (emphasis added; citation omitted). In practice, substantial similarity is the "shorthand lingo" used to collectively refer to two "distinct concepts": (1) "copying", which means "that a defendant copied the work" (as opposed to "independent creation"); and (2) "unlawful appropriation", which means that the copying reached material protected by copyright (as opposed to unprotectable elements). *Skidmore*, 952 F.3d at 1064.

Though Plaintiffs need only allege one valid theory to defeat Midjourney's motion, the Complaint sets forth facts stating several claims direct infringement that apply to Midjourney: (1) direct infringement by reproducing protected works by scraping (i.e., copying) and reproducing images used as training images for the Midjourney Product; (2) direct infringement by distributing Stable Diffusion, which contains compressed copies of the training images, as part of the Midjourney Product; (3) direct infringement by creating and distributing their Midjourney Product, which is itself an infringing derivative work; and (4) generating and distributing output images which are infringing derivative works.

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

### a. Midjourney Directly Infringes by Copying and Reproducing Plaintiffs' Work to Train Its AI Product

Infringement of the exclusive right to reproduction entails "the impermissible reproduction of copyrighted expression, whether those actions involve making available a device or product or providing some service used in accomplishing the infringement." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1033 (9th Cir. 2013). Plaintiffs have set forth detailed facts showing Midjourney's use of copied and reproduced images for training its AI product without creators' permission, as Midjourney has conceded.[4] MTD at 9. Midjourney used these compressed copies to train the Midjourney Product. ¶ 144; *see also* ¶¶ 146–51. Taken as true, these allegations set forth a claim that Midjourney violated Plaintiffs' exclusive rights of reproduction. *See Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018) ("Ninth Circuit courts agree that downloading and storing constitutes reproduction.") (citing *Columbia Pictures*, 710 F.3d at 1034 & *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 955–56 (9th Cir. 2018)); *see also Rosen v. Invaluable, LLC*, No. 2:20-cv-06756-SVW-AS, 2020 WL 7773908, at *3 (C.D. Cal. Nov. 9 2020) (finding allegations that "Invaluable directly uploaded copies of the Nolin Photograph to its account on Pinterest, a social media website . . . sufficient to satisfy the second requirement that Defendants violated the exclusive rights of reproduction and distribution").

Despite these allegations, Midjourney quibbles that the Complaint does not sufficiently specify "what was in this 'subset' of training material, or that it included even one work by *Plaintiffs*." MTD at 9. But as alleged, Midjourney "has been cagey when asked direct questions about the source of [its] Training Images." ¶ 148. Plaintiffs—and the Court—are therefore left to make reasonable inferences from what is already known or surmised, as is proper at this phase of the litigation. Plaintiffs allege that Midjourney Product relies on Stable Diffusion (¶¶ 65, 132, 149), that many of the billion images scraped into the Stable Diffusion training pool came from datasets that include Plaintiffs' licensed materials. ¶¶ 57, 100–07, 148–

---

[4] For instance, Plaintiffs allege that Midjourney copied their and class members' works by scraping their protected images from the internet as compressed copies without permission. ¶¶ 144-51; see also ¶ 26 (defining web scraping). Plaintiffs also have alleged that "the Midjourney Product currently available was trained on a subset of the images used to train Stable Diffusion" (¶ 34); that "Midjourney relies on appropriating millions of copyrighted images created by artists" (¶ 144); and that Midjourney is "helping themselves to millions of copyrighted works for free" (¶ 152).

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

49; *see also* ¶¶ 101–10. These allegations establish a reasonable inference that Midjourney Product's

training materials do, in fact, include Plaintiffs' art. And indeed, such inferences are permissible in

copyright infringement cases involving massive infringement as here.[5] *See Cybernet Ventures*, 167 F. Supp.

2d at 1120.[6]

### b. Stable Diffusion Directly Infringes by Distributing Compressed Copies, and Therefore so Does Midjourney's AI Product

Infringement by distributing "requires 'actual dissemination of a copy' by sale or other transfer of

ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3); *Fox Broad. Co.*, 905 F. Supp. 2d at 1106.

Here, Plaintiffs allege Defendants directly copied Plaintiffs' art. *E.g.*, ¶ 58 ("Stability has *embedded and*

*stored compressed copies* of the Training Images within Stable Diffusion") (emphasis added). Indeed, Stable

Diffusion and the compressed copies it has made form the basis of the Midjourney Product. *E.g.*, ¶ 65.

Plaintiffs also allege that the Midjourney Product is made available to users for payment, thereby

disseminating those copies to customers. *See*, *e.g.*, ¶ 137 (Midjourney payment options). Because Plaintiffs

have alleged direct copying, substantial similarity is not required. *See Range Rd. Music*, 668 F.3d at 1154 ("A

showing of 'substantial similarity' is irrelevant in a case like this one [which] entailed direct copying of

copyrighted works.").

### c. The Midjourney Product Is a Directly Infringing Derivative Work

To claim that a work qualifies as a derivative work, a plaintiff must allege that the work has "recast,

transformed, or adapted" an existing copyrighted work. 17 U.S.C. § 101; *see also Jarvis v. K2 Inc.*, 486 F.3d

526, 531 (9th Cir. 2007). To further claim that a derivative work is infringing, a plaintiff must allege that

defendants "copied protected aspects" of the plaintiff's work to make the infringing derivative work. 17

---

[5] Indeed, statements from Midjourney's CEO bolster the inference of the scale of the infringement. Midjourney CEO David Holz has said that Midjourney conducted "a big scrape of the internet", which implies an enormous dataset. ¶ 148. Holz also suggested Midjourney has been trained on at least a "hundred million images." ¶ 150. Holz has said his goal is to make the output images from the Midjourney Product "beautiful and artistic looking." ¶ 141. The training dataset is a sufficiently large subset of LAION (¶ 34) that the Court may reasonably infer that works owned by the Plaintiffs and the class are within that subset.

[6] To the extent Midjourney argues that Plaintiffs have failed to identify *output* that are allegedly infringing (MTD at 10), that argument likewise fails for similar reasons. *See My Choice Software*, 2017 WL 5643210, at *3.

U.S.C. § 106(2); *see also Skidmore*, 952 F.3d at 1064. While this can be proved inferentially by proof of "substantial similarity," this "is irrelevant in a case . . . [that] entail[s] direct copying of copyrighted works"—such as this one—because the copying of entire copyrighted works necessarily entails copying protected aspects of the work. *Range Rd. Music*, 668 F.3d at 1154; *see also* § III.A.2.a, *supra*.

As Plaintiffs allege "Stability downloaded or otherwise acquired copies of billions of copyrighted images" to use as "Training Images" for Stable Diffusion. ¶¶ 1–3 and that "Stability has embedded and stored compressed copies of the Training Images within Stable Diffusion." ¶ 58. Taken together, these allegations show that Stability copied numerous entire works. Because Stable Diffusion (and the products that rely on it) is a derivative work, because by "stor[ing] compressed copies" of "billions of copyrighted images", it has thereby "transformed" Plaintiffs' works into another work. The Midjourney Product is thus also a derivative work because it relies on Stable Diffusion.

### d.   Midjourney Product's Output Images Are Infringing Derivative Works

For similar reasons, the output images of Stable Diffusion and DreamStudio are also directly infringing derivative works. Here, Plaintiffs allege that "Stable Diffusion uses the Training Images to produce seemingly new images through a mathematical software process. These "new" images are based entirely on the Training Images and are derivative works of the particular images Stable Diffusion draws from when assembling a given output." ¶ 4. Plaintiffs further allege that each output image "is necessarily a derivative work, because it is generated exclusively from a combination of the conditioning data and the latent images, all of which are copies of copyrighted images." ¶ 90. Plaintiffs allege that within Stable Diffusion, copies of training images are "interpolated—meaning, blended mathematically—to produce new derivative images." ¶ 79. Plaintiffs allege that "the source images themselves are being directly interpolated" to make output images. ¶ 86. Plaintiffs provide a diagram illustrating how Stable Diffusion combines source images into output images. ¶ 81. Because this case involves "direct copying of copyrighted works," Plaintiffs have sufficiently alleged that the output images are infringing derivative works under the Copyright Act. *Range Rd. Music*, 668 F.3d at 1154; *see also Jarvis*, 486 F.3d at 532 ("The [infringing] ads did not simply compile or collect [Plaintiff's] images, but rather altered them in various ways and fused them within other images and artistic elements into new works that were based on—i.e., derivative of—[Plaintiff's] original images.").

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

Midjourney itself has surely made output images with their own AI image generators as part of creating and marketing these products. ¶¶ 34, 134–37. Whether the output varies or differs from the input is immaterial—this is a case involving direct copying. *See ITC Textile*, 2015 WL 12712311, at *5 ("[T]he law is clear that in cases of direct copying, the fact that the final result of defendant's work differs from plaintiff's work is not exonerating. To the contrary, it can show infringement of multiple exclusive rights, such as unauthorized reproduction and unauthorized creation of a derivative work.").

### 3.    Plaintiffs' Allegations Satisfy the "Substantial Similarity" Test

As numerous courts in the Ninth Circuit have concluded, Defendants' assertion that Plaintiffs need show substantial similarity is a "red herring." *Range Rd. Music,* 668 F.3d at 1154. This is because "the proper question is whether [infringement] occurred *vel non*." *Id.* As explained above, Plaintiffs alleged direct infringement through the direct unauthorized copying of their copyrighted works. Therefore, it would be of no moment, even if Defendants were to show that there is no substantial similarity. *ITC Textile*, 2015 WL 12712311, at *5 ("the fact that the final result of defendant's work differs from plaintiff's work is not exonerating."). Moreover, a showing of substantial similarity is in the nature of a defense, inappropriate for resolution on the pleadings. *See Cabell v. Zorro Prods. Inc.*, No. 5:15-cv-00771-EJC, 2017 WL 2335597, at *8 (N.D. Cal. May 30, 2017) (rejecting argument that "Plaintiff has failed to allege plausible facts to establish substantial similarity under the extrinsic test" and explaining that "the string of Ninth Circuit authority cited by Defendants shows, satisfaction of the extrinsic test is required primarily in the context of motions for summary judgment.") (citations omitted).

Nonetheless, Plaintiffs' direct-infringement claim passes muster even were the Court to require satisfaction of the substantial-similarity test. Plaintiffs allege that "none of the Stable Diffusion output images provided in response to a particular Text Prompt is likely to be a close match for any specific image in the training data" (¶ 93). *See ITC Textile*, 2015 WL 12712311, at *5. Plaintiffs also allege that the output images are infringing derivative works that have been "blended mathematically" from the training images. ¶ 79. A natural and expected consequence of this process is that any specific output image is not "likely to be a close match" with any "specific [i.e., *single*] image in the training data." ¶ 93. It is reasonable to infer that substantial similarity exists between the source images that have been blended and the output image as demonstrated in the Complaint. *See, e.g.*, ¶ 81. This is also why Plaintiffs' argument is entirely consistent

with Plaintiffs' allegation that "[i]n general, none of the Stable Diffusion output images provided in response to a particular Text Prompt is likely to be a close match for any specific image in the training data." ¶ 93. Plaintiffs also allege that having a copy of Stable Diffusion is akin to "having a directory on your computer of billions of JPEG files." ¶ 75(c). Therefore, the Court may reasonably infer that just as one could open a computer directory to inspect the JPEG files and compare them to the original works, one may conduct an analogous inspection of Stable Diffusion, which will reveal the substantial similarity between the "stored compressed copies" within Stable Diffusion and the original works. ¶¶ 2–3, 18, 58–59, 100; *see also Wood v. Apodaca*, 375 F. Supp. 2d 942, 946 (N.D. Cal. 2005) (explaining that at the motion to dismiss stage, the Court must "construe [Plaintiffs' allegations] in the light most favorable" to Plaintiffs.). These allegations satisfy substantial similarity.

### B.   Plaintiffs Have Alleged Vicarious Infringement (Count II).

A claim for vicarious copyright infringement requires the allegation of (1) a "direct infringement" by a third party where the defendant (2) "declin[es] to exercise a right to stop or limit" the infringement and (3) retains "a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Plaintiffs have properly alleged all three elements of this claim. Midjourney incorrectly argues otherwise. MTD at 12–13.

***Third Party Infringement.*** Plaintiffs have already demonstrated how the output images are infringing derivative works. *See* § III, A.2.d, *supra*. Plaintiffs further allege third party infringement by users. Plaintiffs allege that "[w]hen used to produce images from **prompts by its users**, Stable Diffusion uses the Training Images to produce seemingly new images through a mathematical software process. These new images are based entirely on the Training Images and are derivative works of the particular images Stable Diffusion draws from when assembling a given output." ¶ 4 (emphasis added). Thus, when a Midjourney Product user prompts Midjourney for an output image, that act of output is an act of infringement by a third party.

***Midjourney's Right to Stop the Infringing Conduct.*** Midjourney wrongly argue that Plaintiffs have failed to allege that it has the legal right to stop its users from creating infringing derivative works. MTD at 13. Plaintiffs allege that "Midjourney's main product is an online AI-based image generator." ¶ 134. Plaintiffs also allege that "Midjourney released the first version of its service in March 2022, and has

continued to update the product." ¶ 135. Because Midjourney designed, marketed and sold AI image generators, it is necessarily true that Defendants has always had the "right to stop" the respective infringement. For example, Midjourney could have never released these generators to the public in the first place. Or if it did, Midjourney could have ensured that they did not emit infringing derivative works. *See*, *e.g.*, *Range Road Music*, 668 F.3d at 1153 (finding that plaintiff "pleaded specific facts to raise a plausible inference" that defendants exercised control over the venue that undertook the infringing act).

**Midjourney's Financial Interest in the Infringing Activity.** To the extent Defendants argue that Plaintiffs have failed to allege a financial interest in the infringing activity, each are wrong. *E.g.*, MTD at 13. Plaintiffs allege that "Midjourney offers a number of paid subscription plans" that starts at "$30 per month and allows unlimited Text Prompts and digital image outputs." ¶ 137. Therefore, Midjourney had a direct financial interest in users creating more infringing output images with its Midjourney Product. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (explaining that financial benefit exists "where the availability of infringing material acts as a draw for customers.").

### C.   Plaintiffs Have Adequately Pled Violations of the DMCA (Count III)

Section 1202(b) of the DMCA imposes liability for the removal or alteration of copyright management information ("CMI").[7] 17 U.S.C. § 1202(b)*; Doe 1 v. GitHub, Inc.*, ___ F. Supp. 3d ___, 2023 WL 3449131, at *11 (N.D. Cal. May 11, 2023). Section 1202(c), which describes protected categories of CMI, has been interpreted broadly. *See Williams v. Cavalli*, No. CV 14-06659-AB (JEMx), 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014). The pleading burden under the DMCA is low. *See Mollman v. Zoetop Bus. Co.*, No. CV 22–4128 (PA) (GJSx), 2022 WL 17207103, at *3 (C.D. Cal. Sep. 16, 2022) (burden is "not as exacting" at the pleading stage).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi. Trib. Co., LLC.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long

---

[7] Section 1202(c) provides, in pertinent part, "[a]s used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work[.]"

recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). For purposes of pleading Section 1202(b)'s mental state requirements, "'intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022) (citations omitted). Further, "[n]othing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit. While a copyright registration is a prerequisite under 17 U.S.C. § 411(a) for an action for copyright infringement, claims under the DMCA are, however, simply not copyright infringement claims and are separate and distinct from the latter." *Med. Broad. Co. v. Flaiz*, No. CIV.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003).

A DMCA claim does not require proof of infringement. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 950–52 (9th Cir. 2010) (rejecting infringement nexus requirement for DMCA claims). Thus, fair use is not a defense. *See Murphy v. Millennium Radio Grp., LLC*, Civil Action No. 08-1743 MAS, 2015 WL 419884, at *5 (D.N.J. Jan. 30, 2015) ("A claim under § 1202(b) does not necessarily attack non-infringing fair uses of copyrighted works—it targets conduct that does harm to identifying information that helps to protect the copyright holder, such as CMI."); *see also Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("a DMCA action under section 1202(b) is not an action for infringement").

### 1. Plaintiffs Plead All Elements of a Section 1202(b) Violation

A claim for a copyright management information ("CMI") violation under the DMCA requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286–87 (C.D. Cal. 2022). Further, the plaintiff must plead the requisite scienter. *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (citations and quotation marks omitted); *see also Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018).

***Existence of CMI.*** Plaintiffs specifically allege that their Works contained CMI including copyright notices, titles of the Works, the names of the creators, and the names of the copyright holders. ¶¶ 180, 191; *see also* ¶¶ 28–30, nn.1–3. Each is recognized as CMI under Section 1202(c). *See* 17 U.S.C. § 1202(c)(2),

(3), (6); *see also Logan*, 2022 WL 14813836, at *8 (finding that the creator's name, title of the work, "and a link to a Creative Commons website . . . setting forth the terms and conditions for use'" constituted CMI). Additionally, Plaintiffs have alleged that CMI was incorporated directly into their Works. ¶ 191; *see also Logan*, 2022 WL 14813836, at *8 ("[I]dentifying information . . .provided immediately beneath each [Work]" "sufficiently close to qualify as CMI.").

**Knowing Removal of CMI.** Plaintiffs allege that Midjourney knowingly removed or altered CMI from Plaintiffs' Works. First, Defendants "train[ed] Stable Diffusion on [Plaintiffs' Works] and design[ed] it to omit any CMI as part of the output." ¶ 183. Plaintiffs have alleged how the diffusion process whereby CMI is altered and removed from the original and a copy is reconstructed. ¶¶ 73–86. Plaintiffs have also alleged how diffusion technique was improved upon and supplemented with conditioning and implemented into Stable Diffusion. ¶¶ 87–90. Plaintiffs have alleged that "Midjourney relies on Stable Diffusion as its underlying software engine for generating images" (¶ 134), and that Midjourney has released versions that use Stable Diffusion (¶ 149). Defendants knew the images used to train the models contained CMI, and that CMI was knowingly removed when training or when the model is outputting. *E.g.*, ¶ 184. And Plaintiffs have alleged that David Holz, Midjourney's founder and CEO, has admitted that Midjourney was trained on "open data sets," i.e., the LAION data sets which include licensed materials including Plaintiffs for which no license has been negotiated. ¶¶ 148–49; *see also* ¶¶ 101–10. That is sufficient for pleading purposes.

**Distribution of CMI.** Plaintiffs allege that "[w]ithout the authority of Plaintiffs and the Class, Defendants distributed CMI knowing that the CMI had been removed or altered without authority of the copyright owner or the law with respect to the Works." ¶ 189. Midjourney in particular proclaims in its terms of service that it retains an "irrevocable copyright license . . . [in the] Assets produced by the service at your direction." ¶ 140; *see* 17 U.S.C. 1202(c)(6).

**Distribution of Copied Works.** Plaintiffs allege Defendants distributed copies of the Works. ¶ 190. For example, Defendants created and stored training images including Plaintiffs and distributed these Copies "for use in training or otherwise creating AI Image Products." ¶¶ 3, 157, *see also* ¶¶ 189–90.

**Knowingly Enabling Infringement.** Plaintiffs allege Defendants knew or had reasonable grounds to know that their distribution would induce, enable, or conceal an infringement, either by itself or its users.

"[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal *his own* infringing conduct satisfies the DMCA's second scienter requirement." *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020); *see also id.* ("Section 1202(b)(3) also encompasses 'an infringement' that, upon distribution 'will . . . conceal' the fact of *that infringement*.") (emphasis added). This so-called second scienter element is evidenced by the allegations of statements by from Midjourney's founder and CEO, David Holz. Holz has confirmed that Midjourney's Training Images are "just a big scrape of the internet" and Midjourney "use[s] the open data sets that are published and train across those." ¶ 148. Those Training Images consisted of licensed images that included Plaintiffs. ¶¶ 148–49; *see also* ¶¶ 101–10. Holz has further asserted that this process is "okay[ ] right now" and "[t]here are no laws specifically about that." ¶ 146 (emphasis removed). This induces Midjourney users to believe they can use Midjourney's output any way they choose, including in ways that disregard or ignore Plaintiffs' rights in their work. By falsely claiming the usage of output is legal, Midjourney is also concealing its own infringement.

Beyond Holz's statements, Midjourney also chose to use Stable Diffusion as the basis for its own AI Image Product. ¶¶ 34, 143, 144–45. And it did so with the knowledge of how the diffusion that underlies the image model works because Stable Diffusion is open source, i.e., Midjourney understood the process of diffusion and how it relies on copying and reproducing original source images.[8] *See* ¶¶ 53; 146–52.

Further, Midjourney, a company that advertises itself as a "diverse research lab" (¶ 138), and in the business of creating AI products, certainly knew or reasonably should have known that images generated by its AI Image Product would not include the CMI of the underlying copyrighted images. *See GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019) ("[It is] reasonable to infer that the defendants—companies engaged in producing and distributing online games—knew that each time they updated or launched a game . . . they reuploaded the entire game library, thereby causing the unlawfully removed or manipulated [CMI] to again be distributed to the public" and defendants "should have known

---

[8] Indeed, it would be bizarre for Midjourney to disclaim knowledge of what Stable Diffusion's open-source code does. By definition, that the code is open source means that the source code is available to the public to use, copy, modify, or distribute. *See Gray v. Novell, Inc.*, No. 8:06-cv-1950-T-33TGW, 2009 WL 425958, at *4, n.7 (M.D. Fla. Feb. 20, 2009) ("Open source software is normally available to the public free of charge or for a nominal fee to cover shipping or online connection charges.") (citing Stefano Comino and Fabio M. Manenti, *Open Source vs Closed Source Software: Public Policies in the Software Market* 2, http://opensource.mit.edu/papers/cominomannti.pdf ( June 2003)).

that their unlicensed distribution of artwork missing [CMI] to their customers could lead their customers to infringe [plaintiff's] copyrights"). It is also reasonable to infer that Defendants knew that removing CMI from the copyrighted Works would conceal its further infringing conduct under the DMCA because such removal of CMI "made it difficult or impossible to contact Plaintiffs and the Class to obtain authority." ¶ 183.

Midjourney attacks Plaintiffs' allegations in three ways: (1) that "Plaintiffs identify no Work from which CMI was altered or removed"; (2) that Plaintiffs did not plead that Midjourney specifically removed or altered CMI; and (3) Plaintiffs did not adequately allege the requisite scienter. MTD at 14–17. None hold water.

### a.     Plaintiffs Identified the Works at Issue

Midjourney claims Plaintiffs have not sufficintly identified the Works from which CMI has been removed is wrong. Plaintiffs have identified with specificity which of their Works have been included in the Training Images. ¶¶ 28–30 & nn.1–3. As alleged by Plaintiffs, Midjourney, by its founder and CEO's admission, is trained on data sets comprised of licensed materials which include Plaintiffs' works. ¶¶ 148–51; *see also* ¶¶ 2, 101–10.

Midjourney also argues that under the DMCA, Plaintiffs are required to plead specific instances were removed from "*exact copies*" of copied work (MTD at 15 (emphasis in original)), Section 1202(b) has no such requirement. *See, e.g.*, *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("[T]he definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work."). In any event, Defendants misinterpret the Complaint and ignore Plaintiffs' allegation that Defendants incorporated their works *in their entirety* into the AI Image Products as Training Images. *See GC2 Inc.*, 391 F. Supp. 3d at 844 (upholding jury verdict on DMCA removal claim where the defendants had used the plaintiff's work "in its entirety, in . . . games later developed by the defendants").

### b.     Plaintiffs' Allegations Are Sufficient to Allow Midjourney to Respond to the Allegations

Midjourney also asserts that Plaintiffs' complaint is a "shotgun" pleading with allegations that are "incoherent" when applied to Midjourney. MTD at 16. The bar, however, is low under Rule 8(a)(2)—all Plaintiffs must do is "'allege the basis of his claim against each defendant . . . to put defendants on

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

sufficient notice of the allegations against them.'" *Doe 1*, 2023 WL 3449131, at *9 (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

Plaintiffs have done so as to *all* Defendants, but especially as to Midjourney. Plaintiffs have alleged ample facts as to Midjourney specifically. *E.g.*, ¶¶ 132–52. Plaintiffs have alleged that Midjourney is based on Stable Diffusion. ¶¶ 34, 149. Midjourney uses the same LAION data sets that Stable Diffusion uses and that Stability paid to develop; a fact that Midjourney itself acknowledges. ¶¶ 101–10; 148–49. These allegations are sufficient to put Midjourney on notice of the basis of Plaintiffs' DMCA claims are as to each Defendant. *See Doe 1*, 2023 WL 3449131, at *10 (finding allegations relating to defendants' joint ownership interest and working together sufficient to provide notice of basis of plaintiffs' claims).

### c.   Plaintiffs Allege Facts Sufficient to Satisfy Section 1202's Double-Scienter Requirement.

Midjourney's final attempt to evade Plaintiffs' DMCA claims likewise fails. At the motion to dismiss stage, a plaintiff need only "allege sufficient facts to support the reasonable inference that the defendant 'knew or had a reasonable basis to know that the removal or alteration of CMI . . . w[ould] aid infringement.'" *Doe 1*, 2023 WL 3449131, at *12 (quoting *Harrison v. Pinterest, Inc.*, No. 20-cv-05290-EJD, 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022)). Midjourney's reliance on *Stevens v. CoreLogic, Inc.* to demand Plaintiffs "make an affirmative showing . . . that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions" is improper at this stage. MTD at 9–10 (quoting 899 F.3d 666, 674 (9th Cir. 2018)). As recognized by a court in this district mere weeks ago, "[a]t the pleading stage, mental conditions generally need not be alleged with specificity," "'[l]anguage in *Stevens* . . . does not indicate otherwise; there the Ninth Circuit held that "a plaintiff bringing a Section 1202(b) claim must make an affirmative showing" of scienter in the *summary judgment* context.'" *Doe 1*, 2023 WL 3449131 at *12 (citing *Logan*, 2022 WL 14813836, at *9 (quoting *Stevens*, 899 F.3d at 674)).

Plaintiffs have done far more than "recite[ ] the *elements* of the DMCA's so-called 'double scienter' requirement" (MTD at 16 (emphasis in original)), Plaintiffs have pled allegations sufficient to demonstrate the adequate "double scienter" as required by *Stevens*. Plaintiffs allege that "Defendants removed or altered CMI from images that are owned by Plaintiffs and the Class by training Stable Diffusion on those images and designing it to omit any CMI as part of the output." ¶ 183. Midjourney based their own image

model product on Stable Diffusion, knowing exactly how it generates images. ¶¶ 34, 144–45, 149. Plaintiffs

describe how diffusion, the process underlying the image models, copies and reconstructs original source

images by adding and removing noise, i.e., by removing and altering CMI. ¶¶ 70–86. Plaintiffs have alleged

how Stability employs those with knowledge of this process and their implications to build Stable

Diffusion. ¶¶ 87–89. Further, Midjourney has acknowledged the dubious legality of the Midjourney

Product—Midjourney's founder and CEO is cagey about the provenance of the training data, and has

admitted Midjourney has not sought the artists' consent or license. ¶¶ 148–50. Indeed, Midjourney's

disclaimer of knowledge of the processes underlying its AI Image Product contradicts its representation as

a "diverse research lab" and its admission that it is based on open source code. ¶¶ 53, 138.

Moreover, Plaintiffs have alleged that "[e]very output image from the system is derived exclusively

from the latest images, which are copies of copyrighted images" including those created by Plaintiffs. ¶ 95.

Defendants made the decision to include licensed material as Training Images, knowing those images

include CMI "such as the creator's name" or "incorporated into the Works in the form of artist's

signatures." ¶ 195. Defendants also know that through the diffusion process, that CMI would be removed.

¶¶ 70–89. Defendants designed their AI Image Product to "omit any CMI as part of the output." ¶ 183; *see*

*also Schneider v. Youtube, LLC*, No. 20-cv-04423-JD, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022)

("[t]he plausible inference . . . is that [the defendant] removed the CMI from plaintiffs' works with

knowledge that doing so carried a 'substantial risk' of inducing infringement."). Without that CMI, users

cannot know about the original works the output was based on and what obligations come with using it. *See*

¶¶ 192–93. These allegations are sufficient under Rule 8 to show Midjourney knew its removal of CMI led

to a substantial risk of inducing infringement. *See*, *e.g.*, *Doe 1*, 2023 WL 3449131, at *13; *Batra v. PopSugar,*

*Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019) (allegation that omission of

Instagram sidebar that "features [CMI]" led to "plausible inference from Plaintiff's allegations . . . that

[Defendants] removed the CMI from Plaintiff's Instagram posts knowing that removing the CMI would

help to conceal the alleged infringement of Plaintiff's images."); *Schneider*, 2022 WL 3031212, at *2.

### D.   Plaintiffs Have Pled Right of Publicity Claims (Counts IV & V)

A common law cause of action for right of publicity has four elements: "(1) the defendant's use of

the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage,

commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). The statutory right of publicity, as set forth in California Civil Code § 3344(e), requires that the plaintiff must also "allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose in additional to proving the elements of the common law cause of action." *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1095 (E.D. Cal. 2009) (citation omitted). Plaintiffs can pursue both claims simultaneously. Cal. Civ. Code § 3344(g). Here, Plaintiffs have pled facts sufficient to state a claim with respect to both their statutory and common law right of publicity claims. Notably, Plaintiffs' claims are based upon Midjourney's misuse of their *names*.

### 1.    Plaintiffs Allege Midjourney Knowingly Misappropriated their Names

The same facts are sufficient to show that defendants used plaintiff's identity and appropriated it to defendant's advantage, commercially or otherwise. These facts are also sufficient to satisfy the additional statutory knowledge requirement. The Complaint explains how Midjourney used specific Class members' names to attract customers and "gain[ ] a commercial advantage." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 420 (1983). Through permitting prompts based on the use of the term "in the style of," Stability cued users to insert artist names. The functionality "to create images based on 'in the style' prompts" was "prominent and used throughout Defendants' apps, website, and social media posts." ¶ 208. And Midjourney does not dispute that it knowingly trained its AI Image Products to recognize and respond to artist's names in prompts. *See*, *e.g.*, ¶¶ 171–72, 202–03.

Midjourney disputes claiming that it is not Midjourney that "uses" Plaintiffs' names when they are entered into prompts. This claim is inconsistent with Plaintiffs' allegations. Plaintiffs do not claim that the use of Plaintiffs' names by Midjourney users in text prompts is the basis for its right of publicity claims. Rather, Plaintiffs allege that Midjourney designed its AI Image Products to respond to the names of any artist included in its training data. ¶ 203 ("Defendants' AI Image Products can be directed to prioritize inclusion of specific artists' Works by invoking the name of the artist or artists. This was a function designed and promoted by Defendants as a product feature.").

Midjourney further asserts that it does not promote the ability of its AI Image Product to respond to specific artist's names. But this ignores Plaintiffs' allegations. Plaintiffs allege that Midjourney indeed promoted the ability of its AI Image Product to respond to specific artists' names as a feature. ¶ 208

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

("Defendants[ ] emphasized the ability of AI Image Products to create images based on "in the style" prompts that included specific Class members' names. This functionality was prominent and used throughout Defendants' apps, website, and social media posts.").

Midjourney claims that it has not advertised this feature of its product *at all*. MTD at 18. Midjourney seeks to dispute Plaintiffs' well-pleaded allegations by providing extrinsic evidence in support of its contention. ECF No. 53. Plainly, this is improper on a motion to dismiss and instead highlights a disputed issue of fact suitable for resolution at summary judgment or at trial. As explained in Plaintiffs' separate opposition to Midjourney's Request for Judicial Notice, Midjourney's evidence does not support the fact it seeks to support nor is the evidence complete or accurate.

### 2.    Plaintiffs Allege Lack of Consent and Resulting Injury

Plaintiffs have properly alleged consent and injury. The Complaint alleges that "[a]t no time did Plaintiffs consent to Defendants' use of their names" to promote Defendants' AI Image Product. ¶ 202. Additionally, the Complaint alleges that "[b]ecause of Defendants' unlawful appropriation of Plaintiffs' names, Plaintiffs have suffered injury" in the form of harm to the "goodwill that is associated with their names" and "the value of Plaintiffs' name recognition – and thus the value of their art itself." ¶ 212. "[C]ourts have long recognized that a person's 'name, likeness, or other attribute of identity can have commercial value,' even if the individual is relatively obscure." *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 807 (N.D. Cal. 2011). An allegation that the defendant exploited the plaintiff's name and identity "for commercial gain" denotes the "commercial value" of that name. *Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL 1870057, at *3 (N.D. Cal. Feb. 9, 2023). Other than claiming that Plaintiffs' allegations are vague and conclusory, Midjourney does not argue that these requirements are not met. Thus, Plaintiffs have established that the Complaint sufficiently pleads all the required elements of both right of publicity claims against Midjourney.

### 3.    Plaintiffs' Right of Publicity Claims Are Not Preempted

Midjourney incorrectly claims that Plaintiffs' right of publicity claims are preempted by the Copyright Act. That is incorrect. The Ninth Circuit uses a two-part test to analyze whether the Copyright Act preempts a state law such as Cal. Civil Code § 3344. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006). To analyze whether the Copyright Act preempts a state law claim, a court must

first assess "whether the subject matter of [the] right of publicity claims comes within the subject matter of copyright." *Id.* If it does, the court next determines "whether the rights [the plaintiff] asserts under California law are equivalent to those created under the Copyright Act." *Id.* Importantly, "[a] person's name or likeness is not a work of authorship within the meaning of [the Copyright Act]." *Downing,* 265 F.3d at 1004.

Midjourney's preemption argument misreads the Complaint. Plaintiffs' right of publicity claims are grounded in protection of the use of Plaintiffs' *names*—not their *styles*, as Midjourney asserts. The Complaint explicitly and repeatedly alleges Midjourney that used Plaintiffs' names and identities in connection with its "advertising and sale of [its] products and services." ¶ 209. Therefore, Plaintiffs' claims are *not* preempted, because names are not copyrightable works. *Downing,* 265 F.3d at 1004.

Midjourney relies heavily on *Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017). But *Maloney* is inapposite. In *Maloney,* the plaintiffs were student athletes who appeared in photographs owned by the NCAA. *Id.* at 1007. T3Media contracted with the NCAA to "store, host, and license . . . thousands of photographs." *Id.* at 1007. The *Maloney* plaintiffs never contended "that their likenesses were ever used on merchandise or in advertising." *Id.* at 1011. Thus, the *Maloney* court characterized the plaintiffs' claims as a "thinly disguised copyright claim . . . where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use." *Id.* at 1016. Here, Plaintiffs' claims are vastly different. Plaintiffs here do not "seek[ ] to use the right of publicity simply to prevent 'publication' of an artistic, visual work," *id.* at 1013, but rather seek redress for the Defendants' use of their names. ¶ 202.

**E.     Plaintiffs Have Pled an Unfair Competition Claim (Count VI)**

Plaintiffs adequately pled an unfair competition claim under (1) 15 U.S.C. § 1125 (i.e., the Lanham Act); (2) California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*; "UCL"); and (3) the common law.

**1.     Plaintiffs Have Pled an Unfair Competition Claim under the Lanham Act**

Midjourney's AI image outputs violate the Lanham Act in two ways. First, the origins of this output are falsely designated in a manner likely to cause confusion, mistake, or deception as to their origin, sponsorship, or approval of the AI output by the Plaintiffs. 15 U.S.C §1125(a)(1)(A); *United Tactical Sys., LLC v. Real Action Paintball, Inc.,* 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015). Second, Plaintiffs have been

1    or are likely to be damaged by these acts in a way that does not implicate copyright. *Id.*

2        Midjourney incorrectly asserts that Plaintiffs have failed to allege "confusion" or "false designation

3    of origin." On the contrary, Plaintiffs have alleged the requisite confusion and damage required to plead a

4    Lanham Act claim regarding the real origins of the output of Defendant's AI Image Product. *See, e.g.*, §§ 8,

5    212–22. Specifically, Defendant's AI Image Products like the Midjourney Product associates Plaintiffs'

6    names with other personal data with AI learning processes. This has created a "proliferation of AI-

7    generated art created without Plaintiffs' consent but associated with Plaintiffs' names." ¶ 212.

8        **2.    Plaintiffs Have Alleged a Claim Under California's UCL**

9        California's UCL "provides a cause of action for business practices that are (1) unlawful, (2) unfair,

10   or (3) fraudulent." *Backhaut v. Apple, Inc.,* 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. &

11   Prof. Code § 17200). Plaintiffs allege facts that satisfy all three of these prongs.

12       Plaintiffs' UCL claim under the "unlawful" prong is predicated on unlawful acts independent of,

13   and causes of action in addition to, Plaintiffs' copyright-related claims, including violations of the DMCA.

14   *See Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) ("By proscribing 'any unlawful'

15   business act or practice, the UCL 'borrows' violations of other laws and treats them as unlawful practices

16   that the UCL makes independently actionable."). Midjourney's protest that Plaintiffs have not pled a

17   predicate violation (MTD at 20) is thus misplaced.

18       Second, Plaintiffs may assert a claim under the "unfair" prong of the UCL under an independent

19   alternate theory. *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, No.

20   C 04-05368 SI, 2006 WL 3218719, *4 (N.D. Cal. Nov. 7, 2006). UCL claims seeking equitable relief can be

21   alleged in the alternative. *Byton N. Am. Co. v. Breitfeld*, No. CV 19-10563-DMG (JEMx), 2020 WL

22   3802700, at *9 (C.D. Cal. Apr. 28, 2020). In general, plaintiffs may plead alternative claims, even if

23   inconsistent. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007). UCL claims can

24   proceed under the "unfair" prong where plaintiff alleges an immoral, unethical, oppressive or

25   unscrupulous business practice that causes injury to consumers that outweighs the utility of the practice.

26   *Zeiger v. WellPet LLC,* 304 F. Supp. 3d 837, 852 (N.D. Cal. 2018). Plaintiffs have alleged Midjourney's

27   unlawful misappropriation and copying of their art for their own commercial gain without attribution of

28   permission. *See, e.g.*, ¶¶ 1,3, 58, 73-86, 171–72, 183, 202–03. That is an unfair business practice.

Plaintiffs' allegations also suffice under the "fraudulent" prong. A UCL claim proceeding under the "fraudulent" prong may proceed by showing that "members of the public are likely to be deceived" by the challenged AI image output wrongfully associated with their names. *Garcia v. Sony Computer Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1062 (N.D. Cal. 2012). Here, Plaintiffs have alleged Midjourney's direct deception and how AI image output is likely to deceive and confuse. ¶¶ 203–22.

### 3.     Plaintiffs Pled a Common Law Unfair Competition Claim

Plaintiffs have adequately alleged the elements of a cause of action for common law unfair competition under California law: (1) that Plaintiffs had invested substantial time, skill or money in developing their property (*see, e.g.*, ¶¶ 28–30); (2) that Defendants had appropriated and used Plaintiffs' property at little or no cost (*see, e.g.*, ¶¶ 155–59; 208); (3) that Defendants' appropriation and use of Plaintiffs' property was without authorization or consent (*see, e.g.*, ¶¶ 155–59, 202, 212); and (4) that Plaintiffs can establish that they have been injured by Defendants' conduct (*see, e.g.*, ¶¶ 168, 177, 202, 212). *City Sols. Inc. v. Clear Channel Commc'ns, Inc.,* 365 F.3d 835, 842 (9th Cir. 2004).

### F.     Plaintiffs Pled a Claim for Declaratory Relief under 28 U.S.C. § 2201(a) and Cal. Code Civ. Proc., § 1060 (Count VII)

A claim for declaratory relief requires a dispute that is: (1) "definite and concrete"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character." 28 U.S.C. § 2201; *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014). Here, Plaintiffs' art is already being used as part of AI Image Products. Therefore, this dispute is ripe for declaratory relief.

Midjourney incorrectly argues that Plaintiffs may not obtain declaratory relief if the Court finds sufficient the allegations regarding the underlying claims on which that request for declaratory relief is based. To the contrary, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed. R. Civ. P. 57. This Court can "entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies the subject matter jurisdictional prerequisites." *Md. Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178, 1183 (C.D. Cal. 2014) (internal citations and quotation marks omitted).

Further, the type of declaratory relief Plaintiffs seek does not duplicate relief available under the statutes pled in their other causes of action. ¶ 238. For instance, the Court could declare unlawful

particular aspects of how AI stores copyrighted material, or how AI removes copyright-management information, or the problematic ways AI Image Products uses artists' names.[9]

### G.   Midjourney's Motion to Strike Class Allegations is Meritless and Premature

Midjourney argues that "there is no conceivable class that might satisfy the requirements of Rule 23 in this case," ECF No. 52 at 21. This argument is premature and meritless. Motions to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.*

#### 1.   Defendant's Motion to Strike Is Premature

As Midjourney concedes, this Court "prefer[s] to address class certification issues after the pleadings are settled and discovery finished." *Rice-Sherman v. Big Heart Pet Brands, Inc.,* No. 19-cv-03813-WHO, 2020 WL 1245130, at *15 (N.D. Cal. Mar. 16, 2020). Even if a motion to strike class allegation is considered at the pleading stage, it may only be granted under "rare circumstances" where "the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014). Furthermore, "[e]ven if the class definition is overbroad as alleged, it is premature to strike it at this stage as plaintiffs 'should at least be given the opportunity to make the case for certification based on appropriate discovery.'" *Rice-Sherman*, 2020 WL 1245130, at *15. Ordinarily, determination of whether class treatment of claims is appropriate depends on discovery and a developed record.

Here, Plaintiffs' Complaint describes two classes pertaining to Midjourney, identical except that one seeks injunctive relief and the other damages. ¶ 41. Midjourney's decision to base its consumer AI

---

[9] Midjourney's cited cases are inapposite. In *Mangindin v. Wash. Mut. Bank,* 637 F. Supp. 2d 700 (N.D. Cal. 2009), the court had also dismissed all the plaintiff's other meritless claims and found the request for declaratory relief redundant only "upon review of plaintiffs' other causes of action." *Id.* at 707. In *Tech. & Intell. Prop. Strategies Grp. PC v. Fthenakis,* No. C 11-2373 MEJ, 2011 WL 3501690 (N.D. Cal. Aug. 10, 2011), the declaratory relief sought was in a counterclaim over the same contract that was already being litigated. *Id.* at *9.

Image Product on Stable Diffusion creates a set of facts common to Plaintiffs and similarly situated artists. ¶¶ 65–110, 132–52. But much of the information related to the scope of the works infringed is primarily in Midjourney's control—which will be the subject of discovery. It would plainly be premature for the Court to strike the class allegations. *See Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1244357, at \*10 (C.D. Cal. Mar. 16, 2020) ("'Striking class allegations prior to a formal certification motion is generally disfavored due to the lack of a developed factual record.'").

### 2.    Defendant's Motion to Strike is Meritless

Midjourney argues that "Plaintiffs cannot construct any workable damages class in which common issues predominate" because "there are myriad permutations of facts and law that must be considered." ECF No. 52 at 25. As Plaintiffs have alleged, Midjourney copied the copyrighted artwork of Plaintiffs and the Class members and used them as training images. ¶ 34. Plaintiffs adequately allege facts sufficient to satisfy each element of Rule 23(a). Plaintiffs have also identified a myriad of common questions of law and fact that predominate over any individual ones. *E.g.*, ¶¶ 44–45. And, indeed proof of each of them will be based on common evidence of Defendants' conduct broadly applicable to the Class. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668–69 (9th Cir. 2022). Moreover, the presence of individualized issues rarely pose an impediment to class certification.[10] *See id.* ("'The presence of individualized damages issues' does not preclude a court from certifying a class because '[c]lass-wide proof is not required for all issues'") (quoting *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 970, 988 (9th Cir. 2015); *see also* 2 W. Rubenstein, Newberg and Rubenstein on Class Actions § 4:54 (6th ed. 2022) ("cases in which individual damage concerns predominate and defeat certification 'rarely, if ever, come along"). Midjourney seems to be arguing that their illegal conduct is so broad and effects so many artists that no class action would ever be possible. That is not the case. In fact, the class action procedures provide significant benefits in terms of case management and the ensuring that those injured by the wrongful conduct here will obtain the redress to which they are entitled.

Midjourney cites three cases that are distinguishable and inapposite here. First, *Vulcan Golf LLC, v. Google Inc.*, 254 F.R.D. 521 (N.D. Ill. 2008) was a class-certification decision where *third parties* were the

---

[10] For instance, both the Copyright Act and the DMCA provide for statutory damages to victims of infringement and Plaintiffs and the putative damages class have asked for them. ¶ 240(e).

infringers and the defendant was not. Here, by contrast, Plaintiffs have alleged that Midjourney is itself an infringer. ¶¶ 34, 65–110, 132–52. Second, *FPX LLC v. Google, Inc.* 276 F.R.D. 543, 551 (E.D. Tex. 2011) concerned a "highly fact-intensive analysis involved in determining the validity of a registered trademark." Here, Plaintiffs' case is not about registered trademarks. Third, *Football Ass'n Premier League Ltd. v. YouTube, Inc.,* 297 F.R.D. 64, 65–66 (S.D.N.Y. 2013), concerned the website YouTube, where creators *voluntarily* upload video material. Here, by contrast, the creators (Plaintiffs) allege that Midjourney deliberately misappropriated their names and artworks from elsewhere on the internet without Plaintiffs' consent. ¶¶ 34, 65–110, 132–52.

### H.    Plaintiffs Should be Granted Leave to Amend

Courts in this district freely grant leave to amend where the claim could be cured by additional allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). This policy is "applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). But courts "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel . . . since it is important that new legal theories be explored and assayed in the light of actual facts." *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985).

## IV.    CONCLUSION

For the foregoing reasons, Midjourney's motion to dismiss should be denied. Should the Court determine that dismissal of any counts should be granted, the Court should do so without prejudice and with leave to amend.

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE

Dated: June 2, 2023

By:      /s/ Joseph R. Savri
               Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                    czirpoli@saverilawfirm.com
                    cyoung@saverilawfirm.com
                    lkessler@saverilawfirm.com
                    eabuchanan@saverilawfirm.com
                    tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:          mb@buttericklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile:  (612)339-0981
Email:      bdclark@locklaw.com
                lmmatson@locklaw.com
                echang@locklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

PLAINTIFFS' OPP. TO DEFENDANT MIDJOURNEY, INC.'S MTD AND MOTION TO STRIKE