Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                lkessler@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:          mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs Sarah Andersen, Kelly McKernan,
Karla Ortiz, and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al., | Case No. 3:23-cv-00201-WHO |
| Individual and Representative Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** |
| STABILITY AI LTD., et al., | |
| Defendants. | Date:     July 19, 2023 |
| | Time:     2:00 pm |
| | Location: Courtroom 2 — 17th Floor |
| | Before:   Hon. William H. Orrick |

3:23-cv-00201-WHO

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................................... 2

III.  ARGUMENT ............................................................................................................ 4

    A.  Defendants Have Failed to Show That Plaintiffs' Right of Publicity Claims
        Arise from Protected Action............................................................................. 6

        1.  Defendants Have Failed to Demonstrate Closeness to the Asserted
            Public Interest ........................................................................................ 7

        2.  Defendants' Speech Is Unprotected Commercial Speech ..................... 8

    B.  Plaintiffs Have a Probability of Success on their Right of Publicity Claims............... 12

    C.  The Right of Publicity Claims Are Not Preempted....................................................15

    D.  Defendant's Commercial Speech (Including False Statements) Using
        Plaintiffs' Identities to Sell Derivative Works Does Not Support First
        Amendment Protection. ..................................................................................17

IV.   CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

**Federal Cases**

*Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) ................................... 4

*Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107 (9th Cir. 2021) ...................................... 9

*Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL 1870057 (N.D. Cal. Feb. 9, 2023) ...................................................................... 14

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) ............................................. 9

*Bosley v. Wildwett.com*, 310 F. Supp. 2d 914 (N.D. Ohio 2004) ............................... 8, 10

*Browne v. McCain*, 611 F. Supp. 2d 1062 (C.D. Cal. 2009) .................................. 7, 12, 17

*Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ............................................................................... 14

*Camacho v. Control Grp. Media Co., LLC*, No. 21-CV-1954-MMA (MDD), 2022 WL 3093306 (S.D. Cal. July 18, 2022) ...................................................... 10, 11

*Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018) ............................ 4

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980) ................................................................................... 10, 11

*Commonwealth Energy Corp. v. Inv. Data Exch., Inc.*, 110 Cal. App. 4th 26 (2003) ............... 5, 6, 12

*CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136 (9th Cir. 2022) ............................ 4

*Davis v. Elec. Arts, Inc.*, 775 F.3d 1172 (9th Cir. 2015) ............................................ 5, 17

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001) ........................... 12, 13, 16

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) ........................ 8

*Est. of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997 (N.D. Cal. 2012) .................................................................................... 18

*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008) ....................................... 9

*Fraley v. Facebook Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) .................................. 14

*Glob. Plasma Sols., Inc. v. IEE Indoor Env't. Eng'g*, 600 F. Supp. 3d 1082 (N.D. Cal. 2021) ................................................................................... 7

*Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) ..................................................... 4

*Hart v. Elec. Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013) ................................................. 17

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ......................................... 12, 17

*Kasky v. Nike, Inc.,* 27 Cal.4th 939 (2002) ............................................................. 8, 9

*Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019) ......................................................... 4

*Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865 (W.D. Wash. 2021), *rev'd on other grounds,* 38 F.4th 824 (9th Cir. 2022) .......................................................... 11

*L.A. Taxi Coop, Inc. v. Indep. Taxi Owners Assn of L.A.*, 239 Cal. App. 4th 918 (2015) ........................................................................................................... 8

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) .......................................................... 4

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir 2023) ................................................... 4, 5, 12

*Laws. v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006) .................................. 16

*Michaels v. Internet Ent. Grp. Inc.*, 5 F. Supp. 2d 823 (C.D. Cal. 1998) ...................... 12

*Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010) ..................................... 12

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ......................................................... 5

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268 (9th Cir. 2013) .................................................................................................. 17, 18

*Penrose Hill, Ltd. v. Mabrey,* 479 F. Supp. 3d 840 (N.D. Cal. 2020) .............................. 7

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018) ...................................................................................................... 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) .............. 4

*Solano v. Playgirl, Inc.*, 292 F.3d 1078 (9th Cir. 2002) ........................................... 9, 10

*U.S. ex rel. v. Lockheed Missiles & Space Co.,* 190 F.3d 963 (9th Cir. 1999) .................. 5

*Verizon Delaware, Inc. v Covad Commc'ns Co.,* 377 F.3d 1081 (9th Cir. 2004) .............. 18

*Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) ............................................ 13

*White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395 (9th Cir. 1992) .............................. 13

*Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089 (E.D. Cal. 2009) ..................... 13

*Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977) ....................................... 8

**State Cases**

*Baral v. Schnitt*, 1 Cal.5th 376 (2016) ........................................................................ 4, 6

*Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995 (2021) .................................................. 5

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387 (2001)......................... 17, 18

*FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133 (2019) ...................................... 4, 6, 7

*Navellier v. Sletten*, 29 Cal.4th 82 (2002) ..................................................................... 12

*Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664 (2010).......................................... 9

*USA Waste of California, Inc. v. City of Irwindale*, 184 Cal. App. 4th 53 (2010) ............ 4, 12

**Federal Statutes**

17 U.S.C. § 102 .......................................................................................................... 16

17 U.S.C. § 103............................................................................................................ 16

17 U.S.C. § 301.................................................................................................... 2, 15, 16

**State Statutes**

Cal. Civ. Code § 3344 ............................................................................................ 9, 12, 14

Cal. Code Civ. Proc. § 425.16............................................................................... *passim*

Cal. Code Civ. Proc. § 425.17 ..............................................................................1, 6, 8

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 4, 5

Fed. R. Civ. P. 12........................................................................................................ 4, 5

Fed. R. Civ. P. 15 .......................................................................................................... 18

Fed. R. Civ. P. 56 ....................................................................................................... 4, 18

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

# I.   INTRODUCTION

Through their anti-SLAPP motion, Defendants attempt to avail themselves of a state law special motion to dismiss procedure, California Code of Civil Procedure section 425.16, known as the anti-SLAPP statute.[1] The California legislature created this procedure for opposite purposes than those present here. It did so to combat meritless lawsuits brought against persons for exercising their constitutional rights of petition and freedom of speech. SLAPPs (or "Strategic Lawsuits Against Public Participation") are generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so. It does so by making it easier to dismiss defamation suits at an early stage of the litigation.

The cynical appropriation of the anti-SLAPP statute by the very corporate interests it was intended to regulate motivated the California Legislature to further enact section 425.17, which states, "[t]he Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16." Plaintiffs here are artists who seek to vindicate their legal rights against companies who are, among other things, misappropriating and profiting off of their art and names with their AI Image Products. An artist suing a corporation for copyright infringement and unauthorized misuse of their name is simply not a SLAPP in any way.

Defendants' motion does not pass muster under sections 425.16 and 425.17. First, Defendants argue that their conduct, the sale of AI-Image Product, constitutes protected speech under section 425.16. This is false. Defendants' conduct is paradigmatic commercial speech, which is afforded less protection than noncommercial speech. Moreover, Defendants' computer-generated speech is misleading and false commercial speech, which is afforded *no* protection. Defendants' anti-SLAPP thus fails at the first prong.

---

[1] Defendants Midjourney and Stability join Defendant DeviantArt's anti-SLAPP motion. ECF Nos. 54 & 57.

Second, Defendants assert that Plaintiffs have not demonstrated a possibility of prevailing on the merits. But here too, Defendants are wrong. The bar is low to survive an anti-SLAPP—Plaintiffs need only demonstrate a mere possibility of success. And Plaintiffs have easily met that bar. Plaintiffs have alleged the requisite elements of both common law and statutory rights of publicity in their well-pleaded Complaint. Defendants' argument that Plaintiffs' claims are preempted by the Copyright Act is based on a misreading of Plaintiffs' Complaint. Plaintiffs' right of publicity claim is based on how Defendants' AI Imaging Products incorporate and utilize Plaintiffs' *names*, not in their particular styles, as Defendants assert. And the Ninth Circuit has made clear that such claims are ***not*** preempted.

Defendants' last-ditch effort to dodge Plaintiffs' right of publicity claim is based on the argument that their conduct is excused because what their AI Image Product produces is supposedly "transformative" and thus protected by the First Amendment. But whether a use is "transformative" is an affirmative defense, and Defendants forget that they bear that burden—a burden they do not even attempt to meet.

## II.   FACTUAL BACKGROUND

Defendants are in the business of developing generative artificial-intelligence-based image generation products ("AI Image Products"). ¶¶ 33-35.[2] AI Image Products rely entirely on training images (which are images or images paired with a descriptive text captions or metadata) that is included for the machine-learning process. ¶ 25. Training images are typically gathered through web scraping, the process by which images are harvested, copied or extracted from websites using automated tools such as bots or web crawlers. ¶¶ 26, 55-59, 101-04. Defendants' AI Image Products rely on billions of training images, almost all of which are copied without the artists' permission and without compensation. ¶¶ 2-3, 57-58.

In August 2022, Stability AI released Stable Diffusion, which is an AI Image Product that produces images in response to text prompts, under an open-source license, i.e., users may download and use Stable Diffusion's software and associated machine-learning models according

---

[2] "¶ ___" and "Ex. ___" citations are to the Class Action Complaint, Case No. 23-cv-00201 (N.D. Cal. Jan. 13, 2023), ECF No. 1 unless otherwise indicated.

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

to the terms of the open-source license. ¶¶ 52-54. Stability scraped (i.e., copied) over five billion images from websites, including possibly millions from DeviantArt, as training images for Stable Diffusion without the consent of the creators or the websites that hosted those images.[3] ¶¶ 57, 63, 116. Once prompted to produce images by its users, Stable Diffusion uses the training images and associate terms and names to produce output images through a mathematical software process that interpolates the data from latent copies of art, themselves generated from copying and compressing source images. ¶¶ 4, 68-95. These output images, though seemingly new, are based entirely on the training images and are derivative works of Stable Diffusion's training images. ¶¶ 94-97.

All three Defendants incorporate Stable Diffusion into their respective commercial, for-profit AI Image Product. Stability offers DreamStudio, which relies on Stable Diffusion to generate images from text prompts and is sold for profit. ¶¶ 55-56. Midjourney offers its Midjourney Product which is based on Stable Diffusion and sold for commercial profit. ¶¶ 34, 65, 137. DeviantArt offers DreamUp, which is based on Stable Diffusion and is sold for commercial profit. ¶¶ 115, 129.

Defendants designed their software to prioritize the inclusion of specific artists' Works when a user types in an artist's name to create an output image in the specific and unique style of that artist. ¶¶ 202-08. Defendants misappropriated artists' names to advertise and promote their AI Image Products and their ability to output images in the unique style of a specific artist. ¶¶ 202-03, 205-07, 220-22. Plaintiffs have no control over images associated with either their identities or convincingly being passed off as created by them, currently being created by third parties utilizing their names in Defendants' AI Imaging Products.

While Plaintiffs have already sustained economic loss and other injuries from the harmful effects of this copying, Defendants have profited richly and benefitted commercially. ¶¶ 7-8, 60;

---

[3] Many of these images came from datasets released by LAION (acronym for "Large-Scale Artificial Intelligence Open Network"), a nonprofit organization paid by Stability AI to help compile Training Images for their AI Image Products. ¶¶ 100-07. DeviantArt is the source of a significant portion of LAION images, and there are likely 3.3 million images from Deviant Art in LAION. ¶ 110.

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

*see also* ¶¶ 130 (DeviantArt altered its terms of service to explicitly permit scraping for training AI after artist community's revolt); 152 (Midjourney CEO David Holz commenting that "we're already profitable"). For instance, Defendants tell their users that they can enter an artist's name into Defendants' AI Image Products and generate images that appear to be created by that artist, thanks to Stability AI's use of Training Images. ¶ 171. Imposters have purchased Defendants' output images and resold them as counterfeit originals, to Plaintiffs' detriment. ¶ 173.

## III.   ARGUMENT

California's "anti-SLAPP law was enacted 'to protect nonprofit corporations and common citizens 'from large corporate entities and trade associations' in petitioning government.'" *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 143 (2019). As relevant here, protected acts include statements or conduct made "in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4). Section 425.16 does not completely insulate a defendant's speech, however. It only provides a mechanism "for weeding out, at an early stage, *meritless* claims arising from protected activity." *Baral v. Schnitt*, 1 Cal.5th 376, 384 (2016). Defendants' cynical attempt to utilize anti-SLAPP law meant to protect consumer commercial speech from this very type of corporate legal bullying must be rejected.[4]

"In ruling on an anti-SLAPP motion, courts are to use a two-step process." *Langer v. Kiser*, 57 F.4th 1085, 1105 (9th Cir 2023). First, the court must determine "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity" under the statute, such as "protected speech or petitioning." *USA Waste of California,*

---

[4] It is an unsettled question of law whether state anti-SLAPP statutes conflict with Rules 8, 12 and 56 of the Federal Rules of Civil Procedure after the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Indeed, the federal circuit courts are divided on the question after *Shady Grove. Compare La Liberte v. Reid*, 966 F.3d 79, 86-88 (2d Cir. 2020) (finding section 425.16 conflicts with the Federal Rules) *with CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136 (9th Cir. 2022) (finding no conflict between section 425.16 and the Federal Rules); *cf also Klocke v. Watson*, 936 F.3d 240, 244-49 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349-57 (11th Cir. 2018); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333-37 (D.C. Cir. 2015); *Godin v. Schencks*, 629 F.3d 79, 83 (1st Cir. 2010). It is Plaintiffs' position that the Court here should not apply section 425.16 to Plaintiffs' detriment because it is a state procedure which conflicts with the Federal Rules, promulgated under the Rules Enabling Act and that the motion to strike under section 425.16 should be denied.

*Inc. v. City of Irwindale*, 184 Cal. App. 4th 53, 61, (2010) (citations omitted); *accord Langer*, 57

F.4th at 1105. "[C]ourts should analyze each claim for relief—each act or set of acts supplying a

basis for relief, of which there may be several in a single pleaded cause of action—to determine

whether the acts are protected . . . ." *Bonni v. St. Joseph Health Sys.*, 11 Cal.5th 995, 1010 (2021).

If the court finds defendant meets this threshold, it moves to the second part of the analysis,

which is to "determine whether the *plaintiff* has demonstrated a probability of prevailing on the

claim." *Commonwealth Energy Corp. v. Inv. Data Exch., Inc.*, 110 Cal. App. 4th 26, 31 (2003)

(citations omitted). "Dismissal is proper only where there is no cognizable legal theory or an

absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d

729, 732 (9th Cir. 2001).[5]

"Although the anti-SLAPP statute 'places on the plaintiff the burden of substantiating its

claims, a defendant that advances an affirmative defense to such claims properly bears the burden

of proof on the defense." *Davis v. Elec. Arts, Inc.*, 775 F.3d 1172, 1177 (9th Cir. 2015) (citing

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 767

(2005)). "[Defendants] ha[ve] the burden of establishing the transformative use defense as a

matter of law." *Id.* (citing *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d

1268, 1274 (9th Cir. 2013)); *see also, id.* ("On its other affirmative defenses, EA has the burden of

establishing 'a probability of prevailing'").

Defendants' anti-SLAPP motion, which only attacks Plaintiffs' right of publicity claims,

should be denied for two reasons. ***First***, Defendants fail to make the required threshold showing

that their misconduct qualifies for the protection of the statute. ***Second***, Plaintiffs have pleaded

sufficient allegations demonstrating a probability of prevailing on their right of publicity claims

---

[5] In the Ninth Circuit, "[i]f a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted.'" *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) (quoting *Z.F. v. Ripon Unified Sch. Dist.*, 482 Fed. App'x 239, 240 (9th Cir. 2012)); *see also U.S. ex rel. v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999) (describing a motion to strike under section 425.16 as "akin to a motion to dismiss").

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

and that those claims are not preempted. Furthermore, the First Amendment does not bar Plaintiffs' right of publicity claims because they advance a substantial government interest in protecting citizens from unconsented commercial exploitation, dilution, or unwanted association of their names and identities with AI-generated images.[6]

### A.   Defendants Have Failed to Show That Plaintiffs' Right of Publicity Claims Arise from Protected Action.

Defendants only rely on the so-called "catchall provision" that covers conduct "in connection with a public issue or an issue of public interest." ECF No. 50 at 9 (citing Cal. Code Civ. Proc. § 425.16(e)(4)). In articulating what constitutes a matter of public interest, courts consider such topics as whether: (1) the activity precipitating the claim "was a person or entity in the public eye"; (2) the activity "could affect large numbers of people beyond the direct participants"; and (3) the activity "involved a topic of widespread public interest." *Commonwealth Energy Corp.*, 110 Cal. App. 4th at 33; *see FilmOn.com Inc.*, 7 Cal.5th at 145-46. "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Baral*, 1 Cal.5th at 394. "[T]o the extent any acts are unprotected, the claims based on those acts will survive." *Bonni*¸11 Cal.5th at 1012.

---

[6] Section 425.17 makes it clear that section 425.16 cannot be turned on its head and invoked by corporate interests where: (1) "[t]he plaintiff does not seek any relief greater than or different from the relief sought for …a class of which the plaintiff is a member . . ."; (2) "the action, if successful, would enforce an important right affecting the public interest . . ."; and (3)"[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." Cal. Code Civ. Proc. § 425.17(b)(1)-(3). Moreover section 425.17 states that section 426.16 "does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services" where the "statement or conduct consists of representations of fact about a person's business operations, goods or services that is made for the purpose of . . . promoting, or securing sale . . . or commercial transaction in, the person's goods or services" and where the "intended audience" is an actual or potential customer or person likely to influence an actual or potential customer. Cal. Code Civ. Proc. § 425.17(c)(1)-(2). All these conditions are met here.

1

        **1.**      **Defendants Have Failed to Demonstrate Closeness to the Asserted Public Interest**

2

3

        For right of publicity claims in particular, courts require "some degree of closeness between the challenged statements and the asserted public interest." *Penrose Hill, Ltd. v. Mabrey,*

4

479 F. Supp. 3d 840, 848 (N.D. Cal. 2020); *see also FilmOn.com Inc.*, 7 Cal.5th at 150 ("the

5

catchall provision demands 'some degree of closeness' between the challenged statements and

6

the asserted public interest"). Furthermore, "a mere finding of 'public interest' alone does not

7

automatically exempt a defendant on a right of publicity claim." *Browne v. McCain*, 611 F. Supp.

8

2d 1062, 1071 (C.D. Cal. 2009).

9

        Defendants' motion does not identify how Defendants and their computer-generated AI

10

images that rely on unauthorized use of individual artists and their identities, relate to public

11

conversations about issues in the art world, or to public conversations about matters of public

12

interest, let alone demonstrate a close connection or contribution to public interest conversations.

13

*See Glob. Plasma Sols., Inc. v. IEE Indoor Env't. Eng'g*, 600 F. Supp. 3d 1082, 1089 (N.D. Cal.

14

2021) ("In order to prevail on an anti-SLAPP motion, the movant must first make a *prima facie*

15

showing, through the pleadings themselves and supporting affidavits, that the statement or

16

conduct underlying the legal claims against it qualifies for protection under the anti-SLAPP

17

statute."). Computer-generated AI images created from unauthorized copies of copyrighted work

18

are not the type of unfettered free speech that needs special protection here. Defendants have not

19

shown, for example, why they selected the artists named in their databases or how those choices

20

relate to matters of public interest. *See Browne*, 611 F. Supp.2d at 1071 ("RNC has not shown how

21

its use of the Composition *itself* is a matter of public interest") (emphasis in original). Defendants

22

have also failed to show their output image sales to their customers made any comment that

23

contributed to public discussion of current art trends outside of those that paid or went out of

24

their way to see it. *See Penrose Hill, Limited.*, 479 F. Supp. 3d at 854 ("'it is not enough that the

25

statement refer to a subject of widespread public interest the statement must in some manner

26

itself contribute to the public debate'") (quoting *FilmOn.com Inc.*, 7 Cal.5th at 150); *see also, id.* at

27

855 (finding blogger's "generic reference to transparency in the wine industry is exactly the kind

28

of 'broad and amorphous public interest' that courts have found not sufficiently connected to the

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

specific statements at issue"); *cf. also Global Plasma Solutions, Inc.*, 600 F. Supp. 3d at 1093 (finding speech that "was not confidential or accessible only to paying clients" leaned towards contributing to the public interest).[7]

### 2. Defendants' Speech Is Unprotected Commercial Speech

Defendants' "speech" is unprotected for another reason. If it is speech at all, it is unprotected commercial speech. It is well established that the anti-SLAPP statute does not protect promotional commercial speech. Cal. Code Civ. Proc. § 425.17(c)(1) ("Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services."); *L.A. Taxi Coop, Inc. v. Indep. Taxi Owners Assn of L.A.*, 239 Cal. App. 4th 918, 927 (2015) ("[C]ommercial speech that does nothing but promote a commercial product or service is not speech protected under the anti-SLAPP statute."). As explained by the Supreme Court, speech in and about private business transactions merits less protection than other kinds of speech, because "like advertising, is hardy and unlikely to be deterred by incidental state regulation." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 (1985).[8] "[T]he United States Supreme Court has indicated that economic motivation is relevant but not conclusive and perhaps not even necessary" to determine whether speech is commercial. *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 968 (2002) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 & n.14 (1983)); *see also id.* ("The high court has never held that commercial speech must have as its *only* purpose the advancement of an economic transaction[.]").

---

[7] Defendants may argue the Complaint alleges that thousands of Class Members may be affected by Defendants' acquisition of their images, names and likenesses, ¶ 42. Accordingly, the attention focused on Defendants comes from the art world and the Defendants' investors, does not make this a matter of public interest for the purposes of this motion. Despite their vague assurances, Defendants have not pointed to any discussions about the development of art, let alone the kinds of core issues that freedom of speech most protects. Defendants' motion fails to connect any specific statements to the vague topics to which they tenuously claim to contribute.

[8] In *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977), the Supreme Court "considered the balance between the right to publicity and the First Amendment." *Bosley*, 310 F. Supp.2d at 926-27. On that occasion the Court "indicated that the right to publicity was constitutional and did comport with the First Amendment." *Id.* at 927.

The inquiry of whether speech is commercial or noncommercial is "fact-driven" and tries to "give effect to a common-sense distinction between commercial speech and other varieties of speech." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (internal quotation marks and citations omitted). The Supreme Court has set forth three factors for determining whether speech is commercial: (1) whether the speech is an advertisement, (2) whether the speech refers to a specific product or service, and (3) whether the speaker has an economic motivation for the speech. *Bolger*, 463 U.S. at 66-67; *accord Kasky*, 27 Cal.4th at 939; *see also Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008)

Here, Defendants' conduct of selling and advertising their AI Image Products to their customers is commercial speech that does not qualify for protection. Defendants' activities are focused on promoting and selling their AI Image Products and the output images created by those products. Defendants have not shown that their activities will affect people other than their customers, their investors, and the artists whose images they have unlawfully acquired, i.e., Defendants have not set forth a noneconomic motive. *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 684 (2010) ("'In typical commercial speech cases, the *speaker* is likely to be someone engaged in commerce—that is, generally, the production, distribution, or sale of goods or services—or someone acting on behalf of a person so engaged, and the *intended audience* is likely to be actual or potential buyers or customers *of the speaker's goods or services . . .*'") (quoting *Kasky*, 27 Cal.4th at 960; alterations in original). Further, the speech at issue refers to a specific product, an output image in the manner of a named artist. Defendants have substantial economic motivations for making these offers, since they charge for the output files. *See*, *e.g.*, ¶ 7 (Defendants profit from transactions); ¶¶ 55-56 (users pay for ability to generate images); ¶ 115 (sales and subscriptions). Defendants' misconduct is therefore not entitled to full protection accorded to noncommercial speech.

### a.   Defendants' Commercial Speech is Misleading or False

Further, commercial speech that is misleading or based on falsehoods is afforded *no* protection. *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1089 (9th Cir. 2002) (discussing California Civil Code § 3344(d) and commenting that "the newsworthiness privileges do not apply where a

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

defendant uses a plaintiff's name and likeness in a knowingly false manner to increase sales of the publication."); *see also Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980) ("Consequently, there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."); *Solano*, 292 F.3d at 1089 ("The First Amendment does not protect knowingly false speech."). Further, speech that misappropriates peoples' names or likenesses carries an "underlying deception," which is "the myth that an individual actually endorses or supports a product when, in fact, she does not." *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 926 (N.D. Ohio 2004). To the extent Defendants' conduct can be considered speech, which it is not, it induces users to believe that artists have falsely endorsed Defendants' products, and is not subject to protection.[9] *E.g.*, ¶¶ 206-09. Protection should be denied based on these misstatements alone.

### b.    Defendants' Commercial Speech Warrants No Protection

Even if Defendants' arguments are not rejected based on their misleading nature, their speech still warrants no protection: "Commercial speech that is not false or deceptive and does not concern" illegal activities may still be restricted "in the service of a substantial governmental interest" regulated "through means that directly advance that interest." *Camacho v. Control Grp. Media Co., LLC*, No. 21-CV-1954-MMA (MDD), 2022 WL 3093306, at *20 (S.D. Cal. July 18, 2022). The Supreme Court enunciated a four-part test for regulating commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive

---

[9] For DeviantArt in particular, it has held itself since its founding out as "an online community friendly to artists," and still calls itself "the world's largest art community." ¶ 114.DeviantArt further tells customers and prospective customers "that DreamUp 'lets you create AI art knowing that creators and their work are treated fairly.'" ¶ 117. But DeviantArt has not attempted to negotiate licenses for its Training Images, nor has it shared DreamUp revenue with the artists or rightsholders. ¶ 119. This turncoat betrayal of the artistic community intensifies the underlying deception of Defendant's misappropriation of artists' names for its transactional commercial speech, which already misleadingly suggests that the artists condone the AI Image Products. *See* ¶¶ 114, 116, 112-13, 117, 119.

answers, we must determine whether the regulation directly
advances the governmental interest asserted, and whether it is not
more extensive than is necessary to serve that interest."

*Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566. Each of these factors is met here.[10]

**Lawful and not Misleading.**  As discussed above, even if considered to be speech,
Defendants' misappropriation of names is commercial speech because it advertises sales of a
specific product or service (AI Image Products' output images) for which Defendants have
substantial large-scale economic incentives, but it should not be protected because it is
misleading. *See Camacho*, 2022 WL 3093306 at *20 ("[I]t is seemingly questionable whether the
commercial speech that is the subject of this action is even entitled to any protection at all given
that the profiles could 'misappropriate' Plaintiffs' personas and possibly cause the public to be
misled.").

**Substantial Government Interest.** There is a substantial governmental interest in
regulating Defendants' commercial speech that violates rights of publicity. *Camacho,* 2022 WL
3093306 at *20 ("the states' interest in protecting its citizens from non-consensual commercial
exploitation of their personas is substantial"); *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865,
880 (W.D. Wash. 2021), *rev'd on other grounds,* 38 F.4th 824 (9th Cir. 2022).

**Directly Advances Government Interest.** Allowing right of publicity claims to proceed
directly advances the above governmental interests. *Camacho*, 2022 WL 3093306 at *20 ("states'
statutes advance substantial state interests").

**Not Overly Regulated.** Finally, right of publicity claims are reasonably tailored to protect
citizens from commercial exploitation without overly extensive regulation of speech. *Camacho*,
2022 WL 3093306 at *21 (state's interest "is substantial and not overbroad so as to prohibit
commercial speech"). Particularly where "the relief sought is damages, the plaintiff's property

---

[10]  Claiming computerized, commercial AI output amounts to speech worthy of protection in the
public's interest is at best inconsistent, and at worst, hypocritical, when the leaders of the AI
industry, including Stability AI's CEO, recently signed an open letter claiming AI output presents
an "risk of extinction" to humanity. See https://www.safe.ai/statement-on-ai-risk#open-letter.

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

1  rights can be protected at minimal risk to free expression." *Michaels v. Internet Ent. Grp. Inc.*, 5 F.

2  Supp. 2d 823, 839 (C.D. Cal. 1998)(citing *Zacchini*, 433 U.S. at 562).

3      **B.      Plaintiffs Have a Probability of Success on their Right of Publicity Claims**

4      As the second step in weighing an anti-SLAPP motion, the Court must "determine

5  whether the *plaintiff* has demonstrated a probability of prevailing on the claim." *Commonwealth*

6  *Energy Corp.*, 110 Cal. App. 4th at 31; *accord Langer*, 57 F.4th at 1105. "Only a cause of action that

7  satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or

8  petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the

9  statute." *USA Waste of California, Inc.*, 184 Cal. App. 4th at 62 (citation omitted). This requires a

10  showing that "the complaint is both legally sufficient and supported by a sufficient prima facie

11  showing of facts to sustain a favorable judgment." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903

12  (9th Cir. 2010) (citation and internal quotation marks omitted). Notably, the burden is low—

13  Plaintiffs need show only "a mere possibility of success" to survive an anti-SLAPP motion.

14  *Browne v. McCain*, 611 F. Supp. 2d 1062, 1069 (C.D. Cal. 2009); *see also Mindys Cosms., Inc. v.*

15  *Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) ("'Reasonable probability' in the anti-SLAPP statute has

16  a specialized meaning. The statute requires only a minimum level of legal sufficiency and

17  triability.'") (quoting *Linder v. Thrifty Oil Co.*, 23 Cal.4th 429, 438 n.5 (2000)). "Indeed, the

18  second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong." *Mindys*

19  *Cosmetics, Inc.*, 611 F.3d at 598; *see also Navellier v. Sletten*, 29 Cal.4th 82, 93 (2002) ("[T]he

20  statute poses no obstacle to suits that possess minimal merit."). And here, Plaintiffs have easily

21  made that showing.

22      California common law "has long recognized a common law right of privacy for protection

23  of a person's name and likeness against appropriation by others for their advantage." *Downing v.*

24  *Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001). A common law cause of action for right of

25  publicity has four elements: (1) the defendant's use of the plaintiff's identity; (2) the

26  appropriation of plaintiff's name or likeness to defendant's advantage, commercially or

27  otherwise; (3) lack of consent; and (4) resulting injury. *Id.* at 1001. The statutory right of

28  publicity, as set forth in California Civil Code § 3344 (e), requires that the plaintiff also "allege a

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose in additional to proving the elements of the common law cause of action." *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1095 (E.D. Cal. 2009) (citation omitted); *see also Downing*, 265 F.3d at 1001. Plaintiffs have pled all the factual elements necessary to set forth both their statutory and common law right of publicity claims under California precedent. ¶¶ 201-22.

  **Defendants' Use of Plaintiffs' Identity.** First, the Complaint alleges Defendants used Plaintiffs' names and identities to attract customers and gain a commercial advantage. *E.g.*, ¶ 202 ("Defendants knowingly used Plaintiffs' names in Defendants' AI Image Products."); ¶ 205 ("Defendants used Plaintiffs' names and advertised their AI's ability to copy or generate work in the artistic style that Plaintiffs popularized in order to sell Defendants' products and services"); ¶ 217 (Defendants knowingly used names and identities to own advantage to advertise, sell, and solicit purchases); *see also id.* ¶¶ 5, 203, 208, 215, 218, 221. Through permitting prompts based on the use of the prompt "in the style of," Defendants intentionally programmed their AI Imaging Products to cue users to insert an artist's name and produce images forever associated with that name over which that artist has no control.

  **Appropriation of Plaintiffs' Name of Likeness.** Second, Defendants knowingly used Plaintiffs' names and identities to Defendants' commercial advantage. The right of publicity is rooted in the recognition "that a celebrity's identity can be valuable" in promoting products. *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1398 (9th Cir. 1992). Similarly, here Defendants trade on their customers' interest in artists to sell their output images. ¶¶202-12, 214-22. The Complaint states Defendants "appropriated Plaintiffs' names to Defendants' advantage, including for the purposes of advertising, selling, and soliciting purchases through Defendants' AI Image Products." ¶ 203; *see also id.* ¶ 217 (to same effect). It is because Defendants' AI output is similar enough that people familiar with Plaintiffs' art could believe Plaintiffs had created it, which makes Defendants' products valuable. *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1101 (9th Cir. 1992) ("For the defendants to be liable for voice misappropriation . . . the imitation had to be

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

so good that 'people who were familiar with plaintiff's voice who heard the commercial *believed plaintiff performed it*.") (emphasis in original).

**Lack of Consent.** Plaintiffs did not consent to Defendants' use of Plaintiffs' names and identities. ¶ 202 ("At no time did Plaintiffs consent to Defendants' use of their names in this capacity."); ¶ 216 ("Plaintiffs did not consent to Defendants' use of their names or identities.").

**Resulting Injury.** Plaintiffs have alleged they were injured by Defendants' use of Plaintiffs' names and identities. *See Fraley v. Facebook Inc.*, 830 F. Supp. 2d 785, 807 (N.D. Cal. 2011) ("[C]ourts have long recognized that a person's 'name, likeness, or other attribute of identity can have commercial value,' even if the individual is relatively obscure."). Defendants' conduct injured plaintiffs by proliferating art in Plaintiffs' artistic styles and diluting the economic value of Plaintiffs' names for their art, harming Plaintiffs' economic goodwill. An allegation that the defendant exploited the plaintiff's name and identity "for commercial gain" denotes the "commercial value" of that name. *Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL 1870057, at *3 (N.D. Cal. Feb. 9, 2023). Further, Defendants' actions force Plaintiffs to compete with knock-off images "generated from Plaintiffs' work and associated with Plaintiffs' names." ¶¶ 212, 222; *see also* ¶¶ 8 & 173 (knock-off images).

Plaintiffs were also injured because they should have been compensated for Defendants' use of Plaintiffs' names. "If a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small." *Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079 at *14-15 (N.D. Cal. Nov. 1, 2021) (finding inference sufficient to defeat motion to dismiss).[11] Defendants used Plaintiffs' names to link and associate its output images with Plaintiffs, which "contributed value to Defendants' platform[s] and services" and "uniquely enhanced the marketability of Defendants' AI art-generating services to consumers and the public." ¶¶ 206 & 207.

**Knowing Use.** For purposes of the statutory claim, Plaintiffs have alleged that Defendants' misuse of Plaintiffs' names and identities was knowing. Defendants specifically designed their

---

[11] As *Peoplesoft* noted, § 3344 claims "can be brought even by noncelebrities," *id.* at *14, so injury can regularly be inferred from such use.

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

software to prioritize the inclusion of specific artists' works by invoking the artist's name to

create output images like the artist's. ¶¶ 202-08.

As the Complaint explains:

> Defendants' use of Plaintiffs' names was not incidental. Rather,
> Defendants specifically and knowingly used Plaintiffs' names because these
> names were uniquely related to specific artistic styles, and Defendants
> generated valuable business from their ability to sell artworks "in the
> style" that Plaintiffs popularized. Thus, the use of Plaintiffs' names
> contributed value to Defendants' platforms and services.

¶ 206. Indeed, it was because of the value of Plaintiffs' names that Defendants used them. ¶ 217

("Defendants knowingly used Plaintiffs' names and identities to further Defendants' commercial

advantage, including for the purposes of advertising, selling, and soliciting purchases through

Defendants' AI art-generating system[s]."); *see also* ¶ 202 (use of Plaintiffs' names). Stability and

DeviantArt were especially aware of this use because Stability developed Stable Diffusion to

include the functionality to generate output images using specific artist's names, and DeviantArt

was the source of many of the training images. ¶¶ 57, 63, 109-10, 116; *see also* ¶ 130.

## C.   The Right of Publicity Claims Are Not Preempted

The Copyright Act, 17 U.S.C. §§ 101 *et seq.*, does not preempt Plaintiffs' right of publicity

claims because their claims are based on Defendants' use of Plaintiffs' names, rather than on

Defendants' misappropriation of Plaintiffs' art. The rights involved are separate and distinct, and

not subject to preemption. The Copyright Act's preemption section states that nothing in title 17

on copyrights "limits any rights or remedies under the common law or statutes of any State"

regarding:

> (1)  subject matter that does not come within the subject matter of
> copyright as specified by sections 102 and 103, including works of
> authorship not fixed in any tangible medium of expression; or
>
> * * *
>
> (3)  activities violating legal or equitable rights that are not
> equivalent to any of the exclusive rights within the general scope of
> copyright as specified by section 106; . . . .

1  17 U.S.C. § 301(b). The Ninth Circuit's two-part test for the Copyright Act to preempt a state

2  claim is consistent with those provisions:

> First, the content of the protected right must fall within the subject
> matter of copyright as described in 17 U.S.C. §§ 102 and 103. [and]

> Second, the right asserted under state law must be equivalent to the
> exclusive rights contained in section 106 of the Copyright Act.

7  *Downing*, 265 F.3d at 1003; *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1139 (9th Cir. 2006).

8  In contradiction to what Defendants may claim, this case is not just about the creation of

9  works in Plaintiffs' style, but the misappropriation of *Plaintiffs' names*. As to the first part of the

10  test, the Ninth Circuit has held that "[a] person's name or likeness is not a work of authorship

11  within the meaning of 17 U.S.C. § 102." *Downing*, 265 F.3d at 1004. In *Downing*, that was "true

12  notwithstanding the fact that [the plaintiffs'] names and likenesses [were] embodied in a

13  copyrightable photograph." *Id. Downing* added that 17 U.S.C. § 103 embodied that concept by

14  providing "that the copyright in derivative works extends only to the material contributed by the

15  author as distinguished from preexisting material employed in the work." *Id.* at 1004-05. The

16  inquiry should stop there—Plaintiffs' claims are not preempted.

17  Nonetheless, Plaintiffs' right of publicity claims survive under the second element too.

18  "The second requirement for copyright preemption as noted above is that the right asserted

19  under state law must be equivalent to the exclusive rights contained in §106 of the Copyright

20  Act." *Id.* at 1005. Again, the Ninth Circuit has explained that when "the subject matter" of the

21  plaintiffs' right of publicity claims was "their names and likenesses," which were "not

22  copyrightable," those claims were "not equivalent to the exclusive rights contained in § 106." *Id.*

23  Here the alleged damage to Plaintiffs goes far beyond just intellectual property interests with

24  respect to how Defendants' AI Imaging Products allow third parties to utilize artists' names.

25  Since names are not equivalent to § 106 rights, claims based on names are not preempted.

1

2

**D.    Defendant's Commercial Speech (Including False Statements) Using Plaintiffs' Identities to Sell Derivative Works Does Not Support First Amendment Protection.**

3

4

Defendants' final gambit is to claim that their use of Plaintiffs' name is transformative and protected by the First Amendment. Defendants' defense fails for at least two reasons.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

***First***, whether Defendants' use is "transformative" it is an affirmative defense for which Defendants bear the burden of proof. *Davis*, 775 F.3d at 1177; *see also Comedy III Productions., Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 407 (2001) ("[W]hen an artist is faced with a right of publicity challenge to his or her work, he or she may raise **as [an] affirmative defense** that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame.") (emphasis added); *see Browne*, 611 F. Supp. 2d at 1071 ("A defendant that challenges a plaintiff's claim on an Anti-SLAPP motion by raising affirmative defenses bears the burden of proof on those defenses."). Plaintiffs have offered facts demonstrating why Defendants' conduct is not "transformative." *E.g.*, ¶¶ 86-90, 94-98, 210, 221. Indeed, Plaintiffs allege that the appropriation of Plaintiffs' names and the ability to query the AI Image Products by Plaintiffs' names provides value to Defendants' products here. *See Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 168 (3d Cir. 2013) ("even avatars with superficial modifications to their appearance can count as a suitable proxy or market 'substitute' for the original"). Defendants have not identified facts within the four corners of the Complaint sufficient to satisfy their burden here.

20

21

22

23

24

25

26

27

28

***Second***, as the Ninth Circuit has explained, "'[o]nly if [a defendant] is entitled to the [transformative] defense *as a matter of law* can it prevail on its motion to strike,' because the California Supreme Court 'envisioned the application of the defense as a question of fact.'" *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d at 1274 (internal brackets omitted) (quoting *Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2010)). "Thus, [Defendants] [are] only entitled to the defense as a matter of law if no trier of fact could reasonably conclude that the [work] was not transformative." *Hilton*, 599 F.3d at 910. And there are questions of fact here—Plaintiffs have alleged, for example, facts that Defendants have capitalized on Plaintiffs' names to attract users to their AI Image Products. ¶¶ 202-09. There is a

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

genuine question of fact as to whether the users of Defendants' AI Image Products were motivated by obtaining a reproduction of Plaintiffs' work or the AI's work. *See In re NCAA Student Athlete Name & Likeness Licensing Litig.*, 724 F.3d at 1274 (noting that *Comedy III Productions, Inc.*, 25 Cal.4th 387's factors "require an examination of whether a likely purchaser's primary motivation is to buy a reproduction of the celebrity, or to buy the expressive work of the artist.") (citing J. Thomas McCarthy, *The Rights of Publicity and Privacy* § 8:72 (2d ed. 2012)). Plaintiffs have also alleged that Defendants have scraped, i.e., directly copied, without permission, countless images for use as training images for their AI Image Products. ¶¶ 57-58, 63, 89, 109. To what extent the output is changed is a question of fact that precludes a motion to strike here. *See Comedy III Productions, Inc.*, 25 Cal.4th at 407 ("The [transformative use] inquiry is in a sense more quantitative than qualitative, asking whether the literal and imitative or the creative elements predominate in the work.").

**Third**, Defendants' arguments are rooted in a misunderstanding Plaintiffs' right of publicity claims. Plaintiffs' claims focus on Defendants' misappropriation of Plaintiffs' **names** and **use of those names** to market and enhance sales of their products, rather than Defendants' purportedly artistic creation of output images. *See Comedy III Productions, Inc.*, 25 Cal.4th at 409-10 (finding no protection where artist contributed nothing other than trivial variations that transformed drawings at issue from literal likenesses of the Three Stooges). Referring to a Plaintiffs by name to promote a product is not transformative; to rule otherwise "would vitiate California's well-established right of publicity." *Est. of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1007 (N.D. Cal. 2012).

## IV.    CONCLUSION

Defendants' anti-SLAPP Motion to Strike should be denied. Alternately, Plaintiffs request leave to replead their Complaint if the Court finds aspects that need repleading. Granting repleading is supported by the Federal Rules of Civil Procedure, for example, any "collision" with "Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment," *Verizon Delaware, Inc. v Covad Commc'ns Co.,* 377 F.3d 1081, 1091 (9th Cir. 2004); Fed. R. Civ. P. 56(d).

Dated: June 2, 2023

By:     _/s/ Joseph R. Saveri_
                Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Louis A. Kessler (State Bar No. 243703)
Elissa A. Buchanan (State Bar No. 249996)
Travis Manfredi (State Bar No. 281779)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                lkessler@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                tmanfredi@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:         mb@butericklaw.com

Brian D. Clark (_pro hac vice_)
Laura M. Matson (_pro hac vice_)
Eura Chang (_pro hac vice_)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612)339-6900
Facsimile:  (612)339-0981
Email:         bdclark@locklaw.com
               lmmatson@locklaw.com
               echang@locklaw.com

_Counsel for Individual and Representative_
_Plaintiffs and the Proposed Class_

3:23-cv-00201-WHO                    19

PLAINTIFFS' OPPOSITION TO DEFENDANT DEVIANTART'S SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16