Mark A. Lemley (State Bar No. 155830)
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055
Facsimile: (646) 906-8657
Email: mlemley@lex-lumina.com

Nicole M. Jantzi (*pro hac vice*)
Paul M. Schoenhard (*pro hac vice*)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
801 17th Street NW
Washington, DC 20006
Telephone: (202) 639-7254
Email: nicole.jantzi@friedfrank.com
          paul.schoenhard@friedfrank.com


(Additional counsel on signature page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH ANDERSEN, an individual; KELLY MCKERNAN, an individual; KARLA ORTIZ, an individual, <br><br> Individual and Representative Plaintiffs, <br><br> v. <br><br> STABILITY AI, LTD., a UK corporation; STABILITY AI, INC., a Delaware corporation; MIDJOURNEY, INC., a Delaware corporation; DEVIANTART, INC., a Delaware corporation, <br><br> Defendants. | CASE NO. 3:23-cv-00201-WHO <br><br> **DEFENDANTS STABILITY AI, LTD AND STABILITY AI, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:     July 19, 2023 <br> Time:    2:00 p.m. <br> Place:   Courtroom 2 - 17th Floor <br> Before:  Hon. William H. Orrick |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................. 2
    A. Plaintiffs Concede that McKernan and Ortiz's Copyright Claims Fail. ................................................................................................................. 2
    B. Andersen's Copyright Claims Also Fail. ............................................................ 2
    C. Count III Should be Dismissed for Failure to Plead DMCA Violations. ............................................................................................................ 6
    D. Counts IV and V Should Be Dismissed with Prejudice. ..................................... 8
    E. Count VI Should Be Dismissed Because It Is Preempted. ................................ 13
    F. Plaintiffs' Declaratory Relief Claim Should be Dismissed. ............................... 14
III. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014) .................................................................................................. 5

*Altera Corp. v. Clear Logic, Inc.*,
    424 F.3d 1079 (9th Cir. 2005) ............................................................................................... 13

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................................. 12

*Bespaq Corp. v. Haoshen Trading Co.*,
    No. 04–cv–3698, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005) ................................................... 3

*Bounce Exch., Inc. v. Zeus Enter., Ltd.*,
    No. 15–cv–3268, 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) .............................................. 8

*Davis v. Elec. Arts Inc.*,
    No. 10–cv–03328, 2012 WL 3860819 (N.D. Cal. Mar. 29, 2012) ........................................ 11

*Doe 1 v. GitHub, Inc.*,
    No. 22–cv–06823-JST, 2023 WL 3449131 (N.D. Cal. May 11, 2023) .................................. 7

*Dolls Kill, Inc. v. Zoetop Business Co.*,
    No. 22–cv–01463, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ................................... 7, 8

*Free Speech Sys., LLC v. Menzel*,
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) .................................................................................. 7

*Harrington v. Pinterest, Inc.*,
    No. 20–cv–05290, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) ......................................... 8

*ICONICS, Inc. v. Massaro*,
    192 F. Supp. 3d 254 (D. Mass. 2016) ..................................................................................... 7

*Kirk Kara Corp. v. Western Stone and Metal Corp.*,
    No. 20–cv–1931, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ........................................... 7

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ............................................................................................... 14

*Laws v. Sony Music Ent.*,
    448 F.3d 1134 (9th Cir. 2006) ................................................................................................. 9

*Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co., Inc.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) ................................................................................ 14

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) ................................................................................................ 5

*Maryland Cas. Co. v. Witherspoon*,
    993 F. Supp. 2d 1178 (C.D. Cal. 2014) ................................................................................. 15

*Mohanna v. Carrington Mortg. Servs. LLC*,
    No. 18–cv–02563, 2018 WL 3730419 (N.D. Cal. Aug. 6, 2018) .......................................... 14

*Mollman v. Zoetop Bus. Co.*,
    No. 22–cv–4128, 2022 WL 17207103 (C.D. Cal. Sept. 16, 2022) .......................................... 7

*Narell v. Freeman*,
    872 F.2d 907 (9th Cir. 1989) .................................................................................................. 4

*Obado v. Magdeson*,
    No. 13–2382, 2014 WL 3778261 (D.N.J. July 30, 2014) ..................................................... 11

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    167 F. Supp. 2d 1114 (C.D. Cal. 2001) ................................................................................... 3

*Perfect 10, Inc. v. Google, Inc.*,
    No. 04–cv–9484, 2010 WL 9479060 (C.D. Cal. 2010) ........................................................ 10

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ................................................................................................ 10

*Range Rd. Music, Inc. v. East Coast Foods, Inc.*,
    668 F.3d 1148 (9th Cir. 2012) ................................................................................................ 4

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .............................................................................................. 14

*Takeda Pharm. Co., Ltd. v. Mylan Inc.*,
    62 F. Supp. 3d 1115 (N.D. Cal. 2014) .................................................................................. 15

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) .............................................................................................. 12

*White v. Samsung Elecs. Am., Inc.*,
    971 F.2d 1395 (9th Cir. 1992) ........................................................................................ 12, 13

**Statutes**

17 U.S.C. § 411(a) ........................................................................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 57 ....................................................................................................................... 14

**I.     INTRODUCTION**

Plaintiffs' Opposition makes clear what the Stability Defendants previously suspected: *Plaintiffs' claims fail not only because they have been inadequately pled but because Plaintiffs did not have a good faith basis to present them in the first place*. Plaintiffs do not even try to defend McKernan and Ortiz's copyright claims, instead conceding that they did not have any registered works to plead in the first place. Plaintiffs do not identify, either by reference to the Complaint or otherwise, any specific work of Andersen's that has been allegedly infringed. Plaintiffs do not identify, by reference to the Complaint or otherwise, any image output by Stable Diffusion that is allegedly substantially similar to any of Andersen's registered works. Plaintiffs do not identify, by reference to the Complaint or otherwise, any of Andersen's registered works that are somehow compressed and contained in Stable Diffusion. Plaintiffs do not identify, by reference to the Complaint or otherwise, any specific copyrighted work(s) from which copyright management information has been allegedly removed, much less knowingly removed by the Stability Defendants. And Plaintiffs do not identify, by reference to the Complaint or otherwise, any actual advertising use of their names, much less by the Stability Defendants.

Ultimately, Plaintiffs' Complaint relies on a series of misstatements about how Stable Diffusion was trained, what it is and how it works. Rather than withdraw their Complaint or amend it to correct those misstatements, however, Plaintiffs have opposed the Stability Defendants' motion to dismiss (as well as motions filed by each of the other Defendants to this Action). And in doing so, Plaintiffs double-down on their vague, group-pled allegations without any reference to actual facts that could possibly provide a good-faith, much less plausible, basis for them.

As early as the first page of their Opposition, Plaintiffs appear to acknowledge that they do not understand Stability AI's technology and lack any good-faith basis for their claims, arguing that Stability AI is somehow "leveraging their opacity and complexity to prevent Plaintiffs and this Court from scrutinizing their legality." (Opp. at 1.) How, one might ask, can Plaintiffs maintain a claim if they have been unable (or so they say) to scrutinize the legality of the acts they allege? The answer: by making them up. For example, Plaintiffs appear to be quite comfortable claiming

1  (without basis) that "Stable Diffusion is akin to 'having a directory on your computer of billions of JPEG files'" (Opp. at 10), but Plaintiffs have not done what they tell the Court "one may" do— "conduct an analogous inspection of Stable Diffusion" (*id.*). This, despite the fact that "Stable Diffusion is software released under a permissive open-source license." (Compl. ¶ 53.) In other words, anyone with access to the Internet is free to download and examine a copy of Stable Diffusion subject only to applicable open-source license terms. The "inspection" Plaintiffs tell the Court that "one may" do is one they could have done prior to filing this lawsuit but apparently chose not to.

If Plaintiffs had done their homework, they would know that ***Stable Diffusion does not "store[] compressed copies" of Plaintiffs' or any other artists' works***. (*Cf.* Opp. at 11.)

For now, however, Defendants and this Court are forced to engage with Plaintiffs' false narrative. And Plaintiffs' Opposition does nothing to render their pleadings more specific, more plausible, or more legally tenable. Plaintiffs' claims should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs Concede that McKernan and Ortiz's Copyright Claims Fail.

McKernan and Ortiz do not appear even once in the body of Plaintiffs' Opposition. Instead, they are relegated to a footnote: "***Plaintiffs McKernan and Ortiz concede that they did not include any material that was registered at the time of the filing of the Complaint***." (Opp. at 4 n.3.) Plaintiffs present no reason why McKernan and Ortiz's copyright claims should not be dismissed; and Plaintiffs do not suggest that such dismissal should be without prejudice. Accordingly, Counts I and II should be dismissed with prejudice with respect to McKernan and Ortiz.

### B. Andersen's Copyright Claims Also Fail.

Turning, then, to Andersen, the Stability Defendants have provided several, independent reasons why her copyright claims also fail. (Mot. at 6–8.) In response, however, Plaintiffs attempt to leverage vague, group pleading to support a single plaintiff's—Andersen's—claims. But pleadings about "billions" of unidentified others' works cannot save ***Andersen's*** copyright claims; her claims, too, should be dismissed with prejudice.

### 1. Andersen's Claims Are Limited to Works Registered and Pled

As an initial matter, Plaintiffs present no reason why Andersen's claims should not be limited to the sixteen registered collections they have alleged; and Plaintiffs do not suggest that Andersen should be permitted to amend her claims to encompass any additional copyrighted works. Nor could they. Accordingly, Counts I and II should be dismissed with prejudice with respect to any of Andersen's copyrighted works not previously registered and specifically alleged.

### 2. Andersen Did Not Plead Infringement of Any Specific Work(s).

As detailed in the Stability Defendants' Motion (Mot. at 4–5), Andersen's copyright claims also fail because she failed to specifically identify which works were allegedly infringed. In response, Plaintiffs rely on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001). (Opp. at 4–5.) Plaintiffs' reliance is misplaced. Unlike *Perfect 10*, in which the plaintiff "specifically identifie[d] websites" containing "hundreds, even thousands" of photographs that allegedly infringed its registered copyrights, *id*. at 1118, 1120–21, here, Plaintiffs have failed to plausibly allege which, if any, of Andersen's works may have somehow been infringed. This situation is thus much more like *Bespaq Corp. v. Haoshen Trading Co.*, No. 04–cv–3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005), in which a copyright claim was dismissed where plaintiff "d[id] not identify ***which*** preexisting works in the registered catalog have been infringed by the defendants." Especially where, as here, the universe of possibilities is small (sixteen collections), it would certainly not "defeat the regime established by Rule 8" to expect Andersen to come forward with a specific allegation of infringement. But she has not done so. Accordingly, Counts I and II should be dismissed with respect to Andersen's works. 17 U.S.C. § 411(a).

### 3. Andersen's "Output" Theory Fails.[1]

Andersen's direct copyright infringement claim should also be dismissed to the extent it is based on vague allegations that Stable Diffusion or DreamStudio generate images that somehow

---

[1] As detailed in the Stability Defendants' Motion, all Plaintiffs' claims fail for the same reasons. But in view of Plaintiffs' disavowal of McKernan and Ortiz's copyright claims, this Reply focuses on Andersen. The same arguments, however, apply to McKernan and Andersen, as well.

infringe Andersen's registered copyrights. (Mot. at 6–7.) Not only do Plaintiffs fail to identify a single output image that is allegedly substantially similar to any of Andersen's copyrighted works, they fail to plausibly allege that such infringement is even possible. To the contrary, Plaintiffs admit in their Complaint, and reiterate in their Opposition, that output images are ***not*** "likely to be a close match" for any of Plaintiffs' (and accordingly Andersen's) works. (Compl. ¶ 93.) Plaintiffs' efforts to overcome this fatal flaw fail.

*First*, Plaintiffs' contention that they need not show that there is "substantial similarity" between the allegedly copied and allegedly infringing works is flatly wrong. As Plaintiffs' cited authority acknowledges, to plead a claim for copyright infringement, a plaintiff must demonstrate "copying of constituent elements of the work that are original," which, "when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*," requires a showing of "substantial similarity" between the allegedly copied and infringing works. *Range Rd. Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153–54 (9th Cir. 2012). But Plaintiffs do not allege that any "output images" are reproductions ***in toto*** of any specific training image. Instead, Plaintiffs assert that "[w]hether the output varies or differs from the input matters little—because this is a case involving direct copying." (Opp. at 9.) That is not the law. "A finding that a defendant copied a plaintiff's work, without application of a substantial similarity analysis, has been made only when the defendant has engaged in ***virtual duplication of a plaintiff's entire work***." *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989) (collecting cases). Again, Plaintiffs' allegations belie that any output images are "virtual duplications" of Plaintiffs' work. (Compl. ¶ 93.)

*Second*, Plaintiffs do not even attempt to claim they have pleaded facts sufficient to establish that any output image is substantially similar to any copyrighted training image—much less any of Andersen's registered works. Instead, Plaintiffs merely assert that the court can "***infer*** that substantial similarity exists between the output ***image*** and the source ***images***." (Opp. at 10.) Plaintiffs' theory, by their own admission, is inconsistent with their allegation that output images are ***not*** "likely to be a close match for any specific [training] image." (*Id.*) And Plaintiffs' characterization of unidentified and unspecified output images as "infringing derivative works,"

even if it were credible (and it is not) does not salvage their claim, as Plaintiffs still must demonstrate (and do not dispute that they must demonstrate) that any allegedly infringing derivative work must be substantially similar to the protected work. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).

Accordingly, Andersen's direct copyright infringement claim, to the extent it is based on output images, must be dismissed with prejudice. Any amendment of Plaintiffs' Complaint would be futile, as Plaintiffs expressly allege that output images necessarily do not constitute duplications of any copyrighted work, and that output images are not substantially similar to any specific copyrighted work. Plaintiffs may not amend their Complaint to contradict such allegations. *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).

### 4. Andersen's Infringement Theories Based on "Compression" Fail

Plaintiffs' other copyright infringement theories also fail, as each relies on the allegation that "Stability has embedded and stored compressed copies" of training images. But nowhere in the Complaint do Plaintiffs identify any specific, copyrighted work (much less one of Andersen's registered works) that is allegedly compressed and stored in Stable Diffusion. Nor do Plaintiffs explain how any such compressed training image is substantially similar to any allegedly infringed work. Of course, they cannot do so, because ***Stable Diffusion does not store compressed copies of images—copyrighted or otherwise***. And Plaintiffs' theory that Stable Diffusion and DreamStudio are somehow themselves infringing derivative works is even more implausible, as "a work is not derivative unless it has been substantially copied from the prior work." *Litchfield v. Spielberg*, 736 F.2d at 1357. It is simply not plausible that an AI model—that is comprised of software code—and a cartoon are substantially similar. Plaintiffs do not allege facts that would plausibly result in any other conclusion. Again, Andersen's direct copyright claim should be dismissed with prejudice.

### 5. Andersen's Vicarious Infringement Theory Fails.

Andersen's indirect infringement claims also should be dismissed because Plaintiffs have failed to plead any of the elements of such a claim. Plaintiffs have not alleged (1) even one specific act of direct copyright infringement by a third party, (2) that the Stability Defendants have the right

and ability to supervise such allegedly infringing conduct, or (3) that the Stability Defendants have a direct financial interest in the allegedly infringing activity. (Mot. at 7–8.)

Plaintiffs concede that their vicarious infringement theory is based entirely on alleged infringement by "the output images" or "the act of output." (Opp. at 11.) But, as detailed above, Plaintiffs fail to allege any output image that is substantially similar to any training image, much less any of Andersen's works. And to the contrary, Plaintiffs expressly allege that output images are ***not*** substantially similar to any specific training image. Plaintiffs have thus failed to allege any viable theory of third-party direct infringement, dooming their indirect infringement claim.

Independently, Andersen's vicarious infringement claims fail because Plaintiffs do not plead that Stability has a direct financial interest in any such unspecified third parties' allegedly infringing activity. Plaintiffs ignore entirely the requirement that it plead facts supporting "a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Perfect 10, Inc. v. Giganews*, Inc., 847 F.3d 657, 673 (9th Cir. 2017). While Plaintiffs allege that Stability sells Stable Diffusion subscriptions based on "credits," which are used to "pay" for the generation of images, Plaintiffs fail to allege even a single instance in which credits have in any way been linked to the generation of any output images that allegedly infringe any of Andersen's (or anyone else's, for that matter) copyrighted works (much less that all or substantially all of the images generated with "credits" are somehow infringing works).

Finally, like her direct copyright infringement claim, Plaintiffs may not amend their Complaint to allege that the output images generated by third parties are substantially similar to any pre-registered, copyrighted works. Accordingly, Andersen's indirect copyright infringement claim should be dismissed with prejudice.

### C. Count III Should be Dismissed for Failure to Plead DMCA Violations.

Plaintiffs have failed to sufficiently plead their DMCA claim, as they have not alleged that Defendants removed or altered the copyright management information ("CMI") of any particular work (or distributed any such work), let alone with the requisite knowledge. (Mot. at 9–10.) Plaintiffs' arguments to the contrary simply ignore those fatal flaws.

As an initial matter, Plaintiffs assert that "the pleading burden under the DMCA is low," citing *Mollman v. Zoetop Bus. Co.*, No. 22–cv–4128, 2022 WL 17207103, at *3 (C.D. Cal. Sept. 16, 2022). (Opp. at 13.) *Mollman* says no such thing. In that case, the court simply concluded that "Plaintiff's well-pleaded allegations satisf[ied] the applicable federal pleading standard" with respect to its DMCA claims. *Id.* at *3. Plaintiffs' allegations here do not.

*First*, Plaintiffs' conclusory assertions that they have alleged the "knowing removal of CMI," the "distribution of CMI" and the "distribution of copied works" (Opp. at 14–15) miss the mark. Plaintiffs offer no response whatsoever to the fact that they have failed to point to a single, specific example of a work for which Defendants have allegedly altered or removed the CMI. Whether Plaintiffs have in fact alleged the existence of *some* CMI in *some* unspecified works is irrelevant; Plaintiffs have not alleged "any facts to identify which [works] had CMI removed," which is fatal to their DMCA claim. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (Orrick, J.). Plaintiffs' reliance on vague, group-pleading allegations with respect to the "billions of copyrighted images" used to create Stable Diffusion is insufficient, *id.*, especially when there are no allegations to support any relationship between such "billions of copyrighted images" or CMI therein and the three named plaintiffs.

*Second*, Plaintiffs are incorrect that "Section 1202 does not require the copy [from which the CMI was removed or altered] be 'identical'" (Opp. at 16). The law is exactly to the contrary. *See Dolls Kill, Inc. v. Zoetop Business Co.*, No. 22-cv-01463, 2022 WL 16961477, at *4 (C.D. Cal. Aug. 25, 2022) ("[C]ourts have found that no DMCA violation exists where" the work from which CMI was removed and the distributed work "are not identical.") (citation omitted); *Kirk Kara Corp. v. Western Stone and Metal Corp.*, No. 20-cv-1931, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020). Instead, Plaintiffs point to three cases that discuss what constitutes CMI or its removal in the context of copyrighted code, which are entirely irrelevant. Specifically, *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016), involved the alleged **transfer** of source code files on to defendant's servers and removal of CMI from the transferred files. Similarly, in *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2023 WL 3449131, at *11 (N.D. Cal. May 11, 2023), the

plaintiff alleged that "Defendants intentionally designed [] programs to remove CMI from any licensed code they *reproduced[d] as output*." And in *Bounce Exch., Inc. v. Zeus Enter., Ltd.*, No. 15-cv-3268, 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015), the court merely concluded that "shorthand form[s] of the official name of the author of the work" inserted into source code constituted CMI. To the extent Plaintiffs now assert that Defendants directly copied protected works and in doing so removed CMI, that is simply not supported by the allegations in the Complaint.

*Third*, with respect to the DMCA's "double-scienter requirement," Plaintiffs urge the Court to simply infer that the Stability Defendants knowingly engaged in conduct that resulted in the removal of some unidentified CMI because the diffusion process somehow inherently (in their view) includes "removing and altering CMI." (Opp. at 18.) Such vague hand-waving is insufficient to plausibly allege actual knowledge. *See Harrington v. Pinterest, Inc.*, No. 20-cv-05290, 2022 WL 4348460 *4 (N.D. Cal. Sept. 19, 2022) (dismissing DMCA claim where plaintiff failed to specifically allege that defendant had actual knowledge that CMI was removed from any particular work on defendant's platform). Nor have Plaintiffs made any allegation that this unspecified removal of unspecified CMI was done with the purpose of somehow concealing the (unalleged) infringement. *See id.* at *5 (emphasizing the need for "specific allegations as to how identifiable infringements 'will' be affected").

Accordingly, Plaintiffs' DMCA claim should be dismissed with prejudice. Given Plaintiffs allegations that output images are not substantially similar (let alone identical) to images from which CMI was allegedly altered, amendment would be futile. *See Dolls Kill*, 2022 WL 16961477, at *4 (dismissing DMCA claim with prejudice where "Plaintiff cannot cure the DMCA claim without contradicting the current allegations that support its copyright infringement claim").

**D.     Counts IV and V Should Be Dismissed with Prejudice.**

**1.     The Copyright Act preempts Plaintiffs' right of publicity claims.**

The Copyright Act preempts Plaintiffs' right of publicity claims, as they fall within the subject matter of copyright and assert equivalent rights, and therefore they must be dismissed. (Mot. at 11–17.) Plaintiffs' arguments to the contrary misapply the applicable law.

Perhaps recognizing that their style-based claims fail, Plaintiffs have expressly abandoned their right of publicity claims based on "artistic identity" or "style" appropriation and limit their claims to alleged appropriation of their names.[2] But allegations of name appropriation cannot escape preemption if the claim, in substance, rather than form, is ultimately about the control of something within the subject matter of copyright. *Laws v. Sony Music Ent.*, 448 F.3d 1134, 1140–42 (9th Cir. 2006). Indeed, *Maloney v. T3Media*, which Plaintiffs characterize as an inapposite case involving a "thinly disguised copyright claim" (Opp. at 23), also involved allegations of name use and appropriation. 853 F.3d 1004, 1008 (9th Cir. 2017). Plaintiffs rely on almost the exact same set of "facts" to support their right of publicity claims as they allege in support of their (failed) copyright claims. And Plaintiffs fail to explain how their claims are not preempted where they ultimately seek redress for harms to the "goodwill that is associated with their names" and the diminution of the "value of their art itself" simply as a result of an alleged "market flooded with AI-generated ***copies*** associated with Plaintiffs' names" (i.e., alleged copyright infringement) (Compl. ¶ 212.); Opp. at 22. The right of publicity claims are preempted and should be dismissed. *See Maloney*, 853 F.3d at 1011, 1020 (dismissing right of publicity claim with prejudice because it was preempted by the Copyright Act despite allegations that names were appropriated).

### 2. Plaintiffs do not adequately state a right of publicity claim.

Even if not preempted, Plaintiffs' vague right of publicity claims do not adequately allege that the Stability Defendants used Plaintiffs' identities at all, let alone that the Stability Defendants used their identities "on or in products" or for purposes of advertising (they did not), knowingly used their identities in a manner directly connected to a commercial purpose (they did not), or that Plaintiffs were injured thereby. (Mot. at 17–23.) Plaintiffs' arguments to the contrary equivocate on the contours of their claim, cite no cases that actually support their novel theory of liability, and still fail to point to a single actual alleged use of any of their names (let alone their personas). Indeed,

---

[2] *See* Opp. at 22 ("Plaintiffs' right of publicity claims are grounded in protection of the use of Plaintiffs['] ***names*** not their ***styles***."). Plaintiffs thus do not dispute that their "artistic identity" and "style" right-of-publicity theories were deficient and preempted by the Copyright Act.

- 9 -
REPLY ISO STABILITY AI'S
MOT. TO DISMISS
CASE NO. 3:23-CV-00201-WHO

Plaintiffs do not specifically allege that the Stability Defendants were even aware of Andersen, McKernan or Ortiz prior to the filing of this lawsuit.

Faced with the legal and factual insufficiencies of their claims, Plaintiffs' response further distorts them. Their theory now appears to be as follows: the Stability Defendants appropriate each of Plaintiffs' names (and therefore identities) by allegedly creating a product capable of responding to "in the style of" text prompts, which purportedly invites users to enter artist names as text prompts and thereby create artwork "similar" to Plaintiffs' art (and therefore associated with Plaintiffs' names by those who recognize Plaintiffs' style). (Opp. at 19–23.) But as noted above, Plaintiffs have affirmatively abandoned their claims to the extent they are based on appropriation of their "artistic identity" or "style," and disclaimed that users inputting Plaintiffs' names is a basis for their claims.[3] For good measure, Plaintiffs also throw in vague and unsupported allegations of advertising, neither specifying what advertisements used each of their names (because there are no such advertisements) nor remaining consistent about what was being advertised. This incoherent claim reveals its legal insufficiency.

*Use.* *First,* by disclaiming users inputting their names as part of their claims,[4] Plaintiffs' theory rests on the notion that the *ability* to use a name in a Text Prompt is not only an actual use of

---

[3] Plaintiffs do not respond to Stability Defendants' argument that it is *users*, not Defendants, who are using Plaintiffs' names in Text Prompts to create output images. (Mot. at 19-20). But in response to Defendant DeviantArt's Motion to Dismiss, Plaintiffs stated they "do not challenge the use of names in prompts after the AI Image Product's release, but DeviantArt's *intentional* decision to reference Plaintiffs' identities by their name in DreamUp's prompts and use Plaintiffs' names to advertise and gain a competitive advantage for DreamUp." DeviantArt MtD Opp. at 19. *See also* Midjourney MtD Opp. at 18 ("Plaintiffs do not claim that the use of Plaintiffs' names by Midjourney users in text prompts is the basis for its right of publicity claims.").

[4] Even if Plaintiffs were not disclaiming the use of their names as Text Prompts by users, such use would not state a right of publicity claim against Stability because "because "[c]ontributing to someone's violation of something is not the same as actually violating it." *Perfect 10, Inc. v. Google, Inc.*, No. 04–cv–9484, 2010 WL 9479060, at *13 (C.D. Cal. 2010) (finding no right of publicity where Google allegedly hosted third-party websites that displayed plaintiffs' names or likenesses because there were no allegations that Google "actually use[d] the plaintiff's likeness"); *see also* Mot. at 19-20.

each name that could theoretically be entered but also an appropriation of the identity of each owner of each theoretical name for a commercial purpose. Nonsense. *See generally Obado v. Magdeson*, 2014 WL 3778261, at *7 (D.N.J. July 30, 2014) (holding the appearance of an individual's name "as part of the ***search results*** displayed in response to a user-generated query does not mean that the relevant company" violated their publicity rights) (emphasis added). Plaintiffs' only response to Stability's arguments that system capabilities (or Text Prompts) do not appropriate identities or exist "on or in products" is to cite an irrelevant case involving video game avatars that resemble retired National Football League Players, which (unlike here) appropriated the players' identities through their likenesses in an observable way. (Opp. at 21 n.10); *see also Davis v. Elec. Arts Inc.*, No. 10–cv–03328, 2012 WL 3860819 (N.D. Cal. Mar. 29, 2012), *aff'd*, 775 F.3d 1172 (9th Cir. 2015).[5]

*Second*, "whether Plaintiffs' names are associated with [] AI imaging outputs and whether that harms Plaintiffs' commercial identities" (Opp. at 20) is neither relevant nor operative to the legal sufficiency of their allegations. The Complaint contains no allegations that the ***Stability Defendants*** used Plaintiffs' names in Text Prompts to create output images associated with Plaintiffs' names. And Plaintiffs' unsupported position that name (and thereby identity) appropriation occurs where output images allegedly similar to Plaintiffs' artwork are associated with their names by those who recognize their styles (Opp. at 20) would upend modern intellectual property law. No artist would need to bring a copyright claim and satisfy its elements if they could simply bring a publicity right claim alleging their names were misappropriated because infringing artwork is nonetheless "associated with their name" by those who recognize their art.

Plaintiffs ***do not cite a single case*** that supports their novel theory of identity appropriation. Indeed, every case they cite demonstrates an actual, observable use of an individual's name or likeness in a way that actually appropriated their identity as a human being for commercial

---

[5] Underlying Plaintiffs' position is the assumption that the use of a name is automatically an appropriation of the named person's identity as a human being. But as Stability Defendants showed in their opening brief, name use and identity appropriation are not synonymous, and Plaintiffs failed to allege the latter. (Mot. at 18–20.)

advantage. *See*, *e.g.*, *White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1396, 1399 (9th Cir. 1992) (holding defendants appropriated Vanna White's commercial interests in her identity by using a robot made to resemble White in a commercial for a VCR that was circulated to the public). Plaintiffs also puzzlingly discuss the Ninth Circuit's purported "interpretation of style protected by the right of publicity" in *Waits v. Frito-Lay, Inc.*, even though Plaintiffs affirmatively abandon any style-based right of publicity claim. (Opp. at 20–21 (discussing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992)).) In any event, *Waits*, contrary to Plaintiffs' assertion, does not hold that "style" is protected by the right of publicity—it differentiates between voice misappropriation, which is susceptible to tort liability, and style misappropriation, which is not. *Waits*, 978 F.2d at 1100–01.[6]

*Third*, Plaintiffs' oblique references to advertising use do not save their claims. Nowhere in the Complaint do Plaintiffs cite a single advertisement in which any of their names were used to "advertise an AI generated image" (Opp. at 21); to "promote Defendants' AI Image Product" (*id.*); "to advertise art" (Compl. ¶ 205); or to "advertise the ability of [Defendants'] systems to generate artwork 'in the style' of Plaintiffs' work" (Compl. ¶ 210). Plaintiffs argue that the Stability Defendants are requiring a "heightened standard of specificity" by seeking more than "conclusory" allegations. (Opp. at 21.) On the contrary, the Stability Defendants are simply arguing for the application of *Twombly* and its progeny. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007) (requiring sufficient "factual matter" and "more than labels and conclusions"). If there were any such advertisements—and there are none—one would expect a 44-page Complaint (or an Opposition to a Motion to Dismiss) to cite at least one of them. Plaintiffs do not even ask the Court for leave to plead specific advertisements that used any of their names—because none exist—instead

---

[6] The Court also held that Tom Waits's ***identity*** had been misappropriated by a voice impersonator because such impersonation invaded "his right of publicity to control the use of his identity as embodied in his voice," an attribute "as distinctive and personal as a face." 978 F.2d at 1100 (citation omitted). As Stability explained in its opening brief, there is no equivalently personal appropriation here. (Mot. at 13.)

doubling down on the contention that conclusory allegations are enough. Moreover, to the extent that Plaintiffs' allegations rely on the ability to type names as Text Prompts or any (currently missing) specific allegations of using names to advertise output images, such allegations would be insufficient as a matter of law—points that Plaintiffs ignore. (Mot. at 15–16); (Opp. at 20–23).[7]

\* \* \*

In sum, Plaintiffs' right of publicity claims must be dismissed with prejudice as failing on the merits and as preempted by the Copyright Act.

### E. Count VI Should Be Dismissed Because It Is Preempted.

Plaintiffs' unfair competition claims are preempted by federal law because in substance they allege unauthorized copying. (Mot. at 23–24.) Plaintiffs' arguments to the contrary fail.

While Plaintiffs contend that their unfair competition claims require examination of "extra elements," thereby saving them from preemption, Plaintiffs fail to explain how any extra element "makes the right asserted qualitatively different from those protected under the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089–90 (9th Cir. 2005). Indeed, that Plaintiffs' unfair competition claims are predicated in part on alleged DMCA violations does not render their unfair competition claims as a whole outside realm of copyright where their claims are explicitly premised in part on alleged copyright infringement. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089–90 (9th Cir. 2005), is of no help to Plaintiffs, as that case considered whether a claim of ***intentional interference with contractual relations***, based on the use of software in violation of a user agreement, was preempted by the Copyright Act. Plaintiffs' unfair competition claims involve no such contractual element.

Plaintiffs contend that this case is "not merely about the ***reproduction*** of Plaintiffs' art, but

---

[7] As stated in Stability Defendants' Motion, Plaintiffs also cannot plausibly allege a knowing use of their names, a direct connection between the use of their names and a commercial purpose, or resulting injury. Mot. at 22–23. Plaintiffs fail to meaningfully respond to these arguments, citing only cases that do not even involve the statutory-specific element of knowing use (*see* Opp. at 20, discussing *White v. Samsung*, 971 F.2d at 1399), and cases standing for the uncontroversial position that non-celebrities may have economic interests in their identities (Opp. at 21).

also the unauthorized *use*, and those claims are not equivalent to any of the exclusive rights of copyright." (Opp. at 23.) But Plaintiffs' unfair competition claims are explicitly premised on alleged infringement of Plaintiffs' copyrights, not some undefined "use" of Plaintiffs' artwork that, in Plaintiffs' view, is beyond the Act's protection. (*See* Compl. ¶ 224.) The Copyright Act and *Dastar* preemption prohibit such claims. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998) (holding unfair competition claim preempted where complaint "expressly bases [its] unfair competition claim on rights granted by the Copyright Act"); *Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co.*, *Inc.*, 170 F. Supp. 3d 1249, 1267–68 (C.D. Cal. 2016) (holding a claim is subject to dismissal under *Dastar* preemption where rooted in the allegation that "Defendants have failed to obtain the permission of the author of the 'idea, concept, or communication'").

Plaintiffs' unfair competition claims should be dismissed with prejudice, because in substance they allege acts of copyright infringement and DMCA violations, and amendment would therefore be futile. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (affirming dismissal of copyright-based unfair competition claim with prejudice).[8]

### F. Plaintiffs' Declaratory Relief Claim Should be Dismissed.

Plaintiffs' defense of their declaratory relief claim ignores or misconstrues the Stability Defendants' arguments and the law.

Plaintiffs' focus on Federal Rule of Civil Procedure 57's cautioning that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate" misses the point. Whether some other remedy could be pursued is a ***different question*** than whether the declaratory relief being sought serves no useful purpose because it is a "superfluous . . . cause of action to determine issues that are identical and subsumed within existing causes of action," *Lykkeberg*, 2012 WL 1099773, at *4 (N.D. Cal. Apr. 2, 2012) or "will not resolve any issues that

---

[8] Additionally, to the extent Plaintiffs' DMCA claims are dismissed, their unfair competition claims premised on DMCA violations must also be dismissed with prejudice. *See Mohanna v. Carrington Mortg. Servs. LLC*, No. 18-cv-02563, 2018 WL 3730419, at *8 (N.D. Cal. Aug. 6, 2018) (dismissing unfair competition claim after dismissing predicate claims).

1  adjudication of" the substantive counts "will not also resolve," *Tsakeda Pharm. Co., Ltd. v. Mylan*
2  *Inc.*, 62 F. Supp. 3d 1115, 1127 (N.D. Cal. 2014).

3  To the latter question, Plaintiffs have no real response.  They list purported rights and issues
4  that could be clarified by their declaratory relief claim (Opp. at 24), but those purported rights and
5  issues are no different than those raised in their other counts alleging that Stability Defendants
6  violated the various statutes listed in their declaratory relief count.  Plaintiffs also point to no
7  analogous cases in which a claim for declaratory relief was allowed to proceed.[9]  That is because
8  courts regularly dismiss claims for declaratory relief as serving no useful purpose where, as here,
9  the issues in question are subsumed within another count.  *See*, *e.g.*, *Lykkeberg*, 2012 WL 1099773,
10 at *5 (dismissing superfluous declaratory relief claims with prejudice).  Plaintiffs also incorrectly
11 assert that *In re Adobe Systems* rejected Stability Defendants' argument and "denied the defendant's
12 motion to dismiss plaintiffs['] count for declaratory relief even though it was based on the
13 underlying claims."  (Opp. at 24 n.13.)  The plaintiffs in that case did not even bring a claim that
14 could potentially be duplicative of their claim for declaratory relief—they sought a declaration
15 "clarifying Adobe's ***ongoing*** contractual obligation" and ***did not*** separately bring a claim for breach
16 of contract.  66 F. Supp. 3d 1197, 1222–23 (N.D. Cal. 2014) (emphasis in original).[10]

17 Plaintiffs' claim for declaratory relief should be dismissed with prejudice.

18 **III.   CONCLUSION**

19 For the foregoing reasons, Plaintiffs' complaint should be dismissed with prejudice.

---

[9] Plaintiffs' citation to *Maryland Casualty Co. v. Witherspoon* is unavailing.  Opp. at 24 (discussing *Maryland Cas. Co. v. Witherspoon*, 993 F. Supp. 2d 1178 (C.D. Cal. 2014).  That case involved only one count—a claim for declaratory relief—and is therefore irrelevant to the question before the Court.  993 F. Supp. 2d at 1181.

[10] Plaintiffs also make a half-hearted attempt to distinguish *Takeda Pharmaceutical.* (Opp. at 24.)  But just as the court found plaintiffs' claim for declaratory relief (seeking a declaration that defendants had infringed their patent) served no useful purpose because it was redundant of their substantive claim (which sought relief for infringement of their patent), Plaintiffs' declaratory relief claims here are redundant of their other claims.  *See Takeda Pharm.*, 62 F. Supp. 3d at 1127 ("Count II will not 'serve a useful purpose' or 'terminate and afford relief from the uncertainty, insecurity, and controversy' here because it is duplicative of Count I.").

Dated: July 3, 2023

Respectfully submitted,

*s/ Paul M. Schoenhard*

Mark A. Lemley (State Bar No. 155830)
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 898-2055
Facsimile: (646) 906-8657
Email: mlemley@lex-lumina.com

Nicole M. Jantzi (*pro hac vice*)
Paul M. Schoenhard (*pro hac vice*)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
801 17th Street NW
Washington, DC 20006
Telephone: (202) 639-7254
Email: nicole.jantzi@friedfrank.com
       paul.schoenhard@friedfrank.com

Michael C. Keats (*pro hac vice*)
Amir R. Ghavi (*pro hac vice*)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Email: michael.keats@friedfrank.com
       amir.ghavi@friedfrank.com

*Counsel for Defendants*
*Stability AI, Inc. and Stability AI Ltd.*