1  COOLEY LLP
   ANGELA L. DUNNING (212047)
2  adunning@cooley.com
   KAYLA BLAKER (*pro hac vice*)
3  kblaker@cooley.com
   J. ASHETON LEMAY (*pro hac vice*)
4  alemay@cooley.com
   3175 Hanover Street
5  Palo Alto, California 94304-1130
   Telephone:    (650) 843-5000
6  Facsimile:    (650) 849-7400

7  JUDD D. LAUTER (290945)
   jlauter@cooley.com
8  3 Embarcadero Center, 20th Floor
   San Francisco, California 94111
9  Telephone:    (415) 693-2000
   Facsimile:    (415) 693-2222

10
11 *Counsel for Defendant Midjourney, Inc.*

12              **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                **SAN FRANCISCO DIVISION**

15

16 SARAH ANDERSEN, an individual;        Case No. 3:23-cv-00201-WHO
   KELLY MCKERNAN, an individual; KARLA
17 ORTIZ, an individual,                 **REPLY IN SUPPORT OF DEFENDANT**
                                         **MIDJOURNEY, INC.'S MOTION TO DISMISS**
18     Individual and Representative Plaintiffs, **PLAINTIFFS' COMPLAINT AND TO STRIKE**
                                         **CLASS CLAIMS**
19         v.
                                         Date:        July 19, 2023
20 STABILITY AI LTD., a UK corporation;  Time:        2:00 p.m.
   STABILITY AI, INC., a Delaware        Courtroom: 2, 17th Floor
21 corporation; MIDJOURNEY, INC., a      Judge:       William H. Orrick
   Delaware corporation; DEVIANTART, INC.,
22 a Delaware corporation,
                                         Trial Date: None
23                    Defendants.        Date Action Filed: January 13, 2023

24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  ALL OF PLAINTIFFS' CLAIMS AGAINST MIDJOURNEY SHOULD BE DISMISSED .................... 1

    A.   Plaintiffs Fail to Adequately Plead Copyright Infringement (Claims 1, 2) ........... 1

        1.   Plaintiffs have not identified any registered works allegedly infringed ...................................................................................... 1

        2.   Plaintiffs fail to state a claim for direct infringement ................................. 2

        3.   Plaintiffs fail to state a claim for vicarious infringement ........................... 7

    B.   Plaintiffs Fail to Adequately Plead a Violation of the DMCA (Claim 3) .............. 7

    C.   Plaintiffs Fail to Plead Any Violation of their Publicity Rights (Claims 4, 5) .............................................................................................................. 10

    D.   Plaintiffs Fail to State a Claim for Unfair Competition (Claim 6) ...................... 12

        1.   Plaintiffs fail to state a claim under the Lanham Act ............................... 12

        2.   Plaintiffs fail to state a claim under the UCL ........................................... 12

        3.   Plaintiffs fail to state a claim for unfair competition under common law ...................................................................................................... 13

    E.   Plaintiffs' Claim for Declaratory Relief (Claim 7) Is Duplicative and Improper ...................................................................................................... 13

III. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN UNDER RULE 12(F) ............... 13

IV.  CONCLUSION .......................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

4

**Cases**

5

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   744 F.3d 595 (9th Cir. 2014) ........................................................................................ 7

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................... 8

7

8

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
   459 U.S. 519 (1983) ..................................................................................................... 3

9

*Atlantic Recording Corp. v. Howell*,
   554 F. Supp. 2d 976 (D. Ariz. 2008) ............................................................................ 4

10

11

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015) ..................................................................................... 4, 5

12

13

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
   2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) .............................................................. 5

14

*Blizzard Ent'mt, Inc. v. Lilith Games (Shanghai) Co.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) ....................................................................... 5

15

16

*Brooks v. Thomson Reuters Corp.*,
   2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........................................................... 11

17

18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................................................... 12

19

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ....................................................................................... 3

20

21

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ..................................................................................................... 12

22

23

*Doe 1 v. GitHub, Inc.*,
   2023 WL 3449131 (N.D. Cal. May 11, 2023) .......................................................... 8, 9

24

*Eastwood v. Sup. Ct.*,
   149 Cal. App. 3d 409 (1983) ...................................................................................... 13

25

26

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..................................................................................... 15

27

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ..................................................................................... 7

28

1
2

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

3
4

*Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*,
  2018 WL 659105 (N.D. Cal. Feb. 1, 2018) ................................................................. 13

5

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................... 11

6
7

*Facebook, Inc. v. Power Ventures, Inc.*,
  2009 WL 1299698 (N.D. Cal. May 11, 2009) .............................................................. 2

8
9

*Football Association Premier League Ltd. v. YouTube, Inc.*,
  297 F.R.D. 64 (S.D.N.Y. 2013) .................................................................................. 14

10
11

*Fox Broad. Co. Inc. v. Dish Network, L.C.C.*,
  905 F. Supp. 2d 1088 (C.D. Cal. 2012), *aff'd sub nom.* 747 F.3d 1060 (9th Cir.
  2014) ............................................................................................................................... 4

12
13

*FPX, LLC v. Google, Inc.*
  276 F.R.D. 543 (E.D. Tex. 2011)................................................................................. 15

14

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ....................................................................... 11

15
16

*Free Speech Sys., LLC v. Menzel*,
  390 F. Supp. 3d 1162 (N.D. Cal. 2019) (Orrick, J.)...................................................... 9

17
18

*Fuzzy Logic Prods., Inc. v. Trapflix, LLC*,
  2015 WL 12791508 (C.D. Cal. Nov. 20, 2015)............................................................. 6

19

*ICONICS, Inc. v. Massaro*,
  192 F. Supp. 3d 254 (D. Mass. 2016) ........................................................................... 9

20
21

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*,
  2015 WL 12712311 (C.D. Cal. Dec. 16, 2015) ............................................................ 6

22
23

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984)....................................................................................... 6

24

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017)...................................................................................... 10

25
26

*Maryland Casualty Co. v. Witherspoon*,
  993 F. Supp. 2d 1178 (C.D. Cal. 2014) ...................................................................... 13

27
28

*Microsoft Corp. v. My Choice Software, LLC*,
  2017 WL 5643210 (C.D. Cal. Oct. 10, 2017)............................................................... 2

COOLEY LLP
ATTORNEYS AT LAW

iii

**REPLY I/S/O MIDJOURNEY'S
MOTION TO DISMISS AND/OR STRIKE
CASE NO.: 3:23-CV-00201-WHO**

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page(s)

3

*Mollman v. Zoetop Bus. Co.*,
  2022 WL 17207103 (C.D. Cal. Sept. 16, 2022)............................................................ 8

4

*Montz v. Pilgrim Films & Television, Inc.*,
  649 F.3d 975 (9th Cir. 2011)................................................................................... 10

5

6

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
  2017 WL 5664996 (C.D. Cal. Sept. 14, 2017)........................................................... 5

7

8

*Narell v. Freeman*,
  872 F.2d 907 (9th Cir. 1989)..................................................................................... 6

9

*Nat'l Bus. Dev. Sercs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
  299 F. App'x 509 (6th Cir. 2008) .............................................................................. 5

10

11

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2003)................................................................................... 6

12

13

*Papasan v. Dometic Corp.*,
  2017 WL 4865602 (N.D. Cal. Oct. 27, 2017)............................................................. 7

14

15

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
  167 F. Supp. 2d 1114 (C.D. Cal. 2001) ..................................................................... 2

16

17

*Perfect 10 v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007)................................................................................ 4, 7

18

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................... 10

19

20

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
  668 F.3d 1148 (9th Cir. 2012)................................................................................... 6

21

22

*Schneider v. Cal. Dep't. of Corr.*,
  151 F.3d 1194 (9th Cir. 1998)................................................................................... 3

23

*Schneider v. YouTube, LLC*,
  2023 WL 114226 (N.D. Cal. Jan. 5, 2023) ............................................................... 7

24

25

*Schneider v. YouTube, LLC*,
  2023 WL 3605981 (N.D. Cal. May 22, 2023) ......................................................... 15

26

27

*Stevens v. CoreLogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018)..................................................................................... 9

28

*UAB "Planner5D" v. Facebook, Inc.*,
  2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) (Orrick, J.) ....................................... 1

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Vulcan Golf LLC, v. Google Inc.*,
   254 F.R.D. 521 (N.D. Ill. 2008) ............................................................. 14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................... 15

**Statutes**

17 U.S.C.
   § 106(3) ........................................................................................................ 4
   § 301 ...................................................................................... 10, 12, 13
   § 504(c) ....................................................................................................... 14
   § 1202(b) ...................................................................................................... 8

**Other Authorities**

Federal Rule of Civil Procedure
   8 .................................................................................................................... 2
   11 .................................................................................................................. 3
   12(f) ............................................................................................................ 13
   23(b)(2) ...................................................................................................... 15
   57 ................................................................................................................ 13

Patry on Copyright
   § 12:13 .......................................................................................................... 6
   § 22:174 ...................................................................................................... 14

Restatement (Second) of Torts § 652C cmt. d (1977) ............................... 10

Cooley LLP
Attorneys at Law

v

Reply i/s/o Midjourney's
Motion to Dismiss and/or Strike
Case No.: 3:23-cv-00201-WHO

## I.   INTRODUCTION[1]

Plaintiffs' opposition to Midjourney's motion to dismiss is a model of "diffusion."  Rather than clarifying the conclusory and often confusing allegations in their Complaint, Plaintiffs further obfuscate, misconstruing Midjourney's arguments, disregarding established law, and inventing new, unpleaded theories—anything but identify *facts* to support their claims.  Worse still, they say they do not have to.  They claim they need not identify *any* registered work purportedly used to train Midjourney, *any* specific output that allegedly infringes a registered work, *any* example of Midjourney removing copyright management information, or *any* instance in which Midjourney has used their names to violate their publicity rights.  Plaintiffs go so far as to argue that it is "immaterial" to their copyright claims whether Midjourney has ever been used to generate an image that is substantially similar in protected expression to any registered work.  But none of this is consistent with the law or Plaintiffs' pleading burden, which requires more than speculative grievance and finger-pointing. All claims against Midjourney should be dismissed.

## II.   ALL OF PLAINTIFFS' CLAIMS AGAINST MIDJOURNEY SHOULD BE DISMISSED

### A.   Plaintiffs Fail to Adequately Plead Copyright Infringement (Claims 1, 2)

#### 1.   Plaintiffs have not identified any registered works allegedly infringed

Plaintiffs concede that Ortiz and McKernan have no "material that was registered" when they filed suit (Opp. 4 n.2) but carry on as if this concession is not fatal.  (Opp. 6 ("Midjourney directly infringes … *Plaintiffs'* work).)  It is.  Under well-settled authority, ignored in the Opposition, Ortiz and McKernan's infringement claims are barred for lack of a copyright registration and cannot be amended, necessitating dismissal with prejudice.  (*See* Mot. 7–8 (citing *UAB "Planner5D" v. Facebook, Inc.*, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019) (Orrick, J.)).)

Dismissal is also required as to Andersen.  The Complaint alleges that she owns registrations for "sixteen collections that include Works used as Training Images," but never identifies any such "Works." (¶ 28; Exs. 1–16.)  It also cites a website purportedly showing that works she allegedly "created and owns a copyright interest in" were included in the LAION-5B training set (*id.* & n.1),

---

[1] Unless otherwise stated, capitalized terms not defined herein are as defined in Midjourney's motion to dismiss; citations to "¶ _" and "Ex." are to the Complaint's paragraphs and exhibits; all emphases are added; and internal citations and quotation marks are omitted.

1   but never alleges that any work appearing there is registered.[2]  It is thus impossible to tell from the

2   Complaint which of Andersen's *registered* works, if any, were allegedly trained on by *any* Defendant,

3   much less Midjourney.  This falls well short of satisfying Rule 8.  (*See* Mot. 8–10 (citing cases).)

4   Plaintiffs ignore Midjourney's authorities, citing instead (at Opp. 4) to cases holding merely

5   that plaintiffs need not allege "*every* copyright relied on, *every* individual image … infringed, [and]

6   *every* image … that does infringe."  *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d

7   1114, 1120 (C.D. Cal. 2001).  None holds that a copyright plaintiff can survive dismissal without

8   identifying *any* allegedly infringed registered work, as Plaintiffs seek to do here.  *See id.* at 1121

9   (complaint alleged copyrights in specific pictures and "specifically identifie[d] websites where

10   infringing conduct can be found"); *Microsoft Corp. v. My Choice Software, LLC*, 2017 WL 5643210,

11   at *3 (C.D. Cal. Oct. 10, 2017) ("three specific instances" sufficient); *Facebook, Inc. v. Power

12   Ventures, Inc.*, 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009) (finding sufficient allegations that

13   Facebook owns copyright in all of its webpages and defendants copied the entire website).

14   **2.      Plaintiffs fail to state a claim for direct infringement**

15   Plaintiffs assert that Midjourney committed direct copyright infringement in four ways:

16   (1) by copying and training its model on unspecified "protected works"; (2) by "distributing Stable

17   Diffusion"; (3) by "distributing" the Midjourney platform, which they claim "is itself an infringing

18   derivative work"; and (4) by "generating and distributing output images which are infringing

19   derivative works." (Opp. 5.)  None of these theories holds water.

20   **No Infringement by "Training"**: In support of their first theory of infringement (premised

21   on how the Stable Diffusion and Midjourney models were trained), Plaintiffs falsely assert that

22   Midjourney has "conceded" that the Complaint "set forth detailed facts showing Midjourney's use"

23   of their works "for training." (Opp. 6 (citing Mot. 9).)  Not remotely.  As the Motion observes, the

24   Complaint alleges that only *Stability*, *not* Midjourney, trained Stable Diffusion.  (Mot. 9 (citing ¶¶

25   1–3, 25, 27, 33, 57–58, 107).)  No matter what Stable Diffusion was trained on, Plaintiffs cannot

26   state a claim against Midjourney based on training in which it played no (alleged or actual) role.

27

28   ---

[2] Plaintiffs use this same artful language—"created and owns a copyright interest in"—to refer to
Ortiz and McKernan's unregistered works (¶¶ 29, 30), negating any inference of a registration.

Plaintiffs also allege that Midjourney trained its AI model on, and thereby copied, a "subset of the images used to train Stable Diffusion"—"millions" of the "five billion" on which the latter was allegedly trained.  (¶¶ 34, 57, 150, 152.)  But they do not say what this subset consists of, much less identify *any* registered Work by Andersen it supposedly included.  (*See* Mot. 9 (citing ¶¶ 144, 152).)  Plaintiffs insist they do not have to, urging that the Court can draw a "reasonable inference" that Midjourney trained its model on "*Plaintiffs' art*" merely because Stability allegedly did.  (Opp. 6–7.)  Such inference is not "reasonable" or even logical.  *See Associated. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (court may not assume that plaintiff "can prove facts that it has not alleged"); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts need not "accept as true … unwarranted deductions").  Nor is it even directed to the relevant inquiry: whether Midjourney trained its model on any *registered* Work of *Andersen*—the only named Plaintiff with a copyright registration.  Absent well-pleaded allegations establishing that most basic fact, Plaintiffs' training theory necessarily fails.[3]

**No Infringement by "Distribution"**: Plaintiffs' second theory—that Midjourney infringes by "distributing Stable Diffusion, which contains compressed copies of the training images, as part of the Midjourney Product" (Opp. 5, 7)—is also untenable.  Leaving aside the facially implausible assertion that Stable Diffusion "contains" billions of compressed image files,[4] the Complaint nowhere alleges that *Midjourney* "distributes" Stable Diffusion.  This unpleaded theory should be disregarded.  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (on 12(b)(6) motion, courts "*may not* look beyond the complaint to … a memorandum in opposition").

Even as to purported "distribution" of the Midjourney platform, the Complaint is devoid of well-pleaded facts.  It includes a single conclusory allegation that Midjourney "distributes the Midjourney Product" (¶ 34), but any reference to "distribution" of a "product" is plainly a misnomer.   As Plaintiffs correctly acknowledge, the Midjourney platform is a web-based

---

[3] Midjourney strongly disputes that training an AI model on publicly available images to enable the generation of new, never before-seen works is anything but fair use. Midjourney reserves all rights to assert fair use and other affirmative defenses should any claim ultimately survive dismissal.

[4] This allegation betrays a striking lack of basic knowledge about how generative AI models work. As Plaintiffs allege, the Stable Diffusion software is freely available for download by the public. (¶ 53.) Had Plaintiffs bothered to inspect that software as part of a reasonable pre-suit investigation under Rule 11, they would have found no factual basis for this allegation.

Cooley LLP
Attorneys at Law

3

Reply i/s/o Midjourney's
Motion to Dismiss and/or Strike
Case No.: 3:23-cv-00201-WHO

subscription *service* offered through "an internet-chat system called Discord." (¶ 136; *see also* ¶ 135 ("Midjourney released the first version of its *service* in March 2022"); ¶ 137 ("Midjourney allows anyone to sample its *service* for free"); ¶ 139 ("*subscribers* also receive access to the Midjourney *web app*… which lets users access the Midjourney *service* through a *web interface*").)

Under the Copyright Act, "distribution" requires "actual dissemination of a copy" by sale or other transfer of ownership, or by rental, lease, or lending. *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1162 (9th Cir. 2007); 17 U.S.C. § 106(3).  Unless a copy "changes hands" in one of these ways, no distribution has taken place. *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008).  *Accord Fox Broad. Co. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1106 (C.D. Cal. 2012), *aff'd*, 747 F.3d 1060 (9th Cir. 2014).  Even "making an unauthorized copy of a copyrighted work available to the public does not violate a copyright holder's exclusive right of distribution" unless and until dissemination of one or more copies occurs.  *Atlantic Recording*, 554 F. Supp. 2d at 983.  Web-based services, like Midjourney, are accessed, not disseminated or distributed via copies.  Plaintiffs' distribution theory, thus, fails as a matter of law.

**No Infringement of "Derivative Work" Right**: Plaintiffs' third theory is factually unsupported.  The Midjourney platform cannot be an unauthorized "derivative work" if it was never trained on any registered Work by Andersen, a fact Plaintiffs fail to plead, as discussed above.

The theory is also legally unsound.  The Second Circuit considered and rejected a virtually identical characterization of the derivative work right in *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015).  There, an organization representing thousands of published authors claimed that a Google search feature, which relied on digital scans of plaintiffs' entire books as inputs to generate snippets and data about the books as outputs, infringed their right to prepare derivative works.  *Id*. at 225.  The Second Circuit disagreed, explaining that because the digital copies created by Google were hidden from access by the public, and the search function did not permit access "in any substantial way to a book's expressive content" other than the snippets, the program was beyond the "statutory definition of a derivative work, or of the logic that underlies it."  *Id*. at 226.

Here, Plaintiffs never explain how a complex AI software model that was trained on millions of images, "relies on complicated mathematics, linear algebra, and a series of algorithms[,]

and requires powerful computers and computer processing to recognize underlying relationships in the data" (¶ 70), substantially borrows from the protected expression of any (unidentified) registered work by Andersen.  Even if the Court were to entertain Plaintiffs' far-fetched allegation that the Midjourney platform stores "compressed copies" of those training images (¶¶ 18, 58, 65, 134), *Authors Guild* counsels that the derivative works right is not implicated by a web application that relies on publicly inaccessible copies of copyrighted works to generate outputs that themselves do not substantially borrow from the protected expression of those works. 804 F.3d at 226–27. (*See also* Mot. 10–11.)  At most, Plaintiffs' unfounded theory of Midjourney-as-image-database is just a recasting of their first (defective) theory of direct infringement by copying. (*See supra*, pp. 2–3.)

**No Infringement by "Output"**: Plaintiffs' final theory is that any output of Stable Diffusion, and in turn Midjourney, must be "infringing derivative works." (Opp. 8.)  They argue that they can avoid identifying any examples of purportedly infringing Midjourney output by alleging "direct copying" and can jettison the firmly established substantial similarity requirement altogether. (Opp. 8–9.)  Such arguments reflect a miscomprehension of applicable law.

Plaintiffs conflate whether they need to plead examples of infringement with whether they need to prove substantial similarity, but *they need to plead both*.  **First**, it is well-settled that a copyright plaintiff must plead at least some representative examples of infringement. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *4 (N.D. Cal. Apr. 15, 2020) (dismissing claim for failure to plead examples); *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) (same); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (same).  There is no exception to this requirement in cases alleging "direct copying," and Plaintiffs cite no decision holding otherwise.

Here, Plaintiffs do not identify any Midjourney output supposedly constituting an infringing derivative or copy of any registered Work of Andersen.  *Not one*.  This is remarkable, considering Plaintiffs' allegations that Midjourney's service is accessible through Discord, where "*everyone can see each other's Text Prompts, and the images that result*" (¶ 136), and that "Imposters" have sold "Fakes" of Andersen's works. (¶¶ 171–73.)  If Plaintiffs had any facts to support their output-based claims, they should have pleaded them.  Dismissal is required on this basis alone.

**Second**, Plaintiffs argue that they need not plead substantial similarity of output, but that is wrong.  "In order to infringe the derivative right, *there must be substantial similarity in protectible expression between the parties' works*."  4 PATRY ON COPYRIGHT § 12:13 (collecting cases).  The Ninth Circuit has rejected the exact argument Plaintiffs advance here, namely, that a "derivative work" is defined to encompass "any work based on a copyrighted work," such that substantial similarity need not be alleged.  *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).

Undeterred, Plaintiffs cite several cases holding that a showing of substantial similarity is not required for claims based on wholesale "direct copying."  *See Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153–54 (9th Cir. 2012) (entire song performed); *ITC Textile Ltd. v. Wal-Mart Stores Inc.*, 2015 WL 12712311, at *4 (C.D. Cal. Dec. 16, 2015) ("undisputed evidence" that defendant "copied each of ITC's designs in their entirety").  Plaintiffs apparently confuse the concept of "direct copying" for something like "copying directly."  But, as their own cited cases make clear, "direct copying" occurs only when a work is reproduced "*in toto*."  *ITC Textile*, 2015 WL 12712311, at *5.  No analysis of substantial similarity is needed in that context as *everything* is copied—protectible and unprotectible elements.  In all other instances, a showing of substantial similarity is required.  *See Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989) (infringement can be found "without application of a substantial similarity analysis … only when the defendant has engaged in virtual duplication of a plaintiff's entire work").  Indeed, "*even where the fact of copying is conceded*, no legal consequences will follow from that fact unless the copying is substantial."  *Newton v. Diamond*, 388 F.3d 1189, 1192–93 (9th Cir. 2003).

Here, Plaintiffs do not allege that Midjourney's platform duplicates entire copyrighted works as output, much less point to any example of that.  Nor have they otherwise attempted to show that any Midjourney output is substantially similar to any registered Work of Andersen.  *See Fuzzy Logic Prods., Inc. v. Trapflix, LLC*, 2015 WL 12791508, at *4 (C.D. Cal. Nov. 20, 2015) (dismissing copyright claim that was "devoid of any comparisons of protectable elements").  *Plaintiffs allege just the opposite*—that no output "is likely to be a close match" for any training image (¶ 93) and that output is so visually *dis*similar as to be unrecognizable absent CMI (¶¶ 192, 193).  Thus, Plaintiffs have not only failed to plead the requisite substantial similarity as to

Midjourney output; they cannot do so without contradicting their own allegations—a fatal defect that cannot be cured by amendment.  (*See* Mot. 10–11 (citing *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014)).)

### 3.      Plaintiffs fail to state a claim for vicarious infringement

Midjourney cited authority (Mot. 14) requiring dismissal of the vicarious infringement claim on the ground that it improperly seeks to hold Midjourney both directly and vicariously liable for the same conduct, i.e., creating allegedly infringing output.  Plaintiffs' Opposition does not address this argument, conceding the point.  *See Papasan v. Dometic Corp.*, 2017 WL 4865602, at *18 (N.D. Cal. Oct. 27, 2017) (collecting cases).  Dismissal with prejudice is appropriate.

Even if Plaintiffs could maintain contradictory claims for direct and vicarious infringement, their vicarious liability claim would still fail.  **First**, they have not pleaded any act of direct infringement by Midjourney users—an essential element, as the Opposition concedes (at 10).  *See also Perfect 10*, 508 F.3d at 1173.  Plaintiffs try to sidestep this defect by appealing to the same argument debunked above, namely, that they do not need to identify any examples of infringement because every output—no matter what it looks like—is necessarily a derivative work.  (Opp. 10.)  Plaintiffs cite no authority for that position, and it is not the law.  (*Supra*, pp. 6–7.)  **Second**, any contention that Midjourney had the "right and ability" to stop purported direct infringement through an unspecified redesign or simply ceasing to operate altogether is inconsistent with the law.  *See Schneider v. YouTube, LLC*, 2023 WL 114226, at *2 (N.D. Cal. Jan. 5, 2023).  Were it otherwise, this element would always be satisfied.  **Third**, as explained in the Motion (at 13), that Midjourney receives "flat periodic payments for service" from its users, without more, is insufficient to show the requisite direct financial interest in the alleged infringement.  *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).  Plaintiffs' only response is to recite their (inadequate) allegations that Midjourney receives subscription fees (Opp. 11), without confronting Midjourney's authority.  (Mot. 13.)  That does not save their defective claim.

### B.      Plaintiffs Fail to Adequately Plead a Violation of the DMCA (Claim 3)

Plaintiffs claim "Midjourney knowingly removed or altered CMI from Plaintiffs' Works" and "distributed copies of the Works" with altered or removed CMI in violation of 17 U.S.C. §

1202(b).  (Opp. 13.)  However, there are no facts to support these conclusory allegations, and the facts Plaintiffs do allege negate any claim.[5]  Dismissal should be with prejudice.

**No Alteration**: Although the § 1202(b)(1) claim is ostensibly premised on allegations that Midjourney "removed *or altered*" CMI, Plaintiffs do not plead that their CMI has ever appeared in "altered" form.   Rather, their theory (albeit unfounded) is that "Defendants 'train[ed] Stable Diffusion on [Plaintiffs' Works] and design[ed] it to *omit any CMI* as part of the output.'" (Opp. 13 (quoting ¶ 183); *see also* ¶ 184.)  Plaintiffs' claim, thus, is for "*removal* of CMI," not alteration.

**No Removal**: Plaintiffs also fail to plead facts to establish that Midjourney removed CMI in violation of § 1202(b)(1).  To the extent Plaintiffs claim that CMI was removed in training Stable Diffusion (Opp. 13), once again, only *Stability* is alleged to have done that training.  (¶¶ 1–3, 33.)

The Complaint also fails to identify any work by any Plaintiff that Midjourney allegedly used to train its own model (and from which it could have removed CMI).  Plaintiffs claim that they identified such works "with specificity," citing allegations purportedly amounting to an admission that Midjourney "is trained on data sets comprised of licensed materials which include Plaintiffs' works." (Opp. 15.)  But the cited paragraphs from the Complaint say no such thing.  Paragraphs 2 and 101–110 allege that *Stability* (not Midjourney) used training images from the LAION dataset, and paragraphs 148–151 merely quote Midjourney's founder as confirming that it used "open data sets that are published" to train its model; there is no mention of Plaintiffs.  Accordingly, there is no basis for any claim that *Midjourney* removed Plaintiffs' CMI, whether in training or from output.

**No Distribution**: Plaintiffs plead no facts showing "distribution" of altered CMI in violation of § 1202(b)(2) (Opp. 13 (quoting ¶ 189)), and "[t]hreadbare recitals" of statutory language "do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Doe 1 v. GitHub, Inc.*, 2023 WL 3449131, at *12 (N.D. Cal. May 11, 2023) (dismissing claim as "Plaintiffs plead no specific facts regarding the allegedly inaccurate CMI Copilot once produced alongside output").   Again, Plaintiffs' allegation is that Midjourney "omit[s] *any* CMI." (¶ 183.)

**No Distribution of Plaintiffs' Works with CMI Removed**: Plaintiffs identify no Works

---

[5] *Mollman v. Zoetop Bus. Co.*, 2022 WL 17207103 (C.D. Cal. Sept. 16, 2022), is no help to Plaintiffs.  There, plaintiff survived dismissal by pleading a specific instance in which defendants removed CMI from an otherwise identical work.  *Id.* at *3.  There are no similar facts here.

that Midjourney allegedly distributed as output without their CMI, mandating dismissal.  (*See* Mot. 15 (citing *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (Orrick, J.) (dismissing for failure to "identify which photographs had CMI removed")).)  Tellingly, Plaintiffs do not address this Court's holding in *Menzel*.  Nor do they refute the myriad other cited cases from this Circuit requiring a showing that CMI was removed from otherwise *exact copies* of works.  (Mot. 15.)[6]  They *cannot* plead such facts without contradicting themselves.  As the Motion calls out, and Plaintiffs do not dispute, their DMCA claim is based on allegations that output is so dissimilar to their Works as to be unrecognizable without their CMI.  (Mot. 15 (citing ¶¶ 192–93).)

Plaintiffs also misinterpret § 1202(b)(3) by arguing that creating copies in training an AI model somehow constitutes "distribution."  (Opp. 13.)  It does not.  As explained above, "distribution" in the copyright context refers to public *dissemination*, not private acts.  (*Supra*, pp. 3–4.)

**No Scienter**:  Absent facts showing that Midjourney removed or altered CMI, there is no plausible allegation of scienter: an act never allegedly performed cannot have been performed with culpable intent.  Nor can Plaintiffs plausibly plead that Midjourney "knows or has a reasonable basis to know" that removing CMI "*will aid infringement*," *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674–75 (9th Cir. 2018), when they fail to identify *even one* allegedly infringing image ever produced on its platform.  Plaintiffs cannot overcome this pleading defect by appealing to how Stable Diffusion was trained (which reflects no conduct or state of mind of Midjourney); their faulty premise that every output is an infringing derivative work (which, as discussed above, is contrary to law); or misrepresentations that Midjourney has "acknowledged the dubious legality" of its service (Opp. 17) (which is not alleged and contradicted by their own pleading).  (*Cf.* ¶ 146–49 (attributing statements to Midjourney's founder that the platform was trained on "open data sets," this is "okay," and "no laws" prohibit such training).  The only logical inference such allegations permit is that Midjourney acted in the belief that its conduct complied with the law.

Plaintiffs argue that Judge Tigar's decision in *GitHub* supports their request for an inference of scienter from wholly conclusory allegations.  (*Id.* at 16–17.)  It does not.  The *GitHub* complaint

---

[6] Plaintiffs misconstrue *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016), to argue that they need not plead CMI removal from exact copies.  In *ICONICS*, however, defendant allegedly made an exact copy of plaintiff's code and replaced the original CMI with its own.  *Id.*

1   included examples of allegedly infringing output from which CMI was removed and extensive

2   allegations concerning defendants' knowledge of the DMCA, including having published articles

3   on the topic.  2023 WL 3449131, at *12.  Plaintiffs do not even attempt to allege similar facts here.

4          **C.     Plaintiffs Fail to Plead Any Violation of their Publicity Rights (Claims 4, 5)**

5          Plaintiffs retreat from claiming publicity rights in artistic "styles" and refashion their claims

6   around Midjourney having "designed its [platform] to respond to the names of any artist."  (Opp.

7   18; *see id.* at 20 (claims are based on "use of Plaintiffs' *names*—not their *styles*").)  This tactical

8   shift cannot salvage the claims from dismissal, due to copyright preemption or otherwise.

9          **First**, despite the refocused emphasis on purported name appropriation, the gravamen of

10  Plaintiffs' claims remains that Midjourney allegedly designed its platform to allow users to create art

11  in Plaintiffs' styles.  (¶¶ 204–212; Opp. 18 (highlighting "functionality 'to create images based on

12  'in the style' prompts").)  In attempting to block use of their names as touchstones for particular art

13  styles, Plaintiffs impermissibly seek to create a backdoor regime for "state-law protection for fixed

14  ideas" in contravention of the Copyright Act.  *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d

15  975, 979 (9th Cir. 2011).  The Ninth Circuit has repeatedly held that assertion of name-based

16  publicity rights to police "unauthorized distribution and republication" of works, rather than

17  "exploitation of [one's] likeness on an unrelated product or in advertising," is pre-empted under 17

18  U.S.C. § 301.  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008, 1016 (9th Cir. 2017) (dismissing

19  claim and collecting cases).  (*See* Mot. 18–19; Dkt. 50 (DeviantArt) at 14–15 & n.11.)

20         **Second**, Midjourney's designing its platform to respond to any permutation of text prompts

21  in a manner "akin to a text query passed to an internet search engine" (¶ 24) is not "use" of

22  Plaintiffs' names, much less an actionable one.  That a Midjourney user *could* enter a text prompt

23  containing Plaintiffs' names does not mean they ever have.  Plaintiffs plead no such example,

24  despite Midjourney prompts and output being publicly available.  (¶ 136.)  In any event, name

25  appropriation occurs where defendants take "advantage of [plaintiff's] reputation, prestige, or other

26  value associated with [her identity], for purposes of publicity."  Restatement (Second) of Torts

27  § 652C cmt. d (1977).  Publicity rights are concerned with public-facing exploitation of a person's

28  name or likeness for promotion or to falsely imply endorsement.  *See Perkins v. LinkedIn Corp.*,

53 F. Supp. 3d 1190, 1216 (N.D. Cal. 2014) (finding appropriation where emails implied endorsement by plaintiffs); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 810 (N.D. Cal. 2011) (finding appropriation where "sponsored stories" used names to imply endorsement). Plaintiffs allege nothing like that here, and courts have outright rejected theories akin to the one they advance.

In *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), for instance, the court rejected plaintiffs' publicity claims, reasoning that users' ability to search defendant's online subscription platform for "detailed cradle-to-grave dossiers" on millions of individuals did not amount to use of plaintiffs' names "for promotional purposes." *Id.* at *1, *3–4. Likewise, in *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, the court dismissed, with prejudice, a claim predicated on Facebook's alleged disclosure of plaintiffs' personal information to app developers, finding such conduct "categorically different from the type of conduct made unlawful by this tort, such as using a plaintiff's face or name to promote a product or service." 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019).  Under these cases, the fact that Midjourney allegedly designed its platform to understand and generate visual works in response to user prompts of all kinds, including prompts referencing artists, is "categorically different" from use or appropriation of any Plaintiff's name for promotional purposes.  Dismissal with prejudice is appropriate.

**Third**, to the extent these claims are based on any other purported "use" of Plaintiffs' names, dismissal is likewise warranted.  Nowhere in the Complaint, Opposition, or even the new materials they submit with it (Dkt. 68) do Plaintiffs identify a single time Midjourney has ever used *Plaintiffs' names*, in advertising or otherwise, in its "apps, website, [or] social media posts." (Opp. 18 (citing ¶ 205 (charging in conclusory fashion that Midjourney "used Plaintiffs' names to advertise art 'in the style' of Plaintiffs' work" without any supporting facts)); *see also* Reply RJN, submitted herewith.)  That is not surprising; Midjourney never has.  But the dissembling does not end there. Plaintiffs next argue that Midjourney misrepresents that it "does not promote the ability of its AI Image Product to respond to specific artist's names." (*Id.*)  The Motion does not say that, and the argument is a digression.  The question is not what general functionality Midjourney has touted, but whether it has ever promoted that functionality using *Plaintiffs' names*.  As no such use is alleged, this claim must be dismissed.

### D.     Plaintiffs Fail to State a Claim for Unfair Competition (Claim 6)

#### 1.     Plaintiffs fail to state a claim under the Lanham Act

To Midjourney's surprise, Plaintiffs claim that the Complaint's references to the Lanham Act were deliberate and reimagine they have pleaded that Midjourney "falsely designated" outputs "in a manner likely to cause confusion, mistake, or deception as to their origin, sponsorship, or approval … by the Plaintiffs." (Opp. 20–21.)  They do not.  Nor, in decrying the "proliferation of AI-generated art created without Plaintiffs' consent but associated with Plaintiffs' names" (Opp. 20 (citing ¶ 212)), do they cite a single example.  In any event, any Lanham Act claim is barred.  As the Motion notes (at 20) and Plaintiffs ignore, the Supreme Court has held that the Lanham Act does not authorize a claim for failure to provide attribution for the expression of ideas—precisely what Plaintiffs claim here—lest it disrupt the "carefully limited and focused" attribution right under the Copyright Act and create a "species of mutant copyright law." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34, 37 (2003).  This claim should be dismissed with prejudice.

#### 2.     Plaintiffs fail to state a claim under the UCL

**Unlawful prong**: Plaintiffs implicitly concede that their UCL claim is pre-empted under 17 U.S.C. § 301 to the extent based on alleged copyright infringement.  (Mot. 20; Opp. 21 (urging their claim is "predicated on unlawful acts independent of" infringement).  However, the only other "unlawful" conduct they allege is violation of the DMCA, which they fail to plead, as discussed above.  Their UCL "unlawful" claim thus fails for lack of a predicate violation.

**Unfair prong**: Plaintiffs claim they have "alleged Midjourney's unlawful misappropriation and copying of their art for their own commercial gain without attribution o[r] permission." (Opp. 21.)  That is just a repackaged claim for "copyright infringement," which is preempted.  Further, under the UCL, an "unfair" act must be one that either (1) "threatens an incipient violation of an *antitrust law*, or violates the policy or spirit of one of those laws" or (2) "otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999).  The "harm" must be to competition in the market generally, not Plaintiffs. *Id*. Plaintiffs have not alleged conduct that violates antitrust law or harms competition.

**Fraud prong**: Plaintiffs' effort to invoke the fraud prong also fails, as "fraud" is nowhere

pleaded (or mentioned) in the Complaint.  Moreover, a UCL plaintiff must plead their own reliance on the fraudulent conduct.  *See Equinox Hotel Mgmt., Inc. v. Equinox Holdings, Inc.*, 2018 WL 659105, at *13 (N.D. Cal. Feb. 1, 2018) (explaining that most courts conclude that plaintiffs must allege their own reliance, not reliance by third parties).  Plaintiffs do not and cannot do so.

**3.      Plaintiffs fail to state a claim for unfair competition under common law**

Plaintiffs assert that Midjourney appropriated their "property," and that this suffices to plead common law unfair competition.  (Opp. 22.)  Not so.  Plaintiffs do not identify the "property" at issue, but if they mean their artworks (as suggested by their citation to ¶¶ 155–59, i.e., their copyright claim), this claim is pre-empted by 17 U.S.C. § 301.  Otherwise, if by "property" Plaintiffs meant their names, they would merely be restating their defective common law right of publicity claim (Claim 5).  *See Eastwood v. Sup. Ct.*, 149 Cal. App. 3d 409, 420 (1983) (describing elements).

**E.      Plaintiffs' Claim for Declaratory Relief (Claim 7) Is Duplicative and Improper**

Plaintiffs have no good response to Midjourney's arguments for dismissal of the duplicative declaratory relief claim.  They correctly cite Federal Rule of Civil Procedure 57 as providing that the "existence of another adequate remedy does not preclude a declaratory judgment *that is otherwise appropriate*," but courts have held that such relief is *not* appropriate where, as here, it is purely duplicative of other claims, and defective ones at that.  (Mot. 21.)  Plaintiffs' reliance on a cherry-picked quote from *Maryland Casualty Co. v. Witherspoon,* 993 F. Supp. 2d 1178 (C.D. Cal. 2014), is even more puzzling.  It noted that courts "possess discretion in determining whether … to entertain" a claim for declaratory relief "even when the suit otherwise satisfies the subject matter jurisdictional prerequisites," acknowledged that courts should "avoid duplicative litigation," and stayed the declaratory relief claim in favor of a state court action involving overlapping issues.  *Id.* at 1182–85.  Finally, the examples Plaintiffs provide of declaratory relief the Court *could* grant (declaring unlawful that Midjourney allegedly "stores copyrighted material" or "removes [CMI]" or "uses artists' names" (Opp. 23)), serve only to illustrate that this claim is needlessly duplicative.

**III.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN UNDER RULE 12(F)**

**The "Damages Class" Should Be Stricken**: Plaintiffs' defense of the alleged "Damages Class" amounts to little more than a bare assertion that common issues predominate.  (*Id.* at 24.)  They

1   do not, and it is inconceivable that they could.  Common issues do not even prevail among *named*

2   *Plaintiffs*.  On the threshold issue of ownership, two of the three Plaintiffs admit they have no

3   registration, precluding standing to pursue a copyright claim.  (Opp. 4 n.2.)  Beyond that, numerous

4   other fact-intensive, individualized issues must also be addressed for each work: (1) is it a "foreign

5   work" exempt from the registration requirement; (2) is it sufficiently original to warrant copyright

6   protection; (3) who owns the copyright; (4) whether use was licensed or otherwise authorized; (5)

7   whether any output generated by Midjourney users is substantially similar; (6) whether the output is a

8   fair use; and (7) in assessing damages, the value of the work.[7]  (Mot. 23–24.)  And that's just for the

9   copyright claims; other claims will be subject to individualized proof over separate subject matter.

10          Plaintiffs do not deny that each of these issues will need to be determined for each of the

11   *millions* of at-issue images and innumerable putative class members.  Instead, they argue that because

12   "much of the information related to the scope of the works infringed is primarily in Midjourney's

13   control," it would be premature to strike their class claims before discovery.  (Opp. 24.)  This is a

14   red herring.  Plaintiffs allege that Midjourney "appropriat[ed] millions of copyrighted images" from

15   publicly accessible datasets to which Plaintiffs have equal access, and that all prompts and at-issue

16   outputs are publicly available.  (¶¶ 103, 136, 144, 149.)  No amount of discovery could change the

17   overwhelmingly individualized and fact-intensive nature of the claims pleaded, or the impossibility

18   of pursuing millions of individuals' disparate claims on a class-wide basis.

19          Notably, Plaintiffs cite no precedent in which like claims received class certification and do

20   not meaningfully engage with Midjourney's cited cases.  (Mot. 22–24.)  For example, the same

21   issues that doomed class certification in *Football Association Premier League Ltd. v. YouTube,*

22   *Inc.*, 297 F.R.D. 64 (S.D.N.Y. 2013)—namely, "validity and ownership of the copyright, its

23   licensing … (including by way of implied licenses and equitable estoppels) and amount of injury

24   and damages, as well as the over-arching questions of substantial similarity and fair use"—are all

25   at issue here, too, and then some.  *Id*. at 66.  Likewise, certification was denied in *Vulcan Golf LLC*

26

---

27   [7] Plaintiffs gesture at the availability of statutory damages as a means of avoiding individualized damages assessments (Opp. 24 n.10), but the fact that some putative plaintiffs with timely

28   registered copyrights could elect them in lieu of actual damages, 17 U.S.C. § 504(c), only highlights further individualized issues and ignores that statutory damages are often grounded in estimates of actual damages or defendant's alleged illicit profits.  *See* 6 Patry on Copyright § 22:174.

*v. Google Inc.*, 254 F.R.D. 521 (N.D. Ill. 2008), because, as here, adjudicating secondary infringement claims against Google on a class-wide basis would have necessitated "potentially millions" of individualized inquiries concerning ownership of the at-issue works. *Id*. at 528.  And Plaintiffs' attempt to distinguish *FPX, LLC v. Google, Inc.* 276 F.R.D. 543, 551 (E.D. Tex. 2011), is unavailing.  Class claims could not be maintained there due to the "highly fact-intensive analysis involved in determining the validity of a registered trademark."  (Opp. 25.)  Assessing the validity of a registered copyright (ownership and originality) is no less fact-intensive and individualized.

Just a few weeks ago, Judge Donato denied certification in a putative copyright and CMI class action, decrying such claims as "poor candidates for class-action treatment."  *Schneider v. YouTube, LLC*, 2023 WL 3605981, at \*6 (N.D. Cal. May 22, 2023).  To wit, "[e]very copyright claim" not only "turns upon facts which are particular to that single claim of infringement," but "is also subject to defenses that require their own individualized inquiries."  *Id*.  The decision also noted "obvious barriers to classwide proof" for CMI claims, finding that the individualized inquiry necessary to determine copyright ownership was, alone, "enough to deny certification," not to mention that, to prove double-scienter, "each putative class member would need to show, with specific evidence for each work-in-suit, how the removal of [CMI] induced, enabled … or concealed an identifiable infringement."  *Id.* at \*11-13.  None of these findings turned on the record or any discovery in that case, and they plainly apply here.  Allowing Plaintiffs to pursue class-wide claims that, by their very nature, can never be certified would serve no legitimate purpose.

**The "Injunctive Relief Class" Should Be Stricken**: The "Injunctive Relief Class" fails for the same reasons, and because it is coextensive with the "Damages Relief Class," which seeks individualized damages awards.  Plaintiffs do not refute, and thereby concede, that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986–87 (9th Cir. 2011).

## IV.   CONCLUSION

The Complaint fails to state any factually or legally cognizable claim against Midjourney. All claims against Midjourney should be dismissed, and the class claims stricken.

COOLEY LLP
ATTORNEYS AT LAW

REPLY I/S/O MIDJOURNEY'S
MOTION TO DISMISS AND/OR STRIKE
CASE NO.: 3:23-CV-00201-WHO

1

2      Dated: July 3, 2023                          COOLEY LLP

3                                                   By: */s/ Angela L. Dunning*
4                                                        Angela L. Dunning
                                                         Judd D. Lauter
5                                                        Kayla Blaker
                                                         J. Asheton Lemay
6
7                                                   Attorneys for Defendant MIDJOURNEY, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28