1    LATHAM & WATKINS LLP
     Andrew M. Gass (SBN 259694)
2      andrew.gass@lw.com
     Michael H. Rubin (SBN 214636)
3      michael.rubin@lw.com
     Brittany N. Lovejoy (SBN 286813)
4      britt.lovejoy@lw.com
     505 Montgomery Street, Suite 2000
5    San Francisco, California  94111-6538
     Telephone:  415.391.0600
6
7    *Attorneys for Defendant DeviantArt, Inc.*

8                          **UNITED STATES DISTRICT COURT**

9                          **NORTHERN DISTRICT OF CALIFORNIA**

10                         **SAN FRANCISCO DIVISION**

11

12   SARAH ANDERSEN, an individual;            CASE NO. 3:23-cv-00201-WHO
     KELLY MCKERNAN, an individual;
13   KARLA ORTIZ, an individual,               **DEFENDANT DEVIANTART, INC.'S
                                               REPLY IN SUPPORT OF ITS MOTION
14            Individual and Representative Plaintiffs,   TO DISMISS**

15            v.                               Date:     July 19, 2023
                                               Time:     2:00 p.m.
16   STABILITY AI LTD., a UK corporation;      Place:    Courtroom 2 - 17th Floor
     STABILITY AI, INC., a Delaware corporation;   Before:   Hon. William H. Orrick
17   MIDJOURNEY, INC., a Delaware corporation;
     DEVIANTART, INC., a Delaware corporation,
18
              Defendants.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT .............................................................................................................. 2

    A.   Plaintiffs' Undifferentiated Allegations Violate Rule 8(a)(2) ............................ 2

    B.   Plaintiffs' Claims Against DeviantArt All Fail On The Merits ........................... 3

        1.   Plaintiffs' Claim For Direct Copyright Infringement Fails ..................... 3

        2.   Plaintiffs' Claim For Vicarious Copyright Infringement Fails ................. 8

        3.   Plaintiffs' DMCA Claim Fails ................................................................. 9

        4.   Plaintiffs' Right-Of-Publicity Claims Fail ............................................. 11

        5.   Plaintiffs' Unfair Competition Law Claim Fails .................................... 13

        6.   Plaintiffs' Breach Of Contract Claim Fails ............................................ 14

        7.   Plaintiffs' Declaratory Judgment Claim Fails With The Other Claims ................................................................................................... 15

III. CONCLUSION ......................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

## CASES

4

5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................... 4

6

*Authors Guild v. Google, Inc.,*
    804 F.3d 202 (2d Cir. 2015)...................................................................................... 7

7

8

*Bespaq Corp. v. Haoshen Trading Co.,*
    No. 04-cv-3698, 2005 WL 14841 (N.D. Cal. Jan. 3, 2005)................................. 3, 4

9

10

*Bounce Exchange, Inc. v. Zeus Enterprise Ltd.,*
    No. 15-cv-3268, 2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) ............................. 11

11

*Cutler v. Enzymes,*
    No. 08-cv-04650, 2009 WL 482291 (N.D. Cal. Feb. 25, 2009)........................... 4

12

13

*Debartolo Corp. v. Fla. Gulf Coast Building & Constr. Trades Council,*
    485 U.S. 568 (1988).............................................................................................. 13

14

15

*Destfino v. Reiswig,*
    630 F.3d 952 (9th Cir. 2011) .................................................................................. 2

16

*Doe 1 v. Github, Inc.,*
    No. 22-cv-06823, 2023 WL 3449131 (N.D. Cal. May 11, 2023)........................ 11

17

18

*Edjer v. DHI Mortg. Co.,*
    No. 09-cv-1302, 2009 WL 1684714 (N.D. Cal. June 12, 2009).......................... 13

19

20

*Free Speech Sys. LLC v. Menzel,*
    390 F. Supp. 3d 1162 (N.D. Cal. 2019) ............................................................... 10

21

*ICONICS, Inc. v. Massaro,*
    192 F. Supp. 3d 254 (D. Mass. 2016) .................................................................. 11

22

23

*In re Jackson,*
    972 F.3d 25 (2d Cir. 2020).................................................................................... 12

24

25

*In re QuantumScape Sec. Class Action Litig.,*
    580 F. Supp. 3d 714 (N.D. Cal. 2022).................................................................. 12

26

*Iron Bridge Mortg. Fund, LLC v. Bank of Am., N.A.,*
    539 F. Supp. 3d 1030 (N.D. Cal. 2019)............................................................... 15

27

*Jarvis v. K2 Inc.,* 486 F.3d 526 (9th Cir. 2007) ............................................................ 7

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kinderstart.com LLC v. Google, Inc.*,
   No. 06-cv-2057, 2007 WL 831811 (N.D. Cal. Mar. 16, 2007) ................................................ 5

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ................................................ 7, 8

*Logan v. Meta Platforms*,
   No. 22-cv-01847, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) ................................................ 14

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ................................................ 9

*Malasky v. Esposito*,
   No. 16-cv-4102, 2019 WL 79032 (N.D. Cal. Jan. 2, 2019)................................................ 15

*Marchioli v. Pre-employ.com, Inc.*,
   No. 17-cv-1566, 2017 WL 8186761 (C.D. Cal. June 30, 2017)................................................ 6

*New Kids on the Block v. News Am. Pub., Inc.*,
   971 F.2d 302 (9th Cir. 1992) ................................................ 13

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   167 F. Supp. 2d 1114 (C.D. Cal. 2001) ................................................ 4

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ................................................ 9

*Perfect 10, Inc. v. Google, Inc.*,
   No. 04-cv-9484, 2010 WL 9479060 (C.D. Cal. July 30, 2010)................................................ 13

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ................................................ 8

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) ................................................ 9

*Schneider v. YouTube, LLC*,
   No. 20-cv-04423, 2023 WL 114226 (N.D. Cal. Jan. 5, 2023)................................................ 9

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
   143 F. Supp. 3d 1026 (N.D. Cal. 2015) ................................................ 2

*Sega Enterprises Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) ................................................ 8

*Sharma v. ARS Aleut Constr., LLC*,
   No. 21-cv-4004, 2021 WL 4554193 (N.D. Cal. Oct. 5, 2021) ................................................ 6

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ................................................ 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

*Valentine v. CBS, Inc.*,
    698 F.2d 430 (11th Cir. 1983) ................................................................................. 13

*VHT, Inc. v. Zillow Grp.*,
    918 F.3d 723 (9th Cir. 2019) ................................................................................... 9

## STATUTES

17 U.S.C. § 1202(b) ......................................................................................... 11, 12

17 U.S.C. § 1202(c) ............................................................................................... 12

17 U.S.C. § 411(a) .................................................................................................. 3

Cal. Civ. Code § 1559 ........................................................................................... 18

## OTHER AUTHORITIES

Restatement (Third) of Unfair Competition § 47 (1995) ........................................... 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

## I.      INTRODUCTION

From the start of this case, it has been something of a mystery why DeviantArt, in particular, is a defendant.  And Plaintiffs' opposition to DeviantArt's motion to dismiss only confirms that it makes no sense to try to tag the actor who *implements* an open-source image-generation tool with liability allegedly arising from its *creation*.

To try to get around the glaring problem that DeviantArt simply wasn't the one who engaged in the bulk of the conduct that they are complaining of, Plaintiffs are forced to concoct theories of liability so expansive that no court has ever recognized them, and so divorced from reality that they are contradicted by Plaintiffs' own allegations in portions of the Complaint that they now seek to run from.  With respect to the Section 1202 claim, to take just one illustrative example, the theory appears to be that DeviantArt is liable for another actor's removal of copyright management information ("CMI") because "DeviantArt's CEO admitted that DeviantArt took Stable Diffusion's open-source code," which "necessarily requires a level of understanding of what the underlying Stable Diffusion model does."  Dkt. No. 65 ("Opp.") at 16.  Why *implementing an open source software product with "a level of understanding" of what it does* would make the implementer *liable for the original developer's allegedly unlawful removal of copyright management information* is a link in the chain of reasoning left to the reader's imagination.

With respect to the copyright infringement claims at the heart of the Complaint, the technical deficiencies flagged in the opening brief condemn all of them.  Two named Plaintiffs evidently never registered their works, and the third has not alleged that the works she registered are those that were supposedly used by Defendants, let alone DeviantArt in particular.  But to the extent the Court nevertheless chooses to wrestle with the substance of the claims, they are baseless from the ground up.  The theory, we now know, is not just that every single output of a generative AI product is a prima facie act of copyright infringement for being an unauthorized "derivative work" of every single training image (a legal argument debunked in DeviantArt's opening brief). It is that Stable Diffusion somehow contains "compressed copies" of the billions of works it was trained on, with the result that a third party like DeviantArt who implements the open-source Stable Diffusion code "distributes" each of those copies.  Opp. at 7.  Putting to one side the *reality* that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1   this is not remotely how the technology at issue actually works, the problem for Plaintiffs is that

2   their own Complaint affirmatively *alleges* that this is not how the technology at issue works. To

3   the contrary, in fact, the Complaint alleges that the technology underlying Stable Diffusion is "an

4   alternative" to storing actual copies of works. Dkt. No. 1 ("Compl.") ¶ 75(c). That is why,

5   according to the Complaint, when a user inputs a prompt, the model uses "statistical and

6   mathematical methods" to generate an output that will rarely be a "close match" for any particular

7   content in the training set. *Id.* ¶¶ 75(c), 93. As between the facts alleged in the Complaint and the

8   gloss Plaintiffs seek to apply to them in their opposition, only the former matter—and they

9   preclude Plaintiffs' new theory.

10         The other causes of action in the Complaint are equally flawed. No, the contract that forms

11   the basis for Plaintiffs' breach claim does not contain a promise that DeviantArt will never offer a

12   generative AI product. *Cf.* Opp. at 22. No, there are no factual allegations in the Complaint to

13   support the conclusory allegation—one that would be easily fleshed out with publicly available

14   facts if they existed—that DeviantArt, in particular, advertised its product using Plaintiffs' names.

15   *Cf.* Opp. at 18–19. The list of infirmities, discussed below, is as long as the list of claims asserted.

16         The bottom line is that whatever the problems with Stable Diffusion (if any), they are not

17   DeviantArt's problems. The law accordingly compels the conclusion that the claims against

18   DeviantArt be dismissed, with prejudice.

19   **II.**     **ARGUMENT**

20         **A.**     **Plaintiffs' Undifferentiated Allegations Violate Rule 8(a)(2)**

21         DeviantArt's opening brief detailed the numerous ways in which Plaintiffs repeatedly

22   "lump[ed] together multiple defendants in one broad allegation," and why such "everyone did

23   everything allegations" fail to satisfy Federal Rule of Civil Procedure 8(a)(2). *E.g.*, Dkt. 49

24   ("MTD") at 7 (first quoting *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026,

25   1037 (N.D. Cal. 2015); and then quoting *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir.

26   2011)).[1]   Plaintiffs do not even attempt to distinguish their Complaint from the many others

27

28   ───────────────
[1] Plaintiffs assert that *Destfino* only involved Rule 9(b)'s heightened standard. Opp. at 4 n.5. That is wrong. *See* 630 F.3d at 959 (affirming district court's holding "that plaintiffs not only failed to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1   dismissed on similar grounds.  *See id.*  Instead, Plaintiffs selectively cite a handful of threshold

2   allegations that concern DeviantArt in particular—such as the unremarkable claims that

3   DeviantArt created and sells DreamUp, and "make[s] money from DreamUp"—and assert that

4   this "does satisfy Rule 8."  Opp. at 4.  But none of these prefatory allegations disentangles

5   DeviantArt's conduct from that of the other Defendants in subsequent allegations at the heart of

6   Plaintiffs claims, or addresses any of the concrete flaws DeviantArt identified in Plaintiffs'

7   pleading.  *See* MTD at 7–8.  As a result, and for the reasons DeviantArt has already given, the

8   Court should dismiss Plaintiffs' Complaint for failure to comply with Rule 8(a).

9              **B.      Plaintiffs' Claims Against DeviantArt All Fail On The Merits**

10                   **1.      Plaintiffs' Claim For Direct Copyright Infringement Fails**

11        Plaintiffs concede that the copyright infringement claims asserted by Plaintiffs McKernan

12   and Ortiz must be dismissed for lack of registration.  *See* Opp. at 5 n.6.  The remaining

13   infringement claims by Plaintiff Andersen should likewise be dismissed.

14                   **a.      Plaintiff Andersen Has Not Identified Any Registered Works**

15                        **That DeviantArt Allegedly Infringed**

16        To sufficiently allege compliance with the Copyright Act's registration requirement, *see*

17   17 U.S.C. § 411(a), a plaintiff must be able to show that her copyright registrations "cover[] the

18   content and matter that was allegedly infringed," *Bespaq Corp. v. Haoshen Trading Co.*, No. 04-

19   cv-3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005) (citation omitted).  Otherwise, the court

20   cannot determine whether the registrations cover the works at issue.  *Id.*  Here, Plaintiff Andersen

21   has alleged that she registered "sixteen collections" of works, and that some unspecified number

22   of works within an unidentified number of those collections were used as "Training Images."

23   Compl. ¶ 28.  But Plaintiffs have not alleged that any Defendant, much less DeviantArt in

24   particular, infringed those *collections* in their entirety, or identified which, if any, of the works

25   within them were infringed.  *See* Compl., Exs. 1–16 (identifying no individual works).  Because

26   the Complaint "does not identify which preexisting works in the registered [collections] have been

27

28   ———————————
     comply with Rule 9(b), but also with Rule 8(a)(2)'s 'short and plain statement rule,'" and rejecting
     argument that dismissal should have been limited to fraud claims subject to Rule 9(b)).

infringed by the defendants," *Bespaq*, 2005 WL 14841, at *2, Andersen's copyright claims must be dismissed.  Put differently, simply alleging that one owns registered works and that a defendant infringed an unidentified work does not suffice under the applicable pleading standard.

Resisting this conclusion, Plaintiffs cite one case:  *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001).  Even if *Cybernet*'s lax interpretation of Rule 8 survived *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that case concerns the identification of specific *infringing* works—not the settled legal requirement that a copyright plaintiff identify in its complaint the allegedly *infringed* work it has registered as a prerequisite to bringing suit.  *Cybernet* is thus inapposite here, where Andersen has not alleged even a single example of one of her registered works being allegedly infringed.  *Cf. Cutler v. Enzymes*, No. 08-cv-04650, 2009 WL 482291, at *3 (N.D. Cal. Feb. 25, 2009) (similarly distinguishing *Cybernet*).

### b.      Plaintiffs Do Not Plausibly Allege Direct Infringement As To DeviantArt

That threshold defect aside, Andersen has also not alleged that any particular registered work belonging to her has been infringed by *DeviantArt*.  The opening brief on this motion explains that, even taking Plaintiffs' allegations as true, DeviantArt is not liable for direct infringement because Plaintiffs did not allege that DeviantArt was involved in the development of Stable Diffusion, or otherwise participated in the "scraping" or "training" activity that forms the basis of Plaintiffs' claims.  MTD at 10–11.  Nor did Plaintiffs allege a single instance in which DreamUp (or any other of Defendants' models) created a substantially similar copy of one of the Plaintiffs' works (let alone a registered work), as is required to state a claim for infringement.  *Id.* at 11–12.

In response, Plaintiffs recast their claims—effectively conceding that DeviantArt played no role in the development of Stable Diffusion, and that DreamUp has not produced an image similar to Plaintiffs' works.  Instead, Plaintiffs now assert a theory predicated on the implausible suggestion that the open-source software program Stable Diffusion—and therefore DreamUp, by virtue of being an implementation of Stable Diffusion—*contains copies of all five billion images* on which Stable Diffusion was trained.  *See, e.g.*, Opp. at 2, 6–8.  In their opposition to Stability AI's motion, for example, Plaintiffs argue that an "inspection of Stable Diffusion" would reveal

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

the equivalent of "JPEG files" that, when "compare[d] [] to the original works," would appear "substantial[ly] similar[]." Dkt. 66 at 10-11.[2] From that frankly absurd factual predicate, Plaintiffs argue that DeviantArt committed direct copyright infringement by: (1) distributing to its users the "compressed copies" available in Stable Diffusion, which "forms the basis" of DreamUp; (2) distributing DreamUp, which Plaintiffs argue is *itself* an infringing "derivative work"; and (3) distributing output images that are, colloquially, "derived from" pre-existing works in Stable Diffusion's training corpus. *See* at Opp. at 6–9. These arguments fail at every turn.

   ***Plaintiffs Have Not Alleged And Cannot Plausibly Allege That DreamUp Distributes "Compressed Copies."*** Plaintiffs' revised theory of direct copyright liability hinges almost entirely on an implausible allegation that Plaintiffs' own Complaint contradicts: that Stable Diffusion contains "compressed copies" of each of the billions of images on which it was trained. *See, e.g.*, *id.* at 7–8. To underscore the improbability of what the opposition brief's reimagination of the Complaint is suggesting, recall that Plaintiffs allege not only that Stable Diffusion's training corpus includes "over five billion images," Compl. ¶ 57, but also that, under Stable Diffusion's open-source license, programmers and users have widely downloaded and adopted it, *id.* ¶¶ 53–54. Yet there is no suggestion that anyone has ever actually seen one of these "compressed copies," much less that Plaintiffs have found their works among them. It would be quite remarkable for Plaintiffs to have filed a complaint alleging such a facially fantastical set of facts.

   But they did not. Elsewhere, the Complaint explains what Plaintiffs know is true: that Stable Diffusion incorporates "statistical and mathematical" concepts *about* its training images, Compl. ¶ 75(c), which can be used to create *new* images that are not a match for any work in the model's training corpus, *see id.* ¶ 93. Accordingly, Plaintiffs affirmatively allege that a diffusion model is "an alternative" to storing actual copies of images. *Id.* ¶ 75(c). That pleaded description of diffusion technology bears no resemblance to the characterization, repeated over and over again

---

[2] If that were so, a reasonably diligent investigation of the Complaint's allegations would have uncovered such copies—particularly as the facts required for such an investigation were publicly available. Compl. ¶ 53 (admitting that Stable Diffusion was "released under a permissive open-source license" so that the entire program can be "download[ed] for free"); *cf. Kinderstart.com LLC v. Google, Inc.*, No. 06-cv-2057, 2007 WL 831811, at *1 (N.D. Cal. Mar. 16, 2007) (Rule 11 requires a "reasonable and competent inquiry" into pleadings or written motions).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1  in Plaintiffs' opposition brief, that Stable Diffusion is little more than a database that contains and

2  provides access to the billions of images on which it was trained.  *See, e.g.*, Opp. at 2, 6–8.  To the

3  extent any allegations in Plaintiffs' actual Complaint can be said to support that characterization

4  of Stable Diffusion, they expressly contradict the Complaint's core theory of how diffusion

5  technology works, and the Court can and should reject them as implausible.  *See Marchioli v. Pre-*

6  *employ.com, Inc.*, No. 17-cv-1566, 2017 WL 8186761, at *19 (C.D. Cal. June 30, 2017) (collecting

7  cases rejecting contradictory allegations as implausible); *Sharma v. ARS Aleut Constr., LLC*, No.

8  21-cv-4004, 2021 WL 4554193, at *2 (N.D. Cal. Oct. 5, 2021) ("While the Court is required to

9  assume plaintiff's allegations are true, the Court may disregard statements that are contradictory

10  and implausible."); *Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (finding theory

11  "implausible in the face of the contradictory [] facts alleged in [the] complaint").

12        Even if Plaintiffs had plausibly alleged that Stable Diffusion contains compressed copies

13  of its training images, that would still not support attributing liability to *DeviantArt*.  Plaintiffs'

14  opposition brief contends that DreamUp contains all of Stable Diffusion's five billion training

15  images, *and* that DeviantArt "disseminates copies" of these images to its users.  Opp. at 7.  But the

16  Complaint alleges no facts suggesting that DeviantArt "disseminates" anything to anyone except

17  the outputs of prompts that users submit (which, the Complaint alleges, are unlikely to resemble

18  any work from the training corpus).  More precisely, the Complaint does not allege that any users

19  receive or download "copies" of DreamUp itself.  To the contrary, it describes DreamUp as a

20  "web-based app" that "relies on Stability's Stable Diffusion software as its underlying software

21  engine."  Compl. ¶ 64.  So even if it were true that the proprietors of *Stable Diffusion* were

22  effectively distributing a software product containing compressed copies of billions of copyrighted

23  images (which it obviously is not), a company like DeviantArt that simply *implements* that product

24  and does not further distribute the software itself would not be unlawfully distributing anything.

25        ***Plaintiffs Fail To Allege DreamUp Is A Derivative Work.***  Plaintiffs also argue, in a single

26  perplexing paragraph, that DreamUp is itself a "derivative work."  Opp. at 7–8. This theory of

27  copyright liability fails because the factual allegations described in the brief (even if they were

28  pleaded in the Complaint, which they are not) do not describe an infringing "derivative work"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

under prevailing Ninth Circuit doctrine.  As discussed in DeviantArt's opening brief, in the Ninth Circuit, a follow-on creation cannot qualify as a "derivative work" of an antecedent one unless it is, in the copyright law sense, "substantially similar" to the original.  *See* MTD at 11–12.  Here, the allegedly infringed works are pieces of visual art.  The supposedly infringing derivative work is a piece of computer software.  Whatever the relationship between them, the latter simply cannot be a "derivative work" of the former, because the software product itself does not resemble the art works.  *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984); *see also Authors Guild v. Google, Inc.*, 804 F.3d 202, 225–26 (2d Cir. 2015) (infringement of derivative work right requires "re-present[ing] the protected aspects of the original," and does not apply to a software program that "does not allow access in any substantial way to a [work]'s expressive content").

***Plaintiffs Fail To Allege That DreamUp Distributes Derivative Outputs.***  Once the Court sets aside Plaintiffs' new theories based on the unpleaded (and false) contention that DreamUp contains billions of training images, all that remains is Plaintiffs' claim that *all* DreamUp's *outputs* are infringing derivatives.  As the argument goes, every image output by DreamUp is a derivative work because it is, in a sense, "derived exclusively from" the works in Stable Diffusion's training corpus, *see, e.g.*, Compl. ¶ 95—despite the fact that Plaintiffs have affirmatively pleaded that no DreamUp output is likely to be a "close match" to any particular Stable Diffusion training image, and thus any of Plaintiffs' works, *see, e.g.*, Compl. ¶ 93.  This theory of liability is expressly foreclosed by Ninth Circuit precedent.  As DeviantArt explained in its motion to dismiss and as noted above, the Ninth Circuit has long held that derivative works must be "substantially similar" to the original to support copyright liability.  *See* MTD at 11–12; *Litchfield*, 736 F.2d at 1357.[3]

Plaintiffs try to skirt this legal requirement by invoking the so-called "interpolat[ion]" process described in their opposition brief.  *See* Opp. at 8–9.  They seem to say that, because that process includes "latent images" (which are supposedly "copies of copyrighted images"), they have plausibly alleged "direct copying," and so need not allege that the final product of that process

---

[3] Plaintiffs cite *Jarvis v. K2 Inc.,* 486 F.3d 526 (9th Cir. 2007), but the defendant in that case had "incorporated"—*i.e.* reproduced "recognizable" parts of—Plaintiffs' photographs in a "collage" advertisement.  *Id.* at 530–32.  And the passage Plaintiffs cite concerns the difference between "derivative" and "collective" works, not the requirements for establishing an infringing derivative. *Id.* Nothing in *Jarvis* casts doubt on the substantial similarity requirement.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

is substantially similar to any individual image in Stable Diffusion's training corpus in order for that output to be deemed an infringing derivative work. *See id.*

Even crediting Plaintiffs' legal argument and garbled description of how diffusion technology works, Plaintiffs do not allege in their Complaint that this "interpolation" process *ever* occurred in connection with one of Plaintiffs' registered works. But more fundamentally, Plaintiffs present no reason why the bedrock principle that "[t]o prove infringement, one must show substantial similarity," *Litchfield*, 736 F.2d at 1357, should not apply to the analysis of whether, as Plaintiffs contend, DreamUp's output images are all infringing derivative works, Opp. at 8. There is no merit to the suggestion that the creation of an intermediate copy of a work—whether a "latent image[]" or otherwise, Opp. at 8–9—as part of a technological process necessarily makes the resulting output an infringing derivative, regardless of similarity (or lack thereof) to an original.[4] The cases Plaintiffs cite establish no such principle, but instead concern circumstances where there was no reasonable dispute about whether the ultimate use was an identical copy. *See* Opp. at 8 (citing *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1152 (9th Cir. 2012), which addressed unlicensed performance of entire songs, including on "venue's CD player").

## 2. Plaintiffs' Claim For Vicarious Copyright Infringement Fails

As DeviantArt's motion explained, Plaintiffs' claim of vicarious liability fails for three independent reasons: Plaintiffs have not plausibly alleged (1) any direct infringement; (2) that DeviantArt had the right and ability to control such infringement; or (3) that DeviantArt had a direct financial interest in that infringement. *See* MTD at 12–14.

*First*, Plaintiffs' opposition still fails to identify even one alleged act of direct infringement for which DeviantArt could be held secondarily liable. *See* MTD at 13; *supra* at 5. Plaintiffs' brief identifies only their argument that "each output image is itself an infringing derivative work." Opp. at 11. But that theory is wrong as a matter of law. *See supra* at 6.

---

[4] The Ninth Circuit's opinion in *Sega Enterprises Ltd. v. Accolade, Inc.*, for example, grappled with whether the creation of an intermediary copy was a fair use—but notably did not even discuss whether the creation of the intermediary copy meant that the final product was necessarily an infringing derivative. 977 F.2d 1510, 1518–28 (9th Cir. 1992). To the contrary, the Court reaffirmed that whether a "final product" is an infringement depends "solely on the degree of similarity between the [] infringed work" and that final product. *Id.* at 1518–19.

*Second*, Plaintiffs contend they have sufficiently alleged DeviantArt's ability to control infringement simply because DeviantArt could stop offering DreamUp, or could have designed it to ensure it "did not emit infringing derivative works." *See* Opp. at 11–12.  To begin, these theories appear nowhere in the Complaint, so Plaintiffs cannot rely on them now.  *See, e.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  They are also inconsistent with controlling precedent.  *See, e.g.*, *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (affirming dismissal of vicarious liability claim predicated on suggestion that defendants' product could be improved with a new system because "[n]owhere do[] [plaintiffs] explain what that system is, how it would function, or how much implementing such a system would cost"); *Schneider v. YouTube, LLC*, No. 20-cv-04423, 2023 WL 114226, at *2 (N.D. Cal. Jan. 5, 2023) ("A failure to change operations to avoid distribution of infringing content 'is not the same as declining to exercise a right and ability' to stop direct infringement by others." (quoting *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 746 (9th Cir. 2019))).  For good reason: If Plaintiffs were right that any defendant has a "right and ability" to stop infringement simply by shutting down its platform, this element would be satisfied in nearly every case.

*Third*, Plaintiffs repeat that, just because customers pay to use DreamUp, DeviantArt has a financial interest in the infringing activity.  *See* Opp. at 12.  For this idea, Plaintiffs cite *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017).  But they should have kept reading.  As DeviantArt explained, *see* MTD at 14, *Giganews* requires not only that a defendant have a financial interest in infringement on its platform in general, but that there be a "causal link between *the infringement of the plaintiff's own copyrighted works* and any profit to the service provider." 847 F.3d at 673 (emphasis added).  Plaintiffs have not pleaded any such link.

### 3. Plaintiffs' DMCA Claim Fails

#### a. Plaintiffs' DMCA Allegations Are Conclusory And Do Not State A Claim As To DeviantArt

Plaintiffs begin their defense of their Digital Millennium Copyright Act ("DMCA") claim

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1   by restating, at length, their conclusory allegations parroting the language of 17 U.S.C.

2   Section 1202(b).  *See* Opp. at 13–15.  As the Court explained in a decision Plaintiffs ignore, those

3   allegations do not satisfy the operative pleading standard.  *See Free Speech Sys. LLC v. Menzel*,

4   390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019); MTD at 15–16 (collecting cases).

5          To the extent any CMI was removed during the scraping or training of Stable Diffusion,

6   Plaintiffs have no meaningful response to the observation that DeviantArt played no alleged role

7   in that conduct—let alone engaged in conduct of any sort with the proscribed *intent*.  *See* MTD at

8   8, 15.  They emphasize repeatedly that Stable Diffusion's code is open-source, so that DeviantArt

9   could "understand[] . . . what [it] does."  *E.g.*, Opp. at 16.  But that "understanding" has nothing

10  to do with whether DeviantArt *removed or altered* CMI during Stability AI's alleged scraping or

11  training (much less its intent with respect to such acts).

12                   **b.      Plaintiffs Fail To Allege A Section 1202(b) Claim Involving**

13                           **Their "Works" Or Identical "Copies Of Works"**

14         Plaintiffs' DMCA claim also fails for the independent reason that they have not alleged

15  any conduct by DeviantArt involving their "works" or identical copies of those "works."  Section

16  1202(b)(3) prohibits distributing "works" or "copies of works" while knowing that CMI has been

17  removed or altered from those works.  And Section 1202(c) defines CMI only in relation to

18  "work[s]": it "means [certain] information conveyed in connection with copies . . . of a work."

19  As a result, courts have consistently held that Section 1202(b) does not apply to cases not involving

20  a "work" or identical "copy" of that work.  *See* MTD at 16–17 (collecting cases).  Aside from their

21  flawed "compressed copies" theory (which itself contains no allegation that DeviantArt ever

22  distributed any of Plaintiffs' particular artworks to anyone), Plaintiffs do not contend that

23  DeviantArt ever did anything with their "works" or identical "copies of works," or distributed such

24  "works" with removed or altered CMI.  Nor could they.  *See* Compl. ¶¶ 93, 192.

25         Instead, Plaintiffs dispute whether Section 1202(b) has such a requirement at all.  They

26  first claim that such a requirement is "nowhere to be found in Section 1202(b)."  Opp. at 1, 17.

27  But that ignores the law's reference to "works" or "copies of works."  *See* 17 U.S.C. § 1202(b),

28  (c).  Nor do Plaintiffs' cases help them.  In one, the defendant copied software code, stripped away

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

embedded copyright notices referring to the plaintiff, and replaced those headings with new ones claiming the defendant owned the copyright.  *See ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016).  No party raised any "identical copy" issue (presumably because, other than the replaced headers, the code *was* identical) and the court did not address it.  *Id.* at 272–73.  So too in *Bounce Exchange, Inc. v. Zeus Enterprise Ltd.*, No. 15-cv-3268, 2015 WL 8579023, at *1 (S.D.N.Y. Dec. 9, 2015), which concerned "replace[ment] [of] the terms 'bounce' and 'bouncex' [in copied code] with terms referring to [defendant]."[5]  Plaintiffs seem to suggest that, because the changes to the CMI within the code in these cases left that code no longer "identical" to the original, these cases implicitly rejected the requirement DeviantArt relies on.  *See* Opp. at 17.  But there is a vast difference between creating an identical copy of code that *only* lacks CMI, on one hand, and creating output images, as here, that are alleged to be *unrecognizably* different from original works.  *See* Compl. ¶¶ 93, 192.  The latter are simply not actionable under Section 1202.

### 4.   Plaintiffs' Right-Of-Publicity Claims Fail

Plaintiffs begin defending their right-of-publicity claims by abandoning a major aspect of their Complaint: they now limit these claims only to "DeviantArt's misuse of their names, not their artistic styles."  Opp. at 18.  *Cf.* Compl. ¶¶ 5, 8, 205 210, 214–15, 218, 221 (asserting "style" claims).  For that reason, this Court should dismiss with prejudice Plaintiffs' right-of-publicity claims to the extent they are based on anything other than the alleged use of "Plaintiffs' *names* in connection with [DeviantArt's] advertising and sale or [] products and services."  Opp. at 20.

But even so confined, and as explained in detail in DeviantArt's reply in support of its anti-SLAPP motion ("Anti-SLAPP Reply"), these claims fail several times over.

#### a.   Plaintiffs' Right-Of-Publicity Claims Are Preempted

Plaintiffs' abandonment of their "style" theory does not save their right-of-publicity claims from Copyright Act preemption.  Plaintiffs make no attempt to address the many cases that have

---

[5] Plaintiffs assert that *Doe 1 v. Github, Inc.*, No. 22-cv-06823, 2023 WL 3449131, at *13 (N.D. Cal. May 11, 2023), rejected this argument in yet another case involving software code.  *See* Opp. at 17 & n.13.  That is wrong.  The *Github* court did not address the identical-copy requirement or the cases adopting it.  *Compare* MTD at 16–17 (citing cases), *with Github*, 2023 WL 3449131, at *11–13.  There was no need to: the plaintiffs had alleged that defendants' service actually "reproduces licensed code" as output, *id.* at *2, and that defendants had intentionally altered their services to remove CMI from those identical reproductions, *id.* at *11.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1   rejected right-of-publicity claims—including claims of name appropriation—because the claims,

2   examined as a whole, (1) concerned material within the "subject matter" copyright and (2) asserted

3   rights "equivalent" to those granted by the Copyright Act.  17 U.S.C. 301(a); MTD at 18 n.10; *see*

4   Dkt. 50 ("Anti-SLAPP Mot.") at 18 n.14.  Plaintiffs also ignore case law expressly rejecting a

5   name-appropriation claim on implied or "conflict" preemption grounds.  For example, in *In re*

6   *Jackson*, 972 F.3d 25, 54–55 (2d Cir. 2020), the Second Circuit held that allowing a right-of-

7   publicity claim based on the use of a plaintiff's stage name to "accurately name [him] as the

8   performer" would "impermissibly interfere[] with the federal copyright framework," and therefore

9   was "barred by implied preemption."  *Id.*  So too here:  Despite formally abandoning their style-

10  based claims, their name-appropriation claim is a clear attempt to reach the same result by

11  "prohibiting" the use of their names as "accurate descriptions" of, or references to, their styles.  *Id.*

> ### b.   Plaintiffs Cannot Plausibly Allege A Right-Of-Publicity Claim

13          Plaintiffs do not try to defend their conclusory, repeated, and unsupported suggestion that

14  DeviantArt used their names—Sarah Andersen, Kelly McKernan, and Karla Ortiz—

15  "prominent[ly]" and "throughout" its "apps, website[s], [and] social media posts" to "advertis[e]"

16  DreamUp.  Compl. ¶¶ 208, 217, 219.   Despite the purported "prominen[ce]" of these

17  advertisements in Defendants' publicly available marketing, *id.* ¶ 219, Plaintiffs still do not

18  identify even a *single* instance in which *any* Defendant—much less DeviantArt—advertised

19  anything using one of Plaintiffs' names.  Plaintiffs just repeat the conclusory allegations from their

20  Complaint, which do little more than paraphrase the requirements of a right-of-publicity claim.

21  Opp. at 18–19.  The Court "need not accept as true allegations . . . that are merely conclusory" on

22  a motion to dismiss, and should thus disregard these allegations.  *In re QuantumScape Sec. Class*

23  *Action Litig.*, 580 F. Supp. 3d 714,  729 (N.D. Cal. 2022) (citation omitted).

24          The sole of right-of-publicity theory that therefore remains is that DeviantArt allegedly

25  violates Plaintiffs' rights because DreamUp can process user-supplied text prompts that include

26  their personal names.  But Plaintiffs ignore that the right of publicity does not prohibit the use of

27  a name to refer to an individual or their public activities.  *See* MTD at 19; *see also* Anti-SLAPP

28  Reply at 11–12. Because there is nothing unlawful about using an artist's name for the purpose of

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

referring to her work or "artistic style," there would be nothing unlawful about designing an application that can process such references. Nor do Plaintiffs explain how creating such an application is an "actual use" of their names in the first place. *See* MTD at 19–20; *see also Perfect 10, Inc. v. Google, Inc.*, No. 04-cv-9484, 2010 WL 9479060, at *13 (C.D. Cal. July 30, 2010). Because Plaintiffs' allegations of use are "vague and largely incoherent," their right-of-publicity claims should be dismissed. *Edjer v. DHI Mortg. Co.*, No. 09-cv-1302, 2009 WL 1684714, at *6 (N.D. Cal. June 12, 2009).

###  c. Plaintiffs' Claims Are Barred By The First Amendment

As for transformative use, Plaintiffs abandon their "style"-based claim to argue that, because DeviantArt has "referr[ed] to a Plaintiff by name to promote" DreamUp, the use is not transformative. Opp. at 21. True, once Plaintiffs' right-of-publicity claim is pared back this far— to the lone allegation that DeviantArt used their actual names to advertise its product—the allegations that gave rise to the asserted First Amendment defense have effectively been rescinded. But the problem Plaintiffs then run into, as explained above, is that they have failed to plausibly allege any such use. *See supra* at 12. And the only use Plaintiffs *have* plausibly alleged (and not abandoned)—that DeviantArt created a program that can *process* users' references to Plaintiffs' names—*does* clearly "raise grave questions as to constitutionality." *Valentine v. CBS, Inc.*, 698 F.2d 430, 433 (11th Cir. 1983); *see, e.g.*, *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) ("Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product . . . ."). The Court should refuse Plaintiffs' invitation to expand the right to include any truthful use of a personal name to "communicat[e] information." Restatement (Third) of Unfair Competition § 47 cmt. c (1995); *see Debartolo Corp. v. Fla. Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 574–76 (1988) (rejecting "construction of [a] statute . . . [that] poses serious questions . . . under the First Amendment").

### 5. Plaintiffs' Unfair Competition Law Claim Fails

In its opening brief, DeviantArt explained that Plaintiffs' sparsely pleaded unfair competition claims fail on all scores. MTD at 21–22. That remains the case. As to the Lanham

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1   Act, Plaintiffs' now claim that DreamUp "falsely designate[s] the origins of its output in a manner

2   likely to cause confusion."  Opp. at 23–24.  This claim is unpleaded, entirely conclusory, and

3   unsupported by any factual allegations in the Complaint.[6]  For the same reason, Plaintiffs have still

4   failed to allege the "passing off" that is necessary for their common law unfair competition claim.

5   *See* MTD at 24-25.  And as for the statutory unfair competition law claim, DeviantArt already

6   explained why the "unlawful" version of the claim fails.  *See id.* at 21.  And any other versions,

7   *see* Opp. at 24 (citing the "unfair" and, preposterously, "fraudulent" prongs), are absent from the

8   Complaint, *see* Compl. ¶ 223–26, and unsupported by any factual allegations therein.

9           **6.**      **Plaintiffs' Breach Of Contract Claim Fails**

10       Plaintiffs' breach of contract claim, like their others, reflects a misguided effort to assign

11   liability to the wrong actor.  The "breaches" of DeviantArt's Terms of Service ("ToS") that

12   Plaintiffs articulate are based on conduct by Stability AI, not DeviantArt.  *See* MTD at 22–23.

13   And the provisions Plaintiffs cite in their Complaint as supposedly requiring DeviantArt to prevent

14   Stability AI from engaging in that conduct actually require actually nothing of the sort.  *See id.*

15       Plaintiffs' opposition brief points to yet other (unpleaded) ToS provisions governing

16   authorized uses of content on DeviantArt's platform, but those provisions do not solve these

17   fundamental problems with Plaintiffs' breach of contract claim.  For example, Plaintiffs now rely

18   on section 16 of DeviantArt's ToS, which they contend gives DeviantArt a "limited-use license"

19   to use their copyrighted works "[f]or the sole purpose of enabling us to make your Content

20   available through the Service."  Opp. at 22; *see also, e.g.*, *id.* at 22–23 (citing section 19 of the

21   ToS, which governs what *users* "should not" do on DeviantArt's website, and section 5, which

22   gives DeviantArt "discretion" in "appropriate circumstances" to remove certain infringing works).

23   But all section 16 does, by its plain terms, is grant *DeviantArt* a license to do various things with

24   user content.  *See* Compl. Ex. 17 (ToS) at 7, 18.  If DeviantArt were to do other things with user

25   content beyond those authorized by section 16, those additional uses would not be affirmatively

26

27    [6] Plaintiffs also seem to base this claim on the idea that customers might think that a DreamUp-created work was actually created by Plaintiffs.  *See* Opp. at 23–24.  But "misattributed authorship"

28   claims like this are just the kind of "copyright claim[s] repackaged under a trademark statute" that courts have rejected.  *E.g., Logan v. Meta Platforms*, No. 22-cv-01847, 2022 WL 14813836, at *6–7 (N.D. Cal. Oct. 25, 2022).

LATHAM&WATKINS<sup></sup>

ATTORNEYS AT LAW
SAN FRANCISCO

14

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1    authorized.  But nothing about section 16, or anything else in the ToS, is a contractual commitment

2    that DeviantArt will not offer a generative AI tool, much less one chiefly developed by a third

3    party.

4          Plaintiffs also point to ToS provisions that prohibit the use of DeviantArt content for

5    commercial purposes absent user permission.  Opp. at 23.  Recognizing, as Plaintiffs must, that

6    they cannot show that DeviantArt breached this provision—including because it actually permits

7    DeviantArt to engage in commercial activity, *see* MTD at 22; ToS at 8, 19—Plaintiffs resort to the

8    "third-party beneficiary" doctrine.  Plaintiffs' theory, it seems, is that they are third-party

9    beneficiaries of the contract between DeviantArt, on one hand, and Stability AI, as a purported

10   user of DeviantArt, on the other.  However, there are no allegations in the Complaint that Stability

11   AI ever entered into the ToS.  Nor are there any allegations that Plaintiffs are the "expressly

12   intended" beneficiaries of that contract.  *See, e.g.*, *Iron Bridge Mortg. Fund, LLC v. Bank of Am.,*

13   *N.A.*, 539 F. Supp. 3d 1030, 1038–39 (N.D. Cal. 2019) (holding it is not enough that the contract,

14   "if carried out according to its terms, would inure to [the third party's] benefit"); *see also* Cal. Civ.

15   Code § 1559 (limiting this doctrine to contracts "made expressly for the benefit of a third person").

16   And even if these allegations existed, the third-party beneficiary doctrine would, at most, allow

17   Plaintiffs to sue *Stability AI* for its breaches; it would not make DeviantArt liable for breaches *by*

18   Stability AI.  The Court should dismiss Plaintiffs' breach of contract claim against DeviantArt.

19          **7.     Plaintiffs' Declaratory Judgment Claim Fails With The Other Claims**

20          Because all of Plaintiffs' other claims fail, the Court should also dismiss their request for

21   a declaratory judgment.  *See, e.g.*, *Malasky v. Esposito*, No. 16-cv-4102, 2019 WL 79032, at *10

22   (N.D. Cal. Jan. 2, 2019), *aff'd*, 781 F. App'x 643 (9th Cir. 2019).

23   **III.    CONCLUSION**

24          The Court should grant DeviantArt's motion to dismiss and dismiss all of Plaintiffs' claims.

25   Because any attempt to re-plead those claims would be futile, *see* MTD at 24–25, the Court should

26   deny leave to amend.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO

1    Dated:  July 3, 2023                    Respectfully submitted,

2                                            LATHAM & WATKINS LLP

3                                            By:  */s/ Andrew M. Gass*

4                                            Andrew M. Gass (SBN 259694)
                                              *andrew.gass@lw.com*
5                                            Michael H. Rubin (SBN 214636)
                                              *michael.rubin@lw.com*
6                                            Brittany N. Lovejoy (SBN 286813)
                                              *britt.lovejoy@lw.com*
7                                            505 Montgomery Street, Suite 2000
                                             San Francisco, California  94111-6538
8                                            Telephone:  415.391.0600

9                                            *Attorneys for Defendant DeviantArt, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S REPLY ISO
MOTION TO DISMISS
CASE NO. 3:23-cv-00201-WHO