1   LATHAM & WATKINS LLP
    Andrew M. Gass (SBN 259694)
2    *andrew.gass@lw.com*
    Michael H. Rubin (SBN 214636)
3    *michael.rubin@lw.com*
    Brittany N. Lovejoy (SBN 286813)
4    *britt.lovejoy@lw.com*
    505 Montgomery Street, Suite 2000
5   San Francisco, California  94111-6538
    Telephone:  415.391.0600
6

7   *Attorneys for Defendant DeviantArt, Inc.*

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                     **SAN FRANCISCO DIVISION**

11

12   SARAH ANDERSEN, an individual;              CASE NO. 3:23-cv-00201-WHO
    KELLY MCKERNAN, an individual;
13   KARLA ORTIZ, an individual,                  **DEFENDANT DEVIANTART, INC.'S**
                                                  **REPLY IN SUPPORT OF ITS SPECIAL**
14        Individual and Representative Plaintiffs,   **MOTION TO STRIKE UNDER**
                                                  **CALIFORNIA CODE OF CIVIL**
15        v.                                       **PROCEDURE § 425.16**

16   STABILITY AI LTD., a UK corporation;        Date:     July 19, 2023
    STABILITY AI, INC., a Delaware corporation;  Time:     2:00 p.m.
17   MIDJOURNEY, INC., a Delaware corporation;   Place:    Courtroom 2 - 17th Floor
    DEVIANTART, INC., a Delaware corporation,    Before:   Hon. William H. Orrick
18
         Defendants.
19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ......................................................................................................... 1

II. ARGUMENT ............................................................................................................... 2

    A.  The Right-Of-Publicity Claims Arise From Protected Activity ........................... 2

        1.  Plaintiffs Concede That DeviantArt Has Engaged In Speech In Connection With An Issue Of Public Interest............................................. 2

        2.  Plaintiffs Misunderstand The Scope Of The Anti-SLAPP Law ................ 3

        3.  Whether The Speech Is "Commercial" Is Irrelevant Here........................ 5

        4.  The Section 425.17(c) Exemption Does Not Apply ................................. 7

    B.  Plaintiffs' Right-Of-Publicity Claims Fail On The Merits ................................. 8

        1.  The Claims Are Preempted By The Copyright Act .................................. 8

        2.  Plaintiffs Fail To State A Right-Of-Publicity Claim .............................. 10

            a.  Plaintiffs' Conclusory Allegations Should Be Disregarded ........ 10

            b.  The Complaint Does Not State A Right-Of-Publicity Claim ...... 11

        3.  The Claims Conflict With The First Amendment.................................... 13

III. CONCLUSION............................................................................................................ 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ................................................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 11

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ................................................................................................. 6

*Bosley v. Wildwett.com*,
310 F. Supp. 2d 914 (N.D. Ohio 2004) .................................................................. 6

*Brown v. McCain*,
611 F. Supp. 2d 1062 (C.D. Cal. 2009) ................................................................. 5

*C.B.C. Distrib. & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*,
505 F.3d 818 (8th Cir. 2007) ................................................................................. 15

*Camacho v. Control Grp. Media Co.*,
No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022) ............................ 6

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980) ............................................................................................... 6

*City of Montebello v. Vasquez*,
1 Cal. 5th 409 (2016) ............................................................................................. 6

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ........................................................................................... 15

*Dean v. Friends of Pine Meadow*,
21 Cal. App. 5th 91 (2018) .................................................................................... 6, 7

*Downing v. Abercrombie & Fitch*,
265 F.3d 994 (9th Cir. 2001) ................................................................................. 10

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) ............................................................................................... 6

*Edjer v. DHI Mortg. Co.*,
No. 09-cv-1302, 2009 WL 1684714 (N.D. Cal. June 12, 2009) ........................... 13

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Building & Constr. Trades Council*,
485 U.S. 568 (1988) ............................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

*Equilon Enters. v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002) ................................................................................................................ 3

*Est. of Fuller v. Maxfield & Oberton Holdings, LLC*,
    906 F. Supp. 2d 997 (N.D. Cal. 2012) ..................................................................................... 15

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal. 5th 133 (2019) ............................................................................................................ 3, 6

*Global Plasma Solutions, Inc. v. IEE Env't. Eng'g*,
    600 F. Supp. 3d 1082 (N.D. Cal. 2021) .................................................................................... 3

*Guglielmi v. Spelling-Goldberg Prods.*,
    25 Cal. 3d 860 (1979) ........................................................................................................ 12, 14

*In re Gilead Scis. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ................................................................................................. 11

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020) .................................................................................................... 9, 10

*In re QuantumScape Sec. Class Action Litig.*,
    580 F. Supp. 3d 714 (N.D. Cal. 2022) ..................................................................................... 11

*JAMS, Inc. v. Superior Ct.*,
    1 Cal. App. 5th 984 (2016) ........................................................................................................ 7

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ............................................................................................................... 6

*Kellman v. Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) ..................................................................................... 11

*Kirby v. Sega of Am., Inc.*,
    144 Cal. App. 4th 47 (2006) .................................................................................................... 13

*Knapke v. PeopleConnect Inc.*,
    553 F. Supp. 3d 865 (W.D. Wash. 2021) .................................................................................. 6

*L.A. Taxi Coop., Inc. v. Indep. Taxi Owners Ass'n of L.A.*,
    239 Cal. App. 4th 918 (2015) .................................................................................................... 6

*Laws v. Sony Music Ent.*,
    448 F.3d 1134 (9th Cir. 2006) ............................................................................................... 9, 10

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ............................................................................................... 9, 12

*Michaels v. Internet Ent. Grp., Inc.*,
    5 F. Supp. 2d 823 (C.D. Cal. 1998) .......................................................................................... 6

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ................................................................................................. 3, 6

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ...................................................................................... 14

*No Doubt v. Activision Publishing, Inc.*,
    192 Cal. App. 4th 1018 (2011) ..................................................................................... 4

*Obado v. Magedson*,
    No. 13-cv-2382, 2014 WL 3778261 (D.N.J. July 31, 2014) ....................................... 12

*Paulson v. Carter*,
    230 F. App'x 645 (9th Cir. 2007) ................................................................................ 11

*Penrose Hill, Limited v. Mabray*,
    479 F. Supp. 3d 840 (N.D. Cal. 2020) .......................................................................... 3

*Perfect 10, Inc. v. Google, Inc.*,
    No. 04-cv-9484, 2010 WL 9479060 (C.D. Cal. July 30, 2010) .................................. 12

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) ........................................................................................ 8

*Ray v. ESPN, Inc.*,
    783 F.3d 1140 (8th Cir. 2015) .................................................................................. 8, 9

*Ross v. Roberts*,
    222 Cal. App. 4th 677 (2013) ..................................................................................... 14

*Sarver v. Hurt Locker LLC*,
    No. 10-cv-09034, 2011 WL 11574477 (C.D. Cal. Oct. 13, 2011) .............................. 14

*Schaffer v. City & Cnty. of S.F.*,
    168 Cal. App. 4th 992 (2008) ....................................................................................... 7

*Simpson Strong-Tie Co., Inc. v. Gore*,
    49 Cal. 4th 12 (2010) ............................................................................................... 1, 7

*Sivero v. Twentieth Century Fox Film Corp.*,
    No. B266469, 2018 WL 833696 (Cal. Ct. App. Feb. 13, 2018) .................................... 7

*Solano v. Playgirl, Inc.*,
    292 F.3d 1078 (9th Cir. 2002) ...................................................................................... 6

*Stewart v. Rolling Stone LLC*,
    181 Cal. App. 4th 664 (2010) ....................................................................................... 6

*Symmonds v. Mahoney*,
    31 Cal. App. 5th 1096 (2019) ....................................................................................... 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

*Tamkin v. CBS Broad., Inc.*,
   193 Cal. App. 4th 133 (2012) ........................................................................... 3, 5

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ........................................................................ 14, 15

*Tyler v. Travelers Com. Ins. Co.*,
   499 F. Supp. 3d 693 (N.D. Cal. 2020) .................................................................. 3

*United States v. United Foods, Inc.*,
   533 U.S. 405 (2001) ............................................................................................ 13

*Va. Pharmacy Bd. v. Va. Citizens Consumer Council*,
   425 U.S. 748 (1976), and (2) .............................................................................. 13

*Valentine v. CBS, Inc.*,
   698 F.2d 430 (11th Cir. 1983) ...................................................................... 12, 14

**STATUTES**

Cal. Code Civ. Proc. § 425.16 .................................................................... passim

Cal. Code Civ. Proc. § 425.17 ...........................................................1, 2, 4, 7

**OTHER AUTHORITIES**

J. Thomas McCarthy & Roger E. Schechter,
   Rights of Publicity & Privacy § 11:49 (May 2023 Update) ....................................9

Restatement (Second) of Torts § 652C (1977) ...........................................11

Restatement (Third) of Unfair Competition § 47 .......................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

## I.        INTRODUCTION

Plaintiffs' opposition to Defendant DeviantArt's anti-SLAPP motion consists primarily of arguments that are irrelevant to any issue presented in the motion, obviously incorrect, or both. For example, the brief's lengthy discussion of the constitutional test "for determining whether speech is commercial" and related topics, Dkt. No. 69 ("Opp.") at 9–12, simply has no application to any question before the Court.  And the brief's characterization of the right-of-publicity claims that are the subject of the motion—more precisely, the suggestion that those claims are "based on Defendants' use of Plaintiffs' names, rather than on Defendants' misappropriation of Plaintiffs' art," Opp. at 15—bears essentially no relationship to the factual allegations in the Complaint itself. The opposition, in short, fails to address a number of the central arguments in the opening brief, and on those it does engage with, seems to respond largely with a series of non sequiturs.

Cutting through the confusion, the proper disposition of this motion is straightforward:

- Plaintiffs' right-of-publicity claims arise from "protected activity" under California's anti-SLAPP law because they allege liability that arises from actions by DeviantArt in furtherance of the constitutional right of free speech in connection with an issue of public interest: to wit, offering a tool that allows the public to generate new works of art in the style of allegedly well-known artists.

- Plaintiffs' right-of-publicity claims have no "probability of prevailing" because, applying the Rule 12(b)(6) standard, the Complaint fails to state a claim three times over: first because copyright law preempts these claims; second because the conduct alleged is not a right-of-publicity violation; and third because the First Amendment would bar liability on the theory asserted, even if those claims were otherwise valid (which they are not).

It does not matter that Defendant DeviantArt is a "corporate interest" (though it is certainly surprising to see the company described as "large").  Opp. at 1.  It does not matter that section 425.17 of the California Code of Civil Procedure carves out several categories of claims from the coverage of the anti-SLAPP statute in section 425.16, because on their face none of those narrow exemptions applies here.  *See generally Simpson Strong-Tie Co., Inc. v. Gore,* 49 Cal. 4th 12, 22

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

(2010) (explaining that the "commercial speech" provisions of section 425.17, which are a "statutory exception" to section 425.16 and not a free-ranging constitutional inquiry into what constitutes "commercial speech," "should be narrowly construed (citation omitted)).

All that matters is that the liability alleged plainly arises from "protected activity," and the claims asserting the liability are legally defective. Nothing in the opposition undermines those conclusions. The Court, accordingly, should grant DeviantArt's motion to strike under California Code of Civil Procedure section 425.16.

## II.    ARGUMENT

### A.    The Right-Of-Publicity Claims Arise From Protected Activity

Plaintiffs fail to meaningfully engage with DeviantArt's arguments regarding the first anti-SLAPP prong, which addresses whether the conduct alleged to give rise to liability in the targeted cause of action falls within the ambit of California Code of Civil Procedure section 425.16(e)(4), namely, "conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with . . . an issue of public interest." Instead, the opposition rests on a conception of the law's scope that has no basis in statutory text or case law and is foreclosed by California Supreme Court precedent. Indeed, Plaintiffs' argument that "commercial" speech is categorically excluded from anti-SLAPP protection ignores numerous cases that directly contradict it. And Plaintiffs' assertion (and misquotation) of the law's false-advertising exemption is baseless.

### 1.    Plaintiffs Concede That DeviantArt Has Engaged In Speech In Connection With An Issue Of Public Interest

Nothing in Plaintiffs' opposition contests, much less disproves, that artistic styles can be issues of "public interest" if they have been "popularized," Dkt. No. 1 ('Compl.") ¶ 205, just like a celebrity's lifestyle becomes an issue of public interest after that person has engaged in activities that draw public attention, *see* Dkt. No. 50 ("Mot.") at 9. Plaintiffs also do not deny that creating a new artistic work that implements and builds upon a "popular[]" artistic style can constitute "speech . . . in connection with . . . [that] issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4); *see* Mot. at 10–11. Nor do Plaintiffs contest that providing a creative tool—like DreamUp—to "assist[]" that speech qualifies as "conduct in furtherance of . . . " that speech. Mot.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

at 9; *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2012). Plaintiffs "concede[] these arguments by failing to address them in [their] opposition." *Tyler v. Travelers Com. Ins. Co.*, 499 F. Supp. 3d 693, 701 (N.D. Cal. 2020).[1] On the plain text of the statute, then, the liability alleged from the provision of a tool that allows users to create works in the style of recognized artists is squarely encompassed by the statute's definition of protected activity.

### 2.    Plaintiffs Misunderstand The Scope Of The Anti-SLAPP Law

Rather than confront that analysis head-on, Plaintiffs advance a *de novo* reimagination of the anti-SLAPP law. They posit that conduct is only "in connection with . . . [an] issue of public interest" in this context if it is speech consisting of hard-hitting criticism on, e.g., "current art trends" or "the art world" as a whole. Opp. at 7. And they argue that the anti-SLAPP law does not apply here because DeviantArt has not pointed to its participation in "public conversations about issues in the art world" or other "comment[ary]." *Id.*

The premise of Plaintiffs' argument is simply incorrect. Time and again, the California Supreme Court has ruled that "protected activity" within the meaning of the anti-SLAPP law consists of conduct that satisfies the definition of the statutory categories—nothing more, nothing less. *See, e.g.*, *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 60–61 (2002) ("The fact the Legislature expressed a concern in the Statute's preamble with lawsuits brought 'primarily' to chill First Amendment rights does not mean that a court may add this concept as a separate requirement in the operative sections of the statute." (citation omitted)); *Navellier v. Sletten*, 29

---

[1] Plaintiffs cite *FilmOn.com Inc. v. DoubleVerify Inc.* for the proposition that the statute demands "closeness" between the speech and the asserted public interest. 7 Cal. 5th 133, 150 (2019); *see* Opp. at 7. But that case involved statements disseminated "privately" that were never "intended" to "enter[] the public sphere"—and thus the court held they lacked a sufficient nexus to the asserted public issues. *Id.* at 153–54. No similar facts exist here. *See also Global Plasma Solutions, Inc. v. IEE Indoor Env't Eng'g*, 600 F. Supp. 3d 1082, 1093–94 (N.D. Cal. 2021) (finding *FilmOn* inapposite where the "statements at issue" were not "confidential" but rather "published on [defendant]'s website"). Plaintiffs also cite *Penrose Hill, Limited v. Mabray*, which concerned a Tweet referring to the "new era of companies . . . in the wine industry" and suggesting some were "fakers." 479 F. Supp. 3d 840, 847 (N.D. Cal. 2020). The court assumed that "the topic of nontraditional business models for selling wine is a matter of public interest," but held that the Tweet lacked "the requisite closeness to that issue" because it did not elaborate on or provide an "explanation of [the] terms" it used—like "fakers"—rendering it a mere "generic reference." *Id.* at 855. That case has no relevance here, where the speech—new works of art created by DreamUp users—is not a "generic" or fleeting reference to an issue of public interest, *id.*, but rather a specific reference to the Plaintiffs' unprotectable "artistic styles." Compl. ¶ 205.

Cal. 4th 82, 90 (2002) (holding that the inquiry under the first prong of the anti-SLAPP statute is whether the conduct alleged to give rise to liability is encompassed by the "plain language" of the statutory definition, irrespective of the label appended to the claim or other considerations).

The plain text of the operative statutory definitions squarely encompasses a vastly broader range of qualifying conduct than just the type of express criticism to which Plaintiffs suggest it is limited.  The statutory language in section 425.16(e)(4) covers *any* conduct in furtherance of free speech rights in connection with an issue of public interest.  And the twin provision in section 425.17—affording limited exemptions from that sweeping scope of coverage in section 425.16—presupposes that "protected activity" includes not only "literary" or "political" works like "article[s] published in [] newspaper[s] or magazine[s]," but also "musical" and "artistic work[s]." Cal. Code Civ. Proc. § 425.17(d)(2).  Those references would make no sense if the only viable anti-SLAPP motions were those that attacked claims targeting debate or other prose expression.

Courts have faithfully applied the expansive scope of the statutory definition of "protected activity," read in light of the statute as a whole, to a wide range of conduct that falls outside the cramped conception of the law Plaintiffs advocate.  *No Doubt v. Activision Publishing, Inc.*, 192 Cal. App. 4th 1018 (2011), is instructive.  In that case, a famous rock band sued a company that made a video game that would allow consumers to play music using digital avatars of the band members.  *Id*. at 1024.  That was the extent of the conduct allegedly giving rise to right-of-publicity and related legal violations.  *Id*. at 1024–25.  The court, in turn, ruled that the alleged liability arose from protected activity within the meaning of section 425.16(e)(4).  "Video games generally are considered 'expressive works' subject to First Amendment protections," the court explained.  *Id*. at 1027.  And the video game maker's use of the band's likeness addressed "a matter of public interest because of the widespread fame [the band] has achieved." *Id*.  Nothing more was required. The suit fell within the scope of the first prong of the anti-SLAPP law even though it was, at bottom, a right-of-publicity claim over the provision of an entertainment product, and not any kind of comment or criticism on anything.

Many other cases have applied similar reasoning to reach the same result in lawsuits that have nothing to do with commentary or criticism.  *See, e.g.*, *Symmonds v. Mahoney*, 31 Cal. App.

5th 1096, 1105–10 (2019) (holding that "[a] singer's selection of the musicians that play with him . . . is an act in furtherance of his exercise of the right of free speech" and that such act was "in connection with . . . and issue of public interest" where the singer "perform[ed] at concerts across the country, indicating that [his] music and performances were of interest to the public"); *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143–44 (2011) (holding that "the creation, casting, and broadcasting of an episode of a popular television show" (*CSI*) was "in furtherance of the right of free speech," and that such acts were connected to "an issue of public interest because the public was demonstrably interested in the creation and broadcasting of that episode").

Thousands of painters have made invaluable, First-Amendment-protected contributions to the development of contemporary art through the visual medium, using and building on pre-existing styles to express complex and subtle ideas about the subject depicted as well as the artistic genres themselves. *See* Mot. at 10 n.6. There is no material difference, for purposes of the first prong of the anti-SLAPP law, between those painters and the DeviantArt users who use DreamUp to create new works that participate in discourse on "issue[s] of public interest" by emulating the "artistic style[s]" the Plaintiffs chose to "popularize[]." Compl. ¶ 205. DeviantArt's provision of this tool is "conduct in furtherance of the exercise of . . . free speech in connection with . . . an issue of public interest," Cal. Code Civ. Proc. § 425.16(e), and Plaintiffs do not offer any serious argument to the contrary.[2]

### 3.      Whether The Speech Is "Commercial" Is Irrelevant Here

Plaintiffs claim that "Defendants' [alleged] conduct of selling and advertising their AI Image Products" is "unprotected commercial speech" under the First Amendment and therefore falls outside the anti-SLAPP law's protection. Opp. at 7–12. But the case that Plaintiffs rely on for this proposition expressly states that "[c]ommercial speech . . . may be protected by the anti-

---

[2] Plaintiffs also cite *Brown v. McCain*, a right-of-publicity case regarding the use of the plaintiff's song in a campaign commercial for Senator John McCain. 611 F. Supp. 2d 1062, 1065 (C.D. Cal. 2009). The court held that the defendants had "met their burden of showing that [the] claim arises from protected activity," *id.* at 1069, and went on to discuss California's common law "news reporting" or "public interest" privilege, which protects a defendant's right to use a plaintiff's name or likeness to report or comment on "matters related to the plaintiff," *id.* at 1071 (declining to apply the privilege because the campaign ad "did not comment on nor target the [song] nor [its performer]"). It is that part of the opinion—discussing a common law privilege that none of the Defendants in this case assert—that Plaintiffs misleadingly quote in their brief. Opp. at 7.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1   SLAPP statute" if it was "made in connection with a matter of public interest."  *L.A. Taxi Coop.,*

2   *Inc. v. Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 928 (2015).  Indeed, California

3   courts have uniformly rejected the argument that "commercial speech is categorically excluded

4   from the protection of the anti-SLAPP law."  *Dean v. Friends of Pine Meadow*, 21 Cal. App. 5th

5   91, 104 (2018); *see, e.g.*, *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 148 (2019) ("We

6   do not . . . sort statements categorically into commercial or noncommercial baskets in analyzing

7   whether they are covered by the catchall provision [of Cal. Code Civ. Proc. section 425.16].").

8          The California Supreme Court has explicitly instructed "courts determining whether

9   conduct is protected under the anti-SLAPP statute [to] look not to First Amendment law, but to

10  the statutory definitions in" the anti-SLAPP statute itself.  *City of Montebello v. Vasquez*, 1 Cal.

11  5th 409, 421–22 (2016) (explaining that the anti-SLAPP law's scope "extend[s] beyond the

12  contours of the [First Amendment]").  So when determining whether conduct is protected under

13  California's anti-SLAPP law, courts need not "wrestle with difficult questions of constitutional

14  law," like whether speech qualifies for "federal [or] state protection of free expression," *id.* at 422,

15  or whether speech is "commercial," *Dean*, 21 Cal. App. 5th at 104–05.  It is thus irrelevant whether

16  the conduct at issue here meets the definition of "commercial speech" laid out in the First

17  Amendment cases Plaintiffs discuss.[3]  Opp. at 9–12 (extensively discussing First Amendment); *cf.*

18  *Navellier*, 29 Cal. 4th at 94 (warning against "confus[ing] the threshold question of whether the

---

[3] Most cases Plaintiffs cite have nothing to do with anti-SLAPP.  *See Dun & Bradstreet, Inc. v.
Greenmoss Builders, Inc.*, 472 U.S. 749, 751 (1985) (First Amendment limit on libel damages);
*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 61–62 (1983) (challenge to statute regarding
contraception advertising); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S.
557, 558 (1980) (challenge to "ban[]" on "promotional advertising by an electrical utility"); *Kasky
v. Nike, Inc.*, 27 Cal. 4th 939, 945–46 (2002) (First Amendment limits state laws "barring false
and misleading commercial messages"); *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115
(9th Cir. 2021) (First Amendment limits Lanham Act liability); *Solano v. Playgirl, Inc.*, 292 F.3d
1078, 1089 (9th Cir. 2002) ("newsworthiness" defense to right-of-publicity claim); *Knapke v.
PeopleConnect Inc.*, 553 F. Supp. 3d 865, 878–80 (W.D. Wash. 2021) (First Amendment defense
to right-of-publicity claim); *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 925 (N.D. Ohio 2004)
(same); *Michaels v. Internet Ent. Grp., Inc.*, 5 F. Supp. 2d 823, 838–39 (C.D. Cal. 1998) (same).
The anti-SLAPP cases Plaintiffs do cite address the First Amendment as a defense to a claim—not
in the context of addressing the statute's first prong.  *See Stewart v. Rolling Stone LLC*, 181 Cal.
App. 4th 664, 674–79 (2010) (right-of-publicity claims against magazine arise from "protected
activity" under anti-SLAPP law); *id.* at 680–92 (separately discussing "First Amendment . . . as a
defense to plaintiffs' complaint"); *Camacho v. Control Grp. Media Co.*, No. 21-cv-1954, 2022
WL 3093306, at *20 (S.D. Cal. July 18, 2022) (discussing whether right-of-publicity claims are
barred by the First Amendment); *id.* at *33 (separately discussing anti-SLAPP).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1   SLAPP statute [] applies" with the "secondary inquiry" on the merits (alterations omitted).[4]

2            **4.      The Section 425.17(c) Exemption Does Not Apply**

3            In support of their argument that "the anti-SLAPP statute does not protect promotional

4   commercial speech," Plaintiffs quote section 425.17(c) of the anti-SLAPP statute, Opp. at 8, which

5   is a limited exception that applies to "cause[s] of action brought against a person primarily engaged

6   in the business of selling or leasing goods or services."  Cal. Code Civ. Proc. § 425.17(c).  But

7   Plaintiffs fail to disclose that the exception applies only to "causes of action arising

8   from . . . representations of fact about [a defendant's] or a competitor's 'business operations,

9   goods, or services.'"  *Simpson*, 49 Cal. 4th at 17 (quoting Cal. Code Civ. Proc. § 425.17(c)(1)).

10  That is a "narrow commercial speech exemption," *Dean*, 21 Cal. App. 5th at 105, "aimed squarely

11  at false advertising claims" where "the speech at issue is *about* the speaker's product or service or

12  *about* a competitor's product or service," *JAMS, Inc. v. Superior Ct.*, 1 Cal. App. 5th 984, 994–95

13  (2016) (emphasis added).  It has no application here, and Plaintiffs do not explain otherwise.

14  *Simpson*, 49 Cal. 4th at 26 (plaintiff carries burden of proof to establish exemption); *see infra* at

15  10–11 (explaining Plaintiffs' failure to allege use of their names to advertise or promote

16  Defendants' products).  Nor do Plaintiffs anywhere grapple with section 425.17's next subsection,

17  which clarifies that section 425.17(c) "do[es] not apply to . . . [a]ny action against any person or

18  entity based upon the creation, dissemination, exhibition, advertisement, or other similar

19  promotion of any dramatic, literary, musical, political, or artistic work."  Cal. Code Civ. Proc.

20  § 425.17(d).  Plaintiffs' suit is indisputably "based upon the creation . . . [of] artistic work[s]."  *Id.*[5]

21

---

22  [4] Plaintiffs urge this Court to conduct a means-ends balancing analysis to determine if the conduct
    at issue here "warrants [] protection" under the anti-SLAPP statute.  Opp. at 10–11.  But "section
23  425.16 does not provide for any balancing test to determine if the defendant's actions were in
    furtherance of the freedom of speech . . . in connection with a public issue."  *Schaffer v. City &*
24  *Cnty. of S.F.*, 168 Cal. App. 4th 992, 1004 n.6 (2008).  Plaintiffs also argue that "Defendants' anti-
    SLAPP [claim] fails" because the speech is "misleading and false."  Opp. at 9–10.  But a "plaintiff
25  cannot show that a cause of action does not arise from protected activity simply by characterizing
    the defendant's alleged conduct as tortious."  *Sivero v. Twentieth Century Fox Film Corp.*,
26  No. B266469, 2018 WL 833696, at *5 (Cal. Ct. App. Feb. 13, 2018) (unpublished).

    [5] Plaintiffs also make a passing reference to section 425.17(b) of the statute.  Opp. at 6 n.6.  But
27  they make no attempt to explain how this provision is relevant here, *cf. Simpson*, 49 Cal. 4th at
    24–25 (plaintiff "bears the burden to establish the exception"), nor do they acknowledge that
28  section 425.17(d) explicitly states that "[s]ubdivision[] (b) . . do[es] not apply to . . . [a]ny action .
    . . based upon the creation, dissemination . . . or other similar promotion of any . . . artistic work."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

**B.    Plaintiffs' Right-Of-Publicity Claims Fail On The Merits**

**1.    The Claims Are Preempted By The Copyright Act**

The gravamen of Plaintiffs' right-of-publicity claims is the fact that Defendants' models are able to "generate work in the artistic style[s] that Plaintiffs popularized." Compl. ¶ 205.  In fact, the only concrete publicity-related harm that Plaintiffs identify arises from the use of Plaintiffs' "artistic styles" in new visual works that Plaintiffs do not want to "compete" with.  Opp. at 14; *see also* Mot. at 13 n.9 (harm is a required element of right-of-publicity claims).   As DeviantArt explained, however, it is well-established that artistic styles are not only unprotected by copyright law, but are "ideas" and "concepts" that state law *cannot* protect due to Copyright Act preemption, which "prevent[s] states from giving special protection" to subject matter that Congress "has decided should be in the public domain." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (Easterbrook, J.); *see also* Mot. at 11–14.  That artists must "compete" with others who implement and build upon their "artistic styles," Compl. ¶ 212; *see* Opp. at 14, is not a legally redressable wrong, but rather the direct and intended result of Copyright Act preemption.

Plaintiffs contest none of this. *See* Opp. at 15–16 (addressing preemption).  Plaintiffs make no effort to distinguish the numerous cases in which courts have held that the Copyright Act preempts right-of-publicity claims when the "crux of [the] case" is the plaintiff's attempt to control subject matter within the Copyright Act's preemptive scope.  Mot. at 14 & n.14 (quoting *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142–44 (8th Cir. 2015)).  Instead, Plaintiffs' opposition abandoned the "artistic style" aspect of their right-of-publicity claims altogether, and narrowed those claims to focus solely on "Defendants' [alleged] use of Plaintiffs' names."  Opp. at 15; *see also id.* at 2 (claims are "based on how Defendants[] . . . utilize Plaintiffs' names, not [] their particular styles"); *id.* at 17 (same).  The thinking behind the gambit seems to be:  If federal law precludes Plaintiffs from asserting exclusive rights in their "artistic styles," perhaps Plaintiffs can achieve the same result—and redress the same alleged injury—by precluding members of the public from *referring* to those styles by reference to Plaintiffs' personal names.[6]

---

[6] Plaintiffs also claim Defendants' used their names in a different way: "for the purposes of advertising, selling, and soliciting" their products.  Opp. at 15 (quoting Compl. ¶ 217).  As

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1      But the Copyright Act preempts Plaintiffs' right-of-publicity claims no matter how they

2   are framed or narrowed.  As mentioned, Plaintiffs ignore the many cases dismissing, as preempted,

3   right-of-publicity claims—including claims of name-appropriation—on the grounds that the

4   claims, examined as a whole, (1) concerned material within the "subject matter of copyright," and

5   (2) asserted rights "equivalent" to those granted by the Copyright Act.  17 U.S.C. 301(a); Mot. 13–

6   14 & n.14 (collecting cases).[7]  Plaintiffs' tactic suggests that any of the plaintiffs in these cases

7   could have survived preemption by strategically dropping all aspects of their right-of-publicity

8   claims other than those relating to their personal names.  That would create a loophole that would

9   turn preemption doctrine—and the operative line of case law—on its head.

10      At least one court has rejected a name-appropriation claim—framed as part of a broader

11   right-of-publicity claim—on implied or "conflict" preemption grounds.  *In re Jackson*, 972 F.3d

12   25, 54–55 (2d Cir. 2020).  There, the Second Circuit considered a right-of-publicity claim based

13   on the use of a plaintiff's stage name to "accurately name [him] as the performer," and observed:

14   "Even assuming that the use of an artist's name[] for the sole purpose of identifying his association

15   with a work" could support a prima facie claim, such a claim would "impermissibly interfere[]

16   with the federal copyright framework."  *Id.*  For that reason, the Court held that a name-based

17   "right of publicity claim [that] seeks to control the use of a copyrighted work by prohibiting

18   accurate descriptions of that work" is "barred by implied preemption."  *Id.*  So too here:  Because

19   Plaintiffs' claim attempts to prohibit the creation of works that reference "artistic styles" by

20   "prohibiting" the use of their names as "accurate descriptions" of those styles, *id.*; *supra* at 8, those

21   claims are irreconcilable with the federal policy that such styles are free for all to use and beyond

22   the reach of state law, *see* Mot. at 11–15; 2 J. Thomas McCarthy & Roger E. Schechter, Rights of

23   Publicity & Privacy § 11:49 (May 2023 update) (conflict preemption of right-of-publicity claims).

---

24   explained in DeviantArt's Motion and below, the Court should not credit these conclusory
     statements, which lack any supporting factual allegations.  *See infra* at 10–11.

25   [7] *See, e.g.*, *Laws v. Sony Music Ent.*, 448 F.3d 1134, 1136 (9th Cir. 2006) (claim based, in part, on
26   inclusion of plaintiff's name "in the booklet accompanying the [defendant's] compact disk"); *id.*
     at 1146 (claim "preempted by the Copyright Act"); *Ray*, 783 F.3d at 1141–42 (claim based, in part,
27   on "misappropriation of [plaintiff's] name" in connection with rebroadcast "films of his wrestling
     matches"); *id.* at 1144–45 (claim preempted); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1007–08
28   (9th Cir. 2017) (claim based, in part, on use of plaintiffs' "names" in connection with "photographs
     chronicling . . . NCAA sports history"); *id.* at 1020 (claim preempted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1    In sum, Plaintiffs have abandoned their style-based claims, and they cannot prevail on their

2    remaining *name-based* right-of-publicity claims, which constitute attempts to exert rights

3    "equivalent" to those protected by copyright, *see* Mot. at 14 & n.10, over artistic styles that

4    (Plaintiffs tacitly concede) fall within copyright's "subject matter," *id*. at 11–13.  Plaintiffs cannot

5    plead around this issue, so Counts IV and V must be struck.[8]

6              **2.     Plaintiffs Fail To State A Right-Of-Publicity Claim**

7    Plaintiffs have also failed to state a right-of-publicity claim, preemption aside.

8              **a.     Plaintiffs' Conclusory Allegations Should Be Disregarded**

9    DeviantArt explained in its Motion that Plaintiffs' right-of-publicity claims depend, in part,

10   on a series of conclusory allegations that parrot the language of California's right-of-publicity

11   statute and claim that the "Defendants" actually used Plaintiffs' names—*i.e.*, Sarah Andersen,

12   Kelly McKernan, and Karla Ortiz—on their "apps, website[s], and social media posts," to

13   "advertise art" and "solicit purchases."  Mot. at 15–16 (quoting Compl. ¶¶ 203, 205–06, 217, 219).

14   There are no specific factual allegations at all in the Complaint regarding any DreamUp

15   advertisements that include Plaintiffs' names.  Mot. at 16.  And this is not some minor technical

16   foul: Defendant DeviantArt genuinely has no idea what conduct Plaintiffs are seeking to target

17   with this claim, as it is simply untrue that DeviantArt has ever appended any of the Plaintiffs'

18   names to any advertisement.  If DeviantArt had done so, the advertisement would be public and

19   presumably easy for Plaintiffs to locate and bring to the Court's attention.

20   Plaintiffs cannot maintain a right-of-publicity claim against DeviantArt without alleging

21   facts about what DeviantArt actually did that constitutes an impermissible use of their names.

22   Plaintiffs cannot avoid this basic obligation by relying on the kind of vague and conclusory

23   accusations which, as a matter of law, a court "is not required to accept" on a motion to dismiss.

---

24   [8] Plaintiffs' discussion of *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), is
25   misguided.  Plaintiffs overlook the Ninth Circuit's extensive discussion of *Downing* in *Laws*, *see*
     448 F.3d at 1141, in which the Court explained that the name-and-likeness claim in *Downing*
26   survived preemption not because "[a] person's name or likeness is not a work of authorship," *cf.*
     Opp. at 16, but because defendants "had suggested that the [plaintiffs] endorsed [defendant's
27   products]," 448 F.3d at 1141; *see also Jackson*, 972 F.3d at 46–47 (same).  As discussed below
     and in DeviantArt's other briefing, *see, e.g.*, Mot. at 15–16, Plaintiffs have pleaded only entirely
28   conclusory allegations that DeviantArt ever used their names in any DeviantArt advertisements—
     and there is no claim that DeviantArt ever suggested that Plaintiffs' *endorsed* its products.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1   *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 729 (N.D. Cal. 2022) (quoting

2   *In re Gilead Scis. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)); *see Paulson v. Carter*, 230 F. App'x

3   645, 645 (9th Cir. 2007) (rejecting "conclusory allegations . . . unsupported by specific facts").

4          Plaintiffs altogether ignore this issue in their opposition.  They do not even seek the Court's

5   leave to amend their Complaint to identify any references to Plaintiffs' names—no doubt because

6   there are no such references.[9]  Instead, Plaintiffs double-down by insisting—again, without any

7   details—that "Defendants used Plaintiffs' names . . . to attract customers" and to "advertise and

8   promote their AI Image Products."  Opp. at 3, 13; *see also* Dkt. 65 ("MTD Opp.") at 19

9   ("Defendants[] use [] Plaintiffs name[s] in advertising and marketing.").  Like the allegations in

10  the Complaint, these "[t]hreadbare recitals of the elements of a cause of action, supported by mere

11  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12             **b.**      **The Complaint Does Not State A Right-Of-Publicity Claim**

13         Once these conclusory statements are set aside—and in light of Plaintiffs' abandonment of

14  their claims based on the use of their "particular styles," Opp. at 2—Plaintiffs' remaining right-of-

15  publicity theory is that DeviantArt violated their rights by offering a tool that can *process* users'

16  references to Plaintiffs' names in text prompts, *see id.* at 13 (arguing that Defendants' applications

17  "cue users to insert an artist's name").  This theory fails for two independent reasons.

18         ***The Right Of Publicity Does Not Grant Absolute Control Over A Name.***  First, providing

19  a service capable of processing references to an artist's name does not violate the right of publicity.

20  Mot. at 17–19.  "The value of the plaintiff's name is not appropriated by mere mention of it, or

21  by reference to it in connection with legitimate mention of his public activities."  Restatement

22  (Second) of Torts § 652C cmt. d (1977).  Using a personal name to refer to a person's work or

23  accomplishments—like referring to specific musicians in order to describe a musical genre—does

24

25         [9] In another right-of-publicity case before this Court, the plaintiffs included in their Complaint
    screenshots of advertisements that used their personal names and information.  *See* Complaint

26  ¶ 45, *Kellman v. Spokeo, Inc.*, No. 21-cv-08976 (N.D. Cal. filed Nov. 19, 2021), ECF No. 1.
    Because these examples illustrated that the defendant's "business model depends on using

27  [plaintiffs'] names, information, and likenesses" to "entice others to subscribe," this Court held
    that the claims were adequately stated.  599 F. Supp. 3d 877, 895 (N.D. Cal. 2022) (Orrick, J.).

28  Here, however, Plaintiffs make no attempt to illustrate—through screenshots, concrete allegations,
    or otherwise—how their names are "use[d] . . . in advertising and marketing."  MTD Opp. at 19.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

not "appropriate to [one's] own use or benefit the reputation, prestige, social or commercial standing, public interest, or other values of [that person's] name." *Id.* § 652C cmt. c. That use falls far outside the domain of the right of publicity, which is violated only when a defendant *trades on* a person's name—to advertise a product, or to attract attention to merchandise, or otherwise. Restatement (Third) of Unfair Competition § 47.[10] Public dialogue depends on the freedom to use names to "communicat[e] information," *id.* § 47 cmt. c, and any "interpretation [of a right of publicity] statute [that] absolutely bars the use of an individual's name without consent . . . would raise grave questions as to constitutionality," *Valentine v. CBS, Inc.*, 698 F.2d 430, 433 (11th Cir. 1983); *see Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 869 (1979) (Bird, C.J., concurring). Because there is nothing unlawful about the use of an artist's name for the sole purpose of referring to her prior work or "artistic style," there is nothing unlawful about designing an application, like DreamUp, capable of processing such references.

Again, Plaintiffs make no attempt to address these issues, all while insisting that "[r]eferring to a Plaintiff[] by name" is a sufficient basis for their right-of-publicity claims. Opp. at 18. Plaintiffs do not cite a single case that supports their novel theory because no court has expanded the right-of-publicity in this way. Doing so would create an entirely new avenue for lawsuits against legitimate businesses like internet search engines (which produce results about a person in response to a search query using a personal name), credit agencies (which produce credit reports based on a requester's provision of a personal name), online directories (which produce information about, e.g., film industry professionals who users search for by name), and any other services capable of processing user queries that include personal names.[11]

***Plaintiffs Do Not Allege Use By DeviantArt.*** Second, Plaintiffs fail to allege use. To infringe the right of publicity in a name, the defendant must actually use a plaintiff's name in a way that is perceptible to an audience by, e.g., displaying that name as part of an online advertisement. *See Perfect 10, Inc. v. Google, Inc.*, No. 04-cv-9484, 2010 WL 9479060, at *13

---

[10] *See Maloney*, 853 F.3d at 1018 (relying on Restatement (Third) of Unfair Competition to analyze California right-of-publicity claims).

[11] *Cf. Obado v. Magedson*, No. 13-cv-2382, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014) ("The mere appearance of Plaintiff's name or image as part of the search results displayed in response to a user-generated query does not mean that the [defendant violated any publicity rights].").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1  (C.D. Cal. July 30, 2010) (citation omitted); *supra* note 9 (discussing the allegations in *Kellman*).[12]

2  Nothing in the Complaint suggests that DeviantArt did so, either by training a model, Opp. at 15

3  (admitting that "*Stability* developed . . . the functionality to generate output images using specific

4  artist's names" (emphasis added)), or by using Plaintiffs' names to create DreamUp images, *see*

5  Compl. ¶ 171 (alleging that "*Individuals* have used AI Image Products to create works using the

6  names of Plaintiffs" (emphasis added)).  And while Plaintiffs previously suggested that their rights

7  are violated when DeviantArt's users type their names into DreamUp, *id.*; *but see* Mot. at 19

8  (rebutting this), they now disclaim that theory as well, *see* MTD Opp. at 19 ("The fact users can

9  and do use Plaintiffs' names in prompts is . . . not a basis of [Plaintiffs' right-of-publicity]

10 claims.").  Neither the Complaint nor the opposition makes any attempt to explain how DeviantArt

11 allegedly "used" their names, which alone is sufficient reason to grant the Motion.  *Edjer v. DHI*

12 *Mortg. Co.*, No. 09-cv-1302, 2009 WL 1684714, at *6 (N.D. Cal. June 12, 2009) (dismissal

13 warranted where allegations were "vague and largely incoherent").

14         **3.    The Claims Conflict With The First Amendment**

15         California courts generally balance right of publicity claims against First Amendment

16 interests using a "Transformative Use" test that insulates expressive works from right-of-publicity

17 claims as long as the plaintiff's likeness is merely "one of the 'raw materials' from which [the

18 secondary work] is synthesized."  *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 58 (2006).[13]

19 Plaintiffs do not contest that DreamUp's outputs are not visually similar to the originals, reflect a

20 combination of data gleaned from billions of other images, and can communicate an infinite

21

22

---

23 [12] This well-established requirement is no doubt why Plaintiffs bend over backwards to suggest
   that DeviantArt "use[d] [] Plaintiffs' names . . . throughout Defendants' apps, website, and social
24 media posts," Compl. ¶ 219, even though they were unable to cite any specific facts to support it.

25 [13] To the extent Plaintiffs' opposition can be interpreted as arguing that the First Amendment
   defense does not apply to "Commercial" or "False" speech, Opp. at 17 (suggesting this in a section
26 heading), that argument fails because (1) commercial speech also receives First Amendment
   protection, *see, e.g.*, *Va. Pharmacy Bd. v. Va. Citizens Consumer Council*, 425 U.S. 748, 762
27 (1976), and (2) Plaintiffs have failed to allege that the speech at issue "does no more than propose
   a commercial transaction," *e.g.*, *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)
28 (defining "commercial speech").  And while Plaintiffs now claim that Defendants' "speech" is
   "false" because it "induces users to believe that artists have [] endorsed Defendants' products," the
   Complaint paragraphs they cite in support do not address false endorsement.  Opp. at 10.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1  number of ideas, messages, or concepts supplied by DeviantArt's users.  Mot. at 20.[14]  These facts

2  establish transformative use as a matter of law.  *See, e.g.*, *Sarver v. Hurt Locker LLC*, No. 10-cv-

3  09034, 2011 WL 11574477, at *6–7 (C.D. Cal. Oct. 13, 2011) (granting section 425.16 motion to

4  strike right-of-publicity claims on transformative use grounds because "[d]efendants

5  unquestionably contributed significant distinctive and expressive content").[15]

6       Rather than contest that point, Plaintiffs instead abandon their "style"-based claim and

7  argue that, because DeviantArt has used their "names to market and enhance sales of their

8  products," its use is not transformative.  Opp. at 18.  But Plaintiffs have failed to plausibly allege

9  any such use.  *See supra* at 10–11.  And the only use Plaintiffs *have* plausibly alleged (and not

10  now abandoned)—that DeviantArt created a program that can *recognize* Plaintiffs' names—*does*

11  implicate serious First Amendment problems.  As noted, any attempt to use the right of publicity

12  to preclude using a personal name to accurately refer to that person's work would "raise grave

13  questions as to constitutionality," *Valentine*, 698 F.2d at 433, and "meaningfully reduce[]" the

14  "range of free expression," *Gugliemi*, 25 Cal. 3d at 869 (Bird, C.J., concurring).

15       Courts have acknowledged as much in discussing the analogous nominative-fair-use

16  defense to trademark infringement claims, which shields defendants who use trademarks to "refer

17  to a particular product" as a "point of reference."  *New Kids on the Block v. News Am. Pub., Inc.*,

18  971 F.2d 302, 306 (9th Cir. 1992); *see id.* at 307 ("Much useful social and commercial discourse

19  would be all but impossible if speakers were under threat of an infringement lawsuit every time

20  they made reference to a person, company or product."); *Toyota Motor Sales, U.S.A., Inc. v.

21  Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010) (trademark claims "can raise serious First Amendment

22  concerns" in cases of nominative fair use by "interfer[ing] with truthful communication . . . in the

---

23  [14] Plaintiffs do claim that they have "offered facts demonstrating why Defendants' conduct is not
24  transformative."  Opp. at 17.  But in support, they only cite (without explanation) seemingly
    random paragraphs from their pleadings, Compl. ¶¶ 86–90, 94–98, and two paragraphs arguing
    that "[b]ecause Defendants advertise the ability of their systems to generate artwork," the use is
25  "not transformative," *id.* ¶¶ 210, 221.  None weigh against a finding of transformative use.

26  [15] Plaintiffs also address transformative use in their opposition to DeviantArt's motion to dismiss,
    MTD Opp. at 20–21, in which they attempt to distinguish *Ross v. Roberts*, 222 Cal. App. 4th 677
27  (2013), on the grounds that here, Defendants' use was "intended to denote the actual artists who
    created certain works," MTD Opp. at 21.  But the Court's holding in *Ross* was based on the fact
28  the defendant "created original artistic works" using the plaintiff's name and therefore "clearly
    added new expression."  222 Cal. App. 4th at 687–88.  The same logic applies here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1   marketplace"). That principle applies with full force to the right-of-publicity context. For that

2   reason, this Court should either decline Plaintiffs' invitation to expand the right of publicity to

3   prohibit "truthful communication" through the use of a plaintiff's name, *Toyota*, 610 F.3d at 1176;

4   *see supra* at 11,[16] or hold that the First Amendment affirmatively bars the use of state right-of-

5   publicity law for this purpose, *see Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387,

6   391, 397–98 (2001) ("formulat[ing] . . . a balancing test" to resolve the "tension between the right

7   of publicity and the First Amendment").[17]

8   **III.   CONCLUSION**

9        For the foregoing reasons, and those detailed in DeviantArt's Motion, the Court should

10  grant DeviantArt's anti-SLAPP motion under California Code of Civil Procedure section 425.16

11  and strike Plaintiffs' right-of-publicity claims against DeviantArt. *See* Compl. ¶¶ 201–22.

12  Because any attempt to re-plead those claims would be futile, *see* MTD at 24–25, and because

13  Plaintiffs do not explain otherwise or propose any ways in which they could cure any of their

14  defective claims, the Court should deny leave to amend.

15

16

17

18

19

20  [16] *See also Edward J. DeBartolo Corp. v. Fla. Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575–76, 588 (1988) (applying constitutional avoidance doctrine to reject "construction of [a] statute . . . [that] poses serious questions . . . under the First Amendment").

21  [17] Courts have a variety of tests for evaluating First Amendment defenses to right-of-publicity

22  claims. One is the "transformative use" test, which may not make sense where the claim is based exclusively on the use of a personal name. *See Est. of Fuller v. Maxfield & Oberton Holdings,*

23  *LLC*, 906 F. Supp. 2d 997, 1006–07 (N.D. Cal. 2012) (observing that "a transformative use [analysis] would be illogical" in the event of a name-only claim because "a name cannot be

24  transformed while remaining recognizable in the way that an image can"). Other frameworks for evaluating a First Amendment defense may provide a better fit. *See, e.g.*, *C.B.C. Distrib. & Mktg.,*

25  *Inc. v. Major League Baseball Advanced Media, L.P.*, 505 F.3d 818, 823–24 (8th Cir. 2007) (seeking to "balance[]" the "rights of publicity . . . against first amendment considerations" by

26  asking whether the facts "implicate the interests that states typically intend to vindicate by providing rights of publicity to individuals"); *id.* at 824 (concluding that the First Amendment

27  "supersede[s] the [plaintiffs'] rights of publicity" in part because there was no "false impression . . . [or] endors[ment]" and because "it would be strange law that a person would not

28  have a first amendment right to use information that is available to everyone"). But the Court need not reach this issue because California's rights of publicity do not apply here. *Supra* at 11–13.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO

1    Dated:  July 3, 2023                    Respectfully submitted,

2                                             LATHAM & WATKINS LLP

3                                             By:  */s/ Andrew M. Gass*

4                                             Andrew M. Gass (SBN 259694)
                                                *andrew.gass@lw.com*
5                                             Michael H. Rubin (SBN 214636)
                                                *michael.rubin@lw.com*
6                                             Brittany N. Lovejoy (SBN 286813)
                                                *britt.lovejoy@lw.com*
7                                             505 Montgomery Street, Suite 2000
                                             San Francisco, California  94111-6538
8                                             Telephone:  415.391.0600

9                                             *Attorneys for Defendant DeviantArt, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEVIANTART'S REPLY ISO
ANTI-SLAPP MOTION TO STRIKE
CASE NO. 3:23-cv-00201-WHO