# EXHIBIT A

```
 1                     UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
 2                              --oOo--

 3   SARAH ANDERSON, ET AL.,       ) Case No. 23-CV-201
                                   ) San Francisco, California
 4                 Plaintiffs,     ) July 19, 2023
                                   ) 2:32 p.m.
 5         v.                      )
                                   )
 6   STABILITY AI, LTD., ET AL.,   ) Re: Motions to dismiss
                                   )
 7                 Defendants.     )

 8                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE WILLIAM H. ORRICK
 9                SENIOR UNITED STATES DISTRICT JUDGE

10   APPEARANCES:

11   For the Plaintiffs:      JOSEPH SAVERI LAW FIRM, LLP
                              601 California Street, Suite 1000
12                            San Francisco, CA 94108
                         BY:  MR. JOSEPH R. SAVERI
13                            MR. LOUIS ANDREW KESSLER
                              MR. CHRISTOPHER KAR-LUN YOUNG
14
                              LAW OFFICE OF MATTHEW BUTTERICK
15                            1920 Hillhurst Avenue, Suite 406
                              Los Angeles, CA 90027
16                       BY:  MR. MATTHEW BUTTERICK

17   For the Defendant        FRIED FRANK HARRIS SCHRIVER &
     Stability AI:            JACOBSON, LLP
18                            801 17th Street NW
                              Washington, DC 20006
19                       BY:  MR. PAUL M. SCHOENHARD

20        (Appearances cont'd next page.)

21            JENNIFER COULTHARD, RMR, CRR, CSR# 14457
                       Official Court Reporter
22             450 Golden Gate Avenue, Suite 1600
                       San Francisco, CA 94102
23                     jenrmrcrr2@gmail.com
                          (530)537-9312
24
     Proceedings reported via mechanical steno - transcript produced
25   via computer-aided transcription
```

```
 1   APPEARANCES (Cont'd):

 2

 3   For the Defendant        COOLEY, LLP
     Midjourney:              3175 Hanover Street
 4                            Palo Alto, CA 94304
                         BY: MS. ANGELA LUCILLE DUNNING
 5                            3 Embarcadero Center, 20th Floor
                              San Francisco, CA 94111
 6                       BY: MR. JUDD LAUTER
```

```
 1   Wednesday - July 19, 2023                           2:32 p.m.
 2                       P R O C E E D I N G S
 3                              --o0o--
 4       (In open court.)
 5           THE CLERK:  Okay.  And I believe that concludes our
 6   video hearings for the day, so we are set to begin case
 7   No. 23-201, Andersen v. Stability AI, Limited.
 8           Counsel, if you would please come forward and state
 9   your appearance for the record.
10           MR. SAVERI:  Good afternoon, Your Honor; Joseph Saveri
11   on behalf of the plaintiffs.
12           THE COURT:  Mr. Saveri.
13           MR. YOUNG:  Good afternoon, Your Honor; Christopher
14   Young on behalf of the plaintiffs.
15           MR. SCHOENHARD:  Good afternoon, Your Honor; Paul
16   Schoenhard on behalf of the Stability defendants.
17           MS. DUNNING:  Good afternoon, Your Honor; Angela
18   Dunning on behalf of Midjourney.  With me in the courtroom is
19   Max Sills from the company, and I have my colleague, Judd
20   Lauter, and several of our summer associates.
21           THE COURT:  Great.
22           MR. GASS:  Good afternoon, Your Honor; Andy Gass for
23   defendant DeviantArt.
24           THE COURT:  Great.
25           All right.  I have a fairly lengthy set of thoughts
```

1  that I'm going to provide to you, so I think sitting down is
2  probably a good idea.
3          **MR. SAVERI:**  You were reading my mind, Your Honor.
4  And then just Mr. Young and I are going to divide the
5  arguments, so it may be a little bit of an up and down,
6  but . . .
7          **THE COURT:**  That's fine.
8          Let me tell you how I'm thinking about this, which may
9  help you with your argument or it may not.
10         The top line is, I'm inclined to dismiss almost
11 everything with leave to amend.
12         I think the plaintiffs need to differentiate the
13 defendants in the complaint and allege how each is liable for
14 each of the claims, because the defendants do different things.
15         Regarding Andersen's copyright claims, I think the
16 plaintiffs need to allege that each of the defendants' products
17 incorporate her work in their entirety in training images
18 present in or used in each product, not just that Stability AI
19 incorporated them in training Stable Fusion.
20         It's unclear to me if the plaintiff is alleging that
21 Deviant Art or Midjourney products conduct image training or
22 rely on Stable Diffusion's training.
23         I think the plaintiffs need to identify the CMI in
24 each of their works that they claim each defendant has stripped
25 or alters in order to make a DMCA claim.

1            I think plaintiffs need to clarify that they're only
2    seeking misappropriation claims based on the use of names
3    through user text prompts and that the defendants used their
4    names for commercial advantage.
5            And even if you do that, I'm interested in why that
6    wouldn't be preempted by the Copyright Act.  So in addition, I
7    don't think McKernan or Ortiz have copyright claims, and
8    Andersen's are limited to what she registered.
9            I think the claim that survives is Andersen's direct
10   infringement claim against Stability AI for copying images
11   because that claim and then the process training Stable
12   Diffusion I think is plausible, but I don't think that those
13   same claims work against Deviant Art or Midjourney.
14           And in addition, the plaintiffs have accessed to
15   Stable Diffusion as open-source code, and I don't know why they
16   wouldn't be able to provide more facts if, in fact, their work
17   is being used because otherwise it seems implausible that their
18   works are involved when each of DreamStudio, DreamUp or
19   Midjourney products ran on their 5 billion compressed images.
20           I don't think the claim regarding output images is
21   plausible at the moment because there's no substantial
22   similarity.  It's not clear to me whether Stability AI could
23   supervise the infringing conduct.
24           I'm inclined to dismiss the right of publicity claim
25   to allow the plaintiff to narrow the focus, its focus, and see

1    if it can avoid preemption, but I'm also wondering whether
2    there's standing if the named plaintiff isn't a named artist by
3    the defendants.
4            I think the theory of the UCL claim based on the
5    Lanham Act isn't alleged in the complaint and that the other
6    allegations need more specificity.
7            I'm not inclined now to address Deviant Art's special
8    motion to strike until the amended complaint is filed with a
9    motion to -- on the motion to dismiss, which I'm going to grant
10   all three of them with leave.  With Deviant Arts there's a
11   breach of contract claim that will need more specificity.
12           And I'm not going to rule on Midjourney's arguments
13   regarding class allegations now or probably at any time until
14   later in the case.
15           So that's -- that's a long list, Mr. Saveri, and you
16   can take comfort in the leave to amend, but why don't you start
17   off on wherever you'd like to start off.
18           **MR. SAVERI:**  Your Honor, if I just had a minute --
19           **THE COURT:**  Sure.
20           **MR. SAVERI:**  -- so we can do a little bit of stage
21   management?
22           **THE COURT:**  Yes.
23        (Brief pause.)
24           **MR. SAVERI:**  So I think if it's okay, Your Honor,
25   Mr. Young is going to -- we'll take some of those out of order.

| | |
|---|---|
| 1 | **THE COURT:**  Sure. |
| 2 | **MR. SAVERI:**  We'll try cover them all. |
| 3 | So Mr. Young will begin, he'll let you know which one |
| 4 | he's handling, and then I'll go afterwards and do the same. |
| 5 | **THE COURT:**  Sounds good. |
| 6 | **MR. YOUNG:**  Thank you, Your Honor.  Christopher Young |
| 7 | on behalf of the plaintiffs.  I'll be addressing the DMCA claim |
| 8 | first followed by the publicity claims, specifically the merits |
| 9 | of the publicity claim and the preemption argument. |
| 10 | So briefly about the DMCA claim, in kind of a pitch |
| 11 | that we've already identified, the CMI, I think you can find at |
| 12 | paragraph 25 we've defined training images as not just the |
| 13 | image but also the text that comes with it, because the two |
| 14 | work together.  These AI -- generated AI models do not work |
| 15 | without just the image.  It needs text in order to, you know, |
| 16 | search amongst the 5 billion images which ones to draw from to |
| 17 | create the output. |
| 18 | At paragraph 191 -- |
| 19 | **THE COURT:**  You probably want to slow down just a |
| 20 | little bit for the court reporter. |
| 21 | **MR. YOUNG:**  I apologize, Your Honor. |
| 22 | In that paragraph 191 we quote that language |
| 23 | identifying training images as CMI that is removed or altered |
| 24 | by the generative AI model, and we also identify as the |
| 25 | signatures that are affixed on to the artist's work. |

1  the complaint, but that's certainly something we can fix in our
2  amendment.
3          **THE COURT:**  Okay.
4          **MR. YOUNG:**  But regardless, I would also argue that
5  based on what we have in the complaint would be sufficient for
6  at least injunctive standing just based off of what we know is
7  in the systems.
8          **THE COURT:**  If you didn't have a named plaintiff, you
9  think you would have injunctive relief possibilities?
10         Anyway, you can go on with your argument.
11         **MR. YOUNG:**  Yes.  In terms of the merits of the, you
12 know, publicity claim, while acknowledging that none of our
13 plaintiffs -- at least as the complaint is presently drafted --
14 are named in there.
15         We do see -- our claim is predicated on the use of the
16 names.  The focus on "in the style of," at least from -- you
17 know, we believe that that is a stretching of the complaint and
18 a misunderstanding of the complaint because the words "in the
19 style of" actually have no real meaning in prompts.  It's akin
20 to, you know, analogizing to a boolean "and" or a boolean "or"
21 in a Westlaw or LEXISNEXIS search.
22         But regardless, that's only one aspect of the
23 publicity claim.  It's only one aspect of the use.  The names
24 are essential to the function and promotion of the products.
25 You can see this on the kind of snapshot of the animation that

1   we attached to -- as an exhibit to the opposition to
2   Midjourney's RJN where artists' names are prominently displayed
3   to promote the product.
4            You know, we had submitted a change law, which no one
5   disputed, to Midjourney's website identifying one of the
6   changes to the website was routing references to artists'
7   names.  So I think from that, that is very strong allegations
8   or evidence that the use of names is very important to the
9   promotion and function of these generative AI models.
10           So unless Your Honor has any questions about the
11  publicity claims, I think I will let Mr. Saveri direct the
12  other --
13           **THE COURT:**  All right.  Thank you, Mr. Young.
14           **MR. YOUNG:**  Thank you.
15           **MR. SAVERI:**  Mr. Butterick, did you want to take the
16  issue of the open source?
17           **MR. BUTTERICK:**  Sure.  Your Honor, Matthew Butterick
18  for the plaintiffs.  Hello.
19           I wanted to return to your point that you made about
20  the open source.  Did I understand you correctly that you said
21  because it's open-source doctrine, you were hoping for more
22  specific allegations as to what?
23           **THE COURT:**  As to anything in the way that I laid it
24  out, but why wouldn't you be able to -- why wouldn't there be
25  information with respect to your clients, for example, that

1     you'd be able to identify through that?

2          **MR. BUTTERICK:**  I'd be happy to address that.  In
3     addition to being a lawyer, I'm a very long-time member of the
4     open-source programming community and even longer time member
5     of the visual arts community.

6          I've looked at Stable Diffusion code.  I can't figure
7     it out.  I mean, there's two parts of the system really.  There
8     is this open-source software, and then there's images, you
9     know, written in Python, and then there's this other thing
10    called the "weights file," and you need to use them together.
11    It's almost like a Super Nintendo and a cartridge.  If they're
12    not together, they can't do anything.  And the problem is that
13    if you inspect the Python code where it is, you can't really
14    inspect anything about the weights file.  It's just a big
15    binary mass of numbers.

16         Now, where does the weights file come from?  That is
17    the file that is exclusively and uniquely derived from training
18    the model on our plaintiffs' works.  So we would love to be
19    able to open up that weights file and look at it, but that's
20    not -- that's not how it works.

21         The best that we can do today is to look at some of
22    the other interrogations; for instance, this dataset that
23    Stability has submitted to using Python on the 5-billion-image
24    set they've said they used.  The problem, though, Your Honor is
25    we don't have a lot of information about exactly how they used

```
1   it -- did they focus on certain subsets? -- you know, the
2   information is sketchy.
3           The defendant Stability has also pointed to this
4   website called "HaveIbeentrained.com" where a lot of artists,
5   including our plaintiffs -- and we cite to this in the
6   complaint -- have been able to use this to discover that their
7   work is in it.  So that's -- you know, we're kind of having to
8   resort to these sideways methods to get at it.
9           So that's a long way of saying to your question merely
10  having the open-source code available for part of the system
11  doesn't tell us about certain facts about the whole system.
12          And I'll make one more point.  I do feel that the
13  defendant's characterization of this as an open-source system
14  is just marketing -- it's flawed -- because part of what
15  they're distributing is this weights file, which is an artifact
16  derived from the copyrighted work of artists whose work is
17  there without consent, without credit, without compensation.
18  It is not open source.  They're not entitled to distribute it.
19  That's what this case is about.  So I feel like we have to keep
20  in mind that merely calling it open source does not make it so.
21          **THE COURT:**  Fair enough.
22          **MR. BUTTERICK:**  All right.
23          **THE COURT:**  Thank you.
24          **MR. BUTTERICK:**  Thank you.
25          **MR. SAVERI:**  So, Your Honor, I guess then let me pick
```

1  derivative work and it can't be infringing.  And so in any
2  amended complaint I hope they will keep that in mind.
3          Thank you, Your Honor.
4          **THE COURT:**  All right.  Thank you all very much for
5  your argument, and I will get an order out when I get an order
6  out.
7          **MR. SAVERI:**  Thank you, Your Honor.
8          **THE COURT:**  Thank you.
9      (Concluded at 3:25 p.m.)

11                    C E R T I F I C A T E

13     I certify that the foregoing is a true and correct
14  transcript of the record of proceedings in the above-entitled
15  matter.

17  *[signature: Jennifer Coulthard]*                    July 21, 2023
    JENNIFER L. COULTHARD, RMR, CRR                     DATE
18  Official Court Reporter
    CA CSR#14457