CLEARY GOTTLIEB STEEN
& HAMILTON LLP
Angela L. Dunning (344888)
adunning@cgsh.com
Cristina Mendez (349687) (admission pending)
cmendez@cgsh.com
1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: (650) 815-4100

Arminda B. Bepko (admitted *pro hac vice*)
abepko@cgsh.com
Vishakha S. Joshi
vjoshi@cgsh.com (*pro hac vice* pending)
Amira Perryman
aperryman@cgsh.com (*pro hac vice* pending)
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000

Attorneys for Defendant
Midjourney, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al., | Case No. 3:23-cv-00201-WHO |
| Plaintiffs, | |
| v. | **DEFENDANT MIDJOURNEY, INC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| STABILITY AI LTD., a UK corporation; STABILITY AI, INC., a Delaware corporation; DEVIANTART, Inc., a Delaware corporation; MIDJOURNEY, INC., a Delaware corporation; RUNWAY AI, INC., a Delaware corporation, | Hearing Date: May 8, 2024<br>Time: 2:00 PM<br>Courtroom: Videoconference<br>Before: Hon. William H. Orrick |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  RELEVANT BACKGROUND AND ALLEGATIONS ........................................................... 2

    A.   Procedural History ...................................................................................... 2

    B.   Claims Against Midjourney in the FAC ...................................................... 3

III. LEGAL STANDARDS ................................................................................................... 5

IV.  ALL CLAIMS AGAINST MIDJOURNEY SHOULD AGAIN BE DISMISSED ......................... 6

    A.   The FAC Fails to Adequately Plead Copyright Infringement (Claims 5, 6) .......... 6

        1.   Plaintiffs Lack Valid Registrations for Many of the
             Images at Issue ................................................................................ 6

        2.   Plaintiffs Still Fail to Adequately Plead that
             Midjourney Made Copies of Any Registered Work
             in Training its Platform .................................................................... 8

        3.   Plaintiffs' Argument that the Midjourney Platform Is
             Itself an Infringing Copy or Derivative Work Fails
             as a Matter of Law ......................................................................... 11

    B.   Plaintiffs Again Fail to Allege a Violation of the DMCA (Count 7) ................. 15

    C.   Plaintiffs' False Endorsement Claim (Claim 8) Should Be Dismissed .............. 17

    D.   Plaintiffs Fail to Plead Vicarious Trade Dress Infringement (Claim 9) ............. 20

    E.   Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 10) .................... 25

V.   CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  744 F.3d 595 (9th Cir. 2014)..................................................................... 13

*Ambrosetti v. Oregon Cath. Press*,
  458 F. Supp. 3d 1013 (N.D. Ind. 2020)................................................... 7

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
  581 F.3d 1138 (9th Cir. 2009).................................................... 21, 23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................ 5, 10

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ......................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................. 5

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
  963 F.3d 859 (9th Cir. 2020) ................................................................. 22

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) .......................................................... 19, 20

*Cairns v. Franklin Mint Co.*,
  107 F. Supp. 2d 1212 (C.D. Cal. 2000)................................................. 18

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002)................................................................. 12

*Chaquico v. Freiberg*,
  274 F. Supp. 3d 942 (N.D. Cal. 2017).................................................. 20

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
  710 F.3d 946 (9th Cir. 2013)................................................................... 3

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010)........................................................... 5, 11

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)................................................................................ 22

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  2015 WL 12731929 (C.D. Cal. May 8, 2015)....................................... 24

*Dielsi v. Falk,*
   916 F. Supp. 985 (C.D. Cal. 1996)..................................................................... 25

*Dolls Kill, Inc. v. Zoetop Bus. Co.,*
   2022 WL 16961477 (C.D. Cal. Aug. 25, 2022)................................................ 16

*Eldred v. Ashcroft,*
   537 U.S. 186 (2003)........................................................................................ 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991)................................................................................... 13, 14

*Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.,*
   198 F.3d 1143 (9th Cir. 1999) ......................................................................... 23

*Galerie Furstenberg v. Coffaro,*
   697 F. Supp. 1282 (S.D.N.Y. 1988).................................................................. 22

*Hanagami v. Epic Games, Inc.,*
   85 F.4th 931 (9th Cir. 2023)....................................................................*passim*

*Hughes v. Design Look, Inc.,*
   693 F. Supp. 1500 (S.D.N.Y.1988).................................................................. 22

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,*
   4 F.3d 819 (9th Cir. 1993) ............................................................................... 23

*Int'l Order of Job's Daughters v. Lindeburg, Co.,*
   633 F.2d 912 (9th Cir. 1980) ........................................................................... 23

*Inwood Labs, Inc. v. Ives Labs, Inc.,*
   456 U.S. 844 (1982)........................................................................................ 22

*Jack Daniel's Props., Inc. v. VIP Prods. LLC,*
   599 U.S. 140 (2023)........................................................................................ 19

*Kadrey v. Meta Platforms, Inc.,*
   2023 WL 8039640 (N.D. Cal. Nov. 20, 2023)...................................... 12, 13, 25

*Kelly v. Arriba Soft Corp.,*
   77 F. Supp. 2d 1116 (C.D. Cal. 1999), *aff'd in part, rev'd in part*, 280 F.3d 934
   (9th Cir. 2002)................................................................................................ 15

*Kirk Kara Corp. v. W. Stone & Metal Corp.,*
   2020 WL 5991503 (C.D. Cal. Aug. 14, 2020)................................................. 16

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,*
   591 F. Supp. 2d 1098 (N.D. Cal. 2008)...................................................... 24, 25

*Mattel v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) ................................................................... 19

*Miller v. Easy Day Studios Pty. Ltd.*,
  2022 WL 20289094 (S.D. Cal. Sept. 16, 2022) ....................................... 20

*Nash v. CBS, Inc.*,
  899 F.2d 1537 (7th Cir. 1990) ................................................................. 13

*O'Neal v. Sideshow, Inc.*,
  583 F. Supp. 3d 1282 (C.D. Cal. 2022) .................................................. 16

*Oracle Am., Inc. v. Terix Comput. Co.*,
  2015 WL 2090191 (N.D. Cal. May 5, 2015) ............................................. 7

*Parziale v. HP, Inc.*,
  2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ........................................ 13

*Punchbowl, Inc. v. AJ Press*,
  2024 WL 134696 (9th Cir. Jan. 12, 2024) ............................................... 20

*Rabin v. Google LLC*,
  2023 WL 4053804 (N.D. Cal. June 15, 2023) ......................................... 25

*Rogers v. Grimaldi*,
  875 F.2d 994 (2nd Cir. 1989) ............................................................ 19, 20

*Roth Greeting Cards v. United Card Co.*,
  429 F.2d 1106 (9th Cir. 1970) ................................................................. 12

*S&B Filters, Inc v. ETN Cap., LLC*,
  2022 WL 2204144 (C.D. Cal. Mar. 9, 2022) .......................................... 24

*Smith v. Chanel, Inc.*,
  402 F.2d 562 (9th Cir. 1968) ................................................................... 19

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ..................................................................... 5

*Stevens v. CoreLogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ................................................................... 17

*Stouffer v. Nat'l Geographic Partners, LLC*,
  400 F. Supp. 3d 1161, 1185 (D. Colo. 2019) ......................................... 21

*Sugarfina, Inc. v. Sweet Pete's LLC*,
  2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) ........................................ 25

*Synopsys, Inc. v. ATopTech, Inc.*,
  2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ........................................... 9

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001) ................................................................. 22

*UAB "Planner 5D" v. Facebook, Inc.*,
    2020 WL 4260733 (N.D. Cal. July 24, 2020) (Orrick, J.) ................................ 6, 7

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007) ................................ 21

*Wal-Mart Stores, Inc. v. Samara Bros.*,
    529 U.S. 205 (2000) ................................................................. 21, 23

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................. 5

**Statutes**

15 U.S.C. § 1125(a) ................................................................. 19, 22

17 U.S.C. § 102(b) ................................................................. 13, 19

17 U.S.C. § 103(b) ................................................................. 6

17 U.S.C. § 301 ................................................................. 25

Cal. Bus. & Prof. Code § 17200 ................................................................. 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 5

Compendium of U.S. Copyright Office Practices
    (3rd ed. Jan. 28, 2021) § 503.5 ................................................................. 6, 8

U.S. Copyright Office, Circular 14 (rev. 2020) ................................................................. 6

2 Patry on Copyright (2023) § 4:14 ................................................................. 12, 19

2 J. Thomas McCarthy, McCarthy on Trademarks and
    Unfair Competition (5th ed. 2024) § 10:40.50 ................................ 22

5 J. Thomas McCarthy, McCarthy on Trademarks and
    Unfair Competition (5th ed. 2023) § 28.14 ................................ 18

9th Cir. Model Jury Instruction 15.3
    Definition—Trade Dress (15 U.S.C. § 1125(a)) ................................ 21

**NOTICE/REQUESTED RELIEF**: On May 8, 2024 at 2:00 p.m., Defendant Midjourney, Inc. ("Midjourney"), will and hereby does move the Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice all claims against Midjourney in the First Amended Complaint (Dkt. 129) ("FAC") (Claims 5 through 10) for failure to state a claim. The motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and Consideration of Documents Incorporated by Reference ("RJN") and Declaration of Angela L. Dunning (with exhibits) ("Dunning Decl./Ex.") filed concurrently herewith, the arguments of counsel, and such other matters as may be presented to the Court at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The FAC adds only filler, not facts to support a viable claim against Midjourney. Rather than curing the pleading defects noted in the Court's October 30, 2023 dismissal order ("Order"), the FAC is larded up with new plaintiffs (many of whom lack a copyright registration for the images at issue), newly manufactured and misleading exhibits (showing only that plaintiffs lack facts to substantiate their claims), and new theories of liability that contradict their earlier pleading and are just as baseless as those already rejected. Among other defects requiring dismissal, the FAC:

- Still does not plead facts plausibly establishing that Midjourney trained its platform on any image covered by a valid copyright registration;

- Persists in advancing the unsupportable claim that Midjourney's model is both an infringing "copy" and "derivative" of each registered work on which it was trained;

- Continues to advance a claim for violation of the Digital Millennium Copyright Act ("DMCA") without identifying any copyright management information ("CMI") Midjourney is supposed to have altered or removed from any plaintiff's work;

- In place of the now-abandoned publicity claims, invents factually and legally baseless Lanham Act claims for "false endorsement" and "vicarious trade dress infringement"; and

- Continues to plead a claim for unjust enrichment that is preempted by copyright law.

Plaintiffs have now twice attempted—and failed—to plausibly allege any viable claim against Midjourney. All claims against Midjourney should again be dismissed, with prejudice.

1

2

## II.   RELEVANT BACKGROUND AND ALLEGATIONS[1]

### A.  Procedural History

Plaintiffs Sarah Andersen, Kelly McKernan, and Karla Ortiz filed the original Complaint against Midjourney, DeviantArt, Inc. ("DeviantArt"), and Stability AI Ltd. and Stability AI, Inc. (together, "Stability") on January 13, 2023, alleging copyright and related claims arising out of the training and development of defendants' generative AI art platforms.  (Dkt. 1.)  On October 30, 2023, the Court dismissed McKernan and Ortiz's copyright claims with prejudice for lack of a valid registration and dismissed all other claims with leave to amend save for a single surviving claim— Andersen's direct infringement claim against Stability.  (Order (Dkt. 117) at 28.)  Relevant here:

**Copyright claims**:  Although the crux of the direct infringement claim against Midjourney was that it allegedly copied plaintiffs' works in training its generative AI art model, the Court found the Complaint contained "no facts regarding what training, if any, Midjourney conducted" and that plaintiffs "need to clarify their theory against Midjourney—is it based on Midjourney's use of Stable Diffusion, on [its] own independent use of Training Images to train the Midjourney product, or both?" (*Id*. at 14.)  The Court also found that any theory "regarding compressed copies" "need[s] to be clarified and adequately supported by plausible facts," and outright rejected the "theory that all Output Images are derivative infringing works" as "simply not plausible." (*Id*. at 12, 16.)  It then dismissed the vicarious infringement claim for failure to plead direct infringement.  (*Id*. at 15–16.)

**DMCA**:  The Court dismissed the deficient DMCA claims, noting that any amendment must "identify the specific CMI each named plaintiff included in the images" allegedly used for training and "identify with specificity the theory of DMCA liability for each defendant." (*Id*. at 19.)

**Right of Publicity**:  The Court noted that plaintiffs had retreated from their original theory that Midjourney misappropriated their "artistic identities" by allowing users to input plaintiffs' names into text prompts to generate works in their "distinctive styles" and shifted to alleging that it made "commercial" use of "plaintiffs' names to advertise and promote" its platform. (*Id*. at 19 & n.14.)  This shift was predictable after defendants made a "strong showing of preemption" under

---

[1] Unless otherwise noted, citations to "¶\_" and "Ex. " are to the paragraphs and exhibits to the FAC, all emphases are added, and internal citations and quotation marks are omitted.  Citation to specific pages in an exhibit are to the exhibit page numbers, not the ECF page numbers.

the Copyright Act.  (*Id.* at 20 n.15.)  Nevertheless, because facts to support the new theory were "nowhere [alleged] in the Complaint," the Court dismissed the publicity claims.  (*Id.* at 20.)

**Unfair Competition**:  Plaintiffs asserted an unfair competition claim under the Lanham Act, common law, and Cal. Bus. & Prof. Code § 17200 ("UCL") and the Court rejected all three theories.  It dismissed the Lanham Act and common law claims for lack of "plausible facts" as to "how a user could be deceived that one of the named plaintiffs was the origin of [or sponsored] an Output Image" or that might "plausibly support a passing off claim."  (*Id.* at 23–24.)  It dismissed the UCL claim for lack of a viable predicate violation for the "unlawful" prong, any non-preempted "unfair" act, or facts to meet the heightened Rule 9(b) pleading standard for "fraudulent" conduct.  (*Id.*)

The Court also warned that any amendment "should not lump 'defendants' together," but should "identify each defendant by name with respect to conduct … [it] engaged in."  (*Id.* at 5 n.2.)

**B.  Claims Against Midjourney in the FAC**

Plaintiffs filed the FAC on November 29, 2023.  (Dkt. 129.)  It names seven new plaintiffs and a new defendant (Runway) and asserts a total of seventeen copyright and related claims; Claims 5–10 are against Midjourney.[2]  Though plaintiffs now parse their claims by defendant, the overly complicated structure of the FAC obscures which plaintiffs assert which claims and on what basis— presumably to mask the lack of facts to plausibly support those claims.  We attempt to clarify below.

**Direct Copyright Infringement (Claims 5, 6):**  The FAC alleges two direct infringement claims against Midjourney.  **Claim 5** alleges that, sometime before February 2022, Midjourney trained version 1 of its model on copies of works included in a "modified version" of the LAION-400M dataset, a repository of "400 million training images assembled from images accessible on the public internet."  (¶¶ 59–62, 266, 282–83.)  Only two named plaintiffs claim to hold a registered copyright in LAION-400M works and assert Claim 5: Sarah Andersen and Jingna Zhang (designated in the FAC as "LAION-400M Registered Plaintiffs").  (¶¶ 270, 279–83; Exs. B, C.)

The FAC alleges that "every image in LAION-400M is also in LAION-5B," a larger dataset of 5.85 billion images.  (¶ 65.)  **Claim 6** alleges that, "[s]ometime after July 2022 and before March

---

[2] These do not include—and hence plaintiffs have "abandoned"—their prior claims for vicarious copyright infringement, right-of publicity, unfair competition, and declaratory relief.  *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 973 n.14 (9th Cir. 2013).

2023," Midjourney began training version 5 of its model on works comprising a "subset" of LAION-5B.  (¶¶ 274–75, 277, 285–87.)  Claim 6 is asserted by the "LAION-5B Registered Plaintiffs," *i.e.*, the six plaintiffs who hold registered copyrights in LAION-5B works: Andersen, Zhang, Gerald Brom, Gregory Manchess, Julia Kaye, and Adam Ellis.  (¶¶ 213, 285; Ex. A (identifying registered and *un*registered LAION-5B works), Ex. C (named plaintiffs' copyright registrations).)[3]

Claims 5 and 6 both speculate that, because Midjourney allegedly trained on *some* works in LAION-400M and 5B, and *some* named plaintiffs' registered works were included in those datasets, Midjourney must have made infringing "copies" of those works in training its model. (¶¶ 282, 287.)  As to Claim 6 only, the FAC further alleges that Midjourney's model is itself both an infringing copy and an infringing derivative of *each* LAION-5B Registered Work.  (¶ 288.)

**DMCA (Claim 7):**  All plaintiffs reassert a DMCA claim based on allegations that the Midjourney "training process is designed to remove *or* alter CMI from the training images." (¶ 300.) They do not allege that it has ever created an identical copy of any plaintiff's work without their CMI.

**False Endorsement (Claim 8):**  Five named plaintiffs—Andersen, Brom, Kaye, Ortiz, and Rutkowski (designated in ¶ 264 of the FAC as the "Midjourney Named Plaintiffs")—now assert a claim for "false endorsement" under the Lanham Act.  These plaintiffs assert that Midjourney's founder posted a "style list" spreadsheet on Discord in February 2022, one tab of which was a "Name List" that included the names of five named plaintiffs and 4,700 other artists.  (¶¶ 261–64; Ex. J.)  Plaintiffs do not contend that anything in the post was inaccurate, identify any user who was supposedly confused, or explain why any user following Midjourney's Discord channel might mistakenly believe that any artist listed in the Name List endorsed the Midjourney platform.

**Vicarious Trade Dress Infringement (Claim 9):**  The same five plaintiffs (Andersen, Brom, Kaye, Ortiz, and Rutkowski) allege that the combination of "visual elements and artistic techniques" used in their artwork constitutes unregistered trade dress, and that Midjourney is vicariously liable under the Lanham Act for "encouraging and inducing [its] users … to enter artist-name prompts and generate images" in their alleged art styles. (¶¶ 319, 325.)  Recitations of generic style elements aside, the FAC makes no attempt to plead the secondary meaning and non-functionality necessary to

---

[3] Plaintiffs McKernan, Southworth, Rutkowski and Ortiz do not assert any copyright claims.

satisfy plaintiffs' burden to plead protectable trade dress, and fails to cite a single example of alleged direct trade dress infringement for which Midjourney could be vicariously liable.

**Unjust Enrichment (Claim 10):**  All plaintiffs bring a (pre-empted) common law claim for "unjust enrichment" based on the "unauthorized use" of their alleged copyrighted works.  (FAC at 75.)

**Class Allegations:**  Plaintiffs once again seek to represent a variety of amorphous classes and subclasses that are defined by an unpleaded "Class Period" and impermissibly lump all defendants together.  (¶ 34.)  For instance, the putative "LAION-5B Damages Subclass" allegedly includes: "All persons or entities nationalized or domiciled in the [U.S.] that own a registered copyright in any work in the LAION-5B dataset that was used to train *any version of an AI image product* that was offered directly or incorporated into another product *by one or more Defendants* during the Class Period."  (*Id.*)  As pleaded, any U.S. copyright registrant would be part of the putative subclass against Midjourney so long as their registered work was included in LAION-5B and used to train *any* defendant's model, not specifically Midjourney's, which is plainly untenable.[4]

## III.   LEGAL STANDARDS

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support" one.  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  To survive dismissal, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Pleading facts "merely consistent with a defendant's liability … stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Leave to amend should be denied where, as here, the failure to cure pleading defects is a "strong indication that the plaintiffs have no additional facts to plead" and amendment would be futile.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

---

[4] Midjourney reserves all arguments as to non-certifiability of the alleged classes.  (*See* Dkt. 52 at 21–25, Dkt. 74 at 13–15.)  Heeding the Court's Order (at 27), it does not restate them here.

1    **IV.    ALL CLAIMS AGAINST MIDJOURNEY SHOULD AGAIN BE DISMISSED**

2          **A.    The FAC Fails to Adequately Plead Copyright Infringement (Claims 5, 6)**

3          The copyright claims are based on two theories: (1) Midjourney made unauthorized copies

4    of LAION-400M and 5B works in training its models (¶¶ 282, 287); and (2) the model is, itself, an

5    infringing "copy" and "derivative" of each work on which it was trained.  Plaintiffs unequivocally

6    fail (again) to substantiate either of these theories.

7          A copyright plaintiff must plead and prove both: (1) ownership of a valid copyright, and

8    (2) copying of "protected aspects of his work."  *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 940

9    (9th Cir. 2023).  The FAC still pleads neither.  It does not allege valid copyright registrations for

10   many of the images at issue or even facts to establish the most basic premise of its suit—that

11   Midjourney copied any registered work by plaintiffs in training its model.  Further, the assertion

12   that the Midjourney model is itself an infringing copy or derivative fails as a matter of law.

13                **1.    Plaintiffs Lack Valid Registrations for Many of the Images at Issue**

14         To state a copyright claim for copyright infringement, a complaint must "plausibly plead on

15   its face copyright registrations covering the works that the defendant allegedly infringed."  *UAB*

16   *"Planner 5D" v. Facebook, Inc.*, 2020 WL 4260733, at *2 (N.D. Cal. July 24, 2020) (Orrick, J.).

17   Although the FAC now alleges 29 registrations, sixteen do not cover the images in question (Ex. C

18   at 3–4, 11, 14–21, 24–28), and two others (owned by Ortiz) (Ex. C at 12–13) are untimely.

19         **Compilations**:  Fourteen alleged registrations are for compilations that include "previously

20   published" art.  (Ex. C at 11, 14–21, 24–28.)  However, the copyright registration in a compilation

21   "extends only to the material contributed by the author of such work, *as distinguished from the*

22   *preexisting material employed in the work, and does not imply any exclusive right in the preexisting*

23   *material.*"  17 U.S.C. § 103(b).  Accordingly, the Copyright Office has repeatedly confirmed that

24   registration for a compilation or collective work covers only "the *new* expression that the author

25   created and contributed" but "*does not cover any unclaimable material ... [including p]reviously*

26   *published material.*"  Compendium of U.S. Copyright Office Practices (3rd ed. Jan. 28, 2021)

27   ("Compendium") § 503.5; *see* U.S. Copyright Office, Circular 14 at 2 (rev. 2020) (for collective

28   works "containing 'preexisting works'—works that were previously published …—the registration

1   will only extend to the selection, coordination or arrangement of those works, not to the preexisting

2   works themselves"); *Ambrosetti v. Oregon Cath. Press*, 458 F. Supp. 3d 1013, 1018 (N.D. Ind.

3   2020) (registration does not cover previously published component works); *Oracle Am., Inc. v.*

4   *Terix Comput. Co*., 2015 WL 2090191, at *4 (N.D. Cal. May 5, 2015) (same).

5          Here, Andersen relies on sixteen registrations (Ex. C at 14–29) to support her claims for

6   infringement of works allegedly appearing in LAION-400M (Ex. B at 12–16) and LAION-5B (Ex.

7   A at 93–121).  However, thirteen of these are for compilations of "previously published art" (Ex.

8   C at 14–21, 24–28), and the FAC never alleges which (if any) corresponding images in Exhibits

9   A and B were newly created.  Five registrations do not cover *any* new art  (Ex. C at 14, 15, 17, 19,

10   26 (covering only "compilation[s] of *previously published art* with accompanying text"), meaning

11   they cannot constitute valid registration for any images in LAION (Ex. A at 93–94, 97, 99, 111).

12          Eight other Andersen registrations are for compilations of both "previously" published and

13   "new" artwork (Ex. C at 16, 18, 20–21, 24–25, 27–28) and allegedly cover the images appearing

14   in Ex. A at 95–96, 98, 100–103, 109–110, 112–118 and Ex. B at 11, 12, 15.  For instance, two

15   images (Ex. A at 95–96) are allegedly covered by Registration No. TX0008614103 for "*Adulthood*

16   *Is A Myth: A 'Sarah Scribbles' 2018 Wall Calendar*," covering "artwork, *compilation of previously*

17   *published art* with corresponding text; some new artwork."  (Ex. C at 16.)  But the FAC does not

18   allege that those images were "new artwork," as opposed to "previously published art" that would

19   *not* be covered by the registration.  Allegations as to five of the Kaye images (Ex. A at 64–68) are

20   similarly defective.  (*See* Ex. C at 11 (alleging Kaye registration for "compilation of comics," some

21   of which were "previously published online," without identifying them in the FAC).)  As plaintiffs

22   fail to plead valid copyright registrations for these images, any copyright claims premised thereon

23   must be dismissed.  *See UAB "Planner5D"*, 2020 WL 4260733, at *4 (dismissing for lack of

24   "plausible [] basis" to "infer that there is a valid copyright registration covering the specific works

25   alleged" as registration did not cover "previously published material" and complaint did not

26   "identify any prior versions of the works on which the registered versions were based").

27          **Text Only:**  Brom claims that Midjourney trained on *images* in three of his books.  (¶ 20;

28   Ex. A at 3–14.)  Only the *Lost Gods* registration, however, covers both "text" and "artwork."  (Ex.

C at 5.)  The registrations for *The Child Thief* and *Krampus*, in contrast, on their face cover only "text" (Ex. C at 3–4), leaving the at-issue artworks in those books (Ex. A at 3–13) unregistered. *See* Compendium § 503.4 ("[C]laimant may own or may be entitled to register only certain aspects of the work.  In all cases, [he] should assert a claim only in the authorship that is owned by [him].").[5]

Thus, the only remaining alleged registrations (and corresponding images) are as follows:

| Plaintiff | Alleged Registration | Images |
|---|---|---|
| Ellis | *Books of Adam: The Blunder Years* (Ex. C at 1) | Ex. A at 1 |
| | *Super Chill: A Year of Living Anxiously* (Ex. C at 2) | Ex. A at 2 |
| Brom | *Lost Gods* (Ex. C at 5) | Ex. A at 14–16 |
| Manchess | *Above the Timberline* (Ex. C at 6) | Ex. A at 17–22 |
| Zhang | *Anouk, et al.* (Ex. C at 7) | Ex. A at 39–43<br>Ex. B at 1–10 |
| | *Motherland Chronicles* (Ex. C at 8) | Ex. A at 44–61 |
| | *Portrait of Solitude* (Ex. C at 9) | Ex. A at 62 |
| Kaye | *My Life in Transition: A Super Late Bloomer Collection* (Ex. C at 10) | Ex. A at 63 |
| Andersen | *Big Mushy Happy Lump: A Sarah's Scribbles Collection* (Ex. C at 22) | Ex. A at 104–106<br>Ex. B at 13–14 |
| | *Fangs* (Ex. C at 23) | Ex. A at 107 |
| | *Oddball: A Sarah's Scribbles Collection* (Ex. C at 29) | Ex. A at 119–121<br>Ex. B at 16 |

Even assuming these registrations are valid, the FAC still fails to plausibly allege that Midjourney trained its platform on *any* of the corresponding images allegedly covered by these registrations.

### 2.  Plaintiffs Still Fail to Adequately Plead that Midjourney Made Copies of Any Registered Work in Training its Platform

A copyright plaintiff must plausibly allege copying of "protected aspects of his work," *i.e.*, both (1) "copying" and (2) "unlawful appropriation." *Hanagami*, 85 F.4th at 940–41.  Copying can be established by showing that defendant had access to plaintiff's work and that similarities in their respective works are "more likely attributable to copying" than other explanations. *Id.* at 941.  Plaintiffs cannot clear even that first low bar to show that Midjourney used their works as training material.

---

[5] Although two registrations were recently issued to Ortiz (Ex. C at 12–13), she does not assert a copyright claim as her prior claims were dismissed with prejudice.  (Order at 5.)

Despite its heft, the FAC still does not allege that Midjourney created or used copies of any registered artwork to train its platform.  Rather, plaintiffs continue to allege merely that Midjourney had access to and "trained on a subset of Laion5b" (¶ 274) and a "modified" version of LAION-400M (¶ 266).  Plaintiffs still do not specify which of their works were included in these subsets or any plausible basis to infer that Midjourney trained its platform on any of plaintiffs' *registered* images.[6]  This, alone, requires dismissal.  *See Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013) (claim that "never makes clear what [was allegedly] copied" fails to put a defendant on fair notice of the claim against it); *Becton, Dickinson & Co. v. Cytek*, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (same, dismissing claim).

In place of the required facts, plaintiffs speculate that Midjourney must have copied their registered images in training because plaintiffs were able to produce "substantially similar" outputs by prompting the latest version of Midjourney's platform.  (¶ 288.)  In support, they cite two misleading exhibits they created (Exs. F and I), neither of which supports an inference of copying.

**<u>Exhibit F</u>**:  This exhibit allegedly shows images plaintiffs created using two text prompts: "chef" and "teacher."  Pages 1 and 7 of that exhibit allegedly show outputs generated on the Midjourney platform in response to text prompts using those words alone; the remaining pages show outputs generated when the model was prompted with those terms in combination with the full names of five plaintiffs (Andersen, Brom, Manchess, McKernan, and Zhang).  (¶¶ 171–76.)[7]

The example using McKernan's name (Ex. F at 5) is irrelevant since she has no copyright registration.  The remaining images cannot support a claim either, as plaintiffs do not and cannot allege that they are visually similar to any of plaintiffs' *registered* works in LAION-5B (Ex. A) and, thus, permit no inference that Midjourney copied or trained its platform on any of them.

For example, Brom does not allege that he has ever created and registered an image of a "chef" or "teacher," much less one that looks anything like those depicted in Ex. F (at 3, 9).

---

[6] Despite allegations that an earlier version of Midjourney's model incorporated Stable Diffusion (¶¶ 169, 273), and leaving aside the fatal lack of supporting facts, the FAC does at least now clarify that Claims 5 and 6 are based solely on Midjourney's own "use of Training Images to train the Midjourney product," rather than any alleged use of Stable Diffusion.  (Order at 14; *see* ¶¶ 282, 288.)

[7] Tellingly, these names do not coincide with those of the six plaintiffs who assert copyright claims.  Plaintiffs apparently made no attempt to generate images using Kaye's and Ellis's names, or if they did, found the resulting outputs unhelpful and chose not to cite them.

Plaintiffs note that the "Brom-inspired chefs have a gothic and countercultural air, including several fantastic creatures, typical of artworks by Mr. Brom," (¶ 174), and the "Brom-inspired teachers are demonic, and feature images of skulls, common motifs in Mr. Brom's work" (¶ 175). Even if true, this shows only that Midjourney may have trained on *un*registered Brom works in his "typical" style or featuring his "common motifs," not on the three specific images allegedly covered by his single, valid registration for *Lost Gods*, which plainly look nothing like the "chef" and "teacher" output images. (*Compare* Ex. A at 14–16 *with* Ex. F at 3, 9).[8] The FAC alleges no basis to conclude that the platform's ability to create these images is "more likely attributable" to copying of his *registered* images, as opposed to his *unregistered* ones, *Hanagami*, 85 F.4th at 941, and thus "stops short" of stating a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

The allegations as to Zhang also fail. The FAC does not allege that Zhang has ever taken or registered any photograph resembling the images in Exhibit F; *they look nothing like her alleged works*. (*Compare* Ex. A at 39–62 *with* Ex. F at 4, 10.) Further, the only alleged similarity—that the "Zhang-inspired [chefs/teachers] are Asian and rendered photographically" (¶¶ 174–75)—is as perplexing as it is unavailing, considering most of the persons in Zhang's registered photographs appear to be Caucasian, she claims no registration for a photograph of a chef or teacher (of any ethnicity), and no one can, in good faith, claim exclusive rights to photograph "Asian" people. In any event, the fact that Midjourney's model allegedly outputted images of an Asian female "chef" and "teacher" when prompted with those terms and a common Chinese surname and woman's given name permits no plausible inference that it was trained on any registered photograph by Zhang.

**Exhibit I:** The images plaintiffs manufactured for Exhibit I are highly misleading and, in any event, also provide no basis to infer that Midjourney copied any of plaintiffs' registered works

---

[8] That the "Manchess-inspired" chefs and teachers (Ex. F at 2, 8) "are rendered in the calligraphic brushwork characteristic of [his] oil paintings" and/or with "realistic settings" "common" in his work (¶¶ 174–75) does not mean the Midjourney model was trained on any of the very distinct paintings covered by his single, alleged registration (Ex. A at 17–23; Ex. C at 6). And even crediting plaintiffs' surmise that the "Andersen-inspired" chefs and teachers (Ex. F at 6, 12) are all "obvious variations on the main character of Ms. Andersen's celebrated comic 'Sarah's Scribbles'" (¶¶ 174–75), the fact remains that none of the "previously published" "Sarah's Scribbles" comics included in 13 of the compilations for which she claims a registration (Ex. C at 14–21, 24–28) are, themselves, covered by a valid registration. (*See supra* at pp. 6–7.) There is no plausible basis to infer that Midjourney's training process entailed copying any image covered by the remaining two "Sarah's Scribbles" registrations (Ex. C at 22, 29), as opposed to the many more *un*registered ones.

in training its model. To create those images, plaintiffs allegedly prompted the current Midjourney platform with both the name of a plaintiff (Brom, Manchess, McKernan, Ortiz, Rutkowski, Southworth, and Zhang) and one or more visual works by that artist in LAION-5B. (¶ 189.) They also "supplemented" the prompt with a further command to "ensure that the image portion of the prompt was treated as the primary part." (*Id.*) That is, plaintiffs fed their own art into Midjourney's platform and specifically prompted it to produce outputs that looked like them.[9]

Exhibit I is no help to plaintiffs for two reasons. First, most of the images in Exhibit I do not correspond to a registered work. Of the 19 images plaintiffs created for Exhibit I, only *seven* allegedly correspond to a LAION-5B training image covered by a valid registration: two covered by Manchess's "*Above the Timberline*" registration (*compare* Ex. I at 4, 5 *with* Ex. A at 22, 23; Ex. C at 6), and five covered by Zhang's "*Motherland Chronicles*" registration (*compare* Ex. I at 9–13 *with* Ex. A at 49, 51, 55, 59, 61; Ex. C at 8).[10] Second, to create Exhibit I, plaintiffs uploaded their own works to Midjourney's platform and asked it to generate lookalike outputs. (¶ 189.) That is, it was *plaintiffs* who intentionally trained the platform to generate these images through their prompting. The model's ability to produce variations on seven registered works with which it was specifically prompted does not show that Midjourney used any of those images to train its platform.

### 3. Plaintiffs' Argument that the Midjourney Platform Is Itself an Infringing Copy or Derivative Work Fails as a Matter of Law

Plaintiffs assert that the latest version of the Midjourney model (5.2) is both: (1) an "infringing Statutory Copy of the LAION-5B Registered Works," because it is "*capable of*

---

[9] Plaintiffs misleadingly quote Midjourney's founder out of context to assert that the image-prompt feature "does not copy pixels from the input" image, but merely takes its "concepts" and "vibes." (¶ 188.) The cited Discord post, however, makes clear that he said no such thing: the post was describing a different feature, the "/blend command," which allows users to blend multiple images, by "look[ing] at the 'concepts' and 'vibes' of your images and merg[ing] them together into novel interpretations." (¶ 188 & n.37; Dunning Ex. 2.) Elsewhere, the Midjourney website states that using image prompts will "influence a Job's composition, style, and colors," *i.e.*, *what it looks like*! (¶ 188 & n.38; Dunning Ex. 3.) Nowhere does Midjourney suggest that its platform cannot create an output visually similar to an image with which it is prompted "unless it had stored copies of protected expression" from that work in training. (¶ 190.) That is unsupported and wrong, contradicts the very materials plaintiffs cite, and need not be accepted as true. *Daniels-Hall*, 629 F.3d at 998.
[10] The rest should be disregarded as (1) McKernan, Rutkowski, and Southworth have no alleged registrations covering the images used as prompts (Ex. I at 6–8, 18); (2) images created using Brom's works all correspond to "text" only registrations that do not cover his artwork (*compare* Ex. I at 1–3 *with* Ex. A at 6, 12–13; Ex. C at 3–4); and (3) Ortiz's registrations are untimely (Ex. I at 14–17).

reproducing protected expression" that is "substantially similar" to those works, as shown in Exhibit F and I; and (2) "an infringing Statutory Derivative Work," because it "represents a transformation of the LAION-5B Registered Works into an alternative form." (¶ 288.) These claims are untenable as a matter of law for multiple reasons, warranting dismissal with prejudice.

**First**, as the Ninth Circuit has definitively held, an alleged copy or derivative work must be substantially similar in protected expression to the copyrighted work to be infringing. In *Litchfield v. Spielberg*, the Ninth Circuit rejected as "frivolous" the exact argument plaintiffs seek to advance here, namely, that a "derivative work" encompasses "any work based on a copyrighted work." 736 F.2d 1352, 1357 (9th Cir. 1984). Rather, "[t]o prove infringement, one must show substantial similarity." *Id.*; *see Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970) ("[I]nfringement [requires] substantial similarity…."); 4 Patry on Copyright (2023) § 12:13 (collecting cases) ("to infringe the derivative right, there must be substantial similarity in protectible expression"); *Hanagami*, 85 F.4th at 935 (at the pleading stage, "the question is whether the plaintiff has plausibly alleged substantial similarity" between the original and allegedly infringing works).[11]

Citing these authorities, Judge Chhabria recently considered and rejected as "nonsensical" the identical allegation that AI "models are themselves infringing derivative works." *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023); *see* Dunning Ex. 4 (*Kadrey* Tr.) at 18 ("in your complaint you're saying that the Llama language model itself is an infringing work, which would have to mean that if you put the … model next to Sarah Silverman's book you would say they're similar…. That makes my head explode …").[12]

Like plaintiffs in *Kadrey*, plaintiffs here make no attempt to plead substantial similarity as between the model and any of their registered artworks (much less each of them), and such an allegation would be implausible on its face. Software code for a machine learning diffusion model

---

[11] The two-part substantial similarity test includes: (1) an "objective comparison" that "disregard[s] the non-protectible elements" like "stock scenes and themes" and determines whether the remaining "protectible elements, standing alone, are substantially similar"; and (2) a "subjective" assessment of whether an ordinary, reasonable person would view the works as substantially similar in "total concept and feel." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822–23 (9th Cir. 2002).

[12] Represented by the same counsel here, the *Kadrey* plaintiffs then amended, omitting this "model-as-derivative-work" theory and asserting a single claim for trademark infringement based on allegations that defendant made copies of their works during training. (*Kadrey* Dkt. 64.)

is not similar to a painting or a photograph, and plaintiffs do not and cannot claim that it is.  (¶ 288.)
Under *Litchfield*, *Hanagami*, and *Kadrey*, that should end the analysis.

**Second**, any assertion that the model is an infringing copy because it is "*capable*" of
reproducing "protected expression" that is "substantially similar" to plaintiffs' works (¶ 288) must fail.

As an initial matter, plaintiffs are foreclosed from making this assertion given that they
pleaded exactly the opposite in their original pleading.  (*See* Dkt. 1 ¶ 93 ("none of the [] output
images … is likely to be a close match"); *id.* ¶¶ 192–93 (outputs are so dissimilar from asserted
works that it would be "impossible" to identify them without CMI).)  A plaintiff cannot amend to
directly contradict a factual assertion made earlier in the same proceeding.  *See Airs Aromatics,
LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (amendments
that contradict an earlier pleading are impermissible); *see Parziale v. HP, Inc.*, 2020 WL 5798274,
at *7 (N.D. Cal. Sept. 29, 2020) (dismissing claims with prejudice; collecting cases).

Moreover, the errant logic of plaintiffs' argument is readily apparent.  A photocopier is
"capable" of reproducing an identical copy.  So, too, is a web browser and a printer.  That does not
make the *software* underlying those tools an infringing copy of the images they produce.  Indeed,
what a software program is "capable" of making says nothing about whether that code is, itself,
substantially similar to the alleged works at issue (it is not), which is the only relevant inquiry.

**Third**, a "fundamental axiom of copyright law is that no author may copyright his ideas."
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344–45 (1991).  Copyright does not extend
to facts, ideas, or other foundational elements of creativity—it protects only the specific manner in
which such information is expressed.  *Id.*; 17 U.S.C. § 102(b).  "This principle, known as the
idea/expression or fact/expression dichotomy, applies to all works of authorship."  *Id.* at 350.  It
dictates that "every idea, theory, and fact in a copyrighted work becomes instantly available for
public exploitation at the moment of publication."  *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003).
After all, "[i]ntellectual (and artistic) progress is possible only if each author [is free to] build[] on
the work of others."  *Nash v. CBS, Inc.*, 899 F.2d 1537, 1540, 1543 (7th Cir. 1990) (affirming
summary judgment that defendants took no protected expression from plaintiff's work).

The Second Circuit relied on the fact/expression dichotomy in *Authors Guild v. Google*,

*Inc.* in rejecting an argument that the Google Books project—for which Google made digital copies of millions of books without permission to create a tool allowing Internet users to search for certain words or terms within them—constituted an infringing derivative work.  804 F.3d 202, 227 (2d Cir. 2015).  The court reasoned that plaintiffs had no "supposed derivative right to supply information about their books," such as "word frequencies, syntactic patterns, and thematic markers."  *Id.* at 209, 227.   This "statistical information," the court found, does not constitute "copyrighted expression," and its use by Google did "not support Plaintiffs' derivative works argument."  *Id.*

The Ninth Circuit recently reaffirmed these basic tenets in *Hanagami*, stating:

> [T]he Act does not forbid copying writ large.  Copyright, rooted in Congress's power to "promote the Progress of Science and useful Arts," U.S. Const. art. I § 8, cl. 8, exists to "encourage[] others to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349....  Accordingly, a defendant cannot be held liable for copying only "ideas" or "concepts" from a plaintiff's work.  Instead, to be liable for copyright infringement, a defendant "must ... copy enough of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.'"

85 F.4th at 941.

Here, the FAC does not allege any facts to support the conclusory assertion that the Midjourney model contains plaintiffs' "protected expression." (¶ 129.)  It nowhere identifies that "expression" or alleges that the Midjourney model stores actual copies (compressed or otherwise) of training images in its codebase.  Instead, it alleges that, "[f]or each training image, a diffusion model finds the sequence of denoising steps to reconstruct that specific image" and "stores this sequence of steps." (¶ 90; *see also* ¶ 118 (alleging that diffusion models, like Midjourney, use a "mathematical construct discovered by the model during training" to represent[] the 'information space' of the training data," permitting operations "such as measuring the proximity of data points" and "retrieval and interpolation" of data points about the training images).)  Under *Hanagami*, *Nash*, and *Author's Guild*, this mathematical and statistical information plaintiffs claim Midjourney extracted—even if they could show it trained on their registered images (which they cannot)—falls *outside* the scope of copyright protected expression and cannot support a claim for copyright infringement.

**Fourth**, apart from the lack of substantial similarity, *Authors Guild* provides another, independent basis for dismissing plaintiffs' theory that the model is an infringing derivative.  In

*Authors Guild*, it was undisputed that the Google search feature relied on digital scans of plaintiffs' entire books to generate snippets and data about the books as outputs. 804 F.3d at 225. Nevertheless, because those digital copies were hidden from public view and the tool did not allow access "in any substantial way to a book's expressive content" apart from the snippets, the tool was beyond the "statutory definition of a derivative work, or of the logic that underlies it." *Id.* at 226.

Here, plaintiffs allege that Midjourney "ingested" copies of their works during training. (¶ 2.)  However, they do not allege that any such copies are viewable or otherwise accessible to Midjourney users.  And they do not point to a single output that substantially reveals the "protected expression" from any plaintiff's registered artwork, apart from allegedly Exhibit I (which *plaintiffs* made by prompting the tool with their own images).  Accordingly, as in *Authors Guild*, plaintiff's theory that Midjourney model 5.2 is itself an infringing copy or derivative fails as a matter of law.

**B.      Plaintiffs Again Fail to Allege a Violation of the DMCA (Count 7)**

All plaintiffs reassert that Midjourney violated § 1202(b) of the DMCA by removing or altering CMI from their works. (¶¶ 300–01.)  The elements are: (1) existence of CMI on a copyrighted work; (2) removal or alteration of that CMI; and (3) the removal/alteration was done "intentionally" and (4) "knowing, or, … having reasonable grounds to know, that it will induce, enable, facilitate, or conceal" copyright infringement.  17 U.S.C. § 1202(b).  The FAC still does not satisfy any of these requirements, despite the Court's admonitions in granting leave to amend.  (Order at 18–19.)

**No CMI:**  Plaintiffs still fail to identify the CMI that was purportedly removed.  The FAC cites five "distinctive marks" appearing on a handful of images included in Exhibit A (¶¶ 52–53) as examples of plaintiffs' CMI, but many of the images in Exhibits A & B contain no discernible CMI at all.  (*See, e.g.*, Ex. A at 10, 12, 40, 41, 73; Ex. B at 2, 4, 7, 9.)  Further, plaintiffs cannot cure this defect by claiming the "captions" for these images in LAION as their CMI because those captions were created and assigned by LAION, not plaintiffs.  (¶¶ 72–78.)

**No removal:**  Plaintiffs also do not allege facts showing removal or alteration of CMI within the meaning of the DMCA.  Courts consistently interpret § 1202(b) to apply only to removal or alteration of CMI from original, otherwise identical, works.  *See Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd in part, rev'd in part*, 280 F.3d 934 (9th Cir. 2002);

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3–4 (C.D. Cal. Aug. 25, 2022).  For example, in *Falkner v. General Motors*, the court rejected a claim by a muralist that defendant removed CMI from his work by photographing it at an angle from which his signature was not visible.  393 F. Supp. 3d 927, 938 (C.D. Cal. 2018).  The court reasoned that defendant's "failure to include" CMI was not a "removal" under any ordinary definition of that term.  *Id.*; *see also Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *8–9 (N.D. Cal. Jan. 22, 2024) (dismissing 1202(b) claim premised on allegations that generative AI coding tool did not include plaintiffs' CMI on non-identical outputted code); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (dismissing DMCA claim because works were not identical); *Kirk Kara Corp. v. W Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (dismissing DMCA claim because "Defendant did not make *identical* copies of Plaintiff's works and then remove the [] CMI").

Here, plaintiffs do not allege, as required, that Midjourney has ever made an otherwise identical copy of any plaintiff's work from which his or her CMI was removed or altered.  The FAC vaguely alleges only that Midjourney's "training process is designed to remove or alter CMI from the training images." (¶ 300.) That ambiguous and conclusory allegation still falls well short.

Moreover, the facts plaintiffs do plead confirm that the DMCA claim is not really premised on removal or alteration of CMI, but failure to include.  More specifically, although the FAC cites purported examples of alleged CMI *removal* by Stability and Runway (not Midjourney), what they show is that plaintiffs' CMI does not appear on *outputs*.  (¶¶ 195–200; *see also* ¶ 194 (alleging that defendants' models create "visually similar" outputs based on plaintiffs' "original work with [CMI] removed or altered").)  Plaintiffs do not identify any Midjourney outputs from which their CMI has allegedly been removed (or not included), and the only outputs that are alleged (Exhibits F, I and K) are not *plaintiffs'* works or "identical" to them.  Failing to include plaintiffs' CMI on works that are *not plaintiffs'* cannot be a violation of § 1202(b); to the contrary, it would arguably have been a violation of § 1202(a)(1)'s prohibition against showing "false" CMI for Midjourney to attach it.

**No scienter:**  Dismissal is also required for failure to allege the requisite scienter, *i.e.*, that Midjourney "intentionally" removed CMI knowing or having reason to know that it "will induce, enable, facilitate, or conceal an infringement."  17 U.S.C. § 1202(b).  The Ninth Circuit demands

1    more than "the universal possibility of encouraging infringement." *Stevens v. CoreLogic, Inc.*, 899

2    F.3d 666, 674 (9th Cir. 2018) (affirming summary judgment to defendant on 1202(b) claim). The

3    double-scienter requirement is "intended to limit liability" to instances in which defendant intends

4    and has reason to know the removal "*will* aid infringement." *Id.* at 674–75 (emphasis in original).

5          Plaintiffs do not even attempt to make this showing in the FAC. They allege no instance in

6    which removal of CMI from their works has caused or concealed an infringement. The claim that

7    the Midjourney model is "capable" of producing outputs similar to plaintiffs' work falls far short

8    of showing that Midjourney *knew* users *would* infringe if plaintiffs' CMI were removed and

9    designed its platform for that purpose. To the contrary, the obvious (and only plausible)

10   explanation for why Midjourney's platform does not include plaintiffs' CMI on outputs is that those

11   outputs are *not* plaintiffs' works. Having failed (twice) to allege facts showing that Midjourney

12   has ever intentionally removed or altered CMI from otherwise identical works of plaintiffs with the

13   requisite scienter, the DMCA claim should be dismissed with prejudice.

14         **C.    Plaintiffs' False Endorsement Claim (Claim 8) Should Be Dismissed**

15         In place of a publicity claim, five plaintiffs (Andersen, Brom, Kaye, Ortiz, and Rutkowski)

16   now allege that Midjourney violated the federal Lanham Act by making "unauthorized commercial

17   use" of their names to "capitalize upon [their] popularity, recognition, and appeal among consumers

18   of art products." (FAC at 69.) More specifically, they allege that their names appeared (with 4,700

19   other artists) on one tab of a Google spreadsheet posted by Midjourney's founder on Discord,

20   describing numerous styles the platform can generate (the "Name List"). (¶¶ 261–62, 305.)

21   According to the FAC, the "express purpose" of this post was to inform users that the platform

22   "recognizes" these names "as terms in prompts" designed to elicit outputs "emulat[ing] … the styles

23   of certain artists." (¶¶ 260, 262.) Such allegations cannot support a claim under the Lanham Act.

24         Section 43(a) of the Lanham Act prohibits use of a symbol or device (including a public

25   figure's persona) or any other "false designation of origin" or false or misleading representation of

26   fact which "is likely to cause confusion," mistake, or deception "as to the origin, sponsorship, or

27   approval of [plaintiff's] goods, services, or commercial activities." 15 U.S.C. § 1125(a). As the

28   leading treatise explains, false endorsement claims require proof of *falsity*—the "key element

distinguishing false advertising from infringement of the right of publicity."  5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed. 2023) ("McCarthy") § 28:14. The Lanham Act "prohibits only *false endorsement* not mere use of an image or name."  *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000) (emphasis in original) (citing McCarthy).  Plaintiffs do not and cannot plead false endorsement.

**No Falsity:**  The FAC does not identify anything purportedly false or misleading about the Name List or the Discord post that included it.  It makes no claim, for instance, that the Midjourney platform does not recognize, or cannot actually generate, works in the styles of the artists listed there.  Nor does anything in the post remotely suggest that any plaintiff (much less all 4,700 other artists) was somehow endorsing Midjourney's platform.  To the contrary, in portions of the same Discord thread omitted in the FAC, Midjourney's founder responded to a question as to the Name List's origin by explaining that "the artist names came from wikipedia and magic the gathering," but "if anyone wants to add things feel free" (Dunning Ex. 1), affirmatively dispelling any suggestion that the artists, themselves, had anything to do with Midjourney's service or Name List. And although plaintiffs allege that the Name List has "deceived consumers" (¶ 308), they do not identify anyone who has been deceived or confused, or explain the basis for their supposition that confusion is likely (or even possible).  This is not surprising:  a spreadsheet tab accurately identifying thousands of names that can be used in prompts does not convey any endorsement and, thus, is "vastly different" from, *e.g.*, a radio or TV commercial that uses a celebrity's likeness to sell "restaurant chains, cars, Doritos and VCRs."  *Cairns*, 107 F. Supp. 2d at 1215 (rejecting a false endorsement claim based on the use of Princess Diana's name and likeness on commemorative plates and distinguishing cases in which celebrity names and likenesses "were used in commercial advertising to promote a product and clearly communicated an endorsement").

**Nominative Fair Use:**  The claim also fails because inclusion of plaintiffs' names in the Name List was a nominative fair use.  As the Ninth Circuit held in *New Kids on the Block v. News American Publishing, Inc.*, use of plaintiff's mark to accurately describe "an attribute of a product" offered by defendant is permissible where "the mark is used only to describe the thing, rather than to identify its source."  971 F.2d 302, 306 (9th Cir. 1992).  Indeed, "[m]uch useful social and

commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark." *Id.* at 306–07. Thus, in *New Kids*, unauthorized use of a pop group's name to run a newspaper poll on readers' favorite member was fair use and outside the protection of trademark law, and the fact that the polls were conducted "for profit and in competition with the trademark holder's business [wa]s beside the point." *Id.* at 308–09; *see Smith v. Chanel, Inc.*, 402 F.2d 562 (9th Cir. 1968) (imitation perfume maker entitled to use original's trademark in promoting competing product).

Here, there was no way to convey to users that they can use Midjourney's platform to create an image in the styles of particular artists without referencing those artists by name.[13] Further, the Name List merely listed names of artists who could be recognized in prompts and did not suggest endorsement. Midjourney's inclusion of plaintiffs' names among many others on the Names List was, thus, a nominative fair use and cannot provide the factual predicate for a Lanham Act claim.

**First Amendment:** There is another reason the false endorsement claim must be dismissed. "Section 43(a) protects the public's interest in being free from consumer confusion about … endorsements, but this protection is limited by the First Amendment, particularly if the product involved is an expressive work." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1239 (9th Cir. 2013).

Under the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989), and adopted by the Ninth Circuit in *Mattel v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), a plaintiff challenging use of a mark in an expressive work must show that defendant's use: (1) "has no artistic relevance to the underlying work whatsoever," or (2) "explicitly misleads as to the source or the content of the work." *Brown*, 724 F.3d at 1242. This test applies to a false endorsement claim, like that here, "in which a trademark is used not to designate a work's source, but solely to perform some other expressive function." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 154 (2023); *see also Mattel*, 296 F.3d at 900 ("[W]hen unauthorized use of another's mark is part of a communicative message and not a source identifier, the First Amendment is implicated.");

---

[13] Artistic "styles" are excluded from copyright protection and free for all to reference and use. *See* 17 U.S.C. § 102(b); 2 Patry on Copyright (2023) § 4:14 ("Style is not protected.") (citing cases); *Tangle Inc. v. Aritzia, Inc.*, 2023 WL 6883369, at *3 (N.D. Cal. Oct. 18, 2023) ("Style, no matter how creative, is an idea, and is not protectable by copyright.").

*Punchbowl, Inc. v. AJ Press*, 2024 WL 134696 (9th Cir. Jan. 12, 2024) (after *Jack Daniel's*, narrowing application of *Rogers* to expressive works that use a name or mark other than to designate the source of defendants' goods or services). *Rogers* bars plaintiffs' claim here.

The Name List was not used to identify the source of Midjourney's services. Rather, it was a communicative message to users about the kinds of artwork they can make on Midjourney's platform—a protected expression. Further, as already noted, there was nothing "explicitly misleading" about the accurate post and Name List. They contain no "overt claim" or "explicit misstatement" that plaintiffs endorse or sponsor Midjourney's platform and services, and plaintiffs do not (and cannot) allege otherwise. The false endorsement claim should be dismissed. *See, e.g.*, *Brown*, 724 F.3d at 1246 (affirming dismissal of false endorsement claim by football legend Jim Brown and reasoning: "Brown needs to prove that EA explicitly misled consumers about Brown's endorsement of the game, not that EA used Brown's likeness in the game; nothing in EA's promotion suggests that the fifty NFL players who … [appear in the game] endorse EA's game"); *Chaquico v. Freiberg*, 274 F. Supp. 3d 942, 952 (N.D. Cal. 2017) (dismissing false endorsement claim under *Rogers* for failure "to set forth facts that Defendants' advertisements create an explicitly misleading description of the current Jefferson Starship" band line-up); *Miller v. Easy Day Studios Pty. Ltd.*, 2022 WL 20289094, at *6 (S.D. Cal. Sept. 16, 2022) (dismissing false endorsement claim with prejudice under *Rogers* for failure to plead facts showing that "Defendants explicitly misrepresented that Miller endorses or sponsors [defendant's video game] *Skater XL*").

### D.    Plaintiffs Fail to Plead Vicarious Trade Dress Infringement (Claim 9)

Five plaintiffs (Andersen, Brom, Kaye, Ortiz, and Rutkowski) assert a trade dress claim based on allegations that Midjourney users can "generate images in the style of particular artists simply by typing in their name." (¶ 324.) Rather than asserting that Midjourney, itself, is infringing their unregistered trade dress, the FAC alleges that Midjourney should be held vicariously liable because it is "profiting from [unidentified] imitations of protectable trade dress" made by unidentified users of its platform. (FAC at 71.) This claim fails as well for numerous reasons.

"Trade dress is the non-functional physical detail and design of a product or its packaging, which … identifies the product's source and distinguishes it from the products of others." 9th Cir.

Model Jury Instruction 15.3 Definition—Trade Dress (15 U.S.C. § 1125(a)).  To state a trade dress claim based on product design, a plaintiff bears the burden to identify her alleged trade dress and plead facts establishing that: (1) it is "nonfunctional"; (2) the trade dress "has acquired secondary meaning"; and (3) "there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (citing *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 214 (2000)); *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 926 (9th Cir. 2005) ("the burden of proof as to validity and protectability of an unregistered mark lies with the party claiming trademark protection"); 15 U.S.C. § 1125(a)(3) (in action for infringement of unregistered trade dress, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional").  Plaintiffs come nowhere close to satisfying their pleading burden.

**Plaintiffs Fail To Adequately Identify Their Trade Dress:**  Plaintiffs allege in conclusory terms that their trade dress consists of "a set of recurring visual elements and artistic techniques, the particular combination of which are distinctive" to them.  (¶ 319.)  For example, Andersen's alleged trade dress consists of drawings that are "simple, cartoony, and often strictly in black and white" (¶ 319), even though countless other cartoonists' work can be described that way, and even though many of her alleged works are in color and do not meet even this vague description.  (*See* Ex. A, B.)  Likewise, Brom's "trade dress" allegedly consists of "gritty, dark, fantasy images, painted in traditional media, combining classical realism, gothic and countercultural aesthetics"—*i.e.*, he admittedly uses the same painting methods and styles as many others.  (¶ 319.)  Any claim that Andersen, alone, could own simple black-and-white cartoons, or that Brom can monopolize the market for gritty fantasy paintings, is absurd on its face.  Indeed, such "empty generalities in the face of more precise alternatives" will not suffice.  *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007) (dismissing impermissibly broad trade dress claims for "rustic look," "weathered look," "architectural character" and "Old World handiwork" tiles because they fail to "provide adequate notice to competitors … regarding the breadth of plaintiff's exclusivity rights"); *see also Stouffer v. Nat'l Geographic Partners, LLC*, 400 F. Supp. 3d 1161,

1185 (D. Colo. 2019) (no protection where trade dress consists of "a set of aesthetic choices with no obvious source-identifying role, and the trade dress, which was unregistered, was functional").

**Art Styles Are Not Trade Dress:**  Plaintiffs do not claim that their "styles" are unique to them, much less serve to designate the source of any good or service—the sine qua non of trademark law.  Instead, they improperly seek to use the Lanham Act to protect subject matter protected, if at all, under copyright.  *See Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 34 (2003) (warning "against misuse or over-extension" of Lanham Act "into areas traditionally occupied by … copyright"); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) ("[I]n *Wal-Mart*, [] we were careful to caution against misuse or over extension of trade dress.  We noted that product design almost invariably serves purposes other than source identification.").

Numerous courts have rejected attempts like those here to protect artistic styles under the guise of trademark or trade dress.  In *Leigh v. Warner Bros.*, for instance, the court rejected a trademark claim premised on use of plaintiff's copyrighted photograph.  10 F. Supp. 2d 1371, 1380–81 (S.D. Ga. 1998), *aff'd in part, rev'd in part on other grounds*, 212 F.3d 1210 (11th Cir. 2000) (affirming dismissal of Lanham Act claim).  Because the work "merely identifie[d] the artist rather than any products or services" he sold, it could not "be protected as a trademark," even if it was an example of his "unique artistic style." *Id.* at 1380; *see also Galerie Furstenberg v. Coffaro*, 697 F. Supp. 1282, 1290 (S.D.N.Y. 1988) (protection for Salvador Dali's artwork was "properly brought under the federal copyright, not trademark, statute"); *Hughes v. Design Look, Inc.*, 693 F. Supp. 1500, 1505 (S.D.N.Y.1988) (Andy Warhol estate had no trademark rights in Warhol paintings that were copied and included in defendant's calendar); 2 McCarthy (5th ed. 2024) § 10:40.50 (there is no "trademark protection for the 'style' of an artist").

**Plaintiffs' Works Are Functional:**  Plaintiffs also cannot meet their burden to establish that their alleged "trade dress" is nonfunctional.  A feature is functional if it is "essential to the use or purpose of the article." *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 850, n.10 (1982).  There are two types of functionality: utilitarian, "which is based on how well the product works," and aesthetic, which is based on how good the product looks." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020).  "A claimed trade dress has aesthetic functionality

1    if it serves an aesthetic purpose wholly independent of any source identifying function." *Id.*

2    (quoting *Au-Tomotive Gold, Inc. v. Volkswagen of Am.*, 457 F.3d 1062, 1073 (9th Cir. 2006). "If

3    the claimed trade dress has either type of functionality, it is unprotectible." *Id.*  In *Pagliero v.*

4    *Wallace China Co.*, for example, the Ninth Circuit found china patterns functional and non-

5    protectable because "one of the essential selling features of hotel china, if, indeed, not the primary,

6    is the design." 198 F.2d 339, 343 (9th Cir. 1952); *see also International Order of Job's Daughters*

7    *v. Lindeburg, Co.*, 633 F.2d 912, 917 (9th Cir. 1980) (jewelry design was aesthetically functional

8    because it "constitute[d] the actual benefit that the consumer wishes to purchase, as distinguished

9    from an assurance that a particular entity made, sponsored, or endorsed a product").

10   Here, plaintiffs concede that the "particular artistic elements" allegedly comprising their

11   trade dress "are purely ornamental and aesthetic" (¶ 327) and are what make their works "desirable

12   to customers" (¶ 319).  Obviously, how an artwork looks is essential to its use or purpose, and those

13   aesthetics serve a purpose wholly independent of source identification.  Any claim for trade dress

14   infringement based on the styles or design of their art must fail as a matter of law.

15   **Plaintiffs Fail to Plead Secondary Meaning**:  Where, as here, the asserted trade dress is

16   product design, rather than packaging, plaintiffs must also establish that their trade dress has

17   acquired "secondary meaning." *Art Attacks*, 581 F.3d at 1145.  Trade dress has secondary meaning

18   when "[its] *primary* significance … is to identify the source of the product." *Wal-Mart*, 529 U.S.

19   at 211; *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) (trade dress

20   acquires secondary meaning "when the purchasing public associates [it] with a *single producer or*

21   *source* rather than with the product itself").   Relevant factors include:  "(1) direct consumer

22   testimony; (2) survey evidence; (3) exclusivity, manner, and length of use of a mark; (4) amount and

23   manner of advertising; (5) amount of sales and number of customers; (6) established place in the

24   market; and (7) proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian*

25   *Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

26   Plaintiffs do not even attempt to plead secondary meaning.  They make no allegations as to

27   advertising, sales, or customers.  They cite no survey evidence or customer testimonials.  They do

28   not even allege that they originated the style elements, or combination thereof, that they are now

trying to monopolize, much less facts to show the lengthy, exclusive use required to imbue those styles with the ability to designate each plaintiff as the "single producer or source" of artwork in that style. *Metrosound*, 4 F.3d at 824. All plaintiffs offer is the bald, conclusory allegation that their visual styles "invoke a mental association by a substantial segment of potential consumers between the trade dress and the creator." (¶ 328.) This does not suffice. *See, e.g., Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, 2015 WL 12731929, at *5 (C.D. Cal. May 8, 2015) (rejecting conclusory allegations concerning "public exposure, sales and establishment in the market"); *S&B Filters, Inc v. ETN Cap., LLC*, 2022 WL 2204144, at *1 (C.D. Cal. Mar. 9, 2022) (granting judgment on the pleadings for failure to sufficiently plead secondary meaning in product design notwithstanding allegations that plaintiff had "invested much time, money, and resources" to create products with a "distinctive look" that has become associated in the market with plaintiff).[14]

**No Direct or Vicarious Liability**: Finally, even if plaintiffs could plead protectible trade dress (they cannot), they fail to allege any direct infringement of that trade dress by any Midjourney user or any basis to hold Midjourney vicariously liable. There can be no secondary liability without "direct infringement by a third party." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008) (citing *Perfect 10 v. Visa Int'l. Svc. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007)). But Plaintiffs do not plead any instance of direct infringement. *Plaintiffs* or their counsel made the images in Exhibits F and I, which they were presumably authorized to do. Further, plaintiffs do not allege that any of the outputs reflected in Exhibit K or the FAC feature the "particular combination" of "visual elements and artistic techniques" that are supposed to comprise their trade dress. (¶¶ 319, 325(b).) Plaintiffs cannot hold Midjourney vicariously liable for purported wrongdoing by others that they have utterly failed to plead.

Further, to establish vicarious liability under the Lanham Act, plaintiffs were required to plead that Midjourney and its infringing users "have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control

---

[14] Absent facts to show protectible trade dress, no analysis of likelihood of confusion is necessary or possible. *Art Attacks*, 581 F.3d at 1147; *Yellow Cab*, 419 F.3d at 928 ("A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark."). In any event, conclusory allegations that Midjourney's model "can and frequently does" generate unidentified images "likely to cause confusion in consumers" (¶ 323) fall short.

1    over the infringing product." *Louis Vuitton Malletier*, 591 F. Supp. 2d at 1113.  Absent allegations

2    that Midjourney has "a relationship with a direct infringer that is so close as to be an actual or

3    apparent partnership," dismissal is appropriate for this additional reason.  *Id.*

4          **E.     Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 10)**

5          As a catchall, all plaintiffs bring a claim for "unjust enrichment" under California common

6    law, alleging that it was unjust for Midjourney to copy and use their works to "train, develop and

7    promote" the Midjourney platform without their consent.[15]  (¶¶ 337–40.)  This is just a repackaged

8    copyright claim preempted under 17 U.S.C. § 301.  *See Kadrey*, 2023 WL 8039640, at *2 (dismissing

9    unjust enrichment claim as preempted); *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) (claim

10   of "wrongful[] use[]" of work was "clearly preempted"); *GitHub*, 2024 WL 235217, at *7 (unjust

11   enrichment claim alleging "use[]" by AI system of copyrighted material preempted).

12         Finally, courts in this Circuit interpret a standalone claim for "unjust enrichment" as a

13   "quasi-contract claim seeking restitution."  *Rabin v. Google LLC*, 2023 WL 4053804, at *12 (N.D.

14   Cal. June 15, 2023) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.

15   2015)).  Because plaintiffs do not and cannot allege the required "affiliation or connection [with

16   Midjourney] to invoke a quasi-contract theory of liability," this claim should be dismissed with

17   prejudice even if not preempted.  *Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *8

18   (C.D. Cal. Sept. 25, 2017) (dismissing unjust enrichment claim in trademark case with prejudice).

19   **V.     CONCLUSION**

20         For the foregoing reasons, the FAC fails again to state a viable claim against Midjourney.

21   The Court should dismiss all claims against Midjourney in the FAC (Claims 5–10), with prejudice.

22

23   Dated: February 8, 2024                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

24                                              */s/ Angela L. Dunning*
                                                Angela L. Dunning (212047)
25
                                                *Attorneys for Defendant Midjourney, Inc.*
26

---

27   [15] Claim 10 also refers to the UCL, but this appears inadvertent, as the claim only alleges unjust
     enrichment, not a violation of the unlawful, unfair, or fraudulent prong of the UCL.  Further, the
28   defects requiring dismissal of the prior UCL claim (Order at 20–21) remain.