Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
David W. Lerch (State Bar No. 229411)
Elissa A. Buchanan (State Bar No. 249996)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:         jsaveri@saverilawfirm.com
               czirpoli@saverilawfirm.com
               cyoung@saverilawfirm.com
               dlerch@saverilawfirm.com
               eabuchanan@saverilawfirm.com
               kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:         mb@butericklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br><br>        Individual and Representative Plaintiffs,<br><br>    v.<br><br>STABILITY AI LTD., et al.,<br><br>                        Defendants. | Case No. 3:23-cv-00201-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS STABILITY AI LTD. AND STABILITY AI, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      May 8, 2024<br>Time:      2:00 pm<br>Location:  Videoconference<br>Before:    Hon. William H. Orrick |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................1

III.    ARGUMENT .......................................................................................................2

        A.      Plaintiffs Have Sufficiently Alleged that Stability Induced Copyright
                Infringement. (Count 2) ...........................................................................3

                1.      Plaintiffs' inducement claim is factually distinct from their direct-
                        infringement claim. .......................................................................5

                2.      Whether Stability's models are "capable of noninfringing uses" is an
                        affirmative defense that must be reserved for discovery and trial. ............6

        B.      Plaintiffs Adequately Pled that Stability Violated the DMCA. (Count 3) .............7

                1.      Plaintiffs alleged all elements of a § 1202(b) violation. ...........................8

                2.      Section 1202 does not require the copy be "identical." .........................11

                3.      Plaintiffs satisfy § 1202's double-scienter pleading requirement. ...........14

                4.      Plaintiffs have sufficiently alleged violation of § 1202(a). ......................16

        C.      Plaintiffs Have Sufficiently Alleged a Claim for Unjust Enrichment (Count 4).  17

        D.      The FAC's Addition of Claims and Named Plaintiffs Is Proper and Does Not
                Exceed the Scope of the MTD Order. ..................................................21

IV.     CONCLUSION .................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*ADR Int'l Ltd. v. Inst. For Supply Mgmt., Inc.*, 667 F.Supp.3d 411 (S.D. Tex. 2023) .......... 12, 13, 14

*Aikins v. St. Helena Hosp.*, No. C 93-3933 FMS, 1994 WL 794759 (N.D. Cal. Apr. 4, 1994) ...................................................................................................................... 22

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ............................... 20

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) ........................... 7

*Anderson v. Apple*, 500 F. Supp. 3d 993 (N.D. Cal. 2020) ................................... 19

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2016) ........................... 18, 19

*Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492 (N.D. Cal. Feb. 7, 2019) ...................................................................................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 2

*Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-CV-06361-RS, 2021 WL 4503137 (N.D. Cal. Oct. 1, 2021) .............................................................................................. 22

*Brown v. Stroud*, No. C 08-2348 JSW, 2011 WL 2600661 (N.D. Cal. June 30, 2011) ...................... 7

*Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178 (N.D. Cal. 2018) ...............................14

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ........................... 3, 5

*Columbia Pictures Indus., Inc. v. Galindo*, No. 20-cv-3129, 2022 WL 17094713, (C.D. Cal. Nov. 18, 2022) .............................................................................. 11

*Design Basics, LLC v. Signature Constr., Inc.*, No. 1:16-CV-1275, 2019 WL 4805888 (C.D. Ill. Aug. 19, 2019) .............................................................................. 13

*Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756 (N.D. Tex. Nov. 7, 2019) ........................................................................ 15

*Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023) ........................... 10, 14, 16, 19

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ................................................. 21

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 222CV01463RGKMAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) .............................................................................. 12, 13

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001).................................... 20

*Elec. Constr. Main. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) ........................ 3

*Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018) ............................................ 12, 14

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............................................2

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ............................... 8, 10, 13, 14

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL
    263556 (D. Haw. Jan. 21, 2015) ....................................................................... 12, 13

*GC2, Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d
    828 (N.D. Ill. 2019) ............................................................................................ 11, 14

*Huffman v. Activision Publ'g, Inc.*, No. 2:19-CV-00050-RWS-RSP, 2020 WL
    8678493 (E.D. Tex. Dec. 14, 2020) ......................................................................... 17

*Izmo, Inc. v. Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 13210561 (N.D. Cal.
    Mar. 26, 2019) ...............................................................................................................8

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prods. Liability Litig.*, 497 F. Supp.
    3d 552 (N.D. Cal. 2020) ............................................................................................ 18

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999) ...................................... 12

*Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG (EX), 2020 WL
    5991503 (C.D. Cal. Aug. 14, 2020) .......................................................................... 12

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D.
    Ill. 2014) ...........................................................................................................................7

*Logan v. Meta Platforms, Inc.*, 636 F.Supp.3d 1052 (N.D. Cal. 2022) .................................. 8, 11, 17

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ....................................................................3

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) .......................................... 19, 21

*Mango v. Buzzfeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ............................................................ 11, 16

*McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020) .................................2, 6

*MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928 (9th Cir. 2010) ........................................ 15

*Med. Broad. Co. v. Flaiz*, No. Civ.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov.
    25, 2003) ................................................................................................................... 15

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016) .................... 20

*Merideth v. Chi. Trib. Co.*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) .......................7

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ........................... 3, 4, 6, 7

PLAINTIFFS' OPPOSITION TO STABILITY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077 (N.D. Cal. 2017) ................................18

*Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011) ........................ 20

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .............................................................3

*Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021) ....................................6

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ...................................8

*Peguero v. Toyota Motor Sales, USA, Inc.*, No. 2:20-cv-05889-VAP, 2021 WL
    2910562 (C.D. Cal. Apr. 26, 2021) .................................................................... 22

*Perez v. Bath & Body Works, LLC*, No. 21-cv-05606-BLF, 2022 WL 2756670 (N.D.
    Cal. July 14, 2022) ............................................................................................ 19

*Post Univ. v. Course Hero, Inc.*, No. 3:21-cv-1242 (JBA), 2023 WL 5507845 (D.
    Conn. Aug. 25, 2023) ......................................................................................... 16

*Schneider v. Youtube, LLC*, Case No. 20-cv-04423-JD, 2022 WL 3031212 (N.D.
    Cal. Aug. 1, 2022) .............................................................................................. 15

*Schroeder v. Envoy Air, Inc.*, No. CV 16-04911-MWF-KS, 2017 WL 10525816
    (C.D. Cal. Feb. 6, 2017) .................................................................................... 22

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668 (9th
    Cir. 2020) ........................................................................................................... 17

*Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2022 WL
    3971292 (W.D.N.C. Aug. 31, 2022) ................................................................... 13

*Sonner v. Premium Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ..................................18

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ...........................6

*Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029 (N.D. Cal. 2023) ..................................17

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ..............................................7, 9

*Strifling v. Twitter Inc.*, No. 22-CV-07739- JST, 2024 WL 54976 (N.D. Cal. Jan. 4,
    2024) ................................................................................................................... 21

*Swafford v. Int'l Bus. Machs. Corp.*, 383 F. Supp. 3d 916 (N.D. Cal. 2019) ...................17

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-
    CV-2541-K, 2023 WL 8721435 (N.D. Tex. Dec. 17, 2023) ................................ 13

*Williams v. Cavalli*, No. No. CV 14-06659-AB-JEMX, 2015 WL 1247065 (C.D.
    Cal. Feb. 12, 2015).................................................................................................7

1

**Statutes**

2

17 U.S.C. § 101 ................................................................................................ *passim*

3

17 U.S.C. § 102 ...................................................................................................... 19

4

17 U.S.C. § 103 ...................................................................................................... 19

5

17 U.S.C. § 1202 .......................................................................................... *passim*

6

**Other Authorities**

7

Fed. R. Civ. P. 8 ...................................................................................... 2, 5, 6, 16

8

Fed. R. Civ. P. 9(b) ................................................................................................. 8

9

Fed. R. Civ. P. 12 .................................................................................................... 2

10

Fed. R. Civ. P. 15 .................................................................................................. 22

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Plaintiffs' First Amended Complaint (ECF No. 129, "FAC") sufficiently alleges four claims against defendants Stability AI Ltd. and Stability AI, Inc. (collectively "Stability"): direct copyright infringement (Count 1), inducement of copyright infringement (Count 2), Digital Millennium Copyright Act ("DMCA") violations (Count 3), and unjust enrichment (Count 4). In its order following Stability's earlier motion to dismiss (ECF No. 117, "MTD Order"), the Court found that Plaintiffs had plausibly alleged their direct-infringement claim. MTD Order at 7. In its current motion to dismiss (ECF No. 162, "Stability Br."), Stability only challenges the sufficiency of Plaintiffs' allegations as to the other three claims (Counts 2–4). For the reasons below, Stability's motion should be denied, including its argument that Plaintiffs exceeded the scope of the Court's leave to amend.

## II.     FACTUAL BACKGROUND

Stability has trained and released multiple versions of an artificial-intelligence model called Stable Diffusion. ¶¶ 4, 214–15.[1] In the FAC, an image paired with a descriptive text caption is called a "training image." ¶ 2. To train Stable Diffusion, Stability used a dataset of 5.85 billion training images called LAION-5B. ¶¶ 65, 214–15. Stability funded the creation of LAION-5B. ¶ 64.

Stable Diffusion generates images in response to user prompts. ¶ 3. User prompts are often text, but can also be images. ¶ 160 & Ex. D (Stability text prompts); ¶ 183 & Ex. G (Stability image prompts). Stability CEO Emad Mostaque described Stable Diffusion as "the model itself. It's a collaboration that we did with a whole bunch of people . . . We took 100,000 gigabytes of images and compressed it to a two-gigabyte file that can recreate any of those [images] and iterations of those." ¶ 4. In the FAC, the versions of Stable Diffusion trained by Stability are called the "Stability Models." ¶ 217.

Training a model with the LAION-5B dataset requires downloading from the internet each of the images referenced in the dataset. ¶¶ 67–68, 72. The LAION-5B dataset only contains

---

[1] "¶__" and "Ex. __" citations are to the First Amended Complaint, Case No. 23-cv-00201 (N.D. Cal. Jan. 13, 2023), ECF No. 129, unless otherwise indicated.

URLs and metadata for training images, but not the images themselves. ¶¶ 67, 221. Therefore, when it trained the Stability Models, Stability necessarily downloaded copies of billions of copyrighted images without permission—including registered works belonging to Plaintiffs. ¶¶ 4, 72. LAION-400M, which is a separate dataset of 400 million training images (including Plaintiffs' copyrighted images) is a subset of LAION-5B, meaning every image in LAION-400M is included in LAION-5B. ¶¶ 59, 65.

Stability and Mostaque have repeatedly and consistently characterized the Stability Models as a compressed copy of its training images. ¶¶ 120–26 (examples). All Plaintiffs had copyrighted works in LAION-5B. ¶ 24 & Ex. A. Stability knew that the LAION-5B dataset contained copyrighted works, including those of Plaintiffs. *See, e.g.*, ¶ 220. Plaintiffs who own these works never authorized Stability to use them in any way. ¶¶ 72, 80, 347.

Stability profits from the Stability Models in two primary ways. First, it operates paid apps that incorporate one of the Stability Models as an image-generating engine—for instance, DreamStudio and Reimagine XL. ¶¶ 4, 154, 180. In the FAC, these apps are called "AI image products." ¶ 1. Second, Stability distributes the Stability Models to the public for free under a so-called open-source license. ¶ 233. "So-called" because Stability has no right to distribute the Stability Models under such a license, due to their infringement of Plaintiffs' works. *See, e.g.*, ¶¶ 230, 248. The open-source license is merely a marketing gimmick that encourages adoption of the Stability Models and generates profit opportunities for Stability. ¶ 147.

## III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The statements alleged in the complaint must provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted).

In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. J.P.*

*Morgan Chase Bank NA*, 976 F.3d 881, 886–87 (9th Cir. 2020). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Still, if a court grants a motion to dismiss, it should also grant leave to amend the complaint, unless it "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Furthermore, "court[s] should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel . . . since it is important that new legal theories be explored and assayed in the light of actual facts." *Elec. Constr. Main. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) (citations omitted).

### A.    Plaintiffs Have Sufficiently Alleged that Stability Induced Copyright Infringement. (Count 2)

A person or entity "who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005). To state a claim for inducement of copyright infringement, Plaintiffs must allege four elements: "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). Below, each element is taken in turn.

*Distribution of a device or product*. Stability distributes certain Stability Models— including Stable Diffusion 2.0 and Stable Diffusion XL 1.0—under an open-source license called the MIT License that encourages users to freely download, modify, and redistribute the Stability Models. ¶ 233. Stability uses public websites like GitHub and Hugging Face to distribute the Stability Models. ¶ 230. Stability also makes available an app called Reimagine XL that allows users to elicit substantially similar copies of training images. ¶¶ 180, 183, Ex. G.

*Acts of third-party infringement*. Because Stable Diffusion 2.0 and Stable Diffusion XL 1.0 violate the LAION-5B Registered Plaintiffs' exclusive copyrights, "anyone who

1   . . . downloads, uses, or deploys" them "is engaged in infringing activity." ¶ 234. As for

2   Reimagine XL, Plaintiffs provide examples and allege that its output is "not merely similar to the

3   training image[s], but substantially similar," making it an act of infringement. ¶ 184, Ex. G.

4   **_Object of promoting its use to infringe copyright_**. Conduct that meets this element can

5   include "advertisement or solicitation" and other communications. _Grokster,_ 545 U.S. at 937–40.

6   Here, Stability CEO Emad Mostaque publicly stated that the Stability Models "took 100,000

7   gigabytes of images"—including the registered copyrighted works of the LAION-5B Registered

8   Plaintiffs—and as a result, those models allow a user to "recreate any of those [images] and

9   iterations of those." ¶ 4. This is not mere puffery. According to researcher Nicholas Carlini,

10  "diffusion models are explicitly trained to reconstruct the training set." ¶ 90. Stable Diffusion

11  "can be induced to generate essentially identical copies of certain training images when prompted

12  with appropriate instructions." ¶ 136. Plaintiffs provide examples, using the Stability app called

13  Reimagine XL. ¶¶ 180, 183, Ex. G.

14  Stability, confronted with these damaging allegations, vigorously attempts to move the

15  goalposts. Stability argues that these allegations are insufficient, because they rely on the

16  "isolated use of a single word—'recreate'" by Emad Mostaque. Stability Br. at 5–6. Stability's

17  selective reading of the FAC, however, does not obviate Plaintiffs' allegations of five other

18  instances where Emad Mostaque promoted Stable Diffusion in some manner as "compressing"

19  its dataset. ¶¶ 121, 122, 125–27.

20  Stability also argues that Plaintiffs' claim fails because they "do not point to any Stability

21  AI website content." Stability Br. at 5. First, that is not the pleading standard, and requires the

22  Court disregard party admissions. Second, Stability's reading of the FAC is highly selective, as

23  Plaintiffs have indeed cited to "Stability AI website content," and noted that the online "launch

24  announcement for Stable Diffusion" includes a prominent statement that Stable Diffusion

25  "compresses the visual information of humanity into a few gigabytes." ¶ 123 (emphasis omitted);

26  _see also_ ¶ 123, n.24 (providing URL of website). As to the Reimagine XL app, Plaintiffs note that

27  its documentation specifically encourages its use to "produce[] similar-looking images with

28  different details and compositions"—in other words, substantially similar copies. ¶ 180. Again,

Plaintiffs even provide the URL. ¶ 180, n. 36. Plaintiffs also provide visual examples showing the capabilities of Reimagine XL to fulfill Mostaque's promise to "recreate" training images. ¶¶ 180, 183, Ex. G.

*Causation*. This element merely requires a showing that the acts of infringement "were caused by the product distributed or services provided." *Fung*, 710 F.3d at 1037. As discussed above, Stability uses public websites like GitHub and Hugging Face to distribute Stable Diffusion 2.0 and Stable Diffusion XL 1.0. ¶ 230. This raises the reasonable inference that these models have in fact been "download[ed], use[d], or deploy[ed]." ¶ 234. Stability also makes available an app called Reimagine XL that allows users to elicit substantially similar copies of training images. ¶ 184. Plaintiffs include voluminous examples demonstrating this capability. ¶ 183, Ex. G. These facts are sufficient to allege causation. *See Fung*, 710 F.3d at 1037 ("[I]f one provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner, that person is liable for the infringement that occurs through the use of the service.").

### 1.   Plaintiffs' inducement claim is factually distinct from their direct-infringement claim.

Stability argues that Plaintiffs' inducement claim is merely an impermissible rehash of their direct-infringement claim, in the sense that injuries arising from Stability's public distribution of certain versions of the Stable Diffusion model are already reached by the direct-infringement claim. Stability Br. at 4–5. This is wrong for two reasons.

First—Plaintiffs' inducement claim is not limited to the distribution of certain versions of the Stable Diffusion model. As mentioned above, Stability also makes available an app called Reimagine XL that allows users to elicit substantially similar copies of training images, which qualifies as a form of inducement. ¶¶ 180, 183, Ex. G. Indeed, Stability's CEO Emad Mostaque has claimed that Stable Diffusion can "recreate" any of the 100,000 gigabytes of images that comprise it. ¶ 4.

Second—at this stage, Plaintiffs are allowed to plead theories in the alternative. *See* Fed. R. Civ. P. 8(d)(2)(3). Stability's argument necessarily assumes that Plaintiffs will succeed on their

direct-infringement claim, which is currently unknown. Moreover, the fulcrum of an inducement claim is Stability's liability for infringement *by others*. Thus, it is necessarily factually and legally distinct from the direct-infringement claim against Stability.

> **2.        Whether the Stability Models are "capable of noninfringing uses" is an affirmative defense that must be reserved for discovery and trial.**

Stability asserts that the Stable Diffusion models it distributes to the public are "capable of substantial noninfringing uses" and that this is a complete defense to Plaintiffs' inducement claim. Stability Br. at 6. Stability's argument is wrong for at least three reasons:

First—this is an affirmative defense, and therefore not subject to *Plaintiffs*' pleading requirements under Rule 8(a) but *Stability's* under Rule 8(c). *See Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) ("An affirmative defense may not ordinarily be raised on a motion to dismiss.") (quoting *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019)). Stability's assertion is thus premature.

Second—Plaintiffs have adequately alleged that the Stable Diffusion models are fundamentally built on infringement because the copying of copyrighted work is integral to the models' training. ¶¶ 348–349. Stability's assertion that its models are capable of substantial noninfringing uses is conclusory, unsupported, and requires the Court to draw an impermissible inference in Stability's favor. *McShannock,* 976 F.3d at 887 (9th Cir. 2020). Thus, Plaintiffs contend that Stability's models are "good for nothing else but infringement" and "there is no injustice in presuming or imputing an intent to infringe." *Grokster*, 545 U.S. at 932.

Even if Stability's models were theoretically capable of noninfringing uses, "nothing in *Sony* requires courts to ignore evidence of intent . . . and the case was never meant to foreclose rules of *fault-based* liability derived from the common law." *Grokster*, 545 U.S. at 934–35 (distinguishing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)). On the contrary, "[r]egardless of the number of [defendant's] infringing versus noninfringing uses," a defendant is liable for inducing infringement if it "knew or had reason to know of its users' infringement of plaintiffs' copyrights."*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001). Liability attaches where, as here, "evidence goes beyond a product's characteristics or

the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement." *Grokster*, 545 U.S. at 935; *see also, e.g.*, ¶¶ 224–30 (describing allegations including from Stability executives encouraging users to mimic specific artist works).

Third—Stability depicts Plaintiffs' only theory of inducement as being related to the distribution of Stable Diffusion. But this is incorrect: Plaintiffs also make inducement-related allegations concerning Reimagine XL. ¶ 183 & Ex. G.

### B.      Plaintiffs Have Sufficiently Alleged Violation of the DMCA. (Count 3)

The DMCA provides that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement, (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). It further prohibits the intentional removal or alteration of copyright management information ("CMI"), and the distribution of CMI or Works with CMI removed or altered, without the authority of the copyright owner. *Id.* § 1202(b).

CMI includes: "[t]he title and other information identifying the work, including the information set forth on a notice of copyright;" "[the] name of, and other identifying information about, the author of a work;" and "[the] name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671 (9th Cir. 2018) (CMI includes "information such as the title, the author, the copyright owner, the terms and conditions for use of the work, and other identifying information set forth in a copyright notice or conveyed in connection with the work"). Section 1202(c) has been interpreted broadly. *See Brown v. Stroud*, No. C 08-2348 JSW, 2011 WL 2600661, at *5 (N.D. Cal. June 30, 2011) (listing cases); *Williams v. Cavalli,* No. No. CV 14-06659-AB-JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015*)* (listing cases); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014) (listing cases).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi. Trib. Co.*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is

1    rarely available" and such knowledge or intent can be inferred through circumstantial evidence.

2    *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks

3    omitted). "[I]ntent, knowledge, and other conditions of a person's mind may be alleged

4    generally" for purposes of pleading Section 1202(b)'s mental state requirements. *Logan v. Meta*

5    *Platforms, Inc.*, 636 F.Supp.3d 1052, 1063 (N.D. Cal. 2022) (citations omitted).

6    **1.    Plaintiffs alleged all elements of a § 1202(b) violation.**

7         A claim for a CMI violation under the DMCA requires the plaintiff to plead: "(1) the

8    existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that

9    the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282,

10   1286–87 (C.D. Cal. 2022). The plaintiff must also plead the requisite scienter. *Izmo, Inc. v.*

11   *Roadster, Inc.*, No. 18-cv-06092-NC, 2019 WL 13210561, at *3–4 (N.D. Cal. Mar. 26, 2019).

12   Scienter, however, need not be alleged with specificity. *Id.*; *accord* Fed. R. Civ. P. 9(b) ("[I]ntent,

13   knowledge, and other conditions of a person's mind may be alleged generally").

14        In its MTD Order, the Court set forth specific guidance to Plaintiffs on the DMCA

15   claims, stating: "Plaintiffs must, on amendment, identify the particular types of their CMI from

16   their works that they believe were removed or altered. In addition, plaintiffs must clarify and then

17   allege plausible facts regarding which defendants they contend did the stripping or altering in

18   violation of the DMCA and when that occurred." MTD Order at 18. Plaintiffs have addressed

19   each of the Court's requests for clarification and have alleged facts sufficient to make out a

20   DMCA claim.

21        ***Existence of CMI.*** The FAC includes specific allegations regarding the types of CMI that

22   named Plaintiffs include in their works, as directed by the Court in its order on the previous

23   motion to dismiss. *See* ¶ 239; MTD Order at 19 (instructing Plaintiffs to "identify the specific

24   CMI each named plaintiff included in the images that each plaintiff contends was used to train

25   Stable Diffusion."). In line with the Court's MTD Order, Plaintiffs specifically allege that their

26   works contain several types of CMI, including: Plaintiff Brom's signature and a watermark

27   containing the URL for his personal website, ¶¶ 53, 195, 198; a watermark containing the URL

28   for Plaintiff Zhang's personal website, ¶¶ 53, 196, 199; Plaintiff Ortiz's signature, ¶¶ 53, 197;

Plaintiff McKernan's distinctive mark, ¶ 53; and Plaintiff Andersen's signature, ¶ 53. The FAC includes visual examples of Plaintiffs' specific CMI in original images and also the reproduction of those images without the CMI. Ex. G; *see also* ¶¶ 194–200.

Further, Plaintiffs' names or identifying handles are included in the text captions of their works. *See* ¶¶ 15, 17–19, 21, 239. The captions, which are often generated by the artists themselves, function as CMI by describing the images and identifying the artists. ¶¶ 78, 106. Plaintiffs clearly allege that this "identifying information" included on the images themselves and in the images' metadata is "conveyed in connection with the work" and constitutes CMI under the DMCA. *See Stevens*, 899 F.3d at 671.

***Knowing removal of CMI.*** Plaintiffs' original Complaint alleged facts which "put the responsibility for the initial scraping of images on LAION and/or Stability," and alleged the stripping or altering of CMI during the training of Stable Diffusion. MTD Order at 18. Nevertheless, the FAC includes additional allegations related to Stability's removal of Plaintiffs' CMI. First, Stability funded LAION's creation of a dataset including 5.85 billion training images. ¶¶ 64–65. Given its prominent role in developing the expanded dataset, and the LAION-5B dataset's metadata records, which include a watermark detection score, ¶ 66, Stability necessarily knew that its Models incorporated data with CMI. ¶¶ 216, 241.

Plaintiffs detail how the training process is designed to remove or alter CMI from the training images. ¶¶ 245, 247. The CLIP model trains on the training images, including those with CMI, and learns to associate the meaning of images with the text, including the CMI captions. ¶ 115. The CLIP models specifically detect and identify the presence of CMI in the form of watermark detection scores. ¶¶ 66, 216, 241. The diffusion models learn how to deconstruct and reconstruct the images, ¶ 115, and the Stable Diffusion models store copies of original work that can be extracted, ¶ 134. The Stability models then create copies based on Plaintiffs' works with CMI removed or altered. ¶¶ 194, 245, 247; Ex. G.

In addition, the FAC includes visual examples of Plaintiffs' works, which include CMI that were included in the training set and highly similar or functionally identical images generated in Stable Diffusion XL, in which the CMI is removed. ¶¶ 194–200; Ex. G. The "copies generated

by the AI image product could not have been generated but for copying the original image which included CMI." ¶ 200.

The FAC clearly alleges that Stability knew that the works contained in its training sets contained CMI. First, the LAION datasets, on which Stability Models are built, contain fields for the URLs of the image, the image caption, the similarity of the caption and image, and watermark detection scores for each image indicating the likelihood that an image possess an artist's distinctive mark or CMI. ¶ 66. To train its models, Stability had to download exact copies of each of the images in the datasets, including Plaintiffs' works with the associated CMI. ¶¶ 67–68. Because the LAION-5B dataset contains detection scores for watermarks and because CMI is ubiquitous in art, Stability knew that the LAION-5B dataset contained copyrighted works with CMI affixed to them. ¶ 216.  Further, Stability could have trained the Stability Models on images free of CMI, but instead chose not to due to the higher quality of images with CMI. ¶ 241.

*Distribution of CMI & copied works.* The FAC adequately alleges that Plaintiffs did not provide consent for Stability to use or remove CMI from their Works. Stability did not contact Plaintiffs or members of the LAION-5B subclass to obtain authority to remove or alter CMI from their Works. ¶ 240. Stability was not licensed by Plaintiffs or the Class to incorporate their works, create copies based on their works, or distribute their works in and through the Stability Models. ¶¶ 242–44. Stability incorporated Plaintiffs' works that included specific CMI and removed or altered that CMI, without Plaintiffs' authorization. ¶ 245.

*Knowingly enabling infringement.* Plaintiffs allege Defendants knew or had reasonable grounds to know that their distribution would induce, enable, or conceal an infringement, either by itself or its users. At the motion to dismiss stage, a plaintiff need only "allege sufficient facts to support the reasonable inference that the defendant 'knew or had a reasonable basis to know that the removal or alteration of CMI . . . w[ould] aid infringement." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023) (quoting *Harrison v. Pinterest, Inc.,* No. 20-cv-05290-EJD, 2022 WL 4348460, at *5 (N.D. Cal. Sept. 19, 2022)). Because "direct proof of one's specific wrongful intent is rarely available" such intent can be inferred through circumstantial evidence. *Friedman,* 833 F.3d at 1189. For purposes of pleading § 1202(b)'s mental state requirements,

1  "'intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Logan*,

2  636 F. Supp. 3d at 1063 (citations omitted).

3        The FAC alleges that Stability knew that CMI was removed or altered within its models,

4  ¶¶ 194, 245, 247, that there was no authority for such removal, ¶¶ 240–45, and that Stability

5  knew that the Stability Models' removal of CMI would "induce, enable, facilitate, or conceal"

6  ongoing infringement. *See* ¶¶ 195–200, 226–28, 245–50, Ex. G; *see also Mango v. Buzzfeed, Inc.*,

7  970 F.3d 167, 171 (2d Cir. 2020). In fact, the FAC alleges that Stability could have trained on

8  images without CMI, but used the CMI images due to their quality, which heightens the ability of

9  third-parties to replicate Plaintiffs' works. ¶¶ 241, 226–28. Thus, the FAC adequately alleges that

10  the removal and alteration of CMI improves and expands the Models' ability to infringe on

11  Plaintiffs' Works. ¶ 241.

12        Where, as here, a defendant distributes unlicensed artwork missing CMI, the defendant,

13  namely Stability, "knew or should have known" that this conduct "could lead their customers to

14  infringe [plaintiffs'] copyrights." *GC2, Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*,

15  391 F. Supp. 3d 828, 842 (N.D. Ill. 2019).

16            **2.**     **Section 1202 does not require the copy be "identical."**

17        Stability argues that Plaintiffs' DMCA claim fails because Plaintiffs have not provided an

18  example of an output lacking CMI that is *identical* to the original image that contained CMI.

19  Stability Br. at 7–8. The plain language of the DMCA makes it a violation to remove or alter CMI;

20  it includes no requirement that the output work be original or identical to obtain relief. 17 U.S.C.

21  § 1202(b)(1). Rather, the statute defines CMI as "information conveyed in connection with

22  copies . . . of a work[.]" 17 U.S.C. § 1202(c).

23        The definition of "copy" under the DMCA includes no requirement of identicality. To be

24  considered a copy under the DMCA, "the allegedly infringing work must be fixed in some

25  tangible form from which the work can be perceived, reproduced, or otherwise communicated,

26  either directly or with the aid of a machine or device." *Columbia Pictures Indus., Inc. v. Galindo*,

27  No. 20-cv-3129 -MEMF (GJSx), 2022 WL 17094713, at *8 (C.D. Cal. Nov. 18, 2022) (citing 17

28  U.S.C. § 101). Indeed, the requirement that the DMCA requires identical copies was recently

squarely rejected. *ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*, 667 F.Supp.3d 411, 427 (S.D. Tex. 2023) (explaining that for claims under the DMCA, "copies include more than just the original work.") (citing *Huffman v. Activision Publ'g, Inc.*, No. 2:19-CV-00050-RWS-RSP, 2020 WL 8678493, at *12 (E.D. Tex. Dec. 14, 2020)).

None of the cases upon which Stability relies which adopt an "identicality" standard for DMCA claims explain the origins of this standard—either by drawing on statutory language, legislative history, or potentially analogous interpretations of "copying" under the Copyright Act. *See Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 263556, at *3 (D. Haw. Jan. 21, 2015); *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 222CV01463RGKMAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022). Many of these cases also cite other cases that either never discussed the issue of "identicality" (despite being cited for that proposition) or which applied the "substantial similarity" standard used in infringement actions under the Copyright Act.[2] *See ADR Int'l*, 667 F. Supp. 3d at 427–29 (observing that "Defendants' cases do not require a plaintiff to plead allegedly infringing works are identical copies").

Notably, as explained by the court in *ADR Int'l*, neither the statute's plain language nor its legislative history—which the district court actually examined (unlike the cases on which Defendants rely)—supported an "identicality" requirement. Instead, well-established standards of statutory construction compelled the opposite conclusion, namely, that "copying" under the DMCA should align with "copying" under the Copyright Act, given that the DMCA is contained in Chapter 12 of the Copyright Act and, therefore, subject to Section 101 of the Copyright Act's

---

[2] The extrastatutory identicality requirement likely stems from dicta from district court opinions with little underlying analysis of the requirement's provenance. *See, e.g.*, *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020). As *ADR Int'l* noted, the *Kirk Kara* court cited *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) and *Frost-Tsuji Architects*, 2015 WL 263556, at *2, "but neither [of these cases] mentioned nor employed an identical copies requirement. *Id.* at 427. The *Kirk Kara* court similarly cited *Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018), yet, the term appears nowhere in the decision, and in fact in the *Fischer* court's brief discussion of whether sufficient copying had occurred, the court stated that where DMCA claims had been adequate, "the underlying work has been *substantially* or entirely reproduced." *Id.* at 609 (emphasis added); *see also ADR Int'l Ltd.*, 667 F. Supp. 3d at 427 (rejecting *Kirk Kara*'s reliance on *Fischer*).

definition of copying, which "lacks any requirement for an identical copy." *ADR Int'l*, 667 F. Supp. 3d at 427. In accord with this position, courts routinely analyze whether a copy is "substantially similar" to an original work or portion thereof when evaluating DMCA claims—a standard drawn directly from infringement claims brought under the Copyright Act. *See, e.g.*, *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (applying a "substantial similarity" standard to DMCA analysis); *Design Basics, LLC v. Signature Constr., Inc.*, No. 1:16-CV-1275, 2019 WL 4805888, at *9 (C.D. Ill. Aug. 19, 2019) ("Because the court has ruled that no copyright infringement occurred, based on a lack of substantial similarity, further analysis of the Digital Millennium Copyright Act is unnecessary."); *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2023 WL 8721435, at *1 (N.D. Tex. Dec. 17, 2023) (denying DMCA claim on summary judgment because "there is a material fact question on substantial similarity."); *Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2022 WL 3971292, at *5 (W.D.N.C. Aug. 31, 2022) (finding employee liable for violating DMCA where employee "reasonably knew that such information was copyrighted work and knew he was altering it by changing it enough to look like his own work while maintaining a substantial similarity to the original work."). As explained above, Plaintiffs have amply alleged substantial similarity. *See also, e.g.*, ¶¶ 195–97 (examples of substantially similar works with CMI removed generated from Stable Diffusion).

The cases on which Stability relies generally involve a scenario in which copying needed to be inferred to establish that CMI was removed from the original Works. *See Frost-Tsuji Architects*, 2015 WL 263556, at *3 (using identicality as a proxy where there was no evidence that original drawing was copied); *Dolls Kill*, 2022 WL 16961477, at *4 ("The differences between the parties' products undercut any inference that defendants removed or altered Plaintiffs' CMI."). Because Plaintiffs allege that their images were directly copied with CMI into the Stability training dataset, *see, e.g.*, ¶¶ 2, 52–55, 245, the Court does not need to infer whether Stability removed CMI in the subsequent training process.

In any event, Stability misinterprets the FAC and ignores Plaintiffs' allegation that

Defendants incorporated their Works *in their entirety* into the Stability Models as Training Images. *See*, *e.g.*, ¶¶ 1, 2 , 4, 5, 40, 50, 55, 61–63, 67–69, 72, 85. The Models then remove the CMI from these Works in the training process, ¶¶ 66, 194, 216, 245, 247, and ultimately generate output, which are reconstructed copies of Plaintiffs' and class members' licensed work, and necessarily remove the CMI contained in these Works, *see* Ex. G; *see also GC2 Inc.*, 391 F. Supp. 3d at 844 (upholding jury verdict on DMCA removal claim where the defendants had used the plaintiff's work "in its entirety, in . . . games later developed by the defendants").

Stability does not escape liability for removing CMI in the first instance merely because Stability's Models generate images that are plainly copies of the original CMI attributed images. *See ADR Int'l*, 667 F.Supp.3d at 429 (finding "no justification [in statute's language or legislative history] for adding the extra term of 'identical' to the DMCA's plain language."); *Fischer*, 286 F.Supp.3d at 609 ("In those cases where claims of removal of CMI have been held viable, the underlying work has been *substantially* or entirely reproduced.") (emphasis added).

### 3.   Plaintiffs satisfy § 1202's double-scienter pleading requirement.

At the motion to dismiss stage, for purposes of alleging scienter, a plaintiff need only "allege sufficient facts to support the reasonable inference that the defendant 'knew or had a reasonable basis to know that the removal or alteration of CMI . . . w[ould] aid infringement." *Doe 1*, 672 F. Supp. at 858 (citation omitted). Further, the Ninth Circuit has consistently held that scienter for the DMCA can be inferred through circumstantial evidence. *Friedman*, 833 F.3d at 1189.

Stability asserts that Plaintiffs do not adequately allege the double scienter requirement because the ability to prompt outputs using an artists' name means that the CMI is retained in the training model. Stability Br. at 8. This assertion ignores the FAC's detailed explanation of how the training models—and their removal of CMI—function which, at this stage of the litigation must be taken as true. *See Colgate v. JUUL Labs, Inc.,* 345 F. Supp. 3d 1178, 1194 (N.D. Cal. 2018). Plaintiffs have alleged that "Stability intentionally removed or altered CMI from the Plaintiffs' Works," ¶¶ 245, 247, and that Stability's Models "allow[] the creation of unlimited output images that are substantially similar to, and could be mistaken for those of the original

artist," ¶ 176, but for the missing CMI. ¶¶ 195–200, Ex. G. Plaintiffs have described how

diffusion, the process underlying the image models, copies and reconstructs original source

images by adding and removing noise, i.e., by removing and altering CMI. ¶¶ 88–90. Plaintiffs

allege that Stability employs those with knowledge of this process and its implications. ¶¶ 27, 101.

Further, this was done at the direction of the highest levels of Stability's leadership and with the

knowledge that it was training the image models on licensed images and without permission or

suitable licenses. ¶¶ 80, 242–44. Indeed, Stability paid money to LAION to generate a more

extensive dataset to include billions of additional source images, including licensed materials.

¶¶ 64–65, 215.

   Stability also asserts that Plaintiffs fail to meet their burden to plead double scienter

because "there is no showing that any output images contain substantial copyrightable expression

from any particular work of a Plaintiff." Stability Br. at 8. This argument is misplaced—DMCA

claims are distinct from infringement claims. *Med. Broad. Co. v. Flaiz,* No. Civ.A. 02-8554, 2003

WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003) ("[C]laims under the DMCA, however, are simply

not copyright infringement claims and are separate and distinct from the latter."); *MDY Indus.,*

*LLC v. Blizzard Ent., Inc*., 629 F.3d 928, 950–52 (9th Cir. 2010) (rejecting infringement nexus

requirement for DMCA claims); *Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-

902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("[A] DMCA action under section

1202(b) is not an action for infringement").

   Regardless, Plaintiffs have alleged ample facts that Stability had the requisite scienter.

Stability made the decision to include licensed material as Training Images, knowing that those

images come with CMI. ¶¶ 52–55, 241. Stability also knew that CMI would be removed through

the diffusion process. ¶¶ 88–90. And Stability knew that omitting CMI "would facilitate

copyright infringement by concealing the facts that (a) the Stability Models are infringing

Statutory Copies of the LAION-5B Works, and (b) the Stability Models are infringing Statutory

Derivative Works based on the LAION-5B Works." ¶ 249; *see also Schneider v. Youtube, LLC*,

Case No. 20-cv-04423-JD, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022) ("The plausible

inference . . . is that [the defendant] removed the CMI from plaintiffs' works with knowledge that

doing so carried a 'substantial risk' of inducing infringement.") (quoting *Stevens*, 899 F.3d at 676).

"[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal *his own* infringing conduct satisfies the DMCA's second scienter requirement." *Mango,* 970 F.3d at 172 (emphasis in original); *see also id.* ("Section 1202(b)(3) also encompasses 'an infringement' that, upon distribution, 'will . . . conceal' the fact of *that* infringement.") (quotation omitted, emphasis in original). These allegations are sufficient under Rule 8 to show that Stability knew the removal of CMI led to a substantial risk of inducing infringement. *See*, *e.g.*, *Doe 1*, 672 F. Supp. 3d at 858-59; *Batra v. PopSugar, Inc.*, No. 18-cv-03752-HSG, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019) (allegation that omission of Instagram sidebar that "feature[s] [CMI]" led to "plausible inference from Plaintiff's allegations . . . that [Defendants] removed the CMI from Plaintiff's Instagram posts knowing that removing the CMI would help to conceal the alleged infringement of Plaintiff's images.").

### 4.    Plaintiffs have sufficiently alleged violation of § 1202(a).

Plaintiffs allege that Stability "knowingly and with the intent to induce, enable, facilitate, or conceal infringement, (1) provide[d] copyright management information that is false, or (2) distribute[d] or import[ed] for distribution copyright management information that is false" in violation of Section 1202(a)." 17 U.S.C. § 1202(a); ¶ 248. At the motion to dismiss stage, "unless it is implausible that a viewer could understand the [defendant's CMI] to be referring to the defendant as the work's copyright holder, dismissal is inappropriate." *Post Univ. v. Course Hero, Inc.*, No. 3:21-cv-1242 (JBA), 2023 WL 5507845, at *5 (D. Conn. Aug. 25, 2023).

The FAC alleges that Stability "directly copied the LAION-5B Works," which included Plaintiffs' CMI, "including in the form of distinctive marks such as watermarks or signatures, and as the captions in the image-text pairs." ¶ 245. Stability then "remove[d] or alter[ed] the CMI from the training images," and generate[d] copies based on the original images with the CMI removed and/or altered as output." ¶ 247. Finally, Stability distributed the Stability Models, which incorporates both the original works with CMI (i.e., in the training dataset) and also the copies with CMI removed, under its own (false) copyright, pursuant to the MIT License. ¶ 248.

Defendant's reliance on *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668 (9th Cir. 2020), and *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052 (N.D. Cal. 2022), is unavailing. In *SellPoolSupplies*, "Defendants' copyright notice did not meet the definition of CMI because it was not conveyed in connection with Plaintiff's photos," was separated from the rest of the content on the webpage, did not communicate that Defendants owned the subject photos, was not located next to the photos, and *critically*, "Plaintiff's photos were imprinted with their own copyright markings." *SellPoolSupplies*, 804 F. App'x at 670–71. This equally applies to *Logan*. 636 F. Supp. 3d at 1062 ("The facts here are indistinguishable [from *SellPoolSupplies*].").

Here, the Stability Models store copies of protected expression from training images. *See* ¶ 129; *see also* ¶¶ 124–28 (Emad Mostaque admitting Stable Diffusion stores compressed copies); ¶ 249. Stability's copyright license is asserted over the model itself, ¶ 248, which incorporates and includes copies of Plaintiffs' works and CMI. Because Plaintiffs' CMI is removed from any outputs, Stability's attribution replaces that of the original artists. *See Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1053–54 (N.D. Cal. 2023) (Plaintiff "expressly alleged that the removed [CMI] indicated authorship and ownership" and the CMI was removed from code). This is fundamentally distinct from *SellPoolSupplies* and *Logan*, where the copyright notices and the subject works were distinct, unconnected, and the subject works retained their CMI.

Nothing in section 1202(a) "exempts derivative works or a defendant's own work," but rather "[i]f someone with the specified intent provides false CMI, they have violated Section 1202(a)." *Huffman,* 2020 WL 8678493, at *12. Plaintiffs have adequately pleaded that Stability has promoted and distributed its Stability Models with false copyright attribution in violation of the DMCA.

## C.   Plaintiffs Have Sufficiently Alleged Unjust Enrichment (Count 4).

A court may construe an allegation of unjust enrichment "as a quasi-contract claim seeking restitution." *Swafford v. Int'l Bus. Machs. Corp.*, 383 F. Supp. 3d 916, 931 (N.D. Cal. 2019) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2016) (internal quotation omitted)). In the Ninth Circuit, "unjust enrichment may proceed as a stand-alone cause of

1    action" either as "an independent cause of action or as a quasi-contract claim for restitution." *In*

2    *re JUUL Labs, Inc., Mktg., Sales Practices, & Prods. Liability Litig.*, 497 F. Supp. 3d 552, 641 (N.D.

3    Cal. 2020) (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). The

4    plaintiff must allege "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit

5    at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017)

6    (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)). A claim for equitable

7    restitution for past harm under the "must establish that [Plaintiffs] lack[] an adequate remedy at

8    law." *Sonner v. Premium Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). At the pleading stage,

9    a plaintiff may plead unjust enrichment even if such a claim is "duplicative or superfluous" of

10   their other claims. *Astiana*, 783 F.3d at 762.

11        Plaintiffs plainly allege that Stability unjustly received and retained a benefit at their

12   expense. The Stability Models are attractive to consumers, and thus profitable to Defendants, due

13   to their ability to use artists' names to mimic artists' work. ¶¶ 224, 343. For example, one report

14   estimated that Plaintiff Rutkowski's name had been used as a prompt in Stable Diffusion "over

15   400,000 times." ¶ 157. And even though Stability has since removed Mr. Rutkowski's name as a

16   prompt—in apparent recognition that its users were exploiting Stable Diffusion's ability to mimic

17   Mr. Rutkowski's art—Stability continues to encourage the use of artist names in order to achieve

18   similar results. Stable Diffusion's ability to mimic artists has contributed to it becoming "the most

19   popular model by far [a] for-profit company." ¶ 358.

20        The FAC also amply alleges that Stability's enrichment has come at the expense of

21   Plaintiffs. Artists—not Stability—provide value to the Stable Diffusion models, ¶ 4, and the

22   distribution of these platforms "is already damaging the market for Plaintiffs' artwork and labor,"

23   ¶ 8. AI image products "compete with the artists whose very works comprise the raw material for

24   the models within the AI image products." ¶ 56. Indeed, it is the artist's names themselves and

25   AI models' ability to utilize names in order to get particular results that draw users, and Stability

26   acknowledges and promotes this fact. *See* ¶ 112. Stability itself emphasized its unjust enrichment

27   at the expense of Plaintiffs at a U.S. Senate hearing where a Stability representative testified that,

28   ""[t]here is no arrangement in place" to pay for the "data"—aka artist works—that train its

models, even after Stability CEO Emad Mostaque acknowledged the importance of using licensed training images. ¶¶ 80–81. Indeed, Mostaque has openly boasted that the "main funding of [S]tability" is "artists." *Id.* Plaintiffs are specifically harmed by Stability's unjust enrichment because the Stability Models trade in artists' names as prompts that enable the Models to produce outputs for consumers and degrade the market for Plaintiffs' own artworks. *See* ¶¶ 56, 141–43, 176, 206–07.

Furthermore—and contrary to Stability's assertions, Stability Br. at 13—Plaintiffs allege a lack of adequate remedy at law. The FAC clearly states that Plaintiffs claim entitlement "to restitution, including disgorgement of profits and a constructive trust over all assets created with the Stability Models." ¶ 258. These alleged damages differ entirely from the "remedies at law" outlined in Plaintiffs' Copyright Act claims. ¶¶ 231, 237; The pleading rules "do[] not impose strict requirements at the pleading stage." *Perez v. Bath & Body Works, LLC*, No. 21-cv-05606-BLF, 2022 WL 2756670, at *7 (N.D. Cal. July 14, 2022) (quoting *Carvalho v. HP, Inc.*, No. 21-cv-08015-BLF, 2022 WL 2290595, at *6–7 (N.D. Cal. Jun. 24, 2022) and distinguishing *Sonner*, 971 F.3d at 844). Plaintiffs' request for damages in the form of disgorgement of profits and a constructive trust are not available as remedies at law and go beyond the damages they seek for the alleged copyright infringements. *Cf. Anderson v. Apple*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) (finding plaintiffs did not establish a lack of adequate remedy at law where "[t]hey d[id] not attempt to argue, for instance, that the equitable restitution they request would go beyond the damages available to them").

### 1. Plaintiffs' unjust-enrichment claim is not preempted by the Copyright Act.

The Ninth Circuit uses a two-part test to determine whether the Copyright Act preempts state law claims. *Doe 1*, 672 F. Supp. 3d at 856. The court first ascertains "whether the subject matter of the state law claim falls within the subject matter of the copyright as described in 17 U.S.C. §§ 102 and 103." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (internal quotations omitted). If it does, the court then determines whether the state law asserts equivalent rights to those asserted in the Copyright Act or "[i]f [the] state law claim includes an extra

PLAINTIFFS' OPPOSITION TO STABILITY'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  element that makes the right asserted qualitatively different from those protected under the

2  Copyright Act." *Id.*; *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). If the

3  court finds the latter is true, then the Copyright Act does not preempt the state law claim.

4         Stability argues that Plaintiffs' claims are preempted. Stability Br. at 12. The subject

5  matter of Plaintiffs' unjust enrichment claim does not fall within the subject matter of the

6  Copyright Act. Plaintiffs allege that Stability AI was unjustly enriched by its image product's

7  ability to mimic Plaintiffs' artistic style and benefit from their notoriety and reputation as sought-

8  after artists. Plaintiffs' unjust-enrichment claim, thus, contains "the necessarily qualitatively

9  different extra element distinguishing it" from a copyright claim. *Media.net Advert. FZ-LLC v.*

10  *NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1074 (N.D. Cal. 2016); *see also Downing v. Abercrombie & Fitch*,

11  265 F.3d 994, 1004–05 (9th Cir. 2001) ("A person's name or likeness is not a work of authorship

12  within the meaning of [the Copyright Act]" and finding that federal copyright law does not

13  preempt claims based on plaintiffs' "names and likenesses.").

14         The FAC specifically alleges that the Stable Diffusion models use CLIP-guided diffusion,

15  which relies on prompts including artists' names to generate an image. ¶¶ 82–83. AI scholar

16  Stephen Casper specifically demonstrated how Stable Diffusion trades on the use of artists

17  names' as prompts to produce specific output images.  ¶¶ 141–143; *see also* ¶¶ 176, 205. The FAC

18  further alleges that text prompts invoking the names of specific Plaintiffs allow Midjourney's

19  platform to generate images that mimic artists, ¶¶ 151, 160–62, 205, 218. This feature is a core

20  component of its popularity with consumers. ¶¶ 201, 358.

21         Put simply, the Copyright Act does not provide an avenue to recompense Plaintiffs for

22  Stability's exploitation of their names and reputation or protect Plaintiffs from continued

23  exploitation. *See Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011)

24  ("[T]he scope of copyright subject matter does not extend to ideas that are not within a fixed

25  medium."). The crux of Plaintiffs' unjust enrichment claim revolves not around Plaintiffs' works,

26  but around Plaintiffs themselves. Just as the Ninth Circuit has explained that the Copyright Act

27  does not protect "[a] person's name or likeness," the Copyright Act similarly provides no

28  enforcement mechanism for the misappropriation of Plaintiffs' names and artistic personas by the

1    Stability Models. These alleged rights are not included as one of the "exclusive rights" granted to

2    copyright owners by the Copyright Act. *See Maloney*, 853 F.3d at 1010 ("The Copyright Act

3    affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies

4    of a copyrighted work, to authorize others to do those things, and to prepare derivative works

5    based upon the copyrighted work.").

6          The other case law that Stability relies on for its preemption argument are distinguishable

7    from the present facts because in *addition* to the rights protected by the Copyright Act, such as

8    the right to prepare derivative works, as alleged in Counts One and Two of the First Amended

9    Complaint, Plaintiffs' unjust enrichment claim concerns whether Stability could lawfully use

10   Plaintiffs' art to train its Stability Models and their names to promote the Stability Models. This

11   is plainly not akin to *Best Carpet Values, Inc. v. Google, LLC* which instead focused on the benefit

12   gained by the defendant. 90 F.4th 962, 973–74 (9th Cir. 2024). Additionally, Stability's reliance

13   on *Shade v. Gorman* is misplaced because the plaintiffs in that case, unlike Plaintiffs, raised claims

14   that merely "rest[ed] on the same facts, and assert[ed] the same rights" as their copyright claims.

15   No. C 08-3471 SI, 2009 WL 196400, at *5 (N.D. Cal. Jan. 28, 2009).

16   **D.    The FAC's Addition of Claims and Named Plaintiffs Is Proper and Does Not**
17   **Exceed the Scope of the MTD Order.**

18         Leave to amend is freely granted by courts in this district where the claim could be cured

19   by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). Stability

20   argues that the addition of new claims and named Plaintiffs exceeds the scope of the Court's leave

21   to amend and should therefore be dismissed. Stability Br. at 13. However, the Court granted

22   Plaintiffs "leave to amend **and** attempt to cure the deficiencies identified above." (MTD Order at

23   28, emphasis added).

24         The cases cited by Stability involve orders with clear limiting language, granting leave to

25   amend solely or exclusively to correct deficiencies. *See Strifling v. Twitter Inc.*, No. 22-CV-07739-

26   JST, 2024 WL 54976, at *1 (N.D. Cal. Jan. 4, 2024) ("Plaintiffs may file an amended complaint

27   within twenty-one days of this order **solely** to cure the deficiencies identified by this order."

28   (emphasis added)); *Aikins v. St. Helena Hosp.*, No. C 93-3933 FMS, 1994 WL 794759, at *1 (N.D.

Cal. Apr. 4, 1994) (leave to amend for injunctive relief claims granted specifically to allege standing); *Peguero v. Toyota Motor Sales, USA, Inc.*, No. 2:20-cv-05889-VAP (ADSx), 2021 WL 2910562, at *5 (C.D. Cal. Apr. 26, 2021) (leave to amend granted only as to specific deficiencies in specific claims). The Court's earlier Order imposed no such restraint.

Plaintiffs' addition of the new named Plaintiffs and proposed class representatives in this Action satisfies the requirements of both Rule 15 and the Ninth Circuit's caselaw. *See Bos. Ret. Sys. v. Uber Techs., Inc.,* No. 19-CV-06361-RS, 2021 WL 4503137, at *2–3 (N.D. Cal. Oct. 1, 2021). Stability does not claim any unfair prejudice—nor can it as it had adequate notice of the new plaintiffs' claims. *See id*. Further, the newly named Plaintiffs were already class members, pursuant to the class definition in the original Complaint. Plaintiffs' disaggregation of its class members into sub-classes was in response to the Court's specific directive to make allegations as specific as possible (and regardless is not a pleading issue). *See Schroeder v. Envoy Air, Inc.*, No. CV 16-04911-MWF-KS, 2017 WL 10525816, at *6 (C.D. Cal. Feb. 6, 2017) (explaining that "instances of overbreadth" of "a Class and subclasses that track [Plaintiffs'] theory of liability" "better teased out after some discovery, at the class certification stage.").

## IV.   CONCLUSION

For the foregoing reasons, the Stability Defendants' motion to dismiss should be denied. In the alternative, the Court should grant Plaintiffs leave to amend.

Dated: March 21, 2024

By:      */s/ Joseph R. Saveri*
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
David Lerch (State Bar No. 229411)
Kathleen McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                dlerch@saverilawfirm.com
                kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:     (415) 395-9940
Email:          mb@butterricklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle S. Wagner (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile:  (612)339-0981
Email:          bdclark@locklaw.com
                lmmatson@locklaw.com
                aswagner@locklaw.com
                echang@locklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*