Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
David W. Lerch (State Bar No. 229411)
Elissa A. Buchanan (State Bar No. 249996)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:  (415) 500-6800
Facsimile:  (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            czirpoli@saverilawfirm.com
            cyoung@saverilawfirm.com
            dlerch@saverilawfirm.com
            eabuchanan@saverilawfirm.com
            kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323) 968-2632
Facsimile:  (415) 395-9940
Email:      mb@but150 ricklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

SARAH ANDERSEN, et al.,

    Individual and Representative Plaintiffs,

v.

STABILITY AI LTD., et al.,

                    Defendants.

Case No. 3:23-cv-00201-WHO

**PLAINTIFFS' OPPOSITION TO DEFENDANT RUNWAY AI, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date:      May 8, 2024
Time:      2:00 pm
Location:  Videoconference
Before:    Hon. William H. Orrick

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ....................................................................................... 1

III.  ARGUMENT ............................................................................................................... 3

    A.    Plaintiffs Have Sufficiently Alleged Direct Copyright Infringement (Count 11). .. 3

          1.    Runway concedes Plaintiffs' claim for direct infringement ...................... 5

          2.    Stable Diffusion 1.5 Is Either a "Copy" or a "Derivative Work". ............. 5

          3.    Plaintiffs have alleged that Stable Diffusion 1.5 is a Statutory Copy. ......... 7

          4.    Plaintiffs have plausibly alleged that Stable Diffusion 1.5 is a Statutory Derivative Work. .................................................................................. 12

          5.    Plaintiffs have plausibly alleged Runway violated their exclusive rights... 12

          6.    "Substantial Similarity" is not an element of direct infringement. .......... 13

    B.    Plaintiffs Sufficiently Pled that Runway Induced Copyright Infringement (Count 12). ....................................................................................................... 13

          1.    Runway does not evade liability because Stable Diffusion 1.5 lacks substantial noninfringing uses. ................................................................ 16

    C.    Plaintiffs Adequately Pled that Runway Violated the DMCA (Count 13). ........... 17

          1.    Plaintiffs state a section 1202(a) claim based on false CMI. .................... 18

               a.    Plaintiffs allege false CMI "in connection with" Plaintiffs Registered Works. ................................................................ 18

               b.    Section 1202 does not require that copies be "identical". ........... 19

               c.    Plaintiffs plead that false CMI was "conveyed." .......................... 21

               d.    Plaintiffs adequately plead double scienter. ................................. 21

          2.    Plaintiffs state a claim under section 1202(b) for removal and alteration of CMI. ....................................................................................................... 21

    D.    Plaintiffs Have Set Forth a Claim for Unjust Enrichment (Count 14) ................. 23

          1.    Plaintiffs' state law claims are not preempted. .......................................... 24

    E.    The Court Should Not Dismiss with Prejudice, Given that Runway Was Just Added as a Defendant to the First Amended Complaint. ..................................... 25

IV.  CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)................................................. 3, 16

*ADR Int'l Ltd. v. Inst. For Supply Mgmt., Inc.*, 667 F.Supp.3d 411 (S.D. Tex. 2023) ......... 19, 20, 22

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ..................................................... 24

*Anderson v. Apple, Inc.*, 500 F. Supp. 3d 993 (N.D. Cal. 2020) ....................................................... 24

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2016) ...................................................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................................3

*Briggs v. Blomkamp*, 70 F. Supp. 3d 1155 (N.D. Cal. 2014) ........................................................... 13

*Brown v. Stroud*, No. C 08-2348 JSW, 2011 WL 2600661 (N.D. Cal. June 30, 2011) .................... 17

*Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996) ...................................................................................25

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ..................................... 14, 16

*Columbia Pictures Indus., Inc. v. Galindo*, No. 2:20-cv-3129, 2022 WL 17094713
    (C.D. Cal. Nov. 18, 2022) .......................................................................................................... 19

*Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023) .....................................................22, 24

*Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001)...................................................... 24

*Elec. Constr. Main. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) .......................................3

*Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018) ...........................................................20, 23

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ....................................3

*Foman v. Davis*, 371 U.S. 178 (1962) ...............................................................................................25

*Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088 (C.D. Cal. 2012).......................4

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016)......................................... 17, 20

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496, 2015 WL 263556 (D.
    Haw. Jan. 21, 2015) .................................................................................................................... 20

*Graham v. Central Garden & Pet Co.*, No. 22-cv-06507, 2023 WL 2744391 (N.D.
    Cal. Mar. 30, 2023) .....................................................................................................................10

*Horgan v. Macmillan, Inc.*, 789 F.2d 157 (2d Cir. 1986) ...................................................................6

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650, 2015 WL 12712311
    (C.D. Cal. Dec. 16, 2015) .............................................................................................................4

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) ................................................................................................23

*Kadrey v. Meta Platforms*, No. 3:23-cv-03417-VC, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .........................................................................................................7

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999) ...............................20

*Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG (EX), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ............................................................20

*Logan v. Meta Platforms,* 636 F.Supp.3d 1052, 1057 (N.D. Cal. 2022) ..................... 14, 17

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .............................................................3

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) ............................................ 24

*McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020) .................3, 8, 10, 16
*Med. Broad. Co. v. Flaiz*, No. Civ.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ...................................................................................................... 22

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016) ..................... 24

*Merideth v. Chi.Trib. Co., LLC*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ................................................................................................................17

*Meshworks, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 528 F.3d 1258 (10th Cir. 2008) .......................6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .....................13, 14, 15, 16

*MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077 (N.D. Cal. 2017) ................................23

*Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20 Civ. 4875 (NRB), 2021 WL 3192543 (S.D.N.Y. July 27, 2021) .......................................................................20

*Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975 (9th Cir. 2011) ..........................25

*Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989) ..........................................................8

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ...........................................................3

*Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021) .................................16

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ..................................20

*Perez v. Bath & Body Works, LLC*, No. 21-cv-05606-BLF, 2022 WL 2756670 (N.D. Cal. July 14, 2022) ................................................................................................ 24

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ..............................15

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) ...........................4

*Post Univ. v. Course Hero, Inc.*, No. 3:21-cv-1242, 2023 WL 5507845 (D. Conn. Aug. 25, 2023) ................................................................................................................18

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ......................... *passim*

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ....................................................... 4, 5, 13

*Schneider v. Youtube, LLC*, Case No. 20-cv-04423-jd, 2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) ................................................................................................ 22

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) .............................................................8

*Skinner v. Switzer*, 562 U.S. 521 (2011) ..........................................................................................5

*Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2022 WL 3971292 (W.D.N.C. Aug. 31, 2022) ................................................................ 20

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ...........................................16

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ...............................................................17

*Swafford v. Int'l Bus. Machs. Corp.*, 383 F. Supp. 3d 916 (N.D. Cal. 2019) ....................................23

*UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) .................................................................................... 4, 13

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2023 WL 8721435 (N.D. Tex. Dec. 17, 2023) ................................. 20

*Worlds of Wonder, Inc. v. Vector Intercont'l Inc.*, 653 F. Supp. 135 (N.D. Ohio 1986) ......................7

**Statutes**

17 U.S.C. 101 ...................................................................................................................................12

17 U.S.C. §§ 102 and 103 .............................................................................................................. 24

17 U.S.C. § 106 .......................................................................................................................... *passim*

17 U.S.C. § 1202 ................................................................................................... 17, 18, 19, 21

**Other Authorities**

Nimmer on Copyright § 2.03 .............................................................................................................6

Nimmer on Copyright § 2.09 ....................................................................................................6, 7, 11

Nimmer on Copyright § 3.03 .............................................................................................................6

## I.      INTRODUCTION

Plaintiffs' First Amended Complaint (ECF No. 129, "FAC") plausibly alleges four claims against defendant Runway AI, Inc. ("Runway"): direct copyright infringement (Count 11), inducement of copyright infringement (Count 12), Digital Millennium Copyright Act ("DMCA") violations (Count 13), and unjust enrichment (Count 14). Runway's absence from earlier proceedings is not only irrelevant but does not deflect from the fact that Runway is attempting to dodge liability for its massive misappropriation of copyrighted images. Runway's Stable Diffusion 1.5, like other Stable Diffusion models, is built upon systematized copyright infringement on an immense scale. Runway cannot disavow liability merely because it was not initially named in this case.

In its motion to dismiss, Runway does **not** challenge Plaintiffs' direct-infringement claim based on Plaintiffs' allegations of Runway "copying [Plaintiffs'] registered works to train Stable Diffusion 1.5"— what Runway calls Plaintiffs' "Training Theory." Runway Br.[1] at 1. Runway, does however, ask the Court to prematurely consider and dismiss what Runway characterizes as Plaintiffs' other theories of direct copyright infringement—what Runway calls Plaintiffs' "Model Theory" and "Distribution Theory." Runway Br. at 4. The Court, however, has already declined to parse distinct theories of direct infringement at this stage in the litigation, and it should do so again here. Runway also seeks to dismiss Plaintiffs' three claims for inducement of copyright infringement, DMCA violations, and unjust enrichment. Because Runway has conceded Plaintiffs' claim for direct infringement, and because Plaintiffs have sufficiently pleaded that Runway induced copyright infringement, violated the DMCA, and was unjustly enriched by its conduct, Runway's motion must be denied.

## II.      FACTUAL BACKGROUND

Defendants Runway and Stability AI, Ltd. ("Stability") collaborated on the training and deployment of a series of models called Stable Diffusion. ¶ 4.[2] Between April and October 2022, Runway trained an image model called Stable Diffusion 1.5. ¶ 342. To train Stable Diffusion 1.5, Runway relied on

---

[1] Defendant Runway AI, Inc.'s Notice of Motion, Motion to Dismiss Plaintiffs' First Amended Complaint, and Memorandum of Points and Authorities, ECF No. 164 ("Runway Br.").

[2] "¶ __" and "Ex. __" citations are to the First Amended Complaint, Case No. 23-cv-00201 (N.D. Cal. Jan. 13, 2023), ECF No. 129, unless otherwise indicated.

the LAION datasets, which are enormous collections of images paired with descriptive text captions ("training images"). ¶¶ 2, 58. According to Runway itself, Stable Diffusion 1.5 "was trained on a large-scale dataset [called] LAION-5B." ¶¶ 71, 343. LAION-5B is a dataset of 5.85 billion training images. ¶ 15.

Training a model with the LAION-5B dataset requires downloading from the internet each of the images referenced in the dataset. ¶¶ 67–68, 72. The LAION-5B dataset only contains URLs and metadata for training images, but not the images themselves. ¶¶ 67, 348. LAION-400M, which is a separate dataset of 400 million training images (including Plaintiffs' copyrighted images) is a subset of LAION-5B, meaning every image in LAION-400M is included in LAION-5B. ¶¶ 59, 65. Therefore, when it trained Stable Diffusion 1.5, Runway necessarily downloaded copies of billions of copyrighted images without permission—including registered works belonging to Plaintiffs. ¶¶ 4, 72. Plaintiffs who own these works never authorized Runway to use them in any way. ¶¶ 72, 80, 347. All Plaintiffs had copyrighted works in LAION-5B. ¶ 24 & Ex. A.

Stable Diffusion models, including the Stable Diffusion 1.5 model trained by Runway, generates images in response to user prompts. ¶ 3. User prompts are often text, but can also be images. ¶ 164 & Ex. E (Runway text prompts); ¶ 186 & Ex. H (Runway image prompts). Stability CEO, Emad Mostaque, described Stable Diffusion as "the model itself. It's a collaboration that we did with a whole bunch of people . . . We took 100,000 gigabytes of images and compressed it to a two-gigabyte file that can recreate any of those [images] and iterations of those." ¶ 4.

Training a model with the LAION-5B dataset requires downloading from the internet each of the images referenced in the dataset. ¶¶ 68, 72. Therefore, when it trained Stable Diffusion 1.5, Runway necessarily downloaded copies of billions of copyrighted images without permission—including registered works belonging to Plaintiffs. ¶¶ 4, 72. Plaintiffs who own these works never authorized Runway to use them in any way. ¶¶ 72, 80, 347. All the Plaintiffs had copyrighted works in LAION-5B. ¶ 24 & Ex. A. Plaintiffs did not authorize Runway to use their works in any way. *See, e.g.*, ¶ 347.

Runway induces others to download Stable Diffusion 1.5 by distributing it through public websites under the "CreativeML Open RAIL-M" license, which allows anyone to download and use Stable Diffusion 1.5. ¶ 355. Runway also makes Stable Diffusion available to end users by building it into AI

1    image products that Runway markets and sells. ¶ 4. For instance, Stable Diffusion 1.5 powers AI Magic

2    Tools, Runway's commercial AI image generator. ¶ 163. Stability's Mostaque has repeatedly and

3    consistently characterized Stable Diffusion as a compressed copy of its training images. ¶¶ 120–26

4    (examples).

5    **III.   ARGUMENT**

6          "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

7    allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and

8    plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570.

9    The plaintiffs' allegations need only provide "the defendant[s] fair notice of what . . . the claim is and the

10   grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal.

11   2009) (citations omitted).

12         In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true

13   and construed in the light most favorable to the nonmoving party." *McShannock v. J.P. Morgan Chase Bank*

14   *NA*, 976 F.3d 881, 886–87 (9th Cir. 2020). "Dismissal is proper only where there is no cognizable legal

15   theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250

16   F.3d 729, 732 (9th Cir. 2001) (citations omitted).

17         Still, if a court grants a motion to dismiss, it should also grant leave to amend the complaint, unless

18   it "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*

19   *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Furthermore, "court[s] should be especially reluctant to

20   dismiss on the basis of the pleadings when the asserted theory of liability is novel . . . since it is important

21   that new legal theories be explored and assayed in the light of actual facts." *Elec. Constr. Main. Co. v.*

22   *Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985).

23         **A.   Plaintiffs Have Sufficiently Alleged Direct Copyright Infringement (Count 11).**

24         A copyright owner holds the exclusive rights to reproduce, distribute, publicly display, perform,

25   and create derivative works of their copyrighted work. 17 U.S.C. § 106. A claim of direct copyright

26   infringement must allege: (1) "ownership of the allegedly infringed material" and (2) "that the alleged

27   infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M*

28

*Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). "[C]opyright claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001). "Direct infringement does not require intent or any particular state of mind." *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1098 (C.D. Cal. 2012); *see also ITC Textile Ltd. v. Wal-Mart Stores Inc.*, Case No. CV-12-2650, 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015) ("Copyright infringement is a strict liability tort. Lack of knowledge does not limit liability, but only applies to damages.").

"To establish a prima facie case of copyright infringement," a plaintiff must show "ownership of a valid copyright" and "copying of constituent elements of the work that are original." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1152 (9th Cir. 2012); *see also UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223, at *5 (N.D. Cal. Nov. 21, 2019). In this context, the word "copying" means "the infringing of any of the copyright owner's exclusive rights." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, n.3 (9th Cir. 1989); 17 U.S.C. § 106.

Plaintiffs meet both requirements of a direct infringement claim because they allege (1) ownership of a valid copyright registration;[3] and (2) Runway violated Plaintiffs' exclusive rights by copying their registered image to train Runway's Stable Diffusion 1.5. Indeed, Runway has conceded that Plaintiffs have made out a claim for direct infringement. Runway tries instead to dismiss alternative bases for Plaintiffs' claim. As this Court has recognized, it is improper to dismiss alternative theories of liability at the pleading stage.[4] ECF No. 121.

---

[3] The FAC amply alleges Plaintiffs' ownership of registered copyrights, and Runway does not argue otherwise. *See* Ex. C (showing 29 copyright registrations owned by Plaintiffs) & Ex. A (showing 121 images in LAION-5B owned by Plaintiffs, 84 of which are covered by registrations in Ex. C). Accordingly, Runway has conceded this element of Plaintiffs' claim.

[4] At a case-management conference on November 7, 2023, defendant Stability asked the Court to "limit[]" Plaintiffs' direct-infringement claim to the "training images theory" and no others. ECF No. 128 at 10. The Court replied: "[w]hen I allow a claim to proceed . . . that includes the theories that have not yet been adjudicated on the merits." *Id.* at 10–11. The Court subsequently confirmed that where "plaintiff has a plausible cause of action for direct infringement" it "will not rule on theories that plaintiff may assert within that cause of action . . . until a later stage of the case." ECF No. 121. Runway acknowledges these rulings, yet asserts that it should receive special treatment because it is "a new party against whom new allegations have been made[.]" Runway Br. at 5, n.4. There is no reason for the Court to treat Runway differently from Stability.

### 1.   Runway concedes Plaintiffs' claim for direct infringement.

Runway "accepts" that Plaintiffs have "stated a direct[-]infringement claim against Runway" by plausibly alleging that it "acquired copies of billions of images, including Plaintiffs' registered works, to train the Stable Diffusion model." Runway Br. at 4. Runway describes this as Plaintiffs' "Training Theory" of direct copyright infringement in an effort to dismember Plaintiffs' claims. Runway Br. at 4. This is improper at a motion to dismiss. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (explaining that "a complaint need not pin plaintiff's claim for relief to a precise legal theory.").

Runway describes Plaintiffs' alternative theory of direct infringement—that "Stable Diffusion 1.5 itself infringes after the training is complete"—as the "Model Theory." Runway Br. at 4. Runway describes Plaintiffs' third theory of infringement—that "distributing the model is somehow equivalent to distributing Plaintiffs' registered works"—as the "Distribution Theory." *Id*. Runway suggests that the Court should selectively dismiss the "Model Theory" and "Distribution Theory." *Id*. at 4-5. This Court has already ruled on this issue as to Stability and determined that the direct-infringement claim was sufficiently alleged. MTD Order at 7.[5] What is more, the Court also determined that it would not parse out theories of direct infringement "that plaintiff may assert within that cause of action against Stability until a later stage of the case." ECF No. 121. The Court should decline Runway's invitation to selectively dismiss theories of infringement here, as it did with Stability. Even if the Court entertains Runway's arguments regarding the purported theories of infringement, they fail on the merits.

### 2.   Stable Diffusion 1.5 is a Statutory Copy or Statutory Derivative Work

A copyright holder possesses certain exclusive rights: to reproduce, distribute, publicly display, perform, and create derivative works of the copyrighted work. 17 U.S.C. § 106. "The word 'copying' is shorthand" for infringing any of these exclusive rights. *S.O.S., Inc.*,886 F.2d at 1085, n.3. For clarity in the FAC, Plaintiffs refer to the Copyright Act's definition of copy as a "Statutory Copy," and its definition of a derivative work as a "Statutory Derivative Work." ¶¶ 209–10.

---

[5] "MTD Order" citations are to the Order on Motions to Dismiss and Strike, No. 23-cv-00201-WHO (N.D. Cal. Oct. 20, 2023), ECF No. 117.

1   Runway coins the term "Model Theory" to describe Plaintiffs' allegations that "Stable Diffusion

2   1.5 itself infringes after the training is complete." Runway Br. at 4. Runway argues that Stable Diffusion 1.5

3   cannot qualify as either a Statutory Copy or a Statutory Derivative Work because "Stable Diffusion is a

4   statistical model . . . it is not an image" and this "fundamental difference" makes the two

5   incommensurable under the Copyright Act. *Id.* at 7. Runway's argument seems to be that an item (here,

6   Stable Diffusion 1.5) that is not *outwardly* similar to a set of copyrighted works (here, Plaintiffs' images)

7   cannot possibly be infringing under the Copyright Act. Runway's argument fails for at least three reasons:

8   First—Runway's shallow reading of these Copyright Act definitions has no basis in the law nor the

9   animating policies of the Copyright Act. As Nimmer points out, a work of authorship—say, a "motion

10  picture"—may often be fixed in copies of different forms "such as celluloid, videotape, Blu Ray discs, and

11  the like," but "[t]here is but a single work of authorship, no matter how numerous and diverse the

12  copies." Nimmer on Copyright § 2.03[C]. The fact that the work of authorship itself may be

13  "fundamentally differen[t]," (Runway Br. at 7) from the physical or digital media where it is fixed as a

14  copy is irrelevant. *See, e.g.*, Nimmer on Copyright § 2.09[D][1] ("A work is no less a motion picture (or

15  other audiovisual work) whether the images are embodied in a videotape, videodisc, or any other tangible

16  form"). Courts have accordingly upheld infringement claims where movies copied books, cartoon

17  characters copied dolls, and photographs copied dances. *See Horgan v. Macmillan, Inc.*, 789 F.2d 157, 162

18  (2d Cir. 1986) (collecting cases). Runway's use of a "statistical model" to infringe Plaintiffs' works is

19  clever and newfangled, but that does not exempt it from the reach of the Copyright Act, particularly when

20  it directly copied Plaintiffs' work wholesale. *See* Nimmer on Copyright § 3.03[C][4] ("All of this is not to

21  say that digital models are incapable of attracting copyright protection; but to do so, they must incorporate

22  the features that plaintiff's works lacked") (discussing *Meshworks, Inc. v. Toyota Motor Sales U.S.A., Inc.*,

23  528 F.3d 1258 (10th Cir. 2008)).

24  Second—Runway's view is inconsistent with the position it has already taken on what it calls

25  Plaintiffs' Training Theory. There, Runway has conceded that Plaintiffs have plausibly stated a claim.

26  Runway Br. at 4. But under Runway's "fundamental difference" argument, downloading billions of a

27  copyrighted images to a hard drive could not be copyright infringement, because a hard drive "is not an

28

1    image, or a representation of an image." *Id.* at 7.[6] However, this is precisely what Plaintiffs have alleged as

2    the basis for the Training Theory—that Runway "acquire[d] copies of the actual training images" and

3    stored them without authorization of the affected Plaintiffs. ¶¶ 348, 349.

4        Third—Plaintiffs explicitly allege that Stable Diffusion includes a "*weights* file . . . that encodes all

5    the information that the model captured during training by copying protected expression from training

6    images . . . the weights file has a status similar to that of a videogame cartridge or DVD—it contains

7    protected expression that can be perceived only with the aid of a device[.]" ¶ 148. Taking Plaintiffs'

8    allegation as true, Stable Diffusion already qualifies as a Statutory Copy. *See* Nimmer on Copyright

9    § 2.09[D][1] (discussing *Worlds of Wonder, Inc. v. Vector Intercont'l Inc.*, 653 F. Supp. 135 (N.D. Ohio 1986)

10   and commenting "[t]he audiovisual work subject to protection here, if at all, is the information on the

11   cassette tape, which, when played on the requisite machinery, produces sights and sounds").

12       **3.    Plaintiffs have alleged that Stable Diffusion 1.5 is a Statutory Copy.**

13       Plaintiffs allege that Stable Diffusion 1.5 is itself an infringing copy of the Plaintiffs' works. ¶ 350.

14   Specifically, Plaintiffs allege that because Stable Diffusion 1.5 stored copies of protected expression of the

15   LAION-5B registered works (and was capable of emitting those works), Stable Diffusion 1.5 itself is an

16   infringing Statutory Copy of the LAION-5B registered works. ¶¶ 347–53. Because Plaintiffs hold the

17   exclusive rights to their works under 17 U.S.C. § 106, including the rights to make Statutory Copies,

18   Plaintiffs have plausibly alleged direct copyright infringement by Runway. ¶ 350.

19       To show "copying of constituent elements of the work that are original," it suffices for a plaintiff to

20   allege "direct copying of copyrighted works." *Range Rd.,*, 668 F.3d at 1153–54 . Alternatively, when such

21   allegations are not available, infringement can be inferred through allegations of "substantial similarity,"

22   which is not an element of copyright infringement, but rather a "doctrine that helps courts adjudicate

23

24   ────────────

25   [6] Runway's reliance on *Kadrey v. Meta Platforms*, No. 3:23-cv-03417-VC, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) is misplaced.  Runway asserts that the *Kadrey* plaintiffs pleaded a theory of liability that is "analogous to Plaintiffs' Model Theory" here. Runway Br. at 7. However, the LLaMA language models at issue in *Kadrey* are trained differently, function differently, and are fundamentally distinguishable from the diffusion models addressed here. Regardless, the Court in *Kadrey* granted plaintiffs leave to amend their direct-infringement claim, including the version of the Model Theory applicable to the distinct LLaMA language models. *Kadrey*, 2023 WL 8039640, at *2.

whether copying of [protected material] actually occurred[.]" *Id.* at 1154. Substantial similarity is the "shorthand lingo" used to refer to two "distinct concepts": (1) "copying," which means "that a defendant copied the work" (as opposed to "independent creation"); and (2) "unlawful appropriation." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Substantial similarity "is irrelevant in a case . . . that entail[s] direct copying of copyrighted works" because the copying of entire copyrighted works necessarily entails copying protected aspects of the work. *Range Rd.*, 668 F.3d at 1154; *see also Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).

In its MTD Order, this Court offered additional guidance on how Plaintiffs should substantiate their claim that Stable Diffusion contains copies of Plaintiffs' images: "Plaintiffs will be required . . . to state facts in support of how Stable Diffusion . . . operates with respect to the Training Images. . . . if plaintiffs' compressed copies theory is based on a contention that Stable Diffusion contains mathematical or statistical methods that can be carried out through algorithms or instructions in order to reconstruct the Training Images . . . they need to . . . provide plausible facts in support." MTD Order at 9–10. In the FAC, Plaintiffs have met the Court's challenge by assembling a spectrum of new allegations that, when taken as true, plausibly allege that Stable Diffusion qualifies as a Statutory Copy of LAION-5B, including Plaintiffs' works. *McShannock,* 976 F.3d 886–87.

**Emad Mostaque and Stability admit that Stable Diffusion is a compressed copy of its training dataset**. Mostaque is the CEO of Stability. ¶¶ 27–28. Runway and Stability have collaborated on training and deployment of the Stable Diffusion models. ¶ 4. Like Runway, Stability also trained a version of the Stable Diffusion model using the LAION-5B dataset. ¶¶ 219–31. In the FAC, Plaintiffs allege seven separate examples where Mostaque or Stability "characterized Stable Diffusion as a compressed copy of its training images." ¶ 120; ¶¶ 121–27 (examples). One example comes from Stability's own website, on the page announcing the release of its version of Stable Diffusion—"This release is the culmination of many hours of collective effort to create a single file that compresses the visual information of humanity into a few gigabytes." ¶ 123. Taken as true, these allegations substantiate that Stable Diffusion—including

1  Stable Diffusion 1.5—is a Statutory Copy of LAION-5B, because, as Mostaque admits, Stable Diffusion

2  itself is a "direct copy[] of copyrighted works." *Range Rd.*, 668 F.3d at 1154.[7]

3      In its motion, Runway unsurprisingly steers clear of these admissions, saying only that it "strain[s]

4  credulity that Runway (or any other co-defendant) could have developed technology capable of

5  . . . compressing billions of images 'into a few gigabytes.'" Runway Br. at 7 (quoting ¶ 123). But that is

6  exactly what Stability and Mostaque have repeatedly said. ¶¶ 121–27. Runway's professed astonishment,

7  no matter how vigorous, does not render the FAC's allegations any less sufficient.

8      **Recent AI research suggests that diffusion models like Stable Diffusion are compressed**

9  **versions of their training datasets**. In its MTD Order, the Court said that "[i]f plaintiffs contend Stable

10  Diffusion contains 'compressed copies' of the Training Images, they need to define 'compressed copies'

11  and explain plausible facts in support." MTD Order at 9. On this point, Plaintiffs allege that Stable

12  Diffusion 1.5 relies on an AI technique called *CLIP-guided diffusion*. ¶ 83. To elucidate the operation of a

13  diffusion model, Plaintiffs cite papers and commentary by five AI researchers. First, François Chollet said

14  machine-learning models are "analogous to a database" that "takes data points" (for instance, Training

15  Images) and "turns them into a query-able structure that enables retrieval and interpolation" of those data

16  points. ¶ 117. Second, Yaodong Yu said that "large image generation models . . . are unlikely to do

17  anything beyond . . . data compression . . . and interpolation," concluding with an even plainer statement

18  about the capabilities of these models: "Compression is all there is." ¶ 119. Third, Nicholas Carlini said

19  that "diffusion models are explicitly trained to reconstruct the training set" and diffusion models

20  "memorize and regenerate" images used for training. ¶ 131. Fourth, Ryan Webster "tested several

21  diffusion models . . . and found stored copies of training images within all of them." ¶ 138. Fifth, Stephen

22  Casper found that "Stable Diffusion has a broad-ranging ability to imitate the style of individual artists."

23  ¶ 143. While true style is ordinarily not a basis for an infringement claim, as this Court has observed, "if

24  plaintiffs can plausibly plead that defendants' AI products allow users to create new works by expressly

25

26  [7] Furthermore, this Court asked Plaintiffs to "provide plausible facts in support" that Stable Diffusion

27  "through algorithms or instructions" can "reconstruct the Training Images." MTD Order at 9. In an
   interview in September 2022, Mostaque admitted exactly that: he said Stable Diffusion can "recreate any

28  of" the "100,000 gigabytes of images" used to train it. ¶ 124.

referencing [Plaintiffs'] works by name, the inferences about how and how much of [Plaintiffs'] protected content remains in Stable Diffusion or is used by the AI end-products might be stronger." MTD Order at 10. Casper's research, despite the use of the colloquial term "style," substantiates this idea that the "protected content" of many artists "remains in Stable Diffusion." *Id.* Though the terminology used by these five researchers varies, they all point toward an emerging consensus on a key idea: that "AI image products are only getting better and better at storing copies of training images." ¶ 144.[8]

**Sample output from Runway's image generators support Plaintiffs' arguments**. Plaintiffs have earnestly adopted the Court's suggestion that "if plaintiffs can plausibly plead that defendants' AI products allow users to create new works by expressly referencing [Plaintiffs'] works by name, the inferences about how and how much of [Plaintiffs'] protected content remains in Stable Diffusion or is used by the AI end-products might be stronger." MTD Order at 10. To that end, Plaintiffs provide two sets of examples from Runway's AI image products.

The first set of examples uses text prompts and shows what happens when one "expressly referenc[es]" the names of certain Plaintiffs. ¶¶ 163–68 & Ex. E. The addition of each artist name to the otherwise generic prompts "chef" and "teacher" immediately elicits an image that evokes the "protected content" of each named artist. ¶ 167 ("chef"), ¶ 168 ("teacher"). Runway cavils that these sample images "are remarkably dissimilar to any of Plaintiffs' registered works." Runway Br. at 10. Although Plaintiffs disagree with Runway's characterization of the images, the distinction is immaterial. This Court asked to see whether Runway's product would "create new works by expressly referencing" Plaintiffs' names, MTD Order at 10, and Runway's product plainly does so.

---

[8] Runway objects to Plaintiffs' citations to these researchers, saying that the Carlini paper "actually undercuts Plaintiffs' allegations" and the Webster and Casper papers "do not support Plaintiffs' assertion that Stable Diffusion 'stores' their registered works." Runway Br. at 8–9. But Runway's arguments go to the merits and are inappropriate at this stage. *McShannock,* 976 F.3d at 886–87 (plaintiffs' allegations must be "taken as true."); *see also Graham v. Cent. Garden & Pet Co.*, No. 22-cv-06507, 2023 WL 2744391, at *2 (N.D. Cal. Mar. 30, 2023) ("Defendant asks the Court to look beyond the complaint to the studies' limitations[.] The Court . . . will not analyze their merits."). The academic research discussed in the FAC is supports the plausibility of Plaintiffs' allegations, and contextualizes the output of the AI image products. ¶ 150.

The second set of examples show the results of using Runway's "Image Variation" feature with work by seven Plaintiffs. ¶¶ 185–87; Ex. H. Runway retorts that these examples are akin to claiming "a photocopier . . . is infringing". Runway Br. at 11. But Plaintiffs allege otherwise: that within Runway's Image Variation tool, "none of the pixels of the input image are retained, but rather a CLIP embedding is generated from the input image, which guides the subsequent diffusion process." ¶ 185. Runway tellingly makes no attempt to refute this allegation. Plaintiffs also allege that "there is no human-intelligible meaning of the numbers in a CLIP embedding." ¶ 110. Based on these allegations, Plaintiffs necessarily conclude that the Runway Image Variation tool is not like a photocopier at all, but rather that "the CLIP embedding generated from the image prompt was eliciting" "stored copies of protected expression from . . . training images." ¶ 187. These examples further substantiate that users can "create new works by expressly referencing [Plaintiffs'] works." MTD Order at 10.

Confronted with the cumulative weight of these allegations, Runway tries to move the goalposts. Runway argues that "to support their Model Theory, Plaintiffs needed to plead . . . that Stable Diffusion 'stores' protected expression from Plaintiffs' registered works." Runway Br. at 8. Runway also insists that Plaintiffs had to allege that the "model gives access" to Plaintiffs' "expressive content." *Id.* at 9. But that's exactly what Plaintiffs have done. Runway has conceded the Training Theory, which means that Runway's version of Stable Diffusion was trained on Plaintiffs' works, including their registered works. *Id.* at 4. Plaintiffs' subsequent output examples using text prompts and image prompts substantiate how easy it is to elicit protected expression from those works using Stable Diffusion 1.5. ¶¶ 163–68 & Ex. E (text-prompt examples); ¶¶ 185–87 & Ex. H (image-prompt examples).

As Plaintiffs note in the FAC, the Copyright Act deems a copy to be any "material object" in which a "work is fixed . . . [and] can be perceived . . . with the aid of a machine or device." ¶ 209. The image prompts show that protected expression from a given training image "can be perceived . . . with the aid" of the Image Variation tool built on Stable Diffusion. ¶¶ 185–87, 209. Since this is so, Stable Diffusion (including Runway's Stable Diffusion 1.5) qualifies as a Statutory Copy of its training dataset. *See* Nimmer on Copyright § 2.09[D][1] (explaining "a movie is copyrightable to the extent there is information on a film (or videotape), which presents sights and sounds when played on a projector (or

1   television)" and "[a] software program may contain copyrightable audiovisual information, which will be

2   visible and audible when booted up into a computer"); ¶ 223; *see also* ¶ 350 (explaining Stable Diffusion

3   1.5 is "capable of reproducing protected expression from each of the LAION-5B Registered Works that

4   was in each case substantially similar to that registered work."); *see generally* Exs. E; Exs. H.

5         **4.**    **Plaintiffs have plausibly alleged that Stable Diffusion 1.5 is a Statutory Derivative Work.**

6

7         Plaintiffs also allege the Stable Diffusion 1.5 is an infringing Statutory Derivative Work based on

8   the LAION-5B Registered Works. ¶ 350. Under the Copyright Act, a *derivative work* is "a work based

9   upon one or more preexisting works, such as . . . [an] abridgment, condensation, or any other form in

10   which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. In the FAC, this is referred ot as a

11   "Statutory Derivative Work." ¶ 210. As noted above, Plaintiffs allege that Stable Diffusion 1.5 is "capable

12   of reproducing protected expression from each of the LAION-5B Registered Works that was in each case

13   substantially similar to that registered work." ¶ 350. Plaintiffs allege that because Stable Diffusion 1.5

14   represents a transformation of the LAION-5B registered works into an alternative form, the Stable

15   Diffusion 1.5 is itself an infringing Statutory Derivative Work of the LAION-5B registered works,

16   including Plaintiffs' works. ¶ 350. In this way, Plaintiffs have alleged that the model is "a work based upon

17   one or more preexisting works." 17 U.S.C. 101. Furthermore, all the allegations above that support

18   Plaintiffs' theory that Stable Diffusion 1.5 is a Statutory Copy also support Plaintiffs' theory that Stable

19   Diffusion 1.5 is a Statutory Derivative Work: the admissions by Mostaque and Stability that Stable

20   Diffusion is a compressed version of its training data (¶¶ 120–27) the commentary from separate five AI

21   researchers (¶¶ 117, 119, 131, 138, 143) and the examples of output from Runway's image products

22   (¶¶ 163–68, Ex. E (text-prompt examples); ¶¶ 185–87, Ex. H (image-prompt examples)).

23         **5.**    **Plaintiffs have plausibly alleged Runway violated their exclusive rights.**

24         The owner of a copyright retains the "exclusive right[]" to "distribute copies" of the work. 17

25   U.S.C. § 106(3). As explained in the previous two sections, Plaintiffs have plausibly alleged that Stable

26   Diffusion 1.5 is either a Statutory Copy or Statutory Derivative Work with respect to Plaintiffs'

27   copyrighted works. ¶ 350. Thus, Plaintiffs' exclusive rights under the Copyright Act, including the

28

1    distribution right, extend to Stable Diffusion 1.5. Plaintiffs have further alleged that "Runway has

2    distributed Stable Diffusion 1.5 to the public", and thus has "infringed the exclusive distribution rights" of

3    certain Plaintiffs. ¶ 352. Plaintiffs base this allegation on the fact that Runway has made the Stable

4    Diffusion 1.5 model available for download through websites like GitHub and Hugging Face. ¶¶ 77, 352.

5    (Runway calls this Plaintiffs' "Distribution Theory" of infringement. Runway Br. at 4, 12–13.)

6           In its motion, Runway offers no substantive opposition to these allegations. Rather, it simply

7    reiterates its arguments that Stable Diffusion 1.5 is neither a Statutory Copy nor a Statutory Derivative

8    Work, and therefore it cannot be a predicate for violation of the distribution right. Runway Br. at 13. As

9    before, these all amount to factual disputes that are not properly considered as part of a Rule 12 motion.

10          **6.       "Substantial Similarity" is not an element of direct infringement.**

11          Runway's assertion that a claim for copyright infringement necessarily entails a "showing of

12   substantial similarity" is incorrect. *See* Runway Br. at 7.  Substantial similarity "is not an element of a

13   claim of copyright infringement. Rather, it is a doctrine that helps adjudicate whether copying of the

14   'constituent elements of the work that are original' actually occurred when an allegedly infringing work

15   appropriates elements of an original without reproducing it *in toto*." *Range Rd.*, 668 F.3d at 1154; *see also*

16   *Briggs v. Blomkamp*, 70 F. Supp. 3d 1155, 1163–64 (N.D. Cal. 2014) ("*Absent evidence of direct copying*, the

17   plaintiff must demonstrate both that the defendant had 'access' to the plaintiff's work and that the two

18   works are substantially similar.") (emphasis added; citation omitted).

19          Plaintiffs have amply alleged "ownership of a valid copyright" and "copying of constituent

20   elements of the work that are original." *Range Rd.*, 668 F.3d at 1153; *S.O.S., Inc.*, 886 F.2d at 1085 n.3

21   ("copying" means "the infringing of any of the copyright owner's exclusive rights."); *see also UAB*

22   *"Planner 5D"*, 2019 WL 6219223, at *5; 17 U.S.C. § 106. That is all Plaintiffs need to meet their burden.

23          **B.       Plaintiffs Sufficiently Pled that Runway Induced Copyright Infringement (Count 12).**

24          A person or entity "who distributes a device with the object of promoting its use to infringe

25   copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for

26   the resulting acts of infringement by third parties." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545

27   U.S. 913, 936–37 (2005). To state a claim for inducement of copyright infringement, Plaintiffs must allege

28

four elements: "(1) the distribution of a device or product, (2) acts of infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). Runway argues that Plaintiff have failed to demonstrate two of these elements: (1) acts of infringement or (2) promoting use to infringe copyright (Runway Br. at 13). Runway argues that Plaintiffs do not allege specific infringing acts by third parties, which is required to plead induced infringement. *Id.* at 13–14. Each of these arguments are without merit.

*Distribution of a product*. Runway distributes Stable Diffusion 1.5 to the public for free. ¶ 352. Runway has conceded this element of Plaintiffs' inducement claim—as it must. Runway Br. at 14–16.

*Acts of third-party infringement*. Runway claims Plaintiffs "point to no specific infringing acts of any third parties." *Id*. at 14. As explained in sections III.A.3 and III.A.4, Plaintiffs have plausibly alleged that Stable Diffusion 1.5 is either a Statutory Copy and/or a Statutory Derivative work. Therefore, any action by a third party that infringes Plaintiffs' exclusive rights—including making a copy of Stable Diffusion 1.5—constitutes an infringing act. ¶ 356. Runway distributes Stable Diffusion 1.5 for free through two of the most popular coding websites in the world—GitHub and Hugging Face—whose purpose is to provide downloadable code. ¶ 355. Stability CEO Emad Mostaque once called Stable Diffusion 1.5 "the most popular model by far by [a] for profit company." ¶ 358. The plausible inference is that many users have actually downloaded copies of Stable Diffusion 1.5. Runway's reliance on *Logan v. Meta Platforms* is misplaced, because the plaintiff in that case had to make allegations that would overcome the Ninth Circuit "server test," which is not at issue here. 636 F.Supp.3d 1052, 1057 (N.D. Cal. 2022).

*Object of promoting the product's use to infringe*. Runway asserts that Plaintiffs do not offer sufficient allegations of "'active steps . . . taken' by Runway 'to encourage [or induce] infringement.'" Runway Br. at 14 (quoting *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019). The Supreme Court in *Grokster* established the types of conduct that would satisfy this third element, including advertisements or solicitation, external communications, and explicit internal communications. *Grokster*, 545 U.S. at 937–40. Plaintiffs can also allege "other affirmative steps," that while not independently sufficient, can support an inference of intent to induce infringement including whether the company "attempted to develop filtering tools or other mechanisms to diminish the infringing activity using their

software," and whether the commercial aspect of defendants' enterprise "turns on high-volume [infringing] use." *Id.* at 939–40. "[A] service provider's knowing failure to prevent infringing actions could be the basis for imposing contributory liability [and] intent may be imputed." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). Per the criteria identified in *Grokster*, Plaintiffs sufficiently allege that Runway promoted infringing uses of its products:

*Advertisements & external communications*: Plaintiffs allege that "Runway and Stability induce others to download Stable Diffusion by distributing it for free through public websites. Runway and Stability also make Stable Diffusion available to end users by building it into AI image products that they market and sell." ¶ 4; *see also* ¶¶ 230, 355. Further, "one of the most attractive features of the Stability models is its ability to mimic and copy artists' work, including Plaintiffs" and that "they routinely advertise the Stability Models' ability to mimic artwork." ¶ 225.  Runway's effective advertisement of is evidenced by Mostaque's statements regarding Runway's popularity for infringement.  ¶ 358.

*No attempt to filter or diminish infringing activity:* Plaintiffs are unaware of any steps taken by Runway to filter or diminish infringement. On the contrary, the FAC alleges that Runway knows of infringing uses, ¶¶ 4, 80, 344, encourages them, ¶¶ 355, 357, and has promoted functions that enhance infringing capabilities. *See Amazon.com*, 508 F.3d at 1172 ("[A] service provider's knowing failure to prevent infringing actions could be the basis for imposing contributory liability [and] intent may be imputed.").

*Commercial sense of Runway's enterprise turns on high-volume infringing use*:  As previously noted, Runway's model has become one of the most popular products by a for-profit company. ¶ 358. Runway's commercial profits are a result of Runway's infringing models and the high-volume infringing uses they enable.  ¶¶ 343, 358, 377.[9]

**Causation**. Runway has apparently conceded this element of Plaintiffs' inducement claim. Runway Br. at 14–16. Regardless, the causation element is satisfied if the defendant "provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner,

---

[9] The only category of promotion outlined in *Grokster* that Plaintiffs have **not** alleged is explicit internal communications, and that is only because Plaintiffs have not yet had the benefit of discovery.

1  [because] that person is liable for the infringement that occurs through the use of the service." *Fung*, 710

2  F.3d at 1037. Here, Runway's distribution of Stable Diffusion 1.5 meets this requirement. ¶¶ 352, 355.

3         **1.**        **Runway does not evade liability because Stable Diffusion 1.5 lacks substantial**

4                        **noninfringing uses.**

5       Runway argues that Plaintiffs failed to allege the Stable Diffusion 1.5 model it trained and

6  distributes to the public "lack[s] substantial noninfringing uses." Runway Br. at 16–17. Runway's

7  argument is wrong for at least two reasons:

8       First—this is an affirmative defense, and therefore not subject to *Plaintiffs*' pleading requirements

9  under Rule 8(a) but *Runway's* under Rule 8(c). *See Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056

10  (N.D. Cal. 2021) ("An affirmative defense may not ordinarily be raised on a motion to dismiss.") (citation

11  omitted). Runway's assertion is thus premature.

12       Second—Plaintiffs have adequately alleged that the Stable Diffusion models (including Runway's

13  Stable Diffusion 1.5) are fundamentally built on infringement because the copying of copyrighted work is

14  integral to the models' training. ¶¶ 348–349. Runway's assertions that these same models are capable of

15  noninfringing uses are conclusory, unsupported, and require the Court to draw impermissible inferences

16  in Runway's favor. *McShannock*, 976 F.3d at 887. Thus, "there is no injustice in presuming or imputing an

17  intent to infringe." *Grokster*, 545 U.S. at 932.

18       Even if Runway's Stable Diffusion 1.5 were theoretically capable of noninfringing uses, "nothing

19  in *Sony* requires courts to ignore evidence of intent . . . and the case was never meant to foreclose rules of

20  *fault-based* liability derived from the common law." *Grokster*, 545 U.S. at 934–35 (distinguishing *Sony Corp.*

21  *of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)). On the contrary, "[r]egardless of the number of

22  [defendant's] infringing versus noninfringing uses," a defendant is liable for inducing infringement if it

23  "knew or had reason to know of its users' infringement of plaintiffs' copyrights." *Napster*, 239 F.3d at

24  1021. Liability attaches where, as here, "evidence goes beyond a product's characteristics or the

25  knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting

26  infringement[.]" *Grokster*, 545 U.S. at 935; *see also, e.g.*, ¶¶ 206 (indicating users sharing information

27

28

1    about which artists the Runway Models could imitate); 343 (Runway's Stable Diffusion 1.5 is sought out

2    for its ability to mimic specific artists).

3        **C.    Plaintiffs Adequately Pled that Runway Violated the DMCA (Count 13).**

4        The DMCA provides that "no person shall knowingly and with the intent to induce, enable,

5    facilitate, or conceal infringement, (1) provide copyright management information that is false, or (2)

6    distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a).

7    It further prohibits the intentional removal or alteration of copyright management information("CMI"),

8    and the distribution of CMI or Works with CMI removed or altered, without the authority of the

9    copyright owner. 17 U.S.C. § 1202(b).

10        CMI includes: "[the] title and other information identifying the work, including the information

11    set forth on a notice of copyright;" "[the] name of, and other identifying information about, the author of

12    a work;" and "[the] name of, and other identifying information about, the copyright owner of the work,

13    including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c); *see also Stevens v.*

14    *Corelogic, Inc.*, 899 F.3d 666, 671 (9th Cir. 2018) (CMI includes "information such as the title, the author,

15    the copyright owner, the terms and conditions for use of the work, and other identifying information set

16    forth in a copyright notice or conveyed in connection with the work."). Section 1202(c) has been

17    interpreted broadly. *See Brown v. Stroud*, No. C 08-2348 JSW, 2011 WL 2600661, at *5 (N.D. Cal. June 30,

18    2011) (listing cases).

19        "Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)."

20    *Merideth v. Chi. Trib. Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long

21    recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and

22    such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch.,*

23    *Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). "[I]ntent, knowledge, and

24    other conditions of a person's mind may be alleged generally" for purposes of pleading Section 1202(b)'s

25    mental state requirements. *Logan*, 636 F.Supp.3d at 1063 (citations omitted).

26

27

28

1                **1.**       **Plaintiffs state a section 1202(a) claim based on false CMI.**

2          Plaintiffs allege that Runway "knowingly and with the intent to induce, enable, facilitate, or

3  conceal infringement, (1) provide[d] . . . copyright management information that is false, or (2)

4  distribute[d] or import[ed] for distribution copyright management information that is false" in violation of

5  Section 1202(a). "[U]nless it is implausible that a viewer could understand the [defendant's CMI] to be

6  referring to the defendant as the work's copyright holder, dismissal is inappropriate." *Post Univ. v. Course*

7  *Hero, Inc.*, No. 3:21-cv-1242, 2023 WL 5507845, at *5 (D. Conn. Aug. 25, 2023).

8          Plaintiffs allege that Runway "directly copied the LAION-5B Works," which included Plaintiffs'

9  CMI, "including in the form of distinctive marks such as watermarks or signatures, and as the captions in

10  the image-text pairs." ¶ 367. Runway then "remove[d] or alter[ed] the CMI from the training images,"

11  and "generate[d] output that are copies of the original images . . . with the CMI removed and/or altered."

12  FAC ¶¶ 367, 369. Finally, Runway distributes Stable Diffusion 1.5, which incorporates both the original

13  works with CMI and the copies with CMI removed, under its own copyright, pursuant to the CreativeML

14  Open RAIL M License, thus conveying false CMI. ¶ 368.

15          Runway makes four arguments in opposition to Plaintiffs' Section 1202(a) claim: (a) that Plaintiffs

16  fail to allege that Runway has provided or distributed any CMI "in connection with" any of the Plaintiffs'

17  registered works; (b) that false CMI must be affixed to an "identical" copy to be actionable under the

18  DMCA; (c) that Plaintiffs have not adequately alleged false CMI was conveyed; and (d) that Plaintiffs do

19  not satisfy the requirements to plead double scienter. Runway's arguments are deficient on all counts.

20                **a.**       **Plaintiffs allege false CMI "in connection with" Plaintiffs' Registered Works.**

21

22          The FAC alleges that Runway distributes Stable Diffusion 1.5 subject to the "CreativeML Open

23  RAIL M License." ¶ 355. As alleged above, Stable Diffusion 1.5 includes copies of the LAION-5B works.

24  ¶ 368. Thus, by distributing the Stable Diffusion model and representing that the copyright holders of the

25  model are Robin Rombach and Patrick Esser and other contributors to the model—and not acknowledging

26  the images stored in the training data and the model or the copyright holders thereof, Runway has

27  provided false CMI (i.e., CMI associated with Rombach and Esser) for Plaintiffs' images. ¶ 368.

28

1      The core of the DMCA claims includes the allegation that "[t]he LAION-5B Plaintiffs included

2  one or more forms of copyright-management information" ("CMI") (as defined in Section 1202(c) of the

3  DMCA) in each of their respective works in the LAION-5B Works. ¶ 361. The FAC also alleges removal,

4  alleging that "Runway did not contact Plaintiffs and the Class to obtain authority to remove or alter CMI

5  from their works within the meaning of the DMCA." ¶ 362. The FAC specifies that "Runway knew the

6  LAION-5B dataset contained CMI" and that "[t]he LAION-5B dataset includes a detection score for

7  watermarks which indicates the likelihood a particular image in the dataset contains a watermark or other

8  distinctive mark signaling the presence of CMI. Runway thus could have trained the Runway Models on

9  images free of CMI but chose not to because images with CMI tend to be high-quality." ¶ 363. The FAC

10  explains that "[w]ithout the authority of the LAION-5B Plaintiffs, Runway directly copied the LAION-5B

11  Works and used these Statutory Copies as training data for the Runway Models;" "[t]he works copied by

12  Runway included CMI, including in the form of distinctive marks such as watermarks or signatures; and

13  the training process is designed to remove or alter CMI from the training images." ¶ 367. Therefore,

14  Runway intentionally removed or altered CMI in violation of 17 U.S.C. § 1202(b)(1).

15      **b.**    **Section 1202 does not require that copies be "identical."**

16      Runway asserts that false CMI must be conveyed in connection with an original or otherwise

17  identical copy of a work to be actionable. Runway Br. at 18. The plain language of the DMCA makes it a

18  violation to remove or alter CMI—there is no requirement either in the statute or legislative history that

19  requires the copy be identical to obtain relief. 17 U.S.C. § 1202(b)(1). Rather, the statute defines CMI as

20  "information conveyed in connection with copies . . . of a work[.]" *Id.* § 1202(c). The definition of "copy"

21  under the DMCA includes no requirement of identicality. *See Columbia Pictures Indus., Inc. v. Galindo*, No.

22  2:20-cv-3129, 2022 WL 17094713, at *8 (C.D. Cal. Nov. 18, 2022) (citing 17 U.S.C. § 101). The

23  requirement that the DMCA requires identical copies was recently squarely rejected. *ADR Int'l Ltd. v.*

24  *Inst. For Supply Mgmt., Inc.*, 667 F.Supp.3d 411, 427 (S.D. Tex. 2023) (explaining that under the DMCA,

25  "copies include more than just the original work") (citation omitted).

26      None of the cases upon which Runway relies which adopt an "identicality" standard for DMCA

27  claims explain the origins of this standard—either by drawing on statutory language, legislative history, or

28

1   potentially analogous interpretations of "copying" under the Copyright Act. *See O'Neal v. Sideshow, Inc.*,

2   583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022); *Michael Grecco Prods., Inc. v. Time USA, LLC*, No. 20 Civ.

3   4875 (NRB), 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021). Many of these cases also cite other cases

4   that either never discussed the issue of "identicality" (despite being cited for that proposition) or which

5   applied the "substantial similarity" standard used in infringement actions under the Copyright Act.[10] *See*

6   *ADR Int'l*, 667 F. Supp. 3d at 427–29.

7         Notably, as explained by the court in *ADR Int'l*, neither the statute's plain language nor its

8   legislative history—which the district court actually examined (unlike the cases on which Runway rely)—

9   supported an "identicality" requirement. Instead, well-established standards of statutory construction

10  compelled the opposite conclusion, namely, that "copying" under the DMCA should align with

11  "copying" under the Copyright Act. *ADR Int'l*, 667 F. Supp. 3d at 427. In accord with this position,

12  courts routinely analyze whether a copy is "substantially similar" to an original work or portion thereof

13  when evaluating DMCA claims—a standard drawn directly from the Copyright Act.[11]

14        Regardless, the allegations in the FAC are clear that Runway has incentivized redistribution of its

15  model, which incorporated training images in their entirety. ¶¶ 163, 176, 203, 343.  If Stable Diffusion 1.5

16  is copied, then the training data as a whole is copied (constituting direct copyright infringement) and so

17

18  _____

19  [10] The extra statutory identicality requirement likely stems from dicta from district court opinions with little underlying analysis of the requirement's provenance. *See, e.g.*, *Kirk Kara Corp. v. W. Stone & Metal

20  Corp.*, No. CV 20-1931-DMG (EX), 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (cited by *O'Neal*, 583 F. Supp. 3d at 1287). As *ADR Int'l* noted, the *Kirk Kara* court cited *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) and *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496, 2015

21  WL 263556, at *2 (D. Haw. Jan. 21, 2015), "but neither [of these cases] mentioned nor employed an identical copies requirement. *Id.* at 427 (S.D. Tex. 2023). The *Kirk Kara* court similarly cited *Fischer v.

22  Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018), yet, the term appears nowhere in the decision, and in fact in the *Fischer* court's brief discussion of whether sufficient copying had occurred, the court stated that where

23  DMCA claims had been adequate, "the underlying work has been *substantially* or entirely reproduced."

24  *Id.* at 609 (emphasis added); *see also ADR Int'l Ltd.*, 667 F. Supp. 3d at 427 (rejecting *Kirk Kara*'s reliance on *Fischer*).

25  [11] *See, e.g.*, *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (applying "substantial

26  similarity" to DMCA analysis); *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2023 WL 8721435, at *1 (N.D. Tex. Dec. 17, 2023) (denying DMCA claim on summary

27  judgment because "there is a material fact question on substantial similarity."); *Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2022 WL 3971292, at *5 (W.D.N.C. Aug. 31, 2022).

28

_____

the false CMI is conveyed with replicas of Plaintiffs' images. Runway again focuses entirely on the allegation that Stable Diffusion 1.5 is distinct from Plaintiffs' works. Runway Br. at 18 (citing *Michael Grecco Prods.,* 2021 WL 3192543, at *5.). But Runway has copied Plaintiffs' works (including its CMI) entirely and affixed its own false CMI. ¶ 368. That is a claim under Section 1202(a).

### c. Plaintiffs plead that false CMI was "conveyed."

Third, Runway argues that Plaintiffs fail to allege that any "false" CMI was conveyed because Stable Diffusion 1.5 is a new work and new works can have new copyright information. Runway Br. at 18–19. As set forth above, Runway necessarily conveyed false CMI by representing that Rombach and Esser have IP rights to Plaintiffs' images in the Stable Diffusion training data given their copyrights to Stable Diffusion 1.5. ¶ 368. Each time that Stable Diffusion 1.5 is conveyed pursuant to the Open Rail license, conveys false CMI.

### d. Plaintiffs adequately plead double scienter.

Finally, Runway argues that Plaintiffs fail to plead either prong of Section 1202(a)'s "double-scienter" requirement. Section 1202(a) requires a two-fold showing: providing or distributing false CMI: (1) knowingly and (2) with intent to induce, enable, facilitate or conceal. *See* 17 U.S.C. § 1202(a). The allegations in the FAC make it clear that Runway knowingly distributed false CMI. *See, e.g.*, ¶ 368. It knew that Plaintiffs and other similar creators held copyrights to images in the LAION dataset which contains a feature that detects CMI. ¶¶ 66, 216. Plaintiffs also allege that Runway employs those with knowledge of this process and its implications. ¶ 31. Further, Runway knowingly distributed Stable Diffusion 1.5, representing that its high-level employees are copyright holders, but not the artists who creates the images in the training dataset. ¶¶ 355, 368. Furthermore, as to the inducement element, as set forth above, the FAC alleges inducement because Runway redistributed the model to incentivize others to use it and finetune it (and in so doing to copy the images in the training dataset). ¶¶ 369–71.

### 2. Plaintiffs state a claim under section 1202(b) for removal and alteration of CMI.

This claim requires: (1) an intention to remove CMI and (2) knowledge that this removal will "induce, enable, facilitate, or conceal infringement of" the plaintiff's copyright. 17 U.S.C. § 1202(b). A plaintiff must "allege sufficient facts to support the reasonable inference that the defendant 'knew or had a

1  reasonable basis to know that the removal or alteration of CMI . . . w[ould] aid infringement.'" *Doe 1 v.*

2  *GitHub, Inc.*, 672 F. Supp. 3d 837, 858 (N.D. Cal. 2023) (citation omitted).

3      Runway argues that CMI must be linked to the information in the copyright registration itself.

4  Runway Br. at 20. But a DMCA claim does not require a copyright registration at all. *See Med. Broad. Co.*

5  *v. Flaiz*, No. Civ.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003) ("[C]laims under the

6  DMCA, however, are simply not copyright infringement claims").

7      In any event, Plaintiffs' allegations in the FAC directly contradict these arguments. Plaintiffs

8  explain how and when Runway removes the CMI and what CMI is removed. ¶¶ 66, 115, 216, 241. The

9  FAC alleges that the LAION-5B Plaintiffs included one or more forms of CMI in each of their respective

10  works. ¶ 361. Runway knew the LAION-5B dataset contained specific CMI. because, for example, the

11  LAION-5B dataset includes a detection score for watermarks which indicates the presence of CMI. ¶ 363.

12  And Runway could have trained Stable Diffusion 1.5 on images free of CMI but chose not to. ¶ 363.

13      Runway also argues that Plaintiffs fail to plausibly allege any facts satisfying Section 1202(b)'s

14  "double-scienter" requirement. Runway Br. at 20. As noted above, Plaintiffs expressly allege that Runway

15  intentionally removed the CMI encoded by LAION and Runway also promoted its model to others,

16  knowing that users would copy its model—including images with the CMI removed. ¶¶ 198–99. Although

17  Runway argues Plaintiffs again make no "affirmative showing, such as by demonstrating a past 'pattern of

18  conduct' or 'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the

19  probable future impact of its actions," Runway Br. at 20, Plaintiffs have specifically alleged that others

20  have copied the Runway model, i.e., that Runway had induced others to infringe because of the removal or

21  alternation of Plaintiffs' CMI. ¶¶ 4, 368–70; *see also Schneider v. Youtube, LLC*, Case No. 20-cv-04423-JD,

22  2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022) ("The plausible inference . . . is that [the defendant]

23  removed the CMI from plaintiffs' works with knowledge that doing so carried a 'substantial risk' of

24  inducing infringement.") (quoting *Stevens*, 899 F.3d at 676).

25      Finally, Runway argues that Plaintiffs have failed to plead that CMI was removed or altered from

26  an identical copy of Plaintiffs' works. As discussed above, identicality is not required for a DMCA claim.

27  *ADR Int'l Ltd.*, 667 F. Supp. 3d at 427. And even if it were, the FAC clearly alleges that: "Runway directly

28

copied the LAION-5B Works," that the works copied by Runway included CMI, and the copying was
without Plaintiffs' authority. ¶ 367. The FAC further details how the training process is designed to
remove or alter CMI from exact copies of training images. ¶¶ 66, 115, 216, 241, 367. These allegations are
sufficient. *Fischer*, 286 F.Supp.3d at 609 ("In those cases where claims of removal of CMI have been held
viable, the underlying work has been *substantially* or entirely reproduced.") (emphasis added).

### D.  Plaintiffs Have Set Forth a Claim for Unjust Enrichment (Count 14).

A court may construe an allegation of unjust enrichment "as a quasi-contract claim seeking
restitution." *Swafford v. Int'l Bus. Machs. Corp.*, 383 F. Supp. 3d 916, 931 (N.D. Cal. 2019) (quoting *Astiana
v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). "[U]njust enrichment may proceed as a
stand-alone cause of action" either as "an independent cause of action or as a quasi-contract claim for
restitution." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 641
(N.D. Cal. 2020) (citation omitted). The plaintiff must allege "(1) a defendant's receipt of a benefit and
(2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d
1077, 1094 (N.D. Cal. 2017) (citation omitted). A claim of unjust enrichment may be "duplicative of or
superfluous" to their other claims. *Astiana*, 783 F.3d at 762.

Plaintiffs plainly allege that Defendant Runway unjustly received and retained a benefit at
Plaintiffs' expense. With regard to Runway's received benefit, the FAC alleges that Runway has generated
significant economic opportunities and benefits from the distribution of its AI platform and the Stable
Diffusion 1.5 model. ¶ 147. Stable Diffusion 1.5 is attractive to consumers, and thus profitable to
Defendants, due to their ability to use artists' names to mimic artists' work. ¶¶ 224, 343, 358, 370. This is
why Stable Diffusion 1.5 is "the most popular model by far by [a] for profit company." ¶ 358.

The FAC also amply alleges that this benefit is at Plaintiffs' expense. Artists—not Runway—
provide value to the Stable Diffusion models, ¶ 4, and the distribution of these platforms "is already
damaging the market for Plaintiffs' artwork and labor," ¶ 8. Further, Stable Diffusion 1.5 "compete[s] with
the artists whose very works comprise the raw material for the models within the AI image products."
¶ 56. Plaintiffs are specifically harmed by Runway's unjust enrichment because the Stable Diffusion
models trade in artists' names as prompts that enable the Models to produce outputs for consumers and

1    degrade the market for Plaintiffs' own artworks. *See* ¶¶ 141–43, 151, 163–68, 176, 206–07.

2    Contrary to Runway's assertions, Plaintiffs do allege a lack of adequate remedy at law. The FAC

3    states that Plaintiffs claim entitlement "to restitution, including disgorgement of profits and a constructive

4    trust over all assets created with the Runway Models." ¶ 379. These alleged damages differ entirely from

5    the "remedies at law" outlined in Plaintiffs' Copyright Act claims. ¶¶ 353, 359. The pleading rules "do[]

6    not impose strict requirements at the pleading stage." *Perez v. Bath & Body Works, LLC*, No. 21-cv-05606-

7    BLF, 2022 WL 2756670, at *7 (N.D. Cal. July 14, 2022). Plaintiffs' request for damages in the form of

8    disgorgement of profits and a constructive trust are not available as remedies at law and go beyond the

9    damages they seek for the alleged copyright infringements. *Cf. Anderson v. Apple, Inc.*, 500 F. Supp. 3d

10   993, 1009 (N.D. Cal. 2020) (finding no lack of adequate remedy at law).

11              **1.      Plaintiffs' state law claims are not preempted.**

12   The Ninth Circuit uses a two-part test to determine whether the Copyright Act preempts state law

13   claims. *Doe 1*, 672 F. Supp. 3d at 856. The court first ascertains "whether the subject matter of the state

14   law claim falls within the subject matter of the copyright as described in 17 U.S.C. §§ 102 and 103."

15   *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (internal quotations omitted). If it does, the

16   court then determines whether the state law asserts equivalent rights to those asserted in the Copyright

17   Act or "[i]f [the] state law claim includes an extra element that makes the right asserted qualitatively

18   different from those protected under the Copyright Act," and the claim is not preempted. *Id.*; *Altera Corp.*

19   *v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005).

20   Plaintiffs' unjust enrichment claim, as pleaded, contains "the necessarily qualitatively different

21   extra element distinguishing it" from a copyright claim. *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F.

22   Supp. 3d 1052, 1074 (N.D. Cal. 2016). Plaintiffs allege that Runway was unjustly enriched by its image

23   product's ability to use Plaintiffs' names to mimic Plaintiffs' artistic style and benefit from their notoriety

24   and reputation as sought-after artists. Plaintiffs' unjust-enrichment claim, thus, contains "the necessarily

25   qualitatively different extra element[.]" *Media.net Advert.,* 156 F. Supp. 3d at 1074; *see also Downing v.*

26   *Abercrombie & Fitch*, 265 F.3d 994, 1004–05 (9th Cir. 2001) ("A person's name or likeness is not a work of

27   authorship within the meaning of [the Copyright Act]").

28

The FAC specifically alleges that the Stable Diffusion models, including Stable Diffusion 1.5, incorporate CLIP-guided diffusion, which relies on prompts including artists' names, to generate an image. ¶¶ 82, 83. AI Scholar Casper specifically demonstrated how Stable Diffusion 1.5 trades on the use of artists names as prompts to produce specific output images. ¶¶ 141–43; *see also* ¶¶ 176, 206. The FAC further alleges that text prompts invoking the names of specific Plaintiffs allow Runway's platform to generate images that mimic artists specific styles, ¶¶ 151, 163–68, 206, which is a core component of its popularity with consumers, ¶¶ 201, 358. Put simply, the Copyright Act does not provide an avenue to recompense Plaintiffs for Runway's exploitation of their names and reputation or protect Plaintiffs from continued exploitation. *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) ("[T]he scope of copyright subject matter does not extend to ideas that are not within a fixed medium.").

### E.   The Court Should Not Dismiss with Prejudice, Given that Runway Was Just Added as a Defendant to the First Amended Complaint.

Dismissal without leave to amend is not appropriate unless it is clear the complaint could not be saved by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Although this motion to dismiss pertains to the FAC, this is the first round of allegations against Runway—Plaintiffs have not had "two bites at the apple." *See* Runway Br. at 23. This is not a case where plaintiffs took "three bites at the apple" by alleging and re-alleging the same theories. Because Runway is a newly added defendant, Plaintiffs have not had any chances to amend the complaint. Runway itself argues that it cannot be lumped together with other defendants for purposes of analyzing the infringement, DMCA, and other claims. *See, e.g.*, *id.* at 16, n.22.

Leave to amend is not futile. Runway's Motion is rooted in factual disputes. Plaintiffs can plead additional facts regarding the LAION data set, the training data set, the Stable Diffusion model, and Runway's use of artist names as prompts, terms of service, and other agreements. Accordingly, if the Court does grant the motion to dismiss in part, the Court should provide leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Runway's Motion to Dismiss. In the alternative, should the Court grant Runway's Motion in part, Plaintiffs should be given leave to amend.

Dated: March 21, 2024

By: _____/s/ Joseph R. Saveri_____
Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
David Lerch (State Bar No. 229411)
Elissa A. Buchanan (State Bar No. 249996)
Kathleen McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:      (415) 395-9940
Email:           jsaveri@saverilawfirm.com
                      czirpoli@saverilawfirm.com
                      cyoung@saverilawfirm.com
                      dlerch@saverilawfirm.com
                      ebuchanan@saverilawfirm.com
                      kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:     (323) 968-2632
Facsimile:      (415) 395-9940
Email:           mb@butterricklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle S. Wagner (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:     (612)339-6900
Facsimile:      (612)339-0981
Email:           bdclark@locklaw.com
                      lmmatson@locklaw.com
                      aswagner@locklaw.com
                      echang@locklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*