Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
David W. Lerch (State Bar No. 229411)
Elissa A. Buchanan (State Bar No. 249996)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              dlerch@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              kmcmahon@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:    (323) 968-2632
Facsimile:    (415) 395-9940
Email:        mb@butterricklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SARAH ANDERSEN, et al.,<br><br>      Individual and Representative Plaintiffs,<br><br>v.<br><br>STABILITY AI LTD., et al.,<br><br>                    Defendants. | Case No. 3:23-cv-00201-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MIDJOURNEY, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:       May 8, 2024<br>Time:       2:00 pm<br>Location:   Videoconference<br>Before:     Hon. William H. Orrick |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................1

II.   FACTUAL BACKGROUND .........................................................................................1

III.  ARGUMENT .................................................................................................................2

    A.   Plaintiffs Have Plausibly Alleged Two Counts of Direct Copyright
        Infringement Against Midjourney (Counts 5, 6) ...............................................3

        1.   Plaintiffs own valid copyright registrations. ........................................4

        2.   Plaintiff Andersen's compilation registrations extend to the
            underlying works that are elements of each compilation....................4

        3.   Plaintiff Brom's "text only" registrations for certain books also
            cover his artwork included within those works.....................................5

        4.   Plaintiffs have sufficiently alleged that Midjourney copied their
            LAION-400M registered works and LAION-5B registered
            works to train certain Midjourney Models. .........................................6

        5.   Plaintiffs have plausibly alleged the Midjourney Models are
            either Statutory Copies and/or Statutory Derivative Works ...............8

a.   Plaintiffs plausibly allege that the Midjourney Models are Statutory Copies of
    the LAION datasets .........................................................................................8

b.   Plaintiffs have plausibly alleged that the Midjourney Model is a Statutory
    Derivative Work ........................................................................................... 11

    B.   Plaintiffs Have Adequately Pled Violations of the DMCA. (Count 7) ........................12

        1.   Plaintiffs Plead All Elements of a Section 1202(b) Violation............................13

        2.   Section 1202 Does Not Require the Copy be "Identical." ..............................16

        1.   Plaintiffs Have Sufficiently Alleged Double Scienter. .......................................18

    C.   Plaintiffs sufficiently allege that Midjourney violated the Lanham Act
        under a theory of false endorsement. (Count 8) .................................................19

    D.   Plaintiffs sufficiently allege that Midjourney violated the Lanham Act
        under a theory of vicarious trade-dress infringement. (Count 9)................................21

    E.   Plaintiffs Adequately Allege Their California State Law Claims
        (Count 10)..........................................................................................................24

        1.   Plaintiffs' State Law Claims are not Preempted. .............................................24

2.     Plaintiffs State a Claim for Unjust Enrichment. .................................................25

IV.   CONCLUSION ............................................................................................................25

## TABLE OF AUTHORITIES

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ..................................................3

*Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136 (N.D. Cal. 2015) ...........................19

*ADR Int'l Ltd. v. Inst. For Supply Mgmt., Inc.*, 667 F. Supp. 3d 411 (S.D. Tex. 2023) ...............................................................................................................................16, 17

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673 (9th Cir. 2014) .............................................................................................................................4

*Ambrosetti v. Oregon Cath. Press*, 458 F. Supp. 3d 1013 (N.D. Ind. 2020) .........................5

*Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057 (N.D. Cal. 2015) ...........................21

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2016) ..................................25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................2

*Brown v. Stroud*, No. C 08-02348 JSW, 2011 WL 2600661 (N.D. Cal. June 30, 2011) ..............................................................................................................................12

*Cairns v. Franklin Mint Co.* 107 F. Supp. 2d 1212 (C.D. Cal. 2000) ..........................................................................20

*Chihuly, Inc. v. Kaindl*, No. C05-1801-JPD, 2006 WL 83462 (W.D. Wash. Jan. 11, 2006) .................................................................................................................. 21, 22, 23

*Church & Dwight Co., Inc. v. Mayer Labs., Inc.*, No. C-10-4429 EMC, 2011 WL 1225912 (N.D. Cal. Apr. 1, 2011) ..........................................................................19

*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252 (9th Cir. 2001) ...........................23

*Columbia Pictures Indus., Inc. v. Galindo*, No. 20-cv-3129-MEMF, 2022 WL 17094713 (C.D. Cal. Nov. 18, 2022) ......................................................................16

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS, 2013 WL 1249021 (C.D. Cal. Mar. 25, 2013) ...........................................................................25

*Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023) ..........................................18

*Dolls Kill, Inc. v. Zoetop Bus. Co.*, No. 222CV01463RGKMAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ...................................................................... 17, 18

*Eksouzian v. Albanese*, No. CV 13-728 PSG, 2013 WL 12139828 (C.D. Cal. July 12, 2013)...............................................................................................................................25

*Elec. Constr. Main. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) ........................................3

*Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927 (C.D. Cal. 2018)................................................18

*Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018) ........................................................ 17, 18

*Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088 (C.D. Cal. 2012)......................3

*Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180 (9th Cir. 2016) ..................................12, 17, 18

*Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL
263556 (D. Haw. Jan. 21, 2015).........................................................................................16, 17

*GC2 v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828
(N.D. Ill. 2019)..............................................................................................................16, 18, 19

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, No. CV 10-8394-GHK SHX, 2012
WL 3072327 (C.D. Cal. Apr. 25, 2012)..........................................................................23

*Gorski v. The Gymboree Corp.*, No. 14-CV-01314-LHK, 2014 WL 3533324 (N.D.
Cal. July 16, 2014) ........................................................................................................... 20

*Horgan v. Macmillan, Inc.*, 789 F.2d 157 (2d Cir. 1986) ........................................................10

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) ....................................2

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liability Litig.*, 497 F. Supp. 3d
552 (N.D. Cal. 2020) .............................................................................................................25

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993) ..........................................23

*Int'l Ord of Job's Daughters v. Lindeburg Co.*, 633 F.2d 912 (9th Cir. 1980) ..................................23

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*, No. CV-12-2650-JFW, 2015 WL 12712311
(C.D. Cal. Dec. 16, 2015) ........................................................................................................3

*Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561 (N.D. Cal.
Mar. 26, 2019)..................................................................................................................... 13

*Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999) ........................................ 17

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042 (9th Cir.
1998)..................................................................................................................................... 21

*Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG (EX), 2020 WL
5991503 (C.D. Cal. Aug. 14, 2020) ...................................................................................... 17

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098 (N.D.
Ill. 2014) ..............................................................................................................................12

*Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985) ............................... 24

*Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F. Supp. 980 (D. Ariz. 1992) ........................... 24

*Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052 (N.D. Cal. 2022) ..................................... 13, 14

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ............................................................3

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal. 2008) ............................................................................................ 24

*Make Him Smile, Inc. v. Trek Bicycle Corp.*, No. 2:17-cv-07136-RGK-KS, 2018 WL 5986983 (C.D. Cal. Jan. 18, 2018) ................................................................19, 20

*Mango v. Buzzfeed, Inc.*, 970 F.3d 167 (2d Cir. 2020) ....................................................... 15

*McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020) ................................2, 9

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016) ................... 24

*Merideth v. Chi. Trib. Co., LLC*, No. 12 C 7961, 2014 WL 87518 (N.D. Ill. Jan. 9, 2014) ................................................................................................. 12

*Meshworks, Inc. v. Toyota Motor Sales*, 528 F.3d 1258 (10th Cir. 2008) ........................... 11

*Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989) ............................................................6

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .............................................................2

*Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021) ................................... 20

*O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022) ................................... 13

*Oracle Am., Inc. v. Terix Comput. Co. Inc.*, No. 13-cv-03385 ...........................................5

*Pagliero v. Wallace China Co.*, 198 F.2d 339 (9th Cir. 1952) ...........................................23

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) ....................... 3, 7

*Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM, 2008 WL 4217837 (C.D. Cal. July 16, 2008) .......................................................................................25

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ......................... 24

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ...........................3, 4, 6

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ...............................................3

*Skinner v. Switzer*, 562 U.S. 521 (2011) ......................................................................8

*Software Pricing Partners, LLC v. Geisman*, No. 319CV00195RJCDCK, 2022 WL 3971292 (W.D.N.C. Aug. 31, 2022) ................................................................ 17

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ................................ 12, 14

*Stouffer v. National Geographic Partners, LLC*, 400 F. Supp (D. Colo. 2019) .............. 22

*Tie Tech, Inc. v. Kinedyne Corp.*,
296 F.3d 778 (9th Cir. 2002) ............................................................................ 23

*UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ............................................................................... 3

*Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007) ...................................................................................................... 22

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K, 2023 WL 8721435 (N.D. Tex. Dec. 17, 2023) .................................... 17

*Williams v. Cavalli*, No. CV 14-06659-AB JEMX, 2015 WL 1247065 (C.D. Cal. Feb. 12, 2015) ............................................................................................. 12

*Worlds of Wonder, Inc. v. Vector Intercont'l Inc.*, 653 F. Supp. 135 (N.D. Ohio 1986) .............. 11

*YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756 (N.D. Cal. 2021) ................ 21

**Statutes**

15 U.S.C. §1125 ......................................................................................... 21

17 U.S.C. § 101 .................................................................................. *passim*

17 U.S.C. § 106 ........................................................................................... 3

17 U.S.C. § 408 ........................................................................................... 6

17 U.S.C. § 1202 ............................................................................... *passim*

**Other Authorities**

37 C.F.R. § 202.3(b)(2)(iii) (2022) .............................................................. 5, 6

37 C.F.R. § 202.3(b)(4) (2022) .................................................................... 5, 6

4 McCarthy on Trademarks and Unfair Competition § 28.15 (5th ed. 2024). .......... 19, 20

4 McCarthy on Trademarks and Unfair Competition § 8.2 (4th ed. 2016) .................. 23

Fed. R. Civ. P. 8 ....................................................................................... 2, 7

1

2

Fed. R. Civ. P. 9(b) ............................................................................................................. 13

Fed. R. Civ. P. 12 ................................................................................................................. 2

Nimmer on Copyright § 2.03[C] ....................................................................................... 10

Nimmer on Copyright § 2.03[F] ......................................................................................... 6

Nimmer on Copyright § 2.09[D][1] ............................................................................. 10, 11

Nimmer on Copyright § 3.03[C][4] ................................................................................... 10

Nimmer on Copyright § 7.16[B][5][c] ............................................................................ 4, 5

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Plaintiffs' First Amended Complaint (ECF No. 129, "FAC")—filed in response to this Court's order following the previous motions to dismiss (ECF No. 117, "MTD Order")—sufficiently alleges four claims against defendant Midjourney, Inc. ("Midjourney"): direct copyright infringement via the LAION-400M dataset (Count 5), direct copyright infringement via the LAION-5B dataset (Count 6), DMCA violations (Count 7), and unjust enrichment (Count 8). For the reasons below, Midjourney's motion should be denied.

## II.     FACTUAL BACKGROUND

Midjourney trains machine learning models (referred to in the FAC as the "Midjourney Models") and incorporates these models into a commercial AI image product (the "Midjourney Image Product"). ¶¶ 1, 5, 169.[1] Like other image products, the Midjourney Image Product generates images in response to user prompts. ¶ 3. User prompts are often text, but can also be images. ¶ 171 & Ex. F (Midjourney text prompts); ¶ 189 & Ex. I (Midjourney image prompts).

To train its models, Midjourney has relied on the LAION datasets, which are enormous collections of images paired with descriptive text captions ("training images"). ¶¶ 2, 58. The LAION-400M dataset contains records for approximately 400 million training images. ¶¶ 59–60. The LAION-5B dataset contains records for approximately 5.85 billion training images. ¶ 65. LAION-400M is a subset of LAION-5B, meaning every image in LAION-400M is also in LAION-5B. ¶ 65. Sometime before February 2022, Midjourney trained version 1 of the Midjourney Model (and possibly others) using the LAION-400M dataset. ¶ 266. Sometime before March 2023, Midjourney trained version 5 of the Midjourney Model and subsequent models on LAION-5B. ¶¶ 274–75.

Training a model with the LAION-400M or LAION-5B data set requires downloading from the internet each of the images referenced in the dataset. ¶¶ 60–62, 66–68. The LAION-400M and LAION-5B datasets only contain URLs and metadata for training images, and not the images

---

[1] "¶ __" and "Ex. __" citations are to ECF No. 129 (First Amended11 Class Action Complaint) unless otherwise indicated.

PLAINTIFFS' OPPOSITION TO MIDJOURNEY'S MOTION TO DISMISS PLAINTIFFS' FAC

themselves. ¶¶ 281, 286. Therefore, when it trained the Midjourney Models, Midjourney necessarily downloaded copies of billions of copyrighted images without permission—including registered works belonging to Plaintiffs. ¶¶ 4, 72. Midjourney knew that the LAION datasets contained copyrighted works. ¶¶ 271, 276. Plaintiffs who own these works never authorized Midjourney to use them in any way. ¶¶ 72, 80, 347.

In February 2022, near the release of the initial version of the Midjourney Image Product, Midjourney CEO David Holz posted messages publicly promoting the Midjourney Image Product's ability to emulate the styles of particular artists. ¶ 260. Holz posted a link to a document called the "Midjourney Style List" that contained over 4,700 artist names whose styles can be emulated by the Midjourney Image Product. ¶ 262 and Ex. J. In so doing, Midjourney sought to capitalize on the popularity, recognition, and appeal of these artists—all without their consent. ¶¶ 305–06. Midjourney actively encourages its users to create images that invoke artist names and their protectable trade dress. ¶ 325. Midjourney promotes such images in its online "Showcase" feature images made with artist names. ¶ 325(b) & Ex. K. Midjourney also publishes the Midjourney Magazine that promotes the use of artist names in image prompts. ¶ 278.

## III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 569 n.14, 570. The plaintiff's allegations need only provide "the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted).

In weighing a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881, 886–87 (9th Cir. 2020). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Still, if a court grants a motion to dismiss, it should also grant leave to amend the complaint,

1   unless it "determines that the pleading could not possibly be cured by the allegation of other facts."

2   *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Furthermore, "court[s] should be especially

3   reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel . . .

4   since it is important that new legal theories be explored and assayed in the light of actual facts." *Elec*.

5   *Constr. Main. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985).

6       **A.**    **Plaintiffs Have Plausibly Alleged Two Counts of Direct Copyright Infringement**

7           **Against Midjourney (Counts 5, 6)**

8       A copyright owner holds the exclusive rights to reproduce, distribute, publicly display,

9   perform, and create derivative works of their copyrighted work. 17 U.S.C. § 106. A claim of direct

10   copyright infringement must allege: (1) "ownership of the allegedly infringed material" and (2)

11   "that the alleged infringers violated at least one exclusive right granted to copyright holders under 17

12   U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). "[C]opyright

13   claims need not be pled with particularity." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d

14   1114, 1120 (C.D. Cal. 2001) ("*Cybernet Ventures*"). "Direct infringement does not require intent or

15   any particular state of mind." *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1098

16   (C.D. Cal. 2012); *see also ITC Textile Ltd. v. Wal-Mart Stores Inc.*, No. CV-12-2650-JFW (AJWx),

17   2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015) ("Copyright infringement is a strict liability

18   tort.").

19       "To establish a prima facie case of copyright infringement," a plaintiff must show

20   "ownership of a valid copyright" and "copying of constituent elements of the work that are

21   original." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1152 (9th Cir. 2012); *see also*

22   *UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223, at *5 (N.D. Cal.

23   Nov. 21, 2019). In this context, the word "copying" means "the infringing of any of the copyright

24   owner's exclusive rights." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, n.3 (9th Cir. 1989).

25       Plaintiffs meet both requirements of a direct-infringement claim because they allege

26   (1) ownership of valid copyright registrations and (2) that Midjourney violated Plaintiffs' exclusive

27   rights by copying their registered images to train the Midjourney models.

28

### 1. Plaintiffs own valid copyright registrations.

A plaintiff who alleges copyright infringement must show "ownership of a valid copyright." *Range Rd.*, 668 F.3rd at 1153. Here, Plaintiffs have identified works for which they own valid registrations and were included in the LAION-400M and LAION-5B datasets—works that Midjourney copied in order to make their models. *See, e.g.*, Ex. A (includes Plaintiffs' registered works within the LAION-5B dataset); Ex. B (Plaintiffs' registered works contained within the LAION-400M dataset).

Midjourney nitpicks certain Plaintiff registrations, arguing that: (1) several of Plaintiff Andersen's registrations are for compilations and thus the underlying works lack protection; and (2) with respect to Plaintiff Brom, his registrations for two of his works—which are books—cover "text only" and thus, did not protect the artwork incorporated into the work. ECF No. 160 at 6 (hereinafter "Midjourney Br."). Neither of these arguments hold water.

### 2. Plaintiff Andersen's compilation registrations extend to the underlying works that are elements of each compilation.

Midjourney argues that some of Plaintiffs' copyright registrations are invalid because some of these compilations contain previously published material. Midjourney Br. at 6. But this Court already ruled on allegations of infringement based on registered collections, finding that "the plausible inferences are that all . . . works that were registered as collections *and* were online were scraped into the training datasets." MTD Order at 6. Furthermore, as Nimmer explains, when a copyright owner of a derivative or collective work is not merely a licensee, but also the owner of the underlying elements, the registration of the collective work serves as a registration of the underlying elements as well. Nimmer on Copyright § 7.16[B][5][c] (endorsing rule that "[w]hen the same party owns the derivative or collective work plus the underlying elements incorporated therein, its registration of the former is 'sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting'"). The Ninth Circuit is in accord. *See Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 684–85 (9th Cir. 2014).

Midjourney does not dispute that Plaintiffs own the copyrights in the underlying elements of the collections, nor the validity of the copyright registrations for each collection. Thus, the inquiry

ends there—Plaintiffs have a valid registered copyright in a collection of works which extends to each copyrightable element of those collections. Nimmer on Copyright § 7.16[B][5][c].

Midjourney cites *Ambrosetti v. Oregon Cath. Press*, 458 F. Supp. 3d 1013, 1018 (N.D. Ind. 2020), but *Ambrosetti* supports Plaintiffs, not Midjourney. In *Ambrosetti*, the plaintiff did **not** own the copyright to the component song of the compilation. 458 F. Supp. 3d at 1013–15. The court in *Ambrosetti* explained that "unless the copyright owner of a collective work also owns **all the rights in a constituent part**, a collective work registration will not extend to a constituent part." *Id.* at 1018 (emphasis added). Here, Plaintiffs own the registrations in the compilation and own the copyrights for all the underlying elements, i.e., the previously published works comprising the compilations. *See* ¶¶ 14–25; Ex. C at 3–4, 11, 14–21, 24–28.[2]

### 3.   Plaintiff Brom's "text only" registrations for certain books also cover his artwork included within those works.

Midjourney's second nitpick—as to Plaintiff Brom's registrations—fares no better. Citing zero authority, Midjourney quibbles that the registrations for two of Plaintiff Brom's works supposedly cover only text, and thus any artwork included in those books is unregistered and cannot be the basis of an infringement claim. Midjourney Br. at 7–8.

This is not so: "[i]n cases where a work contains elements of authorship in which copyright is claimed that fall into two or more classes, the application should be submitted in the class most appropriate to the predominant type of authorship in the work as a whole." 37 C.F.R. § 202.3(b)(2)(iii) (2022). For published works, a registration encapsulates "all copyrightable elements that are otherwise recognizable as self-contained works, that are included in the same unit of publication[.]" 37 C.F.R. § 202.3(b)(4) (2022).

The works in question here are books. *See* Ex. C at 3–4. The fact that the registrations

---

[2] Midjourney additionally relies on *Oracle Am., Inc. v. Terix Comput. Co. Inc.*, No. 13-cv-03385 -PSG, 2015 WL 2090191, at *4 (N.D. Cal. May 5, 2015), a computer program case for the proposition that registration does not cover previously published material. But *Oracle* is inapposite—as the court there explains, "the owner of both an underlying work 'can . . . sue for copying of material that appears in both the derivative work and the underlying work.'" *Id.* Plaintiffs are the valid copyright owners of both the underling work and compilations here and so can bring claims for both.

indicate only "text" when they are works that fall into multiple classes of authorship—namely, text and artwork—is of little import when the predominant type of authorship is text, as would be expected from a book. 37 C.F.R. § 202.3(b)(2)(iii) (2022). Additionally, the text and artwork of *The Child Thief* and *Krampus* each constitute one work in a single unit of publication—when Plaintiff Brom registered the copyright, he did it for the *entire* work, not just for one component part of the work. *See* 37 C.F.R. § 202.3(b)(4) (2022). Thus, Plaintiff Brom's registrations for each of his books extend to all copyrightable elements of that work, i.e., including his artwork.[3]

### 4. Plaintiffs have sufficiently alleged that Midjourney copied their LAION-400M registered works and LAION-5B registered works to train certain Midjourney Models.

To show "copying of constituent elements of the work that are original," it suffices for a plaintiff to allege "direct copying of copyrighted works." *Range Rd.*, 668 F.3d at 1153–54. Importantly, the evidentiary doctrine of substantial similarity "is irrelevant in a case . . . that entail[s] direct copying of copyrighted works" because the copying of entire copyrighted works necessarily entails copying protected aspects of the work. *Id.* at 1154; *see also Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).

Furthermore, in its earlier MTD Order, this Court found that Plaintiffs had sufficiently pleaded a direct-infringement claim against Stability based on the "use of 'Training Images' scraped from the internet into the LAION datasets and then used [them] to train" an AI model. MTD Order

---

[3] Midjourney's attempt to undermine Plaintiff Brom's registrations fly in contravention of the legislative intent behind the Copyright Act. Section 408(c)(1) of the Copyright Act, which authorizes the Register of Copyrights to regulate the administrative classes into which works are to be placed for purposes of registration plainly states that the "administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title." 17 U.S.C. § 408(c)(1). Thus, the omission of the term "artwork" from Plaintiff Brom's registration of a book does not mean the artwork contained in the book lacks protection. *See* Nimmer on Copyright § 2.03[F] ("The legislative intent expressed in that last sentence means that errors in the form used to register a work cannot serve as a basis for invalidating the copyright.") (footnote call number omitted); *see also id.*, n.132 ("It is important that the statutory provisions setting forth the subject matter of copyright be kept entirely separate from any classification of copyrightable works for practical administrative purposes.") (quoting H. Rep. No. 94-1476, at 153).

at 7. As for which Plaintiff works had been infringed, this Court held that "the plausible inferences are that *all* of [Plaintiff Andersen's] works that were registered as collections *and* were online were scraped into the training datasets." *Id.* at 6 (emphasis in original).

As a result, in their current motions to dismiss the FAC, Stability has not renewed its challenge to Plaintiffs' theory of infringement based on training. ECF No. 162 at 2. Defendant Runway AI, Inc. has also accepted the Court's prior rulings and declined to challenge Plaintiffs' theory of infringement based on training. ECF No. 164 at 4. Yet Midjourney persists—even though in the FAC, Plaintiffs have made parallel allegations of infringement based on training.

Here, Plaintiffs have set forth detailed facts showing Midjourney's use of copied and reproduced images for training the Midjourney Models. Midjourney affiliates admitted that Midjourney used two LAION datasets to train different Midjourney Models. ¶¶ 266–72 (LAION-400M), 273–77 (LAION-5B). Because the LAION datasets only contain URLs of training images, anyone who wants to train their own models on those datasets must download or otherwise acquire copies of the actual training images, and Midjourney did so. ¶¶ 281 (LAION-400M), 286 (LAION-5B). During each training process, Midjourney made further intermediate copies of Plaintiffs' works. ¶¶ 282 (LAION-400M), 287 (LAION-5B). Taken as true, these facts state a claim that Midjourney violated Plaintiffs' exclusive rights of reproduction.

Midjourney parries, claiming Plaintiffs "do not specify which of their works were included" in the datasets Midjourney copied. Midjourney Br. at 9. But Midjourney is merely rehashing an argument that the Court has already discarded. MTD Order at 6–7. Plaintiffs have included exhibits showing dozens of examples of registered works that were included in the LAION datasets. ¶ 24, Ex. A (LAION-5B), Ex B. (LAION-400M).[4]

---

[4] Midjourney's preferred rule would contradict Rule 8, particularly in this case, where the infringement involves the scraping and copying of billions of images. *See Cybernet Ventures*, 167 F. Supp. 2d at 1120 (where plaintiffs alleged "the existence of hundreds, even thousands of infringing photographs" within the defendant's websites, "[r]equiring a statement of each and every example [of infringement] would defeat the regime established by Rule 8.").

### 5. Plaintiffs have plausibly alleged the Midjourney Models are either Statutory Copies and/or Statutory Derivative Works

Midjourney also argues that Plaintiffs' claim fails because the Midjourney Models themselves are neither infringing Statutory Copies nor infringing Statutory Derivative Works. Midjourney Br. at 11–15. As an initial note, Plaintiffs need only allege one viable theory of direct infringement for their claim to succeed—and as demonstrated above, Plaintiffs have already made out a claim of direct infringement for both Midjourney Models based on the taking and copying of registered works in the LAION-400M and LAION-5B datasets to train the respective models. ¶¶ 282 (Midjourney 400M Models); 287 (Midjourney 5B Models). It is improper to dismember each claim into each alternative theory on the pleadings. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (explaining that "a complaint need not pin plaintiff's claim for relief to a precise legal theory.").

This Court has already ruled on this issue as to Stability and determined that the direct-infringement claim was sufficiently alleged. MTD Order at 7. What is more, the Court also determined that it would not parse out theories of direct infringement "that plaintiff may assert within that cause of action against Stability until a later stage of the case." ECF No. 121. The Court should decline Midjourney's invitation to selectively dismiss theories of infringement once one viable theory has been alleged. Regardless, Midjourney's arguments fail on the merits.

### a. Plaintiffs plausibly allege that the Midjourney Models are Statutory Copies of the LAION datasets

Plaintiffs do allege that the Midjourney Model is itself an infringing Statutory Copy of Plaintiffs' works. ¶ 288. In its earlier MTD Order, this Court offered additional guidance on how Plaintiffs ought to substantiate their claim that an AI image model qualifies as a copy of Plaintiffs' images: "Plaintiffs will be required . . . to state facts in support of how [the AI model] . . . operates with respect to the Training Images. [I]f plaintiffs' compressed copies theory is based on a contention that [the AI model] contains mathematical or statistical methods that can be carried out through algorithms or instructions in order to reconstruct the Training Images . . . they need to . . . provide plausible facts in support." MTD Order at 9–10. In the FAC, Plaintiffs have assembled a spectrum of new allegations that, when "taken as true," plausibly allege that the Midjourney Model

qualifies as a Statutory Copy of its training dataset, including Plaintiffs' works. *McShannock,* 976 F.3d 886–87.

**Recent AI research suggesting that diffusion models like the Midjourney Model are compressed versions of their training datasets**. The Midjourney Model relies on an AI technique called *CLIP-guided diffusion*. ¶ 83. To elucidate the operation of a diffusion model, Plaintiffs have cited papers and commentary by five separate AI researchers. First, François Chollet said that machine learning models are "analogous to a database." ¶ 117. Second, Yaodong Yu offered a plainer statement about the capabilities of these models: "Compression is all there is." ¶ 119. Third, Nicholas Carlini said that "diffusion models are explicitly trained to reconstruct the training set" and diffusion models can "memorize and regenerate" training images. ¶ 131. Fourth, Ryan Webster "tested several diffusion models . . . and found stored copies of training images within all of them." ¶ 138. Fifth, Stephen Casper found that "Stable Diffusion has a broad-ranging ability to imitate the style of individual artists." ¶ 143. While true style is ordinarily not a basis for an infringement claim, as this Court has observed, "if plaintiffs can plausibly plead that defendants' AI products allow users to create new works by referencing [Plaintiffs'] works by name, the inferences about how and how much of [Plaintiffs'] protected content remains in Stable Diffusion or is used by the AI end-products might be stronger." MTD Order at 10. Casper's research, despite the use of the colloquial term "style," substantiates this idea that the "protected content" of many artists remains in the Models. *Id.* Though the terminology used by these five researchers varies, they all point toward an emerging consensus: that "AI image products are only getting better and better at storing copies of training images." ¶ 144.

**Sample output from the Midjourney Image Product**. Plaintiffs have taken up in earnest the Court's suggestion that "if plaintiffs can plausibly plead that defendants' AI products allow users to create new works by expressly referencing [Plaintiffs'] works by name, the inferences about how and how much of [Plaintiffs'] protected content remains in [the product] or is used by the AI end-products might be stronger." MTD Order at 10. To that end, Plaintiffs provide two sets of examples from the Midjourney Image Product.

The first set of examples uses text prompts, and shows what happens when one "expressly

referenc[es]" the names of certain Plaintiffs. ¶¶ 169–75, Ex. F. The addition of each artist name to the otherwise generic prompts "chef" and "teacher" immediately elicits an image that evokes the "protected content" of each named artist. ¶ 174 ("chef"), ¶ 175 ("teacher").

The second set of examples show the results of using Midjourney's image-prompting feature with work by seven plaintiffs. ¶¶ 188–90, Ex. I. Midjourney calls foul, claiming that Plaintiffs merely "asked [the Midjourney Image Product] to generate lookalike outputs." Midjourney Br. at 11. But Plaintiffs have relied on Midjourney's own statements that this feature only extracts "concepts" and "vibes" of input images to "influence" the "style" and "colors" of the output. ¶ 188. Or perhaps Midjourney's counsel has inadvertently said the quiet part out loud: that Midjourney's image-prompting feature is merely a copyright-laundering facility, designed to produce low-cost knockoffs of copyrighted images. Ex. I. Yes—Plaintiffs are aware. ¶ 8. Midjourney's arguments in opposition all fail.

First—Midjourney argues that Plaintiffs cannot allege infringement, because "[s]oftware code for a machine learning diffusion model is not similar to a painting or a photograph[.]" Midjourney Br. at 12–13. As Nimmer points out, a work of authorship—say, a "motion picture"—may often be fixed in copies of different forms—"such as celluloid, videotape, Blu Ray discs, and the like. There is but a single work of authorship, no matter how numerous and diverse the copies." Nimmer on Copyright § 2.03[C]. The fact that the work of authorship itself may not be outwardly "similar," Midjourney Br. at 13, to the object where it is fixed as a copy is irrelevant to any infringement analysis. *See, e.g.*, Nimmer on Copyright § 2.09[D][1] ("A work is no less a motion picture (or other audiovisual work) whether the images are embodied in a videotape, videodisc, or any other tangible form"). Courts have accordingly upheld infringement claims where movies copied books, cartoon characters copied dolls, and photographs copied dances. *See Horgan v. Macmillan, Inc.*, 789 F.2d 157, 162 (2d Cir. 1986) (collecting cases). Midjourney's use of a "learning diffusion model," Midjourney Br. at 12, to infringe Plaintiffs' works is clever and newfangled, but that does not exempt it from the reach of the Copyright Act, particularly when it directly copied Plaintiffs' work wholesale. *See* Nimmer on Copyright § 3.03[C][4] ("All of this is not to say that digital models are incapable of attracting copyright protection; but to do so, they must incorporate

the features that plaintiff's works lacked") (discussing *Meshworks, Inc. v. Toyota Motor Sales*, 528 F.3d 1258 (10th Cir. 2008)).

Second—Midjourney argues that evidence of its model's capabilities cannot raise an inference that it contains protected expression. Midjourney Br. at 13. But that is exactly what this Court suggested in its earlier MTD Order—"if plaintiffs can plausibly plead that defendants' AI products allow users to create new works by expressly referencing [Plaintiffs'] works by name, the inferences about how and how much . . . protected content remains . . . might be stronger." MTD Order at 10. Midjourney claims that these new allegations contradict those in the initial complaint. *Id.* at 13. But Plaintiffs' initial complaint had no output examples based on prompts using Plaintiffs' names and works, nor the Midjourney Image Model in particular.

Third—Midjourney argues that Plaintiffs' theory that "protected expression" is retained in the Midjourney Image Model is merely "conclusory" and no facts are alleged in support. *Id.* at 14. Not so—Plaintiffs' copious allegations and exhibits have already been enumerated.

Fourth: Midjourney argues that Plaintiffs have not alleged that "copies are viewable or otherwise accessible to Midjourney users." *Id.* at 15. On the contrary—Plaintiffs have alleged this and offered many examples. ¶¶ 189–90; Ex. I; *see also* Nimmer on Copyright § 2.09[D][1] (discussing *Worlds of Wonder, Inc. v. Vector Intercont'l Inc.*, 653 F. Supp. 135 (N.D. Ohio 1986) and commenting "[t]he audiovisual work subject to protection here, if at all, is the information on the cassette tape, which, when played on the requisite machinery, produces sights and sounds").

### b. Plaintiffs have plausibly alleged that the Midjourney Model is a Statutory Derivative Work

Plaintiffs also allege that the Midjourney Models are infringing Statutory Derivative Work based on the LAION-5B Registered Works. ¶ 288. Under the Copyright Act, a *derivative work* is "a work based upon one or more preexisting works, such as . . . an] abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101 (Plaintiffs call this a "Statutory Derivative Work." ¶ 210.) As noted above, Plaintiffs allege that the Midjourney Model is "capable of reproducing protected expression from each of the LAION-5B Registered Works that was in each case substantially similar to that registered work." ¶ 288. Furthermore, all

the allegations above that support Plaintiffs' theory that the Midjourney Model is a Statutory Copy also support this theory: the commentary from five AI researchers (¶¶ 117, 119, 131, 138. 143); and the examples of output from the Midjourney Image Product (¶¶ 169–75 & Ex. F (text-prompt examples); ¶¶ 189–190 & Ex. I (image-prompt examples)).

### B.  Plaintiffs Have Adequately Pled Violations of the DMCA. (Count 7)

The DMCA provides that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement, (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). It further prohibits the intentional removal or alteration of copyright management information ("CMI"), and the distribution of CMI or Works with CMI removed or altered, without the authority of the copyright owner. *Id.* § 1202(b).

CMI includes: "[the] title and other information identifying the work, including the information set forth on a notice of copyright;" "[the] name of, and other identifying information about, the author of a work;" and "[the] name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c); *see also Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671 (9th Cir. 2018) (CMI includes "information such as the title, the author, the copyright owner, the terms and conditions for use of the work, and other identifying information set forth in a copyright notice or conveyed in connection with the work."). Section 1202(c) has been interpreted broadly. *See Brown v. Stroud*, No. C 08-02348 JSW, 2011 WL 2600661, at *5 (N.D. Cal. June 30, 2011); *Williams v. Cavalli,* No. CV 14-06659-AB JEMX, 2015 WL 1247065, at *3 (C.D. Cal. Feb. 12, 2015*); Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 999 F. Supp. 2d 1098, 1102 (N.D. Ill. 2014).

"Knowledge or intent on the part of the defendant is required for liability under . . . § 1202(b)." *Merideth v. Chi. Trib. Co., LLC*, No. 12 C 7961, 2014 WL 87518, at *2 (N.D. Ill. Jan. 9, 2014). As long recognized by the Ninth Circuit, "direct proof of one's specific wrongful intent is rarely available" and such knowledge or intent can be inferred through circumstantial evidence. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016) (internal quotation marks omitted). "[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally"

for purposes of pleading Section 1202(b)'s mental state requirements. *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. 2022) (citations omitted).

### 1. Plaintiffs Plead All Elements of a Section 1202(b) Violation.

A claim for a CMI violation under the DMCA requires the plaintiff to plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, and (3) that the removal or alteration was done intentionally." *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286–87 (C.D. Cal. 2022). The plaintiff must also plead the requisite scienter. *Izmo, Inc. v. Roadster, Inc.*, No. 18-CV-06092-NC, 2019 WL 13210561, at *3–4 (N.D. Cal. Mar. 26, 2019). Scienter, however, need not be alleged with specificity. *Id.* at *4; *accord* Fed. R. Civ. P. 9(b) ("intent, knowledge, and other conditions of a person's mind may be alleged generally").

In its order on the previous complaint, the Court set forth specific guidance to the Plaintiffs on the DMCA claims: "Plaintiffs must, on amendment, identify the particular types of their CMI from their works that they believe were removed or altered. In addition, plaintiffs must clarify and then allege plausible facts regarding which defendants they contend did the stripping or altering in violation of the DMCA and when that occurred." MTD Order at 18. Plaintiffs have addressed each of the Court's requests for clarification and have alleged facts sufficient to make out a DMCA claim.

***Existence of CMI.*** The FAC includes allegations regarding the types of CMI that named Plaintiffs include in their Works. *See* ¶¶ 292–93; MTD Order at 19 (directing Plaintiffs to "identify the specific CMI each named plaintiff included in the images that each plaintiff contends was used to train Stable Diffusion."). Plaintiffs specifically allege that their works contained CMI, including captions, and distinctive marks.[5] The FAC includes visual examples of Plaintiffs' specific CMI in original images, and the reproduction of those images without CMI. Ex. I; ¶¶ 194–200; 292–93. Each is recognized as CMI. *See* 17 U.S.C. § 1202(c)(2), (3), (7), (8); *see also Logan*, 636 F. Supp. 3d at 1063 (finding that the creator's name, title of the work, "and a link to a Creative Commons website

---

[5] Examples include Plaintiff Brom's signature and a watermark containing the URL for his personal website, ¶¶ 53, 195, 198; a watermark containing the URL for Plaintiff Zhang's personal website, ¶¶ 53, 196, 199; Plaintiff Ortiz's signature, ¶¶ 53, 197; Plaintiff McKernan's distinctive mark, ¶ 53; and Plaintiff Andersen's signature, ¶ 53.

. . . setting forth the terms and conditions for use'" constituted CMI). Plaintiffs similarly allege that CMI was incorporated directly into their works. ¶¶ 292; 293; *see also Logan*, 636 F. Supp. 3d at 1063 ("[I]dentifying information . . . provided . . . beneath each [work]" "sufficiently close to qualify as CMI.").

Further, Plaintiffs' names or identifying handles are included in the text captions of their Works. *See* ¶¶ 15, 17, 18, 19, 21, 292.[6] The captions, which are often generated by the artists themselves, function as CMI, describing the images and identifying the artists. ¶¶ 78, 106. Plaintiffs clearly allege that this "identifying information" included on the images themselves and in the images' metadata is "conveyed in connection with the work." *See Stevens*, 899 F.3d at 671. Midjourney's assertion that Plaintiffs "fail to identify the CMI that was purportedly removed," Midjourney Br. at 15, is belied by the FAC's detailed allegations to the contrary.

***Knowing removal of CMI.*** Plaintiffs allege that Midjourney knowingly removed or altered CMI from Plaintiffs' Works. Without the authority of Plaintiffs, Midjourney directly copied the LAION-5B Works and used the Statutory Copies as training data for the Midjourney Image Product. ¶ 300. Plaintiffs also allege that Midjourney knew that CMI was being removed or altered, which made attribution particularly difficult in the Midjourney Models. *See, e.g.*, ¶¶ 78–79. Plaintiffs further allege that "[t]he works copied by Midjourney included CMI, including in the form of distinctive marks such as watermarks or signatures, and as the captions in the image-text pairs. The training process is designed to remove or alter CMI from the training images. Therefore, Midjourney intentionally removed or altered CMI from the Plaintiffs' works in violation of 17 U.S.C. § 1202(b)(1)." ¶ 300.

***Distribution of copied works***. Plaintiffs allege Midjourney distributed copies of the Works. ¶ 302 ("Midjourney also knew that the distribution of works without CMI would lead to further infringement."). As Plaintiffs allege, the point of Midjourney is to encourage the use of artist names as prompts, thereby encouraging the Midjourney Image Product's users and licenses to

---

[6] Midjourney's assertion that the captions were created by LAION, Midjourney Br. at 15, is untrue; the FAC clearly alleges that Plaintiffs themselves generally create the captions. *See* ¶¶ 72–78. At best, Midjourney merely injects a factual dispute which cannot be decided on the pleadings.

infringe on an artist' work. ¶ 302.

**_Knowingly enabling infringement._** Plaintiffs allege Midjourney knew or had reasonable grounds to know that its distribution would induce, enable, or conceal an infringement, either by itself or its users. *See* ¶¶ 78–79, 189–94, 271, 276. "[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal his own infringing conduct satisfies the DMCA's second scienter requirement." *Mango v. Buzzfeed, Inc.,* 970 F.3d 167, 172 (2d Cir. 2020); *see also id.* ("Section 1202(b)(3) also encompasses 'an infringement' that, upon distribution, 'will . . . conceal' the fact of that infringement."). This so-called scienter element is evidenced by Midjourney's knowing or having reasonable grounds to know that this removal of CMI would facilitate copyright infringement by concealing the fact that every output from the model is an infringing derivative work, synthesized from copies with CMI. ¶ 302.

Plaintiffs detail how the training process is designed to remove or alter CMI from the training images. ¶¶ 292–301. The CLIP models, including the Midjourney Models, train on the training images, including those with CMI, and learn to associate images with the text, including the CMI captions. ¶ 115. The CLIP models specifically detect and identify the presence of CMI, in the form of watermark detection scores. ¶¶ 66, 216, 241. The diffusion models learn how to deconstruct and reconstruct the images, ¶ 115, and store copies of original Work that can be extracted, ¶ 134. The Midjourney Models then create copies based on Plaintiffs' Works with CMI removed or altered. ¶¶ 194, 300–02; Ex. I. In addition, the FAC includes visual examples of Plaintiffs' Works, which include CMI, that were included in the training set, and highly similar or functionally identical images generated in Stable Diffusion XL, in which the CMI is removed. ¶¶ 188–200; Ex. I. As indicated in the FAC, the "copies generated by the AI image product could not have been generated but for copying the original image which included CMI[.]" ¶ 200.

The FAC alleges that Midjourney knew that the works contained in its training sets contained CMI. First, the LAION datasets, on which Midjourney Models are built, contain fields for the URLs of the image, the image caption, the similarity of the caption and image, and watermark detection scores for each image, which indicates the likelihood that an image possess an artist's distinctive mark or CMI. ¶ 66. To train its models, Midjourney had to download exact copies

of each of the images in the datasets, including Plaintiffs' works with the associated CMI. ¶¶ 61–62, 67–68. Because the LAION-5B dataset contains detection scores for watermarks and because CMI is ubiquitous in art, Midjourney knew that the LAION-400M and LAION-5B datasets contained copyrighted works with CMI affixed to them. ¶¶ 271–72, 276–77. Further, Midjourney could have trained its models on images free of CMI, but instead chose not to due to the higher quality of images with CMI. ¶ 295. Where, as here, a defendant distributes unlicensed artwork missing CMI, Midjourney "knew or should have known" that this conduct "could lead their customers to infringe [plaintiffs'] copyrights." *GC2 v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 842 (N.D. Ill. 2019).

### 2.    Section 1202 does not require the copy be "identical."

Midjourney argues that Plaintiffs' DMCA claim fails because Plaintiffs have not alleged that Midjourney made an otherwise identical copy of a plaintiff's work with the CMI removed or altered. Midjourney Br. at 15–16. The plain language of the DMCA makes it a violation to remove or alter CMI; it includes no requirement that the output work be original or identical to obtain relief. 17 U.S.C. § 1202(b)(1). Rather, the statute defines CMI as "information conveyed in connection with copies . . . of a work[.]" 17 U.S.C. § 1202(c).

The definition of "copy" under the DMCA includes no requirement of identicality. To be considered a copy under the DMCA, the "allegedly infringing work must be fixed in some tangible form from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *Columbia Pictures Indus., Inc. v. Galindo*, No. 20-cv-3129-MEMF (GJSx), 2022 WL 17094713, at *8 (C.D. Cal. Nov. 18, 2022) (citing 17 U.S.C. § 101). Indeed, the requirement that the DMCA requires identical copies was recently squarely rejected. *ADR Int'l Ltd. v. Inst. For Supply Mgmt., Inc.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023) (explaining for claims under the DMCA, "copies include more than just the original work.").

None of the cases upon which Stability relies which adopt an "identicality" standard for DMCA claims explain the origins of this standard—either by drawing on statutory language, legislative history, or potentially analogous interpretations of "copying" under the Copyright Act. *See*, *e.g.*, *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2015 WL 263556, at *3

1  (D. Haw. Jan. 21, 2015); *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG (EX),

2  2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020); *Dolls Kill, Inc. v. Zoetop Bus. Co.*, No.

3  222CV01463RGKMAA, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022). Many of these cases also

4  cite other cases that either never discussed the issue of "identicality" (despite being cited for that

5  proposition.[7] *See ADR Int'l*, 667 F. Supp. 3d at 427–29 (observing that "Defendants' cases do not

6  require a plaintiff to plead allegedly infringing works are identical copies").

7        Notably, as explained by the court in *ADR Int'l*, neither the statute's plain language nor its

8  legislative history—which the district court actually examined (unlike the cases on which

9  Defendants rely)—supported an "identicality" requirement. Instead, well-established standards of

10  statutory construction compelled the opposite conclusion, namely, that "copying" under the

11  DMCA should align with "copying" under the Copyright Act. *ADR Int'l*, 667 F. Supp. 3d at 427. In

12  accord with this position, courts routinely analyze whether a copy is "substantially similar" to an

13  original work or portion thereof when evaluating DMCA claims—a standard drawn directly from

14  the Copyright Act.[8] And Plaintiffs have amply alleged substantial similarity. *See* III. A.4, *supra*.

15        In any event, Midjourney misinterprets the FAC and ignores Plaintiffs' allegation that

16  Defendants incorporated their Works *in their entirety* into the Midjourney Models. *See, e.g.*, ¶¶ 1, 2,

17

---

18  [7] The extrastatutory identicality requirement likely stems from dicta from district court opinions
with little underlying analysis. *See, e.g.*, *Kirk Kara Corp.*, 2020 WL 5991503, at *6. As *ADR Int'l*

19  noted, the *Kirk Kara* court (cited by Midjourney) cited *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116,
1122 (C.D. Cal. 1999) and *Frost-Tsuji Architects*, 2015 WL 263556, at *2, "but neither [of these cases]

20  mentioned nor employed an identical copies requirement. *Id.* at 427 (S.D. Tex. 2023). The *Kirk*

21  *Kara* court similarly cited *Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018), yet, the term
appears nowhere in the decision, and in fact, the court stated that where DMCA claims had been

22  adequate, "the underlying work has been *substantially* or entirely reproduced." *Id.* at 609 (emphasis
added); *see also ADR Int'l Ltd.*, 667 F. Supp. 3d at 427 (rejecting *Kirk Kara*'s reliance on *Fischer*).

23

24  [8] *See, e.g.*, *Friedman*, 833 F.3d at 1188 (applying a "substantial similarity" standard to DMCA
analysis); *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, No. 3:20-CV-2541-K,

25  2023 WL 8721435, at *1 (N.D. Tex. Dec. 17, 2023) (denying DMCA claim on summary judgment
because "there is a material fact question on substantial similarity."); *Software Pricing Partners, LLC*

26  *v. Geisman*, No. 319CV00195RJCDCK, 2022 WL 3971292, at *5 (W.D.N.C. Aug. 31, 2022) (finding
employee liable for violating DMCA where employee "reasonably knew that such information was

27  copyrighted work and knew he was altering it by changing it enough to look like his own work while
maintaining a substantial similarity to the original work.").

28

---

4, 5, 40, 50, 55, 61–63, 67–69, 72, 85. The models then remove the CMI from these works in the

training process, ¶¶ 66, 194, 295–301, and ultimately generate output, which are reconstructed

copies and necessarily remove the CMI contained in these works, *see* Ex. I; *see also GC2 Inc.*, 391 F.

Supp. 3d at 844 (upholding jury verdict on DMCA removal claim where the defendants had used

the plaintiff's work "in its entirety").[9] Because Plaintiffs allege that their images were directly

copied with CMI, *see, e.g.*, ¶¶ 2, 52–55, 300–01, the Court need not infer whether Midjourney

removed CMI in the training process. *Fischer*, 286 F. Supp. 3d at 609 ("In those cases where claims

of removal of CMI have been held viable, the underlying work has been *substantially* or entirely

reproduced.") (emphasis added).

### 3.    Plaintiffs have sufficiently alleged double scienter.

At the motion to dismiss stage, a plaintiff need only "allege sufficient facts to support the

reasonable inference that the defendant 'knew or had a reasonable basis to know that the removal or

alteration of CMI . . . w[ould] aid infringement." *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 858

(N.D. Cal. 2023) (*quoting Harrington v. Pinterest, Inc.*, No. 5:20-CV-05290-EJD, 2022 WL 4348460,

at *5 (N.D. Cal. Sept. 19, 2022)). Further, the Ninth Circuit has consistently held that scienter for

the DMCA can be inferred through circumstantial evidence. *Friedman*, 833 F.3d at 1189. Plaintiffs'

allegations plainly support the reasonable inference that Midjourney knew that their removal of CMI

would aid infringement. Midjourney chose to train its models on the LAION-400M and LAION-5B

datasets, knowing that these datasets contained CMI, ¶¶ 271–72, 276–77, 295–96, and knowingly

removes that CMI, ¶¶ 300–01. Midjourney then released its AI Image Product to third parties, who

used Midjourney's models to generate functionally identical images without CMI. ¶ 302. Thus,

Plaintiffs plausibly allege that Midjourney "knew or should have known that their unlicensed

---

[9] The cases on which Stability relies generally involve a scenario in which copying needed to be
inferred to establish that CMI was removed from the original Works. *See, e.g.*, *Dolls Kill*, 2022 WL
16961477, at *4 ("The differences between the parties' products undercut any inference that
defendants removed or altered Plaintiffs' CMI."). *Falkner v. Gen. Motors LLC*, 393 F. Supp. 3d 927,
938 (C.D. Cal. 2018), is similarly unavailing. There, the Court found that CMI was not "removed"
when a photographer took a photograph at a strange angle and did not capture the artist's signature.
*Falkner* at 938. Here, Midjourney wholesale copied and then removed the CMI from Plaintiffs'
images.

1  distribution of artwork missing copyright management information to their customers could lead

2  their customers to infringe [plaintiffs'] copyrights." *GC2*, 391 F. Supp. 3d at 842.

3  **C.**  **Plaintiffs sufficiently allege that Midjourney violated the Lanham Act under a**
4          **theory of false endorsement. (Count 8)**

5  A claim of false endorsement requires (1) "a protectible ownership interest in the mark" and

6  (2) "that the defendant[s'] use of the mark . . . is likely to cause consumer confusion." *Adobe Sys. Inc.*

7  *v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1141 (N.D. Cal. 2015). A name can constitute a protected

8  mark. *Make Him Smile, Inc. v. Trek Bicycle Corp.*, No. 2:17-cv-07136-RGK-KS, 2018 WL 5986983, at

9  *5 (C.D. Cal. Jan. 18, 2018). Likelihood of confusion relies on the "reasonably prudent consumer."

10 *Adobe Sys. Inc.*, 153 F. Supp. 3d at 1142 (quoting *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d

11 1190, 1202–03 (9th Cir. 2012)). "Neither intent nor actual confusion are necessary to establish a

12 likelihood of confusion." *Church & Dwight Co., Inc. v. Mayer Labs., Inc.*, No. C-10-4429 EMC, 2011

13 WL 1225912, at *19 (N.D. Cal. Apr. 1, 2011) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846

14 F.2d 1175, 1178 (9th Cir. 1988)). "[O]nly a likelihood of deception is needed." 4 McCarthy on

15 Trademarks and Unfair Competition § 28.15 (5th ed. 2024).

16 ***Protectible ownership interest in the mark***. Midjourney published and promoted a document

17 called the "Midjourney Style List" that included over 4700 artist names. ¶ 262. Five plaintiffs—

18 Greg Rutkowski, Sarah Andersen, Karla Ortiz, Gerald Brom, and Julia Kaye—appear on that list,

19 and together are called the "Midjourney Named Plaintiffs." ¶ 264. These plaintiffs have a

20 protectible ownership interest in their own names, which have a "high level of recognition," ¶ 310,

21 and embody their "fame and goodwill as popular artists[.]" ¶ 314.

22 ***Likelihood of confusion***. Midjourney CEO David Holz exhorted his customers to use artist

23 names from the Midjourney Style List in their image prompts. ¶ 262. Midjourney has also published

24 user-created images that incorporate these artist names in its own official "Showcase" site. ¶ 325(b)

25 & Ex. K. Thus, a "reasonably prudent consumer in the marketplace for art products would likely be

26 confused" as to whether the Midjourney Named Plaintiffs had a connection to the Midjourney

27 Image Product. ¶¶ 308–12. Midjourney's arguments to the contrary all fail.

28 First—Midjourney argues that Plaintiffs failed to "identify anything purportedly false or

misleading about the [Midjourney] Name List" because it "accurately identif[ies] thousands of names that can be used in prompts." Midjourney Br. at 18. In so arguing, Midjourney seems to concede Plaintiffs' separate claim for trade-dress infringement. Leaving that aside the relevant falsity does not pertain to the capabilities of the Midjourney Image Product, but whether the artists on the Midjourney Style List consented to have their names commercially exploited as part of the Midjourney Image Product. They did not. ¶¶ 306–308.

Midjourney relies on *Cairns v. Franklin Mint Co.* even though that court was determining a motion for summary judgment—not a motion to dismiss—and therefore considered "ample evidence" to determine whether there was "*actual* customer confusion" which is not the standard at this stage. 107 F. Supp. 2d 1212, 1216–19, 1223 (C.D. Cal. 2000) (emphasis added). Midjourney customers *could* reasonably believe (and thereby be misled) into associating Plaintiffs' endorsement of the Midjourney Image Product because of Midjourney's inclusion of their names in the Midjourney Name List. *See, e.g.*, *Make Him Smile*, 2018 WL 5986983, at *4–5 (plaintiff sufficiently alleged that the defendant's use of "Farley" would likely cause confusion).

Second—Midjourney raises nominative fair use and First Amendment defenses. Midjourney Br. at 18–19. But "[a]n affirmative defense may not ordinarily be raised on a motion to dismiss." *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) (quoting *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019)). Midjourney makes no effort to claim that their defenses are "based on undisputed facts" or that "the basis for the[ir] argument appears on the face of the complaint and any materials the court takes judicial notice of." *Id.* (citation omitted). Regardless, the Court cannot conclude that, as a matter of law, Midjourney's use of Plaintiffs' names "makes no suggestion of . . . endorsement by [the defendant], as the third element of the nominative fair use defense requires." *Gorski v. The Gymboree Corp.*, No. 14-CV-01314-LHK, 2014 WL 3533324, at *7 (N.D. Cal. July 16, 2014).[10]

---

[10] In any event, Midjourney's use is plainly commercial and not expressive—as demonstrated by the Midjourney Showcase attached as Exhibit K, Midjourney promotes images with artist-name prompts in order to market its products. *See* 4 McCarthy on Trademarks and Unfair Competition § 28:16 (5th ed. 2024) (explaining free speech defense inapplicable to "commercial" works).

**D.**   **Plaintiffs Sufficiently Allege that Midjourney Violated the Lanham Act Under a Theory of Vicarious Trade-Dress Infringement. (Count 9)**

A claim for trade-dress infringement must allege that "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is substantial likelihood of confusion between the plaintiff's and defendant's products." *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 766 (N.D. Cal. 2021). Courts consider the third element, likelihood of confusion, to be the "most important element." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1048 (9th Cir. 1998). A plaintiff must, "at the very least," give adequate notice "by including in their complaint 'a complete recitation of the concrete elements of [their] alleged trade dress.'" *YZ Prods., Inc.*, 545 F. Supp. 3d at 767. "The claimed trade dress 'must be examined as a whole, not by its individual constituent parts.'" *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1068 (N.D. Cal. 2015) (quoting *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001)). "[T]here is no heightened pleading requirement in trade dress cases." *Chihuly, Inc. v. Kaindl*, No. C05-1801-JPD, 2006 WL 83462, at *4 (W.D. Wash. Jan. 11, 2006).

Here, Plaintiffs' trade-dress allegations plainly meet these requirements:

*No functional value*. Plaintiffs' respective trade dress "has no intrinsic functional value" because "[t]he unique combination of particular artistic elements" are "purely ornamental and aesthetic." ¶ 327 Plaintiffs' protected trade dress is not essential to the use or purpose of a product and "there remains an unlimited number of alternative artistic styles available." ¶ 327.

*Secondary meaning*. Plaintiffs' trade dress has secondary meaning because consumers of Plaintiffs' goods associate those goods with their respective trade dress. ¶ 328. For each of the Midjourney Named Plaintiffs, the FAC alleges specific recurring elements of their work that each artist "is known for" which therefore qualify as trade dress. ¶ 319. Midjourney markets the Midjourney Image Product to generate images featuring the trade dress of Plaintiffs. ¶¶ 324-25. The Midjourney Image Product relies on a CLIP model that acts as a trade-dress database. ¶ 320.

*Likelihood of confusion*. Plaintiffs allege that the CLIP model used in the Midjourney Image Product can "appropriate the distinctive look and feel" of Plaintiffs' trade dress and the Midjourney Image Product "can and frequently does generate images featuring protectable trade dress[.]" ¶¶

322–23. Worse, Midjourney promotes images with artist-name prompts in its online "Showcase." ¶ 324 & Ex. K. These allegations suffice. *See Chihuly, Inc.*, 2006 WL 83462, at *4 (denying motion to dismiss trade dress claim where plaintiff asserted claim over "glass sculptures. . . made in various series reflecting a common theme" which have their own "aesthetic" and which is "inherently distinctive and has achieved secondary meaning in the market").

Midjourney's arguments to the contrary fail:

First—Midjourney incorrectly argues that Plaintiffs fail to adequately identify their trade dress. Midjourney focuses on the shorthand textual summary in the FAC of Plaintiffs' protectible trade dress. ¶ 319. But tellingly, Midjourney entirely sidesteps its use of a CLIP model, which acts as a trade-dress database.[11] ¶¶ 83, 320. The absurd effectiveness of the Midjourney Image Product in recreating Plaintiffs' trade dress is shown via output examples using text prompts. ¶¶ 171–175, Ex. F. These trade-dress infringements perpetrated by the Midjourney Image Product are so good that Midjourney uses them to promote itself. Ex. K. Thus, Midjourney cannot claim ignorance of capitalizing on Plaintiffs' trade dress. In any event, this is not a basis to dismiss Plaintiffs' claims on the pleadings. *See Chihuly, Inc.*, 2006 WL 83462, at *4 (deferring a "more definite identification of trade dress" until discovery).[12]

Second—Midjourney falsely claims that imitation of an artistic style cannot be actionable as a trade-dress violation. Midjourney Br. 22. Plaintiffs' descriptions of their trade dress clearly fall

---

[11] A CLIP model is trained on images and captions, and guides the diffusion process toward a certain kind of result. ¶¶ 105–11. Within a CLIP model, "artist names are particularly influential" to generate images in the style of that artist. ¶ 112. This capability of the CLIP model was empirically substantiated in a research paper by Stephen Casper. ¶¶ 141–143.

[12] *Walker & Zanger, Inc. v. Paragon Industries, Inc.*, 549 F. Supp. 2d 1168 (N.D. Cal. 2007) and *Stouffer v. National Geographic Partners, LLC*, 400 F. Supp. 3d 1161 (D. Colo. 2019) are distinguishable. In *Stouffer*, the alleged trade dress was both functional and based merely on aesthetic choices without a "source-identifying role." 400 F. Supp. 3d at 1185. Here, the Midjourney Image Product's ability to output images incorporating Plaintiffs' trade dress proves that their trade dress was identifiable. ¶¶ 322–328. Further, Plaintiffs explicitly allege that their trade dress is nonfunctional whereas the plaintiff in *Stouffer* conceded the opposite. 400 F. Supp. 3d at 1185; ¶ 327. *Walker & Zanger* was a summary-judgment opinion where the plaintiffs had the benefit of discovery. 549 F. Supp. 2d at 1177 (N.D. Cal. 2007).

within what the Ninth Circuit has recognized as "[the] combination of visual elements that, taken together, may create a distinctive visual impression . . . . Trade dress is the composite tapestry of visual effects." *Clicks Billiards, Inc.*, 251 F.3d at 1259 (internal quotations omitted). 4 McCarthy on Trademarks and Unfair Competition § 8.2 (4th ed. 2016) provides further guidance, explaining that, "[t]rade dress refers to a product's combination of elements, not individual elements to be judged in a vacuum." Here, Plaintiffs' trade dress "consists of a set of recurring visual elements and artistic techniques, the particular combination of which are distinctive to each of the Midjourney Named Plaintiffs, associated with them and their work, and desirable to customers." ¶ 319. Accordingly, the combination of Plaintiffs' artistic techniques, styles, and artworks and products, when taken as a whole, create a distinctive visual impression and thus, constitute protectable trade dress. *See Chihuly, Inc.*, 2006 WL 83462, at *4 (denying motion to dismiss trade-dress claim where artist asserted claim over artworks that had their own "aesthetic," "inherently distinctive and has achieved secondary meaning in the market").

Third—Midjourney is wrong that "Plaintiffs' works are functional." Midjourney Br. at 22. Plaintiffs have already alleged pleaded that "each of Midjourney Named Plaintiffs' respective trade dress has no intrinsic functional value" ¶ 327. Beyond that, functionality is a question of fact that is inappropriate for resolution at this stage. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002) (trade-dress functionality is "an intensely factual issue"); *see also Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, No. CV 10-8394-GHK SHX, 2012 WL 3072327, at *3 (C.D. Cal. Apr. 25, 2012).[13]

Fourth—Midjourney misstates the standard. Under Ninth Circuit precedent, a Plaintiff must plead that a mark or trade dress is "*either* distinctive *or* has a secondary meaning[.] [I]f a mark or dress is inherently distinctive it need not be shown to also have a secondary meaning." *Int'l*

---

[13] *Pagliero v. Wallace China Co.*, 198 F.2d 339, 343 (9th Cir. 1952) and *Int'l Ord of Job's Daughters v. Lindeburg Co.*, 633 F.2d 912, 917 (9th Cir. 1980) are distinguishable. In *Pagliero*, patterns on dinnerware were held to be functional and non-protectable. *Pagliero*, 198 F.2d at 343. In *Int'l Ord of Job's Daughters*, a jewelry design by the defendant was held to be functional. 633 F.2d at 920. But both of those cases involved aesthetic elements that were intrinsic to the value of an underlying functional object—dinnerware and jewelry, respectively. Here, there is no such underlying functional object that Plaintiffs' aesthetic efforts have been applied to.

1   *Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) (quoting *Two Pesos, Inc.*, 505

2   U.S. 763, 769 (1993)). "A mark or dress is distinctive when it identifies the particular source of the

3   product or distinguishes it from other products." *Id.* at 824; *cf. Lisa Frank, Inc. v. Impact Int'l, Inc.*,

4   799 F. Supp. 980, 988 (D. Ariz. 1992) (including arbitrary features that do not describe the product

5   or assist in effective packaging makes trade dress distinctive). Correspondingly, a trade dress

6   acquires a secondary meaning when the public associates the mark or dress with a single producer or

7   source rather than with the product itself. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354

8   (9th Cir. 1985). And Plaintiffs allege *both*. ¶¶ 319, 328..

9       Fifth—Midjourney's last-ditch attack claiming no direct or vicarious liability provides no

10  grounds for dismissal. Midjourney Br. at 24. Midjourney's recitation of this standard conveniently

11  leaves out the "control" standard relied upon by Plaintiffs. *Louis Vuitton Malletier, S.A. v. Akanoc*

12  *Sols., Inc.*, 591 F. Supp. 2d 1098, 1113 (N.D. Cal. 2008) ("Vicarious trademark infringement requires

13  a finding that the defendant and the infringer have an apparent or actual partnership, have authority

14  to bind one another in transactions with third parties **or exercise joint ownership or control over**

15  **the infringing product**.") (internal quotation omitted, emphasis added). And Plaintiffs allege both

16  the requisite direct infringement by a third party, *see, e.g.*, ¶ 326, and "control over the infringing

17  product", *see, e.g.*, ¶ 326; *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir.

18  2007)).

19      **E.**     **Plaintiffs Adequately Allege Their California State Law Claims (Count 10).**

20          **1.**     **Plaintiffs' state law claims are not preempted.**

21       Plaintiffs' unjust enrichment claim, as pleaded, contains "the necessary qualitatively

22  different extra element [to] distinguish it" from a copyright claim and, therefore, is not preempted

23  by the Copyright Act. *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1074 (N.D.

24  Cal. 2016). Specifically, Plaintiffs allege that Midjourney's use of their names created a likelihood of

25  confusion over whether Plaintiffs endorsed Midjourney's Image Product and the affiliation that

26  Plaintiffs may have had with Midjourney. ¶¶ 307, 309. Therefore, it is Midjourney's use of

27  Plaintiffs' names and reputations as well-known artists that underlies Plaintiffs' unjust enrichment

28  claim. Despite Midjourney's contention that this claim "is just a repackaged copyright claim,"

Midjourney's use Plaintiffs' names does not sound in copyright at all. ¶¶ 259–64, 278. *See, e.g.*, *Eksouzian v. Albanese*, No. CV 13-728 PSG (MANx), 2013 WL 12139828, at *3 (C.D. Cal. July 12, 2013) (finding no preemption where plaintiffs "allege extra elements beyond the basic elements of copyright," like "trade dress[] and confusingly similar domain names"); *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHx), 2008 WL 4217837, at *9 (C.D. Cal. July 16, 2008) ("To the extent its unjust enrichment theory of relief is based on nonpreempted claims—i.e., right of publicity, trademark—the unjust enrichment claim is not preempted by the Copyright Act.").

## 2. Plaintiffs state a claim for unjust enrichment.

Pleading unjust enrichment as a standalone claim requires that plaintiff "show that the defendant received and unjustly retained a benefit at the plaintiff's expense.'" *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liability Litig.*, 497 F. Supp. 3d 552, 641 (N.D. Cal. 2020) (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). A benefit is broadly defined as "any type of advantage." *CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS (AJWx), 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25, 2013). A plaintiff may plead unjust enrichment even if such a claim is "duplicative of or superfluous" to other claims. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2016).

Product without Plaintiffs' consent. ¶¶ 260–64, 312. Specifically, thanks to Plaintiffs' renown and notoriety, Midjourney was able to unjustly enrich itself by promoting the Image Product's ability to mimic Plaintiffs' work. ¶¶ 261–62, 310. To make matters worse, Midjourney's use of Plaintiffs' names falsely suggested that Plaintiffs have endorsed and/or are affiliated with Midjourney's Image Product—the outputs of which they compete with in the marketplace for art— thereby creating confusion amongst reasonably prudent consumers. ¶¶ 308–12, 14.

## IV.    CONCLUSION

For the foregoing reasons, Midjourney's motion to dismiss should be denied.

1  Dated: March 21, 2024                    By:      /s/ Joseph R. Saveri
                                                    Joseph R. Saveri
2

3                                           Joseph R. Saveri (State Bar No. 130064)
                                            Cadio Zirpoli (State Bar No. 179108)
4                                           Christopher K.L. Young (State Bar No. 318371)
                                            David W. Lerch (State Bar No. 229411)
5                                           Elissa A. Buchanan (State Bar No. 249996)
                                            Kathleen J. McMahon (State Bar No. 340007)
6                                           **JOSEPH SAVERI LAW FIRM, LLP**

7                                           601 California Street, Suite 1000
                                            San Francisco, California 94108
8                                           Telephone:     (415) 500-6800
                                            Facsimile:     (415) 395-9940
9                                           Email:         jsaveri@saverilawfirm.com
                                                           czirpoli@saverilawfirm.com
10                                                          cyoung@saverilawfirm.com
                                                           dlerch@saverilawfirm.com
11                                                          eabuchanan@saverilawfirm.com
                                                           kmcmahon@saverilawfirm.com
12

13                                          Matthew Butterick (State Bar No. 250953)
                                            1920 Hillhurst Avenue, #406
14                                          Los Angeles, CA 90027
                                            Telephone:     (323) 968-2632
15                                          Facsimile:     (415) 395-9940
                                            Email:         mb@buttericklaw.com
16

17                                          Brian D. Clark (*pro hac vice*)
18                                          Laura M. Matson (*pro hac vice*)
                                            Arielle S. Wagner (*pro hac vice*)
19                                          Eura Chang (*pro hac vice*)
                                            **LOCKRIDGE GRINDAL NAUEN PLLP**
20                                          100 Washington Avenue South, Suite 2200
21                                          Minneapolis, MN 55401
                                            Telephone:     (612)339-6900
22                                          Facsimile:     (612)339-0981
                                            Email:  bdclark@locklaw.com
23                                                     lmmatson@locklaw.com
                                                       aswagner@locklaw.com
24                                                     echang@locklaw.com
25
                                            *Counsel for Individual and Representative*
26                                          *Plaintiffs and the Proposed Class*
27

28