1   Joseph R. Saveri (State Bar No. 130064)
    Cadio Zirpoli (State Bar No. 179108)
2   Christopher K.L. Young (State Bar No. 318371)
    David W. Lerch (State Bar No. 229411)
3   Elissa A. Buchanan (State Bar No. 249996)
    Kathleen J. McMahon (State Bar No. 340007)
4   **JOSEPH SAVERI LAW FIRM, LLP**
    601 California Street, Suite 1000
5   San Francisco, CA 94108
    Telephone:    (415) 500-6800
6   Facsimile:    (415) 395-9940
    Email:        jsaveri@saverilawfirm.com
7                 czirpoli@saverilawfirm.com
                  cyoung@saverilawfirm.com
8                 dlerch@saverilawfirm.com
                  eabuchanan@saverilawfirm.com
9                 kmcmahon@saverilawfirm.com

10  Matthew Butterick (State Bar No. 250953)
    1920 Hillhurst Avenue, #406
11  Los Angeles, CA 90027
    Telephone:    (323) 968-2632
12  Facsimile:    (415) 395-9940
    Email:        mb@buttaericklaw.com

13
    *Counsel for Individual and Representative*
14  *Plaintiffs and the Proposed Class*

15  [Additional Counsel Listed on Signature Page]

16              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
17               **SAN FRANCISCO DIVISION**

18  SARAH ANDERSEN, et al.,                  |  Case No. 3:23-cv-00201-WHO

19        Individual and Representative Plaintiffs,  |  **PLAINTIFFS' OPPOSITION TO**
                                              |  **DEFENDANT DEVIANTART, INC.'S**
20        v.                                  |  **MOTION TO DISMISS PLAINTIFFS'**
                                              |  **FIRST AMENDED COMPLAINT AND**
21  STABILITY AI LTD., et al.,                |  **MEMORANDUM OF POINTS AND**
                                              |  **AUTHORITIES**
22                        Defendants.         |
                                              |  Date:     May 8, 2024
23                                            |  Time:     2:00 pm
                                              |  Location: Videoconference
24                                            |  Before:   Hon. William H. Orrick
25
26
27
28

1

<h1 style="text-align: center;"><u>TABLE OF CONTENTS</u></h1>

2   I.      INTRODUCTION ........................................................................................1

3   II.     FACTUAL BACKGROUND .......................................................................1

4   III.    ARGUMENT ...............................................................................................2

5          A.    Plaintiffs Have Sufficiently Alleged Direct Copyright Infringement.
6                 (Count 15) ........................................................................................3

7                 1.     DeviantArt is liable for direct copyright infringement because it copied Stable Diffusion 1.4, and because DreamUp is a Statutory Derivative Work based on LAION-5B, or a Statutory Copy of
8                         LAION-5B. ...........................................................................4

9                 2.     Plaintiffs have plausibly alleged that Stable Diffusion 1.4 is a Statutory Copy of LAION-5B—including Plaintiffs' Works. ........6

10               3.     Plaintiffs have plausibly alleged that Stable Diffusion 1.4 is a
11                         Statutory Derivative Work that infringes LAION-5B—including
12                           Plaintiffs' Works. ................................................................8

13                 4.     The Court's prior MTD Order does not foreclose Plaintiffs' direct-infringement theory .........................................................8

14               5.     DeviantArt attempts to distract the Court from Plaintiffs' most basic theory of infringement: that DeviantArt copied Stable
15                         Diffusion 1.4. .......................................................................9

16                 6.     Questions of whether DreamUp is a Statutory Copy or Statutory Derivative Work are premature at this stage .................................10

17                 7.     DeviantArt's arguments that DreamUp is not a Statutory Copy of
18                           LAION-5B all fail. .............................................................10

19                   8.     DeviantArt's arguments that DreamUp cannot be a Statutory Derivative Work all fail as a matter of law. ....................................12

20                 9.     DeviantArt's fair-use argument is an affirmative defense and
21                           therefore inappropriate to resolve on a motion to dismiss. ............13

22          B.    Plaintiffs Have Plausibly Alleged a Claim for Breach of Contract.
23                 (Count 16) ......................................................................................14

24                   1.     Plaintiffs do not merely restate their earlier breach claim, but rather sharpen their factual allegations, per this Court's MTD Order. .....15

25                 2.     Plaintiffs have plausibly alleged a breach of the implied covenant of
26                         good faith and fair dealing. ..............................................................15

                 3.     DeviantArt's arguments opposing Plaintiffs' implied covenant
27                         claim all fail. ...................................................................17

28          C.    Plaintiffs Have Plausibly Alleged a Claim for Unjust Enrichment.
                 (Count 17) ......................................................................................18

PLAINTIFFS' OPPOSITION TO DEVIANTART'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1       1.      Plaintiffs' claims are based on use, which is not preempted. .........18

2       2.      Plaintiffs' unjust enrichment claim may proceed as a stand-alone
                cause of action. .............................................................. 20

3       3.      Plaintiffs sufficiently alleged facts that DeviantArt unjustly retained
4               a benefit at Plaintiffs' expense. ....................................... 20

5    D.     The Court Should Not Dismiss the Additional Named Plaintiffs. ............21

6  IV.     CONCLUSION .................................................................. 22

# TABLE OF AUTHORITIES

**Federal Cases**

*A.L. v. Pleasanton Unified Sch. Dist.*, No. 22-cv-03036-CRB, 2023 WL 5209718
(N.D. Cal. Aug. 14, 2023) ................................................................................................ 16

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ............................... 18, 19

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ........................................ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................2

*Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2021 WL 4503137 (N.D.
Cal. Oct. 1, 2021) ............................................................................................................ 22

*Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244 (N.D. Cal.
2014) ................................................................................................................................ 14

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........................................... 13

*Carrasco v. HSBC Bank USA, N.A.*, No. C-11-cv-2711 EMC, 2012 WL 685523
(N.D. Cal. Mar. 2, 2012) ................................................................................................. 15

*Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) ................................... 17

*Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178 (N.D. Cal. 2018) .......................... 11

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS, 2013 WL
1249021 (C.D. Cal. Mar. 25, 2013) ............................................................................... 21

*Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867 (N.D. Cal.
May 8, 2013) .................................................................................................................... 17

*DeLeon v. Wells Fargo Bank, N.A.*, No. 5:10-cv-01390-LHK (N.D. Cal. June 9,
2010) (ECF No. 18) ......................................................................................................... 18

*Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837 (N.D. Cal. 2023) ...................................... 18

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ........................................................ 21

*Elec. Const. Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619 (9th Cir. 1985) ...............3

*Ferrero S.p.A. v. Imex Leader, Inc.*, No. 8-17-cv-02152-DOC-KESx, 2018 WL
11346538 (C.D. Cal. May 8, 2018) ................................................................................ 13

*Gallagher v. Chipotle Mexican Grill, Inc.* No. 15-cv-03952, 2016 U.S. Dist. LEXIS
45501 (N.D. Cal. Apr. 4, 2016) ................................................................................ 21, 22

*Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021) ............................................. 13

PLAINTIFFS' OPPOSITION TO DEVIANTART'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Graham v. Cent. Garden & Pet Co.*, No. 22-cv-06507-JSC, 2023 WL 2744931 (N.D. Cal. Mar. 30, 2023) .................................................................................................... 11

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317 (2000) .................................................... 16

*Horgan v. Macmillan, Inc.*, 789 F.2d 157 (2d Cir. 1986) ........................................ 12

*In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133 (N.D. Cal. 2009) .............. 3

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................................................. 20

*In re Lyft Inc. Secs. Litig.*, 484 F. Supp. 3d 758 (N.D. Cal. 2020) .......................... 17

*ITC Textile Ltd. v. Wal-Mart Stores In*c., No. CV 12-2650-JFW, 2015 WL 12712311 (C.D. Cal. Dec. 16, 2015) ..................................................................................... 8

*Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .................................................................................................... 13

*King v. Facebook, Inc.* 19-cv-01987-WHO, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) .................................................................................................................. 17

*Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522 (9th Cir. 2008) ...................... 13

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ......................................................... 3

*Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017) .................................. 18, 19

*McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881 (9th Cir. 2020) ............... 3, 6

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052 (N.D. Cal. 2016) ...... 19

*Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022) .......... 14

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ....................................................... 3

*Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021) .......................... 20

*Pac. Recovery Sol*s. *v. United Behv. Health*, 508 F. Supp. 3d 606 (N.D. Cal. 2020) ....................................................................... 9

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) ....................................... 19

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal.App.4th 1026 (1992) ...... 16

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148 (9th Cir. 2012) ............... 3

*Rejoice! Coffee Co. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-06789-EMC, 2021 WL 5879118 (N.D. Cal. Dec. 9, 2021) ................................................................... 20

*Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111 (N.D. Cal. 2009) ................................. 16, 21

*Russell v. Walmart, Inc.*, No. 22-cv-02813-JST, 2023 WL 4341460 (N.D. Cal. July 5, 2023) ........................................................................................................................... 20, 21

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ................................................. 3

*Sega Enter. Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992) ..................................... 13

*Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ................................................ 4

*Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000) ...................... 13

*Thomson Reuters Enter. Centre GmbH v. Ross Intel. Inc.*, No. 20-cv-613-SB, 2023 WL 6210901 (D. Del. Sept. 23, 2023) ...................................................................... 14

*Tufeld Corp. v. Beverly Hills Gateway, L.P.*, 86 Cal. App. 5th 12 (2022) ........................ 21

*UAB "Planner 5D" v. Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ......................................................................................... 3

*Welgus v. TriNet Group, Inc.* No. 15-cv-03625, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ............................. 9

*Worlds of Wonder, Inc. v. Vector Intercont'l Inc.*, 653 F. Supp. 135 (N.D. Ohio 1986) ..... 12

*Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266 (N.D. Cal. 2019) ........................ 17

**Statutes**

17 U.S.C. § 101 .................................................................................................... *passim*

17 U.S.C. § 102 ........................................................................................................ 18

17 U.S.C. § 103 ........................................................................................................ 18

17 U.S.C. § 106 ......................................................................................................... 3, 4

17 U.S.C. § 301 ........................................................................................................ 18

**Other Authorities**

Fed. R. Civ. P 8(a) ..................................................................................................... 2

Fed. R. Civ. P 12 ..................................................................................................... 2, 3, 9

Fed. R. Civ. P 15 ....................................................................................................... 22

Nimmer on Copyright § 2.03[C] ............................................................................... 12

1

Nimmer on Copyright § 2.09[D][1]...............................................................................................12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEVIANTART'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

Plaintiffs' First Amended Complaint (ECF No. 129, "FAC")—filed in response to this Court's order following the previous motions to dismiss (ECF No. 117, "MTD Order")—sufficiently alleges three claims against defendant DeviantArt, Inc. ("DeviantArt"): direct copyright infringement (Count 15), breach of contract (Count 16), and unjust enrichment (Count 17). For the reasons below, DeviantArt's Motion to Dismiss (ECF No. 163, "DeviantArt Br.") should be denied, including its request to dismiss the named Plaintiffs added in the FAC.

## II.    FACTUAL BACKGROUND

DeviantArt is a website for artists. ¶ 380.[1] In November 2022, DeviantArt released a commercial AI image product called DreamUp. ¶ 382. Like other AI image products, DreamUp generates images in response to user prompts. ¶ 4. User prompts are often text, but can also be images. *See generally* ¶¶ 151-200. DreamUp is only available to paying customers of DeviantArt—DeviantArt offers subscriptions to its members called "Core Plans" which allow Core Plan subscribers to use DreamUp for a certain number of text prompts for a fee, including the ability to purchase additional text prompts. *See* ¶ 382.

The DreamUp app incorporates a copy of Stable Diffusion—specifically Stable Diffusion 1.4—as its image-generating model. ¶¶ 387–388. In the FAC, this copy of the Stable Diffusion 1.4 model inside DreamUp is called the "DreamUp–CompVis Model," because it was trained by the CompVis research group at Ludwig Maximilian University in Munich. ¶ 389; *see also* ¶ 388. According to a web page on GitHub maintained by CompVis, Stable Diffusion 1.4 was "made possible thanks to a collaboration with Stability AI and Runway," two of DeviantArt's co-defendants in this case. ¶ 389.

Stable Diffusion 1.4 was trained on a dataset of 5.85 billion training images called LAION-5B. ¶¶ 65, 390. All Plaintiffs had copyrighted works in LAION-5B. ¶ 24 & Ex. A. Training a model with the LAION-5B dataset requires downloading from the internet each of the images

---

[1] "¶ ___" and "Ex. ___" citations are to the First Amended Complaint, Case No. 23-cv-00201 (N.D. Cal. Jan. 13, 2023), ECF No. 129, unless otherwise indicated.

referenced in the dataset. ¶¶ 67-68, 72. The LAION-5B dataset only contains URLs and metadata for training images, but not the images themselves. ¶¶ 67, 221. Therefore, when the CompVis research group trained Stable Diffusion 1.4, it necessarily downloaded copies of billions of copyrighted images without permission—including registered works belonging to Plaintiffs. ¶¶ 391–92. DeviantArt itself is the source of millions of images in LAION-5B. ¶ 384. Every user of LAION-5B has necessarily copied these images by downloading them from DeviantArt. ¶ 384. DeviantArt was aware of these facts. ¶ 385.

Stable Diffusion 1.4 can reproduce substantially similar protected expression from each of its training images. ¶ 393. DeviantArt also encouraged its DreamUp customers to use artist names in prompts. ¶ 398. The training procedure for Stable Diffusion 1.4 was very similar to that of Stable Diffusion 1.5, which is another AI diffusion model trained by co-defendant Runway. ¶ 393. Stable Diffusion 1.4 is capable of emitting stored copies of its training images. *See id.*; *see also* ¶ 132-33. At the time it chose to use Stable Diffusion 1.4, DeviantArt was aware that Stable Diffusion 1.4 had been trained on LAION-5B and that it could regenerate images in its training set. ¶¶ 397–99. Stable Diffusion 1.4—and by extension the DreamUp–CompVis Model—is an infringing Statutory Copy of LAION-5B and/or an infringing Statutory Derivative Work based on LAION-5B. ¶¶ 394, 412–13.

DeviantArt's terms of service ("TOS") limits how users can use content hosted on DeviantArt's platform and includes prohibitions on commercial use. ¶ 418; Exs. L & M. According to the DeviantArt TOS, DeviantArt itself only had a license to user-created works "[f]or the sole purpose of enabling [DeviantArt] to make your Content available through the Service." ¶ 420. DeviantArt exceeded the scope of its license when it incorporated the Stable Diffusion 1.4 model into DreamUp. ¶ 422.

## III.   ARGUMENT

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8(a) requires only a "short and plain statement" of facts supporting a claim. Fed. R. Civ. P. 8(a); *see Twombly*, 550 U.S. at 555. The statements alleged in the complaint must provide "the defendant[s] fair notice of

1    what . . . the claim is and the grounds upon which it rests." *In re Flash Memory Antitrust Litig.*,

2    643 F. Supp. 2d 1133, 1141 (N.D. Cal. 2009) (citations omitted). In weighing a motion to dismiss

3    under Rule 12, "[a]ll allegations of material fact are taken as true and construed in the light most

4    favorable to the nonmoving party." *McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881, 886-

5    87 (9th Cir. 2020). "Dismissal is proper only where there is no cognizable legal theory or an

6    absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d

7    729, 732 (9th Cir. 2001).

8          Still, if a court grants a motion to dismiss, it should also grant leave to amend the

9    complaint, unless it "determines that the pleading could not possibly be cured by the allegation of

10   other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Furthermore, "court[s] should

11   be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability

12   is novel . . . since it is important that new legal theories be explored and assayed in the light of

13   actual facts." *Elec. Const. Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985)

14   (citations omitted).

15       **A.    Plaintiffs Have Sufficiently Alleged Direct Copyright Infringement.
            (Count 15)**

16

17         A copyright owner holds the exclusive rights to reproduce, distribute, publicly display,

18   perform, and create derivative works of their copyrighted work. 17 U.S.C. § 106. "To establish a

19   prima facie case of copyright infringement," a plaintiff must show "ownership of a valid

20   copyright" and "copying of constituent elements of the work that are original." *Range Rd. Music,*

21   *Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1152 (9th Cir. 2012); *see also UAB "Planner 5D" v.*

22   *Facebook, Inc.*, No. 19-cv-03132-WHO, 2019 WL 6219223, at *5 (N.D. Cal. Nov. 21, 2019). In this

23   context, the word "copying" means "the infringing of any of the copyright owner's exclusive

24   rights[.]" *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085, n.3 (9th Cir. 1989); 17 U.S.C. § 106.

25         Plaintiffs meet both requirements of a direct infringement claim because they allege (1)

26

27

28

1   ownership of a valid copyright registration;[2] and (2) DeviantArt violated Plaintiffs' exclusive

2   rights by creating DreamUp, which unlawfully incorporates Plaintiffs' works. Indeed, in its MTD

3   Order, the Court acknowledged that one of Plaintiffs' theories of direct infringement against

4   DeviantArt arises from "creating . . . [DreamUp], which is itself an infringing derivative work."

5   MTD Order at 8. However, the Court asked Plaintiffs "to *clarify* their theory with respect to

6   compressed copies of Training Images and to state facts in support of how Stable Diffusion—a

7   program that is open source, at least in part—operates with respect to the Training Images." *Id.*

8   at 9 (emphasis in original). As to DeviantArt in particular, the Court required Plaintiffs to allege

9   "more facts that plausibly show how DeviantArt is liable for direct copyright infringement." *Id.* at

10  10. As explained below, Plaintiffs have done as the Court ordered by adding extensive allegations

11  to the FAC that, taken together, sufficiently allege copyright infringement by DeviantArt.

12          **1.      DeviantArt is liable for direct copyright infringement because it copied
                       Stable Diffusion 1.4, and because DreamUp is a Statutory Derivative
13                     Work based on LAION-5B, or a Statutory Copy of LAION-5B.**

14          In the FAC, "Statutory Copy" denotes the definition of copies in 17 U.S.C. § 101 of the

15  U.S. Copyright Act: "material objects ... in which a work is fixed by any method ... and from

16  which the work can be perceived, reproduced, or otherwise communicated, either directly or with

17  the aid of a machine or device." ¶ 209. In the FAC, "Statutory Derivative Work" denotes the

18  definition of derivative work in 17 U.S.C. § 101 of the U.S. Copyright Act: "a work based upon

19  one or more preexisting works, such as . . . [an] abridgment, condensation, or any other form in

20  which a work may be recast, transformed, or adapted." ¶ 210. Plaintiffs hold the exclusive rights

21  to their works under 17 U.S.C. § 106, including the rights to make Statutory Copies, prepare

22  Statutory Derivative Works, and distribute both Statutory Copies and Statutory Derivative

23  Works. FAC ¶ 211; *see also Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1069 n.10 (9th Cir. 2020).

24          Here, DeviantArt released a commercial AI image product called DreamUp, which

25

26  ─────────────────────────

27  [2] The FAC amply alleges Plaintiffs' ownership of registered copyrights, and DeviantArt does not
    argue otherwise. *See* Ex. C (showing 29 copyright registrations owned by Plaintiffs) & Ex. A

28  (showing 121 images in LAION-5B owned by Plaintiffs, 84 of which are covered by registrations
    in Ex. C). Accordingly, DeviantArt has conceded this element of Plaintiffs' claim.

1  incorporates a copy of Stable Diffusion—specifically Stable Diffusion 1.4—as its image-

2  generating model. ¶¶ 382, 387–88. Stable Diffusion 1.4 was trained on the LAION-5B dataset,

3  including all of Plaintiffs' copyrighted works that are included in LAION-5B. ¶¶ 24, 65, 390, Ex.

4  A. (The direct-infringement cause of action against DeviantArt, however, is explicitly limited to

5  those Plaintiffs who had *registered* works in LAION-5B, known as the LAION-5B Registered

6  Plaintiffs. ¶ 415.) Stable Diffusion 1.4 can reproduce substantially similar protected expression

7  from each of its training images. ¶ 393. As a result, Stable Diffusion 1.4 is both a Statutory Copy

8  and a Statutory Derivative Work of the Plaintiffs' works in LAION-5B. ¶¶ 394, 412–14.

9       At the time it chose to use Stable Diffusion 1.4, DeviantArt was aware that Stable

10  Diffusion 1.4 had been trained on LAION-5B and that it could regenerate images in its training

11  set. ¶¶ 397–99. DeviantArt itself is the source of millions of images in LAION-5B. ¶ 384.

12  DeviantArt was aware of this fact too. FAC ¶ 385. After the release of DreamUp, DeviantArt

13  CTO Chris Nell appeared on the public LAION Discord server and posted a message stating, "I

14  think our goals at [DeviantArt] are very aligned with LAION's . . . and want to collaborate as

15  much as possible." ¶ 397.

16       Through these factual allegations, Plaintiffs assert three distinct factual theories of

17  infringement by DeviantArt:

18       First—DeviantArt infringed Plaintiffs' works at the moment it copied Stable

19  Diffusion 1.4, FAC ¶¶ 387–388, because Stable Diffusion 1.4 is itself a Statutory Copy and

20  Statutory Derivative Work that infringes Plaintiffs' works. ¶¶ 394, 412–14. To be clear—**this**

21  **theory of infringement does not depend on DreamUp at all**—it only matters that Stable

22  Diffusion 1.4 infringes on Plaintiffs' works.

23       Second—once DeviantArt put that copy of Stable Diffusion 1.4 inside DreamUp,

24  DreamUp became at minimum an infringing Statutory Derivative Work with respect to Plaintiffs'

25  copyrighted works, because it is "a work based upon one or more preexisting works," namely

26  Stable Diffusion 1.4, which itself infringes Plaintiffs' copyrighted works. ¶¶ 412–15.

27       Third—DreamUp may also turn out to be a Statutory Copy of Plaintiffs' copyrighted

28  works, if discovery reveals that Plaintiffs' works "can be . . . reproduced . . . with the aid" of

DreamUp, and the Stable Diffusion 1.4 model that powers it. ¶ 415. This is a reasonable inference based on examples elsewhere in the FAC showing prompting results for other versions of Stable Diffusion. *See, e.g.*, ¶ 350 (Stable Diffusion 1.5 as infringing work); Ex. E (text-prompt examples from Stable Diffusion 1.5); Ex. H (image-prompt examples from Stable Diffusion 1.5); ¶ 223 (Stable Diffusion XL 1.0 as infringing work); Ex. D (text-prompt examples from Stable Diffusion XL 1.0); Ex. G (image-prompt examples from Stable Diffusion XL 1.0).

> **2.      Plaintiffs have plausibly alleged that Stable Diffusion 1.4 is a Statutory Copy of LAION-5B—including Plaintiffs' Works.**

Plaintiffs allege that Stable Diffusion 1.4 is a Statutory Copy of LAION-5B. ¶ 412. As noted above, the Court's MTD Order required Plaintiffs to:

> *clarify* their theory with respect to compressed copies of Training Images and to state facts in support of how Stable Diffusion—a program that is open source, at least in part—operates with respect to the Training Images. . . . [I]f plaintiffs' compressed copies theory is based on a contention that Stable Diffusion contains mathematical or statistical methods that can be carried out through algorithms or instructions in order to reconstruct the Training Images … they need to … provide plausible facts in support.

MTD Order at 9–10 (emphasis in original).

The FAC meets the Court's challenge by assembling a spectrum of new allegations that, when "taken as true," plausibly allege that Stable Diffusion qualifies as a Statutory Copy of LAION-5B, including Plaintiffs' works. *McShannock*, 976 F.3d at 886-87.

**Emad Mostaque and Stability admit that Stable Diffusion is a compressed copy of its training dataset**. Mostaque is the CEO of Stability. ¶¶ 27–28. Stability provided support for the training of Stable Diffusion 1.4. ¶ 389. Stable Diffusion 1.4 is the version of Stable Diffusion used by DeviantArt. ¶¶ 387–88. In the FAC, Plaintiffs allege seven separate examples where Mostaque or Stability "characterized Stable Diffusion as a compressed copy of its training images." ¶¶ 120; *see also* ¶¶ 121–27. One example comes from Stability's own website, on the page announcing the release of Stable Diffusion 1.4: the release "is the culmination of many hours of collective effort to create a single file that compresses the visual information of humanity into a few gigabytes." ¶ 123. Taken as true, these allegations substantiate that Stable Diffusion 1.4 is a Statutory Copy of

1   LAION-5B. *See* Nimmer on Copyright § 2.03[C] (explaining that works of authorship like, for

2   example, a "motion picture" may be fixed in different media "such as celluloid, videotape, Blu

3   Ray discs, and the like," but "[t]here is but a single work of authorship, no matter how numerous

4   and diverse the copies.").

5       Furthermore, this Court asked Plaintiffs to "provide plausible facts in support" that

6   Stable Diffusion "through algorithms or instructions" can "reconstruct the Training Images."

7   MTD Order at 9. In an interview in September 2022, Mostaque admitted exactly that: he said

8   that Stable Diffusion can "recreate any of" the "100,000 gigabytes of images" used to train it.

9   ¶ 124.

10      **Recent AI research suggests that image-diffusion models like Stable Diffusion**

11  **compress and store protected expression from their training datasets**. In its MTD Order, the

12  Court said that "[i]f plaintiffs contend Stable Diffusion contains 'compressed copies' of the

13  Training Images, they need to define 'compressed copies' and explain plausible facts in support."

14  MTD Order at 9. On this point, Plaintiffs have alleged papers and commentary by five separate

15  AI researchers that support their allegations. First, François Chollet said machine-learning

16  models are "analogous to a database" that "takes data points" (for instance, Training Images)

17  and "turns them into a query-able structure that enables retrieval and interpolation" of those data

18  points. ¶ 117. Second, Yaodong Yu states that "large image generation models . . . are unlikely to

19  do anything beyond . . . data compression . . . and interpolation[.]" ¶ 119.  The paper concludes

20  with an even plainer statement of these models' capabilities: "Compression is all there is." *Id*.

21  Third, Nicholas Carlini—who specifically tested Stable Diffusion 1.4—said that "diffusion

22  models are explicitly trained to reconstruct the training set" and diffusion models "memorize and

23  regenerate" images used for training. FAC ¶¶ 131, 139. Fourth, Ryan Webster "tested several

24  diffusion models . . . and found stored copies of training images within all of them." ¶ 138. Fifth,

25  Stephen Casper found that "Stable Diffusion has a broad-ranging ability to imitate the style of

26  individual artists." ¶ 143. Though the terminology used by these five researchers varies—as do

27  their methodologies and specific conclusions—they all point toward an emerging consensus on a

28  key idea: that "AI image products are only getting better and better at storing copies of training

images." ¶ 144.

Taken together, these party admissions (from Stability and Mostaque) and research citations (from five AI scientists) meet the requirements of the MTD Order and plausibly allege that Stable Diffusion 1.4 is an infringing Statutory Copy of the LAION-5B dataset because it is "capable of reproducing protected expression from each of the LAION-5B Registered Works that was in each case substantially similar to that registered work[.]" ¶ 393.

> **3.    Plaintiffs have plausibly alleged that Stable Diffusion 1.4 is a Statutory Derivative Work that infringes LAION-5B—including Plaintiffs' Works.**

In addition to their Statutory Copy claim, Plaintiffs also allege that Stable Diffusion 1.4 is an infringing Statutory Derivative Work that infringes the LAION-5B Registered Works. ¶ 413. As noted above, Plaintiffs allege that Stable Diffusion 1.4 is "capable of reproducing protected expression from each of the LAION-5B Registered Works that was in each case substantially similar to that registered work." ¶ 393. Plaintiffs allege that because Stable Diffusion 1.4 represents a transformation of the LAION-5B registered works into an alternative form, the Stable Diffusion 1.4 is itself an infringing Statutory Derivative Work of the LAION-5B registered works, including Plaintiffs' works. ¶ 394. In this way, Plaintiffs have alleged that the model is "a work based upon one or more preexisting works . . . in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. In other words, a Derivative Work as defined by the Copyright Act.

Furthermore, all the allegations above that support Plaintiffs' theory that Stable Diffusion 1.4 is a Statutory Copy also support Plaintiffs' theory that Stable Diffusion 1.4 is a Statutory Derivative Work: the admissions by Mostaque and Stability that Stable Diffusion is a compressed version of its training data, ¶¶ 120–27, and the commentary from five separate AI researchers, ¶¶ 117, 119, 131, 138, 143.

> **4.    The Court's prior MTD Order does not foreclose Plaintiffs' direct-infringement theory.**

Copyright infringement is a strict-liability offense—once a work has been copied without authority, all those who use it down the chain are liable. *ITC Textile Ltd. v. Wal-Mart Stores In*c.,

No. CV 12-2650-JFW (AJWx), 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015). Here, contrary to DeviantArt's argument, Plaintiffs have done more than "claim that DeviantArt is a copyright infringer because it implemented an AI model that it had no role in creating, developing, or training." DeviantArt Br. at 6. In the FAC, Plaintiffs plausibly allege that DeviantArt made a copy of Stable Diffusion 1.4, and then incorporated this model into its DreamUp app. ¶¶ 412–15. Although Plaintiffs do not allege that DeviantArt created LAION-5B or trained Stable Diffusion 1.4, Plaintiffs have certainly alleged that DeviantArt knew that LAION-5B contained references to Plaintiffs' images and that LAION-5B was used to train Stable Diffusion 1.4—and then copied it anyway. ¶¶ 385, 387–88.

DeviantArt's cases are inapposite. *Welgus v. TriNet Group, Inc.* involved a situation where plaintiffs re-alleged the "exact same contentions" that were deemed insufficient in the prior complaint. No. 15-cv-03625, 2017 WL 6466264, at *7 (N.D. Cal. Dec. 18, 2017). Similarly, in *Pacific Recovery Solution*s v. *United Behavioral Health*, the court explicitly rejected plaintiffs' theories, but granted plaintiffs leave to amend so long as they did not contradict allegations in prior iterations of the complaint. 508 F. Supp. 3d 606, 622 (N.D. Cal. 2020). In contrast, here the Court specifically contemplated that Plaintiffs could replead this claim with additional factual allegations. *See* MTD Order at 10 (Plaintiffs' claims might be stronger "[d]epending on the facts alleged on amendment"). Plaintiffs have alleged new facts, without contradicting past allegations, and thereby strengthened their claims.

Curiously, DeviantArt also argues that Plaintiffs' theory cannot be correct because so many others have downloaded the Stable Diffusion models and incorporated them within other software tools. DeviantArt Br. at 8. "Everyone else is doing it" has never been a basis for avoiding liability under federal law, let alone prevailing on a Rule 12 motion. DeviantArt provides no authority otherwise.

     **5.**     **DeviantArt attempts to distract the Court from Plaintiffs' most basic theory of infringement: that DeviantArt copied Stable Diffusion 1.4.**

DeviantArt states that Plaintiffs allege that Stable Diffusion 1.4 "qualifies as a copy of their images." *Id.* at 10 (quotation omitted). That is true. As discussed above, Plaintiffs have

1  provided extensive new allegations in the FAC about why Stable Diffusion 1.4 qualifies as a

2  Statutory Copy (or Statutory Derivative Work).

3  　　　But DeviantArt further claims that to show infringement by copying Stable Diffusion 1.4,

4  Plaintiffs also "must . . . allege that DreamUp" is a Statutory Copy. *Id.* at 10–11. That is false. In

5  so claiming, DeviantArt mischaracterizes Plaintiffs' theory of infringement. To establish

6  infringement by copying Stable Diffusion 1.4, Plaintiffs must only plausibly allege that DeviantArt

7  copied Stable Diffusion 1.4. Plaintiffs have done so, thereby establishing their primary theory of

8  infringement. ¶¶ 387–88, 412, 415.

9  　　　**6.**　　　**Questions of whether DreamUp is a Statutory Copy or Statutory**
    　　　　　　　　**Derivative Work are premature at this stage.**

10

11  　　　Earlier in this case, the Court established that where "plaintiff has a plausible cause of

12  action for direct infringement" it "will not rule on theories that plaintiff may assert within that

13  cause of action … until a later stage of the case." ECF No. 121. Because Plaintiffs have plausibly

14  alleged that DeviantArt made a copy of Stable Diffusion 1.4 and thereby made out a "plausible

15  cause of action for direct infringement," this Court should set aside DeviantArt's lengthy

16  arguments on whether DreamUp qualifies as a Statutory Copy or Statutory Derivative work till

17  "a later stage of the case." *Id.* But Plaintiffs will also address them below.

18  　　　**7.**　　　**DeviantArt's arguments that DreamUp is not a Statutory Copy of**
    　　　　　　　　**LAION-5B all fail.**

19

20  　　　DeviantArt claims that DreamUp cannot be a Statutory Copy as a matter of law.

21  DeviantArt Br. at 10–16. All DeviantArt's arguments on this point fail.

22  　　　First — DeviantArt claims that Plaintiffs' theory fails because Plaintiffs have not alleged

23  any actual DreamUp outputs in the exhibits or complaint and therefore Plaintiffs' allegations are

24  "conclusory." *Id.* at 10–11. This is asking too much. Plaintiffs were required only "to clarify their

25  theory" and "provide plausible facts in support." MTD Order at 9–10. A conclusory allegation is,

26  by definition, one unsupported by facts. But as summarized above, Plaintiffs have alleged many

27  facts: party admissions, research papers, and DeviantArt's own demonstrated awareness that

28  DreamUp could be used to create infringing outputs. ¶¶ 398–99.

1    Second — DeviantArt presses its own interpretation of the Carlini paper, *see* ¶¶ 130–40,

2    intended to refute the idea that Stable Diffusion 1.4 is capable of reproducing Plaintiffs' works.

3    DeviantArt Br. at 12–13. But in a motion to dismiss, the court must accept the allegations

4    interpreting a research study as true. *See Graham v. Cent. Garden & Pet Co.*, No. 22-cv-06507-JSC,

5    2023 WL 2744931, at *2 (N.D. Cal. Mar. 30, 2023) ("Defendant's interpretation of

6    the studies requires the Court to draw inferences in its favor, whereas the Court must draw all

7    reasonable inferences in Plaintiff's favor at the motion to dismiss stage.") (citations omitted); *see*

8    *also Colgate v. JUUL Labs, Inc.*, 345 F. Supp. 3d 1178, 1194 (N.D. Cal. 2018) (The court "must

9    accept all of the factual allegations as true and draw all reasonable inferences in favor of the

10   plaintiffs," including "plaintiffs' factual allegation that JUUL's pods contain 6.2% nicotine, rather

11   than the 5% JUUL represents on the packaging.") (citations omitted).

12   Third — DeviantArt claims that Plaintiffs' "allegations as to other models do not

13   suffice." DeviantArt Br. at 14. Without discovery, Plaintiffs are currently at an informational

14   disadvantage relative to DeviantArt and other defendants. Plaintiffs' allegations as to other

15   models are illustrative. Plaintiffs claim that models based on LAION-5B can output infringing

16   images that are substantially similar to Plaintiffs' works. ¶¶ 350, 391-94, 412-16. Plaintiffs offer

17   exhibits showing that other versions of Stable Diffusion are capable of generating outputs that

18   mimic Plaintiffs' works. Exs. D, E, G, H. The Court is allowed to draw reasonable inferences

19   about the corresponding capacities of the Stable Diffusion 1.4 model inside DreamUp, keeping in

20   mind DeviantArt's explicit exhortation to DreamUp users to "referenc[e] the names of real

21   artists" while using it. ¶ 398. Also keeping in mind that although CompVis trained Stable

22   Diffusion 1.4, the project was described as a "collaboration with Stability AI and Runway."

23   ¶ 389.

24   Fourth — DeviantArt mocks Plaintiffs' image-prompt exhibits (Exs. G, H, I) as merely

25   showing that they "mimic[] the image that the user feeds into the model." DeviantArt Br. at 15.

26   But Plaintiffs' allegations must be treated as true, and Plaintiffs plausibly allege otherwise how

27   these image-prompting facilities work. ¶¶ 180 (Stability model), 185 (Runway model), 188

28   (Midjourney model). DeviantArt's attempt to liken image prompting to the use of a

1  "photocopier" is mischievous at best, since, unlike Stable Diffusion, no one has ever described a

2  photocopier as a compressed copy of "the visual information of humanity." ¶ 123.

3  **8.   DeviantArt's arguments that DreamUp cannot be a Statutory Derivative Work all fail as a matter of law.**

4

5  DeviantArt argues that DreamUp cannot be an "infringing Statutory Derivative Work."

6  DeviantArt Br. at 16. As above, all DeviantArt's arguments are unavailing.

7  First — DeviantArt argues speciously that DreamUp, as "a piece of software," could not

8  ever be "substantially similar" to a set of "registered visual works." *Id.* at 17. But that is not how

9  copyright works. As Nimmer points out, a work of authorship—a motion picture, for instance—

10  may often be fixed in copies of different forms—such as celluloid, videotape, DVDs, and so forth.

11  "There is but a single work of authorship, no matter how numerous and diverse the copies."

12  Nimmer on Copyright § 2.03[C]. The fact that the work of authorship itself may be different from

13  the physical or digital media where it is fixed as a copy is irrelevant to any infringement analysis.

14  Courts have accordingly upheld infringement claims where movies copied books, cartoon

15  characters copied dolls, and photographs copied dances. *See Horgan v. Macmillan, Inc.*, 789 F.2d

16  157, 162 (2d Cir. 1986) (collecting cases). DeviantArt's use of an AI model to infringe Plaintiffs'

17  works may be clever and newfangled, but that does not exempt it from the reach of the Copyright

18  Act. *See* Nimmer on Copyright § 2.09[D][1] (discussing *Worlds of Wonder, Inc. v. Vector Intercont'l

19  Inc.*, 653 F. Supp. 135 (N.D. Ohio 1986) and commenting "[t]he audiovisual work subject to

20  protection here, if at all, is the information on the cassette tape, which, when played on the

21  requisite machinery, produces sights and sounds").

22  Second — DeviantArt has admitted copying Stable Diffusion 1.4. ¶ 388. DeviantArt CEO

23  Moti Levy said, "[t]hat's my decision to take Stable Diffusion." ¶ 402. When paired with

24  Plaintiffs' allegations about Stable Diffusion's propensity to compress and store protected

25  expression (*e.g.*, ¶¶ 116–50), this constitutes prima facie copyright infringement. This Court has

26  already stated that where "plaintiff has a plausible cause of action for direct infringement" it "will

27  not rule on theories that plaintiff may assert within that cause of action . . . until a later stage of

28  the case." ECF No. 121. But that is exactly what DeviantArt wants this Court to do: selectively

1   delete theories of copyright infringement at the pleading stage, which is precisely opposite to this

2   Court's earlier guidance on how it prefers to proceed.

3       Third — DeviantArt cites *Kadrey v. Meta Platforms, Inc.*, for the proposition that it is

4   "nonsensical" that any AI model could be a derivative infringing work.  DeviantArt Br. at 17

5   (quoting *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417-VC, 2023 WL 8039640, at *1 (N.D. Cal.

6   Nov. 20, 2023)). This is a ruling in another case that involved different plaintiffs, different

7   defendants, different kinds of AI models, and different allegations. Although in *Kadrey*, Judge

8   Chhabria was unconvinced that the defendants' AI models—language models, distinct from the

9   diffusion models at issue here—were themselves Statutory Derivative Works, he still granted the

10  plaintiffs leave to amend their direct-infringement claim—a fact DeviantArt carefully fails to

11  mention. *Kadrey*, 2023 WL 8039640 at *2. Here, consistent with this Court's earlier MTD

12  Order, Plaintiffs have amended their complaint with extensive new factual allegations about the

13  image-diffusion process, Stable Diffusion generally, and Stable Diffusion 1.4 in particular (see

14  section III.A.1-3, above).

15      **9.    DeviantArt's fair-use argument is an affirmative defense and therefore**
16      **inappropriate to resolve on a motion to dismiss.**

17      DeviantArt's invocation of fair use is an affirmative defense and "inappropriate to resolve

18  on a motion to dismiss." *Ferrero S.p.A. v. Imex Leader, Inc.,* No. 8-17-cv-02152-DOC-KESx, 2018

19  WL 11346538, at *15 (C.D. Cal. May 8, 2018) (quoting *Kelly-Brown v. Winfrey,* 717 F.3d 295, 308

20  (2d Cir. 2013)); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (explaining

21  "fair use is an affirmative defense"). Though the fair use defense is a mixed question of law and

22  fact, it may be decided on a motion to dismiss **only** if there are no material facts in dispute. *See*

23  *Leadsinger, Inc. v. BMG Music Publ'g.*, 512 F.3d 522, 530 (9th Cir. 2008).

24      The cases DeviantArt relies upon do not involve pleadings at the motions to dismiss stage

25  and are thus unhelpful. *See, e.g.*, *Authors Guild v. Google, Inc.,* 804 F.3d 202, 208 (2d Cir. 2015)

26  (decision regarding a grant of summary judgment over "fair use."); *Google LLC v. Oracle Am.,*

27  *Inc.*, 141 S. Ct. 1183, 1194 (2021) (jury deadlocked on fair use defense); *Sega Enter. Ltd. v.*

28  *Accolade, Inc.*, 977 F.2d 1510, 1517-18 (9th Cir. 1992) (preliminary injunction); *Sony Comput. Ent.,*

*Inc. v. Connectix Corp.*, 203 F.3d 596, 598-99 (9th Cir. 2000) (same). Indeed, courts have determined that the question of fair use should go to a jury; in other words, it is not a question appropriate for resolution on the pleadings. *E.g.*, *Thomson Reuters Enter. Centre GmbH v. Ross Intel. Inc.*, No. 20-cv-613-SB, 2023 WL 6210901, at *6-7 (D. Del. Sept. 23, 2023) (recognizing that resolving fair use in generative AI case "must go to a jury").

**B.    Plaintiffs Have Plausibly Alleged a Claim for Breach of Contract. (Count 16)**

The elements of a breach of contract claim are: "(1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Buschman v. Anesthesia Bus. Consultants LLC,* 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014). Here, Plaintiffs—specifically, the subset known as the "DeviantArt Plaintiffs," ¶ 381— have adequately alleged that DeviantArt breached its own Terms of Service.

*Existence of a contract*. A person's use of DeviantArt's web services constitutes assent to DeviantArt's TOS and forms a valid contract. ¶ 418, Exs. L, N; *see also Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1257 (N.D. Cal. 2022) ("[A]ll users who create accounts [on a website] indicate that they agree to [the website owner's] terms of use."). The TOS controls how DeviantArt is allowed to use registered artists' intellectual property and private information posted on its site and represents how third parties are limited in using those artists' intellectual property and personal information. Ex. L, §§ 13-23.

*Plaintiffs' performance*. There is also no reasonable dispute that Plaintiffs performed under the DeviantArt TOS by continuing their use of DeviantArt's platform. ¶ 419.

*DeviantArt's breach*. Plaintiffs allege that DeviantArt breached its own TOS, specifically § 16, which states: "For the sole purpose of enabling us to make your Content available through the Service, you grant to DeviantArt a non-exclusive, royalty-free license to reproduce, distribute, re-format, store, prepare derivative works based on, and publicly display and perform Your Content." ¶ 420, Ex. L § 16. DeviantArt copied Stable Diffusion 1.4 and incorporated it into its DreamUp app. ¶¶ 387–88. DeviantArt knew that Stable Diffusion 1.4 was trained on LAION-5B. ¶¶ 390, 397. DeviantArt also knew that DeviantArt itself was the source of millions of images in LAION-5B, all of which belonged to DeviantArt's members. ¶¶ 384–85. DeviantArt's use of

1  Stable Diffusion 1.4 amounted to using its members' works for a purpose far beyond "making

2  [their] Content available" to website visitors. ¶ 422. Thus, DeviantArt exceeded its license grant

3  in § 16 and thereby breached its TOS. ¶ 422.

4      *Damages*. As alleged, this breach of contract and Deviant Art's embrace of it has damaged

5  Plaintiffs and members of the class. ¶¶ 426–31.

6      **1.    Plaintiffs do not merely restate their earlier breach claim, but rather sharpen their factual allegations, per this Court's MTD Order.**

7

8      DeviantArt misleadingly asserts that "Plaintiffs simply allege the same claim again"

9  because the "original breach claim" focused on § 16 of the DeviantArt TOS. DeviantArt Br. at

10  20. This is incorrect. Rather, Plaintiffs' initial complaint alleged DeviantArt's violation of its

11  TOS more generally. ECF No. 1 at ¶ 232. In their opposition to DeviantArt's initial motion to

12  dismiss, Plaintiffs cited TOS § 16 as one example of a TOS provision that had been breached.

13  ECF No. 65 at 22. In its MTD Order, this Court considered the significance of § 16's provisions,

14  but noted that it was "not identified or quoted" in Plaintiffs' initial complaint. MTD Order at 26.

15  On amendment, this Court ordered Plaintiffs to "identify the exact provisions in the TOS" that

16  DeviantArt breached, "and facts in support." MTD Order at 26.

17      Plaintiffs' FAC complies with the Court's order. Unlike the initial complaint, the FAC

18  focuses specifically on § 16 of the TOS and explains precisely how DeviantArt breached it.

19  ¶¶ 420–22. Plaintiffs have also added facts alleging that Stable Diffusion 1.4 includes works

20  owned by DeviantArt members. ¶¶ 384–85, 387–91. Thus, this is distinct from the situation in

21  *Carrasco v. HSBC Bank USA, N.A.*, which DeviantArt unsuccessfully attempts to analogize to the

22  current facts. No. C-11-cv-2711 EMC, 2012 WL 685523, at *1 (N.D. Cal. Mar. 2, 2012)

23  (dismissing amended complaint that "provides no additional factual information, [and] instead

24  primarily relying on the same allegations as in the prior complaint"); DeviantArt Br. at 21.

25      **2.    Plaintiffs have plausibly alleged a breach of the implied covenant of good faith and fair dealing.**

26

27      The implied covenant of good faith and fair dealing exists "to prevent one contracting

28  party from unfairly frustrating the other party's right to receive the *benefits of the agreement*

1  *actually made.*" *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 349 (2000) (italics in original, citations

2  omitted). The covenant is a "*supplement* to the express contractual covenants" and even reaches

3  conduct that does "not technically transgress[] the express covenants." *Racine & Laramie, Ltd. v.*

4  *Dep't of Parks & Recreation*, 11 Cal.App.4th 1026, 1031–32 (1992) (emphasis in original). A

5  plaintiff who alleges a breach of the implied covenant of good faith and fair dealing "must

6  establish the existence of a contractual obligation, along with conduct that frustrates the other

7  party's rights to benefit from the contract." *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111,

8  1129 (N.D. Cal. 2009). The breach must also be "prompted not by an honest mistake, bad

9  judgment or negligence but rather by a conscious and deliberate act." *A.L. v. Pleasanton Unified*

10  *Sch. Dist.*, No. 22-cv-03036-CRB, 2023 WL 5209718, at *3 (N.D. Cal. Aug. 14, 2023) (quoting

11  *A.L. v. Pleasanton Unified Sch. Dist.*, No. 22-cv-03036-CRB, 2023 WL 1769263, at * 5 (N.D. Cal.

12  Feb. 3, 2023)).

13      ***Existence of a contractual obligation***. Plaintiffs allege the existence of a contract between

14  the parties via the DeviantArt TOS. ¶¶ 418–19. Plaintiffs premise their implied-covenant claim

15  on § 16 of the DeviantArt TOS. ¶ 420.

16      ***Conduct that frustrates the benefits of the contract***. Plaintiffs allege that since its founding

17  in 2000, DeviantArt has "held itself out as an online community friendly to artists." ¶ 380. The

18  "primary activity of artists on DeviantArt is sharing digital images." ¶ 380. By releasing

19  DreamUp, DeviantArt "unleashed a flood of AI-generated images" on the website that

20  "immediately began drowning out the work of human artists like the DeviantArt Plaintiffs."

21  ¶ 422(b). Additionally, DeviantArt's conduct frustrated Plaintiffs' rights to benefit from using

22  DeviantArt's services to be part of "the world's largest art community," *id.*, by putting itself in

23  direct competition with its artist users. *Id.* This conduct undermined Plaintiffs' "very purpose in

24  being on DeviantArt in the first place"—namely, to "shar[e] digital images" and promote their

25  art. ¶¶ 422(b), 380.

26      ***Conscious and deliberate* act**. DeviantArt's CEO Moti Levy admitted that he consciously

27  chose to make DreamUp and using Stable Diffusion 1.4, saying "that was my decision . . . to take

28  Stable Diffusion." ¶ 423. DeviantArt's awareness of its bad faith is implied by "its hasty

1  addition" of a permissive provision regarding "Data Scraping & Machine Learning" to its TOS

2  only after its users complained. ¶ 422(b), Ex. M § 24.

3        **3.    DeviantArt's arguments opposing Plaintiffs' implied covenant claim
             all fail.**

4

5        First—DeviantArt argues that Plaintiffs' implied-covenant claim must fail because

6  Plaintiffs must identify where in the TOS DeviantArt implied that it would protect Plaintiffs from

7  a flood of AI-generated works. DeviantArt Br. at 22. This is incorrect. A breach of implied

8  covenant need not be premised on the "breach of an express contractual provision." *See Damabeh*

9  *v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *6 (N.D. Cal. May 8, 2013) (citing

10 *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235-1236 (2008)).

11       Second—DeviantArt argues that its addition of the "Data Scraping & Machine Learning"

12 provision to its TOS partially exonerates DeviantArt, because DeviantArt "reserve[d] the right to

13 amend the[] Terms," DeviantArt Br. at 22 (citing Ex. L at 6), and "an implied

14 covenant . . . cannot contradict the express terms of a contract." *Id.* at 22–23 (citing *Rockridge*

15 *Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1156 (N.D. Cal. 2013)). But DeviantArt is wrong,

16 because "[w]hen one party to a contract retains the unilateral right to amend the agreement

17 governing the parties' relationship"—as DeviantArt admits is the case here—the covenant of

18 good faith and fair dealing "precludes amendments that operate retroactively to impair accrued

19 rights." *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 963 (2015).

20       Finally—DeviantArt argues that by describing another way in which DeviantArt has

21 legally wronged its members, Plaintiffs have exceeded their leave to amend. DeviantArt Br. at 21–

22 22. But the Court's earlier MTD Order gave Plaintiffs broad leave to amend. Therefore, this is

23 unlike the situation in *King v. Facebook, Inc.* where plaintiff was given "limited leave" to allege one

24 new theory. No. 19-cv-01987-WHO, 2019 WL 6493968, at *1–2 (N.D. Cal. Dec. 3, 2019).

25 Further, the Court did not advise Plaintiffs here that they could not add new claims without leave,

26 as it has done in other cases. *See, e.g.*, *In re Lyft Inc. Secs. Litig.*, 484 F. Supp. 3d 758, 779 (N.D.

27 Cal. 2020) ("Plaintiffs may not add new claims or parties without leave of Court."); *Xiaojiao Lu*

28 *v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1283 (N.D. Cal. 2019) ("Plaintiff may not add new

1    claims or parties without a stipulation or leave of Court.").

2    **C.      Plaintiffs Have Plausibly Alleged a Claim for Unjust Enrichment. (Count 17)**

3          As a preliminary matter, this Court previously granted Plaintiffs "leave to amend to

4    provide clarity regarding their theories of how each defendant separately violated their

5    copyrights, removed or altered their copyright management information, or violated their rights

6    of publicity and plausible facts in support." MTD Order at 1. The Court's MTD Order expressly

7    granted leave to amend the Complaint without qualification. Tellingly, in the sole case DeviantArt

8    relies on for its otherwise unfounded assertion that Plaintiffs cannot allege their unjust

9    enrichment claim, the court titled its order to specify that it was granting the motion to dismiss

10   "with leave to amend *in part*." Order Denying Motion to Remand and Granting Motion to

11   Dismiss with Leave to Amend in Part, *DeLeon v. Wells Fargo Bank, N.A.*, No. 5:10-cv-01390-LHK

12   (N.D. Cal. June 9, 2010) (ECF No. 18) (emphasis added). The Court's MTD Order in the

13   present case contains no such qualifications. *See* MTD Order at 28. DeviantArt's assertion that

14   Plaintiffs cannot add an unjust enrichment claim is unfounded and contradicts the principles

15   governing amendment of pleadings.

16         **1.      Plaintiffs' claims are based on use, which is not preempted.**

17         DeviantArt argues that Plaintiffs' unjust enrichment claims are preempted by Section 301

18   of the Copyright Act. MTD at 23; *see also* 17 U.S.C. § 301(a). DeviantArt is mistaken.

19         The Ninth Circuit uses a two-part test to determine whether the Copyright Act preempts

20   state law claims. *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 856 (N.D. Cal. 2023). The court first

21   ascertains "whether the subject matter of the state law claim falls within the subject matter of the

22   copyright as described in 17 U.S.C. §§ 102 and 103." *Maloney v. T3Media, Inc.*, 853 F.3d 1004,

23   1010 (9th Cir. 2017) (internal quotations omitted). If it does, the court determines whether the

24   state law asserts equivalent rights to those asserted in the Copyright Act or "[i]f [the] state law

25   claim includes an extra element that makes the right asserted qualitatively different from those

26   protected under the Copyright Act." *Doe 1*, 672 F. Supp. 3d at 856 (quotations omitted); *see also*

27   *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). If the court finds the latter is

28   true, then the Copyright Act does not preempt the state law claim.

Plaintiffs' unjust enrichment claim, as alleged, contains "the necessarily qualitatively different extra element distinguishing it" from a copyright claim. *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1074 (N.D. Cal. 2016). The Ninth Circuit has held that "a state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act" and upheld a finding that the Copyright Act did not preempt such a claim. *Altera*, 424 F.3d at 1089-90; *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996) (finding no preemption by federal Copyright Act in case involving consumer's purchase and use of plaintiff's software in a way that violated its license).

Plaintiffs expressly allege as part of their unjust enrichment claim against DeviantArt that "DeviantArt has held itself out as a community that supports artists," and that "[b]y abusing that trust and using the works hosted on DeviantArt to develop and promote DreamUp and the DreamUp–CompVis Model, which is based on Stable Diffusion 1.4, DeviantArt has violated the legal rights of the DeviantArt Plaintiffs, enabling it to receive profit and other benefits" and that "[i]t would be unjust for DeviantArt to retain these benefits." ¶ 433. In particular, as alleged in conjunction with the breach of contract claim against DeviantArt, Plaintiffs state that by releasing DreamUp, DeviantArt exceeded the license grant included in its terms of service regarding its own claim content, misappropriating artistic content to make a new commercial product. ¶ 422.

This misrepresentation by DeviantArt in connection with its term of service places Plaintiffs' unjust enrichment claim outside the zone of preemption by the Copyright Act. DeviantArt's terms of use misrepresent how DeviantArt *uses* Plaintiffs' copyrighted works. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) ("The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work."). DeviantArt's unauthorized use mirrors the unauthorized use in *Altera*, 424 F.3d, 1089. There, the court held that there was no preemption where the defendant's "business model" relied on the unauthorized use of the plaintiff's software to create a file that the defendant then used to create its own marketable product. *Id.* Therefore, Plaintiffs' unjust enrichment claim is independent from the underlying violation of the Copyright Act because they

allege DeviantArt's used Plaintiffs' works to train DreamUp and in violation of its terms of use. ¶ 386.

### 2. Plaintiffs' unjust enrichment claim may proceed as a stand-alone cause of action.

"[U]njust enrichment may proceed as a stand-alone cause of action under California law if 'it states a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.'" *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 641 (N.D. Cal. 2020) (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). DeviantArt's argument that the binding agreements between DeviantArt Plaintiffs and DeviantArt preclude Plaintiffs from seeking unjust enrichment is in direct conflict with this well-established doctrine. MTD at 24. The Northern District of California has also noted that it is inappropriate to rely, as DeviantArt does, on *Paracor Finance, Inc. v. General Electric Capital Corp.* at the pleading stage to contend that an unjust enrichment claim cannot survive if an "enforceable, binding agreement exists." *Rejoice! Coffee Co. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-06789-EMC, 2021 WL 5879118, at *10 (N.D. Cal. Dec. 9, 2021) (citing *United States ex rel. Begole v. Trenkle*, EDCV 06-1104-VAP, 2010 WL 11596170, at *11-12 (C.D. Cal. July 16, 2010); *Paracor*, 96 F.3d 1151, 1167 (9th Cir. 1996)). Further, "an unjust enrichment claim cannot lie where there exists . . . a valid express contract covering *the same subject matter*." *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021) (citation omitted, emphasis added). Whereas Plaintiffs' contract claims arise out of the contractual limitation of DeviantArt's right to reproduce, distribute, and prepare derivative works based on Plaintiffs' works solely for the purpose of making Plaintiffs' works available on its website, ¶ 421, Plaintiffs' unjust enrichment claim, as explained in the preemption discussion, *supra*, arises out of Deviant Art's unauthorized use of Plaintiffs' works to train DreamUp.

### 3. Plaintiffs sufficiently alleged facts that DeviantArt unjustly retained a benefit at Plaintiffs' expense.

Under Ninth Circuit law, unjust enrichment as a standalone claim requires that the plaintiff show that a defendant received and unjustly retained a benefit. *Russell v. Walmart, Inc.*,

1   No. 22-cv-02813-JST, 2023 WL 4341460, at *2 (N.D. Cal. July 5, 2023); *Tufeld Corp. v. Beverly*

2   *Hills Gateway, L.P.*, 86 Cal. App. 5th 12, 31-32 (2022) (same). Restitution generally requires "that

3   a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"

4   *Russell,* 2023 WL 431360, at *2 (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th

5   Cir. 2015)). A benefit is broadly defined as "any type of advantage." *CSI Elec. Contractors, Inc. v.*

6   *Zimmer Am. Corp.*, No. CV 12-10876-CAS (AJWx), 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25,

7   2013). Here, Plaintiffs allege that Plaintiffs and Class Members invested substantial time and

8   energy in creating their works. ¶ 434. DeviantArt, however, exceeded what was permitted under

9   its Terms of Service by using, without authorization, Plaintiffs' works to power DreamUp. ¶¶

10  399, 436. The benefit of Plaintiffs' work was conferred on DeviantArt because DeviantArt can

11  derive profit and other intangible benefits from the use of Plaintiffs' works to train Stable

12  Diffusion 1.4 which is incorporated in DreamUp. ¶ 433. The value of its model is derived from

13  the works it is trained on. *See* ¶ 4 (The "main funding of [stability models] . . . is. . . artists.").

14  DeviantArt additionally sells subscriptions and charges users to prompt DreamUp. ¶ 382.

15  Because Plaintiffs' works are used to train Stable Diffusion 1.4, which DeviantArt incorporates in

16  its DreamUp product that it sells, Plaintiffs have conferred a substantial and significant benefit on

17  Defendant. This is not a "conclusory allegation" where "Plaintiff failed to make clear upon which

18  theory his unjust enrichment is based. *See Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111,

19  1133 (N.D. Cal. 2009).

20       **D.    The Court Should Not Dismiss the Additional Named Plaintiffs.**

21  Leave to amend is freely granted by courts in this district where the claim could be cured by

22  additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995). DeviantArt

23  argues that the Court should dismiss the new named Plaintiffs. DeviantArt Br. at 24–25.

24  However, the Court granted Plaintiffs "leave to amend **and** attempt to cure the deficiencies

25  identified above." (MTD Order at 28, emphasis added). Further, *Gallagher v. Chipotle Mexican*

26  *Grill, Inc.*, on which DeviantArt relies, is inapposite, as there the court granted leave to amend

27  specific claims, and noted courts "occasionally considered new claims submitted in an amended

28  complaint where the prior order of dismissal granted leave to amend without limitation." *See*

1   DeviantArt Br. at 24 (citing No. 15-cv-03952, 2016 U.S. Dist. LEXIS 45501, at *1-2 (N.D. Cal.

2   Apr. 4, 2016)).

3          Here, Plaintiffs' addition of the newly named plaintiffs and proposed class representatives

4   satisfies the requirements of both Rule 15 and the Ninth Circuit's caselaw. *See Bos. Ret. Sys. v.*

5   *Uber Techs., Inc.,* No. 19-cv-06361-RS, 2021 WL 4503137, at *2–3 (N.D. Cal. Oct. 1, 2021).

6   DeviantArt does not claim any unfair prejudice—nor can it, as DeviantArt had adequate notice of

7   the claims of the new Plaintiffs. *See id.* Accordingly, the new named Plaintiffs should not be

8   dismissed and DeviantArt's motion should be denied.

9   **IV.     CONCLUSION**

10         For the foregoing reasons, DeviantArt's motion to dismiss should be denied. In the

11   alternative, the Court should grant Plaintiffs leave to amend.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Dated: March 21, 2024                   By:   _/s/ Joseph R. Saveri_
                                                  Joseph R. Saveri
2

3                                           Joseph R. Saveri (State Bar No. 130064)
                                            Cadio Zirpoli (State Bar No. 179108)
4                                           Christopher K.L. Young (State Bar No. 318371)
                                            Elissa A. Buchanan (State Bar No. 249996)
5                                           David Lerch (State Bar No. 229411)
                                            Kathleen McMahon (State Bar No. 340007)
6                                           **JOSEPH SAVERI LAW FIRM, LLP**
7                                           601 California Street, Suite 1000
                                            San Francisco, California 94108
8                                           Telephone:     (415) 500-6800
                                            Facsimile:     (415) 395-9940
9                                           Email:         jsaveri@saverilawfirm.com
10                                                         czirpoli@saverilawfirm.com
                                                           cyoung@saverilawfirm.com
11                                                         eabuchanan@saverilawfirm.com
                                                           dlerch@saverilawfirm.com
12                                                         kmcmahon@saverilawfirm.com
13

14                                          Matthew Butterick (State Bar No. 250953)
                                            1920 Hillhurst Avenue, #406
15                                          Los Angeles, CA 90027
                                            Telephone:     (323) 968-2632
16                                          Facsimile:     (415) 395-9940
                                            Email:         mb@butericklaw.com
17

18                                          Brian D. Clark (_pro hac vice_)
                                            Laura M. Matson (_pro hac vice_)
19                                          Arielle S. Wagner (_pro hac vice_)
                                            Eura Chang (_pro hac vice_)
20                                          **LOCKRIDGE GRINDAL NAUEN PLLP**
21                                          100 Washington Avenue South, Suite 2200
                                            Minneapolis, MN 55401
22                                          Telephone:     (612)339-6900
                                            Facsimile:     (612)339-0981
23                                          Email:         bdclark@locklaw.com
                                                           lmmatson@locklaw.com
24                                                         aswagner@locklaw.com
                                                           echang@locklaw.com
25

26                                          _Counsel for Individual and Representative_
27                                          _Plaintiffs and the Proposed Class_

28