CLEARY GOTTLIEB STEEN
& HAMILTON LLP
Angela L. Dunning (212047)
adunning@cgsh.com
Samuel Blankenship (339905)
sblankenship@cgsh.com
1841 Page Mill Rd Suite 250
Palo Alto, CA 94304
Tel: (650) 815-4100

Arminda B. Bepko (admitted *pro hac vice*)
abepko@cgsh.com
Amira Perryman (admitted *pro hac vice*)
aperryman@cgsh.com
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000

Attorneys for Defendant
Midjourney, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STABILITY AI LTD., a UK corporation; STABILITY AI, INC., a Delaware corporation; DEVIANTART, Inc., a Delaware corporation; MIDJOURNEY, INC., a Delaware corporation; RUNWAY AI, INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:23-cv-00201-WHO<br><br>**REPLY IN SUPPORT OF DEFENDANT MIDJOURNEY, INC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date: May 8, 2024<br>Time: 2:00 PM<br>Courtroom: Videoconference<br>Before: Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. ALL CLAIMS AGAINST MIDJOURNEY SHOULD BE DISMISSED WITH PREJUDICE ........... 1

    A.  Plaintiffs' Copyright Claims (Counts 5, 6) Should Be
        Dismissed .......................................................................................... 1

        1.  Plaintiffs Fail to Allege Copying of Registered Works ....................... 1

            a.  Most of the at-issue images are *un*registered ................................ 1

            b.  Plaintiffs fail to plausibly allege copying of
                registered works ............................................................................. 3

        2.  Midjourney's Model is Not an Infringing Copy or Derivative Work ... 5

    B.  Plaintiffs' DMCA Claim (Count 7) Should Be
        Dismissed With Prejudice ................................................................ 8

    C.  Plaintiffs' False Endorsement Claim (Count 8) Fails as a
        Matter of Law .................................................................................. 9

    D.  The Vicarious Trade Dress Infringement Claim (Count
        9) Fails ........................................................................................... 11

    E.  The Unjust Enrichment Claim (Count 10) Must Be
        Dismissed ....................................................................................... 14

III. CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*,
  667 F. Supp. 3d 411 (S.D. Tex. 2023) ...................................................................... 9

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  744 F.3d 595 (9th Cir. 2014) ................................................................................... 7

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
  747 F.3d 673 (9th Cir. 2014) ................................................................................... 2

*Ambrosetti v. Ore. Cath. Press*,
  458 F. Supp. 3d 1013 (N.D. Ind. 2020) .................................................................. 2

*Arcsoft, Inc. v. Cyberlink Corp.*,
  153 F. Supp. 3d 1057 (N.D. Cal. 2015) .................................................................. 12

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ................................................................................. 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 3, 12

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ................................................................................... 15

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ................................................................................. 13

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) .................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 12

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................... 10

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ................................................................................. 10

Page(s)

*Chihuly, Inc v. Kaindl*,
2006 WL 83462 (W.D. Wash. Jan. 11, 2006) ........................................................ 12

*Crafty Prods., Inc. v. Michaels Cos., Inc.*,
424 F. Supp. 3d 983 (S.D. Cal. 2019), *aff'd sub nom. Crafty Prods., Inc. v. Fuqing
Sanxing Crafts Co.*, 839 F. App'x 95 (9th Cir. 2020) ........................................ 12-13

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*,
2013 WL 1249021 (C.D. Cal. Mar. 25, 2013) ........................................................ 15

*Doe 1 v. GitHub, Inc.*,
2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ............................................................. 8

*Friedman v. Live Nation Merch., Inc.*
833 F.3d 1180 (9th Cir. 2016) .................................................................................... 8

*Frost-Tsuji Architects v Hwy. Inn, Inc.*,
2014 WL 5798282 (D. Haw. Nov. 7, 2014), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) ............. 9

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931(9th Cir. 2023) ....................................................................................... 6

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) ........................................................................................ 14

*Int'l Order of Job's Daughters v. Lindleburg, Co.*,
633 F.2d 912 (9th Cir. 1980) .................................................................................... 13

*Inwood Labs, Inc. v. Ives Labs, Inc.*,
456 U.S. 844 (1982) ................................................................................................. 12

*Kadrey v. Meta Platforms, Inc.*,
2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ....................................................... 5-6

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) .......................................................... 8

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984) .................................................................................... 6

*Make Him Smile, Inc. v. Trek Bicycle Corp.*,
2018 WL 5986983 (C.D. Cal. Jan. 18, 2018). ........................................................ 11

*Mattel v. MCA Recs., Inc.*,
296 F.3d 894 (9th Cir. 2002) .................................................................................... 10

**Page(s)**

*O'Neal v. Sideshow, Inc.*,
   583 F. Supp. 3d 1282 (C.D. Cal. 2022) .................................................................... 8

*Pagliero v. Wallace China Co.*,
   198 F.2d 339 343 (9th Cir. 1952).......................................................................... 13

*Parziale v. HP, Inc.*,
   2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) ........................................................ 7

*Perfect 10 v. Visa Int'l Svc. Ass'n*,
   494 F.3d 788 (9th Cir. 2007).............................................................................. 14

*Qualitex Co. v. Jacobson Prod. Co.*,
   514 U.S. 159 (1995).......................................................................................... 13

*Roth Greeting Cards v. United Card Co.*,
   429 F.2d 1106 (9th Cir. 1970)............................................................................. 6

*Schneider v. Cal. Dept. of Corr.*,
   151 F.3d 1194 (9th Cir. 1998)............................................................................ 15

*Skinner v. Switzer*,
   562 U.S. 521 (2011) .......................................................................................... 6

*Smith v. Chanel, Inc.*,
   402 F.2d 562 (9th Cir. 1968)............................................................................. 11

*Software Pricing Partners, LLC v. Geisman*,
   2022 WL 3971292 (W.D.N.C. Aug. 31, 2022) .................................................. 8, 9

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018)............................................................................... 9

*Synopsys, Inc. v. ATopTech, Inc.*,
   2013 WL 5770542 (N.D. Cal. Oct. 24, 2013).......................................................... 4

*Tangle Inc. v. Aritzia, Inc.*,
   2023 WL 6883369 (N.D. Cal. Oct. 18, 2023)........................................................ 11

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001)........................................................................................... 13

*Tremblay v. OpenAI, Inc.*,
   2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ..................................................... 9, 15

**Page(s)**

*UAB "Planner 5D" v. Facebook, Inc.*,
    2020 WL 4260733 (N.D. Cal. July 24, 2020) ....................................................... 1-2

*Wal-Mart Stores, Inc. v. Samara Bros.*,
    529 U.S. 205, 216 (2000) ................................................................................... 14

*Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*,
    2023 WL 8721435 (N.D. Tex. Dec. 17, 2023) .......................................................... 9

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    2020 WL 3984528 (C.D. Cal. July 10, 2020) .......................................................... 14

*YZ Prods., Inc. v. Redbubble, Inc.*,
    545 F. Supp. 3d 756 (N.D. Cal. 2021) .................................................................. 12

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................................ 15

**Federal Statutes**

17 U.S.C. § 1202(a) ................................................................................................ 9

17 U.S.C. § 1202(b)(1) ......................................................................................... 8-9

Copyright Act of 1976, 17 U.S.C. §§ 101-1332 .......................................................... 15

Digital Millennium Copyright Act ........................................................................... 8-9

Lanham Act, 15 U.S.C. §§ 1051 et seq. ............................................................... *passim*

**Other Authorities**

37 C.F.R. § 202.3(b)(2)(iii) ...................................................................................... 2

37 C.F.R. § 202.3(b)(4) ........................................................................................... 3

Compendium of U.S. Copyright Office Practices
    (3rd ed. Jan. 28, 2021) ....................................................................................... 2, 3

U.S. Const. amend. I ............................................................................................. 10

Fed. R. Civ. P. 8 ............................................................................................... 4, 12

Nimmer on Copyright § 2.03[C]—[D][1] ..................................................................... 7

Nimmer on Copyright §§ 2.03[F], 7.16[B][5][c] ............................................................. 2

## I.    INTRODUCTION[1]

Plaintiffs' Opposition outright ignores many of the arguments Midjourney advanced in its motion to dismiss and misconstrues the law and their own pleading in responding to others.  After two complaints and two full rounds of briefing, one thing is clear: plaintiffs have no facts to establish that Midjourney copied any registered work of any plaintiff in training its model, intentionally removed CMI from identical copies of plaintiffs' works in violation of the DMCA, or engaged in any activity that can be contorted into a Lanham Act claim or non-preempted state law claim for unjust enrichment.  The entire FAC should be dismissed with prejudice as to Midjourney.

## II.   ALL CLAIMS AGAINST MIDJOURNEY SHOULD BE DISMISSED WITH PREJUDICE

### A.    Plaintiffs' Copyright Claims (Counts 5, 6) Should Be Dismissed

As the Opposition confirms, plaintiffs cannot plead facts to support either of their remaining direct infringement theories: (1) that Midjourney copied their registered works in training its models (¶¶ 282, 287); or (2) that the model is, itself, an infringing copy or derivative (¶ 288).

#### 1.    Plaintiffs Fail to Allege Copying of Registered Works

##### a.    Most of the at-issue images are *un*registered

Plaintiffs improperly persist in advancing infringement claims based on unregistered works.

**"Previously Published" Art**: Fourteen alleged registrations (13 for Andersen; one for Kaye) are for compilations including "previously published" art.  (Ex. C at 11, 14–21, 24–28.)  By law, such registrations do not cover "unclaimable material" such as "previously published" images.  (Mot at 6–7 (citing authorities).)  Plaintiffs do not claim in the FAC or Opposition that any of the images supposedly covered by these registrations (Ex. A at 64–68, 93–103, 109–118; Ex. B 11, 12, 15) were previously unpublished.  These works are, thus, unregistered and cannot support a copyright claim.  *UAB "Planner 5D" v. Facebook, Inc.*, 2020 WL 4260733, at *4 (N.D. Cal. July 24, 2020).[2]

Andersen and Kaye argue that their registrations extend to the "underlying elements of the

---

[1] Unless otherwise noted, citations to "¶ " and "Ex. " are to the paragraphs and exhibits to the FAC, all emphases are added, and internal citations and quotation marks are omitted.  Citation to specific pages in an exhibit are to the exhibit page numbers, not the ECF page numbers.

[2] Contrary to plaintiffs' assertion (Opp. at 4), the Court has not "already ruled" on this pleading defect.  The Order (at 4) addressed a different question (whether Andersen had adequately pleaded which works "were scraped into the training datasets" for Stable Diffusion)—*not* whether she had adequately pleaded *registrations* for her at-issue works.  She and Kaye have not.

collections," even if previously published, so long as they (not a third party) own the copyrights to those images.  (Opp. at 4–5.)  That is incorrect.  As stated in § 508.2 of the Compendium of U.S. Copyright Office Practices (3rd ed. Jan. 28, 2021), "a registration for a compilation does not cover *any previously published* … *or third party material* that appears in the compilation."  An "applicant may register a collective work together with the separate and independent works … (i) if the copyright in the contributions and the collective work are owned by the same claimant, *and* (ii) if the component works have not been previously published …."  *Ambrosetti v. Ore. Cath. Press*, 458 F. Supp. 3d 1013, 1018 (N.D. Ind. 2020) (quoting Compendium § 618.7).  These are distinct requirements; plaintiffs cannot avoid the second by collapsing it into the first.  *See id.* 1018–19 (dismissing with prejudice; registration for song collection did not cover song in which plaintiff also claimed copyright, as it "was published prior to its inclusion" in the collection); *UAB "Planner 5D"*, 2020 WL 4260733 at *4 (registration did not cover previously published software).[3]

        **"Text" Only Registrations:**  Eleven of the fourteen images Brom claims Midjourney copied in training (Ex. A at 3–13) are allegedly covered by book registrations claiming authorship solely in the "text," not any artwork (Ex. C at 3–4; *compare* Ex. C at 5 (claiming "Authorship: text, artwork").  The result is that only the text is registered, as the Copyright Office "only examines the authorship that is *explicitly claimed* in the application," and "no *prima facie* presumption should apply to unclaimed authorship that appears in the work."  Compendium §§ 503.3–503.4.

        The Code of Federal Regulations is no help to Brom.  37 C.F.R. § 202.3(b)(2)(iii) pertains to "application… class," directing applicants to file in the class best suited to the work as a whole.  *See* Nimmer on Copyright § 2.03[F].  Application class is not at issue here, as Midjourney does not dispute that Brom properly sought to register his books in the "text" or "TX" class, and *could have* claimed authorship over both text and artwork in the same application (though "Visual Arts" works typically fall within class "VA").  *Id.*  The problem for Brom is he didn't do that; he claimed only

---

[3] Plaintiffs' authorities are inapt.  Nimmer on Copyright § 7.16[B][5][c] acknowledges that the registration in a collection can extend to "new and preexisting" underlying works if the registrant owns all rights to both; it does not discuss the bar on claiming previously *published* material.  *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673 (9th Cir. 2014), involved an unrelated challenge to the validity of a collective work registration for failure to list the names of all authors of the underlying works.  That is not at issue in this case.

the text.[4]  Apparently recognizing this defect, plaintiffs misleadingly truncate the second subsection they cite, 37 C.F.R. § 202.3(b)(4), which provides: "For the purpose of registration on one application …, the following shall be considered one work: … all copyrightable elements that are otherwise recognizable as self-contained works, that are included in the same unit of publication, *and in which the copyright claimant is the same*."  As Brom's applications did not claim copyright in any artwork, his registrations do not cover them and they cannot support an infringement claim.

Claims based on images in Ex. A at 3–13 (Brom), 64–68 (Kaye), and 93–103, 109–118 and Ex. B at 11, 12, 15 (Andersen) must be dismissed with prejudice.  As to the remaining 47 at-issue registered images (Mot. at 8 (chart)), the FAC fails to plead that Midjourney trained on any of them.

### b.  Plaintiffs fail to plausibly allege copying of registered works

Plaintiffs speculate that, because 47 registered and 78 unregistered works of plaintiffs were among the billions of images in LAION-5B, and Midjourney trained on *some* unspecified works in that dataset ("a *subset* of LAION5b" and "*modified* version" of LAION-400M (¶¶ 266, 274)), it must have made copies of their registered works in training its model.  (Mot. at 8–11.)  This makes about as much sense as presuming that because a woman read a book at the world's largest library, she must have selected not only a novel, but a Dickens novel specifically, i.e., it falls woefully short of "the line between possibility and plausibility."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs ask the Court to overlook this defect because its prior Order resolved this issue as to Stability, and Runway does not seek dismissal on this basis.  (Opp. at 6–7.)  But the Order only addressed the adequacy of training allegations as to Stable Diffusion.  (Order at 7.)  In contrast, it found that plaintiffs had pleaded "no facts regarding what training, if any, Midjourney conducted."  (Order at 14.)  The claim against Midjourney is now directed to its own training efforts (¶¶ 282, 288), not the training of Stable Diffusion, which still undergirds the claims against all other defendants.  (¶¶ 214–15, 342–45, 387.)  Moreover, unlike Stable Diffusion, which was allegedly trained on the full LAION-5B dataset (*id.*), plaintiffs affirmatively alleged that Midjourney's model was ***not***.  (¶¶ 266, 274.)  As such, they were required to plead facts plausibly showing that the subset

---

[4] This is common, as writers and illustrators are often different individuals, or the artwork may have been previously published or previously registered and, thus, unclaimable. Compendium § 503.5.

it trained on included their registered works—and they have failed to do so.  The allegations against Midjourney do not "parallel" those against Stability (Opp. at 7); they are distinct and inadequate.

Plaintiffs also demur that Rule 8 does not require them to identify "every example" of infringement (Opp. at 7 n.4), but this misses the point.  As the Motion details (at 8–11), they do not plead *any* example of actionable infringement because the FAC lacks facts to plausibly show that Midjourney copied any of the 47 alleged registered works in LAION.  The FAC, thus, fails to state a claim.  *See Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013).

Plaintiffs continue to rely on manufactured Exhibits F and I to support an inference that Midjourney trained on their registered works.  Neither does.  As to Exhibit F, plaintiffs baldly posit that the "chef" and "teacher" images they created using Brom, Manchess, McKernan, Zhang, and Andersen's names "evoke[]" these artists' "protected content."  (Opp. at 9–10.)  But they do not identify this "protected content," and on their face ***the images look nothing like their registered works***.  Comparing the "Jingna Zhang" chef and teacher outputs (Ex. F at 4, 10) with her registered works (e.g., Ex. A at 43, 48), for instance, shows no discernable similarity, negating (rather than supporting) any inference of copying:

   

The same is true of "Manchess" outputs (Ex. F at 2, 8), which bear no resemblance to images covered by his single registration (e.g., Ex. A at 20, 23):

  



As for the other three artists included in Exhibit F, McKernan's claim was already dismissed with prejudice, and Andersen and Brom both have many more *un*registered artworks in LAION than registered ones. The Exhibit F images plaintiffs made on Midjourney's platform simply permit no plausible inference that it was trained on any *registered* work of any plaintiff. (Mot. at 9–10 & n.8.)[5]

Plaintiffs' arguments as to Exhibit I are even further afield. They admittedly uploaded their own images (most of which are *un*registered (Mot. at 11)) into Midjourney's platform and asked it to generate visually similar variations. (¶ 189.)[6] That it could do so is not surprising: Midjourney's website states that using image prompts will "influence a Job's composition, style, and colors." (¶ 188; Dunning Ex. 3.) It is also irrelevant, since this made-for-litigation exercise sheds no light on which works *Midjourney* used in training. Plaintiffs' only retort is to again misconstrue a Discord post about a different feature (the "/blend command"), which allows users to blend images together by "look[ing] at the 'concepts' and 'vibes'" of those images and "merg[ing] them together into novel interpretations." (Opp. at 10; ¶ 187 & n. 38; Dunning Ex. 2.) Nothing in that statement (even if it were about single-image prompting like that plaintiffs used to make Exhibit I, which it plainly wasn't) permits the logical leap plaintiffs ask the Court to make—that the platform cannot return visually similar output when so prompted unless it was pre-trained on that same image by Midjourney. (¶ 188.) Like Exhibit I, that is an unsupported allegation *plaintiffs* invented.

### 2.    Midjourney's Model is Not an Infringing Copy or Derivative Work

Allegations that a generative AI model is, itself, an infringing copy or derivative of the works on which it was trained have been rejected on a motion to dismiss as "nonsensical" and incapable of stating a claim. *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023). Judge Chhabria separately addressed and dismissed this theory as "not viable" even though dismissal was not sought under the alternative theory that copies were made in training.

---

[5] Plaintiffs' repeated assertion that they have followed the Court's "suggestion" to strengthen their claim by alleging facts showing that Midjourney's model "allow[s] users to create new works by expressly referencing [plaintiffs'] *works* by name" is unavailing. (Opp. at 9, 11 (citing Order at 10).) The Exhibit F prompts did not name works, they named artists, and even then the outputs look nothing like those artists' registered works. Exhibit F only undermines the training claim.

[6] Plaintiffs do not dispute that copyright owners may, consistent with the law and Midjourney's terms of use, upload and iterate on their own images using Midjourney's platform. That is what plaintiffs did to create Ex. I, and what people do every day with other tools, such as Photoshop.

*Id.* (there "is no way to understand the LLaMA models themselves as a recasting or adaptation of any of the plaintiff's books").  Likewise, this Court previously analyzed four distinct direct infringement theories advanced by plaintiffs, and rejected each as to Midjourney.  (Order at 13–14.)  It should do so again.  The theory that Midjourney's model is an infringing copy or derivative is legally unsound and factually unsupported, and has no proper place in this case.  (Mot. at 11–15.)[7]

The Opposition fails to address Midjourney's argument that this claim is foreclosed under *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015).  (Mot. at 13–15.)  At bottom, plaintiffs' claim is that Midjourney's model must be a derivative work because it was created using copies of plaintiffs' works.  But *Author's Guild* rejected this exact theory.  *Id.* at 226.  Google made digital copies of millions of books from which it extracted data such as "word frequencies, syntactic patters, and thematic markers" to create a search tool that would return text snippets from the books when prompted.  *Id.* at 209, 225–27.  Yet, the Second Circuit found that the tool was outside the "statutory definition of a derivative work, or of the logic that underlies it," as it did not allow access "in any substantial way to a book's expressive content" apart from the snippets.  *Id.* at 226.  Here, plaintiffs have been unable to generate *any* outputs on Midjourney's platform (not even snippets) that substantially replicate their art, apart from allegedly those in Ex. I, which they were able to make only by feeding their own images into the tool.  The theory simply fails.

Plaintiffs also fail to address any of the Ninth Circuit cases (*Litchfield*, *Roth*, *Hanagami*) holding that a work must be ***substantially similar*** in protected expression to the copyrighted work to be an infringing copy or derivative.  (Mot. at 12–14.)  That would require facts showing that the code comprising Midjourney's model (the challenged work) actually contains protected expression from plaintiffs' registered paintings and photographs—something they have not even tried to plead.

Plaintiffs do not even contend that Midjourney's model ***is*** substantially similar.  The closest they come is that it is "capable of reproducing protected expression from each of the LAION-5B Registered Works that was in each case substantially similar to that registered work."  (Opp. at 11

---

[7] Plaintiffs' attempt to avoid scrutiny of this untenable theory fails.  Contrary to their assertion, nothing in the Court's Minute Order (Dkt. 121), which was directed to *Stability*, limited arguments *Midjourney* could make for dismissal of the distinct claims against it.  *Skinner v. Switzer* is inapt and merely holds that a § 1983 complaint must contain a "short and plain" statement of the claim, not an "exposition" on plaintiff's "precise legal theory."  562 U.S. 521, 530 (2011).

1   (quoting ¶ 288).)  They have no examples (unaided by their own image prompting) to substantiate

2   this bald allegation.  It is not even properly considered, since it directly contradicts their earlier

3   allegation that "none of the [] output images … is likely to be a close match" to any training image.

4   (Dkt. 1 ¶ 93.)  *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595,

5   600 (9th Cir. 2014) (amendment may not contradict facts in earlier pleading); *Parziale v. HP, Inc.*,

6   2020 WL 5798274, at *7 (N.D. Cal. Sept. 29, 2020) (same, dismissing with prejudice).  In any

7   event, being **capable of making** infringing copies is not the same as **being** one.  Otherwise, every

8   printer and photocopier would be an infringing copy or derivative.  That is obviously not the law.

9       Plaintiffs' discussion of Nimmer (Opp. at 10) is perplexing and unavailing.  Section 203[C]

10  describes the "distinction between the work and the material object" in which it is embodied.  For

11  example, there is no question that a single work can be "fixed in copies of different forms," *e.g.*, a

12  motion picture can be fixed in different tangible mediums, such as videotape and DVD.  (Opp. at

13  10.)  Section 209[A] discusses the definition of an "audiovisual work," which plaintiffs' works are

14  not.  And Section 209[D] merely states the unremarkable proposition that an audiovisual work may

15  be embodied in a computer program, i.e., that a computer "program may be the vehicle in which

16  an audiovisual work is fixed."  Nimmer, § 2.09[D] at [1] n.35.  None of this helps plaintiffs.

17      Plaintiffs do not allege that copies of their works are "fixed" in Midjourney's model.  The

18  model is not like a DVD or game cartridge with set content embedded within it.  By plaintiffs' own

19  allegations, it is a "mathematical construct" that algorithmically enables the creation of new images

20  through the "interpolation" of data from the images on which it was trained.  (¶ 118; Ex. F.)[8]  If

21  digitized "copies" of plaintiffs' works (compressed or otherwise) actually resided in the model for

22  anyone to access (as on a DVD), plaintiffs should have been able to elicit outputs replicating those

23  images without having to upload them to the platform themselves.  That they could not do so after

24  significant apparent effort disproves the basic factual premise upon which this theory depends.[9]

---

[8] The data taken from these images for purposes of creating a software model is not even protectible by copyright law (*see* Mot. at 13–14), another defect plaintiffs wholly fail to address.

[9] Plaintiffs cannot save this claim by pointing to "[r]ecent AI research suggesting that diffusion models *like* the Midjourney Model are compressed versions of their training datasets." (Opp. at 9 (citing papers incorporated by reference in the FAC at ¶¶ 117–144).)  None of these papers save for one (*Webster*) evaluated any version of Midjourney's model.  Moreover, although plaintiffs cite *Webster* as finding that diffusion models contain "stored copies of training images" (*id.* (citing

### B.        Plaintiffs' DMCA Claim (Count 7) Should Be Dismissed With Prejudice

The only DMCA claim against Midjourney is for "intentionally remov[ing] or alter[ing] CMI from the Plaintiffs' works in violation of 17 U.S.C. § 1202(b)(1)."  (¶ 300.)  This claim is premised on allegations that Midjourney's model generates "unlicensed artwork missing CMI." (Opp. at 16; *see also id.* at 18 (models "generate output[s], which … necessarily remove the CMI"). However, there is no allegation that Midjourney's model has ever generated an otherwise ***identical*** copy of any of their works; plaintiffs assert only that the model creates "***visually similar***" outputs "***based on***" their "work with [CMI] removed or altered."  (¶ 194; *see* ¶¶ 195–200 (examples).  Such allegations not only fail to state a claim under 1202(b); they render it defective as a matter of law.

Courts in this Circuit consistently reject 1202(b) claims where defendant allegedly removed CMI from—or failed to include CMI on—a work other than an "identical" copy of plaintiff's work. (Mot. at 15–16 (citing cases).)  In *Doe 1 v. GitHub, Inc.*, Judge Tigar dismissed plaintiffs' 1202(b)(1) claim based on allegations that a generative AI coding tool did not include plaintiffs' CMI on non-identical outputted code.  2024 WL 235217, at *8–9 (N.D. Cal. Jan. 22, 2024); *see also Kirk Kara Corp. v. W Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (dismissing claim as "Defendant did not make *identical* copies of Plaintiff's works and then remove the [] CMI"); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (same).  Conversely, in *Friedman v. Live Nation Merch., Inc.* (cited in Opp. at 14), the Ninth Circuit allowed the claim because the photographs at issue "were ***exact copies*** of the images precisely as they appeared … in Friedman's book" and the "*only* material difference … was that the CMI was missing."  833 F.3d 1180, 1188 (9th Cir. 2016).  Plaintiffs cannot make this showing.  As they admit, "none of the...output images … is likely to be a ***close*** match" (Dkt. 1 ¶ 93), let alone an ***identical*** copy.  The FAC certainly doesn't plead any outputs that are exact copies but for removal of CMI.

Unable to satisfy this requirement, plaintiffs cite several out-of-circuit district court cases to argue that identicality is not required.  Two provide no support for that proposition.[10]  The third,

---

¶ 138), it says no such thing.  The words "stored copies" do not appear in the paper, and "compression" of images is not even discussed.  Plaintiffs cannot avoid dismissal by citing analyses of models other than Midjourney's and misconstruing the papers upon which they purport to rely.

[10] In *Software Pricing Partners, LLC v. Geisman*, defendant sent "an ***exact copy*** of one of SPP's copyrighted documents" to third parties, altered to make it look like his work.  2022 WL 3971292, at

*ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*, 667 F. Supp. 3d 411 (S.D. Tex. 2023), further undermines their claim.  In *ADR*, the court was careful to distinguish between "[r]emoval of CMI from a copyrighted work," and "failure to add CMI to a … derivative of the protected work."  *Id.* at 428.  It also noted: "Plaintiff does not claim that Defendant's allegedly infringing works are derivative works."  *Id.*  This is decisive in the Ninth Circuit, as allegations that a defendant "created [a] derivative work" without transposing CMI do not establish that it "removed [CMI] from [the] original work".  *Frost-Tsuji Architects v Hwy Inn, Inc.*, 2014 WL 5798282, at *6 (D. Haw. Nov. 7, 2014), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) (making "virtually identical" derivative without CMI is ***not*** a DMCA violation; "removal is not the same as basing a drawing on someone else's work").  Plaintiffs, however, continue to assert precisely what *Frost* and *ADR* held inadequate: that Midjourney's model creates "***visually similar***" outputs "***based on***" "original work[s] with [CMI] removed" (¶ 194) and that "***every*** output … is an infringing ***derivative***." (Opp. at 15; *see* Dkt. 1 ¶¶ 18, 95.)  Such allegations are irreconcilable with § 1202(b)(1), warranting dismissal with prejudice.

Plaintiffs also offer no effective defense of their continuing failure to adequately allege the requisite double scienter.  (Mot. at 16–17.)  In the Ninth Circuit, this requires facts to show that defendant intentionally removed CMI "knowing, or having a reasonable basis to know, that [its] actions '***will*** induce, enable, facilitate, or conceal' infringement."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018); *see also Tremblay v. OpenAI, Inc.*, 2024 WL 557720, at *4 (N.D. Cal. Feb. 12, 2024) (dismissing nearly identical DMCA claim against OpenAI for failure to plead scienter under *Stevens*).  Here, there are no facts pleaded from which the Court could conclude that Midjourney "removed" any CMI, much less did so knowing it would induce or conceal infringement.  To the contrary, applying plaintiffs' CMI to works that are not theirs would have amounted to providing "false" CMI, which the DMCA prohibits.  17 U.S.C. § 1202(a).

**C.    Plaintiffs' False Endorsement Claim (Count 8) Fails as a Matter of Law**

Plaintiffs' "false endorsement" claim under § 43(a) of the Lanham Act is based on allegations that Midjourney included five plaintiffs' names (Andersen, Brom, Kaye, Ortiz, and Rutkowski)

*5 (W.D.N.C. Aug. 31, 2022).  In *Widespread Elec. Sales, LLC v. Upstate Breaker Wholesale Supply, Inc.*, there was no identicality issue; the sole challenge to the DMCA claim was that plaintiff had failed to allege copyright infringement.  2023 WL 8721435, at *1 (N.D. Tex. Dec. 17, 2023).

among 4,700 others in a "Name List" posted to Discord. (¶¶305–317; Ex. J.)  Plaintiffs concede that the purpose of this list and accompanying post was to communicate that the model "recognizes" these artist names "in prompts" designed to elicit outputs "emulat[ing] the[ir] styles." (¶¶260–62; Opp. at 20.)  Such facts are incapable of stating a claim under the Lanham Act. (Mot. at 17–20.)

Plaintiffs do not claim that their names have "no artistic relevance" to the creative works described or that the post or Name List was "explicitly misleading." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013).  This is fatal, because to get a false endorsement claim past the First Amendment, it "is key [] that the creator must ***explicitly mislead*** consumers"; "use of a mark alone is not enough." *Id.*  Any "risk that … use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and ***in cases where there is no explicit misleading the Lanham Act is not applicable***." *Id.* (cleaned up); *see Mattel v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002) (First Amendment permits "unauthorized use" of a mark in "communicative message" if not "explicitly misleading").

By failing to address this binding authority requiring dismissal, Plaintiffs abandon their claim. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 129 (N.D. Cal. 2020) (failure "to address arguments raised in a motion to dismiss constitutes abandonment of the claim, which results in dismissal with prejudice").  Indeed, the only vague response they offer—that affirmative defenses "may not ordinarily be raised on a motion to dismiss" (Opp. at 20)—ignores that *Brown* affirmed the grant of a motion to dismiss with prejudice.  724 F.3d at 1246–48 (unauthorized use of football legend's likeness in commercial video game not "explicitly misleading" and, thus, not actionable "even if Brown could offer a survey demonstrating that consumers of the *Madden NFL* series believed [he] endorsed the game"). (*See also* Mot. at 20 (citing other cases granting dismissal).)

The Opposition also largely ignores Midjourney's argument that plaintiffs fail to identify anything "false" about the Name List or accompanying post, the "key element" of a claim. (Mot. at 17–18.)  They assert that the "relevant falsity" is "whether the artists on the [] Style List consented to have their names commercially exploited as part of the Midjourney Image Product." (Opp. at 20.)  That is not the relevant inquiry, and the post did not indicate that any artist listed "consented" to anything; it said that Midjourney had compiled the names of 4,700 artists "from wikipedia"

whose "styles" could be emulated on the platform.  (¶ 262; Dunning Ex. 1.)  These facts cannot sustain a false endorsement claim; rather, they show use of a third party's alleged mark for truthful, comparative advertising—a nominative fair use under well-settled law.  (Mot. at 18–19.)

Artistic "[s]tyle, no matter how creative, is an idea, and is not protectible by copyright." *Tangle Inc. v. Aritzia, Inc.*, 2023 WL 6883369, at *3 (N.D. Cal. Oct. 18, 2023).  As such, every artist is free to emulate another artist's style, and to tell the world whose "style" they are emulating, without running afoul of trademark law.  "The Lanham Act does not prohibit a commercial rival's truthfully denominating his goods a copy of a design [or style] in the public domain, though he uses the name of the designer to do so."  *Smith v. Chanel, Inc.*, 402 F.2d 562, 565 (9th Cir. 1968).  As the Ninth Circuit explained in *Chanel*:

> [I]mitation is the life blood of competition.  It is the unimpeded availability of substantially equivalent units that permits the normal operation of supply and demand to yield the fair price society must pay for a given commodity.  But this public benefit might be lost if appellants could not tell potential purchasers that appellants' product was the equivalent of appellees' product.… To prohibit use of a competitor's trademark for the sole purpose of identifying the competitor's product would bar effective communication of claims of equivalence.

402 F.2d 562, 567–68 (9th Cir. 1968) (rejecting claim and overturning preliminary injunction). Plaintiffs' attempt to misuse the Lanham Act to prevent Midjourney from truthfully conveying to users that they can generate competing works in the "style" of specific artists must fail.[11]

**D.     The Vicarious Trade Dress Infringement Claim (Count 9) Fails**

The Opposition fails to address the myriad pleading defects necessitating dismissal of their claim for vicarious infringement of unregistered trade dress.

**<u>No Protectible Trade Dress</u>:**  The Opposition ignores the authority cited by Midjourney showing that "there is no trademark protection for the 'style' of an artist."  (Mot. at 22 (collecting cases).)  Even if trade dress protection were available for art styles (it is not), the descriptions of Andersen's "black and white" cartoons and Brom's "gritty [] fantasy images" (¶ 319) are impermissibly broad to support a claim.  (Mot. at 21–22 (citing cases dismissing on this basis).)

---

[11] *Make Him Smile, Inc. v. Trek Bicycle Corp.* is easily distinguished.  There, defendant used the challenged name ("Farley") as the brand name for one of its own bicycles, not in truthful comparative advertising.  2018 WL 5986983, at *1 (C.D. Cal. Jan. 18, 2018).  Plaintiffs also point to Ex. K for the first time as purported support for Count 8, but it shows prompts *users* have entered that include plaintiffs' names, not use of those names by Midjourney as brand name or trademark.

Plaintiffs ask the Court to ignore these "shorthand textual summar[ies]" of their claimed trade dress in the FAC (Opp. at 22), but offer no explanation of how the vague characteristics they seek to monopolize could possibly serve as a source identifier or define the bounds of exclusive use their trade dress is meant to protect.[12]  Plaintiffs' assertion that a "more definite identification of trade dress" can be deferred "until discovery" (Opp. at 22) is based solely on an unpublished district court case (*Chihuly, Inc v. Kaindl*, 2006 WL 83462, at *4 (W.D. Wash. Jan. 11, 2006)), that **predates** the Supreme Court's enunciation of the Rule 8 pleading standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  It also ignores plaintiffs' own cited authority, making clear that, post *Iqbal*, dismissal on a motion to dismiss is appropriate where "Plaintiff fails to provide a recitation of the concrete elements of its trade dress." *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 768 (N.D. Cal. 2021) (citing cases); *see also Crafty Prods., Inc. v. Michaels Cos., Inc.*, 424 F. Supp. 3d 983, 990–92 (S.D. Cal. 2019), *aff'd sub nom. Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95 (9th Cir. 2020) (dismissing trade dress claim as plaintiffs did "not clearly articulate[ ] their trade dress" and, instead, "merely attach[ed] hundreds of images" to the complaint); *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1069 (N.D. Cal. 2015) (granting motion to dismiss; "courts in this circuit have required trade dress plaintiffs, at the very least, to provide adequate notice by including in their complaint 'a complete recitation of the concrete elements of [their] alleged trade dress'").

**Functional as a Matter of Law**:  Plaintiffs also do not (and cannot) satisfy their "heavy burden" to show that the artistic elements they claim as unregistered trade dress are non-functional. *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1069  (2015) (granting motion to dismiss). The aesthetics of a work of visual art can never surmount the "presumption of functionality" under the Lanham Act, *id.*, because they are "essential to [its] use or purpose," and therefore functional as a matter of law.  *Inwood Labs, Inc. v. Ives Labs, Inc*., 456 U.S. 844, 850 n.10 (1982).

---

[12] Contrary to plaintiffs' assertion, that Midjourney's model can create images in the "style" of plaintiffs' artworks supports no inference that the generic trade dress elements alleged in the FAC serve as unique source identifiers for plaintiffs.  (Opp. at 22 n.12.)  "Simple, cartoony, and often strictly in black and white" (¶ 319) describes untold thousands of works by thousands of artists. No one can own that as trade dress.  Not Disney.  Not Schultz.  And certainly not Andersen.

Simply claiming that their "trade dress has no intrinsic functional value" (Opp. at 23 (quoting ¶ 327)) does not change the equation; that is a conclusory statement unentitled to the presumption of truth under *Iqbal*.  It is also flatly contradicted by plaintiffs' own pleading.  The FAC alleges that the "artistic elements" allegedly comprising their trade dress are what make their works "desirable to customers."  (¶¶ 319, 327.)  In other words, people buy plaintiffs' artworks for their aesthetic.  That is the very definition of "aesthetic functionality."  (Mot. at 22–23.)  As explained in *Crafty Products*, a "designer has an incentive to make a china pattern or plush toy aesthetically pleasing because that drives the consumer's decision to buy the plate or toy.  Such designs are, therefore, functional."  424 F. Supp. 3d at 993 (dismissing trade dress claim because the "shape of the wooden mask drives the consumer's decision to buy [it]" and is, thus, functional); *see also Int'l Order of Job's Daughters v. Lindleburg, Co.*, 633 F.2d 912, 917 (9th Cir. 1980) (reversing post-trial judgment and finding that jewelry design was functional as matter of law).

Here, by plaintiffs' own admission, the aesthetics of their artworks are not arbitrary or incidental to their value in the market; the design is the works' "essential selling feature[] … if, indeed, not the primary [or only feature]."  *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1073 (9th Cir. 2006) (quoting *Pagliero v. Wallace China Co.*, 198 F.2d 339 343 (9th Cir. 1952)).  As such, plaintiffs' art styles are functional and cannot be protected as trade dress.[13]

As the Supreme Court has noted, "product design almost invariably serves purposes other than source identification."  *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).  To permit a trade dress claim in such circumstances "inhibit[s] legitimate competition by allowing a producer to control a useful product feature" of their product.  *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 164 (1995).  Here, it would give plaintiffs a monopoly over "simple, cartoony" drawings and "gritty fantasy paintings."  The Lanham Act does not permit such a result.

**No Secondary Meaning**:  Plaintiffs' reliance on outdated cases to argue that they need only allege that their claimed trade dress is "*either* distinctive *or* has secondary meaning"  (Opp. at 23)

---

[13] Groping for any way to distinguish *Job's Daughters* and *Pagliero*, plaintiffs argue that their designs are not functional because they are not "applied" to any "underlying functional object," such as "dinnerware and jewelry."  (Opp. at 23 n.13.)  That makes no sense.  The style and appearance of plaintiffs' works are intrinsic to their value, and therefore functional, whether applied to an object (like a print or book), or existing solely in a digital file.

is highly improper.  In *Wal-Mart Stores, Inc. v. Samara Bros.*, the Supreme Court held, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, ***only upon a showing of secondary meaning***."  529 U.S. 205, 216 (2000); *see also Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) ("plaintiff must show that her design has attained secondary meaning.")  Secondary meaning exists "when the purchasing public associates [the trade dress] with a ***single producer or source*** rather than with the product itself," *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993), and is typically pleaded and proved with facts showing lengthy, exclusive use by plaintiff with significant sales and customers, *Art Attacks*, 581 F.3d at 1145.  (Mot. at 22–23.)

Here, the Opposition asserts that plaintiffs have alleged secondary meaning (Opp. at 24 (citing ¶¶ 319, 328), but the FAC does not bear that out.  Paragraph 319 merely states that plaintiffs' "recurring visual elements and artistic techniques" "are associated with them and their work."  Paragraph 328 says their "trade dress possesses secondary meaning because [it] … invoke[s] a mental association by a substantial segment of potential consumers between the trade dress and the creator."  These are conclusions, not facts, warranting dismissal.  (*See* Mot. at 24 (citing cases).)

**No Vicarious Liability:**  Plaintiffs' vicarious liability claim also fails for lack of the "requisite direct infringement by a third party," and because they have not pleaded the requisite "joint ownership or control over the infringing product" between Midjourney and any direct infringer.  (Opp. at 24).  This is a high standard, and plaintiffs do not meet it.[14]  While Midjourney hosts its platform, it does not control what outputs users make or how they use them.  Midjourney cannot be vicariously liable for trade dress infringement by its users.  *See, e.g., Y.Y.G.M. SA v. Redbubble, Inc.*, 2020 WL 3984528, at *9 (C.D. Cal. July 10, 2020) (no vicarious liability for infringement by customers absent facts showing that "Redbubble takes some action with regard to the infringing products beyond the uniform steps it takes to maintain its [service] generally").

**E.    The Unjust Enrichment Claim (Count 10) Must Be Dismissed**

Plaintiffs do not dispute that a state-law unjust enrichment claim premised on unauthorized

---

[14] The test is "even more difficult to satisfy than those required to find secondary copyright infringement."  *Perfect 10 v. Visa Int'l Svc. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007).

use of copyrighted works is preempted under the Copyright Act.  (*See* Mot. at 25 (citing cases)).  Instead, plaintiffs advance a strawman, contending that their unjust enrichment claim is really about "use of Plaintiffs' names and reputations," which "does not sound in copyright at all." (Opp. at 24–25.)  But, as pleaded, the unjust enrichment claim makes no mention of names or reputations; it is based exclusively on allegations that Midjourney made "unauthorized use of [their] works" from which it derived "benefits" it would be "unjust for Midjourney to retain." (¶¶ 335, 338–39; *see also* ¶ 337 (alleging deprivation of "value of their works")).  Plaintiffs cannot avoid dismissal of the preempted claim they pleaded by pulling a bait-and-switch in their Opposition.  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

The unjust enrichment claim would fail even if not preempted, and even if they had pleaded a names-based claim (which they have not).  As the Motion argued (at 25) and the Opposition concedes through silence, plaintiffs cannot plead facts to invoke a quasi-contract theory of liability.  Nor can they allege a standalone unjust enrichment claim.  To do so, as their cited cases make clear (Opp. at 25), plaintiffs were required to plead that the "benefits" Midjourney allegedly unjustly obtained "were conferred by mistake, fraud, coercion, or request; otherwise, though there is enrichment, it is not unjust." *CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, 2013 WL 1249021, at *5 (C.D. Cal. Mar. 25, 2013); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  As plaintiffs "have not alleged that [Midjourney] unjustly obtained benefits from Plaintiffs' copyrighted works [or use of their names] through fraud, mistake, coercion, or request, this claim fails." *Tremblay*, 2024 WL 557720, at *7 (dismissing identical claim against OpenAI with prejudice); *CSI Elec.*, 2013 WL 1249021, at *5 (dismissing claim).

## III.  CONCLUSION

Plaintiffs have twice tried—and failed—to plead facts establishing a viable claim against Midjourney, despite prior warning that the Court would "not be as generous" in granting leave again.  (Order at 14 n.10.)   As the Opposition now confirms, plaintiffs' claims are infirm as a matter of law, they have "no additional facts [of consequence] to plead," and further amendment would be futile.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).  Accordingly, the Court should dismiss all claims against Midjourney in the FAC (Claims 5–10) with prejudice.

1

Dated: April 18, 2024

CLEARY GOTTLIEB STEEN & HAMILTON LLP

2

*/s/ Angela L. Dunning*

3

Angela L. Dunning (212047)

4

*Attorneys for Defendant Midjourney, Inc.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28