JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
TIMOTHY CHEN SAULSBURY (CA SBN 281434)
TSaulsbury@mofo.com
EOIN CONNOLLY (CA SBN 300373)
EConnolly@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

MARK A. LEMLEY (CA SBN 155830)
mlemley@lex-lumina.com
LEX LUMINA PLLC
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone:    646.898.2055
Facsimile:    646.906.8657

[CAPTION PAGE CONTINUED ON NEXT PAGE]

Attorneys for Defendants
STABILITY AI LTD. and STABILITY AI, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, ET AL., | Case No. 3:23-cv-00201-WHO |
| Plaintiffs, | **DEFENDANTS STABILITY AI LTD. AND STABILITY AI, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| STABILITY AI LTD., ET AL., | |
| Defendants. | Date:  May 8, 2024<br>Time:  2:00 p.m.<br>Courtroom:  Videoconference<br>Judge:  Hon. William H. Orrick |

1   ALLYSON R. BENNETT (CA SBN 302090)
    ABennett@mofo.com
2   LAURA G. REMUS (CA SBN 352638)
    LRemus@mofo.com
3   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
4   Los Angeles, California 90017-3543
    Telephone:    213.892.5200
5   Facsimile:    213.892.5454

6   ADITYA V. KAMDAR (CA SBN 324567)
    AKamdar@mofo.com
7   MORRISON & FOERSTER LLP
    2100 L Street, NW, Suite 900
8   Washington, DC 20037
    Telephone:    202.887.1500
9   Facsimile:    202.887.0763

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION ........................................................................................................... 7

3   II.   ARGUMENT .................................................................................................................. 7

4         A.    Plaintiffs do not plausibly allege that Stability AI induced infringement................ 7

5               1.    Plaintiffs do not allege acts of infringement by a third party....................... 7

6               2.    Plaintiffs do not allege Stability AI's promotion of its models to
                      commit copyright infringement. ................................................................. 9

7
8               3.    The fact that Stability AI's models are capable of noninfringing uses
                      is not an affirmative defense. ................................................................... 11

9         B.    Plaintiffs fail to state a claim under the DMCA.................................................... 13

10              1.    Plaintiffs have not plausibly alleged a claim under Section 1202(b)(1). ... 13

11              2.    Plaintiffs have not plausibly alleged a claim under Section 1202(b)(3). ... 18

12              3.    Plaintiffs' 1202(a) claim fails because (1) the MIT license is not
                      "conveyed in connection with" Plaintiffs' works, and (2) Plaintiffs
13                    remain silent as to the requisite scienter. ................................................. 18

14        C.    Plaintiffs' unjust enrichment claim must be dismissed.......................................... 19

15              1.    Right of publicity elements do not save Plaintiffs' claim. ......................... 19

16              2.    Plaintiffs do not allege that existing legal remedies are inadequate. ......... 20

17        D.    Additional named plaintiffs and claims exceed the scope of the Court's Order.... 21

18  III.  CONCLUSION............................................................................................................... 21

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abrego v. Dow Chem. Co.*,

5
443 F.3d 676 (9th Cir. 2006) ................................................................................. 10

6
*ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*,

7
667 F. Supp. 3d 411 (S.D. Tex. 2023) .................................................................. 15

8
*Aikins v. St. Helena Hosp.*,
No. C 93-3933 FMS, 1994 WL 794759 (N.D. Cal. Apr. 4, 1994) ....................... 21

9
*Caribbean Queen, Inc. v. Lee*,

10
No. CV-20-09637 AB, 2021 WL 3215110 (C.D. Cal. Mar. 24, 2021) ................ 12

11
*Clark v. Eddie Bauer LLC*,
No. 21-35334, 2024 WL 177755 (9th Cir. Jan. 17, 2024) ................................... 21

12

13
*Columbia Pictures Indus., Inc. v. Galindo*,
No. 20-cv-3129 -MEMF (GJSx), 2022 WL 17094713 (C.D. Cal. Nov. 18,

14
2022). ..................................................................................................................... 14

15
*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ..................................................................... 8, 10, 14

16

17
*Design Basics, LLC v. Signature Constr., Inc.*,
No. 1:16-CV-1275, 2019 WL 4805888 (C.D. Ill. Aug. 19, 2019) ....................... 14

18
*Diamondback Indus., Inc. v. Repeat Precision, LLC*,

19
No. 4:18-CV-902-A, 2019 WL 5842756 (N.D. Tex. Nov. 7, 2019) ..................... 17

20
*Doe 1 v. GitHub, Inc.*,
No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ............... 14, 18

21
*Frenzel v. Aliphcom*,

22
76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................... 18

23
*Friedman v. Live Nation Merch., Inc.*,
833 F.3d 1180 (9th Cir. 2016) .............................................................................. 14

24

25
*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) ............................................................................ 12

26
*Guzman v. Polaris Indus. Inc.*,

27
49 F.4th 1308 (9th Cir. 2022) ............................................................................... 20

28

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*,
No. C 07-3983JSW, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007) ...................................... 19

*Kelly v. Arriba Soft Corp.*,
77 F. Supp. 2d 1116 (C.D. Cal. 1999) ...................................................................... 16

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
No. CV 20-1931-DMG (Ex), 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ...................... 18

*Krechmer v. Tantaros*,
747 F. App'x 6 (2d Cir. 2018) ............................................................................. 19

*Logan v. Meta Platforms, Inc.*,
636 F. Supp. 3d 1052 (N.D. Cal. 2022) .................................................................. 16

*Luvdarts LLC v. AT & T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) ............................................................................ 12

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) ............................................................................ 20

*Matthew Bender & Co. v. West Publ'g Co.*,
158 F.3d 693 (2d Cir. 1998) ................................................................................. 8

*Mazer v. Stein*,
347 U.S. 201 (1954) ........................................................................................ 10

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) .............................................................................. 17

*Med. Broad. Co. v. Flaiz*,
No. Civ.A. 02-8554, 2003 WL 22838094 (E.D. Pa. Nov. 25, 2003) ................................ 17

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ......................................................................................... 8

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .............................................................................. 10

*Peguero v. Toyota Motor Sales, USA, Inc.*,
No. 2:20-cv-05889-VAP, 2021 WL 2910562 (C.D. Cal. Apr. 26, 2021) ............................ 21

*Perez v. Bath & Body Works, LLC*,
No. 21-CV-05606-BLF, 2022 WL 2756670 (N.D. Cal. July 14, 2022) .............................. 20

*Polaris Indus. Inc. v. Albright*,
143 S. Ct. 2612 (2023) ...................................................................................... 20

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*,
804 F. App'x 668 (9th Cir. 2020) ................................................................... 18, 19

*Shade v. Gorman*,
   No. C 08-3471 SI, 2009 WL 196400 (N.D. Cal. Jan. 28, 2009) .............................................. 19

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ................................................................................. 20

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................................................... 20

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ............................................................................................................. 12

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) ............................................................................................... 10

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ............................................................................................... 16

*Tremblay v. OpenAI, Inc.*,
   No. 23-cv-03223-AMO, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ................................. 15

**Statutes**

17 U.S.C. 1202 ...........................................................................................................................*passim*

17 U.S.C. § 102 .................................................................................................................................. 11

17 U.S.C. § 106 ........................................................................................................................... 17, 20

**Other Authorities**

Clipdrop, *Reimagine XL,* https://clipdrop.co/stable-diffusion-reimagine (last
   visited April 12, 2024) ........................................................................................................ 11

Nicholas Carlini, *Extracting Training Data from Diffusion Models* (Jan. 30, 2023),
   https://arxiv.org/pdf/2301.13188.pdf .................................................................................... 9

1    **I.     INTRODUCTION**

2          Plaintiffs' opposition confirms that the Court should dismiss Plaintiffs' claims with

3    prejudice.  Plaintiffs do not dispute that they have not plausibly alleged that any third party (other

4    than perhaps Plaintiffs' own attorneys) caused a Stable Diffusion model to output any image

5    allegedly similar to any of Plaintiffs' images.  That failure is fatal to each of their claims.

6          As to the inducement claims, Plaintiffs do not dispute that to allege inducement of

7    copyright infringement, they must allege actual infringement by a third party.  Nor do they

8    dispute that they must allege Stability AI's promotion of its models to commit copyright

9    infringement.  Because Plaintiffs allege neither, their inducement claim should be dismissed.

10         Plaintiffs' remaining claims are equally defective.  Plaintiffs' DMCA claims fail because

11   they have not plausibly alleged the required elements.  For their Section 1202(b)(1) claims,

12   Plaintiffs have not plausibly alleged Stability AI's intentional removal of CMI from Plaintiffs'

13   works.  And Plaintiffs' inability to supply any model-generated copies of their works that lack

14   CMI further dooms their claims.  Regarding Section 1202(a), Plaintiffs do not dispute that they

15   must establish that Stability AI's copyright notice was conveyed in connection with Plaintiffs'

16   works, but they have not done so.  Plaintiffs' claims under Section 1202(b)(3), first introduced in

17   their opposition brief, are deficient for the same reason as their Section 1202(b)(1) claim:

18   Plaintiffs have not alleged that the models output works that are identical to Plaintiffs'.  Finally,

19   Plaintiffs' unjust enrichment claim is preempted by copyright law.

20   **II.    ARGUMENT**

21         **A.     Plaintiffs do not plausibly allege that Stability AI induced infringement.**

22              **1.     Plaintiffs do not allege acts of infringement by a third party.**

23         Plaintiffs do not dispute that their inducement claim requires them to allege infringement

24   of their copyrighted images by a third party.  ECF No. 174 ("Opp'n") at 3–4; ECF No. 162

25   ("Mot.") at 4, 7.  Infringement by a third party is one of the key distinctions between a direct

26   infringement claim and an inducement claim.  *See id*. at 7 (citing *Columbia Pictures Indus., Inc.*

27   *v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013) ("To prove copyright infringement on an

28   inducement theory, [plaintiff] also had to adduce 'evidence of actual infringement by' users of

1   [defendant's] services.")).  As Stability AI pointed out in its opening brief, Plaintiffs' inducement

2   claim fails to allege infringement by a third party.  Mot. at 7.  It is therefore just a repetition of

3   arguments that the Court has already rejected as to direct liability.  Mot. at 4–5.  Plaintiffs offer

4   three reasons why their inducement claim supposedly differs from their direct infringement claim.

5   Opp'n at 5–6.  None is a substitute for an allegation of third-party infringement.

6          First, Plaintiffs argue that their inducement claim is factually distinct from their direct

7   infringement claim because it relates to distribution of Stability AI's app, Reimagine XL.  The

8   app, Plaintiffs allege, "allows users to elicit substantially similar copies of training images."

9   Opp'n at 5.  This argument is puzzling since Reimagine XL is mentioned in Plaintiffs' direct

10  infringement claim (Count 1), but *not* in their inducement claim (Count 2).  *See* ECF No. 129

11  ("FAC") ¶¶ 219–237.  More importantly, Plaintiffs do not allege any third-party acts of

12  infringement via the Reimagine XL app.  Plaintiffs cite their *own* use of Reimagine XL as an act

13  of infringement (*see* Opp'n at 4), but an author cannot infringe its own works.  *See Matthew*

14  *Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998) (rejecting a self-infringement

15  tactic where the plaintiff "failed to identify any primary infringer, other than [its own] counsel.").

16  Plaintiffs cannot plausibly contend that Stability AI induced Plaintiffs' attorneys—a defect they

17  ignore in their opposition brief.  Mot. at 7.

18         Second, Plaintiffs argue that their inducement claim is factually and legally distinct

19  because they are allowed to plead theories in the alternative.  Opp'n at 5–6.  But this is not simply

20  a matter of alternative pleading.  To plead an inducement claim, Plaintiffs must plausibly allege

21  each element of inducement, including infringement by a third party.  *Fung*, 710 F.3d at 1032,

22  1034.  Plaintiffs have not done so.

23         Third, Plaintiffs argue that their inducement claim is factually and legally distinct because

24  "the fulcrum of an inducement claim is Stability AI's liability for infringement **by others**."  Opp'n

25  at 6.  But a fulcrum is merely a pivot point around which a lever turns.  Plaintiffs lack the lever:

26  infringement by others.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913,

27  940 (2005) ("[T]he inducement theory of course requires evidence of actual infringement by

28  recipients of the device, the software in this case.").  Without an allegation of third-party

infringement, Plaintiffs' inducement claim merely duplicates their direct infringement claim, requiring dismissal.

### 2. Plaintiffs do not allege Stability AI's promotion of its models to commit copyright infringement.

The inducement claim fails for an independent reason.  Plaintiffs do not dispute that to allege inducement of copyright infringement, they must allege that Stability AI acted with an object of promoting its models' use to infringe copyright.  Opp'n at 3; Mot. at 4.  In response to Stability AI's argument that a single statement by its CEO is insufficient to establish promotion, Plaintiffs attempt to bolster the statement with quotes from a researcher named Nicholas Carlini.  Opp'n at 4.  But Plaintiffs' reliance on Carlini fails for three reasons.

First, Plaintiffs do not allege that Carlini has any affiliation with Stability AI.  Plaintiffs identify Carlini as a "prominent machine-learning researcher" who "has studied the behavior of diffusion models."  FAC ¶ 90.  But Carlini's academic findings do not provide the facts Plaintiffs must allege: that ***Stability AI itself*** promoted its models' use to commit copyright infringement.

Second, Plaintiffs' partial quotation on page 4, allegedly attributed to Carlini, is materially misleading.  Plaintiffs imply that Carlini found that "Stable Diffusion 'can be induced to generate essentially identical copies of certain training images.'"  Opp'n at 4 (citing FAC 136, which attributes the quoted text to "Carlini Paper at 4").  But the actual quote, included as footnote 2 of Carlini's academic publication,[1] states, "This paper covers a very restricted definition of 'memorization': ***whether*** diffusion models can be induced to generate near-copies of some training examples."  (Emphasis added.)  Footnote 2 is not a statement about the capability of diffusion models; it is a characterization of certain experimental parameters.  Nor does the statement speak to inducement by Stability AI.  Carlini uses the term "can be induced" to refer to the *models'* response to the *researchers'* instructions; he was not referring to any action by Stability AI or to the legal meaning of inducement.  The quote has no bearing on Stability AI's alleged inducement of third-party infringement.

---

[1] Nicholas Carlini, *Extracting Training Data from Diffusion Models* (Jan. 30, 2023), https://arxiv.org/pdf/2301.13188.pdf.

Third, a statement by an unrelated party that diffusion models are capable of generating "near-copies" (in addition to a vastly larger number of noninfringing outputs) is irrelevant. Plaintiffs must allege Stability AI's **own** "clear expression or other affirmative steps to foster infringement." *Fung*, 710 F.3d at 1034 (citation omitted). They do not.

In addition to the Carlini study, Plaintiffs suggest that Stability AI and its CEO promoted infringement with a series of statements characterizing diffusion models as a form of lossy data compression. Opp'n at 4. Yet Plaintiffs fail to explain how generic statements about compression amount to promotion of copyright infringement. Perhaps Plaintiffs are referring to their already-rejected theory that Stable Diffusion contains compressed copies of training images. But in response to Plaintiffs' original arguments on that subject, the Court stated that if Plaintiffs contend Stable Diffusion contains "compressed copies" of the Training Images, Plaintiffs need to define "compressed copies" and provide plausible facts in support. ECF No. 117 ("Order") at 9. As Plaintiffs' FAC provides neither the required definition nor explanation, the list of statements regarding the models' ability to compress data is irrelevant to Plaintiffs' inducement claim.

Plaintiffs' final attempt at alleging promotion of infringement reflects a misunderstanding of copyright principles. Plaintiffs cite a statement on the Clipdrop website that the Clipdrop Reimagine XL app "produces similar-looking images with different details and compositions." Opp'n at 4; FAC ¶ 180. By suggesting that "similar-looking images with different details and compositions" are equivalent to "substantially similar copies" amounting to copyright infringement, Plaintiffs conflate the protection of an expression with the protection of an idea. *Mazer v. Stein*, 347 U.S. 201, 217 (1954) (copyright protection "is given only to the expression of the idea—not the idea itself.") The remainder of the document Plaintiffs quote in the FAC underscores this error.[2]

---

[2] In assessing a motion to dismiss, the court may consider in their entirety documents that the complaint references or that are integral to its claims. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (footnote omitted) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) ("[C]onsideration [of entire document] is appropriate in the context of a motion to dismiss, and does not convert the motion into one for summary judgment.").

The quote comes from a document[3] that provides three example images produced by the app when prompted with an "Original" image.  The images are reproduced below.

   

From left to right: "Original"; "Reimagine 1"; "Reimagine 2"; "Reimagine 3"

To say that the second, third, and fourth images, which are indeed "similar-looking images with different details and compositions," are so similar to the "Original" as to constitute infringing copies is to grant protection to the idea of a bedroom with plants.  But copyright protects expression, not ideas.  "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery."  17 U.S.C. § 102(b).  Stability AI's description of its models as producing "similar-looking images with different details and compositions" falls far short of a promotion of infringement.  Likewise, representations that Stability AI's models can produce images in the style of a particular artist (*see* FAC ¶¶ 226-229) do not constitute promotion of infringement, because "style" is not copyrightable.  Mot. at 6 n.3.  Without some allegation of promotion—by Stability AI—of its models *to infringe copyright*, Plaintiffs' inducement claim cannot stand.

### 3. The fact that Stability AI's models are capable of noninfringing uses is not an affirmative defense.

Plaintiffs do not dispute that Plaintiffs themselves demonstrated the models' non-infringing uses by generating images in Exhibit D (ECF No. 129-4) of the FAC that have no relation to Plaintiffs' works.  Mot. at 6.  Instead, Plaintiffs argue—without supporting authority—that whether the models are "capable of noninfringing uses" is an affirmative defense and a question that must be reserved for trial.  *See* Opp'n at 6.  Plaintiffs are incorrect.

---

[3] Clipdrop, *Reimagine XL,* https://clipdrop.co/stable-diffusion-reimagine (last visited April 12, 2024).

1      In Stability AI's opening brief, it cited *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984), for the premise that noninfringing uses undermine a claim for secondary liability.  Mot. at 6.  In *Sony*, the Supreme Court looked to patent law for guidance regarding contributory copyright infringement.  *Sony*, 464 U.S. at 434–42.  The Court noted that "under the patent laws the Court has always recognized the critical importance of not allowing the patentee to extend his monopoly beyond the limits of his specific grant."  *Id*. at 441.  The Court further observed that patent cases deny the patentee any right to control the distribution of unpatented articles unless they are "unsuited for any commercial noninfringing use."  *Id*. (quoting *Dawson Chem. Co. v. Rohm & Haas Co*., 448 U.S. 176, 198 (1980)).  Nowhere did the Court characterize the issue of whether a product has noninfringing uses as an affirmative defense.  Plaintiffs nevertheless assert, without citation, that the issue is an affirmative defense.  Opp'n at 6.  To the contrary, the *Sony* Court drew the substantial noninfringing use test from patent law, and in patent law, a plaintiff must affirmatively plead that the component has no substantial noninfringing uses.  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

      In any event, courts in the Ninth Circuit consider whether a product or service has noninfringing uses at the motion to dismiss stage.  For example, the Ninth Circuit in *Luvdarts LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013), considered non-infringing uses in its affirmation of the district court's 12(b)(6) dismissal of a contributory copyright infringement claim.  *See also Caribbean Queen, Inc. v. Lee*, No. CV-20-09637 AB (JCx), 2021 WL 3215110, at *5 (C.D. Cal. Mar. 24, 2021) (dismissing claim where there was "no basis for concluding that [Plaintiff] actively induced this alleged infringement to occur" nor "any allegation that the product lacks substantial non-infringing uses.").

      Here, Plaintiffs argue that Stability AI's assertion of noninfringing uses is "conclusory, unsupported, and requires the Court to draw an impermissible inference in Stability AI's favor."  Opp'n at 6.  But no inference is needed; all that is needed is Plaintiffs' Exhibit D.  The exhibit shows a series of images generated by Plaintiffs using text prompts in Stable Diffusion.  In response to the word "chef," the model generates an image of a chef.  Plaintiffs do not allege that the image infringes Plaintiffs' rights.  FAC ¶¶ 160–161.  Nor do they allege that the image of a

teacher generated in response to the text prompt "teacher" infringes Plaintiffs' rights.  *Id*. ¶ 162.

Plaintiffs' own pleading, thus, demonstrates the models' noninfringing uses.  Mot. at 6.

Ignoring this Court's observation that "it is simply not plausible that every Training Image used to train Stable Diffusion was copyrighted" or that "*all* Output images are derivative images" (Order at 12), Plaintiffs stubbornly contend that Stability AI's models are "good for nothing else but infringement."  Opp'n at 6.  Particularly in view of Plaintiffs' own Exhibit D, the inaccuracy of Plaintiffs' blanket statement is self-evident.

**B.**      **Plaintiffs fail to state a claim under the DMCA.**

**1.**      **Plaintiffs have not plausibly alleged a claim under Section 1202(b)(1).**

Plaintiffs' opposition brief confirms that they believe that Stability AI "removes" CMI from their copyrighted works only at the output stage.  Opp'n at 9.  That is, they allege that Stability AI copies their images with CMI intact and trains its models on the images with the CMI intact, but when Stability AI's model outputs their images, there is no such CMI.  *Id*.; FAC ¶ 247. But those allegations, even if true, do not state a claim for improper removal of CMI under Section 1202(b)(1) for at least three independent reasons:  Plaintiffs have failed to allege  (1) the removal of CMI from an identical copy of any of their copyrighted works; (2) that any removal was intentional; and (3) that Stability AI had reasonable grounds to know that any removal would enable or conceal copyright infringement.

**a.**      **Plaintiffs have not alleged the removal of CMI from any of their copyrighted works.**

As Stability AI explained in its opening brief, Plaintiffs have not plausibly alleged that Stability AI "removed" CMI from their copyrighted works, as that term is used in Section 1202(b)(1), because they have not alleged that any output from any of Stability AI's models was identical to one of their copyrighted works but for the removal of CMI.  Mot. at 7–8. Plaintiffs do not dispute that they have not alleged any identical outputs.  Instead, they argue that (1) identicality is not required for removal; and (2) they do not need to show an identical output because the copyrighted works were used in their entirety for training.  Neither of these arguments has merit.

1        <u>Identicality</u>.  As explained in Stability AI's opening brief, courts in the Ninth Circuit have

2    found that omitting CMI from a work that is similar, but not identical to, a copyright owner's

3    copyrighted work does not constitute the "removal" of CMI for purposes of a claim under Section

4    1202(b).  *See* Mot. at 7-8 (citing cases).  Indeed, at least one other court has dismissed claims

5    alleging that a defendant violated Section 1202 when its large language model produced images

6    or text that were supposedly similar to the plaintiffs' copyrighted works, but not identical.  *See*

7    *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at \*8–9 (N.D. Cal. Jan. 22, 2024)

8    (dismissing Section 1202(b) claim for failure to meet law's identicality requirement).  The recent

9    Ninth Circuit decisions are unsurprising; an alternative result would be nonsensical.  As reflected

10   in Plaintiffs' Exhibit G, the output of the model is a new work, not a slavish copy of an old one.

11   *See* FAC, Exhibit G (ECF No. 129-7).  The statute does not require Stability AI to include

12   Plaintiffs' CMI on a new and different work.

13       In arguing otherwise, Plaintiffs do not cite a single on point Ninth Circuit case:

14   - *Columbia Pictures* was about copyright infringement, not Section 1202 of the

15      DMCA.  *Columbia Pictures Indus., Inc. v. Galindo*, No. 20-cv-3129 -MEMF

16      (GJSx), 2022 WL 17094713, at \*8 (C.D. Cal. Nov. 18, 2022).

17   - In *Friedman*, the Ninth Circuit found that "the photographs used by Live Nation

18      were exact copies of the images precisely as they appeared on Sony's website and

19      in Friedman's book." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188

20      (9th Cir. 2016).  The language that Plaintiffs quote in their papers delineates when

21      a court may infer copying by defendants; it does *not* address the standard for what

22      constitutes removal.  *Id*. ("A striking similarity between the works may give rise to

23      a permissible inference of copying.") (cleaned up).

24   - *Design Basics* held that there could be no DMCA claim where the works at issue

25      were not even substantially similar, not that substantial similarity would be

26      enough.  *Design Basics, LLC v. Signature Constr., Inc.*, No. 1:16-CV-1275, 2019

27      WL 4805888, at \*9 (C.D. Ill. Aug. 19, 2019).

28

1    Instead of citing relevant in-Circuit authority, Plaintiffs rely largely on an opinion from a

2  district court in Texas, *ADR International*, but that case does not help them either.  There, the

3  court explicitly distinguished a prior case, which had held that there was *no* DMCA violation

4  where "the plaintiff alleged the defendant used her work to generate nonidentical renditions of the

5  copyrighted works."  *ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*, 667 F. Supp. 3d 411, 428-29

6  (S.D. Tex. 2023).  That is Plaintiffs' theory here.

7    <u>Copyrighted works used in their entirety for training</u>:  Plaintiffs also argue that they have

8  alleged that "Defendants incorporated their Works ***in their entirety*** into the Stability Models as

9  Training Images."  Opp'n at 13-14 (emphasis in original).  That would not matter.  Plaintiffs do not

10  allege that CMI was removed from those training images; they allege that the models output new

11  images that lack CMI, and it is this output that constitutes removal.  FAC ¶ 247, Opp'n at 9.

12            **b.    Plaintiffs have not alleged that removal of CMI was intentional.**

13    As an initial matter, Plaintiffs argue that they have plausibly alleged the "***Knowing***

14  ***removal of CMI,***" relying on allegations that they claim show that Stability AI knew that

15  copyrighted works in its training sets contained CMI.  Opp'n at 9 (emphasis in original), 10

16  (discussing detection scores for watermarks).  But that is not the standard.  Under 1202(b)(1),

17  Plaintiffs must allege that Stability AI "***intentionally*** remove[d] or [a]ter[ed]" CMI, 17 U.S.C.

18  1202(b)(1) (emphasis added), not that it merely knew that CMI existed or was removed.  The

19  closest that Plaintiffs come is their conclusory statement that Stability AI's training process "is

20  designed to remove or alter CMI from the training images."  *Id.* at 9.  Another court has rejected

21  almost exactly this type of allegation on the grounds that it was not enough to plausibly allege a

22  DMCA claim.  *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223-AMO, 2024 WL 557720, at *4 (N.D.

23  Cal. Feb. 12, 2024) (failure to state a Section 1202(b)(1) claim where Plaintiffs alleged that "[b]y

24  design, the training process does not preserve any CMI" without providing facts in support.)

25  (alteration in original).

26    Plaintiffs' other allegations about how the training process works do not make plausible

27  Plaintiffs' conclusory statement that removal was intentional.  The diffusion process, according to

28  Plaintiffs, iteratively adds noise to an image until the image disappears, and then reverses the

1   steps to reveal the image.  FAC ¶¶ 82-90.  Plaintiffs do not explain how the models would use

2   this process to selectively remove CMI, such as Plaintiff Brom's signature, while maintaining the

3   rest of the image.

4          At most, Plaintiffs have alleged a general technological process that happens to remove

5   CMI while altering the image in other ways.  But courts have found that the DMCA does not

6   impose liability for the omission of CMI that occurs as an "unintended side effect" of a

7   technological process—like scraping images from the internet without also scraping associated

8   CMI.  *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *rev'd on other*

9   *grounds*, 336 F.3d 811 (9th Cir. 2003) (no Section 1202 liability arising from the fact that search

10  engine "crawler did not include [CMI] when it indexed the images"); *see also Logan v. Meta*

11  *Platforms, Inc.*, 636 F. Supp. 3d 1052, 1064 (N.D. Cal. 2022) ("Unlike editing a plaintiff's

12  watermark out of a photo, automatically omitting CMI by embedding a photo out of the full

13  context of the webpage where the CMI is found cannot itself plead intentionality as required by

14  the DMCA.").  In other words, the incidental removal of CMI does not raise an inference that any

15  removal of CMI was intentional, and incidental removal is all that Plaintiffs have alleged here.

16              **c.      Plaintiffs have not alleged that Stability AI had reasonable**
                          **grounds to know that its actions would enable or conceal**
17                        **copyright infringement.**

18          Plaintiffs do not dispute that they must allege that Stability AI had reasonable grounds to

19  know that its alleged removal of CMI "will induce, enable, facilitate, or conceal an infringement."

20  17 U.S.C. 1202(b); *see also* Opp'n at 8.  Attempting to satisfy this scienter element, Plaintiffs

21  simply assert that they have alleged that the removal of CMI "would induce, enable, facilitate, or

22  conceal" ongoing infringement.  *Id.* at 10.  But if a conclusory statement like Plaintiffs' were

23  sufficient to plead scienter, any party that plausibly pleads removal of CMI would automatically

24  satisfy the scienter element.  "[T]he mental state requirement in Section 1202(b) has a more

25  specific application than the universal possibility of encouraging infringement; specific

26  allegations as to how identifiable infringements 'will' be affected are necessary."  *Stevens v.*

27  *Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1222, 203 L. Ed. 2d

28  208 (2019).

Plaintiffs also rely on a user's ability to prompt an output of a similar style to an artist using an artist' name.  Opp'n at 13–14.  But, as Stability AI pointed out in its opening brief, that is not enough.  Opp'n at 15.  If the artist's name was included in the prompt, it is difficult to see how omitting CMI with the same information in the output would enable or conceal infringement. It is also not copyright infringement to mimic an aesthetic style.  Mot. at 8.  Plaintiffs attempt to undermine this argument by noting that DMCA claims are distinct from infringement claims. True enough, but that is not the point: Section 1202(b) requires that the violative act be done with "reasonable grounds to know[] that it will induce, enable, facilitate, or conceal" copyright infringement.  Since none of the models' output images contain substantial copyrightable expression, there is no infringement to induce, enable, facilitate, or conceal.

Plaintiffs' cases do not address this issue:

- Two of Plaintiffs' cited cases hold that claims under Section 1202—unlike claims for copyright infringement—do not require registration as a prerequisite for bringing a lawsuit.  *Med. Broad. Co. v. Flaiz,* No. Civ.A. 02-8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003) ("Nothing in § 1202 of the DMCA suggests that registration is a precondition to a lawsuit."); *Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("Although a DMCA claim requires the defendant to know of potential infringement, such requirement does not necessitate registration because infringement can occur absent registration.").

- Plaintiffs' third citation addresses a claim under Section 1201, not 1202.  *MDY Indus., LLC v. Blizzard Ent., Inc*., 629 F.3d 928, 950–52 (9th Cir. 2010).  That court considered whether certain provisions of Section 1201 prohibit circumvention of access controls when access does not constitute copyright infringement.  *Id*. (Noting that "bypassing a password and breaking into a locked room in order to read or view a copyrighted work would not infringe on any of the copyright owner's exclusive rights under § 106.")

Neither copyright registration requirements nor any element of Section 1201 is at issue in the present case.  Plaintiffs cannot rebut Stability AI's argument that lack of copyrightable expression in the models' output dooms Plaintiffs claims under Section 1202.

1    **2.      Plaintiffs have not plausibly alleged a claim under Section 1202(b)(3).**

2        For the first time, Plaintiffs claim that they have plausibly alleged a claim not only based

3    on the removal of CMI, but also the distribution of copyrighted works from which CMI had been

4    removed.  Opp'n at 7, 10.  Plaintiffs are presumably referencing DMCA Section 1202(b)(3),

5    which provides a cause of action for distribution of works "knowing that copyright management

6    information has been removed or altered."  17 USC 1202(b)(3).  That claim also fails.

7        First, Plaintiffs nowhere mention 1202(b)(3) or distribution in their complaint.  FAC

8    ¶¶ 238–250.  That alone is fatal to their claims.  *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1009

9    (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by the briefs in

10   opposition to a motion to dismiss.") (cleaned up).

11       Second, as explained in Section II.B.1.a, *supra*, Plaintiffs have not alleged that the model

12   generates works that are identical to the Plaintiffs' works.  That is fatal to Plaintiffs' 1202(b)(3)

13   claims, just as it is to their 1202(b)(1) claims.  *GitHub, Inc.*, 2024 WL 235217, at *8 (dismissing

14   Section 1202(b)(1) and 1202(b)(3) claims because "Section 1202(b) claims require that copies be

15   'identical.'"); *Kirk Kara Corp. v. W. Stone & Metal Corp.*, No. CV 20-1931-DMG (Ex), 2020

16   WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (substantial similarity not sufficient to plead

17   Section 1202(b)(3) claim).  To the extent that Plaintiffs are arguing that the distribution of the

18   models themselves is enough to state a 1202(b)(3) claim, that does not help them.  The Court has

19   rejected the theory that the models are derivative works, Order at 10 n.7, and even if they were, it

20   wouldn't state a claim under 1202(b)(3).

21       Third, as with 1202(b)(1), Plaintiffs must allege that Stability AI had reasonable grounds

22   to know that its actions would enable or conceal copyright infringement.  17 U.S.C. 1202(b).  For

23   the reasons explained in Section II.B.1.c, *supra*, Plaintiffs have alleged no such thing.

24   **3.      Plaintiffs' 1202(a) claim fails because (1) the MIT license is not
             "conveyed in connection with" Plaintiffs' works, and (2) Plaintiffs**
25   **         remain silent as to the requisite scienter.**

26       Plaintiffs do not dispute that for the MIT license to constitute false CMI, the license must

27   be "conveyed in connection with" Plaintiffs' works.  Attempting to dodge the outcome dictated

28   by *SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668, 670–71 (9th

Cir. 2020), Plaintiffs suggest that the Ninth Circuit gave special weight in that case to copyright markings on the plaintiff's photos. Opp'n at 17. Plaintiffs write, "and *critically*, 'Plaintiff's photos were imprinted with their own copyright markings.'" *Id*. But even a cursory review of the *SellPoolSupplies* opinion reveals that Plaintiffs' copied text is followed by a footnote. "We note that," explains the court, "even if this last fact were subject to genuine dispute, we would still agree with the district court that Defendants' copyright notice was not 'conveyed in connection' with Plaintiff's photos given the other undisputed facts." *SellPoolSuppliesOnline.com,* 804 F. App'x at 671 n.1. Clearly the presence of copyright markings on the plaintiff's photos was not dispositive. Plaintiffs cannot distinguish the remaining facts of *SellPoolSupplies*: defendants' copyright notice (1) was located in a separate region from plaintiff's photos, (2) was generic, (3) did not communicate that defendants owned the photos, and (4) was not located on or next to the photos. *Id*. at 671. Even if a court were to conclude that the models somehow incorporate Plaintiffs' works—a conclusion which Stability AI denies—the parallels to *SellPoolSupplies* demonstrate that the MIT license was not conveyed in connection with Plaintiffs' works.

Plaintiffs' claim further fails for lack of intent. Plaintiffs do not dispute that they must allege that Stability AI "knowingly and with the intent to induce, enable, facilitate, or conceal infringement" provided or distributed false CMI. Opp'n at 16. But apart from a rote recitation of the elements of a CMI claim, Defendants say nothing of Stability AI's scienter with respect to the supposedly false CMI. *See* Opp'n at 14–17. Plaintiffs must demonstrate that Stability AI "knowingly" provided false CMI *and* that it did so "with the intent to induce, enable, facilitate, or conceal infringement. 17 U.S.C. 1202(a); *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018). This Plaintiffs haven't even tried to do.

### C.    Plaintiffs' unjust enrichment claim must be dismissed.

#### 1.    Right of publicity elements do not save Plaintiffs' claim.

Courts have found preemption where the core of the unjust enrichment claim is unauthorized copying of the plaintiff's work. *See Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, No. C 07-3983JSW, 2007 WL 4532214, at \*9 (N.D. Cal. Dec. 19, 2007); *Shade v. Gorman*, No. C 08-3471 SI, 2009 WL 196400, at \*5 (N.D. Cal. Jan. 28, 2009). When

considering preemption of right of publicity claims by copyright law, the Ninth Circuit has distinguished between (1) claims targeting non-consensual use of one's name or likeness on merchandise or in advertising and (2) claims that a likeness has been captured in a copyrighted visual work and the work itself is being distributed. *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017). The latter type of publicity-right claim "interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act." *Id.* Here, Plaintiffs do not contend that Stability AI has used their names and likenesses on merchandise or in advertising. Instead, they contend that Stability AI was unjustly enriched by the models' ability to "mimic Plaintiffs' artistic style." Opp'n at 20. At heart, their unjust enrichment claim is one alleging unauthorized reproduction of Plaintiffs' works and unauthorized creation of derivative works. Under these circumstances, the "subject matter of the state law claims falls within the subject matter of copyright and the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106." *Maloney*, 853 F.3d at 1020 (cleaned up).

### 2. Plaintiffs do not allege that existing legal remedies are inadequate.

Plaintiffs attempt to distinguish their unjust enrichment claim from their copyright infringement claims by seeking alternative, equitable remedies. Opp'n at 19. Yet a plaintiff seeking equitable remedies must do more than just ask for different remedies. They must explain why legal remedies, *i.e.*, monetary damages, are inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). "The issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021) (citing *Sonner*, 971 F.3d at 844.). "*Sonner* holds that it does not." *Id.*

Although some California district courts have distinguished *Sonner* (*see Perez v. Bath & Body Works, LLC*, No. 21-CV-05606-BLF, 2022 WL 2756670, at *7 (N.D. Cal. July 14, 2022)), the Ninth Circuit continues to rely on its holding to affirm dismissals of equitable claims. *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612, (2023) (dismissing equitable claim and noting that

"[n]othing in *Sonner*'s reasoning suggested that its holding was limited to cases in which a party had voluntarily dismissed a damages claim to avoid a jury trial."); *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *2 (9th Cir. Jan. 17, 2024) (dismissing claim for retrospective equitable relief because plaintiff's complaint "contains no allegations as to why she lacks an adequate remedy at law for her disgorgement and restitution claims."). Because Plaintiffs have not sufficiently pled their lack of an adequate remedy at law, this Court does not have equitable jurisdiction to hear Plaintiffs' claim. The unjust enrichment claim must be dismissed.

### D. Additional named plaintiffs and claims exceed the scope of the Court's Order.

Plaintiffs do not dispute that they must respect the Court's Order regarding the scope of permissible amendment. Opp'n at 21–22. The Order allowed leave to amend "to provide clarity regarding [Plaintiffs'] theories of how each defendant separately violated their copyrights, removed or altered their copyright management information, or violated their rights of publicity and plausible facts in support." Order at 1. But instead of clarifying their existing claims, Plaintiffs added seven new class representatives, replaced their vicarious liability claim with one for inducement, and exchanged their unfair competition claim for one for unjust enrichment.

If Plaintiffs wanted to exceed the limits of the Order, they should have requested leave to amend further. *See Aikins v. St. Helena Hosp.*, No. C 93-3933 FMS, 1994 WL 794759, at *2 (N.D. Cal. Apr. 4, 1994) ("Plaintiffs did not request leave to name a new plaintiff, and the Court's order cannot reasonably be construed as having granted plaintiffs such leave."); *Peguero v. Toyota Motor Sales, USA, Inc.*, No. 2:20-cv-05889-VAP (ADSx), 2021 WL 2910562, at *4 (C.D. Cal. Apr. 26, 2021) (amendment exceeded scope of leave where "Plaintiffs did not obtain Defendants' consent to add three additional Plaintiffs or the seven new claims in the FAC."). Here, Plaintiffs failed to request the Court's leave or Stability AI's consent to add two causes of action and seven new class representatives. These amendments exceed the scope of the Court's Order and should be dismissed.

### III. CONCLUSION

Stability AI urges the Court to dismiss with prejudice Plaintiffs' claims of inducement (Count Two), violation of the DMCA (Count Three), and unjust enrichment (Count Four).

1    Dated: April 18, 2024                    MORRISON & FOERSTER LLP

2

3                                            By: */s/ Joseph C. Gratz*
                                                 Joseph C. Gratz
4

5                                                JOSEPH C. GRATZ
                                                 JGratz@mofo.com
6                                                TIFFANY CHEUNG
                                                 TCheung@mofo.com
7                                                TIMOTHY CHEN SAULSBURY
                                                 TSaulsbury@mofo.com
8                                                EOIN P. CONNOLLY
                                                 EConnolly@mofo.com
9                                                MORRISON & FORESTER LLP
                                                 425 Market Street
10                                               San Francisco, California 94105-2482
                                                 Telephone:     415.268.7000
11                                               Facsimile:     415.268.7522

12                                               ALLYSON R. BENNETT
                                                 ABennett@mofo.com
13                                               LAURA G. REMUS
                                                 LRemus@mofo.com
14                                               MORRISON & FOERSTER LLP
                                                 707 Wilshire Boulevard
15                                               Los Angeles, California 90017-3543
                                                 Telephone:     213.892.5200
16                                               Facsimile:     213.892.5454

17                                               ADITYA V. KAMDAR
                                                 AKamdar@mofo.com
18                                               MORRISON & FOERSTER LLP
                                                 2100 L Street, NW, Suite 900
19                                               Washington, DC 20037
                                                 Telephone:     202.887.1500
20                                               Facsimile:     202.887.0763

21                                               MARK A. LEMLEY (CA SBN 155830)
                                                 mlemley@lex-lumina.com
22                                               LEX LUMINA PLLC
                                                 745 Fifth Avenue, Suite 500
23                                               New York, New York 10151
                                                 Telephone:     646.898.2055
24                                               Facsimile:     646.906.8657

25                                               *Attorneys for Defendants*
                                                 STABILITY AI LTD. and STABILITY
26                                               AI, INC.

27

28

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on April 18, 2024 the within document was filed with the Clerk of the

3

Court using CM/ECF which will send notification of such filing to the attorneys of record in this

4

case.

5

*/s/ Joseph C. Gratz*
JOSEPH C. GRATZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28