LATHAM & WATKINS LLP
Andrew M. Gass (SBN 259694)
 andrew.gass@lw.com
Michael H. Rubin (SBN 214636)
 michael.rubin@lw.com
Brittany N. Lovejoy (SBN 286813)
 brittany.lovejoy@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600

*Attorneys for Defendant DeviantArt, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| SARAH ANDERSEN, et al., | CASE NO. 3:23-cv-00201-WHO |
| Individual and Representative Plaintiffs, | **DEFENDANT DEVIANTART, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| v. | |
| STABILITY AI LTD., et al., | |
| Defendants. | Date:     May 8, 2024 |
| | Time:     2:00 p.m. |
| | Place:    Courtroom 2 - 17th Floor |
| | Before:   Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 2

A. The FAC Fails To State a Copyright Claim Against DeviantArt ......................... 2

    **1.** Stable Diffusion 1.4 Is Not a "Copy" of Plaintiffs' Images ..................... 3

    **2.** The FAC Fails To Allege that DreamUp Is an Infringing Derivative Work ................................................................................... 8

    **3.** The FAC Fails To Allege DreamUp Is a "Copy" of Plaintiffs' Images ................................................................................................ 10

    **4.** Plaintiffs Offer No Substantive Response to DeviantArt's Fair Use Defense ................................................................................................ 10

B. The FAC Fails To Allege a Breach of DeviantArt's Terms .............................. 11

C. The FAC Fails To Allege a Breach of the Implied Covenant............................. 12

D. The FAC Fails To State an Unjust Enrichment Claim ....................................... 13

E. The Court Should Dismiss the Additional Named Plaintiffs.............................. 15

III. CONCLUSION............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Altera Corp. v. Clear Logic, Inc.*,
   424 F.3d 1079 (9th Cir. 2005) ................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................2, 10

*Avila v. Cate*,
   No. 10-cv-01208, 2011 WL 2680844 (E.D. Cal. July 8, 2011).................5

*Bittel Tech., Inc. v. Bittel USA, Inc.*,
   No. 10-cv-00719, 2010 WL 3221864 (N.D. Cal. Aug. 13, 2010) ...........15

*Boobuli's LLC v. State Farm Fire and Cas. Co.*,
   562 F. Supp. 3d 469 (N.D. Cal. 2021) ...................................................14

*Doe 1 v. GitHub, Inc.*,
   No. 22-cv-06823, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024)................13

*Foley v. Interactive Data Corp.*,
   47 Cal.3d 654 (1988) .............................................................................12

*Graham v. Central Garden & Pet Co.*,
   No. 22-cv-06507, 2023 WL 2744391 (N.D. Cal. Mar. 30, 2023) ..............6

*Jameson Beach Prop. Owners Ass'n v. U.S.*,
   No. 13-cv-01025, 2014 WL 4925253 (E.D. Cal. Sept. 29, 2014) ...........15

*Kadrey v. Meta Platforms, Inc.*,
   No. 23-cv-03417, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .........9, 13

*Kadrey v. Meta Platforms, Inc.*,
   No. 23-cv-03417, Dkt. 1 (N.D. Cal. filed July 7, 2023) ................8, 9, 13

*Kadrey v. Meta Platforms, Inc.*,
   No. 23-cv-03417, Dkt. 64 (N.D. Cal. filed Dec. 11, 2023) ......................9

*La Terra Fina USA, LLC v. Reser's Fine Foods, Inc.*,
   No. 23-cv-02631, 2024 WL 874110 (N.D. Cal. Feb. 29, 2024)................7

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) .............................................................9, 14

*McClain v. Octagon Plaza, LLC*,
   159 Cal. App. 4th 784 (2008) ...............................................................12

*McCormick v. Sony Pictures Entm't*,
   No. 07-cv-05697, 2008 WL 11336160 (C.D. Cal. 2008) .......................14

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
   156 F. Supp. 3d 1052 (N.D. Cal. 2016) ...................................................................13

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .................................................................................14

*Rejoice! Coffee Co., LLC v. Hartford Fin. Serv. Grp., Inc.*,
   No. 20-cv-06789, 2021 WL 5879118 (N.D. Cal. Dec. 9, 2021) .............................14

*Rockridge Trust v. Wells Fargo, N.A.*,
   985 F. Supp. 2d 1110 (N.D. Cal. 2013) ..................................................................12

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ...............................................................................10

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
   7 F.3d 1434 (9th Cir. 1993) ...................................................................................13

*Thomas v. Cricket Wireless, LLC*,
   No. 19-cv-07270, 2021 WL 214205 (N.D. Cal. Jan. 21, 2021) ..............................15

*Thomson Reuters Enter. Centre GmbH v. Ross Intl. Inc.*,
   No. 20-cv-613, 2023 WL 6210901 (D. Del. Sept. 23, 2023) ..................................11

*Torio v. Wells Fargo Bank, N.A.*,
   No. 16-cv-00704, 2016 WL 2344243 (N.D. Cal. May 4, 2016) ..............................10

*Tremblay v. OpenAI*,
   No. 23-cv-03223, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ...........................8, 9

*Tremblay v. OpenAI*,
   No. 23-cv-03223, Dkt. 1 (N.D. Cal. filed June 28, 2023) ...................................8, 15

*United States v. Casasola*,
   670 F.3d 1023 (9th Cir. 2012) .................................................................................8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...................................................................................6

*Zito v. Steeplechase Films, Inc.*,
   267 F. Supp. 2d 1022 (N.D. Cal. 2003) ..................................................................14

**STATUTES**

17 U.S.C.
   § 101 ...................................................................................................................4, 7, 8
   § 106 ...................................................................................................................3, 11
   § 107 ........................................................................................................................11
   § 301 ........................................................................................................................13

**RULES**

Fed. Rule Civ. Proc. 8(a)(2) .........................................................................................2

# OTHER AUTHORITIES

CompVis, Stable Diffusion Readme, GitHub, https://github.com/CompVis/stable-diffusion (last accessed Apr. 17, 2024)...................................................................................7

Nicholas Carlini et al., Extracting Training Data from Diffusion Models at 6, https://arxiv.org/pdf/2301.13188.pdf (Jan. 30, 2023)...............................................................5

## I.   INTRODUCTION

The claims against DeviantArt in the First Amended Complaint, *see* Dkt. 129 ("FAC"), are unique in one important respect: in the universe of pending AI lawsuits, they are the only ones to allege that a defendant who *downloads* an AI model is directly liable for infringing each of the billions of works used by others to train it.  Other claims—both in this lawsuit and in over a dozen other generative AI lawsuits around the country—seek redress against defendants who used copyrighted material to *train* an AI model.  If credited, Plaintiffs' novel theory against DeviantArt would expose not only DeviantArt to the risk of astronomical statutory damages awards in the billions of dollars, but also each of the millions of other businesses, researchers, startups, and hobbyists who also downloaded these models—even if they took no part in creating them.

That theory is based on Plaintiffs' mistaken assertion that Stable Diffusion version 1.4 is a "Statutory Copy" of each image in its training dataset—which would mean that downloading the model is the functional equivalent of illegally downloading 5.85 billion images.  Plaintiffs advanced a version of that argument in their original complaint, including by suggesting that the models were a "directory" of "compressed" "JPEG files."  Dkt. 1 ¶ 75(c).  The Court found those allegations insufficient to support a claim and instructed Plaintiffs to "clarify" them, either by providing "plausible facts" to explain how the model includes "compressed copies," or by providing "plausible facts" suggesting that Plaintiffs' images were otherwise "fixed" in the models such that they could be retrieved in the form of similar outputs.  Dkt. 117 ("Order") at 9.

Plaintiffs' FAC does neither, and nothing in Plaintiffs' Opposition suggests otherwise. Dkt. 177 ("Opp.").  Notwithstanding the Court's directive, Plaintiffs do not elaborate on their "compressed copies" theory in the FAC; instead, they add a handful of quotes from podcasts and papers using the word "compression" or some variation of the same.  Indeed, their thin treatment of this issue led DeviantArt to assume Plaintiffs had abandoned that theory altogether.  *See* Mot. at 10.  Further, the FAC includes no facts suggesting that the 84 images Plaintiffs assert in this lawsuit can be retrieved from Stable Diffusion 1.4, and in fact relies on a scientific study whose results suggest they cannot be.  Even accepted as true, none of these allegations "show[s]" that downloading Stable Diffusion 1.4 is the functional equivalent of downloading 5.85 billion images.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. Rule Civ. Proc. 8(a)(2))).

Accepting Plaintiffs' "conclusions" would stretch the statutory definition of "copies" beyond reason and pave the way for a host of lawsuits against millions of innocent parties who downloaded AI models, even if those parties were unaware of and did not participate in the creation of those models and had not used the models to generate any infringing outputs. This Court should reject that theory by dismissing Count XV with prejudice.

So too for Plaintiffs' other claims. Their breach of contract claim (Count XVI) is identical to the breach claim this Court already dismissed, and their added implied-covenant claim relies on abstract grievances that have nothing to do with DeviantArt's terms of service ("TOS"). Plaintiffs' attempt to save their unjust enrichment claim (Count XVII) from preemption by recasting the TOS as a "misrepresentation" about DeviantArt's "support[]" of "artists," *see* Opp. at 19, fails for multiple reasons, including Plaintiffs' failure to point to any provision that is in any way inconsistent with DeviantArt's decision to release an image-generation service.

DeviantArt has been a defendant in this lawsuit for over a year, and Plaintiffs have yet to find a coherent theory of liability against it. The reason is clear: DeviantArt does not belong in this lawsuit. This Court should dismiss the claims against DeviantArt with prejudice.

## II. ARGUMENT

### A. The FAC Fails To State a Copyright Claim Against DeviantArt

According to their Opposition, Plaintiffs have asserted "three distinct factual theories of infringement by DeviantArt." Opp. at 5. First, Plaintiffs claim that DeviantArt "infringed Plaintiffs' works [] the moment it copied Stable Diffusion 1.4" by downloading it from a public website. *Id.*; *see also* FAC ¶ 234 (asserting that "anyone who in fact downloads" any version of "Stable Diffusion" has "engaged in infringing activity"). Second, Plaintiffs claim that, because DeviantArt allegedly "put that [downloaded] copy of Stable Diffusion 1.4 inside DreamUp," DreamUp must be an "infringing Statutory Derivative Work" because it is, in that sense, "based upon" Stable Diffusion. Opp. at 5. Third, Plaintiffs claim that "DreamUp may also turn out to be

a Statutory Copy" of their images "if discovery reveals" that DreamUp can reproduce identical copies of them. *Id.* at 5–6. None of these theories states a claim for relief against DeviantArt.

### 1. Stable Diffusion 1.4 Is Not a "Copy" of Plaintiffs' Images

Plaintiffs' first claim—that DeviantArt violated the Copyright Act by "download[ing]" Stable Diffusion 1.4 from the Internet—hinges on whether Plaintiffs have plausibly alleged that Stable Diffusion 1.4 is itself a "cop[y]" of Plaintiffs' copyrighted images. FAC ¶ 234; 17 U.S.C. § 106(1). If Stable Diffusion 1.4 is not itself a "cop[y]," then the allegation that DeviantArt downloaded the model is not a basis for copyright liability. *Contra* Opp. at 5; *see* 17 U.S.C. § 106.

Plaintiffs' insistence that AI models are "copies" of their training data is not new. In its October 30 Order, the Court acknowledged that Plaintiffs' original complaint "repeatedly allege[d] that Stable Diffusion contains compressed copies of registered works," but rejected those allegations as "unclear." Order at 9–10 (stressing Plaintiffs' failure to "plausibly show how DeviantArt is liable for direct copyright infringement when . . . [it] simply provides its customers access to Stable Diffusion"). The Court instructed Plaintiffs to "clarify their theory" in one of two ways. First, it suggested that Plaintiffs "define 'compressed copies' and explain plausible facts in support" of their theory that the models are equivalent to image directories. Order at 9. Second, the Court suggested an alternative: Plaintiffs could allege that Stable Diffusion contains "algorithms or instructions" capable of "reconstruct[ing] the Training Images in whole or in part." *Id.* But to plead that theory, Plaintiffs would have to provide "plausible facts" to show that the models could reconstruct specific images owned by the Plaintiffs. *Id.* at 9–11. The facts alleged in the FAC satisfy neither option presented by the Court.

#### a. Plaintiffs' FAC Does Not Support the "Compressed Copies" Theory

Plaintiffs' FAC includes no "plausible facts in support" of the "compressed copies" theory. Order at 9. Plaintiffs do not "define 'compressed copies'" as the Court suggested. *Id.* Nor do they provide any facts suggesting that the specific images they assert in this lawsuit are somehow stored in the Stable Diffusion models, which (they conceded) consists of "Python code" and a "weights file," *i.e.* "a big binary mass of numbers." *Id.*; Dkt. 97 at 13:6–15. Instead, Plaintiffs point to offhand references to "data compression" found in blog posts, podcasts, and research

papers.  Opp. at 6–8 (citing FAC ¶¶ 117–27).  But that is no different than what Plaintiffs did in their original complaint.  *See, e.g.*, Dkt. 1 ¶ 78 & n.7 (quoting phrase "lossy compression" from academic paper); *id.* ¶ 100 & n.8 (quoting statement by former Stability CEO about "compressing . . . 100 terabytes of images").  The Court already held that these kinds of vague, generalized references to compression were insufficient to state a claim, *see* Order at 8–10, and Plaintiffs do not explain why the Court should reach a different result here.  Plaintiffs have failed to "clarify" their "compressed copies" theory with "plausible facts in support."  *Id.* at 9.

b.    <u>Plaintiffs Do Not Allege Stable Diffusion 1.4 Can "Reconstruct" Images</u>

Plaintiffs also press the alternative theory: that Stable Diffusion 1.4 is an "infringing Statutory Copy" of billions of images because it is a "material object[] . . . in which [those images are] fixed . . . and from which [those images] can be perceived, reproduced, or otherwise communicated."  Opp. at 2, 4 (quoting 17 U.S.C. § 101's definition of "copies").  But Plaintiffs' FAC does not allege that their images are actually "fixed" in the model itself among the alleged "Python code" and "binary mass of numbers."  Dkt. 97 at 13:6–15.  Nor does the FAC plausibly allege that the model DeviantArt allegedly downloaded—Stable Diffusion 1.4—is actually capable of reproducing or otherwise communicating any of the 84 registered images Plaintiffs assert in this lawsuit.  *Cf.* Opp. at 4 n.2.  As DeviantArt noted, the FAC does not include a single example of Stable Diffusion 1.4 (or DreamUp) reproducing Plaintiffs' works or anything similar to them.  Mot. at 12.  Plaintiffs do not contest that basic point.  Instead, they point to discussion of Stable Diffusion 1.4 in the Carlini Study (but ask the Court to ignore the study's explicit conclusions, including that Stable Diffusion 1.4 does *not* reproduce its training images).  *See infra* Part II.A.1.b.i.  And they claim that their attempts to manipulate *other* models are somehow sufficient to show that their works are "fixed" in Stable Diffusion 1.4.  *See infra* Part II.A.1.b.ii.  Neither argument holds water.

i.    *The Carlini Study Contradicts Plaintiffs' Allegations*

The FAC's only concrete allegation as to Stable Diffusion 1.4 is its reference to the Carlini Study, which reports on an effort to "extract" training data from Stable Diffusion 1.4 and concludes that the model is not capable of reproducing training images other than in very narrow and

vanishingly rare circumstances not present here.  In particular, the Carlini researchers evaluated whether Stable Diffusion 1.4 had "memorized" training images by attempting to prompt the model to reproduce them.  *See* Nicholas Carlini et al., Extracting Training Data from Diffusion Models at 6, https://arxiv.org/pdf/2301.13188.pdf (Jan. 30, 2023) ("Carlini Study").  The researchers focused on "duplicated training examples"—*i.e.*, images that appeared multiple times in the training dataset—which are "orders of magnitude more likely to be memorized than non-duplicated examples." *Id.* at 4.  In the paper's own words:

> [W]e select the 350,000 most-duplicated examples from the training dataset and generate 500 candidate images for each of these prompts (totaling 175 million generated images). . . .
>
> We then take each of these generated images and annotate each as either 'extracted' or 'not extracted' by comparing it to the training images . . . We find that 94 images are [] extracted.
>
> To ensure that these images not only match some arbitrary definition, we also manually annotate the top-1000 generated images . . . by visual analysis, and find that a further 13 (for a total of 109 images) are near-copies of training examples . . . .

Carlini Study at 4–6 (emphasis added); Mot. at 12–13 (explaining this methodology).  In other words, even when a team of nine scientists focused a sophisticated "extraction attack" attempting to duplicate training images, *less than one in a million generated outputs* were "near-copies" of images in the training data.  Carlini Study at 5–6.  Those results suggest that, if Plaintiffs' images were even used to train Stable Diffusion 1.4, that model is extremely unlikely to reproduce those images as outputs.  In fact, that possibility is even *more* remote in light of the FAC's suggestion that Plaintiffs' images appear only once in the training dataset (as Plaintiffs do not contest), which means they are "orders of magnitude" less likely to be extracted than the highly duplicated training images on which the Carlini researchers focused.  *Id.* at 4–6 (Figure 5) (most images studied were "duplicated at least [] 100 times" in the training data); Mot. at 13 (Plaintiffs' images appeared only once, if at all, in training data).  The study thus contradicts Plaintiffs' conclusory suggestion that Stable Diffusion 1.4 is "capable of emitting stored copies" of the 84 images Plaintiffs assert here. FAC ¶ 393(b); *see Avila v. Cate*, No. 10-cv-01208, 2011 WL 2680844, at *5 n.1 (E.D. Cal. July 8, 2011) (where extrinsic material "contradicts the allegations," material "trump[s] the pleadings").

Plaintiffs do not disagree with any of this.  Nor do they contest that they incorporated the

Carlini Study into the FAC.  *See* Mot. at 12 n.8.  Instead, in the single paragraph of their Opposition referencing the Carlini Study, they contend that the Court must "accept" their allegations about what the study says "as true" and disregard both its contents and DeviantArt's reliance on them.  Opp. at 11.  That is incorrect.  *See* Wright & Miller, Federal Practice and Procedure § 1327 (a "district court obviously is not bound to accept the pleader's allegations as to the effect" of an extrinsic document and must "form its own conclusions").

Plaintiffs' only support is a case in which a court declined to entertain a defendant's objection to the *methodology* of a scientific study.  *Graham v. Central Garden & Pet Co.*, No. 22-cv-06507, 2023 WL 2744391, at *2 (N.D. Cal. Mar. 30, 2023) (declining to consider arguments about "the studies' limitations").  But DeviantArt does not question the Carlini Study's methodology; it relies on the study's *conclusions*.  As DeviantArt argued (and as Plaintiffs again do not contest), *see* Mot. at 13 n.10, the Court must accept those conclusions as true for purposes of this Motion.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (documents incorporated by deference are "part of the complaint" and their "contents" must be accepted as "true for purposes of a motion to dismiss").

ii.    The FAC's Example Outputs from Other Models Are Irrelevant

Plaintiffs urge this Court to "infer[]" that Stable Diffusion 1.4 can generate copies of their works based on their allegations that "other versions of Stable Diffusion are capable of generating outputs that mimic Plaintiffs' works."  Opp. at 11.  In support, they cite to Exhibits D, E, G, and H, which feature outputs that Plaintiffs derived from other models.  *Id*.  This argument fails twice.

First, nothing in the FAC suggests that DeviantArt implemented the models that Plaintiffs used to create these exhibits.  Mot. at 14.  Plaintiffs do not disagree that the model DeviantArt allegedly used—Stable Diffusion 1.4—is a distinct model.  *See id.* (allegations suggest variation between models).  And while Plaintiffs claim they are at an "informational disadvantage," Opp. at 11 (demanding "discovery"), they have conceded that the Stable Diffusion 1.4 model is publicly available.[1]  This Court has already noted that the Plaintiffs "have access[] to Stable Diffusion" and have a duty to use that access to "provide more facts" to support their allegations, rather than rely

---

[1] *See* Dkt. 1 ¶¶ 52–53; FAC ¶ 389 (citing Stable Diffusion 1.4 public download site).

entirely on inferences.  Dkt. 97 at 5:14–19.  If it were possible to use Stable Diffusion 1.4 to recreate copies of the 84 images Plaintiffs assert here, there is no reason why Plaintiffs could not have done so and included those outputs in their 94-page, 14-exhibit FAC.  Plaintiffs cannot rely on allegations regarding *other models* to address that failure.  *La Terra Fina USA, LLC v. Reser's Fine Foods, Inc.*, No. 23-cv-02631, 2024 WL 874110, at *3 (N.D. Cal. Feb. 29, 2024) (allegations as to "two products" insufficient to state a claim against "all of" the defendants' products).

Second, the exhibits on which Plaintiffs rely do not suggest that *any* model is capable of reproducing the 84 images they assert here.  Exhibits D and E consist entirely of outputs that are, at best, *stylistically* similar to Plaintiffs' overall bodies of work.  Mot. at 14–15; FAC ¶ 161 (noting similarities like "brushwork" and "gothic and countercultural air").  That these models may be capable of producing stylistically similar outputs suggests only that the models have learned those (unprotectable) artistic styles by extracting "statistic[s]" representing them.  *See* Dkt. 1 ¶ 17. *But see* Dkt. 50 at 20–21 (styles not protectable); Order at 20–21 n.15 (same); Mot. at 15 (same).  It does *not* suggest that the 84 specific works Plaintiffs allege here are "fixed" in the models, or that users "can [] perceive[], reproduce[], or otherwise communicate[]" those specific images, as opposed to distinct images of a similar style.  17 U.S.C. § 101.

So too for Exhibits G and H.  As DeviantArt already explained, Plaintiffs created each of the outputs in these exhibits by feeding *their own images* into the models to create "[v]ariation[s]" of them.  Mot. at 15.  Plaintiffs' only response is to point to paragraphs from the Complaint that explain that the sole purpose of these "image-to-image" services is to create outputs that are "similar-looking" to an input image.  *See* Opp. at 11; FAC ¶¶ 180, 185.  That is precisely what Exhibits G and H show: that when Plaintiffs input their own images, the models created a "similar-looking" output.  FAC ¶ 180.  But the fact that "Image Variation" services can mimic an image *provided by a user* does not mean that the service is capable of producing or communicating such an output *without* first seeing the image in question.[2]  Indeed, Plaintiffs' failure to generate

---

[2] Diffusion models can both create new images and modify existing ones.  CompVis, Stable Diffusion Readme, GitHub, https://github.com/CompVis/stable-diffusion (last accessed Apr. 17, 2024) ("Image Modification with Stable Diffusion" allows "image-to-image translation and upscaling"); FAC ¶ 390 (citing this source); *id.* ¶ 185 (Runway's "Image Variation" service).

1  substantially similar copies of their images using text inputs—despite what appears to be an

2  extensive investigation—suggests that the services cannot do so.

3      Plaintiffs, in other words, have failed to allege facts that plausibly suggest that Stable

4  Diffusion 1.4 contains "compressed copies" of the 84 images Plaintiffs allege here—or that those

5  images are otherwise "fixed" in Stable Diffusion 1.4 such that they can be "perceived, reproduced,

6  or otherwise communicated" via that model.  17 U.S.C. § 101 (defining "copies").  And, for that

7  reason, Plaintiffs do not and cannot allege that Stable Diffusion 1.4 is a "copy" of their works,

8  *id.*—or that DeviantArt violated Plaintiffs' rights by simply downloading it.

9      Any other result would risk a tidal wave of lawsuits against the tens of millions of

10  researchers, startups, institutions, and hobbyists who have downloaded Stable Diffusion.  Mot. at

11  7–8 (aggregate liability would stretch into the trillions of dollars).  To be clear, DeviantArt is not

12  suggesting that it should "avoid[] liability" because "[e]veryone else is doing it."  *Contra* Opp. at

13  9.  The point is that Plaintiffs' claim against DeviantArt—along with its tortured interpretation of

14  the statutory term "copies"—is absurd on its face and, if entertained, could have grave implications

15  that reach far beyond this lawsuit.  Courts "do not construe statutes in a manner that would lead to

16  absurd results" nor do they "impute to Congress an intent to create a law that produces an

17  unreasonable result."  *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012).

18      **2.      The FAC Fails To Allege that DreamUp Is an Infringing Derivative Work**

19      Plaintiffs' supposed second "distinct factual theor[y] of infringement" is that, "once

20  DeviantArt put [a] copy of Stable Diffusion 1.4 inside DreamUp, DreamUp became at minimum

21  an infringing Statutory Derivative Work."  Opp. at 5.  Their theory, as expressed in the Opposition,

22  is that DreamUp is an infringing derivative work because it is "based upon" a model (*i.e.*, Stable

23  Diffusion 1.4) that was, in turn, allegedly "based upon" the Plaintiffs' 84 registered images (among

24  billions of others).  Opp. at 5, 8.  This appears to be a variation on the theme that Plaintiffs' counsel

25  has repeatedly raised in similar lawsuits before courts in this district,[3] to no avail: that a derivative

26  work claim requires nothing more than an allegation that a challenged work is "based on" or

27

28  ───────────────
[3] Complaints *in Tremblay v. OpenAI*, No. 23-cv-03223, Dkt. 1 ¶ 59 (N.D. Cal. filed June 28, 2023) and *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, Dkt. 1 ¶ 44 (N.D. Cal. filed July 7, 2023).

"derived from" another work.  Indeed, Plaintiffs advanced a version of the same argument in their first complaint, insisting that DreamUp was "itself an infringing derivative work" because it is allegedly based on and "incorporates Stable Diffusion."  Dkt. 65 at 6, 8.  The Court rejected that theory in its Order.  Order at 10 n.7; *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (contention that work is derivative if "based on" other work was "frivolous").  Without exception, every other court to consider the argument has done the same.[4]

Tellingly, the sole argument in support of this derivative-work theory in Plaintiffs' Opposition is that the model that DeviantArt allegedly "put . . . inside DreamUp" "represents a transformation" of Plaintiffs' work "into an alternative form."  Opp. at 5, 8.  That is simply a rewording of the "based on" argument that this Court and others have rejected.  *See supra*.  Plaintiffs also point to their allegation that "Stable Diffusion 1.4 is capable of reproducing protected expression from each of [their] [w]orks."  Opp. at 8.  But even setting aside the problems with that statement (as discussed *supra* Part II.A.1), Plaintiffs' derivative-work claim is about *DreamUp*, not Stable Diffusion 1.4, which DeviantArt did not create.  Opp. at 5 (alleging that "DreamUp became . . . an infringing Statutory Derivative Work"); *see also id.* at 9 (conceding that "Plaintiffs do not allege that DeviantArt created [the training dataset] or trained Stable Diffusion 1.4").  And Plaintiffs admit they have not alleged DreamUp is capable of "reproduc[ing]" anything similar to their works.  *Id.* at 5–6 (suggesting that "discovery [might] reveal" this capability).

Because Plaintiffs have not alleged that DreamUp "re-present[s] the protected aspects of" their work, *see* Order at 12 (citation omitted), they have failed to allege that DeviantArt violated the derivative-work right by creating DreamUp.  *See Kadrey*, 2023 WL 8039640, at *1 ("There is no way to understand the [] models themselves as a recasting or adaptation of any of the plaintiffs' books" and rejecting similar claim as "nonsensical").[5]

---

[4] *Tremblay*, No. 23-cv-03223, 2024 WL 557720, at *3 (N.D. Cal. Feb. 12, 2024); *Kadrey*, No. 23-cv-03417, 2023 WL 8039640, at *1 (N.D. Cal. Nov. 20, 2023).

[5] Plaintiffs attempt to brush off Judge Chhabria's rejection of their counsel's identical derivative-work claim in the *Kadrey* case, noting that that case "involved different plaintiffs, different defendants, different kinds of AI models, and different allegations."  Opp. at 13.  But they make no attempt to explain why any of these "differen[ces]" matter—and they do not.  Plaintiffs also fail to mention that the *Kadrey* plaintiffs dropped their derivative-work claim.  *See* Am. Complaint *in Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, Dkt. 64 (N.D. Cal. filed Dec. 11, 2023) (alleging single claim of direct infringement based on use of works during training).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### 3. The FAC Fails To Allege DreamUp Is a "Copy" of Plaintiffs' Images

Plaintiffs' third supposed "distinct factual theor[y] of infringement by DeviantArt" is that "DreamUp may also turn out to be a Statutory Copy of Plaintiffs' copyrighted works, if discovery reveals that Plaintiffs' works 'can be . . . reproduced . . . with the aid' of DreamUp." Opp. at 5–6. But that argument effectively concedes that nothing in the FAC alleges that DreamUp can do so. *Id.* And Plaintiffs "have cited no authority for the proposition that they are entitled to conduct any discovery before stating a viable claim for relief." *Torio v. Wells Fargo Bank, N.A.*, No. 16-cv-00704, 2016 WL 2344243, at *5 (N.D. Cal. May 4, 2016). "[D]iscovery cannot be used as a fishing expedition for evidence of claims that have not been properly pled." *Id.* at *5; *see also Iqbal*, 556 U.S. at 678–79 (federal rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). In any case, Plaintiffs do not explain why they could not investigate DreamUp's capabilities as they did for the other services referenced in the FAC. *Cf.* FAC ¶ 382 (conceding DreamUp is publicly available).[6]

### 4. Plaintiffs Offer No Substantive Response to DeviantArt's Fair Use Defense

Plaintiffs' sole response to DeviantArt's assertion of fair use is to argue that the defense "may be decided on a motion to dismiss only if there are no material facts in dispute." Opp. at 13. But Plaintiffs do not identify any such factual dispute. Nor could they, as DeviantArt's fair use defense rests entirely on the facts alleged in the complaint. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the allegations in the complaint suffice to establish the defense.").

To be clear, DeviantArt's motion does not require this Court to decide whether using a copyrighted image to "train" an AI model qualifies as fair use, because Plaintiffs "do not allege that DeviantArt . . . trained Stable Diffusion 1.4" or any other model. Opp. at 9. DeviantArt's fair use defense is far narrower. Its Motion argues only that, assuming that "incorporat[ing]" an

---

[6] Plaintiffs also ask this Court to draw an "inference" that DreamUp can recreate their images based on "examples elsewhere in the FAC showing prompting results" using other models. Opp. at 6. But Plaintiffs concede that DreamUp is different than other image-generation services. *See* FAC ¶ 397 (DeviantArt "perform[s] additional guidance at generation time" "akin to prompt tuning"). In any case, Rule 8 requires "more than a sheer possibility" that a defendant is liable. *Iqbal*, 556 U.S. at 678 (allegations that are "merely consistent with a defendant's liability[] [] stop[] short of the line between possibility and plausibility" (cleaned up)).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

existing AI model into an "app" like DreamUp could constitute an unauthorized reproduction of each of the billions of works used to train that model, Opp. at 9; 17 U.S.C. § 106(1), that reproduction is "not an infringement of copyright" under the fair use doctrine, 17 U.S.C. § 107.

As DeviantArt explained in its Motion, that result follows directly from well-established Ninth Circuit case law holding that using a copyrighted work to create a new and non-infringing product is a protected fair use. Mot. at 17–20. Plaintiffs make no attempt to address that case law or otherwise respond to DeviantArt's fair use arguments on the merits. Indeed, Plaintiffs have conceded that their FAC does not allege any facts that suggest that DreamUp's outputs infringe on Plaintiffs' images. *See* Opp. at 5–6 (speculating that "DreamUp may also turn out to" be capable of "reproduc[ing]" "Plaintiffs' works"). Plaintiffs' own cited authority establishes that fair use protects services that do not "replicate and reproduce" their training data, but rather create "wholly new, albeit competing" outputs. *See Thomson Reuters Enter. Centre GmbH v. Ross Intl. Inc.*, No. 20-cv-613, 2023 WL 6210901, at *8 (D. Del. Sept. 23, 2023); *see* Opp. at 14 (citing Ross). That alone is sufficient to grant DeviantArt's motion on fair use grounds.

**B.    The FAC Fails To Allege a Breach of DeviantArt's Terms**

DeviantArt seeks dismissal of Plaintiffs' breach of contract claim predicated on "Section 16 of the DeviantArt [TOS]," FAC ¶¶ 417–22(a). This Court's prior Order held that while Section 16 "provides a limited license to DeviantArt," it "does not clearly cover the conduct that plaintiffs accuse DeviantArt of in this suit." Order at 26. As this Court explained, because Plaintiffs did not allege that "DeviantArt played any affirmative role" in using their works to train AI models, there were "no facts [] supporting an allegation that DeviantArt *itself* exceeded the scope of the limited license." *Id.* at 7, 26. Because the FAC realleges the same claim—that "DeviantArt exceeded its license grant in Section 16"—the Court's Order requires dismissal with prejudice. Mot. at 20–21.

Plaintiffs' only response is to note that their initial Complaint "alleged DeviantArt's violation of its TOS more generally," *i.e.*, without focusing on Section 16, while the FAC "focuses specifically on § 16." Opp. at 15. But this Court already held that Plaintiffs cannot state a breach claim based on Section 16 without allegations that DeviantArt actually used Plaintiffs' works to

1    train a model, and no such allegations exist here.  Order at 16; *see also* Opp. at 9.

2    **C.    The FAC Fails To Allege a Breach of the Implied Covenant**

3        DeviantArt also seeks dismissal of Plaintiffs' claim for breach of the "implied covenant of

4    good faith and fair dealing."  FAC ¶ 422(b); Mot. at 21–23.[7]  As DeviantArt explained, none of

5    the grievances Plaintiffs cites—regarding, *e.g.*, a "flood of AI-generated images" that supposedly

6    "compet[e] with the DeviantArt Plaintiffs"—has anything to do with any specific provisions of

7    the parties' contract, *i.e.*, DeviantArt's TOS.  Mot. at 22.

8        Plaintiffs' primary response is that an implied covenant claim "need not be premised on

9    the breach of an express contractual provision."  Opp. at 17.  But that misses the point.  Implied-

10   covenant claims do not protect "general public policy interest[s] not directly tied to the contract's

11   purposes," like Plaintiffs' apparent moral objections to the use of innovative technology to create

12   new works of art.  *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690 (1988).  Rather, the implied

13   covenant "prevent[s] a contracting party from engaging in conduct which (while not technically

14   transgressing the express covenants) frustrates the other party's rights to the benefits of [a]

15   contract."  *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806 (2008).  To ensure that

16   implied-covenant claims have some nexus to the "benefits of the contract" at issue, *id.*, courts

17   require plaintiffs to "identify the specific contractual provision that was frustrated." *Rockridge*

18   *Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1156 (N.D. Cal. 2013).  Here, while Plaintiffs

19   repeat grievances about DreamUp "frustrat[ing]" their participation in an "art community," Opp.

20   at 16, they cite no contractual provisions that protect them from these perceived slights.  That

21   requires dismissal.   *Rockridge*, 985 F. Supp. 2d at 1156 (dismissing claim based on

22   "misrepresentations" unconnected to contract and allegedly "unconscionable" loan agreement).[8]

23   [7] DeviantArt's Motion sought dismissal of this claim, along with Plaintiffs' new claim for unjust
     enrichment, as beyond the scope of the Court's permitted amendment.  Mot. at 21–23.  Plaintiffs
24   assert that "the Court's earlier MTD Order gave Plaintiffs broad leave to amend," Opp. at 17, but
     ignore this Court's clear instruction that any amendments focus on "cur[ing] the deficiencies
25   identified" in the Court's Order, Order at 28; *see also id.* at 1 ("Plaintiffs are given leave to amend
     to provide clarity regarding their theories.").
26   [8] Plaintiffs' reliance on DeviantArt's new "Machine Learning" TOS provision is misplaced.  Opp.
27   at 17.  That provision does not "impair" any users' rights, *contra id.*; it *protects* artists like Plaintiffs
     from the very conduct they complain the other defendants engaged in here, *see* FAC Ex. M at 13
28   (prohibiting use for training "[u]nless [users] actively give [] consent").  DeviantArt explained this
     its Motion, *see* Mot. at 22 n.15, and Plaintiffs simply ignore the point, *see* Opp. at 15–17.

**D.**     **The FAC Fails To State an Unjust Enrichment Claim**

Plaintiffs' unjust enrichment claim fails on multiple grounds.

*Copyright Act Preemption.*   First, it is preempted by the Copyright Act: (1) Plaintiffs' works are images that fall "within the subject matter of copyright;" and (2) the claim is based on the same allegations as Plaintiffs' claim for copyright infringement, which renders the claim qualitatively "equivalent" to their copyright claim.  17 U.S.C. § 301(a); Mot. at 23.  Plaintiffs dispute only the "equivalence" element, arguing that while their copyright claim is based on DeviantArt's creation of "copies" and "derivative works," their unjust enrichment claim is based on DeviantArt's "unauthorized use" of their works.  Opp. at 4, 19.  This is the same argument Plaintiffs' counsel has raised, without success, in multiple cases before courts in this district to avoid Copyright Act preemption.  *See Kadrey*, 2023 WL 8039640, at \*2 (dismissing unjust enrichment claim based on "use of [works] to train" AI model); *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823, 2024 WL 235217, at \*7 (N.D. Cal. Jan. 22, 2024) (in similar case, dismissing unjust enrichment claim that "principally concern[s] the unauthorized reproduction of [works]").[9]

In an attempt to dodge these holdings, Plaintiffs assert that their unjust enrichment claim is "outside the zone of preemption" because DeviantArt "misrepresent[ed]" that it is a "community that supports artists."  Opp. at 19–20.  This is a non sequitur.  The "core of the state claim" is that DeviantArt derived a "commercial" benefit from a product (DreamUp) allegedly "based on" a third-party model (Stable Diffusion 1.4) that was allegedly "based on" Plaintiffs' registered works (among billions of others).  *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1071 (N.D. Cal. 2016); Opp. at 20.  But that is the basis of Plaintiffs' copyright claim.  *See supra*.  Plaintiffs' use of the word "misrepresentation" does not "change the nature of the action so that it is qualitatively different from [their] copyright [] claim," *NetSeer*, 156 F. Supp. at 1070 (quoting *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1440 (9th Cir. 1993)).

In any case, Plaintiffs do not identify any such "misrepresentation."  Rather, they gesture

---

[9] Plaintiffs cite to *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005).  Opp. at 18–19.  But as Judge Tigar recently explained in *GitHub*, that case "concerned the 'unauthorized use of the software's end-product,'" *i.e.*, a "bitstream," not the unauthorized use of the underlying copyrighted work.  2024 WL 235217, at \*7 (unjust enrichment claim based on "use" preempted).

1    to Section 16 of DeviantArt's TOS, which they claim "misrepresent[s] how DeviantArt *uses*

2    Plaintiffs' copyrighted works." Opp. at 19 (emphasis in original). But DeviantArt is not alleged

3    to have "use[d] Plaintiffs' copyrighted works" at all, other than by providing an online platform

4    for Plaintiffs to upload and share them—precisely the use contemplated by the TOS. *Id.* at 9

5    (conceding DeviantArt did not use Plaintiffs' works to train Stable Diffusion). And as this Court

6    already held, nothing in DeviantArt's TOS suggests that it would refrain from releasing a service

7    to create AI-generated images. Order at 26; Mot. at 22–23.

8        Nor do Plaintiffs point to any other "misrepresentations" that would support the kind of

9    fraud claim that might survive Copyright Act preemption.[10] Because Plaintiffs "identif[y] no false

10    promise or representation upon which [they] reasonably relied," their unjust enrichment claim is

11    preempted. *McCormick v. Sony Pictures Entm't*, No. 07-cv-05697, 2008 WL 11336160, at *10

12    (C.D. Cal. 2008); *see also Litchfield*, 736 F.2d at 1358 (affirming dismissal of "misrepresentation"

13    claim that "restate[d] [] the copyright [] claims" as preempted).

14        <u>*Failure to State a Claim*</u>. Second, the claim fails as pleaded. Mot. at 24. As a threshold

15    matter, an "enforceable, binding agreement exists defining the rights of the parties," which means

16    an unjust enrichment claim "does not lie." Mot. at 24 (quoting *Paracor Fin., Inc. v. Gen. Elec.*

17    *Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)). In response, Plaintiffs cite cases in which courts

18    have rejected this argument because there was some *doubt* about whether a contract exists.

19    *Rejoice! Coffee Co., LLC v. Hartford Fin. Serv. Grp., Inc.*, No. 20-cv-06789, 2021 WL 5879118,

20    at *10 (N.D. Cal. Dec. 9, 2021); *see also Boobuli's LLC v. State Farm Fire and Cas. Co.*, 562 F.

21    Supp. 3d 469, 487 (N.D. Cal. 2021) (*Paracor* does not apply when "there may *not be* an

22    enforceable contract"). But here, all parties *agree* that DeviantArt's TOS is binding and

23    enforceable. *See* Opp. at 14 (conceding that "[t]he TOS controls").

24        Plaintiffs also attempt to distance the unjust enrichment claim from the TOS by arguing

25    that the claim is *not* based on the "contractual limitation" in Section 16, but rather on DeviantArt's

26

27    [10] *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) (fraud claims
escape preemption when they "involve the element of a statement or misrepresentation that

28    induced the plaintiff's reliance and caused damages not attributable to [] infringement;" holding
unjust enrichment claim "based on the same facts as [the] infringement claim" preempted).

1   (unspecified) "unauthorized use." Opp. at 19.  But that contradicts the preceding page of Plaintiffs'

2   brief, which argues that the unjust enrichment claim is based on DeviantArt's alleged "violation

3   of its terms of use."  *Id.* at 19–20.  Plaintiffs cannot have it both ways.

4          Regardless, Plaintiffs' unjust enrichment claim fails because Plaintiffs have not alleged

5   that they voluntarily "conferred" a "benefit" on DeviantArt through "mistake, fraud, or coercion."

6   *Bittel Tech., Inc. v. Bittel USA, Inc.*, No. 10-cv-00719, 2010 WL 3221864, at *5 (N.D. Cal. Aug.

7   13, 2010).  Plaintiffs argue that the "benefit of Plaintiffs' work was conferred on DeviantArt

8   because DeviantArt can derive profit and other intangible benefits from the use of Plaintiffs' works

9   to train Stable Diffusion 1.4 which is incorporated in DreamUp."  Opp. at 21.  But as Judge

10  Martínez-Olguín recently held, the fact that a defendant may have benefitted from some indirect

11  use of a plaintiff's work is "not enough;" rather, the law of unjust enrichment requires allegations

12  that the benefit was "unjustly secured."  *Tremblay*, 2024 WL 557720, at *7 (citation omitted).

13  There are no such allegations here, as Plaintiffs concede that they "do not allege that DeviantArt

14  created [the training datasets] or trained Stable Diffusion 1.4."  Opp. at 9.

15  **E.      The Court Should Dismiss the Additional Named Plaintiffs**

16         DeviantArt also seeks dismissal of the additional seven named plaintiffs included in the

17  FAC as beyond the Court's permitted amendment.  Mot. at 24–25.  Plaintiffs disagree, arguing

18  amendment is "freely" permitted. Opp. at 21–22.  But "[t]he ordinary liberal amendment standard

19  of Rule 15 arguably does not apply to 'adding' new plaintiffs."  *Thomas v. Cricket Wireless, LLC*,

20  No. 19-cv-07270, 2021 WL 214205, at *2 (N.D. Cal. Jan. 21, 2021).  Here, the Court granted

21  Plaintiffs "leave to amend and attempt to cure the deficiencies identified" in its Order.  Order at

22  28.  "When the language of an order clearly states that a plaintiff may only amend to address

23  certain deficiencies identified in the order, courts have held that a plaintiff is barred from adding

24  new claims or parties.  *Jameson Beach Prop. Owners Ass'n v. U.S.*, No. 13-cv-01025, 2014 WL

25  4925253, at *4 (E.D. Cal. Sept. 29, 2014) (striking claims).

26  **III.    CONCLUSION**

27         For these reasons, the Court should dismiss the claims against DeviantArt with prejudice.

28

1     Dated:  April 18, 2024                    Respectfully submitted,

2                                                LATHAM & WATKINS LLP

3                                                By:  /s/ Andrew M. Gass

4                                                Andrew M. Gass (SBN 259694)
                                                   andrew.gass@lw.com
5                                                Michael H. Rubin (SBN 214636)
                                                   michael.rubin@lw.com
6                                                Brittany N. Lovejoy (SBN 286813)
                                                   brittany.lovejoy@lw.com
7                                                505 Montgomery Street, Suite 2000
                                                 San Francisco, California  94111-6538
8                                                Telephone:  415.391.0600

9                                                *Attorneys for Defendant DeviantArt, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28