[Counsel Listed on Signature Pages]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

SARAH ANDERSEN, KELLY MCKERNAN, KARLA ORTIZ, H. SOUTHWORTH PKA HAWKE SOUTHWORTH, GRZEGORZ RUTKOWSKI, GREGORY MANCHESS, GERALD BROM, JINGNA ZHANG, JULIA KAYE, ADAM ELLIS;

    *Individual and Representative Plaintiffs*,

v.

STABILITY AI LTD., STABILITY AI, INC., DEVIANTART, INC., MIDJOURNEY, INC., RUNWAY AI, INC.

    *Defendants*.

Case No. 3:23-cv-00201-WHO

**JOINT CASE MANAGEMENT STATEMENT AND RULE 26(f) REPORT**

Hearing Date: October 29, 2024
Time: 2:00 PM
Place: via Zoom
Judge: Hon. William H. Orrick

Pursuant to Civil Local Rule 16-9, the Standing Order For All Judges of The Northern District Of California (updated Nov. 30, 2023), and the Court's September 30, 2024, Order to Reschedule Case Management Conference (Dkt. 231), counsel for Plaintiffs Sarah Andersen, Kelly McKernan, Karla Ortiz, H. Southworth *pka* Hawke Southworth, Grzegorz Rutkowski, Gregory Manchess, Gerald Brom, Jingna Zhang, Julia Kaye, Adam Ellis, and the proposed class (together, "Plaintiffs") and Defendants Stability AI Ltd. and Stability AI, Inc. (together, "Stability AI"), DeviantArt, Inc. ("DeviantArt"), Midjourney, Inc. ("Midjourney"), and Runway AI, Inc. ("Runway") respectfully submit this Joint Case Management Statement in advance of the Case Management Conference on October 29, 2024.

1.   **Jurisdiction and Service**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), as this action alleges violations of the U.S. Copyright Act (17 U.S.C. § 501). All parties have been served.

2.   **Facts**

**Plaintiffs' Statement**

The surviving claims in the First Amended Complaint ("FAC") in this Action (Dkt. 129) include one count of direct copyright infringement each against Defendants Stability AI, DeviantArt, Midjourney, and Runway; one count of inducement of copyright infringement each against Stability AI and DeviantArt; one count of false endorsement under the Lanham Act against Midjourney; and one count of vicarious trade-dress violation under the Lanham Act against Midjourney.[1]

Plaintiffs are artists who own copyrights in Works allegedly used to train Defendants' image-text generative AI models, including the Stable Diffusion models, Runway models, and Midjourney models, that underpin Defendants' generative AI image products. The FAC alleges that each Defendant copied Plaintiffs' registered Works to train (i.e., the process by which an Artificial Intelligence ("AI") program can compress and store training images in order to generate outputs in response to prompts) Defendants' Models in violation of the Copyright Act, 17 U.S.C. § 501. Further, the FAC alleges that Defendants' models have the ability to reproduce identical or near-identical facsimiles of training images. The FAC

---

[1] Pursuant to the Court's August 12, 2023 Order granting in part and denying in part Defendants' motions to dismiss, (Dkt. 223), the Court dismissed the following claims: Digital Millennium Copyright Act violations (with prejudice); unjust enrichment (with leave to amend); breach of contract and breach of implied covenant of good faith and fair dealing (with prejudice).

additionally contains allegations demonstrating Defendants Stability AI and Runway are liable for inducing others to infringe Plaintiffs' copyrights because Stable Diffusion was designed to facilitate—and has facilitated—infringement by other parties. Finally, the FAC alleges that Defendant Midjourney is liable for violations of the Lanham Act, 15 U.S.C. § 1125(a) because its use of the Midjourney Named Plaintiffs' protected marks is likely to cause consumer confusion and because its models were designed to imitate the Midjourney Named Plaintiffs' trade dress with the intent to cause confusion, mistake or deception.

**Defendants' Statements**

***Stability AI.***  Stability AI is a global company working to transform visual media through artificial intelligence. Stability AI develops a range of generative AI models—including the popular image model Stable Diffusion—used by creators, developers, and businesses. With appropriate safeguards, these models are shared openly to promote transparency and competition in AI.

The facts will show that neither of Plaintiffs' surviving claims against Stability AI have any merit. Plaintiffs allege that certain versions of the Stable Diffusion models released by Stability AI were trained on Plaintiffs' images, and that the resulting models themselves infringe Plaintiffs' copyrights. Plaintiffs further allege that Stability AI induces others to infringe their copyrights. But Stability AI's image models at issue are not copies nor derivative works, Plaintiffs have not and cannot offer any examples of substantially similar outputs, and there is no evidence Stability AI encourages the use of its models to commit copyright infringement. To the extent any training was done on Plaintiffs' images, the facts will support a finding of fair use.

***Runway.***  Runway is an applied AI research company shaping the next era of art, entertainment, and human creativity. In furtherance of this mission, the company conducts research in multi-modal AI systems, builds infrastructure to safely deploy models, and has launched products and applications that enable its users to create and edit video content. The company was founded in 2018 by three New York University art students, all of whom continue to lead the company today. Runway's core commercial offerings provide users with video generation and editing capabilities and are used by creatives including filmmakers, commercial videographers, and artists.

Plaintiffs' lawsuit centers on an entirely different product—an open-source static image generation model known as Stable Diffusion. As to Runway, the lawsuit is even narrower, focused on only one version of the model (version 1.5), which one former Runway employee was involved in developing. The model, released as an open-source research project, has been deprecated by Runway; in other words, Runway no longer makes it available as an open-source model.

Plaintiffs allege that their static images were used in the training of Stable Diffusion 1.5 and that protected expression from their images were somehow "compressed and store[d]" in the process. They were not. The record, once developed, will show that Plaintiffs' images are not stored or compressed, nor are any of the billions of other images Plaintiffs mention in their FAC. Plaintiffs also allege that the accused models "have the ability to reproduce identical or near-identical facsimiles of training images." But Plaintiffs have been unable to elicit from the models a single "identical or near-identical facsimile" of any of their registered works, or of any other training image.

Plaintiffs did not sue Runway in their initial Complaint. *See* Dkt. 1. On November 29, 2023, Plaintiffs filed the FAC, adding Runway as a defendant. *See* Dkt. 129. On February 8, 2024, Runway filed a motion to dismiss Plaintiffs' claims. *See* Dkt. 164. On August 12, 2024, as relevant to Runway's motion: the Court dismissed Plaintiffs' DMCA claim with prejudice, dismissed the unjust enrichment claim with leave to amend, and allowed Plaintiffs' Copyright Act claim to proceed. *See* Dkt. 223.

***Midjourney.*** Midjourney is an independent research lab exploring new mediums of thought and expanding the imaginative powers of the human species. Its small, self-funded team has developed a series of generative AI models capable of producing unique, never-before seen images in response to natural language text prompts, optimized for aesthetic beauty. Midjourney's image generation platform, accessible through the Discord communications platform and on the web, enables users of all backgrounds and abilities to transform what exists in their imaginations into works of art.

On January 13, 2023, Plaintiffs filed a class action complaint alleging claims of copyright infringement, right of publicity and DMCA violations against Midjourney. Dkt. 1. The Court initially dismissed all claims against Midjourney with leave to amend. *See* Dkt. 117. Plaintiffs' FAC renewed their copyright infringement and DMCA claims, and added claims of unjust enrichment, false endorsement and vicarious infringement of Plaintiffs' purported trade dress. Following the Court's order

on Midjourney's motion to dismiss the FAC, the only remaining claims are for direct copyright infringement, false endorsement and vicarious trade dress infringement. *See* Dkt. 223. Plaintiffs have advised that they will file a second amended complaint that omits the dismissed claims.

The crux of the direct copyright infringement claim against Midjourney is that it allegedly copied and infringed Plaintiffs' works in training its generative AI art model. The record, once developed, will refute such claims and show that Midjourney's conduct constitutes fair use as a matter of law. Plaintiffs' theory that Midjourney's models are themselves infringing derivative works, contain compressed copies of Plaintiffs' works, or can generate near-identical replicas of Plaintiffs' at-issue works are legally and factually unfounded; Plaintiffs have no evidence to support those claims because there isn't any.

Plaintiffs' false endorsement claim will also fail. In February 2022, Midjourney's founder posted a "style list" spreadsheet on Discord, one tab of which was a "Name List" that included the names of five named plaintiffs and 4,700 other artists. Nothing in the post was inaccurate, and discovery will show that no one could reasonably have interpreted the post to suggest that the named plaintiffs endorsed or were otherwise affiliated with Midjourney.

Similarly, Plaintiffs will not be able to prove vicarious infringement of their trade dress. Under well settled law, plaintiffs lack any trade dress in their artistic styles; their alleged trade dress is functional and, thus, unprotectible as a matter of law; and their purported trade dress has achieved secondary meaning, as required under the Lanham Act. Plaintiffs will thus be unable to show that Plaintiffs own any trade dress in their artistic styles, that any of Midjourney's users infringed it, or that Midjourney should be held vicariously liable for such infringement.

***DeviantArt.*** DeviantArt, an online community founded in 2000, allows artists to share their works with an enthusiastic audience. In November 2022, DeviantArt launched DreamUp, an AI image-generation tool based on Stability AI's open-source software, Stable Diffusion. DreamUp includes safeguards to protect artists' rights, such as blocking text prompts that include the names of artists who opt out of having their names used as inputs, and requiring users to credit artists whose names are used to generate images. DeviantArt was not involved in the training or creation of Stable Diffusion.

Following DeviantArt's motions to dismiss, only a single count of direct infringement remains against the company (Dkt. 117). Plaintiffs' infringement claims against DeviantArt are predicated on the

fact that DreamUp is based on Stable Diffusion, not on any conduct by DeviantArt. Plaintiffs effectively argue that a defendant who downloads an AI model is directly liable for infringing each of the billions of works used by others to train it. Plaintiffs' infringement claims will fail. Plaintiffs' contention that Stable Diffusion stores compressed copies of their copyrighted works—and that DreamUp, therefore, also stores such copies—will be disproven in discovery. And Plaintiffs' argument that the Stable Diffusion model that DreamUp is alleged to have been built on constitutes a statutory "copy" or "derivative" of Plaintiffs' works because it "ha[s] the ability to reproduce identical or near-identical facsimiles of training images" will ultimately prove meritless. Plaintiffs have failed to date to extract anything from DreamUp that resembles their works—let alone a registered work shown to be in Stable Diffusion's training data. DeviantArt's use of Stable Diffusion is therefore not only non-infringing, but DeviantArt's provision of a tool to the public whose primary, if not sole purpose, is to create new outputs that do *not* infringe the rights of the works in suit is a protected fair use under well-established Ninth Circuit precedent.

**3.   Legal Issues**

**Plaintiffs' Statement**

The legal and factual issue at the core of this case is whether Defendants' unlawful conduct has violated the Copyright Act, 17 U.S.C. § 501, *et seq.*, and the Lanham Act, 15 U.S.C. § 1051, *et seq.* Plaintiffs anticipate that Defendants will rely on a fair use defense, but Defendants will not be able to carry their burden to prove fair use.

There are numerous other questions of law or fact common to the class, and those issues predominate over any question affecting on individual class members. *See* Part 9, *infra*.

**Defendants' Statements**

Defendants provide the following list of principal legal issues currently in dispute, noting that this list is preliminary and subject to revision:

1.      Whether Plaintiffs own valid, enforceable copyrights in the asserted works;

2.      Whether Plaintiffs' copyright registrations are valid and provide a basis for bringing a suit under 17 U.S.C. § 411(a);

3.      Whether Stability AI, Runway, or Midjourney directly or indirectly infringed registered copyrights owned by Plaintiffs pursuant to 17 U.S.C. § 501 by allegedly copying Plaintiffs' registered and copyrighted works to train accused models;

4.      Whether, assuming Plaintiffs can prove Stability AI, Runway, or Midjourney engaged in prima facie acts of infringement, Stability AI's, Runway's, or Midjourney's alleged use of Plaintiffs' works to train accused models is a fair use under 17 U.S.C. § 107;

5.      Whether DeviantArt infringed registered copyrights owned by Plaintiffs pursuant to 17 U.S.C. § 501 by allegedly copying Plaintiffs' registered and copyrighted works in connection with DreamUp;

6.      Whether, assuming Plaintiffs can prove DeviantArt engaged in prima facie acts of infringement, DeviantArt's alleged use of Plaintiffs' works in connection with DreamUp is a fair use under 17 U.S.C. § 107;

7.      Whether Midjourney's alleged use of certain of Plaintiffs' names on a "style list" or otherwise constitutes "false endorsement" under 15 U.S.C. § 1125(a);

8.      Whether Midjourney's use of certain of Plaintiffs' names on a "style list" or otherwise constitutes a nominative fair use;

9.      Whether Plaintiffs claims of "false endorsement" are barred by the First Amendment;

10.      Whether certain Plaintiffs' artwork constitutes unregistered trade dress under § 15 U.S.C. 1125(a);

11.      Whether certain Plaintiffs' artwork is functional in the context of the Lanham Act;

12.      Whether certain Plaintiffs' artwork has achieved secondary meaning in the context of the Lanham Act;

13.       Whether Midjourney is vicariously liable under the Lanham Act for any purported infringement of certain Plaintiffs' alleged trade dress;

14.      Whether Defendants' alleged conduct caused any injury to Plaintiffs;

15.      Whether the Plaintiffs can meet the requirements of Federal Rule of Civil Procedure 23 for certification of one or more putative classes;

16.      Whether Plaintiffs are entitled to any relief they seek.

Defendants reserve the right to raise additional issues that become relevant as a result of any new claims, defenses, or counterclaims.

**4.**   **Motions**

There are no pending motions at this time.

As noted in Section 8 (Discovery) below, the parties have not yet agreed upon a stipulated ESI Protocol and Protective Order but will meet and confer on those topics. Plaintiffs also anticipate seeking stipulated protocols addressing depositions, inspection of source code, and experts.

The parties hope to resolve discovery disputes without judicial intervention but anticipate that discovery motions may be necessary. The parties also anticipate Plaintiffs will file motion for class certification under Rule 23, which Defendants intend to oppose. The parties also anticipate filing motions for summary judgment or adjudication under Rule 56.

**5.**   **Amendment of Pleadings**

**Plaintiffs' Statement**

Plaintiffs intend to file a Second Amended Complaint ("SAC") pursuant to the Court's Order on Defendants' motions to dismiss (Dkt. 223). They do not intend to make any changes that would invite further Rule 12 briefing. Accordingly, they do not intend to add claims or make substantive modifications to the SAC. Plaintiffs do, however, intend to clarify and correct typographical errors in the SAC. Additionally, Plaintiffs seek the Court's guidance on preserving their claims under Section 1202(b) of the DMCA.

This Court dismissed Plaintiffs' DMCA claim, following Judge Tigar's decision in *Doe 1 v. GitHub, Inc.*, No 22-cv-06823-JST, 2024 235217, at *8 (N.D. Cal. Jan. 22, 2024), which held that claims under Section 1202(b) of the DMCA require that copies of work from which CMI is removed or altered include an element of "identicality." Judge Tigar has certified that question for interlocutory appeal to the Ninth Circuit. *Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 4336532 (N.D. Cal. Sep. 27, 2024). In the ordinary course, once a claim is dismissed, the litigation would proceed and, given a material change in law, Plaintiffs could simply ask the Court to reconsider a dismissed claim if there is a material change in law. Given that Plaintiffs are amending in order to formally add Plaintiffs to the operative pleading, Plaintiffs merely wish to preserve their right to ask the Court to reconsider its

decision dismissing their DMCA claims should the Ninth Circuit determine that "identicality" is not an element of a Section 1202(b) claim. Plaintiffs accordingly seek leave to do so and are prepared to file a SAC immediately following an order granting such leave.

**Defendants' Statement**

If Plaintiffs later seek reconsideration of the Court's dismissal of their DMCA claims, Defendants will not oppose that motion on the ground that Plaintiffs abandoned their DMCA claims by not repleading them in a SAC, but reserve the right to oppose reconsideration on all other grounds.

**6.   Evidence Preservation**

The parties have reviewed this Court's Guidelines Relating to the Discovery of Electronically Stored Information. The parties met and conferred pursuant to Rule 26(f) on October 8, 2024, regarding preservation of evidence relevant to the issues evident in the case. The parties are aware of their obligations and have taken reasonable steps to preserve potentially relevant evidence. The parties will continue to meet and confer concerning ESI.

**7.   Disclosures**

The parties have agreed to serve their Federal Rule of Civil Procedure 26(a) initial disclosures on November 14, 2024.

**8.   Discovery**

**a.   Scope of Discovery**

The parties agree that discovery is governed by the Federal Rules of Civil Procedure. The parties will meet and confer on any discovery disputes that may arise in an effort to resolve them without court intervention. The parties agree to electronic service. The parties are unaware of any specific concerns regarding the scope of discovery but are prepared to continue to meet and confer on this topic.

**Plaintiffs' Statement:** Discovery remains stayed, but Plaintiffs are prepared to propound discovery as to each Defendant once the discovery stay is lifted. Given that claims will proceed as to each Defendant, Plaintiffs request the Court immediately open discovery.

Plaintiffs anticipate conducting discovery, including requesting documents and eliciting testimony from Defendants regarding, among other things: the development and training of Defendants' Models; the training data for Defendants' Models; Defendants' copying of the LAION-400 and LAION-

5B datasets, and Defendants' general awareness of, and policies about, using copyrighted materials and/or pirated libraries in training data; sources of funding for the development of Defendants' Models; financial market and profitability of Defendants' Models; licensing deals and negotiations for training data; knowledge of, and participation within, the AI training data market; Defendants' protocols for weighting, filtering, or modifying Models; any style lists, showcases, or mechanisms that allow for searching and manipulation of outputs using Plaintiffs' names. This list is not exhaustive and Plaintiffs reserve all rights to update, add, or amend this list as additional information becomes available.

**Defendants' Statements:**

***All Defendants***

Discovery should be governed by the Federal Rules of Civil Procedure, the Civil Local Rules, and the Court's Standing Order for Civil Cases.

The following is a non-exhaustive list of subjects of discovery Defendants intends to seek from Plaintiffs. Defendants reserve all rights to expand upon these subject areas as the case progresses:

- Plaintiffs' purported ownership of the works that they assert as a basis for their claims in the Second Amended Complaint;
- Copyright registrations associated with the asserted works;
- Plaintiffs' asserted works, including their creation, publication, and contents;
- Plaintiffs' licensing and distribution of the asserted works;
- Plaintiffs lack of harm from Defendants' conduct alleged in the First Amended Complaint;
- Any alleged injury suffered by Plaintiffs from Defendants' conduct alleged in the First Amended Complaint;
- Use of generative AI, including but not limited to Stable Diffusion 1.5, by Plaintiffs and individuals acting on their behalf.

***Midjourney***

In addition to the foregoing, the following is a non-exhaustive list of further subjects of discovery specific to claims brought only against Midjourney.

- Any evidence of purported confusion (or a likelihood of confusion) over whether certain Plaintiffs endorse, sponsor or otherwise are affiliated with Midjourney;

- Any purported injury or damages caused through Midjourney's use of certain Plaintiffs' names;

- Plaintiffs' purported trade dress, including but not limited to, selection, registration, and the elements comprising any purported trade dress;

- Evidence that Plaintiffs' purported trade dress has acquired secondary meaning within the context of the Lanham Act.

- Any infringement of Plaintiffs' purported trade dress;

- Any damages or injury Plaintiffs have purportedly suffered as a result of infringement of their purported trade dress.

### b. Completion of Discovery

The Court has not set a deadline for the close of fact discovery. Plaintiffs propose that discovery should be completed by September of 2025. Defendants propose that fact discovery should be completed by March 2026 and expert discovery by July 2026.

### c. Discovery Limitations

The parties have met and conferred regarding the discovery limits set forth in the Federal Rules of Civil Procedure.

**Plaintiffs' Statement:** Given the nature of the legal and factual issues in this case, Plaintiffs believe that expansion of the discovery limits as set forth in the Federal Rules of Civil Procedure will be necessary in this case. Plaintiffs have conferred with Defendants regarding the likelihood they will require expansion of the number of depositions and interrogatories and believe it is premature to limit the number of depositions and interrogatories.

Plaintiffs seek to have a protocol established for depositions and an inspection protocol for training data and source code. Plaintiffs also seek an expert discovery order.

**Defendants' Statement:** Defendants do not believe that the total number of interrogatories and depositions should exceed the applicable limits under the Federal Rules. Plaintiffs have not identified any reason for deviating from the default limits.

### d.   Preservation and Production of Electronically Stored Information

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). Plaintiffs provided Defendants with a draft ESI Protocol on October 8, 2024. The parties will continue to meet and confer on this topic in an effort to come to agreement on an ESI Protocol and Protective Order to submit to the Court.

### e.   Protective Order

Plaintiffs provided Defendants with a draft ESI Protocol and draft Protective Order on October 8, 2024. The parties will continue to meet and confer on this topic in an effort to come to an agreement on a stipulated Protective Order to submit to the Court.

### f.   Privilege

Privilege issues, including privilege logging, are addressed in Plaintiffs' draft ESI Protocol. Plaintiffs' draft Protective Order incorporates a Rule 502(d) agreement governing the inadvertent production of privileged materials. The parties will continue to meet and confer regarding a joint stipulated ESI Protocol that addresses privilege issues and a Protective Order.

### g.   Deposition Logistics

The parties will meet and confer in good faith regarding a protocol for conducting in-person and hybrid depositions. The parties expect that in-person depositions of witnesses located in the United States and under the control of parties to the litigation will be conducted in the Northern District of California or elsewhere in the United States. The parties agree to meet and confer should any disputes arise as to location of depositions and/or use of remote depositions. The parties believe that a deposition protocol is appropriate to set mutually agreed upon guidelines for depositions in this case.

### h.   Discovery Issues and Potential Disputes

The parties are prepared to commence discovery when the Court lifts the discovery stay. The parties have not identified any specific discovery disputes and are prepared to meet and confer on any discovery disputes that may arise. The parties will resolve any potential disputes regarding the stipulated privilege protocol in accordance with the Court's standing orders.

### i.   Narrowing of Issues

No issues have yet been narrowed by agreement or by motion. The parties are prepared to meet and confer about narrowing potential issues should the circumstances of the case change.

**9.   Class Action**

This case is a putative class action. Counsel for both sides have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement:** Plaintiffs believe that the class is so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact size of the class since that information is within the exclusive control of Defendant. Upon information and belief, Plaintiffs believe and allege that the number of class members is in the millions. Plaintiffs allege that, like all class members, their copyright-protected Works were used to train Defendants' Models. Plaintiffs allege all members of the class have been similarly injured by Defendants' conduct. Plaintiffs believe there are numerous questions of law or fact common to the class, and that those issues predominate over any question affecting only individual class members. These common legal and factual issues include: whether Defendants violated the copyrights of Plaintiffs and the class when it downloaded copies of Plaintiffs' copyrighted Works and used them to train Defendants' models; whether this Court should enjoin Defendants from engaging in the unlawful conduct alleged herein, and the appropriate scope of that injunction; whether any affirmative defense (including fair use) excuses Defendants' conduct; and the amount of damages.

**Defendants' Statement:** This action should not be certified as a class action. Defendants are aware of no facts showing that Plaintiffs are entitled to maintain the action under Federal Rule of Civil Procedure 23(a) and (b). Defendants further believe that Plaintiffs' theories of liability should be tested and refined through summary judgment before the Court considers class certification. Defendants intend to oppose any motion for any class certification at the appropriate time.

**10.   Related Cases**

The parties are aware of one additional case brought on behalf of artists with registered copyrights involving certain Defendants' Models: *Getty Images (US), Inc. v. Stability AI, Inc.*, No. 1:23-cv-00135 (D. Del. filed Feb. 6, 2023).

Defendants deny that this is a related case within the meaning of Local Rule 3-12.

**11.    Relief**

   **Plaintiffs' Statement:** Plaintiffs seek statutory and other damages under 17 U.S.C. § 504 for Defendants' violations of the copyrights of Plaintiffs and the class, including an award of reasonable attorneys' fees under 17 U.S.C. § 505, 15 U.S.C. § 1117, or other applicable statutes. Plaintiffs further seek destruction or other reasonable disposition of all copies Defendants made or used in violation of the exclusive rights of Plaintiffs and the class, pursuant to 17 U.S.C. § 503(b). Plaintiffs seek pre- and post-judgment interest on damages awarded to Plaintiffs and the class, at the highest legal rate from and after January 13, 2023, the date the Complaint was first served on Midjourney, Stability AI, and DeviantArt, and November 29, 2023, the date the FAC was first served on Runway.

   **Defendants' Statement:** Defendants deny that Plaintiffs are entitled to any relief whatsoever. Defendants do not seek relief at this time other than attorneys' fees and costs if they prevail.

**12.    Settlement and ADR**

   ADR Certifications pursuant to ADR Local R. 3-5(b) were filed by Plaintiffs Ellis, Brom, Manchess, Rutkowski, Southworth, Kaye, and Zhang on May 9, 2024 (Dkts. 200-206) and by Plaintiffs Andersen, McKernan, and Ortiz on August 16, 2023 (Dkts. 98-103). Defendant Stability AI filed its certification on September 12, 2023 (Dkt. 109) and DeviantArt filed its certification on August 29, 2023 (Dkt. 106). Defendant Runway filed its certification on October 15, 2024 (Dkt. 233). Defendant Midjourney filed its certification on October 21, 2024. The parties continue to meet and confer on an ADR plan.

**13.    Other References**

   The parties agree that this case is not suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time. The parties do not oppose having discovery disputes heard by a magistrate judge if the Court is inclined to appoint a discovery magistrate.

**14.    Narrowing of Issues**

   No issues have yet been narrowed by agreement or by motion.

**15.** <u>**Scheduling**</u>

    **a. Expedited Trial Procedures**

    The parties agree that these Actions are inappropriate for the Expedited Trial Procedure of General Order 64.

    **b. Case Schedule**

    The parties met and conferred regarding the case schedule and came to an agreement as to case deadlines, which are shown in <u>**Exhibit A**</u>. The parties dispute, however, the sequencing of (a) summary judgment and (b) class certification motions. While the parties agree that the briefing schedule should be the same for all motions—denoted "First Round Motion(s)" and "Second Round Motion(s)" in Exhibit A—the parties disagree about which should be litigated first.

    **Plaintiffs' Position**

    Plaintiffs propose that class certification be litigated before summary judgment. Defendants' proposed schedule is in contravention of Rule 23. Plaintiffs, of course, dispute that fair use is suitable for resolution via dispositive motion practice, and is instead an issue that "must go to a jury." *Thomson Reuters Enter. Centre GmbH v. Ross Intelligence Inc.*, 694 F. Supp. 3d 467, 481-87 (D. Del. 2023) (denying summary judgment on fair use in generative AI case). In any event, any determination regarding fair use would be an issue common to the class, and thus does not require determination prior to class certification. Further, Defendants' proposal would deny Plaintiffs the opportunity to seek summary judgment before class certification due to the one-way intervention rule. "[T]he history of the development of Rule 23(c)(2) makes clear that the rule was adopted to prevent 'one-way intervention'—that is, the intervention of a plaintiff in a class action after an adjudication favoring the class had taken place." *Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995). Under the one-way intervention rule, district courts generally do not grant motions for summary judgment by plaintiffs on the merits of a class action until the class has been properly certified and notified. *Moore v. Mars Petcare US*, Inc., No. 16-CV-07001-MMC, 2021 WL 6063577, at *2 (N.D. Cal. Dec. 22, 2021). Nothing prevents Defendants from seeking early summary judgment before class certification even if a schedule contemplates dispositive motions after class certification. Such a motion, however, would waive the right to have any judgment bind the proposed class. *Schwarzschild*, 69 F.3d at 297. Under Defendants' proposed schedule, however, plaintiffs would be

required to file summary judgment motions before class certification, in violation of the one-way intervention rule. In other words, Defendant's proposal precludes Plaintiffs from moving for summary judgment after class certification, which would run counter to the framework provided by Rule 23. Though Defendants cite Judge Chhabria, other courts in this district have disagreed with the approach—Judge Martínez-Olguín rejected a similar schedule seeking to sequence dispositive motions before class certification. *Tremblay v. OpenAI Inc.*, Case No. 23-cv03223 (N.D. Cal.), ECF No. 77 at 12:8-13:9 (recognizing in generative AI class action that sequencing summary judgment before class certification "will deny [Plaintiffs] the opportunity to be able to seek summary judgment" and denying request to sequence summary judgment before class certification).

**Defendants' Position**

Defendants propose that summary judgment and *Daubert* motions be litigated before class certification. Under Defendants' proposal, summary judgment and *Daubert* briefing will be completed by October 19, 2026, and any motion for class certification may be filed 45 days after entry of the order(s) resolving all summary judgment motions. "[W]here it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to rule on a motion for summary judgment before it decides the certification issue." *Wright v. Schock*, 742 F.2d 541, 543–44 (9th Cir. 1984). That ordering is particularly "reasonable" where "likely" to avoid "needless and costly further litigation." *Id.*; *see also* Standing Order for Civil Cases Before Judge Vince Chhabria (N.D. Cal.) ¶ 50, available at https://www.cand.uscourts.gov/wp-content/uploads/judges/chhabria-vc/VC-Civil-Standing-Order-2023-06-01.pdf (stating that the court believes that litigating summary judgment before class certification "will often save a great deal of time and money").

The fair use defense may moot class certification questions and streamline and potentially even dispose of this litigation, consistent with the Second Circuit's conclusion in *Authors Guild v. Google, Inc.* ("Google Books"). In that case, Google was alleged to have committed copyright infringement by creating "digital scan[s]" of "millions of books" to create a new search functionality. 804 F.3d 202, 208–29 (2d Cir. 2015). Prior to summary judgment, the plaintiffs moved to certify a class under Rule 23, and the district court granted the motion based, in part, on plaintiffs' argument that the fair use question could be resolved on a class-wide basis. 282 F.R.D. 384, 394 (S.D.N.Y. 2012). The Second Circuit

reversed, holding that the district court's attempt to grapple with Rule 23's requirements was premature given that those issues would be "necessarily inform[ed] and perhaps moot[ed]" by "resolution of [the] fair use defense in the first instance." 721 F.3d 132, 134 (2d Cir. 2013); *see also Schneider v. YouTube, LLC*, 2023 WL 3605981, at *10-11, *13, *15 (N.D. Cal. May 22, 2023) (relying on summary judgment record in adjudicating class cert. and thus demonstrating efficiencies even where judgment is denied).

In this District and elsewhere, nearly every court that has confronted this sequencing question in copyright cases involving artificial intelligence has scheduled summary judgement briefing prior to class certification briefing. *See, e.g.*, *Kadrey et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal. Jan. 12, 2024), Dkt. 85 (Jan. 12, 2024 H'rg Tr. at 3:20-6:24, 12:10-18) (summary judgment before class certification); *O'Nan v. Databricks, Inc.*, No. 3:24-cv-01451-CRB (N.D. Cal. July 14, 2024), Dkt. 53 (summary judgment before class certification); *Authors Guild v. OpenAI Inc.*, No. 23-cv-8292-SHS (S.D.N.Y. Jan. 31, 2024), Dkt. 65 (summary judgment before class certification upon parties' consent); *Dubus et al. v. NVIDIA Corp.*, No. 4:24-cv-02655-JST (N.D. Cal. Sept. 11, 2024), Dkt. 59 (summary judgment before class certification upon parties' consent); *but see In re OpenAI ChatGPT Litigation*, No. 3:23-cv-3223 (N.D. Cal. Aug. 19, 2024), Dkt. 75 (Nov. 8, 2024 Hr'g Tr. at 16:25-17:4) & 173 (setting deadline for class certification briefing without summary judgment briefing schedule but inviting defendants to revisit the issue in the future).

Plaintiffs' reference to the one-way intervention doctrine is misguided. The risk of prejudice that the one-way intervention doctrine is concerned with—namely, that if defendants prevail on summary judgment, the ruling will not bind absent class members—is prejudice borne by the *defendant*, not by plaintiffs. *Khasin v. Hershey Co.*, No. 5:12-cv-01862-EJD, 2014 WL 1779805, at *2-3 (N.D. Cal. May 5, 2014) (rejecting plaintiffs' argument that the possibility of "one-way intervention" constitutes prejudice where the defendant sought summary judgment prior to a ruling on class certification). As the court in *Khasin* held, "[w]here the defendant assumes the risk that summary judgment in his favor will have only stare decisis effect on the members of the putative class, it is within the discretion of the district court to rule on the summary judgment motion first." *Id.* at *2. All Defendants here agree to assume that risk. *See Kadrey*, No. 3:23-cv-03417-VC, Dkt. 85 (Jan. 12, 2024 H'rg Tr. at 3:20-6:24, 12:10-18) (ordering summary judgment before class certification despite plaintiffs having raised the

same one-way intervention issue that Plaintiffs raise here); *O'Nan v. Databricks, Inc.*, No. 3:24-cv-01451-CRB, Dkt. 51-53 (ordering summary judgment before class certification over plaintiffs' one-way intervention argument where defendants waived objections based on the one-way intervention rule).

**16.**    **Trial**

The case will be tried before a jury. Plaintiffs anticipate a 14-day trial. Defendants believe it is premature to estimate the length of trial at this time.

**17.**    **Disclosure of Non-Party Interested Entities or Persons**

Plaintiffs Andersen, McKernan, and Ortiz filed a Certification of Interested Entities or Persons on January 20, 2023 (Dkt. 9). Plaintiffs Ellis, Brom, Manchess, Rutkowski, Southworth, Kaye, and Zhang will file their Certification of Interested Entities or Persons concurrently with the SAC. Certifications of Interested Entities or Persons were filed by DeviantArt on February 6, 2023 (Dkt. 34); Midjourney on February 23, 2023 (Dkt. 48); Stability AI on April 18, 2023 (Dkts. 56-57); and Runway on January 10, 2024 (Dkt. 150).

**18.**    **Professional Conduct**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19.**    **Other Matters**

The parties are not presently aware of other matters that may facilitate the resolution of these cases.

Dated: October 22, 2024

Respectfully submitted,

By: /s/ *Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan Creutz (SBN 349728)
David Lerch (SBN 229411)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email:       jsaveri@saverilawfirm.com
              cyoung@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              ecreutz@saverilawfirm.com
              dlerch@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle Wagner (*pro hac vice*)
Eura Chang (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:  (612)339-6900
Facsimile:  (612)339-0981
Email:       bdclark@locklaw.com
              lmmatson@locklaw.com
              aswagner@locklaw.com
              echang@locklaw.com

*Counsel for Individual and Representative*
*Plaintiffs and the Proposed Class*

Dated: October 22, 2024

Respectfully Submitted,

By: _/s/ Andrew M. Gass_

Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
Brittany N. Lovejoy (SBN 286813)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: andrew.gass@lw.com
      michael.rubin@lw.com
      brittany.lovejoy@lw.com

_Counsel for Defendant DeviantArt, Inc._

Dated: October 22, 2024

Respectfully Submitted,

By: _/s/Joseph Charles Gratz_

Joseph Charles Gratz
Eoin Paul Connolly
Tiffany Cheung
Timothy Chen Saulsbury
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Email: jgratz@mofo.com
      econnolly@mofo.com
      tcheung@mofo.com
      tsaulsbury@mofo.com

Laura Gilbert Remus
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Email: abennett@mofo.com
      lremus@mofo.com

Aditya Vijay Kamdar
**MORRISON & FOERSTER LLP**
2100 L Street NW, Suite 900
Washington, DC 20037

Telephone: (202) 887-1500
Email: akamdar@mofo.com

Mark Alan Lemley
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 906-8657
Email: mlemley@lex-lumina.com

*Counsel for Defendants Stability AI Ltd. and
Stability AI, Inc.*

Dated: October 22, 2024                         Respectfully Submitted,

                                                 By:  */s/ Angela Dunning*

                                                 Angela Dunning
                                                 Sam Blankenship
                                                 **CLEARY GOTTLIEB STEEN &
                                                 HAMILTON LLP**
                                                 1841 Page Mill Road, Suite 250
                                                 Palo Alto, CA 94304-1248
                                                 Telephone: (650) 815-4131
                                                 Email: adunning@cgsh.com
                                                          sblankenship@cgsh.com

                                                 Amira Perryman
                                                 Arminda B. Bepko
                                                 Vishakha Joshi
                                                 **CLEARY GOTTLIEB STEEN &
                                                 HAMILTON LLP**
                                                 One Liberty Plaza
                                                 New York, NY 10006
                                                 Telephone: (212) 225-2517
                                                 Email: aperryman@cgsh.com
                                                          abepko@cgsh.com
                                                          vjoshi@cgsh.com

                                                 *Counsel for Defendant Midjourney, Inc.*

Dated: October 22, 2024                           Respectfully Submitted,


                                                    By: */s/ David Jason Silbert*

                                                  David Jason Silbert
                                                  Paven Malhotra
                                                  Bailey Wilson Heaps
                                                  Julia Leigh Greenberg
                                                  Luke P. Apfeld
                                                  **KEKER VAN NEST & PETERS LLP**
                                                  633 Battery Street
                                                  San Francisco, California 94111-1809
                                                  Telephone: (415) 391-5400
                                                  Email: dsilbert@keker.com
                                                          pmalhotra@keker.com
                                                          bheaps@keker.com
                                                          jgreenberg@keker.com
                                                          lapfeld@keker.com

                                                  *Counsel for Defendant Runway AI, Inc.*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: October 22, 2024

*/s/ Joseph R. Saveri*
Joseph R. Saveri

*Exhibit A: Proposed Schedule*

| Event | Date |
|---|---|
| Date by which Plaintiffs must file their Second Amended Complaint. | October 31, 2024 |
| Date by which parties must serve initial disclosures. | November 14, 2024 |
| Parties must submit (1) stipulated ESI Protocol and (2) stipulated Protective Order, or each file a brief up to 5 single-spaced pages explaining their position. | December 2, 2024 |
| Date by which Defendants must answer Second Amended Complaint. | December 6, 2024 |
| Hearing on proposed Protective Order and ESI Protocol (if necessary). | December 18, 2024 |
| Date by which parties must submit an agreed upon Deposition Protocol or a joint letter (each side allowed up to 3 single spaced pages) brief regarding any disputed areas. | February 3, 2025 |
| Parties shall complete their meet and confer process regarding Defendants' training data, including raising any questions about procedures for producing training data. | February 10, 2025 |
| Substantial completion of production of Training Data. | April 14, 2025 |
| Substantial Completion of Document Discovery. | July 25, 2025 |
| Producing party to produce privilege logs for any documents withheld on the basis of any privilege to date. | August 26, 2025 |
| Close of Fact Discovery. | March 13, 2026 |
| Deadline for parties to file amended pleadings. | January 12, 2026 |

| Event | Date |
|---|---|
| Filing of Opening Expert Report(s) on which respective Parties have burden of proof. | April 13, 2026 |
| Filing of Responsive Expert Report(s). | May 13, 2026 |
| Filing of Reply Expert Report(s). | June 15, 2026 |
| Close of Expert Discovery | July 17, 2026 |
| Filing of First Round Motion(s)[1] | August 14, 2026 |
| Oppositions to First Round Motion(s) | September 28, 2026 |
| Replies in support of First Round Motion(s) | October 19, 2026 |
| Hearing on First Round Motion(s) | November 3, 2026, or at the Court's convenience |
| Filing of Second Round Motion(s) | 45 days after entry of Order on First Round Motion(s) |
| Oppositions to Second Round Motion(s) | 45 days after Second Round Motion(s) are filed |
| Reply in Support of Second Round Motion(s) | 21 days after Oppositions to Second Round Motion(s) are filed |
| Hearing on Second Round Motion(s) | February 16, 2027 or at the Court's convenience |

---

[1] Plaintiffs propose that "First Round Motion(s)" be Plaintiffs' Class Certification Motion only, and "Second Round Motion(s)" be Summary Judgment and *Daubert* Motions.  Defendants propose the opposite sequence: "First Round Motion(s)" should be the parties' Summary Judgment and *Daubert* Motions, and "Second Round Motion(s)" should be Plaintiffs' Class Certification Motion. The parties plan to address the sequencing of these motions at the Case Management Conference, but the parties agree that the briefing schedule for all such motions should be the same, so the proposed schedule above accommodates either.