601 CALIFORNIA STREET
SUITE 1505
SAN FRANCISCO CA 94108

TEL 415.500.6800
FAX 415.395.9940

**JOSEPH SAVERI**
LAW FIRM

December 9, 2024

**Via CM-ECF**

Hon. William H. Orrick
San Francisco Courthouse
Courtroom 2 – 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

The Honorable William H. Orrick:

      In response to the Court's December 2, 2024, order regarding Plaintiffs' proposed ESI discovery protocol ("Plaintiffs' ESI Protocol") and Protective Order ("Plaintiffs' PO"), ECF No. 243, and pursuant to the Court's Standing Orders for Civil Cases, Plaintiffs submit a declaration justifying their departures from the model orders, Plaintiffs' proposed orders as Exhibits A and B, a redline comparing the ESI Protocol with the Northern District of California's Model Stipulated Order Re: Discovery of Electronically Stored Information as Exhibit C, and a redline comparing the PO with the model protective order as Exhibit D.

**I.    Introduction**

      In 2012, this District issued two model stipulated orders for electronically stored information ("ESI"): the SMO for standard litigation and a Model Patent Order ("MPO") for patent cases. No party to this case advocates for the wholesale adoption of either model order. Plaintiffs' ESI Protocol builds upon the SMO framework while incorporating modern ESI best practices. This approach ensures comprehensive treatment of critical issues while promoting efficient dispute resolution.[1] Defendants' proposed ESI protocol incorporates the most draconian and restrictive provisions of the MPO into the SMO framework.[2] However, where patent disputes typically involve narrow technical issues, Plaintiffs' allegations address broad copyright claims regarding the misuse of creative works in training AI models. AI-related copyright litigation requires expansive discovery beyond the technical documentation contemplated by the MPO. Essential sources include datasets, internal communications, and corporate decisions regarding the alleged copyright violations. The MPO-derived limitations in Defendants' protocol would substantially

---

[1] With regard to the Protective Order, both Parties have started with the Model Protective Order for Litigation Involving Highly Sensitive Confidential Information and/or Trade Secrets. Although the Parties are largely aligned on the contents of the Protective Order, Plaintiffs propose a definition of "source code" that is specifically tailored to the needs of this case.

[2] Plaintiffs first sent their proposed ESI Protocol to Defendants on October 8, 2024. Defendants did not reciprocate until December 4, 2024, leaving only a few days to negotiate any compromise. Upon reaching impasse, the Parties opted to file separate proposals. Plaintiffs sent their final proposal to Defendants at 11:48am PST on the filing date. Defendants did not send theirs to Plaintiffs until 5:40PM PST on the filing date.

Hon. William H. Orrick
December 9, 2024
Page 2

impair discovery of relevant evidence through restricted email searches, custodians, and search terms. Given this litigation's scope, Defendants' proposed constraints would contravene the transparency, fairness, and proportionality required by the Federal Rules of Civil Procedure. *See Mironowski v. Ford Motor Co.*, No. 1:22-cv-00675-JLT-CDB, 2023 WL 2957858, at *2 (E.D. Cal. Apr. 14, 2023) (stating that the Northern District of California's preference for model orders to protect trade secrets and proprietary information applies only in patent cases).

Plaintiffs' proposals would advance the just, speedy, and inexpensive resolution mandated by Rule 1 by establishing clear ground rules for discovery. Courts and parties in other recent generative AI copyright cases have similarly recognized the model orders' limitations and developed ESI frameworks tailored to address comprehensive discovery requirements. *See, e.g., Nazemian et al. v. NVIDIA Corp.*, No. 4:24-cv-01454-JST, ECF No. 89-2, Nov. 18, 2024; *O'Nan et al. v. Databricks, Inc. et al.*, No. 3:24-cv-01451-CRB, ECF No. 61, Dec. 5, 2024.

## II.     Plaintiffs' Protocol Reflects ESI Best Practices Well-Suited to This Litigation

The present matter hinges on fact-intensive fair use determinations and will require broad discovery to evaluate purpose, market impact, and scope of infringement. To prepare for the potentially high volume of discovery in this case, Plaintiffs' proposal provides a framework for search methodologies and the development of search terms which will allow Defendants to use mechanized solutions to identify and produce responsive documents. Plaintiffs also submit mechanisms to ensure search terms are effective and not overly burdensome and include provisions for capturing relevant documents from modern workplaces which increasingly rely on mobile communications, enterprise messaging, and embedded and hyperlinked documents for sharing across custodians. Plaintiffs have specifically tailored their proposed departures from the SMO to the needs of this case. *See In re Social Media Adolescent Addiction*, No. 22-md-03047-YGR (PHK), 2024 WL 1786293, *2 (N.D. Cal. Feb. 20, 2024) ("An ESI protocol must be specific, or it doesn't mean anything.").

In contrast, Defendants' proposal would impose the MPO's most limiting provisions: (1) restrictive email discovery; (2) custodial and search term limitations; and (3) insufficient search methodology. *See* Defendants' ESI Protocol §§ 5-6. Moreover, Defendants' proposal excludes essential discovery sources, such as structured data and other non-custodial data, and imposes rigid constraints on custodians and search terms. Defendants' ESI Protocol also omits important mechanisms for validating the efficacy of search terms, thereby reducing transparency in the discovery process. Defendants' disregard of essential ESI issues substantially increases the likelihood of court intervention and inefficiency. *See* THE SEDONA PRINCIPLES, THIRD EDITION, cmt. 3.a. (2018) ("Early discussion of all discovery issues…should reduce misunderstandings, disputes, and the need for court intervention.").

### A.     Plaintiffs' Custodian and Search Methods Are Proportional and Appropriate

Plaintiffs propose that each party identify 24 custodians, Plaintiffs' ESI Protocol § 5.a. This number aligns with established precedent in this District, where courts have consistently approved comparable custodian counts in cases of similar scope and complexity involving massive amounts of data, systemic infringement, and multi-departmental decision-making. *See In re OpenAI ChatGPT Litigation*, Lead Case No. 3:23-cv-3223-AMO (N.D. Cal. Aug. 22, 2024), ECF No. 175 (order in generative AI copyright infringement case allowing plaintiffs to seek discovery from 24

custodians); *Nazemian et al. v. NVIDIA Corp.*, No. 4:24-cv-01454-JST, (N.D. Cal. Nov. 18, 2024), ECF No. 89-2 (both parties proposing 24 custodians pursuant to guidance from the court).

Plaintiffs' ESI Protocol § 5.c establishes a framework for the iterative development of search terms. This methodological approach comports with established discovery principles and ensures comprehensive document identification while maintaining proportionality under Fed. R. Civ. P. 26(b)(1).

Defendants' proposed ESI Protocol limits email discovery to five custodians and five search terms per custodian. Defendants' ESI Protocol §§ 5-6. Such severe limitations contravene the scope of discovery contemplated by Fed. R. Civ. P. 26(b)(1). The development and implementation of AI models necessarily involves multiple operational units, including research and development, data engineering, legal, and executive leadership. Limiting the number of custodians would exclude key decision-makers and obscure the full scope of internal decision-making regarding the use of copyrighted works in Defendants' training datasets.

Further, restricting search terms to five per custodian fails to account for the complexity of AI development, where internal communications frequently employ varied terminology, including industry-specific nomenclature and departmental acronyms that differ across technical, legal, and executive teams. Such constraints would exclude critical evidence, particularly where discussions involve proprietary terms or technical specifications.

Finally, Plaintiffs do not seek to depart from the SMO in describing its purpose in Section 1, but Defendants propose modifying this language in a seeming attempt to carve out email and other electronic communications that are not traceable to a specific individual, which is improper. For example, Defendants' proposal would likely obscure emails sent to and/or from a distribution list account such as ai-team@defendant.com.

### B. A Defined Search Methodology Is Critical to the Integrity of the Discovery Process

Defendants' ESI Protocol lacks provisions for search term hit reports, embedded files, and hyperlinked documents. It also omits crucial validation procedures and fails to provide robust safeguards for ensuring transparency throughout the discovery process. The scale and complexity of discovery in this case necessitates both hit reports and comprehensive validation protocols to ensure that the search terms and methodologies are effectively capturing relevant materials. *See* THE SEDONA PRINCIPLES, THIRD EDITION, cmt. 10.g. (2018) (Parties should develop "quality assurance to support the reasonableness of the review."); *In re Seroquel Prods. Liability Litig.*, 244 F.R.D. 650, 652 (M.D. Fla. 2007) ("[W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process…Common sense dictates that sampling and other quality assurance techniques must be employed to meet the requirements of completeness.").

Hit reports provide counts of documents matching search terms, unique documents, and family members requiring review, and are necessary for evaluating search term performance. Validation procedures work hand in hand with hit reports to determine whether search terms are capturing responsive documents. Without these critical procedures, Plaintiffs are forced to rely solely on Defendants' assessment of relevance and efficacy, creating the significant risk that important documents will be overlooked. Plaintiffs' proposal emphasizes the need for formal validation measures and quality control checks to confirm that search terms are capturing relevant

information while minimizing irrelevant results. *See* Plaintiffs' ESI Protocol § 5.e. These checks provide a safeguard against both underproduction and overproduction of documents, ensuring a discovery process that is both fair and proportional.

Defendants' ESI Protocol also omits provisions for hyperlinked or embedded files. Given the prevalence of hyperlinked and embedded documents in corporate communications, especially through platforms like Google Drive or Microsoft Teams, Defendants' silence on this topic—and its express limitation that the ESI protocol cover only custodial documents—makes it very likely that key evidence will be excluded. Plaintiffs' proposal takes a more comprehensive approach by ensuring that hyperlinked documents are included as part of the standard discovery process, reducing the likelihood of missing critical evidence. *See* Plaintiffs ESI Protocol § 11.

### C. Enterprise Messaging and Mobile Data Discovery is Necessary

Defendants' failure to address mobile and enterprise messaging data altogether is unacceptable given the critical role that modern communication methods play in today's work environment. Key communications frequently occur outside of traditional emails and on mobile devices or enterprise messaging platforms such as Slack, Workplace, or Microsoft Teams. Defendants' approach, which does not account for this reality, is outdated and would artificially limit the scope of discovery by excluding essential data sources. Plaintiffs' proposed ESI protocol explicitly ensures that mobile devices, such as cell phones and tablets, are included in discovery. *See* Plaintiff ESI Protocol § 6. This case involves allegations of systemic copyright infringement through AI training, and informal and cross-departmental communications will be vital for understanding Defendants' decision-making processes regarding the use of copyrighted materials.

### D. Defendants Fail to Address Structured Data

The central issue in this litigation is Defendants' alleged use of Plaintiffs' copyrighted works to train its AI models. Understanding how such models used Plaintiffs' works requires discovery beyond traditional document and email production. The datasets involved are complex and encompass structured data, model parameters, training data, source code, and other technical details that reveal the inner workings of the AI models at issue. While the Parties agree to meet and confer on the production of model data, Defendants exclude key parameters for this conference from their proposal. Defendants also wholly omit any discussion of structured data, which includes data from relevant databases or datasets.

Comprehensive technical discovery is essential to establish how Defendants processed, transformed, and used Plaintiffs' works in training their AI models. Critical evidence encompasses model parameters, model architecture, structured training datasets, and associated technical specifications. Analysis of these technical components enables Plaintiffs to demonstrate both the fact of unlawful copying, and the integral role of Plaintiffs' works in Defendants' models. Training data logs and model parameters demonstrate the weight given to Plaintiffs' works and the model's reliance on these works. Absent such technical discovery, Plaintiffs cannot prove the extent of infringement. Plaintiffs' ESI Protocol properly mandates the discovery of structured data and AI model-related information. *See* Plaintiffs' ESI Protocol §§ 12-13.

### E. A Privilege Log Protocol is Necessary to Ensure Sufficient Transparency

Privilege logs are critical to establishing the transparency necessary for a fair discovery

process and must include the necessary detail to ensure that privilege claims are properly assessed. *See, e.g.*, *Prado v. Equifax Info. Servs. LLC*, No. 18-cv-02405-PJH (LB), 2019 WL 88140, at *3 (N.D. Cal. Jan. 3, 2019) ("If a party withholds material as privileged ... it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified."). Plaintiffs' proposed protocol for privilege logs ensures the parties have sufficient information to assess privilege claims and establishes clear requirements to avoid disputes. *See* Plaintiffs' ESI Protocol § 14. Defendants' proposal only vaguely refers to "applicable Ninth Circuit precedents" and will invite disputes and undermine transparency. Defs' ESI Protocol § 10.

### III. Plaintiffs' Proposed Protective Order Strikes the Necessary Balance

The primary dispute between the parties regarding the Protective Order concerns the definition of "Source Code." Plaintiffs propose a more precise definition that would exclude materials not genuinely part of the source code, such as training data, design documents, or comments about source code. *See* Plaintiffs' Protective Order § 2.18. Defendants rely on the model definition, which includes items that are not strictly source code, including hardware designs, engineering specifications, revision histories. This definition is overly broad and would allow documents that are not actual source code to be classified as such. Given the stringent restrictions proposed for documents designated as "Highly Confidential – Source Code"—including advanced expert disclosures under Section 7.4, and the burdensome inspection protocols outlined in Section 9—Plaintiffs firmly believe the definition of "Source Code" should be narrowly tailored to only include <u>actual</u> source code and should not encompass any document Defendants deem to have technical significance. Plaintiffs' proposal strikes the appropriate balance, providing sufficient protections while ensuring that the Source Code and corresponding Highly Confidential – Source Code designations are not abused.

### IV. Conclusion

A comprehensive ESI Protocol creates standardized procedures for the collection, review, and production of relevant materials and ensures an efficient and cost-effective discovery process. Plaintiffs' proposed Protocol provides the only framework that can ensure fair, comprehensive, and proportional discovery in this complex copyright case. Defendants' attempt to impose rigid limitations designed for patent cases would obstruct the transparency and breadth of discovery that the Federal Rules mandate. The stakes in this class action—where Defendants face allegations of systemic copyright infringement through AI training—demand more than a narrow discovery process tailored to individual patent disputes. Plaintiffs' proposed ESI Protocol properly addresses the complexities of structured data, model training data, and internal communications necessary to uncover the scope of Defendants' conduct. It establishes a level playing field while remaining mindful of proportionality and efficiency. Similarly, Plaintiffs' proposed definition of "Source Code" in Plaintiffs' proposed Protective Order ensures that Defendants' most confidential data remain protected while ensuring that non-source code is not over-designated. Adopting Plaintiffs' proposed ESI Protocol and Protective Order will promote effective discovery and preserve Plaintiffs' right to obtain evidence needed to prove their claims.

Sincerely,

Joseph R. Saveri