February 12, 2025

**Via ECF**

The Honorable Lisa J. Cisneros
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom G – 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

      Re:    *Andersen, et al v. Stability AI Ltd.*,
               Case No: 3:23-cv-00201-WHO

Dear Judge Cisneros,

      On October 29, 2024, Judge Orrick adopted the schedule proposed by the Parties in their Joint Case Management Statement, with modifications not at issue here. ECF No. 240. The Parties' schedule provided that a deposition protocol would be submitted to this Court, or the Parties would submit a joint letter brief (of up to three pages per side) regarding disputed issues, by February 3, 2025. ECF No. 235 at 24. On January 31, 2025, upon a showing of good cause, the Court extended that deadline to February 12, 2025. ECF No. 255 at 2.

      Despite extensive good-faith negotiations and agreement on most aspects of the deposition protocol, the Parties remain deadlocked on one critical issue: Plaintiffs' request to conduct up to 60 depositions of Defendants' fact witnesses.[1] The Parties explain their arguments below.

**PLAINTIFFS' POSITION:**

**I.**    **Plaintiffs are Entitled to Take Up To 60 Depositions of Defendants' Fact Witnesses**

      The scope and complexity of this case demand expansion of the standard deposition limits under Federal Rule of Civil Procedure 30. Plaintiffs seek leave to take up to 60 depositions of Defendants' fact witnesses to fully develop their claims, establish liability, and prepare for trial. Given the number of corporate defendants, the technical nature of the infringement, and the vast scale of the alleged misconduct, and the claims and defenses at issue, this request is both necessary and proportional. Courts routinely permit expanded deposition limits in cases of this magnitude, particularly where key evidence remains under Defendants' exclusive control. E.g., *Kadrey v. Meta Platforms, Inc.*, 2024 WL 4502099, at *1 (N.D. Cal. Oct. 15, 2024) (Hixson, M.J.) (explaining in single defendant generative-AI copyright case that issues at stake and importance of discovery in resolving issues "justifies a greater number of depositions" and ordering 25 fact depositions). Denying Plaintiffs this discovery would severely prejudice their ability to prove their case, while the burden on Defendants—large, well-resourced entities—is

---

[1] **Exhibit A**, filed concurrently, contains the Parties' proposed joint deposition protocol with notations indicating the remaining dispute.

Hon. Lisa J. Cisneros
February 12, 2025
Page 2 of 6

minimal in comparison. And Plaintiffs' request here is modest—Plaintiffs have asked for 60 total depositions as a baseline, or 15 fact depositions per defendant family. That is reasonable for a case of tremendous societal importance, and which could involve billions of dollars in damages. Defendants' proposal of 12 fact depositions *total*, or four fact depositions per defendant family, would plainly not be proportional to the needs of a case of this complexity and scale.

Defendants' contention that this request is premature fundamentally misunderstands both the nature of complex technological litigation and the practical requirements of efficient case management. Courts routinely evaluate and approve expanded deposition limits at the outset of discovery precisely to enable coherent planning and systematic examination of technical processes that, as here, span multiple development teams. The Northern District recently rejected similar arguments in *Kadrey*, where the court found early establishment of expanded limits essential to ensure orderly discovery and prevent piecemeal disputes. 2024 WL 4502099, at *2.

Federal Rule of Civil Procedure 30(a)(2) grants courts broad discretion to permit additional depositions upon a showing of good cause, and courts routinely do so in complex technological cases involving multiple corporate defendants and sophisticated technical issues. *Couch v. Wan*, 2011 WL 4499976, at *2 (E.D. Cal. Sept. 27, 2011) ("Here, the complexity of this case justifies exceeding the presumptive deposition limit. The action involves multiple plaintiffs, multiple defendants, and complex legal issues."). This litigation squarely fits that framework. *Del Campo v. Am. Corrective Counseling Servs., Inc.*, 2007 WL 3306496, at *6 (N.D. Cal. Nov. 6, 2007) (expanding deposition limits "where the complexity clearly warrants more than ten depositions."). The Court need not wait for Plaintiffs to come to it again when it is an absolute certainty 12 depositions across four defendant families will not be enough.

The requested depositions fall into three essential categories, each serving distinct and necessary discovery purposes. First, Plaintiffs require 20-25 depositions of core technical witnesses, including AI model architects and training data engineers. Defendants' self-serving and unsupported characterization of themselves as "lean startups" ignores commercial reality and the complexity of AI model development. Each defendant maintains sophisticated technical teams responsible for distinct aspects of their AI systems. The 20-25 technical depositions sought represent the minimum necessary to examine key personnel across critical functions: data acquisition, model architecture, training implementation, and deployment/operations. This targeted discovery cannot be meaningfully compressed into the 12 depositions Defendants propose without sacrificing essential evidence.

Second, Plaintiffs must depose 15-20 witnesses regarding corporate structure and decision-making. This category includes executive leadership, project managers, and strategic decision-makers responsible for policies and directives governing the acquisition and use of training data, including Plaintiffs' copyrighted works. These witnesses hold key information about internal deliberations, risk assessments, and the extent to which Defendants knowingly exploited copyrighted material without authorization. Their testimony is critical to establishing corporate knowledge, intent, and willfulness—essential elements for proving liability and securing enhanced statutory damages. *Harper & Row, Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("Fair use presupposes 'good faith' and 'fair dealing.'" (citation omitted).

Third, Plaintiffs require 15-20 depositions of business operations personnel, including dataset acquisition teams, product managers, and external consultants. These witnesses possess critical information about how Defendants sourced, processed, and integrated training data into their AI models, whether there were any attempts to purchase or license training data, as well as how they marketed and monetized these products. Their testimony will reveal the extent to which Defendants prioritized commercial success over copyright compliance, how they responded to internal and external concerns about infringement, whether they took any steps to mitigate unlawful use of copyrighted material, and whether they intended for their products to act as market substitutes to the artists whose works they stole.

Defendants' offer of 13 hours of 30(b)(6) testimony per company cannot substitute for individual fact witness testimony with firsthand knowledge. Corporate testimony inherently provides only high-level organizational knowledge, while individual depositions are essential to establish specific decisions, communications, and actions regarding copyright compliance and willfulness. It is a poor substitute for the testimony of those who were there designing the models, selecting the training data, and making the decisions as to whether or not to intentionally use copyrighted works. The technical complexity of AI model development demands examination of both corporate policy and individual implementation.

The proportionality analysis under Rule 26(b)(1) strongly supports granting the requested expansion. *Kadrey*, 2024 WL 4502099, at *1 ("[T]he issues at stake in this action are important, … many more than 10 depositions are proportional to the needs of the case, … the parties' resources justify a significant increase in the deposition limits, and … the importance of the discovery in resolving the issues likewise justifies a greater number of depositions."). This case involves widespread infringement of multiple registered works, with substantial economic and legal stakes, including significant potential statutory damages. The vast majority of relevant information—concerning Defendants' data acquisition, AI model development, and corporate decision-making—remains exclusively within their control, making deposition testimony essential to uncovering the full scope of their misconduct. Further, the development and deployment of Defendants' AI models involved a complex web of decisions spanning multiple corporate divisions, each with distinct responsibilities and knowledge. Key decisions—ranging from the acquisition and use of training data to product commercialization and responses to copyright concerns—were made at various levels within Defendants' organizations. Given the scale of Defendants' operations, the burden of accommodating these depositions is minimal compared to the critical need for this discovery.

The federal rules explicitly allow for expanding deposition limits in complex cases where necessary to ensure a fair and thorough adjudication. Here, the sheer scope of alleged infringement, the intricate technical issues involved, and the number of corporate actors across multiple entities make the standard deposition cap unworkable. Defendants' suggestion that additional depositions could be negotiated later ignores both practical reality and judicial economy. Forcing Plaintiffs to return repeatedly for piecemeal requests would needlessly burden the Court and delay resolution of this significant dispute. The 60 depositions requested represent careful analysis of discovery needs across five corporate defendants, averaging just 12 witnesses per entity. This targeted scope—particularly given the exclusion of third-party and expert

depositions—reflects a measured approach to complex technological litigation that courts have repeatedly endorsed. Limiting discovery in a case of this magnitude would undermine Plaintiffs' ability to present critical evidence and hold Defendants accountable.

## DEFENDANTS' POSITION:

Each side should be entitled to no more than twelve depositions of party fact witnesses. Plaintiffs' request for ***sixty depositions*** of Defendants' witnesses—six times the presumptive limit—lacks any particularized justification and should be rejected. Plaintiffs' failure to meet this burden is all the more striking when considered against the backdrop of who Defendants are. Defendants are not large, public technology companies with tens of thousands of employees and trillion-dollar market capitalizations. Most are small, early-stage startups with dozens of employees. Defendants have already gone above and beyond the default to accommodate additional discovery. Given the relative size and resources of the Defendants and the scope of the issues, Defendants' proposed limit of twelve depositions, an increase over the default rule, offers a more reasonable and proportionate approach to discovery at this stage.

Federal Rule of Civil Procedure ("Rule") 30(a)(2) establishes a presumptive limit of ten depositions per side as of right, including in cases with multiple plaintiffs or defendants. *See Thykkuttathil v. Keese*, 294 F.R.D. 597, 599 (W.D. Wash. 2013) (Rule 30(a)(2) "is unambiguous in presumptively limiting the number of allowed depositions to ten per side, not per party"). This limit applies to all depositions, including both party and non-party witnesses. "The ten-per-side limit is intended to promote cost-effective discovery and promote the federal rules' policy of minimizing 'unreasonably cumulative or duplicative' discovery." *Id.* (quoting Fed. R. Civ. P. 26(b)(2)(C)). "In multi-party cases, the parties on any side are expected to confer and agree as to which depositions are most needed, given the presumptive limit on the number of depositions they can take without leave of court." Fed. R. Civ. P. 30 Advisory Committee Notes (1993).

Defendants have offered two deviations from the default rule in an effort to avoid burdening the Court with this dispute: Defendants propose increasing the per-side deposition limit from ten to twelve, and carving out from this limit depositions of experts and third parties (not including former personnel of Defendants). In contrast, Plaintiffs propose a staggering ***sixty depositions*** of Defendants' current employees, to be allocated as Plaintiffs see fit. Worse still, Plaintiffs also seek an ***unlimited*** number of third party and former employee depositions.

Plaintiffs' proposal far exceeds the presumptive limit—without good cause. Exceeding the ten-deposition limit must be justified by a "particularized showing of the need for additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.*, No. C 08-1323 PJH, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008) (justification must include weighing the benefits, needs of the case, party's resources, importance of the issues, and the burdens, expense, and inconvenience). A "particularized showing" requires just that—particularity. Here, Plaintiffs offer none.

The reality is that, at each of the Defendant companies, only a small number of individuals are likely to have relevant knowledge. Most Defendants are early-stage, lean startups valued at tiny fractions of the market capitalizations of well-known technology companies. And most Defendants have dozens, not thousands, of employees. Having to prepare scores of extraneous employees for duplicative testimony would require significant preparation time and

undue expense, and risks pulling key technical staff away from their core duties, severely impacting Defendants' operations with little incremental benefit, if any, to Plaintiffs. This is **not** a case involving Meta (74,067 employees, $164 billion in annual revenue) (at issue in *Kadrey* mentioned by Plaintiffs), Apple (164,000, $391 billion), or Microsoft (228,000, $245 billion).[2]

Moreover, Defendants have agreed to thirteen hours—or nearly two days—of 30(b)(6) testimony **per Defendant** in addition to the twelve 30(b)(1) deponents. This is significant time to depose each company—and makes Plaintiffs' claimed need for sixty party deponents in addition to this 30(b)(6) time even less justified. Given the scope and kind of the remaining claims at issue, corporate testimony can likely provide Plaintiffs with the information that they need.

Plaintiffs' arguments are not persuasive. Baldly asserting that fifteen deponents per defendant is "reasonable" doesn't make it so. And Plaintiffs' proposed breakdown of total deponents—20-25 "technical," 15-20 "corporate," and 15-20 "business" witnesses—is arbitrary and untethered to any document, filing, or fact specific to any Defendant. Moreover, these purported groupings of witnesses significantly overlap—for instance, both the "technical" and "business" sets appear to cover the acquisition, processing, and integration of data into the models—exposing just how much Plaintiffs' proposal is simply made up. Finally, Plaintiffs assert without any applicable support that courts "routinely" expand the deposition limit in "complex technological cases with multiple corporate defendants." The closest Plaintiffs offer is *Kadrey v. Meta Platforms, Inc.*, a case against a company that is orders of magnitude larger than the Defendants here. Even there, the court allowed only a total of twenty-five depositions across all fact witnesses, including third parties and former employees—and only after Plaintiffs provided a list of dozens of specific potential deponents and explained the purported relevance of such potential deponents (including with specific reference to documents produced during discovery). *See Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal.), ECF No. 229 at 3–6 (Joint Discovery Letter Brief).

At this stage, Plaintiffs do not have good cause to exceed twelve total depositions. But, should Plaintiffs be able to demonstrate that they need more once discovery is underway, Defendants will meet and confer in good faith, as the rules require, and attempt to reach a reasonable resolution. *See* Civil L.R. 37-1. Should the Parties continue to disagree, Plaintiffs may petition the Court and make the requisite "particularized showing of the need for additional discovery." *Authentec*, 2008 WL 5120767, at *1. Plaintiffs have made no such showing here for the massive expansion of the deposition limits they seek—nor could they at this early stage of litigation, if at all. That is reason alone to deny their extraordinary request.

Plaintiffs' sixty-deposition request is especially premature and unduly burdensome given that discovery has only just begun. Any need for additional discovery should be evaluated **after** the originally allotted depositions have been taken, to prevent depositions that would be

---

[2] *See* Meta Reports Fourth Quarter and Full Year 2024 Results (Jan. 29, 2025), available at: https://investor.atmeta.com/investor-news/press-release-details/2025/Meta-Reports-Fourth-Quarter-and-Full-Year-2024-Results/default.aspx; Apple SEC Form 10-K for the Fiscal Year Ended on September 28, 2024 (Nov. 1, 2024), available at: https://investor.apple.com/sec-filings/sec-filings-details/default.aspx?FilingId=17933082; Microsoft, Annual Report 2024 (Oct. 18, 2024), available at: https://www.microsoft.com/investor/reports/ar24/index.html.

"cumulative, without proper purpose." *Forster v. Clendenin,* No. 1:22-cv-01191-NODJ-CDB (PC), 2024 WL 1021235, at *3 (E.D. Cal. 2024). "[C]ourts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right." *Authentec*, 2008 WL 5120767, at *1. Here, no depositions have been noticed or taken, and Plaintiffs have no sense of the extent of information readily attainable under the default limit. Indeed, not a single document has yet been produced, and Plaintiffs have not served any interrogatories. Allowing Plaintiffs six times the default limit of ten depositions from the get-go is unnecessary, highly burdensome, and sure to be repetitive and expensive.

  The Court should deny Plaintiffs' request for sixty depositions and instead adopt Defendants' proposed limit of twelve, inclusive of former employees but excluding other third parties and expert witnesses. Defendants' approach aligns with the presumptive limits of Rule 30(a)(2) and promotes efficient and cost-effective discovery.

Respectfully Submitted,

| | |
|---|---|
| */s/ Joseph R. Saveri* | */s/ Timothy C. Saulsbury* |
| *Counsel for Plaintiffs* | *Counsel for Stability AI, Inc. and Stability AI, Ltd.* |
| | |
| | */s/ Britt Lovejoy* |
| | *Counsel for DeviantArt, Inc.* |
| | |
| | */s/ Angela L. Dunning* |
| | *Counsel for Midjourney, Inc.* |
| | |
| | */s/ Bailey Heaps* |
| | *Counsel for Runway AI, Inc.* |

cc: All counsel of record via ECF