[counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, KARLA ORTIZ, GRZEGORZ RUKOWSKI, GREGORY MANCHESS, GERALD BROM, JINGNA ZHANG, JULIA KAYE, ADAM ELLIS; *Individual and Representative Plaintiffs*, v. STABILITY AI LTD., STABILITY AI, INC., DEVIANTART, INC., MIDJOURNEY, INC., RUNWAY AI, INC. Defendants. | Case No. 3:23-cv-00201-WHO **DEFENDANTS' MOTION FOR RELIEF FROM NON-DISPOSITIVE PRETRIAL ORDER** Judge: Hon. William H. Orrick |

I.      INTRODUCTION

On March 19, 2025, Magistrate Judge Cisneros issued an Order, ECF 260, resolving a number of disputes between the parties regarding the protocols governing discovery (the "Order"). Defendants respectfully seek this Court's review of two narrow aspects of the Order: (1) excluding former personnel from the 30 fact depositions Plaintiffs may take, contrary to Rule 30(a)(2); and (2) permitting Plaintiffs to request up to 12 custodians per Defendant without any showing of good cause or need. First, excluding former personnel from the 30-deposition limit has no basis under the Federal Rules. Second, allowing Plaintiffs to request up to 12 custodians from each Defendant, who are for the most part small and early-stage start-ups, will result in needless duplication, burden, and expense.[1] Defendants therefore respectfully request that the Court modify the Order such that it: (1) includes Defendants' former personnel in Plaintiffs' limit of 30 depositions, and (2) limits the number of initial custodians to five per Defendant.

II.     ARGUMENT

A magistrate judge's discovery order may be modified if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The order's "factual determinations are reviewed for clear error." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). Its "legal conclusions," by contrast, "are reviewed *de novo* to determine whether they are contrary to law." *Id*.

      **A.**     **Former Personnel Should Be Included in the 30-Deposition Limit**

Federal Rule of Civil Procedure ("Rule") 30(a)(2) establishes a presumptive limit of 10 depositions per side, including in cases with multiple plaintiffs and defendants. *See RJ v. Cigna Health & Life Ins. Co.*, 2022 WL 16839492 (N.D. Cal. Nov. 9, 2022); *see also Thykkuttathil v. Keese*, 294 F.R.D. 597, 599 (W.D. Wash. 2013); *Forster v. Clendenin*, 2024 WL 1021235, at *2-3 (E.D. Cal. 2024).. The rule does not create exceptions to this limit based on the status of the deponent: depositions of party witnesses, former personnel, and true nonparties are all included within the

---

[1] Defendants attempted to negotiate a resolution with Plaintiffs on these issues to avoid burdening the Court, but Plaintiffs refused. After Plaintiffs informed Defendants they intended to seek review of the Order's limit on the number of search terms, Defendants offered to negotiate an increased number of search terms per custodian if Plaintiffs agreed to a lower number of initial custodians. Plaintiffs rejected that reasonable proposal.

1  presumptive limit.  One objective of this limitation is to "emphasize that counsel have a professional
2  obligation to develop a mutual cost-effective plan for discovery in the case."  Fed. R. Civ. P. 30
3  Advisory Committee Notes (1993).  While Defendants were willing to agree to exclude true non-
4  parties from the fact deposition limit, Plaintiffs insisted that Defendants' former personnel also be
5  excluded, and the Order adopted that exclusion. (*See* ECF 257, Ex. A ¶ 23 (stipulated deposition
6  protocol); ECF 260 at 17.)  Allowing Plaintiffs effectively unlimited depositions of Defendants'
7  former personnel invites burdensome, expensive, and cumulative depositions in circumvention of
8  Rule 30's deposition limit **and** Rule 26's proportionality requirement, putting the burden on
9  Defendants to seek protection from the Court rather than on Plaintiffs to establish good cause.  *See*
10 Fed. R. Civ. P. 26(b)(1) & (b)(2)(C).  This is not a hypothetical concern: most Defendants are "small,
11 early-stage startups" (ECF 257 at 4), which often have high rates of personnel turnover.

12 Plaintiffs have provided **no argument, explanation, or particularized showing of need** to
13 justify this exception.  *See id*. at 1–4.  Indeed, Plaintiffs did not mention former personnel at all in
14 their briefing before Judge Cisneros.  The primary case Plaintiffs did rely on (to argue for expanding
15 the **numerical** deposition limit), *Kadrey v. Meta Platforms*, supports Defendants' position:  there the
16 court allowed for a total of 25 depositions for Plaintiffs across all fact witnesses, **including** former
17 employees and true third parties (and only after Plaintiffs provided a list of specific potential
18 deponents with proffers of relevance for each).  *See Kadrey v. Meta Platforms, Inc*., No. 3:23-cv-
19 03417-VC (N.D. Cal.), ECF 229 at 3–6 (Meta had over 70,000 employees as of December 31, 2024).
20 And here, when the parties met and conferred following issuance of the Order, Plaintiffs' only
21 argument was that former personnel are not within Defendants' control.  But that is irrelevant.  True
22 third parties are similarly not within Defendants' control, but there is no dispute that Rule 30's default
23 limit includes **all** third parties.  *See Cigna Health*, 2022 WL 16839492, at * 2.

24 In light of Rule 30(a)(2)'s clear purpose of limiting depositions, and the lack of any
25 particularized showing by Plaintiffs that justifies departure from the default rule, the Order should be
26 modified to include Defendants' former personnel in the 30-deposition limit.

### B. Five, Not 12, Custodians per Party Is Proportional to the Needs of the Case

Requiring "up to twelve custodians" per Defendant would result in unnecessary duplication and thus would be disproportionate to the needs of the case. The Order recognized that Plaintiffs' request for 24 custodians proposed a "perhaps excessive number of custodians relative to the number and size of each Defendant" but found the record unclear as to "the number of employees at each defendant company, and whether each Defendant is a similarly sized company." (ECF 260 at 4.) But ordering up to 12 custodians per Defendant is still an arbitrary number that does not address these concerns.

First, the Order's limit of up to 12 custodians is still too high "relative to the number and size of each Defendant." *Id*. "Defendants are small companies and [up to 12 custodians] would include a large portion (if not all) of their employees, including many with no relevant information." (ECF 248 at 4.) For example, as explained to Plaintiffs during the parties' March 28 meet and confer, Midjourney, for most of the relevant time period, had only 13 full-time employees, only a fraction of whom would have unique discoverable information. Similarly, Runway had between 30 and 40 employees during the time Stable Diffusion 1.5, the image generation model featured in the Complaint, was developed, and no more than five or six individuals are likely to have unique discoverable information relevant to the case. Likewise, no more than a handful of DeviantArt employees were involved in the technical development of its DreamUp product. Under these circumstances, the Model ESI Order's default rule of five custodians is reasonable.

Defendants' good faith initial determination, based on their reasonably diligent search thus far, is that five custodians per party is the appropriate number, consistent with the Model ESI Order. Defendants "have the best information to make the initial determination about which (and how many) custodians' files should be searched." *William Morris Endeavor Entm't LLC v. Writers Guild of Am. W., Inc*, 2020 WL 6162797, at *2 (C.D. Cal. June 8, 2020) (declining to choose the number of custodians where there was no information about the identity of the custodians or how many responsive documents would be found). Indeed, the Sedona Principles recognize that the producing party is best positioned to "locate and produce relevant information in discovery," which

include "avoiding collection efforts that are disproportionate to, or are inappropriate in, the context of a particular litigation." *Sedona Principles*, § 6 & Comments 6.a, 6.b.  If Plaintiffs review Defendants' productions[2] and identify additional non-duplicative individuals as potential custodians, Defendants would be willing to meet and confer with Plaintiffs in good faith.  But until then, any number above the default is an arbitrary deviation that ignores the reality that this case involves early-stage startups, not large, publicly traded technology companies.  *Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 2527056 (C.D. Cal. Feb. 6, 2020) (declining to set an arbitrary number of custodians in part because adequacy of discovery compliance accounts for the "unique characteristics" of the defendant).

The Order should also be modified because Plaintiffs fail to offer particularized, non-speculative good cause for why they need more than the Model ESI Order's default number. Standing Order ¶ 5 ("Parties who seek a[n] order re: discovery of ESI shall use one of the model stipulated orders … unless good cause exists to depart from the model order.").  In briefing this issue before Judge Cisneros, Plaintiffs argued they need nearly *five times* more custodians than the default because other courts have approved similar custodian counts "in cases of similar scope and complexity involving massive amounts of data, systemic infringement, and multi-departmental decision-making," citing to two cases involving OpenAI and Nvidia.  (ECF 249 at 23.)  But both cases are factually inapposite and offer no guidance as to the appropriate number of custodians *in this case*.  As an initial matter, defendants in those cases employ *thousands* of employees, not the dozens at issue here.  And as Plaintiffs acknowledged, the court-ordered limits were expressly endorsed by defendants.  In NVIDIA, **all parties** "agree[d] that 24 is an appropriate number [of custodians] for this action." *Nazemian et al. v. NVIDIA Corp.*, No. 4:24-cv-01454-JST, (N.D. Cal.), ECF 89.  In *OpenAI*, the court permitted 24 custodians where plaintiffs based their request for 28 custodians on their "review and analysis of the documents produced thus far" – not the case here – and **defendants already agreed** that between 18 and 25 custodians would be appropriate.  *See In re*

---

[2] For the avoidance of doubt: for each custodian, Defendants will collect and review that custodian's custodial email and non-email files likely to contain responsive documents, as is standard practice for ESI collection and production.

*OpenAI ChatGPT Litig.*, Lead Case No. 3:23-cv-3223-AMO (N.D. Cal.), ECF 163, 166. Moreover, Plaintiffs ignore another generative AI case where the initial number of custodians was set at just ***five***.  *Doe v. GitHub, Inc. et al.*, No. 4:22-cv-06823-JST (N.D. Cal.), ECF 168.

Similarly, Plaintiffs' suggestion that "[t]he development and implementation of AI models necessarily involves multiple operational units, including research and development, data engineering, legal, and executive leadership" is purely speculative.  (ECF 249 at 3.)  Plaintiffs' hunch about AI is insufficient.  In small, early-stage start-ups, each "operational unit" is likely a single person (if it existed at all), and one person may wear multiple hats across multiple units.  And the "massive amounts of data" Plaintiffs suggest may be involved in this case do not necessarily correlate to the size of the company or the number of non-duplicative custodians appropriate for this litigation.  (ECF 249 at 23.)  Most of the data will be non-custodial training data produced by Company Defendants.  Plaintiffs' approach to custodians is precisely the "look under every stone in an e-discovery world populated by many stones" approach courts reject as disproportionate and unduly burdensome.  *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021); *see, e.g.*, *Nevro Corp v. Boston Sci. Corp.*, 2017 WL 2687806 (N.D. Cal. June 22, 2017).  The Court should reject it here, too.

*          *          *

For these reasons, the Court should modify the Order to include Defendants' former personnel in Plaintiffs' limit of 30 fact depositions and permit five custodians per Defendant in the first instance.[3]

---

[3] Defendants understand that Plaintiffs intend to seek review of (1) the number of search terms per custodian and (2) the number of hyperlinks a party may request.  But those parts of the Order are not "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a).  Indeed, any relief on the issues would be premature.  ***First,*** Plaintiffs have made no showing that the Order's 15-terms-per-custodian cap is inadequate.  Given the scope of the issues in this case, 15 search terms per custodian is sufficient for Plaintiffs to investigate their claims.  ***Second***, Plaintiffs have not pointed to any need for hyperlinks, much less the 200 the Order already allows.  Allowing Plaintiffs unlimited requests for hyperlinks—above and beyond their written discovery requests—will unduly burden Defendants with the labor-intensive task of running down endless requests for individual links for the entire discovery period.  This is untenable.  Rather, the Order properly balances the parties' interests and burdens by limiting the hyperlink requests to 200.  If the Court would like further argument on these issues, Defendants would be happy to provide it.

Date: April 2, 2025                    By: /s/ Angela Dunning

Angela Dunning (SBN 212047)
Samuel Blankenship (SBN 339905)
Kimberly Bittinger (SBN forthcoming)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4100
Email: adunning@cgsh.com
        sblankenship@cgsh.com
        kbittinger@cgsh.com

Arminda B. Bepko (*pro hac vice*)
Amira Perryman (*pro hac vice*)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Email: abepko@cgsh.com
        aperryman@cgsh.com

*Counsel for Defendant Midjourney, Inc.*


By: /s/ Aditya V. Kamdar

JOSEPH C. GRATZ
JGratz@mofo.com
TIFFANY CHEUNG
TCheung@mofo.com
TIMOTHY CHEN SAULSBURY
TSaulsbury@mofo.com
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

ADITYA V. KAMDAR
AKamdar@mofo.com
**MORRISON & FOERSTER LLP**
2100 L Street, NW, Suite 900

Washington, DC 20037
Telephone: 202.887.1500
Facsimile: 202.887.0763

LAURA G. REMUS
LRemus@mofo.com
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

**LEX LUMINA PLLC**

MARK A. LEMLEY (CA SBN 155830)
MLemley@lex-lumina.com
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: 646.898.2055
Facsimile: 646.906.8657

*Counsel for Defendants STABILITY AI LTD. And STABILITY AI, INC.*

By: */s/ Paven Malhotra*

David Jason Silbert
Paven Malhotra
Bailey Wilson Heaps
Julia Leigh Greenberg
Luke P. Apfeld
**KEKER VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Email: dsilbert@keker.com
       pmalhotra@keker.com
       bheaps@keker.com
       jgreenberg@keker.com
       lapfeld@keker.com

*Counsel for Defendant Runway AI, Inc.*

By: */s/ Andrew M. Gass*

Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
Brittany N. Lovejoy (SBN 286813)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: andrew.gass@lw.com
　　　　michael.rubin@lw.com
　　　　brittany.lovejoy@lw.com

*Counsel for Defendant DeviantArt, Inc*

...

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated:  April 2, 2025                                              */s/ Angela Dunning*
                                                                              Angela L. Dunning