UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SARAH ANDERSEN, et al.,

   *Individual and Representative Plaintiffs*,

v.

STABILITY AI LTD., STABILITY AI, INC., DEVIANTART, INC., MIDJOURNEY, INC., RUNWAY AI, INC;

   *Defendants*.

Case Number: 3:23-cv-00201-WHO

[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

Judge:  William H. Orrick

In accordance with the Court's order dated April 9, 2025 (ECF No. 268), the Court ORDERS as follows:

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

**3. LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and

production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4. PRESERVATION**

The parties have an obligation to take reasonable steps to preserve discoverable information in the parties' possession, custody, or control, which includes Metadata where applicable, consistent with the Federal Rules.

The parties that are business entities have issued, or immediately after this Order has taken effect shall issue, litigation hold notices to those internal departments, divisions, committees, teams, and individuals likely to possess potentially responsive information, and to persons or entities responsible for maintenance of non-custodial sources, likely to contain potentially responsive information. These business entities shall establish procedures, if they have not already done so, to ensure that the notices are easily understood, and have been received and appropriately acted upon.

**5. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**a.  DISCLOSURES**

Consistent with the Parties' obligations under the Rules, the Parties will meet and confer to plan for discovery. This will include a disclosure of custodians, data sources, anticipated date ranges of relevant documents, and categories of documents or ESI that contain information relevant to this litigation.

The Parties shall endeavor to reach an agreement regarding the data sources subject to preservation and discovery. To advance that effort, the Parties shall disclose (a) categories or sources of relevant information that are not reasonably accessible because of undue burden or cost, and (b) categories of data or sources that a party believes could contain relevant information, but are not discoverable and should not be preserved under the proportionality factors. A Requesting Party may request up to twelve custodians per Producing Party. Named

1  Plaintiffs are collectively considered a single "Requesting Party," and a single "Producing
2  Party." Stability AI Ltd. and Stability AI, Inc., collectively Stability AI, is considered a single
3  Requesting and a single Producing Party. The parties may jointly agree to modify these limits
4  without the Court's leave. The Parties may request inclusion of additional custodians as
5  discovery progresses. The Court shall consider contested requests for additional custodians,
6  based upon a showing of proportionality to the needs of the case as that Phrase is used in Rule
7  26 of the Federal Rules of Civil Procedure.

### b. SEARCH METHODOLOGY

At the appropriate time, a Party that intends to use or is using a search methodology (if any) to identify documents for production, shall disclose to the Requesting Party, the search terms, keywords, date limitations, and custodians, and shall specify what custodial and non-custodial sources that the search methodology will or was run against. The custodial sources will presumptively be those identified in the disclosures set forth in Paragraph 5.a. The parties shall discuss search methods at an early meet and confer conference, including the retrieval parameters identified in the preceding sentence, to engage in meaningful cooperation that reduces the costs and risk associated with ESI production.

While the early meet and confer conference may not entail an exhaustive discussion of every search to be deployed, the Requesting Party may, at a later point in the discovery process, request a meet and confer to address the adequacy of a search method or search term, if there is a specific, tangible concern that the Requesting Party has identified to the Producing Party. In such instances, the Producing Party shall provide to the Requesting Party any information that it has not already provided that is necessary to evaluate the effectiveness of the method or the search, such as the search term hit reports pursuant to 5.d.

At the early meet and confer conference where the parties address ESI search methods, the parties shall also discuss what method(s) will be used for documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, hard copy documents, or certain foreign language documents where the parties do not have suitable search terms in such language. The

Producing Party shall disclose to the Requesting Party the specific method(s) it intends to use to search for such documents, and the Requesting Party may make a reasonable request for information that relates to the method(s)' effectiveness.

Should a Producing Party wish to use any method or methodology not specifically addressed by this Order to exclude documents from any review or production, notice to the Receiving Party must be made prior to the use of any such method or methodology. If a Party intends to use Technology Assisted Review ("TAR") (including Continuous Active Learning), the Parties will agree to a separate TAR protocol to govern that process. If the Parties are unable to reach agreement on a TAR protocol, they will submit any disputed issues to the Court or its designee for resolution.

### c. SEARCH TERMS

Where the Parties agree that potentially responsive ESI shall be searched using search terms, the Parties shall meet and confer to discuss the Producing Party's proposed search terms and methodology. Prior to or during such meet and confers, the Producing Party shall provide all associated information required by this Order. At all meet and confers where the topic is adequacy of search terms to identify documents subject to production, the Producing Party shall provide search term hit reports pursuant to Paragraph 5.d, unless the parties agree otherwise.

Each Requesting Party shall limit its ESI production requests to a total of fifteen search terms per custodian per party. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, which are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production.

If, after disclosure of the Producing Party's proposed search method, search parameters, and search terms, and after a reasonable meet-and-confer process, a Requesting Party has a specific, tangible, evidence based reason to believe that the Producing Party's proposals regarding search, retrieval, and production would result in deficiencies in production, the Requesting Party may object to the proposal and make requests for different or additional search methods, parameters, or search terms. Such requests shall only be made after the Parties have met and conferred as to the alleged deficiencies identified by the Requesting Party. If the issue is not resolved within fourteen (14) calendar days after the objection, either Party may thereafter immediately submit the dispute to the Court or its designee for resolution.

### d. HIT REPORTS

A hit report shall contain, for each custodian or data source in the document collection where the terms were applied, or as otherwise agreed, the following with respect to each proposed or modified search term in the collection:

    i.    The number of documents with hits for that term;

    ii.    The number of unique documents, i.e., documents which do not have hits for any other term, for that term; and iii.

    iii.    The number of family members requiring review in connection with all documents with hits.

The Parties will meet and confer to resolve disagreements over the search terms, their efficacy, or their application.

### e. VALIDATION

Each Producing Party shall take reasonable steps to validate its own review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and shall take necessary adjustments to its process. After a Requesting Party reviews a Producing Party's production, the Requesting Party may request additional information regarding the validation method(s) used by the Producing Party and the Producing Party shall disclose the level of end-to-end recall (the percentage of responsive documents in the collection that were identified as responsive by the

Producing Party's methodology). If there are remaining disputes after the Producing Party discloses the level of end-to-end recall, the parties shall meet and confer in good faith to resolve any remaining disputes. Such meet and confer efforts shall include a discussion of the tool and parameters used to calculate recall levels.

**6. ENTERPRISE MESSAGING, MOBILE DEVICE DATA, AND OTHER COMMUNICATION TOOLS**

a. The Parties will disclose at the outset any use of enterprise messaging tools used in the course of business (e.g., Slack, MS Teams, Zoom, WhatsApp, Google Chat, Sametime, Skype, Telegram, etc.). The Parties will meet and confer regarding procedures for inclusive collection of such data, the format of the production, metadata fields, and other issues unique to this type of data. Electronically stored information associated with enterprise messaging tools should be collected and reviewed with emails and other custodian/non-custodial data sources. Documents produced from an enterprise messaging platform must clearly indicate, either in a unique metadata field or on the face of the document, the specific platform from which the documents originated.

b. The Parties agree to disclose whether any Document Custodians' mobile devices contain unique sources of relevant ESI, and to meet and confer regarding procedures for the inclusive collection of such data, the format of production, metadata fields, and other issues unique to this type of data.

**7. PRODUCTION FORMATS**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**8. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to meet and confer to discuss the phased production of ESI.

**9. DEDUPLICATION**

A Party is only required to produce a single copy of a responsive document. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages or SHA-256 hash values. The Parties shall make reasonable efforts to not produce Duplicate ESI. To the extent identical copies of documents appear in the files of multiple Custodians, the Producing Party shall take reasonable steps to produce only one such identical copy across all Custodians based on MD5 or SHA-1 hash values at the document level for file system data or the email family level for emails. Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When Duplicate ESI exists in the files of multiple custodians, the Producing Party shall take reasonable steps to populate the names of all custodians who were in possession of a document prior to de-duplication in an applicable metadata field.  Likewise, the File Path that would have been provided for each version of the document that was not produced due to de-duplication shall be populated in the All File Paths field.

**10. EMBEDDED FILES**

Embedded files, except for images embedded in emails, are to be produced with family relationships preserved.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded and values in the "BegAttach" and "EndAttach" fields to indicate their family.  Images embedded in emails shall not be separately produced in the first instance, but shall be produced upon reasonable request by the receiving party. A Producing Party is not required to review or produce extracted embedded OLE documents if the document they were extracted from will be produced in native format.

**11. HYPERLINKS**

Except as provided in this paragraph and its subparagraphs, the Producing Party shall not be required to produce documents solely because they are hyperlinked within the Producing Party's production. For purposes of this protocol, "hyperlinked documents" include but are not limited to documents shared via Google Workspace, Microsoft Office's "Share Documents via Link" feature, or similar cloud-based document storage and sharing platforms.

The Parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of production of the requested documents and metadata. Nothing in this paragraph and its subparagraphs shall prevent the Producing Party from producing hyperlinked documents that are relevant or responsive to discovery requests in addition to the documents produced by specific request by the Receiving Party.

### a. PRODUCTION OF HYPERLINKED DOCUMENTS

The Parties may request the production of the current version or contemporaneous version of a responsive and non-privileged document or communication that is within the Producing Party's possession, custody, or control and is hyperlinked within the Producing Party's production by providing to the Producing Party a list of hyperlinks and corresponding Bates numbers in which the hyperlinked document is referenced. If the hyperlinked document has already been produced, the Producing Party may alternatively provide the Receiving Party with the document's Bates number. Each Party (with Named Plaintiffs constituting a single Party, and Stability AI entities constituting a single Party) may make up to two hundred such requests. The parties agree to meet and confer in good faith to resolve any disputes concerning the appropriateness of the production of the requested documents and communications and any reasonable request to increase the limit on the total number of hyperlinked documents and communications to be produced. If a Requesting Party believes that more requests are warranted and the Receiving Party has not agreed to produce additional hyperlinked documents, the Requesting Party may initiate the joint letter-brief process pursuant to the Court's dispute resolution procedures set forth in Standing Order, Section F.5.

### b. PRODUCTION OF HYPERLINK METADATA

The Parties acknowledge that the current version of the hyperlinked document (i.e., the version produced pursuant to the paragraphs concerning hyperlinks) may differ from the version of the document at the time the hyperlink was sent. The Parties also acknowledge that the metadata of such document(s) may not reflect the metadata for requested documents at the time the documents were hyperlinked. For hyperlinked documents produced pursuant to these paragraphs concerning hyperlinks, the Producing Party will use available technology to match

hyperlinked documents with the email or familial document to which the documents were attached in Native format, and the Producing Party will use available technology to provide the BEGATTACH and ENDATTACH metadata fields to show the family relationship.

**12. STRUCTURED DATA**

The Parties agree to meet and confer to develop a stipulated protocol for producing and reviewing structured data.

**13. MODEL DATA**

To the extent such data is not addressed in this protocol, the Parties will meet and confer to address the production of data related to the Models at issue. Given the size, structure and format of such data, the Parties agree to discuss how Model Data, if any, should be produced.

**14. PRIVILEGE LOGS**

Any document falling within the scope of any request for production that is withheld or redacted on the basis of a claim of attorney-client privilege, work-product doctrine, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party in a privilege log. Each entry on the privilege log shall include sufficient information for a party or the Court to determine whether the document is privileged.

 a. Privilege logs will be produced in an Excel format, or other agreed-upon format, which allows the Receiving Party to search and sort any and all columns and entries of the privilege log.

 b. The privilege log shall include:

  i. A privilege log control number for each entry on the log.

  ii. Date of document for all ESI and to the extent known or discernible for all hard copy documents. For emails this should be the sent date of the document and for loose ESI this should be the last-modified and date of the document.

  iii. Custodian of the document. For emails this should be populated with the metadata extracted from the Custodian(s) field. For loose ESI, this should be populated with the Custodian value assigned to the instance of the document in question.

  iv. Author of the document. For emails this should be populated with the

1    metadata extracted from the "Email From" field associated with the file. For loose ESI,
2    this should be populated with the metadata extracted from the "Author" field. For hard
3    copy documents, this will be populated with the "Custodian."
4         v.    Recipient(s) of the document where reasonably ascertainable. For emails
5    this will be populated with the metadata extracted from the "Email To" field associated
6    with the file. Separate columns will be included for the metadata extracted from the
7    "Email CC" and "Email BCC" fields, where populated.
8         vi.    Subject Line for emails.
9         vii.   Filenames for non-email ESI.
10        viii.  File extension for non-email ESI.
11        ix.    Bates number(s), if any. For Bates numbered documents (e.g. when a
12   parent email is produced but an attachment is withheld on the basis of privilege) the
13   BegAttach and EndAttach values will be provided.
14        c.    Parties may substitute an alternative description of the content within the
15   identified field(s) where the content of the field reveals privileged information.  The Producing
16   Party shall identify each instance in which it has modified the content of the field and the basis
17   for the modification.
18        d.    If the document is the parent or child of a family of documents, some of which
19   been produced and others withheld, the log should identify the Bates numbers of the first
20   document (i.e., the parent, or if the parent is withheld the first attachment) produced from the
21   in which the logged document was withheld.
22        e.    Privileged communications between a Party and its outside or in-house counsel
23   on or after January 13, 2023, and work product performed by a Party at the direction of its
24   outside or in-house counsel on or after January 13, 2023 need not be included on a privilege
25   log.
26        f.    The privilege logs will clearly identify (a) any attorneys on the privilege log
27   using an asterisk or other agreed-upon method; and (b) any third party (along with the name of
28   the third-party business, the job title and/or role of the third-party, and the basis for asserting

the claim of privilege or work-product protection sufficient under Federal Rule of Civil Procedure 26(b)(5) identified in a log entry or entries)).  To the extent a document is included on the log where no attorney is listed as the author, sender or recipient, the description shall include sufficient information regarding which attorney(s) requested or were involved in the preparation of the document that is claimed to be privileged.

### 15. CHALLENGING PRIVILEGE

A Receiving Party may challenge a Producing Party's claims of privilege, work product, or other protection at any time.

a. Where the challenge pertains to documents, the Receiving Party shall set forth in writing their challenges and the Producing Party shall have fourteen (14) calendar days to respond.  Failure to respond timely will be presumed to terminate the meet and confer process. That timing may be extended by agreement of the Parties.

b. Within seven (7) calendar days of the Producing Party's response, the parties shall meet and confer to attempt to resolve the challenge.  That timing may be extended by agreement of the Parties.

c. If, at the conclusion of the meet-and-confer process, the Parties are still not in agreement, they may bring the issue to the Court.

### 16. DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: April 11, 2025

By: /s/ Aditya Vijay Kamdar
Aditya Vijay Kamdar
**MORRISON & FOERSTER LLP**
2100 L Street NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: akamdar@mofo.com

Joseph Charles Gratz
Tiffany Cheung
Timothy Chen Saulsbury
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Email: jgratz@mofo.com
tcheung@mofo.com
tsaulsbury@mofo.com

Laura Gilbert Remus
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Email: abennett@mofo.com
lremus@mofo.com

Mark Alan Lemley
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 906-8657
Email: mlemley@lex-lumina.com

*Counsel for Defendants Stability AI Ltd. and Stability AI, Inc.*

By: /s/ Joseph R. Saveri
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Melissa Tribble (SBN 339098)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com
mtribble@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

Maxwell Pritt
Joshua Stein
Margaux Poueymirou
**BOIS SCHILLER FLEXNER LLP**
44 Montgomery Street
41st Floor
San Francisco, CA 94104
415-293-6813
Email: mpritt@bsfllp.com
jstein@bsfllp.com
mpoueymirou@bsfllp.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle Wagner (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile: (612)339-0981
Email: bdclark@locklaw.com

|   |   |
|---|---|
|   | lmmatson@locklaw.com |
|   | aswagner@locklaw.com |
|   |   |
|   | *Counsel for Individual and Representative Plaintiffs and the Proposed Class* |

By: /s/ *Andrew Gass*
Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
Brittany N. Lovejoy (SBN 286813)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: andrew.gass@lw.com
michael.rubin@lw.com
brittany.lovejoy@lw.com

*Counsel for Defendant DeviantArt, Inc.*


By: /s/ *Paven Malhotra*
Paven Malhotra
David Jason Silbert
Bailey Wilson Heaps
Julia Leigh Greenberg
Luke P. Apfeld
**KEKER VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Email:       dsilbert@keker.com
pmalhotra@keker.com
bheaps@keker.com
jgreenberg@keker.com
lapfeld@keker.com

*Counsel for Defendant Runway AI, Inc.*

By: /s/ *Angela Duning*
Angela Dunning
Sam Blankenship
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com
sblankenship@cgsh.com

Amira Perryman
Arminda B. Bepko
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: aperryman@cgsh.com
abepko@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

1     **IT IS ORDERED** that the forgoing Agreement is approved.

2  Dated:   April 15, 2025

3                          UNITED STATES ~~DISTRICT~~/MAGISTRATE JUDGE

## Appendix A

### Technical Specifications

**ESI PRODUCTION FORMAT:**

- Except as otherwise provided in this Order, all documents existing in electronic format (e.g., Word, PDF, webpage files) shall be produced as 300 DPI TIFF images with a Bates number stamped on each page, document metadata (including extracted or OCR text), and a link to the associated extracted or OCR text file. The parties will consider reproducing select and specifically identified Word documents as a color PDF upon reasonable request by the receiving party.

**SOURCE CODE:**

- Source code and certain other highly confidential technical materials will be produced in native format and shall be made available for inspection pursuant to the terms of the parties' anticipated Protective Order governing "HIGHLY CONFIDENTIAL – SOURCE CODE" materials.

**IMAGES:**

- Produce documents as single page, black and white, Group IV, TIFF files.
- Image Resolution 300 DPI.
- File Naming Convention: Match Bates Number of the page.
- Insert placeholder image for files produced in Native Format.
- Original document orientation shall be retained.
- Documents in color need not be produced in color initially, but reasonable requests for reproduction of documents in color will be honored

**FULL TEXT EXTRACTION/OCR**:

- Produce full extracted text for all file types (Redacted text will not be produced) including text of embedded content.
- Produce OCR text for any hard copy document.
- Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).
- Produce OCR text for any redacted document.
- Production format: Single text file for each document, not one text file per page.
- File Naming Convention: Match BegBates Number.

**LOAD FILES**
**Data Load File**

- The data load file should use standard Concordance delimiters:
- Comma - ¶ (ASCII 20)
- Quote - þ (ASCII 254)
- Newline-® (ASCII174)
- The first record should contain the field names in the order of the data
- All date fields should be produced in mm/dd/yyyy format
- Use carriage-return line-feed to indicate the start of the next record
- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered
- The name of the data load file should mirror the name of the delivery volume, and should have a DAT extension (i.e., ABC00l.DAT)
- The volume names should be consecutive (i.e., ABC00l, ABC002, et. seq.)

**Image Load File**

- The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT)
- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)
- There should be one row in the Load File per TIFF image.
- Every image in the delivery volume should be contained in the image load file.
- The image key should be named the same as Bates Number of the page.
- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.
- The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

# Appendix B

# METADATA FIELDS

Such Metadata field values will be provided to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the Metadata is protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original Metadata of the document.

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| BegBates | Starting Bates # | x | x | x |
| EndBates | Ending Bates # | x | x | x |
| BegAttach | Starting bates # of document family | x | x | x |
| EndAttach | Ending bates # of document family | x | x | x |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | |
| File Name | File name of document (including extension) | x | x | |
| File Extension | File extension of original document | x | x | |
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x | x |
| Author | Document author of a non-Email document. | | x | x |
| Email Subject | Subject of email | x | x | |

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copyees | x | x | |
| BCC | Email blind copyees | x | x | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| File Path | File/path of the location where the item was located during the normal course of business. | x | x | |
| Filesize | Size or volume of individual file | x | x | |
| Box Number or unique identifier | The box number associated with archived documents. | | | x |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Conversation ID/Thread ID | Unique identification number that permits threading of email conversations or chat conversations. | x | x | |
| Production Volume | Production volume name, including a volume number and a prefix which indicates the producing party | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order, if any | x | x | x |
| Redacted | Descriptor for documents that have been redacted, | x | x | x |

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| | yes or y if document contains redactions, otherwise n or blank | | | |
| Redaction Reason | This field should be populated by the basis for the redactions on this document.  Multiple entries shall be separated by semicolons | x | x | x |