May 23, 2025

**VIA EMAIL**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
San Francisco Courthouse
Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re: *Andersen et al. v. Stability AI Ltd., et al.*, 3:23-cv-00201-WHO (LJC)

Dear Magistrate Judge Cisneros:

Pursuant to ¶ F(5) of Your Honor's Standing Order and ¶ 7.4 of the Stipulated Protective Order, the parties respectfully submit this joint letter brief regarding Defendants' objections to Plaintiffs' disclosure of highly confidential material to Dr. Ben Yanbin Zhao as an expert witness. The parties conducted multiple meet and confers to resolve this issue, but were unable to do so.

**Relevant Discovery Dates**

Pursuant to the Court's scheduling order, the following dates are pertinent to the present discovery dispute: (1) fact discovery concludes on March 13, 2026; (2) expert discovery concludes on July 17, 2026; (3) class certification and dispositive motions must be filed no later than August 14, 2026; (4) the hearing on class certification and summary judgment motions is scheduled for November 4, 2026, (5) the final pretrial conference is on March 1, 2027; and (6) trial is set to commence on April 5, 2027.

**Issue Presented**

Whether Dr. Zhao should be permitted to access highly confidential materials designated as "ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL -- SOURCE CODE" under the Stipulated Protective Order (ECF No. 276).

## **Plaintiffs' Position**

Defendants ask the Court to prevent disclosure to a world-leading expert. Their objection rests solely on that expert's *academic* work developing safeguards that protect creators' images from unauthorized appropriation. Nonetheless, Plaintiffs offered to limit the scope of disclosure to the expert, rendering speculative and unsupported any risk of actual impact on this work. Defendants thus ask this Court to stop Plaintiffs from engaging such an expert based on an attenuated and hypothetical risk that even limited disclosure might impede their efforts. But that could only be true when such efforts include training on illegally acquired images that do not belong to them. OpenAI calls this work "sabotage." Whether that is true is for the Court to decide after a full and fair presentation that necessarily includes permitting Plaintiffs to choose their best potential experts. To decide that now is to preemptively side with Defendants by deciding that a not-for-profit campaign to protect copyright rights is "sabotage" simply because it could impact Defendants' ability to commercially exploit such rights without compensating creators.

Namely, Plaintiffs seek to disclose to their proposed expert, Dr. Benjamin Zhao, training data and source code that Defendants have designated confidential. Dr. Zhao is a preeminent computer science professor whose extensive research in AI and machine learning places him at the forefront of his field. *See* Declaration of Benjamin Y. Zhao, dated May 22, 2025 ("Zhao Decl."). As a faculty member at the University of Chicago, where he co-leads the SAND Lab (Security, Algorithms, Networking and Data), Dr. Zhao has made significant contributions to understanding machine learning models' behavior. *See id.* ¶¶ 1–2. Plaintiffs have not identified any person *anywhere in the world* more qualified to inform the Court and the Jury on core subjects in this case than Dr. Zhao. Nor, notably, have Defendants suggested otherwise.

Indeed, Dr. Zhao possesses specialized knowledge regarding machine learning models that bears directly on the technical issues presented in this litigation. Dr. Zhao stands ready to elucidate the core technical matters at issue for the Court and Jury. *See id.* ¶ 2. The extent of Dr. Zhao's expertise is further evidenced by his service as an expert witness in analogous cases involving large language models, including his testimony in AI copyright infringement cases, *Bartz et al v. Anthropic PBC*, No. 3:24-cv-05417-WHA (N.D. Cal.), *Authors Guild v. OpenAI et al.*, 23-cv-8292 (S.D.N.Y.), and *Alter v. OpenAI et al.*, 23-cv-10211 (S.D.N.Y.). *See* Zhao Decl. ¶¶ 3–4.

Defendants object to Dr. Zhao's participation based on his leadership of the nonprofit "Glaze" project and his affiliation with the likewise not-for-profit "Nightshade" tool. This objection fundamentally mischaracterizes the nature of this academic work and fails to satisfy the stringent standard for disqualification. Importantly, Dr. Zhao is in no way a competitor to Defendants. Defendants also have not demonstrated a genuine risk of competitive harm that would justify barring disclosure. Moreover, the Stipulated Protective Order provides robust safeguards.

**I. Dr. Zhao's Academic Projects Do Not Create a Competitive Conflict**

Defendants' objections collapse under scrutiny: they posit that Dr. Zhao's strictly academic research tools—developed without commercial motives or profit potential—somehow threaten their multi-billion dollar enterprises. Understanding what these tools do will help the Court unpack what Defendants are really trying to say. Glaze is a tool that makes subtle changes to digital artwork to prevent AI models from accurately mimicking an artist's unique style. *See* Zhao Decl. ¶ 10. Nightshade is a tool that alters core image data, causing AI models that train on these images to produce distorted or incorrect outputs for certain prompts, thereby discouraging

unauthorized use of artists' work. *See id.* ¶ 11. These tools pose a problem to Defendants only insofar as Defendants misappropriate artists' work. Defendants' position is therefore telling.

Setting aside that these tools only impact those who illegally acquire images that do not belong to them, Defendants have identified no concrete way that disclosure in this case will assist Dr. Zhao in harming Defendants' business.[1] Indeed, Plaintiffs offered to limit disclosure to materials that would not have any direct bearing on the tools' ability to impact Defendants' models.

## II. The Chance of Misuse is Speculative and Unsupported

Dr. Zhao has sworn under penalty of perjury that access to Defendants' materials would provide zero substantive benefit to his academic research. *See id.* ¶ 12. Defendants' hypothetical misuse scenarios are technologically impossible for multiple decisive reasons: First, Dr. Zhao cannot determine from examining training data alone whether Nightshade-protected images were identified and filtered from Defendants' datasets. *See id.* ¶ 15. It is simply not technically feasible for Dr. Zhao to analyze a voluminous dataset and determine if Nightshade-protected images were detected and removed. *See id.* ¶ 14. Access to datasets therefore would present little to no risk to Defendants. Second, even if Defendants have developed countermeasures against Nightshade, Dr. Zhao has no means to detect such countermeasures through examination of source code or training data. *See id.* ¶ 13. Any such analysis would require computational resources far beyond what Dr. Zhao has access to, creating a practical impossibility. *See id.* ¶ 14. Plaintiffs also offered to accept (and still would) limitations on disclosure of information related to countermeasures. *See id.* ¶ 18. There is thus no real possibility that Dr. Zhao might leverage what Defendants deem "confidential" (in large part material scraped without authorization).[2]

## III. The Protective Order Already Provides Robust Safeguards

The Stipulated Protective Order contains comprehensive provisions that adequately protect Defendants' confidential information. Under Paragraph 7.3, Dr. Zhao would be prohibited from using any confidential information for purposes outside this litigation. ECF No. 276. These protections would remain in effect even after the conclusion of the litigation. *See id.* ¶ 4. Courts routinely trust experts to honor their obligations under protective orders. *See, e.g.*, *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir. 1992).

---

[1] Defendants' characterization of Dr. Zhao as a "competitor" under Paragraph 2.7 fails fundamentally. Unlike actual competitors who market alternative products for profit, Dr. Zhao conducts nonprofit academic research funded by grants. *See* Zhao Decl. ¶¶ 6–7. Courts consistently reject such attenuated competitive claims. *See, e.g.*, *L.A. Cnty. Med. Ass'n v. Aetna Health of Cal., Inc.*, No. CV 12-11020 SSJO (FFMx), 2013 WL 121465515, at *4 (C.D. Cal. Apr. 29, 2013) (finding parties who did not "compete for the same dollars from the same target audience" not to be competitors). Indeed, both Glaze and Nightshade are non-commercial academic tools with fundamentally different purposes than Defendants' products, operating in distinct domains with non-overlapping market objectives. *See* Zhao Decl. ¶¶ 6–9; 16–17.

[2] Defendants' argument in footnote 12 distorts Dr. Zhao's declaration. Dr. Zhao unequivocally stated the Glaze Project's development "is, for all intents and purposes, complete" with only academic defense work remaining. Zhao Decl. ¶ 17. Defendants' proposed "compromise" would impermissibly restrict legitimate research unrelated to this litigation (and if ordered by the Court violate his First Amendment rights to do the same). Plaintiffs suspect Defendants would similarly reject a proposal to train only from sources from which they have obtained permission to do so.

Defendants' speculative concerns about hypothetical misuse contradict established precedent in this District that disfavors restrictions that would deprive parties of the experts they need to prosecute their case. *See, e.g.*, *Kane v. Chobani*, 2013 WL 3991107, at *5 (N.D. Cal. Aug. 2, 2013) ("[C]ourts balance the policy objectives that favor disqualification—ensuring fairness and preventing conflicts of interest—against policies militating against disqualification, including *guaranteeing that parties have access to witnesses who possess specialized knowledge* and allowing witnesses to pursue their professional callings." (emphasis added)); *Ho v. Marathon Pat. Grp., Inc.*, 2021 WL 10862800, at *4 (C.D. Cal. June 23, 2021) (allowing experts to view confidential documents under protective order while rejecting defendant's claim that all plaintiff's experts are potential competitors).

### IV. Plaintiffs Would Be Severely Prejudiced by Disqualification

The vanishingly small pool of qualified experts in AI image generation not employed by direct competitors makes Dr. Zhao's expertise virtually irreplaceable. Major technology companies have hired many leading researchers in this field, leaving few independent experts of Dr. Zhao's caliber. Disqualifying Dr. Zhao would thus substantially impair Plaintiffs' ability to present their case effectively. This prejudice is particularly acute given Dr. Zhao's standing as one of the preeminent researchers in this field. *See, e.g.*, *Advanced Semiconductor Materials Am. Inc. v. Applied Materials Inc.*, (EAI), 1996 WL 908654, at *3 (N.D. Cal.) (approving expert who had previously worked for a competitor and might do so again because he was "uniquely qualified"). This consideration should weigh heavily in the Court's analysis.

### **Defendants' Position**[3]

Dr. Ben Zhao is the public face and a lead developer of Nightshade, software his team markets as an "offensive tool" designed to "disrupt models" by "poisoning" data that can be used to train Defendants' image-generation models, thereby degrading the quality of their outputs.[4] Pursuant to ¶ 7.4 of the Protective Order, Defendants object to any disclosure of "Highly Confidential – Attorneys' Eyes Only" and "Highly Confidential – Source Code" material to Dr. Zhao.

> I. **Dr. Zhao's Development of a Tool to "Disrupt" Defendants' Models Creates an Unacceptable Risk of Misuse of Defendants' Confidential Information.**

Nightshade cannot be written off as merely an "academic research tool." It is public-facing adversarial software that Dr. Zhao and his team boast has been downloaded over 2.2 million times.[5] Dr. Zhao admits that its purpose is to "poison[] the training data" of image-generation models so "attacker[s]" can "force the trained model to exhibit undesired behavior."[6] Dr. Zhao says that Nightshade can, for example, convince a model that an image of a cow is actually an

---

[3] Defendant DeviantArt is not alleged to have participated in the training of Stable Diffusion, the Stability AI-created open-source model underlying DeviantArt's image-generative product, DreamUp. DeviantArt nonetheless joins this motion in support of the concerns regarding Dr. Zhao's access to information that could be used to interfere with the current functioning and/or future development of the Stable Diffusion model, or image-generative models more generally.
[4] SAND Lab, University of Chicago, "What is Nightshade?" https://nightshade.cs.uchicago.edu/whatis.html.
[5] SAND Lab, University of Chicago, "About The Glaze Project," https://nightshade.cs.uchicago.edu/aboutus.html (discussing Nightshade, among other tools).
[6] Ben Y. Zhao et al., "Nightshade: Prompt-Specific Poisoning Attacks on Text-to-Image Generative Models" (2024), https://arxiv.org/html/2310.13828v3, at § 3.1 ("Nightshade Paper").

image of a truck, so asking the model to generate a cow would create a truck instead.[7]

Dr. Zhao's Nightshade software is, in other words, designed to sabotage the training of text-to-image models. Providing Dr. Zhao access to Highly Confidential material, such as non-public source code and training data, would reveal sensitive details about Defendants' models that he could use to more effectively harm Defendants' products and companies.[8] Nightshade already aims its attacks at, and Dr. Zhao's testing involves, at least Defendant Stability AI's models.[9] Providing him with Defendants' closely guarded training scripts, organized training datasets, and proprietary code would give him direct insight into the very systems his project aims to undermine, revealing sensitive data curation, filtering, and cleaning techniques and offering him a roadmap to make Nightshade an even more effective instrument of sabotage.

The claim by Dr. Zhao that he would gain no benefit from access to Defendants' confidential information is self-serving and strains credulity. His very research is focused on understanding and disrupting image model performance. Indeed, Dr. Zhao's project emphasizes the importance of Nightshade's ability to "easily evolve to continue to keep pace with any potential countermeasures/defenses."[10] Even if the Court were to accept the assertion that a "world-leading" AI expert would be unable to determine whether Defendants have implemented countermeasures, access would provide understanding of Defendants' data structures, preprocessing pipelines, and general approaches to robustness. This information is invaluable for designing future versions of Nightshade (or other tools) that are harder to detect or counter.

Plaintiffs' response seems to be that Nightshade can only sabotage text-to-image models that are trained on images found on the web, rather than images provided directly by a copyright holder. That argument is circular. The question before the Court in this case is whether text-to-image models can lawfully train on images collected from the internet. It is no answer to summarily require Defendants not to do so.

## II.    The Protective Order Bars Access by Dr. Zhao, a Functional Competitor.

Dr. Zhao's leadership of Nightshade raises serious competitive concerns for Defendants. Nightshade's explicit mission is to "cause delays" and "costs of these model training processes to go up,"[11] which puts it in functional competition with Defendants. Dr. Zhao's project can succeed only by diminishing the value and reliability of Defendants' models, directly impacting Defendants' ability to operate in the marketplace. The Protective Order explicitly bars Dr. Zhao's participation: an expert in this case cannot be "a past or current employee of a Party *or of a Party's competitor*." ECF No. 276 ¶ 2.7 (emphasis added). And courts recognize that "special concerns arise when prospective experts or consultants may themselves be competitive with the disclosing party's business. Such a scenario threatens to upend the very purpose of the confidentiality designation by enabling a competitor to peek behind the protective order curtain

---

[7] Freakonomics, "How to Poison the AI Machine" (Jan. 24, 2025) at 23:47–25:18, https://freakonomics.com/podcast/how-to-poison-an-a-i-machine/.
[8] That Dr. Zhao has been offered as an expert in copyright litigation related to large *language* models is irrelevant because he specifically designed Nightshade to attack *image* models like those of Defendants. *See* Zhao Decl. ¶¶ 3–4. The risks of allowing him access to highly confidential information in this case is, thus, both different in kind and far greater in magnitude.
[9] Nightshade Paper, *supra* note 6, app'x. A.1 ("Experiment Setup").
[10] "What is Nightshade?" *supra* note 4.
[11] Freakonomics Interview, *supra* note 7, at 28:30–28:40.

vis-à-vis a strategic retention of experts or consultants." *Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*, 344 F.R.D. 468, 471–72 (D. Nev. 2023).

Plaintiffs' only counterargument relies on an overly narrow definition of "competition." *See above*, citing *Aetna*, 2013 WL 12146515, at *3 (analyzing standing under the Lanham Act). The correct standard courts apply when barring access to confidential material under a protective order is whether the individual is a "competitive decisionmaker." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992). Even if Nightshade is not a "traditional competitor in the market place, an individual may still be deemed a competitive decisionmaker where the parties are in an adversarial posture and the individual receiving the highly confidential information would be especially situated to take positions that are directly harmful and antagonistic to [Defendants]." *Voice Domain Techs., LLC v. Apple, Inc.*, No. CIV.A. 13-40138-TSH, 2014 WL 5106413, at *4 (D. Mass. Oct. 8, 2014) (cleaned up). As Nightshade's lead, Dr. Zhao is "especially situated" to use confidential information to harm Defendants.

### III. Plaintiffs' Proposed Limitations Are Insufficient to Protect Defendants.

Plaintiffs' offer to limit the scope of disclosure to Dr. Zhao, including by restricting disclosure solely to materials "without operational relevance" to Nightshade, is unworkable. It is impossible to identify what aspects of Defendants' training processes would have no "operational relevance" to tools designed to attack those very processes. If anything, Dr. Zhao's deep understanding of image models would provide him with insights even from seemingly innocuous aspects of the disclosed material. The very nature of his expertise makes it impossible to identify or seal off knowledge that could be useful to improving his sabotage software.[12]

Nor is it workable for Dr. Zhao to pledge that he merely adhere to the restrictions in the Protective Order. Once Dr. Zhao has access to Defendants' Highly Confidential information, he cannot "unknow" it, and Defendants will be unable to police his use of it. The risk of "experts" in "an adverse position to the owner of the sensitive information" being "tempted to misuse the sensitive information for a purpose other than the litigation" is "simply too great." *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 999 (9th Cir. 2012) (cleaned up); *see also In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned."). Dr. Zhao is, admittedly and literally, in an intentionally "adverse position" to Defendants.

### IV. Plaintiffs Cannot Show Any Purported Prejudice.

While Defendants do not dispute Dr. Zhao's academic credentials, Plaintiffs' claims of substantial prejudice are exaggerated and undermined by Plaintiffs' own actions. There are plenty of AI experts who do not publish tools to sabotage Defendants' models. In fact, ***Plaintiffs have already offered one such individual***, to whom Defendants did not object to disclosing the very same Highly Confidential information. Plaintiffs cannot manufacture prejudice by insisting on using one of the few qualified experts who is actively trying to disrupt Defendants' models, particularly when a non-conflicted alternative has already been identified and accepted.

---

[12] Dr. Zhao's representation that he has "no ***intention*** of developing any further functionalities" for Nightshade rings hollow. Zhao Decl. ¶ 17 (emphasis added). Nothing would prevent him from changing course in the future. In fact, Defendants proposed—and would still accept—a compromise whereby Dr. Zhao would agree not to work on data-poisoning tools for the pendency of the litigation and for a reasonable time after. Plaintiffs rejected this offer outright.

Dated: May 23, 2025

By: */s/ Joseph C. Gratz*
Joseph Charles Gratz
Tiffany Cheung
Timothy Chen Saulsbury
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Email: jgratz@mofo.com
      tcheung@mofo.com
      tsaulsbury@mofo.com

Aditya Vijay Kamdar
**MORRISON & FOERSTER LLP**
2100 L Street NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: akamdar@mofo.com

Christopher Adler
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard
Ste 6000
Los Angeles, CA 90017
Telephone: 213-892-5200
Email: cadler@mofo.com

Mark Alan Lemley
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 906-8657
Email: mlemley@lex-lumina.com

*Counsel for Defendants Stability AI Ltd. and Stability AI, Inc.*


By: */s/ Brittany N. Lovejoy*
Brittany N. Lovejoy (SBN 286813)
Michael H. Rubin (SBN 214636)
Andrew M. Gass (SBN 259694)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
      czirpoli@saverilawfirm.com
      cyoung@saverilawfirm.com
      eabuchanan@saverilawfirm.com
      ecreutz@saverilawfirm.com
      acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butterickllaw.com

Maxwell Pritt (SBN 253155)
Joshua Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
Mariah Joelle Noah (SBN 339658)
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street
41st Floor
San Francisco, CA 94104
415-293-6813
Email: mpritt@bsfllp.com
      jstein@bsfllp.com
      mpoueymirou@bsfllp.com
      mnoah@bsfllp.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle Wagner (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**

<div style="display: flex;">
<div style="flex: 1;">

San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: brittany.lovejoy@lw.com
      michael.rubin@lw.com
      andrew.gass@lw.com

Sarah F. Mitchell
**LATHAM AND WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Email: sarah.mitchell@lw.com

*Counsel for Defendant DeviantArt, Inc.*


By: */s/ Paven Malhotra*
Paven Malhotra
David Jason Silbert
Bailey Wilson Heaps
Julia L. Greenberg
Luke P. Apfeld
**KEKER VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Email:    dsilbert@keker.com
           pmalhotra@keker.com
           bheaps@keker.com
           jgreenberg@keker.com
           lapfeld@keker.com

*Counsel for Defendant Runway AI, Inc.*

</div>
<div style="flex: 1;">

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile: (612)339-0981
Email: bdclark@locklaw.com
      lmmatson@locklaw.com
      aswagner@locklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*


By: */s/ Angela Dunning*
Angela Dunning
Sam Blankenship
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com
      sblankenship@cgsh.com

Arminda B. Bepko
Charity E. Lee
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: abepko@cgsh.com
      charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

</div>
</div>

## ATTESTATION PURSUANT TO CIVIL L.R. 5-1

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: May 23, 2025                                        */s/ Joseph R. Saveri*
                                                                              Joseph R. Saveri