June 4, 2025

The Honorable Lisa J. Cisneros
San Francisco Courthouse
Courtroom G – 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

Re: *Andersen et al. v. Stability AI Ltd. et al.*, No. 3:23-cv-00201-WHO-LJC

Dear Magistrate Judge Cisneros:

Plaintiffs concede that Dr. Ben Zhao is not the only expert capable of opining on text-to-image models. On Plaintiffs' own terms, "Dr. Zhao is **one of** the preeminent researchers in his field," there are a "**few** independent experts of Dr. Zhao's caliber," and there is a "**pool of qualified experts in AI image generation**," despite Plaintiffs' unsupported contention that it is "increasingly small." ECF No. 302-1 ("Supp. Br.") at 2–3 (emphases added).

Dr. Zhao is "unique" in only one sense: his admitted, singular focus when it comes to image-generation models is on finding the best ways to "disrupt" or "poison" them and then releasing tools that allow others to do the same. Given Dr. Zhao's mission to develop tools of sabotage, providing him access to Defendants' sensitive training data and source code is highly inappropriate, as Defendants have detailed. ECF No. 300 at 4–6. To be clear, there is no dispute that Dr. Zhao is **qualified** in the abstract. However, the narrow question now before the Court is whether Plaintiffs have made the "particularized showing" that Dr. Zhao has "unique qualifications that other experts could not provide" and that he is "better suited than any other expert," such that his obvious conflict should be overlooked. *GPNE Corp. v. Apple Inc.*, No. 5:12-cv-2885-LHK (PSG), 2014 WL 1027948, at *1–2 (N.D. Cal. Mar. 13, 2014).

Plaintiffs do not even attempt to meet this burden. Instead, they dedicate much of their argument to explaining why their other disclosed expert, Ayyub Ibrahim, is not a direct substitute for Dr. Zhao. That is a red herring. The issue is not Mr. Ibrahim's specific expertise, but whether Plaintiffs have diligently sought **any** qualified, non-conflicted expert who could opine on the necessary topics. Plaintiffs have not made this required "particularized showing," and the Court should not reward this failure by allowing Dr. Zhao access to Defendants' sensitive material.

    A.    **Plaintiffs Fail to Demonstrate Dr. Zhao's Unique Qualifications or Their Diligence in Seeking Non-Conflicted Alternatives.**

Notably missing from Plaintiffs' supplemental brief is an account of any diligence they conducted before concluding that Dr. Zhao is "virtually irreplaceable." Supp. Br. at 3. Plaintiffs assert that they could not identify "any person *anywhere in the world* more qualified" than Dr. Zhao. ECF No. 300 at 2 (emphasis in original). But what steps did they take to reach this conclusion? Did they conduct a systematic (or even cursory) literature review? Search faculty across computer science departments? Check professional organizations, learned societies, or conferences (like the Association for the Advancement of Artificial Intelligence (AAAI); the Conference on Neural Information Processing Systems (NeurIPS); the International Conference on Machine Learning (ICML); or the Association for Computing Machinery (ACM))?

A simple Google Scholar search, limited to scholarly papers from 2022 to the present, for the

term "text-to-image" yields about 19,700 results and for "stable diffusion" yields about 20,200 results. Decl. of Joseph C. Gratz Ex. A. Even focusing in on papers published by one learned society—AAAI—a search for "text-to-image" yields 104 papers and for "stable diffusion" yields 30 papers. Gratz Decl. Ex. B. Nearly every paper has multiple authors, and many papers have hundreds of citations. It cannot be the case that Plaintiffs couldn't find *anyone* with the ability to explain how generative image models behave from this vast pool of experts who does not also actively work to sabotage Defendants' models. Nor can Plaintiffs credibly claim that AI image generation is such a niche field that there is only one qualified expert, unlike highly specialized subjects where courts have acknowledged and accommodated such constraints. *See, e.g.*, *Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*, No. 11-cv-2214 GPC (KSC), 2013 WL 3367575, at *7 (S.D. Cal. July 5, 2013) (allowing experts where, due to the narrowness of the "antisense molecules" biotechnology field, both parties had to rely on competitor-affiliated experts). To the contrary, just yesterday in *In re Google Generative AI Copyright Litigation*, No. 5:23-cv-03440-EKL (N.D. Cal.), plaintiffs—including two of the same plaintiffs as this litigation, Sarah Andersen and Jingna Zhang, represented by the same counsel—filed a declaration by Dr. Emily Wenger of Duke University, describing her accolades, publications, and "expertise in generative-AI systems, which include … *image diffusion models*." ECF No. 141-3 ¶¶ 1–3 (emphasis added). Like this case, *Google* involves allegations that the defendant used images obtained from the LAION image dataset to train an image-generation model. *Id.* ¶ 4.

Again, there is no dispute that Dr. Zhao is *qualified* to serve as an expert in certain cases; nor are Defendants saying he cannot be Plaintiffs' expert for any purpose whatsoever. Defendants' objection here is to the disclosure of highly confidential source code and training data to Dr. Zhao, whose ongoing work presents a serious competitive risk to Defendants. *See GPNE*, 2014 WL 1027948, at *2 ("even if [the expert] were to make his best efforts to cabin the information off in his mind," it could still influence future work); *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2019 WL 2476620, at *13–14 (N.D. Cal. June 13, 2019) (finding "substantial risk that information could—inadvertently or not—be misused" where individual made no commitment to refrain from competitive work). Defendants do not request "a veto power with respect to" Dr. Zhao, but "Defendant[s] should not have to provide him access to [their] highly confidential" source code and training data, given "the very specific situation presented by" him. *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012).

Plaintiffs' own argument makes clear that the only thing that makes Dr. Zha*o unique* is his focus on studying and developing tools that sabotage Defendants' models. Each award Dr. Zhao has won recently is directly tied to his research into attacking image models. Each paper Plaintiffs cite with titles focused on "text-to-image" models is about poisoning them. Indeed, Dr. Zhao refers to his latest article (set to be published later this year), titled "On the Feasibility of Poisoning Text-to-Image AI Models via Adversarial Mislabeling," as the **"Hemlock paper."** ECF No. 302-1 ("Stein Decl.") Ex. E. Needless to say, "hemlock," like "nightshade" (which is what Dr. Zhao called his last project), is a deadly poison. Plaintiffs also point to Dr. Zhao's creation of an undergraduate course "on these topics," failing to mention that the course—called "Adversarial Machine Learning"—teaches "fundamental vulnerabilities [in] . . . generative AI architectures, . . . poison attacks, [and] detection/filtering/removal defenses," and assigns as homework "attack generation/defenses, model training/fine-tuning, and experiments on latest generation . . . genAI models." Stein Decl. Ex. E. Dr. Zhao quite literally makes a living disrupting and harming Defendants' models and teaching others to do the same. The sources of

2

his purported "uniqueness" are the very things that disqualify him in this instance.

Finally, Plaintiffs argue that this Court should allow disclosure of highly sensitive material to Dr. Zhao because other litigants in AI cases have offered him as an expert. But ***none of those other cases concern text-to-image models***—the very models that Dr. Zhao is trying to sabotage. His engagement elsewhere is thus irrelevant to the acute risks he presents here.

Plaintiffs have not justified their insistence on Dr. Zhao; their brief establishes neither that he possesses unique qualifications, nor that they made any serious effort to find an alternative expert without such a glaring conflict.

### B.     Plaintiffs' Comparison of Dr. Zhao with Mr. Ibrahim Is a Red Herring.

Plaintiffs dedicate most of their supplemental brief to attempting to differentiate Dr. Zhao's AI image generation expertise from Mr. Ayyub Ibrahim's data analysis specialization. While Plaintiffs now explain their intention to utilize these two individuals for distinct purposes, Plaintiffs' comparison is a red herring. It deflects from two critical points. First, Plaintiffs themselves deemed Mr. Ibrahim entirely suitable to receive and analyze the ***very same categories*** of Defendants' most sensitive, highly confidential technical information that they now seek to disclose to Dr. Zhao. Second, the overriding issue is Dr. Zhao's unique disqualifying conflict of interest, irrespective of Mr. Ibrahim's specific skills.

When Plaintiffs' proposed Dr. Zhao, they stated their intent to disclose to him "training data and model data, including source code." Gratz Decl. Ex. C. After Defendants objected to Dr. Zhao, Plaintiffs proposed Mr. Ibrahim, stating their intent to disclose to him "training data, source code, documents related to generative AI training and functionality, expert reports, and related depositions and exhibits." Gratz Decl. Ex. D. Notably, only Mr. Ibrahim was to receive Defendants' highly confidential "documents related to generative AI training and functionality" and related discovery (including expert discovery), in addition to source code and training data.

Plaintiffs' own actions demonstrate they have a pathway for an expert to review Defendants' highly confidential source code and training data. The argument that Plaintiffs would be severely prejudiced by Dr. Zhao's disqualification is therefore not about an inability to have an expert analyze Defendant's technical material. Rather, Plaintiffs contend they need Dr. Zhao specifically for his AI image generation insights. But the burden was on Plaintiffs to either secure an expert who can provide that insight ***without*** also leading projects like Nightshade and "Hemlock" designed to sabotage the very models at issue or to make the "particularized showing" that a non-conflicted expert truly cannot be found. They have failed to do so.

### C.     Conclusion

Plaintiffs' argument that Dr. Zhao is unique relies solely on their say-so. They have failed to show that he possesses "unique qualifications ***that other experts could not provide***." *GPNE*, 2013 WL 1027948, at *1 (emphasis added). Nor have they shown any diligence in searching for an alternative, non-conflicted AI image generation expert, despite the existence of other known qualified academics. Plaintiffs' insistence on Dr. Zhao—whose actual "uniqueness" stems from his ongoing work to sabotage the very models at issue—does not justify exposing Defendants to the significant and irreparable risk his access to their most sensitive and proprietary information would entail. Indeed, the fact that Dr. Zhao and Plaintiffs were unwilling to agree to a temporary moratorium on such work upon receiving Defendants' information (*see* ECF No. 300 at 6 n.12) underscores the intractable nature of his conflict and the ongoing risk he presents.

Dated: June 4, 2025

By: */s/ Joseph C. Gratz*
Joseph Charles Gratz
Tiffany Cheung
Timothy Chen Saulsbury
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Email: jgratz@mofo.com
tcheung@mofo.com
tsaulsbury@mofo.com

Aditya Vijay Kamdar
**MORRISON & FOERSTER LLP**
2100 L Street NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: akamdar@mofo.com

Christopher Adler
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard
Suite 6000
Los Angeles, CA 90017
Telephone: 213-892-5200
Email: cadler@mofo.com

Mark Alan Lemley
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 906-8657
Email: mlemley@lex-lumina.com

*Counsel for Defendants Stability AI Ltd. and Stability AI, Inc.*

By: */s/ Angela Dunning*
Angela Dunning
Sam Blankenship
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com
sblankenship@cgsh.com

Arminda B. Bepko
Charity E. Lee
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: abepko@cgsh.com
charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

By: */s/ Paven Malhotra*
Paven Malhotra
David Jason Silbert
Bailey Wilson Heaps
Julia L. Greenberg
Luke P. Apfeld
**KEKER VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Email: dsilbert@keker.com
pmalhotra@keker.com
bheaps@keker.com
jgreenberg@keker.com
lapfeld@keker.com

*Counsel for Defendant Runway AI, Inc.*

By: */s/ Brittany N. Lovejoy*
Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
Brittany N. Lovejoy (SBN 286813)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: andrew.gass@lw.com
        michael.rubin@lw.com
        brittany.lovejoy@lw.com

Sarah F. Mitchell
**LATHAM AND WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Email: sarah.mitchell@lw.com

*Counsel for Defendant DeviantArt, Inc.*

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1, the filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: June 4, 2025                                          */s/ Joseph C. Gratz*
                                                             Joseph C. Gratz