June 13, 2025

**<u>VIA EMAIL</u>**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
San Francisco Courthouse
Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

     Re: *Andersen et al. v. Stability AI Ltd., et al.*, 3:23-cv-00201-WHO (LJC)

Dear Magistrate Judge Cisneros:

Pursuant to ¶ F(5) of Your Honor's Standing Order and ¶ 7.4 of the Stipulated Protective Order, the parties respectfully submit this joint letter brief regarding Plaintiffs' request that Defendant Midjourney produce all datasets used for training its models without limitation to only datasets sourced from LAION. The parties conducted multiple meet and confers to resolve this issue, but were unable to do so.

**Relevant Discovery Dates**

Pursuant to the Court's scheduling orders, *see* ECF Nos. 235; 240; 296, the following dates are pertinent to the present discovery dispute: (1) substantial completion of the production of training data concludes on June 20, 2025; (2) fact discovery concludes on March 13, 2026; and (3) expert discovery concludes on July 17, 2026; (4) class certification and dispositive motions must be filed no later than August 14, 2026; (5) the hearing on class certification and summary judgment motions is scheduled for November 4, 2026, (6) the final pretrial conference is on March 1, 2027; and (7) trial is set to commence on April 5, 2027.

**Issue Presented**

Whether Midjourney must produce all training datasets without limitation to only datasets sourced from LAION.

**Plaintiffs' Position:** Midjourney's training datasets are among the most crucial evidence in this case. Midjourney misses the mark because Plaintiffs are only asking for training datasets that include copyrighted images. Nonetheless, Midjourney would deprive Plaintiffs of these highly relevant datasets because it contends that only LAION datasets are relevant and others are disproportionate to the needs of the case. Midjourney's myopic reading of the complaint, ECF No. 238 ("SAC"), however, does not supersede the bedrock principle that relevance is broad, and evidence is relevant so long as it bears on any claim or defense—and training datasets beyond the LAION datasets are indisputably relevant and proportional to both. Consequently, Plaintiffs request the Court compel the production of training datasets Midjourney used to train its models.

## I.    All Training Datasets in Which Midjourney Used Are Relevant and Proportional

Training datasets beyond LAION are unquestionably relevant. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Pizzuto v. Tewalt*, 136 F.4th 855, 868 (9th Cir. 2025). "This standard is a 'low bar.'" *Id.* Midjourney's training datasets beyond LAION easily clear this threshold, as they directly bear on the scope of infringement, the calculation of damages, and the viability of anticipated defenses.

**All training datasets in which Midjourney used are relevant to the copyright claims.** Plaintiffs have substantially exceeded the low bar necessary for discovery. The heart of these claims is that Midjourney "repeatedly violated the exclusive rights (under 17 U.S.C. § 106) of [] Plaintiffs and continues to do so today." SAC ¶ 272; *see also* SAC ¶ 277 (similar). The copyright claims describe how Midjourney made copies of Plaintiffs' works during training. SAC ¶ 279. Critically, if Midjourney made copies of a registered work to train its models, that fact definitively establishes a violation of copyright law, whether the provenance of that copy was LAION or otherwise.

Non-LAION datasets are relevant for a second reason—Midjourney will likely argue that Plaintiffs' works comprise a very small fraction of its models datasets, and thus any infringement would be fair use. *See* 17 U.S.C. § 107. Specifically, Plaintiffs anticipate that Midjourney will argue that their works (or LAION in general) comprise such a small proportion of the training corpora, that under the third factor, any infringement is excused. This anticipated defense strategy renders other training datasets indispensable for Plaintiffs to comprehensively rebut that defense.

**All training datasets in which Midjourney used are relevant to the Lanham Act claims.** These training datasets are also relevant to Counts Seven and Eight (collectively, the "Lanham Act claims"). The elements of a Lanham Act claim include "that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202–203 (9th Cir. 2012). A false designation of origin claim likewise requires a showing of a likelihood of consumer confusion. *New W. Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

While Midjourney is correct the Lanham Act claims hinge on Midjourney's outputs, this acknowledgment undermines its position rather than supporting it. Plaintiffs allege that Midjourney's models can only create outputs based on the images in its training dataset. SAC ¶¶ 2; 90; 130–40. The causal relationship between training data and outputs renders the former indispensable to the latter's analysis. The training data that Midjourney used is of fundamental importance to Plaintiffs' Lanham Act claims because comparing whether there is a likelihood of confusion between Plaintiffs' works and Midjourney's outputs requires comprehensive

comparison of Plaintiffs' works with the entirety of what is in Midjourney's training corpus, and meaningful analysis must encompass the complete universe of source material.

**All training datasets in which Midjourney used are proportional to the case.** Midjourney's suggestion that Plaintiffs can seek information regarding Midjourney's training data through interrogatories misses the mark. Parties may use discovery tools as they choose, without interference from opposing counsel unless a valid legal basis exists. *See Mueller v. City of E. St. Louis, IL*, No. 24-CV-2321-DWD, 2025 WL 1370073, at *2 (S.D. Ill. May 12, 2025) (collecting cases). The inquiry is simply whether the requested discovery satisfies Rule 26.

Midjourney contends that production of all its training datasets would be disproportionate to the case. "[T]he balance between burden and benefit is the essence of the proportionality inquiry," which requires "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Sec. & Exch. Comm'n v. Payward, Inc.*, No. 23-CV-06003-WHO, 2024 WL 5135602, at *2 (N.D. Cal. Dec. 16, 2024); Fed. R. Civ. P. 26(b)(1).

As described *supra*, the training datasets that Midjourney used are central to Plaintiffs' allegations. To the extent Midjourney complains about proportionality, that inquiry requires the Court to consider the stakes in this action and the importance of the discovery to the issues. *HDMI Licensing Adm'r, Inc. v. Availink, Inc*., 2025 WL 799036, at *9 (N.D. Cal. Mar. 13, 2025). And here, where the stakes are tremendous and involve new technologies and potentially billions in liability, proportionality favors Plaintiffs (and production)—not Midjourney.

The proportionality calculus further supports production because Plaintiffs face an insurmountable evidentiary disadvantage. Plaintiffs could not have included images of their works as they may appear in other datasets in the SAC because Midjourney has never publicly revealed the datasets it used to train its models nor what images it used in training beyond explaining that "MJ is trained on a subset of Laion5b." SAC ¶ 266. Indeed, it would belie belief if only LAION were used, and Midjourney has never denied broader dataset use.

Midjourney's hyperbolic characterizations prove legally irrelevant. That Midjourney vaguely and without support from a citation or the record suggests the production of its training data would amount to "20 million tall filing cabinets" should be of no moment to the Court given the needs of this case.[1] In any case, Midjourney's concerns about costs would be obviated by allowing Plaintiffs to inspect the data under Rule 36(a) or hosting the training data on the cloud and giving Plaintiffs remote access. More fundamentally, taking Midjourney's representations as true, this fact would underscore the importance of obtaining all training datasets, as the LAION datasets would be but a relatively small subset of the larger infringing whole.

---

[1] Midjourney's assertion that "Plaintiffs request amounts to a demand for more AI training data than any U.S. court has ever ordered any AI company to produce" is a red herring. This case should be measured on its own merits. In any event, Midjourney's current proposal now amounts to mere terabytes, and has not even approached the data at issue in other litigation. *See In re OpenAI, Inc., Copyright Infringement Litig.*, No. MDL 3143, 2025 WL 1037221, at *1 n.2 (U.S. Jud. Pan. Mult. Lit. Apr. 3, 2025) ("According to the parties, defendants have already produced petabytes of data from their training sets.").

## II.    The SAC and Plaintiffs' Requests for Production Contemplate *All* Training Datasets in Which Midjourney Used

Midjourney ignores the factual assertions in the SAC that demonstrate Midjourney's widespread usage of Plaintiffs' copyrighted works for training, which *include but are not limited to* LAION-5B and LAION-400M. *See, e.g.*, SAC ¶ 258 ("In other words, Midjourney trained its image generation product on at least the LAION-400M dataset."). Additionally, Midjourney selectively points to two asserted classes in the SAC to conclude that Plaintiffs may only be entitled to datasets derived from LAION: the LAION-5B Damages Subclass and the LAION-400M Damages Subclass. SAC ¶ 35. Midjourney strategically overlooks two other asserted classes that include "any work that was used to train any version of an AI image product that was offered directly or incorporated into another product by one or more Defendants during the Class Period." *Id.*

The existence of specific LAION-focused subclasses operates under established principles of statutory construction to expand rather than restrict the scope of actionable conduct. That there is a specific carve out for LAION datasets does not defeat the fact that all training datasets that were "used to train any version of an AI image product" are also expressly encompassed within the basis of Plaintiffs' claims. The Damages Class is definitively included in Plaintiffs' copyright claims. *See* SAC Counts Four and Five (". . . against Midjourney on behalf of the LAION-[400M/5B] Registered Plaintiffs *and* Damages Subclass") (emphasis added).[2] This conjunctive construction demonstrates that the copyright claims encompass both the narrowly defined LAION subclasses and the broader Damages Class.

### Midjourney's Position[3]

Plaintiffs' request that Midjourney produce *all* training data for every AI model that Midjourney has ever released, is developing, or may develop during this litigation (*see* Ex. A, Def'n 22; Reqs. 4–7), flies in the face of the most basic strictures of Rule 26 and should be denied. Plaintiffs bring two sets of claims against Midjourney: Copyright claims and Lanham Act claims. As explained below, the Lanham Act claims turn on outputs; training data is unnecessary to resolve these claims. As for the Copyright claims, the SAC asserts claims solely on behalf of the owners of registered copyrights in works in two specific databases—LAION-400M and LAION-5B—and alleges infringement solely of the "LAION-400M[/-5B] Registered Works." Indeed, this Court allowed Plaintiffs to proceed past the motion to dismiss stage and into discovery only because they had adequately pleaded that their registered works were included in these specific LAION datasets. As such, no other training data is relevant to the parties' claims and defenses, no matter how Plaintiffs now attempt to recast their pleading in this letter brief to explain their unjustified demand.

Midjourney has been ready and offering for months to produce the training data it sourced from these LAION databases, specifically by "hosting [it] on the cloud and giving Plaintiffs remote access," a means of production Plaintiffs now concede is appropriate given the massive volume of LAION data at issue (>100 terabytes). Requiring Midjourney to produce other training data of no relevance to the claims against it would balloon discovery by a staggering degree and impose extraordinary undue burden and cost. Midjourney estimates the volume of training data Plaintiffs

---

[2] Plaintiffs acknowledge the drafting inconsistency caused by describing the Damages Class as the Damages Subclass in certain claim headings.
[3] Pursuant to the Court's Standing Order ¶ F(5), Midjourney does not include a factual declaration with this letter brief, but is willing to do so if it would aid the Court.

are seeking would amount to petabytes—each the rough equivalent of 500 billion pages of text, or 20 million tall filing cabinets, or 13.3 years' worth of high-definition video. Plaintiffs come nowhere close to meeting their burden to show need or entitlement to such discovery in this case. *See Sec. & Exch. Comm'n v. Payward, Inc.*, 2024 WL 5135602, at *2 (N.D. Cal. Dec. 16, 2024) (denying motion to compel where "any benefit [the moving party] could adduce … from receiving this discovery would be grossly outweighed by the SEC's burden in producing it").

**<u>Plaintiffs' Copyright Claims Are Limited to the LAION Datasets</u>:** Plaintiffs' copyright claims against Midjourney are narrowly focused on Midjourney's purported use of training data from the LAION-400M and LAION-5B datasets. Counts Four and Five are for "Direct copyright infringement of the [LAION-400M/-5B] Registered Works by training the Midjourney [400M/5B] Models" and are asserted specifically "on behalf of the [LAION-400M/-5B] Registered Plaintiffs and Damages Subclass." SAC at 63, 64 (claim headers); *see also* ¶ 35 (defining the referenced subclasses); ¶¶ 259–62 (defining "LAION-400M Registered Works" and "LAION-400M Plaintiffs"; ¶¶ 211–13 (same, for LAION-5B). The asserted factual basis of these claims is that Midjourney made unauthorized copies of registered works sourced from (and only from) these two specific LAION datasets to train its models and that persons who "own a registered copyright in any work in the [LAION-400M or -5B] dataset[s] that w[ere] used to train any version" of Midjourney's models were allegedly harmed thereby. *Id.* ¶¶ 35, 57–80, 258–64, 266–69, 272–75. And Plaintiffs included exhibits with the SAC purporting to reflect their "Images in LAION-5B [and LAION-400M]"—but did not do so for any other data source. ECF No. 238-1, 238-2. Indeed, Plaintiffs' twice amended complaint refers 299 times to LAION and no other dataset. Plaintiffs cannot now "use[ discovery] as a fishing expedition for evidence of claims that have not been properly pled." *Impinj, Inc. v. NXP USA, Inc.*, 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022).

Plaintiffs argue that they meant to assert these claims not on behalf of the "LAION-400M[/-5B] Damages ***Sub***class[es]" their claims actually reference but, instead, more broadly on behalf of the "Damages Class" defined in paragraph 35 of the SAC. *See supra* at 4 & n.3. This is disingenuous at best. The SAC intentionally (and necessarily) asserts copyright claims solely on behalf of the LAION-400M/-5B Damages ***Sub***classes because those subclass definitions require a "registered copyright" (a statutory prerequisite to a copyright infringement claim), whereas the "Damages Class" requires only "a copyright interest," which cannot, as Judge Orrick has found, support a copyright claim. ECF 223 at 19 ("un-registered works" cannot support a copyright claim). The SAC includes DMCA claims on behalf of the "Damages Class" (Counts 3, 6, 11), but those claims have been dismissed with prejudice. ECF 223 at 13 n.13.

In any event, the Court understood that Plaintiffs' claims were limited to the alleged use of LAION data for training when it allowed this case to proceed past the pleading stage and into discovery. *See id.* at 20 (discussing the adequacy of plaintiffs' "allegations regarding the training and use of the ***LAION datasets***" and "allegations showing why they believe their works were included ***in the LAION datasets***") (emphases added). As such, discovery into other data Midjourney may have sourced and used to train its models is unwarranted as it has no relevance to Plaintiffs' copyright claims. *See In re German Auto. Mfrs. Antitrust Litig.*, 335 F.R.D. 407, 408 (N.D. Cal. 2020) (noting the "2015 amendments to Rule 26(b) 'anchored' discovery to 'any party's claim or defense'").

Undeterred, Plaintiffs assert that they should nevertheless be entitled to discovery into all data Midjourney used to train its models based on speculation that it may argue in support of its fair use defense that any plaintiff's "works comprise a very small fraction of its models datasets." But

that is apparent by reference to the LAION datasets alone, which consist of **400 million** and **5 billion** images, respectively. Plaintiffs do not explain how requiring Midjourney to produce even *more* training data would undermine that obvious conclusion. And even if the total size of Midjourney's training datasets were somehow relevant, Plaintiffs could obtain that information much more simply and cost-effectively by way of a targeted interrogatory. *Campbell v. Facebook Inc.*, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016) (denying motion to compel production of "millions of cells of proprietary and sensitive information that is unrelated to specific practices identified in the class certification order," and suggesting that the plaintiff instead seek this discovery through alternative, more targeted means). Requiring Midjourney to produce petabytes of irrelevant training data is by far the least proportionate and most burdensome means to arrive at this information, and is fundamentally inconsistent with Rule 26. *See HDMI Licensing Adm'r, Inc. v. Availink, Inc.*, 2025 WL 799036, at *9 (N.D. Cal. Mar. 13, 2025) (denying discovery as disproportionate where materials were not "vital, critical, or even important to *resolve*" the claims) (emphasis in original).

**<u>Training Data Is Not Relevant to the Lanham Act Claims</u>:** Plaintiffs bring two claims under the Lanham Act: false endorsement and vicarious trade dress infringement—neither of which warrants production of training data outside of LAION. Plaintiffs' false endorsement claim is based on Midjourney's alleged use of 4,700 names in the Midjourney Name List. *See* SAC ¶ 297. To prove their claim, Plaintiffs must show that Midjourney's use of these names was "likely to cause confusion," mistake, or deception "as to the origin, sponsorship, or approval of [plaintiff's] goods, services, or commercial activities." 15 U.S.C. § 1125(a). What Midjourney used to train its model is irrelevant; it is the alleged use of Plaintiffs' *names* in the Midjourney Name List to promote the platform that forms the basis for the claim.

Likewise, the trade dress claim is based on allegations that Midjourney's users are creating outputs in Plaintiffs' "styles" that infringe Plaintiffs' alleged trade dress and that Midjourney is vicariously liable for this conduct. SAC ¶¶ 316–17. This claim requires Plaintiffs to prove that (1) they own protectable trade dress rights, and (2) "a substantial likelihood of confusion" arises from the use in commerce by Midjourney's users of that trade dress. *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009). As Plaintiffs concede above, this claim turns on the **outputs** users have actually created and displayed that purportedly incorporate Plaintiffs' supposed trade dress, not the data that Midjourney used to train its models. By definition, confidential, internal training activities are not use in commerce and involve no public display of trade dress that might confuse consumers. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (Lanham Act prevents unauthorized uses "in connection with a commercial transaction in which the trademark is being used to confuse potential consumers"). Even if training were relevant to this claim (it is not), the LAION data Midjourney is prepared to produce will answer the question of whether Plaintiffs' works were in the training datasets. The Lanham Act claims provide no basis to expand production of training data beyond the specific LAION datasets at issue.

In short, the extraordinary volume of training data Plaintiffs seek beyond the LAION-400M and -5B datasets is both irrelevant to the parties' claims and defenses and out of all proportion to the needs of the case under Rule 26. The allegations in the SAC—which Midjourney respectfully urges the Court to review—make clear that the only training data at issue is that which Midjourney sourced from LAION, which is already massive in its own right. Midjourney first offered to produce the LAION training data more than two months ago and remains ready to do so as soon as Plaintiffs are willing to accept it. Plaintiffs' request for all other training data should be denied.

Dated: June 13, 2025

By: */s/ Angela L. Dunning*
 Angela L. Dunning
 Sam Blankenship
 **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
 1841 Page Mill Road, Suite 250
 Palo Alto, CA 94304-1248
 Telephone: (650) 815-4131
 Email: adunning@cgsh.com
        sblankenship@cgsh.com

 Arminda B. Bepko
 Charity E. Lee
 **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
 One Liberty Plaza
 New York, NY 10006
 Telephone: (212) 225-2517
 Email: abepko@cgsh.com
        charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Aaron Cera (SBN 351163)
Alexander Y. Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
       czirpoli@saverilawfirm.com
       cyoung@saverilawfirm.com
       eabuchanan@saverilawfirm.com
       ecreutz@saverilawfirm.com
       acera@saverilawfirm.com
       azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email:  mb@butericklaw.com

 Maxwell Pritt (SBN 253155)
 Joshua Stein (SBN 298856)
 Margaux Poueymirou (SBN 356000)
 Mariah Joelle Noah (SBN 339658**)**
 **BOIES SCHILLER FLEXNER LLP**
 44 Montgomery Street
 41st Floor
 San Francisco, CA 94104
 415-293-6813
 Email: mpritt@bsfllp.com
        jstein@bsfllp.com
        mpoueymirou@bsfllp.com
        mnoah@bsfllp.com

Brian D. Clark (*pro hac vice*)
Laura M. Matson (*pro hac vice*)
Arielle Wagner (*pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile: (612)339-0981
Email: bdclark@locklaw.com
       lmmatson@locklaw.com
       aswagner@locklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL L.R. 5-1

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: June 13, 2025                    _/s/ Joseph R. Saveri_
                                        Joseph R. Saveri