[Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>STABILITY AI LTD., et al.,<br><br>    *Defendants*. | Case No. 3:23-cv-00201-WHO<br><br>**JOINT STATUS REPORT**<br><br>Judge: Hon. Lisa J. Cisneros |

1  Pursuant to the Court's June 10, 2025, Order (ECF No. 305), the Parties, by and through their undersigned counsel, respectfully submit this Joint Status Report regarding the suitability of Dr. Emily Wenger.

**Plaintiffs' Position:** Dr. Wenger has **not** been retained by Plaintiffs as an expert in this matter, nor has she agreed to based on the outcome of this briefing. Plaintiffs also emphasize that Dr. Wenger is unavailable to serve as an expert in this case. Defendants' path forward would simply result in Plaintiffs having no expert at all.

As requested by the Court, Plaintiffs provided Defendants with the disclosures set forth in paragraph 7.4 of the operative Protective Order. Plaintiffs disclosed that Dr. Wenger, like Dr. Zhao, worked on both the Glaze and Nightshade projects. Further, Plaintiffs disclosed that Dr. Wenger was employed by Meta Platforms, Inc. until May 21, 2025, and continues to consult once-a-week with that team. Dr. Wenger is also advising a doctoral student at Duke University who will also be conducting his own independent research with that team. Plaintiffs also disclosed that although Dr. Wenger submitted a declaration in *In re Google Gen. AI Copyright Litig.*, No. 23-cv-03440 (N.D. Cal.), Google has objected to Dr. Wenger on similar grounds as Defendants here have objected to Dr. Zhao, and she has not been provided access to any highly confidential information such as training data or source code. Letter briefing regarding Google's objection to Dr. Wenger is imminent and will be on-file by the end of the week. Plaintiffs further indicated that even if Google's objections to Dr. Wenger were overruled (and indeed, even if they were not), Dr. Wenger has indicated she would still be unavailable to serve as Plaintiffs' expert in this matter.

On June 16, 2025, the Parties met and conferred. Given the issues referenced above, Plaintiffs requested that Defendants make clear whether they object or would object to the disclosure of confidential information to Dr. Wenger, prior to any attempt to retain her in this matter. Defendants stated that they would confer among themselves and respond.

With respect to Defendants' limitation that they would accept Dr. Wenger on condition that she limit her research for three years, setting aside that Dr. Wenger has not been retained to work on this case, Plaintiffs note that Defendants made the exact same proposal with respect to Dr. Zhao. Plaintiffs rejected that proposal as not only unworkable but also improper as such a serious restraint on academic

activities has, among other things, grave First Amendment implications and reject that limitation here again. To the extent Defendants say Dr. Wenger is acceptable because she is no longer working on Nightshade and Glaze, so too is Dr. Zhao. As Plaintiffs told Defendants, Dr. Zhao is no longer actively developing Nightshade and Glaze—the only work he is doing is maintaining the projects and responding to attacks by other academics.

The bottom line is that Dr. Wenger is not a viable "alternative" when her work on Glaze and Nightshade under Dr. Zhao's supervision has led Defendants to ask for the exact same improper academic restraint as to both experts, among the other issues raised above. Only Dr. Zhao is retained here. Defendants say they offer a path forward, but say nothing about the fact she has not agreed to serve on this case—neither Plaintiffs nor Defendants can compel Dr. Wenger to serve as an expert in this matter, nor would Plaintiffs want her to absent her consent. Plaintiffs' list of experts who might work on this case is vanishingly small. There is a reason why so few technical experts have been retained by plaintiffs in generative AI cases—because they are few. The fact that Defendants' supposed "alternative" puts all Parties in the exact same position as before only supports Plaintiffs' position that there are no viable alternatives to Dr. Zhao.

**Defendants' Position:** Defendants' primary concern is protecting their highly confidential source code and training data from individuals actively working to disrupt and "poison" their models. Based on the information provided to us by Plaintiffs, including the representation during the June 16, 2025 meet and confer that Dr. Wenger is no longer working on any "poison" tools like Nightshade, Defendants would not object to disclosing these highly confidential materials to Dr. Wenger under the Protective Order—provided that she would agree not to work on any "poison" tools during the pendency of this litigation and for a reasonable time period afterward (i.e., three years).[1] This condition is a direct

---

[1] In a revision to this joint statement circulated at 9:19 p.m. PT on the night it was due, Plaintiffs changed their position to state **for the first time** that Dr. Wenger definitively "is unavailable" and "has indicated she would still be unavailable" to serve as an expert in this matter. Had they conveyed this information to Defendants earlier, including during the Parties' meet and confer (where, instead, they indicated their willingness to "move heaven and earth" to make Dr. Wenger available should Defendants not object), the Parties could have used this process to address Plaintiffs' purported search for other viable, non-conflicted experts, rather than focusing on an "alternative" who Plaintiffs now state was never truly available.

response to the risk posed by her past involvement with Nightshade and Plaintiffs' refusal, raised during the Parties' meet and confer, to ask Dr. Wenger about her future activities before they have retained her.

    Plaintiffs' assertion that such a condition raises "grave First Amendment implications" is unfounded.  A voluntary agreement entered into by an expert to gain access to highly sensitive material for litigation purposes is not an improper restraint.  Indeed, the Protective Order in this very case already requires individuals receiving highly confidential material to accept a similar limitation on their First Amendment right to petition the government by agreeing to a two-year patent prosecution bar.  *See* Protective Order ¶ 8.

    The core issue remains Plaintiffs' refusal to substantiate their claim that Dr. Zhao is "virtually irreplaceable."  It is telling that Plaintiffs continue to assert that there are "no viable alternatives to Dr. Zhao" without offering any details of the diligence they have done to prove that claim, let alone any reason why any of the hundreds or thousands of individuals who have published papers on text-to-image models or Stable Diffusion are unavailable.  When pressed during the meet and confer, Plaintiffs admitted they "can't use Dr. Zhao for every case" and that there were other experts they have considered but refused to provide any detail as to who they were or why they were not viable.  Plaintiffs cannot continue to manufacture severe prejudice by withholding details about their search.

    Defendants are not trying to force Plaintiffs to use Dr. Wenger as an expert; she was noted only to rebut Plaintiffs' prior unsupported claims that Dr. Zhao was irreplaceable, particularly given Plaintiffs' own actions in another case.  ECF No. 303 at 2.  The distinction remains clear:  Defendants have offered a potential path forward for an expert who is reportedly no longer working on adversarial tools that target Defendants, but Plaintiffs reject even this, demanding access for an expert who remains actively engaged in such work.  Defendants remain committed to working with Plaintiffs on any suitable, unconflicted expert they may propose.  But Plaintiffs cannot hold this process hostage by doubling down on their conflicted expert while simultaneously refusing to provide any evidence that they have diligently sought an alternative.

| | |
|---|---|
| Dated: June 16, 2025 | Respectfully Submitted, |
| | By: */s/ Joseph R. Saveri* |

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

Maxwell V. Pritt (SBN 253155)
Joshua Michelangelo Stein (SBN 298856)
Margaux Poueymirou (SBN 35600)
Mariah J. Noah (SBN 339658)
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Email: mpritt@bsfllp.com
Email: jstein@bsfllp.com
Email: mpoueymirou@bsfllp.com
Email: mnoah@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: June 16, 2025

Respectfully Submitted,

By: /s/ Brittany N. Lovejoy

Brittany N. Lovejoy (SBN 286813)
Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: andrew.gass@lw.com
Email: michael.rubin@lw.com
Email: brittany.lovejoy@lw.com

Sarah F. Mitchell
**LATHAM AND WATKINS LLP**
355 South Grand Avenue
Suite 100
Los Angeles, CA 90071
213-485-1234
Email: sarah.mitchell@lw.com

*Counsel for Defendant DeviantArt, Inc.*

Dated: June 16, 2025

Respectfully Submitted,

By: /s/ Joseph C. Gratz

Joseph Charles Gratz
Tiffany Cheung
Timothy Chen Saulsbury
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Email: jgratz@mofo.com
Email: tcheung@mofo.com
Email: tsaulsbury@mofo.com

Christopher Adler
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213-892-5200
Email: cadler@mofo.com

Aditya Vijay Kamdar
**MORRISON & FOERSTER LLP**
2100 L Street NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: akamdar@mofo.com

Mark Alan Lemley
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 906-8657
Email: mlemley@lex-lumina.com

*Counsel for Defendants Stability AI Ltd. and Stability AI, Inc.*

Dated: June 16, 2025                                Respectfully Submitted,

By:  */s/ Angela Dunning*

Angela Dunning
Sam Blankenship
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com
Email: sblankenship@cgsh.com

Arminda B. Bepko
Charity E Lee
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: abepko@cgsh.com
Email: charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

| | |
|---|---|
| Dated: June 16, 2025 | Respectfully Submitted, |
| | By: /s/ Paven Malhorta |

Paven Malhotra
David J. Silbert
Bailey W. Heaps
Julia L. Greenberg
Luke P. Apfeld
**KEKER VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Email: dsilbert@keker.com
Email: pmalhotra@keker.com
Email: bheaps@keker.com
Email: jgreenberg@keker.com
Email: lapfeld@keker.com

*Counsel for Defendant Runway AI, Inc.*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: June 16, 2025
/s/ *Joseph R. Saveri*
Joseph R. Saveri