**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butterickelaw.com

**BOIES SCHILLER FLEXNER LLP**
Maxwell V. Pritt (SBN 253155)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
415-293-6800
Email: mpritt@bsfllp.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH ANDERSEN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STABILITY AI LTD., et al., <br><br> Defendants. | Case No. 23-CV-00201-WHO (LJC) <br><br> **PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (ECF 316) PURSUANT TO CIVIL L.R. 72-2** |

## INTRODUCTION

A bedrock principle of our legal system is that "[l]itigants normally have an unlimited right to choose their own expert witnesses." *Hemmerick v. Chrysler Corp.*, 769 F. Supp. 525, 530 (S.D.N.Y.), *aff'd*, 952 F.2d 393 (2d Cir. 1991). Yet here, Defendants seek to deny Plaintiffs that right by barring Plaintiffs' *only* AI image model expert—Dr. Ben Zhao, a professor of computer science at the University of Chicago and a renowned expert on AI image models—from accessing or testifying about any materials marked confidential by Defendants in this case. ECF No. 300 at 4. On July 14, 2025, the Honorable Magistrate Judge Lisa Cisneros sustained this objection. ECF No. 316 (the "Order") at 5. But Judge Cisneros erred when she (1) applied a non-existent "functional competitor" standard and (2) misapplied the "unique knowledge" standard, improperly requiring Plaintiffs to show that Dr. Zhao is singularly qualified to testify. Respectfully, in doing so, the Order ultimately fails to recognize that *Defendants did not meet their burden under the protective order:* they first failed to acknowledge that burden, then failed to proffer even a single relevant declaration or other cognizable evidence on potential harm (let alone balancing that against Plaintiffs' need), and finally held up two non-viable options as alternatives to Dr. Zhao.[1] Plaintiffs thus move this Court pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and Civil L.R. 72-2 for relief from this nondispositive pretrial order and ask the Court to enter a new order allowing Plaintiffs to disclose this material to their chosen expert. Absent such relief, Plaintiffs will be without a core technical expert in this case and will thus suffer serious prejudice.

Defendants object to Dr. Zhao because he developed two noncommercial tools—Glaze and Nightshade—that were designed to protect artists' images from being used as training data in AI models without their consent. Both tools were nonprofit creations, were funded entirely through research grants or donations, and were completed in August 2023 and May 2024 respectively. ECF No. 300-1 (Declaration of Dr. Ben Yanbin Zhao, ["Zhao Decl."]) ¶¶ 7, 9, 17; Ex. A. Neither tool is designed to or can operate on Defendants' AI models, or on any AI models more generally. Instead, the tools operate on

---

[1] As Judge Cisneros notes in her Order, the protective order entered in this case requires that "the Party opposing disclosure to the Expert [here, Defendants] shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert." Order at 2; *cf.* ECF No. 276 at ¶ 7.4.

*images*, when an artist chooses to use the tools on one of their own works in an attempt to control how their own work is used beyond its intended means. Zhao Decl. ¶ 8. And neither tool is still being developed or has any future commercial prospects. Zhao Decl. ¶¶ 7, 9, 14, 17.

Defendants claim that this academic research is disqualifying. They assert, without articulating real specifics (and thereby failing for this independent reason to meet their burden under the protective order), that disclosing any confidential material to Dr. Zhao "would reveal sensitive details about Defendants' models that he could use to more effectively harm Defendants' products and companies." ECF 300 No. at 5. But Dr. Zhao has sworn under oath that "[a]ccess to Defendants' training data information would not benefit his development of Glaze or Nightshade." Zhao Decl. ¶¶ 12, 14, 15, 19. And Plaintiffs have offered to shield from Dr. Zhao any of Defendants' documents related to their efforts to counteract Glaze and Nightshade. Zhao Decl. ¶ 18. Still, Judge Cisneros granted Defendants' request to bar Dr. Zhao in full. Plaintiffs now respectfully seek relief from her Order as being contrary to law.

## LEGAL STANDARD

Rule 72 requires that any part of a magistrate judge's order must be set aside or modified if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A non-dispositive order "is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *United States v. Cathcart*, No. 07-4762, 2009 WL 1764642, at *2 (N.D. Cal. June 18, 2009) (citation omitted). "[T]he magistrate's legal conclusions are reviewed de novo to determine whether they are contrary to law." *EEOC v. Peter's Bakery*, 301 F.R.D. 482, 484 (N.D. Cal. 2014).

## ARGUMENT

I.   The Order's Standard for Evaluating Harm Is Contrary to Law.

A.   The Order Misapplies a Non-existent "Functional Competitor" Standard.

Defendants' theory of harm is that disclosure of confidential information to Dr. Zhao poses a "serious competitive risk to Defendants," i.e., that Dr. Zhao is a competitor to Defendants, and that this relationship therefore renders him unfit to view Defendants' confidential material. ECF No. 303 at 2. The Order agrees, ruling that Dr. Zhao is "in functional competition with Defendants." Order at 3. However, the Order's ruling on competition is contrary to law: a diligent search by Plaintiffs has not turned up a

single case in which a court deemed an academic researcher a competitor, and never before has a court in this circuit adopted or applied a test of "functional" competition as opposed to actual competition.

It is undisputed that Dr. Zhao is not an actual competitor of Defendants. Dr. Zhao is employed full-time by the University of Chicago, where he directs a research lab and teaches students. Zhao Decl. ¶ 1. He does not run a business or consult for another AI model company, like Google or OpenAI. And in every single case that the Order cites, a court evaluated the propriety of disclosing confidential information to a party's actual competitor, not a professor doing research. *See Tomahawk Mfg., Inc. v. Spherical Indus., Inc.*, 344 F.R.D. 468, 475 (D. Nev. 2023) (barring experts "hired by Defendants to act as business consultants with respect to the product they were intending to bring to market"); *GPNE Corp. v. Apple Inc.*, No. 12-cv-2885, 2014 WL 1027948, at *1 (N.D. Cal. Mar. 13, 2014) (barring an expert who was "the president of a business"); *Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC JSC, 2012 WL 3582974, at *2 (N.D. Cal. Aug. 20, 2012) (barring an expert who was "the President of a company [who] worked with one of Defendant's competitors").

Because no precedent exists for deeming an academic an actual "competitor," the Order relies on a single out-of-circuit, unpublished district court opinion from Massachusetts to stand for the proposition that Dr. Zhao is a "functional competitor" instead—though, notably, that district court never even uses this expression. Order at 3; *see Voice Domain Techs., LLC v. Apple,* Civil Action No. 13-40138-TSH, 2014 WL 5106413 (D. Mass. Oct. 8, 2014). Regardless, *Voice Domain* is inapposite. The proposed expert in *Voice Domain* was "the sole employee of Voice Domain," i.e., the sole employee of the plaintiff, *a corporate competitor to the defendant. Id.* at *5. And the court's inquiry focused on whether that employee could engage in "competitive decisionmaking *with the client*." *Id.* at *3 (emphasis added). Here, Dr. Zhao is not an employee of Plaintiffs, all of whom are independent visual artists, nor are Plaintiffs competing with Defendants in the creation of AI models. Thus, even under the reasoning of *Voice Domain*, Dr. Zhao is not a "functional competitor."

Ultimately, the harm that Defendants assert will occur (again without the support of any cognizable testimony or evidence) lacks any basis in any precedent holding that an academic can be a

competitor in the way that the law requires.[2] The Order should be vacated on this ground alone. *See N.Y. Times Co. v. Microsoft Corp.*, No. 23-CV-11195, 2025 WL 1410658, at *2 (S.D.N.Y. Apr. 1, 2025) (in a similar AI case, denying motion to bar disclosure to an expert because "OpenAI only offers conclusory statements that disclosing documents to Dr. Baeza-Yates will result in commercial harm and that the risk of harm outweighs Plaintiffs' need to disclose, but OpenAI does not define or quantify what harm is likely to result").[3]

## II. The Order's Standard for Evaluating the Need to Disclose Is Contrary to Law.

### A. The Order Misapplies the "Unique Knowledge" Standard.

The Order also misapplies the legal standard for evaluating Plaintiffs' need to disclose, the other half of the balancing equation. The Order holds that "Given the risk of harm to Defendants, Dr. Zhao must have 'unique knowledge within' the field of AI image generation to review Defendants' materials designated as highly confidential." Order at 4 (citing *Symantec*, 2012 WL 3582974, at *2). But the "unique knowledge" test that the Order invokes derives from a case where the court stated that "[its] ruling is limited to . . . the very specific situation presented by . . . a non-testifying consultant who actively consults with Defendant's competitors." *Symantec*, 2012 WL 3582974, at *3. The present case does not fit within that "very specific situation." *Id.* at *3. Dr. Zhao is not a non-testifying consultant expert; he is a testifying expert who will "elucidate the core technical matters at issue for the . . . Jury." ECF No. 300 at 2. And, as noted above, Dr. Zhao is not actively consulting with Defendants' competitors; he is an academic doing research. Zhao Decl. ¶ 1. The Order's extension of the "unique knowledge"

---

[2] If allowed to stand, the Order would also have disturbing First Amendment implications. Only if Dr. Zhao were to agree to "cease developing" other tools or "cease researching" AI image models would the Court entertain his appointment. Order at 4. But while it might be permissible to prohibit an expert from serving as a private *employee* to a party's competitor, *see GPNE*, 2014 WL 1027948, at *2, it would not be consistent with principles of academic freedom to prohibit an expert from serving as a public *researcher* on important subjects, including research into the approaches online creators might use to protect the use of their work in a manner akin to "digital rights management," also known as DRM.
[3] As a technical note, the Order also seems to improperly conflate Dr. Zhao's research into "adversarial machine learning" with an adversarial stance toward Defendants. Order at 4. It is important to understand that in the context of computer science, "adversarial" is simply a term of art used to describe a foundational technique for training and testing models, not some kind of competitive animus. Indeed, the original research paper describing Defendant Stability's own stable diffusion model emphasized how it was itself trained using an "adversarial objective." *See* https://arxiv.org/pdf/2112.10752 at 3.

standard beyond the "very specific situation" contemplated in *Symantec* is contrary to existing law.

### B. Even If the "Unique Knowledge" Standard Applies, Dr. Zhao Is Unique.

Even if the "unique knowledge" standard applies, Defendants' have attempted to show that there are viable alternatives to Dr. Zhao twice, and both times failed. First, Defendants tried to claim that Plaintiffs' retention of another expert, Mr. Ayyub Ibrahim, proved that Dr. Zhao was not unique. ECF No. 300 at 6. After the Court ordered supplemental briefing on this assertion, this was shown to be false. ECF Nos. 301, 302, 303. Second, Defendants tried to claim that an expert designated in a completely separate case, Dr. Emily Wenger, also proved that Dr. Zhao was not unique. ECF No. 303. But again, after the Court ordered supplemental briefing on this assertion, it was also shown to be false—Dr. Wenger is a student of Dr. Zhao's, *also worked on Glaze and Nightshade*, and would be subject by Defendants to the same stifling restrictions on research if Plaintiffs could even retain her, which they cannot. ECF No. 309.

Without any specificity, the Order also credits "numerous academic papers addressing text-to-image generation" and speculates that Plaintiffs could find another expert "between the hundreds of authors of these papers." Order at 5. But, again, the burden is on Defendants, not Plaintiffs, to show that one of these hypothetical people is similar enough to Dr. Zhao to render him nonunique. A threshold barrier, one not addressed by Judge Cisneros, is that AI companies have used incredibly large offers to lure potential academics into working for them (in which case, they would actually be competitors). As Plaintiffs pointed out, experts in this field are scarce precisely for this reason. ECF Nos. 300, 302.

Defendants have not and cannot identify an alternative who (1) directs a lab at a top university, (2) has a comparable number of publications and citations for image model research, (3) has won TIME-level awards, (4) is not consulting for an actual competitors, (5) is based in the United States and has the ability to testify persuasively in lay terms to an American jury, and (6) is available to serve.

### CONCLUSION

Because the Order's application of the "functional competitor" and "unique knowledge" standards is "contrary to law," and because the Defendants' did not meet their burden under the protective order, Plaintiffs ask that this Court vacate the Order and enter a new order allowing the requested disclosure.

Dated: July 28, 2025

By: */s/ Joshua Michelangelo Stein*

| | |
|---|---|
| Maxwell V. Pritt (SBN 253155) | Joseph R. Saveri (SBN 130064) |
| Joshua Michelangelo Stein (SBN 298856) | Cadio Zirpoli (SBN 179108) |
| Margaux Poueymirou (SBN 356000) | Christopher K.L. Young (SBN 318371) |
| Mariah Joelle Noah (SBN 339658) | Evan Creutz (SBN 349728) |
| **BOIES SCHILLER FLEXNER LLP** | Elissa A. Buchanan (SBN 249996) |
| 44 Montgomery Street | Aaron Cera (SBN 351163) |
| 41st Floor | **JOSEPH SAVERI LAW FIRM, LLP** |
| San Francisco, CA 94104 | 601 California Street, Suite 1505 |
| 415-293-6813 | San Francisco, California 94108 |
| Email: mpritt@bsfllp.com | Telephone: (415) 500-6800 |
| jstein@bsfllp.com | Facsimile: (415) 395-9940 |
| mpoueymirou@bsfllp.com | Email: jsaveri@saverilawfirm.com |
| mnoah@bsfllp.com | czirpoli@saverilawfirm.com |
| | cyoung@saverilawfirm.com |
| | eabuchanan@saverilawfirm.com |
| *Counsel for Individual and Representative Plaintiffs* | ecreutz@saverilawfirm.com |
| *and the Proposed Class* | acera@saverilawfirm.com |
| | |
| | Matthew Butterick (SBN 250953) |
| | 1920 Hillhurst Avenue, #406 |
| | Los Angeles, CA 90027 |
| | Telephone: (323) 968-2632 |
| | Facsimile: (415) 395-9940 |
| | Email: mb@butterickllaw.com |