[Counsel Listed on Signature Pages]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>STABILITY AI LTD., et al.,<br><br>    *Defendants*. | Case No. 3:23-cv-00201-WHO<br><br>**JOINT STATUS REPORT**<br><br>Discovery Conference Date: Sept. 16, 2025<br>Time: 1:30 PM<br>Place: via Zoom<br>Judge: Hon. Lisa J. Cisneros |

I.  **Introduction**

Pursuant to the Court's instructions at the July 15, 2025 Discovery Status Conference (ECF No. 324), Plaintiffs Sarah Andersen, Karla Ortiz, Grzegorz Rutkowski, Gregory Manchess, Gerald Brom, Jingna Zhang, Julia Kaye, and Adam Ellis (collectively, "Plaintiffs"), along with Defendants Stability AI Ltd. and Stability AI, Inc. (together, "Stability AI"), DeviantArt, Inc. ("DeviantArt"), Midjourney, Inc. ("Midjourney"), and Runway AI, Inc. ("Runway") (collectively, the "Parties"), by and through their undersigned counsel, respectfully submit this Joint Status Report in compliance with the Court's August 15, 2025 filing deadline.

II.  **Training Data Production Status**

*Plaintiffs' Position*

**Runway:** Runway represents that it has completed its training data production of LAION-5B data via hard drive. Plaintiffs now have in their possession 5 hard drives from Runway and will review them using methods their experts deem appropriate. Plaintiffs are currently in the process of vetting and retaining machine learning experts for this purpose and will begin their review as soon as possible.

**Midjourney:** Midjourney represents that it has substantially completed its production of LAION-400M and LAION-2B data via the Google Cloud Platform, and has also produced initial installments of that same data via hard drive. Midjourney represents that it will produce all of its training data on hard drives, as Plaintiffs' requested and it agreed. Plaintiffs will review the hard drives' contents in coordination with their experts.

**DeviantArt:** DeviantArt has produced a hard drive containing images used in connection with DreamUp and represents that DeviantArt does not have relevant LAION training data in its possession. Plaintiffs will review the images with expert assistance.

**Stability:** The Parties have met and conferred about the production of training data for several months and are likely at impasse. The core dispute concerns production methodology: Stability has made its data available through an Amazon S3 cloud storage platform, while Plaintiffs have requested production on hard drives. Plaintiffs' request for a hard drive production was made after consultation with their expert who explained that S3 charges for data that is uploaded and downloaded out of the server, and that large-scale data transfer is much slower than hard drive writes. On June 11, 2025,

Plaintiffs asked Stability to confirm whether they would produce this data via hard drives or only through AWS. After Stability failed to respond, Plaintiffs offered to meet and confer on June 16, 2025. Without engaging in that process, Stability unilaterally proceeded with an AWS-only production on June 20, 2025, reserving rights as to associated costs. Under Stability's unilaterally chosen manner of production, the training data is so compressed that the "costs" of decompression and/or transfer for decompression will be unreasonably high. Thus, the costs are not actually borne by Stability as requested as it reserves rights to charge costs related to "operations" on the data.

*Defendants' Positions*

**Runway's Position:** In response to Plaintiffs' requests for training data, Runway produced all of the LAION-5B data (or subsets thereof) in Runway's possession, custody, or control in July. At Plaintiffs' insistence, Runway made this production via hard drives. Runway offered to make this training data available via access to a cloud account that hosts the data. That offer remains open should Plaintiffs elect it. This completes Runway's obligations to produce training data.

**Midjourney's Position:** Midjourney has substantially completed its production of the relevant LAION data by providing Plaintiffs access via the Google Cloud Platform ("GPC"). At Plaintiffs' request, Midjourney is also working diligently to produce this data via hard drive, which has entailed significant technical difficulties and time-intensive efforts. Midjourney has produced three hard drives so far and will produce the remainder to Plaintiffs on a rolling basis. The full set of training data will remain available to Plaintiffs via GCP until Midjourney has completed its production via hard drive (or longer, if Plaintiffs notify Midjourney that they would prefer to maintain GCP access and assume any costs associated with storing and utilizing the data in GCP).

**DeviantArt's Position:** DeviantArt does not have relevant training data, as DeviantArt has not trained an AI image model.

**Stability AI's Position:** Stability AI disagrees with Plaintiffs' characterization of the status of the production of training data. Stability AI has made training data available for inspection and copying on Amazon S3, where it is stored in the ordinary course of business. This satisfies Stability AI's obligations under Rule 34. *See, e.g.*, *Ruiz v. Ed Richard Discing, Inc.*, No. C 07-01593 JF (RS), 2008 WL 1925203, at *2 (N.D. Cal. Apr. 29, 2008) ("Rule 34, by its terms, only authorizes a party to 'inspect,

copy, test, or sample' documents, electronically stored information, or other tangible things, at a 'reasonable time [and] place.' Thus, even though under modern practice a producing party often makes copies, 'bates stamps' them, and transmits them to the demanding party, nothing in the Rules give a demanding party the *right* to receive a production in that fashion, or to shift copying costs to the producing party." (emphasis in original)).

We note that Stability AI first offered to make training data available through Amazon S3 on April 10, 2025, after Plaintiffs noted in meet and confers on February 2 and March 20 that they were not yet in a position to provide a proposal related to training data. Over a month after our April 10 offer, at a May 15, 2025 meet and confer and four days later by email on May 19, 2025, Plaintiffs indicated they were not ready to accept Stability AI's offer, and Stability AI accepted Plaintiffs' request to extend the deadline for production of training data by 30 days, to June 20, 2025. On June 11, 2025, Plaintiffs asked if Stability AI "would produce the relevant data . . . via local HD(s) or other cloud services or if you only agree to make the data available via AWS." On June 16, 2026, Plaintiffs' counsel stated by email:

> I understand that you are offering to "shar[e] *access* to the data available on S3." (emphasis added). Presuming that means that your client will continue to bear the entirety of the costs of the data storage, that would be acceptable to us, and reserving rights as to the issues raised below, we ask that that happen prior to June 20.

Stability AI made training data available for inspection and copying on June 20, 2025. Stability AI has indicated to Plaintiffs that it is indeed paying for storage costs associated with that data, exactly as Plaintiffs requested, but has reserved the right to seek cost sharing with respect to any additional operations Plaintiffs choose to do.

### III.     Custodian and Search Term Negotiations

*Plaintiffs' Position*

**Number of Search Terms:** In the interest of ensuring that relevant, responsive information is captured and produced, the Parties have informally agreed, either explicitly or through their proposals, to exceed the 15 search terms allotted to each party under Section 5.c. of the Stipulated Order Re: Discovery of Electronically Stored Information (ECF No. 275) ("ESI Order"). For example, in a June

25, 2025 letter to Plaintiffs, the joint Defendants proposed that Plaintiffs run 10 composite search strings, containing more than 200 individual search terms, on their documents.

**Runway:** The parties have engaged in productive discussions regarding search terms and custodians and rolling productions are forthcoming. The parties will continue to discuss additional search terms and custodians upon review of forthcoming discovery.

**Midjourney:** Midjourney and Plaintiffs have agreed on six custodians, but two remain in dispute. Plaintiffs have requested as a custodian Midjourney's Head of Hardware, Ahmad Abbas, whom they believe possesses unique, relevant information regarding model architecture, technical implementation, and the handling of copyrighted materials in the training data. Midjourney has refused this custodian, asserting that the individual lacks relevant discoverable information and claiming that any relevant material is already available from other agreed custodians. Plaintiffs are considering Midjourney's position and may seek judicial intervention to include Abbas as a custodian.

Plaintiffs also seek custodial discovery from a member of Midjourney's community management team—pseudonymously known as "Ancient Chaos"—based on evidence that, less than two weeks after this lawsuit was filed, this individual deleted from Midjourney's public GitHub repository a page that expressly encouraged users to include artist names in Midjourney text prompts, a core issue in this case. Plaintiffs are continuing to investigate the circumstances surrounding this deletion. Midjourney opposes inclusion of this custodian, and Plaintiffs will respond after completing their investigation.

Plaintiffs and Midjourney have substantially narrowed their differences regarding search strings for Midjourney's documents and are close to agreement. Negotiations with Midjourney regarding search strings to run on Plaintiffs' documents are progressing through ongoing meet-and-confer discussions.

**DeviantArt:** Plaintiffs have proposed eight search term strings, five of which DeviantArt has accepted. The Parties continue to confer regarding the other three proposed search strings and are close to resolution. Additionally, the parties have made significant progress in negotiating DeviantArt's custodians. However, a potential dispute remains regarding one individual: DeviantArt's former CEO, Angelo Sotira. Plaintiffs have requested Sotira as a custodian because according to his LinkedIn page, he was the CEO until May 2022 and then VP of Community until June 2022. DeviantArt claims that its initial discussions about its "DreamUp" product began in "summer 2022," meaning Sotira is likely to

possesses documents relevant to Plaintiffs' claims. Plaintiffs and DeviantArt continue to confer on this issue, but if they are unable to reach agreement, Plaintiffs may seek judicial intervention.

**Stability:** Stability has proposed 10 search term strings and 5 custodians at present. Plaintiffs are presently reviewing Stability's proposal and intend to respond this week.

*Defendants' Positions*

**Runway's Position:** Runway continues to negotiate search terms that it requests Plaintiffs to run over their custodial data. Beginning in May, Defendants jointly negotiated search terms with Plaintiffs. Building on those negotiations, Runway has since proposed a slate of 14 search strings to Plaintiffs and awaits Plaintiffs' response.

Runway has made significant progress regarding custodians and search terms it will use to identify material responsive to Plaintiffs' requests. Runway has offered six custodians. Runway has run the 10 search strings Plaintiffs requested across four custodians and will do so with the two remaining custodians in the coming weeks.

**Midjourney's Position:** On May 13, 2025, Midjourney proposed six custodians, including its founder and CEO, CFO, and the core managers, researchers and engineers primarily responsible for training and developing Midjourney's models. Plaintiffs have confirmed that these six custodians were also at the top of their list. On July 16, 2025, Plaintiffs requested that Midjourney add six additional custodians, only two of whom remain at issue following a July 17 meet and confer call and a further call and letter on July 24. Although no motion is currently before the Court on this matter, Midjourney briefly responds here as to why neither should be added as a custodian.

<u>Ahmad Abbas</u>. Plaintiffs' arguments for adding Mr. Abbas, Midjourney's Head of Hardware, are that he may have been "in the room" for discussions about model development, and hardware and software development go "hand in hand." However, as Midjourney explained, Mr. Abbas has had no involvement in training or developing Midjourney models or the development of hardware for that purpose; he joined Midjourney in late 2023 (months after this suit was filed); and his documents would, at most, be duplicative of agreed-upon custodians who were directly involved in the activities at issue.

<u>"Ancient Chaos."</u> Plaintiffs argue that "Ancient Chaos," a member of Midjourney's community management team that publicly interfaces with Midjourney users, is relevant because he allegedly

deleted from Midjourney's public GitHub repository a page that encouraged users to include artist names in Midjourney text prompts. But as Midjourney explained and Plaintiffs are aware, the page was, in fact, **not** deleted, but simply moved to a different location on Midjourney's GitHub repository, where it remains available and where Plaintiffs had no trouble recently finding it. Plaintiffs have articulated no other reason for including Ancient Chaos as a custodian, and any tangentially relevant knowledge or documents he may have would be duplicative of other agreed upon custodians.

Although Midjourney maintains its objections to adding these two custodians, it is willing to further meet and confer with Plaintiffs once they have completed their above-mentioned investigation.

With regard to search terms, Midjourney and Plaintiffs have agreed on 12 composite search strings that Midjourney is currently using to review its relevant custodial data, and are meeting and conferring regarding additional terms requested by Plaintiffs. When expanders are considered, these terms greatly exceed the 15 allotted to each party under Section 5.c. of the ESI Order. Nevertheless, in the interest of ensuring that relevant, responsive information is captured and produced, and based on the assurance that Plaintiffs will provide like accommodation as needed, Midjourney has voluntarily agreed to run all of these terms across its 6 relevant custodians.

Midjourney has also proposed a slate of 7–9 initial search strings for each of the eight Plaintiffs to use to review their custodial data. Plaintiffs have agreed to 5 of these terms, and the parties are in the process of meeting and conferring on the remainder.

Except as specifically described by Midjourney above, Midjourney has not agreed to any other modification to the ESI Order or its limitations on search terms.

**DeviantArt's Position:** DeviantArt reasonably agreed to use five of the broad search term strings proposed by Plaintiffs, which result in tens of thousands of documents to review. DeviantArt maintains that three additional search strings Plaintiffs proposed are unnecessary and unduly burdensome given the other broad search terms to which DeviantArt agreed, Plaintiffs' failure to provide a satisfactory explanation regarding the necessity of these search strings in relation to Plaintiffs' requests for production, and the scope of Plaintiffs' claims against DeviantArt in the operative complaint. However, DeviantArt is willing to continue to meet and confer with Plaintiffs in an effort to reach compromise.

In custodian negotiations, DeviantArt agreed to add an additional custodian requested by Plaintiffs. However, DeviantArt has not agreed to add Angelo Sotira as a custodian, given that he stepped down as CEO before DreamUp was developed or released. Moreover, DeviantArt agreed to use DeviantArt's current CEO (who was the immediate successor to Mr. Sotira), Chief Technology Officer, Chief Revenue Officer, and Head of Artificial Intelligence as custodians, making it highly unlikely that Mr. Sotira would possess any non-duplicative, responsive documents.

**Stability AI's Position:** Stability AI proposed 10 search strings and 5 custodians on July 9, 2025. Stability AI looks forward to Plaintiffs' response.

**All Defendants' Position:** Defendants disagree with Plaintiffs' method for counting the search terms that Defendants have requested, including in the July 25 letter Plaintiffs cite.

## IV. Written Discovery Progress and Meet-and-Confer Status

*Plaintiffs' Position*

All Defendants have responded to Plaintiffs' First Set of Requests for Production, and the Parties have made substantial progress on resolving numerous disputes and clarifying production obligations. Some issues remain under discussion and may require Court involvement if agreement cannot be reached. For example, Plaintiffs are awaiting DeviantArt's final positions on at least two requests for production, including Plaintiffs' request for DeviantArt's source code for DreamUp.

Plaintiffs' Second Set of Requests for Production has been served on Stability, DeviantArt, and Midjourney, with responses pending from all three Defendants. Runway has not yet been served with the Second Set and will be served forthwith. Plaintiffs' Third Set of Requests for Production has been served on Midjourney, with responses pending. The remaining Defendants have not yet been served with the Third Set and will be served forthwith.

All Defendants have responded to Plaintiffs' First Set of Interrogatories, and the Parties are conferring about objections and potential supplementation, focusing on information about model development, training dataset composition, and user guidance. Plaintiffs' Second Set of Interrogatories has been served on DeviantArt and Midjourney, with responses pending from both Defendants. Runway and Stability have not yet been served with the Second Set and will be served forthwith. Plaintiffs' Third

Set of Interrogatories has been served on DeviantArt, with responses pending. The remaining Defendants will be served forthwith.

Plaintiffs' First Set of Requests for Admission has been served on DeviantArt and Midjourney, with responses pending from both defendants. Runway and Stability have not yet been served with the First Set and will be served forthwith.

Additionally, Plaintiffs have responded to and conferred with Defendants regarding requests for production and interrogatories from Runway, Midjourney, and the joint Defendants.

*Defendants' Positions*

**Runway's Position:** Runway has made significant progress in responding to Plaintiffs' numerous requests for production since discovery began. Runway produced documents to Plaintiffs on July 11 and August 14 and will continue to produce rolling batches of documents in the coming weeks. Runway has also offered to produce source code for Stable Diffusion 1.5 and Stable Diffusion 1.5 Inpainting, but Plaintiffs have not responded to Runway's offer.

**Midjourney's Position:** In addition to the training data discussed above, Midjourney produced documents to Plaintiffs on June 20 and July 14, and is in the process of reviewing other documents for production, including documents that hit on the agreed-upon search terms. Midjourney will continue producing relevant, responsive documents on a rolling basis. Midjourney and Plaintiffs continue to meet and confer regarding Plaintiffs' other written discovery requests, as well as Midjourney's document requests and interrogatories to Plaintiffs. Midjourney anticipates motion practice may be necessary with respect to certain of its discovery requests, including interrogatories and document requests aimed at identifying Plaintiffs' alleged trade dress. Midjourney continues to discuss these issues with Plaintiffs and will raise any disputes with the Court via joint letter brief if they cannot be resolved.

**DeviantArt's Position:** DeviantArt has timely responded to all written discovery requests served by Plaintiffs.

**Stability AI's Position:** Stability AI first produced documents responsive to Plaintiffs' requests on May 29, 2025, and intends to continue rolling productions. Stability AI is currently preparing responses and objections to Plaintiffs' Second Set of Requests for Production.

**All Defendants' Position:** Defendants anticipate motion practice related to Plaintiffs' responses to at least one interrogatory Defendants jointly served, which concerns the factual bases for Plaintiffs' allegations of harm. Defendants continue to meet and confer regarding additional deficiencies in Plaintiffs' interrogatory responses and will follow the Court's joint-letter brief procedure if judicial intervention is necessary.

**V.    Expert Discovery and Specialized Matters**

On July 28, 2025, Plaintiffs filed a Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge (ECF 316) pursuant to Local Rule 72-2. *See* ECF No. 325. The Motion addresses the Court's Order granting Defendants' request that any information designated as "ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" not be disclosed to Plaintiffs' proposed machine learning expert, Dr. Benjamin Zhao. Defendants have filed their opposition, *see* ECF No. 331, and the motion is under submission.

**VI.    Corporate Representative Depositions**

*Plaintiffs' Position*

The Parties have just begun substantive document production as they work to finalize custodians and search terms, though they already have exchanged certain "go get" materials that did not require custodial searches. Plaintiffs anticipate serving Rule 30(b)(6) deposition notices only after substantial document production has occurred, to ensure depositions proceed with the benefit of a developed factual record. Effective and efficient corporate representative depositions will particularly depend on Plaintiffs' receipt, processing, and expert analysis of training data in a usable format.

*Defendants' Position*

Defendants are committed to completing proportionate Rule 30(b)(6) depositions within the schedule set by the Court.

**VII.    Outstanding Disputes That May Require Judicial Intervention**

*Plaintiffs' Position*

Although the Parties continue to confer on many unresolved issues, Plaintiffs currently anticipate that three matters in particular may require the Court's assistance, as described above: (1) the method of Stability's training data production; (2) whether Midjourney's Head of Hardware and/or "Ancient

Chaos" should be custodians; and (3) whether DeviantArt's former CEO, Angelo Sotira, should be a custodian.

*Defendants' Position*

Defendants currently anticipate motion practice related to Plaintiffs' responses to at least one interrogatory Defendants jointly served, which concerns the factual bases for Plaintiffs' allegations of harm. Midjourney also anticipates motion practice relating to Plaintiffs' responses to its discovery requests, including the proper identification of Plaintiffs' alleged trade dress and any outputs from Midjourney's models that Plaintiffs contend infringe their purported trade dress. Defendants will work with Plaintiffs in good faith to resolve as many other open issues as possible in the hope of keeping discovery motion practice to a minimum.

**VIII. Case Management and Scheduling Considerations**

*Plaintiffs' Position*

The Parties have made significant progress despite the complexity of this highly technical litigation. Broadly speaking, they have methodically addressed coordination challenges across Defendants with different technological architectures, business models, and data storage methods. While these accomplishments demonstrate meaningful advancement toward discovery objectives, substantial work remains before completing all discovery within the current schedule. If the Parties are unable to resolve it promptly, the pending dispute regarding the format for production of Stability's training data may interpose delay. Additionally, while the Parties continue to negotiate in good faith, emerging disputes regarding search term scope, document review methodology, and custodian designations may create time pressure later in discovery. Nevertheless, the structured framework now in place creates an efficient foundation for completing remaining discovery tasks, and Plaintiffs anticipate adhering to the Court's scheduling order absent currently unforeseen complications.

Defendants' request below for a September 3, 2025 cutoff for serving Requests for Production should be denied. *First,* Defendants claim an early cutoff would give parties "sufficient notice" of collection and production obligations and prevent burdens from late requests. In fact, in a case of this technical complexity, meaningful requests can only be crafted after reviewing already-produced material. Plaintiffs are still receiving core datasets, technical documentation, and custodial ESI—

productions measured in terabytes that demand expert analysis to identify additional discovery. Imposing such a deadline before that review is complete would foreclose Plaintiffs' access to critical evidence necessary to prove their claims. **Second,** Defendants contend that a September 3 deadline is needed to avoid disruption to agreed custodians, search terms, and parameters. But in complex litigation, those agreements are necessarily iterative and may require adjustment as new evidence emerges. Locking the process at an early stage would freeze discovery parameters before the evidentiary record is fully developed, preventing necessary refinements and risking an incomplete production. **Third,** Defendants claim that an early deadline will facilitate timely depositions. The existing October 3 substantial completion date already serves that purpose. Depositions are most productive when informed by a full evidentiary record. Limiting new requests to a month earlier risks excluding critical documents from production, leaving gaps in deposition preparation. **Fourth**, Defendants' suggestion that Parties can seek leave for additional requests after September 3 contradicts their efficiency argument. If compelling discovery needs will arise from document review—a possibility Defendants acknowledge— their deadline creates unnecessary motion practice rather than preventing it. This would generate more judicial intervention and costs than allowing natural discovery progression through the existing October 3 deadline.

Defendants can object to any genuinely burdensome or irrelevant late request under Rule 26. Imposing a September 3 cutoff would arbitrarily choke off discovery and tilt the process in favor of the parties who control most of the relevant evidence. The Court should deny Defendants' request.

**Defendants' Position**

Defendants respectfully request that the Court set a deadline of September 3, 2025, for serving Requests for Production on parties in advance of the October 3, 2025, deadline for substantial completion of document discovery. Defendants respectfully further request that any such deadline permit the parties to seek leave to serve additional Requests should a compelling need arise after the deadline, *e.g.*, due to newly discovered evidence.

Defendants are committed to resolving this case in an efficient manner, and imposing a deadline will conserve all parties' and this Court's resources for multiple reasons. **First**, a deadline will ensure that all parties have sufficient notice of their collection and production obligations. If parties make late

requests, it will impose unnecessary and undue burdens on responding parties to potentially re-collect and re-review material. Negotiations related to Plaintiffs' existing requests for production, which were voluminous, took months to complete, and further belated requests risk disruptions to the custodians, search terms, and other parameters on which the parties already agreed. **Second**, a deadline will ensure depositions can be scheduled and taken promptly. In addition, the parties will be able to make most efficient use of deposition time if they can rely upon substantially complete document productions. **Third**, a deadline will keep the case on track for the close of fact discovery. This case involves multiple defendants, each of whom are differently situated, and eight Plaintiffs who each assert unique registered works. Interim discovery deadlines, like this one, will help guide the parties and ensure discovery is timely and efficiently completed. **Fourth**, Defendants' request still permits the parties to seek leave to serve additional Requests for Production after the deadline if newly discovered evidence reveals a compelling need. Plaintiffs' concerns that the deadline would prejudice their ability to review material they have already sought are thus misplaced and unpersuasive.

Thus, Defendants respectfully request that the Court amend the Scheduling Order to provide that all Requests for Production must be served by September 3, 2025, which is one month before document discovery must be substantially complete, absent a compelling need.

## IX. Immediate Priorities and Projected Timeline

*Plaintiffs' Position*

In the next 30 days, Plaintiffs will work with Stability to facilitate, or to seek Court guidance on, Stability's production of training data, proceed with the review of training data already produced, finalize custodian and search term agreements, and continue working to resolve written discovery disputes. These steps will inform preparations for the September 16, 2025 status conference.

*Defendants' Position*

In the next 30 days, Defendants will work with Plaintiffs to resolve remaining issues related to production of training data, endeavor to conclude negotiations regarding custodians and search terms, and continue their document productions. Defendants will also continue working with Plaintiffs to resolve outstanding issues with Plaintiffs' responses to document requests and interrogatories, and/or to raise those issues to the Court if intervention is required.

## X. Conclusion

The parties remain committed to efficient, cooperative case management while protecting their respective interests. Progress has been made on several fronts, but certain disputes may require the Court's guidance if they cannot be resolved through continued discussions. While the Parties are not seeking the Court's intervention at this time, they anticipate that in the near future they may present discrete issues for resolution to maintain momentum. The Parties respectfully request the Court's continued oversight and guidance as this complex case proceeds.

Dated: August 15, 2025                                Respectfully submitted,

By: /s/ Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com

David Boies (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200
Email: dboies@bsfllp.com

Maxwell V. Pritt (SBN 253155)
Joshua M. Stein (SBN 298856)

|   |   |
|---|---|
| 1 | Margaux Poueymirou (SBN 35600) |
|   | Reed D. Forbush (SBN 347964) |
| 2 | Mariah J. Noah (SBN 339658) |
|   | **BOIES SCHILLER FLEXNER LLP** |
| 3 | 44 Montgomery Street, 41st Floor |
|   | San Francisco, CA 94104 |
| 4 | (415) 293-6800 |
|   | Email: mpritt@bsfllp.com |
| 5 | Email: jstein@bsfllp.com |
|   | Email: mpoueymirou@bsfllp.com |
| 6 | Email: rforbush@bsfllp.com |
| 7 | Email: mnoah@bsfllp.com |

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: August 15, 2025                Respectfully Submitted,

By: */s/ Brittany N. Lovejoy*

Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
Brittany N. Lovejoy (SBN 286813)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: andrew.gass@lw.com
michael.rubin@lw.com
brittany.lovejoy@lw.com

Sarah F. Mitchell (SBN 308467)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: sarah.mitchell@lw.com

*Counsel for Defendant DeviantArt, Inc.*

| | |
|---|---|
| Dated: August 15, 2025 | Respectfully Submitted, |
| | By: */s/ Aditya Vijay Kamdar* |
| | Joseph Charles Gratz (SBN 240676)<br>Tiffany Cheung (SBN 211497)<br>Timothy Chen Saulsbury (SBN 281434)<br>**MORRISON & FOERSTER LLP**<br>425 Market Street<br>San Francisco, California 94105<br>Telephone: (415) 268-7000<br>Email: jgratz@mofo.com<br>tcheung@mofo.com<br>tsaulsbury@mofo.com |
| | Christopher R. Adler (SBN 324567)<br>**MORRISON & FOERSTER LLP**<br>707 Wilshire Boulevard, Suite 6000<br>Los Angeles, CA 90017-3543<br>Telephone: (213) 892-5200<br>Email: cadler@mofo.com |
| | Aditya Vijay Kamdar (SBN 324567)<br>**MORRISON & FOERSTER LLP**<br>2100 L Street NW, Suite 900<br>Washington, DC 20037<br>Telephone: (202) 887-1500<br>Email: akamdar@mofo.com |
| | Mark Alan Lemley (SBN 155830)<br>**LEX LUMINA PLLC**<br>745 Fifth Avenue, Suite 500<br>New York, NY 10151<br>Telephone: (646) 906-8657<br>Email: mlemley@lex-lumina.com |
| | *Counsel for Defendants Stability AI Ltd. And Stability AI, Inc.* |
| Dated: August 15, 2025 | Respectfully Submitted, |
| | By: */s/ Angela Dunning* |
| | Angela Dunning (SBN 212047)<br>Sam Blankenship (SBN 339905)<br>**CLEARY GOTTLIEB STEEN & HAMILTON LLP**<br>1841 Page Mill Road, Suite 250<br>Palo Alto, CA 94304-1248 |

Telephone: (650) 815-4131
Email: adunning@cgsh.com
sblankenship@cgsh.com

Arminda B. Bepko (pro hac vice)
Charity E. Lee (pro hac vice)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: abepko@cgsh.com
charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

Dated: August 15, 2025            Respectfully Submitted,

By: */s/ David J. Silbert*

David J. Silbert (SBN 173128)
Paven Malhotra (SBN 258429)
Bailey W. Heaps (SBN 295870)
Julia L. Greenberg (SBN 333864)
Luke P. Apfeld (SBN 327029)
**KEKER VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Email: dsilbert@keker.com
pmalhotra@keker.com
bheaps@keker.com
jgreenberg@keker.com
lapfeld@keker.com

*Counsel for Defendant Runway AI, Inc*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: August 15, 2025                                         */s/ Joseph R. Saveri*
                                                                                    Joseph R. Saveri