December 3, 2025

**<u>Via ECF</u>**

The Honorable Lisa J. Cisneros
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom G – 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

      Re:    *Andersen, et al v. Stability AI Ltd*., Case No: 3:23-cv-00201-WHO (LJC)

Dear Judge Cisneros,

      Pursuant to Section F(5) of the Court's Civil Standing Order for Magistrate Judge Lisa J. Cisneros, Plaintiffs and Defendant DeviantArt, Inc. ("DA") respectfully submit this joint statement regarding the dispute over the addition of four DeviantArt document custodians. Fact discovery closes on March 13, 2026. Class certification and summary judgment has been set for November 4, 2026. Trial has been set for April 5, 2027. Counsel have met and conferred but remain at impasse.

**[REDACTED]**

**Plaintiffs' Position**: Plaintiffs respectfully seek an order requiring DA to designate four key percipient witnesses as custodians: (1) Niran Lamay (Product Lead); (2) Nikolay Surovenko (Machine Learning Engineer); (3) Robert Woolfson (Head of Data); and (4) Sasha Lerner (Vice President of Engineering), for a total number of eight DA custodians.[1]

Plaintiffs' request is well within the limits the parties and the Court contemplated at the outset of discovery. Pursuant to the ESI Order, "A Requesting Party may request up to twelve custodians per Producing Party[,]" and "[t]he Court shall consider contested requests for additional custodians, based upon a showing of proportionality to the needs of the case as that Phrase is used in Rule 26 of the Federal Rules of Civil Procedure." ESI Order, ECF No. 275, at 2–3. Thus, the ESI Order entitles each party to twelve custodians as of right, with proportionality applying only to custodian thirteen and beyond.[2] *See* ESI Order, at 3. DA's reading flips that structure and makes it so the parties must justify every custodian that is not part of the original designations. That is not so.

Even if proportionality were required within the twelve-custodian allowance—which the ESI Order does not say—these four easily satisfy it.

First, the issues at stake in this case are of vital importance. This case concerns a proposed class of potentially millions of artists whose works were stolen to create a nascent commercial product. Second, the amount in controversy is well within the billions of dollars. *See, e.g.*, *Perez v. Indian Harbor Ins. Co.*, Case No. 19-cv-07288-YGR, ECF No. 61 (Jul. 27, 2020) ("Plaintiff is suing for $267 million, so lifting the cap of 10 depositions is proportional to the needs of the case."); *see also Bartz v. Anthropic PBC*, Case No. 3:24-cv-05417, ECF No. 427 (Sept. 25, 2025) (preliminarily approving a $1.5 billion settlement in a case involving copyright infringement by an AI model). Third, the requested discovery is uniquely in DA's possession and goes to the heart of the disputed issues in this case. Plaintiffs' claim challenges DA's *use of Stable Diffusion*, including dataset provenance, prompting behavior, commercialization, and market impact—not just DreamUp's technical design, as DA contends. As demonstrated by the evidence presented below, Plaintiffs selected these custodians because DA's own documents show they handled the core issues in dispute.

<u>Niran Lamay</u>. DA's documents show Lamay directly participated in DreamUp discussions on dataset selection, prompting behavior (including name-prompting like "Rutkowski"), model behavior, and commercialization. DA's documents show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* DEVIANTART-000130 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); DEVIANTART-000135 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). He is also part of discussions in which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," which is relevant to investigating the purpose and character of DreamUp under fair use factor one. DEVIANTART-000139; 17 U.S.C. § 107(1).

---

[1] DeviantArt has previously designated the following custodians: (1) Moti Levy (Chief Executive Officer), (2) Chris Nell (Chief Technology Officer), (3) Peter Gorniak (Head of Artificial Intelligence), and (4) Liat Karpel (Chief Revenue Officer).

[2] *Mosaic* rejects rigid "unique-documents-only" tests where technical complexity and scale justify broader custodian lists. *See In re Mosaic LLM Litigation*, 3:24-cv-01451-CRB, ECF No. 187 (N.D. Cal., Nov. 10, 2025).

Lamay demonstrates intimate familiarity with DA's AI and DreamUp work. *See* DEVIANTART-002273; DEVIANTART-002275 (showing ██████████). DA's documents also indicate that ██████████ DEVIANTART-000013. ██████████. *Id.* These materials confirm Lamay handled issues central to Plaintiffs' claims, including how DreamUp used artist identifiers, how its prompting and dataset choices shaped outputs, and how DA positioned DreamUp commercially. *See also* DEVIANTART-000159 (containing Lamay's analysis of ██████████).

Nikolay Surovenko. DA's own documents place Surovenko in the core technical workflow: LAION-based training runs, CLIP model development, scanning practices, and internal recognition of AI output competing with artists' work. DA claims Surovenko "did not work on DreamUp," but DA's own documents show his CLIP work shaped DreamUp's prompt steering and output behavior. *See, e.g.*, DEVIANTART-000315 (██████████); DEVIANTART-002260 (██████████); *see also* DeviantArt's Responses to Plaintiffs' Interrogatory No. 6 ("██████████"). These documents show he worked on exactly the ██████████ topics DA itself identifies as central to this case. *See* DEVIANTART-002252 (██████████); DEVIANTART-000132 (██████████); DEVIANTART-000130 (██████████); DEVIANTART-000135 ██████████); DEVIANTART-000068 ("██████████"). Surovenko's custodial files contain documents on how DreamUp and the CLIP model works, what datasets were used, and how to scrape images for use in training data—issues that are central to this case.

Robert Woolfson. Woolfson ██████████. DEVIANTART-000498. He also ██████████ DEVIANTART-000498. Similarly, ██████████. DEVIANTART-000482. Woolfson's custodial files contain documents on issues with DreamUp, use of artists' names, and how DA responded to AI art. Indeed, his documents speak to the purpose and character of DreamUp as well as its market impact, *see* 17 U.S.C. § 107(1); (4), and these materials regarding DreamUp were circulated to existing custodians, disproving DA's argument that Woolfson's documents are irrelevant.

Sasha Lerner. Lerner ██████████. *See* DEVIANTART-000482 ("██████████"). He also ██████████ DEVIANTART-000177. Lerner's documents demonstrate his role in discussing AI-driven market substitution and DreamUp pricing and packaging. Lerner's own statements show he engaged with DreamUp's commercial strategy

3

and anticipated AI-driven market substitution—issues DA cannot dismiss as "UI" related. The circulation of his analyses to DA leadership underscores they relied on his assessments of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DA tries to argue that witnesses should not be custodians on the basis that they are junior employees who reported to the currently designated custodians. But the current list of custodians is fully comprised of C-suite executives (*see* n.1) who may not be as intimately involved with the day-to-day operations of the development of DreamUp and the CLIP model.[3] It is often common for employees to communicate with peers at their level without including senior employees in their communications—communications Plaintiffs would not have since Plaintiffs do not have these custodians' documents.

DA's proposed "compromise"—adding Woolfson and Lerner while insisting both are irrelevant—expose its core contradiction. DA cannot claim the four witnesses "did not work on DreamUp" while also insisting their files are "duplicative" of DreamUp custodians. Those positions cannot coexist. DA's willingness to add Woolfson and Lerner, despite denying their relevance, underscores the relevance of all four custodians.

**Plaintiffs' Final Proposed Compromise**. DA's selective offer to add two custodians it simultaneously labels irrelevant underscores the flaw in its position: if their files have enough DreamUp content to justify production, the same is true for Lamay and Surovenko. The Court should order DA to designate Niran Lamay, Nikolay Surovenko, Robert Woolfson, and Sasha Lerner as document custodians.

**DeviantArt's Position**: DeviantArt, established in 2000, is an online community for artists. In 2022, DA launched DreamUp, an image generator powered by the Stable Diffusion AI model. The only claim against DA is that DreamUp's use of the Stable Diffusion model infringes copyrighted works used to train Stable Diffusion. *See* Compl. ¶¶ 387-392; *see also* Dkt. No. 223 (Order Granting in Part Motion to Dismiss) at 28 ("The FAC alleges only that DeviantArt incorporates and relies on Stable Diffusion for its DreamUp product."). Plaintiffs do not allege that DA played any role in Stable Diffusion's training, dataset selection, or development.

Because Plaintiffs' claims are about DreamUp, DA named custodians most likely to have relevant knowledge about DreamUp: Moti Levy (CEO, responsible for DreamUp strategic and business decisions); Chris Nell (Chief Technology Officer, DreamUp product design); Peter Gorniak (Head of Artificial Intelligence, DreamUp engineering); and Liat Karpel (Chief Revenue Officer, DreamUp marketing). In accordance with its obligations, DA has reviewed tens of thousands of documents from these custodians, and produced the responsive documents.

Yet Plaintiffs now seek more, despite failing to identify any deficiencies in DA's productions.[4] This request should be denied. The standard for compelling custodians beyond those already designated is whether the new custodians are relevant and proportional to the needs of the case. *Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, at *1 (N.D. Cal. Dec. 3, 2015). One proportionality consideration is whether the additional custodians are likely to possess "uniquely relevant information that is not available from the sources already designated." *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213 (N.D. Cal. Nov. 14, 2021); *see also*

---

[3] This likely explains why DA's production is so thin. To date, DA has produced 428 documents.
[4] Plaintiffs claim DA's production is "thin," but have ignored numerous requests to identify any specific deficiencies. In any case, DA has not yet completed its document productions.

*Dairy, LLC v. Milk Moovement, Inc.*, 2023 WL 5620733, at *3 (E.D. Cal. Jan. 31, 2023) (denying additional custodian whose documents "are not relevant and, to the extent they are relevant, duplicative of [existing custodian] documents."). To succeed on a motion to compel, the moving party "bears the burden of demonstrating that it is entitled to the requested discovery and has satisfied the proportionality and other requirements of Rule 26." *Rodriguez v. Barrita, Inc.*, 2011 WL 5854397, at *2 (N.D. Cal. Nov. 21, 2011).[5]

      Plaintiffs' request to add additional custodians should be denied because three of the four new individuals did not work on DreamUp design, training, development, commercialization, or any other aspects relevant to the claim against DA, and the fourth is duplicative and cumulative of information already possessed by existing custodians. Further, Plaintiffs' claim that DA's custodians lacked day-to-day involvement in DreamUp is untrue and refuted by the very documents Plaintiffs cite, which show extensive input from the existing custodians.

      Nikolay Surovenko was an engineer at DA who did not work on DreamUp. He is thus unlikely to possess documents relevant to the claim against DA, which is about DreamUp. In any event, his work was supervised by Gorniak, who is already a custodian, so his substantive work will already be represented in custodial documents.

      Plaintiffs claim Surovenko was "in the core technical workflow," but misidentify *which* workflow; despite their insistence, Surovenko's documents show his involvement in other DA projects, or even more broadly, general comments on AI—but *not* DreamUp, which is the sole product at issue. DEVIANTART-000315 dates from before DreamUp development even began, and in DEVIANTART-002260 Surovenko ███████████████████████████████ ██████████████. █████████████████████████████████████████████████████████████, and neither of these documents' references to "CLIP" is in connection with DreamUp. Plaintiffs' other citations are even further afield, involving general commentary on AI issues of interest to the digital art world. *See* DEVIANTART-000068 (████████████████████████████████████████████); DEVIANTART-000130 (████████████████████████████████████████████); DEVIANTART-000132 (████████████████████████████████████████████████████████████); DEVIANTART-000135 (████████████████████████████████████████); and DEVIANTART-002252 (████████████████████████████████████████████████████████████████). Plaintiffs' references to "training data" and "scraping" are particularly irrelevant, given the Court's finding that "Plaintiffs admit that DeviantArt played no role in the scraping or training" of Stable Diffusion's data, the only AI model at issue. *See* Dkt. No. 223 at 31. Tellingly, despite the phrase "DreamUp" or its close equivalents appearing in about 1/3 of all documents produced to date by DeviantArt, Plaintiffs do not point to a single "DreamUp" reference attributable to Surovenko. This is not surprising for someone who did not work on DreamUp.

      Robert Woolfson analyzes data for DA. In his role, he mainly assesses metrics such as user engagement, art submission trends, and other similar KPIs used for business analysis. He did not

---

[5] Plaintiffs misleadingly cite to sources modifying limits on the *number* of custodians, which is not at issue here. *See supra*, citing ESI Order (process for requesting more than 12 custodians); *In re Mosaic LLM Litigation*, 3:24-cv-01451-CRB, ECF No. 187 (N.D. Cal., Nov. 10, 2025) (expanding cap on the number of depositions). But these sources say nothing about the appropriateness of requesting *particular* custodians. As is generally true for discovery, requests for irrelevant or cumulative information are beyond the scope. *See* Rule 26(b)(1); (2)(C)(i).

work on DreamUp design, development, or commercialization, and any assessment of DreamUp post-launch has been occasional and shared with existing custodians.

Plaintiffs' cited documents do not establish the need to collect Woolfson's custodial files. DEVIANTART-000498 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, but, notably, involves existing custodians Levy, Karpel, and Gorniak. It also includes Woolfson's personal thoughts ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, but this is not relevant because DA is not alleged to be and was not involved in Stable Diffusion's training. And DEVIANTART-000482 is a Slack conversation involving all four current custodians ▆▆▆▆▆▆▆▆ ▆▆▆▆▆. This conversation is not relevant because it is not about DreamUp, which had yet to be released. In any case, Woolfson minimally contributes to the conversation, adding approximately 50 total words over the course of 12 pages. Woolfson's files are thus unlikely to contain DreamUp information beyond what the existing custodians already have. Any specific DreamUp data requests can also be more efficiently obtained through targeted collections.

Sasha Lerner is an engineer whose responsibilities for DreamUp are limited to technical UI and website deployment, and do not include development, training, design, business decisions, or market assessment. His files are therefore not relevant to the claims in this case.

Plaintiffs cite two documents to argue that Lerner should be an additional custodian, but neither is persuasive. DEVIANTART-000482 is a Slack thread where Lerner ▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Lerner was not involved in the decision to launch DreamUp, nor assessment of its market impact, so ad hoc comments about ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ do not justify making him a custodian. Plaintiffs also cite to DEVIANTART-000177 as evidence that Lerner has information about DreamUp's commercial nature and market impact. But Lerner's only involvement in this thread was technical, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ are not relevant to commercial strategy or market impact, despite Plaintiffs' assertion to the contrary.

Niran Lamay had a non-technical role in DreamUp product development, where he reported to custodians Karpel and Nell. Contrary to Plaintiffs' assertion, he did not work on DreamUp dataset selection or prompting/model behavior. Lamay is unlikely to have significant relevant documents about DreamUp that are not already within Karpel and Nell's custodial files.

Plaintiffs' citations do not establish otherwise. DEVIANTART-000130 and DEVIANTART-000135 are ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Similarly, Plaintiffs point to DEVIANTART-002273 and DEVIANTART-002275 as evidence of Lamay's "AI and DreamUp work," but cite only to a presentation about "AI." DEVIANTART-000139 and DEVIANTART-000159 are ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, primarily involve the more senior people who led DreamUp, and who are already named custodians. And DEVIANTART-000013 is comments by others about Lamay's *personal* views on AI, including his personal use of DreamUp, which is all outside his scope of work.

**DA's Final Proposed Compromise**: For the reasons explained above, DA maintains that it should not be compelled to add the four additional custodians. Nonetheless, as a compromise DA has and still offers to provide just Robert Woolfson and Sasha Lerner as custodians due to their tangential work with DreamUp and relatively senior status, particularly with search strings and timeframes narrowed to their DreamUp work.

6

| | |
|---|---|
| Dated: December 3, 2025 | Respectfully Submitted, |
| | By: */s/ Joseph R. Saveri* |

        Joseph R. Saveri (SBN 130064)
        Cadio Zirpoli (SBN 179108)
        Christopher K.L. Young (SBN 318371)
        Alexandra Fernandez (SBN 330518)
        Evan Creutz (SBN 349728)
        Elissa A. Buchanan (SBN 249996)
        Holden Benon (SBN 325847)
        Aaron Cera (SBN 351163)
        Alexander Zeng (SBN 360220)
        **JOSEPH SAVERI LAW FIRM, LLP**
        601 California Street, Suite 1505
        San Francisco, California 94108
        Telephone: (415) 500-6800
        Facsimile: (415) 395-9940
        jsaveri@saverilawfirm.com
        czirpoli@saverilawfirm.com
        cyoung@saverilawfirm.com
        afernandez@saverilawfirm.com
        ecreutz@saverilawfirm.com
        eabuchanan@saverilawfirm.com
        hbenon@saverilawfirm.com
        acera@saverilawfirm.com
        azeng@saverilawfirm.com

        Matthew Butterick (State Bar No. 250953)
        1920 Hillhurst Avenue, #406
        Los Angeles, CA 90027
        Telephone: (323) 968-2632
        Facsimile: (415) 395-9940
        Email:  mb@butterick100.com

        *Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: December 3, 2025

Respectfully Submitted,

By: */s/ Brittany N. Lovejoy*

Brittany N. Lovejoy (SBN 286813)
Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
brittany.lovejoy@lw.com
andrew.gass@lw.com
michael.rubin@lw.com

Simeon Botwinick (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C., 20004
Telephone: (202) 637-2200
simeon.botwinick@lw.com

*Counsel for Defendant DeviantArt, Inc.*

## SIGNATURE ATTESTATION

      I, Joseph R. Saveri, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the other signatory.

Dated: December 3, 2025

By: */s/ Joseph R. Saveri*
      Joseph R. Saveri