December 17, 2025

**VIA EMAIL**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
San Francisco Courthouse
Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

    Re: *Andersen et al. v. Stability AI Ltd., et al.*, 3:23-cv-00201-WHO (LJC)

Dear Magistrate Judge Cisneros:

Pursuant to ¶ F(5) of Your Honor's Standing Order and ¶ 7.4 of the Stipulated Protective Order, Plaintiffs Sarah Andersen, Gerald Brom, Julia Kaye, Karla Ortiz, and Grzegorz Rutkowski and Defendant Midjourney, Inc. respectfully submit this joint letter brief regarding their dispute over the sufficiency of Plaintiffs' responses to Midjourney's Interrogatories 1–4, along with the exhibits appended to the Declaration of Angela Dunning filed herewith. The parties met and conferred on these Interrogatories on August 5, August 14, and December 10, 2025, but the parties remain at an impasse. Fact discovery closes on March 13, 2026; motions for class certification and summary judgment are due on November 4, 2026, and trial has been set for April 5, 2027.

0

## Midjourney's Position

Served nearly a year ago, on January 31, 2025, Midjourney's Interrogatories 1–4 are directed to the basic facts underlying Plaintiffs' claims for false endorsement and trade dress infringement. After multiple rounds of meet and confer, Plaintiffs served amended and supplemental responses on November 11, 2025. But those responses continue to obfuscate as to the most basic information Midjourney needs to defend itself, including identification of the specific elements comprising Plaintiffs' alleged trade dress, the works they claim embody those elements, facts supporting their claim that their dress has acquired secondary meaning, and the specific outputs or uses, if any, they are accusing as infringing. In many instances, Plaintiffs say they are still "investigating" these issues, even though the information requested is solely in their possession. Given the upcoming close of fact discovery and the depositions that need to be completed before then, Midjourney can wait no longer for the answers to which it is entitled. As set forth more fully below, Plaintiffs should be ordered to provide full and complete responses to Interrogatories 1–4 within 10 days, or else be precluded from later offering evidence currently in their possession to support these claims.

**Plaintiffs' Alleged Trade Dress (Interrogatory 2):** Trade dress plaintiffs must provide a "complete recitation of the concrete elements of their alleged trade dress." *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 767–68 (N.D. Cal. 2021); *EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*, 284 F. Supp. 3d 1065, 1074 (E.D. Cal. 2018), *aff'd*, 765 F. App'x 323 (9th Cir. 2019). Interrogatory 2 asks Plaintiffs to identify "all concrete elements" comprising their trade dress and all of their asserted works they contend embodies it—information solely in their possession.

In response, Plaintiffs improperly objected on the ground that Midjourney's request for "all" concrete elements is "overbroad and disproportionate" and calls for expert opinion, and provided lists of general themes rather than the precise elements their claimed trade dress includes.[1] For example, Brom's response claims his trade dress is characterized by a "[d]ark fantasy and mythological aesthetic," "psychological intensity," and "painterly surfaces and fine detail." Ortiz claims to use "[m]uted, limited color palettes" but does not identify any specific colors. *See Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007) ("plaintiff should list the actual colors rather than claim a 'palette of colors reminiscent of Provence'"). Rutkowski lists "detailed costume and environmental design rooted in historical and mythological reference," leaving no way to understand what specifically he (or any Plaintiff) is referring to.

Plaintiffs point to SAC Exs. A and C as providing "illustrative examples" of their trade dress, but this does not help. SAC Ex. C shows no images, and many of the images in Ex. A do not appear to feature the elements Plaintiffs listed. For example, Andersen claims her trade dress includes "black and white line drawings with minimal or no shading," yet many of her images in Ex. A are in color or include full shading. *See* Dunning Ex. 2 at 4–6 (SAC Ex. A at 95, 99, 108). Is her trade dress limited to black and white or not? Require shading or not? Rutkowski claims his trade dress includes "[e]pic fantasy and mythological themes featuring knights, dragons, beasts and other heroic figures," but several of his images in Ex. A contain no such things. *See id.* at 2, 3 (SAC Ex. A at 26, 29) (modern cargo boat in water with mountains; boy in hat sitting on dock). Plaintiffs' omnibus citation to Ex. A (without specific page numbers) thus obscures, rather than clarifies, the elements they are claiming. In any event, pointing to representative examples of images is "insufficient." *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 999 (9th Cir. 2025) ("merely providing photographs of some products and partial descriptions is insufficient"). Their own cited case makes

---

[1] Unless otherwise stated, all quoted content comes from Dunning Ex. 1.

the point. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001) (affirming summary judgment for defendant and stating: "trade dress of works that are decorative or artistic may be harder to capture in words, and may need descriptions more broadly framed, or may need drawings; *but the party seeking protection must nonetheless be able to point to the elements and features that distinguish its trade dress*"). Plaintiffs' other cases stand for the same proposition— that the precise elements must be identified. *See Benefit Cosms. LLC v. E.L.F. Cosms., Inc.*, 2023 WL 4409104, at *4 (N.D. Cal. July 7, 2023) (description must "clearly define[] the boundaries of the trade dress"); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 77 (S.D.N.Y. 2009) ("[M]erely pointing to pictures of a product line will not suffice. The elements specified as the trade dress must be present in every item in that product line …."). Plaintiffs fail to satisfy this basic requirement.

Worse yet, each Plaintiff's amended responses contain multiple, conflicting elements. Andersen's amended response to Interrogatory 2 lists five elements, her amended responses to Interrogatories 3 and 4 list only four, and *all of these are different from each other and from what is pleaded in the SAC.* In meet and confer, Plaintiffs have refused to say which list is complete, or even whether *all* elements must be present, or merely some subset (and which one). Even within the elements, Plaintiffs refuse to be nailed down. *See, e.g.*, Andersen ("*often* a striped shirt"); Ortiz (unidentified "elements that carry narrative or allegorical meaning"; "use of traditional oil painting, graphite techniques, and *occasionally* digital work"). Midjourney cannot defend against a moving target.

What Midjourney seeks is simple: a list of all specific, identifiable elements that Plaintiffs contend comprise their trade dress and must be present to infringe it, and a complete list of their works in Exhibit A (or otherwise) that they claim features that trade dress. This is not information Plaintiffs can withhold and provide through experts after discovery closes. Plaintiffs alone know what their claimed trade dress consists of, and they should be ordered to identify it now so that the target is fixed.

**Infringement Evidence (Interrogatories 1 and 3):** These interrogatories ask Plaintiffs to provide the evidence on which they base their claims for false endorsement and trade dress infringement, including any outputs they accuse as infringing. In response to both, Plaintiffs refer to "publicly displayed outputs" that "mimic[]" or "clearly imitate" Plaintiff's distinctive style" or "reproduce" their trade dress, but then cite only generally to the "Artist Style Studies" referenced in SAC ¶ 205 and to "Midjourney's public 'Showcase' gallery, *without identifying a single image* they are accusing. This is inexplicable, as Plaintiffs bear the burden to prove that Midjourney is using their names or trade dress in U.S. commerce in a manner "likely to cause confusion" as to source or sponsorship. 15 U.S.C. § 1125(a). Contrary to Plaintiffs' assertion, Midjourney does not ask them to identify images in Midjourney's possession; just the "publicly displayed" images (whether from the Showcase, Artist Style Studies, or other public locations such as Midjourney's website and Discord channel) that they admittedly have access to and claim to have been "actively" reviewing. Likewise, Rutkowski claims that "[r]eports and public data indicate Plaintiff's name has been invoked hundreds of thousands of times in user prompts—more than any other artist—reinforcing a widespread public association between his name and Midjourney's image-generation tool," but does not provide any information about those reports or outputs or cite to a single document where information about them might be found, as required under Rule 33(d).

It is not sufficient for Plaintiffs to point to "[r]epresentative examples" of alleged infringement in the form of images in SAC Ex. F (which Plaintiffs, themselves, made). If those are the only images Plaintiffs are accusing, they should say so. Otherwise, Plaintiffs should be required to respond to these interrogatories in full, including identifying by URL or Bates number all "publicly displayed" Midjourney outputs they are accusing and the requested information in their possession

about those outputs and any purported consumer confusion they have engendered, or be precluded from offering this evidence against Midjourney at summary judgment or at trial.

**Secondary Meaning (Interrogatory 4):** A "product design cannot be protected under [Lanham Act] § 43(a) without a showing of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000). Secondary meaning exists where a design's "primary significance, in the minds of the public, is to identify the product's source rather than the product itself." *Id.* at 211. Interrogatory 4 seeks the evidence Plaintiffs intend to rely upon to support their claim that their unregistered trade dress possesses secondary meaning, including for each geography in which Plaintiffs claim common law rights information about their advertising and marketing efforts, sales and revenue, how long they have used the alleged trade dress, and any other facts and evidence they intend to rely on. Plaintiffs admit their supplemental responses are deficient, stating that they "*will produce* responsive financial, sales, and marketing documents … and will supplement … as additional data, including expert analysis, becomes available through discovery." But all this information is already in Plaintiffs' possession, they do not need "discovery" to provide it, and they have refused to say when they will supplement or to identify *any* documents under FRCP 33(d) from which the requested information can be determined. Nor do they provide any detail or cite to any documents regarding the generalized media coverage, consumer demand, industry recognition, and social media following they claim. After nearly a year, they should be ordered to provide this information to Midjourney or be precluded from introducing such evidence later.

**Plaintiffs' Position**

**Trade Dress Descriptions (Interrogatory 2):** Plaintiffs have already supplemented their responses to Interrogatory 2 with written descriptions of their trade dress. Midjourney argues that Plaintiffs' supplemental responses to Interrogatory 2 are inadequate, relying exclusively on decisions analyzing the adequacy of trade dress descriptions at the summary judgment or motion to dismiss stage.[2] But the parties are not currently briefing summary judgment; they are engaged in a discovery dispute.

Midjourney ignores the specific body of case law governing trade dress descriptions for artistic works, such as those at issue here. Specifically, Courts recognize that the visual nature of artistic works "may be harder to capture in words" and consequently "may need descriptions more broadly framed, or may need drawings; but the party seeking protection must nonetheless be able to point to the elements and features that distinguish its trade dress." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001); *see also Benefit Cosms. LLC v. E.L.F. Cosms., Inc.*, 2023 WL 4409104, at *4 (N.D. Cal. July 7, 2023) ("[T]he trade dress claim is limited to the features of the design articulated in the written description, **with the product image serving as a visual aid in depicting how the elements come together to form the claimed trade dress**.") (bolding added; cleaned up); *R.F.M.A.S., Inc. v. Mimi So*, 619 F. Supp. 2d 39, 78 (S.D.N.Y. 2009) ("[W]hen a product line's trade dress involves a higher degree of decorative or artistic elements,

---

[2] *EZ Pedo* 284 F. Supp. 3d at 1074 (analyzing issues on summary judgment); *Walker & Zanger*, 549 F. Supp. 2d at 1176 (analyzing issues on summary judgment); *YZ Prods.*, 545 F. Supp. 3d at 767–68 (in analyzing motion to dismiss, requiring trade dress plaintiffs "to provide adequate notice by including in their complaint a complete recitation of the concrete elements of their alleged trade dress.") (cleaned up).

3

the plaintiff may rely more heavily on pictures of the trade dress or on broader descriptions, as long as the plaintiff ultimately points to the distinctive elements.").

Plaintiffs' responses point to the elements that distinguish their trade dress, precisely what the *Yurman* and *Benefit* cases require. Consistent with those authorities, Plaintiffs' responses also explicitly incorporate the images contained in exhibits attached to the Second Amended Complaint ("SAC"), which, in addition to their written descriptions, describe the trade dress in Plaintiffs' artworks. The SAC exhibits are labeled by author and allow Midjourney to ascertain exactly which images pertain to each Plaintiff. *See generally* ECF No. 238-1. While Midjourney points to specific examples that it claims falls outside the written descriptions, as if every work must contain every element, this is a factual dispute regarding the merits of the claim—an issue for summary judgment or trial—not a basis to compel further response.

Midjourney truncates a key finding from the *R.F.M.A.S.* decision. The quoted language states in full: "[t]he elements specified as the trade dress must be present in every item ***in that product line; while minor variations are acceptable, the overall look*** must be consistent across all items of the claimed ***product line***." *R.F.M.A.S.*, 619 F. Supp. 2d at 77 (emphasis added). The distinction is important: none of the individual Plaintiffs claim all of their Asserted Works belong to the same product line, and any minor variations in the trade dress is not defeating.

And despite Midjourney's attempt to twist the language in *Benefit*, the court there did *not* impose a standard that a written description "must" clearly define the trade dress boundaries; the court simply made a factual observation about the sufficiency of the *Benefit* plaintiff's descriptions on a motion to dismiss. *Benefit*, 2023 WL 4409104 at *4.

Midjourney's contention that Plaintiffs' responses contain "conflicting lists" is meritless. Plaintiffs provided responses tailored to the specific phrasing of the individual interrogatories served by Midjourney. The trade dress descriptions are almost entirely overlapping nonetheless, with Plaintiffs' response to Interrogatory 2 being the most comprehensive. *See, e.g.*, Exh. 1, pgs. 8-10, 17-18, 24-26. There are no conflicts between the trade dress descriptions in Interrogatories 2, 3, and 4. Midjourney is claiming conflict where none exists.

*Final Proposal:* The Court should find Plaintiffs' current supplemental responses to Interrogatory 2 to be sufficient.

**Midjourney Outputs (Interrogatories 1 and 3):** Midjourney demands identification of specific images by URL or Bates number while withholding the prompt logs, user data, and metadata necessary to conduct that identification. A complete catalogue of every infringing output requires analysis of prompt-output pairs that remain in Midjourney's exclusive possession. Plaintiffs cannot be faulted for incomplete identification when the necessary data has not been produced.

Midjourney dismisses Exhibit F because Plaintiffs generated those images. This misses the point. Exhibit F demonstrates that Midjourney's tools, when prompted with Plaintiffs' names, produce outputs embodying Plaintiffs' trade dress elements—directly relevant evidence of capability and likelihood of confusion.

Plaintiffs have identified evidence presently known: Exhibit F, the Artist Style Studies (SAC ¶ 205), and Midjourney's public Showcase. Exhibit F provides representative evidence of Midjourney's capability to produce infringing outputs. Plaintiffs are not required to elect between representative evidence and further identification through ongoing discovery. Plaintiffs' responses satisfy Rule 33.

4

*Final Proposal:* Plaintiffs will continue to supplement pursuant to Rule 26(e) as discovery proceeds.

**Interrogatory 4 (Secondary Meaning):** Plaintiffs' supplemental interrogatory responses to Interrogatory 4 are thorough and reflect as much information as Plaintiffs should be required to provide, considering Rule 26 proportionality and factors courts in the Ninth Circuit consider in determining whether secondary meaning exists. Courts assess secondary meaning through factors such as exclusivity, length of use, advertising, sales, and established place in the market.[3] Plaintiffs have addressed these factors by pointing to the specific works, timelines, and recognition that define their careers. As the following example summaries demonstrate, Plaintiffs responses satisfy Rule 33.

Plaintiff Andersen's supplemental response provides the exclusive use of her "Sarah's Scribbles" character and trade dress since 2011 in published works and merchandise. Exh. 1, p. 25. She identifies the number of her social media followers as being in the millions of users since 2012 (*id.*)—a figure equally accessible to Midjourney. She further supports her claim by citing her translated international collections, including *Adulthood Is a Myth* (2016), *Big Happy Mushy Lump* (2017), *and Herding Cats* (2018). *Id.* at 26. Regarding media coverage, she points to features in major outlets like *The Washington Post. Id.* Regarding sales and revenue, she confirms that specific financial and marketing documents are being produced in the regular course of discovery. *Id.*

Similarly, Plaintiff Brom's supplemental response provides a comprehensive factual basis for secondary meaning. He identifies the continuous and exclusive use of his "gothic-fantasy" trade dress since approximately 1989. *Id.* at 27. He details the global exposure of his style through foundational work as the principal visual designer for TSR's Dungeons & Dragons: *Dark Sun* campaign, as well as his illustrated novels *The Child Thief* (2001) and *Krampus, the Yule Lord* (2018). *Id.* He further cites objective metrics of industry recognition, including the Spectrum Fantastic Art Grand Master Award and the Chelsea Award for Lifetime Artistic Achievement. *Id.* at 27-28. Like Andersen, he confirms that granular data regarding sales, royalties, and specific income figures will be provided through the ongoing production of financial and business records. *Id.* at 28.

Finally, "proof of intentional copying" is another factor in the secondary meaning analysis. *P & P Imports*, 46 F.4th 953 at 961. Evidence regarding this factor—specifically, whether Midjourney deliberately engineered its models to exploit Plaintiffs' established trade dress—is exclusively within Midjourney's possession. Plaintiffs are effectively precluded from detailing evidence on this factor until Midjourney produces the very evidence it now demands.

*Final Proposal:* Plaintiffs responses are sufficient. No further order is required.

---

[3] *See P & P Imports LLC v. Johnson Enters., LLC*, 46 F.4th 953, 961 (9th Cir. 2022) ("We assess many factors to determine whether secondary meaning exists, including: direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant.") (cleaned up).

Dated: December 17, 2025

By: */s/ Angela L. Dunning*
 Angela L. Dunning
 Sam Blankenship
 **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
 1841 Page Mill Road, Suite 250
 Palo Alto, CA 94304-1248
 Telephone: (650) 815-4131
 Email: adunning@cgsh.com
   sblankenship@cgsh.com

 Arminda B. Bepko
 Charity E. Lee
 **CLEARY GOTTLIEB STEEN & HAMILTON LLP**
 One Liberty Plaza
 New York, NY 10006
 Telephone: (212) 225-2517
 Email: abepko@cgsh.com
   charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Alexandra Fernandez (SBN 330518)
Holden Benon (SBN 325847)
Elissa A. Buchanan (SBN 249996)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
   czirpoli@saverilawfirm.com
   cyoung@saverilawfirm.com
   ecreutz@saverilawfirm.com
   afernandez@saverilawfirm.com
   hbenon@saverilawfirm.com
   eabuchanan@saverilawfirm.com
   acera@saverilawfirm.com
   azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email:  mb@buttericklaw.com

Maxwell Pritt (SBN 253155)
Joshua Stein (SBN 298856)
Margaux Poueymirou (SBN 356000)
Mariah Joelle Noah (SBN 339658**)**
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street
41st Floor
San Francisco, CA 94104
415-293-6813
Email: mpritt@bsfllp.com
   jstein@bsfllp.com
    mpoueymirou@bsfllp.com

                mnoah@bsfllp.com

                Brian D. Clark (*pro hac vice*)
                Laura M. Matson (*pro hac vice*)
                Arielle Wagner (*pro hac vice*)
                **LOCKRIDGE GRINDAL NAUEN PLLP**
                100 Washington Avenue South, Suite 2200
                Minneapolis, MN 55401
                Telephone: (612)339-6900
                Facsimile: (612)339-0981
                Email: bdclark@locklaw.com
                        lmmatson@locklaw.com
                        aswagner@locklaw.com

                *Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: December 17, 2025                                        */s/ Angela L. Dunning*
                                                                                Angela L. Dunning