# EXHIBIT 1

## MIDJOURNEY'S FIRST SET OF INTERROGATORIES

Midjourney's motion to compel is directed to Interrogatory Nos. 1–4, served on Plaintiffs Sarah Andersen, Gerald Brom, Julia Kaye, Karla Ortiz, and Grzegorz Rutkowski. Pursuant to Paragraph 5 of the Civil Standing Order for Magistrate judge Lisa J. Cisneros, the following sets out the text of each at-issue interrogatory, followed by each Plaintiffs' responses in full.

### INTERROGATORY NO. 1:

IDENTIFY all evidence upon which YOU base YOUR contention that Midjourney's use of YOUR name "created a likelihood of confusion over whether YOU actually endorsed MIDJOURNEY TOOLS, and over the affiliation, connection, or association that YOU might have with Midjourney," as alleged in paragraph 299 of the COMPLAINT.

### ANDERSEN RESPONSE TO INTERROGATORY NO. 1:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all evidence." Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds that the evidence supporting the likelihood of confusion claim includes, but is not limited to: Midjourney's unauthorized inclusion of Plaintiff's name in its published "Midjourney Name List" containing over 4,700 artist names; Midjourney's active promotion of this list for commercial purposes; the demonstrable output of the Midjourney Image Product when prompted with Plaintiff's name, producing images that distinctively mimic her "Sarah's Scribbles" style (as documented in Exhibit F); and Midjourney's public "Showcase" gallery featuring images generated using artist names, including Plaintiff's, which creates the false impression of endorsement, association, or authorization where none exists. Plaintiff reserves the right to supplement this response following discovery.

### ANDERSEN AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory is a premature contention interrogatory because discovery and expert analysis are ongoing. Plaintiff also objects that the demand for "all evidence" exceeds the scope of Rule 33. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, the following facts presently known support Plaintiff's contention that Midjourney's use of her name and promotion of "Sarah Andersen–style" outputs created a likelihood of confusion as to endorsement, affiliation, and association:

- **Unauthorized use of Plaintiff's name.**

Midjourney included "Sarah Andersen" in its published *Midjourney Style List*—a

1

spreadsheet of more than 4,700 artist names circulated to users to encourage them to prompt Midjourney's image-generation tool with those artists' names. *See* ECF No. 238-10 at 20.

- **Active promotion by Midjourney's founder.**

    Midjourney CEO David Holz publicly posted the *Style List* on the Midjourney Discord server with the caption "here is our style list," linking directly to the spreadsheet and inviting users to employ the listed artist names, including Plaintiff's, to generate images. ECF No. 238 ¶ 254.

- **Outputs mimicking Plaintiff's distinctive style.**

    When users prompt the Midjourney Image Product with Plaintiff's name, the resulting outputs reproduce the distinctive visual elements of her *Sarah's Scribbles* works, including the protagonist's large eyes, striped shirt, simple backgrounds, and handwritten text. Representative examples appear in Exhibit F to the Second Amended Complaint. ECF No. 238-6 at 7, 13 (images generated from the prompts "sarah andersen chef" and "sarah andersen teacher").

- **Public display in Midjourney's "Showcase" gallery.**

    Midjourney's public "Showcase" gallery features images generated with artist-name prompts, including Plaintiff's.  Plaintiffs are actively identifying specific Showcase images generated with such prompts, which further contribute to public confusion regarding endorsement or association.  Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Actual and potential confusion.**

    Plaintiff has not been personally contacted by anyone expressing confusion between her work and AI-generated images.  She has, however, seen AI-generated images created using her name as part of the prompt that imitate her distinctive artistic style and circulate online.  While certain of these images resemble her genuine artwork, Plaintiff is not aware of anyone who has actually mistaken them for her own work.  She did not retain records of these instances when they appeared.

    Plaintiff's investigation continues, and she will supplement this response under Rule 26(e) as additional information becomes available through discovery.

**BROM RESPONSE TO INTERROGATORY 1:**

Plaintiff incorporates the General Objections as if stated fully herein.  Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control.  *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985).  Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all evidence."  Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds that the evidence supporting the likelihood of confusion claim includes, but is not limited to: Midjourney's unauthorized inclusion of Plaintiff's name in its published "Midjourney Name List" containing over 4,700 artist names; Midjourney's active promotion of this list for commercial purposes; the demonstrable output of the Midjourney Image Product when prompted with Plaintiff's name and images, producing images that distinctively mimic his style (as documented in Exhibits F and I); and Midjourney's public "Showcase" gallery featuring images generated using artist names, including Plaintiff's, which creates the false impression of endorsement, association, or authorization where none exists. Plaintiff reserves the right to supplement this response following discovery.

**BROM AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff incorporates his General Objections. Plaintiff objects that this Interrogatory is a premature contention interrogatory because discovery and expert analysis are ongoing. Plaintiff also objects that the demand for "all evidence" exceeds the scope of Rule 33. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, the following facts presently known support Plaintiff's contention that Midjourney's conduct created a likelihood of confusion as to endorsement, affiliation, and association:

- **Unauthorized use of Plaintiff's name.**

  Midjourney included "Gerald Brom" in its published *Midjourney Style List*—a spreadsheet of more than 4,700 artist names circulated to users to encourage them to prompt the Midjourney Image Product with those artists' names. ECF No. 238-10 at 20.

- **Active promotion by Midjourney's founder.**

  Midjourney CEO David Holz publicly posted the Style List on the Midjourney Discord server with the caption "here is our style list," linking directly to the spreadsheet and inviting users to employ the listed artist names—including Plaintiff's—to generate images. Holz's post was visible to Midjourney's large user community and expressly tied the list to Midjourney's commercial product. ECF No. 238 ¶ 254.

- **Outputs mimicking Plaintiff's distinctive style.**

  When users prompt the Midjourney Image Product with Plaintiff's name—for example, "Gerald brom fantasy painting," "brom dark art," or similar combinations—the resulting outputs reproduce the distinctive visual characteristics of Plaintiff's gothic fantasy art, including chiaroscuro lighting, pale skin tones, intricate rendering of mythic and demonic figures, and a dark, surreal atmosphere. Representative examples appear in Exhibit I to the Second Amended Complaint (ECF No. 238-9 at 2-4).

- **Public display in Midjourney's "Showcase" gallery.**

  Midjourney's public Showcase gallery features images generated with artist-name prompts, including prompts using Plaintiff's name. Plaintiffs are actively identifying specific Showcase images generated with such prompts, which further contribute to public confusion regarding endorsement or association. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Actual and potential confusion.**

   Plaintiff has not been contacted directly by anyone expressing confusion.  However, he has seen online posts showing examples of his artwork alongside AI-generated images that viewers appeared to confuse with his actual paintings.  He has also seen AI-generated images created in his style that people have mistaken for his work.  Plaintiff did not document these occurrences at the time they appeared.

   Plaintiff's investigation continues.  He will supplement this response under Rule 26(e) as additional information becomes available through discovery, including documents and data in Midjourney's exclusive possession.

## KAYE RESPONSE TO INTERROGATORY 1:

   Plaintiff incorporates the General Objections as if stated fully herein.  Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control.  *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985).  Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all evidence."  Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product.  Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections.  In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

   Without waiving these objections, Plaintiff responds that the evidence supporting the likelihood of confusion claim includes, but is not limited to: Midjourney's unauthorized inclusion of Plaintiff's name in its published "Midjourney Name List" containing over 4,700 artist names; Midjourney's active promotion of this list for commercial purposes; and the demonstrable output of the Midjourney Image Product when prompted with Plaintiff's name, producing images that distinctively mimic her style (as documented in Exhibits I), all of which create the false impression of endorsement, association, or authorization where none exists.  Plaintiff reserves the right to supplement this response following discovery.

## KAYE AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

   Plaintiff incorporates her General Objections.  Plaintiff objects that this Interrogatory is a premature contention interrogatory because discovery and expert analysis are ongoing.  Plaintiff also objects that the demand for "all evidence" exceeds the scope of Rule 33.  Subject to and without waiving these objections, Plaintiff responds as follows:

   Based on the investigation completed to date, the following facts presently known support Plaintiff's contention that Midjourney's conduct created a likelihood of confusion as to endorsement, affiliation, and association:

- **Unauthorized use of Plaintiff's name.**

   Midjourney included "Julia Kaye" in its published *Midjourney Style List*—a spreadsheet of more than 4,700 artist names circulated to users to encourage them to prompt Midjourney's image- generation tool with those artists' names. ECF No. 238-10 at 20.

- **Active promotion by Midjourney's founder.**

   Midjourney CEO David Holz publicly posted the Style List on the Midjourney Discord

4

server with the caption "here is our style list," linking directly to the spreadsheet and inviting users to employ the listed artist names, including Plaintiff's, to generate images. ECF No. 238 ¶ 254.

- **Outputs mimicking Plaintiff's distinctive style publicly displayed in Midjourney's "Showcase" gallery.**

    When users prompt the Midjourney Image Product with Plaintiff's name, the resulting outputs reproduce the distinctive visual elements of her *Super Late Bloomer* comic works, including her signature black-and-white line art, expressive self-portrait character, and intimate narrative style. Midjourney's public "Showcase" gallery features images generated with artist-name prompts, including Plaintiff's. Plaintiffs are actively identifying specific Showcase images generated with such prompts, which further contribute to public confusion regarding endorsement or association. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Actual and potential confusion.**

    Plaintiff has not been contacted directly by anyone expressing confusion. However, she has seen online posts showing examples of her artwork alongside AI-generated images that viewers appeared to confuse with her actual illustrations. She has also seen AI-generated images created in her style that people have mistaken for her work. Plaintiff did not document these occurrences at the time they appeared. Plaintiff's investigation continues, and they will supplement this response under Rule 26(e) as additional information becomes available through discovery.

### ORTIZ RESPONSE TO INTERROGATORY NO. 1:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all evidence." Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds that the evidence supporting the likelihood of confusion claim includes, but is not limited to: Midjourney's unauthorized inclusion of Plaintiff's name in its published "Midjourney Name List" containing over 4,700 artist names; the use Plaintiff's name in user image prompts over 2,000 times; Midjourney's active promotion of this list for commercial purposes; and the demonstrable output of the Midjourney Image Product when prompted with Plaintiff's images, producing images that distinctively mimic her style (as documented in Exhibit I), all of which create the false impression of endorsement, association, or authorization where none exists. Plaintiff reserves the right to supplement this response following discovery.

ORTIZ AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory is a premature contention interrogatory because discovery and expert analysis are ongoing. Plaintiff also objects that the demand for "all evidence" exceeds the scope of Rule 33. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, the following facts presently known support Plaintiff's contention that Midjourney's use of her name and promotion of "Karla Ortiz–style" outputs created a likelihood of confusion as to endorsement, affiliation, and association:

- **Unauthorized use of Plaintiff's name.**

   Midjourney included "Karla Ortiz" in its published Midjourney Style List—a spreadsheet of more than 4,700 artist names circulated to users to encourage them to prompt the Midjourney Image Product with those artists' names. ECF No. 238-10 at 20.

- **Active promotion by Midjourney's founder.**

   Midjourney CEO David Holz publicly posted the Style List on the Midjourney Discord server with the caption "here is our style list," linking directly to the spreadsheet and inviting users to employ the listed artist names—including Plaintiff's—to generate images. Holz's post was visible to Midjourney's large user community and expressly tied the list to Midjourney's commercial product. ECF No. 238 ¶ 254.

- **Outputs mimicking Plaintiff's distinctive style.**

   When users prompt the Midjourney Image Product with Plaintiff's name—for example, "karla ortiz portrait," "karla ortiz fantasy painting," or similar combinations—the resulting outputs reproduce distinctive visual characteristics of Plaintiff's fine-art style, including her chiaroscuro lighting, classical composition, realistic rendering of human figures, and symbolic motifs such as animals and skulls. Representative examples appear in Exhibit I to the Second Amended Complaint (ECF No. 238-9 at 15-18).

- **Public display in Midjourney's "Showcase" gallery.**

   Midjourney's public "Showcase" gallery features images generated with artist-name prompts, including prompts using Plaintiff's name. Plaintiffs are actively identifying specific Showcase images generated with such prompts, which further contribute to public confusion regarding endorsement or association. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Actual and potential confusion.**

   Plaintiff has not been personally contacted by anyone expressing confusion between her work and AI-generated images. She has, however, seen AI-generated images created using her name as part of the prompt that imitate her distinctive artistic style and circulate online. While certain of these images resemble her genuine artwork, Plaintiff is not aware of anyone who has actually mistaken them for her own work. To the extent she has any documents reflecting such instances, she will produce them in discovery.

Plaintiff's investigation continues.  She will supplement this response under Rule 26(e) as additional information becomes available through discovery, including documents and data in Midjourney's exclusive possession.

<u>R<span style="font-variant:small-caps">UTKOWSKI</span> R<span style="font-variant:small-caps">ESPONSE TO</span> I<span style="font-variant:small-caps">NTERROGATORY</span> N<span style="font-variant:small-caps">O.</span> 1:</u>

Plaintiff incorporates the General Objections as if stated fully herein.  Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control.  *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985).  Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all evidence."  Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product.  Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections.  In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds that the evidence supporting the likelihood of confusion claim includes, but is not limited to: Midjourney's unauthorized inclusion of Plaintiff's name in its published "Midjourney Name List" containing over 4,700 artist names; the use of Plaintiff's name in over 100,000 Midjourney image prompts, making him, upon information and belief, the most prompted artist on Midjourney; Midjourney's active promotion of this list for commercial purposes; and the demonstrable output of the Midjourney Image Product when prompted with Plaintiff's images, producing images that distinctively mimic his style (as documented in Exhibit I), all of which create the false impression of endorsement, association, or authorization where none exists.  Plaintiff reserves the right to supplement this response following discovery.

<u>R<span style="font-variant:small-caps">UTKOWSKI</span> A<span style="font-variant:small-caps">MENDED AND</span> S<span style="font-variant:small-caps">UPPLEMENTAL</span> R<span style="font-variant:small-caps">ESPONSE</span> T<span style="font-variant:small-caps">O</span> I<span style="font-variant:small-caps">NTERROGATORY</span> N<span style="font-variant:small-caps">O.</span> 1:</u>

Plaintiff incorporates his General Objections.  Plaintiff objects that this Interrogatory is a premature contention interrogatory because discovery and expert analysis are ongoing.  Plaintiff also objects that the demand for "all evidence" exceeds the scope of Rule 33. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, the following facts presently known support Plaintiff's contention that Midjourney's conduct created a likelihood of confusion as to endorsement, affiliation, and association:

- **Unauthorized use of Plaintiff's name.**

Midjourney included "Grzegorz Rutkowski" in its published Midjourney Style List—a spreadsheet of more than 4,700 artist names circulated to users to encourage them to prompt the Midjourney Image Product with those artists' names. ECF No. 238-10 at 20.

- **Active promotion by Midjourney's founder.**

Midjourney CEO David Holz publicly posted the Style List on the Midjourney Discord server with the caption "here is our style list," linking directly to the spreadsheet and inviting users to employ the listed artist names—including Plaintiff's—to generate images. Holz's post was visible to Midjourney's large user community and expressly tied the list to Midjourney's commercial product. ECF No. 238 ¶ 254.

- **Extraordinary frequency of use.**

  Since publication of the Style List, Plaintiff's name has become one of the most frequently used artist prompts on Midjourney. Reports and public data indicate Plaintiff's name has been invoked hundreds of thousands of times in user prompts—more than any other artist—reinforcing a widespread public association between his name and Midjourney's image-generation tool.

- **Outputs mimicking Plaintiff's distinctive style.**

  When users prompt the Midjourney Image Product with Plaintiff's name—for example, "Grzegorz rutkowski fantasy landscape" or "grzegorz rutkowski digital painting"—the resulting outputs reproduce the distinctive artistic characteristics of Plaintiff's fantasy works, including painterly realism, dramatic lighting, epic compositions, and medieval themes rendered in his recognizable digital oil-painting style. Representative examples appear in Exhibit I to the Second Amended Complaint (ECF No. 238-9 at 7-8).

- **Public display in Midjourney's "Showcase" gallery.**

  Midjourney's public Showcase gallery features images generated with artist-name prompts, including prompts using Plaintiff's name. Plaintiffs are actively identifying specific Showcase images generated with such prompts, which further contribute to public confusion regarding endorsement or association. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Actual and potential confusion.**

  Members of the public have contacted Plaintiff referencing AI-generated images labeled with his name or described as being in his style, expressing uncertainty as to whether he collaborated with, authorized, or endorsed Midjourney. To the extent any such communications are documented, Plaintiffs are identifying them and will supplement this response with specific examples as they are located, consistent with the obligations of Federal Rule of Civil Procedure 26(e).

Plaintiff's investigation continues. He will supplement this response under Rule 26(e) as additional information becomes available through discovery, including documents and data in Midjourney's exclusive possession.

<u>INTERROGATORY NO. 2:</u>

IDENTIFY and DESCRIBE in detail YOUR alleged trade dress, including all concrete elements comprising YOUR trade dress, when YOU allegedly first began using each such element in YOUR work, whether YOU claim to have originated each such element, whether YOU claim exclusive rights to use each such element of YOUR trade dress (alone or in combination with other elements), and each of YOUR ASSERTED WORKS that YOU contend embodies the individual elements or combination of elements that YOU contend constitute YOUR protected trade dress.

<u>ANDERSEN RESPONSE TO INTERROGATORY NO. 2:</u>

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this contention Interrogatory as premature, overbroad, and unduly burdensome at this stage of

discovery, as it seeks detailed analysis of trade dress that necessarily requires expert testimony, which is not yet complete under the Court's scheduling order. Plaintiff objects to this Interrogatory to the extent it seeks information duplicative of Plaintiff's copyright registration documentation and allegations in the Complaint. Plaintiffs also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case. Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's protected trade dress includes her distinctive "Sarah's Scribbles" comic style, characterized by: (1) black and white line drawings with minimal or no shading, (2) a recurring female protagonist with exaggerated facial expressions, large eyes, and often wearing a striped shirt, (3) simple backgrounds with emphasis on the character's emotions, and (4) distinctive handwritten text incorporated into panels. Ms. Andersen began using this combination of elements in 2011 when creating "Sarah's Scribbles," and while individual elements may appear in other works, the specific combination constitutes Ms. Andersen's distinctive and recognizable artistic identity. This trade dress appears in her registered works as identified in Exhibit C to the Complaint, as well as the works identified in Exhibit A that were improperly included in the LAION- 5B dataset. Plaintiff reserves the right to supplement this response following discovery.

<u>ANDERSEN AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:</u>

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory seeks premature expert opinions and detailed factual analysis beyond what is presently possible before completion of discovery. Plaintiff further objects that the demand for "all" concrete elements and exhaustive historical information is overbroad and disproportionate. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's trade dress consists of the distinctive combination of visual elements that define her *Sarah's Scribbles* comic works and make them immediately recognizable to consumers as originating from her. These elements include:

- Black-and-white line drawings with minimal or no shading.

- A recurring female protagonist characterized by exaggerated facial expressions, large eyes, a black, spiky bob haircut, and often a striped shirt.

- Simple or blank backgrounds that emphasize the character's emotional expression and comedic tone.

- Distinctive handwritten lettering incorporated into panels as dialogue or narration.

- Consistent visual tone combining self-deprecating humor, introspection, and relatable everyday themes rendered in a minimalist comic format.

None of these elements serves any functional purpose in the comic medium; rather, they represent Plaintiff's distinctive artistic choices that set her work apart in the marketplace. The overall combination of these elements, rather than any individual feature alone, constitutes Plaintiff's distinctive trade dress and artistic identity.

Plaintiff first used this combination in 2011 in connection with her *Sarah's Scribbles* comics and has used it continuously and exclusively in the works published under that title since

that time.  Plaintiff's trade dress has acquired secondary meaning through extensive use, promotion, and public recognition since 2011, causing consumers to immediately associate this distinctive visual style exclusively with Plaintiff and her *Sarah's Scribbles* works.  Representative works embodying this trade dress include those identified in Exhibit A (ECF No. 238-1 at 94-122) and Exhibit C (ECF No. 238-3 at 15-30) to the Second Amended Complaint.  These works display the full combination of elements listed above and collectively establish the visual identity that consumers associate with Plaintiff as the sole source.

The distinctiveness of this trade dress is evidenced by: (1) the substantial commercial success of *Sarah's Scribbles* collections; (2) the 2016 Goodreads Choice Award for Best Graphic Novels & Comics; (3) significant media coverage specifically identifying the distinctive visual style as uniquely associated with Sarah's Scribbles, including features in *The Washington Post*, *The Guardian*, and The Huffington Post; (4) the widespread commercial licensing of *Sarah's Scribbles* merchandise featuring the distinctive trade dress elements; (5) millions of social-media followers drawn by the recognizable *Sarah's Scribbles* style; and (6) Plaintiff's receipt of the Reuben Award for Online Comics - Short Form from the National Cartoonists Society in 2024, for the year 2023.  Additionally, Sarah's Scribbles won the Ringo! Award for Best Comic Strip or Panel (2018), was nominated for Best Comic Strip or Panel and Best Cartoonist (2020), and received the Harvey Award for Digital Book of the Year (2025).

The consistent use of this distinctive visual style across these commercial channels has created strong consumer association between the *Sarah's Scribbles* trade dress and Plaintiff as the exclusive source throughout the United States.

Plaintiff's investigation and discovery are ongoing.  She will supplement this response as additional evidence, including expert analysis or further documents, becomes available through discovery.

### BROM RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates the General Objections as if stated fully herein.  Plaintiff objects to this contention Interrogatory as premature, overbroad, and unduly burdensome at this stage of discovery, as it seeks detailed analysis of trade dress that necessarily requires expert testimony, which is not yet complete under the Court's scheduling order.  Plaintiff objects to this Interrogatory to the extent it seeks information duplicative of Plaintiff's copyright registration documentation and allegations in the Complaint.  Plaintiffs also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case.  Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's protected trade dress includes his distinctive style characterized by: (1) gothic, punk, and dark fantasy aesthetic, (2) use of pale skin tones, dramatic lighting, and intricate, surreal details in the rendering of characters and environments, and (3) recuring use of dark fantasy, mythological, and demonic characters like trolls and satyrs.  This trade dress appears in his registered works as identified in Exhibit C to the Complaint, as well as the works identified in Exhibit A that were improperly included in the LAION-5B dataset.  Plaintiff reserves the right to supplement this response following discovery.

**B**ROM **A**MENDED **A**ND **S**UPPLEMENTAL **R**ESPONSE **T**O **I**NTERROGATORY **N**O. 2:

Plaintiff incorporates his General Objections.  Plaintiff objects that this Interrogatory seeks premature expert opinions and detailed factual analysis beyond what is presently possible before completion of discovery.  Plaintiff further objects that the demand for "all" concrete elements and exhaustive historical information is overbroad and disproportionate.  Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's trade dress consists of the distinctive combination of visual and stylistic elements that define his gothic fantasy artwork and make it immediately recognizable to consumers, collectors, and industry professionals as originating from him.

These elements include:

• Dark fantasy and mythological aesthetic — recurring depictions of demonic, monstrous, or supernatural figures rendered with psychological intensity and mythic resonance.

• Dramatic chiaroscuro lighting — high-contrast interplay of light and shadow that heightens emotional tension and emphasizes form and texture.

• Realistic yet stylized human and creature anatomy — meticulous draftsmanship combining classical proportions with surreal exaggerations that reinforce the mood of menace or beauty.

• Muted and desaturated color palettes — dominated by greys, ochres, and subdued reds, evoking a sense of decay, danger, or otherworldliness.

• Thematic integration of gothic, punk, and occult motifs — skulls, horns, tattered wings, ancient armor, and esoteric symbols woven into each composition as narrative and design elements.

• Painterly surfaces and fine detail — layered brushwork and texture that convey an old-master quality, merging realism and fantasy into a singular visual identity.

• Cohesive visual identity consistently applied across paintings, book illustrations, and game art, making the style immediately recognizable to consumers and the fantasy art community as Brom's.

None of these elements serves any functional purpose in the fine-art or illustration medium; rather, they represent Plaintiff's creative and expressive choices that collectively form his distinctive visual identity.  The overall combination—rather than any individual feature alone—constitutes Plaintiff's trade dress and artistic signature.

Plaintiff first used this distinctive combination of stylistic elements in or about 1989 in connection with his professional fantasy art and book illustration work, and has used it continuously and exclusively in works published, exhibited, and sold under his name since that time.  Representative examples include the works identified in Exhibit A (ECF No. 238-1 at 4-17) and Exhibit C (ECF No. 238-3 at 4-6) to the Second Amended Complaint, which collectively embody this unique combination of elements.

Plaintiff's trade dress has acquired secondary meaning through decades of consistent use, widespread publication, and commercial success, causing consumers and industry professionals to associate this distinctive style exclusively with Plaintiff as its creator.  Indicators of this

secondary meaning include:

- Continuous use of the same trade-dress combination across paintings, book covers, and licensed merchandise;

- Extensive publication and exhibition history in the fantasy and entertainment industries, including internationally distributed art collections and game illustrations. This includes his foundational work as the principal visual designer for TSR's *Dungeons & Dragons: Dark Sun* campaign and related fantasy gaming properties, which established his distinctive gothic-fantasy style before a global audience;

- Longstanding recognition by art directors, publishers, and collectors identifying Plaintiff's style as uniquely "Brom"; and

- Sustained commercial success and fan following tied directly to his recognizable visual signature.

Plaintiff's investigation and discovery are ongoing. He will supplement this response as additional information, including expert analysis or further documentation, becomes available through discovery.

### KAYE RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this contention Interrogatory as premature, overbroad, and unduly burdensome at this stage of discovery, as it seeks detailed analysis of trade dress that necessarily requires expert testimony, which is not yet complete under the Court's scheduling order. Plaintiff objects to this Interrogatory to the extent it seeks information duplicative of Plaintiff's copyright registration documentation and allegations in the Complaint. Plaintiffs also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case. Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense.

Plaintiff's protected trade dress includes her distinctive "Super Later Bloomer" comic style, characterized by: (1) her distinctive black and white line art, (2) her character's unique look and style, including signature large poofy hair, (3) long form storytelling in newspaper comic style illustrations, (4) her use of micro-vignettes, and (5) her use of comic strip style illustration to convey lived experience, complex emotions. This trade dress appears in her registered works as identified in Exhibit C to the Complaint, as well as the works identified in Exhibit A that were improperly included in the LAION-5B dataset. Plaintiff reserves the right to supplement this response following discovery.

### KAYE AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory seeks premature expert opinions and detailed factual analysis beyond what is presently possible before completion of discovery. Plaintiff further objects that the demand for "all" concrete elements and exhaustive historical information is overbroad and disproportionate. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's trade dress consists of the distinctive combination of visual and narrative elements that define her *Super Late Bloomer* comic works and make them immediately recognizable to consumers as originating from her.

These elements include:

- Clean black-and-white line art emphasizing expressive character design and emotional tone.

- A recurring self-portrait protagonist characterized by large curly hair and soft facial features that convey introspection and vulnerability.

- Minimalist backgrounds that highlight the emotional and narrative content of each panel.

- Use of handwritten lettering integrated into panels as dialogue or internal monologue.

- Thematically cohesive storytelling focusing on identity, transition, and personal growth presented through autobiographical vignettes.

- A warm, confessional tone conveyed through the integration of visual minimalism and candid first-person narration, creating an immediately recognizable blend of emotional intimacy and stylistic simplicity.

None of these elements serves a functional purpose in the comic medium; rather, they represent Plaintiff's distinctive artistic and expressive choices that set her work apart in the marketplace. The overall combination of these elements, rather than any individual feature alone, constitutes Plaintiff's distinctive trade dress and artistic identity.

Plaintiff first used this combination in 2018 in connection with her *Super Late Bloomer* comics and has used it continuously and exclusively in works published under that title and in related publications since that time. Representative works embodying this trade dress include those identified in Exhibit A (ECF No. 238-1 at 64-69) and Exhibit C (ECF No. 238-3 at 11-12) to the Second Amended Complaint. These works display the full combination of elements listed above and collectively establish the visual identity that consumers associate with Plaintiff as the sole source.

Plaintiff's *Super Late Bloomer* trade dress has acquired secondary meaning through continuous and exclusive use, widespread public recognition, and significant commercial success, as demonstrated by the following facts:

- The global commercial success of Plaintiff's *Super Late Bloomer* graphic novel and follow-up collection;

- National and international press coverage highlighting her recognizable visual style and personal storytelling approach, including coverage in major media outlets such as BuzzFeed, The Huffington Post, *School Library Journal, Publisher's Weekly,* and *The Comics Journal.*

- The Vancouver Comic Arts Festival, a major Canadian comics event, featured Kaye's work and praised *Super Late Bloomer*.

- The use of this distinctive style across online publications; and

- A substantial social-media following that specifically associates Plaintiff's visual and narrative style with her identity as the creator of *Super Late Bloomer*.

Plaintiff's investigation and discovery are ongoing. She will supplement this response as additional evidence, including expert analysis or further documents, becomes available through discovery.

**ORTIZ RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this contention Interrogatory as premature, overbroad, and unduly burdensome at this stage of discovery, as it seeks detailed analysis of trade dress that necessarily requires expert testimony, which is not yet complete under the Court's scheduling order. Plaintiff objects to this Interrogatory to the extent it seeks information duplicative of Plaintiff's copyright registration documentation and allegations in the Complaint. Plaintiffs also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case. Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's protected trade dress includes her distinctive style, characterized by: (1) dark, macabre aesthetics, utilizing specific approaches to lighting, color palette, (2) the integration of symbolic elements and recurring motifs such as birds, animals, and skulls, (3) intricate patterns drawn from renaissance and Victorian-era influences, (4) her specific approaches to rendering human figures, particularly in the detailed execution of faces and hands, (5) her style of oil painting with loose brushstrokes, and (6) her realistic renderings in pencil. This trade dress appears in her registered works as identified in Exhibit C to the Complaint, as well as the works identified in Exhibit A that were improperly included in the LAION-5B dataset. Plaintiff reserves the right to supplement this response following discovery.

**ORTIZ AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory seeks premature expert opinions and detailed factual analysis beyond what is presently possible before completion of discovery. Plaintiff further objects that the demand for "all" concrete elements and exhaustive historical information is overbroad and disproportionate. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's trade dress consists of the distinctive combination of visual and stylistic elements that define her fine-art works and make them immediately recognizable to consumers, collectors, and industry professionals as originating from her. These elements include:

• Use of lighting to sculpt form and mood—encompassing two distinct modes within Plaintiff's body of work: one employing dramatic chiaroscuro, with strong contrasts between light and shadow to create depth and psychological tension; the other drawing from naturalistic luminism, emphasizing even, atmospheric illumination to evoke clarity, calm, and realism.

• Realistic rendering of human figures—with attention to anatomy, expression, and naturalistic texture, often emphasizing the eyes and hands as focal points.

• Integration of symbolic motifs—recurring imagery such as birds, skulls, antlers, animals, and natural elements that carry narrative or allegorical meaning.

• Muted, limited color palettes—characterized by subtle tonal harmony and a tendency toward natural and earth-inspired hues, while encompassing the full color spectrum to achieve balanced, cohesive compositions that reinforce a classical and timeless aesthetic.

- Composition informed by historical art traditions, including Golden Age illustration, the American Renaissance, the Pre-Raphaelites, and Victorian-era portraiture, featuring centralized subjects and a painterly technique that blends realism and fantasy.

- Her use of traditional oil painting, graphite techniques, and occasionally digital work—characterized by loose brushwork, natural textures, and realistic rendering—combines fine-art craftsmanship with contemporary subjects, reinforcing the cohesion and recognizability of her distinctive visual style.

None of these elements serves any functional purpose in the fine-art medium; rather, they represent Plaintiff's distinctive artistic choices that collectively form her recognizable visual identity. The distinctiveness of this combination, rather than any single element alone, constitutes Plaintiff's trade dress and artistic signature.

Plaintiff first used this combination of stylistic elements in or about 2010 in connection with her professional fine-art and illustration work and has used it continuously and exclusively in works exhibited, sold, and published under her name since that time. Representative examples include the works identified in in Exhibit A (ECF No. 238-1 at 70-84) and Exhibit C (ECF No. 238-3 at 13-14) to the Second Amended Complaint, which collectively embody this distinctive combination.

Based on the investigation completed to date, Plaintiff's trade dress has acquired secondary meaning through sustained public exposure, professional recognition, and widespread exhibition, causing consumers to associate this distinctive style exclusively with Plaintiff as its creator. Indicators of this secondary meaning include: (1) consistent use of the trade-dress combination across gallery exhibitions, concept art, and licensed works; (2) extensive publication and social-media recognition identifying Plaintiff's distinctive visual style; and (3) ongoing commercial licensing and sales of works and merchandise featuring these elements.

Plaintiff's investigation and discovery are ongoing. She will supplement this response as additional information, including expert analysis or further documents, becomes available through discovery.

### RUTKOWSKI RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this contention Interrogatory as premature, overbroad, and unduly burdensome at this stage of discovery, as it seeks detailed analysis of trade dress that necessarily requires expert testimony, which is not yet complete under the Court's scheduling order. Plaintiff objects to this Interrogatory to the extent it seeks information duplicative of Plaintiff's copyright registration documentation and allegations in the Complaint. Plaintiffs also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case. Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's protected trade dress includes his distinctive academic oil painting-style images created in digital format characterized by: (1) his unique and recognizable brushstrokes utilizing self-created digital brushes which mimic the look of texture and realistic brushstroke in digital format, (2) epic fantasy and medieval themes featuring dragons and knights, and (3) a dark muted color palette. On information and belief, Plaintiff is one of the only, and the most well-known, artist in the

15

world able to create academic oil style paintings in a digital medium. This trade dress appears in his registered works as identified in Exhibit C to the Complaint, as well as the works identified in Exhibit A that were improperly included in the LAION-5B dataset. Plaintiff reserves the right to supplement this response following discovery.

### RUTKOWSKI AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

Plaintiff incorporates his General Objections. Plaintiff objects that this Interrogatory seeks premature expert opinions and detailed factual analysis beyond what is presently possible before completion of discovery. Plaintiff further objects that the demand for "all" concrete elements and exhaustive historical information is overbroad and disproportionate to the needs of the case. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's trade dress consists of the distinctive combination of visual and stylistic elements that define his fantasy and concept art and make it immediately recognizable to viewers, clients, and industry professionals as originating from him. These elements include:

- Digital oil-painting technique that emulates the layered texture and brushwork of traditional academic oil painting, achieved through custom digital brushes and painterly rendering.

- Epic fantasy and mythological themes featuring knights, dragons, beasts, and other heroic figures rendered with cinematic scope and realism.

- Dramatic composition and lighting, with pronounced contrasts between light and shadow, often using diagonal movement and atmospheric depth to convey scale and intensity.

- Rich, muted color palettes dominated by earth tones, golds, and greys, creating a unified tone across works and distinguishing Plaintiff's style from high-saturation digital illustration.

- His use of classical oil-painting techniques and digital brushwork that emulate traditional media, producing layered textures and painterly depth characteristic of his distinctive fantasy-art style.

- Detailed costume and environmental design rooted in historical and mythological reference, integrated seamlessly with fantastical elements to create immersive visual worlds.

None of these elements serves any functional purpose in the digital-art medium; rather, they represent Plaintiff's unique artistic choices and stylistic synthesis, which collectively form his recognizable visual identity. The distinctiveness of this combination—rather than any single feature alone—constitutes Plaintiff's trade dress and artistic signature.

Plaintiff first employed this distinctive combination in or about 2012 in his professional digital works and has used it continuously and exclusively since that time across concept-art commissions, gallery prints, and independent projects. Representative examples include the works identified in Exhibit A to the Second Amended Complaint (ECF No. 238-1 at 25-32), which collectively embody the complete trade-dress combination.

Plaintiff's trade dress has acquired secondary meaning through widespread recognition in the digital-art and gaming communities, evidenced by:

16

- Consistent use of this visual style across professional projects, print sales, and online publications;

- Substantial online visibility and audience recognition associating this aesthetic exclusively with Plaintiff's name;

- Repeated press and industry coverage identifying his distinctive painterly digital-fantasy style; and

- High demand for tutorials, fan emulation, and derivative works described as being done "in the style of Grzegorz Rutkowski."

These facts demonstrate that consumers and professionals in the field associate this distinctive combination of visual elements exclusively with Plaintiff as their source.

Plaintiff's investigation and discovery are ongoing. He will supplement this response as additional information, including expert analysis and further documents, becomes available through discovery.

<u>**INTERROGATORY NO. 3:**</u>

If YOU contend that any MIDJOURNEY TOOL has been used to generate outputs that infringe YOUR alleged trade dress described in response to Interrogatory No. 2, IDENTIFY all facts upon which YOU base that contention, including for each such output the date it was created, the user who allegedly created it, the prompt used to generate the output, the specific output generated, where the output can be found online or otherwise, and all facts and evidence upon which YOU base any contention that consumers were confused as to whether the output was affiliated with or created, endorsed or authorized by YOU.

<u>**ANDERSEN RESPONSE TO INTERROGATORY NO. 3:**</u>

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control including user data, prompt history, and internal system logs. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts and evidence." Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion. Plaintiff further objects that this Interrogatory is compound and will count this interrogatory as two separate interrogatories: one seeking discovery about alleged infringing outputs, and a separate interrogatory seeking discovery about consumer confusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff contends that Midjourney's Image Product generates outputs that infringe her trade dress when her name is used as a prompt, as evidenced by Exhibit F to the Complaint, which demonstrates that when "Sarah Andersen" is included in prompts like "sarah andersen chef" and "sarah andersen teacher," the resulting images consistently depict her distinctive "Sarah's Scribbles" character with its characteristic elements, including the protagonist's appearance and artistic style. Additional examples of infringement are documented in user compilations such as the "Artist

17

Style Studies" referenced in paragraph 205 of the Complaint, which specifically includes Plaintiff among tested artists. Plaintiff further responds that without discovery from Midjourney regarding specific user activities, prompts, and instances of confusion, she cannot reasonably be expected to provide the exhaustive level of detail demanded in this interrogatory at this stage of litigation. Plaintiff reserves the right to supplement this response following discovery.

### ANDERSEN AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory is premature because discovery is ongoing and critical facts—including user identities, prompt histories, and metadata—are in Midjourney's exclusive possession. Plaintiff further objects that the demand for "all facts" and exhaustive detail exceeds the scope of permissible interrogatories and seeks information disproportionate to the stage of discovery. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff is aware of the following facts supporting her contention that Midjourney tools have generated outputs infringing her trade dress:

- **Outputs generated using Plaintiff's name.**

  When users prompt the Midjourney Image Product with Plaintiff's name, such as "sarah Andersen chef" or "sarah andersen teacher," the resulting images reproduce the distinctive combination of elements comprising her *Sarah's Scribbles* trade dress: black-and-white line drawings, a recurring female protagonist with exaggerated eyes and striped shirt, minimal backgrounds, and handwritten lettering. Representative examples of infringing outputs appear in Exhibit F to the Second Amended Complaint (*see* ECF No. 238-6 at 7, 13). These examples were generated using Midjourney's publicly available system and directly mimic Plaintiff's trade-dress elements and overall artistic expression. Additional evidence of such outputs appears in the "Artist Style Studies" described in paragraph 205 of the Second Amended Complaint, ECF No. 238, which identifies Plaintiff by name among the artists tested and displays images generated using her name that clearly imitate her distinctive trade-dress combination.

- **Publicly displayed outputs.**

  Midjourney's public "Showcase" gallery and related online materials include additional outputs generated with artist-name prompts, including prompts using Plaintiff's name. Plaintiffs are actively identifying specific Showcase images generated with such prompts. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Consumer confusion.**

  Plaintiff has not been personally contacted by anyone expressing confusion between her work and AI-generated images. She has, however, observed AI-generated images created using her name as part of the prompt that imitate her distinctive artistic style and circulate online. Plaintiff did not retain records of these instances when they appeared.

Plaintiff lacks access to Midjourney's internal data identifying individual users or prompt histories, which are necessary to provide further detail. Plaintiff will supplement this response as additional information becomes available through discovery.

**BROM RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control including user data, prompt history, and internal system logs. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts and evidence." Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion. Plaintiff further objects that this Interrogatory is compound and will count this interrogatory as two separate interrogatories: one seeking discovery about alleged infringing outputs, and a separate interrogatory seeking discovery about consumer confusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff contends that Midjourney's Image Product generates outputs that infringe his trade dress when his name and images are used as a prompt, as evidenced by Exhibits F and I to the Complaint, which demonstrates that when "gerald brom" or "brom" is included in prompts like "gerald brom chef," or Plaintiff's images, the resulting images consistently depict his distinctive artistic style. Additional examples of infringement are documented in user compilations such as the "Artist Style Studies" referenced in paragraph 205 of the Complaint, which specifically includes Plaintiff among tested artists. Plaintiff further responds that without discovery from Midjourney regarding specific user activities, prompts, and instances of confusion, he cannot reasonably be expected to provide the exhaustive level of detail demanded in this interrogatory at this stage of litigation. Plaintiff reserves the right to supplement this response following discovery.

**BROM AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff incorporates his General Objections. Plaintiff objects that this Interrogatory is premature because discovery is ongoing and critical facts—including user identities, prompt histories, and metadata—are in Midjourney's exclusive possession. Plaintiff further objects that the demand for "all facts" and exhaustive detail exceeds the scope of permissible interrogatories and seeks information disproportionate to the stage of discovery. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff is aware of the following facts supporting his contention that Midjourney tools have generated outputs infringing his trade dress:

• **Outputs generated using Plaintiff's name.**

When users prompt the Midjourney Image Product with Plaintiff's name—for example, "Gerald brom," "brom fantasy art," or similar phrases—the resulting outputs reproduce the distinctive combination of artistic elements comprising his trade dress, including gothic and mythological subjects, dramatic chiaroscuro lighting, desaturated color palettes, realistic anatomy, and intricate rendering of demonic and heroic figures. Representative examples of such outputs appear in Exhibit I to the Second Amended Complaint (ECF No. 238-9 at 2-4). These outputs were generated using Midjourney's publicly available system and directly mimic Plaintiff's unique visual identity.

19

- **Publicly displayed outputs.**

  Midjourney's public "Showcase" gallery and related online materials include additional outputs generated with artist-name prompts, including prompts using Plaintiff's name. Plaintiffs are actively identifying specific Showcase images generated with such prompts, which further evidence the copying of Plaintiff's trade-dress elements. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Consumer confusion.**

  Plaintiff is not aware of anyone contacting him directly to express confusion. He has, however, observed online posts in which members of the public appeared to mistake AI-generated images in his style for his genuine artwork. Plaintiff did not keep records of these instances when they occurred.

  Plaintiff lacks access to Midjourney's internal records identifying individual users, prompts, and datasets that would enable fuller identification of infringing outputs. Plaintiff will supplement this response as additional information becomes available through discovery, including documents and data in Midjourney's exclusive possession.

## KAYE RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control including user data, prompt history, and internal system logs. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts and evidence." Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion. Plaintiff further objects that this Interrogatory is compound and will count this interrogatory as two separate interrogatories: one seeking discovery about alleged infringing outputs, and a separate interrogatory seeking discovery about consumer confusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff contends that Midjourney's Image Product generates outputs that infringe her trade dress when her name is used as a prompt. Plaintiff further responds that without discovery from Midjourney regarding specific user activities, prompts, and instances of confusion, she cannot reasonably be expected to provide the exhaustive level of detail demanded in this interrogatory at this stage of litigation. Plaintiff reserves the right to supplement this response following discovery.

## KAYE AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory is premature because discovery is ongoing and critical facts—including user identities, prompt histories, and metadata—are in Midjourney's exclusive possession. Plaintiff further objects that the demand for "all facts" and exhaustive detail exceeds the scope of permissible interrogatories and seeks information disproportionate to the stage of discovery. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff is aware of the following facts supporting her contention that Midjourney tools have generated outputs infringing her trade dress:

- **Outputs generated using Plaintiff's name.**

    When users prompt the Midjourney Image Product with Plaintiff's name—such as "julia kaye portrait," "julia kaye comic," or similar combinations—the resulting outputs reproduce the distinctive combination of visual and narrative elements comprising her *Super Late Bloomer* trade dress: clean black-and-white line art; a recurring self-portrait protagonist with large curly hair and soft facial features; minimalist backgrounds that highlight the emotional and narrative content of each panel; and handwritten lettering integrated into panels as dialogue or internal monologue. These outputs have appeared in online communities where Midjourney users share images generated with artist-name prompts, including prompts using Plaintiff's name. Plaintiffs are in the process of identifying and preserving representative examples for production.

- **Publicly displayed outputs.**

    Midjourney's public "Showcase" gallery and related online materials include additional outputs generated with artist-name prompts, including prompts using Plaintiff's name. Plaintiffs are actively identifying specific Showcase images generated with such prompts. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e). These infringing and publicly displayed outputs contribute to public confusion regarding endorsement, affiliation, or association between Plaintiff and Midjourney.

- **Consumer confusion.**

    Plaintiff is not aware of anyone contacting her directly to express confusion. She has, however, observed online posts in which members of the public appeared to mistake AI-generated images in her style for her genuine artwork. Plaintiff did not keep records of these instances when they occurred.

Plaintiff lacks access to Midjourney's internal data identifying individual users or prompt histories, which are necessary to provide further detail. Plaintiff will supplement this response as additional information becomes available through discovery.

### ORTIZ RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control including user data, prompt history, and internal system logs. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts and evidence." Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion. Plaintiff further objects that this Interrogatory is compound and will count this interrogatory as two separate interrogatories: one seeking discovery about alleged infringing outputs, and a separate interrogatory seeking discovery about

21

consumer confusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff contends that Midjourney's Image Product generates outputs that infringe her trade dress when her name or images are used as a prompt, as evidenced by Exhibit F to the Complaint, which demonstrates that when Plaintiff's images are input, the resulting images consistently resemble Plaintiff's images and artistic style. Additional examples of infringement are documented in user compilations such as the "Artist Style Studies" referenced in paragraph 205 of the Complaint, which specifically includes Plaintiff among tested artists. Plaintiff further responds that without discovery from Midjourney regarding specific user activities, prompts, and instances of confusion, she cannot reasonably be expected to provide the exhaustive level of detail demanded in this interrogatory at this stage of litigation. Plaintiff reserves the right to supplement this response following discovery.

## ORTIZ AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory is premature because discovery is ongoing and critical facts—including user identities, prompt histories, and metadata—are in Midjourney's exclusive possession. Plaintiff further objects that the demand for "all facts" and exhaustive detail exceeds the scope of permissible interrogatories and seeks information disproportionate to the stage of discovery. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff is aware of the following facts supporting her contention that Midjourney tools have generated outputs infringing her trade dress:

- **Outputs generated using Plaintiff's name.**

    When users prompt the Midjourney Image Product with Plaintiff's name—for example, "karla ortiz portrait," "karla ortiz fantasy painting," or similar phrases—the resulting outputs reproduce the distinctive combination of artistic elements comprising her trade dress, including dramatic chiaroscuro lighting, realistic human forms, muted palettes, symbolic motifs, and classical composition. Representative examples of such outputs appear in Exhibit I to the Second Amended Complaint (ECF No. 238-9 at 15-18). These outputs were generated using Midjourney's publicly available system and directly mimic Plaintiff's signature visual style. Additional evidence of such outputs appears in the "Artist Style Studies" described in paragraph 205 of the Second Amended Complaint, ECF No. 238, which identifies Plaintiff by name among the artists tested and displays images generated using her name that clearly imitate her distinctive trade-dress combination.

- **Publicly displayed outputs.**

    Midjourney's public "Showcase" gallery and related online materials include additional outputs generated with artist-name prompts, including those using Plaintiff's name. Plaintiffs are actively identifying specific Showcase images generated with such prompts. Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Consumer confusion.**

  Plaintiff has not been personally contacted by anyone expressing confusion between her work and AI-generated images. She has, however, observed AI-generated images created using her name as part of the prompt that imitate her distinctive artistic style and circulate online. To the extent Plaintiff possesses any documents reflecting these instances, she will produce them in discovery.

## RUTKOWSKI RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory, and many relevant facts remain in Defendants' exclusive possession and control including user data, prompt history, and internal system logs. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts and evidence." Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion. Plaintiff further objects that this Interrogatory is compound and will count this interrogatory as two separate interrogatories: one seeking discovery about alleged infringing outputs, and a separate interrogatory seeking discovery about consumer confusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff contends that Midjourney's Image Product generates outputs that infringe his trade dress when his name and images are used as a prompt, as evidenced by Exhibit I to the Complaint, which demonstrates that when his images are included in prompts, the resulting images consistently depict his distinctive artistic style. Plaintiff further responds that without discovery from Midjourney regarding specific user activities, prompts, and instances of confusion, he cannot reasonably be expected to provide the exhaustive level of detail demanded in this interrogatory at this stage of litigation. Plaintiff reserves the right to supplement this response following discovery.

## RUTKOWSKI AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

Plaintiff incorporates his General Objections. Plaintiff objects that this Interrogatory is premature because discovery is ongoing and critical facts—including user identities, prompt histories, and metadata—are in Midjourney's exclusive possession. Plaintiff further objects that the demand for "all facts" and exhaustive detail exceeds the scope of permissible interrogatories and seeks information disproportionate to the stage of discovery. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff is aware of the following facts supporting his contention that Midjourney tools have generated outputs infringing his trade dress:

- **Outputs generated using Plaintiff's name.**

  When users prompt the Midjourney Image Product with Plaintiff's name—for example, "Grzegorz rutkowski," "painting by grzegorz rutkowski," or similar combinations—the resulting outputs reproduce the distinctive combination of artistic elements that comprise his trade dress: painterly digital brushwork, epic fantasy composition, chiaroscuro lighting, and realistic rendering of mythic subjects. Representative examples of such

outputs appear in Exhibit I to the Second Amended Complaint (ECF No. 238-9 at 7-8). These images were generated using Midjourney's public system and directly mimic Plaintiff's signature artistic style.

- **Extraordinary prevalence of infringing outputs.**

  Public data and user materials confirm that Plaintiff's name is among the most frequently used artist prompts on Midjourney, having been invoked in hundreds of thousands of image generations.  This widespread use demonstrates that Midjourney's product regularly produces outputs that copy Plaintiff's stylistic elements and that consumers and users associate his name with those results.

- **Public display in Midjourney's "Showcase" gallery.**

  Midjourney's publicly accessible Showcase gallery features outputs generated with artist-name prompts, including prompts using Plaintiff's name.  Plaintiffs are actively identifying specific Showcase images generated with such prompts, which visibly imitate Plaintiff's digital-fantasy style.  Plaintiff will supplement this response with specific examples as they are identified, pursuant to Federal Rule of Civil Procedure 26(e).

- **Consumer confusion.**

  Members of the public have contacted Plaintiff about AI-generated images attributed to his style, expressing uncertainty about whether he was involved or approved their creation.  These inquiries demonstrate public confusion arising from Midjourney's use of his name and the distribution of works that imitate his distinctive artistic presentation.  Plaintiffs will supplement this response with any documented examples identified through ongoing review, consistent with Rule 26(e).

Plaintiff lacks access to Midjourney's internal data identifying individual users, prompt histories, and output metadata, which are necessary to provide additional detail.  Plaintiff will supplement this response as discovery proceeds and as additional evidence becomes available.

### INTERROGATORY NO. 4:

IDENTIFY and DESCRIBE in detail all facts RELATING TO YOUR contention that YOUR alleged trade dress "possesses secondary meaning," as alleged in paragraph 320 of the COMPLAINT, including all advertising or marketing efforts and expenditures YOU have undertaken to promote works allegedly incorporating YOUR alleged trade dress; all sales (by month and year) of copies of YOUR works allegedly incorporating YOUR alleged trade dress; all revenues and income (by month and year) YOU have derived from such sales; all means by which YOUR works have been published or distributed to or seen by THIRD PARTIES; any consumer surveys, reports, or opinions RELATING TO whether YOUR alleged trade dress has achieved secondary meaning; and any evidence or COMMUNICATIONS RELATING TO whether and for how long YOU have made exclusive use of YOUR alleged trade dress elements.

### ANDERSEN RESPONSE TO INTERROGATORY NO. 4:

Plaintiff incorporates the General Objections as if stated fully herein.  Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory.  *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985).  Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts," "all advertising or marketing efforts and expenditures," "all sales," "all revenues and income," and "all means."  Plaintiff also objects to

the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case.  Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense.  Plaintiff objects to the extent his interrogatory seeks information not within Plaintiffs' possession, custody, or control.  Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product.  Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections.  In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's trade dress has acquired secondary meaning through: (1) continuous and exclusive use of her distinctive "Sarah's Scribbles" style since 2011; (2) widespread public recognition through publication across multiple platforms including her website (sarahcandersen.com), social media accounts with millions of followers, and published collections including "Adulthood Is a Myth" (2016), "Big Happy Mushy Lump" (2017), and "Herding Cats" (2018); (3) significant commercial success evidenced by her New York Times bestseller status and translations into over 30 languages; (4) substantial media coverage including features in The Washington Post, The Guardian, and other major publications; (5) industry recognition through multiple awards including the Goodreads Choice Award (2016, 2017); and (6) demonstrable consumer association between her distinctive style and Plaintiff as the source, as evidenced by consistent consumer identification of her works even without attribution. Plaintiff reserves the right to supplement this response following discovery.

### ANDERSEN AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

Plaintiff incorporates her General Objections.  Plaintiff objects that this Interrogatory is premature and overbroad because discovery and expert analysis are ongoing and because much of the requested information—particularly financial and marketing data—will be produced through document discovery.  Plaintiff further objects that the demand for "all" facts and financial detail by month and year is unduly burdensome and disproportionate to the needs of the case. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's *Sarah's Scribbles* trade dress has acquired secondary meaning through continuous and exclusive use, widespread public recognition, and significant commercial success, as demonstrated by the following facts:

- **Continuous and exclusive use.**

   Plaintiff has used the distinctive *Sarah's Scribbles* trade-dress combination—black-and-white line art, recurring female protagonist, minimal backgrounds, and handwritten lettering—continuously since 2011 in connection with her published works and related merchandise.

- **Widespread public recognition.**

   Plaintiff's works are displayed on her website (sarahcandersen.com) and across social-media platforms with millions of followers.  Her social-media audience has grown steadily since 2012, creating consistent consumer association between the trade-dress elements and Plaintiff as the source.

- **Commercial success.**

  Plaintiff's printed collections *Adulthood Is a Myth* (2016), *Big Happy Mushy Lump* (2017), and *Herding Cats* (2018) have been translated into multiple language editions. These sales reflect sustained demand and consumer identification with her trade-dress style.

- **Media coverage and industry recognition.**

  Plaintiff and her *Sarah's Scribbles* works have been featured in major publications including *The Washington Post* and The Huffington Post, and have received multiple awards such as the Goodreads Choice Award for Best Graphic Novels & Comics (2016, 2017, 2018). Such coverage and accolades have reinforced public recognition of Plaintiff's distinctive visual style.

- **Consumer association.**

  Readers and followers consistently identify Plaintiff as the creator of works bearing the *Sarah's Scribbles* trade dress, even when individual images circulate without attribution. This consistent public association demonstrates that the trade-dress elements function as source identifiers for Plaintiff.

  Plaintiff will produce responsive financial, sales, and marketing documents in her possession, custody, or control and will supplement this response as additional data, including expert analysis, becomes available through discovery. 20

## BROM RESPONSE TO INTERROGATORY NO. 4:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts," "all advertising or marketing efforts and expenditures," "all sales," "all revenues and income," and "all means." Plaintiff also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case. Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense. Plaintiff objects to the extent his interrogatory seeks information not within Plaintiffs' possession, custody, or control. Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's trade dress has acquired secondary meaning through: (1) continuous and exclusive use of his distinctive style for decades; (2) widespread public recognition through publication across multiple platforms including his social media accounts with hundreds of thousands of followers, and award-winning published collections such as "Krampus, the Yule Lord" (2018) and "The Child Thief" (2001); (3) his work illustrating best selling Dungeons and Dragons worlds; (4) international industry recognition as a leading artist, including though multiple awards such as the at the Spectrum Fantastic Art Grand Master award, and the Chelsea Award for Lifetime Artistic Achievement; and (5) demonstrable consumer association between his distinctive style and Plaintiff as the

source, as evidenced by consistent consumer identification of his works even without attribution. Plaintiff reserves the right to supplement this response following discovery.

**BROM AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff incorporates his General Objections.  Plaintiff objects that this Interrogatory is premature and overbroad because discovery and expert analysis are ongoing and because much of the requested information—particularly financial and marketing data—will be produced through document discovery.  Plaintiff further objects that the demand for "all" facts and financial detail by month and year is unduly burdensome and disproportionate to the needs of the case.  Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's gothic-fantasy trade dress has acquired secondary meaning through continuous and exclusive use, widespread public recognition, and long-standing critical and commercial success, as demonstrated by the following facts:

- **Continuous and exclusive use.**

  Plaintiff has continuously and exclusively used the same distinctive visual combination—dark mythological subjects, dramatic chiaroscuro lighting, muted palettes, and painterly realism—since approximately 1989 in connection with his professional art, illustration, and book publishing work.  He has never authorized other artists or entities to use this combination under his name.

- **Advertising and promotion.**

  Plaintiff's works have been promoted through publishers, gallery exhibitions, interviews, convention appearances, and his own website and social-media accounts, collectively reaching hundreds of thousands of followers.  Publishers including HarperCollins and Flesk Publications have marketed his illustrated novels and art collections bearing his distinctive style.

- **Public exposure and distribution.**

  Plaintiff's artwork has been widely published and distributed internationally across multiple platforms, including books, licensed merchandise, and game-art collaborations. His foundational work as principal visual designer for TSR's *Dungeons & Dragons: Dark Sun* campaign introduced his signature gothic-fantasy style to a global audience, and his illustrated novels *The Child Thief* (2001) and *Krampus, the Yule Lord* (2018) further solidified that recognition.  His paintings and illustrations continue to circulate in print and digital media and are exhibited and sold through established art outlets.

- **Commercial success.**

  Plaintiff's works and related merchandise have achieved substantial commercial success over multiple decades.  He derives income from book royalties, original art sales, limited-edition prints, and licensed reproductions, all featuring the same distinctive style. Detailed financial data will be produced through document discovery.

- **Industry and consumer recognition.**

  Plaintiff's artistic achievements have been recognized through numerous professional honors, including the Spectrum Fantastic Art Grand Master Award and the Chelsea Award

for Lifetime Artistic Achievement. His style is widely recognized within the fantasy-art community, and fans and professionals alike identify his work, even when unattributed, as "Brom."

Plaintiff's investigation and discovery are ongoing. He will supplement this response pursuant to Federal Rule of Civil Procedure 26(e) as additional information, including expert analysis or documentary evidence, becomes available.

<u>KAYE RESPONSE TO INTERROGATORY NO. 4:</u>

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts," "all advertising or marketing efforts and expenditures," "all sales," "all revenues and income," and "all means." Plaintiff also objects to the extent this Interrogatory seeks a level Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense. Plaintiff objects to the extent his interrogatory seeks information not within Plaintiffs' possession, custody, or control. Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's trade dress has acquired secondary meaning through: (1) continuous and exclusive use of her distinctive "Super Late Bloomer" style since 2018; (2) widespread public recognition through an feature in an exhibit at the Library of Congress, publication across multiple platforms, including social media accounts with tens of thousands of followers, and published collections including "Super Late Bloomer: My Early Days in Transition" (2018) and "My Life in Transition: A Super Late Bloomer Collection" (2021); (3) industry recognition through multiple awards and nominations; and (4) demonstrable consumer association between her distinctive style and Plaintiff as the source, as evidenced by consistent consumer identification of her works even without attribution. Plaintiff reserves the right to supplement this response following discovery.

<u>KAYE AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:</u>

Plaintiff incorporates her General Objections. Plaintiff objects that this Interrogatory is premature and overbroad because discovery and expert analysis are ongoing and because much of the requested information—particularly financial and marketing data—will be produced through document discovery. Plaintiff further objects that the demand for "all" facts and financial detail by month and year is unduly burdensome and disproportionate to the needs of the case. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's *Super Late Bloomer* trade dress has acquired secondary meaning through continuous and exclusive use, widespread public recognition, and significant commercial success, as demonstrated by the following facts:

• **Continuous and exclusive use.**

Plaintiff has used the distinctive *Super Late Bloomer* trade-dress combination—clean black-and- white line art, recurring self-portrait protagonist, minimalist backgrounds, and

handwritten lettering—continuously since 2018 in connection with her published works, merchandise, and online publications.

- **Widespread public recognition.**

Plaintiff's works are published through Andrews McMeel and have been widely distributed both in print and digitally.  Her comics are published across major social-media platforms, where she maintains a substantial following and active readership.  Her audience has grown steadily since 2018, creating a consistent public association between the *Super Late Bloomer* visual style and Plaintiff as its sole creator.

- **Commercial success.**

Plaintiff's books *Super Late Bloomer* (2018) and *My Life in Transition* (2021) were published by Andrews McMeel Publishing and distributed in print and digital formats through major trade channels.  Her comics have been published continuously online since 2018, where she maintains a substantial and growing readership that associates this visual style with her as the sole source.  The combination of formal publication, continued retail availability, and sustained online readership supports Plaintiff's contention that the *Super Late Bloomer* trade dress has market recognition.

- **Media coverage and industry recognition.**

Plaintiff and her *Super Late Bloomer* works have been covered by outlets such as BuzzFeed, The Huffington Post, *School Library Journal*, *Publishers Weekly*, and *The Comics Journal*, and her work has been highlighted at events such as the Vancouver Comic Arts Festival.  That coverage has emphasized the same autobiographical, black-and-white comic style described above, reinforcing public association of that style with Plaintiff.

- **Consumer association.**

Readers and followers consistently identify Plaintiff as the creator of works bearing the *Super Late Bloomer* trade dress, even when individual images circulate online without attribution.  This consistent public association demonstrates that the trade-dress elements function as source identifiers for Plaintiff.

Plaintiff will produce responsive financial, sales, and marketing documents in her possession, custody, or control and will supplement this response as additional data, including expert analysis, becomes available through discovery.

<u>Ortiz Response to Interrogatory No. 4:</u>

Plaintiff incorporates the General Objections as if stated fully herein.  Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory.  *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985).  Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts," "all advertising or marketing efforts and expenditures," "all sales," "all revenues and income," and "all means."  Plaintiff also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case.  Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense.  Plaintiff objects to the extent his interrogatory seeks information not within Plaintiffs' possession, custody, or control.  Plaintiff objects to this Interrogatory to the extent this is the subject of expert

discovery and seeks information related to expert witness work-product.  Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections.  In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's trade dress has acquired secondary meaning through: (1) continuous and exclusive use of her distinctive style for over 10 years; (2) her work on high-profile projects including the world-wide video game World of Warcraft, the movies Marvel movies Doctor Strange, Thor Ragnarok, Black Panther, and Infinity Wars; the movie Rogue One: A Starwars Story; and George R.R. Martin's "The World of Ice and Fire: The Untold History of Westeros and the Game of Thrones (A Song of Ice and Fire), which is the basis for the widely- acclaimed TV series Game of Thrones; (3) her role as a consistent illustrator for the card game Magic the Gathering; (4) international industry recognition as a leading concept artist and illustrator; and (5) demonstrable consumer association between her distinctive style and Plaintiff as the source, as evidenced by consistent consumer identification of her works even without attribution.  Plaintiff reserves the right to supplement this response following discovery.

### ORTIZ AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

Plaintiff incorporates her General Objections.  Plaintiff objects that this Interrogatory is a premature contention interrogatory because discovery, including expert analysis on damages, is ongoing.  Plaintiff also objects that the request for "all evidence" is overbroad and exceeds the scope of permissible discovery under Rule 33.  Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's trade dress has acquired secondary meaning through continuous and exclusive use, widespread public recognition, and significant professional success, as demonstrated by the following facts:

- **Continuous and exclusive use.**

  Plaintiff has used her distinctive trade-dress combination—dramatic chiaroscuro lighting, realistic human figures, symbolic motifs, muted palettes, and painterly composition informed by classical art traditions—continuously since at least 2010 in connection with her fine-art, illustration, and concept-design work.

- **Professional success and widespread public recognition.**

  Plaintiff's works have been exhibited internationally in galleries, published in art anthologies, and featured across major social-media platforms, where her audience and professional following identify her distinctive aesthetic with her name.  Her work has been commissioned by leading entertainment studios and publishers, including Marvel Studios for *Doctor Strange*, *Thor: Ragnarok*, *Black Panther*, and *Avengers: Infinity War*; Lucasfilm for *Rogue One: A Star Wars Story*; and author George R.R. Martin for *The World of Ice and Fire: The Untold History of Westeros and the Game of Thrones (A Song of Ice and Fire)*, a supplement for the widely acclaimed *Game of Thrones* television series.  She also contributed to the commercially successful *World of Warcraft* movie and is a recurring illustrator for the internationally distributed card game *Magic: The Gathering*.  Plaintiff has received widespread recognition within the concept-art and fine-art communities for her distinctive painterly style and traditional technique.

- **Media coverage and industry acknowledgment.**

  Plaintiff and her works have been featured in professional art and entertainment publications, interviews, and exhibitions emphasizing her traditional fine-art technique and distinctive painterly style. Outlets highlighting her work have included *ImagineFX*, *Spectrum: The Best in Contemporary Fantastic Art*, *ArtStation Magazine*, and various film-industry interviews discussing her contributions to *Doctor Strange*, *Black Panther*, and *Rogue One*. These features reinforce public association between Plaintiff's recognizable artistic style and her identity as the creator.

- **Industry awards and peer acknowledgment.**

  Plaintiff has received repeated professional recognition and invitations to present at major concept-art and illustration events, including LightBox Expo and the THU Conference. She contributed to the visual development team that won the Academy Award for Costume Design on *Black Panther*. She is a LightBox Expo Luminary Award Winner (2023); an Art Directors Guild Award Winner (2019, *Black Panther*) and Nominee (2017, *Doctor Strange*) for Excellence in Production Design; and a Spectrum Fantastic Art Live Gold Award Winner (2017) for her registered copyrighted work *The Death I Bring*. Her peers and clients describe her work as immediately recognizable, confirming that her trade-dress combination functions as her artistic signature.

- **Consumer and collector association.**

  Collectors, art directors, and industry professionals consistently identify works exhibiting Plaintiff's distinctive trade-dress elements as her own, even when individual images appear without attribution. This consistent association demonstrates that her trade dress functions as a strong source identifier.

  Plaintiff will produce responsive financial, sales, and promotional documents in her possession, custody, or control and will supplement this response as additional information, including expert analysis, becomes available through discovery. 4

## RUTKOWSKI RESPONSE TO INTERROGATORY NO. 4:

Plaintiff incorporates the General Objections as if stated fully herein. Plaintiff objects to this Interrogatory because it is a premature contention Interrogatory. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985). Plaintiff objects to this request as overbroad and unduly burdensome as it seeks "all facts," "all advertising or marketing efforts and expenditures," "all sales," "all revenues and income," and "all means." Plaintiff also objects to the extent this Interrogatory seeks a level of granularity and factual detail that is unduly burdensome and disproportionate to the needs of the case. Plaintiff objects to the extent the Request seeks irrelevant information that would not advance any claim or defense. Plaintiff objects to the extent his interrogatory seeks information not within Plaintiffs' possession, custody, or control. Plaintiff objects to this Interrogatory to the extent this is the subject of expert discovery and seeks information related to expert witness work-product. Plaintiff further objects to the extent this Interrogatory seeks information protected by attorney-client privilege, the common interest doctrine, and work product protections. In addition, Plaintiff objects that this interrogatory calls for a legal conclusion.

Without waiving these objections, Plaintiff responds as follows: Plaintiff's trade dress has acquired secondary meaning through: (1) continuous and exclusive use of his distinctive style for

nearly 10 years; (2) widespread public recognition through publication across multiple platforms including his social media accounts with hundreds of thousands of followers; (3) his work with high-profile studios including Universal, Netflix, Warner Brothers, and Disney; and video game companies including Blizzard and Riot Games (4) his role as a consistent illustrator for the card game Magic the Gathering; (5) international industry recognition as a leading artist; and (6) demonstrable consumer association between his distinctive style and Plaintiff as the source, as evidenced by consistent consumer identification of his works even without attribution. Plaintiff reserves the right to supplement this response following discovery.

### RUTKOWSKI AMENDED AND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

Plaintiff incorporates his General Objections. Plaintiff objects that this Interrogatory is a premature contention interrogatory because discovery, including expert analysis on damages, is ongoing. Plaintiff also objects that the request for "all evidence" is overbroad and exceeds the scope of permissible discovery under Rule 33. Subject to and without waiving these objections, Plaintiff responds as follows:

Based on the investigation completed to date, Plaintiff's trade dress has acquired secondary meaning through continuous and exclusive use, widespread public recognition, and significant professional success, as demonstrated by the following facts:

- **Continuous and exclusive use.**

  Plaintiff has used his distinctive trade-dress combination—painterly digital realism, luminous color palettes, mythic and architectural subject matter, and dynamic composition evoking classical fantasy illustration—continuously since at least the early 2010s in connection with his professional concept-art and illustration work.

- **Widespread public recognition.**

  Plaintiff's works have been published and exhibited internationally, appearing in art books, game- art collections, and online portfolios viewed by millions of users worldwide. This visibility, and the frequency with which his name appears in art-community discussions and search prompts, reinforce public association between his distinctive fantasy-art style and his name.

- **Professional success and recognition.**

  Plaintiff has worked with high-profile studios such as Universal, Netflix, Warner Brothers, and Disney, and major video-game companies including Blizzard and Riot Games. Plaintiff also serves as a regular illustrator for *Magic: The Gathering* and is recognized internationally as a leading fantasy artist featured in digital-art publications and exhibitions.

- **Media and industry acknowledgment.**

  Plaintiff has been profiled and interviewed in professional outlets such as *Creative Bloq* discussing his unique digital-painting methods and visual style, further strengthening the connection between that style and his name.

- **Consumer and collector association.**

  Collectors, fans, and art directors consistently identify works rendered in Plaintiff's painterly- fantasy style as his own, even when those works circulate online without

attribution.  These facts collectively demonstrate that Plaintiff's trade dress has acquired strong secondary meaning through continuous use, broad public exposure, and consistent identification of his distinctive aesthetic with him as its source.

Plaintiff will produce responsive financial, sales, and promotional documents in his possession, custody, or control and will supplement this response as additional information, including expert analysis, becomes available through discovery.