December 17, 2025

**VIA ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
San Francisco Courthouse
Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re: *Andersen et al. v. Stability AI Ltd., et al.*, 3:23-cv-00201-WHO (LJC)

Dear Magistrate Judge Cisneros:

      Pursuant to ¶ F(5) of Your Honor's Standing Order and ¶ 7.4 of the Stipulated Protective Order, the parties respectfully submit this joint letter brief ("JLB") regarding Plaintiffs' motion to compel Defendant Midjourney, Inc. to further supplement Interrogatory No. 3. Fact discovery closes on March 13, 2026. Class certification and summary judgment have been set for November 4, 2026. Trial has been set for April 5, 2027. Counsel have met and conferred but remain at impasse.

**[REDACTED]**

**Plaintiffs' Position**

Fed. R. Civ. P. 33(b)(3) requires interrogatory answers be "as complete as" a reasonable investigation permits. Interrogatory No. 3 ("ROG 3") asks Midjourney, Inc. ("Midjourney") to "Describe in detail the process by which You train AI Image Models, including data acquisition, pre-training, post-training, fine-tuning, benchmarking, validating, and ablation studies." In response, Midjourney provided high-level descriptions of the filters it "typically applies" before listing generic categories grouped by Midjourney's description of what they were "designed to" do, rather than naming the filters and describing their actual uses. This does not meet the standard under Rule 33. *Schudel v. Searchguy.com, Inc.*, No. 3:07-cv-00695-BEN-BLM, 2008 WL 11337244, at *5 (S.D. Cal. Aug. 21, 2008) (ordering party to answer interrogatory fully, in writing, and under oath "**in a manner that is 'true, explicit, responsive, complete, and candid.**'" (bolding in original; cleaned up).

Midjourney uses data filters to create training datasets from predicate datasets. Midjourney's current response states that it "filtered data from the LAION-400M and LAION-5B datasets to prepare a dataset of desirable images for use in training." Kessler Decl., Ex. A. Midjourney must supplement its response to provide specific details on how it filtered these datasets for "desirable" images. The criteria Midjourney applied in determining "desirability" are directly relevant to the issue of intentional copying, as they reveal a deliberate effort to target high-quality copyrighted images to improve the model's performance. In this regard, filter details also bear on fair use. Under factor one, a defendant that systematically identified copyright indicators and trained anyway cannot claim good faith, and under factor four, filters that selected high-quality copyrighted works enabled Midjourney to produce outputs that compete with Plaintiffs' originals.

███████████████████████████████████████████████████████████████ would also bear on willfulness. *See, e.g.*, *Stokes v. Olympian Leisure Servs.*, No. 2:22-cv-01228-CDS-EJY, 2024 WL 1928748, at *3 (D. Nev. May 1, 2024) ("a reasonable jury could find that Ochoa acted willfully in perpetuating copyright infringement by proactively removing the watermarks before posting the Photos."); *Markos v. Sunstone Tours, Inc.*, No. 2:22-cv-06757-PA-AFM, 2023 WL 6370619, at *3 (C.D. Cal. Mar. 12, 2023) (in assessing damages under the copyright act, stating "the evidence demonstrates that Defendant was 'actually aware of [its] infringing activity' and/or that Defendant's actions 'were the result of reckless disregard for, or willful blindness to' Plaintiff's rights because Defendant removed the copyright management information before displaying the Work on its website."); *Tylor v. Welch*, No. . CV13-00458 SOM-KSC, 2014 WL 1415006, at *6 (D. Haw. Apr. 11, 2014) (similar).[1]

Midjourney's response as to the watermark filter is particularly troubling. Midjourney claims it uses "[f]ilters designed to ████████████████████████." But that description is so incomplete as to be inaccurate. Watermarks are copyright indicators; artists affix them to images precisely to signal ownership. Midjourney's watermark filter did not merely ███████ ████████████████████████████████████████████████

---

[1] Filters are also relevant because, each time Midjourney filters a dataset containing copyrighted works, it creates a copy or derivative work—another act of direct infringement. SAC ¶¶ 273-75, 279-82.

1

███████████████████████████████████████████████████████████. *See* Kessler Decl., Ex. C (MIDJOURNEY_0002875) (recommending ████████████████████████████████ ███). By ██████████████████████████████████████████████████████████, Midjourney created a mechanism to identify likely copyrighted works, assess the risk of detection, and train on them anyway. This is not inadvertent copying. This is systematic exploitation of copyrighted material with full knowledge of its protected status.

Midjourney's claim that it "████████████████████████████████████████████ ███████████████████████████████████████████" begs the question of which ██████ ███████████████████████████ and based on what criteria. A ██████████████████ ████████████████████████████████████████████████. Plaintiffs are entitled to know the ██████████████████████████████████.

A full response requires detailed disclosure of these filters, how they are used, on which datasets they were used, and which datasets they were used to create. Midjourney's own documents list specific filters by name and version number. *See* Kessler Decl., Ex. D (MIDJOURNEY_00002010); Kessler Decl., Ex. B (MIDJOURNEY_00009689) (discussing "v5 pretrain filters", "v5 fine-tune filters", and "fine-tuning with filters." Midjourney can thus identify which filters it used, including version-specific details, but it simply refuses to do so. Its documents distinguish between "v5 pretrain filters" and "v5 fine-tune filters," confirming version-specific filter configurations exist. *Id.*

The case law Midjourney relies on is inapposite. In each of the cases cited, the moving party sought a supplemental response that stretched far beyond what was called for in the initial request, and in one case, the movant failed to meet and confer at all. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 323 (N.D. Ill. 2005) (finding interrogatory seeking annual volume of storage or production of sulfuric acid to not encompass *reasons for* the reduction in volume); *In re Clearview AI, Inc.*, No. 1:21-cv-00135, 2022 WL 22903328, at *2 (N.D. Ill. Aug. 25, 2022) (observing the moving party essentially conceded its interrogatory posed the wrong question and clarified in their motion "what they really meant to ask[.]"); *Tapia v. Huntington Park Polic Dept.*, No. 2:09-cv-07624-VBF-SS, 2010 WL 11549657, at *1 (C.D. Cal. May 5, 2010) (finding movant failed to confer in good faith prior to raising dispute, and ordering the parties to further meet and confer). Here, unlike in *Sulfuric Acid* and *Clearview*, information on data filters is encompassed by ROG 3, which asks Midjourney to "describe in detail the process by which [it] train[s] AI Image Models, including data acquisition [and] pre-training[.]" And, unlike the movant in *Tapia*, Plaintiffs here made significant efforts to confer in good faith.

After receiving Midjourney's initial response to Plaintiffs' ROG 3, Plaintiffs wrote requesting that Midjourney supplement "to detail the process by which Midjourney filtered data in the LAION datasets, including an explanation regarding how Midjourney was able to identify images that fall within the categories identified in the bulleted list on page 10, lines 15-22 of Midjourney's responses, where along the model development pipeline the data was filtered, and how that data was filtered." H. Benon email to S. Blankenship (Aug. 15, 2025). Two weeks later, Midjourney agreed to so supplement "to the extent [they] are able to identify such additional information." S. Blankenship email to H. Benon (Aug. 27, 2025).

On September 26, 2025, Midjourney served its supplemental response, lacking specifics. Kessler Decl., Ex. A. The parties met and conferred on October 22, November 25, and December 9 regarding further supplementation. Kessler Decl. ¶ 8. Plaintiffs directed Midjourney's attention to the list of filters in MIDJOURNEY_00002010. Kessler Decl., Ex. D. Midjourney's position is that it will only provide filter details if Plaintiffs issue another interrogatory aimed specifically at filters. This position is inconsistent with Rule 33's requirement to answer "fully."

In the end, Midjourney invites Plaintiffs to serve a new interrogatory and effectively restart the clock. But this is not an appropriate course of action where the interrogatory propounded fairly encompasses the information sought. Midjourney's proposed approach is also inconsistent with principles of obtaining "just, speedy, and inexpensive determination of every action and proceeding." Fed R. Civ. P. 1; *see also Clearview AI*, 2022 WL 22903328, at *2 ("Sometimes answering an interrogatory that has been re-cast after a meet and confer will make sense because it saves time and effort, particularly if another interrogatory will be propounded anyway."). Moreover, Midjourney already admits data filters are part of its training process and thus responsive to Interrogatory 3. It cannot demand a second interrogatory for information ***squarely within the scope of the first.***

**Relief Requested:** The Court should order Defendant Midjourney, Inc. to supplement its response to Interrogatory No. 3 to identify: (1) each filter by name; (2) how Midjourney acquired or developed each filter; (3) which datasets and model versions each filter was applied to; (4) the purpose and function of each filter; and (5) the threshold criteria Midjourney applied when using each filter to include or exclude images.

## **Midjourney's Position**

Plaintiffs' motion should be denied for one simple reason: Interrogatory No. 3 does not call for the information about filters Plaintiffs now demand. Indeed, the word "filter" is nowhere to be found in that interrogatory. To the extent Plaintiffs wish they had asked about filters, it is not too late for them to serve an interrogatory directed to that topic, subject to the limitations of Rules 26 and 33 and the orders in this case. But Plaintiffs may not use this letter brief to rewrite and expand an earlier interrogatory to which Midjourney has already appropriately responded.

"In reviewing a claim that an answer to an interrogatory is not responsive or is incomplete, the initial focus is on the question, not the answer, for on the question you ask depends the answer you get." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 323 (N.D. Ill. Aug. 26, 2005); *see also In re Clearview AI, Inc. Consumer Priv. Litig.*, 2022 WL 22903328, at *1 (N.D. Ill. Aug. 25, 2022) ("[C]ourts will not rewrite an interrogatory to seek information that is not requested by its plain terms."); *Tapia v. Huntington Park Police Dep't*, 2010 WL 11549657, at *1 (C.D. Cal. May 5, 2010) (same). Here, Plaintiffs asked Midjourney to "Describe in detail the process by which You train AI Image Models, including data acquisition, pre-training, post-training, fine-tuning, benchmarking, validating, and ablation studies." Midjourney did exactly that.

Midjourney's response to Interrogatory No. 3 provided a lengthy account of each step of its training process. Midjourney identified the LAION datasets it acquired, explained what steps Midjourney took at each training stage mentioned in the interrogatory, and voluntarily disclosed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ it applied and what they were designed to do (i.e. ▓▓▓▓▓▓▓▓▓▓▓▓

3

▮▮▮▮▮▮▮▮▮ as training data). *See* Kessler Decl., Ex. A. That response squarely and fully addressed what Plaintiffs asked. *Tapia*, 2010 WL 11549657, at *1 ("While some of [the non-moving party's] responses might lack the additional details that [the moving party] would prefer, the responses do not necessarily violate Rule 33, which simply directs that each interrogatory be answered 'fully.'"). Yet Plaintiffs do not meaningfully engage with Midjourney's response in this letter brief or whether it was fully responsive to the interrogatory they served. They instead largely ignore it and pretend that they served a different interrogatory altogether.

Plaintiffs argue that Midjourney's response to Interrogatory No. 3 does not satisfy Rule 33 because Midjourney did not provide an exhaustive, version-by-version disclosure of filter names, thresholds, provenance, and dataset-specific applications. They ask the Court to order Midjourney to "identify: (1) each filter by name; (2) how Midjourney acquired or developed each filter; (3) which datasets and model versions each filter was applied to; (4) the purpose and function of each filter; and (5) the threshold criteria Midjourney applied when using each filter to include or exclude images." Critically, none of those additional, detailed questions appears in or is reasonably encompassed in ROG 3, **which does not mention filters at all**, much less ask for a detailed description of what Midjourney did ***not*** train on and how it identified those documents. Plaintiffs cannot "effectively rewrite [their interrogatory] via their motion to compel, nor [should] this Court do it for them in adjudicating the motion." *In re Clearview AI*, 2022 WL 22903328, at *2; *Frieri v. Sysco Corp.*, 2017 WL 3387713, at *3 (S.D. Cal. Aug. 4, 2017) (denying motion to compel because court is not obligated to "rewrite" interrogatories to accommodate plaintiffs' attempt to "gather the information intended"); *Tapia*, 2010 WL 11549657, at *1 ("A party cannot be compelled to submit a different answer to a question simply because the opposing party was hoping to receive a different answer."). "A party can be ordered to answer only those interrogatories that were actually posed." *In re Clearview AI*, 2022 WL 22903328, at *1 (citation omitted).

Plaintiffs' efforts to distinguish the cases cited by Midjourney are unavailing. Plaintiffs' requested relief must be denied precisely because (in Plaintiffs' words) it "stretch[es] Interrogatory No. 3] far beyond what was called for in the initial request." And Plaintiffs' own summary parenthetical for *In re Sulfuric Acid Antitrust Litig.* proves the point. In *In re Sulfuric Acid Antitrust Litig.*, the court denied plaintiffs' motion to compel a supplemental interrogatory response, finding that "seeking annual volume of storage of production of sulfuric acid [did] not encompass *reasons for* the reduction in volume." 231 F.R.D. 323 (emphasis in original). So too here. A general interrogatory that requests a description of "the process by which You train AI Image Models" does not encompass detailed information about all filters Midjourney has used, who developed them, the settings they used, or Midjourney's reasons/purpose for using those filters.

Plaintiffs' arguments that "[f]ilter details [] bear on fair use" and "also bear on willfulness" are of no moment. Leaving aside that Plaintiffs misstate how Midjourney used filters and misconstrue the fair use analysis, the question is not whether minutiae about filters might be within the proper scope of discovery under Rule 26. Rather, the only question properly presented here is whether Interrogatory No. 3 in fact asks for the information Plaintiffs now demand. *Id*. It does not.

4

Plaintiffs also improperly suggest that Midjourney's decision, following Plaintiffs' request in meet and confer, to add information about the filters it used by way of a supplemental response constitutes an admission that the information they now seek falls within the scope of Interrogatory No. 3 and demonstrates that Midjourney's responses are deficient. That is incorrect. The fact that Midjourney voluntarily provided detail beyond that called for by the interrogatory shows only that it attempted in good faith to "save time and effort" and avoid an unnecessary discovery dispute. *In re Clearview AI*, 2022 WL 22903328, at *2. Indeed, the specificity of the new five-part interrogatory Plaintiffs are asking Midjourney to answer by way of this letter brief exceeds what they asked for in meet and confer.

Although beside the point, Plaintiffs' arguments regarding the purpose and function of the watermark filter is especially misinformed and misleading. As Midjourney explained in its response to Interrogatory No. 3, it used a watermark filter ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Kessler Decl., Ex. A. Midjourney likewise used filters to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, among other categories. *Id.* And it specifically stated: "Midjourney ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" *Id.* (emphasis added). Thus, Plaintiffs' repeated characterization that Midjourney applied filters to identify certain kinds of images and "train [on them] anyway" is exactly wrong, and ignores the response Midjourney provided. It also renders Plaintiffs' cases about removing watermarks or copyright management information wholly inapposite (and such claim is no longer even in the case). And Plaintiffs also badly mischaracterize documents from Midjourney's production. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and is fully consistent with Midjourney's response to Interrogatory No. 3.



Plaintiffs also cite to Midjourney's document production in arguing that "Midjourney's own documents list specific filters by name and version number." It is unclear why Plaintiffs believe this helps their cause. The fact that Midjourney has produced documents about the filters it uses – e.g. documents that provide the specific filter "names and version number[s]" (*e.g.* Kessler Decl., Ex. D) and internal communications discussing how they were used (*e.g.* Kessler Decl., Ex. B) – serves only to show that Midjourney has been transparent about these matters and that Plaintiffs already possess information about the identity and general function of the filters Midjourney deployed. It does not make this same information responsive to Interrogatory No. 3.

In conclusion, if Plaintiffs want more specifics about the filters Midjourney used in the form of an interrogatory response, they are welcome to serve one or more new interrogatories, subject to the constraints of Rules 26 and 33, and Midjourney will timely respond. But they cannot fault Midjourney for refusing to respond to an interrogatory they never served, or for insisting that Plaintiffs abide by the formalities of the Federal Rules. Nor can they use a motion to compel to expand one of their preexisting interrogatories beyond its plain terms to avoid having to serve another that counts against their Rule 33 limit. For these reasons, the Court should deny Plaintiffs' request to compel further supplementation of Midjourney's response to Interrogatory No. 3.

Dated: December 17, 2025                     Respectfully Submitted,

                                                          By: */s/ Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
afernandez@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
hbenon@saverilawfirm.com
acera@saverilawfirm.com
azeng@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email:  mb@butericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: December 17, 2025					Respectfully Submitted,

By: /s/ Angela Dunning

Angela Dunning
Sam Blankenship
**CLEARY GOTTIEB STEEN & HAMILTON LLP**
1841 Page Mill Road
Ste 250
Palo Alto, CA 94304-1248
650-815-4131
Email: adunning@cgsh.com
Email: sblankenship@cooley.com

Arminda B. Bepko
Charity E. Lee
**CLEARY GOTTIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
212-225-2558
Email: abepko@cgsh.com
Email: charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

## SIGNATURE ATTESTATION

I, Joseph R. Saveri, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the other signatory.

Dated: December 17, 2025

By: */s/ Joseph R. Saveri*
Joseph R. Saveri