**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br>　　　　　　Plaintiffs,<br>　　v.<br>STABILITY AI LTD., et al.,<br>　　　　　　Defendants. | Case No. 23-CV-00201-WHO (LJC)<br><br>**PLAINTIFFS' MOTION TO MODIFY CASE SCHEDULE**<br><br>Judge: Hon. William H. Orrick |

Pursuant to Fed. R. Civ. P. 16, Civil Local Rule 6-3, this Court's inherent authority, and for the reasons set forth below and in the Declaration of Evan Creutz ("Creutz Decl."), Plaintiffs move to modify the scheduling order as set forth in the accompanying proposed order.

This class action against *four* separate artificial intelligence companies—the first of its kind to be filed in the United States—is an important and highly complex matter that will decide whether purveyors of image-generating AI technologies, like Defendants, may, without permission, use copyrighted works to develop and commercialize their products. This precedent-setting case is thus of critical importance for the proposed class of U.S. copyright holders who stand on the precipice of losing control over, and the economic value of, their intellectual property. Adjudication of key issues in this case demands a complete evidentiary record, one that cannot be assembled under the current schedule. *See generally Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1037 (N.D. Cal. 2025) (emphasizing the need for copyright plaintiffs to establish a complete record to adjudicate issues in AI copyright context).

I.  **GOOD CAUSE EXISTS TO MODIFY THE CASE SCHEDULE**

Once a scheduling order has been filed pursuant to Federal Rule of Civil Procedure 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citing Fed. R. Civ. P. 16 advisory committees notes to 1983 amendment).

A.  **Plaintiffs Have Diligently Prosecuted this Action.**

Plaintiffs have actively pursued discovery. For each Defendant, Plaintiffs have served 3-4 sets of interrogatories and requests for production (between 129 and 142 requests on each Defendant), as well as requests for admission. *See* Creutz Decl., ¶ 3. In pursuing responses to these requests, Plaintiffs have conferred with Defendants dozens of times. *Id*. Over this time period, each Plaintiff has also responded to more than 220 requests for production, 12 interrogatories, and 43 requests for admission. Creutz Decl.*,* ¶ 4. To date, Plaintiffs have produced over 24,600 documents and Defendants, collectively, have produced more than 33,900. ECF No. 381 at 2-3. Over the past year, various aspects of this litigation have required extensive judicial intervention, including the negotiation and litigation of the ESI Protocol, the Protective

1  Order (ECF Nos. 248, 249), and Rule 72 motions related thereto (ECF Nos. 265, 266). The parties have
2  also negotiated (and litigated aspects of) a deposition protocol—a proactive measure noticeably absent
3  from the majority of other AI-related litigations currently pending in this district. Beyond these disputes
4  over basic discovery frameworks, the parties have litigated significant disputes regarding the scope of
5  discovery (ECF No. 307), and the disqualification of Plaintiffs' expert, Dr. Ben Zhao, a matter that
6  necessitated three separate rounds of briefing and ultimately impeded Plaintiffs' expert search. *See* ECF
7  Nos. 300, 302, 325, 331.

8          **B.**      **The Scarcity of Qualified Experts in Generative AI Independently Supports Extension.**

9          In its August 29, 2025 Order, the Court indicated it would permit a modification of the case
10 schedule should Plaintiffs require additional time to retain an expert following the disqualification of their
11 previous candidate. *See* ECF No. 337 at 2. As previously briefed, experts in the nascent field of generative
12 AI—specifically image diffusion—are exceptionally scarce. *See* ECF Nos. 300, 302, 325. This scarcity is
13 exacerbated by major AI companies leveraging substantial resources to recruit top academic talent, and by
14 institutional conflicts or restrictive consulting agreements that preclude many leading experts from
15 participating in litigation against the industry. Despite these challenges, Plaintiffs have exercised diligence
16 in their search. To date, Plaintiffs have contacted more than twenty potential candidates; these efforts have
17 yet to yield an available testifying expert. Creutz Decl., ¶ 5.

18         Good cause exists for an extension because the absence of a testifying expert prevents
19 development of a complete evidentiary record. A machine learning expert must first develop familiarity
20 with the underlying technology—transformer architectures, diffusion models, and training pipelines—to
21 trace how copyrighted works flow through each stage of model development. The expert must then review
22 voluminous technical documentation, including data cards, model cards, internal technical reports, and
23 pipeline specifications. This requires cross-referencing multiple document types to reconstruct data
24 provenance: tracing datasets through acquisition, processing, storage, and ingestion into trained models.
25 The expert must also synthesize testimony from multiple technical witnesses—data acquisition engineers,
26 model developers, and product managers—correlating their accounts with documentary evidence.

27         This undertaking is compounded by the multi-defendant nature of this litigation. Four defendants
28 means four distinct technical infrastructures, four proprietary training pipelines, and four unique

documentary records. The expert cannot extrapolate findings across defendants; each must be independently analyzed. The expert must reconstruct four separate data provenance chains, evaluate four sets of specifications, and develop four independent technical narratives.

Given the magnitude of such work, the testifying expert must be engaged throughout discovery, not merely at the report-writing stage. Creutz Decl., ¶ 13. Only the expert can identify which documents and testimony are material to specific conclusions. *Id.* Without that guidance, counsel cannot know what evidence to pursue or what questions to pose. *Id.* If fact discovery closes before Plaintiffs are able to engage a testifying expert, they will be unable to cure evidentiary gaps the expert identifies. While Plaintiffs have retained consulting experts to assist with preliminary data analysis—such as identifying works within public datasets—these consultants cannot substitute for a testifying expert who can "elucidate the core technical matters at issue for the Court and Jury." ECF No. 300 at 2. Indeed, Plaintiffs' current consulting experts have indicated that they do not intend to serve as testifying experts.[1] Creutz Decl., ¶ 6.

### C. Outstanding Productions Prevent Development of the Evidentiary Record.

Good cause exists to extend the fact discovery deadline based on outstanding issues concerning Defendants' document production. Plaintiffs are filing this motion shortly after their analyses—conducted with reasonable diligence—revealed the lack of substantive, responsive evidence produced to date.

Prior to the substantial completion deadline (October 3, 2025) only Defendants Stability, Runway and Midjourney produced any documents (a total of 3,286) (due in part to the fact that an ESI Protocol and Protective Order were not in place until April 15, 2025). In October 2025, the Defendants collectively produced 18,741 documents; in November 2025, 2,412 documents were produced; in December 2025, an additional 2,648 documents; and so far in January 2026, a total of 6,883 documents have been produced.

Although the total numbers may imply otherwise, analysis of the production reveals little evidentiary value. Over 80% of the custodial emails produced by Stability, and over 85% of the custodial emails produced by Runway, are non-substantive automatic notifications from third parties. Creutz Decl., ¶ 7. Midjourney has produced few custodial emails (508), and the volume of Slack and other messages

---

[1] Plaintiffs provide this information in the interest of transparency. Plaintiffs reserve all rights and do not waive any privileges or work product protection.

produced by all of the Defendants has been materially deficient. *Id.*, ¶ 8. The overwhelming majority of documents are not useful to Plaintiffs in preparing for depositions. *Id.*

Through their review, Plaintiffs have identified and requested additional custodians from Stability, Runway, and DeviantArt. Stability and Runway have not given Plaintiffs their final position on these additional custodians, and DeviantArt has represented it requires until February to comply with the Court's December 12 Order compelling production of four custodial files. *See* ECF No. 225. Creutz Decl., ¶ 9. (All told, this represents a two-month timeline for collecting and producing four custodial files following a Court order compelling production.) And, after receiving the productions, Plaintiffs will require sufficient time to review these specific custodial files before conducting the corresponding depositions. Several of these custodians are technical employees who possess direct knowledge of these Defendants' model training practices.[2] Deposing them before C-suite witnesses is essential: without foundational testimony establishing what the Defendant actually built and how, executive depositions will lack the factual predicate necessary to probe intent, a critical element of the fair use inquiry. The current schedule provides insufficient time between anticipated document production and the close of fact discovery to depose these witnesses.

The standard for reasonable diligence is not perfection.[3] Defendants' own tactical maneuvering plays a role in the pace of discovery. As well, the technical complexity of generative AI litigation renders the discovery process inherently iterative and time-intensive.[4] Without an extension, the parties risk adjudicating the core question of fair use on an incomplete and superficial record.

---

[2] DeviantArt has also not produced any source code despite its commitment three months ago to do so. Creutz Decl., ¶ 10.

[3] "[R]easonable diligence does not demand perfection." *M.H.C. v. Cnty. of Los Angeles*, No. 2:18-cv-08305-MWF-AFM, 2019 WL 13242561, at *4 (C.D. Cal. Nov. 5, 2019) (cleaned up); *see also C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1195 (C.D. Cal. 2009), *aff'd sub nom. C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975 (9th Cir. 2011) (finding that a party acted diligently despite not taking "the most prudent course of action" because the party's action could not "be characterized as negligent or careless"); *Shuey v. Cty. of Ventura*, No. 2:14-cv-09520-ODW-AGR, 2016 WL 4367224, at *4 (C.D. Cal. Aug. 11, 2016) (party acted diligently and showed good cause under Rule 16(b) because determining the party "could have learned" about the issue sooner "does not compel a finding that they acted without reasonable diligence.").

[4] For example, on November 6, after Plaintiffs identified certain 'style models' in Midjourney's October production, it took over six weeks of meet-and-confer efforts for Midjourney to determine if the models were responsive to discovery requests. Creutz Decl., ¶ 11. During this period, Midjourney's counsel cited the need for extensive internal investigation into their own technical infrastructure before they could

## II. CONCLUSION

In sum, despite Plaintiffs' diligence, the technical and procedural complexities of this litigation have resulted in a discovery pace slower than initially projected. Plaintiffs' proposed extension is narrowly tailored to ensure the remaining discovery is completed on a timeline that is realistic and achievable. Each ground independently satisfies Rule 16(b)(4)'s good cause standard. Without the requested extension, the fair use question will be adjudicated on an incomplete record. Plaintiffs request the Court amend the pretrial schedule as set forth in the accompanying proposed order.[5]

---

meaningfully respond. *Id*. Although Midjourney finally agreed to supplement its responses on December 19, 2025, that production remains outstanding. *Id.* This timeline illustrates the extraordinary time required for technical verification and understanding in this nascent field.

[5] If the Court grants leave to amend (ECF No. 376), Plaintiffs will complete discovery on their new claims within the proposed schedule and do not anticipate seeking further extensions to accommodate those claims.

| | | |
|---|---|---|
| Dated: January 23, 2026 | By: | /s/ *Joseph R. Saveri* |
| | | Joseph R. Saveri |

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan Creutz (SBN 349728)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: ebuchanan@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butterticklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*