[Counsel listed on signature pages]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br><br>    Individual and Representative Plaintiffs,<br><br>vs.<br><br>STABILITY AI LTD., et al.,<br><br>    Defendants. | CASE NO. 3:23-cv-00201-WHO (LJC)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CASE SCHEDULE**<br><br>Judge:　The Honorable William H. Orrick |

## I. Introduction

Plaintiffs' motion to add four months to the case schedule ("Motion") (Dkt. 391) is untethered to any demonstrated need and thus fails to show good cause. Defendants have met their discovery obligations in good faith for over a year, and any inadequate preparation results from Plaintiffs' own dilatory behavior. Plaintiffs chose to bring this litigation against Defendants, and this matter is no more "highly complex" than when the existing schedule was entered. That schedule already affords ample time for necessary discovery. Accordingly, the Court should deny the Motion or, if an extension is deemed necessary, adopt Defendants' more modest counterproposal in the accompanying proposed order.

## II. Background

On January 7, Plaintiffs first alerted Defendants—via language inserted in a draft case management statement—of their intent to seek a schedule extension, without details. Botwinick Decl. ¶ 3. On January 13, after Defendants requested more information, Plaintiffs proposed a blanket four-month extension to all deadlines and demanded a next-day response, threatening to move otherwise. *Id.* ¶ 4. Defendants asked for time to consider and, on January 19, offered a compromise: one additional month for fact discovery and two for expert-related deadlines. *Id.* ¶ 5. At the case management conference the next day, Plaintiffs told the Court they were "meeting and conferring with [Defendants]" about the schedule, and the Court instructed the parties to do so before seeking judicial intervention. Dkt. 384, Tr. at 4:2–6; 7:14–17. But last Friday after business hours, Plaintiffs rejected Defendants' proposed compromise via email without explanation and immediately filed their Motion. Botwinick Decl. ¶ 6.

## III. Argument

Modifying a case schedule requires good cause. *See* Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment" and, "[i]f that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Plaintiffs have not been diligent and cannot otherwise demonstrate good cause for the lengthy extension they now seek. Accordingly, the Motion should be denied. Alternatively, the Court should adopt Defendants' more modest extension, which is

tailored to the rationales Plaintiffs provided for needing more time—*i.e.* a one-month extension for factual investigation, and a two-month extension to find a testifying expert.

### 1. Plaintiffs Have Not Diligently Pursued Discovery in this Case.

Plaintiffs' litigation efforts have not been diligent, across all Defendants. To illustrate:

**Stability AI:** Stability AI offers three non-exhaustive examples of Plaintiffs' lack of diligence. ***First***, while Stability AI proposed search terms and custodians on July 9, 2025, Plaintiffs waited nearly two months to respond on August 29, and the parties did not reach agreement until October 8. *See* Dkt. 338 at 16. Stability AI has made rolling document productions since. *See* Dkt. 352 at 3. ***Second***, Plaintiffs waited until just two weeks ago to request additional custodians. *See* Dkt. 381 at 1. ***Third***, Plaintiffs delayed resolving purported training data issues for months. Despite Stability AI offering to make training data available on April 10, 2025 and providing it by June 20, 2025, Dkt. 332 at 3, Plaintiffs waited until December 2025 to meet and confer regarding the data it had available for half a year, Dkt. 381 at 3.

**Runway:** Neither of Plaintiffs' arguments regarding Runway demonstrates good cause. *See* Mot. at 3–4. Until this Motion, Plaintiffs had never raised any concerns with Runway's production of more than 60 terabytes of data and nearly 23,000 documents collected from six custodians. Greenberg Decl. ¶¶ 3–7. Plaintiffs also suggest that Runway has delayed responding to their request for additional custodians, but Plaintiffs made no such request until January 16—***after*** already indicating they would seek modification of the case schedule. *Id*. ¶¶ 18–19. An eleventh-hour request for new custodians—after agreeing to custodians and search terms ***last summer***—does not demonstrate diligence—just the opposite. Indeed, Plaintiffs have been dilatory throughout this case. For example, Plaintiffs waited two months to meet and confer on Runway's responses to their second set of requests for production ("RFPs") and one month for their third set. *Id*. ¶¶ 8–11. To date and despite the Court's order, Plaintiffs have failed to substantively engage with Runway on these requests or clarify what documents they are seeking. *Id*. ¶ 11. Runway has also made its source code available for inspection since August 2025, but Plaintiffs have yet to inspect it despite having retained consulting experts. *Id*. ¶ 6; Mot. at 3. Most egregiously, Plaintiffs agreed to produce certain documents, only to later retract those commitments and delay Runway's

successful motion to compel by months. Greenberg Decl. ¶ 13.

**Midjourney:** Midjourney made approximately 158 TB of training data and its source code available as far back as August 11 and December 19, 2025 respectively, yet Plaintiffs never sought to access either one. Dunning Decl. ¶ 2. Nor until this week have Plaintiffs sought to meet and confer regarding their Fourth Set of RFPs, to which Midjourney served responses and objections on November 3, 2025. *Id.* ¶ 3. And Plaintiffs have yet to request a single Rule 30(b)(1) deposition of any Midjourney employee. This does not show the requisite diligence.

Plaintiffs' complaints about Midjourney's discovery also do not warrant an extension. *First*, Midjourney's production has not been "materially deficient." Mot. at 3-4. Applying negotiated search terms, Midjourney has produced over 10,000 pages of Discord, Slack, and WhatsApp communications; there are fewer custodial emails only because, as Plaintiffs know, Midjourney employees primarily communicate with Discord. Dunning Decl. ¶ 4. *Second*, Plaintiffs' argument that "it took over six weeks" for Midjourney to determine whether certain "style models" were responsive is misleading. Mot. at 4–5 n.4. Midjourney served objections and responses to Plaintiffs' discovery into "auxiliary machine-learning models" on September 3, 2025, requesting to meet and confer on what Plaintiffs meant by this undefined term. Dunning Decl. ¶ 5. When that meeting finally occurred on October 22, 2025, Plaintiffs represented that their request pertained to CLIP models. *Id.* ¶ 6. They first asked about the style reference feature (described on Midjourney's website) on November 6, and on November 25, asked about a materially expanded list of ten purported auxiliary models, many of which are not models at all. *Id.* ¶¶ 7–8. Midjourney has been diligently investigating Plaintiffs' questions as the scope of their initial inquiry has shifted and expanded. In any event, Plaintiffs fail to explain how this has inhibited their case or relates to what they describe as the "core question of fair use." Mot. at 4.

**DeviantArt**: *First*, Plaintiffs have unnecessarily drawn out discovery by serving over one hundred discovery requests relating to DeviantArt's supposed training of Stable Diffusion, *see* Botwinick Decl. ¶¶ 7–8, despite Plaintiffs conceding that "DeviantArt played no role in the scraping or training" of Stable Diffusion's data, *see* Dkt. 223 at 31. Indeed, Plaintiffs have at times served the *exact same* discovery requests on DeviantArt that they served on other Defendants, *see*

Botwinick Decl. ¶ 9 (describing near-identical sets of more than 60 requests), despite DeviantArt being differently situated in this case, *see* Dkt. 223 at 28 (unlike for other Defendants, "[t]he FAC alleges only that DeviantArt incorporates and relies on Stable Diffusion"). Responding to these requests was costly and wasteful, with no discovery benefit. **Second**, Plaintiffs have not diligently responded to DeviantArt's attempts to address Plaintiffs' document requests. Plaintiffs delayed DeviantArt's attempted first production by asking for the production to be put on a hard drive that took Plaintiffs a month to send; waited a month to reply to DeviantArt's attempts to discuss search strings; and delayed for two months before responding to DeviantArt's attempt to discuss Plaintiffs' fourth set of RFPs. *See* Botwinick Decl. ¶¶ 11–12, 14. **Third**, Plaintiffs still have not responded to DeviantArt's request to discuss Plaintiffs' Rule 30(b)(6) Notice of Deposition, which delays the scheduling of depositions. *See* Botwinick Decl. ¶ 15. **Finally**, contrary to Plaintiffs' claim, Mot. at 3, DeviantArt has in fact made two productions prior to the deadline: on May 16, 2025, and on October 3, 2025. *See* Botwinick Decl. ¶¶ 11, 13.

### 2. Plaintiffs' Claimed Difficulty Retaining a Testifying Expert Does Not Establish "Good Cause" for the Requested Extension.

Even had Plaintiffs acted diligently, their purported difficulty finding a testifying expert fails to show good cause. Plaintiffs inaccurately claim that the Court "indicated it would permit a modification of the case schedule should Plaintiffs require additional time to retain an expert." Mot. at 2. But the Court held only that "*[i]f there is good cause* to extend the case schedule to accommodate a need by plaintiffs to seek expert support," the parties should meet and confer and submit a proposed revised case schedule "*if and as necessary*." Dkt. 337 at 2 (emphases added).

Plaintiffs have not carried their burden because they do not offer facts showing diligence in locating a testifying expert—either before or after the Court's August 2025 ruling. To start, Plaintiffs' purported difficulty was foreseeable. By April 2025, Defendants had already objected to Plaintiffs' proposed disclosure of highly confidential data to Dr. Zhao. Dkt. 303-4 at 2–3. Plaintiffs nonetheless chose to proceed with a single-candidate strategy and to litigate that dispute through multiple rounds of briefing, culminating in the Court's Order siding with Defendants. Rule 16 does not reward a party for spending months litigating a foreseeable issue and then offering

only conclusory statements to justify a schedule change.

Now, many months later, Plaintiffs' entire showing on expert-search diligence is one sentence: they have "contacted more than twenty potential candidates for testifying experts" and their "efforts have yet to yield an available" option. Dkt. 391-1 ¶ 5. Plaintiffs do not say when they began their outreach, how they conducted it, what "contacted" means, or why each candidate was unavailable. Absent basic facts, the Court cannot evaluate whether Plaintiffs acted with diligence or whether the existing schedule "cannot reasonably be met." *Johnson*, 975 F.2d at 609. Nor do Plaintiffs identify any concrete plan for how the additional four months they seek would accelerate their search, improve their yield, or address the reasons prior candidates declined. Rule 16 requires more than a vague assertion that additional time would be helpful.

### 3. Plaintiffs Identify No Specific Production "Issues" Necessitating Extension.

Plaintiffs vaguely claim that the volume and substance of Defendants' productions are deficient, but identify no specific missing categories and do not explain what four more months would accomplish. "[A]llegations of delayed production stand naked without specifics as to what still needs to be discovered, and from whom." *Missing Link, Inc. v. eBay, Inc.*, No. 07-cv-04487, 2010 WL 94268, at *3 (N.D. Cal. Jan. 6, 2010) (denying two-month extension because movant lacked "specifics to show good cause as to how [extension] would provide the needed discovery"). Defendants have already produced tens of thousands of documents, and continue to do so before discovery closes. *See* Dkt. 379 (Case Management Statement) at 3–4. If Plaintiffs believe existing productions are inadequate, they can use the regular discovery dispute process.

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion, or if an extension is deemed necessary, adopt Defendants' counterproposal to provide Plaintiffs with narrowly-tailored relief without unduly prolonging the case schedule.[1]

---

[1] If the Court is inclined to grant Plaintiffs additional time beyond Defendants' proposal, Defendants request an opportunity to meet and confer as instructed by the Court, to attempt to jointly propose a schedule keyed off of the new fact discovery close.

| | | |
|---|---|---|
| 1 | Dated: January 29, 2026 | LATHAM & WATKINS LLP |
| 2 | | By: */s/ Brittany N. Lovejoy* |
| 3 | | Andrew M. Gass (SBN 259694) |
| | | andrew.gass@lw.com |
| 4 | | Michael H. Rubin (SBN 214636) |
| | | michael.rubin@lw.com |
| 5 | | Brittany N. Lovejoy (SBN 286813) |
| | | brittany.lovejoy@lw.com |
| 6 | | 505 Montgomery Street, Suite 2000 |
| | | San Francisco, California 94111 |
| 7 | | Telephone: 415.391.0600 |
| 8 | | Sarah F. Mitchell |
| | | sarah.mitchell@lw.com |
| 9 | | 355 South Grand Avenue, Suite 100 |
| | | Los Angeles, CA 90071 |
| 10 | | Telephone: 213.485.1234 |
| 11 | | Simeon Botwinick (pro hac vice) |
| | | simeon.botwinick@lw.com |
| 12 | | 555 Eleventh Street, NW, Suite 1000 |
| | | Washington, D.C. 20004 |
| 13 | | Telephone: 202.637.2200 |
| 14 | | *Attorneys for Defendant DeviantArt, Inc.* |

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated:  January 29, 2026 | MORRISON & FOERSTER LLP |
| 3 | | By: */s/ Aditya Kamdar* |
| 4 | | Joseph Charles Gratz |
| | | *jgratz@mofo.com* |
| 5 | | Tiffany Cheung |
| | | *tcheung@mofo.com* |
| 6 | | Timothy Chen Saulsbury |
| | | *tsaulsbury@mofo.com* |
| 7 | | 425 Market Street |
| | | San Francisco, CA 94105 |
| 8 | | Telephone: 415.268.7000 |
| 9 | | Christopher R. Adler |
| | | *cadler@mofo.com* |
| 10 | | 707 Wilshire Boulevard, Suite 6000 |
| | | Los Angeles, CA 90017-3543 |
| 11 | | Telephone: 213.892.5200 |
| 12 | | Aditya Vijay Kamdar |
| | | *akamdar@mofo.com* |
| 13 | | 2100 L Street NW, Suite 900 |
| | | Washington, D.C. 20037 |
| 14 | | Telephone: 202.887.1500 |
| 15 | | *Attorneys for Defendants Stability AI Ltd.* |
| | | *And Stability AI, Inc.* |
| 16 | | |
| 17 | | |
| 18 | Dated:  January 29, 2026 | KEKER, VAN NEST & PETERS LLP |
| 19 | | By: */s/ Paven Malhotra* |
| 20 | | David Jason Silbert |
| | | *dsilbert@keker.com* |
| 21 | | Bailey Wilson Heaps |
| | | *bheaps@keker.com* |
| 22 | | Julia Leigh Greenberg |
| | | *jgreenberg@keker.com* |
| 23 | | Luke P. Apfeld |
| | | *lapfeld@keker.com* |
| 24 | | Paven Malhotra |
| | | *pmalhotra@keker.com* |
| 25 | | 633 Battery Street |
| | | San Francisco, CA 94111-1809 |
| 26 | | Telephone: 415.391.5400 |
| 27 | | *Attorneys for Defendant Runway AI, Inc.* |
| 28 | | |

Dated: January 29, 2026

CLEARY GOTTIEB STEEN & HAMILTON LLP

By: /s/ Angela Dunning

Angela Dunning
 adunning@cgsh.com
Sam Blankenship
 sblankenship@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: 650.815.4131

Arminda B. Bepko
abepko@cgsh.com
Charity E. Lee
charitylee@cgsh.com
One Liberty Plaza
New York, NY 10006
Telephone: 212.225.2558

*Attorneys for Defendant Midjourney, Inc.*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

  The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: January 29, 2026          */s/ Brittany N. Lovejoy*
                       Brittany N. Lovejoy