March 19, 2026

**Via ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Andersen, et al v. Stability AI Ltd., et al.,* Case No: 3:23-cv-00201-WHO (LJC)

Dear Judge Cisneros,

In accordance with Section F(5) of Your Honor's Civil Standing Order, Plaintiffs and Defendants Stability AI Ltd. and Stability AI, Inc. write to request the Court's assistance with a discovery dispute about one interrogatory response seeking information about Stability AI's enterprise customers. The parties' counsel already have made a good faith effort to resolve the issues set forth in this letter, including a conference by video on February 5 and March 13, before filing this letter.

**Relevant Dates**
As required by the Court's Standing Order, below are the dates relevant to discovery:

- Next Joint Status Conference with Judge Cisneros: April 16, 2026
- Close of Fact Discovery: June 1, 2026
- Close of Expert Discovery: July 17, 2026

**Questions Presented**
Whether Stability AI should be required to respond to an interrogatory by providing a list of all of its enterprise customers and the user names and full names associated with each account holder (Interrogatory No. 14).

**Plaintiffs' Position**

Denial of Plaintiffs' motion to compel (the "Motion") a response to one straightforward interrogatory would be antithetical to Rule 26 principles. Plaintiffs' Interrogatory 14 asks Stability to "[i]dentify all of your enterprise Partners. For each enterprise Partner, identify the user names and full names associated with each account holder."[1] This discovery is directly relevant and proportional to the needs of the case because it bears on two important issues the Court will adjudicate in connection with Stability's anticipated fair use defense. Specifically, 1) the degree and nature of commerciality of Stability's use under the first fair use factor, and 2) marketplace harm and substitution under factor four. Plaintiffs make their livelihoods through the sale and licensing of their works, and through the services they provide to companies in need of visual art assets. It is no secret that Defendants' products have the ability to output works of art of such quality that they may substitute the need for human-created works and services, like those of Plaintiffs. Indeed, it is only because of the alleged copying of Plaintiffs' and the Class's protected expression—the amalgamation of a lifetime of human experience, training, practice, refinement, and iteration—that Stability's products have this ability. Interrogatory 14 is not a request for discovery untethered to any articulated theory. Rather, it is a targeted request that seeks a discrete corpus of information uniquely with Stability's possession. Plaintiffs need this evidence of actual and potential substitution to provide the Court with a complete record at summary judgment.

**Fair use factor one.** The list of Stability's enterprise users is germane to the fair use factor one analysis because it is relevant to the degree of commerciality of Stability's unauthorized use of Plaintiffs' asserted works. "The first fair use factor, the purpose and character of the use, including whether such use is of a commercial nature… § 107(1), considers the reasons for, and nature of, the copier's use of an original work. *The central question it asks is whether the use merely supersedes the objects of the original creation ... (supplanting the original)*, or instead adds something new, with a further purpose or different character." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 509 (2023) (cleaned up, quotation omitted, and emphasis added) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). [T]he first factor relates to the problem of substitution – copyright's bête noire." *Id*. at 528. The Stability products and services at-issue *serve the same purpose as Plaintiffs' works* – that is to produce high quality visual artwork, thereby "merely supersed[ing] the objects of" Plaintiffs' "original creation." *Andy Warhol Found. for the Visual Arts, Inc.*, at 528.

The evidence is also relevant because it bears on the degree of commerciality under fair use factor one. In the Ninth Circuit, the inquiry into commerciality is "a matter of degree, not an absolute." *See, e.g., Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992). To assess the *degree* of commerciality, the Court should order the production of the enterprise customer lists, which will reveal helpful information such as whether Stability's customers are commercial entities, and the identities of those customers. The identities of Stability's enterprise customers will reveal whether Stability's users include commercial entities that operate in the same industries and markets as Plaintiffs, such as video game producers, tabletop games, entertainment

---

[1] Plaintiffs clarified during conferral that "enterprise partners" refers to customers who maintain or have maintained an enterprise license with Stability. As well, Plaintiffs proposed a compromise modification of interrogatory No. 14: Identify all of your enterprise Partners *who used any Stability AI product or service at issue in this litigation.*

1

companies, publishers, or other frequent purchasers of commissioned or licensed high quality visual art. This basic information goes to whether Stability's use merely supplants Plaintiffs' original creation. *Andy Warhol Found. for the Visual Arts, Inc.*, 598 U.S. at 509. To the extent Stability's customer list contains the same entities that Plaintiffs have done business with, have negotiated with, or solicited their services to, evidence of such overlap goes to the degree of commerciality and will therefore aid the Court's analysis of fair use factor one.

While Stability claims this evidence overlaps with an RFP for Stability's customer's use case descriptions, the two requests are distinct. To the extent enterprise customers are not disclosing their use cases to Stability's document custodians, or if those communications do not hit upon the agreed upon search terms, Plaintiffs will never obtain evidence of those commercial relationships through the RFP in question.

**Fair use factor four.** The evidence sought will also aid the Court in analyzing the fourth fair use factor. "The fourth factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor is "undoubtedly the single most important element of fair use." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985). Factor four "encompasses both (1) the extent of market harm caused by the particular actions of the alleged infringer, and (2) whether unrestricted and widespread conduct of the sort engaged in by the defendants would result in a substantially adverse impact on the potential market for the original and the market for derivative works." *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1163 (9th Cir. 2022) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)) (cleaned up).

Here, the Stability products and services at-issue "bring[] to the marketplace a competing substitute for the original, or its derivative, so as to deprive rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015). Plaintiffs seek the Stability customer lists so they can cross reference them with Plaintiffs' own actual or potential customers. Evidence of overlap would show that Stability and Plaintiffs compete in the same marketplace for visual art. Such evidence would demonstrate that Stability's products and services create a competing substitute for Plaintiffs and their original work, and thus would help the Court in analyzing fair use factor four. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1051 (N.D. Cal. 2025). And courts routinely order the production of this type of material. *See, e.g., Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F. Supp. 234, 237 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir.1977) (customer list produced subject to protective order); *telSPACE, LLC v. Coast to Coast Cellular, Inc.*, No. 2:13-cv-01477 RSM, 2014 WL 4364851, at *2 (W.D. Wash. Sept. 3, 2014) (ordering production of customer list).

Stability attempts to reverse the discovery inquiry by claiming the request is untethered to any concrete theory of harm. Not so. The enterprise customer identities are the very means by which Plaintiffs can articulate market harm with the specificity that Stability demands *because evidence of competitive overlap and substitution lies almost exclusively within Stability's possession, custody, and control.* This Court followed the correct approach in a similar case where it expressed a reluctance to foreclose Plaintiffs' ability to take discovery to advance theories to counter fair use. *See, e.g., In re Mosaic LLM Litig.*, No. 24-cv-01451-CRB (LJC), 2025 WL

2

2294910, at *4 (N.D. Cal. Aug. 8, 2025). The Court should follow the same approach here where Plaintiffs have identified a corpus of data in Stability's possession that is highly relevant to the determination of fair use, and where the associated burden of production is relatively low. *See, e.g., Sing Chuen L. v. AAE Corp*., No. 1:17-cv-10248-KPF, 2018 WL 4804687, at *6 (S.D.N.Y. Oct. 4, 2018) ("Defendant[] ha[s] not explained why compiling an Excel spreadsheet would be unduly burdensome, and the Court has no independent reason to believe that it would be.").

The discovery sought is proportional to the needs of the case. Compiling a list of enterprise customers and associated names is not unduly burdensome, especially where the information is maintained in Stability's ordinary course of business. *See, e.g., Edge Sys. LLC v. Ageless Serums LLC*, No. 2:20-cv-09669-FLA-PVC, 2021 WL 4497505, at *15 (C.D. Cal. Aug. 20, 2021) (granting motion to compel "sales summaries, spreadsheets, profit and loss statements, or any other document which it uses to track or assess its success in the marketplace").

Stability's confidentiality concerns are adequately addressed by the Protective Order, which Plaintiffs will continue to comply with. Moreover, "Defendant's privacy objections must yield to Plaintiff's request for the information." *Khalilpour v. CELLCO Partnership*, No. 3:09-cv-02712-RS, 2010 WL 1267749 (N.D. Cal. Apr. 1, 2010); *Live Nation Merch., Inc. v. Miller*, No. 4:13-cv-03936-CW, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (finding confidentiality objections "unwarranted considering the protective order in this case" and "the relevance of the documents.").

Finally, Stability's proposal is not tenable because it improperly conditions discovery—not on Rule 26 principles—but on Plaintiffs' ability to specify market harm that, in the first instance, requires access to Stability's enterprise customer list. Moreover, broad categories compress distinct market participants into amorphous labels, ultimately shielding the information necessary to show specific market substitution.

### Defendants' Position

Stability AI respectfully submits that the Court should not compel a further response to Interrogatory No. 14. In brief, (i) it would require the disclosure of highly sensitive commercial information that is disproportionate to the needs of the case and untethered to any concrete theory of harm that Plaintiffs have articulated, and (ii) it is unnecessary given discovery that Plaintiffs already possess concerning Stability AI's enterprise customers and their commercial applications.[2]

**Plaintiffs' own discovery responses foreclose their claimed need for the customer list.** Plaintiffs' principal justification for this request is that they wish to cross-reference Stability AI's enterprise customers against their own "actual or potential customers" to see whether any overlap exists. But in their own supplemental responses to Defendants' Interrogatory No. 7, each Plaintiff already stated:

---

[2] Indeed, even if this Interrogatory were limited as Plaintiffs propose in their footnote 1 above, it would pose all of these problems, as it still would demand a comprehensive list of every enterprise customer who has used any of the Stability AI products at issue and the names of every associated account holder.

> While Plaintiff has experienced a decline in business opportunities related to [his or her] work as an artist in the last few years, Plaintiff has no additional factual information, presently within [his or her] knowledge, to provide with respect to lost sales, opportunities, and/or licenses for [his or her] ASSERTED WORKS.

In other words, Plaintiffs identify no lost customer, forgone commission, lost license, or defined market segment—yet they demand Stability AI provide its entire list of enterprise customers in the hope that it will supply the evidence they lack. Their request is merely a "fishing expedition based on suspicion and assumption rather than a request for discoverable material premised on concrete facts and assertions." *In re OpenAI ChatGPT Litig.*, No. 23-cv-03223-AMO (RMI), 2024 WL 2044625, at *2 (N.D. Cal. May 7, 2024) (denying motion to compel interrogatory responses for list of individuals and entities).

That Plaintiffs have not identified any concrete instance of competitive displacement from their own records undermines the premise that Stability AI's customer list will fill the gap. *See* Fed. R. Civ. P. 26(b)(1) (proportionality analysis considers "the parties' relative access to relevant information").

Plaintiffs' contention that evidence of competitive overlap "lies almost exclusively within Stability's possession" inverts the analysis. Plaintiffs know their own customers, market segments, and business relationships—they need not look at Stability AI's records to identify entities from which they have received or sought commissions. Their inability to identify a single lost customer or diverted sale reflects the absence of an articulable theory of competitive displacement—not an information asymmetry that broad discovery should cure. *In re OpenAI ChatGPT Litig.*, 2024 WL 2044625, at *2 (denying discovery into identities premised on what information third parties "*may* have" rather than "actually *would* have" (emphases in original)).

**Plaintiffs' factor one commerciality argument is a solution in search of a problem.** Plaintiffs assert that they need Stability AI's customer list because it bears on the degree of commerciality under fair use factor one. But the parties have long agreed to a set of search terms that specifically target the commercial use of Stability AI's products at issue, including the terms "use case" and "business case." *See* Plaintiffs' RFP No. 27 ("All Documents and Communications concerning actual or potential use cases of the Stability Image Models."). And Stability AI already has produced documents that capture the commercial nature of its enterprise customers' applications without requiring disclosure of its full customer list and every individual account holder's identity. Any marginal value the customer list would add is minimal, while the competitive sensitivity is substantial.

Plaintiffs also argue that Stability AI's customer list will reveal whether those customers are commercial entities that operate in the same industries as Plaintiffs. But Plaintiffs' own narrowing limits the request to customers with an enterprise license, which by definition is for "enterprise, API providers, and businesses with annual revenue exceeding $1M" and includes "Commercial Use." *See* https://stability.ai/license. In other words, Plaintiffs' interrogatory already targets a commercial population, and disclosing the identities of these commercial users would add nothing to the factor one analysis.[3]

---

[3] In their latest edits, Plaintiffs removed their prior argument that Stability AI's customer list

**Plaintiffs' authorities do not support the relief they seek.**  Although Plaintiffs claim that "courts routinely order the production of this type of material," the cases they cite for this proposition are inapposite.  *Chesa* was a post-liability damages proceeding following an injunction, contempt findings, and obstructive discovery.  425 F. Supp. at 236.  And in *telSPACE*, the court found that a request for a "complete" customer list was overbroad and limited the production at issue to customers who specifically transitioned from the plaintiff's software to the defendant's replacement. 2014 WL 4364851, at *2-3.

Plaintiffs' remaining authorities do not advance their position.  As an initial matter, Stability AI does not contend that compiling a customer list is necessarily unduly burdensome. Stability AI's primary objection is that the request is disproportionate and untethered to any concrete theory of harm.  Plaintiffs' citations to *Edge Systems* and *Sing Chuen* on burden are therefore inapposite.  Nor do *Live Nation* and *Khalilpour* support the proposition that the Protective Order entitles Plaintiffs to discovery they have not shown to be relevant.  In *Live Nation*, the court compelled production of redacted artist information in already-produced documents that was directly tied to plaintiffs' breach claims related to the defendant's failure to provide an accounting.  2014 WL 1877912, at *3.  And in *Khalilpour*, the information compelled was "not particularly sensitive" and was tied directly to the plaintiff's ability to meet his class certification burden.  2010 WL 1267749, at *3.  The common thread is that each court required a concrete nexus between the discovery sought and the requesting party's articulated theory of harm—a nexus Plaintiffs have not established here.  Plaintiffs can identify no lost customers, commissions, licenses, or defined market segments.  Plaintiffs therefore cannot meet the Court's requirement in *Mosaic* that the sought discovery be "substantially needed and highly relevant." 2025 WL 2294910, at *4.

**Stability AI has proposed a reasonable path forward.**  Even in light of the above, Stability AI remains open to a reasonable compromise that would provide Plaintiffs with genuinely relevant responsive information without requiring disclosure of Stability AI's full enterprise customer list.

If Plaintiffs can identify with any specificity the customers, commissions, licenses, or market segments they contend have been affected, and when they believe that might have occurred, Stability AI would consider providing information regarding any such overlap.  But Plaintiffs rejected this proposal during the parties' meet and confer, refused to provide even threshold information about their claimed harm, and instead demanded Stability AI's full customer list first so they could search for any possible overlap later.  That approach inverts the discovery process and should not be sanctioned by the Court.  Plaintiffs' objection that this proposal "improperly conditions discovery" on their ability to specify harm misunderstand the proportionality requirement of Rule 26(b)(1).  Indeed, the approach mirrors *telSPACE*, where the court limited customer list production to customers with a demonstrated nexus to the claimed injury.  2014 WL 4364851, at *2-3.

would reveal whether its customers are merely "hobbyists and art students." That concession is telling: it confirms that enterprise license holders are, by definition, commercial entities—and that the customer list would add nothing to the commerciality inquiry.

5

Dated: March 19, 2026                    Respectfully Submitted,

By:  */s/ Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: March 19, 2026                    Respectfully Submitted,

By:  */s/ Aditya Vijay Kamdar*

Aditya Vijay Kamdar (SBN 324567)
Brittany Warren (*pro hac vice*)
**MORRISON & FOERSTER LLP**
2100 L Street NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: akamdar@mofo.com

6

Email: bwarren@mofo.com

Joseph Charles Gratz (SBN 240676)
Tiffany Cheung (SBN 211497)
Timothy Chen Saulsbury (SBN 281434)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Email: jgratz@mofo.com
Email: tcheung@mofo.com
Email: tsaulsbury@mofo.com

Christopher R. Adler (SBN 324567)
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Email: cadler@mofo.com

Mark Alan Lemley (SBN 155830)
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 906-8657
Email: mlemley@lex-lumina.com

*Counsel for Defendants Stability AI Ltd. And Stability AI, Inc.*

7

## ATTESTATION PURSUANT TO CIVIL L.R. 5-1

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: March 19, 2026                                         */s/ Joseph R. Saveri*
                                                             Joseph R. Saveri