April 2, 2026

**VIA ECF**

The Honorable Lisa J. Cisneros
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

       Re:    *Andersen, et al. v. Stability, et al.*, Case No. 3:23-cv-00201-WHO (LJC)

Dear Judge Cisneros:

In accordance with Section F(5) of the Court's Civil Standing Order for Magistrate Judge Lisa Ciscneros, Plaintiffs and Defendant DeviantArt respectfully submit this joint statement regarding the dispute over pre-certification absent class member discovery. The next joint status conference is on April 16, 2026. Fact discovery closes on June 1, 2026. Expert discovery closes on October 18, 2026. Class certification and summary judgment motion deadlines have been set for November 11, 2026. Trial has been set for June 1, 2027. Counsel have met and conferred but remain at impasse.

Attached as Exhibit A are Plaintiffs' Requests for Production and DeviantArt's responses thereto.

**Question Presented**

Whether DeviantArt should be required to produce user contact information for (1) all users whose works were used by DeviantArt to train its CLIP-token model; and (2) all other users who have uploaded at least one Deviation to the DeviantArt.com platform.

**Plaintiffs' Position**

Plaintiffs seek paradigmatic absent class member discovery. DeviantArt resists. DeviantArt's resistance is particularly brazen given its own role in facilitating the scraping at issue.

*See* Exh. B. DeviantArt now seeks to prevent the very users i̇ exposed from learning about their potential claims.

In resolving this dispute, the Court should follow the line of authorities analyzing this issue and compelling discovery. *See, e.g., Artis v. Deere & Co.*, 276 F.R.D. 348, 353 (N.D. Cal. 2011) (ordering production of putative class members' contact information to allow plaintiffs to contact individuals to establish necessary elements for class certification). Plaintiffs seek putative class members' email addresses to establish whether the putative members have timely registered copyrights in the works used to develop the AI tools at issue. DeviantArt retains this information in one central repository—it can be produced with minimal burden.

The Requested Discovery is Relevant Because it is Likely to Substantiate Plaintiffs' Class Allegations. "The disclosure of names, addresses, and telephone numbers is a common practice in the class action context." *Artis*, 276 F.R.D. at 352. Courts in this District routinely find such information discoverable where the requesting party's need for the discovery outweighs any privacy concerns. *Id.* at 353. ("the privacy interests at stake in the names, addresses, and phone numbers must be distinguished from those more intimate privacy interests such as compelled disclosure of medical records and personal histories."). For example, the court in *Khalilpour v. CELLCO P'ship*, ordered a similar production, reasoning "[w]ith the names, addresses and telephone numbers of the putative class members, Plaintiff can contact these individuals to ascertain whether common questions of law exist . . ." 2010 WL 1267749, at *2 (N.D. Cal. Apr. 1, 2010). Contrary to DeviantArt's assertion, the relevant standard is not whether the discovery is "necessary," but whether it is likely to lead to evidence substantiating the class allegations, including issues such as typicality, commonality, and numerosity. *Id.* citing, *e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 at n.13 (1978); *Babbitt v. Albertson's, Inc.*, 1992 WL 605652, at *6 (N.D. Cal. Nov. 30, 1992).

Here, Plaintiffs seek the email addresses of putative class members so that Plaintiffs may contact these individuals to develop the evidentiary record for class certification briefing. At the class certification stage, the Court likely will require Plaintiffs to prove that they can calculate damages on a class-wide basis. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013). **The starting point for calculating statutory damages is determining how many timely registered copyrighted Defendant infringed. Plaintiffs intend to contact users to inquire whether they hold evidence of timely copyright registrations in the works they uploaded to DeviantArt's website**, as awards of statutory damages are only available for works that are timely registered with the Copyright Office. 17 U.S. Code § 412 (registration as prerequisite to certain remedies for infringement).[1] Whether a given work is timely registered is an objective, binary fact verifiable

---

[1] DeviantArt cites to cases like *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020), but that case is easily distinguishable. There, the requesting party sought the discovery "*to find a client to be* the *named plaintiff*"—not to obtain discovery on Rule 23 issues. *Id.* at 540 (emphasis added).

through Copyright Office records—not an individual inquiry; however, the starting point is finding out which of the works on DeviantArt's website are timely registered in the first instance. The evidence is also relevant to numerosity under Rule 23, as Plaintiffs will determine the number of class members with timely registered copyrights.

The Individual, Narrowed Requests: Plaintiffs have narrowed RFPs 120-122 to seek two corpuses of user information: (1) for all users whose works were used to train DeviantArt's CLIP-token model, a list of all usernames, corresponding Deviation IDs, and email addresses; and (2) for all other DeviantArt users who have uploaded at least one Deviation (i.e., posted an image onto the DeviantArt.com platform), all of those users' email addresses.

Plaintiffs have narrowly tailored the requests in light of the claims and class definitions asserted in the complaint. **Narrowed request (1) is tailored to members of the DeviantArt DreamUp Registered Plaintiffs.** Specifically, Plaintiffs' Third Amended Complaint asserts a claim against DeviantArt for DeviantArt's training of a CLIP Model on 3.5 million artworks uploaded by DeviantArt users to the DeviantArt website. TAC, ¶ 381. The claim is asserted on behalf of the "DeviantArt DreamUp Registered Plaintiffs," i.e., the subset of Plaintiffs who hold copyrights in these DeviantArt DreamUp Registered Works that were registered before the filing of the initial complaint in this action and used by DeviantArt as part of its development of DreamUp. TAC, ¶¶ 218-19. **Narrowed request (2) is tailored to class discovery vis-à-vis the LAION-5B Registered Plaintiffs.** DeviantArt's documents reveal that ███████████████████████████████████████████████████████████████████████████████████████████ ███████████ Contrary to DeviantArt's representation, Plaintiffs did not agree to drop request (2), but rather to hold it in abeyance if the parties could avoid a letter brief on request (1).

DeviantArt should be ordered to prepare a spreadsheet responsive to narrowed request (1) and a separate spreadsheet responsive to narrowed request (2). The requests are proportional under Rule 26. *See Sing Chuen L. v. AAE Corp.*, 2018 WL 4804687, at *6 (S.D.N.Y. Oct. 4, 2018) ("Defendant[] ha[s] not explained why compiling an Excel spreadsheet would be unduly burdensome, and the Court has no independent reason to believe that it would be."); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 452 (S.D.N.Y. 2013) (compelling production of spreadsheets of class members in class action). Conversely, producing a commingled list would place an additional administrative burden on Plaintiffs, forcing them to manually parse members of the DreamUp class from the LAION-5B class.

Usernames Alone are Not Sufficient: DeviantArt's proposal—limiting production to usernames and requiring Plaintiffs to comb through DeviantArt user profiles or utilize DeviantArt's internal messaging application—is fundamentally flawed. This method cannot support the large-scale notification required to reach the putative class here, and it leaves Plaintiffs' discovery efforts at the mercy of a proprietary tool over which DeviantArt exercises total control. No authority requires a plaintiff to conduct class discovery through infrastructure owned and operated by the opposing party. Verified email addresses—which DeviantArt collects during the new user signup process—remain the most direct and reliable mechanism for effectuating timely and large-scale communication with class members. The case law supports this request. *See Khalilpour* WL

---

DeviantArt's reliance on *Kihn* is misplaced. *Kihn* reversed certification based on individualized questions of license and consent, not the objective, binary registration inquiry at issue here.

1267749 at 2010, at *2 ("[D]uring pre-certification discovery, a court is not limited by the possible existence other avenues of inquiry, like the mail."); *Babbit*, *supra*, 1992 WL 605652, at *6 ("Defendant has access to this information, and plaintiff should have the same access.").

Defendants' Privacy Objections Should Not Foreclose Disclosure: DeviantArt's last-minute invocation of foreign privacy law should be viewed with skepticism. Despite substantive conferrals over the course of past five weeks, *DeviantArt did not raise its GDPR-related objection until four days before this Joint Letter Brief was due*. Any legitimate privacy interests are adequately protected by the comprehensive protective order already entered in this action. *See* ECF No. 454; *Artis*, 276 F.R.D. at 352 (holding that a protective order restricting use of putative class members' contact information adequately protected any privacy interests); *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *6 (D.N.J. Jan. 30, 2020) ("the party relying on foreign law has the burden of showing such law bars production."); *Finjan, Inc. v. Zscaler, Inc.*, No. 17-CV-06946-JST-KAW, 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019) (rejecting a party's reliance on foreign privacy laws, including the GDPR, as a basis to withhold relevant information and ordering production of emails). This Court has recognized that concerns regarding the disclosure of highly confidential information are adequately addressed through the protective order. *See* ECF No. 461.

**Plaintiffs' Position**: Plaintiffs respectfully request an order compelling DeviantArt to produce the following: (1) for all users whose works were used to train DeviantArt's CLIP-token model, a spreadsheet of all usernames, corresponding Deviation IDs, and email addresses; and (2) for all other DeviantArt users who have uploaded at least one Deviation, a separate spreadsheet of all of those users' email addresses.

## DeviantArt's Position

Plaintiffs claim they need vastly overbroad, private information for class certification—(1) email addresses of all DeviantArt users who ever posted an image on DeviantArt.com (a "Deviation") in its over 25-year history—which includes over 100 million users and over 700 million Deviations; and (2) email addresses for all users whose Deviations were used to train a CLIP-token model at issue in this case (the "CLIP-Token Dataset"). Plaintiffs' requests fail.

**Pre-Certification Discovery:**  In seeking pre-certification discovery relating to class issues, it is Plaintiffs' burden to make "a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).  Because pre-certification discovery to find new class representatives or send class notices is beyond the scope of Rule 26(b)(1), *see In re Williams-Sonoma, In*c., 947 F.3d 535, 540 (9th Cir. 2020), courts look skeptically on such requests "out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification," *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, *1 (E.D.N.Y. May 23, 2006).  Further even where a plaintiff can show that the discovery it requests is directed at class certification issues, a court must balance the plaintiff's purported need for that discovery against "the privacy rights of potential class members," *Johnson v. Sky Chefs, Inc.*, 2013 WL 11079297, *2 (N.D. Cal. May 24, 2013), and the burdens on the defendant of producing the discovery, *McAdams v. Nationstar Mortg. LLC*, 2022 WL 993546, *4-5 (S.D. Cal. Apr. 1, 2022).  Courts routinely deny discovery where the claimed relevance for certification is outweighed by privacy concerns and burdens.  *See, e.g.*, *id.* (denying request to compel production of contact information for 1,281 putative class members because such disclosure "potentially infringes … privacy rights" and plaintiff failed to make "a *prima facie* showing that the Rule 23 class requirements [were] satisfied" or show that the putative class

members would likely have viable claims); *Johnson*, 2013 WL 11079297 at *2-3 (privacy rights of putative class members outweighed claimed relevance of discovery to class certification); *Lopez v. Pvh Corp.*, 2015 WL 13918888, *1 (C.D. Cal. Oct. 15, 2015) (burdens on defendant of providing discovery outweighed claimed relevance to class certification).

Plaintiffs failed to make a *prima facie* showing that all class certification requirements are satisfied, and failed to show that the requested discovery is so necessary to substantiate class allegations that it warrants disregarding user privacy concerns.[2]

**Numerosity:**  Plaintiffs argue they need DeviantArt to disclose millions of private email addresses so that Plaintiffs can determine the number of DeviantArt users with timely registered copyrights, in order to establish numerosity under Rule 23(a).  Given that numerosity is generally "satisfied when a class includes at least 40 members," *Neeta Thakur v. Trump*, 787 F. Supp. 3d 955, 1000 (N.D. Cal. 2025), Plaintiffs' demand for *millions* of email addresses is disproportionate on its face. There are alternative, less intrusive and burdensome ways to identify 40 individuals that satisfy Plaintiffs' class definition:  for example, Plaintiffs could identify high-profile artists that post on DeviantArt and contact those individuals via their publicly available contact information or through DeviantArt's messaging functionality.  Indeed, Plaintiffs have all 3.5 million+ Deviation IDs for the CLIP-Token Dataset which Plaintiffs can use to locate the relevant Deviation post and user, and DeviantArt also offered to provide Plaintiffs with the corresponding usernames for each Deviation in the dataset.  Plaintiffs have thus failed to establish that the discovery they seek is so critical to substantiating their class allegations that their demand should trump millions of users' privacy interests, to say nothing of the burden of production.  *See James Lee Constr., Inc. v. Gov't Emples. Ins. Co.*, 339 F.R.D. 562, 573-74 (D. Mont. 2021) (denying motion to compel class members' identities where plaintiffs had other information sufficient to move for class certification); *Palmer v. Stassinos*, 2005 WL 3868003, *4 (N.D. Cal. May 18, 2005) (same).

Plaintiffs' demand for this information is much more clearly an improper attempt to locate additional class representatives or improperly obtain contact information for purposes of class notice, which are not within the scope of discovery under Rule 26(b)(1).  *See Williams-Sonoma*, 947 F.3d at 540; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978).  Indeed, Plaintiffs' argument that they need email addresses, rather than usernames, for "the large-scale notification required to reach the putative class" reveals Plaintiffs' true goal—to conduct widespread outreach to potential plaintiffs or class members before a class has even been certified, rather than proportional pre-certification discovery limited to what is necessary to move for class certification.

**Class Damages:**  Plaintiffs claim they need contact information to show at certification "that they can calculate damages on a class-wide basis" because statutory damages are only available for timely registered works, citing the *Comcast* discussion of the predominance requirement under Rule 23(b)(3).  Mass outreach to putative class members about individualized registration timing

---

[2] Plaintiffs' cited cases are inapposite.  In weighing the need for discovery against defendants' objections, the *Artis* court determined pre-certification discovery of contact information of putative class members—female job applicants denied employment by defendant—was "*necessary* to determine" class certification issues, 276 F.R.D. at 350, 352 (emphasis added), and the *Khalilpour* court held that disclosing contact information of customers who purchased a game from Verizon did not involve not implicate serious privacy interests, 3532010 WL 1267749, at *3.  As explained below, the information Plaintiffs seeks is not "necessary" for class certification, and the privacy interests are greater than those in Plaintiffs' cited cases.

does not supply a common, class-wide damages methodology, and Plaintiffs provide no explanation of why they need *millions* of DeviantArt users' private email addresses to develop a class-wide damages methodology pre-certification.  In fact, this argument only underscores that damages calculations will involve individualized determinations. *See, e.g., Kihn v. Bill Graham Archives LLC*, 2022 WL 18935, *2 (9th Cir. Jan. 3, 2022) (reversing certification of copyright class action due to predominance of individualized damages issues).  Plaintiffs are also wrong that whether a work was timely registered for statutory damages is a "binary fact verifiable through Copyright Office records."  To be entitled to statutory damages, Plaintiffs must *prove* that registration occurred either prior to infringement occurring or within three months of first publication. *See* 17 U.S.C. § 412.

**Privacy Concerns and Burdens:**  Plaintiffs are not entitled to pre-certification discovery, as they failed to make a prima facie showing that all requirements for class certification are satisfied *and* failed to show that disclosure of users' email addresses is needed for class certification. *Mantolete*, 767 F.2d at 1424.  Further, any minimal relevance would be outweighed by DeviantArt users' privacy interests and the burdens of disclosing millions of private email addresses. *Johnson*, 2013 WL 11079297 at *2-3; *McAdams*, 2022 WL 993546 at *4-5.  DeviantArt users can be contacted on their own terms through outreach sent to their usernames on the website and in some cases via self-disclosed contact information.  But users have reasonable expectations of privacy over their personal email addresses, particularly because DeviantArt allows users to post artistic speech without requiring them to identify themselves to the world.  Email addresses often reveal personal details, such as real names and employer or school affiliations, and therefore disclosing this information would implicate users' reasonable expectations of anonymity in online posting and chill participation in DeviantArt's creative community. *See In re DMCA § 512(H) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) (recognizing First Amendment interests in maintaining anonymity of online speech in copyright action).

Additionally, DeviantArt's users are located throughout the world.  Requiring DeviantArt to investigate applicable privacy laws across all jurisdictions for millions of users and provide notice of disclosure where required would be unduly burdensome, and expose DeviantArt to undue legal risk that is not warranted by the purported relevance of the information Plaintiffs seek.

**Request for All Emails:**  While Plaintiffs' requests are beyond the scope of relevant, proportional discovery, their request for the private email addresses of *all* DeviantArt users who have ever posted over 700 million Deviations is particularly incredible.  Plaintiffs offered to forego this request if DeviantArt agreed to their other demands—demonstrating even Plaintiffs recognize this discovery is not necessary to satisfy their obligation to identify a mere 40 class members from the LAION-5B dataset, which contains 5 billion images that Plaintiffs can readily investigate. Moreover, while Plaintiffs baldly claim ███████████████████████████ ███████████████████ Plaintiffs' only cited source says nothing of the sort.  Nor does it indicate that DeviantArt facilitated the scraping at issue.  LAION-5B was released in March 2022, and Exhibit B merely ██████████████████████████████████████████████████████████████ ███████████████████. The document says nothing about the contents of already-existing datasets.

---

[3] *See also* Ex. B at -23 ████████████████ *see also id.* at 22 ██████████████████████

Respectfully submitted,

By: */s/ Sarah F. Mitchell*
Simeon Botwinick (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1505
Washington, D.C., 20004
Telephone: (202) 637-2200
Email: simeon.botwinick@lw.com

Brittany N. Lovejoy (SBN 286813)
Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
**LATHAM & WATKINS LLP**
550 California Street, Suite 2000
San Francisco, California 94104-6538
Telephone: (415) 391-0600
Email: brittany.lovejoy@lw.com
        andrew.gass@lw.com
        michael.rubin@lw.com

Sarah F. Mitchell (SBN 308467)
**LATHAM & WATKINS LLP**
550 California Street, Suite 2000
San Francisco, California 94104-6538
Telephone: (415) 391-0600
Email: sarah.mitchell@lw.com

*Counsel for Defendant DeviantArt, Inc.*

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan Creutz (SBN 349728)
Alexandra Fernandez (SBN 330518)
Holden Benon (SBN 325847)
Elissa A. Buchanan (SBN 249996)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
        czirpoli@saverilawfirm.com
        cyoung@saverilawfirm.com
        ecreutz@saverilawfirm.com
        afernandez@saverilawfirm.com
        hbenon@saverilawfirm.com
        eabuchanan@saverilawfirm.com
        acera@saverilawfirm.com
        azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butericklaw.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612)339-6900
Facsimile: (612)339-0981
Email: bdclark@locklaw.com
        lmmatson@locklaw.com
        aswagner@locklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: April 2, 2026                                    */s/ Joseph R. Saveri*