[Counsel listed on signature pages]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>STABILITY AI LTD., et al.,<br><br>    *Defendants*. | Case No. 3:23-cv-00201-WHO (LJC)<br><br>**JOINT STATUS REPORT**<br><br>Discovery Conference Date: April 16, 2026<br>Time: 3:00 PM<br>Place: via Zoom<br>Judge: Hon. Lisa J. Cisneros |

## I.    Introduction

Pursuant to the Court's March 19, 2026 Minute Entry (ECF No. 456), the Parties submit this Joint Status Report addressing the status of fact discovery, including document production, depositions, outstanding disputes, and scheduling.

## II.    Custodian and Search-Term Status

Consistent with the Court's prior directive, Plaintiffs proposed additional custodians for Stability AI, Midjourney, Runway, and DeviantArt by January 30, 2026. Plaintiffs reached agreements with DeviantArt, Stability AI, and Runway regarding those designations. Plaintiffs also reached agreement with Midjourney regarding Plaintiffs' proposed additional custodians and search terms. *See* ECF No. 444. Plaintiffs have proposed one additional custodian for Stability AI and seven additional search terms; the Parties are conferring on these requests and will promptly bring any unresolved disputes to the Court.

The Parties reserve all rights to seek modification of search terms, and to object to such modification, if information produced in discovery reveals that further searches are necessary to ensure completeness or proportionality.

## III.    Status of Document Production

Document production remains ongoing. The summaries below describe each Party's status.

**Plaintiffs:** As of April 6, 2026, the eight Plaintiffs have collectively produced more than 28,000 documents. Plaintiffs anticipate making a supplemental production this week. As outlined below, *see infra* at pp. 10-11, Defendants have identified several deficiencies in Plaintiffs' productions and discovery responses, and the parties continue to meet and confer regarding those issues.

**Midjourney:** As of April 6, 2026, Midjourney has produced 6,292 documents across six custodians. Plaintiffs are investigating the adequacy of that production. Midjourney has reported that it substantially completed production of relevant training data by providing the relevant datasets via hard drives and Google Cloud access. Midjourney produced more than 150 terabytes of LAION data via hard drive. The Parties continue to meet and confer on Plaintiffs' discovery requests. On December 19, 2025, Midjourney informed Plaintiffs that it made its source code available for inspection for the models

currently at issue. Plaintiffs inspected Midjourney's source code on February 19, 2026 and April 1, 2026.

**DeviantArt:** As of April 6, 2026, DeviantArt has produced 1,850 documents. DeviantArt has also produced a dataset with over 3 million images. The Parties are also conferring on various of Plaintiffs' RFPs that Plaintiffs contend are relevant to the new claim asserted against DeviantArt in the Third Amended Complaint ("TAC"). DeviantArt does not possess relevant LAION training data.

**Runway:** As of April 6, 2026, Runway has produced 22,984 documents. Runway represents that it has substantially completed document discovery as of October 3, 2025. Runway produced more than 60 terabytes of LAION-5B data via hard drives and has offered access via AWS. Runway has made source code available for inspection for all models currently at issue. Plaintiffs identified deficiencies in both Runway's responses to Plaintiffs' Requests for Production, Set Two and Runway's document production. At Plaintiffs' request, Runway investigated Plaintiffs' inquiries and ran four additional search terms across its custodial data to search for non-privileged documents responsive to Plaintiffs' Requests for Production, Set Two, to the extent any such documents exist. The Parties continue to confer, have engaged in over two hours of substantive meetings followed by detailed written correspondence, and will bring any unresolved dispute to the Court.

**Stability AI:** As of April 7, 2026, Stability AI has produced 6,564 documents. The Parties have reached agreement regarding the format of Stability AI's training data production.

Defendants anticipate serving additional written discovery requests, including to address deficiencies in Plaintiffs' productions and in connection with information learned through discovery thus far. Plaintiffs likewise anticipate serving additional written discovery requests, including to address deficiencies in Defendants' productions and in connection with information learned through discovery thus far.

## IV.    **Privilege Logs**

The Parties have exchanged, or are in the process of exchanging, privilege logs for documents withheld to date. Rolling and supplemental productions continue consistent with the Court's schedule. The Parties have identified potential issues regarding the sufficiency of certain privilege log entries and

are meeting and conferring to resolve them. Plaintiffs have updated the dates listed in some entries of their privilege log.

V.    **Depositions**

Plaintiffs provided deposition availability for all eight Plaintiffs on March 6, 2026. On March 18, Plaintiffs provided an alternative date for Sarah Andersen's deposition at Defendants' request. On March 20, Defendants confirmed deposition dates for five out of the eight Plaintiffs and requested alternative dates for the three remaining Plaintiffs. On March 25, the Parties confirmed deposition dates for all eight Plaintiffs. On April 1, Plaintiffs informed Defendants that Karla Ortiz was no longer available for her deposition scheduled for April 30. The Parties are still conferring on an alternate date for Ortiz's deposition.

Midjourney provided dates for three of its 30(b)(1) deponents, which three will collectively cover any 30(b)(6) topics agreed to by the Parties, on April 1, 2026.  Midjourney provided dates for the remaining two witnesses on April 9, 2026. Midjourney requested that Plaintiffs use their best efforts to complete the depositions in one day, but have reserved a second day for one of these witnesses. Plaintiffs have not confirmed these proposed dates as of this filing, but have indicated in meet and confer that they will attempt to complete two of these depositions in a single day if possible.

Midjourney has requested up to nine hours for depositions of four of the five Lanham Act Plaintiffs (Andersen, Brom, Kaye, and Ortiz), exceeding the seven hours prescribed by Rule 30(d)(1).

*Plaintiffs' Position*: Midjourney negotiated a deposition protocol with full knowledge of the Lanham Act claims then on file. At no point during those negotiations did Midjourney request additional time for Lanham Act plaintiffs or reserve any right to exceed the seven-hour default under Rule 30(d)(1). The protocol represents the Parties' agreed-upon allocation of deposition resources. A party that negotiates such a protocol without reservation cannot unilaterally renegotiate its terms after the fact. The Court itself observed that Midjourney's request did not seem like "a significant addition" and directed the parties to meet and confer on accommodation—not on whether additional hours were warranted. The mere existence of multiple causes of action with significant overlapping substantive elements does not justify exceeding the agreed protocol. The protocol's plain language controls. Midjourney agreed to its terms with full knowledge of the claims at issue, reserved no right to additional

time, and has not demonstrated good cause under the protocol's own standard. The Parties will present any unresolved dispute to the Court.

***Midjourney's Position:*** Plaintiffs' suggestion that the deposition protocol forecloses Midjourney's request is wrong. The stipulated Deposition Protocol entered by the Court specifically authorizes any party to seek an expansion of deposition time "upon showing good cause"; the Protocol "sets floors, not ceilings." ECF No. 274 ¶ 15. As will be discussed in a joint letter brief to be filed on Friday, April 10, Midjourney's request is supported by good cause. Indeed, the Court already previewed at the March 19 Discovery Conference that Midjourney's request did not seem "like a significant addition" and directed the parties to meet and confer as to how best to accommodate Midjourney's request for additional time. Plaintiffs confirmed on the record that they would meet and confer, walking back their outright rejection (without meet and confer) the day before. But when Midjourney wrote to Plaintiffs on March 23 to invite the conference as instructed by the Court, Plaintiffs ignored Midjourney's outreach and then once again rejected the request outright on April 6 without meet and confer. In other words, Plaintiffs strung Midjourney along for three weeks, only to end up back where they started without substantive discussion. The first Lanham Act Plaintiff, Gerald Brom, is scheduled to be deposed in just a few weeks on April 24. There are no "overlapping substantive elements" between the copyright claims that all four Defendants must defend and the Lanham Act claims, which are asserted against Midjourney alone and which it needs sufficient time to ask Plaintiffs about.

Returning to the joint portion of this submission, Plaintiffs served Rule 30(b)(6) notices on November 14, 2025, and served 30(b)(1) notices on March 13, 2026. Plaintiffs have informed Defendants that they will be serving additional 30(b)(1) notices, non-party subpoenas, and letters rogatory. Defendants each have served responses and objections to Plaintiffs' Rule 30(b)(6) notices. The Parties are actively meeting and conferring on those responses and objections and are making good progress toward resolution.

On January 9, 2026, Plaintiffs requested dates of availability for three DeviantArt witnesses: Messrs. Surovenko, Lamay, and Woolfson. DeviantArt informed Plaintiffs within a week of Mr. Surovenko's departure from DeviantArt that he had left the company, as discussed with the Court at the prior Status Conference on March 19, 2026. As discussed below, Plaintiffs anticipate moving the Court

for issuance of letters rogatory to secure the deposition testimony of Mr. Surovenko and as well as Mr. Trofimov—an individual that Plaintiffs requested be added as a custodian—who left DeviantArt before the commencement of this litigation, as both individuals reside in Canada. Messrs. Lamay, Woolfson, and two other individuals Plaintiffs noticed for deposition reside in Israel and cannot currently sit for depositions due to the ongoing armed conflict. DeviantArt's outside counsel is in communication with DeviantArt about conditions and will provide dates for deposition when circumstances permit. DeviantArt has, however, provided deposition dates for two individuals who reside outside of Israel.

On March 23, Runway proposed dates and locations for Plaintiffs' noticed 30(b)(1) depositions of Runway witnesses. On April 1, Plaintiffs accepted the deposition dates and locations for four of the five Runway witnesses. Plaintiffs tentatively agreed to the date and remote means for the deposition of the fifth Runway witness.

## VI.    Outstanding Discovery Issues and Potential Disputes

### Plaintiffs' Position

Plaintiffs have engaged in good-faith conferral on all outstanding discovery issues and continue to do so. The Parties are actively meeting and conferring on the following:

- Defendants' Document Productions: Plaintiffs have identified deficiencies in certain Defendants' productions and are meeting and conferring with the relevant Defendants to resolve them.

- Failure to Produce Signed Verifications: Defendants DeviantArt and Runway have not yet served signed verifications for one or more interrogatory responses. Midjourney served its signed verifications only after Plaintiffs raised concerns on March 27, 2026. With respect to DeviantArt, the failure to serve interrogatories has been a recurring issue; Plaintiffs have had to request verifications on three separate occasions throughout this litigation. DeviantArt dismissed signed verifications as "needless paperwork." A party that treats the verification requirement of Rule 33(b)(5) as a bureaucratic inconvenience has revealed its posture toward its discovery obligations. The Court should not indulge that posture.

- Stability AI Source Code: The Parties are meeting and conferring regarding the scope of Stability AI's source code production. Plaintiffs seek the source code that Stability AI actually used to train its models. The Parties have not yet resolved this dispute.

- Stability AI's Updated RFPs, Document Production, and Supplemental Interrogatories: Plaintiffs have requested that Stability AI confirm it will read the definitions in its First, Second, and Fourth Sets of Requests for Production to include the new datasets referenced in the Third Amended Complaint ("TAC Datasets"). Plaintiffs also have requested that Stability AI supplement its responses to Interrogatory Nos. 1, 2, 4, and 5 (First Set) and Interrogatory No. 9 (Second Set) with information relevant to the TAC, including information concerning the TAC Datasets, by April 15, 2026. The Parties will meet and confer regarding the discovery implications of the TAC's new allegations.

- Additional Search Terms: Plaintiffs have requested that Stability AI run seven additional search terms to address the relevance of the TAC Datasets as well as deficiencies identified in Plaintiffs' review of Stability AI's document productions. The proposed terms target, among other things, memorization and overfitting, copyright takedowns and infringement, licensing and compensation, style-blocking measures, and concept art. Plaintiffs requested hit counts by April 6, 2026. Stability AI maintains its existing search methodology is sufficient but has not met and conferred with Plaintiffs on the specific proposed terms. The Parties will confer promptly. Plaintiffs have also requested that DeviantArt run one additional term based on information Plaintiffs learned through a source code inspection on Friday, April 3.

- Addition of William Cusick as Custodian: Plaintiffs have requested that Stability AI add William ("Bill") Cusick, Stability AI's former Creative Director, as a document custodian. Mr. Cusick led product marketing and artist relations for the launch of DreamStudio and Stable Diffusion and was privy to highly relevant internal discussions. None of Stability AI's current custodians appear to have overlapping responsibilities. Stability AI has not explained why Mr. Cusick was excluded from its initial disclosures. The January 30 deadline for custodian requests does not bar requests necessitated by information revealed through subsequent discovery. Documents produced by Stability AI after January 30 revealed Mr. Cusick's direct involvement in decisions concerning the use of copyrighted works in training data. This information was not available to Plaintiffs at the time of the January 30 deadline. Good cause exists under the Court's scheduling order for this request.

- Stability AI dispute regarding the relevant time period: The parties dispute the appropriate start date for responsive information to Plaintiffs' discovery requests. Plaintiffs seek information from 2021 based on Stability AI's development of stable diffusion technology and provision of funds and infrastructure to LAION. Stability AI asserts Plaintiffs are not entitled to information before January 2022 based on the March 2022 release date of LAION 5B. Plaintiffs will continue to meet and confer with Stability AI on this issue.

- Plaintiffs' Interrogatory 15 to Midjourney: In light of the Court's recent order (ECF No. 461), ordering Stability AI to respond to Plaintiffs' interrogatory seeking information about its enterprise customer list, Plaintiffs requested a full and complete response to Interrogatory 15 to Midjourney, that seeks similar information about Midjourney's customers. Plaintiffs requested that Midjourney provide a full and complete response to the interrogatory by April 15. Midjourney has offered to amend its response by April 15, 2026. Plaintiffs will confirm resolution upon receipt and review of the amended response.

- Midjourney Source Code Production Deficiencies: Following an initial source code inspection on April 1, 2026, Plaintiffs identified significant gaps in the code Midjourney made available for review. Midjourney's production omits training code for all model versions (v1–v7), including style models and auxiliary models; code related to the overfit detection filter and database; experimentation code identifying training datasets; and storage container logs for at least eighteen major dataset repositories. Plaintiffs have also requested access to the Git commit history associated with the produced code, which is currently inaccessible due to a VSCode configuration error. Additionally, two folders in the production—"notebooks" and "torch-aesthetic-refux"—are empty, and Midjourney has not clarified whether the single "MJ Code" GitHub repository made available is the complete original repository or one created solely for the inspection, nor whether additional repositories exist. Midjourney has not yet responded to these requests. The scope of these deficiencies is not a function of timing. Midjourney's source code production omits the very code used to train every version of its commercial model. No amount of additional "analysis" changes the fact that training code for models v1 through v7 was never produced. Midjourney's assertion that it "did not train versions 1 through 3 of its model" is an

unverified factual claim that raises its own questions about what entity controlled the training infrastructure for those models, what data was used, and whether Midjourney directed or funded that training. These questions require deposition testimony, which cannot proceed without the underlying code and documentation.

- Midjourney's Training Data Production Deficiencies. Midjourney produced only the raw training data it downloaded from the LAION group in its original form, not the derivative datasets made from those raw datasets that were the final versions for use in training. Along with needing to produce the new TAC Datasets, Midjourney still has yet to produce the actual datasets used for training v1-v7 of the Midjourney model or the datasets used for training auxiliary models used for processing, culling and augmenting existing training data.

- Midjourney's Slack production. Midjourney's production of responsive Slack messages continues to be deficient. Midjourney produced Slack channel conversations entirely missing the messages and user names, or even user ID numbers. Many Slack messages produced involve Midjourney's CEO talking to himself with all other messages missing. Further, Midjourney had a legacy Slack account that it decommissioned for unknown reasons that Midjourney now claims it has no access to and cannot recover. Given that the parties knew of the risks of litigation from the start of the creation and use of LAION data, this constitutes spoliation. Midjourney consolidated these Slack accounts into a single company account in early 2023—the same month this litigation commenced. Midjourney's claim that "there is no indication that any relevant data resided there" is self-serving and unverifiable precisely because the account was destroyed. The timing of the consolidation, the absence of any preservation hold, and Midjourney's inability to produce the contents of the decommissioned account give rise to a presumption of relevance under governing spoliation standards. Midjourney bore the obligation to preserve relevant evidence once litigation was reasonably anticipated. It destroyed an entire communications repository in the same month Plaintiffs filed suit. The self-serving assertion that the destroyed account contained nothing relevant cannot defeat the presumption that arises from its destruction. Fed. R. Civ. P. 37(e).

- Plaintiffs' Interrogatory 14 to Runway: Plaintiffs and Runway are meeting and conferring regarding Interrogatory 14.

- Plaintiffs' RFPs to Runway Regarding Training Data Licenses: The Parties are meeting and conferring regarding Plaintiffs' requests related to Runway's licenses for AI training data. If the Parties are unable to reach agreement, Plaintiffs intend to seek Court intervention.

- DeviantArt's Response to Interrogatory No. 6: Documents recently produced in discovery reveal that DeviantArt withheld information about CLIP models squarely within the scope of Interrogatory No. 6. DeviantArt's omission will require additional discovery to investigate the potential infringement of millions of additional works falling within the scope Plaintiffs' claims against DeviantArt. DeviantArt's assertion that "not all references to CLIP are relevant" misapprehends the scope of Plaintiffs' claims and the nature of the technology. DeviantArt trained a CLIP-token model on a dataset of DeviantArt user works. The provenance and use of that model—including its relationship to other CLIP implementations on DeviantArt's platform—is squarely within the scope of discovery.

- DeviantArt's Response to Interrogatory No.14: Plaintiffs have requested that DeviantArt supplement its response to Interrogatory No. 14. DeviantArt's current response lacks the level of detail requested by the interrogatory. DeviantArt's response does provide that the images dataset used to train its CLIP-token model was curated during a previously undisclosed "prior project." This revelation will require targeted discovery into the "prior project," including targeted document production and the identification of relevant witnesses to understand DeviantArt's reasons for curating the dataset that was later used for training. **Plaintiffs raise this issue now given its importance and in light of the looming fact discovery cut-off.**

- DeviantArt CLIP-Token Model Source Code: Plaintiffs have conducted a review of code that DeviantArt agreed to make available, i.e., source code "sufficient to show the architecture of the DreamUp CLIP token generation pipeline." Plaintiffs did not encounter any source code that could reasonably be construed to encompass code showing such architecture, and have requested that DeviantArt make available for inspection four additional categories of source code concerning the CLIP-Token Model. Plaintiffs have requested the code be available for review by

the next scheduled source code visit on April 10. DeviantArt takes the position that Plaintiffs are confined to source code "sufficient to show," as quoted above. To avoid a dispute, Plaintiffs agreed to take a first pass at that source code, "reserving all rights to expand the scope of our request based on our review." H. Benon email to S. Botwinick (Mar 23, 2026). If DeviantArt insists that Plaintiffs are restricted to a limited scope of source code, a critical source of evidence in this case, Plaintiffs expect to seek Court intervention.

- Issuance of Letters Rogatory Regarding DeviantArt Former Employees Surovenko and Trofimov: Plaintiffs anticipate moving the Court for issuance of letters rogatory to the Supreme Court of British Columbia, Canada to secure the deposition testimony of two former employees, Surovenko and Trofimov. Plaintiffs notified DeviantArt of their intent to move for issuance of letters rogatory. DeviantArt informed Plaintiffs it intends to oppose the motion as to Surovenko but takes no position as to Trofimov.

- Letters Rogatory Regarding Additional Foreign Witnesses: To the extent Plaintiffs identify former employees of other Defendants located outside the United States whose testimony is relevant to Plaintiffs' claims, Plaintiffs reserve the right to seek issuance of letters rogatory to the appropriate foreign tribunals to secure that testimony. On March 31, Plaintiffs requested from DeviantArt the last known addresses of Surovenko and Trofimov. On April 9, DeviantArt provided the last known address of Surovenko and stated it did not have a last known address of Trofimov.

***Defendants' Positions***

**All Defendants**

- Plaintiffs' Document Productions: Defendants have repeatedly identified significant deficiencies in Plaintiffs' document productions in response to Defendants' Requests for Production, most of which were served more than a year ago. On January 21, 2026, Defendants sent a detailed letter identifying specific gaps in Plaintiffs' productions, including missing communications, incomplete financial records, and absent copyright registration materials, failure to log documents withheld as privileged and/or improper assertions of privilege, and documents produced in non-native formats that are not otherwise accessible. Defendants followed up in

Case No. 3:23-cv-00201-WHO                    10
JOINT STATUS REPORT

subsequent meet-and-confer communications and emails throughout February and March, and on March 30, 2026, sent a comprehensive letter cataloging continuing deficiencies. Despite Defendants' diligence and efforts to keep the case on schedule, Plaintiffs have not cured the identified gaps, provided substantive responses, or confirmed (as requested by Defendants) that each Plaintiff's document production will be complete and that privilege logs will be produced by the earlier of two weeks before each Plaintiff's deposition or April 30, 2026. Defendants reserve the right to seek Court intervention if these assurances are not provided at the status conference.

**Midjourney**

- Plaintiffs' Interrogatory 15 to Midjourney: Interrogatory No 15 is substantively different from the interrogatory at issue in the Court's Order at ECF No. 461, but Midjourney has offered to amend its response to Interrogatory No. 15 by April 15 to provide additional information and considers this issue resolved.

- Midjourney's Source Code Production: Plaintiffs sent numerous wide-ranging requests for information concerning Midjourney's source code production on April 1, 2026—more than three months after Midjourney made its source code available, one and a half months after their actual "initial source code inspection" on February 19, and just two months before the close of fact discovery.  Midjourney is analyzing Plaintiffs' highly technical inquiries and will respond as soon as it is able.  Midjourney maintains, however, that its source code production is reasonably tailored to the claims and defenses at issue in this case. Plaintiffs are also incorrect on what Midjourney produced; Midjourney did make available the training code for the at-issue models it trained, and as it has repeatedly informed Plaintiffs, including in verified interrogatory responses, it did not train versions 1 through 3 of its model.

- Midjourney's Training Data Production: Plaintiffs have never requested that Midjourney produce any additional, non-LAION datasets.  Midjourney reserves all rights and objections to such a request, including as to burden and proportionality, and notes that it is not feasible to produce this data within the time remaining for fact discovery. DataComp-XL, for example, is estimated to have a storage size of approximately 450 TB of data—significantly larger than the storage size

of all training data Midjourney has produced to date.   But this is a problem of Plaintiffs' own making and does not justify any extension of the close of fact discovery.   Plaintiffs were granted leave to file their Third Amended Complaint in February 2026 and, to date, have not actually requested this voluminous data, production of which would be extraordinarily burdensome and disproportionate to the needs of the case. Midjourney will continue meeting and conferring with Plaintiffs to determine if something more proportionate can be worked out.

- o   Similarly, Plaintiffs have recently raised for the first time apparent concerns regarding the scope of Midjourney's training data production.  But Midjourney has always made clear that it produced the relevant LAION data as it was collected, and Plaintiffs have had all of this data since August 11, 2025 via Google Cloud Platform, and also on hard drive since December 4, 2025 at the latest.  Plaintiffs' belated decision to raise these new concerns now is yet another example of their pattern of delay.  Nonetheless, Midjourney is willing to meet and confer with Plaintiffs to discuss their concerns and is preparing responses and objections to Plaintiffs' April 2, 2026 set of document requests, which touch in part on this issue.

- **Midjourney's Slack production**: As Midjourney has already explained to Plaintiffs, its Slack production consisted of all relevant, non-privileged data it was able to locate through a reasonable search; Midjourney did not withhold information, and has nothing further to produce. Midjourney's Slack subscription did not allow it to preserve messages sent from third-party Slack accounts.  Where those users deleted their accounts or messages shared with Midjourney personnel, or where they simply left a given message thread, their messages were not retained by Slack—and cannot be accessed or collected by Midjourney using its credentials.  This manifested in the "gaps" Plaintiffs identify, but does not amount to any withholding of information or other breach of obligation by Midjourney.

  - o   Plaintiffs' representation that Midjourney decommissioned a legacy Slack account "for unknown reasons" is also inaccurate.  Midjourney has informed Plaintiffs that, early in 2023, Midjourney personnel had been using two Slack accounts owned by two individuals to engage in de minimis correspondence with third party vendors, limited

largely to service support requests from Midjourney.  Midjourney decided to consolidate its Slack accounts into a single company account, closing the lesser used account.  Midjourney understands, and has previously represented to Plaintiffs, that there was little data in the decommissioned Slack account, and there is no indication that any relevant data resided there.  Plaintiffs have served a document request relating to the decommissioned Slack account and, while Midjourney reserves all rights and objections thereto, Midjourney anticipates producing responsive documents.  Midjourney trusts this will disabuse Plaintiffs of their baseless accusations of "spoliation," and rejects entirely Plaintiffs' assertion that the mere "use of LAION data" gave rise to any preservation obligation in an entirely unrelated (and irrelevant) Slack account.

- Plaintiffs' Deficient Document Production: Defendants served a letter addressing significant gaps in Plaintiffs' document production to date on March 30, 2026.  These gaps go to documents requested as far back as January 2026.  As it pertains to Midjourney's requests, that letter noted that several Plaintiffs have not produced relevant financial information and have refused to say whether they have more to produce.  Midjourney also noted that Plaintiffs have not confirmed whether they intend to produce additional documents in response to Midjourney's other requests, saying only that "discovery is ongoing."

- Plaintiffs' Deficient Interrogatory Response: After extensive meet and confer, Plaintiffs agreed to amend their responses to Midjourney's interrogatory seeking the dates of first publication for each of their works by April 3.  That date has come and gone with no amendment or request for further extension. Plaintiffs should be ordered to provide their amended responses within two Court days if they have not done so by the April 16 discovery status conference.

**Runway**

- Runway's RFP Set Three to Plaintiffs: Runway is continuing to meet and confer with Plaintiffs' counsel regarding deficiencies in their productions in response to Runway's Third Set of Requests for Production.  Plaintiffs continue to refuse to produce information in response to Runway's RFP Nos. 42 and 44, which seek customers for and revenue from Plaintiffs' non-asserted works despite the relevance of such information to the fair use analysis under factor

four. Plaintiffs also refuse to produce a certain subset of correspondence regarding their competitors for licensing and selling their Asserted Works in response to Runway's RFP No. 47.

- Plaintiffs' Interrogatory No. 14 to Runway: Interrogatory No. 14 is substantively different from the interrogatory at issue in the Court's Order at ECF No. 461. Nevertheless, Runway intends to meet and confer with Plaintiffs regarding Plaintiffs' request for information on Runway's enterprise customers.

- Plaintiffs' RFPs to Runway Regarding Training Data Licenses: Runway intends to meet and confer with Plaintiffs regarding Plaintiffs' request for Runway's licenses for AI training data.

- Signed Verifications: Runway intends to supplement its interrogatory responses pursuant to Rule 26(e) and serve verified responses prior to any relevant depositions.

**Stability AI**

- Stability AI Source Code: On March 27, 2026, Stability AI informed Plaintiffs that source code would be made available shortly, confirmed the inspection location, and requested proposed dates. Plaintiffs proposed two mid-April dates. Stability AI confirmed an inspection date on April 7, 2026.

- Stability AI's Updated RFPs, Document Production, and Supplemental Interrogatories: Stability AI has agreed to include the TAC Datasets, to the extent used to train the relevant models, within the definitions of "Training Data" and "Relevant Data." Stability AI represents that it is already producing responsive, non-privileged documents and information concerning those datasets, including because a TAC Dataset is encompassed within its existing productions. Stability AI will continue to produce responsive, non-privileged documents consistent with this understanding and is willing to meet and confer to discuss remaining questions. Stability AI will supplement its interrogatory responses to the extent necessary to reflect the inclusion of the TAC Datasets.

- Additional Search Terms: Plaintiffs proposed Stability AI run seven additional search strings on March 31. Stability AI does not agree that additional search terms are necessary and maintains that its existing search methodology is sufficient. The Parties have not yet met and conferred on

this issue.

- Addition of William Cusick as Custodian: As Plaintiffs acknowledge, the Court ordered that any requests for additional custodians be served no later than January 30, 2026 (ECF No. 392). Plaintiffs' request to add William Cusick comes after that deadline. Plaintiffs have not shown good cause for this untimely request, including any newly discovered information or unique, non-duplicative relevance that could not have been identified earlier. The parties have not yet met and conferred on this issue, and Plaintiffs' offering of a purported justification for the first time in a filing on April 9 at 5:37 p.m. is not well taken. Moreover, Stability AI had no obligation to include Mr. Cusick in its initial disclosures. Rule 26(a)(1) requires disclosure only of individuals the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i); *see also id.* committee notes on rules (2000) ("A party is no longer obligated to disclose witnesses . . . that it does not intend to use."). Stability AI did not and does not expect to use Mr. Cusick to support its defenses at this time, and any non-disclosure was consistent with Rule 26(a)(1).

- Stability AI dispute regarding the relevant time period: Stability AI disagrees that January 1, 2022 – nearly three months before LAION-5B was released and over half a year before the first relevant model was released by Stability AI – is an inappropriate starting time period. Stability AI has taken this position since at least July 2025. Stability AI will continue to meet and confer on this point.

**DeviantArt**

- Signed Verifications: DeviantArt has verified all interrogatory responses excepting one— Interrogatory No. 14— over which the parties are currently negotiating a potential supplemental response, *see infra*. DeviantArt will, of course, provide a signed verification for Interrogatory No. 14 along with its supplemental response to Interrogatory No. 14. But, as DeviantArt's counsel explained, verifying the same interrogatory twice in short order while the parties were negotiating potential additional supplementation to DeviantArt's response would generate "needless paperwork." DeviantArt's counsel did not wholly "dismiss[] signed verifications as 'needless paperwork,'" and Plaintiffs' misrepresentation of DeviantArt's counsel's statements

are not well-taken. In response to Plaintiffs' previous requests for verifications, DeviantArt promptly served the signed verifications and will continue to do so.

- Additional Search Terms: DeviantArt is currently evaluating Plaintiffs' April 6, 2026 request for an additional search term.

- DeviantArt's Response to Interrogatory No. 6: This issue is unripe and not properly before the Court. Plaintiffs only raised its purported concerns with this interrogatory response this past week, and DeviantArt plans to respond by email. However, DeviantArt's interrogatory response did not omit any responsive information. Plaintiffs' Interrogatory No. 6 requested information about machine-learning models "that has been used as part of the development, testing, or operation of the AI Image Model(s)," squarely limiting their request to models associated with DreamUp. The information Plaintiffs now seek is not related to DreamUp. Plaintiffs continue to misapprehend that not all references to "CLIP" are relevant to their claims in this litigation: CLIP is a third-party tool that DeviantArt uses for many other normal-course features on the DeviantArt website that are completely unrelated to DreamUp or any other AI image-generating model— ███████████████████████████████████ ████████. Indeed, Plaintiffs' argument that they need this information to understand the CLIP-token model's "relationship to other CLIP implementations on DeviantArt's platform" reveals that Plaintiffs do not understand the CLIP-token model associated with DreamUp, and this request is nothing more than a fishing expedition. Plaintiffs' claimed need for additional discovery to "investigate the potential infringement of millions of additional works" was only first raised in this statement and has never been justified in Plaintiffs' correspondence with DeviantArt to date. If Plaintiffs serve additional discovery requests, DeviantArt will respond as appropriate and is, of course, willing to meet and confer on these issues before prematurely raising them with the Court.

- DeviantArt's Response to Interrogatory No. 14: DeviantArt has received Plaintiffs' requests for more information. DeviantArt maintains that its prior response is appropriate and responsive to Plaintiffs' interrogatory, but is continuing to confer with Plaintiffs regarding the appropriate scope of any further supplementation. As the parties are currently conferring in an attempt to

mediate this dispute without the need for judicial intervention, this issue is not ripe for the Court's attention.

- **DeviantArt CLIP-Token Model Source Code**: Plaintiffs' baseless accusations are, once again, misguided and premature. DeviantArt has pointed Plaintiffs via email correspondence to the production volume where the source code responsive to DeviantArt's agreement to produce code "sufficient to show the architecture of the DreamUp CLIP token generation pipeline" was produced. This past Saturday, Plaintiffs requested four *new* categories of source code unmoored from that agreement; DeviantArt is currently reviewing Plaintiffs' requests to determine whether the code is relevant to Plaintiffs' asserted claims. However, Plaintiffs' demand that extensive new sections of source code be produced for inspection within a week is unreasonable. DeviantArt is, as always, willing to meet and confer on these issues in an attempt to reach resolution without burdening the Court.

- **Issuance of Letters Rogatory Regarding DeviantArt Former Employees Surovenko and Trofimov**: DeviantArt intends to oppose Plaintiffs' anticipated motion for issuance of a letter rogatory for the deposition of former DeviantArt employee Mr. Nikolay Surovenko, as his work at DeviantArt is irrelevant to Plaintiffs' claims and taking his deposition is not proportional to the needs of the case. DeviantArt currently takes no position on Plaintiffs' anticipated motion for issuance of a letter rogatory for the deposition of former DeviantArt employee Mr. Georgii Trofimov, and reserves rights to oppose following review of the anticipated motion. DeviantArt has provided the known last address of Mr. Surovenko and does not have on file any former address of Mr. Trofimov.

## VII.    Upcoming Fact Discovery and Scheduling

Upcoming deadlines under the modified discovery schedule (ECF No. 409) are summarized below:

| Event | Deadline |
|---|---|
| Deadline to notice any deposition(s) and subpoena(s) | May 11, 2026 |
| Close of Fact Discovery | June 1, 2026 |

## VIII.   Schedule

### Plaintiffs' Position

On April 2, 2026, Plaintiffs proposed a 90-day extension of all remaining deadlines, including the June 1, 2026 close of fact discovery. Voluminous document discovery has consumed the existing discovery period. Plaintiffs' prolonged difficulty retaining a qualified machine learning expert further delayed their ability to evaluate technical productions. The substantial volume of outstanding depositions, forthcoming productions, and managing the scheduling and logistics of depositions, including a significant number of foreign depositions, will require additional time. Plaintiffs cannot complete depositions—which have not yet begun—or evaluate the adequacy of Defendants' productions within the current timeframe through no fault of their own. The Parties will meet and confer on the proposal and, if agreement is reached, will file a joint motion to modify the case schedule set forth in ECF No. 409.

Defendants' proposed "targeted relief" limited to depositions would leave unresolved the document production deficiencies that necessitate the extension in the first instance. Depositions cannot meaningfully proceed when Midjourney has produced no training code, Stability AI has yet to produce source code or complete custodial searches, and DeviantArt has withheld responsive interrogatory information. These are not deficiencies that additional deposition time alone can cure. Targeted relief for depositions without extending document discovery would force Plaintiffs to depose witnesses about documents that do not yet exist in the record.

### Defendants' Position

Defendants oppose Plaintiffs' request for a 90-day extension. Plaintiffs have not demonstrated good cause to modify the schedule. Plaintiffs filed their Complaint in January 2023 and discovery opened in 2024. The issues Plaintiffs identify—difficulty retaining an expert, their management of discovery strategy, and their approach to document review—are within Plaintiffs' control and do not justify further delay. Plaintiffs have also delayed pursuing their own discovery, including waiting until the final months of fact discovery to meet and confer on Rule 30(b)(6) topics, serve Rule 30(b)(1) notices, and begin scheduling depositions, all of which were foreseeable when negotiating the deposition protocol. By contrast, Defendants have acted diligently for more than a year and a half to move

discovery forward consistent with the Court's Orders. Any delay in this case is of Plaintiffs' own making.

Plaintiffs' request is also inconsistent with their prior representations to the Court. In their most recent motion to modify the schedule, Plaintiffs represented that the existing schedule—already the product of prior extensions—provided sufficient time and that their requested extension was "narrowly tailored to ensure the remaining discovery is completed on a timeline that is realistic and achievable" (ECF No. 391). Nothing material has changed since that request in February 2026. Plaintiffs' renewed request for a substantially longer extension reflects a lack of diligence, not good cause.

Defendants are, however, willing to consider more targeted relief. For example, Defendants are open to allowing a limited number of depositions to proceed after the close of fact discovery where necessary to accommodate foreign witnesses or logistical constraints outside the Parties' control.[1]  But the broad extension Plaintiffs seek—reopening the entire discovery period—is unwarranted and should be denied.

If the Court is inclined to grant any extension, Defendants respectfully submit that, to minimize further expense and conserve judicial resources, it should be narrowly limited to completing already-noticed depositions that cannot reasonably be taken within the current schedule. Any such extension should not reopen or extend document discovery, permit additional written discovery, or alter deadlines for motions to compel, which should proceed under the current schedule. In addition, Plaintiffs should be required to complete their document productions for any witnesses two weeks before those depositions, or sufficiently in advance of those depositions to allow Defendants to meaningfully review the relevant production(s).

**IX.    <u>Conclusion</u>**

Fact discovery closes June 1, 2026. *See* ECF No. 409 at 2. The Parties have exchanged substantial written discovery and produced significant volumes of documents and data. Plaintiffs provided deposition availability on March 6, 2026, and the Parties confirmed Plaintiffs' deposition dates

---

[1] This could include, e.g., certain DeviantArt witnesses located in the Middle East, witnesses who may need to be rescheduled due to unavoidable conflicts or illness, or potentially more time with the four Lanham Act Plaintiffs, should Midjourney be afforded an extra two hours for questions about those distinct claims.

on March 25. No depositions have yet been taken, although the Parties are in the process of scheduling the remainder. The Parties continue to meet and confer on outstanding discovery issues and will present unresolved disputes to the Court through the joint letter process.

Dated: April 9, 2026

Respectfully submitted,

By: */s/ Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Evan Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Email: mb@butericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: April 9, 2026

Respectfully submitted,

By: */s/ Brittany N. Lovejoy*

Simeon Botwinick (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1505
Washington, D.C., 20004
Telephone: (202) 637-2200
Email: simeon.botwinick@lw.com

Case No. 3:23-cv-00201-WHO              21

Brittany N. Lovejoy (SBN 286813)
Andrew M. Gass (SBN 259694)
Michael H. Rubin (SBN 214636)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: brittany.lovejoy@lw.com

Email: andrew.gass@lw.com
Email: michael.rubin@lw.com

Sarah F. Mitchell (SBN 308467)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Email: sarah.mitchell@lw.com

*Counsel for Defendant DeviantArt, Inc.*

Dated: April 9, 2026                    Respectfully submitted,

By: */s/ Aditya Vijay Kamdar*

Aditya Vijay Kamdar (SBN 324567)
Brittany Warren (*pro hac vice*)
**MORRISON & FOERSTER LLP**
2100 L Street NW, Suite 900
Washington, DC 20037
Telephone: (202) 887-1500
Email: akamdar@mofo.com
Email: bwarren@mofo.com

Joseph Charles Gratz (SBN 240676)
Tiffany Cheung (SBN 211497)
Timothy Chen Saulsbury (SBN 281434)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: (415) 268-7000
Email: jgratz@mofo.com
Email: tcheung@mofo.com
Email: tsaulsbury@mofo.com

Christopher R. Adler (SBN 324567)
**MORRISON & FOERSTER LLP**
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: (213) 892-5200
Email: cadler@mofo.com

Mark Alan Lemley (SBN 155830)
**LEX LUMINA PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (646) 906-8657
Email: mlemley@lex-lumina.com


*Counsel for Defendants Stability AI Ltd. And Stability AI, Inc.*

Dated: April 9, 2026

Respectfully submitted,

By: */s/ Angela Dunning*

Angela Dunning (SBN 212047)
Sam Blankenship (SBN 339905)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com
Email: sblankenship@cgsh.com

Arminda B. Bepko (*pro hac vice*)
Charity E. Lee (*pro hac vice*)
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: abepko@cgsh.com
Email: charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

Dated: April 9, 2026

Respectfully submitted,

By:  */s/ Paven Malhotra*

Paven Malhotra (SBN 258429)
David J. Silbert (SBN 173128)
Bailey W. Heaps (SBN 295870)
Julia L. Greenberg (SBN 333864)
Luke P. Apfeld (SBN 327029)
**KEKER VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400
Email: pmalhotra@keker.com
Email: dsilbert@keker.com
Email: bheaps@keker.com
Email: jgreenberg@keker.com
Email: lapfeld@keker.com

*Counsel for Defendant Runway AI, Inc*

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: April 9, 2026                                    /s/ Joseph R. Saveri

                                                                Joseph R. Saveri