**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttoricklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[*Additional Counsel Listed on Signature Page*]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| Sarah Andersen, et al., | Case No. 3:23-cv-00201-WHO |
| *Individual and Representative Plaintiffs*, | **PLAINTIFFS' MOTION IN SUPPORT OF REQUEST FOR ISSUANCE OF LETTERS ROGATORY** |
| v. | |
| Stability AI Ltd., et al., | Judge: Hon. William H. Orrick |
| *Defendants.* | |

Case No. 23-cv-00201-WHO (LJC)

PLAINTIFFS' MOTION IN SUPPORT OF REQUEST FOR ISSUANCE OF LETTERS ROGATORY

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs request issuance of Letters Rogatory for the purpose of obtaining the sworn deposition testimony of two percipient witnesses, Nikolay Surovenko and Georgii Trofimov who reside in Burnaby and Vancouver, British Columbia, Canada, respectively.[1] Surovenko and Trofimov are former DeviantArt, Inc. ("DA") employees who developed key aspects of the infringing Clip model built off of class works that are central to Plaintiffs' newly added claim against DA and the at-issue DreamUp product. Plaintiffs thus move the Court for issuance of letters rogatory (the "Motion"), requesting the assistance of the Supreme Court of British Columbia, Canada in securing the appearance of these witnesses for seven hours of deposition each, who reside in British Columbia, Canada. Plaintiffs make this Motion pursuant to Rule 28(b)(1)(B) of the Federal Rules of Civil Procedure, principles of international comity, and the inherent authority of this Court, to obtain relevant and proportional evidence located abroad. Plaintiffs have partnered with local counsel to assist with the transmittal of the Letters Rogatory to the Canadian court and to ensure compliance with Canadian law.

On January 9, 2026, Plaintiffs requested deposition dates for Nikolay Surovenko based on documentary evidence that revealed he was involved in central aspects of the case. Months later, on the evening of March 12, 2026, DA informed Plaintiffs for the first time through its edits to a joint status report that Surovenko was no longer employed at DA and resides in Canada. *See* Declaration of Aaron Cera filed contemporaneously herewith ("Cera Decl.") at ¶ 6. On March 13, Plaintiffs wrote to DA's counsel to inquire whether DA represents the Surovenko. Cera Decl., at ¶ 7. On March 23, DA's counsel represented that his law firm does not represent Surovenko and is not presently aware of whether the former employees are represented by counsel. Cera Decl., at ¶ 9. On March 25, 2026, Plaintiffs' counsel attempted informal outreach to Surovenko to obtain his consent to sit for deposition. Cera Decl. ¶ 10. Plaintiffs were unable to get consent from Surovenko to agree to United States procedures for his deposition. Cera Decl. ¶ 11; *See* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Canada.html.

---

[1] Plaintiffs are filing the addresses of the non-party witnesses under seal but note that the addresses should be redacted for purposes of filing on the public docket only.

The other Canadian witness at-issue, Georgii Trofimov, is one of only two individuals ████████ ████████████████████████████████████████████████ ████████████████ DA Resp. to Pls' Interrog. 14 (Mar. 23, 2026).[2] This CLIP-token model is at the heart of Plaintiffs' new claim against DA. ECF No. 431, ¶¶ 380-383. Plaintiffs have diligently pursued discovery surrounding Trofimov's knowledge of the relevant facts here. On January 30, 2026, Plaintiffs requested DA add Trofimov as an additional custodian, and DA agreed. Cera Decl. ¶ 16. On March 10, 2026, DA informed Plaintiffs that Trofimov had left the company. Cera Decl. ¶ 18. Plaintiffs wrote to DA's counsel on March 12, 2026, inquiring whether they represent Trofimov, and if so, whether they will accept service of a deposition subpoena on his behalf. Cera Decl. ¶ 19. On March 23, 2026, DA's counsel informed Plaintiffs they do not represent Trofimov in connection with this matter, and that they did not know whether Trofimov is represented by other counsel. Cera Decl. ¶ 20. On March 25, 2026, Plaintiffs' counsel attempted informal outreach to Trofimov to obtain his consent to sit for deposition. Cera Decl. ¶ 21. As of the filing of this Motion, Plaintiffs have not been able to obtain Trofimov's consent to sit for deposition. Cera Decl. ¶ 24.

On March 30, 2026, Plaintiffs' counsel emailed DA's counsel informing them of their intent to move the Court for issuance of letters rogatory to the Supreme Court of British Columbia, Canada to obtain the deposition testimony of Surovenko and Trofimov and requested whether DA intends to oppose the Motion. Cera Decl. ¶ 27. On March 31, 2026, DA's counsel requested Plaintiffs' bases for the Motion. Cera Decl. ¶ 28. On March 31, 2026, Plaintiffs' counsel provided the DA's counsel substantive bases supporting the issuance of letters rogatory to secure the deposition testimony of Surovenko and Trofimov. Cera Decl. ¶ 29. On that same day, Plaintiffs requested the last known addresses of Surovenko and Trofimov. *Id.* On April 1, 2026, DA's counsel responded that they intend to oppose the Motion with respect to Surovenko and that they take no position with respect to Trofimov. Cera Decl. ¶ 30. On April 9, 2026, DA provided Plaintiffs with Surovenko's last known address and represented they have no last known address for Trofimov. Cera

---

[2] The other individual is DA's head of artificial intelligence. DA Resp. to Pls' Interrog. 14 (Mar. 23, 2026). As this Court has recognized, it is reasonable to expect a lower-level employee "was privy to communications and documents that his supervisor or other high-level employees did not possess." *Andersen v. Stability AI Ltd.*, No. 23-CV-00201-WHO (LJC), 2025 WL 3564202, at *2 (N.D. Cal. Dec. 12, 2025).

Decl. ¶ 31.[3] Because Plaintiffs have been unable to obtain consent from each former employee to appear for deposition pursuant to Rules 26(b) and 45, Plaintiffs' Motion is necessary, relevant, and proportional to claims and defenses at-issue in this matter. The requested deposition testimony will be used at the forthcoming June 1, 2027 trial to prove Plaintiffs' allegations that DA trained the models and products at-issue on Plaintiffs' copyrighted material without authorization, and that such unauthorized use was not a fair one. For the reasons set forth *infra*, Plaintiffs request the Court issue the Letters Rogatory.

## II.    ARGUMENT

Under Federal Rule of Civil Procedure 28(b), a deposition may take place within a foreign country "under a letter request, whether or not captioned a 'letter rogatory.'" Fed. R. Civ. P. 28(b)(1)(B). The Court has discretion whether to issue such a letter. *See Int'l Swimming League, Ltd. v. Fed'n Internationale de Natation*, No. 18-CV-07394-JSC, 2020 WL 7042861, at \*2 (N.D. Cal. Dec. 1, 2020). Determining "whether to issue a letter rogatory requires an application of Rule 28(b) in light of the scope of discovery provided for by the Federal Rules of Civil Procedure," [i.e., relevance and proportionality under Rules 26 and 45]. *Largan Precision Co., Ltd. v. Motorola Mobility LLC*, No. 21-CV-09138-JSW (DMR), 2024 WL 4200562, at \*2 (N.D. Cal. Sept. 16, 2024) (citation omitted). "The scope of discovery under Rule 45 is the same as under Rule 26(b)." *In re Mosaic LLM Litig.*, No. 24-CV-01451-CRB (LJC), 2025 WL 2294910, at \*1 (N.D. Cal. Aug. 8, 2025) (citing *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939, 2017 WL 2929439, at \*2 (N.D. Cal. July 7, 2017)). "The proper method for…obtaining deposition testimony in Canada for use in a United States action is to proceed by means of a letter rogatory. The Canada Evidence Act specifically provides that a court outside of Canada may serve letters rogatory upon a Canadian court." *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536 MWF (ASX), 2020 WL 12740646, at \*1 (C.D. Cal. Apr. 14, 2020) (citing R.S.C.1985, c. C-5, s. 46).

Additionally, to determine whether the requested discovery comports with relevance and proportionality under Rule 26, the Court may consider a five-factor comity analysis: (1) The importance to the…litigation of the…information requested, (2) the degree of specificity of the request, (3) whether the information originated in the United States, (4) the availability of alternative means of securing the

---

[3] Through their own investigation, Plaintiffs have identified Trofimov resides in Vancouver, British Columbia, Canada.

information, (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *J.R. Simplot Co. v. McCain Foods USA, Inc.*, No. 16-CV-00449-DCN, 2021 WL 7451378, at *10-11 (D. Idaho Apr. 2, 2021) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, n. 28 (1987)). Each factor weighs in favor of issuing the Letters Rogatory, and this Court's order is necessary to secure the requested deposition testimony. Courts will generally accept an application for issuance of a letter rogatory, unless good cause is shown by the party opposing its issuance. *See, e.g., Evanston Ins. Co. v. OEA, Inc.*, No. CV S-02-1505 DFL PAN, 2006 WL 1652315, at *2 (E.D. Cal. June 13, 2006).

**A. The requested depositions are necessary to the litigation, narrowly tailored, and cannot be replaced by other discovery.**

**i.    Surovenko**

The Court has already determined that discovery of Surovenko's documents is relevant and proportional. ECF No. 367. Judge Cisneros "credit[ed] Plaintiffs' explanation that Surovenko's technical work 'shaped DreamUP[]' such that his custodial files may contain documents on how DreamUP operates." ECF No. 367 at 3. The Court further found that "it is likewise reasonable to expect that Surovenko was privy to communications and documents that his supervisor or other high-level employees did not possess." *Id.* at 4. As the Court recognized, Surovenko possesses unique, first-hand knowledge unavailable from other custodians or witnesses, making him a critical percipient witness in the case at bar. Documents produced subsequent, including those from Surovenko's custodial file, further emphasize his relevance as to core issues in this case rendering his deposition relevant and proportional.

*First,* documentary evidence confirms that Surovenko's work on DA's CLIP model materially shaped DreamUp's prompt steering and output behavior, including by reference to certain Plaintiffs. In simple terms, Surovenko's work directly influenced the CLIP model's ability to interpret text prompts into the desired image outputs *See, e.g.,* DEVIANTART-000315 (reflecting Surovenko's discussions concerning DA's CLIP model); DEVIANTART-002260 (describing Surovenko's "████████████████████████████████████); DEVIANTART-000079 (Testing "████████████████ ████ ████ including prompting the model with Plaintiff Greg Rutkowski's name:

"█████████████████████████████████████████████████████████████████████████████████ (emphasis added). Further, DA executives deferred to Surovenko's decision making on technical aspects of the model, further justifying his deposition. *See, e.g.,* DEVIANTART-000239 at -240, -245 (Chris Nell (Chief Technology Officer) deferring to Surovenko on ███████████████████████████████████████████████████████████████████ Because Surovenko performed this work on the at-issue models, his deposition testimony is necessary to explore why technical decisions were made, and the contents of his communications reflected in the record. The Court's prior approval of Surovenko as a document custodian further supports the relevance of his sworn deposition testimony under Rules 26 and 45.

*Second,* Soruovenko's testimony will also bear on DA's knowledge that its conduct was infringing, or that it acted with reckless disregard for the copyright owner's rights. *See Sega Enters. Ltd. v. MAPHIA,* 948 F. Supp. 923, 936 (N.D. Cal. 1996) ("[A] determination as to willfulness requires an assessment of a party's state of mind[.]"); *see also, Bartz v. Anthropic et al.,* 791 F. Supp. 3d 1038 (N.D. Cal. 2025) ("to determine a statutory award, a jury must first make findings as to the infringer's mental state …"). Surovenko made statements within the scope of his employment with DA reflecting his contemporaneous awareness of the ethical and legal risks associated with training models on copyrighted works, which bears directly on DA's knowledge and willfulness. *See, e.g.,* DEVIANTART-000068 at -069 (Surovenko: ██████████████████████████████████████████████████████████████████████████ Equally germane to willfulness, Survovenko designed and implemented a ███████████████████████████████████████████████████████████████████████████ *See, e.g.,* DEVIANTART-000187 at -193 (████████████████████████████████████████████████ Generative AI models can emit copies of its training data (sometimes known as regurgitation)—a blocklist lists images that should be blocked upon being proposed as an output by the model, typically for various reasons, including legal concerns ranging from violent or sexual imagery to copyright concerns. *See, e.g.,* J. Grimmelmann et al., *The Files are in the Computer: On Copyright Memorization, and Generative AI,* 100

Chi. Kent L. Rev. 141, 165 (2025). ████████████████████████████

████████████████████████████████████████████

████████████████ *See, e.g., IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 1003 (N.D. Cal. 2010). And courts within this district have recognized the relevance of such training data regurgitation mitigation mechanisms in assessing copyright infringement and fair use. *See, e.g., Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC, 2025 WL 82205, at *2 (N.D. Cal. Jan. 13, 2025) (ordering production of blocklist and two hours of 30(b)(6) testimony on mitigations). Surovenko is a key individual with first-hand knowledge on the development of DreamUp's ████████ (including why items were included or excluded) and its mechanics and therefore denying Plaintiffs the opportunity to question him under oath would be antithetical to the broad discovery principles underlying Rule 26.

As this Court has recognized, Surovenko is likely to possess information that other higher-level employees are unlikely to possess. ECF No. 367 at 4; *see also, Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*, No. CV-19-00835-JVS, 2020 WL 5900155, at *2 (C.D. Cal. Aug. 17, 2020) (finding no guarantee that "existing production" or "Rule 30(b)(6) testimony is a perfect replacement for [percipient witness's] own testimony and discovery." And reasoning that "there is no guarantee that the remaining [] [percipient witnesses] will have the same memory of the [relevant] process[es], and [the requesting party] should not have to take [responding party's] word for it.") (citation omitted and cleaned up). Because Surovenko is no longer employed by DA and has not consented to United States deposition procedures, and because his testimony cannot be obtained through alternative means, the issuance of Letters Rogatory is necessary.

**ii.     Trofimov**

Trofimov's sworn deposition testimony is relevant and necessary to both Plaintiffs' direct copyright infringement claims against DA and DA's anticipated fair use argument. DA identified Trofimov as a key machine learning engineer with "████████████████████████████ DA Resp. to Pls' Interrog. 10. Further, DA identified Trofimov as one of only two individuals ████████ ████████████████████████████ ████████████ the other being DA's head of artificial intelligence DA Resp. to Pls' Interrog. 14. Trofimov therefore is relevant to both Plaintiffs' claims against DA and DA's fair use defense. Indeed, only Trofimov can testify to *his* oversight and control over the research and development of DreamUp. And

Trofimov is the *only* lower-level employee primarily involved in the development of the CLIP-token model. *Id.* As this Court has recognized, it is reasonable to expect a lower-level employee "was privy to communications and documents that his supervisor or other high-level employees did not possess." ECF No. 367 at 4. That alone should justify his oral examination under Rules 26 and 45. But there is more.

*Second*, Trofimov appears on key documents revealing his central involvement with diversity experiments conducted using Plaintiff Rutkowski's copyrighted works. *See, e.g.,* DEVIANTART-000381 at _0001. Diversity experiments are studies that analyze how varying types of training data impact AI performance. *See* Zeng et al., *Precision over Diversity: High-Precision Reward Generalizes to Robust Instruction Following*, https://arxiv.org/abs/2601.04954. Experimentation with Plaintiffs' works is an example of a "use" that Plaintiffs are entitled to discovery on. Further, among other things, evidence of such testing provides insight into how data selection affects the generation of outputs. Plaintiffs must have the ability to examine this witness to determine how DA assessed what constitutes "high quality" data suitable for model training, and how that data was selected. The conclusion that high quality images—like Plaintiff Rutkowski's—are valuable for training supports Plaintiffs' theory that DA had a specific need for this material and willfully infringed it because of its positive effect on model performance.

*Finally*, Trofimov started an important internal discussion in which he asked "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ DEVIANTART-003494. This discussion and general topic are significant because they go to Plaintiffs' ability to prove whether protected expression was used to train the models at-issue. *See, e.g, Rockefeller Photos, LLC v. Kosherco LLC*, No. CV 25-04092-DMG (MBKX), 2025 WL 3718379, at *2 (C.D. Cal. Nov. 5, 2025) ("To prove copyright infringement, Plaintiff must show that it is the owner of a valid copyright and Defendant copied original expression from that copyrighted work."). Trofimov's unique firsthand knowledge of these topics is germane to rebutting DA's fair use defense because the ability of the models at-issue to reproduce a ███████████████████████ suggests retention and reproduction of protected expression. *See, e.g.,* ECF No. 431, ¶ 4 (Emad Mostaque, regarding Stable Diffusion Model that DeviantArt copied and deployed commercially: "We took 100,000 gigabytes of images and compressed it to a two-gigabyte file that we can recreate any of those [images] and iterations of those.") (citing Narratives Podcast,

PLAINTIFFS' MOTION IN SUPPORT OF REQUEST FOR ISSUANCE OF LETTERS ROGATORY

Sept. 2022 (https://narrativespodcast.com/2022/09/19/112-emad-mostaque-aialignment-and-stable-diffusion/). Put another way, if a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ it indicates the model retained protectable expression from the copyrighted image. *See* DEVIANTART-003494 at -496 (The models "▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Because Trofimov's unique knowledge relates to the issues of the at-issue model training, use of copyrighted works, and technical processes for detecting protected expression, his deposition is well within the bounds of permissible Rule 26 and Rule 45 discovery and justifies the issuance of letters rogatory. *See, e.g.*, ECF No. 461 (noting "[r]elevance for discovery purposes is broad, and given that fair use in the context of generative AI is an unsettled area of the law, the Court (within reason) is disinclined to prematurely limit Plaintiffs' ability to advance theories to counter fair use").

**B. Failure to permit the requested discovery would undermine the effective prosecution of Plaintiffs' action.**

As discussed *supra*, the sworn deposition testimony of Surovenko and Trofimov is necessary for Plaintiffs to provide the Court with a complete record including testimony from key players at the summary judgment phase of the case. *See generally Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1037 (N.D. Cal. 2025) (emphasizing the need for copyright plaintiffs to establish a complete record to adjudicate issues in AI copyright context); *see also In Re Google Generative AI Copyright Litig.*, No. 23-CV-03440-EKL, 2026 WL 686314, at *1 (N.D. Cal. Mar. 11, 2026) (noting the public importance of similar case given the scope of conduct at issue). Declining to issue the Letters Rogatory here would impair the effective prosecution of this action.

The witnesses at-issue reside in the Province of British Columbia, Canada. The laws of the Province of British Columbia require the Letters Rogatory be directed to the Supreme Court of British Columbia. *See Evidence Act*, RSBC 1996, c 124 § 53. To abide by Canada's provincial laws, Letters Rogatory are necessary for the Supreme Court of British Columbia to issue deposition subpoenas to these witnesses. The requested depositions are not contrary to public policy. Rather, they are aimed at obtaining unique, crucial evidence, and any burden is outweighed by the importance of the testimony sought in a case of great magnitude.[4]

---

[4] To further mitigate burden on Surovenko and Trofimov, Plaintiffs' counsel are willing to travel to Burnaby and Vancouver, British Columbia, respectively, to take the depositions at a convenient location

PLAINTIFFS' MOTION IN SUPPORT OF REQUEST FOR ISSUANCE OF LETTERS ROGATORY

**C. Good reason does not exist to deny the issuance of Letters Rogatory.**

Good reason must be shown for denying the issuance of a letter rogatory. *In re Cedar Shake & Shingle Antitrust Litig.*, No. 2:19-CV-00288-MJP, 2020 WL 39144, at *1 (W.D. Wash. Jan. 2, 2020). Plaintiffs could not have appropriately scheduled these foreign depositions earlier. In its initial disclosures, served on November 14, 2024, DA listed only two employees as the persons with knowledge about DA's development and use of DreamUp: CEO Moti Levy, and CTO Chris Nell. Importantly, DA did not identify Surovenko or Trofimov as having knowledge of DA's development and use of DreamUp. Nor did it amend or update its disclosures as new information became available, or even when Plaintiffs filed their Third Amended Complaint. *See* Fed. R. Civ. P. 26(a)(1)(A)(i); Fed. R. Civ. P. 26(e)(1)(A). Over a year after serving its initial disclosures, DA served an Interrogatory response identifying Surovenko as ███████████ ███████████████████████████████ DA Resp. to Pls' Interrog. 10. Indeed, DA never amended its initial disclosures to include Surovenko or Trofimov. If Surovenko and Trofimov had been disclosed early in the fact discovery stage, Plaintiffs would have pursued locating them earlier. In any event, if the letters rogatory process cannot resolve before the close of the June 1, 2026 fact discovery cutoff, the Court "can address any problems by other means, such as extending the fact discovery cutoff." *Fisher & Paykel Healthcare Ltd.*, 2020 WL 5900155, at *2. Because good reason does not exist to deny the issuance of Letters Rogatory, the Motion should be granted. *See, e.g., Darbut v. Three Cities Rsch., Inc.*, No. CV-06-627-HA, 2007 WL 9809105, at *2 (D. Or. Nov. 9, 2007) (granting plaintiffs' motion for issuance of letter rogatory to the Supreme Court of British Columbia, concluding the evidence sought is relevant and obtaining a deposition in Vancouver, British Columbia would not cause undue hardship).

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs request this Court issue an order that: (1) Grants the Motion; (2) sign and issue certified copies of the proposed attached Letters Rogatory requesting the assistance of the Supreme Court of British Columbia; and (3) authorize transmission of the Letters Rogatory through appropriate diplomatic or judicial channels.

for the witnesses.

Dated: April 10, 2026

By:  /s/ Joseph R. Saveri
                Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan Creutz (SBN 349728)
Alexandra Fernandez (SBN 330518)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: ebuchanan@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttaericklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

Case No. 23-cv-00201-WHO (LJC)                    10
PLAINTIFFS' MOTION IN SUPPORT OF REQUEST FOR ISSUANCE OF LETTERS ROGATORY