**LATHAM & WATKINS LLP**
Andrew M. Gass (SBN 259694)
  andrew.gass@lw.com
Michael H. Rubin (SBN 214636)
  michael.rubin@lw.com
Brittany N. Lovejoy (SBN 286813)
  brittany.lovejoy@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600

Sarah F. Mitchell (SBN 308467)
  sarah.mitchell@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: 213.485.1234

Simeon Botwinick (pro hac vice)
  simeon.botwinick@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

*Attorneys for Defendant DeviantArt, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al., | CASE NO. 3:23-cv-00201-WHO (LJC) |
| Plaintiffs, | **DEFENDANT DEVIANTART, INC.'S OPPOSITION TO PLAINTIFFS' MOTION IN SUPPORT OF REQUEST FOR ISSUANCE OF LETTERS ROGATORY** |
| vs. | |
| STABILITY AI LTD., et al., | Judge:   Hon. Lisa J. Cisneros, U.S.M.J. |
| Defendants. | **REDACTED** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

## I.    INTRODUCTION

Plaintiffs' Motion in Support of Request for Issuance of Letters Rogatory (ECF No. 473, "Motion") seeks to depose a foreign non-party—Nikolay Surovenko—who was uninvolved with developing DreamUp—Defendant DeviantArt, Inc. ("DeviantArt")'s product at issue in this case. The Court should deny the Motion for at least two reasons.[1]

*First*, because Mr. Surovenko had no formal responsibility for the development of DreamUp, his testimony is not "important" or "necessary" to this litigation, *see* S. Botwinick Decl., Exs. 1-4 (citing Canadian authorities on issuance of letters rogatory), nor relevant or material, *see* Fed. R. Civ. P. 26(b)(1).  Mr. Surovenko did not develop code for DreamUp, modify any existing files for DreamUp, or otherwise modify, copy, download, or pre-process any image data specifically for DreamUp.  *See* P. Gorniak Decl. ¶ 9.  Accordingly, Mr. Surovenko's testimony is not "importan[t]" to this litigation, weighing against the issuance of letters rogatory per the governing factors for the issuance of letters rogatory.  *See Optrics, Inc. v. Barracuda Networks, Inc.*, 2019 WL 5485890, at *1 (N.D. Cal. Oct. 25, 2019) (weighing the "importance of the discovery to this litigation" in deciding whether to issue letters rogatory).

*Second*, the information Plaintiffs seek from Mr. Surovenko can be readily obtained via "alternative means."  *See id.*  Plaintiffs intend to depose at least six current DeviantArt employees who could cumulatively testify to the topics for which Plaintiffs seek Mr. Surovenko's testimony, many of whom are participants in the communications cited in Plaintiffs' motion.  Plaintiffs have not identified any specific, unique information that Mr. Surovenko has that is "important" enough to warrant seeking to compel a foreign citizen's deposition.  *See id*.  Accordingly, Mr. Surovenko's deposition would be, at best, cumulative, and thus not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).

For these reasons, DeviantArt respectfully requests that the Court deny Plaintiffs' Motion.

---

[1] DeviantArt takes no position on Plaintiffs' Motion for Letters Rogatory seeking the testimony of Georgii Trofimov.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

## II.   FACTUAL BACKGROUND

Founded in 2000, DeviantArt is an online art community focused on sharing and engaging with digital art. *See* ECF No. 449, Answer to Third Amended Complaint ("Answer") ¶¶ 344, 347. In 2022, DeviantArt launched DreamUp, a product using Stable Diffusion—an AI image generation model not created by DeviantArt—to generate images. *Id.* ¶¶ 346, 351.[2] As an online art community, DeviantArt utilizes various tools related to identifying, sorting, filtering, and moderating art on its website, including optimizing search functionality. *See* P. Gorniak Decl. ¶ 2. One such tool is Contrastive Language-Image Pre-training ("CLIP"), is a public model that was trained to map images and text into a unified space, making it possible to compute distances between text and images. *See id.* ¶ 3. CLIP-based tools can be utilized in a variety of ways, including in ways unrelated to AI image generation. *See id.* ¶¶ 4-5. For example, on DeviantArt's website, CLIP-based tools can ██████████████████████████████████ ████████████ *See id.* ¶ 6. DeviantArt's use of CLIP-based tools ████████████ is separate in intent, function, and technological use from DeviantArt's use of CLIP-based tools in projects related to DreamUp. *See id.* ¶ 7.

Mr. Surovenko is a former DeviantArt engineer whose role generally concerned recommendation systems and functionality on DeviantArt's website. *See id.* ¶ 8. During his tenure at DeviantArt, Mr. Surovenko had no formal responsibility for the development of DreamUp. *See id.* ¶ 9. He did not develop code for DreamUp, modify any existing files for DreamUp, or otherwise modify, copy, download, or pre-process any image data specifically for DreamUp. *See id.* March 6, 2026, was Mr. Surovenko's last day of employment at DeviantArt. *See id.* ¶ 10. He currently lives in Canada. *See id.*

DeviantArt determined that, due to his role, Mr. Surovenko was unlikely to have information relevant to this case and therefore did not identify him as a document custodian. ECF No. 363 at 5. Plaintiffs sought to have him included as a document custodian, and the Court

---

[2] Unlike the other Defendants, who are accused of training and building AI image-generative models, *see* Third Amended Complaint ("TAC") ¶¶ 223, 263, 329, Plaintiffs allege that DeviantArt merely incorporated a model built by others into DreamUp, *see id.* ¶¶ 250, 352, 361, 378.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

granted Plaintiffs' requested relief. *See* ECF Nos. 363, 367. But the Court did not rule that Mr. Surovenko was relevant to Plaintiffs' allegations. *See* ECF No. 367 at 3-4. Rather, the Court "credited" Plaintiffs' explanation of Mr. Surovenko's role at DeviantArt "such that his custodial files *may* contain documents on how DreamUp operates" and "that [Mr. Surovenko's] supervisor or other high-level employees did not possess." *Id.* at 3-4 (emphasis added). DeviantArt has since produced responsive documents from Mr. Surovenko's custodial file. *See* S. Botwinick Decl. ¶ 6. In this Motion, Plaintiffs only cite documents produced prior to the Court's December 12, 2025 order compelling the production of Mr. Surovenko's custodial file, thereby indicating that subsequent to DeviantArt's custodial production, Plaintiffs have not identified any further potentially relevant documents. *Id.*

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 28(b) provides that a "deposition may be taken in a foreign county . . . under a letter request," *i.e.*, a "letter rogatory." "[A] court's decision whether to issue a letter rogatory" under Rule 28(b) requires consideration of "the scope of discovery provided for by the Federal Rules of Civil Procedure." *Asis Internet Servs. v. Optin Glob., Inc.*, 2007 WL 1880369, at *3 (N.D. Cal. June 29, 2007). Rule 26(b)(1), in turn, provides that discovery must be not only relevant to claims or defenses in the case, but also "proportional to the needs of the case, considering," *inter alia*, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

In considering letters rogatory motions, courts "should exercise special vigilance to protect foreign litigants from the danger that *unnecessary*, or unduly burdensome, discovery may place them in a disadvantageous position." *Optrics*, 2019 WL 5485890, at *1 (emphasis added) (citing *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 546 (1987)). Among other factors, courts consider the "importance of the discovery to this litigation" and "whether alternative means are available to obtain the discovery." *Id.* at *2 (applying these factors to a letters rogatory dispute); *see also In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007) ("Courts are less inclined to ignore a foreign state's concerns where the outcome of litigation 'does not stand or fall on the present discovery

order' or where the evidence sought is cumulative of existing evidence").

In issuing letters rogatory, the Court must certify to the receiving Canadian court that (1) the requested material is "relevant" and "necessary for pre-trial discovery or trial of the foreign action," (2) the material cannot otherwise be obtained, (3) the letters' issuance is not contrary to Canadian public policy, and (5) Plaintiffs' request is reasonably specified and not unduly burdensome. *See* S. Botwinick Decl., Ex. 1 (Canada Evidence Act, s. 46(1)); *id.*, Ex. 2 (*McFadden Lyon Rouse LLC v. Lookin*, 2012 ONSC 2243 at para. 17); *see also id.*, Ex. 3 (*Conn. Ret. Plans & Trust Funds v. Buchan*, 2007 ONCAN 362 at para. 7) (applicant bears the burden that the evidence sought in Canada is "likely relevant" to the determination of a claim or defense); *id.*, Ex. 4 (*Fecht v. Deloitte & Touche* (1996), 28 O.R. (3d) (Gen Div.) at para. 2) (evidence that is merely "potentially relevant" is not sufficient to allow discovery).

## IV.    ARGUMENT

### A.    <u>Mr. Surovenko's Deposition Is Unimportant and Unnecessary to this Litigation.</u>

Because Mr. Surovenko had no formal responsibility for the development of DreamUp—the sole product at issue in Plaintiffs' allegations against DeviantArt—his testimony would have little "importance" to this litigation, *Optrics*, 2019 WL 5485890, at *1, and is not "necessary for pre-trial discovery or trial" under Canadian law, *see* S. Botwinick Decl., Exs. 1-2. Plaintiffs' claims against DeviantArt concern only DreamUp. *See* TAC ¶¶ 346, 374-83. Mr. Surovenko, a former DeviantArt engineer, did not perform any key tasks in connection with DreamUp's development, rather his role generally concerned recommendation systems and functionality on Deviant's website. *See* P. Gorniak Decl. ¶¶ 8-9.[3]

---

[3] Although Plaintiffs now claim that DeviantArt should have identified Mr. Surovenko in its initial disclosures as having relevant knowledge of DreamUp's development (Mot. at 9), DeviantArt did not identify him as an individual that it "may use to support its claims or defenses" because he is "[un]likely to have discoverable information," having had no formal role in developing DreamUp. Fed. R. Civ. P. 26(a)(1)(A)(i); *see* S. Botwinick Decl. ¶ 3; *see* P. Gorniak Decl. ¶¶ 8-9. Plaintiffs further mistakenly state that DeviantArt "served an Interrogatory response identifying [Mr.] Surovenko as 'having oversight or control over, the research and development of DreamUp.'" Mot. at 9. This appears to be an error as DeviantArt did not identify Mr. Surovenko in its response but rather Moti Levy, Liat Karpel, Chris Nell, Peter Gorniak, Sasha Lerner, and Mr. Trofimov. *See* S. Botwinick Decl. ¶ 4.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

Plaintiffs argue that Mr. Surovenko's testimony is necessary to this litigation because (1) his "work directly influenced the CLIP model's ability to interpret text prompts into the desired image outputs," and (2) his testimony "bear[s] on [DeviantArt]'s knowledge that its conduct was infringing." Mot. at 4-6. Plaintiffs are wrong on both counts.

*First*, having now receiving Mr. Surovenko's custodial file, Plaintiffs cite only four documents in support of their claim that Mr. Surovenko's work "influenced" DreamUp. None of the documents show Mr. Surovenko working on DreamUp. *See* Mot. at 4-5. DEVIANTART-000315 and DEVIANTART-002260 discuss uses of CLIP for purposes other than DreamUp. Plaintiffs misunderstand that not all references to "CLIP" are references to the CLIP-token model that is the subject of Plaintiffs' claim in this litigation. CLIP is a third-party tool that DeviantArt uses for many other normal-course features on the DeviantArt website that are completely unrelated to DreamUp or any other AI image-generating model. *See* P. Gorniak Decl. ¶ 11. Both of these documents involve the ███████████████████████████████████ ███████████████████████████████████ ████████████. *See id.* Neither reflects work on DreamUp. Indeed, DEVIANTART-000315 is from April 2022, which ███████████████████████████, *see* S. Botwinick Decl. ¶ 5, while DEVIANTART-002260 is from October 2023, which is █████████████ ████████████████████████, *see* P. Gorniak Decl. ¶ 11.

DEVIANTART-000079 is a conversation from a general company AI-art-interest chat between Mr. Surovenko and DeviantArt's director of community relations (who does not have a technical role at DeviantArt). *See id.* ¶ 12. It contains no reference to DreamUp or any other DeviantArt project and consists of the two employees sharing pictures of llamas made using another company's public AI tool. *Id.* Moreover, DEVIANTART-000239 is a Slack conversation in which Mr. Surovenko *does not participate*. Another employee has two general technical questions for Mr. Surovenko, but there is no evidence that Mr. Surovenko ever replied to either question. To the extent Plaintiffs are interested in the content of the conversation, this document only underscores that other DeviantArt employees Plaintiffs intend to depose (including Mr. Nell and Mr. Gorniak) are more appropriate witnesses. Plaintiffs' evidence does not support that Mr.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

Surovenko's testimony is important or necessary to this litigation. *See Optrics*, 2019 WL 5485890, at *1.

*Second*, Plaintiffs' argument that Mr. Surovenko can uniquely testify to DeviantArt's alleged "willfulness" is similarly unsupported by the evidence that they reference.

Plaintiffs' citation to a single sentence in a Slack message does not show that Mr. Surovenko can offer "important" testimony relevant to DeviantArt's alleged "willfulness." *See* Mot. at 5 (citing DEVIANTART-000068). The document contains Mr. Surovenko's irrelevant general commentary on the future of copyright law, artists, and generative AI predating DreamUp's launch, and unrelated to DreamUp. *Id*. Again, Mr. Surovenko was not responsible for DreamUp. *See* P. Gorniak Decl. ¶¶ 8-9. Generalized statements from a former employee uninvolved in and not responsible for the alleged infringing activity cannot be imputed as DeviantArt's "knowledge and willfulness" of copyright infringement. *See Spectravest, Inc. v. Fleet St., Ltd.*, 1989 WL 135386, at *4 (N.D. Cal. Aug. 23, 1989) (imputing willfulness from a defendant's employee actions only when employee was involved in the infringing activity and said activity was within the scope of her employment); *see also Billfloat Inc. v. Collins Cash Inc.*, 2022 WL 2158970, at *4 (N.D. Cal. June 15, 2022) (giving little "operative weight" to evidence of "knowledge" of a "low-level employee with no responsibility to monitor or report trademark infringement"). As such, Mr. Surovenko's personal opinions on these topics are not "importan[t]" to this litigation. *See Optrics*, 2019 WL 5485890, at *1; *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) ("This impression of a low-level employee is just that—an unsubstantiated statement without substance or context.").

Plaintiffs further claim DEVIANTART-000187 shows that Mr. Surovenko "designed and implemented a blocklist" to "prevent[] a model from generating copies of substantially similar training data images in response to certain user prompts," but the document does not support this conclusion. *See* Mot. at 5. The document shows Mr. Surovenko discussing with another employee how a "blacklist[ed]" NSFW word would be distinguished from words with similar characters. *See* DEVIANTART-000187 at -193; *see also id.* at -191 (an employee inquiring in the thread about

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

reporting for "Explicit" or "Inappropriate" content).  Mr. Surovenko does not discuss a "block" intended to prevent the model from regurgitating training data.[4]

In any event, as discussed further below, both of these Slack threads involve other *current* DeviantArt employees (including Mr. Lerner, Mr. Levy, and Rob Woolfson) that Plaintiffs intend to depose that can be questioned about these communications.  *See United States v. Rosen*, 240 F.R.D. 204, 213, 215 (E.D. Va. 2007) (denying letters rogatory for Israeli government employees on certain topics as "cumulative" when other deponents had already testified about the same relationship).  Given the lack of necessity of Mr. Surovenko's testimony to Plaintiffs' case, this factor counsels in favor of denying Plaintiffs' Motion.  *Optrics*, 2019 WL 5485890, at *1.

**B.  Plaintiffs May Obtain the Information Sought Through Alternative Means.**

Plaintiffs can obtain the information they seek by "alternative means"—specifically, the testimony of DeviantArt party witnesses.  The issuance of letters rogatory is therefore unnecessary and impropriate.  *See Optrics*, 2019 WL 5485890, at *1.

For any third-party discovery—including via letters rogatory—"an important prerequisite . . . is to avoid saddling those third parties with an undue burden" and thus, "any party seeking third-party discovery must be able to explain . . . why [that discovery] could not be obtained from a party to the litigation."  *Airwair Int'l Ltd. v. Zoetop Bus. Co., Ltd.*, 2021 WL 6091263, at *2 (N.D. Cal. Dec. 23, 2021).  Courts ruling on the propriety of third-party subpoenas—foreign and domestic—consider whether the information can be sought by alternative means or via alternative sources.  *See, e.g.*, *In re Herz*, 2026 WL 18785, at *4 (N.D. Cal. Jan. 2, 2026) (quashing subpoena of former employee when plaintiffs could obtain information via other means, including "with much greater efficiency by means of a 30(b)(6) deposition or other discovery from [Defendant]"); *Viasat Inc. v. Space Sys./loral, Inc.*, 2013 WL 12061801, at *7 (S.D. Cal. Jan. 14, 2013) (denying

---

[4] Plaintiffs' cited caselaw on the purported relevance of blocklists also does not move the needle. *See* Mot. at 6.  *IO Grp., Inc. v. Jordan* ruled on a default judgment and thus accepted plaintiffs' allegations of defendant's willful conduct as true.  708 F. Supp. 2d 989, 1003 (N.D. Cal. 2010) (accepting as true that Defendant willfully hid a website's true owner resulting in false registration information on a public registry).  The court did not otherwise rule that a mechanism akin to a blocklist (which does not appear in *Jordan*) bears on willfulness.  *Id.*  And *Kadrey v. Meta Platforms, Inc.* provides no reasoning for why a blocklist might be relevant to willfulness.  2025 WL 82205, at *2 (N.D. Cal. Jan. 13, 2025).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

letters rogatory that sought "unnecessarily duplicative information which Plaintiffs can request from the United States-based Defendants").  "Courts are often more likely to heed a foreign state's concerns . . . if the evidence sought is cumulative[.]"  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 5462496, at *5 (N.D. Cal. Oct. 23, 2014) (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992)).

Plaintiffs can seek testimony on technical decision-making regarding DreamUp and DeviantArt's purported willfulness from DeviantArt party witnesses, rendering Mr. Surovenko's testimony, at best, cumulative.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).  To date, Plaintiffs have sought depositions of six DeviantArt employees, including (i) CEO Moti Levy, (ii) Chief Financial Officer Liat Karpel, (iii) Head of AI Peter Gorniak, (iv) Chief Technology Officer Chris Nell, (v) Head of Data Rob Woolfson, and (vi) VP of Engineering Sasha Lerner.  *See* S. Botwinick Decl. ¶ 7.  Mr. Gorniak, as DeviantArt's Head of AI, and Mr. Nell, as DeviantArt's Chief Technology Officer, can testify to the technical decision-making about DeviantArt's CLIP model.  *See* Mot. at 4 (seeking Mr. Surovenko's testimony regarding technical decision-making regarding DreamUp). Similarly, Mr. Levy, as DeviantArt's CEO, can testify to the purported willfulness of DeviantArt's infringement.  *Id.* at 4-5 (seeking Mr. Surovenko's testimony regarding DeviantArt's purported willfulness).  Plaintiffs' own cited evidence underscores Mr. Surovenko's cumulative role; all but one of Plaintiffs' cherry-picked documents include at least one DeviantArt party witness that Plaintiffs intend to depose.  *See* DEVIANTART-000068 (Sasha Lerner, Liat Karpel, Robert Woolfson); DEVIANTART-000187 (Sasha Lerner, Moti Levy); DEVIANTART-000239 (Peter Gorniak, Chris Nell); DEVIANTART-000315 (Chris Nell, Georgii Trofimov, Peter Gorniak); DEVIANTART-002260 (Peter Gorniak).  DeviantArt has further agreed to designate a Rule 30(b)(6) witness on various topics related to the development of DreamUp.  *See* S. Botwinick Decl. ¶ 8 (topics concerning Stable Diffusion, data used to train the CLIP model, training process for the CLIP model, and other copyright-related topics).  Plaintiffs have ample "alternative means" of securing the information they seek.  *Optrics*, 2019 WL 5485890, at *1.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

Plaintiffs rely on the Court's previous order compelling DeviantArt to designate Mr. Surovenko as a document custodian as proof that Mr. Surovenko "possesses unique, first-hand knowledge unavailable from other custodians or witnesses," *see* Mot. at 5, 6, but the Court made no such finding. Rather, the Court "credited" Plaintiffs' claim that "Surovenko's technical work 'shaped DreamUp[],'" in order to allow discovery into that very question. ECF No. 367 at 3. Now that Plaintiffs have documents from Mr. Surovenko's custodial file, they still cannot point to any "unique" and "important" information that Mr. Surovenko must testify to that other witnesses cannot. *See supra.* § IV.A. Moreover, requiring that DeviantArt, a party to this lawsuit, to produce responsive documents from Mr. Surovenko's custodial file is notably less burdensome than requiring Mr. Surovenko, a non-party foreign national, to appear for a seven-hour deposition. *See Optrics*, 2019 WL 5485890, at *1 (warning courts to "exercise special vigilance to protect foreign litigants from the danger that *unnecessary*, or unduly burdensome, discovery may place them in a disadvantageous position").

Plaintiffs' appeal to *Fisher & Paykel Healthcare Ltd. v. Flexicare Incorporated* is unavailing. Mot. at 6 (citing 2020 WL 5900155 (C.D. Cal. Aug. 17, 2020)). The *Fisher* court granted the requested letter rogatory for testimony of the three inventors of the suit's central patent, as they were materially involved in the invention process and were identified by plaintiffs as knowledgeable witnesses. *Id.* at *1-2. Moreover, other percipient witnesses had left the company in intervening years, and documentary evidence had since been destroyed. *Id.* Here, Mr. Surovenko is not knowledgeable about Plaintiffs' requested subjects, responsive documents from his custodial file have been produced, and other witness testimony of current DeviantArt employees makes his testimony duplicative.

Failing to secure Mr. Surovenko's deposition would not "undermine the effective prosecution of Plaintiffs' action," as Plaintiffs claim, nor does their cited caselaw establish otherwise. *See* Mot. at 8-9. The Court in *Kadrey v. Meta Platforms, Incorporated* granted summary judgment against plaintiffs (represented by Plaintiffs' same law firm) for their failure to "present[]" any "meaningful evidence on market dilution at all." 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025). The Court did not "emphasiz[e] the need for copyright plaintiffs to establish a

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

complete record to adjudicate issues in AI copyright context," as Plaintiffs claim, Mot. at 8, but instead found that "these plaintiffs made the wrong arguments and failed to develop a record in support of the right one." *Kadrey*, 788 F. Supp. at 1037. *In Re Google Generative AI Copyright Litigation* concerned access to court records and does not support that an overriding "public importance of similar case[s] given the scope of conduct at issue" warrants all discovery methods possible, as Plaintiffs suggest. Mot. at 8 (citing 2026 WL 686314, at *1 (N.D. Cal. Mar. 11, 2026)). And the party opposing the issuance of letters rogatory in *Darbut v. Three Cities Research, Incorporated* argued that the burden on a foreign national outweighed the testimony's relevance, not that the testimony was unimportant or duplicative, as here. *Id.* at 9 (citing 2007 WL 9809105, at *1-2 (D. Or. Nov. 9, 2007)).

As "alternative means" exist to seek Plaintiffs' requested evidence, this factor also weighs against Plaintiffs' Motion and the Court's grant of relief. *Optrics*, 2019 WL 5485890, at *1.

## C. The Potential Hardship to Mr. Surovenko Outweighs the Unnecessary, Unimportant, and Duplicative Information Plaintiffs Seek from Him.

Even if Mr. Surovenko was important or necessary to this litigation, the potential hardship on Mr. Surovenko further weighs against it. In any third-party subpoena, the Court determining must balance "the potential hardship to the party subject to the subpoena." *Airwair*, 2021 WL 6091263, at *2. But Plaintiffs cannot identify any specific, "unique" information that Mr. Surovenko has, above and beyond the agreed-on witnesses, that is "important" enough to warrant seeking to compel a foreign citizen. *See Optrics*, 2019 WL 5485890, at *1. Compelling his testimony would "saddl[e]" Mr. Surovenko with a patently undue burden. *Airwair*, 2021 WL 6091263, at *2. This further counsels in favor of denial of Plaintiffs' Motion. *Id.*

## V. CONCLUSION

For these reasons, DeviantArt respectfully requests that the Court deny Plaintiffs' Motion.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

Dated: April 24, 2026

Respectfully submitted,

/s/ *Brittany N. Lovejoy*
**LATHAM & WATKINS LLP**
Andrew M. Gass (SBN 259694)
 *andrew.gass@lw.com*
Michael H. Rubin (SBN 214636)
 *michael.rubin@lw.com*
Brittany N. Lovejoy (SBN 286813)
 *brittany.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: 415.391.0600

Sarah F. Mitchell (SBN 308467)
 *sarah.mitchell@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: 213.485.1234

Simeon Botwinick (pro hac vice)
 *simeon.botwinick@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

*Counsel for Defendant DeviantArt, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S OPP. TO MOTION ISO REQ. FOR
ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

11