**LATHAM & WATKINS LLP**
Andrew M. Gass (SBN 259694)
 andrew.gass@lw.com
Michael H. Rubin (SBN 214636)
 michael.rubin@lw.com
Brittany N. Lovejoy (SBN 286813)
 brittany.lovejoy@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415.391.0600

Sarah F. Mitchell (SBN 308467)
 sarah.mitchell@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: 213.485.1234

Simeon Botwinick (pro hac vice)
 simeon.botwinick@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

*Attorneys for Defendant DeviantArt, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al., | CASE NO. 3:23-cv-00201-WHO (LJC) |
| Plaintiffs, | **DEFENDANT DEVIANTART, INC.'S SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION IN SUPPORT OF REQUEST FOR ISSUANCE OF LETTERS ROGATORY** |
| vs. | |
| STABILITY AI LTD., et al., | |
| Defendants. | Judge:  Hon. Lisa J. Cisneros, U.S.M.J. |
| | **REDACTED** |

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

## I.    INTRODUCTION

The Court directed Plaintiffs to submit evidence "supporting their claim that Mr. Surovenko was an active participant in the development of the DreamUp product"—the only product at issue in the claims against Defendant DeviantArt, Inc. ("DeviantArt"). ECF No. 512. Plaintiffs failed to do so, as the fifteen new documents they submitted do not show Mr. Surovenko's active contribution to what became DreamUp. Accordingly, none show that Mr. Surovenko's deposition is "necessary" or "importan[t]" to this litigation to warrant issuance of a letter rogatory. Further, Plaintiffs' new evidence underscores that Mr. Surovenko's testimony— as a non-party, foreign national—would be cumulative and not proportional to the needs of this case, *see* Fed. R. Civ. P. 26(b)(1), because Plaintiffs can more appropriately seek any covered information via "alternative means" from DeviantArt party witnesses. DeviantArt therefore respectfully requests that the Court deny Plaintiffs' Motion for Issuance of Letters Rogatory ("Motion") (ECF No. 473).

## II.    ARGUMENT

In evaluating a request for a letter rogatory, courts consider whether the information sought is "necessary," *McFadden Lyon Rouse LLC v. Lookkin*, 2012 ONSC 2243 at para. 17, "importan[t]" to the litigation and "whether alternative means are available to obtain the discovery," *Optrics, Inc. v. Barracuda Networks, Inc.*, 2019 WL 5485890, at *2 (N.D. Cal. Oct. 25, 2019). Courts "should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at *1 (citing *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 546 (1987)).

After being granted access to Mr. Surovenko's custodial files, Plaintiffs initially put forward only four documents, none of which showed Mr. Surovenko working on DreamUp. ECF No. 508. The Court allowed Plaintiffs to file "up to twenty documents supporting their claim that Mr. Surovenko was an active participant in the development of the DreamUp product." ECF No. 512. Plaintiffs filed fifteen documents, ECF No. 519, but none show that Mr. Surovenko actively worked on DreamUp in any material way. These documents are grouped by category below (with

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

some documents in multiple categories) and then explained individually in more detail. All exhibit numbers refer to the exhibits to Plaintiffs' letter filed at ECF No. 519.  Those categories include: (1) a corporate organizational chart (Ex. 13); (2) Mr. Surovenko's personal views on AI art (Ex. 7); (3) non-DeviantArt AI products (Exs. 1, 3, 6, 7, 8, 10, 12); (4) general explanations about DreamUp for non-technical employees (Ex. 5, 9, 11, 14); and (5) potential ideas never implemented into DreamUp (Exs. 2, 4, 6, 8, 14, 15).

(1) Corporate Organizational Chart:  Exhibit 13 (DEVIANTART-002236) is a chart showing only that Mr. Surovenko was a Machine Learning ("ML") Engineer working under the supervision of Peter Gorniak and Chris Nell.  It says nothing about Mr. Surovenko's specific responsibilities.  Nothing in this document connects Mr. Surovenko to DreamUp.  The Machine Learning team works primarily on building large-scale recommendation and moderation models for the general DeviantArt website.  Supp. P. Gorniak Decl. ¶¶ 3-4.

(2) Mr. Surovenko's Personal Views about AI Art:  Exhibit 7 (DEVIANTART-000114, at -117-19) is a general-interest "ai-art" chat, Supp. P. Gorniak Decl. ¶ 5, wherein Mr. Surovenko expresses his personal opinions about an upcoming panel conversation (not hosted by DeviantArt) about topics in the AI art space.  It does not mention DreamUp and predates DreamUp's launch. Personal statements not about the alleged infringing activity are irrelevant and unimportant to knowledge or willfulness of infringement.  *See* ECF No. 508 at 6 (citing cases).

(3) Comments about Non-DeviantArt AI Products:  In seven exhibits, Mr. Surovenko provides layman's explanations of *non-DeviantArt* AI products to non-technical DeviantArt employees.  None show Mr. Surovenko is an active participant in developing DreamUp. Specifically:

- In Exhibit 1 (DEVIANTART-002582), Mr. Surovenko notes the release of a Stable Diffusion "generator" in a general-interest "ai-art" chat, Supp. P. Gorniak Decl. ¶ 5, explaining to primarily non-technical DeviantArt employees how he generally thinks the generator works, ECF No. 508-6, ¶ 12.  Mr. Surovenko does not mention DreamUp or any DeviantArt product, and this document predates DreamUp's release.  The conversation also includes Sasha Lerner, whose deposition Plaintiffs have noticed.  ECF No. 508-1, ¶ 7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

- In Exhibit 3 (DEVIANTART-000159), in response to a question about prompt blocklists from a non-technical DeviantArt employee, Supp. P. Gorniak Decl. ¶ 6, Mr. Surovenko states "Llama portrait by a great artist from a popular art website." *That's it*, in the entire 10-page conversation. This comment is not specifically about a DeviantArt product, does not constitute active participation in DreamUp development, and underscores that the depositions Plaintiffs has noticed within this conversation (such as Chris Nell, Sasha Lerner, and Peter Gorniak) are sufficient.

- In Exhibit 6 (DEVIANTART-003483, at -483), in the first message of the conversation, Mr. Surovenko presents technical "diffusion developments" related to a third-party AI company. In this message, Mr. Surovenko does not mention DreamUp. Mr. Surovenko's message is purely informative and is not connected to any particular DeviantArt product.

- In Exhibit 7 (DEVIANTART-000114, at -115-16), in addition to discussing personal views about AI art (discussed above), Mr. Surovenko confirms he is "familiar" with a third-party website that purportedly concerns "controlling ai art datasets." *Id.* at -115. He also references the idea of using a "watermark" to label works "to try and prevent ai training," but this is not about DreamUp or any other DeviantArt product. *Id.* at -115-16.

- In Exhibit 8 (DEVIANTART-000120, at -120-26), Mr. Surovenko discusses features of non-DeviantArt AI products from Midjourney and OpenAI. *Id.* at -120-22 (discussing the "colour palette" and "style" available in Midjourney's AI model); *id.* at -122-23, -125 (discussing OpenAI's Dall-E's "default rate limit"). He also explains to a non-technical DeviantArt employee how he thinks Stable Diffusion collected training datasets in the past and will do so in the future. *Id.* at -125-26. He does not mention or discuss DreamUp or any DeviantArt products, other than to say "I guess" when a non-technical employee wonders whether Dall-E could be "integrated" into something on DeviantArt, *id.* at -123.

- In Exhibit 10 (DEVIANTART-000260), Mr. Surovenko comments on a new "beta" feature on the same third-party website mentioned in Exhibit 7. No one in the conversation mentions or references DreamUp or any DeviantArt product.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

- In Exhibit 12 (DEVIANTART-000132), Mr. Surovenko comments on the release of Glaze, a third-party tool that purportedly protects against image use in AI model datasets. His comments have no connection to DreamUp or any other DeviantArt product.

**(4) General Explanations of How DreamUp Worked**: In four Exhibits, Mr. Surovenko provides general explanations of how DreamUp worked to non-technical DeviantArt employees. These documents show that, as a member of the ML team, Mr. Surovenko was generally familiar with DreamUp, but they do not show his active participation in its development. Specifically:

- In Exhibit 5 (DEVIANTART-003452), DeviantArt employees compare DreamUp to other AI art generators, with Mr. Surovenko explaining to a non-technical DeviantArt employee ███████████████████████████. While Mr. Surovenko was generally familiar with DreamUp, nothing in this chat shows that Mr. Surovenko was an active participant in its development. This chat includes current and former DeviantArt employees—like Georgii Trofimov and Peter Gorniak—who can speak to these issues.

- In Exhibit 9 (DEVIANTART-000130), Mr. Surovenko explains his assumptions of how the LAION 5-B dataset was compiled and comments that the new release of ████ ████████████████████████████████████. As a DeviantArt engineer, Mr. Surovenko was familiar with DreamUp, but his familiarity does not equate to active participation in DreamUp development. ████████████ ██████████ and, as such, Mr. Surovenko's comment on its ████ for DreamUp is irrelevant. Supp. P. Gorniak Decl. ¶ 13.

- In Exhibit 11 (DEVIANTART-003019), DeviantArt employees ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████. Mr. Surovenko is sharing knowledge regarding ████ ██████ not DreamUp. Indeed, another employee states "████████████ ████████████████████████████████████████████ ████████████████████████████████████████████" supporting that Mr. Surovenko was uninvolved in DreamUp development. *Id*. at -020.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

- In Exhibit 14 (DEVIANTART-003138, at -139), in a conversation with non-technical employees, Mr. Surovenko briefly explains how ███████████████████ ████████████████████████████████████████████████. Supp. P. Gorniak Decl. ¶ 14.  Mr. Surovenko's general knowledge of DreamUp's operation does not mean that he was an active participant in its development.

**(5) Unimplemented Potential Ideas for DreamUp**: In six exhibits, Mr. Surovenko discusses potential ideas for DreamUp, none of which were implemented into the DreamUp product.  Ideas that were never implemented are not "necessary" or "important" because they do not show development of what became the DreamUp product.  *See* ECF No. 375 (TAC) ¶¶ 346, 359, 362, 375-79, 381 (alleging copyright infringement in reference to the "develop[ment]" of the "DreamUp app" that was "released" to the public in November 2022); *see also In re Google Generative AI Copyright Litig.*, 809 F. Supp. 3d 903, 913-14 (N.D. Cal. 2025) (dismissing plaintiffs' allegations of copyright infringement with respect to the "generative AI models or products" not specifically alleged to infringe Plaintiffs' copyright). They are also unimportant because there is no indication that these ideas were rejected due to copyright issues.  These documents are consistent with Mr. Surovenko's general interest in DreamUp, but do not show he materially worked on or contributed to DreamUp.  Specifically:

- Exhibit 2 (DEVIANTART-000139) discusses Mr. Surovenko's deployment of a version of Stable Diffusion to educate non-technical DeviantArt employees on the quality and behavior of this particular version of the model.  But ███████████████████ █████████████████████████. Supp. P. Gorniak Decl. ¶ 7.  Chris Nell even emphasizes that ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ Ex. 2 at -143.  This document (at -144) also contains discussions of the potential DreamUp development of a machine learning feature—███████████████, but █████ ███████████████████████████████. Supp. P. Gorniak Decl. ¶ 8.  Later in the conversation (at -148), other DeviantArt employees reference a comment from Mr. Surovenko regarding how AI image generation could work on DeviantArt.  Others (but not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

Mr. Surovenko) consider integrating this cost into DreamUp pricing, but this was never implemented. Supp. P. Gorniak Decl. ¶ 9.

- In Exhibit 4 (DEVIANTART-000363), Mr. Surovenko discusses ███████████ ███████████████████████████████████████. Supp. P. Gorniak Decl. ¶ 10. ██████████████████████. *Id.*

- In Exhibit 6 (DEVIANTART-003483, at -3484), Mr. Gorniak asks both Mr. Trofimov and Mr. Surovenko ██████████████████████. Mr. Surovenko responds that ██ ████████████████████████████████████████ ██████ *Id.* ████████████████████████████ ████████████████████. Supp. P. Gorniak Decl. ¶ 11.

- In Exhibit 8 (DEVIANTART-000120, at -122-23), Mr. Surovenko links to OpenAI's Dall-E. ████████████████████████████████████ ██████████ Supp. P. Gorniak Decl. ¶ 12.

- In Exhibit 14 (DEVIANTART-003138), Mr. Surovenko links to a third-party website, noting that its use of ██████████████ could be interesting to pursue for DreamUp, and explains to non-technical employees the concept of ██████████████ The conversation does not progress any further, ███████████████████████ ████████. Supp. P. Gorniak Decl. ¶ 14.

- In Exhibit 15 (DEVIANTART-007984), other members of the ML team present ██████ ██████████████. Supp. P. Gorniak Decl. ¶ 15. There is no indication that Mr. Surovenko wrote in the body of the document or authored or responded to any comments posted on the side. Most of the ███████████████████████████████████ ███████████████████████████. *Id.* The reference regarding ██████████████████████████████ ██████████████ " is irrelevant, as ███████████████████████████ ██████████████████████. *Id.*

## III. CONCLUSION

For these reasons, DeviantArt respectfully requests that the Court deny Plaintiffs' Motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)

Dated: April 30, 2026                    Respectfully submitted,


                                         /s/ *Simeon Botwinick*
                                         **LATHAM & WATKINS LLP**
                                         Andrew M. Gass (SBN 259694)
                                          *andrew.gass@lw.com*
                                         Michael H. Rubin (SBN 214636)
                                          *michael.rubin@lw.com*
                                         Brittany N. Lovejoy (SBN 286813)
                                          *brittany.lovejoy@lw.com*
                                         505 Montgomery Street, Suite 2000
                                         San Francisco, California 94111
                                         Telephone: 415.391.0600

                                         Sarah F. Mitchell (SBN 308467)
                                          *sarah.mitchell@lw.com*
                                         355 South Grand Avenue, Suite 100
                                         Los Angeles, CA 90071
                                         Telephone: 213.485.1234

                                         Simeon Botwinick (pro hac vice)
                                          *simeon.botwinick@lw.com*
                                         555 Eleventh Street, NW, Suite 1000
                                         Washington, D.C. 20004
                                         Telephone: 202.637.2200

                                         *Counsel for Defendant DeviantArt, Inc.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEVIANTART'S SUPP. OPP. TO MOTION ISO REQ.
FOR ISSUANCE OF LETTERS ROGATORY
CASE NO. 3:23-cv-00201-WHO (LJC)