May 1, 2026

<u>**VIA ECF**</u>

The Honorable Lisa J. Cisneros
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Andersen, et al. v. Stability, et al.*, Case No. 3:23-cv-00201-WHO (LJC)

Dear Judge Cisneros:

      In accordance with Section F(5) of the Court's Civil Standing Order for Magistrate Judge Lisa Cisneros, Plaintiffs and Defendant Midjourney, Inc., ("Midjourney") submit this letter brief regarding a dispute over Midjourney's refusal to produce for inspection source code underlying Midjourney's "overfit" filter and database, and its "style reference" models and precursor experiments.

**Relevant Dates**
As required by the Court's Standing Order, below are the dates relevant to discovery:
• Next Joint Status Conference with Judge Cisneros: May 14, 2026
• Close of Fact Discovery: July 1, 2026
• Close of Expert Discovery: October 18, 2026

**[FILED UNDER SEAL]**

**Plaintiffs' Position**. Midjourney built an "overfit" filter to catch its models outputting copies of their training data. It also created style reference models with ████████ that capture and mimic the distinct style of 4,700 individual artists by name. The source code for both overfit filtering and style mimicry is primary evidence of how Midjourney's models regularly infringe and how its uses of Plaintiffs' works were anything but "fair." Midjourney should be ordered to produce the source code for the overfit filter and its database, as well as the style reference model and Midjourney's efforts to isolate the distinct style of artists as model ████████

"**Overfit**" is the term used by Midjourney to describe the problem that its AI models regularly generate outputs that contain infringing copies of their training data. To mitigate this potential infringement, Midjourney developed an "overfit filter" ███████████████████████████ ███████████████" Kessler Decl. Ex. A ██████████ ████████████████████████████████████ However, infringing copies get through. The source code will capture how Midjourney's overfit filter was created and evolved, how it stores records of matches, and how Midjourney set thresholds and its tolerance for infringement. Its Git history will capture its changes. Further, this overfit filter references an █████████████ which will point to the final underlying training datasets used in the models being filtered. That Midjourney used Plaintiffs' and class members' copyrights to train a commercial AI model that can and does output copies of its training data is evidence central to Plaintiffs' rebuttal of Midjourney's "fair use" defense.

"**Style reference**" models refer to the models Midjourney trained to mathematically distill and isolate the distinct styles of at least 4,700 individual artists as ████████████████████ █████████████████████████ associated with that artists' name, so that the Midjourney model could be prompted to produce any image "in the style of" one of those artists. See TAC, ECF No. 431, ¶¶ 252- 254, 270, 297- 318. Midjourney uses ██████████████ █████████████████████████████████████████████ Midjourney intentionally trained a model that could mimic the styles of over 4,700 artists, which involved the creation of art and artist-specific datasets derived from LAION. *See* Kessler Decl. Ex. B ████████████████████████ experimentation, and implementation of the style reference model into Midjourney's public facing model. *See, e.g.*, Kessler Decl. Ex. C ██████ ██████████████████████████████████████████ █████████████████████████████████████████ That Midjourney used Plaintiffs and class members' copyrights to train an AI model specifically designed to mimic those artists' styles is central evidence to rebutting Midjourney's supposed "fair use" of Plaintiffs' copyrights, and Midjourney's success in isolating artistic styles as unique model vectors is central evidence to Plaintiffs' trade dress claims, wherein Plaintiffs must show their artwork is inherently distinctive.

**There is no burden on Midjourney to produce this source code**. Midjourney's source code is produced from Midjourney's GitHub repositories and simply involves copying the relevant Git repository folder onto the inspection laptop. Midjourney has provided further repositories for inspection upon request without objection. There is no difficulty or burden to Midjourney in providing overfit and style isolation source code here. Midjourney does not argue that the overfit filter or the style reference and isolation materials are irrelevant. Instead, Midjourney argues "the

1

information that Plaintiffs seek can be sought through less burdensome discovery methods and the production of Midjourney's highly confidential and commercially sensitive source code is not necessary." Kessler Decl. Ex. D. Midjourney has not identified any burden outside their privacy interests, which the Protective Order, already addresses. ECF No. 276. *See Calendar Rsch. LLC v. StubHub, Inc.,* No. CV 17-4062 SVW (SSX), 2017 WL 10378338, at *11 (C.D. Cal. Nov. 14, 2017) (Protective Order suffices to protect source code). The Protective Order here makes clear that "[a]ny source code produced in discovery ***shall be made available for inspection***, in a format allowing it to be reasonably reviewed and searched," and that Plaintiffs "may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial." ECF No. 276, ¶9(c)-(d). Inspection of source code in its native format within its repository structure on a computer using Git search tools is critical to providing context to, and the history of, often complex and cross-referencing code. *See MedImpact Healthcare Sys., Inc. v. IQVIA Inc.,* No. 19-CV-1865-GPC (DEB), 2021 WL 5605209, at *2 (S.D. Cal. June 29, 2021) (source code and revision history relevant and necessary, collecting cases). Inspection of source code in searchable, native format is needed for Plaintiffs' expert's report explaining Midjourney's models' capacity for infringement and style mimicry.

**Overfit and style isolation and mimicry are essential areas of evidence to rebut "fair use**." The overfit filter and the style isolation efforts are both essential areas of evidence to rebut a "fair use" defense. Midjourney's use of Plaintiffs' copyrighted images to train a model that can and does output copies of its training data is not "fair use." Neither is Midjourney's use of Plaintiffs' art to create ███████████████████ linked to their name so that Midjourney models can mimic that style in AI outputs when prompted to do so. The first factor in evaluating "fair use" "focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism*." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 525 (2023). "The central question it asks is whether the new work merely supersedes the objects of the original creation (supplanting the original), or instead adds something new, with a further purpose or different character." *Andy Warhol*, 598 U.S. at 528 (cleaned up). The overfit filter answers *Warhol*'s central question. It exists because Midjourney's models contain copies and output copies of—and thus supersede— copyrighted originals. The source code will show exactly how often, and at what threshold of similarity, Midjourney permitted that substitution to reach paying users.

How copies of training data are functionally contained in Midjourney's models, which is confirmed by the need for the overfit filter, will be explained by Plaintiffs' expert to a jury and is essential evidence to rebutting "fair use." *Authors Guild v. Google, Inc*., 804 F.3d 202, 227 (2d Cir. 2015) (providing the public a means to infringe is "a substantial rebuttal to the secondary user's claim of fair use."). Further, Midjourney's intentional use of Plaintiffs and class members' copyrights to develop ██████████ and its promotion of its model's ability to mimic the distinct artistic style of artists, is similarly essential evidence to rebutting "fair use."

**Midjourney's style isolation and mimicry is an essential area of evidence for Plaintiffs' trade dress claims.** Part of Plaintiffs' burden to establish trade dress liability is proving "that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1212 (9th Cir. 2023). Artwork and purely aesthetic trade dress that "creates a distinctive visual impression in the minds of consumers" is inherently distinctive. *Lisa Frank, Inc. v. Impact Int'l,*

*Inc*., 799 F. Supp. 980, 989 (D. Ariz. 1992). Midjourney's own engineers did Plaintiffs' work for them. They successfully isolated each artist's style as a mathematically distinct vector linked to that artist's name—generating direct, quantified evidence that these artistic styles are inherently distinctive and source-identifying. Even if Plaintiffs had to prove "secondary meaning," that inquiry involves "when, in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product." *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.,* 923 F. Supp. 2d 1245, 1252 (S.D. Cal. 2013) (*quoting Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. 205, 211(2000)). Midjourney's ability to mathematically distill and isolate the distinctive artistic style of over 4,700 artists in ███████████ is direct evidence that those styles are inherently distinct and identify their source.

**Plaintiffs' Final Proposed Compromise**: Plaintiffs do not seek inspection of Midjourney's entire codebase. Plaintiffs seek only the source code for the overfit filter and its database and the style reference models and ██████████████████████ Midjourney has produced other repositories for inspection without objection. The Protective Order already governs inspection terms and adequately protects Midjourney's interests. ECF No. 276, ¶9(c)-(d). Midjourney identifies no burden beyond the confidentiality concerns that the Protective Order was designed to address. No lesser form of discovery will capture the threshold decisions, chronological adjustments, and cross-referencing code structures that Plaintiffs' expert requires to explain these systems to a jury. Fact discovery closes July 1, 2026. Further delay serves only to run that clock.

**<u>Midjourney's Position:</u>** Plaintiffs' request for further source code should be denied. Midjourney's core source code, including its training and data processing code, has been available to Plaintiffs for months; they are still in the process of reviewing it. Yet, they now demand additional source code for Midjourney's overfit filter and style reference model based on a fundamental mischaracterization of both without showing the required necessity. Plaintiffs already have many documents on this functionality and are free to test their flawed theories about it at the upcoming depositions of Midjourney's engineers. But Midjourney should not be forced to turn over even more of its most competitively sensitive source code as part of Plaintiffs' latest fishing expedition.

**Source code is discovery of last resort and further production is unnecessary**. In determining whether to require production of source code, courts apply a "necessity" standard; "not only must it be relevant and necessary to the prosecution or defense of the case but when alternatives are available, a court will not be justified in ordering disclosure." *Saleh v. Nike, Inc.*, 2021 WL 4434352 (C.D. Cal. Aug. 16, 2021); *see Synopsys v. ATopTech*, 2015 WL 1197705, at *4 (N.D. Cal. Mar. 16, 2015) (denying motion for source code where it "would be duplicative of discovery Synopsys already possesses or will shortly possess"). Courts routinely deny source code on this basis. For example, in *Disney v. Hotfile*, 2011 WL 13100240 (S.D. Fla. Aug. 26, 2011), plaintiffs argued that Hotfile's source code was "necessary because it would let the plaintiffs understand the technical workings of [Hotfile's] system, and to demonstrate ... that defendants incorporated technical features to enhance infringement and readily could have implemented technical measures to prevent or mitigate infringement." The court rejected the request, explaining: "this makes the source code relevant, but it does not make it necessary" because "it is possible to describe a computer program using means other than source code." *Id.* at *2. This stringent standard makes sense; for a company like Midjourney, maintaining the secrecy of its source code is of existential importance, particularly in a case in which its core competitors are also parties.

Here, as Plaintiffs acknowledge above, extensive information regarding both the overfit filter and style reference model has already been produced and will be the subject of upcoming 30(b)(1) and 30(b)(6) depositions of Midjourney and its witnesses. This discovery "offer[s] less burdensome alternatives to understanding [the challenged program's] functionality," making additional source code unnecessary. *Young v. Salesforce, Inc.*, 2025 WL 1800149, at *2 (N.D. Cal. June 30, 2025) (collecting cases). Rejection of Plaintiffs' request is warranted for this reason alone.

**Plaintiffs' source code demands are untethered to their proffered justification.** Plaintiffs say they need additional source code as "primary evidence of how Midjourney's models regularly infringe," asserting without evidence that Midjourney's model "regularly generate[s] outputs that contain infringing copies of their training data." *Supra* p. 2. But if that evidence actually existed, it would be in the outputs associated with prompts naming Plaintiffs Andersen, Rutkowski, Brom, Kaye, and Ortiz (the "Trade Dress Plaintiffs"), which Midjourney has already produced. Indeed, Midjourney outputs have been publicly accessible through Midjourney's Discord channel throughout the more than three-year duration of this suit. Yet, Plaintiffs have never identified even one output they contend constitutes an "infringing copy," let alone a "regular" pattern of infringing outputs. Conducting a disproportionate review of additional highly sensitive, proprietary source code will not allow them to prove indirectly what they already know they cannot prove directly.

**Plaintiffs do not need source code for the overfit filter.** Plaintiffs' assertion that they should be entitled to review source code for Midjourney's overfit filter because its use somehow weighs against fair use is nonsensical. Overfit describes the phenomenon by which a model may be more likely to reproduce content that appears numerous times in training data. Midjourney's documents and sworn interrogatory response demonstrate that the overfit filter was designed to minimize this risk and *avoid* infringing outputs. Dunning Ex. 1 at 16. Even the document cited by Plaintiffs states that the point of the filter was to ███████████████████████ Moreover, the source code for the overfit filter will not reveal the "training datasets" or "stored records of matches," nor help Plaintiffs prove that "Midjourney used Plaintiffs' and class members' copyrights to train a commercial AI model that can and does output copies of its training data." *Supra* p. 2. Evidence on those matters will come from other sources. And Midjourney has already added "overfit" as a search term for its ESI searching and review; provided an interrogatory response describing its efforts to mitigate overfit; and designated a 30(b)(6) witness on a topic relating to overfit. These materials are more than sufficient to evince the overfit filter's purpose and functionality, and negate any entitlement to the corresponding source code. *See Salesforce*, 2025 WL 1800149, at *2.

**Plaintiffs do not need source code for the style reference model.** Plaintiffs' characterization of the style reference model is even further afield. Midjourney has explained, in a sworn interrogatory, that the style reference model ███████████████████████████████████████ ███████████████████████████████████████████████████████ Dunning Ex. 2 at 8. It does so by ████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *Id.* In other words, the style reference model merely allows the model to distinguish between the subject/object of a reference image and its (nonprotectable) "style" elements.

4

Notwithstanding this evidence, and without any evidentiary basis, Plaintiffs falsely cast the style reference model as a tool designed to "mimic the styles of over 4,700 artists."[1]  Here again, Plaintiffs do not need source code to confirm their understanding is incorrect.  In addition to its interrogatory response, Midjourney has produced documents that show the style reference model had nothing to do with emulating artists or their work, as Plaintiffs falsely surmise.[2]  Plaintiffs will be able to further test their understanding of the style reference model in depositions, including of the individual engineer who was its primary architect.  They are entitled to nothing more.

**The source code Plaintiffs seek is not even relevant to their stated purposes.**  Plaintiffs assert that the source code for the overfit filter and style reference model constitutes "essential" evidence both to "rebut fair use" and "for Plaintiffs' trade dress claims," but their reasoning makes no sense.

Relying once again on their mistaken understanding of what the overfit filter and style reference model do, Plaintiffs first argue that they will show that Midjourney outputs "supersede" Plaintiffs' works and, thus, are relevant to transformativeness (fair use factor one). Plaintiffs' only explanation for why *source code*, and not the documents Midjourney has already produced, is necessary is that the source code "will show exactly how often, and at what threshold of similarity, Midjourney permitted that substitution to reach paying users." But Plaintiffs do not explain (because they cannot) why the source code they seek would show this; it would not.  And, as stated above, they already have access to all of Midjourney's publicly available outputs, including the associated metadata and prompts mentioning the Trade Dress Plaintiffs—the only plaintiffs who have complained about any outputs.  That, combined with direct testimony and documents from Midjourney, is more than sufficient to assess how the filter was intended to and actually performed.

Finally, the notion that "Midjourney's own engineers did Plaintiffs' work for them" in proving up the existence and protectability of their alleged trade dress is as perplexing as it is wrong.  As Midjourney has repeatedly pointed out and Plaintiffs continue to ignore, the Supreme Court has held that trade dress in product design (as opposed to product packaging) "can never be inherently distinctive"; secondary meaning is required. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 214–215 (2000).  Secondary meaning occurs when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself," *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 851 n.11 (1982), and is usually shown by direct consumer testimony, surveys, and evidence on the amount and manner of advertising, sales, revenues, and customers. *See Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999) (listing factors).  It is *Plaintiffs'* burden to prove up the existence of valid trade dress rights, and the evidence to do so, if it exists, is in their own possession, not Midjourney's.  Midjourney's proprietary, confidential source code and experimentation have no bearing whatsoever on whether Plaintiffs' alleged trade dress elements have achieved the requisite primary source-identifying function in the minds of consumers, and cannot justify their demand for the intrusive and burdensome production of highly sensitive code they now seek.

---

[1] Plaintiffs cherry-pick a line from Kessler Ex. B to falsely suggest that Midjourney created "artist-specific datasets []derived from LAION." *Supra* p. 2.  But Ex. B shows only passive brainstorming and has nothing to do with the style reference model that Midjourney later developed.

[2] To comply with the requirement that exhibits be limited to no more than 25 pages, and to avoid unnecessarily filing highly confidential internal documents on the public docket, Midjourney has not submitted these or other exemplary documents, but will gladly do so if the Court requests.

Dated: May 1, 2026

By: */s/ Angela L. Dunning*
Angela L. Dunning
Sam Blankenship
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com
          sblankenship@cgsh.com

Arminda B. Bepko
Charity E. Lee
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: abepko@cgsh.com
          charitylee@cgsh.com

*Counsel for Defendant Midjourney, Inc.*

Respectfully submitted,

By: */s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Evan Creutz (SBN 349728)
Louis Andrew Kessler (SBN 243703)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: lkessler@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

6

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: May 1, 2026                              */s/ Joseph R. Saveri*
                                                     Joseph Saveri