UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SARAH ANDERSEN, et al.,

Plaintiffs,

v.

STABILITY AI LTD., et al.,

Defendants.

Case No. 23-cv-00201-WHO   (LJC)

**ORDER RESOLVING DISCOVERY DISPUTES BETWEEN PLAINTIFFS AND STABILITY**

Re: Dkt. Nos. 527, 529

Plaintiffs and Defendants Stability AI, Inc. and Stability AI, Ltd. (collectively, Stability) filed two discovery letter briefs. ECF Nos. 527, 529. The first addresses whether Stability must add former employee William Cusick as a document custodian. ECF No. 527. The second addresses the appropriate timeframe for discovery. Having considered the parties' arguments, the record in this case, and the relevant legal authorities, the Court GRANTS Plaintiffs' request that Mr. Cusick be added as an additional custodian and directs the parties to meet and confer to decide on appropriate search terms and categories of custodial files to target potentially relevant documents. The Court GRANTS IN PART and DENIES IN PART Plaintiffs' request regarding the appropriate timeframe for discovery. The timeframe for discovery shall start on July 1, 2021.

The Court assumes the parties' familiarity with the case's factual and procedural history and the general legal standards for discovery. Its reasoning is as follows:

I.    **DESIGNATION OF MR. CUSICK**

Plaintiffs represent that Mr. Cusick is Stability's former Creative Director, and, in that role, led Stability's "marketing and artist relations for the launch of DreamStudio and Stable

Diffusion." ECF No. 526-1 at 2.[1] They contend that his custodial file will likely include documents that are "directly relevant to disputed issues, such as copyright ownership and fair use." *Id.* Stability's main objection—and the threshold issue in resolving this dispute—is that Plaintiffs' belated request to add Mr. Cusick did not comply with the Court's prior order that Plaintiffs request any additional custodians by January 30, 2026. *Id.* at 4; *see* ECF No. 392.

The Court's minute order at ECF No. 392 required Plaintiffs to "send all requests for additional custodians to the respective Defendants no later than January 30, 2026," and set February 19, 2026[2] as the deadline for parties to file letter briefs regarding additional custodians. Plaintiffs requested that Stability add three additional custodians (exclusive of Mr. Cusick) on January 15, 2026. *See* ECF No. 527-1 (Kamdar Decl.) ¶ 3. Stability responded to this request on February 4, 2026 and February 21, 2026, and the parties met and conferred regarding the three additional custodians on March 9, 2026. *Id.* ¶ 4. Per Stability's counsel, "Plaintiffs represented that they did not anticipate requesting additional custodian" and Stability subsequently "agreed to add the three custodians requested by Plaintiffs 'on the basis of your representation on the call that you do not anticipate adding any further custodians.'" *Id.* Plaintiffs do not dispute this summary of the meet and confer process. *See* ECF No. 526-1 at 2-4. Plaintiffs asked Stability to designate Mr. Cusick as an additional custodian on March 31, 2026, two months after the Court's January 30, 2026 deadline and approximately three weeks after Stability agreed to the other three custodians. *See* Kamdar Decl. ¶ 5. Plaintiffs contend that they did not request Mr. Cusick until the end of March because documents indicating that he likely had relevant information were produced in late December, January and February, and that it took them additional time to evaluate Stability's production, review publicly available information regarding Mr. Cusick's role at Stability, and look "for overlap with Stability's agreed custodians." ECF No. 526-1 at 3.

A case schedule, including discovery deadlines, "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). "Although the existence or degree of prejudice to the party opposing the

---

[1] A redacted copy of the letter brief is filed on the public docket at ECF No. 527. An unredacted copy is filed under seal at ECF No. 526-1.
[2] The Court later extended the latter deadline to March 5, 2026. ECF No. 418.

modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If that party was not diligent, the inquiry should end." *Id.* But "reasonable diligence does not demand perfection." *M.H.C. v. Cnty. of Los Angeles*, No. CV 18-8305, 2019 WL 13242561, at *4 (C.D. Cal. Nov. 5, 2019) (internal quotations omitted). As this Court previously explained, "diligence is not a binary question," and that a "*more* diligent attorney might have" behaved differently is not dispositive. *Deckers Outdoor Corp. v. Last Brand, Inc.*, No. 23-cv-04850, 2025 WL 351596, at *2 (N.D. Cal. Jan. 31, 2025). Moreover, district courts have "broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order" are covered by the scope of that discretion. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984 (9th Cir. 2011).

The Court notes that given that the majority of documents showing Mr. Cusick's alleged involvement with issues important to this case were not produced until January and February, Plaintiffs would have been hard-pressed to identify him by the January 30 deadline. While it certainly would have been preferable for Plaintiffs to have identified Mr. Cusick before the March 9 meet and confer, Plaintiffs' explanation that it took time to review recently-produced documents, compare them to other custodians' documents, and research Mr. Cusick's role at Stability is reasonable. Diligence does not demand perfection. *M.H.C.*, 2019 WL 13242561, at *4. The Court concludes that the fact that it took Plaintiffs roughly two months to review documents and verify Mr. Cusick's role reflects the demands of discovery in complex litigation that involves multiple defendants; in this context Plaintiffs have demonstrated sufficient diligence.[3]

Although neither party squarely addressed the risk of prejudice to Stability (*see Mammoth*, 975 F.2d at 609), on the existing record no significant prejudice would result, considering the

---

[3] The Court previously noted that allowing parties to "avoid their obligations" under agreements reached during negotiations would "undermine the purpose of the meet and confer process." ECF No. 403. The Court's current ruling does not contradict this principle. Per Stability, Plaintiffs represented on March 9 that they did not anticipate adding any additional custodians. Plaintiffs requested Mr. Cusick after additional document review and research. Nothing before the Court indicates that Plaintiffs made their March 9 representation in bad faith or were withholding their request regarding Mr. Cusick as a negotiation tactic.

following.  First, the Stipulated ESI Order allows parties to request up to twelve custodians, and Mr. Cusick would be the eleventh custodian.  *See* ECF No. 275 § 5(a).  Second, fact discovery was recently extended.  *See* ECF No. 499.  And finally, the collection and product of Mr. Cusick's custodial records will be cabined to target those sources of information that are most likely to contain relevant information.  As directed below, Plaintiffs and Stability shall meet and confer to determine the appropriate scope for the search of Mr. Cusick's custodial records.  Accordingly, the Court finds that Stability will not be unduly prejudiced by the addition of Mr. Cusick as a custodian.

Plaintiffs argue that, in addition to acting diligently in requesting Mr. Cusick, Mr. Cusick will likely possess relevant documents.[4]  In support, they quote a document reflecting that Mr. Cusick participated in workshopping communications with a journalist regarding whether Stable Diffusion was trained on copyrighted material.  ECF No. 526-1 at 3.  This document demonstrates that Mr. Cusick was knowledgeable about issues central to Plaintiffs' claims against Stability— whether Stability's models were knowingly trained on copyrighted material—and that he was positioned within the company to understand the nature of the products at issue, aspects of its development, the extent of concerns about copyright and potential responses to those issues.  *See* ECF No. 375-4 (Third Am. Compl.) (TAC) ¶¶ 220-25.  Stability argues that this document has little probative value, as Mr. Cusick's positions were never sent to the journalist and his proposals were "subject to multiple levels of review."  *Id.* at 5.  That the proposed responses were never sent and were subject to review does not disprove that Mr. Cusick's was knowledgeable about this undisputably relevant topic or that his statements were false.  Plaintiffs further argue that given Mr. Cusick's marketing role, he will likely have documents that bear on fair use.  *Id.* at 2-3.  The Court agrees.  Fair use, among other things, considers whether and to what extent the use of copyrighted material is "commercial" in nature.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (quoting 17 U.S.C. § 107(1)).  It is likely that given Mr. Cusick's role launching

---

[4] To the extent Plaintiffs are arguing that they are entitled to add Mr. Cusick as a matter of right under the Stipulated ESI Order (ECF No. 275) and the Court may not entertain Stability's arguments regarding relevance, the Court rejected that approach in its prior order at ECF No. 367 and accordingly considers the parties' arguments.

United States District Court
Northern District of California

and marketing Stable Diffusion, he will have documents that bear on the commercial nature of Stability's products.  Moreover, given Mr. Cusick's position leading "artist relations," Plaintiffs' argument that his custodial file may include communications or internal documents regarding artists' concerns regarding copyright infringement and risk of market substitution is reasonable. The Court accordingly concludes that Plaintiffs' have shown Mr. Cusick's custodial files will likely have relevant documents.

Stability's argument that documents showing Mr. Cusick's alleged involvement include other document custodians is not a sufficient basis to deny Plaintiffs' request.  That some responsive documents "will necessarily be found in other custodians' records is not sufficient to defeat a search of" a custodian's files. *Shenwick v. Twitter, Inc.*, No. 16-cv-05314, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018).  Moreover, the documents Plaintiffs cite to were obtained from other custodians' files.  It is thus unremarkable—and not meaningfully probative of unreasonable cumulativeness—that they include other custodians in addition to Mr. Cusick. Plaintiffs argue that Mr. Cusick, unlike the other designated custodians, worked in product marketing and artist relations.  *See id.* at 3-4; *see also*, Fed. R. Civ. P. 26(b)(2)(C)(i).  Plaintiffs' argument that his custodial file will likely contain unique documents regarding marketing Stability's products and interfacing with artists and other users is thus persuasive.

The Court accordingly GRANTS Plaintiffs' request that Mr. Cusick be designated as an additional custodian.

However, as the Court directed during the April 16, 2026 status conference, the parties must set "limited parameters" regarding the search of Mr. Cusick's custodial file.  ECF No. 504 at 27-28.  This may include only searching select sources of electronically stored information and using tightly crafted search terms designed to hit on relevant documents.  The parties shall meet and confer forthwith to decide on the appropriate scope and shall file a status report advising the Court of their progress by May 13, 2026.  If the Court is not satisfied that the parties have met and conferred in good faith, the parties may be ordered to attend an in-person meet and confer session in Courtroom G on May 15, 2026.

## II.    TIMEFRAME FOR DISCOVERY

In the letter brief at ECF No. 529, Plaintiffs and Stability dispute whether the discovery timeframe should begin on January 1, 2021 or January 1, 2022.  Although "the temporal scope of discovery . . . should be limited to a reasonable time based on the parties' allegations," what constitutes a reasonable time "must be determined on a case-by-case basis."  *Garedakis v. Brentwood Union Sch. Dist.*, No. 14-cv-04799, 2016 WL 1133715, at *3 (N.D. Cal. Mar. 23, 2016); *In re Bofl Holding, Inc. Sec. Litig.*, No. 15-cv-02324, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021).  "In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context."  *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226, 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015) (internal quotations omitted) (collecting cases).

In general terms, Plaintiffs' claims against Stability assert that Stability's image generation models were trained on datasets that included Plaintiffs' registered works.  *See* TAC ¶¶ 220-23.  As is relevant here, they allege that Stability's Stable Diffusion 2.0 model, launched in November 2022, was trained "[b]etween April and November 2022" on the LAION-5B datasets "and subsets 5B," and that "Stability knew the LAION-5B contained copyrighted works."  *Id.* ¶¶ 221-22.  LAION ("Large-Scale Artificial Intelligence Open Network") is an organization based in Germany that develops and releases large-scale machine learning models and datasets available to the public.  *Id.* ¶ 57.  It released the LAION-400M dataset in August 2021 and released the larger LAION-5B dataset in October 2022.  *Id.* ¶¶ 59, 65.  (LAION-400M is a subset of LAION-5B.  *See id.* ¶ 65.)  Plaintiffs explain in their portion of the letter brief that "the data for LAION 5B was filtered from September 2021 to January 2022."  ECF No. 528-1 at 2.[5]

Plaintiffs contend that Stability funded LAION's creation of LAION-5B.  *Id.*  Stability argues that this is overselling Stability's role, and the interview Stability cites to in support of their position suggests that Stability became involved "[b]y the end 2021" when the LAION-5B dataset was nearly seventy percent complete.  *Id.* at 4.[6]  While Stability may not have funded the creation

---

[5] A redacted copy of the letter brief is filed on the public docket at ECF No. 529.  The redacted copy is filed under seal at ECF No. 528-1.
[6] *See AI as a Superpower: LAION and the Role of Open Source in Artificial Intelligence: An*

of LAION-5B from its very inception, Stability was involved at least by early 2022 and funded LAION-5B's completion.  As Plaintiffs quite sensibly reason, it is unlikely that Stability "suddenly support[ed] the creation of 5B" without having some background knowledge of LAION.  ECF No. 528-1 at 3.  It is highly plausible that Stability conducted due diligence, researched LAION's capabilities, and held internal discussions regarding the risks and utility of LAION's datasets before deciding to fund 5B and subsequent datasets.  Plaintiffs are thus entitled to explore what Stability knew about LAION's dataset development in the months leading up to Stability's decision to fund 5B, as this will likely be relevant to show Stability's "knowledge, intent, and willfulness." *Id.*

The Court concludes that starting discovery on July 1, 2021, slightly before LAION released 400M, will likely encompass Stability's earlier communications and research regarding LAION's datasets and "provide context" regarding Plaintiffs' claims.  *Hatamian*, 2015 WL 7180662, at *2.

Although Stability complains that Plaintiffs delayed objecting to Stability's proposed January 1, 2022 start date, discovery may be conducted in an iterative manner.  *See* ECF No. 528-1 at 6.  Subsequent requests may be reasonable after the requesting party has learned from information that is gathered earlier in the discovery process.  Whether such requests are permitted depends on the usual considerations, such as discovery cutoffs or other case management deadlines, and the proportionality and relevancy principles established in Rule 26 of the Federal Rules of Civil Procedure.  Plaintiffs explain that they were waiting on Stability's discovery responses to determine if they would preempt the need for discovery from 2021; they apparently did not, and Plaintiffs then raised the issue with Stability.  *Id.* at 3-4.  That Plaintiffs had to expand their requests in response to ongoing discovery does not show undue delay or warrant imposing a January 1, 2022 start date for discovery.  In any event, extending the discovery timeframe an additional six months is not disproportionate to the needs of the case, given the parties' relative

---

*Interview with LAION co-founder Christoph Schuhmann,* MLCon by devmio (June 21, 2023), https://mlconference.ai/blog/ai-as-a-superpower-laion-and-the-role-of-open-source-in-artificial-intelligence/.

access to information, the importance of the issues at stake, and the parties' resources. *See* Fed. R. Civ. P. 26(b)(1).

The start date for discovery is accordingly set at July 1, 2021.

### III.    CONCLUSION

As explained above, Plaintiffs' request that Mr. Cusick be added as a document custodian is GRANTED.  The parties are directed to meet and confer regarding the scope of the collection and production of Mr. Cusick's custodial records, and file a status report no later than May 13, 2026.  Plaintiffs' request regarding the appropriate timeframe for discovery is GRANTED IN PART and DENIED IN PART.  The timeframe for discovery shall start on July 1, 2021.

**IT IS SO ORDERED.**

Dated: May 7, 2026

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California