June 25, 2026

**VIA ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
San Francisco Courthouse
Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Andersen et al. v. Stability AI Ltd., et al.,* 3:23-cv-00201-WHO (LJC)

Dear Magistrate Judge Cisneros:

Pursuant to Paragraph F(5) of Your Honor's Standing Order, the Plaintiffs and Defendant Stability AI respectfully submit this joint letter brief regarding disputes over Stability AI's source code production. Fact discovery closes July 1, 2026.  The Parties met and conferred by videoconference on June 17, 2026. Plaintiffs sent a detailed follow-up email on June 18, setting a June 23 deadline for Stability AI to respond. Stability AI responded on June 23, accepting some and rejecting others of Plaintiffs' requests.

**Issues Presented**

Whether the Court should compel Stability AI to (1) provide complete access to all branches within source code repositories from which Stability AI has produced responsive code; (2) conduct a reasonable search for scoring function code, including by contacting former employees who developed the relevant models; (3) produce code in its possession, custody, or control that it used to merge training datasets and generate synthetic training data; and (4) produce or describe for in camera review a withheld repository.

**Relevant Dates**

As required by Your Honor's Standing Order, below are the dates relevant to discovery:

- Close of Fact Discovery: July 1, 2026
- Close of Expert Discovery: October 18, 2026

<b>Plaintiffs' Position[1]</b>

## I. Unilateral Curation of Branches within Responsive Repositories

Plaintiffs seek complete access to all branches within repositories Stability AI itself identified as containing responsive code, subject to the existing protective order, within seven days. At the June 17 meet and confer, Stability AI confirmed it unilaterally selected which branches to produce and withheld others without identifying the withheld branches or explaining the basis for excluding them. In its June 23 response, Stability AI asserts it "performed its discovery obligations by producing the branches that contain responsive code" and that other branches "do not contain responsive code." That assertion assumes the conclusion. Stability AI's counsel and litigation-support personnel—not the engineers who wrote the code—decided which branches qualify as "responsive." Rule 34(b)(2)(C) prohibits precisely this conduct. And with fact discovery closing July 1, the withheld branches deprive Plaintiffs' experts of the context necessary to complete their analysis of even the produced code. *See* ECF No. 408 at 9:18–10:17.

Stability AI cites *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-cv-03778-MMC (KAW), Dkt. 295 (N.D. Cal. Apr. 7, 2026), for the general proposition that a producing party controls its search methodology. *Lynwood* does not support Stability AI's position. In *Lynwood*, the court denied the plaintiff's request for code related to an entirely different product because the defendants had already "made the entire universe of code for all NGINX Plus releases available for inspection and produced all development document repositories for NGINX Plus." *Id.* at 2. The *Lynwood* defendants produced complete repositories. They did not selectively excise branches. Stability AI has done precisely what the *Lynwood* defendants did not: identified repositories as containing responsive code and then selectively excised portions without disclosure. *Lynwood* reinforces Plaintiffs' position.

## II. Inadequate Searches for ███████████

Stability AI's production document STABAND0032143 references ████████████ — ████████████████████████████████████. Stability AI stated that it "looked for the code" and "does not have it." When pressed at the June 17 meet and confer, Stability AI's counsel stated that the search consisted of speaking to "engineers who are currently working with data." Asked whether Stability AI spoke to any engineers who were at the company when the relevant models were created, counsel stated: "I'd have to check." Asked whether anyone on the defense team had spoken to any former employee about source code issues, counsel stated: "I would need to check." Creutz Decl. ¶ 4. Defense counsel stated he personally had not spoken with any former Stability AI employee about source code issues and could not confirm whether anyone else on the defense team had done so.

The Lane Declaration claims Stability AI "made good-faith efforts to identify and consult with both former employees and current employees." Lane Decl. ¶ 9. It further states that Stability AI shared a draft outreach letter with Plaintiffs on April 3, 2026. Yet ten weeks later, at the June 17 meet and confer, Stability AI's own counsel could not confirm whether anyone on

---

[1] Plaintiffs file herewith the Declaration of Evan Creutz, dated June 25, 2026 ("Creutz Decl.").

the defense team had spoken to a former employee about source code. Creutz Decl. ¶ 4. If letters were sent in April, counsel would know by June whether anyone responded. The Lane Declaration states that former employees "have not responded to Stability AI's outreach" but does not identify how many were contacted, when the letters were sent, whether any follow-up occurred, or whether alternative contact methods were attempted. An unanswered form letter with no follow-up is not a reasonable inquiry under Rule 26(g)(1). The Court should order Stability AI to produce a declaration from a person with personal knowledge—not litigation counsel—identifying each former employee contacted, the date and method of each contact, and all responses or non-responses received.

Plaintiffs' proposed resolution: Within fourteen days, Stability AI shall produce a sworn declaration from a person with personal knowledge identifying (a) each former employee contacted regarding scoring function code, (b) the date and method of each contact, (c) each response received, and (d) every repository and file system searched. If the scoring function code has been deleted, the declaration shall state when it was deleted and by whom.

## III. Code in Stability AI's Possession, Custody, or Control

Plaintiffs seek production of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and all synthetic data code, including any modifications, within three business days. Two categories of code remain unproduced based on Stability AI's assertion that the code is publicly available or not its own: (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (2) code Stability AI used to generate synthetic training data, which Stability AI claims it used "as is" from open-source sources.



Stability AI maintains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Public availability does not excuse nonproduction of documents in a party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1). The question is not authorship—it is whether Stability AI possessed, executed, and relied on the code. The answer is undisputed: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ If the script resided on Stability AI's servers or was ever executed there, it must be produced with any modifications. Stability AI's own conduct resolves this dispute. It concedes it "maintains on its servers" the open-source CogVLM code and has agreed to produce it. Lane Decl. ¶ 10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It cannot produce CogVLM under one standard and withhold ▮▮▮▮▮▮▮▮▮▮▮ under another.

On synthetic data code, Stability AI agrees to "make available code for the synthetic recaptioning tool identified in response to Plaintiffs' Interrogatory No. 6." A single recaptioning tool does not satisfy Plaintiffs' requests. Plaintiffs' Request for Production No. 5 seeks the source code for Stable Diffusion, which includes code for *all* tools Stability AI used for Stable Diffusion. If CogVLM was the only tool used, Stability AI should so state under oath. The scope must encompass all code Stability AI used to generate synthetic training data, including any forks, configurations, or modifications of open-source code.

**IV. Withheld Repository**

Plaintiffs seek production of, or a description sufficient for in camera review of, a repository ███████████████████████████████████, which Stability AI withheld on relevance grounds. During the June 17 meet and confer, Stability AI could not state when it was created and had not prepared a description. Stability AI now claims the repository ████████████████████████████████████████████ and contends Plaintiffs ████████████████████████████████████████████████████████

████████████████████████████████████████████████ the core issues in this case. Stability AI cannot simultaneously describe █████████████████████████████████████████████

Stability AI's counsel agreed to "take back" Plaintiffs' request for a written description. Creutz Decl. ¶ 6. A week later, Stability AI provided a single-sentence description. That description—████████████████████████████████confirms relevance to Plaintiffs' claims concerning training data acquisition and processing. Plaintiffs' proposed resolution: Stability AI shall produce the repository or provide a description for in camera review within seven days.

4

**Stability AI's Position**

Stability AI has produced extensive source code for Plaintiffs' inspection beginning months ago. Its production was not unilateral, but rather a response to Plaintiffs' discovery requests and positions. (Lane Decl.[2] ¶¶ 3-7.) Plaintiffs have identified no specific deficiency related to their discovery requests.

Rather, Plaintiffs seek a fishing expedition into Stability AI's proprietary source code. The issues Plaintiffs present to the Court involve code that is (1) not relevant, (2) not in Stability AI's possession, or (3) an improper discovery request. Stability AI respectfully requests that the Court deny Plaintiffs' source code requests.

*Stability AI's production of responsive code.* Plaintiffs misrepresent Stability AI's process for producing responsive code. Stability AI, in consultation with its engineers, reviewed code for responsiveness to Plaintiffs' requests concerning training the relevant image models, acquiring training data, and memorization and overfitting. (Lane Decl. ¶ 8.) It made the responsive branches available and did not produce non-responsive branches. Plaintiffs' invocation of Rule 34(b)(2)(C) misses the point: that rule governs material withheld pursuant to an objection, and Stability AI has withheld no responsive branch.

Plaintiffs now seek "*complete access* to *all branches* within repositories," but they have not identified the relevance of non-responsive branches within those repositories. Plaintiffs must show that this proprietary source code is "relevant and necessary," and they have done neither. *In re Apple & AT & TM Antitrust Litig.*, No. C07-05152 JW PVT, 2010 WL 1240295, at *2 (N.D. Cal. Mar. 26, 2010) (denying motion to compel additional source code without such a showing). Plaintiffs have not—and cannot—make that showing.

Plaintiffs suggest the non-responsive branches are necessary because they will provide "context" for their experts, but Plaintiffs have not identified any produced code that requires context nor what purported context the non-responsive branches could provide. Nor do Plaintiffs offer expert testimony supporting the purported need for this context. Plaintiffs' demand for "complete access" far outpaces the nonexistent support they have for such a request.

Stability AI's review—conducted with Stability AI engineers—has already determined which branches do have responsive information. And Stability AI is "best situated to decide how to search for and produce" this code. *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-cv-03778-MMC (KAW), Dkt. 295, at 1-2 (N.D. Cal. Apr. 7, 2026) (order on discovery brief). Plaintiffs' conclusion that *Lynwood*—denying a motion to compel source code—supports their position has a critical flaw. The court there did not evaluate the fullness of the repository produced, but rather whether the defendants had produced the code that became part of the relevant product. *Id.* Plaintiffs fail to make a "specific showing" that "more than what Defendants have agreed to produce is needed." *Id.* at 2-3.

The nature of GitHub "branches" reinforces the point. The default branch of a repository (i.e., a project) contains the operative copy of code. Other branches hold draft code and engineer

---

[2] All citations to the "Lane Decl." refer to the concurrently filed Declaration of Jackson Lane.

experiments.  Useful code from those other branches is ultimately merged into the default branch.  Stability AI has produced the default branch and, where its review indicated other branches containing responsive code, those branches as well.  Plaintiffs nonetheless ask for every remaining branch, without explaining why branches that do not contain operative or responsive code would be relevant, necessary, or a source of the "context" they claim.

***Stability AI's searches for responsive code.***  Stability AI's representations about its search are not inconsistent.  It has made good-faith efforts to consult with former and current employees.  Plaintiffs, in fact, were given the opportunity to offer input into Stability AI's outreach to former employees.  The former employees responsible for assembling datasets have not responded substantively to Stability AI's outreach for consultation.  (Lane Decl. ¶ 8.)



In consultation with current Stability AI engineers, Stability AI has not found code for the ▮▮▮▮ Plaintiffs request.  Stability AI identified and shared ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Plaintiffs do not acknowledge Stability AI's disclosure of the ▮▮▮ ▮▮▮▮ that it identified in the course of its search.

Plaintiffs instead focus their brief on the parties' June 17, 2026, meet-and-confer but identify no actual deficiency.  At that meeting, Stability AI counsel took back the question of former employee consultation.  (Lane Decl. ¶ 6.)  Within a week, Stability AI confirmed that it made good-faith efforts to contact former employees, a process in which Plaintiffs had the chance to participate.  No employee involved in the assembly of datasets has provided their assistance to Stability AI.  (Lane Decl. ¶¶ 7-8.)  Plaintiffs have not demonstrated a deficiency warranting relief.

Plaintiffs' proposed resolution is thus improper discovery into discovery, including a request for "every repository and file system searched."  Plaintiffs are not entitled to this resolution, especially where they have not identified a genuine concern to resolve.

***Open-source, publicly available code.***  Plaintiffs seek code they could have obtained themselves months ago.  First, Plaintiffs seek ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮.  Stability AI confirmed for Plaintiffs that this code is not Stability AI's code and that Stability AI does not possess or maintain any copy of this third-party code on its servers. (Lane Decl. ¶ 10.)  That Stability AI may once have executed publicly available code does not bring the third party's code within its control.  Because the code is not in Stability AI's possession and remains equally available to Plaintiffs, their request is both unduly burdensome and futile.



Second, regarding synthetic data, Stability AI identified open-source synthetic recaptioning code as early as July 2025 in response to Plaintiffs' interrogatories.  Stability AI confirmed that it will make this open-source synthetic recaptioning code available, and it has not identified other synthetic training data generation code.  (Lane Decl. ¶ 9.)

There is no double standard.  Stability AI is producing responsive code and not non-responsive code.  Stability AI has agreed to produce open-source code responsive to Plaintiffs'

requests that it has on its servers, but it cannot produce code that it does not possess.  It is unclear what more Plaintiffs seek.

   ***Plaintiffs' request for additional discovery***.  Plaintiffs seek further additional discovery of a new repository ███████████████ without showing its relevance or necessity.  ████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████

   Plaintiffs have not shown how this purpose bears on its requests for source code for training of the relevant image models, acquisition of training data, or memorization and overfitting.  For example, Plaintiffs have not shown how this code interacts with the produced code that is responsive to Plaintiffs' requests.  Plaintiffs further do not demonstrate how its cited document, STABAND0032149, connects this repository to the model development process.  Plaintiffs, again, lack the requisite showing of relevance or necessity to demonstrate entitlement to their sought relief.

   Stability AI has fulfilled its discovery obligations.  The additional material Plaintiffs now demand is irrelevant, not in Stability AI's possession, or improper.  Stability AI respectfully asks the Court to deny Plaintiffs' requests.