July 1, 2026

**VIA ECF**

The Honorable Lisa J. Cisneros
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:**    *Andersen, et al. v. Stability, et al.*, Case No. 3:23-cv-00201-WHO (LJC)

**Dear Judge Cisneros:**

In accordance with Section F(5) of the Court's Civil Standing Order for Magistrate Judge Lisa Cisneros, Plaintiffs and Defendant Midjourney, Inc. ("Midjourney") submit this letter brief regarding a dispute over Plaintiffs' withholding and claw-back of documents on the basis of attorney-client privilege, common interest, and work-product protection.

**Relevant Dates**

As required by the Court's Standing Order, below are the dates relevant to discovery:

Next Joint Status Conference with Judge Cisneros: July 23, 2026

Close of Fact Discovery: July 1, 2026

Close of Fact Depositions:  August 15, 2026

Close of Expert Discovery:  February 5, 2027

**Midjourney's Position**

Midjourney respectfully seeks an order requiring Plaintiffs to produce documents improperly withheld or redacted as privileged. Plaintiffs cannot carry their heavy burden of establishing privilege over communications involving non-parties and prospective class representatives. Their proffered justifications have shifted repeatedly, but none withstand scrutiny. Should the Court find it helpful, Midjourney is prepared to provide the parties' correspondence, which documents Plaintiffs' changing positions and failure over months to substantiate their claim of privilege.

**Legal Standard:**  The party asserting privilege "has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication." *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1018 (N.D. Cal. 2022). Privilege is "strictly construed." *Id.* The common-interest doctrine is not an independent privilege; it avoids waiver only where parties share a common *legal* interest. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007). Furthermore, "potential class members who are not named plaintiffs are considered unrepresented parties, and while pre-certification communications with such potential class members are generally permitted ... they are also generally not privileged." *Howington v. Taiwan Semiconductor Mfg. Co., Ltd.,* 2025 WL 2597403, at *3 (N.D. Cal. 2025).

**Non-Party Kim Tran's Presence Destroys Privilege:**  Plaintiffs first claimed privilege, but later asserted common interest, over communications between September 12 and October 21, 2022 involving non-party Kim Tran, and clawed back ORTIZ-STABILITY-010608 on that basis. Exs. 1 (Log Nos. 1–6, 269, 276, 279) & 4. These communications reflect Plaintiff Karla Ortiz's outreach to two law firms—Boni, Zack & Snyder LLC and Saveri Law—to explore a potential lawsuit against AI companies. Log 269 includes no attorneys. Because Tran does not share a common legal interest with Ortiz, her presence destroys any confidentiality that might otherwise have existed. The privilege log describes Tran as a "Lead Organizer" for the "Debt Collective"—a student-debt advocacy group—with no legal interest in Plaintiffs' copyright claims. When pressed, Plaintiffs' counsel conceded Tran has no rights of her own to vindicate: "I don't think she needs to vindicate her own rights. It can be Karla's." Bepko Decl. ¶ 13. Plaintiffs now claim—for the first time—that Tran "created memes" that she "believe[s] are contained in LAION" (Zeng Decl. ¶ 2), and sometime after these communications signed an engagement letter with Saveri.  These late added justifications were never mentioned in the "half a year" of meet and confer on these issues, are not supported by any competent declaration by Tran, and fail in any event, because "the mere fact that an absent class member has some interest in the filing or outcome … is not sufficient to support" common interest.  *Howington*, 2025 WL 2597403, at *4 (requiring "a *legal* interest in common with the named plaintiffs"). Notably, Ms. Tran has not joined this action as a named Plaintiff; nor could she.  Plaintiffs assert no copyright registration for Tran, which is necessary to bring a claim. 17 U.S.C. § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019). Thus she has no legal right to vindicate and is precisely the type of third party whose presence destroys privilege. *Rodriguez*, 620 F. Supp. 3d at 1019. Nor does Plaintiffs' attempted pivot to claiming work product suffice to shield these communications from production. Ortiz, Lam, and others emailed prospective class members and posted openly on Discord about their communications with counsel in connection with a possible lawsuit against AI companies. *See* Exs. 2, 3, 6 (disclosing contents of Ortiz's "chat with the IP lawyer" including "the requirements for a solid lawsuit" and other legal advice). Plaintiffs have not taken appropriate steps to "ensure that disclosure of counsel's work product to absent class members would not

2

substantially increase the opportunity for potential adversaries to obtain it." *Howington*, 2025 WL 2597403, at *4. Thus, these documents should be produced and the claw-back rejected.

**Non-Party Sam Lam's Presence Destroys Privilege:** Like Tran, Lam is not a Plaintiff and has no legal interest in this case. After Defendants pointed this out, Plaintiffs' position on Lam also shifted.  Their log first described him as a "putative client" (Log Nos. 244–248, 250, 252–253, 257–258, 262, 264, 271), then recharacterized him as "an attorney representing Plaintiffs" (Log No. 277)." Bepko Decl. ¶¶ 14-17. Plaintiffs' counsel call this "inadvertent error," but have confirmed that Lam is *not* counsel to Plaintiffs in this litigation. *Id.* Their own documents prove it: Ortiz told Plaintiff Sarah Andersen that Lam was acting in a "personal capacity," and Lam stated he "vetted [counsel] thoroughly from a lawyer's perspective"—*evaluating* potential counsel Plaintiffs might retain, not *serving* in that capacity. Bepko Decl. Exs. 2, 3. The log also undermines any claim that Plaintiffs Brom and Manchess relied on advice *from* Lam; attributing advice solely to Saveri Law Firm, not Lam. *See, e.g.*, Ex. 1 (Log Nos. 244–247). Plaintiffs cannot retroactively recharacterize Lam as litigation counsel when their own documents say otherwise. To qualify for protection, legal advice must be sought "from a professional legal adviser in his capacity as such." *Rodriguez*, 620 F. Supp. 3d at 1017. There is no support for the proposition that this occurred here.

Even if communications with Lam were initially privileged, he waived that protection by publicly disclosing legal advice and litigation strategy he learned in the meetings he attended. A party may not use privilege as both a sword and a shield—selectively disclosing favorable portions while shielding unfavorable ones. *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981.)  On November 10, 2022, Lam announced to a public Discord group: "we've retained an experienced and passionate law firm to investigate and file a class-action lawsuit against at least Midjourney and Stability AI," disclosing venue strategy, class structure, qualification criteria for class representatives, and the plan to gather evidence. Ex. 2. In doing so, Lam intentionally and publicly disclosed substantive legal strategy to advance Plaintiffs' interests in building a class. They cannot then selectively withhold Lam's other communications on the same subject matter with prospective class members where no attorney is present. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 511-13 (S.D. Cal. 2003) (work product protection waived by public disclosure of substantive facts underlying claims). Intentional disclosure of "an otherwise privileged communication, in an act calculated to advance that party's commercial interests," cannot preserve confidentiality over related communications. *Id.* at 512. This is the quintessential sword-and-shield use of the privilege that courts uniformly reject. And, as discussed below, courts explicitly hold that communications with prospective class members—like those of Lam here—are *not* privileged.

**Communications Among Prospective Class Members Are Not Protected:**  Plaintiffs first withheld communications among prospective class members—with no counsel involved—as attorney-client privilege, then as work product. Neither protection applies. The communications are recruitment efforts by Ortiz and Lam to enlist Manchess, Brom, and others.  For example, Log No. 242 has the subject line: "Everyone meet Gerald Brom, a potential class rep," and took place before this action was filed (January 13, 2023) and more than eleven months before Manchess and Brom joined as plaintiffs (November 29, 2023). After Defendants challenged privilege—citing *Depina v. FedEx Ground Package Sys., Inc.*, 730 F. Supp. 3d 954, 956-57 (N.D. Cal. 2024) (holding that "communications between the prospective class members and Plaintiff's counsel are not communications between clients and their lawyers because Plaintiff's counsel has not yet been certified as class counsel")—Plaintiffs shifted to asserting work-product protection. That theory fails as well. "[P]otential class members who are not named plaintiffs are considered unrepresented

3

parties," and communications with them "are also generally *not* privileged." *Howington*, 2025 WL 2597403, at *3 (emphasis added). Tellingly, Plaintiffs do not even attempt to address these cases, which destroy any claim of privilege as to these communications.

That lay prospective class members communicated with each other about a potential lawsuit does not transform their emails into work product either. Plaintiffs' Subject lines such as "[f]urther questions to a neutral party" reflect lay questions and observations where there is no expectation of confidentiality. *See Depina*, 730 F. Supp. 3d at 957 (rejecting work product over "the thoughts and impression of the putative class members"); *Howington*, 2025 WL 2597403, at *4 (no work product protection where class members communicate "in a manner that substantially increases the opportunities for potential adversaries to obtain the work product"). Merely relabeling the same communications that failed the privilege test as "work product" does not make them so. Thus, Log Nos. 242–264, 270, 272, 274–275, 277, 280–281, 579, and 580 must be produced.

**Conclusion:** Because Plaintiffs have not satisfied their burden to support a claim of privilege, Midjourney respectfully requests that the Court order Plaintiffs to promptly produce: (1) Documents involving Kim Tran: Log Nos. 1–6, 269, 276, 279, and the clawed-back ORTIZ-STABILITY-010608; (2) Documents involving Sam Lam: Log Nos. 244–248, 250, 252–253, 256–258, 262, 264, 271, and 277; and (3) Communications among prospective or putative class members: Log Nos. 242–264, 270, 272, 274–275, 277, 280–281, 579, and 580.

## Plaintiffs' Position

Defendants attempt to characterize privileged documents as anything but. Plaintiffs have communicated the bases of these privilege assertions to Defendants over nearly half a year of email correspondence and video conference. For the reasons below, Defendants' arguments fail.

**Communications With Ms. Tran Do Not Destroy Privilege Under Common Interest**: Although it is generally true that communications "in the presence of, or shared with, third-parties destroys the confidentiality of the communications," there is no waiver of this privilege "where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Nidec*, 249 F.R.D. at 578. Defendants do not dispute the second or third requirements for common interest to apply, nor can they. They concede "[t]hese communications reflect Plaintiff Karla Ortiz's outreach to two law firms—Boni, Zack & Snyder LLC and Saveri Law—to explore a potential lawsuit against AI companies."

The thrust of Defendants' argument is that Ms. Tran did not share a common legal interest with Ms. Ortiz. Defendants are wrong. Indeed, the very document Defendants cite in their motion reveals that Ms. Tran also approached counsel with Ms. Ortiz to evaluate their quality and competence and ***even signed an attorney engagement letter***. *See* Ex. 3, ANDERSEN-STABILITY-038045, at ANDERSEN-STABILITY-038046. Ms. Kim is also an artist whose works Plaintiffs believe are contained in LAION. Zeng Decl. ¶ 2. Thus, Ms. Tran holds the same legal interest as Ms. Ortiz—enforcing the rights of artists whose works were used to train Defendants' AI products. Ms. Tran holds this interest irrespective of whether her individual claim ultimately succeeds or fails. It is therefore irrelevant whether Ms. Tran's works were registered. (In any event, she could have cured this by registering prior to filing.) Further, Ms. Tran was indispensable in assisting Ms. Ortiz vindicate her and other artists' rights as it relates to this lawsuit. As a former class plaintiff in another case, Ms. Tran recommended Ms. Ortiz to seek

counsel specializing in class actions and helped Ms. Ortiz formulate the legal strategy and theories to pursue in connection with Defendants' use of LAION. Zeng Decl. ¶ 3. In so doing, Ms. Tran and Ms. Ortiz consulted Sam Lam, an attorney, to fully understand and outline the possible legal theories and actions to pursue. *Id*. Ms. Tran's involvement in this case is distinguishable from the cases Defendants cite in that Ms. Tran has a legitimate legal interest in this case that is divorced from any commercial interest. *See Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1019 (N.D. Cal. 2022) ("The parties, however, must have 'a common legal, as opposed to commercial, interest.'" (citing *Nidec Corp.*, 249 F.R.D. at 579)). The common interest doctrine applies.

**Communications With Attorney Sam Lam Are Protected by Attorney-Client Privilege**: Defendants have a fundamental misunderstanding of the law as it relates to attorney-client privilege. The Ninth Circuit applies an eight-part test to determine whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). Contrary to what Defendants imply, there is no requirement that an attorney must be retained as "litigation counsel"—indeed, "communications may be privileged even if they occur before the attorney is formally retained." *Rodriguez*, 620 F. Supp. 3d at 1018.

Plaintiffs' previous log entries mistakenly characterized Attorney Lam as a putative plaintiff. Plaintiffs will amend their privilege logs to accurately reflect Attorney Lam's role as that of an attorney upon resolution of this issue. An inadvertent error on a privilege log, however, does not defeat the attorney-client privilege. Attorney Lam is an intellectual property and entertainment lawyer who advised Plaintiffs Ortiz, Manchess, and Brom regarding various aspects of the case, including in this case's incipiency with Ms. Ortiz and Ms. Tran. Zeng Decl. ¶¶ 3–4. In the documents Defendants cite, Attorney Lam dispenses legal advice to Plaintiffs regarding the various terms of Saveri Law Firm's retainer agreement. Attorney Lam clearly does so in his capacity as an intellectual property attorney, and Plaintiffs Brom and Manchess relied on this legal advice. These communications were also made in confidence between Attorney Lam and these Plaintiffs. Plaintiffs satisfy each requirement for attorney-client privilege to attach.

Defendants nonetheless argue that this protection is waived because Attorney Lam "publicly disclos[ed] legal advice and litigation strategy he learned in the meetings he attended." In support, Defendants point to ANDERSEN-STABILITY-038045, which outlines facts such as the lawsuit's venue, the plaintiffs' identities, the general responsibilities of class representatives, the accolades of Saveri Law Firm and Matthew Butterick, and the general nature of class action lawsuits. Attorney Lam also spoke generally and non-specifically about the future needs of the case, such as scouting for potential class representatives, collecting documents, and seeking potential experts. None of these amounts to a waiver of privilege.

The case Defendants cite describes situations in which privilege is waived when "***substantive portions of attorney-client privileged communications*** are disclosed." *Kintera, Inc. v. Convio,*

*Inc.*, 219 F.R.D. 503, 511 (S.D. Cal. 2003) (emphasis added); *see also VIA Techs., Inc. v. SONICBlue Claims, LLC,* 782 F. Supp. 2d 843, 867 (N.D. Cal. 2011) ("[A] waiver of the privilege requires a party to voluntarily disclose a 'substantial part of the privileged communication or otherwise unambiguously manifest[ ][its] disclosure by others.'"). Defendants seem to argue that privilege is destroyed because Attorney Lam gave a factual description of the litigation, the individuals involved, and the general responsibilities of a class representative. But *Kintera* distinguishes disclosure of fact from disclosure of substantive portions of attorney-client privileged communications. *Kintera*, 782 F. Supp. 2d at 867 ("Mere disclosure of the underlying fact would not waive the privilege or protection as to a communication containing that fact."). None of the information conveyed amounts to a "substantial part of the privileged communication"—rather, Attorney Lam disclosed basic, high-level facts about the case and its participants for the purpose of gathering evidence and informing other potential class representatives. Consequently, there is no waiver of attorney-client privilege as it relates to Attorney Lam's communications.

**Communications Between Plaintiffs Are Protected by Attorney-Client Privilege and/or Work Product**: A party's lack of representation at the time they received the privileged communication does not render the common interest doctrine inapplicable. Indeed, Courts take a "nuanced approach and look to the circumstances of the particular case" and apply the common interest privilege when "one party is relaying confidential information to the other on behalf of an attorney." *Sapphire Sales Sols., LLC v. Best W. Intl., Inc.*, No. CV-12-01538-PHX-ROS, 2013 WL 12284534, at *2 (D. Ariz. June 27, 2013); *see also Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 582–83 (D.S.D. 2006); *IBJ Whitehall Bank & Tr. Co. v. Cory & Associates, Inc.*, No. CIV. A. 97 C 5827, 1999 WL 617842, at *6 (N.D. Ill. Aug. 12, 1999). The communications were made in furtherance of a common legal strategy, including to participate as representatives in an anticipated class action lawsuit to enforce their intellectual property. *See Nidec Corp.*, 249 F.R.D. at 578 (common interest may apply where the parties are likely to be involved in anticipated joint litigation); *Pecover v. Elec. Arts Inc.*, No. C08-2820 CW BZ, 2011 WL 6020412, at *2 (N.D. Cal. Dec. 2, 2011) (finding common interest when parties anticipate litigation against a common adversary concerning similar issues); *Howington*, 2025 WL 2597403, at *4 (finding Plaintiffs were required to show "the privileged communication at issue was shared with an absent class member who had a *legal* interest in common with the named plaintiffs and that the communication was shared *for the purpose* of furthering *that* legal interest") (emphasis added). Plaintiffs have made such a showing here. The communications are privileged and not discoverable.

Further, these communications constitute protected work product because they were "prepared in anticipation of litigation or for trial" and "prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Env't. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (cleaned up). Importantly, "the Ninth Circuit did not limit this test to work performed by or for an attorney." *O'Connell v. Smith*, No. cv-13-01905-MWF (PJWX), 2014 WL 13130409 (C.D. Cal. Aug. 4, 2014). "Rather, the Ninth Circuit's use of the word 'representative' clearly includes work done by non-attorneys in anticipation of litigation." *Id.*; *see also Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 440 (N.D. Cal. 2010) ("Thus, the doctrine may be applied to documents created by non-attorneys so long as they are prepared 'by or for another party or its representative' and they are created 'in anticipation of litigation.'").

**Conclusion**: For the foregoing reasons, Plaintiffs respectfully request the Court to deny the production of these privilege documents.

Dated: July 1, 2026          CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Angela L. Dunning*
Angela L. Dunning
Sam Blankenship

Attorneys for Defendant Midjourney, Inc.

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Angela L. Dunning (admitted)
Sam Blankenship (admitted)
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
T: 650-815-4131
F: 650-815-4199
Email: adunning@cgsh.com
        sblankenship@cgsh.com

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Arminda B. Bepko (admitted)
Charity E. Lee (admitted)
One Liberty Plaza
New York, NY 10006
T: 212-225-2517
F: 212-225-3999
Email: abepko@cgsh.com
        charitylee@cgsh.com

**Respectfully submitted,**

*/s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Evan Creutz (SBN 349728)
Louis Andrew Kessler (SBN 243703)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)

Attorneys for Individual and Representative Plaintiffs and
the Proposed Class

SAVERI LAW FIRM, LLP
550 California Street, Suite 910
San Francisco, California 94104
T: (415) 500-6800
F: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
T: (323) 968-2632
F: (415) 395-9940
Email: mb@butticklaw.com

9

## ATTESTATION PURSUANT TO CIVIL L.R. 5-1

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: July 1, 2026                                                                    */s/ Angela L. Dunning*

                                                                                           Angela L. Dunning