July 7, 2026

**VIA ECF**

The Honorable Lisa J. Cisneros
United States Magistrate Judge
San Francisco Courthouse
Courtroom G - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Andersen et al. v. Stability AI Ltd., et al.,* 3:23-cv-00201-WHO (LJC)

Dear Magistrate Judge Cisneros:

Pursuant to Paragraph F(5) of Your Honor's Standing Order, Plaintiffs and Defendant Midjourney, Inc. respectfully submit this joint letter brief regarding Plaintiffs' request that Midjourney produce "art" and "artist" datasets.

**Relevant Dates**

As required by the Court's Standing Order, below are the dates relevant to discovery:

- Next Joint Status Conference with Judge Cisneros: July 23, 2026
- Close of Fact Discovery: July 1, 2026
- Close of Expert Discovery: October 18, 2026

**<u>Plaintiffs' Position</u>:** The Parties have a dispute regarding Midjourney's refusal to identify and make available for inspection Midjourney's "art" and "artist" training datasets, which are curated datasets of artwork and of the artwork of specific artists. Midjourney used these highly curated datasets for training Midjourney models, including the early CLIP models that guided the early versions of the main Midjourney model and its outputs. Plaintiffs believe that their artworks are included in these datasets. Plaintiffs argue that Midjourney's selective curation of high aesthetic value "art" and "artists" training datasets, and their use in training models for the purpose of providing Midjourney the ability of to mimic the expressive content in those datasets, greatly undermines Midjourney's fair use defense. This Court held that Plaintiffs could renew their request for non-LAION training datasets if they could "concretely articulate how the content (rather than the overall size or sources) of non-LAION datasets would be relevant to rebutting Midjourney's fair use defense." ECF No. 314. Plaintiffs now satisfy that standard. The "art" and "artist" datasets are not undifferentiated bulk data. Midjourney curated them by scraping images associated with specific artists' names for the express purpose of enabling its model to mimic those artists' expressive content. The Court should order Midjourney to produce these "art" and "artist" training datasets with other end-use training data.

Midjourney claims it did not train the model underlying v1-v3 of the Midjourney model/algorithm and therefore it has no end-use training data to produce for v1-v3 of its model. Midjourney claims it merely used [redacted] as its base foundation model for those early versions. But creating CLIP embeddings from curated art datasets is training. The CLIP model processes the copyrighted images and encodes that content into numerical vectors associating words and image information that then guide the images the Midjourney model generates. Midjourney used these art datasets to create the CLIP embeddings that gave v1-v3 their distinct artistic character, differentiated the Midjourney product from [redacted] and enabled the model to mimic individual artists by name. They created these datasets by targeting [redacted]. See Kessler Decl. Ex. A at 305 [redacted] Ex. B at 805 [redacted] Fair use is undermined by targeting specific high value art images for training a model Midjourney advertised as able to mimic artists by name.

The Copyright Office's recent report on generative AI training confirms the relevance of Midjourney's curation choices. Under *Warhol Found. v. Goldsmith*, 598 U.S. 508, 549–50 (2023), whether copying for a training dataset is transformative depends on the dataset's ultimate purpose. The Office found that training a model to generate outputs substantially similar to

copyrighted works in the dataset is the "least" transformative use. And critically, the Office identified the deliberate selection of "aesthetic images such as stock photography" over available alternatives like mass image data as evidence that "the purpose is not simply to generate images of the physical world, but to generate images that have expressive qualities like the originals." Copyright Office, Copyright and Artificial Intelligence, Part 3, at 45-46. That is precisely what Midjourney did. "For example, a foundation image model might be further trained on images from a popular animated series and deployed to generate images of characters from that series. Unlike cases where copying computer programs to access their functional elements was necessary to create new, interoperable works, **using images or sound recordings to train a model that generates similar expressive outputs does not merely remove a technical barrier to productive competition. In such cases, unless the original work itself is being targeted for comment or parody, it is hard to see the use as transformative**." Id. at 46 (emphasis added). "**The decision to train on expressive works when there are available alternatives may itself reflect a lack of transformative purpose**. For example, an image model could be trained on mass image data collected through automated means (street-view cars, body cameras, security cameras), **yet developers often choose aesthetic images such as stock photography. This suggests the purpose is not simply to generate images of the physical world, but to generate images that have expressive qualities like the originals**." Id. at 46, n. 263 (emphasis added). "Where a model is trained on specific types of works in order to produce content that shares the purpose of appealing to a particular audience, that use is, at best, modestly transformative." Id. at 46. Midjourney's targeting of a particular type of data, high quality art, for datasets with specific qualities to produce a model that mimics those qualities, undermines its fair use argument.

There are numerous references to the "art" and "artist" datasets Plaintiffs have identified in Midjourney's documents. Examples include the following. [redacted] Kessler Decl. Ex. C at 467. "Compvis" refers to the academic group that created the first open-source stable diffusion models [redacted] Ex. D at 943. [redacted] Ex. E at 480. [redacted] Ex. F at 521. [redacted] Ex. G

[1] CLIP models associate words/text from an image caption with the visual image information from the image in a single numerical vector called an embedding; embeddings are analyzed in the aggregate to isolate words with common image information; the main diffusion model then uses these CLIP vectors as guides to know what to draw/create during the image generation/ diffusion process.

at 959. [redacted] Ex. H at 118. The art dataset was not an experiment. It was the gold standard. [redacted] Ex H. at 132. Midjourney treated artist-specific knowledge as essential to its product. "Artist-specific knowledge" here refers to usable information in training data whereby a CLIP model can "learn" to associate the artists' name with the core visual elements and style of the associated image [redacted] Ex. I at 069.

Midjourney created specific curated "art" and "artist" datasets to use in fine tuning models and to create CLIP embeddings based on artists' names to use in guiding Midjourney's generation of images to mimic the expressive content of those datasets. The presence of Plaintiffs' copyrighted works in these "art" and "artist" training datasets is relevant to rebutting Midjourney's fair use argument. Fact discovery closed on July 1, 2026. Midjourney has not produced these datasets despite Plaintiffs' repeated requests throughout the discovery period. The Court should order production within seven days.

**Midjourney's Position:** As Plaintiffs acknowledge, the Court already denied their request for datasets other than those specifically identified in their complaint—LAION, [redacted] and DataComp. ECF No. 314 (the "Dataset Order"). In so doing, the Court found that "non-LAION datasets are not relevant to Plaintiffs' copyright claims against Midjourney," although it left open the possibility for Plaintiffs to "renew their request … based on Midjourney's fair use defense only if … they can **concretely articulate** how the **content** (**rather than the overall size or sources**) of non-LAION datasets would be relevant to rebutting Midjourney's fair use defense." *Id.* at 4 (emphasis added).[2] Plaintiffs haven't done so here, and their request should be denied.

**Alleged "art" or "artist" datasets are not relevant to Midjourney's fair use defense.** Plaintiffs ignore the Court's reasoning in the Dataset Order and the claims they have actually brought in this case. As the Court noted, it is "amply clear in the Second Amended Complaint" that Plaintiffs' claims "are specifically limited to Midjourney's alleged copying of images contained in the LAION datasets." Dataset Order at 3. The separate "art" and "artist" datasets at issue in this letter brief fall outside that scope as they were not derived from LAION; rather, Plaintiffs claim they were created by [redacted] Moreover, when Plaintiffs sought and were granted leave to file a Third Amended Complaint in January 2026, they did not seek to add any claims based on use of "art" or "artist" datasets, even though Midjourney had produced documents referring to "art datasets" months prior. *See, e.g.* Kessler Ex. E (produced in October

---

[2] The Dataset Order predates Plaintiffs' amendment of their Complaint to add claims concerning specific [redacted] and DataComp datasets. Based on the reasoning in the Dataset Order, Midjourney interprets references to "LAION" in the Dataset Order as including [redacted] and DataComp, and uses the term "LAION" herein as a shorthand for all three data sources.

2025); Kessler Ex. I (same). Nor do Plaintiffs provide any evidence to support their unsubstantiated "belief" that their works—let alone their Asserted Works—are even in the "art" or "artist" datasets they are seeking. *Supra* at 1. Plaintiffs are not entitled to production of datasets that, as confirmed by the Dataset Order, are not at issue in this lawsuit.

Plaintiffs' extensive quotation from the U.S. Copyright Office's ("USCO") guidance is unavailing. This Court, not the USCO, will determine whether Midjourney's use of LAION to train and develop its models was fair under the facts and circumstances of this case. *See* Dataset Order at 2-3 ("whether using registered works to train an AI model is 'a violation of copyright law' is an open question being actively litigated in this [] case"). Whether Midjourney created and used *other* datasets for other purposes is not at issue here and is not relevant to whether Midjourney's use of LAION was fair. The non-binding USCO guidance is in accord. It makes clear that each use must be assessed separately. For example, it notes that "further train[ing of a model] on images from a popular animated series" for the intended purpose of fine-tuning the model "to generate images of characters from that series" may be difficult to defend as a fair use, while "training a generative AI foundation model on a large and diverse dataset will often be transformative." USCO, Copyright and Artificial Intelligence, Part 3, at 45-46. This Court has repeatedly confirmed the same: each use must be assessed separately. *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1046 (N.D. Cal. 2025) (noting the "whole point of fair use analysis is to determine whether a **given** act of copying was unlawful") (emphasis added); *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1033 (N.D. Cal. 2025) (granting summary judgment to defendant on fair use of data used to train LLMs while denying summary judgment as to data used for other purposes). Whether Midjourney "selective[ly] curat[ed]" distinct "art" or "artist" datasets or "create[ed] CLIP embeddings from" them has nothing to do with whether Midjourney's alleged use of LAION—the only use at issue—was fair. *Supra* at 1. Plaintiffs' requests should be denied for this reason alone.

**Midjourney did not use "art" or "artist" datasets as Plaintiffs claim**. While the Court need go no further in light of the above, Midjourney notes that Plaintiffs' position rests on fundamental misunderstanding of the facts. Plaintiffs state in conclusory fashion that Midjourney used "art" datasets to "create the CLIP embeddings that gave v1-v3 their distinct artistic character, differentiated the Midjourney product from [redacted] and enabled the model to mimic individual artists by name." *Supra* at 1. But, despite having the benefit of Midjourney's complete document production, they cite no evidence for these statements. And they ignore that Midjourney has repeatedly told Plaintiffs that it did not fine tune v1-v3 with LAION or with any "art" datasets and did not "enable the model to mimic individual artists by name." This last argument also puts the cart before the horse: whether Midjourney's model enables the creation of outputs that purportedly mimic protected expression in Plaintiffs' at-issue works from LAION is a hotly disputed fact to be decided in this case (and for which Midjourney asserts there is no evidence). Indeed, despite discovery closing on July 1, Plaintiffs have yet to

identify a single output that they contend infringes (or "mimics") any Plaintiff's copyrighted artwork.

Plaintiffs' position to the contrary relies on unsupported conclusions drawn from out-of-context quotes. None of Plaintiffs' cherry-picked quotes actually say that any fine-tuning or other training Midjourney experimented with using "art" datasets was actually used in production. *See* Kessler Ex. I at 069 [redacted] Kessler Ex. G at 959 [redacted] If anything, these documents suggest that Midjourney contemplated using "art" datasets, if at all, to *diversify* rather than narrow its training corpus. *See* Kessler Ex. D at 943 [redacted] Kessler Ex. H at 132 ( [redacted] Kessler Ex. B [redacted]

**Production of "art" datasets would not be proportional to the needs of the case.** Midjourney maintains that any "art" datasets are irrelevant to the issues in this case. But even if they had some marginal relevance, Plaintiffs have not articulated why they need the *content* of such datasets, rather than information concerning their size or sources. Dataset Order at 4. Plaintiffs say (once again without citing any evidence) that they "believe that their artworks are included in these datasets." *Supra* at 1. But as the Court noted in the Dataset Order, Plaintiffs "cannot use discovery as a fishing expedition for evidence of claims that have not been properly pled or potential future lawsuits." Dataset Order at 3 (internal quotations omitted).

Notably, Plaintiffs could have sought to obtain information concerning these alleged datasets by timely serving a "targeted interrogatory" or even a request for admission. Dataset Order at 4. But despite serving their full 25 interrogatories and 135 requests for admission on Midjourney on myriad other topics, Plaintiffs never asked. Plaintiffs have no one to blame for their lack of diligence but themselves. They should not be permitted to compel Midjourney to produce additional tranches of (irrelevant) training data in just seven days' time after the close of fact discovery.

For the foregoing reasons, Plaintiffs' request for Midjourney to produce "art" and "artist" datasets should be denied.

Dated: July 7, 2026

Respectfully submitted,

By: */s/ Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Evan Creutz (SBN 349728)
Louis Andrew Kessler (SBN 243703)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
Alaina Gilchrist (SBN 335807)
Lora Faraj (SBN 364719)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: lkessler@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com
Email: agichrist@saverilawfirm.com
Email: lfaraj@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

Dated: July 7, 2026

Respectfully submitted,

By: */s/ Angela L. Dunning*

Angela L. Dunning
Sam Blankenship
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304-1248
Telephone: (650) 815-4131
Email: adunning@cgsh.com
sblankenship@cgsh.com

Arminda B. Bepko
Charity E. Lee
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2517
Email: abepko@cgsh.com
charitylee@cgsh.com

**ATTESTATION PURSUANT TO CIVIL L.R. 5-1**

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: July 7, 2026

*/s/ Joseph R. Saveri*
Joseph Saveri