July 8, 2026

**VIA ECF**

Honorable Lisa J. Cisneros, United States Magistrate Judge
450 Golden Gate Avenue, Courtroom G – 15th Floor
San Francisco, CA 94102

Re: *Andersen et al. v. Stability et al.*, No. 3:23-cv-00201-WHO (LJC)

Dear Judge Cisneros:

Pursuant to Section F(5) of Your Honor's Civil Standing Order, Plaintiffs and Defendant Runway AI, Inc. ("Runway") respectfully submit this joint letter brief regarding a dispute over the sufficiency of Plaintiffs' responses to Runway's Interrogatory No. 13. The parties met and conferred via video conference on July 6, 2026, but remain at an impasse.

## Issue Presented

Whether the Court should compel Plaintiffs to respond to the portion of Runway's Interrogatory No. 13 that asks Plaintiffs to "IDENTIFY all customers for [their] ASSERTED WORKS from January 1, 2020 to the present."

## Relevant Dates

As required by the Court's Standing Order, below are the dates relevant to discovery:

- Close of Fact Discovery: July 1, 2026
- Deadline to File Joint Letter Briefs Regarding Fact Discovery Disputes: July 8, 2026
- Next Joint Status Conference with Judge Cisneros: July 23, 2026
- Last Day for Fact Depositions: August 15, 2026
- Close of Expert Discovery: February 5, 2027

## Runway's Position

The Court should compel Plaintiffs to provide basic information about their customers, just as they urged this Court to order Defendant Stability AI to provide. Runway's Interrogatory No. 13 asks Plaintiffs to identify the customers for their Asserted Works since 2020, as well as communication dates, sale dates, and amounts charged or paid. Plaintiffs provided ***none*** of the requested information, instead pointing only to royalty statements that do not contain any customer information.[1] To avoid motion practice, Runway offered to narrow Interrogatory No. 13 to ***customer names only***—the same information Runway provided to Plaintiffs. *See* Declaration of Matan Shacham ("Shacham Decl.") ¶ 4, Ex. B. Plaintiffs refused, agreeing only to "correct" cross-references but not to provide any information who their customers are. *See id.* ¶ 4, Ex. C ("Plaintiffs decline the proposal to identify all customers by name."). The Court should order Plaintiffs to provide their customer lists for four reasons.

***First***, this Court has already held, at Plaintiffs' urging, that customer lists are relevant to the fair use analysis. *See* Dkt. 461. Plaintiffs argued that Stability AI's enterprise-customer list was "germane to the fair use factor one analysis" regarding "commerciality" and that customer "overlap" would show that Defendants "compete in the same marketplace" and "create a competing substitute" under fair use factor four. Dkt. 454 at 1-2. The Court agreed, holding that "[r]elevance for discovery purposes is broad" and that, because "fair use in the context of generative AI is an unsettled area of law, the Court (within reason) is disinclined to prematurely limit" a party's ability to advance theories related to fair use. *See* Dkt. 461. That reasoning applies here: just as the Court declined to limit Plaintiffs' theories *against* fair use, it should not limit Runway's ability to develop its fair use *defense.* And just as "the parties' relative access" to customer information favored disclosure to Plaintiffs then, *id.*, Plaintiffs' exclusive access to their own customer information favors disclosure to Runway now.

***Second***, Plaintiffs' refusal to provide their own customer lists creates an impermissible asymmetry that prejudices Runway's fair use defense. After the Court compelled Stability to provide enterprise-customer information, Plaintiffs immediately used the same order to demand that Runway provide similar information. Shacham Decl. ¶ 5, Ex. D. Runway complied, providing the names of enterprise customers. *Id.* ¶ 6. But after having successfully compelled that customer information from Defendants, Plaintiffs cannot now deny Runway the same discovery and the same opportunity to interrogate ***Plaintiffs'*** fair use arguments. Indeed, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947). If Plaintiffs still intend to argue that customer "overlap" implies market harm under fair use factor four, *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1037-38 (2025) (citation omitted), Runway must be afforded the

[1] Plaintiffs' responses to Interrogatory No. 13 all refer to their responses to Interrogatory Nos. 4-7. *See, e.g.*, Shacham Decl. ¶ 2, Ex. A. In response to No. 4, Plaintiffs cited the royalty statements themselves. To Nos. 5, 6 and 7, Plaintiffs referred back to No. 4. Thus, Plaintiffs' responses to Interrogatory No. 13 are nothing more than the royalty statements themselves.

same data to prepare its defense.[2] Without Plaintiffs' customer information, Runway cannot test or rebut Plaintiffs' "overlap" narrative. Only Plaintiffs and their agents know who their customers are. The Court should not permit only one side to access and analyze that information.

Accordingly, Runway merely seeks symmetry. Contrary to Plaintiffs' suggestion, Runway requests the ***same*** level of detail from Plaintiffs that Runway provided about its enterprise customers (customers' names), not more. And if Plaintiffs now contend that "non-parties' identities carry negligible probative weight and implicate the privacy interests of thousands of strangers to this litigation," they should withdraw their concurrently filed motion to compel Runway to provide extensive information ***about*** each enterprise customer,[3] which is far more intrusive than just those customers' identities.

***Third***, Plaintiffs' responses are evasive. The royalty statements Plaintiffs cite do not respond to the interrogatory. Each provides only the total royalties Plaintiffs earned in a given pay period and the publisher or distributor who facilitated them—not the ***customers*** who purchased Plaintiffs' works. For example, Plaintiff Brom's royalty statements state the dollar amount that he received during a six-month period through sales of "The Child Thief" through Harper Collins but reveal nothing about who purchased the work, when, or in what quantity. Any suggestion that Plaintiffs have already provided responsive information is erroneous. Further, when asked during their depositions, Plaintiffs could not identify any specific lost customers as a result of Defendants' models. Their testimony underscores the need for Plaintiffs' written responses and confirms that depositions are not the appropriate vehicle to test their "overlap" theory.

***Fourth***, Plaintiffs' burden arguments are based on a flawed definition of Plaintiffs' "possession, custody, and control." They fail to identify any specific burden associated with responding to the interrogatory as narrowed–*i.e.*, merely providing customer lists. Plaintiffs objected that they are "individual artists who do not maintain customer databases," Shacham Decl. Ex. C, and they argue below that they do not have the requested information, but Plaintiffs contradict themselves. In their brief regarding Stability AI's customer list, Plaintiffs represented that they "seek the Stability customer lists so they can cross reference them with Plaintiffs' own actual or potential customers"—necessarily assuming that Plaintiffs ***have*** the ability to identify and list their customers (and presumably intend to do so given that they moved to compel for that exact purpose). Dkt. 454 at 2. In response to other interrogatories, Plaintiffs have identified specific

---

[2] Moreover, every Plaintiff has maintained in their other interrogatory responses—even after the close of fact discovery—that "[w]hile Plaintiff has experienced a decline in business opportunities related to [his or her] work as an artist in the last few years, Plaintiff has no additional factual information, presently within [his or her] knowledge, to provide with respect to lost sales, opportunities, and/or licenses for [his or her] ASSERTED WORKS." Runway must be allowed to test and rebut these contradictory positions as part of its fair use defense.

[3] Plaintiffs have now, at the last minute, ***expanded*** their demands beyond Runway's customer list to revenue information, usernames, and dates of engagement. *See* Joint Letter Brief Regarding Plaintiffs' Interrogatories Nos. 2, 5, 6, 7, 9, and 14. As explained in Runway's response, only customer names should be compelled, consistent with the Court's order. *See* Dkt. 461. If, however, the Court grants Plaintiffs' motion to compel additional categories of customer information from Runway, Runway is entitled to the same reciprocal discovery from Plaintiffs.

publishers and sales channels through which they sell the Asserted Works (as they must to determine potential "overlap"), confirming they can access customer and distribution information beyond what the royalty statements reflect. And in this brief, Plaintiffs argue that the request would require them to "reconstruct[]" data and complain about the burden of doing that–thereby admitting that they have access to the underlying information but simply refuse to gather it. Thus, Plaintiffs have no basis to argue that they do not have this information.

Plaintiffs also cannot claim that their status as "individual artists" creates a *sui generis* exemption from discovery, especially in a case they brought. Plaintiffs and their agents are sophisticated business owners who maintain records of sales and customers. For example, Plaintiff Ellis testified that his pass-through entity compensates him as its "bookkeeper," and that his accountant maintains his financial records. *See* Dkt. 581-4. Even if Plaintiffs do not personally maintain customer databases, this Court has ordered that Plaintiffs must produce information within their "possession, custody, or control," including information "held by Plaintiffs' agents that Plaintiffs have the 'legal right to obtain' on demand." Dkt. 602 at 2 (citing *In re Citric Acid Litig*., 191 F.3d 1090, 1107–08 (9th Cir. 1999)). Plaintiffs do not dispute that their publishers, agents, and/or accountants possess relevant customer information—indeed, they admit at least that their publishers have it. This Court has already held that Plaintiffs are required to produce responsive information held by their agents. *See* Dkt. 602 at 2. Plaintiffs have never claimed they have even tried to obtain this information from their agents; they cannot simply hide behind the entities they retain to monetize their works. Moreover, the Court has already rejected this very burden argument, finding that "Plaintiffs' claim that they cannot be expected to keep precise financial records because they are artists is unsubstantiated and does not relieve them of their duties to comply with the Federal Rules." *See id.* The same conclusion applies here.

For the foregoing reasons, Runway respectfully requests that the Court compel Plaintiffs to provide their customer lists in response to Runway's Interrogatory No. 13.

**<u>Plaintiffs' Position</u>**

Runway moves to compel a customer list that does not exist. Plaintiffs are individual working artists. Their publishers, galleries, and retail platforms—not Plaintiffs—transact with the purchasers of their works. Plaintiffs have produced their royalty statements, sales records, invoices, online-store order reports, and all financial information for the Asserted Works; where a record names a buyer, Runway has the name. Plaintiffs possess no responsive customer information beyond what they have produced. The objection is to reconstructing information Plaintiffs do not keep, not to withholding information they have. Plaintiffs confirmed the point in writing before Runway filed this motion: Plaintiffs will serve verified amended responses by July 15 that answer Interrogatory No. 13 directly. Declaration of Evan Creutz, dated July 8, 2026, ¶ 5, Ex. A. Rule 33 obligates a party to answer with the information it has; it does not compel the creation of information a party never had. *See* Fed. R. Civ. P. 33(b)(1)(B), (b)(3). The Court should deny Runway's request for four reasons.

***First***, Dkt. 461 compels denial here. The Court ordered Stability to identify its enterprise customers because the information was relevant to fair use, the Protective Order addressed confidentiality, "the parties' relative access to this information" favored disclosure, and Stability "fail[ed] to show that responding to the interrogatory at issue would be unduly burdensome."

Dkt. 461. Plaintiffs do not relitigate relevance. Every other Rule 26(b)(1) factor runs the other way. Stability kept enterprise-license records in the ordinary course and told the Court it "does not contend that compiling a customer list is necessarily unduly burdensome." Dkt. 454 at 6. Dkt. 461 ordered a corporation to compile information it had; Runway asks the Court to order individuals to create information they have never had. And "relative access" points to third parties: purchaser identities reside with publishers and retailers such as HarperCollins and Andrews McMeel. Runway's own exhibit proves the point: Plaintiff Brom's response to Interrogatory No. 2 identified his editors, publishers, and agents by name months ago. Identifying one's publisher is not access to the publisher's purchaser files; it is a Rule 45 roadmap. Fact discovery closed July 1; Runway never served a subpoena. Plaintiffs served these responses on May 20, and Runway identified no deficiency until the final days of fact discovery—the same delay Runway elsewhere brands as grounds alone for denial. Runway's remedy for its own choices is not an order conscripting Plaintiffs to do third parties' record-keeping after the deadline.

***Second***, Runway's own authority marks the boundary of discovery. The sentence immediately following the language Runway quotes from *Hickman* reads: "To that end, either party may compel the other to disgorge whatever facts he has in his possession." 329 U.S. at 507. Plaintiffs have disgorged those facts. Runway's deposition point proves it: Runway questioned Plaintiffs about their customers and elicited no testimony that any unproduced record exists; that Plaintiffs could not name specific lost customers is a merits question for expert analysis under fair use factor four, not a discovery deficiency. Nor were Plaintiffs' responses "evasive." Plaintiffs cited their royalty statements because those are the records that exist, and Plaintiffs committed—before Runway filed this motion—to correct the cross-reference in verified amended responses. An accurate answer that information does not exist is not evasion. It is the answer.

***Third***, Runway's "asymmetry" argument refutes Runway. Symmetry in discovery means each side produces what it possesses. Runway—a corporation with account databases—produced bare enterprise-customer names while refusing, as "unduly burdensome," the revenue, account-date, and contact subparts of Plaintiffs' Interrogatories Nos. 7 and 14. Creutz Decl. ¶ 7, Ex. B; ¶ 8, Ex. C. Interrogatory No. 13 demands far more from individuals: every customer since 2020, with first and last communication dates, sale dates, and amounts charged. Runway cannot declare per-customer detail too burdensome for a company yet indispensable from working artists. Nor does Runway need retail buyer names to "test" overlap. Plaintiffs' cross-reference theory compares Defendants' finite enterprise-customer lists against the markets in which Plaintiffs sell—the publishers, licensees, galleries, and clients named in Plaintiffs' produced records—precisely because evidence of competitive overlap "lies almost exclusively within Stability's possession, custody, and control." Dkt. 454 at 3. Runway holds every one of those records and can run the identical comparison today. Fair use factor four asks whether Runway's products substitute for Plaintiffs' works in Plaintiffs' markets, *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1038 (2025)—a question answered by market evidence, not by rosters of the individual fans who bought a print or a book. Those non-parties' identities carry negligible probative weight and implicate the privacy interests of thousands of strangers to this litigation. Rule 26(b)(1) proportionality forbids exactly this trade: maximal intrusion for minimal probative return. And Runway's "compromise" was a same-evening, 6:00 p.m. ultimatum delivered at the July 6 conference—timed for this brief, , not a proposal made to obtain discovery. Creutz Decl. ¶ 4.

***Fourth***, Dkt. 602 and *In re Citric Acid* defeat Runway's agency theory. Dkt. 602 ordered Plaintiffs to supplement art-related income information—records that exist and that Plaintiffs' accountants hold for them as of right. Interrogatory No. 13 demands something different in kind: purchaser identities Plaintiffs never receive. *In re Citric Acid* defines control as "the legal right to obtain documents upon demand" and found no control even over a closely affiliated firm's records. 191 F.3d at 1107–08. Runway, which bears the burden of establishing control, identifies no contractual provision entitling any Plaintiff to demand purchaser identities from a publisher, much less from a downstream retailer; the contracts entitle Plaintiffs to royalty statements, and Runway has every one, produced months ago. The accountants Runway invokes maintain financial totals, not customer databases, and their financial records for the Asserted Works have been produced. Plaintiff Ellis's "bookkeeping" for his own pass-through entity is payroll, not a customer ledger. Plaintiffs claim no artists' exemption from the Federal Rules; they claim the Rules as written. Nor is Plaintiffs' burden objection unsubstantiated; the burden is inherent in the demand itself: royalty statements report aggregate sales by format and period, and nothing in the record suggests any publisher provides authors purchaser-level data at all. Compliance would therefore require each artist to canvass galleries, convention sales, payment processors, and e-commerce platforms across six years to assemble a name-by-name roster that no working artist keeps—precisely the "diary-level" reconstruction Rule 26(b)(1) forbids demanding of individuals. And Runway's eleventh-hour offer of "customer names only" cures nothing: a narrower request for information that does not exist still seeks information that does not exist.

Runway proposes a post-deadline reconstruction project for zero benefit: Runway already holds every produced record against which any "overlap" analysis will be run, and Rule 33 entitles it to answers, not to the manufacture of documents. The relief Rule 33 contemplates—complete, verified responses—is already en route: Plaintiffs' July 15 amendments will answer Interrogatory No. 13 directly and under oath, and fact depositions remain open through August 15 if Runway wishes to test them. If the Court concludes any relief is warranted, it should be limited to what Plaintiffs have already committed to provide: verified amended responses, served by July 15, identifying all responsive customer information within Plaintiffs' possession, custody, or control. An order demanding more would command the impossible and invite months of collateral litigation over a duty no one can meet. The Court should deny Runway's request.

Sincerely,

KEKER, VAN NEST & PETERS
Attorneys for Runway AI, Inc.

/s/ *Matan Shacham*
Matan Shacham

633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
mshacham@keker.com

JOSEPH SAVERI LAW FIRM, LLP
Attorneys for Plaintiffs

/s/ *Joseph R. Saveri*
Joseph R. Saveri

601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com

## ATTESTATION PURSUANT TO CIVIL L.R. 5-1

The filer attests that the other signatories listed, on whose behalf the filing is also submitted, are registered CM/ECF filers and concur in the filing's content and have authorized the filing.

Dated: July 8, 2026

*<u>/s/ Matan Shacham</u>*
Matan Shacham