**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butticklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

[*Additional counsel listed on signature pages*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SARAH ANDERSEN, et al., | Case No. 23-cv-00201-WHO (LJC) |
| *Individual and Representative Plaintiffs*, | **PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER (ECF 638) OF MAGISTRATE JUDGE** |
| v. | |
| STABILITY AI LTD., et al. | Judge: Hon. William H. Orrick |
| *Defendants*. | |

**FILED UNDER SEAL**

Case No. 23-cv-00201-WHO (LJC)

## **MOTION**

Plaintiffs move under 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and N.D. Cal. Local Rule 72-2 for relief from a nondispositive pretrial order of a Magistrate Judge. Plaintiffs respectfully object to and ask the Court to set aside portions of the Discovery Order at ECF 638 issued by Magistrate Judge Cisneros on July 8, 2026, as set forth in the accompanying Memorandum of Points and Authorities ("Memo"). In addition to this Motion and the Memo, the Motion is based on the underlying briefing at ECF 636, the proposed Order for this Motion, the records and docket in this matter, and any oral argument.

## **INTRODUCTION**

On July 8, 2026, Magistrate Judge Cisneros issued an order, ECF No. 638, denying Plaintiffs' request to compel defendant Midjourney Inc. ("Midjourney") to produce "art" and "artists" datasets—Midjourney's highly curated training datasets comprised of ███████████████████████████████ ████████████████████████████████████████. These "art" and "artist" datasets were used for many purposes including ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████ These "art" and "artists" datasets contain copies of the same copyrighted art images scraped from the internet that were included in LAION-5B, ██████████████████████████ █████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████ ████████████████████

Magistrate Judge Cisneros, in denying Plaintiffs' request for the production of these "art" and "artist" datasets, cited the reasons previously provided in ECF No. 314, in which the Court denied requested production of non-LAION datasets used for training, because "discovery is limited to information relevant to the parties' claims and defenses," and discovery "regarding Midjourney's anticipated fair use defense is thus limited to the datasets at issue in Plaintiffs' Third Amended Complaint." ECF No. 638. However, "the scope of permissible discovery is not based solely on whether a transaction is expressly mentioned in the complaint." *Scherer v. FCA US, LLC*, 538 F. Supp. 3d 1002, 1005 (S.D. Cal. 2021). Midjourney's creation of and inclusion of Plaintiffs' copyrighted artwork in these art ██████████████████████████████████████ goes directly to rebutting Midjourney's "fair use" defense to copyright infringement, and goes to intent with respect to Plaintiffs' trade dress claims. *See*, *e.g.*, *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1215 (9th Cir. 2023) (intentional copying and intent to confuse is a factor in trade dress infringement). The order here is too restrictive, even by the Court's own standards, given its previous acknowledgement that Plaintiffs could renew their request for non-LAION training datasets if they could "concretely articulate how the content (rather than the overall size or sources) of non-LAION datasets would be relevant to rebutting Midjourney's fair use defense." ECF No. 314. Plaintiffs satisfy this standard here. Midjourney's

PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER (ECF 638) OF MAGISTRATE JUDGE

███████████████████████████████████████████████ art training datasets is relevant to the claims and defenses here, and Plaintiffs should be allowed to demonstrate their artwork was included in those datasets. Plaintiffs respectfully submit Magistrate Judge Cisneros ruled in error in ECF No. 638 and object pursuant to Fed. R. Civ. P. 72(a).

## FACTUAL BACKGROUND

LAION-5B, one of the datasets explicitly listed as being copied in the Third Amended Complaint, is a *5 billion* image dataset that consists of images scraped from the internet whose accompanying text had been determined to meet a *minimum* threshold probability of correspondence to the associated image. Training a successful text-to-image AI model requires training on accurate text descriptions of the corresponding images that are being trained on, and Midjourney needed art images more reliably associated with the artists' names ██████████████████████████████████, so that its product could mimic those select artists' styles. Midjourney's creation and inclusion of Plaintiffs and their artwork in "art" and "artist" datasets is highly relevant to this lawsuit.

The claims against Midjourney in this matter focus on Midjourney's intentional development and promotion of its AI model's ability to create images that mimic the artistic styles of individual artists whose names Midjourney specifically promoted, encouraging users to use those artists' names as text prompts. See Third Amended Complaint, ECF No. 431 ¶¶ 251-255 ("TAC"). David Holz published a list of artists Midjourney had "learned" and could meaningfully mimic, and Midjourney promoted using artists' names in text prompts to create images in their styles. TAC ¶ 253. Plaintiffs were included in the list of artists that was used to create the "art" and "artist" datasets. TAC ¶ 255. The argument that this is somehow a mere fishing expedition into other training data is not credible.

As adduced in discovery, Midjourney created ██████████████████████████ ██ — vectors that associate image information with particular text information, ████████ ██████████████████████████ Plaintiffs and their experts continue to investigate how ████████ ██████ were used by Midjourney, as they can be used in many ways, from training the base diffusion model directly, or by ████████████████████████████ "CLIP guidance," the multi-step image creation process Midjourney models use in which a diffusion model's output is "guided" during creation by specific, pre-rendered CLIP embeddings. The copies of Plaintiffs' art in these

"art" and "artist" datasets ███████████████████████████████ are important evidence in rebutting Midjourney's "fair use" defense. Plaintiffs should be able to analyze these "art" and "artist" datasets ███████████████ to confirm if their names and art were specifically targeted and are included.

███████████████████████████████████ ████████████████████████ But v1-v3 of the Midjourney model were meaningfully different than ██████████ in terms of its image generation. Plaintiffs should not be prevented from ████████████████████████████████ ████████████████████████████████ ████████ was created and used. █████████████████ Midjourney should produce the datasets ████████████████

Fair use is undermined by ████████████████ ████████████████████████████████ ████████████████████████████████ ███████ ECF No. 635-4 (MIDJOURNEY_00938292 at -305) ██████████ ████████████████████████████████ ████████████████████████████████ ████ ; ECF No. 635-5 (MIDJOURNEY_00852786 at -805) ████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████ ECF No. 635-6 (MIDJOURNEY_00853462 at -467). ██████████ ████████████████████ used by Midjourney in its first three versions. ████████ ████████████████████████████████ ████████████████████████████████ ████████████████████ ECF No. 635-7 (MIDJOURNEY_00854938 at - 943). █████████████ ████████████████████████████████

PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE
PRETRIAL ORDER (ECF 638) OF MAGISTRATE JUDGE



ECF No. 635-8 (MIDJOURNEY_00013478 at -480).

ECF No. 635-9 (MIDJOURNEY_00083519 at -521).

ECF No. 635-10 (MIDJOURNEY_00854957 at -959).

ECF No. 635-11 (MIDJOURNEY_00065117 at -118).

ECF No. 635-11 (MIDJOURNEY_00065117 at -132). "Artist knowledge" here refers to usable information in training data whereby a CLIP model can "learn" to associate the artists' name with the core visual elements and style of the associated image.

Sam Schickler responded,

ECF No. 635-12 (MIDJOURNEY_00015063 at -069). There is no disproportionate technical burden here in producing a relatively small dataset of 2 million art images.

## ARGUMENT

On review of a nondispositive order, "the magistrate's factual determinations are reviewed for clear error." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). "The magistrate's legal conclusions," by contrast, "are reviewed de novo to determine whether they are contrary to law." *Id.*; *see also Equal Emp. Opportunity Comm'n v. Peters' Bakery,* 301 F.R.D. 482, 484 (N.D. Cal. 2014). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Understanding whether Midjourney

is essential to rebutting Midjourney's fair use defense. ECF No. 314 set the governing standard: Plaintiffs could renew their request for non-LAION datasets if they concretely articulated how the content of those datasets would rebut Midjourney's fair use defense. Midjourney's own internal communications, quoted above, supply that articulation. The order denied production without applying the Court's own standard, and that refusal is clearly erroneous and contrary to law.

What constitutes "fair use" in the context of training generative AI models on copyrighted data is a legal issue still in its infancy. However, the U.S. Copyright Office has weighed in with a paper on the subject, "Copyright and Artificial Intelligence Part 3: Generative AI Training".[1] The Office concluded different uses of copyrighted data during AI development and deployment require separate considerations of "fair use." *Id*. at 36. With respect to assessing the "transformativeness" element of fair use, "the question is whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message. . . .'" *Id*. at 37. The Copyright Office concluded: (1) even significant alterations will not be transformative enough "if the use ultimately serves a purpose similar to that of the original," *Id*. at 37-38; (2) training a model to generate outputs substantially similar to the copyrighted works in the training data set is the least transformative use of copyrighted training data. *Id*. at 46; (3) "using images…to train a model that generates similar expressive outputs does not merely remove a technical barrier to productive competition. In such cases…it is hard to see the use as transformative." *Id*. at 46; (4) developers' deliberate selection of "aesthetic images" for training data over other available alternatives "suggests the purpose is…to generate images that have expressive qualities like the originals." *Id*. at 46 n. 263; (5) "Image models are trained on curated datasets of aesthetic images because those images lead to aesthetic outputs. Where the resulting model is used to generate expressive content, or potentially reproduce copyrighted expression, the training use cannot be fairly characterized as 'non-expressive.'" *Id*. at 47-48. Whether Midjourney ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the creation of their "art" and "artists" training datasets is thus highly relevant evidence Plaintiffs intend to use to rebut fair use and to establish their trade dress infringement claims.

## CONCLUSION

Because the order in ECF No. 638 is clearly erroneous and contrary to law, Plaintiffs object and ask the Court to direct Midjourney to produce its "art" and "artist" training datasets to Plaintiffs so they can determine whether their art was included in those ▮▮▮▮▮▮▮▮▮▮ training datasets.

---

[1] https://www.copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-3-Generative-AI-Training-Report-Pre-Publication-Version.pdf

Date: July 22, 2026

By: _/s/ Joseph R. Saveri_

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Evan Creutz (SBN 349728)
Louis Andrew Kessler (SBN 243703)
Elissa A. Buchanan (SBN 249996)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Alexander Zeng (SBN 360220)
Alaina Gilchrist (SBN 335807)
Lora Faraj (SBN 364719)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: ecreutz@saverilawfirm.com
Email: lkessler@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: azeng@saverilawfirm.com
Email: agichrist@saverilawfirm.com
Email: lfaraj@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@butticklaw.com

_Counsel for Individual and Representative Plaintiffs
and the Proposed Class_