**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

[*Additional counsel listed on signature pages*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br>*Individual and Representative Plaintiffs*,<br>v.<br>STABILITY AI LTD., et al.<br>*Defendants*. | Case No. 23-cv-00201-WHO (LJC)<br>**PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS AGAINST DEVIANTART**<br>Date: October 7, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. William H. Orrick<br>Courtroom: 2, 17th Floor |

**FILED UNDER SEAL**

# TABLE OF CONTENTS


| | Page |
|---|---|
| I. INTRODUCTION | 1 |
| II. FACTUAL BACKGROUND | 3 |
| A. DeviantArt Withheld Information of Surovenko's Impending Departure Despite a Timely Deposition Demand, [redacted] | 3 |
| B. DeviantArt Needlessly Multiplied the Proceedings by Filing a Frivolous Opposition to Plaintiffs' Letters Rogatory Motion, and Made Multiple Misrepresentations to the Court Regarding Surovenko's Relevance. | 5 |
| C. Plaintiffs Were Forced to Incur Substantial Costs in Foreign Judicial Proceedings. | 7 |
| D. DeviantArt's Gamesmanship With Respect to Trofimov | 7 |
| III. LEGAL STANDARD | 8 |
| IV. ARGUMENT | 9 |
| A. The Court Should Order DeviantArt to Reimburse Plaintiffs for Their Costs Incurred in Retaining B.C. Counsel to Secure the Depositions of Surovenko and Trofimov | 9 |
| 1. DeviantArt and its Counsel's Conduct Give Rise to a Finding of Bad Faith, and Thus the Court Should Exercise its Inherent Authority and Impose Sanctions | 9 |
| 2. The Court Should Sanction DeviantArt and its Counsel Under Rule 30(d)(2) Because its Conduct Impeded, Delayed, or Frustrated the Fair Examination of Surovenko | 12 |
| B. DeviantArt Multiplied the Proceedings Unreasonably and in Bad Faith by Forcing Litigated Motion Practice on a Frivolous Opposition | 12 |
| V. CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ....................8

*Brooke v. Stillman*,
No. 20-17236, 2021 WL 4948929 (9th Cir. Oct. 25, 2021) ....................1

*Dahl v. City of Huntington Beach*,
84 F.3d 363, 367 (9th Cir. 1996) ....................8

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
No. 4:19-cv-06593-HSG-KAW, 2022 WL 566792 (N.D. Cal. Jan. 14, 2022) ....................8, 9

*Famuyide v. Chipotle Mexican Grill, Inc.*,
No. 23-cv-01127 (DFW/ECW), 2026 WL 772120 (D. Minn. Mar. 18, 2026)....................9

*Khan v. City & Cnty. of San Francisco*,
No. 24-cv-09289-LJC, 2026 WL 714308 (N.D. Cal. Mar. 15, 2026) ....................1

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
No. 12-cv-05064-JSC, 2015 WL 9268118 (N.D. Cal. Dec. 21, 2015)....................8, 12

*MGIC Indem. Corp. v. Moore*,
952 F.2d 1120 (9th Cir. 1991) ....................8, 12

*Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*,
210 F.3d 1112 (9th Cir. 2000) ....................8

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) ....................9, 10, 12

**Rules**

Civ. L.R. 7-8(a) ....................1

Fed. R. Civ. P. 30....................10, 12

Fed. R. Civ. P. 30(b)(1).................... *passim*

Fed. R. Civ. P. 30(b)(6)....................1, 2, 10

Fed. R. Civ. P. 30(d)(2).................... iii, 8, 12

**NOTICE OF MOTION AND MOTION FOR DISCOVERY SANCTIONS**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 7, 2026, at 2:00 p.m., or as soon thereafter as the parties may be heard, before the Hon. William H. Orrick, District Court Judge, U.S. District Court for the Northern District of California, in Courtroom 2 – 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs Sarah Andersen, Karla Ortiz, Gregory Manchess, Adam Ellis, Gerald Brom, Grzegorz Rutkowski, Julia Kaye, and Jingna Zhang (collectively, "Plaintiffs") will and hereby do move this Court for an order imposing sanctions against DeviantArt, Inc. ("DeviantArt") and its counsel.

Plaintiffs seek an order pursuant to this Court's inherent authority, 28 U.S.C. Section 1927, and Rule 30(d)(2) granting their Motion for Sanctions against DeviantArt, Inc. and its counsel, on the grounds that DeviantArt and its counsel willfully frustrated Plaintiffs' efforts to obtain the deposition of Nikolay Surovenko under Rule 30(b)(1), made affirmative misrepresentations to Plaintiffs and this Court regarding Surovenko's knowledge and relevance in an effort to conceal his relevance and impede his testimony, and engaged in bad faith litigation tactics to delay the production of former employee Georgii Trofimov. DeviantArt's conduct needlessly multiplied the proceedings in this litigation and abroad, forcing Plaintiffs to incur substantial costs and delays in pursuing legal proceedings through letters rogatory and a petition before the Supreme Court of British Columbia.

Plaintiffs' Motion for Sanctions ("Motion") is based on this Notice of Motion and the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Holden Benon ("Benon Decl."); the exhibits attached to the declaration; any billing statements requested by the Court; all pleadings and papers in this action; and oral argument of counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I. INTRODUCTION

DeviantArt concealed, delayed, and misrepresented facts and circumstances regarding witnesses Surovenko and Trofimov, two former DeviantArt employees. Surovenko [redacted] the 3.6 million user images that were used to train the CLIP-token model. Trofimov was a key figure in the development of DreamUp. Plaintiffs requested Surovenko's availability for his deposition while he was still employed at DeviantArt. Nonetheless, DeviantArt did not inform Plaintiffs of his imminent departure, even as Surovenko was [redacted]. With respect to Trofimov, witness testimony revealed that [redacted]. DeviantArt's conduct frustrated and protracted Plaintiffs' efforts to obtain their testimony, which included requests for letters rogatory, retention of Canadian counsel, and process in the Canadian judicial system.

As the factual record and the testimony of DeviantArt's own corporate designee establish, DeviantArt willfully thwarted Plaintiffs' efforts to obtain Surovenko's deposition under Federal Rule of Civil Procedure 30(b)(1). Plaintiffs informed DeviantArt they intended to depose Surovenko on January 9, 2026. At that point, Surovenko was still employed at DeviantArt. Despite receiving notice of Plaintiffs' intention to depose Surovenko, [redacted], and despite utilizing Surovenko around that very period to prepare DeviantArt's Rule 30(b)(6) witness, DeviantArt actively concealed Surovenko's departure from Plaintiffs.

DeviantArt compounded this concealment by making false representations to Plaintiffs and this Court in connection with its opposition to Plaintiffs' Motion for Letters Rogatory—falsely claiming that Surovenko was "not knowledgeable about Plaintiffs' requested topics" (ECF No. 508 at 9:20), and

---

[1] The Court entered Plaintiffs' and DeviantArt's stipulations to extend the deadline to file a motion arising from this dispute. *See* ECF Nos. 704, 715, 723, and 728. Plaintiffs submit their motion under Local Rule 7-2 to comply with the Court's Local Rules and constitutional requirements of due process. *See* Local Rule 7-8(a); *Brooke v. Stillman*, No. 20-17236, 2021 WL 4948929, at *1 (9th Cir. Oct. 25, 2021) ("The issuance of sanctions here did not conform to the court's local rules or the constitutional requirements of due process. Plaintiff's counsel filed a discovery letter, added in a single line about sanctions, and failed to comply with Local Rules 7-2 and 7-8."). *Khan v. City & Cnty. of San Francisco*, No. 24-cv-09289-LJC, 2026 WL 714308, at **2-3 (N.D. Cal. Mar. 15, 2026) ("However, a discovery letter is not the appropriate vehicle to bring a request for spoliation sanctions.").

"didn't directly contribute any work that made it into DreamUp." Ex. D, Hr'g Tr. 9:15-16. Each of these representations is directly refuted by the testimony of DeviantArt's Rule 30(b)(6) designee, who recently testified that, before Surovenko departed the company, [redacted]. Ex. A., Gorniak 30(b)(6) Dep. Tr. (Aug. 12, 2026) 14:16-20:7, 64:4-15, 68:11-22; Ex. B, Gorniak 30(b)(6) Dep. Tr. (Aug. 13, 2026) 109:9-15. DeviantArt and/or its counsel knew at the time it filed its opposition that Surovenko was a knowledgeable witness. Peter Gorniak, *who submitted a declaration in support of DeviantArt's opposition*, had [redacted]; DeviantArt knew that Surovenko [redacted]. *See Id*. at 109:9-15, 242:19-22. At the hearing regarding the Opposition, DeviantArt's counsel stated that they "checked" regarding Surovenko's role, and that they "feel confident saying that his workstream was not part of DreamUp." *See* Ex. D, Hr'g Tr. 9:15-17 (Apr. 28, 2026). Thus, either DeviantArt's counsel misrepresented Surovenko's involvement, and/or DeviantArt itself did. These facts support an unequivocal finding of bad faith.

DeviantArt engaged in similar obstructive conduct vis-à-vis Canada-based former employee Trofimov: DeviantArt remained silent while Plaintiffs expended resources petitioning the Supreme Court of British Columbia, only for its counsel to emerge three months later to announce that they would represent Trofimov after all. Crucially, DeviantArt's Head of Artificial Intelligence [redacted] Ex. C., Gorniak 30(b)(1) Dep. Tr. (Aug. 12, 2026) 22:2-6. Instead of simply making Trofimov available then, DeviantArt's counsel chose to sit on their hands and wait for Plaintiffs to jump through extraterritorial hoops.

The Court should issue sanctions and order DeviantArt and its counsel to pay for Plaintiffs' reasonable and necessary costs to secure the depositions of Surovenko and Trofimov. These include the costs for litigating letters rogatory, retaining Canadian counsel and their reasonable expenses for resort to the Canadian judicial process to secure enforcement of this Court's letters rogatory. Such an order

would restore Plaintiffs to the position they would have been in absent the wrongdoing. DeviantArt's bad faith conduct needlessly and unreasonably multiplied the proceedings in this action, and forced Plaintiffs to shoulder substantial, unnecessary expenses to enforce the subpoenas in Canada. Plaintiffs' fees and costs are 31,037.31 CAN for fees incurred by Plaintiffs' British Columbia Counsel and 20,160.00 USD in fees incurred by Plaintiffs in responding to DeviantArt's frivolous opposition to the Letters Rogatory Motion in this action.[2] Sanctions reimbursing Plaintiffs for those fees and costs and fees are necessary and just.

The Court should also exercise its inherent authority and order DeviantArt to pay additional sanctions including for fees Plaintiffs incurred to file the Motion for Letters Rogatory, fees incurred in coordinating with B.C. Counsel to secure the depositions, fees and costs incurred in connection with taking the depositions of Trofimov and Surovenko, and fees incurred in preparing this motion.

## II. FACTUAL BACKGROUND

### A. DeviantArt Withheld Information of Surovenko's Impending Departure Despite a Timely Deposition Demand, [redacted]

On January 9, 2026, Plaintiffs emailed counsel for DeviantArt to request the dates on which Surovenko is available for his deposition. Benon Decl., ¶ 3. Surovenko was an employee of DeviantArt at the time. *See, e.g.,* Ex. A, Gorniak 30(b)(6) Dep. Tr. (Aug. 12, 2026) 9:22-10:4 (testimony from DeviantArt's Head of AI stating Surovenko [redacted]

In March, Surovenko left his employment with DeviantArt. *See* Mar. 12, 2026 Joint Status Report, ECF No. 445 at 4:15-17 ("DeviantArt notified Plaintiffs today that the third requested witness is no longer employed by DeviantArt, which reflects the witness's new status as of this week"). Prior to his departure—and unbeknownst to Plaintiffs at the time—[redacted]. *See* Ex. A., Gorniak 30(b)(6) Dep. Tr. (Aug. 12, 2026) 20:9–11.

During the lead-up to Surovenko's departure, DeviantArt fully recognized that Surovenko was a central, highly relevant witness in this litigation. [redacted]

[2] Plaintiffs are prepared to submit the relevant billing statements at the Court's request.

[redacted].[3] Ex. A, Gorniak 30(b)(6) Dep.

---

[3] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Tr. (Aug 12, 2026) 9:22-10:6. These are the same works, which include Plaintiff Jingna Zhang's works, that were used to develop the CLIP-token model underlying DreamUp.

Yet, despite [redacted], despite his status as a Court-ordered document custodian (*see* ECF No. 367), despite DeviantArt's knowledge of his direct relevance to the core issues in dispute (*see, e.g.,* n.3) and Plaintiffs' stated intention to seek Surovenko's deposition testimony, DeviantArt concealed from Plaintiffs that Surovenko would be leaving the company.

Plaintiffs were given no opportunity to secure Surovenko's deposition under Rule 30(b)(1) while he remained a DeviantArt employee. Instead, Plaintiffs first learned of his departure after the fact through edits DeviantArt made to the parties' March 12, 2026 Joint Status Report. *See* ECF No. 445 at 4:10-12. By then, Surovenko had separated from DeviantArt, foreclosing Plaintiffs from securing his testimony under Rule 30(b)(1).

On March 12 and March 13, 2026, Plaintiffs wrote to DeviantArt's counsel to inquire whether they represent Surovenko and Trofimov, and if so, whether they would accept service of their subpoenas. Benon Decl., ¶¶ 4-5. On March 23, DeviantArt's counsel responded that they do not presently represent Surovenko and Trofimov, and they do not know who does. Benon Decl., ¶ 6. As a result, Plaintiffs were forced to resort to costly foreign legal process to secure their depositions.

**B. DeviantArt Needlessly Multiplied the Proceedings by Filing a Frivolous Opposition to Plaintiffs' Letters Rogatory Motion, and Made Multiple Misrepresentations to the Court Regarding Surovenko's Relevance.**

On April 10, 2026, Plaintiffs filed their Motion for Issuance of Letters Rogatory (*see* ECF No. 473), which incepted the cross-border discovery process to secure the depositions of Surovenko and Trofimov. DeviantArt responded with an opposition ("Opposition") misrepresenting Surovenko's status as a witness with little-to-no knowledge or importance to the litigation. Specifically, DeviantArt's Opposition made the following claims, which DeviantArt knew at the time to be false or misleading:

- "Here, Mr. Surovenko is not knowledgeable about Plaintiffs' requested subjects[.]" ECF No. 508 at 9:19–20;

---

[redacted]

- "[Surovenko's] testimony would have little 'importance' to this litigation" ECF No. 508 at 4:15–16;

- DeviantArt claimed it did not identify Surovenko in its initial disclosures "because he is '[*un*]likely to have discoverable information[.]'" ECF No. 508 (n.3) at 4:25;[4] and

- "Mr. Surovenko, a former DeviantArt engineer, did not perform any key tasks in connection with DreamUp's development[.]" ECF No. 508 at 4:18–19.

DeviantArt repeated these claims at the hearing on the motion, stating: "[Surovenko] didn't directly contribute any work that made it into DreamUp." *See* Ex. D, Hr'g Tr. 9:15–17. *See also* Mar., 12, 2026 Joint Status Report, ECF No. 470 at 18:15 (DeviantArt stating Surovenko's "work at DeviantArt is irrelevant to Plaintiffs claims[.]").

Each of these statements DeviantArt and its counsel made to the Court is belied by the record and the sworn testimony of DeviantArt's own corporate designee and Head of Artificial Intelligence, Peter Gorniak:

- **Knowledge of "Plaintiffs' requested topics":** In its Opposition, DeviantArt represented that Surovenko was "not knowledgeable about Plaintiffs' requested subjects." *In reality, Surovenko was so knowledgeable that* [redacted].[5] DeviantArt testified that Surovenko [redacted]. Ex. A, Gorniak 30(b)(6) Dep. Tr. (Aug 12, 2026) 9:22-10:6. This would have been a matter of weeks before the Letters Rogatory Motion was filed on April 10, 2026. ECF No. 473.

- **Performance of Key Tasks and Contributions to DreamUp:** DeviantArt represented that Surovenko did not perform "key tasks" and "didn't directly contribute any work that made it into DreamUp." In reality, [redacted] the 3.6 million works that were used to develop the CLIP-token model at the heart of Plaintiffs' second claim for infringement against DeviantArt. Ex. A, Gorniak 30(b)(6) Dep. Tr. (Aug. 12, 2026) 68:11-22;Ex. B, Gorniak 30(b)(6) Dep. Tr. (Aug. 13, 2026) 109:9-15.

- **Involvement in Experimental Models:** Surovenko was directly involved in [redacted]. *See* Ex. A., Gorniak 30(b)(6) Dep. Tr. (Aug. 12, 2026) 64:13–15.

---

[4] [redacted] the 3.6 million images used to train the CLIP-token model, DeviantArt should have amended its initial disclosures to list Surovenko after the Third Amended Complaint became operative in early 2026. In failing to do so, DeviantArt capitalized on an information asymmetry that prejudiced Plaintiffs.

[5] *See supra,* n.3.

**C. Plaintiffs Were Forced to Incur Substantial Costs in Foreign Judicial Proceedings.**

After briefing and argument necessitated by the Opposition, this Court issued an Order granting Plaintiffs' Letters Rogatory Motion ("Order"). ECF No. 534. The Order proved to be only the first step in an expensive, multi-stage foreign process.

Following the Order, Plaintiffs retained foreign counsel in British Columbia ("B.C. Counsel"), filed a petition in the Supreme Court of British Columbia ("B.C. Court"), effectuated formal service of that petition upon Surovenko and Trofimov, appeared in foreign court proceedings, and conducted follow-up outreach to Surovenko and Trofimov the B.C. Court granted the petition. Benon Decl., ¶ 7. Before initiating the process, Plaintiffs reached out to both Surovenko and Trofimov regarding their work at DeviantArt as part of an effort to determine whether they would sit for their depositions without resorting to foreign process. Benon Decl., ¶ 8. At no point did Surovenko or Trofimov respond to Plaintiffs' or B.C. Counsel's communications, nor did they appear at the hearing on the Petition. Benon Decl., ¶¶ 9-10.

**D. DeviantArt's Gamesmanship With Respect to Trofimov.**

DeviantArt similarly frustrated Plaintiffs' efforts to secure the testimony of former employee Georgii Trofimov. DeviantArt preferred that Plaintiffs engage in a long, costly, and drawn-out foreign process rather than cooperating in discovery. Several weeks after Plaintiffs completed this onerous cross-border process DeviantArt finally emerged—three months later, and one week before the August 15 deadline to complete deadlines—to announce that it would represent Trofimov after all. Benon Decl., ¶ 11.

As testimony from DeviantArt's corporate representative would later reveal, [redacted] *See* Ex. C, Gorniak Dep. Tr. 22:2-6 [redacted]. DeviantArt deliberately withheld that representation for months to maximize Plaintiffs' burden, delay, and expense as Plaintiffs jumped through extraterritorial hoops to formally compel Trofimov's testimony through Canadian judicial proceedings.

Plaintiffs and their B.C. Counsel worked diligently to secure the depositions of Surovenko and Trofimov in a manner consistent with the Court's schedule. Plaintiffs ultimately secured their depositions after incurring **31,037.31 CAN** in fees and costs charged by B.C. Counsel to obtain testimony that should have been provided routinely. Plaintiffs also incurred **20,160.00 USD** in fees in responding to the Opposition and preparing for the hearing on the Letters Rogatory Motion.

## III. LEGAL STANDARD

Under Rule 30(d)(2), "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Rule 30(d)(2) sanctions do not require a finding of bad faith. *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, No. 12-cv-05064-JSC, 2015 WL 9268118, at *3 (N.D. Cal. Dec. 21, 2015). As the *Lee* court observed, "[t]he advisory committee notes to Rule 30(d)(2) note that the rule 'explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction.'" *Id.* ("The note further provides that the 'sanction may be imposed on a non-party witness as well as a party or attorney, but is otherwise congruent with Rule 26(g).'").

Additionally, 28 U.S.C. Section 1927 provides an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "The imposition of sanctions under section 1927 requires a finding of bad faith." *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). Courts "assess an attorney's bad faith under a subjective standard. Knowing or reckless conduct meets this standard." *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991).

Lastly, courts may sanction attorneys and parties pursuant to their inherent authority for "bad faith" conduct. *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). A district court "has great latitude in imposing sanctions for discovery abuse." *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, No. 4:19-cv-06593-HSG-KAW, 2022 WL 566792, at *1 (N.D. Cal. Jan. 14, 2022) *citing Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument . . . A party also demonstrates bad

faith by delaying or disrupting the litigation[.]" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997) (cleaned up).

## IV. ARGUMENT

The Court should order DeviantArt to reimburse Plaintiffs for (1) their costs incurred in retaining B.C. Counsel to secure the depositions of Surovenko and Trofimov through costly cross-border process (**31,037.31 CAN)**; and (2) their fees incurred in responding to DeviantArt's frivolous Opposition and preparing for the related hearing (**20,160.00 USD)**. DeviantArt delayed and frustrated Plaintiffs' efforts to obtain the deposition testimony of Surovenko who was within DeviantArt's employ and control when Plaintiffs informed DeviantArt of their intention to notice his deposition. Worse, DeviantArt did not inform Plaintiffs of his impending departure, despite knowing [redacted] and his central relevance to core issues in the case. With respect to Trofimov, DeviantArt delayed and multiplied proceedings because [redacted]. The imposition of such sanctions would restore Plaintiffs "to the same position he or she would have been in absent the wrongdoing." *Edwards Lifesciencies*, 2022 WL 566792, at *2.

### A. The Court Should Order DeviantArt to Reimburse Plaintiffs for Their Costs Incurred in Retaining B.C. Counsel to Secure the Depositions of Surovenko and Trofimov

#### 1. DeviantArt and its Counsel's Conduct Give Rise to a Finding of Bad Faith, and Thus the Court Should Exercise its Inherent Authority and Impose Sanctions

The Court should exercise its inherent authority and sanction DeviantArt and/or its counsel for their bad faith conduct in forcing Plaintiffs to pay for British Columbia-based counsel ("BC Counsel") to secure the depositions of Surovenko and Trofimov through extraterritorial judicial process.

Courts have exercised their inherent authority to award sanctions for deposition-related misconduct under less egregious facts. For example, in *Famuyide v. Chipotle Mexican Grill, Inc.*, the court awarded attorneys' fees and costs pursuant to its inherent authority and under Rule 30(d)(2) where a defendant reneged on previously agreed-to 30(b)(6) topics and thus delayed examination of those topics. No. 23-cv-01127 (DFW/ECW), 2026 WL 772120, at *29 (D. Minn. Mar. 18, 2026).

Here, DeviantArt knowingly delayed and disrupted the litigation through their failure to produce Surovenko as a Rule 30(b)(1) witness before he left the company, and by delaying the production of Trofimov despite [redacted]. Doing so delayed the examination of these key individuals.

***Surovenko.*** As early as January 9, 2026, DeviantArt knew of Plaintiffs' intent to depose Surovenko (Benon Decl., ¶ 3), who had already been ordered to be a document custodian in this action (*see* ECF No. 367). Moreover, in the weeks leading to his exit, DeviantArt knew that Surovenko was a highly knowledgeable, relevant witness with respect to core aspects of Plaintiffs claims. Surovenko indisputably [redacted] the 3.6 million images used to train the CLIP-token model. He possessed direct knowledge of key topics of undeniable importance to Plaintiffs' claims. This is underscored by the fact that Surovenko helped [redacted]. *See supra*, n.3; Ex. A. Indeed, Gorniak testified that [redacted]. Ex. A, Gorniak 30(b)(6) Dep. Tr. (Aug 12, 2026) 9:22-10:6.

Surovenko [redacted] at the time DeviantArt knew of Plaintiffs' intention to depose Surovenko. [redacted] (*id.* at 20:9-11), yet DeviantArt concealed this fact until Surovenko departed and it was too late for Plaintiffs to secure his deposition through Rule 30. Had DeviantArt counsel simply made the witnesses available through Rule 30, Plaintiffs would not have had to expend substantial time and expense in securing these depositions.

DeviantArt and its counsel chose to conceal information regarding Surovenko's departure from Plaintiffs to "delay[] or disrupt[] the litigation[.]" *Primus*, 115 F.3d at 649. DeviantArt and its counsel then filed the frivolous Opposition, amounting to a further attempt to "delay[] or disrupt[]" the litigation despite their knowledge of Surovenko's relevance. *Id.* A finding of bad faith is also warranted because DeviantArt "knowingly or recklessly raise[d] a frivolous argument" in its Opposition, as detailed in section II.B. *Id.*

DeviantArt intentionally or recklessly misled the Court and Plaintiffs by minimizing Surovenko as an individual who, just by virtue of him being at the company, "might have said something to

somebody" about DreamUp when in reality, Surovenko was involved in aspects of the litigation and had much to say—[redacted]—mere weeks before Gorniak submitted a declaration in support of the Opposition. *See* Ex. A, n.3 *supra*; ECF No. 508-6 (Declaration of P. Gorniak in support of Opposition). DeviantArt's counsel knew this. Not only did counsel work with Gorniak to prepare his declaration (*see* ECF No. 508-6), they admitted they "have checked" and "can confirm" regarding Surovenko's role and stated they "feel confident saying that his workstream was not part of DreamUp." Ex. D, Hrg. Tr. 9:13-17. All of these statements are materially false—among other things, Surovenko [redacted] 3.6 million images that were "part of DreamUp."

DeviantArt will try to double-down on its effort to paint Surovenko as an irrelevant witness, claiming he [redacted] and this somehow makes him irrelevant. But under that narrow parsing, any defendant could insulate its misconduct from discovery simply by siloing infringing conduct to one individual or project before transferring the resulting work product to another. This is precisely what happened here.

DeviantArt will attempt to obfuscate by pointing to qualifying language in its Opposition in which it claimed Surovenko's lacked a "*formal* responsibility for the development of DreamUp" (ECF No. 508 at 4:14 (emphasis added)) or that he "didn't *directly* contribute any work that made it into DreamUp" (Ex. D, Hrg. Tr. 9:14-15 (emphasis added)). But DeviantArt explained its reliance on this hedging language during the April 28 hearing. DeviantArt admitted it used those qualifiers because "it is entirely possible that as part of his just being a part of company, he might have said something to somebody who was working on DreamUp." *Id*. at 9:11-13. This itself amounts to another false representation because it was not merely a *possibility* that he "might have" had a conversation about DreamUp—by this time, Surovenko had [redacted].

DeviantArt's conduct is tantamount to bad faith, and the Court should exercise its inherent authority and order DeviantArt and its counsel to reimburse Plaintiffs' reasonable fees and costs as such.

***Trofimov.*** With respect to Trofimov, DeviantArt's counsel represented in March that "[o]ur law firm does not presently represent either Mr. Surovenko or Mr. Trofimov in connection with this lawsuit." Benon Decl., ¶ 6. Plaintiffs were then forced to proceed with the Letters Rogatory Motion to secure his testimony. Meanwhile, however, Peter Gorniak communicated with Trofimov [redacted]

[redacted]. Rather than make a highly relevant witness available, DeviantArt and its counsel chose a "wait and see" approach—if Plaintiffs could pay for and jump through the procedural hoops then DeviantArt's counsel would emerge and defend the witness. This amounts to bad faith conduct that had the effect of "delaying or disrupting the litigation[.]" *Primus*, 115 F.3d at 649. Had DeviantArt's counsel simply represented the witness and accepted service of the subpoena in March or April, Plaintiffs never would have been required to incur substantial time and expense in securing their depositions through foreign process.

**2. The Court Should Sanction DeviantArt and its Counsel Under Rule 30(d)(2) Because its Conduct Impeded, Delayed, or Frustrated the Fair Examination of Surovenko**

Even absent a finding of bad faith, DeviantArt's conduct independently warrants costs under Rule 30(d)(2). Because Surovenko was employed by DeviantArt when Plaintiffs sought his testimony, he was fully subject to examination under Rule 30. DeviantArt frustrated and delayed that examination by concealing his [redacted] such that Plaintiffs were stripped of their ability to depose him under Rule 30(b)(1). By foreclosing Plaintiffs' ability to examine Surovenko under Rule 30 and forcing Plaintiffs into foreign proceedings, DeviantArt plainly "impede[d], delay[ed], or frustrate[d] the fair examination" of a key witness. Fed. R. Civ. P. 30(d)(2). DeviantArt's and its counsel's conduct therefore warrants cost-shifting under Rule 30(d)(2) without any showing of bad faith. *See Lee*, 2015 WL 9268118, at *3.

**B. DeviantArt Multiplied the Proceedings Unreasonably and in Bad Faith by Forcing Litigated Motion Practice on a Frivolous Opposition**

The Court should sanction DeviantArt's counsel under 28 U.S.C. section 1927 for unreasonably and vexatiously multiplying the proceedings by filing the frivolous Opposition. "Knowing or reckless conduct" meets the bad faith standard under section 1927. *Moore*, 952 F.2d at 1122. Rather than cooperating in discovery or candidly acknowledging Surovenko's role, DeviantArt knowingly forced initial briefing, hearing preparation, oral argument, and supplemental briefing by making arguments supported by misrepresentations.

DeviantArt's conduct satisfies the subjective bad faith standard under section 1927. DeviantArt's counsel DeviantArt admitted they investigated Surovenko's role. At the hearing, DeviantArt represented

that "we have checked" and "can confirm" regarding his responsibilities. Ex. D, Hr'g Tr. 9:13-14. Peter Gorniak, who at the time had already been in communications with Surovenko about Topics 5, 6, 8, 9, 10, and 13 (*see* Ex. A at 12-19), even worked with DeviantArt's counsel to prepare a declaration in support of the Opposition. *See* ECF No. 508-6.

Plaintiffs point out the inherent contradictions in the Opposition in detail in Sections II.B. and IV.A.2 and incorporate them here by reference. Surovenko [redacted], but before he left the company in or around March. Ex. A, Gorniak 30(b)(6) Dep. Tr. (Aug 12, 2026) 9:22-10:6. By the time the Opposition was filed on April 24, 2026, DeviantArt knew that Surovenko was a relevant and knowledgeable witness—[redacted]—yet its counsel represented in the Opposition that he is of "little 'importance' to this litigation," he is "not knowledgeable about Plaintiffs' requested subjects," and that he "did not perform any key tasks in connection with DreamUp's development." ECF No. 508 at 4:15–16, 4:18–19, 9:19–20. DeviantArt's counsel echoed that refrain at oral argument, claiming he "didn't directly contribute any work that made it into DreamUp." Ex. D, Hr'g Tr. 9:15–17 (Apr. 29, 2026).

The Opposition itself demonstrates how DeviantArt's conduct was designed to delay and multiply proceedings—DeviantArt knew that Surovenko was a relevant and knowledgeable witness in the litigation. DeviantArt even capitalized on Surovenko's status as a "non-party foreign national" to support a burden argument. ECF No. 508 at 9:10. Indeed, Plaintiffs sought Surovenko's deposition while he was still in DeviantArt's employment precisely because of his central relevance—he had knowledge and participated in key events in the development of DreamUp. DeviantArt's conduct is thus sanctionable under 28 U.S.C. section 1927 because the Opposition needlessly and vexatiously multiplied the proceedings based on DeviantArt's frivolous arguments made knowingly or recklessly. The Court should impose sanctions on DeviantArt in the amount of 20,160.00 USD, which reflects the reasonable and necessary fees Plaintiffs' counsel incurred in responding to the Opposition, and preparing for the related hearing.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court impose sanctions on DeviantArt. DeviantArt should be ordered to reimburse Plaintiffs in the amount of **31,037.31 CAN**, which represents B.C. Counsel's fees. The Court should also impose cost-shifting sanctions on DeviantArt and its counsel for filing its Opposition. DeviantArt should be ordered to reimburse Plaintiffs **20,160.00 USD**, which reflects the fees they incurred in responding to the Opposition and preparing for the related hearing. Plaintiffs will submit their billing statements upon the Court's request.

Plaintiffs also respectfully request an additional award of sanctions as the Court deems just, including an award of fees and costs Plaintiffs incurred in filing their Motion for Letters Rogatory; coordinating with B.C. Counsel to secure the depositions of Surovenko and Trofimov; taking the depositions of Surovenko and Trofimov; and litigating the instant Motion.

Date: September 1, 2026

By: */s/ Joseph R. Saveri*

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Louis Andrew Kessler (SBN 243703)
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: czirpoli@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: lkessler@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*