# EXHIBIT A

2026 WL 2679500
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO (AFGE), et al., Plaintiffs,
v.
DONALD J. TRUMP, et al., Defendants.

Case No. 25-cv-03698-SI
|
Filed 09/11/2026

**ORDER GRANTING PLAINTIFFS' MOTION FOR RULE 37(e) REMEDIES**

SUSAN ILLSTON United States District Judge

***1** In this lawsuit, plaintiffs contend that the Department of Homeland Security ("DHS") unlawfully usurped the Federal Emergency Management Agency's ("FEMA's") statutory authority and unlawfully ordered FEMA to cut its staffing in half. The government does not dispute that high-level officials at DHS and FEMA used the Signal messaging app on their personal cell phones for government business and then deleted those messages. The record demonstrates that at least some of the deleted Signal messages related directly to the staffing cuts at the heart of the case. Plaintiffs now seek sanctions arising from the deletion of these messages. After full briefing, including the filing of numerous declarations and thousands of pages of deposition transcripts, and following oral argument, the Court GRANTS plaintiffs' motion.

As detailed further below, Karen Evans, the former acting head of FEMA, and Joseph Guy, former DHS Deputy Chief of Staff, communicated with each other and with others about information relevant to this litigation; they did so on their personal cell phones; and they deleted most messages within one to four weeks, using a Signal auto-delete feature that the chat participants set. These actions violated federal law and DHS policy. Signal messages from the time period most relevant to this litigation have never been produced. And defendants admit that Evans's and Guy's Signal messages are now lost and cannot be recovered.

Evans should have known better. She previously served as Chief Information Officer at DHS, in charge of the agency's records preservation policies. At a hearing on this litigation, her personal attorney touted that "she is more so an expert" on Signal "than anybody else here[.]" Dkt. No. 398 ("May 13, 2026 Tr.") at 25:22-26:2. Yet late last year, Evans created a Signal chat that would appear to be highly relevant to this case and set a four-week auto-delete timer. On March 11, 2026, after she had been named as a defendant in this case and with plaintiffs' emergency motion pending, Evans *shortened* the auto-delete timer on one of her FEMA Signal chats. And it wasn't until April 25, 2026, that Evans created a back-up of her Signal messages, by which point the most timely messages were long since deleted.

As to Joseph Guy, no Signal messages from his phone were *ever* produced, even though the evidence shows he had at least twenty-six FEMA-related Signal chats on his personal phone. While he was under a Court order to search his personal phone for relevant Signal messages, Guy—without consulting anyone, apparently—reinstalled the Signal app, thereby wiping all of his Signal message content. The day before he wiped his Signal app, Guy was supposed to have filed a declaration with the Court about preserving his records. But he missed the deadline. When he filed his declaration—literally a day late and metaphorically a dollar short—he said that none of his relevant Signal chats had been preserved.

For the reasons set forth below, and taking into account all of the circumstantial evidence, including officials' *continued* use of the Signal auto-delete setting even after this Court ordered the production of relevant FEMA communications, the Court concludes that at least Evans deleted Signal chats with the intent to deprive plaintiffs of the use of the chats in this litigation. Under Federal Rule of Civil Procedure 37(e)(2), plaintiffs are therefore entitled to a presumption that the information lost was unfavorable to defendants.

**BACKGROUND**

**I. Supplemental Complaint and Procedural Background**

***2** The Court recites the factual and procedural history of this case only as necessary to resolve the present motion. Plaintiffs originally filed suit on April 28, 2025, challenging the executive branch's authority to conduct large-scale reductions in force ("RIFs") and reorganizations of federal agencies without the participation of Congress. Dkt. No. 1. The Department of Homeland Security has been a defendant from the beginning.[1]

On January 27, 2026, plaintiffs filed an unopposed motion for leave to file a supplemental complaint. Dkt. No. 290. The Court granted the motion on January 30, 2026, and plaintiffs filed the supplemental complaint that day. Dkt. Nos. 295, 298 ("Suppl. Compl."). The supplemental complaint added new defendants FEMA and the then-Senior Official Performing the Duties of FEMA Administrator ("SOPDA"), Karen Evans. Suppl. Compl. ¶¶ 439-440.

The supplemental complaint also added factual allegations specific to DHS and FEMA. According to the supplemental complaint, in December 2025, existing defendant DHS and new defendant FEMA implemented plans to halve the FEMA workforce, pursuant to Executive Order 14356, "Ensuring Accountability in Federal Hiring," 90 Fed. Reg. 48387 (Oct. 15, 2025). Suppl. Compl. ¶¶ 472-522. DHS and FEMA allegedly began to implement this plan by systematically not renewing a category of FEMA staff—the Cadre of On Call Response/ Recovery ("CORE") positions—beginning January 1, 2026. *Id.* ¶ 480. Plaintiffs allege: "These DHS actions to transform and dismantle FEMA (which Congress intended to be independent of DHS control ...) implement Defendants' continued scheme to downsize the federal government in contravention of Congress's directives and Article I of the U.S. Constitution." *Id.* ¶ 437. According to the supplemental complaint, Congress "removed DHS authority over FEMA in the Post-Katrina Emergency Management Reform Act of 2006[,]"[2] which "transferred FEMA's functions (and personnel), previously transferred by statute to DHS and its Under-Secretary for Emergency Preparedness, back to FEMA[.]" *Id.* ¶¶ 538-539.

Plaintiffs' supplemental complaint brings new claims against DHS and (now former) DHS Secretary Kristi Noem challenging DHS's alleged "orders" to FEMA to reduce its staff and not to renew CORE employees. Plaintiffs assert that these orders are: agency action not in accordance with law and exceeding statutory authority under the Administrative Procedure Act ("APA") (Claim VIII); *ultra vires* and unconstitutional government action (Claim IX); and arbitrary and capricious agency action under the APA (Claim X). *Id.* ¶¶ 575-589. Plaintiffs add similar claims against FEMA and (now former) Senior Official Performing the Duties of Administrator Evans, alleging Evans and FEMA violated the law and exceeded statutory authority under the APA (Claim XI); that FEMA acted *ultra vires* in not renewing CORE employees (Claim XII); and that the non-renewals are arbitrary and capricious agency action under the APA (Claim XIII). *Id.* ¶¶ 596-604.

On February 10, 2026, plaintiffs filed a motion for a temporary restraining order related to the alleged non-renewals of CORE employees taking place at FEMA beginning January 1. Dkt. No. 301. The Court converted plaintiffs' motion into a motion for preliminary injunction and set a briefing schedule. Dkt. No. 304. On March 3, 2026, following full briefing and oral argument, the Court issued an order authorizing certain expedited discovery, in order to resolve factual disputes that went to the heart of the matter: whether or not DHS ordered or directed that FEMA make staffing cuts (and cut staffing to a certain level). Dkt. No. 321. The preliminary injunction motion remained pending.

**II. March 2026 Expedited Discovery Orders and Subsequent Events**

***3** In the March 3, 2026 Order for expedited discovery, the Court ordered defendants to produce, among other things, "communications from DHS and FEMA, including email communications regarding the renewals/nonrenewals of CORE employees as well as 'target reductions' of FEMA and CORE employee staffing." *Id.* at 2. The Court also authorized depositions of then-DHS Secretary Noem, then-SOPDA Evans, and the Chief Human Capital Officers ("CHCOs") of both DHS and FEMA. *Id.* The parties met and conferred about the scope of discovery and filed a statement with the Court. Dkt. No. 327. Among other things, the

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

statement included a declaration from FEMA CHCO La' Toya Prieur identifying Joseph Guy, Deputy Chief of Staff, as one of three individuals at DHS who "were involved in the decisions regarding the renewal of the CORE employees[.]"[3] Dkt. No. 327-1 ¶ 5. Guy served as Deputy Chief of Staff at DHS from January 2025 to March 2026. Dkt. No. 359-1 ("Guy Decl.") ¶ 1.[4]

On March 9, 2026, in response to the parties' filing, the Court issued a further order setting the production deadline for March 17. Dkt. No. 328. Although the parties' filing contained a proposal from plaintiffs that searches should encompass electronic communications including Signal, Dkt. No. 327 at 1, 4, the Court's March 9 Order did not specifically address Signal messages.

On March 10, 2026, the Chief Information Officer sent DHS employees an email reminder about preserving electronic records. Dkt. No. 420-1 ("Weissman Decl."), Ex. J.[5] The email reminded employees that "Department-wide Outlook and Teams messages are automatically retained and preserved." *Id.* at ECF p. 59. However, "[i]f employees send work-related messages using ... an approved encrypted app such as Signal or WhatsApp, those messages must be archived." *Id.* The email further reminded employees:

> When using electronic messaging on your phone (SMS, iMessage) or encrypted apps (such as Signal or WhatsApp), please remember:
>
> - All work-related communications and records are considered official government records and must be preserved, regardless of format.
> - This manual archiving requirement does not apply to messages sent in mobile Outlook or Teams, which are archived automatically.
> - DHS policy requires employees to use work devices for all work-related activities. If work communications appear on a personal device, the employee must preserve them and transfer them to a work device—for example, by taking screenshots and emailing them to a DHS email account, or forwarding the messages.
>   - o This transfer to an official account must be completed within 20 days, and the original messages must be deleted from the personal account once the employee has confirmed they are archived in a DHS system. This requirement applies to all electronic messages, including SMS and emails.
> - Employees are responsible for ensuring that any auto-delete features for messaging are turned off on DHS work devices.

*Id.* at ECF p. 59-60.

Evans had the Signal app installed on her personal cell phone. Dkt. No. 414-1, Ex. A ("3/31 Evans Dep.") at 149:18-24. On the morning of March 11, 2026, Evans took pictures of FEMA-related Signal chats that were on her personal phone, then emailed them to her government account and deleted them from her personal phone.[6] Dkt. No. 420-2 ("Bombard Decl.") ¶¶ 3, 6, 8 & Ex. AA (March 11, 2026 email from redacted email address to Evans's work email account with picture of "FEMA 2.0" chat); 3/31 Evans Dep. at 156:5-10 (testimony that "I took pictures of what I determined were appropriate records. And I sent those pictures into my email account so that they would be saved as part of DHS records."); Dkt. No. 414-1, Ex. G ("5/26 Evans Dep.") at 12:25-13:21; 15:6-20; 16:6-17:3.[7] The screenshot of the "FEMA 2.0" chat Evans emailed to herself on March 11, 2026, shows the chat was set to a four-week auto-deletion timer. Bombard Decl., Ex. AA; 5/26 Evans Dep. at 17:14-21. The members of the FEMA 2.0 chat were Evans, Guy, and Kara Voorhies.[8] Dkt. No. 397-1 ("2d Eshleman Decl."), Exs. B, C.

***4** Also on March 11, Evans shortened the auto-delete timer from four weeks to one week on the "FEMA 2.0" chat and on other FEMA-related Signal chats on her personal phone. 5/26 Evans Dep. at 12:5-17, 17:22-25, 32:12-33:20; 2d Eshleman Decl., Exs. B, C. Evans later testified that "from March 11th going forward I no longer used FEMA 2.0." 5/26 Evans Dep. at 18:14-19.

On March 19, 2026, plaintiffs filed a statement notifying the Court that defendants refused to search for or produce Signal or other electronic communications on phones. Dkt. No. 332 at 1. Plaintiffs further stated:

> Defendants did not base their position on any search or belief that such documents do not exist.

> To the contrary, Plaintiffs have good reason to believe that decision-makers at DHS and FEMA utilize these methods of communication frequently for government communications, including regarding FEMA matters; indeed, DHS recently (on March 10, the day after this Court's most recent order, ECF 328), sent employees a "reminder" to preserve government records *that includes Signal discussions* (see Ex. A).

*Id.* After defendants responded, Dkt. No. 333, on March 20, 2026, the Court expressly ordered defendants to produce relevant electronic phone communications (including Signal chats) from a limited list of "high-level decisionmakers," including Evans and Guy, by March 26. Dkt. No. 336 at 1.

On March 26, 2026, defendants filed a notice regarding compliance. Dkt. No. 337. Defendants indicated they had "substantially complied" with the Court's March 20 Order after "having largely completed self-reporting and/or self-searches of custodians' DHS-and FEMA-issued work phones that have yielded little if any potentially responsive material ...." *Id.* at 1. The DHS custodians, including Guy and Voorhies, "all confirm[ed] that they did not discuss the renewal/nonrenewal of CORE employees or target reductions of FEMA and CORE employee staffing on their work phones via text, Signal, or WhatsApp." *Id.*; Dkt. No. 337-2 ("Kateland Jackson Decl.") ¶ 11. Nevertheless, defendants stated they had collected custodians' work phones for forensic imaging. Dkt. No. 337 at 2-3. However, defendants were unable to image or search Guy's work phone because he was no longer with DHS and was away on international travel. *Id.* at 3. They reported, "nor has Mr. Guy been able to self-search his phone." *Id.* Defendants were also unable "to image the DHS or FEMA phones issued to Kara Voorhies because those phones [we]re not within Defendants' possession, custody, or control, pursuant to a preservation notice issued by the Office of the Inspector General for the Department of Homeland Security prior to the March 20 Order." *Id.* Defendants informed the Court that Voorhies was neither employed by nor a contractor for DHS, since prior to the March 20, 2026 Order. *Id.*

### III. Karen Evans's Signal Chats & April 22, 2026 Discovery Order

On March 31, 2026, plaintiffs deposed Karen Evans. During the deposition, Evans testified that then-DHS Deputy Chief of Staff Joseph Guy told Evans "to include an option that would include a 50% cut" in FEMA's annual staffing plan. 3/31 Evans Dep. at 235:4-25; *see also id.* at 218:12-220:24; Dep. Ex. 17 (December 4, 2025 annual staffing plan incorporating a roughly 50% cut).[9] Evans further testified that she communicated with Voorhies (of DHS), regarding CORE staffing and reappointment; that Guy told Evans to keep Voorhies informed on these matters; and that the three of them participated in weekly meetings when Evans took over the "chief of staff" position at FEMA. *Id.* at 98:19-21, 129:22-133:10. Evans admitted to using Signal on her personal cell phone to communicate about FEMA matters with DHS and FEMA officials, including Guy, Voorhies, Corey Lewandowski,[10] and former DHS Secretary Noem. *Id.* at 149:18-150:18, 150:25-151:11. Evans also testified that she communicated with Voorhies and Guy over Signal on their personal phones. *See id.* at 141:5-24 (testimony that Evans did not know if Voorhies had DHS-or FEMA-issued work phones but that Evans communicated with Voorhies on Voorhies's personal phone), 150:25-151:11, 160:22-161:22 (testimony that Evans communicated with Guy via Signal app and only had a personal number for Guy in her phone). Evans identified three Signal group chats that involved FEMA business. *Id.* at 152:23-154:2. Evans further testified that she "took pictures of what [she] determined were appropriate records" and "sent those pictures into [her] email account so that they would be saved as part of DHS records." *Id.* at 156:1-157:10. She was unsure whether her Signal group chat messages remained on her personal phone because she was "not sure of the settings for the disappearing messages." *Id.* at 157:24-159:2.

***5** The day after plaintiffs deposed Evans, plaintiffs asked defendants to search the personal phones of Evans, Guy, Voorhies, and Lewandowski for responsive documents. Dkt. No. 341-1 ("Leonard Decl.") ¶ 13(a). Defendants replied that they would not search employees' personal phones. *Id.* ¶ 13(b). Plaintiffs then sought relief from the Court. Dkt. No. 341. On April 15, 2026, defendants represented to the Court that "Defendants have already confirmed to Plaintiffs in writing that the custodians whose personal phones remain of interest to Plaintiffs **did not communicate** on their personal phones regarding COREs [sic] renewals or target staffing

reductions."[11] Dkt. No. 344 at 15 (emphasis added by defendants).

Also on April 15, defendants produced three photographs of Signal chats from Evans's personal phone. Dkt. No. 350-1 ("Eshleman Decl.") ¶¶ 3-6, Exs. A-C; Bombard Decl., Ex. DD. One of the photographs shows a "FEMA 2.0" Signal group chat in which Voorhies asked Evans to provide FEMA staffing data. Eshleman Decl., Ex. A. When Evans asked how Voorhies wanted the data, Voorhies responded: "I would say ALL. We know we'll need it for the overall staffing plan as well." *Id.* The chat was set to disappear after four weeks. *See id.* (showing "4w" timer at top of chat). Another of the Signal screenshots shows an early morning message from Voorhies to Evans, DHS counsel James Percival,[12] and unknown others, in which Voorhies sent a link to a CNN article about FEMA halting terminations of CORE staffing during the January winter storm, with the question: "Why the hell was that sent out?" Eshleman Decl., Ex. B (sending hyperlink: cnn.com/2026/01/23/politics/fema-halts-terminations-winter-storm).

On April 22, 2026, in light of Evans's deposition testimony and the evidence of the Signal chat screenshots that plaintiffs filed, the Court issued a further order that defendants must search the personal cell phones of Evans, Guy, and Voorhies and produce all responsive communications by April 29. Dkt. No. 351 at 2-4. The Court noted that it was "seriously troubled that Evans's 'FEMA 2.0' Signal messages were set to delete after four weeks, that Evans alone appears to have made the decision regarding what were 'appropriate records' to preserve, and that what should have been preserved under the law may not have been." *Id.* at 4 (citing 3/31 Evans Dep. at 156:1-157:10). The Court ordered, by April 29, that "Evans, Guy and Voorhies attest to the preservation of FEMA-related communications on their personal phones in declarations filed under penalty of perjury." *Id.*

On April 25, 2026, Evans created a back-up of her Signal chats and saved them to her personal computer.[13] 5/26 Evans Dep. 34:9-35:2, 57:25-58:12.

On April 29, 2026, Evans filed her declaration with the Court. Dkt. No. 356-1. Evans reiterated that "as to FEMA-related Signal messages on my personal cell phone, because the Signal app auto-deletes messages after a period of time, I took appropriate screen shots of such messages before deletion." *Id.* ¶ 4. Her declaration did not mention the back-up of Signal chats to her personal computer that she had made four days earlier.

Also on April 29, FEMA counsel conducted the Court-ordered search of Evans's personal phone in her office at FEMA with her personal counsel present. 5/26 Evans Dep. at 69:4-70:9; *see also* Bombard Decl., Ex. GG (Errata Sheet). Later that day, defendants produced five additional Signal images from Evans's personal phone, including a chat between Guy and Evans discussing CORE renewals; screenshots from a "FEMA Rapid Response" chat discussing CORE renewals; a redacted screenshot of a "FEMA" group; and a screenshot of a "Winter Storm Team" group chat discussing CORE renewals. Dkt. No. 412-2 ("Hoshijima Decl.") ¶ 2 & Exs. A, B. The FEMA Rapid Response chat was set on a one-week deletion timer. *Id.*, Ex. A at USA-AFGE-Exp.-0425305, -0425308.

**IV. Joseph Guy's Signal Chats & Further Expedited Discovery Orders**

***6** On the Court-ordered deadline of April 29, 2026, at approximately 9:30 p.m. PT, defendants filed a "Notice of Substantial Compliance with Order of April 22, 2026," in which defendants stated that Guy's last day of federal employment would be the following day, April 30. *See* Dkt. No. 356 at 2. Defendants did not provide the Court-ordered declaration from Guy attesting to his preservation of FEMA-related communications on his personal phone.[14] Defendants stated they had found no responsive documents on Guy's work phone. Dkt. No. 356 at 3.

On April 30, 2026, in response to an urgent request from plaintiffs, Dkt. No. 358, the Court reiterated its order for defendants to search Guy's personal phone and to provide a declaration from Guy attesting to the preservation of responsive documents before his imminent departure from federal employment. Dkt. No. 358. Defendants then filed a declaration from Guy, indicating that he conducted a "self-search" of his personal phone using the terms "renewal, core, and staffing plan" but found no responsive documents. Guy Decl. ¶ 4. Guy further declared that "Signal messages on [his] personal device were not preserved" and that it was his

"understanding that Karen Evans was preserving any work-related Signal messages, including any from the FEMA 2.0 chat." *Id.* ¶ 5.

On May 1, 2026, the Court issued an order finding Guy's search was inadequate and that a self-search was not authorized. Dkt. No. 362. The Court ordered Guy to bring his personal phone to his upcoming deposition and ordered defense counsel to search his phone again, using different search terms. *Id.* at 1-2.

The May 1, 2026 Order also required defendants to produce all FEMA-related Signal chats from Evans's phone and all of Evans's planner notes reflecting any meetings with Guy, by the commencement of Guy's May 4 deposition. *Id.* at 2. On May 4, 2026, defendants produced another screenshot from the "FEMA 2.0" Signal chat. Hoshijima Decl. ¶ 2, Ex. C. Defendants were unable to comply with the Court's Order regarding Evans's personal phone and planner notes because she was traveling out of state. Dkt. No. 364.

On May 4, 2026, plaintiffs deposed Guy. Guy testified to the existence of more than twenty-five FEMA-related Signal group chats on his personal phone, many of which included Voorhies, Evans, and defendants' officials, employees, and counsel. Dkt. No. 414-1, Ex. D ("5/4 Guy Dep.") at 139:13-145:19; 155:20-157:12, 162:8-165:11; *see also* Dkt. No. 368 at 4-5. Guy testified that eighteen of those FEMA-related chats were set to auto-delete messages after one week. 5/4 Guy Dep. at 155:23-157:12. Guy further testified that on April 30, after submitting his declaration for the Court and on his last day of federal employment, he reinstalled the Signal application on his personal phone, resulting in the deletion of all Signal messages prior to April 30. *Id.* at 152:16-155:19, 169:1-8.

In response to spoliation concerns, the Court issued further discovery and preservation orders and granted plaintiffs another half-day to depose Guy. Dkt. Nos. 377, 380, 381, 386.

**V. Further Events**

On May 11, 2026, plaintiffs deposed Voorhies. Voorhies testified during her deposition that she, Evans, and Guy were part of a "FEMA RIF" Signal group and that she "was using Signal because [her] client was DHS and that's what they preferred to use to communicate." Voorhies Dep. at 32:18-20, 138:18-139:22, 206:3-11. That same day, in response to a Rule 45 subpoena, Voorhies produced FEMA-related communications from her personal phone that included twenty-seven FEMA-related chats, at least four of which were set to auto-delete. Hoshijima Decl. ¶ 5.

***7** On May 12, 2026, defendants produced screenshots from the back-up of Signal chats that Evans had made on her personal computer on April 25. Dkt. No. 396 at 1-3. Those screenshots included forty-seven Signal chats with DHS and FEMA officials, of which at least fifteen appear to have been set to auto-delete. Hoshijima Decl. ¶ 4. The "FEMA 2.0" Signal group chat contained no messages as of defendants' subsequent search on May 7. Dkt. No. 396 at 1-3; *see also* 2d Eshleman Decl., Ex. B.

On May 15, 2026, plaintiffs deposed Guy again. On May 26, 2026, plaintiffs deposed Evans again. *See* Dkt. No. 396 at 1. By this time Evans was no longer serving in the role of FEMA SOPDA, having been replaced earlier in May, though she could not recall precisely when. 5/26 Evans Dep. at 8:18-9:4. Evans admitted that she had a number of Signal chats on her personal phone, including her chat with Guy, that were set to auto-delete in one week and that some Signal chats were set to auto-delete after one day. *Id.* at 37:3-13, 39:2-40:24, 41:13-44:16.

On May 29, 2026, plaintiffs filed the present motion for Rule 37(e) remedies due to defendants' spoliation of evidence. Dkt. No. 412-1 ("Mot."). The motion is fully briefed. Dkt. No. 420 ("Opp'n"); Dkt. No. 421 ("Reply"). After continuing the hearing on the motion so that it could be heard at the same time as the parties' cross-motions for partial summary judgment on the DHS/FEMA supplemental claims, the Court heard oral argument on September 1, 2026.[15]

**LEGAL STANDARD**

As amended in 2015, Federal Rule of Civil Procedure 37(e) provides,

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Thus, to impose sanctions under Rule 37(e), the Court must find that defendants failed to take reasonable steps to preserve electronically stored information ("ESI") and ESI was lost; the ESI cannot be restored or replaced through additional discovery; and either plaintiffs were prejudiced by the loss of ESI (Rule 37(e)(1)) or defendants "acted with the *intent* to deprive another party of the information's use in the litigation." *See Gregory v. Montana*, 118 F.4th 1069, 1078-79 (9th Cir. 2024) (quoting Fed. R. Civ. P. 37(e)(2)). As amended in 2015, Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e) advisory committee's note to the 2015 amendment.

***8** With regard to Rule 37(e)(1) sanctions, "[t]he rule does not place a burden of proving or disproving prejudice on one party or the other." *Id.* "Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information." *Id.* "This is because the finding of intent required by [subdivision (e)(2)] can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." *Id.*

## DISCUSSION

Plaintiffs argue that relevant communications on high-level officials' personal phones were lost because defendants failed to take reasonable measures to preserve their Signal messages. Mot. at 17-20. Plaintiffs seek an order under Rule 37(e)(1) precluding defendants from offering any hindsight testimony that denies defendants' plan to substantially reduce FEMA staffing, denies DHS's direction over that plan, or denies implementation of the plan through "indiscriminate separation" of CORE employees. *Id.* at 20-22; Dkt. No. 412-3 at 1. Plaintiffs further request that the Court make an adverse inference finding under Rule 37(e)(2) "presum[ing] that the lost Signal messages would have been unfavorable to Defendants because they would have been further evidence of Defendants' plan, DHS's control, and Defendants' implementing actions." Dkt. No. 412-3 at 1. Finally, plaintiffs seek "the opportunity to prove the amount of fees incurred in uncovering and addressing Defendants' spoliation" under Rule 37(e)(1). Mot. at 22.

"The Ninth Circuit has not set forth a specific standard of proof, but district courts in this Circuit apply a preponderance of the evidence standard in making findings to determine whether to impose spoliation sanctions under Rule 37(e)." *Morehead v. City of Oxnard*, No. CV 2:21-cv-07689-SPG-ADSX, 2023 WL 8143973, at *4 (C.D. Cal. Oct. 4, 2023) (collecting cases). As plaintiffs note, the only case defendants cite in support of applying a clear and convincing evidence standard discusses the standard in ruling on a motion for civil contempt, not for Rule 37(e) remedies. *See* Opp'n at 12 (citing *Logistics Guys Inc. v. Cuevas*, No. 2:23-cv-01592-DAD-CSK, 2025 WL 1017659, at *3 (E.D. Cal. Apr. 4, 2025)). Applying the preponderance of the evidence standard, the Court now finds as follows.

### I. High-Level Officials Deleted Relevant Signal Messages That Cannot Be Restored or Replaced.

Before imposing sanctions under Rule 37(e), the Court must first find that "electronically stored information that should

have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery[.]" *See* Fed. R. Civ. P. 37(e). Here, defendants concede that "certain Signal messages were lost and should have been preserved[.]" Opp'n at 1, 13-14; *see also* 2d Eshleman Decl., Ex. A at ECF p. 4-5 ("our understanding [is] that messages in the FEMA 2.0 chat were set to disappear and did disappear ..."). Defendants further concede that the FEMA 2.0 chat cannot be restored and replaced through additional discovery and that it is unlikely that other lost Signal chats can be restored or replaced. Opp'n at 14.

However, defendants argue that plaintiffs have failed to establish the relevance of the lost information. *Id.* at 13-14. They argue that "what messages were lost and their relevance to the litigation is far from clear" and that "nobody can determine" the relevance of the lost FEMA 2.0 chat messages because those messages cannot be restored or replaced. *See id.* at 14. Even setting aside defendants' rather circular reasoning, the Court is not convinced.

***9** To take the FEMA 2.0 chat as an example, that chat involved three high-level decisionmakers at DHS and FEMA: Karen Evans ("SOPDA," i.e., acting head of FEMA), Joseph Guy (DHS Deputy Chief of Staff), and Kara Voorhies (Senior Advisor to the DHS Secretary on FEMA issues). The record shows that Evans created the FEMA 2.0 chat on November 15, 2025, a few weeks before FEMA's annual staffing plan was due to DHS and about six weeks before the CORE employees' terms began lapsing. *See* 2d Eshleman Decl., Ex. B. When she created the chat, Evans set messages to auto-delete in four weeks. 5/26 Evans Dep. at 17:14-17, 19:19-20:3 ("I set disappearing messages" in the FEMA 2.0 chat). Given the timing of when Evans created the chat (November 15, 2025) and when she stopped using it (March 11, 2026), the chat was likely active during the time period most relevant to this litigation, i.e., in the weeks leading up to the December 2025 deadline for FEMA's annual staffing report through the start of 2026. Of the two FEMA 2.0 chat screenshots defendants produced, one is a message from Voorhies to Evans stating, "Karen we need you to do a data call to find out how many contractors work at FEMA" and that the data would be needed "for the overall staffing plan as well[.]" Eshleman Decl., Ex. A. The second screenshot shows messages between Guy and Voorhies that "Corey also wants to make sure that any 'easy money' is pushed out" and discussing the Flood Mitigation Assistance and Disaster Relief Fund. Hoshijima Decl., Ex. C; Mot. at 6-7. In sum, the few FEMA 2.0 chat messages produced were highly relevant to the claims at issue here. Evans created the FEMA 2.0 at the start of the relevant time period to this case, invited two of the stakeholders (Guy and Voorhies) who appear most critical to the FEMA claims in this lawsuit, and then set the Signal chat to auto-delete after four weeks. Accordingly, the Court concludes plaintiffs have shown by a preponderance of the evidence that FEMA 2.0 Signal chat messages were deleted and that those messages would have been relevant to plaintiffs' claims.

Further, as described above, *all* of Guy's Signal chats were deleted. In other words, despite roughly twenty-six Signal chats on his personal phone with the word "FEMA" in the chat title, *no* messages from any Signal chats on Guy's phone were produced. Yet messages produced from other custodians' chats with Guy show highly relevant discussions of CORE staffing. *See* Hoshijima Decl., Ex. A ("Winter Storm Team" chat discussing response to the media about the halting of CORE renewals), Ex. B (February 4 message from Evans stating, "Here is my list: Restarting CORE renewals ..."); 5/4 Guy Dep. at 69:14-18 (acknowledging participation in "Winter Storm Team" chat). The relevance of the few messages that were produced involving Guy, coupled with the sheer volume of FEMA-titled Signal chats on Guy's phone, indicate that Guy's deleted Signal messages too would have been relevant to this litigation.[16]

Taking together the timing of the chat and the content of the few messages that were preserved and produced, the Court concludes that the deleted Signal messages were relevant.

### II. Defendants Failed to Take Reasonable Steps To Preserve the Signal Messages.

Despite their legal obligations and despite court orders specifically calling for the production of communications "regarding the renewals/nonrenewals of CORE employees as well as 'target reductions' of FEMA and CORE employee staffing," Dkt. No. 321 at 2, defendants "failed to take

reasonable steps to preserve" the Signal messages. *See* Fed. R. Civ. P. 37(e).

### A. Document Preservation

Defendants' obligation to preserve the messages stemmed from several separate sources. First, the Federal Records Act of 1950 requires the head of each Federal agency to "make and preserve records containing adequate and proper documentation of the organization, function, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities."[17] 44 U.S.C. § 3101; 36 C.F.R. §§ 1222.22-1222.34 (regulations regarding agency recordkeeping requirements).

Next, DHS maintains its own policies regarding records preservation. According to a declaration submitted by Michael Weissman, DHS Acting Deputy Chief Information Officer of the Office of the Chief Information Officer ("OCIO"), DHS has "three interrelated policies" that provide for the retention of all electronic federal records on government-issued devices and personal devices, as required by the Federal Records Act: DHS Directive 141-01, "Records and Information Management" (Aug. 11, 2014, certified current Sept. 26, 2019); DHS Instruction 141-01-001.1, "Records and Information Management" (June 8, 2017, incorporating Change 1, Sept. 9, 2019); and DHS Policy Directive Memorandum 141-03, "Electronic Records Management Updates for Chat, Text and Instant Messaging" (Feb. 23, 2018). Weissman Decl. ¶¶ 1, 3-4, Exs. A, B, C. DHS Policy Directive 141-03 specifically states that communications via "chat, text, or instant messaging" must be preserved, whether they are "exchanged on agency networks and devices, on personal devices, or [ ] hosted by third-party providers." *Id.*, Ex. C at ECF p. 29-30. Additionally, DHS EM Form 210, "Electronic Messaging Retention and Attestation" (Mar. 2023), instructs employees: "You are expected to exclusively use government equipment in the performance of your duties. If, however, you create government electronic messaging records on a personal device, you must also use the same steps in this document to capture and save the records." *Id.*, Ex. F at 1. DHS policy "requires employees to use work devices for all work-related activities," and any work communications appearing on personal devices must be transferred to an official account "within 20 days[.]" *Id.*, Ex. J at ECF p. 59. The DHS Chief Information Officer reminds employees that "[e]mployees are responsible for ensuring that any auto-delete features for messaging are turned off on DHS work devices." *Id.* at ECF p. 60.

***10** Finally, defendants in this case have preservation obligations stemming from the litigation itself. "The common law imposes the obligation to preserve evidence from the moment that litigation is reasonably anticipated." *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012). "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (citations omitted). "The duty to preserve evidence also 'includes an obligation to identify, locate, and maintain[ ] information that is relevant to specific, predictable, and identifiable litigation.' " *Apple*, 881 F. Supp. 2d at 1137 (citation omitted).

### B. Evans's and Guy's Deletion of Messages

Federal Rule of Civil Procedure 37(e) applies when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it ...." Here, high-level officials at DHS and FEMA—most notably FEMA SOPDA Karen Evans and DHS Deputy Chief of Staff Joseph Guy—not only failed to take reasonable steps to preserve their work-related Signal chats but actively took steps to delete those chats in violation of DHS policy, the Federal Records Act, and their obligations due to the litigation in this case.

#### 1. Karen Evans

The undisputed facts indicate both that Evans affirmatively deleted Signal messages after self-selecting which ones to preserve and that Evans set her Signal chats to auto-delete within a prescribed timeframe, for instance, four weeks. Signal messages do not auto-delete by default. Hoshijima

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Decl. ¶ 7. Defendants appear to concede this. *See* 5/26 Evans Dep. at 72:12-15. Instead, use of the auto-delete feature is a setting that a Signal user can choose. Hoshijima Decl. ¶ 7 (explaining that Signal "offers participants in a chat the option to affirmatively engage auto-deletion settings" for time periods "from 30 seconds to four weeks, or custom"). Evans testified that she understood that the Signal disappearing timer settings in a group chat "can be determined by the users" and that she knew she "had the ability to remove the auto-delete settings" on her chats. 3/31 Evans Dep. at 157:24-158:4; 5/26 Evans Dep. at 72:16-19, 19:19-20:3.

Evans testified that, following what she understood to be DHS policy, she took screenshots of what she deemed were relevant Signal chats on her personal phone, emailed them to her work account, and then deleted the original messages from her personal phone. 3/31 Evans Dep. at 156:1-157:10; 5/26 Evans Dep. at 12:25-13:21; 15:6-20; 16:6-17:1. The record indicates she did this beginning on March 11, 2026. *See* Bombard Decl. ¶ 3 & Ex. AA. This is problematic for several reasons. First, as explained in Section III, *infra*, the Court has concerns with Evans alone determining what is relevant to this litigation and with her self-selection of relevant material without the involvement of counsel. As plaintiffs note, some of the "screenshots" that were produced appear to have been part of longer conversations, but the other messages in the conversation, as well as the precise timestamp for the screenshot, were not preserved.[18] Second, if Evans emailed herself relevant screenshots on March 11, 2026, and some of the relevant messages were set to a four-week automatic deletion timer (as in the case of the FEMA 2.0 chat, which Evans created in November 2025), then messages from the time period most relevant to the issues in this litigation would have already been deleted by the time Evans began using this screenshot preservation method.

***11** Evans should not have been deleting *any* messages related to FEMA staffing because there was a litigation hold in this case. DHS has been a defendant in this lawsuit challenging mass layoffs at federal agencies since the case's inception in April 2025. *See* Dkt. No. 1. Since September 2025, DHS has also been a defendant in the related action challenging the Executive's authority to order mass layoffs during a government shutdown. *See Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*, No. 25-cv-8302 SI (N.D. Cal., filed Sept. 30, 2025). Based on both of these ongoing actions, it was wrong for high-level officials to delete messages related to large-scale layoff plans.

Even taking a very narrow view of defendants' litigation hold obligations, at a minimum Evans was on notice as of January 27, 2026, that documents related to FEMA staffing and CORE nonrenewals were relevant to this litigation. *See* Dkt. No. 290. On January 30, 2026, FEMA and Evans became formally-named defendants in this case. *See* Dkt. No. 298. And Evans testified that she was aware of "plaintiffs' request for an injunction to halt the plan to dismantle FEMA" because she provided a declaration on February 19, 2026, prior to the hearing. *See* 5/26 Evans Dep. at 47:6:13; Dkt. No. 312-1. And yet Evans waited until March 11, 2026, to begin making any sort of back-up of the FEMA-related Signal messages from her personal phone. Had Evans preserved the messages in late January, when she was added as a defendant to this case, then roughly an additional six weeks' worth of messages would have been preserved. And assuming those messages were set on a four-week auto-deletion timer, some of those messages would have covered the early January period, when FEMA began non-renewing the CORE employees. Instead, Evans allowed those messages to be deleted using an auto-delete timer that she set. And she kept those auto-delete settings in effect well after plaintiffs filed their motion for emergency relief as to FEMA and the COREs. For instance, even the two "FEMA 2.0" chat messages that Evans produced in April 2026 had been deleted from her phone as of the time of a subsequent search on May 7, 2026. *See* 2d Eshleman Decl., Ex. B; Dkt. No. 397 at 1-3. As defendants concede, those messages cannot be recovered.

**2. Joseph Guy**

Guy was a high-level official at DHS and then at the State Department (also a defendant in this litigation) when he deleted the relevant Signal messages. It is no excuse that he was not a named defendant in this case. *See National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987) ("The obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

of discoverable materials."); *see also* *Gregory*, 118 F.4th at 1080 (reversing district court's decision to impose sanctions under Rule 37(e)(2) where district court made no finding of intent "either on the part of the State *or any of its agents*") (emphasis added).

Moreover, since March 20, 2026, Guy was under Court Order for the production of relevant communications from his phone specifically. *See, e.g.*, Dkt. No. 321 at 2 (Mar. 3, 2026 Order for production of "communications from DHS and FEMA ... regarding the renewals/nonrenewals of CORE employees"); Dkt. No. 328 at 2 (Mar. 9, 2026 Order for certain individuals' communications, including Guy's, setting March 17 deadline); Dkt. No. 336 (Mar. 20, 2026 Order for Signal chats on cell phones of high-level decisionmakers, including Guy, by March 26); Dkt No. 351 at 2-5 (Apr. 22, 2026 Order for searches of Guy's personal and work phones and for Guy to provide declaration); *see also* Dkt. No. 327-1 ¶ 5(b) (identifying Joseph Guy).

***12** Screenshots produced from other custodians' phones show that Guy was involved in Signal chats related to FEMA staffing. *See* Eshleman Decl., Ex. A (FEMA 2.0 Signal chat regarding FEMA contractor data needed for overall staffing plan); 2d Eshleman Decl., Exs. B, C (showing Guy as one of three members of FEMA 2.0 chat); Hoshijima Decl., Ex. B (Feb. 4 Signal chat between Evans and Guy in which Evans lists "Restarting CORE renewals" as first item on "my list"; Guy responds, "Copy").

Despite numerous Court orders, none of Guy's Signal messages were produced. The April 29, 2026 deadline passed without any production from Guy's phone and without Guy's declaration. *See* Dkt. No. 356 at 1 ("Defendants were unable to obtain from Mr. Guy an attestation that he preserved FEMA-related communications on his personal phone"). Instead, on April 30, 2026, i.e., one day *after* the production deadline and on what turned out to be Guy's last day of federal employment, Guy reinstalled the Signal app on his personal phone, resulting in the deletion of all the content of his chat messages. 5/4 Guy Dep. at 90:8-91:19; 152:6-154:4 (correcting earlier testimony to clarify that he reinstalled Signal app on April 30 rather than May 1). Guy testified that he reinstalled the app in an attempt to restore his messages but that he did so without consulting counsel and that, because he "didn't have the 60-number key ... to restore the Signal messages[,] it just wiped everything out again." *Id.* at 90:8-91:19; 155:8-19. He testified that the reinstallation of the messages on April 30 had no practical effect because the messages had already been deleted by that point. *Id.* at 105:2-106:14.

Guy's post hoc explanation that he thought someone else was preserving his messages makes little sense and does not salvage his actions. At his deposition, he testified that he thought someone else was archiving the messages for him, explaining: "I did not do my own travel. I did not file most of my HR paperwork, for the most part. I did not do most of my own scheduling. There was a lot going on. I was under the impression that someone else would be taking care of that, just like most of the other administrative work was taken care of." *Id.* at 53:25-54:10; *see also id.* at 91:1-19. In his declaration, he attested, "It was my understanding that Karen Evans was preserving any work-related Signal messages, including any from the FEMA 2.0 Chat." Guy Decl. ¶ 5. However, Guy admitted that the Signal messages were on his personal phone, that he did not give his personal phone to anyone for archiving, and that any understanding that Evans would be archiving messages was "just kind of an implicit understanding." 5/4 Guy Dep. at 76:25-77:3, 120:22-122:6, 132:1-25. Further, Evans could not have been the one archiving his messages, where Guy described many FEMA-related Signal chats that Evans was not on, including the "FEMA 2" chat with Corey Lewandowski and David Richardson (former FEMA SOPDA), the "FEMA Sanity Club" chat with Victoria Barton and Kara Voorhies, and the "FEMA $$$" chat with Troup Hemenway and Kara Voorhies. *See id.* at 162:8-165:11.

Defendants protest that the Court's earlier discovery orders were silent as to whether production was ordered as to work phones or personal phones. If there was any doubt, defendants could have sought clarification from the Court. Instead, the record indicates that during March 24 and 26 conferences with opposing counsel, defense counsel took the position that they would not search for responsive communications on officials' personal phones, without any apparent basis for knowing whether the officials had used personal phones for government business. *See* Leonard Decl. ¶ 10 ("Defendants' counsel was unaware whether agency counsel had even asked any of its custodians whether they used their personal phones to conduct government business

WESTLAW © 2026 Thomson Reuters. No claim to original U.S. Government Works.