**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

Sarah Andersen, et al.,

*Individual and Representative Plaintiffs*,

v.

Stability AI Ltd., et al.,

*Defendants.*

Case No. 23-CV-00201-WHO (LJC)

**PLAINTIFFS' MOTION TO MODIFY CASE SCHEDULE PURSUANT TO LOCAL RULE 6-3**

Judge: Hon. William H. Orrick

## I. INTRODUCTION

Plaintiffs' claims in this lawsuit center on identifying Plaintiffs' and class members' art works in the datasets Defendants downloaded to develop their respective image models. Establishing those facts is an enormous undertaking that requires inherently time-intensive forensic expert analysis. Plaintiffs' forensic data experts (MK Analytics ("MKA")) have diligently worked through approximately 15 billion image records in a manner consistent with meeting the current opening report deadline of October 9. *See* Declaration of Merry McCarron ("MKA Decl.") at ¶ 24. Two material issues have recently arisen that have interrupted and frustrated Plaintiffs' and their experts' analysis:

*First*, on August 26, 2026, the Court ordered Midjourney to produce art and artist-specific datasets. ECF No. 719. But Midjourney did not produce them until weeks later, on September 11. *See* Declaration of Louis Kessler ("Kessler Decl.") at ¶ 3. These datasets were created to give Midjourney models more "artist knowledge," and Plaintiffs diligently sought their production since learning of their existence. *See id*. MKA was not given access to the data until September 14. *See* MKA Decl. at ¶ 6. These datasets contain approximately 25 million image-text pair records and will take an additional three weeks alone to analyze, assuming no errors in the process or data production. *Id*. at ¶¶ 7-9.

*Second*, Stability AI datasets saved in one specific cloud location were discovered to be maintained in a unique manner that is difficult to analyze. MKA only discovered this complication recently due to persistent access issues. *See id*. at ¶ 14. MKA's work requires analysis of certain metadata associated with images, most importantly, what is referred to as the "base caption." *Id*. at ¶ 17. The base caption is the information associated with the image when it was scraped, and is likely to contain work title and artist, if applicable. *Id*. at ¶¶ 17-18. The base caption data stored in this location is buried in billions of text files and the computation required to extract the essential data alone takes eight weeks. *Id*. at ¶¶ 19-20.

Pursuant to Federal Rule of Civil Procedure 16, Local Rule 6-3, and this Court's inherent authority, and for the reasons set forth below and in the attached declarations, Plaintiffs request a 60-day extension of the opening report deadline, and corresponding extensions of the remaining deadlines.[1]

[1] This Motion is Plaintiffs third Motion to Modify Case Schedule in the above-entitled action. There have

## II. ARGUMENT

### A. Good Cause Exists to Modify the Case Schedule.

Once a scheduling order has been filed pursuant to Federal Rule of Civil Procedure 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir.2002) ("The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.").

Courts have modified case schedules to extend expert-report deadlines where the expert's inability to meet the existing deadline resulted from circumstances beyond the plaintiff's control. *See Novalk, LLC v. Evanston Insurance Company*, No. 22CV1789-JO(LR), 2023 WL 8458250, at *3 (S.D. Cal., Dec. 6, 2023) (finding good cause and granting motion to modify case schedule for expert reports). Good cause is likewise established where denying the requested extension would substantially prejudice a party by preventing it from adequately developing its expert opinions. *Id.* at *4. Multiple independent grounds support modification here.

#### 1. The Case Schedule Cannot Reasonably Be Met Despite Plaintiffs' Diligence.

##### a. Midjourney's September Production of Art / Artist Datasets

Midjourney did not produce these datasets, containing 25 million records of image-text pairs, until September 11, sixteen days after the Court ordered their production, and did not provide working access to Plaintiffs' experts until September 14. MKA Decl. at ¶¶ 6-7. Moreover, Plaintiffs diligently pursued production of these datasets upon learning they existed after finding a reference to them in a document produced by Midjourney. *See* Kessler Decl. at ¶ 4.

Plaintiffs served a request for production for the Art / Artist Datasets on April 2, 2026, and started

---

been minimal time modifications in the case by stipulation or Court order. *See* ECF Nos. 28, 29, 39, 40, 137, 138, 152, 153, 270, 273, 295, 296, 310-13, 315, 317, 399, 401, 409-11, 416, 417, 432, 439, 442, 443, 499.

the meet and confer process less than a week after Midjourney served its response refusing their production. *Id*. By that time, Plaintiffs and Midjourney had already filed a Joint Letter Brief ("JLB") on a related issue—Midjourney's refusal to produce the source code for their Style Reference Model (ECF No. 531, filed May 1). *Id*. at ¶ 5. The parties agreed to postpone briefing the Art / Artist Dataset issue until the Court ruled on the source code JLB (as an order compelling production of the code would impel production of the datasets). *Id*. The Court ruled on the source code briefing on June 30 (ECF No. 619), denying Plaintiffs' request. *Id*. at ¶ 6. The parties filed a JLB on the dataset issue on July 7 (ECF No. 636), and the Court denied Plaintiffs' request July 8 (ECF No. 638). *Id*. at ¶ 7. Plaintiffs filed their Motions for Relief from Nondispositive Pretrial Order(s) of Magistrate Judge with respect to these decisions on July 14 and July 22, respectively (ECF Nos. 655 and 672). *Id*. at ¶ 8.

Plaintiffs did not cause delay with respect to Midjourney's production of the Art / Artist Datasets. Midjourney's initial refusal to produce this data, and the timing of the relevant Court orders, were outside of Plaintiffs' control.

**b. Stability AI's Dataset Structure**

The manner in which Stability AI produced a group of its datasets necessitates an atypically long process to extract data required for MKA's analysis and, despite diligent efforts, the issue was not discovered until August. Stability AI's datasets were produced via two main Amazon Web Services buckets: AWS West and AWS East. MKA Decl. at ¶ 13. MKA began its analysis of these datasets upon initial receipt of credentials on or around June 9, 2026, starting with AWS West; the work was interrupted when the credentials were revoked in early July. *Id*. at ¶ 14. Stability AI provided new credentials on July 17, which did not work to restore access. *Id*. Ultimately, MKA did not receive valid credentials until August 5. *Id*.

The data in AWS West is voluminous, comprising nearly a terabyte of data in over 130,000 files, requiring extensive time, even without the significant access interruption. *Id*. at ¶ 15. The data processing took approximately two weeks. *Id*. Upon completion, MKA began its analysis of the datasets in AWS East. *Id*. In AWS West, the essential base caption data was stored in standalone parquet files. *Id*. at ¶ 16. This was not the case for datasets in AWS East (with one exception). *Id*. at ¶¶ 15-16. Instead, there is a

single, compressed txt file per image that contains all the metadata, and the base caption information is tied up in that file. *Id*. at ¶ 19. The datasets in AWS East contain approximately 3 million compressed files in total, and each compressed file appears to contain approximately 1,600 individual txt files. *Id*. at ¶ 20. To get to the base captions, MKA must pull down the compressed file, pull out the txt files, then isolate the metadata; this data transfer process alone will take eight weeks to complete. *Id*. at ¶ 19.

MKA did not encounter this issue in its analysis of the AWS West datasets, nor in the first AWS East dataset provided in June, and had no reason to suspect the structure of the remaining AWS East datasets would be materially different. *Id*. at ¶ 21. Upon learning of this issue, Plaintiffs' counsel reached out to Stability AI, informing them of the situation, and inquiring as to whether the base caption information for these datasets was available in a more easily accessible format. *See* Kessler Decl. at ¶ 9. Stability AI responded by stating they "have provided the datasets for inspection as Stability AI maintains those datasets in the ordinary course of business." *Id*.

The structure of Stability AI's dataset storage and the computing steps required to make that data usable are outside of Plaintiffs' control. The fact that Plaintiffs did not learn of this issue until August is not a failure of diligence; MKA diligently performed its analysis of Stability AI's datasets, particularly considering the volume of data produced not just by Stability AI, but also the other three Defendants. "[R]easonable diligence does not demand perfection." *M.H.C. v. Cnty. of Los Angeles*, 2019 WL 13242561, at *4 (C.D. Cal. Nov. 5, 2019); *see also C.F. v. Capistrano Unified Sch. Dist*., 656 F. Supp. 2d 1190, 1195 (C.D. Cal. 2009) (finding that a party acted diligently despite not taking "the most prudent course of action" because the party's action could not "be characterized as negligent or careless.").

**2. Plaintiffs Will Be Substantially Prejudiced Without an Extension.**

Without an extension, MKA will be forced to complete its report without having had a reasonable opportunity to analyze critical information at the heart of Plaintiffs' copyright and Lanham Act claims. The Art / Artist Datasets Midjourney created to finetune its models to recognize art by certain artists is also imperative to the determination of fair use. Inclusion of the Midjourney and Stability AI datasets in MKA's analysis is important to establish the reliability of MKA's methodology. Finally, analysis of these datasets is necessary in identifying members of numerous proposed classes in the operative Complaint. In

short, without adequate additional time to analyze these datasets, Plaintiffs will be thwarted in proving their claims and the factfinder will have an incomplete picture of the relevant facts.

### B. Defendants Will Not Be Prejudiced by a Modification of the Case Schedule

Although in this Circuit, prejudice to the nonmoving party is not the primary consideration (*see Johnson*, 975 F.2d at 609), this factor too weighs in favor of Plaintiffs. Plaintiffs do not seek to reopen discovery or introduce new claims or theories. Stability AI will not be surprised by MKA's analysis of the AWS East datasets, and Midjourney cannot claim prejudice when its own conduct has caused the delay. While the datasets at issue in this Motion were not produced by DeviantArt or Runway, those parties will not sustain undue burden or expense as a result of the requested extension.

### C. The Requested Extension is Narrowly Tailored.

Sixty (60) days is the minimum time necessary for MKA to complete its analysis of the Midjourney and Stability AI datasets discussed above. Although not all of Plaintiffs' experts are analyzing these datasets, the requested extension and corresponding adjustments reflected in the proposed order apply to all experts and parties. This is necessary for two reasons. First, MKA's analysis informs the analysis of several of Plaintiffs' experts. Second, a staggered expert deadline, or one divided by Defendants, would only serve to unnecessarily complicate issues.

## III. CONCLUSION

Plaintiffs respectfully request the Court amend the pretrial schedule as set forth in the accompanying proposed order.

Dated: September 21, 2026

By: */s/ Joseph R. Saveri*
Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Louis Andrew Kessler (SBN 243703
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Elissa A. Buchanan (SBN 249996)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: lkessler@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*