**SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
550 California Street, Suite 910
San Francisco, CA 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

Sarah Andersen, et al.,

*Individual and Representative Plaintiffs,*

v.

Stability AI Ltd., et al.,

*Defendants.*

Case No. 23-CV-00201-WHO (LJC)

**PLAINTIFFS' UNOPPOSED MOTION TO MODIFY CASE SCHEDULE TO EXTEND EXPERT DEADLINES AND CONTESTED MOTION TO EXTEND SUMMARY JUDGMENT AND CLASS CERTIFICATION DEADLINES PURSUANT TO LOCAL RULE 6-3**

Judge: Hon. William H. Orrick

**FILED UNDER SEAL**

## I. INTRODUCTION

Plaintiffs' claims in this lawsuit center on identifying Plaintiffs' and class members' artworks in the datasets Defendants downloaded to develop their respective image models. Establishing those facts is an enormous technological undertaking that requires inherently time-intensive expert forensic analysis. Plaintiffs' forensic data experts (MK Analytics ("MKA")) have continued to diligently work through over 15 billion image records. *See* Declaration of Merry McCarron ("MKA Decl."), ¶ 5.

A persistent issue in this litigation has been the identification and production of Defendants' training data. Though Defendants all identified the raw training datasets they downloaded from the internet from the start, those turned out not to be the final forms of the datasets that were ultimately used for model training. Many "end-use" training datasets tended to be far smaller, having been filtered and culled based on various criteria, including, among other things, the probability the image contains a watermark, the size/resolution of the image, and the chances that the image contains NSFW or other unwanted or illegal sexual content, among others. Such datasets were often augmented with more descriptive captions and included preprocessed embeddings and nearest neighbor information, and other additional metadata paired with the images. Whether Plaintiffs' and class members' copyrighted works made the cut for inclusion in the curated images on which Defendants ultimately trained their models is highly relevant to Plaintiffs' claims.

After Plaintiffs identified lists of derivative sub-datasets comprising v4-v7 of Defendant Midjourney's main diffusion model, and the storage locations of such datasets, Midjourney produced what it claimed were the end-use training data for each version of its at-issue models (v4-v7) in July, before the close of discovery. However, on October 29, after Plaintiffs already once moved to extend the deadlines for submitting expert reports and after months of analysis by Plaintiffs' experts, Midjourney produced new versions of that training data along with corrected information about how it maps to each version of its models. Midjourney represented that this data was provided as soon as the errors were identified. However, this new data and data mapping was provided to Plaintiffs only a little over a month before the amended deadline for opening expert reports, December 8. *See* Kessler Decl., Ex. A.

After MKA analyzed the changes in the size and mapping of reproduced data, it concluded it

would need at least three additional weeks to rerun on the corrected data all the forensic software analysis it had already performed to replace the results it had already obtained based on the previous, incorrect data. MKA Decl., ¶ 7. The current opening report deadline is December 8; the additionally required weeks directly conflict with end-of-year holidays.

Plaintiffs and Midjourney met on November 10 to discuss providing Plaintiffs with additional adequate time to analyze the new data Midjourney provided, and all Parties further met and conferred on November 16 and have exchanged correspondence on the proposed modified schedule. Defendants have informed Plaintiffs that they do not oppose Plaintiffs' motion to extend the expert report deadlines (from December to January). However, the Parties do not agree on all of the proposed deadlines.
The primary difference between the Parties' proposals is the *Last Day to Move for Class Certification and Summary Judgment*, discussed in Section II.D.

Pursuant to Federal Rule of Civil Procedure 16, Local Rule 6-3, and this Court's inherent authority, and for the reasons set forth below and in the attached declarations, Plaintiffs request a 38-day extension of the opening report deadline, and corresponding extensions of the remaining deadlines.[1]

## II. ARGUMENT

### A. Good Cause Exists to Modify the Case Schedule.

Once a scheduling order has been filed pursuant to Federal Rule of Civil Procedure 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) ("The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements.").

[1] This Motion is Plaintiffs fourth Motion to Modify Case Schedule in the above-entitled action, all for good cause. There have been minimal time modifications in the case by stipulation or Court order. *See* ECF Nos. 28, 29, 39, 40, 137, 138, 152, 153, 270, 273, 295, 296, 310-13, 315, 317, 399, 401, 409-11, 416, 417, 432, 439, 442, 443, 499, 764.

Courts have modified case schedules to extend expert-report deadlines where the expert's inability to meet the existing deadline resulted from circumstances beyond the plaintiff's control. *See Novalk, LLC v. Evanston Ins. Co.*, No. 22CV1789-JO(LR), 2023 WL 8458250, at *3 (S.D. Cal., Dec. 6, 2023) (finding good cause and granting motion to modify case schedule for expert reports). Good cause is likewise established where denying the requested extension would substantially prejudice a party by preventing it from adequately developing its expert opinions. *Id.* at *4. Good cause exists here to modify the case schedule.

**1. The Case Schedule Cannot Reasonably Be Met Despite Plaintiffs' Diligence.**

**a. Midjourney's October 29 Reproduction of the v4-v7 Training Data**

Midjourney corrected its dataset production on October 29 after MKA had already performed significant analysis on the previous dataset production. MKA Decl., ¶ 7. After MKA preliminarily analyzed the new data, it informed Plaintiffs' counsel it would take at least three weeks to re-analyze this corrected data for purposes of its opening expert report. *Id.* The new version 5 data is now split into two datasets and has nearly doubled in both file count and file size. The new version 6 file sizes have nearly tripled for all the sub-datasets. File counts and record counts are also higher, although due to the size of the data, a record count for each dataset has not yet been calculated. The new version 7 was previously one single folder with just [redacted]. It is now six sub-folders totaling [redacted]. MKA Decl., ¶ 6.

Plaintiffs requested to meet with Midjourney on November 6 to discuss the reasons for this abrupt reproduction of data and to discuss the appropriate extension to deadlines to accommodate for it. Midjourney explained an error was made in data mapping when gathering the data. No Defendant opposes this Motion, and Plaintiffs did not contribute to the delay with respect to Midjourney's reproduction of this training data.

**b. Recent Court Order & Outstanding Discovery Motions**

An extension allows time to address outstanding discovery issues. On November 16, 2026 Judge Cisneros ordered Plaintiffs to amend several interrogatories and produce additional financial documentation—matters that will take Plaintiffs significant time to address. Defendants have represented

they will also need time to review Plaintiffs' responses and documents to incorporate relevant materials into their reports. As well, and in addition to Midjourney's late reproduction, there are three discovery disputes pending between Plaintiffs and Midjourney, relevant to expert analysis, pertaining to: claims of privilege over documents identified at the deposition of plaintiff Sarah Andersen (ECF No. 706), Midjourney's clawback of a document at the deposition of its CEO (ECF Nos. 733, 734, 738, 739, 741), and production of the "inference" source code for Midjourney's style model (ECF No. 780).

**2. Plaintiffs Will Be Substantially Prejudiced Without an Extension.**

Without an extension, MKA will be forced to complete its expert report without having had a reasonable opportunity to analyze critical information at the heart of Plaintiffs' claims. While the downloading of the raw datasets established prima facie copyright infringement, each use to which those images were put must be analyzed independently to assess "fair use." "The fair use provision, and the first factor in particular, requires an analysis of the specific 'use' of a copyrighted work that is alleged to be an 'infringement . . . [as t]he same copying may be fair when used for one purpose but not another." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023). Whether Plaintiffs' and class members' works were included in the final training data for each version of Midjourney's models will establish one of the uses to which the unauthorized copies were put, beyond long term storage and use for experimentation, and will provide information on the aesthetic score of each copyrighted work and whether it was aesthetically valuable enough for Midjourney to include in its models' final training datasets.

Finally, analysis of these datasets is necessary in ascertaining members of the class or subclasses. In short, without adequate additional time to analyze these datasets, Plaintiffs will be thwarted in proving their claims and the factfinder will have an incomplete picture of the relevant facts.

**B. Defendants Will Not Be Prejudiced by a Modification of the Case Schedule.**

Although in this Circuit, prejudice to the nonmoving party is not the primary consideration (*see Johnson*, 975 F.2d at 609), this factor too weighs in favor of Plaintiffs. Plaintiffs do not seek to reopen discovery or introduce new claims or theories. Midjourney does not claim prejudice. While the datasets at

issue in this Motion were not produced by defendants Stability AI, DeviantArt or Runway, those parties will not sustain undue burden or expense as a result of the requested extension.

**C. The Requested Extension is Narrowly Tailored.**

Thirty-eight (38) days is the minimum time necessary for MKA to complete its analysis of the Midjourney datasets discussed above, factoring in the holiday season and pre-planned absences. Although not all of Plaintiffs' experts are analyzing these datasets, the requested extension and corresponding adjustments reflected in the proposed order apply to all experts and parties. This is necessary for two reasons. First, MKA's analysis informs the analysis of several of Plaintiffs' experts. Second, a staggered expert deadline, or one divided by Defendants, would only serve to unnecessarily complicate the litigation and follow-on deadlines.

**D. Plaintiffs' Proposed Order Maintains the Court's Deadline Cadence.**

A chart comparing the Parties' proposed deadlines to the current deadlines is attached hereto as Exhibit 1. Defendants' proposal maintains the current deadline to file *Class Certification and Summary Judgment Motions*—June 17, 2027. Defendants' proposal shrinks the window between *Close of Expert Discovery* and the deadline to file two substantial motions from 66 days to 28 days. Plaintiffs' proposed deadline (July 29) provides a window of 63 days. Shrinking this window unfairly penalizes Plaintiffs for a delay they had no part in causing.

## III. CONCLUSION

Plaintiffs respectfully request the Court amend the pretrial schedule as set forth in the accompanying proposed order.

Dated: November 20, 2026

By: /s/ Joseph R. Saveri
Joseph R. Saveri

Joseph R. Saveri (SBN 130064)
Christopher K.L. Young (SBN 318371)
Alexandra Fernandez (SBN 330518)
Louis Andrew Kessler (SBN 243703
Holden Benon (SBN 325847)
Aaron Cera (SBN 351163)
Elissa A. Buchanan (SBN 249996)
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: cyoung@saverilawfirm.com
Email: afernandez@saverilawfirm.com
Email: lkessler@saverilawfirm.com
Email: hbenon@saverilawfirm.com
Email: acera@saverilawfirm.com
Email: eabuchanan@saverilawfirm.com

Matthew Butterick (SBN 250953)
1920 Hillhurst Avenue, 406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
Email: mb@buttericklaw.com

*Counsel for Individual and Representative Plaintiffs and the Proposed Class*