United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH ANDERSEN, et al.,<br>Plaintiffs,<br>v.<br>STABILITY AI LTD., et al.,<br>Defendants. | Case No. 23-cv-00201-WHO (LJC)<br><br>**ORDER RESOLVING DISCOVERY DISPUTES AT DKT. NOS. 706, 733**<br><br>Re: Dkt. No. 706, 733 |

Plaintiffs and Defendant Midjourney (Midjourney) have filed two joint discovery letter briefs, one presenting disputes that arose during Plaintiff Sarah Andersen's deposition, and another presenting disputes that arose during the deposition for Midjourney's Founder and CEO, David Holz. ECF Nos. 706, and 733. The Court addresses each in turn.

## I. BACKGROUND

Plaintiffs are artists who own copyrights in works allegedly used to train Defendant Midjourney's image-text generative AI models that underpin Defendants' generative AI image products. Dkt. No. 252 at 1–2. On January 13, 2023, Plaintiffs filed a class action complaint alleging claims of copyright infringement, right of publicity and DMCA violations against Midjourney. Dkt. No. 1. The Third Amended Complaint (TAC) brings causes of action against Midjourney for direct copyright infringement and Lanham act violations. Dkt. No. 431.

Midjourney is an independent research lab that developed a series of generative AI models capable of producing images in response to natural language text prompts. Dkt No. 235 at 4. Midjourney's image generation platform is accessible through the Discord communications platform and on the internet. *Id.*

**II. DISCOVERY DISPUTE AT ECF NO. 706**

Midjourney seeks an order compelling production of notes that Plaintiff Andersen reviewed before her August 4, 2026 deposition, Anderson's testimony about a call that she had with her editor, Ms. Tobaben, and her attorney, Aaron Cera, and authorizing additional time to depose Andersen about both subjects. The parties agree that Mr. Cera prepared the notes, that Ms. Andersen reviewed them to prepare to testify, and that they refreshed her memory. They dispute whether the notes informed her substantive testimony. They also dispute whether Ms. Tobaben participated in the call as Ms. Andersen's agent for purposes of the attorney-client privilege.

**A. Legal Standards**

Under Rule 612 of the Federal Rules of Evidence, "when a witness uses a writing to refresh memory . . . before testifying," then, "if the court decides that justice requires [it] . . . an adverse party is entitled to have the writing produced . . . to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." Fed. R. Evid. 612(a)-(b).

"[Federal] Rule [of Evidence] 612 applies to deposition testimony." *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 565 (C.D. Cal. 2003). "'Rule 612 requires that a party meet three conditions before it may obtain documents used by a witness prior to testifying: 1) the witness must use the writing to refresh his memory; 2) the witness must use the writing for the purpose of testifying; and 3) the court must determine that production is necessary in the interests of justice." *Bagley*, 212 F.R.D. at 565–66. The Court weighs "the objective of full disclosure and ascertainment of the truth that Rule 612 and the federal discovery rules reflect[] against the interest in maintaining the confidentiality of protected material." *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 26 (N.D. Cal. 1985).

"[O]pinion work product, of course, is almost invariably shielded from discovery because it enjoys nearly absolute protection." *Bagley*, 212 F.R.D. at 565. However, "opinion work product may be discovered and admitted when mental impressions are [(1)] *at issue* in a case and [(2)] the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (emphasis in original). A witness's use of a protected writing to

give testimony may result in "a limited waiver of work product protection." *Bagley*, 212 F.R.D. at 566.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "'The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice,' *Richey*, 632 F.3d at 566, as well as to communications with third parties 'acting as agent' of the client." *Id.* (quoting *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978)). "California courts define an agent as anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions." *Lusida Rubber Prods. v. Point Indus., LLC*, No. CV-15-08677-MWF-GJS, 2016 WL 7469592, at *6 (C.D. Cal. Feb. 5, 2016) (cleaned up).

**B. Discussion**

**1. Counsel's Deposition-Preparation Notes**

Midjourney and Andersen do not dispute that she reviewed the withheld notes to prepare for her deposition, and that they refreshed her memory in some regard. The relevant portion of the deposition testimony that Midjourney included in the discovery letter is as follows:

> Q. Did you review any documents during those -- any of these [deposition] preparation sessions that helped you remember things that you had forgotten?
> A. Yes.
> Q. What documents did you review that helped you remember things you had forgotten?
> * * *
> A. I reviewed notes.
> Q. And what notes?
> A. Notes detailing the claims and key information.
> Q. Who prepared these notes?
> A. Aaron Cera

ECF No. 705-2 at 27:15-29:9.

Midjourney seeks one identified writing. Plaintiffs describe the confidential communication as "detailing the claims and key information" and identifying documents Mr. Cera

United States District Court
Northern District of California

selected for Andersen to review. ECF No. 706 at 5. The value of even one writing for cross-examination depends on whether it "actually influenced the witness' testimony." *Sporck v. Peil*, 759 F.2d 312, 318 (3d Cir. 1985). The Court assumes for purposes of this request that the attorney-client privilege and opinion work-product protection otherwise apply.

Midjourney points to Andersen's answers about "her works at issue, her claimed trade dress elements, and her claimed damages." ECF No. 706 at 3. It argues that her answers on those subjects traced back to what her attorneys told her. *Id.* But Midjourney identifies no passage linking the notes to a fact she recalled or an answer she gave on those subjects. *See Lubritz v. AIG Claims, Inc.*, No. 2:17-cv-02310-APG-NJK, 2018 WL 10456239, at *4 (D. Nev. Apr. 18, 2018) ("Asking a witness in cursory manner about refreshing his recollection by reviewing a writing, without explanation as to the extent or scope of the refreshing and the impact on the testimony, is plainly insufficient.").

Andersen testified only that the notes helped her remember the claims and key information—not any particular fact upon inquiry. In *Bagley*, the witness conceded that the writing "refreshed his recollection regarding matters about which he testified." 212 F.R.D. at 566. In *Bixby v. KBR, Inc.*, No. CV 09-632-PK, 2010 WL 11582923, at *3 (D. Or. Nov. 17, 2010), a witness acknowledged that counsel's timeline refreshed his recollection as to "at least some dates and events." Here, Midjourney can use the very answers it cites to challenge the basis of Ms. Andersen's knowledge. On this record, the additional impeachment value of the notes is speculative, and their production would reveal counsel's judgment about which claims and documents to emphasize in preparing his client.

In *Sporck*, the Third Circuit held that the "selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product" and protected counsel's selection of documents for deposition preparation—explaining that a writing has impeachment value under Rule 612 only if it "actually influenced the witness' testimony." 759 F.2d at 316–18. *Sporck* further cautioned "that even though a witness may review notes prior to testifying, a trial court should exercise discretion to guard against 'fishing expeditions among a multitude of papers which a witness may have used in

preparing for trial.'" *Id.* at 318 (quoting H.R. Rep. No. 93–650, 93d Cong., 1st Sess. (1973)). Midjourney's request is narrower because it seeks one identified writing, Mr. Cera's notes. Andersen acknowledged that the notes refreshed her recollection, but Midjourney identifies no particular answer that she attributed to reviewing them. Given that limited showing and the fact that the notes reflect counsel's judgment about which claims and documents to emphasize, the interests of justice do not require production, and Midjourney's request for discovery relief in this respect is **DENIED**.

**2. The Call with Ms. Tobaben**

Midjourney seeks to compel Andersen to testify about a call with her editor, Ms. Tobaben, and her attorney, Mr. Cera. Midjourney relies on Andersen's testimony that Ms. Tobaben was her editor and that she did not consider Ms. Tobaben her "agent." Plaintiffs explain that Andersen used the term in its publishing sense. They contend that Ms. Tobaben handled contracts and obtained records on Andersen's behalf, and that the call was "undertaken for the purpose of gathering information and facilitating legal advice in this litigation." ECF No. 706 at 4, 6.

The privilege inquiry turns on the role Ms. Tobaben performed during this call. The attorney-client privilege extends to confidential communications made to obtain legal advice and may encompass communications with third parties "acting as agent" of the client. *Sanmina*, 968 F.3d at 1116. In *United States v. Landof*, the court upheld the rejection of a privilege claim because the proponent failed to establish that the third party "was acting as an attorney or an agent at the meeting." 591 F.2d 36, 39 (9th Cir. 1978).

Here, Andersen's testimony establishes that Ms. Tobaben participated in the call on Andersen's behalf to help her provide the information Mr. Cera needed to advise her in this litigation. Andersen's description of Ms. Tobaben as her editor is consistent with the function she performed on this occasion. The Court finds that Ms. Tobaben acted as Andersen's agent for purposes of the confidential consultation with Mr. Cera and that her participation therefore preserved the privilege. Midjourney's inquiry sought the substance of that consultation. The Court **SUSTAINS** the privilege objection and **DENIES** Midjourney's request to compel an answer.

United States District Court
Northern District of California

### 3. Additional Deposition Time

Midjourney asks to resume Andersen's deposition to examine her about Mr. Cera's preparation notes and the call with Ms. Tobaben. The Court has denied production of the notes, and Midjourney identifies no further question about them that it needs to ask independently of production. As to the call, counsel's instruction ended the questioning, but Rule 30(c)(2) expressly permits an instruction not to answer "when necessary to preserve a privilege." Fed. R. Civ. P. 30(c)(2). Because the question sought a privileged communication, counsel properly instructed Andersen not to answer. Additional time is therefore unnecessary for a fair examination on either subject. The Court **DENIES** the request to reopen Andersen's deposition.

### C. Conclusion

For the reasons stated above, the Court **DENIES** Midjourney's requests at ECF No. 706 to compel production of Mr. Cera's notes, to compel testimony about the substance of the call with Ms. Tobaben and Mr. Cera, and to reopen Andersen's deposition on either subject.

## III. DISCOVERY DISPUTE AT ECF NO. 733

Plaintiffs oppose Defendant Midjourney's clawback of a purportedly privileged document and seek to re-open the deposition of Midjourney CEO David Holz. The parties dispute whether the privilege applied to the document in the first instance, whether the privilege was waived, and whether Midjourney may clawback the privilege. The parties have also presented a factual record that includes, among other things, the disputed document bearing Bates number MIDJOURNEY_00081351. Having considered the parties' briefing, the factual record, and the applicable authorities, the Court **GRANTS** Plaintiffs' request for discovery relief.

In this dispute, Midjourney attempted to claw back a purportedly privileged document used at the deposition of David Holz, Midjourney's founder, sole owner and CEO, on August 13, 2026. Dkt. No. 733 at 1. Plaintiffs ask the Court to reject the clawback and reopen the deposition of Mr. Holz. Midjourney argues the clawback was proper and the document remains privileged (as both attorney work product and under the attorney client privilege). It is undisputed that the document in question was intentionally communicated with a third party.

United States District Court
Northern District of California

**A. Legal Standard**

The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice. *See Richey*, 632 F.3d at 566. However, Courts in this district have held that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), and citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (alteration in original).

The work-product doctrine affords special or heightened protection to "mental impressions and opinion[]" work product and is distinguishable from "fact" work product, which may be ordered produced upon a showing of substantial need for the information and that the information cannot be otherwise obtained without undue hardship. *Admiral Ins. Co. v. United States Dist. Court for the Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)); *Carlson v. United States Postal Serv.*, No. 15-CV-06055-JCS, 2017 WL 3581136 at *19 (N.D. Cal. Aug. 18, 2017). The Ninth Circuit has adopted the "because of" litigation test, rather than the "primary motivation" test, to determine whether a dual purpose document is protected by the work product doctrine. *See In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir.2004) (adopting "because of" litigation standard for determining whether "dual purpose" documents are protected by the work product doctrine).

Courts in the Ninth Circuit have held that "the party asserting waiver of work-product protection bears the burden of demonstrating that a waiver of that protection has occurred." *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 642 (D. Or. 2019); *Greer v. Cnty. of San Diego*, 634 F. Supp. 3d 911, 918 (S.D. Cal. 2022); *Cher v. Bono*, No. CV 21-8157 JAK (RAOx), 2023 WL 9019046 at *4 (C.D. Cal. Dec. 26, 2023). "The work product protection may be waived by disclosures to third parties 'in a manner which substantially increases the opportunity for potential adversaries to obtain the information.'" *In re JDS Uniphase Corp. Sec.*

*Litig.*, No. C-02-1486 CW (EDL), 2006 WL 2850049, at *1 (N.D. Cal. Oct. 5, 2006) (quoting *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D.Cal.1994)). Voluntary waiver occurs where "a party discloses protected information to a third party who is not bound to maintain its confidence, or otherwise shows disregard for the protection by making the information public." *Great Am. Assur. Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (cleaned up) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 719, 720 n.6 (9th Cir. 2003).

**B. Discussion**

Midjourney asserts both the attorney-client privilege and work product protection over the disputed document. Each of these privileges are examined in turn.

With respect to the attorney-client privilege, to start, the disputed document is not a communication and does not facially reflect legal advice or strategy. *See F.R. v. Sonesta Int'l Hotels Corp.*, No. CV2304867SBRAOX, 2024 WL 1601258, at *1 (C.D. Cal. Feb. 22, 2024) ("The attorney-client privilege does not apply because the document is not a communication and does not reflect legal advice or strategy."). Nor were attorneys involved with the transmittal of the document in the Discord thread. *See Castillo v. Well Cmty. Church*, No. 121CV01460ADABAM, 2023 WL 4134428, at *5 (E.D. Cal. June 22, 2023) ("This is not a communication with an attorney, transmission or discussion of counsel's legal advice, or discussion of an intent to seek legal advice, and is therefore not protected by attorney-client privilege."). Here, the disputed document is not a communication, was not facially related to legal advice, was not attached to a communication with an attorney, and there is no indication the document was disclosed to the third party in confidence. The Google privacy setting for the link is not dispositive on the issue of whether the document was intended to be or remain confidential, but it is evidence that tends to show that Holz did not seek to limit who could view the document. The document itself bears no markings of confidentiality, nor was the third party instructed by Mr. Holz to keep the document confidential. Furthermore, although the transmittal document bears PHI redactions, indicating an attorney reviewed it, the disputed attachment does not bear any redactions. Thus, the attorney-client privilege is inapplicable here.

Midjourney's invocation of the attorney work product protection is more persuasive.

However, neither the disputed document nor the transmittal conversation bear any indication of attorney involvement. Nor has Midjourney presented any contemporaneous evidence that the document was prepared because of anticipated litigation. Rather, Midjourney presents a post hoc declaration by Mr. Sills, Midjourney's general counsel, that the document was attorney work product. The post hoc declaration alone is not persuasive enough to clear Midjourney's burden of proof with respect to work product. *See Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 WL 2694191, at *7 (N.D. Cal. June 21, 2017) ("decision to credit objective evidence in the record over attorney declarations submitted in support of their clients' arguments was not clearly erroneous."); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2006 WL 2850049, at *2 (N.D. Cal. Oct. 5, 2006) ("the Court declines to open the door to consideration of post hoc explanations of the work product assertion such as the Phillips declaration."); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 5428648, at *1 (N.D. Ill. Nov. 7, 2012) ("self-serving declaration, drafted more than five years after the fact, [was] not enough to trigger a privilege that clearly did not exist when the document was created."). Likewise, Mr. Holz's post hoc deposition testimony was given only after substantial questioning about the document and a subsequent break to discuss with his counsel, and is unpersuasive that the document constituted protected work product at the time it was created.

To the extent there may have been dual purposes associated with the disputed document, it does not appear the document was created "because of" anticipated litigation. Although agents of an attorney may create protected work product, Midjourney itself acknowledged that the relationship between Midjourney and the third party was predominately a business relationship. *See* Dkt. No. 732-2 at 5. Furthermore, the third party has never been a party to this litigation. Rather, it appears the disputed document was created "because of" business purposes. Nothing about the document itself indicates that it was created in conjunction with any legal advice or strategy at all. The document certainly does not reflect "opinion" work product and, thus, production may be ordered upon Plaintiffs' showing of a "substantial need for the information and that the information cannot be otherwise obtained without undue hardship." *See Admiral Ins. Co.*, 881 F.2d at 1494. That showing is met by Plaintiffs here.

Even assuming the document was protected by the work product doctrine, Mr. Holz waived any privilege it would have been entitled to by voluntarily disclosing it to the third party. Although Mr. Holz and the third party may not have been adversaries themselves, the manner of Mr. Holz's voluntary disclosure substantially increased the likelihood that the document would end up in an adversary's hands because he did not impose any limit on who could access the document. As discussed above, Mr. Holz did not instruct the third party to maintain any confidentiality with respect to the document. Nor was the document marked with any confidentiality tags. Indeed, Mr. Holz himself put the document's privilege at issue in the first place through the manner it was maintained, and Midjourney's nonaction in remedying the public availability issue until at least until September 3, 2026 belies its position. The Court does not follow Midjourney's rationale in keeping the document publicly available for the sake of this pending dispute. And, as to waiver, the document ultimately *did* end up in adversarial hands when it was produced to Plaintiffs. Plaintiffs might have otherwise obtained the document by serving a subpoena on the third party. On balance, if the document had not been disclosed to the third party, it is substantially less likely that Plaintiffs would have received it.

Finally, Midjourney does not articulate what purported common legal strategy might have existed between Mr. Holz and the third party, nor how that legal strategy was furthered by the document in question. There is likewise no indication from the third party regarding whether he is separately represented by counsel, or whether he agrees there even was a common legal strategy. Nor was the disputed document a communication between Mr. Holz's separate counsel and the third parties' separate counsel in the first place. Fundamentally, the common interest doctrine is not a separate source of privilege. Because the document was neither covered by the attorney-client privilege nor attorney work product protection in the first instance, the common interest doctrine cannot create privilege over the document.

**C. Conclusion**

For these reasons, Midjourney has not met its burden in showing that the document bearing Bates number "MIDJOURNEY_00081351" is privileged. Plaintiffs' requested relief in ECF No. 733 is **GRANTED**. By December 2, 2026, Midjourney shall restore MIDJOURNEY_00081351

to its production in the form originally produced. Plaintiffs may use their sequestered copy upon entry of this Order, subject to the entered protective order in this litigation. By December 18, 2026, Midjourney shall make Holz available remotely for up to two hours of additional examination on the record. Plaintiffs may ask questions about the document's creation, contents, use, and circulation, including follow-up questions arising from Holz's answers on those subjects. This Order authorizes no inquiring in to separately privileged communications with counsel.

**IT IS SO ORDERED.**

Dated: November 25, 2026

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California